Pages 1 - 35

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE: GOOGLE PLAYSTORE          )
ANTITRUST LITIGATION.            )
                                 )  **NO. 21-md-02981 JD**
                                 )
_____)

                        San Francisco, California
                        Thursday, April 1, 2021

              **TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff Consolidated Consumer Class:

                    BARTLIT BECK LLP
                    1801 Wewetta Street - Suite 1200
                    Denver, Colorado  80202
              BY:   **KARMA M. GIULIANELLI, ATTORNEY AT LAW**

                    KAPLAN FOX & KILSHEIMER LLP
                    850 Third Avenue
                    New York, New York  10022
              BY:   **HAE SUNG NAM, ATTORNEY AT LAW**

                    PRITZKER LEVINE LLP
                    1900 Powell Street - Suite 450
                    Emeryville, California  94608
              BY:   **ELIZABETH C. PRITZKER, ATTORNEY AT LAW**


              **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**




Reported By:        Marla F. Knox, RPR, RMR, CRR
                    United States Official Court Reporter

1  **APPEARANCES VIA ZOOM:   (CONT'D)**

2  For Plaintiff Epic Games:

3                          CRAVATH SWAINE AND MOORE LLP
                            825 Eighth Avenue
4                          New York, New York  10019
                    BY:  **YONATAN EVEN, ATTORNEY AT LAW**

5  For Developer Class:

6                          HAUSFELD LLP
                            325 Chestnut Street
7                          Philadelphia, Pennsylvania  19106
                    BY:  **KATIE R. BERAN, ATTORNEY AT LAW**

8                          SPERLING & SLATER P.C.
9                          55 W. Monroe Street - Suite 3200
                            Chicago, Illinois  60603
10                    BY:  **EAMON P. KELLY, ATTORNEY AT LAW**

11                          HAGENS BERMAN SOBOL SHAPIRO LLP
                            1301 Second Avenue - Suite 2000
12                          Seattle, Washington  98101
                    BY:  **ROBERT F. LOPEZ, ATTORNEY AT LAW**

13  For Defendants:
14                          MORGAN, LEWIS & BOCKIUS LLP
                            One Market - Spear Street Tower
15                          San Francisco, California  94105
                    BY:  **BRIAN C. ROCCA, ATTORNEY AT LAW**

16                          O'MELVENY & MYERS LLP
17                          1999 Avenue of the Stars - 8th Floor
                            Los Angeles, California  90067
18                    BY:  **DANIEL M. PETROCELLI, ATTORNEY AT LAW**

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Thursday - April 1, 2021**                    **10:32 a.m.** |

 2                    **P R O C E E D I N G S**

 3                         **---000---**

 4          **THE CLERK:**  Calling Multi District Litigation 21-2981,

 5   In Re: Google Play Store Antitrust Litigation.

 6      Counsel for the Plaintiffs, please state your appearance.

 7          **MR. EVEN:**  Yonatan Even from Cravath for Epic Games,

 8   Your Honor, good morning.

 9          **MS. GIULIANELLI:**  Karma Giulianelli for the consumer

10   Plaintiffs from Bartlit Beck.

11          **MS. NAM:**  Hae Sung Nam from Kaplan Fox for the

12   consumer Plaintiffs.

13          **MS. PRITZKER:**  Good morning, Your Honor, Elizabeth

14   Pritzker, liaison Counsel for the consumer Plaintiffs.

15          **MR. KELLY:**  Good morning, Your Honor, this is Eamon

16   Kelly on behalf of Sperling & Slater for the developer

17   Plaintiffs.

18          **MS. BERAN:**  Good morning, Katie Beran from Hausfeld

19   for the developer Plaintiffs.

20          **MR. LOPEZ:**  Good morning, Your Honor, Rob Lopez of

21   Hagens Berman for the developer Plaintiffs as well.

22          **THE CLERK:**  Counsel for the Defendant.

23          **MR. ROCCA:**  Good morning, Your Honor, Brian Rocca of

24   Morgan Lewis representing the Google Defendants.

25          **MR. PETROCELLI:**  Good morning, Your Honor, Daniel

1  Petrocelli of O'Melveny & Myers also representing the

2  Defendants.

3          **THE COURT:**  Okay.  Let's see.  Is this our first or

4  second quarterly meeting -- monthly meeting?  Second maybe?

5                         (No response.)

6          **THE COURT:**  All right.  Good.  So we are just going to

7  march through the items as they come up in your joint case

8  management statement at docket 11.

9          And then I will have what we will call just an open mic

10  opportunity at the end, which I hope you do not make me regret.

11          But we will have that opportunity at the end to raise any

12  other issues that you would like me to cover.

13          Okay.  Just starting at the top here, oh, scheduling

14  orders.  So I take it -- it looks like class cert things are

15  supposed to start happening in just a couple of months, and

16  other deadlines are coming up.

17          I cannot have you in for trial probably until the middle

18  of next year at the earliest.  Okay.  So I have been kind of

19  holding a scheduling order because we are in a shifting --

20  shifting situation with access to the court.

21          At the moment -- and please do not quote me on this.  It

22  is not something you can bank on.  But at the moment we are

23  moving rapidly towards -- just in California generally, as some

24  of you know, moving rapidly towards the more generous COVID

25  practices.  You know, we had this color coded tier thing; and

1    we are getting to green quickly.

2          So it may be that we open up sooner rather than later.

3    And I'm happy to say I have my first jury trial in May.

4          It is all criminal right now, but at least we are going to

5    have people in -- in-person jury trial, I should say -- but

6    there is just an enormous backlog; okay.  And this is one of

7    the younger cases I have.

8          So what I'm going to -- so I'm going to turn it back to

9    you, and you-all think about a schedule that has a trial date

10   maybe second -- end of second or third quarter of next year,

11   and you can kind of work backwards from that.

12         I don't think August is realistic anyway for class cert

13   given all the discovery issues you have attached here.

14         So you can do that.  I will leave that to you.  How about

15   two weeks from today, does that sound okay?

16              **MR. ROCCA:**  Yes, Your Honor.

17              **MS. GIULIANELLI:**  Yes.

18              **THE COURT:**  Okay.  The motions to dismiss, I'm baffled

19   by what you want me to read and what you don't want me to read.

20         So I can't follow, you know, read this brief; don't read

21   that.  You know, just let me just start with -- I'm going to

22   pick one person.  Ms. Giulianelli, what on the Plaintiffs'

23   side -- no, let me start with Defendants.

24         Mr. Rocca, what motions do you want me to read?

25              **MR. ROCCA:**  Your Honor, there are --

1      **THE COURT:**  Give me docket numbers.  That would

2  actually be great.

3      **MR. ROCCA:**  Yes, Your Honor.  There were two motions

4  filed, Your Honor.  The first was a Motion To Dismiss the

5  Developers complaint and the Epic complaint.

6      That motion was filed as ECF Number 91 on the docket that

7  is 20-CV-5671.

8      There was --

9      **THE COURT:**  All right.  So I'm going to do -- 91 is

10  the Epic motion.  You want me to do that one; right?

11      **MR. EVEN:**  That's right.  And that motion actually

12  also attacks the complaint filed by the developer Plaintiffs.

13      **THE COURT:**  All right.  So 91 is going to be Epic and

14  developers?

15      **MR. EVEN:**  That's correct.

16      **THE COURT:**  All right.

17      **MR. EVEN:**  There was a separate five-pager that was

18  filed at the exact same time.  It's docketed right -- right

19  with that motion.  That addresses a narrow issue that only

20  relates to the developer class Plaintiffs.

21      So we ask Your Honor to review that five-pager as well.

22      **THE COURT:**  Is that Docket Number 71?

23      **MR. ROCCA:**  That's correct.

24      **THE COURT:**  All right.  And that's five pages.

25      **MR. ROCCA:**  That's correct.

1          **THE COURT:**  All right.  Okay.  So that takes care of

2    Epic and developers.  What about consumers?

3          **MR. ROCCA:**  So --

4          **MS. GIULIANELLI:**  On behalf of --

5          **MR. ROCCA:**  Go ahead, Karma.

6          **MS. GIULIANELLI:**  No.  You go ahead and finish and

7    then I will --

8          **MR. ROCCA:**  Very well.  Thank you.

9      Your Honor, there were opposition briefs filed by the

10   developers and also reply briefs.  So the motion --

11         **THE COURT:**  Let me -- we will get there in a minute.

12   Did you move to dismiss the consumers' side?

13         **MR. ROCCA:**  The consumer complaint, Your Honor, at the

14   end of the last status conference -- we had a meet-and-confer

15   pursuant to the Court's direction.

16     And Your Honor directed us to decide should we file

17   another motion and how to deal with it basically.

18     And what we proposed to Your Honor is that because the

19   claims are so similar, rather than filing more papers, that we

20   simply stipulate that the motion that is pending and fully

21   briefed shall apply to the claims addressed in the consumer

22   case.

23         **THE COURT:**  All right.  So 91 and 71 is going to do it

24   for everything?

25         **MR. ROCCA:**  That's -- that's correct, Your Honor.

 1          **THE COURT:**  All right.  Those are the only two Motions

 2     To Dismiss I'm going to decide.  Okay.

 3        Now, this is why I was confused.  You can understand.

 4          **MS. GIULIANELLI:**  Yes.

 5          **THE COURT:**  All right.  On the -- let's start with the

 6     oppositions.  Okay.  Let's start with Epic.  So you have an

 7     opposition, is that right, Mr. Even?

 8          **MR. EVEN:**  That's right, Your Honor.  And we only have

 9     one, so that should be easy enough.

10          **THE COURT:**  What docket number is that?

11          **MR. EVEN:**  I will -- don't have it right before me,

12     but -- let me see.

13                         (Pause in proceedings.)

14          **MR. EVEN:**  I will get that for Your Honor.

15          **MR. KELLY:**  Your Honor, it was -- this is Eamon on

16     behalf of developers.  It was also filed in the developer

17     action because we did a joint brief with respect to --

18          **THE COURT:**  Oh --

19          **MR. KELLY:**  -- the main one.

20          **THE COURT:**  Just a moment.  So Epic and developers

21     have a joint opposition; is that right?

22          **MR. KELLY:**  That's right.

23          **THE COURT:**  What docket number is that?

24          **MR. KELLY:**  So if you -- based on the developer docket

25     number, the joint brief is filed in the developer docket number

1    20-CV-05792.  And the docket entry with the joint brief is

2    Docket Number 80.

3         And the -- there is a separate opposition to the motion

4    directed at the Plaintiffs which is a -- the developer

5    Plaintiffs, which is a five-page opposition; and that is at

6    Docket Number 81.

7              **THE COURT:**  Oh, 81, okay.  Great.  And then on the

8    consumer side, Ms. Giulianelli?

9              **MS. GIULIANELLI:**  And on the consumer side, we did not

10   file -- they did not file anything specifically with respect to

11   the consumers but are resting because of the common issues on

12   the arguments that were made in the developer Motion To

13   Dismiss.  And, likewise, the briefs in the oppositions are the

14   same --

15             **THE COURT:**  Oh, good.

16             **MS. GIULIANELLI:**  -- as the docket numbers with the

17   exception of the developer specific one that Mr. Kelly

18   referenced.

19             **THE COURT:**  All right.  So for the sum total for

20   everything, all I need to do is read the motions at 71 and 91

21   and in the oppositions at 80 and 81; is that right?  Everybody

22   agree?

23             **MR. KELLY:**  That's right.  Your Honor, as a

24   complication, the docket numbers I referenced were to the

25   developer docket; and I think --

1          **THE COURT:**  I will find them.  I'm not worried about

2  that.  Okay.

3          **MR. KELLY:**  Yeah.

4          **MR. EVEN:**  Your Honor --

5          **THE COURT:**  That helped me a lot.  Yes.

6          **MR. EVEN:**  If Your Honor needs it, it is Number 111 in

7  the Epic docket.  It is the same one as the --

8          **THE COURT:**  So 80 is 111 in Epic?

9          **MR. EVEN:**  Yes, Your Honor.

10         **MR. ROCCA:**  Your Honor, one clarification -- it is

11 Brian Rocca.  Google filed a reply brief in support of the

12 motion.  So there is another --

13         **THE COURT:**  I haven't got to that yet.  We are coming.

14 All right.  Okay.  So that's it so far.  Okay.  Now, reply

15 brief.  What is the reply docket number?

16         **MR. ROCCA:**  ECF Number 117, and that's on the Epic

17 docket.  That is the 5671 docket.

18         **THE COURT:**  Okay.  And that's your only reply brief;

19 right?

20         **MR. ROCCA:**  That's right.  Now, there was a -- I

21 think, Your Honor, there was a separate reply on the five-pager

22 that was, like, a three-pager.

23         **THE COURT:**  Oh, okay.  All right.

24         **MR. ROCCA:**  And I --

25         **THE COURT:**  That's fine.  I will find it.

 1          **MR. ROCCA:**  Okay.

 2          **THE COURT:**  That's great.  All right.  Well, this

 3   helped me considerably.

 4       I just -- for some reason, I just could not follow what

 5   was happening in the statements, so I'm glad we talked about

 6   that.

 7       Okay.  And consumer complaint is put to rest, right,

 8   Ms. Nam and Ms. Giulianelli, you are standing on --

 9          **MS. GIULIANELLI:**  Correct.

10          **THE COURT:**  Okay.  Great.  You have a grab-bag of

11   orders.  I will get to them when I will, but I'm sure I will

12   honor them.

13       By the way, the standard provision -- I don't even look at

14   the terms of protective orders, but the standard formula is you

15   can do whatever you want.

16       But if it conflicts with my standing orders, my standing

17   orders prevail; okay.  So that's basically the rule.

18       Now, let's get to the fun part, discovery.  Things are not

19   going well, I take it.  Well, no, they are.  They are going

20   well, but you have a couple sticking points.  All right.  Let's

21   be cheerful.  It's springtime.

22       Okay.  So there is an issue with searching custodians.

23   Who wants to take the lead on the Plaintiffs' side for that?

24          **MR. EVEN:**  I'm happy to do that, Your Honor.

25       We have served our RFPs back in November; have had some

1    back-and-forth with Google since then about search terms.

2         And the sticking pointed that we are alluding to is that

3    Google insists on applying some of the search terms to some of

4    the custodians but not to others.

5         We think that's not warranted in this case where there

6    aren't that many custodians.  We are not talking about hundreds

7    of custodians.  We are talking about 23 custodians on the

8    Google side, I believe.

9              **THE COURT:**  Just 23?

10             **MR. EVEN:**  Just 23, I believe are --

11             **THE COURT:**  And, Mr. Even, these are all electronic

12   searches?

13             **MR. EVEN:**  These are all electronic searches --

14   custodial electronic searches.  I'm assuming some of these may

15   have some hard copy documents.  But, by and large, we are

16   talking about electronic searches.

17        And we have asked that given the fact that there are not

18   that many custodians and that most of them are pretty high up

19   in the organization as a result, that all the search terms

20   would apply to everyone with the understanding that if somebody

21   doesn't have anything to do with accounting, for instance, then

22   accounting-related search terms probably will not hit that

23   many -- that many documents to begin with.

24        And so that's our sticking point right now since Google

25   has insisted that it must silo the custodians into groupings.

1          **THE COURT:**  All right.   Mr. Rocca, that all sounds

2     reasonable to me.   What is the problem?

3          **MR. ROCCA:**  Well, Mr. Even left off the number and

4     nature of search terms involved.   We have not seen anything

5     like this in any case we have ever handled, to be candid.

6          We are talking about literally thousands of proposed

7     search terms.   I believe there is upwards of 10,000 proposed

8     search terms that they are asking to run against 23 custodians

9     over a 14-year period, which yields millions of documents that

10    is going to be unworkable.

11         And so we have just proposed a proportional, common sense

12    approach that if search terms are designed to attack a

13    particular subject matter, that we run the subset of terms

14    against the custodians that are relevant to that subject

15    matter.

16         It is a way to logically approach the search term list.

17    We have made a lot of progress in our discussions.   Document

18    productions are under way.

19         And we just think that either we need to cut down the

20    search terms drastically so it is manageable or we do search

21    term bucketing which is a standard approach in many cases.

22         So I think --

23         **THE COURT:**  Well, I'm not comfortable with letting

24    opposing sides starting -- you know, to decide who is a

25    relevant person and who isn't.   That's not -- that is too much.

```
 1    That's not -- you are injecting yourself too much in somebody
 2    else's case and that bothers me.
 3        But is that right, Mr. Even?  How many, 10,000 search
 4    terms?
 5            MR. EVEN:  No, Your Honor.  We have 92.  I think after
 6    a couple of them, Google has said they will not do as
 7    custodial --
 8            THE COURT:  Sorry.  Let me just jump in.  You have 92
 9    search terms?
10            MR. EVEN:  We had 92.  It is now 90.  The way that
11    Mr. Rocca is reaching 10,000 is that he takes every expander
12    and takes it as a separate list.  I have never seen that done
13    before.
14            THE COURT:  Just give me an example then.  What do you
15    mean?
16            MR. EVEN:  For instance, we say something like -- take
17    the word "custodian."  We would put "custodian" with an
18    asterisk after it that will capture custodian and custodians.
19    Mr. Rocca will catch that as two separate search strings.
20        And the way we -- and this is obviously standard practice
21    to use expanders like that.
22        We have asked Google now for months to give us hit rates
23    to say if you believe this is overly burdensome, give us the
24    hit rates.
25        We have agreed to 19 search strings of the 90 so far on
```

1   which Google never gave us search hit rates.

2        We have 49 other strings on which Google gave us search

3   terms -- search hits at 3.6 million, that -- if it runs it

4   across all custodians.  Google wants to try and limit that

5   pretty severely to get that down to 1.1 million, I believe.  We

6   don't think that is warranted.

7        We, ourselves, are looking at over 44 million documents

8   for this case.  And this case is not about Epic at the end of

9   the day.  It is about Google.  And so we don't think that is

10  relevant or warranted.

11       And then we have 21 other search strings that Google gave

12  us back 4.7 million hits, which we are happy to work with

13  Google and limit; but we need to understand what is the overlap

14  between the 3.6 and 4.7 to understand at the end of the day if

15  we are looking at something like 4 million, which may be

16  reasonable or we are looking at something like 9 million.

17       And we never got that from Google so far and not for lack

18  of asking.

19       So we just think that if Google wants to narrow things, we

20  are perfectly happy to work with them on narrowing search terms

21  across the board.

22       We don't think that means that siloing is warranted in a

23  space where you have 23 custodians that are pretty high up.

24         **THE COURT:**  All right.  I agree.  So you run those

25  search terms Mr. Rocca, and you work with Mr. Even if there are

1  disproportionate results.

2      But, you know, if there are 92 or 100 search terms, as

3  Mr. Even says, and he wants to run them across 23 people,

4  that's perfectly fine.

5      **MR. ROCCA:**  Your Honor, I'm sorry.  May I be heard on

6  this issue again?

7      **THE COURT:**  You have been heard.  I just heard you for

8  five minutes.  So there is nothing more to say.

9      Let's move on to the next one, regulatory investigations.

10     Look, if you have some way back, you can just talk to

11 Mr. Even and you can come back to me.

12     But I'm not -- it is 23 folks with 90 terms, and I'm not

13 counting the asterisks as extenders.

14     **MR. ROCCA:**  Excuse me, Your Honor, may I be heard on

15 that issue because that is a misrepresentation.  I apologize,

16 Your Honor, but that is not -- that is not an accurate -- I

17 would be happy to submit to the Court a 3-page letter that

18 attaches the search terms so you can make your own assessment

19 as to whether or not the search terms are as advertised by

20 Mr. Even.

21     **THE COURT:**  Just let's get it done.  If you have a

22 problem, you can come back to me.

23     All right.  Regulatory investigations, what is the issue

24 there?  Who is going to take the lead on the Plaintiffs' side.

25     **MR. EVEN:**  I'm going to speak to that again,

Your Honor, if I may.

So, again, this comes from RFPs that we have filed back in November; and we had a lot of back-and-forth.  It is no secret that Google has been the subject of regulatory investigations, we believe, around the world.  We at least know from public sources about the EU and the House Judiciary in the U.S.

And we have asked them to produce documents that they have produced in these investigations, and we thought that that would actually be a way to minimize the burden on Google and expedite the discovery at the same time because this would be getting on a hard drive something that Google has already collected, already reviewed, already agreed is relevant and obviously already agreed is not privileged.

So we viewed that as a low-hanging fruit; asked for them to do that.  They have completely refused initially.  Then they came back and said to give them search terms on what they produced in these other investigations.

At the same time they refuse to tell us which investigations exist and what kind of search terms or custodians they were using in those investigations.

We eventually were forced to serve on Google an interrogatory asking them to name whatever investigations there are because we know only about the public ones.

They declined to do that.  In their response they named this particular -- this particular litigation in the House

1    Judiciary and then said:  We are not going to let you know

2    which investigations occurred in other jurisdictions because

3    that is outside of the jurisdiction of this case.

4         We think that is unwarranted because, frankly, the

5    documents are the same documents because they are about the

6    same conduct.

7         If Google is investigated about this conduct, which is

8    global conduct, in the EU or in Korea or in Japan, the

9    documents are all going to come from Mountain View because

10   that's where Google decisions are being made.

11        And so that's what we asked.  We think it is not a huge

12   ask.  It is a relatively easy thing.  And, frankly, we had said

13   from the get-go, had they given us these documents from the

14   get-go, we could look through these documents and maybe tell

15   them:  Okay, this custodian is necessary or is not necessary.

16        We could maybe work better with the search terms to narrow

17   them more.  We wouldn't feel like we need to invest so much in

18   new searches, but --

19             **THE COURT:**  Let me ask you this:  So you want to limit

20   this to government inquiries, subject matter-wise just to

21   Google Play or distribution of apps in Android; is that right?

22             **MR. EVEN:**  Yes, Your Honor.

23             **THE COURT:**  Okay.  And which public ones do you know

24   about?  You know about an EU one and a Congressional one; is

25   that right?

1          **MR. EVEN:**  We know about the EU one and the

2     Congressional one, and the Congressional one at least -- we

3     know it dealt more with advertising.  But we do know that at

4     the end of it, the report that came out said that Google and

5     Apple are sort of holding their punches in their competition

6     between them, which is obviously relevant to us.

7          So these are the two that we know that are directly

8     relevant and public.

9          **THE COURT:**  How about just getting those two?  Why do

10    you need to know more than those two?

11         **MR. EVEN:**  I would be happy at least to start with

12    those two, Your Honor.  And if we see something in there that

13    suggests there is more, we can come back.

14         Obviously we were hoping to save time with this, and that

15    hasn't happened.

16         **THE COURT:**  On the EU side -- you probably know better

17    than I do -- but the competition regimes are different.  So why

18    is the EU one going to be useful here?

19         **MR. EVEN:**  The EU is relevant, Your Honor, because the

20    EU actually was an investigation specifically into Google Play

21    and what Google Play means and what the rules of Google Play

22    mean.

23         And so the documents are relevant.  I'm not saying that

24    necessarily if the EU found Google to be a dominant firm that

25    abuses its dominance under Section 102 of the EU law, that

 1   means that necessarily they violated the Sherman Act.  That's

 2   not what we are asking to do here.

 3       We are just saying the documents that reveal the facts

 4   underlying these allegations, I'm assuming, are the same

 5   documents in the EU and U.S. at least --

 6       **THE COURT:**  You don't think you are going to get all

 7   this stuff through your other discovery requests?

 8       I mean, in theory, I would imagine whatever Google has

 9   provided a government entity is going to be a subset of what

10   you are requesting on discovery.

11       Is there some efficiency in getting it this way?  I mean,

12   what is it that --

13       **MR. EVEN:**  Well, I think there is efficiency in this

14   way because right now I'm working kind of in the dark.  And so

15   I feel very uncomfortable when Mr. Rocca comes back to me and

16   says:  Cut this back from 3.6 million to 1.1 million, for

17   instance.  I feel uncomfortable with that because I have no

18   idea about -- you know, I don't know what I don't know.

19       If I see that someone has run an investigation and

20   collected this and came out with a report and came up with a

21   corpus of documents that was sufficient to them, I can

22   certainly get some comfort and hopefully be more flexible in

23   terms of my other searches.

24       **THE COURT:**  All right.  Well, Mr. Rocca, what is wrong

25   with just producing the two public ones, EU and the House

1  Representatives?

2       **MR. ROCCA:**  First and foremost, Your Honor, Google has

3  offered as a compromised position to run a subset of search

4  terms against the EC Android investigation, which, by the way,

5  was not about Google Play.  That investigation involved a

6  search distribution in Europe.

7       So we have offered as a compromise to run targeted

8  searches and produce responsive information.

9       The main problem we are facing here, Your Honor, is that

10  the Plaintiffs -- as we just discussed with respect to the

11  search terms -- have many, many substantive discovery requests.

12       They had over 200 RFPs.  We are dealing with literally

13  thousands of search terms over a 14-year period and a massive

14  volume of documents relating to substantive areas, which we are

15  working through together.

16       That's what the discovery should focus on, not clone

17  discovery into investigations in foreign lands under different

18  legal processes.  There is different privilege concerns,

19  different levels of confidentiality, speculation on our end

20  about what the scope of any particular matter is involved.

21       So our proposal was we will run some searches and work

22  with them on that search against the EC Android case, and

23  that's -- that seems to be a reasonable compromise rather than

24  forcing us -- while we are trying to deal with these very

25  substantive discovery issues -- to run around and figure out

 1   what is happening in some other country.

 2        **THE COURT:**  Okay.  I'm not really swayed by the idea

 3   that Google is resource constrained.  What about the United

 4   States?  Leave the foreign lands, as you call them, out.

 5        What about the United States?  Why don't you just hand it

 6   over to Mr. Even and the other Plaintiffs?

 7        **MR. ROCCA:**  And specifically which -- are we talking

 8   about the House Committee report?

 9        **THE COURT:**  I don't know.  I'm not doing the

10   discovery.  Whatever it is.  You know better than I do.  So

11   which one is it, Mr. Even?  What investigation in the U.S.?

12        **MR. EVEN:**  It is the House Judiciary report,

13   Your Honor.

14        **THE COURT:**  Okay, House Judiciary.  Why don't you just

15   hand that one over?  There is no foreign issue.  It is 100

16   percent American.  No foreign issue.  So why don't you hand

17   that over?

18        **MR. ROCCA:**  Your Honor, we are happy to meet and

19   confer and see if we can figure that out.

20        Just to be clear, that is an investigation --

21        **THE COURT:**  Mr. Rocca, I think you are confused.  We

22   are doing that now.  I'm going to cure all your ails right now.

23   Why don't you hand that over?  What is the problem?

24        **MR. ROCCA:**  It is a digital marketplace investigation

25   by Congress relating to issues that have nothing to do with

1   Google Play in many respects.  There is literally 3 pages of,

2   like, a 400 report --

3          **THE COURT:**  Relevance is the world's weakest objection

4   to discovery.  You know that.  So if it is just a relevance

5   objection, it is overruled.  Is there any other objection?

6                          (No response.)

7          **THE COURT:**  Okay.  Produce those materials.  Now, you

8   are going to start with that, Mr. Even.  I'm not ruling out

9   going farther; but Europe sounds, you know, maybe a couple

10  kilometers too far away from this case.  I will leave it up to

11  you.

12     You start with the U.S. Representatives -- the House

13  Judiciary investigation.  Okay.  All right.

14     Now, we are going to go from Google to Epic.  I just --

15  I'm not really understanding this excessive video game and

16  impulse buying issue.  Who wants to tell me about that?

17         **MR. ROCCA:**  I will, Your Honor, if I may.

18         **THE COURT:**  Yeah.

19         **MR. ROCCA:**  Thank you.  Your Honor, Epic is seeking a

20  court order in this case to redesign Google's technical product

21  to sort of -- so they can sidestep Google Play billing.

22     Their business model is premised in large part on the

23  impulse buying of video gamers, including kids and teens.

24     And we believe what they are trying to do in part -- or we

25  want to investigate whether this is what they are trying to

1  do -- is to sidestep Google Play billing in its parental

2  controls, budget management tools, the sort of tools that

3  Google Play offers, in order to make sure that the users are

4  protected from impulse buying and other predatory behavior.

5      Epic has declined to run a set of search terms against its

6  data relating to its impulse buying strategy.

7      We believe that's in part the motivation for this lawsuit,

8  and we are entitled to test that.

9          THE COURT:  What specifically do you want, though?

10         MR. ROCCA:  Well, just as Mr. Even was talking about a

11  list of search terms, there is a single search query that we

12  are proposing that they are declining to run.

13         THE COURT:  What is it?  Is it generally impulse

14  buying?  I mean, what does it look like?

15         MR. ROCCA:  Impulse buying, in app payments -- it

16  relates to in app payments.  Their business model, Your Honor,

17  is when someone is playing a game -- namely, Fortnight -- and

18  they want to buy more V bucks, which is the --

19         THE COURT:  Oh, I know.  I have a -- we are all

20  getting these cases now where kids are buying those, allegedly

21  without their parents permission; and the parents all want

22  their money back now.  I kind of understand the concept.

23      Well, let me ask you, Mr. Even, what is wrong with that?

24  I mean, it seems, you know, Mr. Rocca -- it's one of his themes

25  for defense, so why not let him have it?

1              MR. EVEN:  Well, Your Honor --

2         THE COURT:  By the way, this is Epic specific; right?

3    It is just you on this.

4         MR. EVEN:  It is just me, Your Honor.

5         THE COURT:  Okay.

6         MR. EVEN:  So, first of all, we received the latest

7    letter from Google last night.  So I don't know that this is

8    ripe, and we are still looking at what they proposed there.

9         But setting that to the side and at the risk of running

10   afoul of Your Honor's recent announcement that relevance is the

11   weakest objection that there is --

12        THE COURT:  Oh, no, it is not my announcement.  I'm

13   channeling rock solid law.  So I am merely the messenger.

14        MR. EVEN:  Understood, Your Honor.

15        THE COURT:  All right.

16        MR. EVEN:  But on that, Your Honor, we do think that

17   there is no defense here for Google that is predicated on what

18   is or isn't done in the thinking of Epic and others.

19        These are global policies that Google has.  Google

20   actually says that it doesn't block anyone from not using its

21   own store.  It says that it is completely open.

22        It has never suggested to anyone that it's 30 percent or

23   the warnings on side loading or anything like that has anything

24   to do with the goal of preventing video game addiction.

25        So there is no business justification that they are

1   raising as a defense that says:  We need these policies in

2   place to prevent video addiction.

3          THE COURT:  All right.  Well, I'm going to -- this is

4   a bilateral overruling, irrelevance.  So you need to produce

5   that too.

6       I'm not saying you two don't -- may need to talk more on

7   both sides, you know, narrowing things, focusing things.

8   That's fine.

9          But as a general proposition, all of these objections by

10  Google and by Epic are overruled, okay, with the limitation

11  that the government investigations will be limited to the House

12  Judiciary proceedings in the, at least, first tranche of

13  production.  Okay.

14         MR. EVEN:  Understood, Your Honor.

15         THE COURT:  Okay.  Now, that's all I see in the case

16  management issue for sticking points; is that right?

17      Anything else?  I mean, there are some forecasts of

18  trouble on the horizon, but you don't want me to do anything

19  about that now; is that right?

20         MR. EVEN:  We hope we never do, Your Honor.

21         THE COURT:  All right.  Okay.  Now, here is the open

22  mic portion.  What else would you like to talk about?

23  Anything -- let me start with the Plaintiffs.  Anything on the

24  Plaintiffs' side?

25         MR. EVEN:  So I would just be remiss, Your Honor, if I

1    didn't raise the hope that we will obviously speak to Google;

2    but we are hoping to get a trial as soon as possible.

3         And so any additional guidance that Your Honor can give us

4    so we can sit down together and come up with a revised schedule

5    that does get us to a trial.

6              **THE COURT:**  All right.  Well, that's a fair point.

7              **MR. EVEN:**  At least for Epic, I think the --

8              **THE COURT:**  No.  I understand.  Just one second here.

9    I think I -- I'm going to just go dark for one minute.  Just

10   stay on the line.  Don't go away.

11             **MR. EVEN:**  Thank you, Your Honor.

12                       (Pause in proceedings.)

13        **THE COURT:**  Okay.  Here, let's do this:  I can't

14   promise I will be able to stick to this because there is just a

15   fairness issue in distributing trial resources.  And one of the

16   fairest ways to do that is to make sure that older cases, you

17   know, don't lose priority.  And they do have priority.

18        Why don't you take February or March of 2022 as a likely

19   time; okay.  And pick a trial date, say, middle of

20   February 2022 and work backwards from there.

21             **MR. EVEN:**  So I think, Your Honor, actually, our

22   current order shoots for April 22 already.

23             **THE COURT:**  Oh, it does, okay.  Then pick -- pick July

24   of 2022.  I thought I had you down for -- I thought I had you

25   down for December of this year.  Is that not right?

1              **MR. EVEN:**  No, Your Honor.  I think our -- maybe the

2       best approach here is if February to April is agreeable to

3       Your Honor, maybe Your Honor could take another look at our

4       existing --

5              **THE COURT:**  No.  All right.  If I have you down for

6       April -- why are you in class cert in August then?

7              **MR. EVEN:**  I think this is a separate question that

8       maybe one of the class Plaintiffs can speak to.  But I think

9       Your Honor asked that -- the way this was done was that

10      Your Honor asked for class cert to proceed the end of

11      discovery, if I remember correctly.  But somebody else can

12      speak to that maybe more.

13             **THE COURT:**  All right.  This is why I regret the open

14      mic portions of these things.  Okay.  Let's stick with April.

15      Just stick with April.  And I will take a look at whatever you

16      file for that scheduling order.

17          I thought it was -- I thought you were much earlier than

18      that, but I didn't look back at my notes from our last meeting.

19      So --

20          If I can make that work -- just give me some time.  I will

21      take a look at it.  Okay.  So don't do anything on scheduling.

22      Let me take back everything I said about that.  Let me just

23      look at what we have, and maybe we can work -- I mean, I'm

24      skeptical.

25          And you may have been doing this to meet my expectations

1    in which case it is all on me.  I'm just skeptical in three

2    months you are going to be in a position to file for class

3    cert.

4         I mean, does that sound right to you, Ms. Nam?  Doesn't

5    that feel rushed to you?

6              MS. NAM:  Sorry, Your Honor, I was on mute.

7         Your Honor, that's what our goal is.  We want to push this

8    as quickly as we can.  So that would be our goal.

9         But as we stated in our joint case management statement,

10   you know, one of the issues is getting the data that we need on

11   time.

12             THE COURT:  So you are still happy with that timeline?

13             MS. NAM:  We still -- you know, we will discuss

14   further.  But at this point we are -- you know, we would like

15   to stick with that for now; but to the extent something does

16   come up and to the extent we realize that the data is not

17   forthcoming, we will definitely get back to Your Honor as quick

18   as possible.

19             THE COURT:  Okay.  Look, you are just going to have

20   to -- just expect some bumps here because we have a lot that we

21   need to catch up with.

22        And there is just going to be a lot of short-term and

23   possibly long-term adjustments.  So let me take another look at

24   it, and maybe we stick with what I said last time.  But maybe

25   we extend it a little bit.  I will let you know soon.  Okay.

1    All right.  Any other issues?

2              **MR. ROCCA:**  Your Honor, it is Brian Rocca.

3              **THE COURT:**  Yes, Mr. Rocca.

4              **MR. ROCCA:**  Just briefly on the Motion To Dismiss, I

5    want to make sure that we do this efficiently.  First thing,

6    would Your Honor be setting a motion date?  We have proposed

7    some hearing dates -- I'm sorry -- hearing dates.

8         And the second question is:  Would you like us to re-file

9    the briefs that we referenced on the MDL docket?

10        They exist right now on the underlying dockets, but they

11   have not been filed on the MDL docket.  That might help

12   Your Honor gather everything in the right place, and we would

13   be happy to --

14             **THE COURT:**  You know what, that's a good idea.  Why

15   don't you just -- now, no editing; okay.  Nobody changes a

16   period or semicolon.  Nothing.  Just the same thing.

17        But why don't you just re-file it.  And then, you know,

18   you might even -- you might even caption it as something like

19   Omnibus Motion to -- however you want to do it.  I will leave

20   it up to you.

21        That will be great.  Let's get all that re-filed.  Let

22   Mr. Rocca do it first, Plaintiffs; and once you see it is up,

23   you just file your oppositions in the same manner.

24        And then once that is up, Mr. Rocca, you can re-file your

25   reply.  That will be a nice sequence in the docket.  That is a

1    great idea.

2        And then I'm just going to turn all those underlying

3    motions because they -- I won't bore you with the details.  If

4    I have open gavels on my docket, it creates a problem.  So I

5    will turn over all the underlying things and we will take it

6    from there.

7        I am going to have you in for a hearing.  I'm looking

8    forward to it, which raises two points.  One is, it is not

9    going to happen in April.  I'm probably not going to have you

10   in until possibly early June.

11       I have a trial -- as I said, we have our in-custody

12   criminal cases that are top priority, and I'm going to be doing

13   a couple of those.

14       So I will probably have you in, in early June for an

15   argument.  And, you know, as I said, we are loosening up.

16   Knock on wood that continues.

17       I am inclined -- for a variety of reasons, and I have

18   spoken about this quite a bit in other forums -- just to keep

19   you all coming in virtually for things like this.  All right.

20   It is just not necessarily to drag everybody out here.

21       On the motion hearing, I will leave it up to you.  It may

22   be by June -- who knows.  Let's assume for a moment that we can

23   have people in -- I'm assuming that we will because I have my

24   other MDL trial starting on June 7th.

25       So you might be later in June than I just said.  In any

 1   event, the last portion of my other MDL trial will be on

 2   June 7th.  I expect that to be in person.

 3        I will leave it up to you whether you want to do the

 4   hearings in person or whether you want to do them virtually.  I

 5   can accommodate either one, but I will let you choose.  Okay.

 6        It's -- you know, it is your time.  So I will let you

 7   determine whether, you know, it is worth the trip or you want

 8   to do it virtually or however you want to do it.

 9        And what we can do is once I figure out what the hearing

10   date is, you can just tell me, you know, maybe two weeks ahead

11   of time.

12        You don't have to look now.  Let's let another month or

13   two go under the -- on the calendar and get off the calendar

14   and see where we are.  And then you can make an election.

15        And if you want to come out and you feel comfortable doing

16   that; and it seems safe and responsible, that would be great.

17   If you don't want to, this is perfectly fine as well.  But I

18   will leave it up to you.  Okay.

19          **MR. ROCCA:**  So, Your Honor, when we start refiling the

20   documents, are you expecting us to notice a hearing date?

21          **THE COURT:**  No.  Just click TBD on it, yeah.

22          **MR. EVEN:**  Your Honor, if I may raise one thing about

23   the date of the hearings.  So we, Counsel for Epic, are all

24   going to be in Oakland for a trial with Apple in May.  And so

25   I'm not sure when that is --

```
1              THE COURT:  Oh, is that happening in person?

2         MR. EVEN:  That is happening in person beginning

3    May 3rd, as things stand now.

4         THE COURT:  Can I ask you a question?  Why is that a

5    bench trial?

6         MR. EVEN:  That is a bench trial because both parties

7    agreed to that, Your Honor.

8         THE COURT:  Is that because of a COVID issue or --

9         MR. EVEN:  No, that had nothing to do with COVID,

10   Your Honor.

11        THE COURT:  Interesting.  Okay.

12        MR. EVEN:  So just in terms of the timing of the

13   Motion To Dismiss, Your Honor, if we can -- if not in April,

14   then I think --

15        THE COURT:  Oh, yes, that is perfectly fine.

16        MR. EVEN:  -- mid-June.

17        THE COURT:  That makes perfect sense.  How long do you

18   think that is going to go, Mr. Even?

19        MR. EVEN:  I think the timing right now is around

20   three-and-a-half to four weeks based on the time that the Court

21   has given us.

22        But to be on the safe side, since we are starting May 3rd,

23   I would like to give us a little breathing room before we come

24   up for air for a Motion To Dismiss argument in this case.

25        THE COURT:  Okay.  That sounds fine.
```

1        **MR. EVEN:**  Thank you, Your Honor.

2        **THE COURT:**  It won't be any time in May.  I can

3  guarantee you that.  It may be after my MDL trial, which it is

4  the tail -- it is just two Defendants left in my other

5  antitrust MDL.  So it is not going to be -- it is not going to

6  take weeks and weeks.

7        And we are actually not bringing in juries for more than

8  two or three-week seatings right now anyway, so -- it will be

9  some time in June but after -- well after your trial, Mr. Even.

10        **MR. EVEN:**  Thank you.

11        **THE COURT:**  Anybody else on the consumer developer

12  side?  Anything?  Nothing?

13                          (No response.)

14        **MS. GIULIANELLI:**  Not at the moment, Your Honor.

15        **THE COURT:**  Anything else from Defendants?

16        **MR. ROCCA:**  No, Your Honor.  Thank you, Your Honor.

17        **THE COURT:**  All right.  Let's just -- I will set

18  another conference -- just do a status order 30 days from

19  today.

20        You can always cancel if you need to; all right.  That's

21  perfectly fine.

22        And as time permits, I will start getting out these, you

23  know, prior orders and so on and take a look at the scheduling

24  order.

25        Okay.  Thanks very much, everyone.

1          **MR. EVEN:**  Thank you, Your Honor.

2          **MR. ROCCA:**  Thank you, Your Honor.

3          **MS. GIULIANELLI:**  Thank you.

4               (Proceedings adjourned at 11:15 a.m.)

5                         ---oOo---

6

7                    <u>**CERTIFICATE OF REPORTER**</u>

8          We certify that the foregoing is a correct transcript

9     from the record of proceedings in the above-entitled matter.

10

11    DATE:   Thursday, April 1, 2021

12

13

14

15    _____

16              Marla F. Knox, RPR, CRR, RMR
                   U.S. Court Reporter
17

18

19

20

21

22

23

24

25