Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
**SPERLING & SLATER, P.C**.
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile: (312) 641-6492

*Co-Lead Interim Class Counsel for the
Developer Class and Attorneys for
Plaintiff Pure Sweat Basketball, Inc. v.
Google LLC, et al.*

[Additional counsel appear on signature page]

Bonny E. Sweeney (SBN 176174)
bsweeney@hausfeld.com
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

*Co-Lead Interim Class Counsel for the
Developer Class and Attorneys for
Plaintiff Peekya App Services, Inc. v.
Google LLC, et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY DEVELOPER ANTITRUST LITIGATION | Master File No. 3:20-cv-05792-JD<br><br>**DEVELOPER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SEPARATE MOTION TO DISMISS DEVELOPERS' CLAIM FOR DAMAGES**<br><br>Judge:     Hon. James Donato<br>Courtroom: 11, 19th Floor (via Zoom)<br>Hearing:   January 28, 2021<br>Time:      10:00 a.m. |

Google has separately moved to dismiss the app developers' claims for Sherman Act overcharge damages. (Google Mem. at 1 (ECF 71-1).) Google has not moved to dismiss the app developers' claims for restitution under the California Unfair Competition Law or damages under the Cartwright Act. According to Google, *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), holds that app developers who directly purchase app-distribution services from Google cannot sue for overcharge damages. Google says app developers, as "upstream suppliers," may sue only for "lost profit damages under a monopsony theory." (Google Mem. at 1.) But *Pepper* contains no such holding. To the contrary, *Pepper* reaffirmed the "bright-line rule" allowing upstream and downstream direct purchasers, without exception, to sue for overcharge damages. 139 S. Ct. at 1524.

In this case, the developer plaintiffs allege they directly purchase app-distribution and in-app-purchase ("IAP") services from Google and that Google charges supracompetitive prices in an abuse of its monopoly power. They alternatively allege that they directly sell digital products to Google and that Google underpays them in abuse of its monopsony power. These are viable claims. Nowhere did *Pepper* overrule longstanding precedent allowing for the recovery of overcharge damages. *See, e.g.*, *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985, 2008 WL 4065839, at *7 (N.D. Cal. Aug. 27, 2008) ("[T]he standard method of measuring damages in price enhancement cases is overcharge, not lost profits.") (citation omitted). Nor did it limit damages available on a monopsony theory. The Court merely observed that developers (not before the Court) *might* sue on the theory that Apple, as a monopsonist retailer, caused them to suffer lost profits. *Pepper*, 139 S. Ct. at 1525 ("[I]t *could be* that some upstream app developers will also sue Apple on a monopsony theory.") (emphasis added). Google's motion should be denied.

## I.      Pertinent factual allegations.

Plaintiffs allege that they directly purchase app-distribution and IAP services from Google; that Google monopolizes the market for those services; and that Google extracts from them a monopoly overcharge. (Compl. ¶¶ 14, 21, 35, 60, 161, 168, 170, 190, 198, 235, 245, 267.) Alternatively, plaintiffs allege that they sell digital products to Google; that Google monopsonizes the market for the digital products; and that "Google uses its monopsony power to underpay … developers below the price they would obtain in a competitive market." (*Id.* ¶¶ 21, 28, 29.)

## II.     Plaintiffs are direct purchasers and may sue for overcharge damages.

In *Pepper*, app developers purchased app-distribution services from Apple, which sold apps to consumers. Apple asserted that the developers "absolutely would have antitrust standing" under *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977), because "they are direct purchasers of distribution services from Apple" and have an "undiluted cause of action for the entire over-charge."[1] Apple argued that consumers could not sue because their overcharge damages would be duplicative of the damages suffered by the upstream developers. This case is the converse. The plaintiffs are app developers, so Google reverses Apple's failed argument and asserts that consumers may sue for overcharge damages but direct-purchaser developers may not.

The Supreme Court rejected Apple's contention that *Illinois Brick* prevents direct purchasers, whether upstream developers, downstream consumers, or both, from suing for overcharge damages. The Court held that "our decision in *Illinois Brick* established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." 139 S. Ct. at 1520 (emphasis in original). It explained that "[w]hen there is no intermediary between the purchaser and the antitrust violator, the purchaser may sue" for "the higher-than-competitive price" it paid. *Id.* at 1522-23. Under *Illinois Brick*, a direct purchaser may sue, "as a matter of law," for "the full amount of the overcharge paid by it." 431 U.S. at 724; *see also Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) (holding that direct purchaser may seek overcharge damages because seller "takes from the buyer more than the law allows"). Reaffirming that bright-line rule, *Pepper* concludes that "[m]ultiple suits are not atypical when the intermediary in a distribution chain is a bottleneck monopolist or monopsonist (or both)" and that the bottleneck retailer "may be liable … both to downstream consumers and to upstream suppliers." 139 S. Ct. at 1525.

Here, plaintiffs allege they directly purchase app-distribution and IAP services from Google. There is no intermediary between them and Google, and they are not "two or more steps removed from the antitrust violator." *Id.* at 1521. As a matter of law, the "bright-line rule" of

---

[1]     Brief of Apple at 18, 41, *In re Apple iPhone Antitrust Litig.*, No. 14-15000 (9th Cir. July 11, 2014); Brief of Apple at 17, *Apple Inc. v. Pepper*, No. 17-204, 2018 WL 3870180 (Aug. 10, 2018).

*Illinois Brick*, reaffirmed in *Pepper*, allows plaintiffs to sue Google for the amount in excess of what "they would have paid in a competitive market" for distribution services. *Id.* at 1519-20.

### III.    Alternatively, Plaintiffs are direct sellers and may sue for underpayments.

The law also allows Plaintiffs to sue for underpayments under a monopsony theory. It is unlawful not only for a seller to monopolize a market and overcharge purchasers, but also for a buyer to monopsonize a market and underpay sellers. *See, e.g.*, *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 235 (1948) (holding that agreement to reduce price paid to beet growers was unlawful "even though the price-fixing was by purchasers" and injured "sellers, not customers or consumers"). As the Supreme Court held in *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, "monopsony is to the buy side of the market what a monopoly is to the sell side." 549 U.S. 312, 320 (2006). Thus, "monopsony pricing … is analytically the same as monopoly or cartel pricing and [is] so treated by the law." *Id.* at 321-22 (quoting parenthetically *Khan v. State Oil Co*, 93 F.3d 1358, 1361 (7th Cir. 1996)).

Just as purchasers are entitled to sue for overcharge damages, sellers are entitled to sue for underpayment. *American Crystal Sugar Co. v. Mandeville Island Farms, Inc.*, 195 F.2d 622, 625 (9th Cir. 1952) (awarding damages based on underpayment to beet growers); *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1223 (N.D. Cal. 2013) (allowing plaintiff to prove class-wide damages by showing "percentages by which Defendants undercompensated" class).

Here, plaintiffs allege in the alternative that Google directly purchases digital products and "uses its monopsony power to underpay Android OS developers below the price they would obtain in a competitive market." (Compl. ¶¶ 21, 28, 29.) Google can be viewed as the "bottleneck" retailer addressed in *Pepper*—dealing directly as a monopsonist with upstream sellers and directly as a monopolist with downstream consumers. As *Pepper* holds, both "downstream consumers" and "upstream suppliers" may sue. 139 S. Ct. at 1525. Thus, because the upstream app developers sell directly to Google, they may (as a matter of law) sue for underpayments they suffer, just as direct purchasers may sue for overcharges. They also may sue for lost profits if they choose.

IV.     **Plaintiffs are not limited to lost profit damages.**

Google nonetheless argues that the app developers are merely "upstream suppliers" who "may only seek alleged lost profits under a monopsony theory, not overcharges." (Google Mem. at 1, 3.) But no court has ever held that one party who deals directly with an antitrust violator is precluded from seeking overcharge or underpayment damages. *Pepper* certainly did not do so.

Apple argued in *Pepper* (as Google does here) that "direct purchasers from the alleged monopolist" may not sue for overcharges if the policy reasons given by *Illinois Brick* for preventing indirect purchasers from suing—including avoidance of duplicative recovery—are met. 139 S. Ct. at 1524. But the Supreme Court rejected that argument, reaffirming that direct purchasers may sue for allowable damages without exception: "As we said in *Utilicorp*, however, the bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* 'apply with equal force' in every individual case. We should not engage in 'an unwarranted and counterproductive exercise to litigate a series of exceptions.'" *Id*. (citations omitted).

Having reaffirmed that plaintiffs who deal directly with an antitrust violator may sue for overcharges (or underpayments) without exception, the Court rejected, for a second independent reason, Apple's contention that direct purchasers' ability to sue for overcharge damages can be restricted. "[E]ven if we engage with this argument," the Court stated, "we conclude that the three *Illinois Brick* rationales—whether considered individually or together—cut strongly in the plaintiffs' favor here, not Apple's." *Id*. In this regard, the Court also rejected Apple's argument that "allowing consumers to sue will result in 'conflicting claims to a common fund'":

> This is not a case where multiple parties at different levels of a distribution chain are trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain. … The overcharge [to consumers] has not been passed on by anyone to anyone. Unlike in *Illinois Brick*, there will be no need to "trace the effect of the overcharge through each step in the distribution chain."

*Id*. at 1524-25 (citations omitted).

The Court acknowledged that this may leave the antitrust violator "subject to multiple suits by different plaintiffs." *Id*. at 1525. But the "mere fact that an antitrust violation produces two

different classes of victims hardly entails that their injuries are duplicative." *Id.* (citation omitted).[2]

Where the antitrust violator is an intermediary, it may be liable "both to downstream consumers and to upstream suppliers." *Id.* Thus, the developers' recovery of damages based on supracompetitive commissions would not duplicate any recovery by consumers because consumers' damages would not be based on commission overcharges. Under *Pepper*, "consumers seek damages based on the difference between the price they paid and the competitive price," *id.*, and thus, in this case, would need to prove that Google abusively charged anticompetitive prices for apps (and in-app products). Nor would consumers' damages duplicate any alternative monopsony damages sought by the developer plaintiffs—whether based on underpayment or lost profits.

Google places great weight on one sentence in *Pepper*, which stated hypothetically that "app developers would seek lost profits they could have earned," *id.* (Google Mem. at 1, 3.) Google insists the Court intended—without explanation—to overrule the body of law that direct purchasers from a monopolist or sellers to a monopsonist may, as a matter of law, seek overcharge or underpayment damages. But Google is wrong. The Court did not say that app developers could not also sue for underpayment damages, or that such damages are prohibited by an exception to *Illinois Brick*'s bright-line rule. Nor is there a logical reason to treat monopsony damages differently than monopoly damages because "monopoly and monopsony are symmetrical distortions of competition from an economic standpoint." *Weyerhaeuser Co.*, 549 U.S. at 321-22 (quoting parenthetically *Vogel v. American Soc. of Appraisers,* 744 F.2d 598, 601 (7th Cir. 1984)).

**VI.    Conclusion.**

Plaintiffs respectfully request that Google's motion be denied but that, if needed, they be given leave to amend their complaint, including with respect to monopsony lost-profits damages.

---

[2]    The overcharge paid by a consumer is the difference between the price paid and the competitive retail price. It is not the underpayment suffered by the upstream developer. *See* Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy and Monopsony*, 76 Cornell L. Rev. 297, 358 (1991) (explaining that there is no "multiple liability problem" between upstream sellers and downstream buyers).

1

2   Dated:  December 21, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,


By:    /s/ Eamon P. Kelly


Eamon P. Kelly (*pro hac vice*)
Paul E. Slater (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
SPERLING & SLATER, P.C.
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile:  (312) 641-6492
pes@sperling-law.com
ekelly@sperling-law.com
jvanek@sperling-law.com
arodriguez@sperling-law.com


Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com


Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
bens@hbsslaw.com


*Co-Lead Interim Class Counsel for the Developer*
*Class and Attorneys for Plaintiff Pure Sweat*
*Basketball v. Google LLC et al.*

1    Dated:  December 21, 2020                   Respectfully submitted,

2                                                By:    /s/ Bonny E. Sweeney

3

4                                                Bonny E. Sweeney (SBN 176174)
                                                 Samantha J. Stein (SBN 302034)
5                                                HAUSFELD LLP
                                                 600 Montgomery Street, Suite 3200
6                                                San Francisco, CA 94111
                                                 Telephone.: (415) 633-1908 (main)
7                                                Telephone: (415) 633-1953 (direct)
                                                 Facsimile:  (415) 358-4980
8                                                bsweeney@hausfeld.com
                                                 sstein@hausfeld.com
9

10                                               Melinda R. Coolidge (pro hac vice forthcoming)
                                                 HAUSFELD LLP
11                                               1700 K Street, NW, Suite 650
                                                 Washington, DC 20006
12                                               Telephone: (202) 540-7200 (main)
                                                 Telephone: (202) 540-7144 (direct)
13                                               Facsimile:  (202) 540-7201
                                                 mcoolidge@hausfeld.com
14

15                                               Katie R. Beran (pro hac vice forthcoming)
                                                 HAUSFELD LLP
16                                               325 Chestnut Street, Suite 900
                                                 Philadelphia, PA 19106
17                                               Telephone: (215) 985-3270 (main)
                                                 Telephone: (267) 702-3215 (direct)
18                                               Facsimile:  (215) 985-3271
                                                 kberan@hausfeld.com
19

20                                               Scott A. Martin (pro hac vice forthcoming)
                                                 Irving Scher (pro hac vice forthcoming)
21                                               HAUSFELD LLP
                                                 33 Whitehall Street, 14th Floor
22                                               New York, NY 10004
                                                 Telephone: (646) 357-1100 (main)
23                                               Telephone: (646) 357-1195 (direct)
                                                 Facsimile:  (212) 202-4322
24                                               smartin@hausfeld.com

25

26                                               *Co-Lead Interim Class Counsel for the Developer*
                                                 *Class and Attorneys for Plaintiff Peekya App*
27                                               *Services, Inc. v. Google LLC et. al*

28

---

OPPOSITION TO MOTION TO DISMISS DEVELOPERS'
CLAIM FOR DAMAGES – Case No. 3:20-cv-05792-JD                              7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>E-FILING ATTESTATION</u>**

I, Eamon P. Kelly, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

/s/ Eamon P. Kelly