Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

IN RE:  GOOGLE PLAY STORE          )
ANTITRUST LITIGATION               ) No. 21-2981 JD
                                   )
_____)  San Francisco, California
                                      Thursday, May 12, 2021

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**
**APPEARANCES**:

**For Plaintiff Epic Games:**
                         CRAVATH SWAINE AND MOORE LLP
                         825 Eighth Avenue
                         New York, New York 10019
                    BY:  **TIMOTHY G. CAMERON, ESQ.**


**For the Consumer Class Plaintiffs:**
                         KAPLAN FOX AND KILSHEIMER LLP
                         850 Third Avenue
                         14th Floor
                         New York, New York 10022
                    BY:  **HAE SUNG NAM, ESQ.**


                         BARTLIT BECK LLP
                         1801 Wewatta Street
                         Suite 1200
                         Denver, Colorado 80202
                    BY:  **KARMA MICAELA GIULIANELLI, ESQ.**


                         PRITZKER LEVINE LLP
                         1900 Powell Street
                         Suite 450
                         Emeryville, California 94608
                    BY:  **ELIZABETH CHERYL PRITZKER, ESQ.**


        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
            Official Reporter - US District Court
            Computerized Transcription By Eclipse

1    **APPEARANCES:   (CONTINUED)**

2    **For the Developer Class Plaintiffs:**
                        HAUSFELD LLP
3                       1700 K Street NW
                        Suite 650
4                       Washington, DC 20006
                 BY:  **MELINDA R. COOLIDGE, ESQ.**
5

6                       SPERLING & SLATER P.C.
                        55 West Monroe Street
7                       Suite 3200
                        Chicago, Illinois 60603
8                BY:  **ALBERTO RODRIGUEZ, ESQ.**

9

10   **For Defendants:**        MORGAN LEWIS & BOCKIUS LLP
                        One Market Street
11                      Spear Street Tower
                        San Francisco, California 94105
12               BY:  **BRIAN C. ROCCA, ESQ.**

13

14                      O'MELVENY & MYERS LLP
                        1999 Avenue of the Stars
15                      Eighth Floor
                        Los Angeles, California 90067
16               BY:  **DANIEL M. PETROCELLI, ESQ.**

17

18                           _   _   _

19

20

21

22

23

24

25

| 1 | **Thursday - May 12, 2021**                                    **10:27 a.m.** |

1    **Thursday - May 12, 2021**                    **10:27 a.m.**

2                        **P R O C E E D I N G S**

3                              **---000---**

4          THE CLERK:  Calling Multi District Litigation

5    21-2981, In Re Google Play Store Antitrust Litigation.

6          Counsel for the plaintiff, please state your appearance,

7    starting with Brian Rocca.

8              THE COURT:  He's not a plaintiff.

9              THE CLERK:  Oh, sorry.

10         Starting with Tim Cameron.

11             MR. CAMERON:  Good morning, Your Honor.  Tim Cameron

12    of Cravath for Epic Games.

13             THE CLERK:  Hae Sung Nam.

14             MS. NAM:  Hae Sung Nam for the consumer class

15    plaintiffs.

16             THE CLERK:  Karma Giulianelli.

17             THE COURT:  Giulianelli.

18             MS. GIULIANELLI:  Third time's a charm.  Good

19    morning, Your Honor.  Karma Giulianelli from Bartlit Beck for

20    the consumer plaintiffs.

21             THE CLERK:  Elizabeth Pritzker.

22             MS. PRITZKER:  Good morning, Your Honor.  Elizabeth

23    Pritzker on behalf of the consolidated consumer plaintiffs.

24             THE CLERK:  Counsel for the defendants, starting with

25    Brian Rocca.

 1              **MR. ROCCA:**  Good morning.  It's Brian Rocca of Morgan

 2    Lewis representing Google defendants.

 3              **THE CLERK:**  Daniel Petrocelli.

 4              **MR. PETROCELLI:**  Good morning, Your Honor.  Daniel

 5    Petrocelli representing the Google defendants.

 6              **THE CLERK:**  Melinda Coolidge.

 7              **MS. COOLIDGE:**  Good morning, Your Honor.  Melinda

 8    Coolidge from Hausfeld for the developer plaintiffs.

 9              **THE CLERK:**  Alberto --

10              **THE COURT:**  Okay.  Ms. Coolidge is on the plaintiff's

11    side.

12         Okay.  Go ahead.

13              **MR. RODRIGUEZ:**  Good morning, Your Honor.  And so am

14    I.  Alberto Rodriguez from Sperling and Slater on behalf of the

15    developer plaintiffs.

16              **THE COURT:**  Sometimes our list gets a little off, but

17    I know who you are.

18         Okay.  All set?  All right.

19         So we're going to talk among friends.  I want to tell you

20    what I'm like to do, and then I'm going to set some hopes and

21    expectations and let you execute on the details.

22         Now, I very much want to keep the April trial date of next

23    year.  I don't want to move that.  But I certainly understand

24    you need some more time, at least on the class side.  So I'm

25    fine with that.  So you all can stretch it out.

1          But looking at the case management schedule issues more
2   generally, here is what I would like to do.  I really -- first
3   of all, we're less than a year away from trial.  So we're not
4   talking about a huge amount of time.

5          I really strongly favor concluding all fact discovery
6   before we get to Rule 23 issues and, certainly, before we get
7   to dispositive motions.

8          So if there is some reason not to do that, you can all
9   discuss it and tell me, but my strong preference is for you to
10  turn off the fact discovery tap.  Have your record as it is.
11  You know, except for expert discovery, that comes later.  Okay?
12  But I -- my strong preference is for a schedule that paces as
13  sort of the first gatekeeping date end of fact discovery.
14  After that, you know, do your expert discovery.  Ideally you
15  will do class certification and dispositive motions after both
16  of those evidence building portions of the case are over.  The
17  reason I like that is because it saves anybody coming -- you
18  know, if these things are brought too early, you know, there is
19  a tail on fact discovery, for example, and then class cert or
20  even a dispositive motion is heard, you know, there is an
21  inevitable argument of about, oh, but wait.  There is something
22  new.  Let's go back and revisit it.  We don't have the time for
23  that.  It's an unnecessary expense.  So, please.

24         So that's step one.  So meet-and-confer about that, but
25  that would be my view of the optimal way to approach this.

```
1          If it doesn't work, that's fine.  You can tell me and give
2    me, you know, one or two lines of coach and explanation about
3    why that is not realistic.  I'll be, you know, open minded
4    about whatever you want to do.  You're all accomplished and
5    experienced.  So I'll take to heart whatever you tell me.
6          Now, here is the next thing.  I -- I don't want to have
7    multiple Daubert rounds.  Okay?  I want to have effectively one
8    Daubert proceeding.
9          I know you're going to have multiple witnesses.  That's
10   fine.  When I say "one proceeding," I'm not just talking about
11   one one-hour hearing.  I'd like it all to be concentrated in,
12   you know, a Daubert week or whatever.  I don't want to go
13   through two rounds of Dauberts.  It just wastes a lot of time.
14         Now, I will also tell you, and I've used this in my other
15   antitrust MDL case and in some other cases that are not MDLs.
16   I am a big proponent of the hot tub approach to experts.  Okay?
17   So you will be doing that here.
18         I can't recall whether we discussed it in detail earlier
19   or not, but the basic concept is once the reports are in, we
20   will have the experts who are working with each other on both
21   sides of the aisle, so to speak, come in and have an unmediated
22   professional discussion in the courtroom -- in this case it
23   will be on the record -- where they talk to each other without
24   having a layer of attorney advocates in between.
25         Now, you all will have a chance to ask questions later at
```

1    the end of the hot tub, although in my experience there tends

2    to be few lawyer questions after that, but there will be a

3    little bit of room for that.  But the idea is I will get the

4    benefit of experts talking to their colleagues, and it's been a

5    very fruitful and enriching process for me.

6         There will be other details that we'll work on.  For

7    example, I'd like the experts to get together again without

8    lawyers, just themselves directly, and work out a list of areas

9    where they agree and disagree.  The agree part is extremely

10   important, and the disagree part is also important.  Then they

11   are going to rank those, you know, which one is our biggest

12   disagreement, in descending order.  And then they will submit

13   that to me.  I'll choose the ones that I think are most

14   valuable for my disposition of the issues, and they will take

15   it from there.

16        So we'll fine tune all of that later.  And your input on

17   that, of course, will certainly be welcome.  But just start

18   thinking that this is going to happen and that your experts

19   will be going through that kind of a hot tub experience.

20        Now, on that issue, I am very interested in a couple of

21   just kind of grand antitrust concepts; and that is, I really

22   want to hear from the experts their views on whether the case

23   should be approached from kind of the -- I'll just call it the

24   traditional model of, you know, you define a relevant market,

25   then you calculate a market share, and then you make some

 1    extrapolations of market power from that.  You know, the tried

 2    and true method.  Or is there something that fits the tech

 3    world better.

 4         In other words, is there some other way of assessing

 5    market power that doesn't -- isn't necessarily wedded to the

 6    traditional two-step relevant market and market share.  I think

 7    this is an important topic and it is a topic that we need to

 8    address in this case.

 9         I am by no means foreclosing anything.  I'm not rejecting

10    the traditional, you know, market definition, market share

11    approach, but I want to hear more about why that fits this

12    particular industry and why is that better than any other

13    approach.  Okay?

14         So that is something I'm going to expect to hear from your

15    experts.  So please plan on having -- whatever else you're

16    doing, please plan on having that be addressed and in a way

17    that's detailed and thoughtful, of course, by your experts.

18    And I'd like to do that earlier rather than later.

19         I'll just be candid with you.  I do a lot of patent

20    litigation and for those of you who don't do it, we do this

21    very specialized hearing called claim construction, where we go

22    through and look at the claims in the patent and I interpret

23    them based on their grammar and structure.

24         But before that we have what's called a technology

25    tutorial, where the parties come in and just grapple with the

1    basic issues.  You know, what is this patent about?  What is

2    the product about?  What is the claimed invention about?

3    What's this market about?  It's quite useful.

4         So I'm not going to do a tutorial here, because this is

5    not the right situation for it.  But I do want those market

6    power issues to be addressed as part of the expert work that

7    both sides do.

8         I had thought about having just a market tutorial, but I

9    don't think we need to do that.  I think we can just jump to

10   the punchline and get to work.

11        Okay.  Any questions so far?

12        (No response.)

13             **THE COURT:**  Okay.  Now, as you think about your

14   schedule, I also want you to think about how you're going to

15   approach Rule 23.

16        Now, in antitrust cases this often becomes a de facto

17   summary judgment battleground.  So it's not atypical to have a

18   Rule 23 motion brought by -- you known, an opposition brought

19   by a defendant in saying, you know, no class can be certified

20   because there is no evidence of market power in a relevant

21   market.  All right?

22        So we're not going to have Rule 23 be a stealth summary

23   judgment motion.  All right?  I want to take these issues up in

24   the way that makes sense procedurally.  I know they are not

25   sharp lines and sometimes lines get blurred.  That's fine.  We

1   can live with that.  But I really want to avoid having all the

2   heavy guns pointed at me on all the big antitrust issues in the

3   Rule 23 context.  That's just not right.

4        Now, do those arguments have an impact?  Of course.  But

5   that is not the time for me to be defining -- you know, if

6   we're going to do the old school paradigm, that's not the time

7   for me to be saying definitively this is the relevant market.

8   This is the market share.  This is the market power.  Those are

9   the big ticket issues that should not be, I think, cabined

10  initially under the Rule 23 rubric.  So you all need to think

11  about that.

12       Remember, these are aspirational points to help the old

13  judge here get your case going.  So you all work out the

14  details on that.  All right.  So that's kind of all I had on

15  the case management side.  Is there anything, Mr. Rocca, you

16  would like to raise on that?

17       **MR. ROCCA:**  Your Honor, thank you for those thoughts.

18  We will take them to heart.

19       Do you intend to go through some of the other items, such

20  as our Motion to Dismiss?  We need a hearing date for that.  I

21  don't want to --

22       **THE COURT:**  These are all the -- this is all the

23  help.  You get a proposed scheduling order to me.  Okay?  We

24  have a lot of other things to talk about.  But, yes, I'll get

25  to that.  And these are just the macro concepts.  Anything on

1    the macro concepts?

2            **MR. ROCCA:**  Nothing at this time, Your Honor.

3            **THE COURT:**  Okay.  Plaintiffs, anything on the macro

4    consents?

5            **MR. CAMERON:**  No, Your Honor.

6            **THE COURT:**  Nobody?  Okay.  Good.

7        Okay.  Now, turning to more nuts and bolts issues.  I am

8    perfectly fine applying all of those stipulated protective

9    orders and ESI orders and your discovery orders to the MDL.

10   Just consider them adopted.  Okay?  I'm not going to do

11   anything else.  But consider all those orders that we issued --

12   that we entered at your request are adopted in the MDL.

13       And I would like to have you in in early July for the

14   Motions to Dismiss.  So just pick a date.  Maybe after the

15   July 4th holiday, sometime maybe that week.  What is that?

16   July 8th or something like that.  If that doesn't work, any

17   time in July would be fine.

18           **MR. ROCCA:**  Your Honor, July 8th would be great.

19           **THE COURT:**  Okay.  Everybody okay with July 8th?

20           **MS. COOLIDGE:**  I think we need to probably consult on

21   that on our end, on the plaintiff's side, but we're happy to

22   submit something soon.

23           **THE COURT:**  Okay.  Well, I'll tell you what.  Just

24   let me know by, how about Wednesday.  Okay?

25           **MS. COOLIDGE:**  Yes.

1          **THE COURT:**  So if July 8th is an issue, just propose

2      a concrete July date you can all live with.  But July 8th would

3      be good.  Now, the issue is, will it be live in person or will

4      it be remote?  I'm not entirely sure yet.  We have some

5      internal discussions coming up soon, which I think will shed

6      some light on it.  So just wait.  Don't rule it out, but don't

7      buy any tickets.

8          **MR. ROCCA:**  Your Honor, if this helps, we would

9      consent to a Zoom hearing on July -- if Your Honor's preference

10     is in person, of course, we will do whatever makes sense, but

11     we have no problem with a Zoom hearing.

12         **THE COURT:**  I'm fine either way, although I'm kind of

13     eager to have people come back.  But that's fine.

14         Is everybody okay?  If you just want to set it on remote

15     access now, that's fine.  Anybody have a problem otherwise?

16         **MS. GIULIANELLI:**  Your Honor, I think that for the

17     consumer and developer plaintiffs, we have a slight -- we have

18     a preference for in-person hearing, though we understand that

19     Epic would consent to a remote hearing.  So we're sort of...

20         **THE COURT:**  Okay.  I'll tell you what.  Let me see

21     how things develop, and I'll let you know.  Okay?

22         I'll also let you know -- if it looks like it's going to

23     be a short hearing, I'm not going to drag everybody out.  So

24     I'll -- I will let you know well in advance of July 8th.

25         Okay.  Let's see.  Were there any other scheduling issues?

```
 1    I think that was it.  Is that it?  Anybody?  No.  Okay.

 2        Okay.  So how about two weeks from today for the proposed

 3    scheduling order?  Good?  Okay.

 4            MR. PETROCELLI:  Your Honor, this is Mr. Petrocelli.

 5    Good morning.

 6            THE COURT:  Yes.  Good morning.

 7            MR. PETROCELLI:  Look forward to working with you and

 8    the other lawyers on this case.

 9        I would be remiss if I didn't mention to the Court that in

10    a much older case I have a jury trial scheduled on March 28th

11    that's going to last a couple of weeks, into sort of mid April.

12    And I'm wondering if the Court has any flexibility on the

13    actual trial date.

14            THE COURT:  Okay.

15            MR. PETROCELLI:  Certainly, a little bit more of a

16    breather after April would be helpful, given the conflict.

17            THE COURT:  Is that something you think is probably

18    going to go, Mr. Petrocelli?

19            MR. PETROCELLI:  I hope our summary judgment motion

20    is granted, which is being heard next week.  I can certainly

21    let the Court know.

22            THE COURT:  I'll tell you what.  You have two weeks

23    to kind of talk about the scheduling order.  Why don't you

24    factor that in.  All right?

25        Now, look, it's a lot of players, so we are going to have
```

1    to reasonably accommodate, you know, people's schedules.  So if

2    it's May rather than April, I don't have a problem with that,

3    but I don't want to go too far beyond that.

4          And, you, know, if Mr. Petrocelli hits triple sevens and

5    his summary judgment motion wins, you won't have to worry about

6    it.

7          All right?  Okay.  Just add that to your discussion list.

8                **MR. PETROCELLI:**  Thank you, Your Honor.

9                **THE COURT:**  Thank you.

10         Okay.  Now, let's turn to Docket No. 27, Epic's request

11   for everything that was ever produced in the New York state

12   case of *Callsome Solutions*.

13         So it does -- look, I don't have any problem with some of

14   that.  It's just -- it's a little much just to say:  Turn over

15   everything.

16         Here is one idea, just to kind of jump start the

17   discussion.  What if Google just ran your current search terms

18   through the Callsome database?  How about that?  And that way,

19   you know, at least it will call for whatever you agree to.  You

20   know, it will just capture whatever you've already asked for

21   from Google.  But if there happens to be something in the

22   Callsome production database, you'll get the benefit of that,

23   too.  In other words, they will just add that as another area

24   to run the search terms you've already agreed to.

25         What do you think, Mr. Cameron?

1          **MR. CAMERON:**  Good morning, Your Honor.  That may

2     well be a solution.  I think it's a relatively small collection

3     of documents.

4          We understood from the submissions that were made by

5     Callsome that they had produced roughly 4700 pages.  So we're

6     not talking about a lot of documents in any event.

7          **THE COURT:**  I think Google probably produced a lot

8     more, I'm imagining.

9          **MR. CAMERON:**  Mr. Rocca may know more than we do.

10    But my understanding from what we were able to tell publicly

11    was that it was a relatively small discrete set of documents,

12    which is why we didn't think that this was particularly

13    burdensome to produce en masse.

14         That's documents, of course, and not necessarily things

15    like deposition transcripts.

16         **THE COURT:**  Well, Mr. Rocca, what kind of volume is

17    there?  Just total, total volume.

18         **MR. ROCCA:**  Yes, Your Honor.  My understanding is

19    it's approximately 7,000 documents relating to a one-off

20    dispute of a software developer.  And -- and the allegations

21    have nothing to do with antitrust.  It was policy enforcement

22    matter.

23         And we've got such a massive pipeline of work to get done,

24    particularly in light of the schedule that Your Honor is

25    inclined to keep.  We've got thousands of search terms that's

1  yielding millions of documents, and we're just fishing around

2  in cloned discovery, which is disfavored anyway.

3      This isn't like a conspiracy case, Your Honor.  We've all

4  dealt with this before, where there is an investigation of a

5  cartel, and then there is parallel proceedings, and they are

6  saying:  Hey, we have the exact same case.

7      This is an entirely different case.  It's a one-off in the

8  State of New York, and it doesn't seem like it's an efficient

9  use of time.

10     The volume is around 7,000 documents, to answer your

11  question.

12             **THE COURT:**  Okay.  Just 7,000?

13             **MR. ROCCA:**  Yes.

14             **THE COURT:**  Okay.  Well, I'll -- how about this?  You

15  want to run the search terms or you want to produce the 7,000

16  pages, Mr. Rocca?

17             **MR. ROCCA:**  Your Honor, in light of the court's

18  lenience, how about I take that back and figure out the most

19  efficient way to deal with this.

20     We were hoping to avoid getting into cloned discovery

21  issues.  We tried to focus on substantive topics, not wholesale

22  collections from other cases.  That's discovery into discovery.

23     But if that's what plaintiffs want to do and if Your Honor

24  is leaning in that direction, we'll -- we'll figure something

25  out with respect to this set of documents.

1          **THE COURT:**  Yes.  Maybe I'm unique, but I don't find

2    the idea of producing off-the-shelf discovery already done in

3    another case to be inherently odd.

4        So, yes.  The request is granted.  But, you know, I'm okay

5    also if you just want to run the search terms through it.  That

6    might be a nice way of striking a balance.

7        So Mr. Cameron and Mr. Rocca, I'll task you two with

8    working that out.

9          **MR. CAMERON:**  Yes, Your Honor.

10       And just to be clear, in addition to whatever we decide, I

11   want to make sure that our request covers the deposition

12   transcripts in addition to documents, which is what we sought.

13         **THE COURT:**  That's fine.

14         **MR. CAMERON:**  Thank you.

15         **MR. ROCCA:**  Thank you, Your Honor.

16         **THE COURT:**  Okay.  All right.  I think that's it.

17   Anything else?  Anything coming up?  Anything you want to talk

18   about?  Anybody?

19         **MR. ROCCA:**  Your Honor, one issue.

20         **THE COURT:**  Yes.

21         **MR. ROCCA:**  Thank you, Your Honor.

22       The consumers haven't produced a single document yet.

23   There is a brewing dispute about access to the consumer

24   plaintiffs' information.  I'm flagging it.

25       We might be in need of another letter discovery brief to

1    get these issues in front of the Court.

2              **THE COURT:**  Let me ask you this.  What are you

3    waiting on to get, just sort of the categories?

4              **MR. ROCCA:**  Well, the class is defined, of course, as

5    consumers who have made purchases via Google Play.  There's

6    allegations in the Complaint about side-loading of apps from

7    the websites.

8         And we need to know at the threshold who the consumers

9    are.  We know their names.  We don't have their Google account

10   IDs.  We can't do anything until we get their Google account

11   IDs.  Plaintiffs have declined to produce to us, even subject

12   to the protective order the account IDs.

13        We've talked about -- we're trying to avoid a device

14   inspection, because the activity on the device is probative of

15   many issues in the case.  So we proposed a log approach, which

16   they rejected.

17        So we're just trying to figure out how to get more access

18   or just some access to the consumer issues here.

19        We're trying to avoid another letter brief, but it might

20   go in that direction.  I just wanted to let the Court know that

21   that may happen; and if it happens, it will probably be in the

22   next few weeks.

23              **THE COURT:**  Well, let's see if we can --

24              **MS. NAM:**  Your Honor --

25              **THE COURT:**  Oh, yes.

1          **MS. NAM:**  I'm sorry, Your Honor.

2      We sent Google a letter addressing some of these issues.

3  The Google account information grants Google access to areas

4  of, you know, the Google Cloud.  If our clients used the Google

5  Cloud, they can look in there.  It's irrelevant information.

6      Basically we suggested that we have a meet-and-confer to

7  discuss a protocol which would limit their access to certain

8  areas so that, you know, that would protect the client's

9  privacy.

10     In addition, they are asking for documents, which we have

11 agreed to produce, that cover, you know, purchases on the Play

12 store and any side-loaded apps that they have.

13     So we have -- we have agreed to produce material that they

14 would want from the Google -- from the Google accounts.  And

15 it's unclear to us what additional material they would want to

16 get from the Google account information.  We have asked to

17 meet-and-confer on that issue.

18          **THE COURT:**  Okay.  Now, Mr. Cameron, this has nothing

19 to do with Epic?  You don't have a stake in this?

20          **MR. CAMERON:**  Not at all, Your Honor.

21          **THE COURT:**  Okay.  All right.

22     Well, look.  This is a brisk schedule.  We can't have

23 really any hang-ups.  You know, plaintiffs, you all have the

24 same duties that Google has to get your discovery out.

25     So you want another week to meet-and-confer?  How much

1    time do you need for that?

2         **MS. NAM:**  I think a week is fine.  We just want to

3    cabin the information that they can look at basically.

4         **THE COURT:**  All right.  Well, I'll give you a week on

5    that.  You know, after that -- I mean, Mr. Rocca, he's got

6    deadlines to meet.  So let's make that happen.  Okay?

7         I really at some point, sooner rather than later, we're

8    going to have to talk about the sequencing of these trials as

9    well.  I don't -- we'll wait for the next time maybe, but I

10   think it might be better to start focusing on who is going to

11   go first and what the implications of that will be for the

12   downstream cases.

13        I'm not talking about preclusive, because they are

14   different parties, but there is going to be some implication to

15   the downstream cases.

16        So maybe the next time we meet -- as you go through your

17   scheduling order discussions, you do not have to decide now,

18   and don't put it in the scheduling order that you propose, but

19   start talking, you know, about how you envision -- who is going

20   to be in court on April 26th, if that's the day that we have

21   the first trial.  Okay?

22        And then, Mr. Rocca, if you don't get what you need in a

23   week, you can send me a discovery letter.  How about that?

24        **MR. ROCCA:**  Very well, Your Honor.  It sounds like

25   we'll be able to work it out.

1          **THE COURT:**  Oh, good.

2      Okay.  Anything else for today?

3          **MS. COOLIDGE:**  There is one issue, Your Honor.  It

4      was in the status report.  This is Melinda Coolidge.

5          We had understood from the last status conference that

6      Your Honor was advising Google to produce the entire submission

7      that they gave to the House Judicial Proceedings Committee.

8          After that hearing, there was a bit of confusion about

9      what exactly was ordered.  And Google has produced, I believe

10     today -- my understanding is the production that we received

11     today is a subset of the full set of documents that Google

12     produced to the House Judicial Proceedings Committee.  They've

13     taken the position that they should do a linear review of what

14     was produced and produce to us a subset of what they determine

15     is relevant here.

16         We're happy to take a look at what they have produced, but

17     we had understood your order to be different than that.  And so

18     I just wanted to raise and get your guidance here.

19         **THE COURT:**  Well, I think I did say all relevant

20     documents.  So it sounds like you're all fighting about

21     relevance again.

22         So why don't you two talk; and if there is some issue, you

23     can let me know.  Okay?  How about that?

24         **MS. COOLIDGE:**  Yes.  Thank you.

25         **THE COURT:**  Okay.  All right.  Great.

1          It's conceivable that Google answered questions that have

2     nothing to do with this case.  So, I mean, if that's the case,

3     then they shouldn't need to produce that.  But I'll leave it up

4     to you to work it out.  And if you can't, I will solve all your

5     problems.

6          Okay.  Anything else for today?

7          Now, when would you like to meet again?  I will have --

8     you know, would you like to just do it on the same day that we

9     do the Motion to Dismiss?  Is there any need to do it before?

10    I'm happy to do it before then, but that's about, you know,

11    five weeks away, which is roughly our schedule.  Is that okay?

12    How about that?

13         Okay.  We'll do a check-in on -- let's assume it's

14    July 8th until you tell me otherwise.  We'll do the motion

15    hearing and the check-in.  And given where we are, you know, I

16    will let you know ahead of time whether it will be Zoom or

17    what.  It's very possible I may rule from the bench.  So we'll

18    see.  Okay?  But I haven't really gotten to the motions yet, so

19    I'm not sure what all you've proposed.

20         Okay.  Thanks very much everyone.

21         (Proceedings adjourned.)

22

23

24

25

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, May 14, 2021