Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

```
IN RE:  GOOGLE PLAY STORE          )
ANTITRUST LITIGATION               ) No. 21-2981 JD
                                   )
_____)  San Francisco, California
                                      Thursday, July 22, 2021
```

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff Epic Games:**

                  CRAVATH SWAINE AND MOORE LLP
                  825 Eighth Avenue
                  New York, New York 10019
         BY:  **GARY BORNSTEIN, ESQ.**
              **YONATAN EVEN, ESQ.**

**For the Consumer Class Plaintiffs:**

                  KAPLAN FOX AND KILSHEIMER LLP
                  850 Third Avenue
                  14th Floor
                  New York, New York 10022
         BY:  **HAE SUNG NAM, ESQ.**


                  BARTLIT BECK LLP
                  1801 Wewatta Street
                  Suite 1200
                  Denver, Colorado 80202
         BY:  **KARMA MICAELA GIULIANELLI, ESQ.**


                  PRITZKER LEVINE LLP
                  1900 Powell Street
                  Suite 450
                  Emeryville, California 94608
         BY:  **ELIZABETH CHERYL PRITZKER, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*   **Debra L. Pas, CSR 11916, CRR, RMR, RPR**
        *Official Reporter - US District Court*
        *Computerized Transcription By Eclipse*

1    **APPEARANCES:   (CONTINUED)**

2    **For the Developer Class Plaintiffs:**
                              HAUSFELD LLP
3                             1700 K Street NW
                              Suite 650
4                             Washington, DC 20006
                    BY:  **MELINDA R. COOLIDGE, ESQ.**

5

6                             HAGENS BERMAN SOBOL SHAPIRO
                              1301 2nd Ave
7                             No. 2000
                              Seattle, Washington 98101
8                   BY:  **TED WOJCIK, ESQ.**

9

10   **For State and Commonwealth Plaintiffs:**
                              CALIFORNIA DEPARTMENT OF JUSTICE
11                            Office of the Attorney General
                              455 Golden Gate Avenue
12                            Suite 11000
                              San Francisco, California 94102
13                  BY:  **PAULA L. BLIZZARD, ESQ.**

14

15
     **For Defendants:**        MORGAN LEWIS & BOCKIUS LLP
16                            One Market Street
                              Spear Street Tower
17                            San Francisco, California 94105
                    BY:  **BRIAN C. ROCCA, ESQ.**

18

19                            O'MELVENY & MYERS LLP
                              1999 Avenue of the Stars
20                            Eighth Floor
                              Los Angeles, California 90067
21                  BY:  **DANIEL M. PETROCELLI, ESQ.**

22                            -   -   -

23

24

25

| | |
|---|---|
1 | **Thursday - July 21, 2021**                                    **10:03 a.m.**

2                              **P R O C E E D I N G S**

3                                  **---oOo---**

4              **THE CLERK:**  Calling Multi District Litigation No.

5     21-2981 In Re Google Play Antitrust Litigation.

6          Counsel for the plaintiffs please, state your appearance.

7              **MR. BORNSTEIN:**  Good morning, Your Honor.  This is

8     Gary Bornstein from Cravath for plaintiff Epic Games.

9              **MR. EVEN:**  Good morning, Your Honor.  Yonatan Even

10    from Cravath for Epic Games.

11             **MS. GIULIANELLI:**  Good morning.  It's Karma

12    Giulianelli from Bartlit Beck for the consumer class.

13             **MS. NAM:**  Hae Sung Nam from Kaplan Fox for the

14    consumer class.

15             **MS. PRITZKER:**  And Elizabeth Pritzker from Pritzker

16    Levine on behalf of the plaintiff consumer class.

17             **MS. COOLIDGE:**  Good morning.  This is Melinda

18    Coolidge from Hausfeld for the developer class.

19             **MR. WOJCIK:**  Good morning.  This is Ted Wojcik from

20    Hagens Berman for the developer class.

21             **THE CLERK:**  Counsel for the defendants.

22             **MR. ROCCA:**  Good morning.  It's Brian Rocca of Morgan

23    Lewis representing the Google defendants.

24             **MR. PETROCELLI:**  Good morning, Your Honor.  Daniel

25    Petrocelli from O'Melveny and Myers representing the Google

1    defendants.

2          **THE COURT:**  Okay.  Well, I was actually hoping our

3    State and Commonwealth new arrivals would be here.  Anybody

4    talk to them about joining us?

5          **THE CLERK:**  Somebody is raising their hand.  I'm

6    assuming that's them.  I'll move them over.

7          **THE COURT:**  That would be great.  They are fully

8    consolidated, so time to have them in.

9       (Brief pause.)

10          **THE CLERK:**  Ms. Blizzard, you want to turn your

11   camera on and state your appearance for the record.

12          **MS. BLIZZARD:**  Good morning, Your Honor.  This is

13   Paula Blizzard from the California Attorney General's Office.

14      I don't believe we were aware that they were supposed to

15   appear today, but I was listening, so I quickly grabbed a

16   jacket and here I am.

17          **THE COURT:**  Okay.  Well, that's fine for the moment.

18   I had -- I had assumed that once the consolidation order was

19   posted, everybody would be here, but that's fine.

20      So a lot of what I was going to say today was going to be

21   directed to our new arrivals, but I'm going to let you all

22   shepherd the message to them so that we can keep on track.

23      So I want to make sure as you get together and finish that

24   scheduling order that you say is going to come out next

25   Thursday, you address a couple of things that I'm particularly

```
1    interested in.  I want to know your thoughts.  You all are
2    running the case so far and are closer to it than I am.
3         Here are the things I want to make sure that we cover.  So
4    now with the arrival of the States and Commonwealths, we're
5    taking on a different form obviously.  It's going to have some
6    impacts on things.
7         One thing I do want to do is let's just set a regular
8    date.  You know, something like the third Thursday of every
9    month, whatever Thursday you want, but just pick a Thursday
10   each month.  That will be your status conference date.
11        Now, as we've done so far, you can cancel.  If everybody
12   wants to cancel, that's perfectly fine with me.
13        You can also attend by proxies.  Okay?  We don't need to
14   have, you know, a Roman legion showing up for every status
15   conference.  You can delegate your decision-making powers to a
16   representative.  You know, a core set people can come in.
17        So no party should feel obligated to attend each one as
18   long as you're going to entrust your vote to somebody.
19        My only requirement is that whoever shows up, has to have
20   decision-making powers that are binding because if we make some
21   decisions, I don't want to hear:  Oh, I have to go back and
22   check with the group.  That sort of defeats the whole purpose
23   of the Thursday check-in.  So make sure you hold an actual
24   proxy from whoever you're going to appear on behalf.
25        I actually would encourage smaller groups.  There is no
```

 1   need to spend an enormous amount of money on every status

 2   conference since we're going to be having them so regularly,

 3   but I leave that all up to you.  But just propose a Thursday.

 4   Pick one, and we'll make that our day.

 5        Please make sure in the scheduling order that you start to

 6   detail what we're going to do for experts.  As you know, I will

 7   hold hot tub proceedings.  I favor those.  They have been very

 8   effective in my other MDLs.  So start working out some, you

 9   know, at least high levels proposals on how we're going to do

10   that and when we might do that.

11        And then for summary judgment, I think we've discussed

12   this before.

13        This is really for the benefit of the States and the

14   Commonwealths that are arriving, but let me repeat it for

15   everybody.  It has its place and its time.  You know that.  I

16   know that.  It's provided for in the Federal Rules, but it has

17   to be used wisely.

18        Please see my *FTC v D-Link* decision.  It will give you my

19   general position on summary judgment.  I'm not at all ruling it

20   out.  I'm not saying it's impossible in this case.  But you,

21   know if, I get 70 pages of summary judgment briefing backed up

22   by a thousand exhibits, the odds are you're going to get a very

23   short denial based on the presence of genuine disputes of

24   material facts.  So keep that in mind as you approach summary

25   judgment.

1        I don't know how you're going to build this into the
2   schedule, but I'll leave that up to you to work out.
3        Now, here is the big issue in my view, and that is the
4   trial date.  I would like to keep what we have on calendar.
5   Now, that may not be realistic.  I don't know.  I'm going to
6   leave it up to you to tell me after you all have a chance to
7   talk about it.
8        I am also getting concerned about how we're going to do
9   the trials, and so I actually want to work out our concept, at
10  least at a high level.  More than a high level.  At least at a
11  fairly detailed level by September.  I want to know, you know,
12  where the train is going.  Okay?  So we're going to work this
13  out.
14       Right now I think there is a presumption that we're going
15  to have different trials for different plaintiff's groups.  I'm
16  not sure that makes a lot of sense.
17       Here is my idea.  I think we can have maybe two trials at
18  the most, and we can accomplish that by bifurcating the
19  liability trial from the damages trial.
20       I'm just talking out loud here.  So you all react to this
21  and tell me why it's wrong or what you want to do, but here is
22  my sense.
23       The liability phase, it looks to me that the plaintiffs
24  are more or less all on the same page.  Okay?  I mean, there
25  are broad liability themes that are common to all the

1   Complaints that I have seen so far.

2        Now, I haven't seen the new ones, but I'm assuming they

3   are not going to be terribly different from what I have seen so

4   far.

5        So if that's true, we can, you know, make life easy for 6

6   to 12 hard-working citizens of this district who are going to

7   be your jurors by having one liability trial.  And then

8   depending on how that goes, we might have separate damages

9   trials.

10        You know, damages, you're all diverging a little bit.

11   There are different remedies, different amounts, different

12   injuries.  So that -- that may be something that would require,

13   you know, more than -- at least one, but maybe more than one

14   post-liability trial.

15        Now, I normally don't do this.  In fact, I actively don't

16   bifurcate.  But in this case I think it might make sense.

17        What I want to avoid -- and I want you to give me your

18   guidance on this.  I want to avoid trying the same liability

19   question more than once.  Okay?  That's just not -- that's not

20   feasible.  It doesn't make any sense from a resource

21   perspective, and it invites chaos.

22        So the main goal that I'm looking for is one trial on

23   every liability issue.  So if you can all work that out or give

24   me some guidance on how that might happen, I think that would

25   be great.

1          Damages I'm most concerned about.  If we have to do

2     multiple proceedings or something afterwards, I think we can

3     work that out.

4          But you also need to give me your guidance on timing, too.

5     I don't want anyone to feel jammed, but, you know, I don't want

6     this to go on forever.  So, and I know you don't either, and I

7     know your clients don't either.  So work something out with

8     respect to that.

9          Okay.  Any questions so far, or any thoughts so far?

10         (No response.)

11              **THE COURT:**  All right.  Now --

12         **MS. BLIZZARD:**  Your Honor?  If I may, Your Honor.

13              **THE COURT:**  Yes.

14         **MS. BLIZZARD:**  Good morning.  Now that I'm a little

15    more organized, let me say on behalf of the States that we are

16    delighted to be here, delighted to be before you --

17              **THE COURT:**  Well, I was going to welcome everyone to

18    the Northern District, but I'll do it through you.  Happy to

19    have all of our State and Commonwealth entities in.

20         **MS. BLIZZARD:**  Absolutely.  I will convey that back

21    to them.

22         And I will also mention that we are ready to hit the

23    ground running.  We intend to get on the same schedule as

24    everyone else.  We are not intending to slow things down in any

25    way.  And we will begin working with our co-plaintiffs, and

 1   even with Google --

 2            **THE COURT:**  Not even.  You have to work with Google,

 3   too.

 4            **MS. BLIZZARD:**  Absolutely.  Absolutely.  So, and we

 5   ourselves have also been exploring, thinking about each --

 6   bifurcation.

 7        So I think that we are going to come in seamlessly and,

 8   hopefully, contribute and not slow things down that.  That's

 9   certainly our intention.

10            **THE COURT:**  That is music to the judge's ears.  Let's

11   hope you can keep playing that song, but we'll see.

12        Now, but really, let's start -- we have to get the trial

13   locked down.  So by September I want to have a firm trial plan

14   in place.

15        And the other thing is I think -- you know, almost all of

16   you are original filers in this district, so there is no

17   transfer or transferee issue.  I think there are a couple of

18   cases that may have been transferred in.

19        I do want to get lexicon waivers or some response about

20   lexicon waivers from the people who transferred in.  So, I

21   can't remember where they are.  I think they are probably on

22   the consumer developer side.  But you all who are lead counsel

23   in that need to talk with those people about -- about getting

24   those waivers.

25        Okay.  That is really all that I wanted to cover -- oh,

 1   one other thing.  I'm sorry.  This is a big issue.

 2        I was concerned to see -- I'm not blaming anybody, because

 3   I know this happens not necessarily because the filing entity

 4   wants to do this, but I was concerned to see redacted

 5   Complaints.

 6        Now, I have written on many occasions about our sealing of

 7   administrative -- you know, administrative motions to seal

 8   records, typically in the Motion to Dismiss or summary judgment

 9   context.

10        I, like most federal judges, take a very dim view of

11   hiding case facts from the public.  I don't like it.  It's not

12   right.  The public has a right of access to each and every

13   everything that happens in their public courtrooms, which is

14   us.

15        So I'm particularly sensitive to the idea that anything in

16   the Complaint, the foundational document for each lawsuit,

17   would ever be filed.

18        So I need to see good administrative motions from whoever

19   is seeking to file those portions of the Complaint as to why

20   they should be hidden from public view.  And you need to fit

21   yourself into our current prevailing standards on sealing in

22   the Ninth Circuit.

23        Now, I don't think I've seen an administrative motion to

24   file the State complaint.  I got a redacted version, but you

25   need to bring a motion for that.  You need to file an

 1   unredacted version as well under seal so I can see what's

 2   actually going on.

 3       And I think maybe the developers, the consumers or someone

 4   else is in the same position.

 5       I believe Epic did the right thing.  They filed the

 6   redacted Complaint and then in an administrative motion they

 7   attached the unredacted.

 8       Now, look.  If it's not your burden -- and I'm assuming

 9   you all on the plaintiff's sides are doing this because you

10   feel compelled to.

11       Google, you need to carry the ball.  All right?  The

12   plaintiffs aren't -- you need to file a statement telling me

13   why -- how it could ever be reasonable to seal a portion of the

14   Complaint.  Okay?

15       So here is what you may want to do.  You may just want to

16   wait until all the Complaints are in, which I think is like now

17   or soon, and then you can just file an omnibus statement.

18   Okay?

19       And maybe along the way you can take a hard look at what's

20   been sealed and make some independent decisions that cut it

21   down or maybe eliminate it entirely.  I leave it up to you.

22       But how about -- so am I right, Mr. Rocca?  Are all the

23   Complaints in now.

24           **MR. ROCCA:**  Yes, Your Honor.  Thank you for raising

25   these issues.  They came in last night.

1           And this was on my mind in particular because I'm

2    cognizant of local Rule, I think, 79-5, that gives, in this

3    case Google, four calendar days, two of which fall on the

4    weekend, to provide the Court with the information you're

5    identifying.

6           So if we could just adjust that by a few extra days so we

7    can think through these issues and present an omnibus paper,

8    that would be most appreciated and most efficient.

9           **THE COURT:**  I think that's fine.  Take two weeks.  I

10   want you to talk with your colleague and see what you can work

11   out.

12          I am telegraphing where I'm coming from.  I don't like it,

13   and it's not consistent with the public's right to access,

14   particularly in a case with this type of public interest and

15   profile.

16          So there may be something that is so sensitive that it

17   warrants being kept out of the public eye, but you're going to

18   have to show that to me in a fashion that meets our prevailing

19   rules.

20          Now, I will tell you, I'm on our Court's Local Rules

21   Committee, and we are contemplating a revision of Rule -- the

22   sealing rule -- 79-5.  That hasn't happened yet.  It's not

23   going to impact anything you're doing, but it will make life

24   easier if the rule gets adopted in the form that we're

25   currently discussing.  And who knows, there are many steps

1   between now and then.  It will make life a lot easier.

2   But in the meantime, you know, just take a look at

3   *Kamakana*, I think the name of the case is, and *Center For Auto*

4   *Safety*.

5   And by the way, those are harmonious cases.  You will see

6   some judges have concluded that -- if I'm getting the case

7   names right -- *Center For Auto Safety* in some way overruled or

8   displaced the prior case.  It did not.  It's a three judge

9   panel in each thing.  They don't have the authority to overrule

10  each other.  It is -- and, in fact, *Center For Auto Safety* is

11  built on precedent.

12  So don't take the view, because I reject it, that those

13  cases are in any way a break with each other.  I consider them

14  to be a -- part of a continuous and harmonious approach to

15  sealing.

16  But the main event is telling me why it should be sealed

17  at all, and that's going to be on Google.  So take your time.

18  Two weeks.  If that's not, just enough let me know.  Talk with

19  your friends here on the other side and see what you can work

20  out.

21  Just tee up for me the things that you really -- you know,

22  that you cannot live with for whatever reason being in the

23  public domain, and I will take it from there.  Okay?

24          **MR. ROCCA:**  Very well, Your Honor.  Thank you.

25          **THE COURT:**  Okay.  Well, that's basically all I

1    wanted to do today.

2           **MR. BORNSTEIN:**  Your Honor, may I raise one comment

3    briefly in response to your comments?

4           **THE COURT:**  Yes.

5           **MR. BORNSTEIN:**  Gary Bornstein on behalf of Epic,

6    Your Honor.

7        In the scheduling discussion Your Honor referred to 6 to

8    12 hard-working citizens of the district.  And at least

9    speaking for Epic, we do not have a jury demand in our

10   Complaint, and we are not seeking damages.

11       I'm not asking for a ruling from the Court, and this is a

12   subject that we need to discuss with Google and with the other

13   parties.

14       I just wanted to make sure it was on Your Honor's radar

15   that at least from our perspective, this was not necessarily

16   going to be a case that got tried to a jury rather than being

17   tried to Your Honor.

18       The parties will discuss and hopefully agree on a process,

19   but I just wanted to make sure it was something that the Court

20   was aware of.  And we'll be back to Your Honor on this,

21   hopefully, with agreement of some sort.

22          **THE COURT:**  All right.  Well, thank you for

23   mentioning that.

24       Look, in our constitutional system the jury is the default

25   mechanism for dispute resolution.  So I really would like you

to think about that.

And I have -- I'll tell you, as every other federal judge, every federal trial judge I know will tell you, juries do a fantastic job, and you can count on them.  There is no case that is too hard for them.  There is no case that they cannot get, as long as the advocates tee it up the right way.  And if you do that, I guarantee you you will get a product that you will be proud of.  Win or lose, you will be proud of the system that produced it.

So I am strongly in favor of taking advantage of our Seventh Amendment common law jury trial system to resolve your dispute.  So please keep that in mind.  Okay?

It will also relieve a lot of scheduling headaches because I do not know how we're going to do a bench trial and a jury trial on the same issues.

In fact, to be honest, just thinking off the top of my head, no matter what happens, I think the jury portion would be tried first.

And so if you want to wait, you know, you can do that. You'll be back at the end of the line, but you're going to miss a lot of fun in the courtroom when that happens.

So, please, think it over.  And, you know, we really, I think, should be honoring our jury system in a way we approach a case of this magnitude.  That's my view.

Now, your hands are not tied.  So if you want to do

 1   something else, I'll take it into account, but that's sort of

 2   my perspective.

 3             **MR. BORNSTEIN:**  Understood, Your Honor.  Thank you.

 4   We will discuss with our client and with the other parties.

 5             **MR. ROCCA:**  Your Honor, if I may?

 6             **THE COURT:**  Yeah.

 7             **MR. ROCCA:**  Thank you, Your Honor.  Brian Rocca for

 8   Google.

 9        A minor procedural wrinkle that's triggered by the

10   amendment of the Complaints which we received late last night.

11   There is a little bit of ambiguity between Rules 12 and 15 of

12   the Federal Rules of Civil Procedure.  Some Courts have held

13   that when it comes to an Amended Complaint, a Motion to Dismiss

14   doesn't satisfy the obligation to respond.

15        So can you just clarify that other than the Motion to

16   Dismiss, that Google will await further order of the Court --

17             **THE COURT:**  Yes.

18        **MR. ROCCA:**  Very well.

19             **THE COURT:**  I understand what you're saying.  Please

20   let's get through the motions and then whatever happens after

21   that.

22        Don't file an answer.  Okay?  You don't have to answer

23   anything until we talk more about it.  Okay?

24             **MR. ROCCA:**  Very well.  Thank you, Your Honor.

25             **THE COURT:**  I mean, look.  I haven't read the motions

 1  obviously.  You haven't filed them.  But no matter what

 2  happens, there will be leave to amend.

 3      So, you know, unless something terribly unusual is

 4  presented by your motions, there will be at least one more

 5  round of amendment.  So you may not answer for awhile.  So

 6  don't -- don't worry about it.

 7              MR. ROCCA:  Understood, Your Honor.

 8              THE COURT:  That's for all the Complaints, for

 9  everybody.  Okay?

10      Oh, by the way, so -- well, I was -- I was going to

11  suggest maybe -- how are we going to coordinate -- so are you

12  all on the same timeline now for the Motions to Dismiss?  Is it

13  all just going to be one day, or this is going to be --

14              MR. ROCCA:  Your Honor, I can briefly address that.

15      We had presented to the Court --

16              THE COURT:  Yes, your scheduling statement; right?

17              MR. ROCCA:  Yes, it's a scheduling statement.  We

18  have worked out dates that make sense.

19      The States, I think, are generally aware.  They weren't

20  related yet, so the States, hopefully, will be participating in

21  that schedule.

22      The only thing we haven't worked out, because we just

23  received the Amended Complaints last night and we were only

24  served with the State Complaint very recently, is the

25  pagination issue.

1        We're mindful of the Court's prior guidance of omnibus

2   papers and then separate shorter briefs on discrete issues that

3   may relate to a particular defendant -- I'm sorry, a particular

4   plaintiff.  So I think that's the plan.

5        We will maybe revert back to you in a couple of weeks with

6   a pagination proposal, but generally speaking we understand

7   your preference is for coordinated briefing and a single

8   hearing date, which we've proposed.

9             **THE COURT:**  Yeah.  No.  I think that's absolutely

10  right.

11       And, Ms. Blizzard, it's not until October, so I imagine it

12  won't be too much of a problem.  But if there is any issue,

13  talk with -- talk with, you know, everybody here so far.

14       All right.  If you need to change this, I mean, you have

15  til next week, so you can fiddle with the schedule if you need

16  to.

17            **MS. BLIZZARD:**  Yes, Your Honor.  We're generally

18  ready to accept the schedule proposed by the plaintiffs.  No

19  problem with that.

20            **THE COURT:**  Okay.  And just to catch everybody up on

21  the States side, I'm sure you will hear or you already have

22  heard from your colleagues, it's sort of a one-and-done

23  briefing as much as we can possibly do.  Okay?

24       And I'm perfectly fine, Mr. Rocca, with some additional

25  pages as long as they are reasonable.

1          Look, it's a Motion to Dismiss.  It has its merits, but

2   they are few and far between.  So be wise about what you do.

3   It's a rare day that a Motion to Dismiss drives a stake through

4   the heart of a case.  I'm not saying it's impossible, but, you

5   know, just -- to me, you know, the end game here is probably

6   going to be trial.

7          So, you know, you and your client invest your resources as

8   you wish, but -- and certainly if there are legal arguments

9   that require some amendment, that that will happen and I'll

10  take that into account.  But let's not get too hung up.

11         I mean, it's also October.  I mean, if we're going to have

12  Motion to Dismiss proceedings and maybe amendments in November

13  and December.  I mean, an April trial seems probably

14  unrealistic.  So keep all that in mind.

15         Okay.  Anything else from anybody?

16         **MR. EVEN:**  Yes, Your Honor.  If I may, one other

17  thing.  Yonatan Even for Epic.

18         **THE COURT:**  Oh, yes.  Yeah.

19         **MR. EVEN:**  We wanted to raise what we think is a

20  relatively minor issue, which is the number of designated house

21  counsel who are allowed to see documents that are designated

22  highly confidential.  We have very early in the case agreed to

23  two designated house counsel for each.

24         We have now lived through the case for some time, and we

25  know that it's only going to accelerate from here on.  And we

1  find that number to be too low for our client, and we would

2  like to add one more so that there will be three.

3       I think the recent process of the amendment is a good

4  example of that.  We have, I think, 27 documents that we have

5  added in the Amended Complaint, the same documents that are

6  subject to the sealing motions that Your Honor just referenced.

7  Nineteen of those are designated highly confidential.

8       It may well be that they are properly so designated, but

9  it's really hard to have only two in-house people during July

10 working on a big amendment to a Complaint to a strategic case

11 like this.

12      And we are facing hundreds of thousands of documents that

13 are so designated.  It may well be the designation is

14 warranted, but we think we need one more lawyer.

15      We've approached Google about that.  We could not reach

16 agreement, and so I wanted to raise that issue with the Court,

17 if possible.

18           **THE COURT:**  Okay.  Let me ask you a question.  Did

19 Epic designate some -- are you redacting portions of your own

20 Complaint for Epic documents?

21           **MR. EVEN:**  No.  We have not redacted anything.  But

22 the sealing has nothing to do with it.

23      Of course, in our production of over 2 million documents,

24 we have also designated some documents.

25      And, of course, whatever Your Honor decides, we're fine

1   with it being reciprocal, so there are three at Google as well.

2           **THE COURT:**  This is just a Google/Epic issue; right?

3   Nobody else has in-house counsel; is that right?

4           **MR. EVEN:**  I believe that's right.

5           **THE COURT:**  One more is too much, Mr. Rocca?

6           **MR. ROCCA:**  Yes, Your Honor.  This was laboriously

7   negotiated.  We only wanted one.  They wanted two.  We

8   compromised.  They now have two.  Now we're increasing to

9   three.

10       These are highly sensitive documents, not just because

11  Epic is purporting to be a competitor of Google, but Google has

12  documents of Epic's competitors in the video game industry,

13  which is very competitive and very dynamic.

14       So it's not like -- there has been a compromise.  The

15  Court entered an order, and now they want to change it.  And we

16  don't see why having two in-house lawyers is improper.

17       The model protective order for the district contemplates

18  this very thing.  And we gave them an extra one, and now they

19  want a third, and we just think -- we've negotiated it.  It's

20  water under the bridge.  The order should stay as is.

21          **THE COURT:**  Are you, on the Google side, okay with

22  just two?  I mean, it's --

23          **MR. ROCCA:**  Yeah, we are.

24          **THE COURT:**  It's a mountain of redaction motions, as

25  Mr. Even is suggesting.  You're okay with two?

1           **MR. ROCCA:**  We're okay with two.  That's why we

2    landed in that spot.  We wanted one, but we gave them two,

3    which is fine.  But now we just think three is unnecessary at

4    this time.

5           **THE COURT:**  Okay.  Well, Mr. Even --

6           **MR. EVEN:**  If I may, Your Honor.

7        So the history is that we actually wanted four, and they

8    wanted one, and we landed at two at the time because we thought

9    we could live with it.  We had four in the Apple trial that we

10   just have gone through.

11       The number of documents is what it is.  And a lot of them

12   Google has designated as highly confidential.  As Your Honor

13   has said, it's a mountain of documents.

14       Yes, we are hopeful we could do it with two.  Time has

15   passed.  We see that that's very, very --

16          **THE COURT:**  How are you going to address the

17   competitive issues that Mr. Rocca just discussed?

18          **MR. EVEN:**  So actually the P.O. in this case goes

19   very far in addressing them.

20       If, Your Honor, goes back to 7.3(b) of the protective

21   order, it has -- we need to tell Google in advance who that

22   person would be.  We need to commit that they are not engaged

23   in any competitive decision-making or competitive processes.

24       They can't even -- we can't even send them the documents

25   over email.  We can only FTP.  They have to destroy them after

1   14 days, otherwise we can only share them over Zoom or

2   something where they cannot retain a copy.

3        It's a very, very elaborate set of protections.  More

4   elaborate, frankly, than I have seen in most other cases.

5        The default rule actually in the district is that there is

6   no limitation on the number of designated house counsel.  Then

7   there is a footnote that says that you may decide to so limit

8   in appropriate cases.

9        We agree that this is an appropriate case to so limit.  We

10  started out --

11           THE COURT:  And I -- I didn't read the protective

12  order that recently, but can Google veto the nominee?

13           MR. EVEN:  Yes, they can.  There is a process.  They

14  have 14 days to vet the nominee, and then not veto, but

15  approach the Court and explain why it is that they think that

16  that nominee is improper.

17           THE COURT:  All right.  So in other words, I would

18  decide a dispute if you have one.

19           MR. EVEN:  Yes.  Although we didn't have one so far,

20  and I doubt we would.

21           THE COURT:  Well, Mr. Rocca, I -- if we're going to

22  try to keep this on an April calendar, I think the pace is

23  going to warrant -- if they need additional resources at Epic,

24  I can't really think of a good reason why not, particularly

25  with all those safeguards.

1      Is there something I'm missing?

2          MR. ROCCA:  It's just the nature of the industry,

3   where Epic's legal team in-house will have access to hundreds

4   of thousands of documents of third-party -- not just of Google,

5   but of third parties who compete with Epic.

6      And, you know, we -- we negotiated a limit.  It seems to

7   be -- this is not an outside counsel *attorneys' eyes only*

8   designation.  This is *attorneys' eyes* and then the two that

9   they've identified.

10      If they want to swap in somebody -- if, for example, they

11   don't like the second person or the person has left the

12   company, then swap somebody in.  Fine.  But we just think it

13   makes sense to stick with the order that we negotiated over

14   many, many weeks.

15          THE COURT:  Just out of curiosity.  What happens --

16   I'll ask both of you.  What happens if one of these in-house

17   people just quits and goes to another game company?  How do

18   you --

19          MR. EVEN:  There is language about that in the

20   protective order as well, Your Honor.  That there is no current

21   intent to do that.

22      And obviously a lawyer has -- the in-house lawyer would

23   have their own obligations, if that intent arises, to obviously

24   alert.

25      And then we would have to work through that, presumably

 1    find a replacement within Epic, and then put whatever walls

 2    need to be placed on that --

 3              THE COURT:  I ask only because as you add people, the

 4    odds that somebody is going to leave goes up.  I mean, it's

 5    just the nature of the business.

 6              MR. EVEN:  I understand, Your Honor.

 7         And one other comment about that is that I hear what

 8    Mr. Rocca is saying, but the truth of the matter is we're not

 9    talking about a handful of documents; right?

10         The documents in the Complaint, as I said, over two-thirds

11    were designated highly confidential.  They are not third-party

12    documents.  They are Google documents by and large.

13         Third parties who did think that they have some crown

14    jewel document obviously get notice, and they were perfectly

15    capable and have come sometimes to this -- to us and said we

16    need a separate agreement that this particular document stays

17    only in outside counsel.  And when that was reasonable, we've

18    agreed to that.  I don't think a single dispute around that has

19    arisen to Your Honor so far.  I don't expect it will in the

20    future.

21         But we're not talking about -- you know, if this was 15

22    documents, obviously that's doable.  We're talking about

23    hundreds of thousands of documents, literally.

24         I don't think either party wants to challenge the other's

25    designations right now or thinks that there is anything

1    necessarily improper with that.

2        It's just there are some documents and we need to deal

3    with a strategic litigation on an ongoing basis on a relatively

4    fast pace.

5        **THE COURT:**  Well, here is what I would like to do.

6    You and Mr. Rocca are going to have one more or two more

7    conversations about this.  If you want work it out, say a week

8    from now, you just file a short joint statement saying, you

9    know, here is our dispute.

10        I would like, Mr. Even, some metrics from you about the

11    number of documents.

12        I also now -- you know, I'm not going to wade into your

13    employer/employee relationships, but before you started adding

14    people, I would also like some indication that the two people

15    you have now just can't do it.

16        I mean, if they are doing this only quarter time each and

17    spending the rest of their day on other business, I think you

18    need to exhaust their time first before you add a third person.

19    If there is some reason you can't do that because of the way

20    the business works, you need to tell me that.

21        But what I would like to hear is both the volume of the

22    documents and why the two people you have now don't have enough

23    hours in a week to handle it.

24        I mean, this is -- this is also somewhat sporadic.  I

25    mean, this is not an all-day everyday thing for, you know,

1   week in, week out *ad infinitum.*

2        I just want a better explanation about why two people

3   working a normal work week, which I imagine at Epic is 50 to 60

4   hours, cannot do that.  Okay?

5        If show me that, and you and Mr. Rocca can't make an

6   agreement, I'll see what I can do.

7        You work at everything well.  I just -- I'm a little

8   cautious about expanding the number of people because these

9   jobs turn over and, you know, people change their minds and

10  move on.  Then before you know it, the whole thing is a little

11  porous.

12       So that's where I'm coming from.  Okay?

13              **MR. EVEN:**  Understood, Your Honor.

14              **THE COURT:**  All right.  Good.

15              **MR. ROCCA:**  Your Honor, final just a scheduling note,

16  if I may.

17       The Court provided some guidance on trial issues and other

18  scheduling items.  We now have to meet-and-confer with all the

19  parties, including the States.  We had promised, I think, a

20  filing July 29th or thereabouts.

21              **THE COURT:**  Yes.

22              **MR. ROCCA:**  I'm wondering whether we should build in

23  just a few more days in light of the meaty issues that you

24  raised.  I'm not sure we're going to be able to --

25              **THE COURT:**  How about -- I hesitate to ask because

1    it's never in my interest.

2         Are people leaving for the month of August?  Is this,

3    like, a vacation thing?  I'm not.  We'll be here.  Don't feel

4    pressured by that, but your Court will be here.

5         Yes, go ahead.

6              **MS. BLIZZARD:**  Your Honor, I will be gone, but I have

7    36 fellow State Attorneys General.

8              **THE COURT:**  You're covered.

9              **MS. BLIZZARD:**  We will support this.

10             **THE COURT:**  Thirty-six?  I thought it was 34.

11             **MS. BLIZZARD:**  If I admit that I lost count, is that

12   a bad thing?

13             **MR. EVEN:**  Thirty-seven, Your Honor.

14             **THE COURT:**  It's 37.

15             **MR. EVEN:**  Thirty-six States and D.C. I believe.

16             **THE COURT:**  All right.  Well, Ms. Blizzard is

17   covered.

18        All right.  How about -- you want two more weeks?  You

19   want to do August 13th, something like that?  Does that sound

20   better?

21        I really would like you to put some effort into it.  So

22   how about -- anybody have a problem with August 13th?

23             **MS. GIULIANELLI:**  None, Your Honor.

24             **MR. EVEN:**  Not here.

25             **MR. ROCCA:**  Thank you, Your Honor.

1          **THE COURT:**  Of course.  Yeah.  Okay.  Last call for

2     today.  Anything else?

3          (No response.)

4          **THE COURT:**  Good.  Okay.  All right.  Thanks very

5     much everyone.  Looking forward to your filings.

6          (Proceedings adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, July 23, 2021