Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | Case No. 3:20-cv-05671-JD |
| EPIC GAMES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC et al.,<br><br>Defendants. | **EPIC GAMES, INC.'S OPPOSITION TO GOOGLE DEFENDANTS' REQUEST TO SEAL FIRST AMENDED COMPLAINT** |

1    Defendants' ("Google") sealing Motion fails to follow the Court's instruction that

2    Google "take a hard look at what's been sealed and make some independent decisions that cut

3    it down or maybe eliminate it entirely". (Tr. (7/22/2021) 12:19-21.) Rather than respecting the

4    public's "right of access to each and every []thing that happens in their public courtrooms" (*id.*

5    11:12-14), Google appears to be using redactions to protect itself from public disclosure of

6    internal Google documents that are the basis of Epic's claims—not, as Google asserts, to

7    protect "trade secrets". Google seeks to redact all or portions of approximately 283 lines of

8    Epic's First Amended Complaint ("FAC"), including both high level allegations and many

9    facts and quotes detailing the conduct that Google uses to monopolize Android app distribution.

10    Google fails to "present 'articulable facts' identifying the interests favoring continued

11    secrecy", as it must do to seal dispositive materials such as a complaint. *Kamakana v. City &*

12    *Cnty. of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006). Rather, Google's Motion contains just

13    over a page of reasoning, and its accompanying Declaration makes only the same repeated

14    conclusory, boilerplate assertions about the purported need to seal portions of Epic's FAC.

15    Moreover, the Declaration is made not by any Google business person, but by a member of

16    Google's legal department who does not claim any personal involvement in Google's corporate

17    strategy or business relationships—in other words, someone with no personal knowledge of

18    how public disclosure of the contents of the documents would impact Google's business.

19    Google claims the redacted language "reveal[s] confidential business strategies" (an assertion

20    Google repeats 82 times in total, and 22 times with respect to Epic's FAC alone), the disclosure

21    of which could be used "to disadvantage Google in marketing and in negotiations" (an assertion

22    Google repeats nearly 150 times in total, and in support of every single redaction it proposes

23    for Epic's FAC). But it provides no actual explanation of *why* the specific information sought

24    to be sealed is confidential or timely or *how* it could be used to disadvantage Google.

25    Even if Google had submitted a declaration from one or more employees with the

26    requisite familiarity with Google's business negotiations (and it did not), most of Google's

27    proposed redactions are facially indefensible and fall well short of meeting the applicable

28    "compelling reasons" standard. For example, Google seeks to conceal the content of an

---

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD

interaction with Apple that occurred *a decade ago*, without any explanation of how that disclosure of historical fact could hurt Google's *current* competitive standing or relations with Apple or any other third party.  (Rope Decl. ¶ 57 (citing FAC ¶ 87).)

Importantly, Google is "playing both sides" of the redactions and using the resulting secrecy to its public relations advantage.  Google is actively making statements to the press calling Epic's FAC "baseless",[1] while at the same time seeking to conceal from the public both the high level and the specific bases of Epic's allegations, which are drawn from Google's own documents.  All of this demonstrates that the true purpose of Google's sealing request is to conceal the full scope of Google's anti-competitive conduct and its effects on app developers, consumers, app stores, and others who participate or seek to participate in the markets Google is monopolizing.  Google's improper and unmeritorious request to seal should be denied.

### DISCUSSION

Google faces a steep burden in seeking to continue hiding from the public eye the FAC's identification and documentation of Google's misdeeds.  "[A] civil action necessarily arises out of information pled in the complaint, and consequently, the complaint 'is at the heart of the interest in ensuring the public's understanding of the judicial process.'"  *Harrell v. Cal. Forensic Med. Grp.*, 2015 WL 1405567, at *1 (E.D. Cal. Mar. 26, 2015) (quoting *Kamakana*, 447 F.3d at 1179).  "[T]he strong presumption of access to judicial records applies fully to dispositive pleadings."  *Kamakana*, 447 F.3d at 1179.  To overcome this strong presumption, Google "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events".  *Id.* at 1178-79 (citations, quotation marks, and brackets omitted).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes', such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release

---

[1] *See, e.g.*, Nick Statt, *Google Considered Buying Epic To "Squelch" Competition, Court Docs Reveal*, Protocol (Aug. 6, 2021), https://www.protocol.com/bulletins/google-epic-games-acquisition-trial.

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD

trade secrets." *Id.* at 1179.  Conversely, "[t]he mere fact that the production of records may

lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not,

without more, compel the court to seal its records."  *Id.*  "Generic, non-specific reasons are not

sufficient" to overcome the presumption of access to judicial records.  Standing Order for Civil

Cases Before Judge James Donato ¶ 26(b) (citing *Kamakana*, 447 F.3d at 1180).[2]

To support its effort to seal broad swaths of Epic's FAC, Google relies on the

Declaration of Mr. Rope, a "Senior Legal Project Manager" who has "been employed by

Google since February 2018".  (Rope Decl. ¶ 1.)  As a threshold matter, this Declaration is

insufficient to meet Google's burden because Mr. Rope does not have the necessary personal

knowledge to testify, as he purports to do in Paragraph 5 of his Declaration, that "[t]he

disclosure of Google's confidential internal business analyses, revenue breakdowns, and

business strategies could significantly harm Google's relationships and ability to conduct

business with counterparties and prospective counterparties, and could place it at a

disadvantage with competitors who could use Google's confidential analyses to their advantage

in competition with Google".  (Rope Decl. ¶ 5.)  Mr. Rope does not claim any personal

knowledge of Google's corporate strategy or business relationships, including third-party

negotiations.  He asserts merely that he relies on personal knowledge of "Google's practices

and procedures concerning the maintenance of the confidentiality of its strategic, business, and

marketing information".  (Rope Decl. ¶ 1.)  Mr. Rope's "experience" and "knowledge" that

"Google does not disclose internal documents of this nature outside of the company" (Rope

Decl. ¶ 4) are insufficient.  While Mr. Rope's Declaration references hearsay conversations

with unspecified Google employees and unidentified "materials" that were provided to him

---

[2] Relying on *In re Electronic Arts*, 298 F. App'x 568 (9th Cir. 2008), Google asserts that certain types of information are "sealable even during trial, *much less in an unsworn complaint*".  (ECF No. 159 at 2 (emphasis added).)  Nothing in *In re Electronic Arts* suggests that information found in "an unsworn complaint" (Google's words) is held to a different standard than trial materials; the opinion does not mention complaints at all.  Google concedes this point by asserting that the "compelling reasons" standard applies here.  (ECF No. 159 at 1 (quoting *Kamakana*, 447 F.3d at 1178).)  *See also, e.g.*, *Delphix Corp. v. Actifio, Inc.*, 2014 WL 4145520, at *1 & n.2  (N.D. Cal. Aug. 20, 2014) (applying "compelling reasons" standard in evaluating request to seal portions of amended complaint).

(Rope Decl. ¶ 3), nowhere does he state that he in fact reviewed the specific documents underlying the information that Google seeks to seal, or that he personally passed judgment— or even has the requisite knowledge to pass judgment—on the consequences of any disclosure.

Mr. Rope's lack of actual knowledge regarding the impact of disclosure is evident in his Declaration.  All 31 paragraphs regarding Epic's FAC rely on the following, identical language to explain how and why Google could suffer harm in the event of disclosure:  "If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Google in marketing and in negotiations."  (Rope Decl. ¶¶ 54-84.)  This mechanical boilerplate language is not a substitute for "specific factual findings" supported by personal knowledge explaining why particular allegations are so commercially sensitive that the public cannot see them.  Such deficiencies render Mr. Rope's Declaration insufficient to meet Google's burden.  *See, e.g.*, *Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, 2018 WL 6601671, at *2 (S.D. Cal. Dec. 14, 2018) (finding a declaration by counsel was not enough to meet "compelling reasons" standard because counsel lacked personal knowledge of or foundation for assertions that the information at issue might harm defendant company's competitive standing); *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244287, at *3 (C.D. Cal. May 14, 2013) (assigning "no weight" to conclusory declaration by counsel that disclosure could harm plaintiff's business where plaintiff did not demonstrate that counsel had personal knowledge about the harm asserted); *see also Qualcomm Inc. v. Apple Inc.*, 2021 WL 879817, at *4 (N.D. Cal. Mar. 9, 2021) (finding Apple failed to justify maintaining confidential status over documents under a protective order where its in-house lawyer submitted a declaration that "fail[ed] to establish that he has personal knowledge to testify to the harm that might result from . . . disclosure" and "relie[d] on the same three reasons to explain how and why Apple would suffer prejudice in the event of . . . disclosure").[3]

---

[3] Further demonstrating a lack of a particularized showing required under the compelling reason standard, Google's redactions are not consistently applied.  In Paragraph 96, Google does not seek to redact an allegation that it reached "exclusivity agreements" with "certain OEMs".  Yet, in Paragraph 94, Google seeks to seal similar language.  Likewise, in Paragraph 118, Google does not seek to redact an allegation that it "entered into revenue share agreements with various MNOs", despite seeking to seal similar language earlier in that same paragraph.

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Even if Mr. Rope's supporting evidence were sufficient as a threshold matter, many of Google's proposed redactions fall well short of meeting the applicable "compelling reasons" standard.  Epic does not concede the appropriateness of sealing any portion of its FAC, and, indeed, included redactions at Google's insistence only to comply with its obligations under the Protective Order.  Epic highlights below illustrative examples where Google's request is particularly egregious in that it seeks to seal points of particular importance or information that on its face could not justifiably be sealed, outlined by reference to the FAC.

Paragraph 62.  Google seeks to redact standardized language it has used for over a decade in agreements with original equipment manufacturers ("OEMs").  Google claims the language is "non-public" (Rope Decl. ¶ 55).  But the European Commission publicly quoted the same provision in its decision finding Google's OEM agreements violated competition law. (Commission Decision at 40, Case AT.40099 - Google Android, European Comm'n (July 18, 2018), https://ec.europa.eu/competition/antitrust/cases/dec_docs/40099/40099_9993_3.pdf ("Pursuant to an AFA, hardware manufacturers commit to the following: . . . (3) '[COMPANY] shall not distribute a software development kit (SDK) derived from Android or derived from Android Compatible Devices . . . .'"))

Paragraph 76.  Epic quotes an "internal Google report" from 2017 describing the performance of Google Play relative to other Android app stores and providing Google's estimate of "app installations through channels other than Google Play (including direct downloads and competing app stores)".  Google's conclusory assertion that disclosure could "reveal[] confidential internal business analyses" (Rope Decl. ¶ 56) does not establish a compelling interest in sealing.  Google's dominance of the Android App Distribution Market is central to this case, and these allegations do not involve sensitive information or counterparties.

Paragraphs 87-88.  Epic alleges "Google benefits by cooperating with its 'competitor' Apple".  Google asks to seal the following sentence, which quotes a Google employee's 2010 email about the relationship between Apple and Google.  Google provides no reason why this decade-old description could harm its *current* competitive standing or interactions with counterparties.  *See, e.g.*, *Total Recall Techs. v. Luckey*, 2021 WL 1245357, at *1 (N.D. Cal.

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD

Mar. 25, 2021) ("Even if the documents had a figment of needed privacy when they were fresh, that time has long since passed."); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 WL 3014138, at \*2 (N.D. Cal. June 17, 2013) ("This document is eight years old, and NCAA fails to articulate what specific harm an outdated document will have on its current or future operations.").  In Paragraph 88, Google similarly redacts a quote summarizing a 2018 "meeting involving senior executives of Google and Apple".  Google argues this quote "contains non-public information revealing confidential business strategies and negotiations". (Rope Decl. ¶ 58.)  But the quote does not describe "negotiations" in any meaningful way, and it is already public.  *See* Complaint, *United States v. Google LLC*, 1:20-cv-03010 (D.D.C.) (Oct. 20, 2020), ECF No. 1 ¶ 120 ("After [a] 2018 meeting, a senior Apple employee wrote to a Google counterpart:  'Our vision is that we work as if we are one company.'").

Paragraph 96.  Google seeks to redact descriptions of competitive restraints found in agreements Google has reached with many OEMs.  These allegations are at the heart of Epic's lawsuit and are crucial to the public's ability to understand Epic's claims.  There is no merit to Google's contention that descriptions of these restraints would allow "competitors and potential business counterparties" to injure Google, and Mr. Rope's declaration does not in any way explain how such injury would supposedly occur.  (Rope Decl. ¶ 60.)

Paragraph 97.  Google asks the Court to seal language regarding Google's 2019 estimate of the success of Samsung's Android app store, which Google compared to the success of Google Play.  This comparison is not "business analys[is] of a competitor" (Rope Decl. ¶ 61), and Google has presented no valid basis for sealing it.

Paragraphs 98-99.  In 2018, Google learned that Epic decided to launch the Android version of its popular *Fortnite* app on Samsung's app store and through Epic's website, but not through Google Play.  In response, Google offered Epic a special deal in exchange for launching *Fortnite* on Google Play, which Epic rejected after insisting that any deal must be available to all third-party developers.  Google claims that nearly all the language in Paragraphs 98 and 99 describing these events reveals "confidential business strategies regarding negotiations with potential counterparties".  (Rope Decl. ¶ 62; *cf. id.* ¶ 63.)  While some of

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD

1    these paragraphs describe negotiations, the counterparty was Epic.  Epic is not claiming

2    confidentiality, and the negotiations have long since concluded.

3        Paragraph 101.  In Paragraph 6, Google does not seek to seal language revealing that it

4    "contemplated buying some or all of Epic" after recognizing Epic posed a "threat" to Google's

5    efforts to fence out competition.  Yet, in Paragraph 101, Google seeks to seal references to

6    internal documents about this same effort on the purported basis that they "reveal[] confidential

7    business strategies regarding negotiations with a potential counterparty" (Rope Decl. ¶ 64).

8    Google does not assert that it is, or ever was, engaged in any actual negotiations concerning any

9    purchase of Epic.  And Epic is not aware of any such negotiations.

10       Paragraph 103.  This paragraph describes Google's reaction to Epic's decision to reject

11   the special deal Google offered to persuade Epic to launch *Fortnite* for Android on Google

12   Play.  While Google does not seek to redact an allegation that it "increased its focus on the

13   nascent competitive threats posed by Epic and others who may be able to offer alternative app

14   stores on Android, including by negotiating for pre-installation of such app stores with OEMs",

15   it asserts that references to internal Google documents describing these efforts contain

16   "confidential business strategies and forward-looking projections" (Rope Decl. ¶ 65).  This is

17   meritless:  the conduct at issue took place in 2018 and 2019, and Google does not explain why

18   the disclosure of stale projections and long-concluded strategies would cause it harm.

19       Paragraphs 105-111.  These paragraphs contain core allegations about Google's efforts

20   to foreclose competition in the Android App Distribution Market, heightening the public's

21   interest in accessing the information.  Much of the redacted text refers to agreements Google

22   has reached with numerous OEMs and cellular carriers.  To take one significant example,

23   Google asserts that the information in Paragraph 108 concerns "the terms of a confidential

24   agreement with a counterparty".  (Rope Decl. ¶ 69.)  While that may be true of a small segment

25   of Paragraph 108, the majority of the paragraph describes a different document, which Google

26   publishes on a website available to *all* its OEM partners.  The allegations describe requirements

27   applicable to all Android OEMs that participate in a program outlined in this portion of the

28   FAC, and Google provides no rationale for redacting them.  Similarly, Google does not explain

with any specificity why the allegations in Paragraph 105, which describes in general terms agreements Google offers to many OEMs would "reveal[] confidential business strategies, the terms of agreements with counterparties, and negotiation positions with counterparties". (Rope Decl. ¶ 66.)  Nor does Google assert that the information in these paragraphs (or any paragraph in Epic's FAC) contains the type of "pricing terms, royalty rates, and guaranteed minimum payment terms" at issue in the case law relied upon by Google.  Far from revealing sensitive or particularized terms, these allegations concern widely imposed contractual restraints and show how Google systematically prevents new entrants from competing with Google Play.  Google has not met its burden as to such allegations. *See, e.g.*, *Tevra Brands LLC v. Bayer HealthCare LLC*, 2020 WL 1245352, at *2-3 (N.D. Cal. Mar. 16, 2020) (finding "compelling reasons" standard not met for proposed redactions to portions of amended complaint containing "descriptions of the key terms in Bayer's contracts with its dealers", because the redactions covered "contractual terms [that] are the allegedly anticompetitive practices Tevra challenges", the terms were "essential contractual terms (as opposed to merely ancillary ones)" and were described "at a reasonably high level of generality", and "[w]ithout access to these allegations, the public cannot meaningfully comprehend the subject matter of the suit, let alone its merits").

Even in the few places where Epic's allegations involve a specific OEM, Google's proposed redactions are far broader than necessary to protect trade secrets.  Google seeks to redact nearly all of Paragraphs 106-110, in which Epic describes "one illustrative example" of Google's anti-competitive agreements with OEMs.  Google claims each of these paragraphs describes "the terms of a confidential agreement with a counterparty".  (Rope Decl. ¶¶ 67-71.)  But if Google were focused on protecting the confidentiality interest of a third party, then it would be seeking to redact only the identity of the relevant third party.  Google provides no specific or compelling basis for redacting nearly all the language in these paragraphs.

Paragraphs 112-113.  These paragraphs describe an internal Google document in which Google estimated the success of its plan to enlist OEMs to sign the agreements described in the previous paragraphs.  As above, Google goes much further than is needed to achieve its claimed goal of protecting "confidential agreements with counterparties" (Rope Decl. ¶¶ 73-

74), when its concerns could be addressed by redacting the names of the counterparties.

Paragraph 115.  Google asks the Court to redact a contract term that Epic alleges was used "to conceal [Google's] most restrictive anticompetitive conduct".  This term appears in many agreements, and it speaks to Google's efforts to obscure the public record regarding the anti-competitive conduct at issue in this case.  The mere fact that the text contains "the terms of agreements with counterparties" (Rope Decl. ¶ 76) is not a valid basis for sealing it.  *See, e.g.*, *Tevra Brands*, 2020 WL 1245352, at *2-3.  And Google's alternative claims that the language reveals "confidential business strategies" or "negotiation positions with counterparties" (Rope Decl. ¶ 76) are entirely without merit.

Paragraph 118.  This paragraph describes the typical terms of long-since-concluded revenue share agreements Google entered into beginning in 2009 and explains their historical importance.  These terms are stale, and Google offers no legitimate basis for redacting them.

Paragraphs 119-121.  These paragraphs discuss three negotiations between Google and Samsung that are alleged to have concluded in 2011, 2013, and 2019.  Google does not explain how the release of this information would harm its business.

Paragraph 128.  Google's redactions hide important details of its response to Epic's decision not to launch *Fortnite* for Android on Google Play.  Google's assertion that the hidden language concerns "confidential business strategies as to negotiations with counterparties and confidential agreements with counterparties" (Rope Decl. ¶ 81) is incorrect.  Paragraph 128 does not mention any counterparty by name; the only negotiations it references are alleged to have concluded; and it does not describe any particular term of any particular agreement.[4]

**CONCLUSION**

For the reasons set forth above, Google's request to seal Epic's FAC should be denied.

---

[4] Google's claim that "[t]he sealed material reveals confidential information produced by Google pursuant to civil investigative demands compelling production of the materials in which the confidential information appears" (Rope Decl. ¶ 2) may leave the impression that Google produced the materials relied upon by Epic in its FAC pursuant to civil investigative demands. It did not.  Nearly all information in Epic's FAC that Google seeks to seal was obtained from documents Google produced in discovery in this case.  Google has not yet provided Epic the documents it produced to the state plaintiffs in *Utah v. Google LLC*, Case No. 3:21-cv-05227-JD, with the exception of several dozen documents the states referenced in their complaint.

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD

1  Dated: August 10, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAVATH, SWAINE & MOORE LLP

Christine Varney
Katherine B. Forrest
Gary A. Bornstein
Timothy G. Cameron
Yonatan Even
Lauren A. Moskowitz
Justin C. Clarke
M. Brent Byars

FAEGRE DRINKER BIDDLE & REATH LLP

Paul J. Riehle

Respectfully submitted,

By:   */s/ Gary A. Bornstein*
       Gary A. Bornstein

*Attorneys for Plaintiff Epic Games, Inc.*

EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S REQUEST TO SEAL FAC
Case No. 3:20-CV-05671-JD