# EXHIBIT A



Molly C. Dwyer
Clerk of Court

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

March 14, 2022

| | |
|---|---|
| No.: | 22-70044 |
| D.C. No.: | 5:21-cv-06374-BLF |
| Short Title: | Sweta Sonthalia v. USDC-CASJ |

Dear Petitioner/Counsel

A petition for writ of mandamus and/or prohibition has been received in the Clerk's Office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. Always indicate this docket number when corresponding with this office about your case.

If the U.S. Court of Appeals docket fee has not yet been paid, please make immediate arrangements to do so. If you wish to apply for in forma pauperis status, you must file a motion for permission to proceed in forma pauperis with this court.

Pursuant to FRAP Rule 21(b), no answer to a petition for writ of mandamus and/or prohibition may be filed unless ordered by the Court. If such an order is issued, the answer shall be filed by the respondents within the time fixed by the Court.

Pursuant to Circuit Rule 21-2, an application for writ of mandamus and/or prohibition shall not bear the name of the district court judge concerned. Rather, the appropriate district court shall be named as respondent.

No. _____

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

IN RE SWETA SONTHALIA,

*Petitioner*;

v.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA,

*Respondent*;

VIEW, INC. F/K/A CF FINANCE ACQUISITION CORP. II, RAO MULPURI,
VIDUL PRAKASH, STADIUM CAPITAL LLC, LARRY LI, FENG LI,
FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, and MAJDI
MOJAHED,

*Real Parties in Interest*.

---

From a decision of the United States District Court
for the Northern District of California
No. 5:21-cv-06374-BLF
The Honorable Beth Labson Freeman

---

## PETITION FOR WRIT OF MANDAMUS

---

**ROCHE FREEDMAN LLP**
Ivy T. Ngo
Constantine P. Economides
Velvel (Devin) Freedman
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Petitioner Sweta Sonthalia*

## CERTIFICATE OF INTERESTED PARTIES

**Affected Court Action**

The District Court action from which this petition arises is entitled: *Mehedi v. View, Inc. et al.*, pending in the United States District Court for the Northern District of California, Case No. 5:21-cv-06374-BLF, the Honorable Beth Labson Freeman presiding. Petitioner is a statutory movant in the action.

**Petitioner**

Petitioner is Sweta Sonthalia, who moved for appointment as Lead Plaintiff in the action described above. Petitioner is represented by:

**ROCHE FREEDMAN LLP**
Ivy T. Ngo
Constantine P. Economides
Velvel (Devin) Freedman
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131

*Counsel for Petitioner Sweta Sonthalia*
*and Proposed Lead Counsel*

**LABATON SUCHAROW LLP**
David J. Schwartz
140 Broadway
New York, New York 10005

*Additional Counsel for Petitioner*
*Sweta Sonthalia*

**Respondent**

United States District Court for the Northern District of California

**Real Parties in Interest**

The Real Parties in Interest are View, Inc. f/k/a CF Finance Acquisition Corp. II, Rao Mulpuri, Vidul Prakash, Stadium Capital LLC, Larry Li, Feng Li, FirstFire Global Opportunities Fund, LLC, and Majdi Mojahed. The Real Parties in Interest are represented by the following counsel:

*Counsel for Defendants View Inc.*
*f/k/a CF Finance Acquisition Corp.*
*II and Rao Mulpuri*:

Robert L. Dell Angelo, John W.
Berry, John M. Gildersleeve

*Counsel for Movant Stadium Capital*
*LLC*:

Frederic S. Fox, Jason Aron Uris
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor

Munger Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426

New York, NY 10022
Kathleen A. Herkenhoff, Laurence D.
King, Blair Elizabeth Reed
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612

*Counsel for Movant Larry Lin*:

Laurence M. Rosen
The Rosen Law Firm, P.A.
355 South Grand Avenue, Suite
2450
Los Angeles, CA 90071

*Counsel for Movant Feng Li*:

Charles H. Linehan
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

*Counsel for Movant Majdi Mojahed*:

Jennifer Pafiti
Pomerantz LLP
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024

*Counsel for Movant FirstFire Global
Opportunities Fund, LLC*:

Ian David Berg
PGMBM
161 Washington St., Suite 250
Conshohocken, PA 19428

Takeo A. Kellar
Abraham, Fruchter & Twersky, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................... iii

I.   INTRODUCTION ...........................................................................1

II.  RELIEF SOUGHT...........................................................................7

III. ISSUE PRESENTED ........................................................................7

IV.  STATEMENT OF FACTS ...................................................................7

   A.   The Underlying Class Action...............................................7

   B.   The Order Appointing Lead Plaintiff ....................................8

   C.   The Order Denying Sonthalia's Reconsideration Motion...................13

V.   MANDAMUS SHOULD BE GRANTED....................................................13

   A.   Legal Standard for Mandamus Relief ...................................13

   B.   Sonthalia has no other adequate means of obtaining relief................14

   C.   Sonthalia will be irreversibly prejudiced if denied her statutory
        right...........................................................................15

   D.   The Orders are clearly erroneous as a matter of law.........................15

        1.   The Orders do not follow the "out-of-pocket" rule .................16

        2.   The Orders are inconsistent with the PSLRA's damages
             framework, in place since 1995 .................................18

        3.   The Orders are contrary to the Supreme Court's *Dura*
             ruling .......................................................19

        4.   Nearly all district courts have rejected the DC's
             methodology.............................................................23

   E.   Sonthalia has satisfied the remaining Bauman factors.......................29

i

VI.     CONCLUSION.................................................................30

STATEMENT OF RELATED CASES ..................................32

CERTIFICATE OF COMPLIANCE........................................33

CERTIFICATE OF SERVICE ..............................................34

# TABLE OF AUTHORITIES

## Cases

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012) ..................................................................... 18, 19, 20

*Affiliated Ute Citizens v. U.S.*,
    406 U.S. 128 (1972) ............................................................................................. 17

*Applestein v. Medivation Inc.*,
    2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ............................................. 26, 28

*Barnes v. Sea Haw. Rafting, LLC*,
    889 F.3d 517 (9th Cir. 2018) ............................................................................. 29

*Basic v. Levinson*,
    485 U.S. 224 (1988) ......................................................................................... 4, 21

*Bauman v. U.S. Dist. Court*,
    557 F.2d 650 (9th Cir. 1977) ............................................................. 13, 14, 15, 29

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................... 17

*Cohen v. U.S. Dist. Ct.*,
    586 F.3d 703 (9th Cir. 2009) ......................................................................... 13, 14

*Cole v. U.S. Dist. Ct. for Dist. of Idaho*,
    366 F.3d 813 (9th Cir. 2004) ............................................................................... 15

*Dura Pharms. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................... *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ........................... 24, 25, 26, 27, 28

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ......................................................................................... 4, 21

*FindWhat Inv. Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ..............................................................20

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)............................................................................4

*Gutman v. Sillerman*,
   2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) .......................................24

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
   2019 WL 4295285 (C.D. Cal. Sept. 9, 2019) .......................................17

*Hurst v. Enphase Energy, Inc.*,
   2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ...................................... 12, 26, 29

*In re AudioEye, Inc. Sec. Litig.*,
   2015 WL 13654027 (D. Ariz. Aug. 3, 2015) .........................................5

*In re Bofi Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ........................................... 2, 5, 16, 20, 28

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ....................................... 1, 13, 14, 15, 30

*In re Cement Antitrust Litig.*,
   688 F.2d 1297 (9th Cir. 1982), *aff'd*, 459 U.S. 1191 (1983)........................ 16, 30

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011) ............................................................ 21

*In re Lendingclub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017)...............................................21

*In re Lyft Sec. Litig.*,
   2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) ..................................... 25

*In re Mersho*,
   6 F.4th 891 (9th Cir. 2021) ....................................... 13, 14, 19, 29, 30

*In re Novatel Wireless Sec. Litig.*,
2013 WL 12144150 (S.D. Cal. Oct. 25, 2013)............................................... 17, 28

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................20

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
404 F. Supp. 2d 605 (D.N.J. 2005)......................................................19

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018)......................................................... 21

*In re U.S. Dep't of Educ.*,
25 F.4th 692 (9th Cir. 2022) ........................................................... 15, 16

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) .......................................................... 17, 18

*In re Williams-Sonoma, Inc.*,
947 F.3d 535 (9th Cir. 2020) .......................................................... 14, 29

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
2021 WL 71433 (C.D. Cal. Jan. 7, 2021)................................. 2, 24, 27

*Lewis v. CytoDyn, Inc.*,
2021 WL 3709291 (W.D. Wash. Aug. 19, 2021)...............................24

*Loftus v. Primero Mining Corp.*,
2016 WL 11741138 (C.D. Cal. May 12, 2016)............................ 24, 27

*Marjanian v. Allied Nev. Gold Corp.*,
2014 WL 12769810 (D. Nev. Nov. 7, 2014)................................ 27, 29

*Markette v. XOMA Corp.*,
2016 WL 2902286 (N.D. Cal. May 13, 2016)............................. 26, 29

*Mathews v. Kidder, Peabody & Co. Inc.*,
260 F.3d 239 (3d Cir. 2001) ............................................................ 17, 18

v

McGuire v. Dendreon Corp.,
267 F.R.D. 690 (W.D. Wash. 2010) ....................................................21

Mulligan v. Impax Lab'ys, Inc.,
2013 WL 3354420 (N.D. Cal. July 2, 2013) .......................................26

Murphy v. Precision Castparts Corp.,
2020 WL 4040827 (D. Or. July 17, 2020)............................................28

No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding
Corp., 320 F.3d 920 (9th Cir. 2003) .....................................................5

Perlmutter v. Intuitive Surgical, Inc.,
2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ........................... 5, 24, 29

Perry v. Schwarzenegger,
591 F.3d 1147 (9th Cir. 2010) .............................................................29

Ruland v. InfoSonics Corp.,
2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ............................... 25, 27

Saint Jermain v. Fluidigm Corp.,
2020 WL 7342717 (N.D. Cal. Dec. 14, 2020)............................... 25, 26

Sallustro v. CannaVest Corp.,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) ........................... 2, 20, 23, 24, 27

San Jose Mercury News, Inc. v. U.S. Dist. Ct.,
187 F.3d 1096 (9th Cir. 1999) .............................................................29

Scheller v. Nutanix, Inc.,
2021 WL 2410832 (N.D. Cal. June 10, 2021).....................................24

Schueneman v. Arena Pharm., Inc.,
2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................................. 26, 27

Simco v. Aegean Marine Petroleum Network Inc.,
2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018)................................2, 24

*Smilovits v. First Solar, Inc.*,
  2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ........................................28

*Strategic Diversity, Inc. v. Alchemix Corp.*,
  666 F.3d 1197 (9th Cir. 2012) ............................................................17

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................18

*Xu v. FibroGen, Inc.*,
  2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ....................................24

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
  231 F.3d 1215 (9th Cir. 2000) ............................................................14

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc) .............................................1

15 U.S.C. § 78u-4(e) ....................................................... 2, 3, 9

15 U.S.C. § 78u-4(e)(1)-(2) ....................................................19

15 U.S.C. § 78bb(a)(1) ..........................................................17

28 U.S.C. § 1651 ......................................................................7

**Other Authorities**

S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679 ............... 3, 17, 18

## I. INTRODUCTION

Petitioner Sweta Sonthalia ("Sonthalia") sought appointment as Lead Plaintiff in this securities fraud class action, carefully making every required showing—including that she had the largest financial interest in the litigation's outcome. Despite Sonthalia meeting the statutory presumption of most adequate plaintiff, the District Court ("DC") appointed another movant by using a loss calculation that rendered movants' actual purchase prices irrelevant.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).[1] Further, the PSLRA presumes that the "most adequate plaintiff" is the movant who has "the largest financial interest in the relief sought by the class" and "otherwise satisfies… Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

Here, the DC partially followed the PSLRA and Supreme Court precedent. When assessing financial interest to appoint a lead plaintiff, it excluded Stadium Capital, LLC's sales from before the only alleged corrective disclosure ("Corrective Disclosure"), because of causation issues. Specifically, because those sales occurred before the market learned the truth, the sale-price arguably still included a fraud premium and therefore Stadium's gains or losses are likely not proximately caused

---

[1] Unless otherwise noted, all emphasis added and internal citations omitted.

by the fraud. However, the DC clearly erred by adopting a unique and largely unprecedented methodology for calculating "financial interest" which replaced movants' actual purchase prices with an artificial "purchase price."

Specifically, the DC ignored the price Stadium and Sonthalia purchased View stock for and replaced it with the market price just before the Corrective Disclosure. In doing so, the DC's orders on February 8, 2022 and February 23, 2022 ("Orders") rejected the only guidance the PSLRA provides for calculating damages (15 U.S.C. § 78u-4(e)); are inconsistent with *Dura Pharms. v. Broudo*, 544 U.S. 336 (2005) and *In re Bofi Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020); and are contrary to nearly every district court opinion addressing this purchase-price-irrelevant methodology. *See e.g.*, *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 277 (S.D.N.Y. 2015) ("adopti[ng] a standard in which purchase price never plays a part in determining loss would work a **radical change in the law**"); *Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *3 (S.D.N.Y. Oct. 30, 2018) (rejecting "seemingly novel methodology" which "effectively precludes any consideration of purchase price"); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (rejecting "version of *Dura* loss calculation – which makes purchase price irrelevant – to appoint a lead plaintiff").

Using this "radical" methodology, the DC found that Stadium had suffered the larger fictional loss amount and appointed it lead plaintiff despite the fact that in

reality (when *actual* purchase price is used) Sonthalia has a larger financial interest under both the actual economic loss and traditional *Dura* recoverable loss methods. Thus, the Orders undermine the PSLRA's stated goal: to appoint the investor with the largest financial interest as Lead Plaintiff. Sonthalia indisputably lost more money on View stock than Stadium. She spent $700,203 for her retained shares; Stadium spent $380,884. When markets closed on August 17, 2021—the first trading day after the Corrective Disclosure—Sonthalia's retained shares had lost $463,341 in value, while Stadium's had lost only $145,684. Applying the PSLRA's 90-day "lookback," Sonthalia still lost $384,185 in value, whereas Stadium lost only $127,048.[2] But the DC's radical and reality-blind methodology completely ignores those facts, as well as the question of how much Defendants' misstatements inflated View's stock price before movants bought shares.

Further, in disregarding the price Sonthalia paid for her shares (bought near the Class Period high and retained through the lookback), the DC improperly made a factual finding that prior to the Corrective Disclosure:

> Sonthalia had already experienced a significant loss—her View stock was worth less than half the value it had when she purchased it in late 2020 and early 2021. However, since this loss took place prior to the

---

[2] As detailed *infra*, the lookback provides time for a security to rebound, capping damages based on the security's mean trading price during the 90-day period following a corrective disclosure. *See* 15 U.S.C. § 78u-4(e). Without the lookback, damages were based on the difference between the actual purchase price and the security's closing price following the corrective disclosure. *See* S. Rep. No. 104-98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699.

> single Corrective Disclosure alleged in this case, it is likely not linked
> to the alleged fraud.

App. 10. In other words, the DC found that the high price of shares bought early in the Class Period—close in time to the misstatements artificially inflating View's stock price—had no connection, even partially, to the fraud since the market price just before the Corrective Disclosure was lower. This premature and thus improper factual finding implicates issues related to reliance, loss causation, and damages.

First, it is well established law that "an investor presumptively relies on a defendant's misrepresentation if that 'information is reflected in the market price of the stock at the time of the relevant transaction.'" *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 812 (2011) (quoting *Basic v. Levinson*, 485 U.S. 224, 247 (1988)). Consequently, in adopting this purchase-price-irrelevant methodology, the DC has improperly relieved defendants' of the burden of rebutting this presumption, which requires "'[a] showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff[—*i.e.* price impact], or his decision to trade at a fair market price[—*i.e.* transaction causation].'" *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.,* 141 S. Ct. 1951, 1958 (2021).

Second, for loss causation in a "fraud-on-the-market" case, like this one:

> [T]he plaintiff must show that after purchasing her shares … (1) the
> truth became known, and (2) the revelation caused the fraud-induced
> inflation in the stock's price to be reduced or eliminated. At that point,
> the plaintiff has suffered an economic loss caused by the misstatements.

*Bofi*, 977 F.3d at 789. But determining what loss is attributable to a corrective disclosure is a "fact-specific inquiry" for a jury, not a court appointing lead plaintiff. *See No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003); *see also Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011) (Koh, J.) (courts "prefer to choose a lead plaintiff based on total losses – a rough estimate for a plaintiff's maximum recoverable damages" since "calculating damages in a securities fraud case is a highly technical task that usually involves a battle of experts" and a lead plaintiff is selected "at a very early stage of litigation, before fact discovery and often long before the plaintiff's theory of the case is fully developed").

Third, the DC's finding that "prior to the Corrective Disclosure, Ms. Sonthalia had already experienced a significant loss" contradicts her claimed damages. *See* App. 48. Sonthalia moved for Lead Plaintiff appointment asserting that "as a result of the revelations of the fraud [ ], [she] suffered substantial financial losses, and thus, has a significant interest in the outcome of this litigation." *Id.* No more is required to show loss causation at the lead plaintiff stage. *See In re AudioEye, Inc. Sec. Litig.*, 2015 WL 13654027, at *6 (D. Ariz. Aug. 3, 2015) ("At [lead plaintiff] and with no proof otherwise, the Court will accept the representation that damages alleged by [movant] flow solely from the shares acquired on the open market in reliance on the publicly available information, the type of damages typical

for each member of the purported class.").

Finally, this new methodology highlights stark disagreements between district courts in this circuit regarding the proper consideration for determining "largest financial interest." Consequently, class members face a now heightened strategic dilemma: what methodology to apply when moving for lead plaintiff before conducting a full loss causation or damages analysis with the assistance of discovery and experts. The practicalities of that dilemma have played out here. In its moving papers, Stadium used an economic loss methodology. However, after learning that Sonthalia had a greater financial interest under both economic loss and traditional *Dura* recoverable loss methodologies, Stadium shifted to a purchase-price-irrelevant methodology. Moreover, movants and their counsel now have less guidance as to how to calculate damages, if purchase price is no longer relevant. In sum, Stadium proposed, and the Court adopted, a methodology that is as flawed as it is novel.

Although a petition for mandamus is a procedural device that should be used sparingly and with care, Sonthalia lacks any other mechanism to secure her right as Lead Plaintiff. Left uncorrected, she would be irreversibly prejudiced by being denied her presumptive statutory right to direct and oversee the litigation with her counsel. Mandamus relief is also necessary, here, to correct the DC's clearly erroneous interpretation of the PSLRA and *Dura* and to clarify the muddled and contradictory state of this circuit's district court caselaw on how to properly

determine "largest financial interest."

## II.   RELIEF SOUGHT

Sonthalia respectfully petitions this Court, pursuant to the All Writs Act, 28 U.S.C. § 1651, for a writ of mandamus: (1) vacating the Orders; (2) directing the DC to appoint Sonthalia as Lead Plaintiff; and (3) clarifying the contradictory caselaw among this circuit's district courts regarding the relevancy of purchase price when calculating financial interest pursuant to the PSLRA.

## III.   ISSUE PRESENTED

Did the DC, in direct contravention of the PSLRA and Supreme Court precedent, clearly err in holding that Sonthalia did not have the "largest financial interest" based on a loss calculation that renders actual purchase price irrelevant?

## IV.   STATEMENT OF FACTS

### A.   The Underlying Class Action

On August 18, 2021, Plaintiff Asif Mehedi filed the underlying action against View and two of its officers, asserting claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, on behalf of investors who bought View securities during the "Class Period" (11/30/2020-8/16/2021, inclusive).

The Complaint alleges that, throughout the Class Period, Defendants made material misstatements and omissions related, *inter alia*, to View's accrued warranty costs, its internal controls related to that warranty accrual, and the accuracy of its

previously released financial results. The Complaint asserts that these misstatements and omissions created a falsely positive assessment of View and its financial well-being and prospects in the market, thus causing its securities to be overvalued and artificially inflated throughout the Class Period. Indeed, on January 14, 2021, View securities closed at a high of $12.91 per share.

Then, after markets closed on August 16, 2021, View announced "an independent investigation concerning the adequacy of [its] previously disclosed warranty accrual" and its inability to file the next quarterly report. On this news, View's share price fell over 24% to close at $3.92 on August 17, 2021. The Complaint further alleges that, throughout the Class Period, the market for View securities promptly digested publicly available information about it and reflected such information in its share price. Thus, all investors who purchased View securities at artificially inflated prices during the Class Period suffered similar injury when those shares declined in value in response to the Corrective Disclosure.

## B. The Order Appointing Lead Plaintiff

On February 8, 2022, the DC appointed Stadium as Lead Plaintiff and denied Sonthalia's motion. App. 17. The DC began with the PSLRA's "simple three-step process for identifying the lead plaintiff." App. 5. To determine "financial interest" under the second step, the DC followed "a four-factor test" with "the most emphasis on the final factor—the approximate losses suffered." App. 6.

In order to assess the three loss calculations presented by the movants, the DC "lumped" the various calculations utilized in this circuit and elsewhere, into two categories, "(1) those based on actual economic losses suffered ('Economic Loss') … and (2) those based on 'potential recovery' ('Recoverable Loss')." *Id*.

First, under the Economic Loss methodology, the DC examined the "LIFO net loss" calculation. App. 7. While both "Movants initially used" this approach, Stadium abandoned it upon learning that Sonthalia had larger losses ($384,185 versus $330,009). *See* App. 7-8, 73-80. The DC deduced that, under this formula, it:

> [A]dds up the parties' expenditures on View stock during the Class Period … and subtracts all proceeds from the sale of that stock …. Since Ms. Sonthalia never sold her stock, her subtracted value is based on her number of shares [ ] multiplied by the average price [ ] of View stock during the 90-day period following the Corrective Disclosure[.]

App. 7-8. This calculation follows the PSLRA's explicit guidance on computing damages. *See* 15 U.S.C. § 78u-4(e). Specifically, and as applied here, for plaintiffs who retain shares through the lookback (like Sonthalia), the PSLRA limits damages to: "the difference between the purchase ... price paid ... and the mean trading price of that security during th[at] 90-day period." *Id*.

The DC concluded, however, that, in single disclosure cases, like this one, the Economic Loss formula would account for "losses that resulted from fluctuations in View stock prior to the Corrective Disclosure that potentially have nothing to do with the inflation resulting from the alleged fraud." App. 8. In rejecting this

calculation, the DC cited to the *Dura* holding that:

> [A]lleging losses in a securities fraud action based on an inflated purchase price alone is insufficient, including because "if … the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."

App. 9. As the DC explained, Stadium sold shares during the Class Period yielding "approximately $202,961" in losses "from pre-Corrective Disclosure fluctuations[;]" comparatively Sonthalia did not sell any shares, therefore, her loss would not change under *Dura*. App. 8-9, 55-56, 70-72.

The DC next considered Sonthalia's alternative calculation pursuant to a traditional *Dura* Recoverable Loss methodology. App. 9, 55-56, 81-101. "Under this approach, the Court only considers the parties' losses from shares retained at the time of the Corrective Disclosure." App. 9. At that time, Stadium had retained 60,000 shares (for which it had paid $380,884)—excluding the 366,235 shares it previously sold during the Class Period. *Id*. Its recoverable loss also excludes gains or losses from those Class Period sales, deducting only the $253,836 it made from selling its 60,000 retained shares. *Id*. "Accordingly, under the *Dura*-adjusted recoverable loss approach, Stadium sustained losses of $127,048[.]" *Id*. Again, Sonthalia retained all her shares, so pursuant to the PSLRA's damage cap, her loss did not change under this approach ($384,185). *Id*. She thus still had the "largest financial interest." *See id*.

The DC, however, declined this approach, concluding it would "take[] into

account some losses that likely have nothing to do with the alleged fraud" because the movants' purchase prices were higher than View's stock price immediately before the Corrective Disclosure. App. 10. Rejecting the Economic Loss and traditional Recoverable Loss calculations, the DC accepted a calculation—advanced for the first time in Stadium's opposition—which rendered actual purchase prices irrelevant. App. 73-80. Only under this novel and reality-blind calculation did Stadium have the purported "largest financial interest."

While the Class Period began on November 30, 2020 with the first of many misstatements artificially inflating the price of View stock until the truth was revealed on August 16, 2021, under the DC's adopted methodology, such allegations bear no legal or factual relevance to a Class member's damages. Indeed, despite Sonthalia purchasing Class Period shares and never selling, the DC deemed the price she paid as unrelated to the alleged fraud because, subsequently, the market price of View stock depreciated before the Corrective Disclosure:

> Sonthalia bought all her View stock on or before February 5, 2021. Over the 16 transactions in which [she] bought View stock, its share price was between $10.49 and $12.85. Immediately prior to the Corrective Disclosure, the share price of View stock had plummeted to $5.18. Accordingly, prior to the Corrective Disclosure, [she] had already experienced a significant loss—her View stock was worth less than half the value it had when she purchased it in late 2020 and early 2021.

App. 10. Simply put, the DC rejected allegations of the artificial inflation reaching $12.91 a share during the Class Period, substituting actual prices paid for a fictitious

11

"purchase price" based on the market price of View stock just before the Corrective Disclosure. *See* App. 11, 55-56, 70-72, 112-13. As such, it did not matter that Sonthalia paid as much as $12.85 a share, under this methodology, the "purchase price" could not be more than $5.18 a share.

In accepting Stadium's purchase-price-irrelevant methodology, the DC primarily relied upon its opinion in *Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020). There, the competing movants bought and/or sold their retained shares on the last day of the Class Period while the market was absorbing the truth which had been revealed **during** trading hours that day. *Id.* at ECF No. 29. Because both movants had sold all their shares on that day, neither "retained" any shares under a traditional Recoverable Loss approach. *Id.* As such, in the spirit of *Dura*, an *Enphase* movant proposed discounting the purchase price to the market price of the shares held right before the corrective disclosure. *Id.*

Although such circumstances did not exist here—*i.e.*, the movants held their retained shares through the end of the Class Period and on the date of the Corrective Disclosure—the DC "use[d] the stock price just before the Corrective Disclosure" instead of "the actual purchase price of the stock to determine its value before the Corrective Disclosure." App. 11. The DC reasoned that this method was an "improvement" over prior methods because "it ignores the losses the parties experienced from their stocks depreciating prior to the Corrective Disclosure" which

12

are "potentially not linked to the Corrective Disclosure." *Id.*

### C. The Order Denying Sonthalia's Reconsideration Motion

Based on the PSLRA and Supreme Court precedent, on February 22, 2022, Sonthalia sought leave to file a motion to reconsider the DC's Lead Plaintiff Order. App. 114-33. On February 23, 2022, the DC denied Sonthalia's motion, maintaining Stadium's improper appointment as Lead Plaintiff. *See* App. 136-38. In doing so, the DC again found that View's "stock [price] just before the Corrective Disclosure provided a better recoverable loss metric" than the actual purchase prices. App. 137. While acknowledging Sonthalia's "cases in which courts factored in purchase price, including *Dura*," the DC confirmed it ultimately "chose a different approach[.]" *Id.*

## V.    MANDAMUS SHOULD BE GRANTED

### A.    Legal Standard for Mandamus Relief

"Mandamus review is at bottom discretionary," but this Court has repeatedly granted relief to correct erroneous PSLRA lead plaintiff orders. *In re Mersho*, 6 F.4th 891, 898, 902-03 (9th Cir. 2021); *see also Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 708 (9th Cir. 2009); *Cavanaugh*, 306 F.3d at 739. Mandamus is the only "realistic" and "adequate" way for such orders to be reviewed, as the Court lacks jurisdiction to hear interlocutory appeals. *Mersho*, 6 F.4th at 902-03. In reviewing a petition, this Court considers, but does not "mechanically appl[y]," the *Bauman* factors:

> (1) [t]he party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he or she desires; (2) [t]he petitioner

will be damaged or prejudiced in a way not correctable on appeal; (3) [t]he district court's order is clearly erroneous as a matter of law; (4) [t]he district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression.

*Id*. at 897-98 (quoting *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977)). Showing "only one factor does not mean the writ must be denied, nor does [showing] all factors mean that the writ must be granted. And not all factors will be relevant." *Id.* at 898, *see also In re Williams-Sonoma, Inc.*, 947 F.3d 535, 538 (9th Cir. 2020) ("Not all … factors need to be satisfied, and all must be weighed together on a case-by-case basis."). After issues are reviewed *de novo*, the Court will issue a writ if "firmly convinced that the district court has erred." *Cohen*, 586 F.3d at 708.

### B.    Sonthalia has no other adequate means of obtaining relief.

The first *Bauman* factor is satisfied here as the Orders are interlocutory from which no direct appeal can be taken. *See e.g., Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219 (9th Cir. 2000) (A "district court's order designating a lead plaintiff is not a conclusive, immutable determination of the issue"); *Cavanaugh*, 306 F.3d at 740 (Wallace, J., concurring) ("No direct appeal may be taken … to conclude that the plaintiffs do not have an adequate remedy, other than mandamus, from the district court's order"); *Cohen*, 586 F.3d at 710-11 (same). Thus, "no other adequate means … to attain [the desired] relief" exists. *Mersho*, 6 F.4th at 902-03. Furthermore, Sonthalia exhausted alternative remedies

14

by filing her reconsideration motion, which was promptly considered and denied. Therefore, she could either abandon her statutory right or seek mandamus relief.

### C. Sonthalia will be irreversibly prejudiced if denied her statutory right.

The second *Bauman* factor also weighs in favor of mandamus relief because, otherwise, Sonthalia will be prejudiced in a way that cannot be remedied on appeal. Left uncorrected, the Orders deny her presumptive statutory right to direct and oversee the litigation as she has the "largest financial interest." On the date of the Orders, Sonthalia suffered an economic loss of $384,185 on her View shares while Stadium lost $330,009. Even after accounting for the way *Dura* has been historically applied, Sonthalia still lost $384,185 while Stadium only lost $127,048. Further, Stadium failed to rebut her presumption. Thus, Sonthalia's right and interest in acting as Lead Plaintiff can only be meaningfully protected by mandamus relief. *See Cavanaugh*, 306 F.3d at 740 (Wallace, J., concurring) ("[P]laintiffs are damaged by this order because they will be denied their presumptive statutory right under…the PSLRA to direct and oversee the litigation with their choice of counsel.").

### D. The Orders are clearly erroneous as a matter of law.

While not strictly "necessary," the third *Bauman* factor is "highly significant." *Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813, 820 (9th Cir. 2004). Error is "clear" when this Court has "a 'firm conviction' that the district court has made a mistake in interpreting the law, or there has been a 'clear abuse of discretion.'" *In re*

*U.S. Dep't of Educ.*, 25 F.4th 692, 698 (9th Cir. 2022). This may arise when "similar cases from our court, cases from the Supreme Court, cases from other circuits, the Constitution, or statutory language definitively show 'that a mistake has been committed.'" *Id.* Relief may also be granted where correcting an error "provide[s] necessary guidance to the district courts … to assist them in their efforts to ensure that the judicial system operates in an orderly and efficient manner." *In re Cement Antitrust Litig.*, 688 F.2d 1297, 1307 (9th Cir. 1982), *aff'd*, 459 U.S. 1191 (1983).

Here, the DC erred because its methodology for assessing "financial interest" replaced movants' actual purchase prices with the market price of View stock "just prior to disclosure." Thus, the price movants paid had **no relevance** to their "financial interest." To support that methodology, the DC effectively held that all pre-disclosure "loss" in value resulted from "market forces" rather than the alleged fraud. This is erroneous. The Orders are inconsistent with: (1) the widely accepted "out-of-pocket" measure of damages, (2) the PSLRA's damages framework, (3) the Supreme Court's *Dura* ruling, and (4) nearly all other courts' rulings on this issue.

        1.    <u>The Orders do not follow the "out-of-pocket" rule.</u>

"Like any other tort plaintiff who seeks to recover damages, a plaintiff in a securities fraud suit must plead and ultimately prove that the defendant's wrongful conduct caused the plaintiff's injury." *Bofi*, 977 F.3d at 789. Pre-PSLRA, no statutory guidance for calculating damages existed in a securities fraud action, but

the method traditionally used—measuring "out-of-pocket" damages—was adopted in *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 155 (1972). There, the Supreme Court, referring to 15 U.S.C. § 78bb(a)(1) which limits recovery to "actual damages," held that "the correct measure of damages … is the difference between the fair value of all that the [plaintiff] received [—*i.e.*, inflated price paid] and the fair value of what he would have received had there been no fraudulent conduct." *Id.* Pre-PSLRA, that non-fraud value was the market price "on the date the corrective information is disseminated to the market." *See* S. Rep. No. 104–98, at 19-20.

Following *Affiliated Ute*, this Court and others have similarly held that "[u]nder the out of pocket standard each purchaser recovers the difference between the inflated **price paid** and the value received, plus interest on the difference." *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975). *Accord*, *e.g.*, *Mathews v. Kidder, Peabody & Co. Inc.*, 260 F.3d 239, 249 (3d Cir. 2001) (damages "are most commonly calculated as the difference between the **price paid** for a security and the security's true value"); *HsingChing Hsu v. Puma Biotechnology, Inc*., 2019 WL 4295285, at *4 (C.D. Cal. Sept. 9, 2019) (quoting *Blackie*); *In re Novatel Wireless Sec. Litig*., 2013 WL 12144150, at *10 (S.D. Cal. Oct. 25, 2013) (measure is the "difference between the **price paid** and the value of the stock absent misrepresentation"); *Strategic Diversity, Inc. v. Alchemix Corp*., 666 F.3d 1197, 1208 (9th Cir. 2012); *In re Veritas Software Corp. Sec. Litig.,* 496 F.3d 962, 967 n.3

(9th Cir. 2007); *Mathews*, 260 F.3d at 249; *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). In sum, long before and after the PSLRA, this Court and others have endorsed the out-of-pocket rule. The Orders erroneously rejected this rule.

2.  The Orders are inconsistent with the PSLRA's damages framework, in place since 1995.

When crafting the PSLRA, Congress noted that "[c]alculating damages based on the date corrective information is disclosed may substantially overestimate plaintiff's actual damages." S. Rep. No. 104-98, at 20. To "rectify the uncertainty in calculating damages," the PSLRA provided a "bounce back" (or "lookback") period limiting damages to "losses caused by the fraud and not by other market conditions." *Id.* As such, if a plaintiff seeks damages "by reference to" a security's market price:

> [T]he award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.
>
> ***
>
> [I]f the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on

which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(1)-(2). "In essence, [the PSLRA] 'does not calculate damages based on the single day decline in price, but instead allows the security an opportunity to recover' over a period of 90 days." *Acticon*, 692 F.3d at 39. Beyond imposing this "cap" on recoverable losses after a corrective disclosure, "Congress did not otherwise disturb the traditional out-of-pocket method for calculating damages." *Acticon*, 692 F.3d at 39; *see In re Royal Dutch/Shell Transp. Sec. Litig.*, 404 F. Supp. 2d 605, 609-10 (D.N.J. 2005) (The lookback provision "is consistent with the out-of-pocket loss measure of damages traditionally applied by courts").

In light of the legislative history and subsequent precedent, the DC's methodology strays from "the statutory track," *Mersho*, 6 F.4th at 898, and disregards legal precedent. For this reason too, the DC clearly erred.

3.    The Orders are contrary to the Supreme Court's *Dura* ruling.

A decade after the PSLRA was enacted, the Supreme Court rejected a rule that loss causation may be plead by alleging that "the price on the date of purchase was inflated because of the misrepresentation." *Dura*, 544 U.S. at 340. It emphasized that misrepresentations must proximately cause loss, and that, "[n]ormally, in cases such as this one (*i.e.*, fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic price." *Id.* at 342. Subsequently, this Court agreed that "[t]o adequately plead loss causation … a

plaintiff must allege that the 'share price fell significantly after the truth became known." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010).

Thus, under *Dura* and its progeny, a plaintiff must show that "after purchasing her shares ... (1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated," at which point "the plaintiff has suffered an economic loss caused by the misstatements because she is no longer able to recoup in the marketplace the inflationary component of the **price she originally paid**." *Bofi*, 977 F.3d at 789 (*citing FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1311 (11th Cir. 2011). Moreover, under *Dura*, "loss causation does not require a showing that a misrepresentation was the ***sole*** reason for the investment's decline"; it need only be a "substantial cause" of the decline in value as "other contributing forces will not bar recovery." *Id*. at 790.

Accordingly, the Supreme Court fully respected the out-of-pocket rule and PSLRA requirement of using actual purchase price as the starting point for calculating damages. *See Acticon*, 692 F.3d at 40 ("This holding does not alter or abandon the traditional out-of-pocket measure for damages[.] Rather, the [Supreme] Court merely clarified that a securities fraud plaintiff who purchased stock at an inflated purchase price must still prove that she suffered an economic loss, and that that loss was proximately caused by defendant's misrepresentation."); *Sallustro*, 93 F. Supp. 3d at 277 ("*Dura* does not state that purchase price plays no role in loss

analysis, nor does its logic require such an approach."). Further, *Dura* did not instruct or permit courts to make premature factual findings about "price impact" or "transaction causation," which are separate and distinct elements of reliance, governed by the presumption that when investors purchase Class Period stock, they do so in reliance on the misrepresentations reflected in the artificially inflated stock price at that time. *See Halliburton*, 563 U.S. at 812-14. While *Dura* questioned how in-and-out traders show loss causation, courts have recognized this as a factual issue that need not be answered before discovery ends. *See In re DVI, Inc. Sec. Litig.,* 639 F.3d 623, 639 (3d Cir. 2011); *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619 (N.D. Cal. 2018); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1188 (N.D. Cal. 2017); *McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 699 (W.D. Wash. 2010).

Courts that have chosen to apply *Dura*, when identifying lead plaintiffs, do so by excluding shares sold before the corrective disclosure. The reasoning is straightforward: there cannot be proximate causation for shares sold prior to public revelation of the "truth," eliminating the artificial inflation, and causing the stock price to drop. In applying *Dura*, courts need not alter or substitute actual purchase or sale prices. They simply exclude gains or losses on shares sold before the corrective disclosure.

Consistent with those principles, the DC applied *Dura*, excluding gains or losses Stadium had on pre-Corrective Disclosure sales. Again, in addition to buying

View stock at artificially inflated prices, Stadium has to show that this artificial inflation dissipated **after** the truth became known. But Stadium would have difficulty showing it was damaged from the Corrective Disclosure's 24% devaluation of shares it no longer owned.

However, the DC made an egregious error by expanding *Dura* to eliminate actual purchase prices from the equation. Specifically, Sonthalia did not sell shares during the Class Period (or lookback), so *Dura* does not change her loss. In other words, since she was holding all her shares at the time of the Corrective Disclosure and resulting stock drop—purchased at artificially inflated prices due to Defendants' misrepresentations—it was then when the fraud proximately caused her loss.[3]

The DC additionally erred in making a factual determination that the actual purchase prices of movants' shares were irrelevant to or disconnected from reliance, loss causation, and damages. The DC's reality-blind theory finds, as a matter of fact in all cases, that the alleged fraud did not artificially inflate the stock price throughout the Class Period more than the price of the stock on the day before the Corrective Disclosure was made. Under that theory, numerous critical factors in securities fraud class actions become obsolete. Indeed, for calculating

---

[3] While non-fraud factors may have caused some of the depreciation in View's stock price, that determination should not occur until after discovery and experts. Making this factual finding at lead plaintiff, without any record at all (like the DC did), is inappropriate.

losses/damages, it would not matter, for example:

- if a stock price rose by 1% versus 10,000% after misstatements;
- if a class member paid $1 or $1,000,000 per share;
- if a class member sold stock for a profit; or
- *why* a stock price dropped, during the Class Period, but before the Corrective Disclosure.

But—decades of precedent (at lead plaintiff and subsequent stages of litigation) involving hundreds of event studies and comprehensive reports from economic, financial and damages experts show that these differences are **vital** in assessing price impact and calculating losses arising from securities fraud. Nonetheless, the DC saw those issues immaterial. App. 10-11.

In sum, the DC's methodology is inconsistent with Supreme Court and Ninth Circuit precedent recognizing the importance of purchase price in calculating plaintiffs' (and class members') loss and is inconsistent with decades of litigating PSLRA cases. Therefore, this methodology warrants appellate review and reversal.

4.   Nearly all district courts have rejected the DC's methodology.

Other district courts have repeatedly rejected the DC's reality-blind methodology as inconsistent with the out-of-pocket rule, the PSLRA, and *Dura*.

Specifically, courts have held that "adopti[ng] a standard in which purchase price never plays a part in determining loss would work a radical change in the law [and] *Dura* requires no such result," *Sallustro*, 93 F. Supp. 3d at 277 ("Given the statutory scheme … it would be odd to apply a loss model that precludes any

reference to purchase price.").[4] Indeed, in *Wrap*, Judge Gee noted that "no authority"

existed in this Circuit for calculating *Dura* recoverable loss using a methodology

"which makes purchase price irrelevant" to "appoint a lead plaintiff in a PSLRA

suit." 2021 WL 71433, at *2 ("*Dura* and the PSLRA contemplated consideration of

the purchase price," and "*Dura* does not require a loss calculation that ignores

purchase price"). Further, the DC's methodology may lead to unfair or even

"absurd" results.[5] Accordingly, "**countless decisions**"—at lead plaintiff—have

premised loss calculations on purchase price. *Id*. at 277 (collecting cases).[6]

---

[4] *See e.g.*, *Simco*, 2018 WL 11226076 at *3 (following *Sallustro*, rejecting same methodology as "inconsistent with the statutory scheme and the Supreme Court's reasoning in *Dura*"); *Gutman v. Sillerman*, 2015 WL 13791788, at *5-*6 (S.D.N.Y. Dec. 8, 2015) (Since *Dura* "repeatedly states that purchase price might prove relevant to loss analysis," disregarding purchase price and "subtract[ing] the share price following the curative disclosure from the share price immediately prior to disclosure" would be "inconsistent … with *Dura* itself.").

[5] "For example, because purchase price is irrelevant … an investor who bought the stock at $100, watched it rise to $150 [just prior to disclosure], then sold the stock at $125 after a corrective disclosure, could recover for the $25 price drop, even though at $125 the investor would have realized a $25 profit." *Sallustro*, 93 F. Supp. 3d at 276 n.11.

[6] *See e.g., Xu v. FibroGen, Inc*., 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021) (using price paid to calculate losses under "actual losses" and *Dura* "potential recovery" methods); *Lewis v. CytoDyn, Inc.*, 2021 WL 3709291, at *5 (W.D. Wash. Aug. 19, 2021) (applying "actual loss" LIFO and *Dura*-adjusted LIFO); *Perlmutter*, 2011 WL 566814, at *7 (starting with "purchase price" under *Eichenholtz* and Economic Loss methods); *Scheller v. Nutanix, Inc*., 2021 WL 2410832, at *4 n.2 (N.D. Cal. June 10, 2021) (selecting movant with largest loss under both LIFO and the *Dura* LIFO); *Loftus v. Primero Mining Corp*., 2016 WL 11741138, at *4-*5 (C.D. Cal. May 12, 2016) (starting with "Net Funds Expended" and then applying

Further, district courts in this Circuit have routinely found that, pursuant to the PSLRA and *Dura*, the recoverable loss method simply "looks to losses experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed, and thus focuses on losses caused when stock purchased at artificially inflated prices decreases in value due to the disclosure of the fraud." *In re Lyft Sec. Litig.,* 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020).

The Recoverable Loss method, advanced by Sonthalia and routinely accepted in this Circuit, was first adopted in *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008). The *Eichenholtz* Court calculated "financial interest" by looking "to shares bought during the class period that are retained at the end of the class period," because losses on sales before the corrective disclosure "would later be considered uncompensable" under *Dura*. *Id*. at *3-*4. To calculate each movant's loss, the court started with the LIFO "**purchase price**" of the retained shares (paid "closest in time to, but before, the corrective disclosure"), deeming it more appropriate than the FIFO price ("calculated according to the shares purchased at the beginning of the class period"). *Id*. at *4. The pertinent sale price pursuant to the PSLRA was then subtracted from the "**amount paid** for the shares retained." *Id.*; *see e.g.*, *Saint Jermain v. Fluidigm Corp.*, 2020 WL 7342717, at *4 (N.D. Cal. Dec.

---

*Dura* discount); *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *4-*5 (S.D. Cal. Oct. 23, 2006) ("[A]pproximate loss should be measured by the **cost of retained shares** less the price at which those shares were sold.").

14, 2020) (starting with "Price Per Share at Purchase" to calculate recoverable loss); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *2 (N.D. Cal. Sept. 20, 2010) (same); *Mulligan v. Impax Lab'ys, Inc*., 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013) ("the retained shares method articulated in *Eichenholtz* most closely approximates the financial interest of the potential plaintiffs")[7]; *Schueneman v. Arena Pharm., Inc*., 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011)[8].

Despite this robust precedent, the DC relied primarily on *Markette v. XOMA Corp*., 2016 WL 2902286 (N.D. Cal. May 13, 2016), and *Enphase*, 2020 WL 7025085. *Markette* cited *Eichenholtz* for the limited proposition that the pre-disclosure value of shares should be calculated with "the price of the stock at the time immediately before disclosure of the purported fraud." 2016 WL 2902286 at *6. But as shown above, *Eichenholtz* says no such thing—there, the court used actual purchase price as the value of retained shares. *See* 2008 WL 3925289 at *3-*4. And as detailed *supra*, the facts in *Enphase* (where undersigned counsel advocated for the approach followed) presented *extremely* unique circumstances in which the

---

[7] Stadium argued below (*see* App. 78) that *Mulligan* supports its position that the "price of the stock immediately before disclosure" may appropriately replace the purchase price. That is incorrect. *Mulligan* followed *Eichenholtz*, as shown by the court's request for submissions pursuant to *Eichenholtz*, as well as those submissions which calculated movants' losses using the actual price of shares bought most recently, but before the corrective disclosure. 2013 WL 3354420, ECF Nos. 45-47.

[8] The victorious lead plaintiff in *Schueneman* was represented by Stadium's selected Lead Counsel, Kaplan Fox & Kilsheimer LLP, who advocated for the application of the PSLRA's damage cap that it now disavows. *See Schueneman*, ECF No. 49.

movants bought and/or sold their "retained" shares on the last day of the class period while the market was absorbing the "truth" revealed that same day. 2020 WL 7025085, ECF No. 29. As such, the method proposed by the movant, and accepted by the DC, was in the spirit of *Dura* rather than applying the widely accepted recoverable loss method.

Similarly unpersuasive is *Marjanian v. Allied Nev. Gold Corp.*, 2014 WL 12769810 (D. Nev. Nov. 7, 2014), which remotely supports the DC's purchase-price-irrelevant methodology. Despite referencing *Eichenholtz* and *Ruland* to support calculating losses only for shares held at the time of the corrective disclosure, *Marjanian* deviated from these cases, as detailed *supra*, and started with "the price of the shares at closing on [the day before disclosure]" to calculate losses. 2014 WL 12769810 at *4-*5. *Marjanian* did so **without** citation or explanation. *See id.* Notably, the only case that even mentions *Marjanian* is *Wrap*, which flatly rejected it and followed *Sallustro*. *See* 2021 WL 71433, at *2.

Finally, the DC's distinction of *Wrap* does not warrant its methodology. The DC noted that *Wrap* involved multiple corrective disclosures (*see* App. 14, 123-24); but *Wrap* never mentions "multiple disclosures" as a basis for rejecting the purchase-price-irrelevant method. 2021 WL 71433, at *2. Moreover, purchase price has been used in numerous single disclosure cases (as well as multiple disclosure cases). *See Loftus*, 2016 WL 11741138, at *4-*5; *Schueneman*, 2011 WL 3475380, at *4;

*Applestein*, 2010 WL 3749406, at *2; *Eichenholtz*, 2008 WL 3925289, at *4.

The DC reasoned its purchase-price-irrelevant methodology more accurate because market price declines during the Class Period are "potentially not linked to the Corrective Disclosure." App. 11. But the DC acknowledged that a causal link to these declines, though "uncertain," may indeed be "proven," and Sonthalia obviously has an interest in proving such a link. *Id.* As the DC itself stated, "[o]ne's 'interest' in a litigation is rather directly tied to what one **might** recover." App. 12. Sonthalia might well recover some or all the "loss in value" the DC deemed "potentially" non-recoverable, since she only needs to prove that the alleged fraud was a "substantial cause" or "contributing force[]" to that loss. *Bofi*, 977 F.3d at 790. The DC deprived her of the chance to do so without any discovery.

Further, whether the requisite causal link exists is a jury question, usually based on fact and expert testimony.[9] It should not be decided, even preliminarily, at lead plaintiff, when movants' potential losses should be maximized. *See Eichenholtz*, 2008 WL 3925289, at *4 (using calculation "maximiz[ing] the potential

---

[9] For example, in *Novatel*, the court denied a motion to exclude an expert whose calculation included "significant damages for price declines that occurred" before the corrective disclosure. 2013 WL 12144150, at *10. Because the expert used the reliable "out-of-pocket calculation," any argument that "Plaintiffs would recover losses that are non-fraud related … tends to go towards the probative value of the testimony to be addressed at trial for the jury to consider." *Id.*; *see also Murphy v. Precision Castparts Corp.*, 2020 WL 4040827, at *23 (D. Or. July 17, 2020) (quoting *Novatel*, denying motion to exclude); *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *9 (D. Ariz. Dec. 27, 2019) (same).

losses"); *Perlmutter*, 2011 WL 566814, at *5 ("calculating damages in a securities fraud case is a highly technical task that usually involves a battle of experts").

In view of the long line of cases faithful to the out-of-pocket rule, the PSLRA damages framework and *Dura*, mandamus is warranted to correct the DC's clear error (and provide guidance to this circuit's district courts).

### E.    Sonthalia has satisfied the remaining *Bauman* factors.

"The fourth and fifth *Bauman* factors are often mutually exclusive." *Mersho*, 6 F.4th at 903. The fourth factor considers whether the case involves an "oft-repeated error," while the fifth looks at whether the petition raises new and important problems or issues of first impression. *Id.*[10] Here, the fifth factor weighs in favor of mandamus relief because the petition raises a "novel and important question … that reflects substantial uncertainty and confusion in the district courts." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010) (collecting cases granting relief on an "important issue of first impression").[11]

How to calculate the "largest financial interest" under the PSLRA is a significant, recurring issue on which this Court has not spoken for 20 years. And

---

[10] As to the fourth factor, the error was repeated in *Markette*, *Marjanian*, and perhaps *Enphase*.

[11] *See also Williams-Sonoma*, 947 F.3d 535 at 538 (where an "important issue of first impression is raised, the standard is ordinary error"); *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (same); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999) (same).

when it did, this Court simply said without adopting a specific calculation, that district courts must calculate financial stakes using any method that is "both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4.

As discussed in detail above, courts in this Circuit regularly accept movants' actual purchase price as the explicit starting point for calculating losses. And the few opinions adopting purchase-price-irrelevant methodologies have resulted from erroneous interpretations of the PSLRA and *Dura* recoverable losses. However, if calculating loss involves excluding the actual purchase price—and substituting in the market price the day before a corrective disclosure—then this Court should make that holding explicit and permit movants to consider and apply that methodology.

In sum, the current landscape is conflicting holdings supporting sundry and inconsistent positions (Economic Loss, Recoverable Loss utilizing the PSLRA, Recoverable Loss rejecting the PSLRA). Hence, this Court needs to "guid[e] the district courts … to assist them in their efforts to ensure that the judicial system operates in an orderly and efficient manner." *Cement*, 688 F.2d at 1307. With "no cases from the Ninth Circuit guiding district courts" on this important issue, the fifth factor has been met, supporting mandamus relief. *See Mersho*, 6 F.4th at 903.

## VI. CONCLUSION

Based on the foregoing, Sonthalia respectfully submits that the *Bauman* factors support granting her mandamus relief.

DATED: March 14, 2022

Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Ivy T. Ngo*
Ivy T. Ngo
Constantine P. Economides
Velvel (Devin) Freedman
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Petitioner Sweta Sonthalia and
Proposed Lead Counsel*

**LABATON SUCHAROW LLP**
David J. Schwartz
140 Broadway
New York, New York 10005
T: (212) 907-0870
dschwartz@labaton.com

*Additional Counsel for Petitioner
Sweta Sonthalia*

## STATEMENT OF RELATED CASES

Petitioners know of no related cases pending in this Court.

# **CERTIFICATE OF COMPLIANCE**

I hereby certify that this petition complies with the length requirements of Federal Rule of Appellate Procedure 21(d) and Ninth Circuit Rule 21-2(c) because it contains 7,772 words, excluding the parts exempted in Federal Rules of Appellate Procedure 21(a)(2)(C) and 32(f). I further certify that this petition complies with the typeface and style-type requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font.

*/s/ Ivy T. Ngo*
Ivy T. Ngo

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 10, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the appellate CM/ECF system. Service has been accomplished via Priority Mail and/or electronic mail, either personally or through counsel, to the following Real Parties in Interest:

| Party | Service Address |
|---|---|
| View Inc. f/k/a CF Finance Acquisition Corp. II and Rao Mulpuri | Robert L. Dell Angelo, John W. Berry, John M. Gildersleeve<br>Munger Tolles & Olson LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071-3426 |
| Vidul Prakash | 832 Nash Road<br>Los Altos, CA 94024 |
| Stadium Capital LLC | Frederic S. Fox, Jason Aron Uris<br>Kaplan Fox & Kilsheimer LLP<br>850 Third Avenue, 14th Floor<br>New York, NY 10022<br><br>Kathleen A. Herkenhoff, Laurence D. King, Blair Elizabeth Reed<br>Kaplan Fox & Kilsheimer LLP<br>1999 Harrison Street, Suite 1560<br>Oakland, CA 94612 |
| Larry Lin | Laurence M. Rosen<br>The Rosen Law Firm, P.A.<br>355 South Grand Avenue, Suite 2450<br>Los Angeles, CA 90071 |
| Feng Li | Charles H. Linehan<br>Glancy Prongay & Murray LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067 |

| FirstFire Global Opportunities Fund, LLC | Ian David Berg<br>PGMGM<br>161 Washington St., Suite 250<br>Conshohocken, PA 19428<br><br>Takeo A. Kellar<br>Abraham, Fruchter & Twersky, LLP<br>11622 El Camino Real, Suite 100<br>San Diego, CA 92130 |
|---|---|
| Majdi Mojahed | Jennifer Pafiti<br>Pomerantz LLP<br>1100 Glendon Avenue, 15th Floor<br>Los Angeles, CA 90024 |

The District Court has also been provided with a copy of the Petition for Writ of Mandamus via overnight mail and electronic mail:

The Honorable Beth Labson Freeman
 United States District Court
San Jose Courthouse, Courtroom 3 – 5th Floor
280 South 1st Street
San Jose, CA 95113
BLFCRD@cand.uscourts.gov

*/s/ Ivy T. Ngo*
Ivy T. Ngo

# APPENDIX

# INDEX TO DOCUMENT REFERENCES IN
# PETITION FOR WRIT OF MANDAMUS

| **Description of Item** | **Record Entry No.** | **Excerpt Page No.** |
|---|---|---|
| **Order Appointing Lead Plaintiff and Lead Counsel (02/08/2022)**.......................................... | **R.67** | **1** |
| **Transcript of Proceedings held January 6, 2022**.................................................... | | **18** |
| **Notice of Motion and Motion for Appointment of Sweta Sonthalia as Lead Plaintiff and Approval of Selection of Counsel; Memorandum of Points and Authorities in Support Thereof (10/18/2021)**.......................................... | **R.27** | **41** |
| **Exhibit B – Loss Chart (10/18/2021)**.......................................... | **R.30-2** | **55** |
| **Notice of Motion, Motion and Memorandum of Points and Authorities in Support of Stadium Capital LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (10/18/2021)**.......................................... | **R.31** | **57** |
| **Exhibit 3 – Stadium Capital Loss Chart** .... | **R.31-4** | **70** |
| **Memorandum of Points and Authorities in Further Support of Stadium Capital LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, and in Opposition to Competing Motions (11/01/2021)** ...................................... | **R.46** | **73** |

i

| Description of Item | Record Entry No. | Excerpt Page No. |
|---|---|---|
| **Memorandum of Points and Authorities in Further Support of Sweta Sonthalia's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, and in Opposition to Competing Lead Plaintiff Motions (11/01/2021)** ........................................................ | **R.47** | **81** |
| **Sweta Sonthalia's Reply in Support of Her Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (11/08/2021)** ........................................................ | **R.48** | **94** |
| **Reply Memorandum of Points and Authorities in Further Support of Stadium Capital LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, and in Opposition to Competing Motions (11/08/2021)** ........................................................ | **R.49** | **102** |
| **Order Requesting Joint Submission in Support of Motions to Appoint Lead Plaintiff and Lead Counsel (01/03/2022)** ........................................................ | **R.56** | **107** |
| **Joint Submission in Response to the Court's Order Dated January 3, 2022 (01/05/2022)** ........................................................ | **R.61** | **108** |
| **Exhibit A – Loss Chart**................................. | **R.61-1** | **112** |

| Description of Item | Record Entry No. | Excerpt Page No. |
|---|---|---|
| **Notice of Motion and Motion of Sweta Sonthalia for Leave of Court to File Motion for Reconsideration of Order Appointing Lead Plaintiff and Approving Selection of Counsel; Memorandum of Points and Authorities in Support** (02/22/2022)............................................... | **R.74** | **114** |
| **Exhibit 1 – Chart of Purchased Retained Shares** (02/22/2022) ....................................... | **R.75-1** | **134** |
| **Order Denying Motion for Leave to File Motion for Reconsideration of Order Appointing Lead Plaintiff and Approving Selection of Counsel** (02/23/2022) ....................................... | **R.76** | **136** |
| **District Court Docket Sheet California Northern District (San Jose) 5:21-cv-0637-4-BLF** ............................................ | | **139** |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, <br><br>       Plaintiff, <br><br>    v. <br><br> VIEW, INC., et al., <br><br>       Defendants. | Case No.  21-cv-06374-BLF <br><br> **ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL** <br><br> [Re:  ECF Nos. 27, 31] |

Before the Court are Sweta Sonthalia and Stadium Capital LLC's ("Stadium") competing Motions for Appointment as Lead Plaintiff and Lead Counsel in this securities class action brought by Plaintiff Asif Mehedi against View, Inc. ("View") and its CEO Rao Mulpuri and CFO Vidul Prakash ("Individual Defendants").  Mr. Mehedi brings claims on behalf of a putative class of investors who bought View securities between November 30, 2020 and August 16, 2021 (the "Class Period") and allegedly suffered losses based on View's making materially false or misleading statements and failing to disclose material adverse facts about the company's business, including warranty costs and internal controls.  *See* Complaint, ECF No. 1 ¶¶ 36–41.  View's alleged fraud led to a fall in its stock price following an announcement after the market closed on August 16, 2021 that it was beginning an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual (the "Corrective Disclosure").  *See id.* ¶¶ 5–6.

Ms. Sonthalia and Stadium allege that they purchased View securities during the Class Period and suffered losses as a result of Defendants' alleged fraud, and they each move to be appointed as Lead Plaintiff and their counsel to be appointed as Lead Counsel.  *See* Sonthalia Motion, ECF No. 27; Stadium Motion, ECF No. 31.  Ms. Sonthalia and Stadium dispute who is the presumptive Lead Plaintiff in this case based on the amount of loss suffered, because they calculate

**1**

loss in different ways. While Ms. Sonthalia proposes "last in, first out" ("LIFO") net loss and *Dura*-adjusted LIFO loss formulas that indicate she suffered a higher economic and recoverable loss from Defendants' alleged fraud, Stadium proposes a loss formula adopted by this Court in the *Enphase* case, which indicates that Stadium suffered the higher value of recoverable loss. *See Hurst v. Enphase*, No. 20–cv–04036–BLF, 2020 WL 7025085, at \**2–4 (N.D. Cal. Nov. 30, 2020). Ms. Sonthalia requests appointment of her counsel Roche Freedman LLP as Lead Counsel, while Stadium requests appointment of its counsel Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"). *See* Sonthalia Motion, ECF No. 27 at 8–9; Stadium Motion, ECF No. 31 at 7.

Based on the below reasoning, the Court APPOINTS Stadium as Lead Plaintiff and Kaplan Fox as Lead Counsel. All other Motions are DENIED.

## I. BACKGROUND

View is a technology company that primarily manufactures a "smart" glass panel that adjusts in response to changing sunlight through dynamic tinting. *See* Complaint, ECF No. 1 ¶ 18. View is a Delaware corporation with its principal place of business in California that trades on the NASDAQ exchange. *See id.* ¶ 14. On August 18, 2021, Plaintiff Asif Mehedi filed the present action, alleging that View and the Individual Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and the Individual Defendants violated Section 20(a) of the Exchange Act, through materially false or misleading statements and failure to disclose material adverse facts about its business during the Class Period. *See id.* ¶¶ 1–8, 54–68. Plaintiff alleges that during the Class Period, View failed to disclose to investors that "(1) View had not properly accrued warranty costs related to its product; (2) that there was a material weakness in View's internal controls over accounting and financial reporting related to warranty accrual; (3) that, as a result, the Company's financial results for prior periods were misstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading or lacked a reasonable basis." *Id.* ¶ 33; *see also id.* ¶¶ 21–33. On August 16, 2021, after the market closed, View made the Corrective Disclosure, which stated that View "recently began an independent investigation concerning the adequacy of the Company's previously disclosed warranty accrual." *Id.* ¶ 34. Following the Corrective

Disclosure on August 16, 2021, View's share price allegedly fell $1.26, or over 24%, to close at $3.92 per share on August 17, 2021. *See id.* ¶ 35.

Mr. Mehedi purchased View stock during the Class Period and allegedly suffered damages as a result of View and the Individual Defendants' alleged securities law violations. *See id.* ¶¶ 8, 13, 36, 42, 44–46. Mr. Mehedi brings his claims on behalf of a putative class consisting of "all persons and entities that purchased or otherwise acquired View securities between November 30, 2020 and August 16, 2021, inclusive, and who were damaged thereby" (the "Putative Class"). *See id.* ¶ 36.

On October 18, 2021, five individuals and entities filed Motions to Appoint Lead Plaintiff and Lead Counsel—Feng Li; FirstFire Global Opportunities Fund, LLC; Majdi Mojahed; Ms. Sonthalia; and Stadium. *See* ECF Nos. 18, 22, 26, 27, 31. Three of those original movants—Mr. Mojahed, FirstFire, and Mr. Li—filed statements of non-opposition to the competing Motions and provided no further briefing. *See* ECF Nos. 42, 44, 45. Ms. Sonthalia and Stadium fully briefed their Motions. *See* Stadium Opposition, ECF No. 46; Sonthalia Opposition, ECF No. 47; Stadium Reply, ECF No. 49; Sonthalia Reply, ECF No. 48.

The Court considers Ms. Sonthalia and Stadium's competing Motions.

## A. Sweta Sonthalia

Ms. Sonthalia is a resident of Singapore who has been investing in securities for over 3 years. *See* Declaration of Ivy T. Ngo ("Ngo Decl."), ECF No. 30, Ex. C ¶ 3. Ms. Sonthalia moves for an order appointing her Lead Plaintiff and Roche Freedman LLP as Lead Counsel for the Class. *See* Sonthalia Motion, ECF No. 27. Ms. Sonthalia indicates that she bought 60,424 shares of View securities, expending a total of $700,202.57, between December 10, 2020 and February 5, 2021. *See id.* at 5–6; Ngo Decl., ECF No. 30, Ex. B. Ms. Sonthalia retained all 60,424 shares until the end of the Class Period and until the end of 90-day period following the Corrective Disclosure on August 16, 2021. *See* Joint Submission, ECF No. 61, Ex. A.

Based on her $700,202.57 in expenditures, her 60,424 shares in retained stock, and the $5.23 average price for View stock during the 90-day period following the Corrective Disclosure, Ms. Sonthalia is asserting under 15 U.S.C. § 78u-4(e) that she had net losses of approximately $384,185

($700,203 − 60,424 x $5.23 ≈ $384,185) to Stadium's $330,009.  *See id.*  Further, Ms. Sonthalia is asserting based on the Supreme Court's ruling in the *Dura* case that her recoverable losses are also equal to $384,185, because she retained all her shares until the end of the Class Period, whereas Stadium's recoverable losses are only $127,048, since it sold all but 60,000 of its shares prior to the Corrective Disclosure.  *See id.* (citing *Dura Pharma., Inc. v. Broudo*, 544 U.S. 336 (2005)).

### B.  Stadium Capital LLC

Stadium moves for an order appointing it as Lead Plaintiff and Kaplan Fox as Lead Counsel for the Class.  *See* Stadium Motion, ECF No. 31.  Stadium indicates that it bought 426,235 shares of View securities, expending a total of $3,642,869, between December 1, 2020 and August 12, 2021.  *See id.* at 4–5; Declaration of Laurence D. King ("King Decl."), ECF No. 31-1, Ex. 3.  Stadium retained 60,000 shares at the end of the Class Period.  *See* Stadium Motion, ECF No. 31 at 5.  Stadium sold its 60,000 retained shares on August 17, 2021 at a price of $4.2306 following the Corrective Disclosure.  *See* King Decl., ECF No. 31-1, Ex. 3.

Stadium asserts that it had $330,010 in net losses based on its purchase of View stock.  *See* Stadium Motion, ECF No. 31 at 4.  Stadium further asserts that based on the price of View stock on August 16, 2021 just prior to the Corrective Disclosure ($5.18), Stadium's 60,000 retained shares, and its August 17, 2021 sale price of $4.2306, Stadium had a recoverable loss of $56,964 (60,000 x $5.18 – 60,000 x $4.2306 ≈ $56,964).  *See* Stadium Opposition, ECF No. 46 at 5–6.  Stadium asserts that Ms. Sonthalia did not suffer a recoverable loss—in fact, it asserts that she experienced a gain of $3,022.  *See* Joint Submission, ECF No. 61, Ex. A.

## II.  LEGAL STANDARD

### A.  Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the procedure for selection of lead plaintiff in all private class actions under the Exchange Act. 15 U.S.C. § 78u-4(a)(3).  Pursuant to the PSLRA, the court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," also referred to as the "most adequate plaintiff."  *Id.* at § 78u-4(a)(3)(B)(i).

**4**

The PSLRA "provides a simple three-step process for identifying the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). First, the pendency of the action, the claims made, and the purported class period must be publicized in a "widely circulated national business-oriented publication or wire service." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)). This notice must be published within 20 days of the filing of the complaint. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). It must also alert members of the purported class that they have 60 days to move for appointment as lead plaintiff. *See id.* at 78u-4(a)(3)(A)(i)(II).

Second, the court must identify the presumptive lead plaintiff. To do so, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. In calculating financial stakes, "the court may select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4. The court must then determine whether the individual with the largest financial stake, "based on the information he has provided in his pleadings and declarations," satisfies the requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy.'" *Id.* at 730. If the plaintiff with the largest financial interest satisfies these requirements, he or she becomes the "presumptively most adequate plaintiff." *Id.*; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Finally, the other plaintiffs must have "an opportunity to rebut the presumptive lead plaintiff's showing that [he or she] satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. Unless a member of the purported plaintiff class provides proof that the presumptive plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class," the court must appoint the presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 732.

## B.    Lead Counsel

Under the PSLRA, the lead plaintiff has the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead

plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

## III.    DISCUSSION

### A.    Procedural Requirements

Pursuant to the PSLRA, Mr. Mehedi caused to be published via *Business Wire* a notice of the pending action on August 18, 2021. *See* ECF No. 8. The notice announced the pendency of this action, described the claims, specified the Class Period, and advised putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. *Id.*, Ex. A. Thus, the notice complied with the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A).

As noted above, Ms. Sonthalia and Stadium filed their Motions on October 18, 2021, the last day within the 60-day deadline following publication of the notice. The statutory notice requirements have therefore been met.

### B.    Greatest Financial Loss

In considering which movant for lead plaintiff appointment in a securities class action has the greatest financial interest, courts generally consider a four-factor test: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10–CV–03451–LHK, 2011 WL 566814, at *7 (N.D. Cal. Feb. 15, 2011) (citations omitted). Courts place the most emphasis on the final factor—the approximate losses suffered. *See id.*

Ms. Sonthalia and Stadium dispute who suffered the greatest losses. The Ninth Circuit has not adopted a specific formula for calculating losses. The only guidance it has provided is that courts "may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4; *Perlmutter*, 2011 WL 566814, at *3. Courts have used a variety of approaches for calculating losses. *See Mulligan v. Impax Labs., Inc.*, No. C–13–1037 EMC, 2013 WL 3354420, at **4–6 (N.D. Cal. July 2, 2013) (collecting cases). Generally, these approaches can be lumped into two categories—(1) those based on actual economic losses suffered ("Economic Loss")—*i.e.*,

**6**

net losses disregarding the possibility of recovery—and (2) those based on "potential recovery" ("Recoverable Loss"). See *Enphase*, 2020 WL 7025085, at *6.

Ms. Sonthalia and Stadium propose three potential formulas for calculating their financial losses. Ms. Sonthalia proposes (1) the LIFO net loss approach (Economic Loss) and (2) the *Dura*-adjusted LIFO net loss approach (Recoverable Loss), which both indicate that she suffered more losses than Stadium. *See* Sonthalia Opposition, ECF No. 47 at 6–7; Sonthalia Reply, ECF No. 48 at 3–5; Joint Submission, ECF No. 61, Ex. A. Stadium proposes (3) a different Recoverable Loss formula this Court adopted in *Enphase*, which indicates that Stadium suffered greater losses. *See* Stadium Opposition, ECF No. 46 at 4–6; Joint Submission, ECF No. 61, Ex. A. Stadium argues that the *Enphase* approach better represents the parties' recoverable losses, since it disregards losses the parties suffered that are unrelated to the alleged fraud. *See* Stadium Opposition, ECF No. 46 at 5–6; Stadium Reply, ECF No. 49 at 2–3. In response, Sonthalia argues that the *Enphase* approach was formulated (1) to maximize potential damages, which it does not do here, and (2) to address specific factual circumstances in the *Markette* and *Enphase* cases that are not at issue here. *See* Sonthalia Reply, ECF No. 48 at 3–5. The Court will consider each of the three loss formulas proposed by the parties in turn.

### i. Loss Formula #1 – LIFO Net Loss (Sonthalia)

The first proposed formula for calculating the Movants' losses is LIFO net loss, which is an Economic Loss formula. This is the approach both Movants initially used in their Motions, and Ms. Sonthalia continues to advance it as one of her proposed approaches to loss accounting. *See* Sonthalia Motion, ECF No. 27 at 5–6; Stadium Motion, ECF No. 31 4–5; Joint Submission, ECF No. 61, Ex. A. Under the LIFO net loss approach, the Court simply adds up the parties' expenditures on View stock during the Class Period ($700,203 for Ms. Sonthalia; $3,642,869 for Stadium) and subtracts all proceeds from the sale of that stock ($3,312,860 for Stadium). *See* Joint Submission, ECF No. 61, Ex. A. Since Ms. Sonthalia never sold her stock, her subtracted value is based on her number of shares (60,424) multiplied by the average price ($5.23) of View stock during the 90-day period following the Corrective Disclosure—$316,018 (60,424 x $5.23). *See* Joint Submission, ECF No. 61, Ex. A; Ngo Decl., ECF No. 30, Ex. B. Under this approach, Ms. Sonthalia

**7**

has the greater financial loss—$384,185 ($700,203 − $316,018) to Stadium's $330,009 ($3,642,869 − $3,312,860). *See* Joint Submission, ECF No. 61, Ex. A; Sonthalia Motion, ECF No. 27 at 5; Stadium Motion, ECF No. 31 at 4.[1]

The LIFO net loss formula accounts for the total losses experienced by the parties based on their purchase of View stock. The disadvantage of this approach for a case like the present one with a single Corrective Disclosure is that it takes into account losses that resulted from fluctuations in View stock prior to the Corrective Disclosure that potentially have nothing to do with the inflation resulting from the alleged fraud. *See Markette v. XOMA Corp.*, No. 15–cv–03425–HSG, 2016 WL 2902286, at *6 (N.D. Cal. 2016) ("When a single disclosure reveals a purported fraud, . . . the retained shares method is more accurate than LIFO, net loss, and other economic loss methods because it excludes losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud."); *Mulligan*, 2013 WL 3354420, at *7 ("At this stage in the proceedings, the question of whether the fraud premium was constant enough throughout the class period for benefits from early sales to offset losses from shares bought later in the class period is speculative. The Court thus finds that the . . . retained shares method is a more accurate estimate of the potential plaintiff's financial interest than simply looking at the number of net shares purchased during the class period.")

For example, as of July 7, 2021, Stadium had lost approximately $202,961 from pre-

---

[1] The Court notes that Ms. Sonthalia initially asserted a net loss of $390,804 in her Motion but now asserts a net loss of $384,185. *See* Sonthalia Motion, ECF No. 27 at 5; Joint Submission, ECF No. 61, Ex. A. The discrepancy results from the fact that at the time of her Motion, the 90-day period following August 16, 2021—the date of the Corrective Disclosure—had not fully lapsed, so the average View stock price was only $5.12. *See* Ngo Decl., Ex. B. After the full 90-day period lapsed, the average View stock price had increased to $5.23. *See* Joint Submission, ECF No. 61, Ex. A. Accordingly, the net loss of Ms. Sonthalia—who retained her 60,424 shares throughout the 90-day period following the Corrective Disclosure—decreased from $390,804 to $384,185 between the date her Motion was filed and the present.

Corrective Disclosure fluctuations in the price of View stock. *See* King Decl., ECF No. 31-1, Ex. 3. However, potentially none of this loss can be traced to the inflated stock value or the Corrective Disclosure, because it took place before the Corrective Disclosure. In *Dura*, the Supreme Court held that alleging losses in a securities fraud action based on an inflated purchase price alone is insufficient, including because "if . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010). Accordingly, the LIFO net loss formula accounts for losses that may not be recoverable in the action itself, so it may inflate a party's calculated loss value beyond the actual financial stake the party has in the action.

Based on the above reasoning, the Court declines to adopt the LIFO net loss approach.

### ii. Loss Formula #2 – *Dura*-Adjusted LIFO Loss (Sonthalia)

The second proposed formula for calculating the Movants' losses is *Dura*-adjusted LIFO loss, which is the Recoverable Loss approach advanced by Ms. Sonthalia. *See* Joint Submission, ECF No. 61, Ex. A; Sonthalia Opposition, ECF No. 47 at 6–7. Under this approach, the Court only considers the parties' losses from shares retained at the time of the Corrective Disclosure. *See Dura*, 544 U.S. at 342. Since Ms. Sonthalia retained all the View shares she purchased during the Class Period until the end of the Class Period, this approach does not change her losses from the net loss approach—Ms. Sonthalia's losses are still $384,185. *See* Joint Submission, ECF No. 61, Ex. A. However, since Stadium sold shares and sustained losses during the Class Period which are not included in the *Dura*-adjusted LIFO net loss calculation, its recoverable losses are lower than its total net losses. *See id.* Stadium only retained 60,000 shares at the end of the Class Period. *See* Stadium Motion, ECF No. 31 at 5. Stadium paid $380,884 for these shares and sold them on August 17, 2021 for $253,836 (60,000 x $4.2306). *See* Stadium Opposition, ECF No. 46 at 5. Accordingly, under the *Dura*-adjusted recoverable loss approach, Stadium sustained losses of $127,048 ($380,884 – $253,836). Therefore, under the *Dura*-adjusted LIFO approach, Ms. Sonthalia has the greater recoverable loss—$384,185 to Stadium's $127,048. *See* Sonthalia Reply, ECF No. 48 at 3–4; Joint Submission, ECF No. 61, Ex. A.

*Dura*-adjusted LIFO loss partially addresses the Court's concerns with the LIFO net loss approach, since it ignores a portion of the parties' losses that took place before the Corrective Disclosure that may not be linked to the inflation of the stock price caused by the alleged fraud. *See Mulligan*, 2013 WL 3354420, at *6. However, *Dura*-adjusted LIFO loss still takes into account some losses that likely have nothing to do with the alleged fraud.

For example, Ms. Sonthalia bought all her View stock on or before February 5, 2021. *See* Ngo Decl., ECF No. 30, Ex. B. Over the 16 transactions in which Ms. Sonthalia bought View stock, its share price was between $10.49 and $12.85. *See id.* Immediately prior to the Corrective Disclosure, the share price of View stock had plummeted to $5.18. *See* Joint Submission, ECF No. 61, Ex. A. Accordingly, prior to the Corrective Disclosure, Ms. Sonthalia had already experienced a significant loss—her View stock was worth less than half the value it had when she purchased it in late 2020 and early 2021. However, since this loss took place prior to the single Corrective Disclosure alleged in this case, it is likely not linked to the alleged fraud. *See Dura*, 544 U.S. at 342.

The same is true for Stadium—when it purchased the View shares it retained until the Corrective Disclosure, the share price was between $5.95 and $6.67, which was also higher than the $5.18 stock price just before the Corrective Disclosure. *See* King Decl., ECF No. 31-1, Ex. 3. So Stadium had also suffered a loss in the value of its View stock prior to the Corrective Disclosure. By taking into account this pre-Corrective Disclosure loss, the *Dura*-adjusted LIFO loss approach may still inflate the financial interest a party actually has in the litigation.

Based on the above reasoning, the Court declines to adopt the *Dura*-adjusted LIFO loss approach.

### iii. Loss Formula #3 – Recoverable Loss Approach (Stadium)

The third proposed formula for calculating Ms. Sonthalia and Stadium's losses attempts to address the issue the Court described regarding the *Dura*-adjusted LIFO loss approach. The third approach—which Stadium argues the Court should apply—is the Recoverable Loss approach this Court used in the *Enphase* case. *See Enphase*, 2020 WL 7025085, at *4; *see also Markette*, 2016 WL 2902286, at *6. Under this approach, the Court considers the value of each party's

**10**

retained stock just before the Corrective Disclosure and subtracts the party's sale proceeds for that stock (or, for stock retained past the 90-day post-Disclosure period, the number of shares multiplied by the average stock price). *See Enphase*, 2020 WL 7025085, at *4; *see also Markette*, 2016 WL 2902286, at *6. The only difference between this approach and the *Dura*-adjusted loss approach is instead of using the actual purchase price of the stock to determine its value before the Corrective Disclosure, the Court uses the stock price just before the Corrective Disclosure.

In this case, since the Corrective Disclosure was made after the market closed on August 16, 2021, under the Recoverable Loss approach, the Court would use the $5.18 price of View stock at the close of trading that day to calculate the pre-Disclosure value of the Movants' stock. *See* Stadium Opposition, ECF No. 46 at 5. Based on this approach, Ms. Sonthalia's View stock was worth approximately $312,996 (60,424 x $5.18) just prior to the Corrective Disclosure and Stadium's was worth approximately $310,800 (60,000 x $5.18). *See* Joint Submission, ECF No. 61, Ex. A. Subtracting from these the relevant values *after* the Corrective Disclosure ($316,018 for Ms. Sonthalia and $253,836 for Stadium—the same as Ms. Sonthalia proposed for the *Dura*-adjusted loss approach) yields the recoverable loss values under the *Enphase* approach—a $3,022 ($312,996 – $316,018) gain for Ms. Sonthalia and a $56,964 ($310,800 – $253,836) loss for Stadium. Accordingly, under the Recoverable Loss approach, Stadium has the greater recoverable loss value—in fact, Ms. Sonthalia shows a gain, not a recoverable loss.

The Court considers the Recoverable Loss approach to be an improvement on both the LIFO net loss and *Dura*-adjusted LIFO approaches. Like the *Dura*-adjusted LIFO approach, the Recoverable Loss approach considers only the shares retained at the time of the Corrective Disclosure, so it does not take into account losses from shares sold previously. Further, it ignores the losses the parties experienced from their stocks depreciating prior to the Corrective Disclosure. Since this loss is potentially not linked to the Corrective Disclosure, the Court does not see why it should be taken into account for determining the parties' financial interest in the litigation. "This is not to say that a causally related loss . . . cannot be proven; but it does make a substantial portion of [the parties' losses] uncertain for purposes of the pending motions." *Isaacs v. Musk*, No. 18–cv–04865–EMC, 2018 WL 6182753, at *4 (N.D. Cal. Nov. 7, 2018).

Ms. Sonthalia argues that the Recoverable Loss approach contradicts some courts' intent to "maximize the potential damages" when calculating financial interest. *See* Sonthalia Reply, ECF No. 48 at 4 (citing *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07–06140 MHP, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008)). The Court does not agree that maximizing damages should be the goal of determining the parties' financial stake in the litigation—rather, the goal should be formulating as accurate an estimate of the parties' recoverable loss as possible at this preliminary stage of litigation. Otherwise, as outlined above, the Court is potentially inflating the value of a party's interest in the litigation to a point that may not accurately reflect the value that party will be able to recover, which strikes the Court as contrary to the objective of the financial stake inquiry. *See Eichenholtz*, 2008 WL 3925289, at *4 ("[T]he court finds no reason to include losses in its calculations that would later be considered uncompensable."); *In re McKesson HBOC, Inc. v. Secs. Litig.*, 97 F.Supp.2d 993, 997 (N.D. Cal. 1999) ("One's 'interest' in a litigation is rather directly tied to what one might recover."); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011) (describing accounting approach as disadvantageous because it "may exaggerate losses") (citations omitted). Accordingly, the Court declines to follow other courts that have sought to maximize potential damages in calculating the parties' financial stake.

Ms. Sonthalia further argues that the Recoverable Loss approach "has not been consistently applied," contrary to the Ninth Circuit's guidance in *Cavanaugh*. *See* Sonthalia Reply, ECF No. 48 at 4 (citing *Cavanaugh*, 306 F.3d at 730 n.4). The Court disagrees. First, this Court previously adopted this approach in the *Enphase* case, so it is consistent for this Court to again apply this approach in the present case. *See Enphase*, 2020 WL 7025085, at *4; *Markette*, 2016 WL 2902286, at *6. Second, the Court has applied the Recoverable Loss approach consistently to Ms. Sonthalia and Stadium. As outlined below, any purported inconsistency Ms. Sonthalia identifies is merely the result of the differences in Ms. Sonthalia and Stadium's situations—Stadium sold its stock immediately after the Corrective Disclosure, whereas Ms. Sonthalia retained her shares for more than 90 days following the Corrective Disclosure.

Ms. Sonthalia additionally argues that the Recoverable Loss approach is inapplicable because of factual distinctions between this case and *Markette*, where the Recoverable Loss

**12**

approach was applied. Ms. Sonthalia argues that *Markette* was distinguishable, because all the parties in that case held their shares for at least 90 days following the corrective disclosure, so the same sale price applied to all parties. *See* Sonthalia Reply, ECF No. 48 at 4–5. Here, in contrast, Stadium sold its stock the day after the Corrective Disclosure, whereas Sonthalia held her shares for the 90-day post-Corrective Disclosure period, so different sale prices apply.

The Court is puzzled by this argument. Both Ms. Sonthalia and Stadium appear to agree on the relevant sale price for the two parties—they use the same sale price values in the *Dura*-adjusted loss calculation and the calculation based on the Recoverable Loss approach. *See* Joint Submission, ECF No. 61, Ex. A. The sale price is $4.2306 for Stadium, because this was the price Stadium sold its stock for on August 17, 2021. *See id.* And it is $5.23 for Ms. Sonthalia, since she retained her stock, and this is the average daily closing price for View stock during the 90-day period following the Corrective Disclosure. *See id.* This approach is consistent with 15 U.S.C. § 78u-4(e), which Ms. Sonthalia cites repeatedly. *See* Sonthalia Reply, ECF No. 48 at 3; Ngo Decl., ECF No. 30, Ex. B; *see also Mulligan*, 2013 WL 3354420, at *5 (quoting *Eichenholtz*, 2008 WL 3925289, at *4). Further, this approach—using different sale prices for Stadium and Ms. Sonthalia—accounts for their different outcomes: Stadium realized a loss by selling immediately after the Corrective Disclosure, whereas Ms. Sonthalia recuperated some of her loss by retaining her stock during the 90-day period following the Corrective Disclosure, during which the stock regained some of its value. *See* Joint Submission, ECF No. 61, Ex. A. Accordingly, the Court does not see why it should use the same sale price for Stadium and Ms. Sonthalia—particularly when the parties appear to agree on using different sale prices in their respective loss calculation formulas. The only dispute appears to be the proper *purchase* price to use—not the proper *sale* price—and the Court has explained why it considers the *Enphase* method to provide the superior approach to determining a purchase price.

Ms. Sonthalia also argues that the present case is distinguishable from *Enphase*. *See* Sonthalia Reply, ECF No. 48 at 5. According to Ms. Sonthalia, *Enphase* was distinguishable because there, the class period ended on the same day as the single, *intraday* corrective disclosure, and the competing movant did not contest the approach. *See id.* Here, in contrast, the Corrective Disclosure was *post-market*, and Ms. Sonthalia contests the approach. *See id.* The Court does not

**13**

see why these factual distinctions between *Enphase* and the present case make the Recoverable Loss approach inapplicable. The Court finds that the Recoverable Loss approach is better at disregarding losses that are potentially unrelated to the alleged fraud than the *Dura*-adjusted LIFO loss method, and none of the factual distinctions Ms. Sonthalia points to between this case and prior cases change the Court's conclusion.

Ms. Sonthalia also cites to the *In re Wrap Technologies* case, where a court in the Central District of California rejected an approach for calculating loss similar to the Recoverable Loss approach based in part on the reasoning of a Southern District of New York court that did the same. *See* Sonthalia Reply, ECF No. 48 at 5 (citing *In re Wrap Tech., Inc. Sec. Litig.*, No. CV 20–8760–DMG (RAOx), 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 275–76 (S.D.N.Y. 2015)). First, the Court notes that the *In re Wrap* case involved multiple partially corrective disclosures, unlike the present case, in which both Ms. Sonthalia and Stadium acknowledge a single corrective disclosure is alleged. *See In re Wrap*, 2021 WL 71433, at *2; Sonthalia Reply, ECF No. 48 at 5; Stadium Opposition, ECF No. 46 at 1. This limits the applicability of the *In re Wrap* court's reasoning to the present case. Second, the *In re Wrap* court based its decision on the fact that (1) in *Dura*, the Supreme Court stated that a stock's "higher purchase price will *sometimes* play a role in bringing about a future loss," *In re Wrap*, 2021 WL 71433, at *2 (citing *Dura*, 544 U.S. at 343), and (2) 15 U.S.C. § 78u–4(e)(1) provides for a statutory cap on damages that is calculated based on the "difference between the purchase or sale price paid … by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which [disclosure is made]," *id.* The *Dura* language is too broad to support the fact that the Court should take into account purchase price *in this case*. And the statutory cap is exactly that—a cap—it does not indicate that the Court cannot take into account a *lower* amount of damages than the limit provided by the cap. Accordingly, the Court does not find the *In re Wrap* court's reasoning applicable to the present case.

Based on the above reasoning, the Court finds that the Recoverable Loss approach is the superior method for calculating the parties' losses. Under this approach, Stadium lost $56,964 while Ms. Sonthalia gained $3,022. *See* Joint Submission, ECF No. 61, Ex. A. Accordingly, the Court

**14**

finds that Stadium had the greatest loss. The parties do not provide any briefing regarding the other factors courts consider in the lead plaintiff inquiry—(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; and (3) the total net funds expended during the class period—and the Court finds that the import of these factors is mixed. *See Perlmutter*, 2011 WL 566814, at *7. Under the first factor, Stadium purchased 426,235 shares to Ms. Sonthalia's 60,424 shares, so this factor highly favors Stadium. *See* Joint Submission, ECF No. 61, Ex. A. Under the second factor, Stadium purchased a net total of 60,000 shares to Ms. Sonthalia's similar 60,424 shares, so this factor only somewhat favors Ms. Sonthalia. *See* Joint Submission, ECF No. 61, Ex. A. Under the third factor, Stadium expended total net funds of $583,845.58 during the class period to Ms. Sonthalia's $700,202.57, which favors Ms. Sonthalia. *See* Stadium Motion, ECF No. 31 at 5; Sonthalia Motion, ECF No. 27 at 5. Considering that courts primarily weigh the approximate losses suffered more heavily than other factors, and the other factors are not clearly in favor of either party, the Court finds that Stadium has demonstrated the larger financial interest in this litigation and is therefore the presumptive Lead Plaintiff. *See Perlmutter*, 2011 WL 566814, at *7.

### C.    Rule 23 Requirements

Upon determining the movant with the largest financial interest, the court "must then focus its attention on *that* plaintiff and determine ... whether he [or she] satisfies the requirements of Rule 23(a)." *Cavanaugh*, 306 F.3d at 730 (emphasis in original); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) requires satisfaction of four factors to serve as a class representative:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The typicality and adequacy requirements of Rule 23 are the main focus of this determination. *See Cavanaugh*, 306 F.3d at 730. Examination of the remaining requirements

is deferred until the lead plaintiff moves for class certification.  The movant with the largest financial interest "need only make a prima facie showing [of its] typicality and adequacy."  *Veal v. LendingClub Corp.*, No. 18–cv–02599–BLF, 2018 WL 5879645, at *4 (N.D. Cal. Nov. 7, 2018) (citing *Cavanaugh*, 306 F.3d at 731).

Stadium argues that its claims are typical because they are based on the same legal theory and arise out of the same course of events as the other putative class members' claims.  *See* Stadium Motion, ECF No. 31 at 6.  Further, Stadium argues that it is adequate to serve as Lead Plaintiff because (1) there is no evidence of any conflict between Stadium and the putative class; (2) Stadium has provided a signed Certification evidencing its understanding of the duties it owes to the putative class and its commitment to monitor this action; and (3) Stadium's selected counsel Kaplan Fox is highly experienced in prosecuting complex securities class actions.  *See id.* at 6–7.  No parties have disputed that Stadium and its counsel meet the requirements of Rule 23.  *See, e.g.*, Sonthalia Opposition, ECF No. 47; Sonthalia Reply, ECF No. 48.

First, the Court finds that Stadium has sufficiently shown the typicality of its claims for those of the class.  Stadium alleges that it purchased View securities during the Class Period and was subsequently damaged due to Defendants' conduct just like the other members of the putative class. *See* Stadium Motion, ECF No. 31 at 4–5.

Second, to determine Stadium's adequacy, the Court must resolve two questions: (1) whether Stadium and its counsel have any conflicts of interest with other class members and (2) whether Stadium and its counsel will prosecute the action vigorously on behalf of the putative class.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).  Seeing no evidence of any conflicts between Stadium and its counsel and any other class members, and satisfied based on Stadium's Certification and selected counsel that it will vigorously prosecute this action on behalf of the putative class, the Court finds that Stadium has also sufficiently shown that it is an adequate representative for the putative class.

Accordingly, the Court finds that Stadium has adequately shown that it meets the Rule 23 requirements.

**D.    Lead Counsel**

No parties have objected to Stadium's selection of Kaplan Fox as counsel. *See, e.g.*, Sonthalia Opposition, ECF No. 47; Sonthalia Reply, ECF No. 48.  The Court has reviewed the firm's resume, King Decl., ECF No. 31-1, Ex. 4, and is satisfied that Stadium has made a reasonable choice of counsel.  Accordingly, the Court APPROVES Stadium's selection of Kaplan Fox & Kilsheimer LLP as lead counsel.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Stadium Capital LLC is APPOINTED as Lead Plaintiff;

2.    Kaplan Fox & Kilsheimer LLP is APPOINTED as Lead Counsel; and

3.    All other Motions to Appoint Lead Plaintiff and Lead Counsel are DENIED.

Dated:  February 8, 2022

BETH LABSON FREEMAN
United States District Judge

**17**

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4

      MEHEDI,                        )  CV-21-6374-BLF
 5                                   )
                   PLAINTIFF,        )  SAN JOSE, CALIFORNIA
 6                                   )
           VS.                       )  JANUARY 6, 2022
 7                                   )
      VIEW, INC. F/K/A CF FINANCE    )  PAGES 1-23
 8    ACQUISITION CORP. II ET AL,    )
                                     )
 9                 DEFENDANT.        )
                                     )
10    _____

11                TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE BETH LABSON FREEMAN
12              UNITED STATES DISTRICT JUDGE

13              A P P E A R A N C E S

14

15     FOR THE MOVANT:          BY:  KATHLEEN A. HERKENHOFF
                                KAPLAN FOX & KILSHEIMER LLP
16                              1999 HARRISON STREET, SUITE 1560
                                OAKLAND, CA 94612
17

18

19     FOR THE DEFENDANT:       BY:  JOHN MICHAEL GILDERSLEEVE
       VIEW, MULPURI            MUNGER, TOLLES, OLSON LLP
20                              350 S. GRAND AVE., 50TH FL
                                LOS ANGELES, CA 90071
21

22          APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1        APPEARANCES CONTINUED:

2        FOR THE MOVANT:      BY:  IVY T. NGO
         SONTHALIA            ROCHE FREEDMAN LLP
3                             1 SE 3RD AVENUE, SUITE 1240
                              MIAMI, FL 33131
4

5        FOR THE MOVANT:      BY:  FREDERIC S. FOX
         STADIUM CAPITAL           JASON URIS
6                             KAPLAN FOX & KILSHEIMER
                              850 THIRD AVENUE, 14TH FLOOR
7                             NEW YORK, NY 10022

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1          SAN JOSE, CALIFORNIA              JANUARY 6, 2022

2                    P R O C E E D I N G S

3          (COURT CONVENED AT 9:02 A.M.)

4              THE CLERK:  CALLING CASE 21-6374.  MEHEDI V. VIEW

5      INC., ET AL.

6              COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

7      IF WE COULD BEGIN WITH THE PLAINTIFF AND THEN MOVE TO

8      DEFENDANT.

9              MS. HERKENHOFF:  GOOD MORNING, YOUR HONOR.

10         KATHLEEN HERKENHOFF --

11             THE COURT:  I'M LOSING SOUND HERE.

12         DID THAT CHANGE, TIFFANY, OR WAS THAT MY COMPUTER?

13             THE CLERK:  NO, YOUR HONOR.  IT WAS VERY FAINT.

14             THE COURT:  MS. HERKENOFF, COULD YOU RESTATE THAT.

15             MS. HERKENHOFF:  YES.

16         GOOD MORNING, YOUR HONOR.

17             THE COURT:  NO, YOU'RE THE ONE I'VE LOST.  YOU

18     STARTED OFF STRONG AND THEN IT SWITCHED.

19             MS. HERKENHOFF:  I APOLOGIZE.

20             THE COURT:  ARE YOU USING HEADPHONES?

21             MS. HERKENHOFF:  YES, I AM.

22             THE COURT:  YOU MIGHT TRY JUST -- THE SPEAKER MUST BE

23     TOO FAR AWAY.

24             MS. HERKENHOFF:  LET ME SEE IF I CAN ADJUST THAT,

25     PERHAPS YOU CAN TAKE THE OTHER APPEARANCES FIRST.
```

```
1              MS. NGO:  GOOD MORNING, YOUR HONOR.

2          MY NAME IS IVY NGO ON BEHALF OF ROCHE FREEDMAN ON BEHALF

3      OF LEAD PLAINTIFF, MOVANT, SWETA SONTHALIA.

4              THE COURT:  GOOD MORNING, MS. NGO.

5              MS. NGO:  GOOD MORNING.

6              MS. HERKENHOFF:  GOOD MORNING, YOUR HONOR.

7          CAN YOU HEAR ME NOW?

8              THE COURT:  NO.  I DON'T KNOW WHERE YOUR SPEAKER IS.

9              MS. HERKENHOFF:  I HAVE A SPEAKER IN FRONT OF ME.

10             THE COURT:  WHO ARE YOU REPRESENTING, MS. HERKENOFF?

11             MS. HERKENHOFF:  MOVANT, STADIUM CAPITAL.

12             THE COURT:  OKAY.  WELL, I DO NEED TO HEAR YOUR

13     ARGUMENT.

14             MS. HERKENHOFF:  YES, THAT WOULD BE HELPFUL.

15         I APOLOGIZE, YOUR HONOR.  I HAVE A MICROPHONE IN FRONT OF

16     ME, I'M NOT SURE WHAT THE ISSUE IS.

17             THE COURT:  I DON'T THINK THE COURT REPORTER COULD

18     TAKE DOWN A RECORD.  LET'S GET EVERYBODY ELSE'S APPEARANCES AND

19     WE WILL SEE WHAT WE CAN DO HERE.

20             MR. FOX:  GOOD MORNING, YOUR HONOR.

21         FREDERICK FOX, CAPLAN FOX & KILSHEIMER.  I'M WITH

22     MS. HERKENHOFF, AND WE REPRESENT THE MOVANT, STADIUM CAPITAL.

23             THE COURT:  GOOD MORNING.

24             MR. URIS:  GOOD MORNING, YOUR HONOR.

25         JASON URIS, ALSO OF CAPLAN FOX & KILSHEIMER ON BEHALF OF
```

```
1        MOVANT, STADIUM CAPITAL.

2               THE COURT:  GOOD MORNING.

3               MR. GILDERSLEEVE:  GOOD MORNING, YOUR HONOR.

4               THE COURT:  NOW I'VE LOST YOU, MR. GILDERSLEEVE.  I

5    CAN'T HEAR YOU.

6               THE CLERK:  HE'S NOT ON MUTE.

7          COUNSEL, CAN YOU MOMENTARILY MUTE YOURSELF AND THEN

8    UNMUTE?

9               MR. GILDERSLEEVE:  YES.  CAN YOU HEAR ME NOW?

10              THE COURT:  YES.

11              MR. GILDERSLEEVE:  I'M SORRY, YOUR HONOR.

12         JOHN GILDERSLEEVE FOR VIEW AND DR. MULPURI, THE

13   DEFENDANTS.

14              THE COURT:  GOOD MORNING.

15         MS. HERKENHOFF, THE ONLY OTHER THING I CAN SUGGEST IS YOU

16   SIGN OFF AND COME BACK IN AND SEE IF THAT CAN MAYBE HELP WITH

17   THE SOUND.

18              MS. HERKENHOFF:  IS IT ON NOW, MAY I ASK?

19              THE COURT:  SO IT'S ON, BUT IT'S SO FAINT.

20              MS. HERKENHOFF:  I WILL TRY WHAT YOU SUGGESTED AND I

21   WILL BE RIGHT BACK.

22              THE COURT:  OKAY.

23              MS. HERKENHOFF:  ARE YOU ABLE TO HEAR ME NOW?

24         (OFF-THE-RECORD DISCUSSION.)

25              THE COURT:  OKAY.  I'M GOING TO GO TO ANOTHER MATTER.
```

```
1        I'M SO TIGHT ON TIME BECAUSE I HAVE SO MANY HEARINGS.  I'M
2    GOING TO LET YOU ALL DO THIS OFFLINE SO MS. HERKENHOFF CAN TRY
3    TO USE A DIFFERENT DEVICE.
4        LET'S GO ON TO PRESCOTT.  AND WE WILL COME RIGHT BACK, I
5    WILL DO YOURS NEXT, I WON'T MAKE YOU WAIT TOO LONG BECAUSE I
6    KNOW YOU ALL WOULD LIKE TO HAVE THIS HEARD.
7            THE CLERK:  COUNSEL THAT IS ALREADY CONNECTED, YOU
8    CAN JUST TAKE YOUR VIDEOS DOWN AND THEN I WON'T HAVE TO PROMOTE
9    YOU AGAIN.
10       AND MS. HERKENHOFF, IF YOU NEED TO SIGN BACK OUT AND THEN
11   JOIN, I WILL WATCH FOR YOU TO JOIN AS WELL.
12       (THE PROCEEDINGS WERE PAUSED AT 9:08 A.M.)
13       (THE PROCEEDINGS RESUMED AT 9:44 A.M.)
14           THE COURT:  OKAY.  WE WILL GO BACK TO THE MEHEDI
15   CASE.
16           THE CLERK:  COUNSEL, IF YOU WOULD ENGAGE YOUR VIDEOS.
17           MS. HERKENHOFF:  KATHLEEN HERKENHOFF, CAPLAN FOX &
18   KILSHEIMER.  AND WITH ME TODAY ARE FREDERIC FOX AND JASON URIS
19   OF OUR NEW YORK OFFICE.  AND I AM HERE ON BEHALF OF MOVANT,
20   STADIUM CAPITAL, LLC.
21           THE COURT:  ALL RIGHT.  GOOD MORNING.
22       I THINK EVERYONE ELSE MADE THEIR APPEARANCES, AND SO LET'S
23   JUMP IN.  I'M TRYING TO KEEP ON A SCHEDULE.
24       FIRST OF ALL, THANK YOU SO MUCH FOR RESPONDING SO QUICKLY
25   TO MY REQUEST FOR THE CHART.  I FOUND MYSELF TRYING TO PIECE
```

1    TOGETHER THE DIFFERENT CHARTS, AND THEN IN ONE OF THE REPLY

2    BRIEFS THERE WAS AN ACKNOWLEDGEMENT OF A MATHEMATICAL ERROR

3    WHICH I REALLY APPRECIATE, BUT THEN I REALIZED I WAS LOST ON

4    THE NUMBERS.  AND MY JOB IS NOT THE ARITHMETIC, YOU WOULDN'T

5    WANT TO LEAVE THAT TO ME.

6        SO I HAVE THIS AGREED UPON CHART, THAT UNDER THESE VARIOUS

7    THEORIES, THESE ARE THE NUMBERS, AND SO NOW WHAT WE CAN DO

8    TODAY IS WE CAN FOCUS ON THE PROPER APPROACH THAT I SHOULD

9    APPLY, WHETHER IT WOULD BE THE RECOVERABLE LOSS METHOD OR THE

10   ACTUAL LOSS METHOD UNDER WHAT WE WILL CALL LIFO.  AND FOR OUR

11   COURT REPORTER, THAT'S ALL CAPITALS, L-I-F-O, OR THE DURA,

12   D-U-R-A, ADJUSTED LIFO.

13       I DON'T THINK IT'S ANY SURPRISE TO YOU, I GENERALLY FAVOR

14   IN CASES LIKE THIS WITH THESE FACTUAL CIRCUMSTANCES, THE

15   RECOVERABLE LOSS METHOD SO THAT WE CAN CLEAR OUT THE -- OR BE

16   MORE CERTAIN OF ELIMINATING WHAT I WILL CALL THE NOISE IN THE

17   LOSS CALCULATION.

18       SO LET ME START WITH MS. NGO FOR MS. SONTHALIA ON YOUR

19   ARGUMENT.

20            MS. NGO:  GOOD MORNING, YOUR HONOR.

21       AND I JUST APOLOGIZE IF MY VOICE SOUNDS ODD, I WOKE UP

22   WITH THIS TICKLE.

23            THE COURT:  I CAN HEAR YOU.

24            MS. NGO:  OKAY.  SO UNLIKE IN ENPHASE THE INITIAL

25   COMPLAINT FILED IN THIS CASE ALLEGES A SINGLE CORRECTIVE

1    DISCLOSURE AFTER THE MARKET CLOSED, AND ENDS THE CLASS PERIOD

2    THAT DAY.  SO ANY PURCHASES DURING THE CLASS PERIOD WOULD NOT

3    HAVE ANY IMPACT FROM THE ALLEGED FRAUD BECAUSE THE ALLEGED

4    FRAUD WAS CLOSED AFTER THE MARKET.

5         ENPHASE WAS UNIQUE IN THE SENSE THAT IT INVOLVED A SINGLE

6    ENTRY DATE IN THE CORRECTIVE DISCLOSURE WHICH WAS ALSO INCLUDED

7    IN THE DEFINED CLASS PERIOD.  ALSO IN ENPHASE, THE COMPETING

8    MOVANTS ALL SOLD THEIR REMAINING STOCKS ON THAT DAY.

9         AND SO AS YOUR HONOR IS AWARE, WE WERE THE FIRM THAT

10   PROPOSED THIS ADJUSTED LIFO METHOD.  BUT THAT WAS TO TAKE INTO

11   ACCOUNT, OR TRYING TO HARMONIZE THE CASE LAW IN THIS DISTRICT

12   RELATING TO RECOVERABLE LOSS IN SINGLE DROP CASES.  AND WITH

13   THE FACTS ALLEGED, WHICH WERE THAT THE STOCK WAS -- THE FRAUD

14   WAS DISCLOSED EARLIER IN THE DAY.  AND SO THE METHOD PROPOSED

15   GAVE A CONSISTENT DISCOUNT TO ALL SHARES BOUGHT AND SOLD ON

16   THAT DAY TO TAKE INTO ACCOUNT THE FRAUD IMPACT.

17        AND SO THAT WAS OUR METHOD WE PUT FORTH THERE.  NONE OF

18   THAT EXISTS HERE.  THERE'S NO REASON TO USE AN ARTIFICIAL STOCK

19   PRICE OF JUST BEFORE THE CORRECTED DISCLOSURE.  THIS IS MORE

20   OF, I GUESS YOU WOULD CALL, RUN OF THE MILL CORRECTIVE

21   DISCLOSURE CASES, WHERE THERE IS A CLASS PERIOD WHICH THERE IS

22   CURRENTLY ALLEGED NO IMPACT ON STOCK PRICE RELATING TO FRAUD,

23   OF ANY CORRECTIVE DISCLOSURES.

24             THE COURT:  WHY WOULD YOU CALL THE STOCK PRICE ON THE

25    DATE BEFORE THE DISCLOSURE ARTIFICIAL?  AREN'T YOU RELYING ON

```
 1        THE ACTUAL STOCK PRICE ON THAT DAY?

 2             MS. NGO:  WE ARE ON THE METHOD THAT WE ARE PROPOSING,

 3        THE RECOVERABLE LOSS, AND YOU CAN SEE THAT IN THE CHART THAT WE

 4        SUBMITTED YESTERDAY.

 5             SO UNDER THE DURA LIFO, YOU WILL SEE, I GUESS THE

 6        ALTERNATIVE PROPOSAL BASED ON THE RETAINED SHARES METHOD, WE

 7        ARE USING THE PURCHASE PRICE ON BOTH DAYS.

 8             IN STADIUM CAPITAL'S PROPOSAL, THEY ARE USING AS A

 9        PURCHASE PRICE, THE STOCK PRICE IMMEDIATELY PRIOR TO THE

10        CORRECTIVE DISCLOSURE.

11             THE COURT:  SO, I MEAN, I'M SORRY FOR THIS TO SOUND

12        SO MUNDANE, BUT IN IGNORANCE OF THE ANNOUNCEMENT TO BE MADE THE

13        NEXT DAY, IF ANY ORDINARY STOCKHOLDER WERE TO LOOK AT THEIR

14        PORTFOLIO ON AUGUST 15TH AND SAID, I THINK I'M GOING TO SELL

15        EVERYTHING, THAT WOULD JUST BE THE NATURAL PRICE OF THE STOCK,

16        UNAFFECTED BY THE DISCLOSURE, CORRECT?

17             MS. NGO:  CORRECT.  BUT THAT WOULD BE IF YOU ACTUALLY

18        SOLD ON THAT DAY.

19             THE COURT:  RIGHT.

20        BUT THAT'S WHY I'M SAYING, SO THE VALUE OF ANY

21        SHAREHOLDER'S PORTFOLIO OF THIS STOCK WAS THE $5.18 PER SHARE

22        THAT STADIUM IS REPRESENTING; IS THAT CORRECT?  YOU DON'T

23        DISAGREE WITH THAT.

24             MS. NGO:  I DON'T DISAGREE THE STOCK PRICE

25        IMMEDIATELY BEFORE THE CORRECTIVE DISCLOSURE WAS $5.18, BUT I
```

```
1    THINK THAT'S WHY LOSS CAUSATION THEORIES END UP BEING VERY

2    COMPLICATED IN THESE CASES AND VERY FACT SPECIFIC.

3         SO IN ENPHASE, THE STOCK PRICE DURING THE CLASS PERIOD WAS

4    VARIABLE.  IN, I THINK ANOTHER CASE THAT WE HAD RAISED IN ALL

5    OF OUR PAPERS, WAS THE MARKETTE CASE, AND IN MARKETTE, THE

6    STOCK PRICE INCREASED THROUGHOUT THE CLASS PERIOD.

7         AND SO THE MARKETTE CASE ALSO USED THE PRICE RIGHT BEFORE

8    THE CORRECTIVE DISCLOSURE, BUT THEY DID MAXIMIZE THE POTENTIAL

9    LOSSES OF THE CLAIMANTS, BECAUSE IN THAT CASE, THE STOCK PRICE

10   DECREASED.

11        IN VIEW, IN OUR CURRENT CASE, THE STOCK PRICE ACTUALLY

12   INCREASED THROUGHOUT THE CLASS PERIOD.  SO BY USING THE STOCK

13   PRICE RIGHT BEFORE THE CORRECTIVE DISCLOSURE, YOU ARE NOT

14   HONORING THE CONCEPT OF MAXIMIZING THE LEAD PLAINTIFF'S

15   POTENTIAL DAMAGES IN THIS CASE.

16        THE COURT:  CAN I ASK ANOTHER QUESTION, AND I REALLY

17   APPRECIATE THAT IT APPEARS THAT YOU'VE UPDATED THE AVERAGE

18   VALUE OF THE SHARES FOR THE FULL 90 DAYS, WHICH HAS NOW RUN AND

19   HAD NOT RUN WHEN YOU FILED THE PAPERS.

20        MS. NGO:  CORRECT.

21        THE COURT:  BUT WHAT YOU ARE SHOWING ME IS THAT THE

22   AVERAGE SHARE PRICE OVER THE 90 DAYS AFTER THE ANNOUNCEMENT IS

23   HIGHER THAN IT WAS THE DAY BEFORE THE ANNOUNCEMENT; IS THAT

24   CORRECT?

25        MS. NGO:  THAT IS CORRECT.
```

1    AND SO WHEN THE PSLRA WAS ENACTED, THIS 90-DAY PERIOD WAS

2    PUT IN IN ORDER TO PUT A LIMIT ON DAMAGES FOR RETAINED SHARES

3    FOR THE OPPOSITE SCENARIO WHEN THE STOCK PRICE CONTINUED TO GO

4    DOWN.  SO IF DEFENDANTS, IF THEY WERE LIABLE FOR SECURITIES

5    FRAUD, WOULD NOT CONTINUE TO BE ON THE HOOK FOR THE CONTINUING

6    DECREASE OF THEIR STOCK PRICE.

7         THE COURT:  THAT'S THE 90 DAYS.

8         MS. NGO:  RIGHT.

9    AND IN THIS CASE, THE 90-DAY AVERAGE DID INCREASE, AND

10   THAT WOULD GENERALLY INDICATE THAT POTENTIALLY POSITIVE NEWS

11   HAD COME OUT DURING THE 90 DAYS THAT INCREASED THE STOCK PRICE.

12   FOR PURPOSES OF SECURITIES FRAUD COMPLAINTS, THE FRAUD

13   THAT IS ALLEGED IS ALLEGED TO BE FULLY DISCLOSED AS OF THE

14   CORRECTIVE DISCLOSURE.

15        THE COURT:  YES, YES.

16        MS. NGO:  SO IT'S IRRELEVANT WHAT HAPPENS IN THE

17   90-DAY PERIOD.

18   NOW IF THE CLASS PERIOD CHANGES, AND THINGS LIKE ANY

19   INCREASES NEED TO BE DEALT WITH LATER, THEN THAT IS A FACT

20   ISSUE FOR LATER DOWN THE ROAD.

21        THE COURT:  OKAY.

22        MS. NGO:  AND I UNDERSTAND --

23        THE COURT:  WHEN YOU ARE TELLING ME ABOUT THE

24   PURCHASE PRICE -- SO THE COST OF THE SHARES WAS 60,424 SHARES

25   TIMES THE PURCHASE PRICE.  AND THE PURCHASE PRICE FOR YOUR

```
1    CLIENT, FOR MS. SONTHALIA, WAS HOW MUCH?  I'M LOOKING AT THE

2    CHART YOU SENT ME YESTERDAY IN YOUR COLUMN A.

3               MS. NGO:  IT WAS A VARIABLE PRICE, SO IT'S LISTED

4    HERE.

5               THE COURT:  OH, THAT'S WHY, THAT'S FAIR.  RIGHT.

6               MS. NGO:  IN DOCKET 30-2 --

7               THE COURT:  SO YOU ARE JUST TELLING ME THAT OVER THE

8    ENTIRE CLASS PERIOD, YOU'VE TAKEN THE ACTUAL PURCHASE PRICE,

9    YOU'VE DONE THE ARITHMETIC ON THIS.

10              MS. NGO:  CORRECT.

11              THE COURT:  OKAY.  SO I DON'T NEED TO BE CONCERNED

12   WHAT THE ACTUAL WAS, JUST THE TOTAL.

13              MS. NGO:  RIGHT.

14          SO IN THE TWO PROPOSALS MS. SONTHALIA PRESENTS, THE NUMBER

15   OF SHARES IS WHAT CHANGES FOR STADIUM CAPITAL.  MS. SONTHALIA

16   RETAINS ALL HER SHARES, SO THERE'S NO DIFFERENCE BETWEEN THE

17   APPROXIMATE OR ACTUAL LOSS IN THE RETAINED SHARES CALCULATION.

18   THE DIFFERENCE FOR STADIUM CAPITAL IS SIMPLY THAT, I GUESS WHAT

19   YOU WOULD CALL IT, WE CALL IT ZEROED OUT DURING THE CLASS

20   PERIOD THREE TIMES, AND SO YOU ONLY TAKE INTO ACCOUNT THE LAST

21   60,000 SHARES THAT THEY PURCHASED.

22              THE COURT:  OKAY.

23              MS. NGO:  AND THAT'S WHY THAT NUMBER CHANGES, BUT

24   OTHERWISE THE PURCHASE PRICE STAYS THE SAME FOR BOTH METHODS.

25          AND THEN THE SALE PRICE STAYS THE SAME FOR MS. SONTHALIA
```

1    BECAUSE SHE RETAINED HER SHARES, AND THEN FOR STADIUM CAPITAL,

2    IT INCLUDES THE ACTUAL PURCHASE PRICE OR THE RETAINED PRICE,

3    DEPENDING ON THEIR SHARES.

4          THE COURT:  OKAY.

5          ANYTHING ELSE YOU WOULD LIKE TO ADD?  THANK YOU FOR

6    WALKING ME THROUGH THAT.

7          MS. NGO:  NO WORRIES.

8          AS A YOUNG ATTORNEY, I WAS TOLD THAT LOSS CAUSATION IS THE

9    MOST DIFFICULT THING TO WRAP YOUR HEAD AROUND IN SECURITY FRAUD

10   CASES, SO I DO APPRECIATE YOUR EFFORTS TO GET TO THE BOTTOM OF

11   THIS.

12         THE COURT:  ALL RIGHT.

13         LET ME TURN TO, MS. HERKENHOFF, ARE YOU GOING TO TAKE THE

14   LEAD FOR STADIUM?  OH, YOU ARE ON MUTE.

15         MS. HERKENHOFF:  YOUR HONOR'S COMMENTS WERE VERY

16   TELLING THIS MORNING AND ALIGNED WITH MY ARGUMENT, WHICH IS

17   THAT IF YOU LOOK AT THE LOSS CHART UNDER ANY OF THE VARIOUS

18   CALCULATIONS, IT'S ONLY OUR CLIENT, STADIUM CAPITAL, WHO HAS A

19   LOSS.

20         AND THERE'S A SPECTACLE IN THIS CHART, WHICH IS THE GAIN

21   OF 3,000, THAT'S REFLECTED UNDER WHAT YOUR HONOR'S METHODOLOGY

22   IS IN ENPHASE.

23         AND SPEAKING BROADLY TO THE CHART, THE FALLACY IN THE

24   CHART IS THAT CALLING THE MIDDLE APPROACH A DURA LIFO, AND I

25   UNDERSTAND THE COURTS IN THIS DISTRICT HAVE CALLED IT THAT, AND

1    I'M NOT SAYING THAT IT DOESN'T HAVE ITS PLACE, BUT DURA, IF YOU

2    LOOK AT THE LANGUAGE IN IT, WHICH YOUR HONOR DID SO CAREFULLY

3    IN ENPHASE, IT EMPHASIZES THAT THE PURCHASE PRICE IS OFTEN

4    INFLATED BY THINGS THAT MAY BE UNRELATED TO THE FRAUD.

5         SO YOU REALLY HAVE TO ZERO IN ON THE LOSS CAUSATION AND

6    THE PURCHASE PRICE, PARTICULARLY WHEN IT'S SO FAR BACK IN TIME

7    OF THE CLASS PERIOD, IS NOT INDICATIVE OF WHAT WILL ULTIMATELY

8    BE THE LOSS CAUSATION ANALYSIS AND WHAT WILL HAPPEN HERE.

9         YOUR HONOR HIT THE NAIL ON THE HEAD, HAD THE SAME IDEA

10   THAT I HAD, REALLY IT'S YOUR PORTFOLIO, THAT DAY BEFORE THAT

11   ONE DISCLOSURE COMES OUT, THAT VALUE, THAT IS REALLY WHAT'S

12   FOCUSED ON IN DURA.

13        AND THERE'S SOME LOOSE LANGUAGE IN DURA BELOW THAT SAYS

14   SOMETIMES THE PURCHASE PRICE MAY BE TAKEN INTO ACCOUNT.  BUT IF

15   YOU READ THAT PARAGRAPH FURTHER, IT ACTUALLY IS SORT OF GIVING

16   A POLITE NOD NOT NINTH CIRCUIT AND SAYING, WELL, REALLY THAT'S

17   INSUFFICIENT.

18        AND SO IT'S OUR POSITION THAT CASES THAT TRY TO SAY, UNDER

19   DURA, YOU CAN SOMETIMES LOOK AT THE PURCHASE PRICE, FOR

20   PURPOSES OF THIS CASE, THIS SET OF FACTS, THIS ANALYSIS OF AN

21   ACCOUNTING METHODOLOGY THAT HAS RATIONAL CONSISTENCY APPLIED

22   FOR LEAD STATUS, IT -- YOU REALLY SHOULDN'T BE LOOKING AT

23   PURCHASE PRICES SO FAR BACK IN THE CLASS PERIOD.

24        THE CLASS PERIOD PURCHASE PRICE STARTED FAR HIGHER THAN

25   THEY WERE RIGHT BEFORE THE TRIGGERING EVENT OF LOSS CAUSATION,

```
 1    AND THAT'S WHY IT RESINATED WITH ME WHAT YOUR HONOR SAID ABOUT
 2    THE VALUE OF THE PORTFOLIO.
 3         AND HERE, AMONG THE MANY DIFFERENT ARGUMENTS WE HAVE ON
 4    WHY OUR CLIENT SHOULD BE APPOINTED LEAD, AND THESE GO MORE
 5    POSSIBLY TO IF YOUR HONOR WERE INCLINED TO GO WITH THE OTHER
 6    MOVANT, YOU HAVE TO THINK ABOUT THE FACT THAT THEY WILL BE
 7    SADDLED FROM THE OUTSET, AND THIS CLASS, WITH THIS GAIN THAT
 8    SHOWS IN THIS CHART.  AND I KNOW THE GOOD FOLKS AT MUNGER
 9    TOLLES WHO ARE HERE TODAY, ARE GOING TO HAVE A FIELD DAY WITH
10    THAT.
11         AND SO WHY START OFF A CASE THAT'S SO IMPORTANT AND BURDEN
12    THE CLASS WITH A LEAD PLAINTIFF WHO HAS THAT SORT OF BAGGAGE,
13    TO BE HONEST.  THERE ARE OTHER QUALITATIVE FACTORS BEYOND THE
14    NUMBERS, IF YOUR HONOR IS SATISFIED WITH THE NUMBER
15    PRESENTATION.  AND AGAIN, AS I REEMPHASIZE, DURA BASICALLY SAYS
16    YOU ARE NOT SUPPOSED TO LOOK AT THAT PURCHASE PRICE, IT COULD
17    BE INFLATED BY OTHER THINGS.
18         AND SO THE TRUEST TEST IS WHAT YOUR HONOR DID IN ENPHASE.
19    IT WAS FOLLOWED BY JUDGE GILLIAM AND MARKETTE, AND VARIOUS
20    OTHER COURTS WE POINTED TO.
21         AND I THINK IT'S ALSO VERY TELLING IF YOU LOOK AT THE
22    PERLMUTTER CASE, WHICH DIDN'T COME UP IN THE INITIAL PAPERS,
23    BUT NOW THEY GLEAN TO IN THEIR CHART.
24              THE COURT:  I HAD PERLMUTTER, BUT I DIDN'T KNOW
25    THAT'S WHAT WE WERE APPLYING HERE.
```

1    MS. HERKENHOFF:  EXACTLY, YOUR HONOR.  BECAUSE IN THE

2    MOVING PAPERS, NOBODY CITED THAT, AND IT'S REALLY MORE OF THE

3    OLD LIFO ANALYSIS.

4    IF YOU LOOK AT PERLMUTTER AND MANY OF THE OTHER CASES WE

5    DISTINGUISHED IN THE FOOTNOTE OF OUR REPLY BRIEF, THE ISSUE IS,

6    AS JUDGE KOH SO APTLY STATES IT AT STAR FOUR OF THAT OPINION,

7    IN SOME WAYS THE DISTINCTION BETWEEN THESE TWO CATEGORIES IS AN

8    ARTIFICIAL ONE, IN AS MUCH AS BOTH A PLAINTIFF'S ACTUAL LOSS

9    AND A PLAINTIFF'S POTENTIAL RECOVERY METHODS FOR BOTH

10   CATEGORIES SHOULD YIELD THE SAME RESULT.

11   HERE, THEY DO NOT.  AND IT'S GLARINGLY OBVIOUS IN THIS

12   CHART.  AND I REALLY THINK THAT YOUR HONOR WAS VERY WISE TO ASK

13   US TO PUT IN THIS CHART, BECAUSE THE 90-DAY HAD NOT RUN, AND

14   NOW LOOKING AT IT, THERE'S JUST THAT GLARING FIGURE THAT YOU

15   CAN'T GET PAST.

16   AND I, AGAIN, DON'T WANT THIS CLASS, THIS PROPOSED CLASS,

17   BURDENED WITH A REPRESENTATIVE WITH THAT GOING INTO IT.

18        THE COURT:  OKAY.

19        MS. HERKENHOFF:  YOU KNOW, I ALSO CAN'T HELP BUT RAVE

20   ABOUT THE FACT THAT MY PARTICULAR FIRM HAS BEEN IN THIS

21   DISTRICT MORE THAN 20 YEARS, IT'S BEEN LEAD IN SEVERAL CASES,

22   AND OUR CLIENT IS A U.S.-BASED, VERY SOPHISTICATED INVESTOR.

23   AND I AM NOT ATTEMPTING TO DISPARAGE MS. SONTHALIA, BUT SHE IS

24   FROM SINGAPORE, AND I ROUGHLY RAN THE NUMBERS, AND OUR CLIENT,

25   I THINK WAS ALREADY A TRADER AT MORGAN STANLEY AT THE TIME OF

1    HER BIRTH.

2        SO OUR CLIENT HAS THE SOPHISTICATION, HAS LOSS UNDER EVERY

3    POSSIBLE ANALYSIS, HAS A FIRM THAT'S IN THE DISTRICT, AND IS

4    WILLING AND READY WILLING AND ABLE TO MOVE THIS CASE

5    SUCCESSFULLY FORWARD.

6            THE COURT:  ALL RIGHT.

7        SO I'M NOT GOING TO EVALUATE THE COMPETING QUALIFICATIONS

8    OF THE PROPOSED LEAD PLAINTIFFS, BECAUSE IT'S ACTUALLY -- IT

9    ONLY COMES UP AS A REBUTTABLE PRESUMPTION.  AND QUITE FRANKLY,

10   I STILL RECALL ONE OF MY EARLY PATENT TRIALS WHERE THE

11   PRESIDING JUROR WAS A 19-YEAR OLD JUNIOR AT STANFORD

12   UNIVERSITY.  SO MS. SONTHALIA MIGHT ACTUALLY RESONATE MORE FOR

13   A JURY IN SILICON VALLEY, IT'S HARD TO SAY.  BUT NEITHER OF YOU

14   ATTEMPTS TO REBUT THE PRESUMPTION IF YOU ARE NOT THE -- IF YOUR

15   CLIENT DOESN'T HAVE THE GREATEST LOSS.

16       SO I'M NOT GOING TO GO THERE, AND MS. NGO, YOU DON'T HAVE

17   TO RESPOND TO THAT.  THOSE ARE -- YOU KNOW, I DON'T PICK

18   PLAINTIFFS, DEFENDANTS DON'T PICK PLAINTIFFS.  I ONLY HAVE TO

19   BE THE GATE KEEPER IF THERE'S SOME PROBLEM.

20       HOWEVER, THE POINT ON THE GAIN IS NOTED.  I DON'T THINK

21   THAT'S A DEAL BREAKER, BUT IT'S CERTAINLY NOTED.

22           OKAY.  MS. NGO, WOULD YOU LIKE TO MAKE ANY LAST COMMENT?

23           MS. NGO:  YES, YOUR HONOR.

24       I WILL NOTE THAT JUDGE KOH IN THE PERLMUTTER CASE HAD

25   ACTUALLY USED OUR PROPOSED RETAINED SHARES CALCULATION, BECAUSE

1    SHE HAD USED THE ACTUAL PURCHASE PRICE.

2        GENERALLY IN THESE FRAUD CASES, IT ENDS UP BEING A

3    QUESTION FOR THE EXPERT AS TO HOW MUCH, IF FRAUD IMPACTS THE

4    STOCK PRICE EARLY, VERSUS THE MIDDLE, VERSUS THE END, AND AT

5    THIS VERY EARLY STAGE, THERE'S NO REASON TO BASICALLY GIVE A

6    DISCOUNT TO AN ENTIRE CLASS'S DAMAGES BY LIMITING THE ENTIRE

7    CLASS'S PURCHASE PRICE TO THE DAY BEFORE, WHEN THERE COULD HAVE

8    BEEN STATEMENTS MADE EARLY IN THE CLASS PERIOD WHICH ENCOURAGED

9    THEM TO BUY THE STOCK.  AND THAT SHOULD BE INCLUDED IN THEIR

10   POTENTIAL DAMAGE CALCULATIONS.

11        THE COURT:  SO I DID TAKE NOTE OF JUDGE KOH'S COMMENT

12   IN PERLMUTTER ON THIS VERY ISSUE OF EXPERT TESTIMONY, I THOUGHT

13   THAT WAS AN IMPORTANT POINT.  BUT I DON'T BELIEVE THAT IF I

14   WERE TO CHOOSE STADIUM, THAT THE CLASS WILL BE LIMITED, IN ITS

15   DAMAGES PRESENTATION, TO HOW I CHOSE TO DETERMINE THE LEAD

16   PLAINTIFF.

17        AND I GUESS SOMEONE IS ALREADY WRITING THAT IN LIMINE

18   MOTION TO MAKE SURE IT DOESN'T HAPPEN.  BUT WARNING TO

19   DEFENDANTS, I MEAN, THIS IS A DIFFERENT CALCULATION AND IT

20   WOULD BE WITHOUT PREJUDICE TO A FULL DAMAGES MODEL THAT MAY OR

21   MAY NOT BE ABLE TO JUSTIFY A STOCK PURCHASE PRICE THAT'S

22   DIFFERENT THAN THE $5.18 REPRESENTED ON THIS CHART.

23        THESE ARE APPROXIMATIONS, THAT'S WHAT THE LAW SETS UP

24   HERE.  MS. NGO, IT'S ACTUALLY A REALLY GOOD POINT THAT YOU

25   RAISE SO THAT I CAN KIND OF MARK MY PLACE ON THAT RIGHT NOW AND

```
1    NO ONE IS CONFUSED ABOUT THAT.

2              MS. NGO:  RIGHT.  YES.

3         AND I ALSO WANT TO NOTE THAT THERE IS NO COURT THAT HAS

4    APPLIED THIS STADIUM CAPITAL'S PROPOSAL WITHOUT THE FACTUAL

5    SCENARIO BACKING IT UP.

6         THERE'S HONESTLY NO REASON TO USE THE PURCHASE PRICE, THE

7    DAY BEFORE THE CORRECTIVE -- BEFORE THE CORRECTIVE DISCLOSURE

8    COMES OUT AS THE PURCHASE PRICE.  THE ONLY REASON IT MADE SENSE

9    IN ENPHASE IS BECAUSE IN ENPHASE, IT WAS AN ENTRY DAY

10   DISCLOSURE.

11        AND IF YOUR HONOR RECALLS, AFTER THE LEAD PLAINTIFF BATTLE

12   IN ENPHASE, IN THE AMENDED COMPLAINT IN ENPHASE THEY HAD

13   AMENDED IT TO BE THE DAY BEFORE THE CORRECTIVE DISCLOSURE,

14   WHICH I THINK ALL OF US WHO HAVE DONE THIS FOR A LONG TIME, I

15   HAVE BEEN DOING THIS SINCE 2007, IN ORDER TO NOT CREATE

16   CONFLICTS FOR THE CLASS OR TO CREATE MORE CONSISTENT DAMAGE

17   THEORIES, WAS WHAT SHOULD HAVE BEEN DONE TO BEGIN WITH.

18        AND IF THEY HAD DONE THAT WITH THE FIRST COMPLAINT, WE

19   WOULD HAVE PUT FORTH MORE TRADITIONAL RETAINED SHARES, DURA

20   LIFE CALCULATION, AS THE PROPOSED LOSS THEORY.  THERE WOULD

21   HAVE BEEN NO REASON TO ESSENTIALLY CREATE A NEW LOSS CAUSATION

22   THEORY FOR LEAD PLAINTIFF DAMAGES BECAUSE THERE WOULDN'T HAVE

23   BEEN THE FACTUAL -- HOW TO DEAL WITH THE FACTS, IT WAS AN ENTRY

24   DAY DISCLOSURE.

25              THE COURT:  OKAY.
```

1          WELL, THOSE ARE EXCELLENT POINTS.  I'M GOING TO REALLY

2     HAVE TO THINK ABOUT THIS, WHETHER I CONTINUE TO USE ENPHASE AND

3     MARKETTE, OR IF I LOOK MORE GENERALLY TO THE LIFO MODEL, YOU

4     HAVE GIVEN ME A LOT OF CASES.

5          I AM STILL LEANING TOWARD THE RECOVERABLE LOSS THEORY.  I

6     THINK THAT I DO HAVE THE DISCRETION, I CERTAINLY HAVE TO SET

7     OUT THE REASONS FOR IT.

8          MS. HERKENHOFF --

9           MS. NGO:  I WOULD JUST LIKE TO NOTE THEY ARE ACTUALLY

10    BOTH RECOVERABLE LOSS, THEY ARE DIFFERENT STRINGS OF

11    RECOVERABLE LOSS.

12         WHAT WE CALL "RETAINED SHARES" IS A RECOVERABLE LOSS, IT'S

13    JUST I WOULD ARGUE THE MORE MAJORITY VERSION OF THE RECOVERABLE

14    LOSS, WHEREAS STADIUM CAPITAL'S IS VERY NARROW INTERPRETATION

15    OF THE RECOVERABLE LOSS THEORY.

16          THE COURT:  OKAY.

17          MS. HERKENHOFF:  YOUR HONOR, I APPRECIATE YOUR TIME.

18         AND AGAIN, THEY LABELED IT DURA LIFO AND THEY HAVE AVOIDED

19    THIS RECOVERABLE LOSS THEORY, WHICH ACTUALLY IN ENPHASE, THEY

20    WERE PROPONENTS OF.

21         YOUR HONOR ALREADY NOTED THE MARKETTE CASE WHERE

22    JUDGE GILLIAM APPLIED THE PRICE THE DAY BEFORE THE CORRECTIVE

23    DISCLOSURE.  SO TO SAY THERE AREN'T CASES THAT DID IT IS

24    INCORRECT.

25         BUT ALSO AGAIN, I THINK YOU HAVE TO LOOK QUALITATIVELY AT

1    THE NUMBERS.  AND HERE WITH THIS CHART, THIS SCENARIO, AND THE

2    DIRECTION IN CAVANAUGH, THAT YOU LOOK AT THE PERSON WHO HAS THE

3    MOST TO GAIN FROM THE LAWSUIT, AND YOU ALSO HAVE TO BASE YOUR

4    CALCULATION ON SOMETHING THAT'S RATIONAL, RIGHT?  IT'S NOT JUST

5    CONSISTENT, IT'S RATIONAL.

6         AND HERE, UNDER THIS ANALYSIS, THE ONLY RATIONAL APPROACH

7    THAT WE SEE IS WHAT YOUR HONOR SO APTLY DID IN ENPHASE, AND WE

8    WOULD ENCOURAGE YOUR HONOR TO DO THE SAME HERE.

9         THE COURT:  OKAY.  ALL RIGHT.

10    THANK YOU ALL.  I APPRECIATE IT.

11        WHEN I PUT THIS ORDER OUT, I PRESUME THAT YOU WILL THEN

12   PROVIDE ME WITH A SCHEDULE FOR PERHAPS AN AMENDED COMPLAINT

13   THAT WILL BE NECESSARY AND A SCHEDULE FOR THE DEFENDANTS TO

14   RESPOND; IS THAT CORRECT?

15        MS. HERKENHOFF:  YES, YOUR HONOR.

16    IF I MAY SPEAK TO THAT.  WE CHECKED YOUR DOCKET AND THE

17   INITIAL COMPLAINT FILED HAD SET A SCHEDULE WHERE WITHIN TEN

18   DAYS OF APPOINTMENT, AND WE CERTAINLY WILL HONOR THAT.

19        THE COURT:  OKAY.  AND IF FOR SOME REASON THOSE DATES

20   DON'T WORK OUT AS WELL, YOU WILL GIVE ME A STIP AND ORDER ON

21   THAT.

22        MS. HERKENHOFF:  YES.

23        THE COURT:  OKAY.  THANK YOU ALL.

24    THIS HAS BEEN VERY HELPFUL.  MS. NGO, THANK YOU FOR THAT

25   REALLY THOUGHTFUL ARGUMENT, I APPRECIATE YOUR KNOWLEDGE ON IT,

1    YOU HELPED ME UNDERSTAND SOME OF THE DETAILS OF THE NUMBERS.  I

2    APPRECIATE THAT.

3              MS. NGO:  YOU ARE WELCOME.

4         THANK YOU, YOUR HONOR.

5              THE COURT:  ALL RIGHT.  THANKS.

6         (THE PROCEEDINGS WERE CONCLUDED AT 10:07 A.M.)

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 1/16/22

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue
Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Movant Sweta Sonthalia*
*and Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Sweta Sonthalia*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH,<br><br>Defendants. | No.  5:21-cv-06374-BLF<br><br>**NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF SWETA SONTHALIA AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Beth Labson Freeman<br>Hearing Date: Thursday, January 6, 2022<br>Time: 9 a.m.<br>Courtroom 3 – 5th Floor (San Jose) |

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

**41**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

NOTICE OF MOTION AND MOTION ....................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................ 2

    I.    PRELIMINARY STATEMENT ..................................... 2

    II.   STATEMENT OF ISSUES TO BE DECIDED ....................... 2

    III.  FACTUAL BACKGROUND .......................................... 3

    IV.  ARGUMENT ............................................................ 4

        A.    The Court should appoint Movant as Lead Plaintiff....................................... 4

            i.   Movant filed a timely motion and is willing to serve as Lead Plaintiff..... 5

            ii.  Movant has the largest financial interest in the relief sought by the Class. ..... 5

            iii. Movant satisfies Rule 23 requirements of typicality and adequacy. ......... 6

                (a)   Movant's claims are typical of the claims of the Class. .................. 6

                (b)   Movant is an adequate representative for the Class. ........................ 7

        B.    Movant's choice of counsel should be approved. ........................................... 8

    V.   CONCLUSION ..................................................... 10

i

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ................................................................ 5, 7

*Cohen* v. *U.S. Dist. Court*,
  586 F.3d 703 (9th Cir. 2009) ..................................................................................... 8

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..................................................................................... 6

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..................................................................... 6

*In re Twitter, Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018) ............................................................................... 6

*Nicolow v. Hewlett Packard Co.*,
  2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ............................................................... 5

*Richardson* v. *TVIA, Inc.*,
  2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ........................................................... 7

*Sayce v. Forescout Techs., Inc.*,
  2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ........................................................... 8

*Veal v. LendingClub Corp.*,
  2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) ............................................................. 6

*Zhu* v. *UCBH Holdings, Inc.*,
  682 F. Supp. 2d 1049 (N.D. Cal. 2010) ..................................................................... 6

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(A) ........................................................................................ 4, 5

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................... *passim*

Federal Rule of Civil Procedure 23(a) ......................................................................... 6, 7

ii

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, January 6, 2022 at 9 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 on the 5th Floor of the United States Courthouse, 280 South 1st Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, or any Judge sitting in her stead, movant Sweta Sonthalia ("Movant") will and hereby does move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order:

1.      Appointing Movant as Lead Plaintiff on behalf of a class consisting of all persons and entities that purchased or otherwise acquired View, Inc. f/k/a CF Finance Acquisition Corp. II ("View," "CF II" or the "Company") securities between November 30, 2020 and August 16, 2021, inclusive (the "Class Period"), and who were damaged thereby (the "Class");

2.      Approving Movant's selection of Roche Freedman LLP ("Roche Freedman") as Lead Counsel for the Class; and

3.      Granting such other and further relief as the Court may deem just and proper.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in Support Thereof, the Declaration of Ivy T. Ngo filed herewith, and all exhibits attached thereto, and such other written and oral arguments as may be permitted by the Court.

---

1

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

Currently pending before this Court is the above-captioned securities class action lawsuit alleging violations of the Exchange Act. ¶1.[1]

Pursuant to the PSLRA, the Court must appoint as lead plaintiff the class member it "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i)-(B)(iii). Guiding that determination, the PSLRA creates a presumption that the most adequate plaintiff is the person that "has the largest financial interest" and who "otherwise satisfies the requirements of Rule 23 . . ." *Id*.

Movant believes she has the largest financial interest in the outcome of this litigation because during the Class Period, she: (1) purchased 60,424 shares of View securities; (2) retained 60,424 net shares; (3) expended a total of $700,202.57 net funds; and (4) lost approximately $390,804 due to the alleged fraud. *See* Declaration of Ivy T. Ngo ("Ngo Decl."), Exes. A-B. Moreover, Movant satisfies the requirements of Rule 23 because her claims are typical of the Class's claims, and she will fairly and adequately represent the Class's interests. *See id*. at Ex. C. In addition, Movant's selection of Roche Freedman to serve as Lead Counsel should be approved because the firm possesses extensive experience and expertise in securities fraud and other class actions. *See id*. at Ex. D. Accordingly, Movant respectfully requests that the Court grant her motion.

**II.    STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether the Court should appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

2.     Whether the Court should approve Movant's selection of Roche Freedman as Lead Counsel for the proposed Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

---

[1] References to ¶ are to the Class Action Complaint for Violations of the Federal Securities Laws. ECF No. 1. Unless otherwise noted, all emphasis was added and internal citations were omitted.

2

NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF

**45**

## III.    FACTUAL BACKGROUND

View is a technology company that manufactures smart building products that are purportedly designed to improve people's health, productivity, and experience while reducing energy consumption. ¶18. Its primary product is a proprietary electrochromic or "smart" glass panel that, in combination with the Company's proprietary network and software, intelligently adjusts in response to the sun by tinting from clear to dark states, thereby reducing heat and glare. *Id.*

During the Class Period, Defendants failed to disclose to investors: (1) that View had not properly accrued warranty costs related to its product; (2) that there was a material weakness in View's internal controls over accounting and financial reporting related to warranty accrual; (3) that, as a result, the Company's financial results for prior periods were misstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. ¶ 33.

On August 16, 2021, after the market closed, View announced that it "began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual." ¶ 34. In a Form 12b-25 filed with the SEC, View stated that as a result of the independent investigation "the Company has not finalized its financial statements or its assessment of the effectiveness of its disclosure controls and procedures and internal control over financial reporting for the three and six months ended June 30, 2021" ("Second Quarter 2021"), and as a result, the Company would be unable to file its Quarterly Report on Form 10-Q for the Second Quarter 2021. *Id.*

On this news, the Company's share price fell $1.26, or over 24%, to close at $3.92 per share on August 17, 2021, on unusually heavy trading volume. ¶ 35.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff Asif Mehedi and other Class members have suffered significant losses and damages. ¶ 8.

3

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

## IV.   ARGUMENT

### A.  The Court should appoint Movants as Lead Plaintiff.

Within the first 20 days of filing suit, the PLSRA requires the plaintiff in the first filed class action to publish a notice in a widely circulated national business publication or wire service that advises potential class members the action is pending and that they have a right to move for Lead Plaintiff in 60 days. 15 U.S.C. § 78u-4(a)(3)(A).

The Court must consider any motion seeking appointment as Lead Plaintiff within 90 days of that notice and must appoint the movant that the court determines to be "most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as Lead Plaintiff is the class member or members that:

> (aa)   has either filed the complaint or made a motion in response to a notice;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and possesses, to the best of her knowledge, the largest financial interest in the relief sought by the Class, of any movant seeking appointment as Lead Plaintiff. Movant is also unaware of any unique defenses that could be raised against her. Therefore, Movant is entitled to the presumption that she is the most adequate plaintiff to represent the Class. Movant also satisfies the typicality and adequacy requirements of Rule 23, and, as a result, should be appointed Lead Plaintiff in the Action.

4

NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF

47

### i. Movant filed a timely motion and is willing to serve as Lead Plaintiff.

Within 20 days of filing the complaint (*i.e.,* on August 18, 2021), Plaintiff Asif Mehedi published the required notice through *Business Wire,* a widely circulated national business-oriented wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Ngo Decl., Ex. E. Movant timely filed her motion within the next 60 days, *i.e.,* by October 18, 2021. 15 U.S.C. § 78u-4(a)(3)(A)(i). Movant has filed herewith, a PSLRA certification and declaration attesting that she is willing to serve as Lead Plaintiff of the Class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ngo Decl., Exes. A, C. Accordingly, Movant has satisfied the first requirement to serve as Lead Plaintiff of the Class.

### ii. Movant has the largest financial interest in the relief sought by the Class.

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, Movant has the largest financial interest in the relief sought by the Class and should therefore be presumed the most adequate plaintiff to serve as Lead Plaintiff. *See* Ngo Decl., Exes. A-B.

In assessing the largest financial interest, the Court generally considers: "(1) the number of shares purchased;" "(2) the number of net shares purchased;" "(3) total net funds expended during the class period;" and "(4) the approximate losses suffered." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012). Of these factors, this Court tends to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See e.g.*, *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).

During the Class Period, Movant: (1) purchased 60,424 shares of View securities; (2) retained 60,424 net shares; (3) expended a total of $700,202.57 net funds; and (4) lost approximately $390,804 due to the alleged fraud. *See* Ngo Decl., Ex. B. As a result of the revelations of the fraud described above, Movant suffered substantial financial losses, and thus, has a significant interest in

5

NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF

**48**

the outcome of this litigation. To Movant's knowledge, there are no other applicants who have sought, or are seeking, appointment as Lead Plaintiff that have a larger financial interest that also satisfy Rule 23.

### iii. Movant satisfies Rule 23 requirements of typicality and adequacy.

In addition to demonstrating the largest financial interest, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Rule 23(a) requires the following four requirements be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Of these four prerequisites, only typicality and adequacy address the personal characteristics of the movant, and thus, are the only two considered at this stage. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Veal v. LendingClub Corp.*, 2018 WL 5879645, at *4 (N.D. Cal. Nov. 7, 2018).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying her appointment as Lead Plaintiff.

### (a) Movant's claims are typical of the claims of the Class.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the "plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of the other class members and the claims are based on the same legal theory." *Zhu* v. *UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)); *See also In re Twitter, Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

In this case, the typicality requirement is met because Movant's claims are typical, if not

6

NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF

49

identical, to the other members of the putative class. Further, there is nothing to indicate that her claims conflict with those of the putative class or that she is subject to unique defenses. Movant, like the other members of the Class, acquired View securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby when the truth was revealed. Movant suffered loses similar to those of the other Class members and her losses resulted from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement.

**(b) Movant is an adequate representative for the Class.**

Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy to "whether the class representative[s] and [their] counsel have conflicts of interest with other class members and whether the class representative[s] and [their] counsel will prosecute the action vigorously on behalf of the class." *Juniper Networks*, 2012 WL 78780, at *5. "The adequacy requirement is met if there are no conflicts between the representative and class interests, and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007).

Movant has demonstrated her ability, pursuant to Rule 23(a)(4), to protect the interest of the putative class fairly and adequately. *See* Ngo Decl. Exes. A-D. First, as demonstrated *supra,* Movant has a significant interest in the outcome of this case based on her financial losses and has no reason to believe that her interests are averse to those of the other Class members.

Second, as provided in Movant's declaration, she is 43 years old and resides in Singapore. She has a Bachelor of Commerce, is the director of a private limited company, and has been investing in securities for approximately 3 years.

Moreover, Movant understands the responsibilities of a Lead Plaintiff, including her selection of Lead Counsel, and the overseeing and monitoring of this litigation. *See* Ngo Decl., Ex. C. As such, Movant communicated with competent, experienced counsel concerning this case, and

7

NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF

**50**

retained Roche Freedman, who, as shown below, is experienced in litigating lawsuits such as this case and Movant submits her choice of counsel to the Court for approval. Therefore, Movant is an adequate representative for the Class. *See Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at *7 (N.D. Cal. Nov. 19, 2020) (finding adequacy met where movant's "significantly larger financial interest in this case and through their selection of counsel experienced in securities class action litigation ... [movant] has sufficiently demonstrated its alignment of interest with the rest of the class as well as its intent and willingness to act as vigorous advocates on behalf of the entire class").

Accordingly, at this stage of the proceedings, Movant has met all requirements for appointment as Lead Plaintiff. Movant has timely filed her motion; believes she has the largest financial interest in the relief sought by the Class; and has made the preliminary showing necessary to satisfy the typicality and adequacy requirements under Rule 23. Thus, Movant is entitled to the presumption of "most adequate" plaintiff and, as such, should be appointed to lead the Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)-(II).

**B. Movant's choice of counsel should be approved.**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the Court's approval. The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.").

The record confirms that Movant's selection of counsel should be approved; Roche Freedman is qualified, experienced, and capable of effectively prosecuting the Action on behalf of Movant and the Class. *See* Ngo Decl., Exs. D-E. *see also* Opinion & Order, *D'Arcy v. Sequential Brands Group, Inc. et al.*, No. 2:21-cv-02305-JFW-RAO (C.D. Cal. June 11, 2021), ECF No. 25 (appointing Roche Freedman sole Lead Counsel of the securities class action, concluding that "it is capable of serving competently in the role of Lead Counsel. In fact, [Roche Freedman attorneys

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

have] extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.").

In addition to Roche Freedman's appointment as Lead Counsel in *D'Arcy v. Sequential Brands Group, Inc. et al.*, No. 2:21-cv-02305 (C.D. Cal.), it was also appointed, and is serving as, Lead Counsel in the following securities fraud class actions: *Garcia v. J2 Global, Inc. et al.,* No. 2:20-cv-06096 (C.D. Cal.); *In re Sona Nanotech, Inc. Sec. Litig.,* No. 2:20-cv-11405 (C.D. Cal.); *In re Qutoutiao Inc. Sec. Litig.,* No. 1:20-cv-06707 (SHS) (S.D.N.Y.); *Carl D. Cachia v. Bellus Health Inc. et al.,* No. 1:21-cv-02278 (S.D.N.Y.); *In re Renewable Energy Grp. Sec. Litig.,* No. 1:21-cv-01832 (S.D.N.Y.); *In re Qiwi Plc Sec. Litig.,* No. 1:20-cv-06054 (E.D.N.Y.); and *Chapman v. Fennec Pharma Inc. et al.*, No. 1:20-cv-812 (M.D.N.C.). Roche Freedman has also been appointed, and is serving, as Co-Lead Counsel in the following securities fraud class action cases: *Clifford et al., v. Tron Found. et al.,* No. 1:20-cv-02804 (S.D.N.Y.); *Lee et al., v. Binance et al.*, No. 1:20-cv-02803 (S.D.N.Y.); *Williams v. KuCoin et al.*, No. 1:20-cv-02806 (S.D.N.Y.); *Lowry v. RTI Surgical Holdings, Inc. et al.,* No. 1:20-cv-01939 (N.D. Ill.); and *Hartel v. Geo Group, Inc. et al.*, No. 9:20-cv-81063 (S.D. Fla.).

Moreover, Roche Freedman has also shown its ability to successfully serve as Co-Lead Counsel in a securities class action lawsuit, most recently obtaining preliminary approval of a $10.5 million recovery for investors in the securities of RTI. *See Lowry v. RTI Surgical Holdings, Inc., et al.*, No. 1:20-cv-01939, ECF No. 99 (N.D. Ill. Sept. 10, 2021).

Roche Freedman's attorneys have decades of experience in complex litigation, including securities litigation and class actions on behalf of plaintiffs and defendants. *See Ngo Decl., Ex. D.* The firm's attorneys have previously been appointed as Co-Lead Counsel in securities class actions and/or have clerked for federal judges sitting in the Southern District of New York, Northern District of California, Eastern District of Pennsylvania, Eastern District of Louisiana, Southern District of Florida, District of Connecticut, Second Circuit, Fourth Circuit, Fifth Circuit, Ninth Circuit, and

9

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL; MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

1   United State Supreme Court. *See id.*

2      Movant respectfully submits that this wealth of experience and qualifications demonstrates

3   Roche Freedman's ability to prosecute this Action vigorously and zealously on behalf of Movant

4   and the Class.

5   **V.     CONCLUSION**

6      Movant respectfully requests that the Court: (1) appoint her as Lead Plaintiff; (2) approve

7   her selection of Roche Freedman as Lead Counsel for the Class; and (3) grant such other relief as

8   the Court may deem just and proper.

9

10  DATED: October 18, 2021                    Respectfully Submitted,

11                                             **ROCHE FREEDMAN LLP**

12                                             */s/ Ivy T. Ngo*
                                               Ivy T. Ngo (249860)
13                                             Constantine P. Economides (*pro hac vice* forthcoming)
                                               Velvel (Devin) Freedman (*pro hac vice* forthcoming)
14                                             1 SE 3rd Avenue
15                                             Suite 1240
                                               Miami, Florida 33131
16                                             T: (305) 971-5943
17                                             ingo@rochefreedman.com
                                               ceconomides@rochefreedman.com
18                                             vel@rochefreedman.com

19                                             *Counsel for Movant Sweta Sonthalia and*
                                               *Proposed Lead Counsel for the Class*
20
                                               **LABATON SUCHAROW LLP**
21                                             David J. Schwartz (*pro hac vice* forthcoming)
22                                             140 Broadway
                                               New York, New York 10005
23                                             T: (212) 907-0870
                                               F: (212) 883-7070
24                                             dschwartz@labaton.com

25                                             *Additional Counsel for Movant Sweta Sonthalia*

26

27

28
                                         10
    **NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
    LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
    MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 18, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:     */s/ Ivy T. Ngo*
        Ivy T. Ngo

**NOTICE OF MOT. AND MOT. FOR APPOINTMENT OF SWETA SONTHALIA AS
LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL;
MEM. OF P. & A. IN SUPP. THEREOF | CASE NO. 5:21-cv-06374-BLF**

# EXHIBIT B

View Inc. f/k/a CF Finance Acquisition Corp. II (VIEW)
Class Period: November 30, 2020 - August 16, 2021

| Movant | Purchase Date | Shares Purchased | Price Purchased | Amount | Sales Date | Shares Sold | Shares Retained | Price | Amount | LIFO Gain(Loss) | FIFO Gain(Loss) | Dura LIFO Gain(Loss) |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| Sweta Sonthalia | 12/10/2020 | 2,500 | $ 10.4996 | $ (26,249.00) | | | | | | | | |
| | 12/11/2020 | 10,000 | $ 10.50 | $ (105,000.00) | | | | | | | | |
| | 12/14/2020 | 10,000 | $ 10.70 | $ (107,000.00) | | | | | | | | |
| | 1/11/2021 | 941 | $ 12.53 | $ (11,790.73) | | | | | | | | |
| | 1/11/2021 | 1,000 | $ 12.60 | $ (12,600.00) | | | | | | | | |
| | 1/11/2021 | 1,000 | $ 12.83 | $ (12,830.00) | | | | | | | | |
| | 1/11/2021 | 1,000 | $ 12.635 | $ (12,635.00) | | | | | | | | |
| | 1/11/2021 | 1,059 | $ 12.85 | $ (13,608.15) | | | | | | | | |
| | 1/12/2021 | 5,000 | $ 12.68 | $ (63,400.00) | | | | | | | | |
| | 1/15/2021 | 5,000 | $ 12.55 | $ (62,750.00) | | | | | | | | |
| | 1/15/2021 | 5,000 | $ 12.63 | $ (63,150.00) | | | | | | | | |
| | 1/15/2021 | 620 | $ 12.55 | $ (7,781.00) | | | | | | | | |
| | 1/15/2021 | 6,880 | $ 12.599 | $ (86,681.12) | | | | | | | | |
| | 2/4/2021 | 3,900 | $ 10.99 | $ (42,861.00) | | | | | | | | |
| | 2/4/2021 | 6,100 | $ ######## | $ (67,215.29) | | | | | | | | |
| | 2/5/2021 | 424 | $ 10.97 | $ (4,651.28) | | | | | | | | |
| | | | | | | | 60,424 | $ 5.12 | $309,398.98 | | | |
| **TOTAL** | | **60,424** | | **$ (700,202.57)** | | | **60,424** | | | **$ (390,804)** | **$ (390,804)** | **$ (390,804)** |

*For shares held at the end of the Class Period, losses are calculated based on: (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated; or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e). As of October 18, 2021, the average trading price during the 90-day period is $5.12.

1   Laurence D. King (SBN 206423)
    Kathleen A. Herkenhoff (SBN 168562)
2   **KAPLAN FOX & KILSHEIMER LLP**
    1999 Harrison Street, Suite 1560
3   Oakland, CA 94612
    Telephone: 415-772-4700
4   Facsimile: 415-772-4707
    Emails: *lking@kaplanfox.com*
5           *kherkenhoff@kaplanfox.com*

6   *[Additional Counsel on Signature Page]*

7   *Counsel for Movant Stadium Capital LLC and Proposed*
    *Lead Counsel for the Proposed Class*
8

9                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
10

11  ASIF MEHEDI, Individually and on Behalf of        Case No.: 5:21-cv-06374-BLF
    All Others Similarly Situated,
12                                                     **CLASS ACTION**
                              Plaintiff,
13                                                     **NOTICE OF MOTION, MOTION AND**
            v.                                         **MEMORANDUM OF POINTS AND**
14                                                     **AUTHORITIES IN SUPPORT OF**
    VIEW, INC. f/k/a CF FINANCE                        **STADIUM CAPITAL LLC'S MOTION**
15  ACQUISITION CORP. II, RAO MULPURI,                 **FOR APPOINTMENT AS LEAD**
    and VIDUL PRAKASH,                                 **PLAINTIFF AND APPROVAL OF LEAD**
16                                                     **COUNSEL**
                              Defendants.
17                                                     Judge: Hon. Beth L. Freeman
                                                       Courtroom: 3, 5th Floor
18                                                     Date: January 6, 2022
                                                       Time: 9:00 a.m.
19

20

21

22

23

24

25

26

27

28

                                                       Case No. 5:21-cv-06374-BLF
─────────────────────────────────────────────────────────────
Notice of Mot., Mot. & Memo of Points and Authorities to Appt. Lead Plaintiff & Approve Lead Counsel

<strong><u>NOTICE OF MOTION AND MOTION</u></strong>

**TO:**     **ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on January 6, 2022 at 9:00 a.m., or as soon thereafter as set by the Court, in Courtroom 3 of the San Jose Courthouse, 280 South 1st Street, 5th Floor, San Jose, California 95113, the Honorable Beth Freeman presiding, movant Stadium Capital LLC ("Stadium Capital") will, and hereby does, respectfully move this Court, under the Federal Rules of Civil Procedure ("Rule") and Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") for an order: (1) appointing Stadium Capital as lead plaintiff in the above-captioned action (the "Action") for a putative class of all persons or entities that purchased or otherwise acquired View, Inc. ("View" or the "Company") f/k/a CF Finance Acquisition Corp. II ("CF II") securities between November 30, 2020 and August 16, 2021, inclusive (the "Class Period") (the "Class"); (2) approving Stadium Capital's selection of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel; and (3) granting such other relief as the Court may deem just and proper.

This motion is made on the grounds that Stadium Capital believes that it is the "most adequate plaintiff" possessing claims arising out of the Exchange Act for the Class. 15 U.S.C. § 78u-4(a)(3)(B). In addition, Stadium Capital meets the requirements of Rule 23 because its claims are typical of the claims of members of the Class and Stadium Capital will fairly and adequately represent the Class. Finally, Stadium Capital has selected and retained Kaplan Fox to serve as lead counsel, a law firm with substantial experience in prosecuting complex securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

The motion is based on this notice of motion, the supporting memorandum of points and authorities, the Declaration of Laurence D. King in Support of Stadium Capital's Motion Appointment as Lead Plaintiff and Approval of Lead Counsel, dated October 18, 2021 ("King Decl."), the pleadings and other files and records in this Action, and upon such other written or oral argument as may be presented to the Court.

- 1 -
Case No. 5:21-cv-06374-BLF
NOTICE OF MOT., MOT. & MEMO OF POINTS AND AUTHORITIES TO APPT. LEAD PLAINTIFF & APPROVE LEAD COUNSEL

**58**

**<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.    INTRODUCTION ............................................................................................................1

II.   SUMMARY OF THE ACTION ......................................................................................2

III.  ARGUMENT ....................................................................................................................3

    A.    Legal Standards and Procedures for Appointment of Lead Plaintiff and Lead Counsel ...................................................................................................................3

    B.    Stadium Capital is the Most Adequate Plaintiff ....................................................4

        1.    Stadium Capital has the Largest Financial Interest ...................................4

        2.    Stadium Capital Satisfies Rule 23 .............................................................5

            a.    Stadium Capital's Claims are Typical ...........................................6

            b.    Stadium Capital is Adequate .........................................................6

            c.    This Court Should Approve Stadium Capital's Selection of Counsel ...........................................................................................7

IV.   CONCLUSION..................................................................................................................8

Case No. 5:21-cv-06374-BLF

NOTICE OF MOT., MOT. & MEMO OF POINTS AND AUTHORITIES TO APPT. LEAD PLAINTIFF & APPROVE LEAD COUNSEL

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page**

3

**Cases**

4
5
*Ali v. Intel Corp.*,
   No. 18-cv-00507-YGR, 2018 WL 2412111 (N.D. Cal. May 29, 2018)........................................4

6
*Cohen v. U.S. Dist. Court for N. Dist. of Cal.*,
   586 F.3d 703 (9th Cir. 2009) ................................................................7

7
8
*Deinnocentis v. Dropbox, Inc.*,
   No. 19-CV-06348-BLF, 2020 WL 264408 (N.D. Cal. Jan. 16, 2020) ...................................4, 5, 6

9
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................6

10
11
*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................6

12
*Hodges v. Akeena Solar, Inc.*,
   263 F.R.D. 528 (N.D. Cal. 2009) ................................................................4

13
14
*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................1, 4, 5, 7

15
*In re Cloudera, Inc. Sec. Litig.*,
   No. 19-CV-03221-LHK, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ...................................4

16
17
*Luna v. Marvell Tech. Grp. Ltd*,
   No. 15-cv-05447-RMW, 2016 WL 469422  (N.D. Cal. Feb. 8, 2016) ...................................6

18
*Richardson v. TVIA, Inc.*,
   No. 06-cv-06304-RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ...................................5, 6

19
20
*Shenwick v. Twitter, Inc.*,
   No. 16-cv-05314-JST, 2016 WL 10672428 (N.D. Cal. Dec. 22, 2016) ...................................4

21
*Siegall v. Tibco Software, Inc.*, No. C,
   No. 05-cv-02146-SBA, 2006 WL 1050173 (N.D. Cal. Feb. 24, 2006)...................................5

22
23
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................6

24
*Wong v. Arlo Techs., Inc.*,
   No. 19-cv-00372-BLF, 2019 WL 2010706 (N.D. Cal. May 6, 2019) ...................................4

25
26
*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
   231 F.3d 1215 (9th Cir. 2000) ...........................................................1, 4

27

28

NOTICE OF MOT., MOT. & MEMO OF POINTS AND AUTHORITIES TO APPT. LEAD PLAINTIFF & APPROVE LEAD COUNSEL

**Statutes**

15 U.S.C. § 78j(b) ................................................................................................... 1

15 U.S.C. § 78t(a) ................................................................................................... 1

15 U.S.C. § 78u-4(a)(1) .......................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(A)(i) .............................................................................. 2, 3

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ........................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(i) .............................................................................. 1, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii) .............................................................................. 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................. 1, 7

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 1, 4, 5

Fed. R. Civ. P. 23(a) ........................................................................................... 5, 6

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 6

**Regulations**

17 C.F.R. § 240.10b-5 ............................................................................................ 1

NOTICE OF MOT., MOT. & MEMO OF POINTS AND AUTHORITIES TO APPT. LEAD PLAINTIFF & APPROVE LEAD COUNSEL

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Stadium Capital should be appointed Lead Plaintiff.

2.      Whether the Court should approve Stadium Capital's selection of Kaplan Fox as Lead Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Stadium Capital respectfully submits this memorandum of law in support of its motion for: (1) appointment as Lead Plaintiff for the Class, pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA; (2) approval of its selection of Kaplan Fox as Lead Counsel for the Class; and (3) such other relief as the Court may deem just and proper. Stadium Capital believes that it has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed Lead Plaintiff for the Class and to have its selection of counsel approved. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(bb) and 78u-4(a)(3)(B)(v); *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1217 (9th Cir. 2000); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

**I.     INTRODUCTION**

This Action is brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against View, Rao Mulpuri ("Mulpuri"), and Vidul Prakash ("Prakash") (collectively, the "Defendants") for violations of the federal securities laws relating to the Company's alleged false and misleading statements throughout the Class Period.

Pursuant to the PSLRA, this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Stadium Capital believes that it is the movant with the largest financial interest that otherwise meets the applicable requirements under Rule 23.

Stadium Capital respectfully requests that the Court approve Kaplan Fox as Lead Counsel for the Class. *See* § III.C.2.c., *infra*; 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").

## II.    SUMMARY OF THE ACTION

On August 18, 2021, the Action was filed and notice was published to class members on *Business Wire*, as required by 15 U.S.C. § 78u-4(a)(3)(A)(i) of the Exchange Act (the "Notice"). *See* King Decl., Exh. 1.  The Notice advised purchasers of View securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and conduct that allegedly damaged investors.  *Id.*  The Notice further advised class members of their right to move the Court to be appointed Lead Plaintiff within 60 days of the publication of the Notice.  *Id.*

As alleged in the Action, View is a technology company that manufactures smart building products that are purportedly designed to improve people's health, productivity, and experience while reducing energy consumption.  *See* Compl., ¶ 2.  Its primary product is a proprietary electrochromic or "smart" glass panel that, in combination with the Company's proprietary network and software, intelligently adjusts in response to the sun by tinting from clear to dark states, thereby reducing heat and glare. *Id.*

According to the Action, CF II was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses. *Id.* ¶ 3.  On March 8, 2021, CF II and View combined via a Business Combination with View as the surviving, public entity.  *Id.* ¶ 4.

As alleged in the Action, on August 16, 2021, after the market closed, View announced that it "began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual." *Id.* ¶ 5.  On this news, the Company's share price fell $1.26, or over 24%, to close at $3.92 per share on August 17, 2021, on unusually heavy trading volume. *Id.* ¶ 6.

The Action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that View had not properly accrued warranty costs related to its product; (2) that there was a material weakness in View's internal controls over accounting and financial reporting related to warranty accrual; (3) that, as a result, the Company's financial results for prior periods were

Case No. 5:21-cv-06374-BLF

NOTICE OF MOT., MOT. & MEMO OF POINTS AND AUTHORITIES TO APPT. LEAD PLAINTIFF & APPROVE LEAD COUNSEL

misstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id.* at ¶ 7.

**III.    ARGUMENT**

>   **A.    Legal Standards and Procedures for Appointment of Lead Plaintiff and Lead Counsel**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and 78u-4(a)(3)(B)(i). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

>   >   (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>   >   (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that the most adequate plaintiff is the person or group of persons which:

>   >   (aa)    has either filed the complaint or made a motion in response to a notice. . .;

1          (bb)     in the determination of the court, has the largest financial interest

2                  in the relief sought by the class; and

3          (cc)     otherwise satisfies the requirements of Rule 23 of the Federal

4                  Rules of Civil Procedure.

5   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

6        On August 18, 2021, this Action was filed and notice was published to class members on

7   *Business Wire*. *See* King Decl., Exh. 1.[1] The time period in which class members may move to be

8   appointed lead plaintiff in this case expires on October 18, 2021. *See* 15 U.S.C. § 78u-

9   4(a)(3)(A)(i)(II); *see also* Civ. L.R. 23-1(b). Pursuant to the PSLRA's provisions, and within the

10  requisite time frame after publication of the required notice, Stadium Capital timely moved this

11  Court to be appointed Lead Plaintiff on behalf of the Class.

12       Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby

13  the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the

14  requirements of Rule 23 is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C.

15  § 78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 729-30; *see also Z-Seven Fund, Inc.*, 231 F.3d at

16  1217; *Deinnocentis v. Dropbox, Inc.*, No. 19-CV-06348-BLF, 2020 WL 264408, at *3 (N.D. Cal.

17  Jan. 16, 2020) (Freeman, J.); *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL

18  6842021, at *2-3 (N.D. Cal. Dec. 16, 2019); *Wong v. Arlo Techs., Inc.*, No. 19-cv-00372-BLF,

19  2019 WL 2010706, at *2 (N.D. Cal. May 6, 2019); *Ali v. Intel Corp.*, No. 18-cv-00507-YGR, 2018

20  WL 2412111, at *2 (N.D. Cal. May 29, 2018); *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST,

21  2016 WL 10672428, at *1 (N.D. Cal. Dec. 22, 2016).

22    **B.**    **Stadium Capital is the Most Adequate Plaintiff**

23       **1.**    **Stadium Capital has the Largest Financial Interest**

24       Stadium Capital suffered substantial losses of approximately $330,010 as a result of

25  expending $3,642,869 to purchase 426,235 shares of View securities at artificially inflated prices

26

27  [1] Online wire services like *Business Wire* are suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire

28  service." *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 531 (N.D. Cal. 2009) (quoting *Cavanaugh*, 306 F.3d at 729).

during the Class Period.  *See* King Decl., Exhs. 2, 3.  During the Class Period Stadium Capital purchased 60,000 net shares and had net expenditures of $583,845.  *Id*.  Stadium Capital is not aware of any other movant with a larger financial interest, believes it has the largest financial interest of any lead plaintiff movant, and therefore believes it is presumptively entitled to appointment as Lead Plaintiff.

### 2.  Stadium Capital Satisfies Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representatives. *Siegall v. Tibco Software, Inc.*, No. 05-cv-02146-SBA, 2006 WL 1050173, at *5 (N.D. Cal. Feb. 24, 2006) ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are key factors.") (citations omitted).  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the appointed lead plaintiff moves for class certification.  *See Cavanaugh*, 306 F.3d at 730; *Richardson v. TVIA, Inc.*, No. 06-cv-06304-RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007); *Dropbox*, 2020 WL 264408, at

*4.   As detailed below, Stadium Capital satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as Lead Plaintiff on behalf of the Class.

### a.   Stadium Capital's Claims are Typical

Under Rule 23(a)(3), "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."); *Dropbox*, 2020 WL 264408, at *4; *Richardson*, 2007 WL 1129344, at *4.

The claims asserted by Stadium Capital are based on the same legal theory and arise out of the same course of events as the other purported Class members' claims.  Stadium Capital purchased View securities, as did each member of the Class, at prices artificially inflated or otherwise manipulated by Defendants' untrue statements of material fact and material omissions and were damaged thereby.  Thus, Stadium Capital satisfies the typicality requirement of Rule 23(a).

### b.   Stadium Capital is Adequate

The adequacy requirement of Rule 23(a) is met when the prospective lead plaintiff has selected qualified, experienced counsel and there are no "conflicts between the representative and class interests." *Richardson*, 2007 WL 1129344, at *4; *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Luna v. Marvell Tech. Grp. Ltd*, No. 15-cv-05447-RMW, 2016 WL 469422, at *3 (N.D. Cal. Feb. 8, 2016).  Here, Stadium Capital's interests are clearly aligned with the members of the proposed Class, and there is no evidence of any antagonism between Stadium Capital's interests and those of the proposed Class.  As detailed above, Stadium Capital's claims raise similar questions of law and fact as claims of the members of the Class, and Stadium Capital's claims are typical of the members of the Class.

1     Further, Stadium Capital has amply demonstrated its adequacy and willingness to serve as

2  and assume lead plaintiff responsibilities. The signed Certification of Stadium Capital evidences

3  its understanding of the duties it owes to the Class and its commitment to monitor this class action.

4  *See* King Decl., Exh. 2. This evidence demonstrates that Stadium Capital accepts the fiduciary

5  obligations it will assume if appointed lead plaintiff in this action.

6     Finally, Stadium Capital has selected Kaplan Fox – counsel highly experienced in

7  prosecuting complex securities class actions – to represent it. *See* King Decl., Exh. 4. The close

8  alignment of interests between Stadium Capital and other members of the Class, and its strong

9  desire to prosecute this action on behalf of the Class, provide ample reason to grant Stadium

10  Capital's motion for appointment as Lead Plaintiff on behalf of the Class. Accordingly, Stadium

11  Capital satisfies the prerequisites for appointment as Lead Plaintiff pursuant to the Exchange Act.

12     **c.**    **This Court Should Approve Stadium Capital's Selection of Counsel**

13     The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel,

14  subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 732

15  n.11. Thus, "if the lead plaintiff has made a reasonable choice of counsel, the district court should

16  generally defer to that choice." *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712

17  (9th Cir. 2009) (citation omitted). Stadium Capital has retained Kaplan Fox to file a lead plaintiff

18  motion, a consolidated complaint, and to serve as Lead Counsel to pursue this litigation on behalf

19  of itself and the proposed Class. Kaplan Fox possesses extensive experience in the area of securities

20  litigation and has successfully prosecuted numerous securities class actions on behalf of injured

21  investors. *See* King Decl., Exh. 4. Thus, the Court may be assured that, in the event the instant

22  motion is granted, the members of the Class will receive the highest caliber of legal representation

23  available.

24

25

26

27

28

IV.     CONCLUSION

        For all of the foregoing reasons, Stadium Capital respectfully requests that the Court:
(1) appoint it as Lead Plaintiff; (2) approve its choice of Kaplan Fox as Lead Counsel; and (3) grant
such other relief as the Court may deem just and proper.

                                        Respectfully submitted,

                                        **KAPLAN FOX & KILSHEIMER LLP**

DATED:  October 18, 2021               By:   */s/ Laurence D. King*
                                               Laurence D. King

                                        Laurence D. King (SBN 206423)
                                        Kathleen A. Herkenhoff (SBN 168562)
                                        1999 Harrison Street, Suite 1560
                                        Oakland, CA 94612
                                        Telephone:  415-772-4700
                                        Facsimile:  415-772-4707
                                        *lking@kaplanfox.com*
                                        *kherkenhoff@kaplanfox.com*

                                        **KAPLAN FOX & KILSHEIMER LLP**
                                        Frederic S. Fox (*pro hac vice* to be filed)
                                        Donald R. Hall (*pro hac vice* to be filed)
                                        Jason A. Uris (*pro hac vice* to be filed)
                                        850 Third Avenue
                                        New York, NY 10022
                                        Telephone:  212-687-1980
                                        Facsimile:  212-687-7714
                                        *ffox@kaplanfox.com*
                                        *dhall@kaplanfox.com*
                                        *juris@kaplanfox.com*

                                        *Counsel for Movant Stadium Capital LLC and Proposed
                                        Lead Counsel for the Proposed Class*

NOTICE OF MOT., MOT. & MEMO OF POINTS AND AUTHORITIES TO APPT. LEAD PLAINTIFF & APPROVE LEAD COUNSEL

# Exhibit 3

## Exhibit A



EXPERIENCE. SELECTIVITY. RESULTS.

## Stadium Capital LLC

### Estimated Losses in View, Inc.(NASDAQ: VIEW) - Class period: 11/30/2020 - 8/16/2021

| SECURITY NAME | CUSIP | TRANSACTION TYPE | TRADE DATE | SHARES | PRICE PER SHARE | COSTS or (PROCEEDS) | ESTIMATED LOSSES or (PROFIT) |
|---|---|---|---|---|---|---|---|
| **VIEW, INC. F/K/A CF FINANCE ACQUISITION CORP. II** | | | | | | | |
| CF Finance Acquisition Corp. II | 15725Q104 | Buy | 12/1/2020 | 37,000 | $11.3313 | $419,258.10 | |
| CF Finance Acquisition Corp. II | 15725Q104 | Buy | 12/2/2020 | 5,000 | $10.3000 | $51,500.00 | |
| CF Finance Acquisition Corp. II | 15725Q104 | Buy | 12/3/2020 | 8,000 | $10.4138 | $83,310.40 | |
| CF Finance Acquisition Corp. II | 15725Q104 | Buy | 12/4/2020 | 30,000 | $10.4749 | $314,247.00 | |
| CF Finance Acquisition Corp. II | 15725Q104 | Buy | 2/4/2021 | 10,000 | $11.0349 | $110,349.00 | |
| CF Finance Acquisition Corp. II | 15725Q104 | Buy | 2/5/2021 | 10,000 | $11.0500 | $110,500.00 | |
| View, Inc. | 92671V106 | Buy | 3/18/2021 | 22,921 | $8.5088 | $195,030.20 | |
| View, Inc. | 92671V106 | Buy | 3/19/2021 | 2,952 | $8.0500 | $23,763.60 | |
| View, Inc. | 92671V106 | Buy | 3/22/2021 | 20,000 | $8.2250 | $164,500.00 | |
| View, Inc. | 92671V106 | Buy | 3/22/2021 | 6,626 | $8.2500 | $54,664.50 | |
| View, Inc. | 92671V106 | Buy | 3/25/2021 | 20,000 | $7.4448 | $148,896.00 | |
| View, Inc. | 92671V106 | Buy | 3/31/2021 | 15,000 | $7.4000 | $111,000.00 | |
| View, Inc. | 92671V106 | Buy | 4/5/2021 | 25,895 | $8.0896 | $209,480.19 | |
| View, Inc. | 92671V106 | Buy | 4/15/2021 | 10,000 | $7.0862 | $70,862.00 | |
| View, Inc. | 92671V106 | Buy | 4/15/2021 | 32,000 | $8.0524 | $257,676.80 | |
| View, Inc. | 92671V106 | Buy | 4/30/2021 | 20,000 | $8.9750 | $179,500.00 | |
| View, Inc. | 92671V106 | Buy | 5/10/2021 | 5,841 | $7.0000 | $40,887.00 | |
| View, Inc. | 92671V106 | Buy | 6/1/2021 | 10,000 | $7.9060 | $79,060.00 | |
| View, Inc. | 92671V106 | Buy | 6/24/2021 | 43,197 | $8.5000 | $367,174.50 | |
| View, Inc. | 92671V106 | Buy | 6/25/2021 | 31,803 | $8.5000 | $270,325.50 | |
| View, Inc. | 92671V106 | Buy | 7/19/2021 | 20,000 | $6.6675 | $133,350.00 | |
| View, Inc. | 92671V106 | Buy | 7/23/2021 | 10,000 | $6.6000 | $66,000.00 | |
| View, Inc. | 92671V106 | Buy | 7/27/2021 | 6,000 | $6.1000 | $36,600.00 | |
| View, Inc. | 92671V106 | Buy | 8/5/2021 | 6,000 | $6.0428 | $36,256.80 | |
| View, Inc. | 92671V106 | Buy | 8/9/2021 | 8,000 | $6.1472 | $49,177.60 | |
| View, Inc. | 92671V106 | Buy | 8/12/2021 | 10,000 | $5.9500 | $59,500.00 | |
| | | | | 426,235 | | $3,642,869.20 | |
| | | | | | | | |
| CF Finance Acquisition Corp. II | 15725Q104 | Sell | 2/25/2021 | (20,000) | $10.0796 | ($201,592.00) | |
| CF Finance Acquisition Corp. II | 15725Q104 | Sell | 3/9/2021 | (80,000) | $10.0000 | ($800,000.00) | |
| View, Inc. | 92671V106 | Sell | 3/19/2021 | (2,499) | $8.7500 | ($21,866.25) | |
| View, Inc. | 92671V106 | Sell | 3/23/2021 | (20,000) | $8.4373 | ($168,746.00) | |
| View, Inc. | 92671V106 | Sell | 3/24/2021 | (5,000) | $8.0000 | ($40,000.00) | |
| View, Inc. | 92671V106 | Sell | 4/1/2021 | (21,015) | $8.3359 | ($175,178.94) | |
| View, Inc. | 92671V106 | Sell | 4/5/2021 | (1,880) | $8.4000 | ($15,792.00) | |
| View, Inc. | 92671V106 | Sell | 4/14/2021 | (10,000) | $8.7250 | ($87,250.00) | |
| View, Inc. | 92671V106 | Sell | 4/20/2021 | (8,000) | $7.1884 | ($57,507.20) | |
| View, Inc. | 92671V106 | Sell | 4/27/2021 | (7,000) | $9.0000 | ($63,000.00) | |
| View, Inc. | 92671V106 | Sell | 5/19/2021 | (5,841) | $8.1149 | ($47,399.13) | |
| View, Inc. | 92671V106 | Sell | 6/1/2021 | (50,000) | $7.2462 | ($362,310.00) | |
| View, Inc. | 92671V106 | Sell | 6/2/2021 | (60,000) | $7.5588 | ($453,528.00) | |
| View, Inc. | 92671V106 | Sell | 7/6/2021 | (33,000) | $7.5511 | ($249,186.30) | |
| View, Inc. | 92671V106 | Sell | 7/7/2021 | (42,000) | $7.5159 | ($315,667.80) | |
| View, Inc. | 92671V106 | Sell** | 8/17/2021 | (60,000) | $4.2306 | ($253,836.00) | |

## Stadium Capital LLC

### Estimated Losses in View, Inc.(NASDAQ: VIEW) - Class period: 11/30/2020 - 8/16/2021

| SECURITY NAME | CUSIP | TRANSACTION TYPE | TRADE DATE | SHARES | PRICE PER SHARE | COSTS or (PROCEEDS) | ESTIMATED LOSSES or (PROFIT) |
|---|---|---|---|---|---|---|---|
| | | | | (426,235) | | ($3,312,859.62) | $330,009.58 |

\*\* indicates the higher of the sale price on sale date or the average closing stock price from the end of the class period to sale date

1  Laurence D. King (SBN 206423)
   Kathleen A. Herkenhoff (SBN 168562)
2  KAPLAN FOX & KILSHEIMER LLP
   1999 Harrison Street, Suite 1560
3  Oakland, CA 94612
   Telephone:  415-772-4700
4  Facsimile:  415-772-4707
   Emails: *lking@kaplanfox.com*
5          *kherkenhoff@kaplanfox.com*

6  [Additional Counsel on Signature Page]

7  *Counsel for Movant Stadium Capital LLC and*
   *Proposed Lead Counsel for the Proposed Class*

8

9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN JOSE DIVISION**

12

13 ASIF MEHEDI, Individually and on Behalf of     Case No.: 5:21-cv-06374-BLF
   All Others Similarly Situated,
14                                                **CLASS ACTION**
                      Plaintiff,
15                                                **MEMORANDUM OF POINTS AND**
          v.                                      **AUTHORITIES IN FURTHER**
16                                                **SUPPORT OF STADIUM CAPITAL**
   VIEW, INC. f/k/a CF FINANCE                     **LLC'S MOTION FOR APPOINTMENT**
17 ACQUISITION CORP. II, RAO MULPURI,             **AS LEAD PLAINTIFF AND**
   and VIDUL PRAKASH,                             **APPROVAL OF LEAD COUNSEL, AND**
18                                                **IN OPPOSITION TO COMPETING**
                      Defendants.                 **MOTIONS**
19
                                                  Judge:  Hon. Beth L. Freeman
20                                                Courtroom:  3, 5th Floor
                                                  Date:  January 6, 2022
21                                                Time:  9:00 a.m.

22

23

24

25

26

27

28

                                                  Case No. 5:21-cv-06374-BLF
MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

**73**

## I.    PRELIMINARY STATEMENT

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), the Court is to appoint the investor that has the largest financial interest in the relief sought by the class and that otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  Of the two pending motions for appointment as lead plaintiff, Stadium Capital LLC ("Stadium Capital"), has the largest financial interest, is not subject to any disqualifying unique defenses, and therefore is the presumptive lead plaintiff.[1]

Where, as here, the Complaint alleges a single corrective disclosure, the recoverable loss method should be used to calculate each movant's financial interest.  *See Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020) (Freeman, J.) (finding that "that the recoverable loss method [was] the most appropriate method to apply [t]here in appointing lead plaintiff [where Plaintiffs alleged a single, discrete, corrective disclosure].");  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (recoverable losses are those deemed to have been caused by the fraud, not by "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price").  As discussed below, under this method, Stadium Capital has recoverable losses that are more than ***fifteen times*** Sweta Sonthalia's ("Sonthalia") recoverable losses.  Specifically, Stadium Capital has recoverable losses of **$56,964** whereas Sonthalia has recoverable losses of just **$3,625.44**.

With recoverable losses greater than any other applicant, Stadium Capital has the largest financial interest in the relief sought by the class and thus is the presumptive lead plaintiff.  The presumption that Stadium Capital is the "most adequate plaintiff" can only be rebutted "upon proof" that Stadium Capital is inadequate or atypical. 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II). No such proof exists, nor are there any grounds to challenge Stadium Capital's typicality and adequacy. *See* ECF No. 31 at 6-7 (discussing Stadium Capital's typicality and adequacy).

---

[1] On October 18, 2021, six lead plaintiff motions were filed.  ECF Nos. 14, 18, 22, 26, 27, 31.  On November 1, 2021, Larry Lin withdrew his motion.  ECF No. 43.  On November 1, 2021 Majdi Mojahed, FirstFire Global Opportunities Fund, LLC, and Feng Li each filed a notice of non-opposition.  ECF Nos. 42, 44, 45.

Because Stadium Capital is the "most adequate plaintiff," the Court should grant Stadium Capital's motion and deny all competing motions.

## II.    ARGUMENT

The PSLRA sets forth a three-step process to select the lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *Enphase*, 2020 WL 7025085, at *2. In the first step, the plaintiff who filed the action must "publiciz[e] the pendency of the action, the claims made and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i); *Cavanaugh*, 306 F.3d at 729. It is undisputed that the first step has been satisfied. *See* Declaration of Laurence D. King in Support of Stadium Capital LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (the "King Decl."), Ex. 1 (ECF No. 31-2).

The second step requires the Court to identify the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i); *Cavanaugh*, 306 F.3d at 729-30. This requires the Court to compare the potential lead plaintiffs' financial stakes by calculating each one's financial interest in the litigation using "accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. The Court then focuses solely on the plaintiff with "the most to gain from the lawsuit" and must "determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. Once the Court identifies the person with the largest financial interest in the relief sought by the class that satisfies the adequacy and typicality requirements of Rule 23, that movant is the presumptively most adequate plaintiff. *Id*. at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status…"); *Mulligan v. Impax Labs.*, No. C-13-1037 EMC, 2013 WL 3354420, at *3 (N.D. Cal. July 2, 2013) ("[t]he potential plaintiff with the greatest financial interest is presumptively the most adequate plaintiff.").

At the third step, the most adequate plaintiff presumption can only be overcome by proof that "the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The PSLRA limits rebuttal evidence to

- 2 -

Case No. 5:21-cv-06374-BLF

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

75

proof that shows the presumptively lead plaintiff "[1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Here, Stadium Capital possesses the largest financial interest in this litigation and satisfies the requirements of Rule 23.  Therefore, Stadium Capital is entitled to the presumption that it is the most adequate plaintiff.

### A.    Stadium Capital Has the Largest Financial Interest

In determining which movant should be appointed lead plaintiff, courts "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730.  While the PSLRA does not specify how to calculate financial interests, the Court must select a method that is "both rational and consistently applied." *Id.* at 730, n.4.  The methods used in this District primarily fall into two categories: "those that 'equate financial interest with actual economic losses suffered' and those that 'equate[ ] largest financial interest with potential recovery.'" *Enphase*, 2020 WL 7025085, at *3 (citing *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011)) (brackets in original).

Although the Ninth Circuit has not yet endorsed a specific method to calculate the largest interest, it has provided guidance.  Specifically, it requires "the district court [to] compare the financial stakes of the various plaintiffs and determine which one ***has the most to gain from the lawsuit***." *Cavanaugh*, 306 F.3d at 730 & n.4 (emphasis added).  This strongly implies that the second method, tying the "loss" to the amount that can be "gain[ed] from the lawsuit," is the preferred method.  *See, e.g.*, *Perlmutter*, 2011 WL 566814, at *6 ("[w]hat a plaintiff has to gain from a lawsuit is much more directly tied to what a plaintiff can recover from that lawsuit than what a plaintiff may have lost trading in the stock that is the subject of that lawsuit"); *Eichenholtz*, 2008 WL 3925289, at *4 ("no reason to include losses in its calculations that would later be considered uncompensable"); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) ("[o]ne's 'interest' in a litigation is rather directly tied to what one might recover").

1    This Court's analysis in *Hurst v. Enphase Energy, Inc.* is instructive. There, in

2    "[c]onsidering the guidance of *Dura*, *Metzler* [*Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d

3    1049, 1063 (9th Cir. 2008)], and *In Re Oracle Securities Litigation*[, 627 F.3d 376, 392 (9th Cir.

4    2010)] that recoverable losses must be traceable to the alleged fraud instead of ordinary market

5    forces . . . the Court [was] satisfied that the recoverable loss method [was] the most appropriate

6    method to apply [t]here in appointing lead plaintiff [where Plaintiffs alleged a single, discrete,

7    corrective disclosure]." *Enphase*, 2020 WL 7025085, at *4. So too is the case here.

8    Here, where "a single disclosure reveals a purported fraud, there is a constant fraud premium

9    across the class period, meaning that the artificial inflation of the price of the security did not

10   dissipate." *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *6 (N.D. Cal.

11   May 13, 2016); *Enphase*, 2020 WL 7025085, at *4 (same). "In these situations, methods focusing

12   on recoverable loss are preferable to economic loss methods 'because [they] exclude[ ] losses

13   incurred during the class period that are likely attributable to normal market fluctuations rather than

14   fraud.'" *Enphase*, 2020 WL 7025085, at *4 (internal citation omitted); *see also Marjanian v. Allied*

15   *Nevada Gold Corp.*, No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810, at *5 (D. Nev. Nov. 7,

16   2014) ("To calculate [each movant's] losses under *Dura*, the Court only considers (1) the

17   depreciated value of the shares retained by [movant], and (2) losses realized on the sale of shares

18   that occurred after [defendant] revealed its misrepresentations"). In fact, in *Enphase*, Sonthalia's

19   counsel, Roche Freedman LLP, endorsed this recoverable loss method as the appropriate measure

20   of a movants' financial interest in cases such as this. *See Enphase*, 2020 WL 7025085 at *3.

21   Using the recoverable loss method ensures losses accounted for in calculating the largest

22   loss are *recoverable losses*, thereby ensuring compliance with the Ninth Circuit's preference that

23   the plaintiff with the largest loss be the one who "***has the most to gain from the lawsuit***" and is not

24   simply someone who has lost more money due to market forces unrelated to the fraud. *See*

25   *Cavanaugh*, 306 F.3d at 730 & n.4 (emphasis added); *see also Enphase*, 2020 WL 7025085, at *4

26   ("the recoverable loss method most accurately establishes the prospective lead plaintiffs' financial

27   interest" in case involving a single corrective disclosure); *Mulligan*, 2013 WL 3354420, at *6

28   (finding that recoverable loss "most closely approximates the financial interest of the potential

- 4 -

Case No. 5:21-cv-06374-BLF

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

77

1   plaintiffs").

2       In order to determine each movant's recoverable losses, the court must first determine the

3   number of each movant's retained shares. *Mulligan*, 2013 WL 3354420, at *5; *see also Markette*,

4   2016 WL 2902286, at *6 (same). Next, the court calculates the total value of those shares by

5   applying the price of the stock at the time immediately before disclosure of the purported fraud.

6   *Mulligan*, 2013 WL 3354420, at *5; *see also Markette*, 2016 WL 2902286, at *6 (same). Finally,

7   the court calculates each movant's loss based on the following formula:

8           if a share was not sold within 90 days subsequent to [the date of the corrective
            disclosure], the loss is to be measured using an average of the daily closing price of
9           [the] stock during the 90–day period [following the corrective disclosure]. If a share
            was sold within 90 days subsequent to [the date of the corrective disclosure], the
10          loss is to be measured using the higher of the actual sale price or an average of the
            daily closing price from [the first date following the corrective disclosure] to the
11          date of sale.

12  *Mulligan*, 2013 WL 3354420, at *5 (quoting *Eichenholtz*, 2008 WL 3925289, at *4); *Marjanian*,

13  2014 WL 12769810, at *5-6 (same). This method "has the advantage of looking to losses

14  experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed, and

15  thus focusing on losses caused when stock purchased at artificially inflated prices decreases in

16  value due to the disclosure of the fraud. This metric thereby excludes losses caused by normal

17  market fluctuations prior and [un]related to the disclosure of the fraud." *Mulligan*, 2013 WL

18  3354420, at *6.

19      Here, Stadium Capital retained a total of 60,000 shares, while Sonthalia retained 60,424

20  shares at the close of the class period. The total value of the retained shares at the close of the class

21  period, applying the pre-disclosure price of $5.18 when the market closed on August 16, 2021, was

22  $310,800 for Stadium Capital and $312,996.32 for Sonthalia. Stadium Capital sold all 60,000 of

23  its retained shares on August 17, 2021 at $4.2306 per share for proceeds of $253,836, ***resulting in***

24  ***a net loss of $56,964***. *See* Stadium Capital Loss Chart, ECF No. 31-4. As of October 18, 2021,

25  Sonthalia continued to hold all 60,424 of her retained shares, and the average trading price during

26  the 90-day period following the disclosure of the fraud was $5.12. *See* Sonthalia Loss Chart, ECF

27  No. 30-2. Thus, the value of Sonthalia's retained shares is $309,370.88, ***resulting in a net loss of***

28  ***$3,625.44***.

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

1   While Sonthalia claims the largest estimated "economic loss", as discussed above, this

2   estimate significantly overstates her "financial interest" and includes losses that are not recoverable

3   under *Dura* and its progeny, and therefore should not be counted when determining which movant

4   has the greatest financial interest. *See Enphase*, 2020 WL 7025085, at *4; *Perlmutter*, 2011 WL

5   566814, at *6; *Eichenholtz*, 2008 WL 3925289, at *4; *In re McKesson*, 97 F. Supp. 2d at 997.

6   Accordingly, Stadium Capital has the most to gain from this lawsuit and has the largest

7   financial interest in the outcome of this litigation.

8       **B.      Stadium Capital Meets the Requirements of Rule 23**

9   As demonstrated in Stadium Capital's opening motion and supporting papers, Stadium

10  Capital meets the typicality and adequacy requirements of Rule 23. ECF Nos. 31 at 6-7, 31-3.

11  Because, as demonstrated above, Stadium Capital has also demonstrated that it possesses the largest

12  financial interest, it is entitled to the presumption of most adequate plaintiff. In order to rebut the

13  presumption, the competing movant must submit ***proof*** that Stadium Capital is subject to unique

14  defenses or cannot adequately represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Because there

15  is no such proof, the presumption of most adequate plaintiff which lies in favor of Stadium Capital

16  cannot be rebutted.

17  **III.   CONCLUSION**

18  For all of the foregoing reasons, Stadium Capital respectfully requests that the Court:

19  (1) appoint it as Lead Plaintiff; (2) approve its choice of Kaplan Fox as Lead Counsel; (3) deny all

20  competing motions; and (4) grant such other relief as the Court may deem just and proper.

21

22                              Respectfully submitted,

23                              **KAPLAN FOX & KILSHEIMER LLP**

    DATED: November 1, 2021       By:   /s/  *Laurence D. King*
24                                         Laurence D. King

25                              Laurence D. King (SBN 206423)
                                Kathleen A. Herkenhoff (SBN 168562)
26                              1999 Harrison Street, Suite 1560
                                Oakland, CA 94612
27                              Telephone:  415-772-4700
                                Facsimile:  415-772-4707
28                              *lking@kaplanfox.com*

1          *kherkenhoff@kaplanfox.com*

2          **KAPLAN FOX & KILSHEIMER LLP**
              Frederic S. Fox (*pro hac vice* to be filed)

3          Donald R. Hall (*pro hac vice* to be filed)
              Jason A. Uris (*pro hac vice* to be filed)

4          850 Third Avenue
              New York, NY 10022

5          Telephone: 212-687-1980
              Facsimile: 212-687-7714

6          *ffox@kaplanfox.com*
              *dhall@kaplanfox.com*

7          *juris@kaplanfox.com*

8          *Counsel for Movant Stadium Capital LLC and Proposed*
              *Lead Counsel for the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue
Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Movant Sweta Sonthalia*
*and Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Sweta Sonthalia*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, | No. 5:21-cv-06374-BLF |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF SWETA SONTHALIA'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** |
| v. | |
| VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH, | |
| Defendants. | Hon. Beth Labson Freeman<br>Hearing Date: Thursday, January 6, 2022<br>Time: 9 a.m.<br>Courtroom 3 – 5th Floor (San Jose) |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

I.      PRELIMINARY STATEMENT ................................................................ 4

II.     ARGUMENT ........................................................................................... 5

        A.  Ms. Sonthalia is the presumptive lead plaintiff............................................. 5

            i.  *Ms. Sonthalia has the largest financial interest of all competing movants.* ........... 5

            ii. *Ms. Sonthalia satisfies Rule 23's requirements of typicality and adequacy.* ......... 7

        B.  There is no proof capable of rebutting Ms. Sonthalia's presumption. ........................ 9

        C.  Ms. Sonthalia's choice of counsel should be approved. ............................................ 9

        D.  All competing Lead Plaintiff motions should be denied............................................ 10

III.    CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  2013 WL 2368059 (N.D. Cal. May 29, 2013) .......................................................... 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ................................................................ 5

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
  2020 WL 2614703 (S.D.N.Y. May 22, 2020) ......................................................... 8

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
  586 F.3d 703 (9th Cir. 2009) ................................................................................. 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) .............................................................................................. 6

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................. 4

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ......................................................................... 5, 7, 9

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ................................................................................. 8, 9

*Isaacs v. Musk*,
  2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ...................................................... 6

*Maiman v. Talbott*,
  2009 WL 10675075 (C.D. Cal. Sept. 14, 2009) .................................................... 9

*Melucci v. Corcept Therapeutics Inc.*,
  2019 WL 4933611 (N.D. Cal. Oct. 7, 2019) ...................................................... 7, 9

*Mulligan v. Impax Labs., Inc.*,
  2013 WL 3354420 (N.D. Cal. July 2, 2013)....................................................... 5, 6

*Nicolow v. Hewlett Packard Co.*,
  2013 WL 792642 (N.D. Cal. Mar. 4, 2013)........................................................... 5

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ......................................................... 6

*Rubke v. Cap. Bancorp*,
  2006 WL 734390 (N.D. Cal. Mar. 21, 2006).......................................................... 8

*Scheller v. Nutanix, Inc.*,
  2021 WL 2410832 (N.D. Cal. June 10, 2021)........................................................ 5

*Veal v. LendingClub Corp.*,
  2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) ........................................................ 7

*Xu v. FibroGen, Inc.*,
    2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ...................................................................... 6, 7

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................. 4, 5, 7, 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................... 10

Movant Sweta Sonthalia ("Ms. Sonthalia" or "Movant") respectfully submits this Memorandum of Points and Authorities in Further Support of her Motion for Appointment as Lead Plaintiff and for Approval of her Selection of Roche Freedman LLP ("Roche Freedman") as Lead Counsel for the Class ("Motion") (ECF No. 27),[1] and in Opposition to Competing Lead Plaintiff Motions filed by movants Larry Lin ("Mr. Lin") (ECF No. 14), Feng Li ("Mr. Li") (ECF No. 18), FirstFire Global Opportunities Fund, LLC ("FirstFire Global") (ECF No. 22), Majdi Mojahed ("Mr. Mojahed") (ECF No. 26), and Stadium Capital LLC ("Stadium Capital") (ECF No. 31).

Notably, on November 1, 2021, Mr. Mojahad, FirstFire Global, and Mr. Li filed a Notice of Non-Opposition to Competing Lead Plaintiff Motions. *See* ECF Nos. 42, 44-45. Likewise, on the same day, Mr. Lin filed a Notice of Withdrawal of his Lead Plaintiff Motion. *See* ECF No. 43.

## I.    PRELIMINARY STATEMENT

The PSLRA directs the Court to appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the "most adequate plaintiff" is the class member who: (1) timely "made a motion in response to a notice"; (2) has the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc).

As discussed in Movant's Motion, she satisfies all three requirements and is entitled to the strong presumption that she is the "most adequate plaintiff" to represent the Class. Specifically, Ms. Sonthalia: (1) timely moved for appointment as lead plaintiff; (2) lost approximately $390,084 due to the alleged fraud (*i.e.*, **15.4%** greater than the approximate loss of the last competing movant); and (3) satisfies the Rule 23 requirements considered at this stage, typicality and adequacy. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018).

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed in the Memorandum of Points and Authorities in support of Ms. Sonthalia's Motion. Unless otherwise noted, all emphasis has been added, and internal citations have been omitted.

Moreover, and as explained below, there can be no serious contention that Ms. Sonthalia "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Consequently, no other movant can rebut the PSLRA's presumption that Ms. Sonthalia is the "most adequate plaintiff," and thus, should be appointed as Lead Plaintiff.

## II. ARGUMENT

### A. Ms. Sonthalia is the presumptive lead plaintiff.

#### i. Ms. Sonthalia has the largest financial interest of all competing movants.

The PSLRA does specify how to calculate the "largest financial interest," but courts in this district generally consider the *Lax* Factors: "(1) the number of shares purchased"; "(2) the number of net shares purchased"; "(3) total net funds expended during the class period"; and "(4) the approximate losses suffered." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012). Of these factors, district courts—including this one—tend to emphasize approximate loss in assessing a movant's financial interest within the meaning of the PSLRA. *See e.g.*, *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013). Indeed, the Ninth Circuit instructed, "the district court [must] compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).

"The Ninth Circuit has not provided clear guidance on what metrics district courts should use in determining which potential plaintiff has the largest financial interest in a case, noting only that 'the court may select accounting methods that are both rational and consistently applied.'" *Mulligan v. Impax Labs., Inc.*, 2013 WL 3354420, at *4 (N.D. Cal. July 2, 2013) (quoting *Cavanaugh*, 306 F.3d at 730 n.4). "Most courts in this district use the LIFO method to calculate a movant's estimated losses." *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) (collecting cases). There is one caveat, however. In evaluating each movants' financial interests, courts in this District and elsewhere often distinguish between the movants'

"actual economic losses suffered" and their "potential recovery" *via* federal securities laws. *See Xu v. FibroGen, Inc.*, 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021); *see e.g., Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011).

The Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), "made it clear that a purchaser of stock at fraudulently inflated prices may suffer economic losses that are not caused by a defendant's misrepresentations," and are therefore not recoverable. *See Perlmutter*, 2011 WL 566814 at *4; *see also Dura*, 544 U.S. at 342-43 (stating that an investor's losses on sales of stock whose purchase price had been fraudulently inflated "may reflect, not the earlier misrepresentation, but changed economic circumstances ... or other events, which taken separately or together account for some or all of th[e] lower price"; consequently, where an investor sells his "shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"). "In response to *Dura*, many district courts—including this one—have chosen not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud when evaluating potential plaintiffs' financial interests in the litigation." *FibroGen*, 2021 WL 3861454 at *5; *see also Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018) (declining to appoint as lead plaintiff an investor whose claimed losses were largely attributable to activity occurring "prior to the fraud" and so potentially not "causally related to the fraud"); *Mulligan*, 2013 WL 3354420 at *5 (same).

Insomuch, as demonstrated in the chart below, regardless of the Court's application of LIFO or *Dura*-adjusted LIFO, Ms. Sonthalia has the largest financial interest in this litigation:

| Movant | Net Funds Expended | Net Shares Purchased | Retained Shares | LIFO loss | *Dura*-adjusted LIFO loss |
|---|---|---|---|---|---|
| Ms. Sonthalia | $700,203 | 60,424 | *60,424* | *$390,084* | *$390,084* |
| Stadium Capital | $3,642,869 | 426,235 | 60,000 | $330,010 | $6,302 |
| *FirstFire Global* | *$551,726* | *61,500* | *31,500* | *$149,021* | *$162,745* |
| *Mr. Mojahed* | *$106,500* | *11,046* | *11,046* | *$49,851* | *$49,851* |
| *Mr. Lin* | *$41,680* | *4,000* | *4,000* | *$21,166* | *$21,166* |
| *Mr. Li* | *$36,824* | *6,200* | *4,000* | *$6,890* | *$8,542* |

**87**

In sum, Ms. Sonthalia suffered a larger financial loss than any other movant—under either calculation—and she retained more shares than any other movant at the time of the corrective disclosure. Indeed, Ms. Sonthalia's financial interest is **15.4%** greater than the that of Stadium Capital under the LIFO method and is ***nearly 98.4%*** greater under the *Dura*-adjusted LIFO method. As such, Ms. Sonthalia "has the most to gain from the lawsuit" and is therefore, presumptively the most adequate plaintiff when considered on this basis. *See Cavanaugh*, 306 F.3d at 730 n.4; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### ii.   *Ms. Sonthalia satisfies Rule 23's requirements of typicality and adequacy.*

Once the court identifies the plaintiff with the largest financial stake in the litigation, "[i]t must then focus its attention on *that* plaintiff and determine, based on the information he [or she] has provided in his[/her] pleadings and declarations, whether he[/she] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *FibroGen*, 2021 WL 3861454 at *3 (emphasis in original); s*ee also Cavanaugh*, 306 F.3d at 732 ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job"). Moreover, the movant with the largest financial interest "need only make a *prima facie* showing [of its] typicality and adequacy." *Veal v. LendingClub Corp.*, 2018 WL 5879645, at *4 (N.D. Cal. Nov. 7, 2018).

"The test for typicality asks whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Melucci v. Corcept Therapeutics Inc.,* 2019 WL 4933611, at *4 (N.D. Cal. Oct. 7, 2019). Ms. Sonthalia's and the Class's claims all arise from the same alleged conduct by Defendants, and she will make the same legal arguments in support of Defendants' liability that other class members would. Further, like the Class she proposes to represent, Ms. Sonthalia purchased View securities at a wrongfully inflated price and suffered a loss once the truth was revealed. Ms. Sonthalia's claims are typical, if not identical, to the other

members of the Class, thus satisfying the typicality requirement for purposes of Lead Plaintiff appointment. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) (finding typicality requirement met when proposed lead plaintiff "purchased [the defendant's] common stock during the Class Period, allegedly in reliance upon [the d]efendants' purported false and misleading statements, and alleged[ly] suffered damages as a result").

The test for adequacy asks whether "the movant and its counsel have any conflicts of interest with other class members" and whether "the movant and its counsel [will] prosecute the action vigorously on behalf of the class." *In re Mersho*, 6 F.4th 891, 899-900 n.16 (9th Cir. 2021). Ms. Sonthalia's interests are perfectly aligned with, and are not antagonistic to, the Class's interests, and she has retained capable and qualified counsel that will vigorously represent the Class's interest. Indeed, Roche Freedman has been appointed, and is currently serving as, Lead Counsel in numerous securities class actions nationwide, including this District. *See* ECF No. 27, §IV.D.; ECF No. 30-4.

In addition to her *prima facie* showing of adequacy and typicality, Ms. Sonthalia has expressed her willingness and suitability to serve as Lead Plaintiff, as substantiated by the declaration submitted with her Motion. ECF No. 30-3. Ms. Sonthalia is a sophisticated investor, she holds a Bachelor of Commerce; is the director of a private limited company; has approximately 3 years of investing experience; is actively supervising counsel in this litigation; and is committed to achieving the best possible recovery for the Class (as reflected by her negotiation of a reduced percentage rate for attorneys' fees). *See id*; *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) (considering "the process through which the lead plaintiff selected its candidates for and final choice of lead counsel"); *Rubke v. Cap. Bancorp*, 2006 WL 734390, at *5 (N.D. Cal. Mar. 21, 2006) (refusing to approve selected counsel until movants submitted information demonstrating that their choice resulted from good faith selection and negotiation); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (rejecting proposed lead plaintiff due in part to his "minimal and unsuccessful

negotiation" of the fee percentages in his retainer agreement).

Accordingly, Ms. Sonthalia satisfies the adequacy and typicality requirements of Rule 23 and is, therefore, entitled to the PSLRA's strong presumption that she is "most adequate lead plaintiff" to represent the Class.

**B.      There is no proof capable of rebutting Ms. Sonthalia's presumption.**

As stated above, Ms. Sonthalia is entitled to a strong presumption that she is the "most adequate plaintiff" to represent the Class. This presumption may be rebutted only upon proof by a member of the Class that she either, (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(3)(B)(iii)(II).

Mere speculation is insufficient to rebut this presumption. *See Maiman v. Talbott*, 2009 WL 10675075, at *4 (C.D. Cal. Sept. 14, 2009) ("The mere suggestion of impropriety is not enough to overcome the presumption that the [movant with the largest financial interest] should be the lead plaintiffs."); *Mersho*, 6 F.4th at 901 ("Misgivings are not evidence that cast genuine and serious doubt on the plaintiff's willingness or ability to perform the functions of lead plaintiff.").

*No such proof exists*. As demonstrated *supra* and in her Motion, Ms. Sonthalia has the largest financial interest in the outcome of this litigation and has presented evidence above the necessary *prima facie* showing that she satisfies the adequacy and typicality requirements of Rule 23. Thus, "the presumption that [Ms. Sonthalia] is the most adequate lead plaintiff [cannot] be rebutted [and t]he Court therefore need not to proceed to consider the [Lead Plaintiff] motion of the movant with the next largest financial stake." *Melucci*, 2019 WL 4933611 at *5. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [that plaintiff] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.

**C.      Ms. Sonthalia's choice of counsel should be approved.**

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the

court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The record confirms that Ms. Sonthalia's selections of counsel should be approved; Roche Freedman is qualified, experienced, and capable of effectively prosecuting this Action on behalf of Movant and the Class. *See* ECF No. 27, pp. 8-10.

**D.** **All competing Lead Plaintiff motions should be denied.**

As discussed in detail above, Ms. Sonthalia has the largest financial interest in this litigation and has made a *prima facie* showing of her typicality and adequacy, entitling her to the strong presumption of most adequate lead plaintiff. Moreover, there is no proof to rebut this strong presumption in favor of her appointment as Lead Plaintiff. Thus, the Court need not consider the Lead Plaintiff motions of any other movant. Ms. Sonthalia reserves the right to further address the competing movants' adequacy and typicality, if necessary, should they oppose her Motion.

**III.** **CONCLUSION**

For the foregoing reasons and those set forth in her Motion, Ms. Sonthalia respectfully requests that the Court appoint her as Lead Plaintiff, approve her selection of Roche Freedman as Lead Counsel for the Class, and deny all competing Lead Plaintiff motions.

DATED: November 1, 2021                    Respectfully Submitted,

                                           **ROCHE FREEDMAN LLP**

                                           */s/ Ivy T. Ngo*
                                           Ivy T. Ngo (249860)
                                           Constantine P. Economides (*pro hac vice* forthcoming)
                                           Velvel (Devin) Freedman (*pro hac vice* forthcoming)
                                           1 SE 3rd Avenue, Suite 1240
                                           Miami, Florida 33131
                                           T: (305) 971-5943
                                           ingo@rochefreedman.com
                                           ceconomides@rochefreedman.com
                                           vel@rochefreedman.com

                                           *Counsel for Movant Sweta Sonthalia and*
                                           *Proposed Lead Counsel for the Class*

**91**

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Movant Sweta Sonthalia*

**CERTIFICATE OF SERVICE**

      I hereby certify under penalty of perjury that on November 1, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:    */s/ Ivy T. Ngo*          
           Ivy T. Ngo

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue
Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Movant Sweta Sonthalia*
*and Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Sweta Sonthalia*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH, <br><br> Defendants. | No. 5:21-cv-06374-BLF <br><br> **SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** <br><br> Hon. Beth Labson Freeman <br> Hearing Date: Thursday, January 6, 2022 <br> Time: 9 a.m. <br> Courtroom 3 – 5th Floor (San Jose) |

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**94**

Movant Sweta Sonthalia ("Sonthalia") respectfully submits this Reply in Support of her Motion for Appointment as Lead Plaintiff and for Approval of her Selection of Counsel.[1]

## I.     PRELIMINARY STATEMENT

Sonthalia has demonstrated that she has the largest financial interest in the Action and meets Rule 23's typicality and adequacy requirements. Thus, the Court need only look to her to appoint lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). Sonthalia asserts a larger approximate loss of $390,084, ***15.4% more*** than Stadium Capital, as well as a larger recoverable loss. Further, Sonthalia has shown her commitment and ability to vigorously prosecute this matter, and her interests are typical of the Class. Competing against a movant with significantly higher losses and no issues as to adequacy or typicality, Stadium Capital challenges Sonthalia's financial interest with a misguided *Dura* loss calculation. *See* Memorandum of Points and Authorities in Further Support of Stadium Capital's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, and in Opposition to Competing Motions (ECF No. 46). The movants agree that the recoverable loss method is an acceptable method to analyze the financial interest in this Action, but they disagree on the proper application of that method. Stadium Capital's calculation is not supported by fact or law. Thus, the Court should grant Sonthalia's Motion in its entirety.

## II.    SONTHALIA HAS THE LARGEST FINANCIAL INTEREST

Neither the PSLRA, the Ninth Circuit nor the Supreme Court have endorsed a particular formula for calculating financial interest. *See Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *6 (N.D. Cal. Nov. 30, 2020). The only guidance offered is that the method be "rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Thus, district courts have used several methods to calculate financial interest, mainly those that "equate financial interest with actual economic losses suffered" ("Actual Loss") and those that "equate largest financial interest with potential recovery" ("Recoverable Loss"). *See Enphase*, 2020 WL 7025085, at *6. As Judge Koh observed in *Perlmutter v. Intuitive Surgical, Inc.*, "the distinction between these two

---

[1] Capitalized terms shall have the meanings ascribed in Sonthalia's Motion and supporting documents. ECF No. 27. Unless noted, all emphasis is added, and internal citations were omitted.

1

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**95**

categories is an artificial one" insofar as "both categories should yield the same result." 2011 WL 566814, at *4 (N.D. Cal. Feb. 15, 2011).

Courts throughout the Ninth Circuit have repeatedly applied the *Lax* Factors to calculate Actual Losses suffered, considering the approximate loss suffered to be the "most determinative in identifying the plaintiff with the largest financial loss." *See In re Cheetah Mobile, Inc. Sec. Litig.*, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (collecting cases). Two different accounting methods exist for calculating Actual Losses: (1) the first in, first out method ("FIFO") and (2) the last in, first out method ("LIFO"). *Perlmutter*, 2011 WL 566814, at *10. "Under FIFO, stocks which were acquired first are assumed to be sold first for loss calculation purposes, and under LIFO, stocks which were acquired most recently are assumed to be sold first." *Id.* "Most courts in this district use the LIFO method to calculate a movant's estimated losses." *Scheller v. Nutanix, Inc.,* 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) (collecting cases). Sonthalia suffered an approximate loss of $390,084 under the LIFO method – *15.4%* greater than Stadium Capital's loss.

Courts in this district have also distinguished between a movant's Actual and Recoverable Loss when, as here, "a single disclosure reveals a purported fraud." *See Enphase*, 2020 WL 7025085, at *4. In such cases, courts "have chosen not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud" when evaluating movants' financial interests since "a purchaser of stock at fraudulently inflated prices may suffer economic losses that are not caused by a defendant's misrepresentations" and thus are not recoverable. *See Perlmutter*, 2011 WL 566814, at *4 (quoting *Dura v. Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)).

Under the Recoverable Loss method, courts have accepted several different approaches. *Saint Jermain v. Fluidigm Corp.,* 2020 WL 7342717, at *3 (N.D. Cal. Dec. 14, 2020). Some courts "determine the number of net shares purchased during the class period and then supplement this calculation with losses suffered as a result of selling shares during the class period[,]" perceiving losses resulting from in-and-out trades made during the class period as potentially recoverable ("Net Shares" method). *Perlmutter*, 2011 WL 566814, at *6 (citing *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *21-*22 (N.D. Cal. May 3, 2005); *In re Critical Path Inc. Sec. Litig.,* 156 F.Supp.2d 1102, 1107-08 (N.D. Cal. 2001)); *see also In re Network Associates, Inc., Sec. Litig.,*

2

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF                                                                                          **96**

76 F.Supp.2d 1017, 1027 (N.D.Cal.1999) (noting that the Net Shares method is less accurate when "the amount of the 'fraud premium' varied over the course of the class period").

Other courts determine financial interest based on the "shares bought during the class period that are retained at the end of the class period" ("Retained Shares" or "*Dura* LIFO"). *Eichenholtz v. Verifone Holdings, Inc.,* 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008); *see also Scheller v. Nutanix, Inc.,* 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) ("The Dura LIFO method utilizes the LIFO method but removes the losses from securities bought and sold before the corrective disclosure occurred when calculating approximate losses."). This method requires three steps.

First, a court must determine the number of shares bought during the class period that were retained on the last day of the class period. *Eichenholtz*, 2008 WL 3925289, at *4. Second, a "court must [] determine what purchase price to use when calculating the losses suffered due to the retained shares." *Id.* While the purchase price may be based on the shares purchased "most recently, but within the class period" (*i.e.,* LIFO) or "at the beginning of the class period" (*i.e.*, FIFO), the *Eichenholtz* Court applied LIFO, finding that "this measure will ***maximize the potential damages*.*" *Id.* Third, consistent with the PSLRA, a court calculates losses according to the following formula:

> if a share was not sold within 90 days subsequent to [the end of the Class Period], the loss is to be measured using an average of the daily closing price of [the company's] stock during the 90–day period beginning [on the date of the corrective disclosure]. If a share was sold within 90 days subsequent to [the end of the Class Period], the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from [the date of the corrective disclosure] to the date of sale.

*Id.*; *see also* 15 U.S.C. § 78u-4(e). This method has been consistently applied throughout the Circuit. *See Applestein v. Medivation Inc.*, 2010 WL 3749406, at *2 (N.D. Cal. Sept. 20, 2010); *Schueneman v. Arena Pharms., Inc.,* 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011); *Mulligan v. Impax Labs, Inc.,* 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013); *Saint Jermain,* 2020 WL 7342717, at *4.

Applied here, Sonthalia has a recoverable loss of $390,804 (*see* ECF No. 30-2), while Stadium Capital has a recoverable loss of $127,048. Stadium Capital: (1) retained 60,000 shares at the end of the Class Period; (2) bought and sold throughout the Class Period, zeroing out its retained shares three times before the end of the Class Period (on March 9, 2021, June 2, 2021, and July 7, 2021), so its purchase price is based on shares bought between July 19, 2021 and August 12, 2021,

3

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**97**

which equals $380,884; and (3) sold its 60,000 retained shares within the 90-day look back period, on August 17, 2021, at a price of $4.23; because its actual sale price is higher than the average of the daily closing price from the date when the correcting information was disseminated to the date of the sale ($3.92), the actual sale price must be used to calculate the losses for its retained shares.[2]

Stadium Capital relies on a narrow interpretation of the Retained Shares method, formulated in *Markette v. XOMA Corp.*, 2016 WL 2902286 (N.D. Cal. May 13, 2016), to claim the largest financial interest in the Action. *See* ECF No. 46 at 4-5. Its calculation, however, contradicts the intent to "maximize the potential damages" when calculating financial interest (*see Eichenholtz*, 2008 WL 3925289, at *4) and has not been consistently applied, as required by the Ninth Circuit (*see Cavanaugh*, 306 F.3d at 730 n.4). The *Markette* Court (1) determined the number of shares retained at the end of the class period, (2) "calculate[d] the total value of those shares applying the price of the [company's] stock at the time immediately before disclosure of the purported fraud[,]" rather than the movants' actual purchase price, and (3) subtracted the theoretical value of those shares against "the average share price over the 90 days that followed the fraud disclosure" to arrive at the recoverable losses. *See* 2016 WL 2902286, at *5. Notably, in *Markette*, since the company's stock price increased throughout the class period—*i.e.,* maintained a "constant fraud premium"— the theoretical purchase price was higher than the actual purchase price for most of the retained shares at issue. *Id.* at ECF Nos. 11-4, 14-3. Further, no movant sold their retained shares during the 90 days following the class period, so the same abstract "sale price" was used for all movants. *Id.*

Here, the actual purchase price of movants' retained shares should be used because that price was **higher** than the stock price immediately preceding the alleged corrective disclosure. *See* ECF Nos. 30-2, 31-4. Next, Stadium Capital's calculation does not follow the *Markette* Court's pursuit of consistency as it partially applies the theoretical calculation for its own benefit. In *Markette*, the Court not only used the same purchase price for all competing movants, but also applied the same

---

[2] Due to clerical error, Sonthalia's Opposition (ECF No. 47) incorrectly concluded that Stadium Capital's recoverable loss was $6,302. This error has been rectified, and the losses stated herein are properly based on the data Stadium Capital has provided to-date.

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**98**

sale price. In contrast, Stadium Capital asks this Court to ignore the movants' actual purchase price, and since it sold its shares at a price lower than the 90-day average, seeks to use its actual sale price to increase its recoverable losses over Sonthalia, who did not sell. Thus, Stadium Capital's artificial reduction of the actual purchase price of the movants' retained shares to the stock price just before the corrective disclosure, and its inconsistent sale price of movants' shares, does not accurately compare movants' financial interest.[3] *See In re Wrap Tech., Inc. Sec. Litig.,* 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (rejecting a similar "*Dura* loss" calculation, presented for the first time in the Opposition, which "multipl[ied] the number of shares the movant held over a corrective disclosure by the price drop following the corrective disclosure, as bounded by the retained share average price", in finding that, "when calculating loss, a higher purchase price will *sometimes* play a role in bringing about a future loss.") (emphasis in original) (quoting *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 275-76 (S.D.N.Y. 2015) (rejecting the same *Dura* loss calculation)). "Because both *Dura* and the PSLRA contemplated consideration of the purchase price, [ ] *Dura* does not require a loss calculation that ignores purchase price." *Id.*

The Recoverable Loss method this Court relied upon in *Enphase* is inapplicable. There, since the class period ended on the same day as the single, ***intraday*** corrective disclosure, and both competing movants sold that day, the movants represented by Roche Freedman urged this Court to accept a hybrid of the methods described herein. *See* 2020 WL 7025085, at ECF No. 29. The competing movant did not contest the hybrid calculation, so this Court did not opine on it and simply found that the Recoverable Loss method applied. *Id.* at *5, *8. Here, the Court should apply the more widely accepted Retained Shares method because the Class Period ends on August 16, 2021, then a single, ***post-market*** corrective disclosure caused View's stock price to drop $1.26 from the August 16 close of $5.18. Moreover, Sonthalia continues to retain her Class Period shares.

Accordingly, Sonthalia respectfully asks that the Court grant her Motion in its entirety.

---

[3] If the Court is inclined to accept this calculation, when applied properly, Sonthalia still has a greater financial interest (60,424 x $5.18 = $312,996.32 – (60,424 x $5.12) = $3,625.44 loss) than Stadium Capital (60,000 x $5.18 = $310,800 – (60,000 x $5.12) = $3,600 loss).

5

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**99**

DATED: November 8, 2021

Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Ivy T. Ngo*

Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Movant Sweta Sonthalia and
Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Movant Sweta Sonthalia*

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**100**

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on November 8, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:     */s/ Ivy T. Ngo*
        Ivy T. Ngo

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Kathleen A. Herkenhoff (SBN 168562)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Emails: *lking@kaplanfox.com*
          *kherkenhoff@kaplanfox.com*

[Additional Counsel on Signature Page]

*Counsel for Movant Stadium Capital LLC and*
*Proposed Lead Counsel for the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH, <br><br> Defendants. | Case No.: 5:21-cv-06374-BLF <br><br> **CLASS ACTION** <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS** <br><br> Judge: Hon. Beth L. Freeman <br> Courtroom: 3, 5th Floor <br> Date: January 6, 2022 <br> Time: 9:00 a.m. |

Case No. 5:21-cv-06374-BLF

REPLY MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

**102**

## I. PRELIMINARY STATEMENT

Of the numerous lead plaintiff motions initially filed, only two remain. It is therefore critical to analyze which movant has the largest interest in the litigation using the appropriate methodology. As this Court has previously held, where, as here, the Complaint alleges a single corrective disclosure, the recoverable loss method is the most appropriate method to apply. *Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020) (Freeman, J.). Under the recoverable loss method, Stadium Capital LLC ("Stadium Capital") has the largest financial interest in this litigation. *See* ECF No. 46 at 5.[1] Sonthalia does not even calculate her losses under the recoverable loss method utilized by this Court, perhaps because she is aware her losses are significantly smaller than those of Stadium Capital.[2]

Accordingly, because Stadium Capital has the largest financial interest and Sonthalia has not set forth *any* proof of inadequacy (or even argued) that Stadium Capital does not satisfy the typicality or adequacy requirements of Rule 23, the Court should appoint Stadium Capital as Lead Plaintiff and deny Sonthalia's motion.

Moreover, the Court should approve Stadium Capital's choice of counsel, Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), as Lead Counsel. Kaplan Fox has a long history of significant recoveries in cases where it served as Lead Counsel in securities class actions. Kaplan Fox has

---

[1] The cases cited by Sweta Sonthalia ("Sonthalia") in support of her argument that she has the largest financial interest are inapposite. *See* ECF No. 47 at 5-6. In *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,* there was *no dispute* regarding how to calculate financial interest. No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) ("neither [competing movant] argues that under a different calculation method, it would possess the largest financial interest in the litigation."). In both *Nutanix* and *FibroGen* the applicant with the largest financial interest *was the same* under each of the proposed methodologies. *See Scheller v. Nutanix, Inc.,* No. 19-CV-01651-WHO, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) ("Under any [of the proposed] method[s], however, the applicant with the largest financial interest is the Nutanix Investor Group"); *Xu v. FibroGen, Inc.,* No. 21-CV-02623-EMC, 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021) ("[T]he Court finds that the Retirement Systems have the greatest financial interest in the litigation, whether measured as actual losses suffered or potential recovery under *Dura.*"). *Nicolow v. Hewlett Packard Co.* did not involve a single corrective disclosure, as here. No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (declining to give "significant weight" to recoverable loss calculations because they are "less useful analytical tools where gradual disclosures are involved").

[2] It is not determinative whether such methodology was presented in any initial motion. *See, e.g., Mulligan v. Impax Labs., Inc.*, 2013 WL 3354420, at *6, *9 (N.D. Cal. Jul. 2, 2013) (rejecting argument that a presumptive lead plaintiff should be disqualified for not submitting certain calculations in its initial motion).

- 1 -

Case No. 5:21-cv-06374-BLF

REPLY MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

103

1    maintained offices in this District for more than 20 years. Therefore, it will be able to prosecute

2    this action more efficiently than the two firms proposed by Sonthalia, neither of whom have offices

3    in California.

**STATEMENT OF ISSUES TO BE DECIDED**

4

5    1.    Whether Stadium Capital's recoverable losses of $56,964 make it the movant with

6    the "largest financial interest" pursuant to the Private Securities Litigation Reform Act of 1995 (the

7    "PSLRA"), and thus the presumptively most adequate plaintiff to serve as Lead Plaintiff.

8    2.    Whether Sonthalia has failed to rebut upon proof the presumption that Stadium

9    Capital is the most adequate plaintiff and should be appointed as Lead Plaintiff pursuant to the

10   PSLRA.

11   3.    Whether the Court should approve Stadium Capital's selection of Kaplan Fox as

12   Lead Counsel.

13   **II.    ARGUMENT**

14   **A.    Stadium Capital Has the Largest Financial Interest**

15   Stadium Capital has the largest financial interest in this litigation under the recoverable loss

16   method using the methodology previously employed by this Court. ECF No. 46 at 5. Presumably

17   aware that her recoverable losses are more than *fifteen times smaller* than those of Stadium Capital

18   under this Court's methodology, Sonthalia ignores this Court's recent decision and proposes

19   alternative methods to calculate recoverable loss in an effort to inflate her loss calculation. *See*

20   *Enphase*, 2020 WL 7025085, at *4. Specifically, Sonthalia argues that "courts in this district

21   generally consider the *Lax* Factors" and that "[m]ost courts in this district use the LIFO method to

22   calculate a movant's estimated losses". ECF No. 47 at 5 (internal quotations and citations omitted).

23   In support of her argument, Sonthalia created a chart purportedly comparing her financial interest

24   in this litigation with Stadium Capital's. *Id*. at 6. Sonthalia's argument should be rejected for the

25   following reasons.

26   First, Sonthalia's chart completely ignores, as if it does not exist, the recoverable loss

27   methodology previously used by this Court to determine which movant has the largest financial

28   interest. Sonthalia disregarded this method, recently used by the Court in *Enphase*, even though

- 2 -

Case No. 5:21-cv-06374-BLF

REPLY MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

**104**

1    Sonthalia's proposed lead counsel here endorsed the recoverable losses methodology on behalf of

2    another client in *Enphase*.

3    Second, Sonthalia lists Stadium Capital as having a $6,302 "*Dura*-adjusted LIFO loss."

4    ECF No. 47 at 6.  Contrary to the detailed calculation presented by Stadium Capital, Sonthalia

5    provided no explanation of how this number was calculated.  *Id.*  Stadium Capital is unable to

6    determine what purported method Sonthalia used to calculate this number as it does not align with

7    any methodology Stadium Capital is aware of and does not appear to have been applied in a

8    consistent manner to Sonthalia in order to calculate her "*Dura*-adjusted LIFO loss."  In fact,

9    Sonthalia's calculation of her "*Dura*-adjusted LIFO loss" appears to simply take the difference

10   between the purchase price and the 90-day average, which is not consistent with the holding in

11   *Dura*.

12   As previously set forth, Stadium Capital's recoverable losses of **$56,964** are more than

13   **fifteen times** Sonthalia's recoverable losses of **$3,625.44**.  ECF No. 46 at 1, 5.  Accordingly,

14   Stadium Capital has the most to gain from this lawsuit and has the largest financial interest in the

15   outcome of this litigation.

16   **B.      Stadium Capital Meets the Requirements of Rule 23**

17   In addition to having the largest financial interest in the litigation, Stadium Capital also

18   meets the typicality and adequacy requirements of Rule 23.  ECF Nos. 31 at 6-7; 31-3.  Stadium

19   Capital's claims are based on the same legal theories and arise from the same events and course of

20   conduct giving rise to the claims of other class members as articulated in the complaints filed with

21   the Court.  As such, Stadium Capital satisfies the typicality requirement of Rule 23(a)(3).  Stadium

22   Capital also satisfies the adequacy requirement of Rule 23(a)(4), which requires that the

23   representative party must fairly and adequately protect the interests of the class.  Stadium Capital

24   and its counsel do not have any conflicts of interest with other class members and will prosecute

25   the action vigorously on behalf of the class.  Moreover, it has proposed Lead Counsel that maintains

26

27

28

REPLY MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

1    offices in this District and has the experience and skill necessary to effectively litigate the action

2    on behalf of the class.[3]  ECF No. 31-5.

3          Indeed, Sonthalia has not marshaled any evidence (or even argued) that Stadium Capital

4    does not satisfy the requirements of Rule 23 or that its proposed counsel is not adequate.

5    Accordingly, Stadium Capital meets all of the requirements for appointment as Lead Plaintiff.

6    **III.    CONCLUSION**

7          For all of the foregoing reasons, Stadium Capital respectfully requests that the Court:

8    (1) appoint it as Lead Plaintiff; (2) approve its choice of Kaplan Fox as Lead Counsel; (3) deny all

9    competing motions; and (4) grant such other relief as the Court may deem just and proper.

10

11                                        Respectfully submitted,

12                                        **KAPLAN FOX & KILSHEIMER LLP**

     DATED: November 8, 2021             By:   /s/  *Laurence D. King*
13                                              Laurence D. King

14                                        Laurence D. King (SBN 206423)
                                          Kathleen A. Herkenhoff (SBN 168562)
15                                        1999 Harrison Street, Suite 1560
                                          Oakland, CA 94612
16                                        Telephone:  415-772-4700
                                          Facsimile:   415-772-4707
17                                        *lking@kaplanfox.com*
                                          *kherkenhoff@kaplanfox.com*
18

19                                        **KAPLAN FOX & KILSHEIMER LLP**
                                          Frederic S. Fox (*pro hac vice* to be filed)
20                                        Donald R. Hall (*pro hac vice* to be filed)
                                          Jason A. Uris (*pro hac vice* to be filed)
21                                        850 Third Avenue
                                          New York, NY 10022
22                                        Telephone:  212-687-1980
                                          Facsimile:   212-687-7714
23                                        *ffox@kaplanfox.com*
                                          *dhall@kaplanfox.com*
24                                        *juris@kaplanfox.com*

25                                        *Counsel for Movant Stadium Capital LLC and Proposed
                                          Lead Counsel for the Proposed Class*

26

27    ───────────────────────
      [3] Sonthalia has proposed Roche Freedman LLP as Lead Counsel and Labaton Sucharow as
28    Additional Counsel.  Neither firm maintains offices in California.

- 4 -                              Case No. 5:21-cv-06374-BLF
REPLY MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

**106**

Case 5:21-cv-06374-BLF Document 86-1 Filed 08/17/22 Page 158 of 204

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| ASIF MEHEDI,<br><br>       Plaintiff,<br><br>   v.<br><br>VIEW, INC., et al.,<br><br>       Defendants. | Case No. 21-cv-06374-BLF<br><br>**ORDER REQUESTING JOINT SUBMISSION IN SUPPORT OF MOTIONS TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL** |

On October 18, 2021, Sweta Sonthalia and Stadium Capital LLC each filed a Motion to Appoint Lead Plaintiff and Lead Counsel, each of which is now fully briefed. *See* ECF Nos. 27, 31, 46–49. The Court hereby DIRECTS Sweta Sonthalia and Stadium Capital LLC to jointly file a chart listing numerical calculations for their losses under the method of loss calculation each party urges the Court to adopt in support of the Motions. It would be helpful for the Court to receive this submission by Wednesday, January 5, 2022 at 5 p.m., although if the parties are unable to file by then, the Court can discuss the issue of the parties' loss calculations at the January 6, 2022 motion hearing.

     **IT IS SO ORDERED.**

Dated: January 3, 2022

_____
BETH LABSON FREEMAN
United States District Judge

Laurence D. King (SBN 206423)
Kathleen A. Herkenhoff (SBN 168562)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Emails: *lking@kaplanfox.com*
       *kherkenhoff@kaplanfox.com*

*Counsel for Movant Stadium Capital LLC and*
*Proposed Lead Counsel for the Proposed Class*

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
Constantine P. Economides (*pro hac vice* forthcoming)
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
Telephone: 305-971-5943
Emails: *ingo@rochefreedman.com*
      *vel@rochefreedman.com*
      *ceconomides@rochefreedman.com*

*Counsel for Movant Sweta Sonthalia and*
*Proposed Lead Counsel for the Proposed Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   v.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH,<br><br>               Defendants. | Case No.: 5:21-cv-06374-BLF<br><br>**CLASS ACTION**<br><br>**JOINT SUBMISSION IN RESPONSE TO THE COURT'S ORDER DATED JANUARY 3, 2022**<br><br>Judge: Hon. Beth L. Freeman<br>Courtroom: 3, 5th Floor |

**108**

In response to the Court's January 3, 2022 Order Requesting Joint Submission in Support of Motions to Appoint Lead Plaintiff and Lead Counsel (ECF No. 56), Stadium Capital LLC and Sweta Sonthalia respectfully submit a chart listing numerical calculations for their losses under the method(s) of loss calculation each party urges the Court to adopt in support of their Motions, attached hereto as Exhibit A.

DATED: January 5, 2022        Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:    /s/   *Laurence D. King*
     Laurence D. King (SBN 206423)
     Kathleen A. Herkenhoff (SBN 168562)
     1999 Harrison Street, Suite 1560
     Oakland, CA 94612
     Telephone: 415-772-4700
     Facsimile: 415-772-4707
     *lking@kaplanfox.com*
     *kherkenhoff@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (*pro hac vice* to be filed)
Jason A. Uris (admitted *pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Counsel for Movant Stadium Capital LLC and*
*Proposed Lead Counsel for the Proposed Class*

DATED: January 5, 2022        **ROCHE FREEDMAN LLP**

By:    /s/   *Ivy T. Ngo*
     Ivy T. Ngo (249860)
     Velvel (Devin) Freedman (*pro hac vice*
     forthcoming)
     Constantine P. Economides (*pro hac vice*
     forthcoming)
     1 SE 3rd Avenue, Suite 1240
     Miami, Florida 33131
     Telephone: 305-971-5943
     *ingo@rochefreedman.com*
     *vel@rochefreedman.com*
     *ceconomides@rochefreedman.com*

*Counsel for Movant Sweta Sonthalia and*
*Proposed Lead Counsel for the Proposed Class*

**109**

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: 212-907-0870
Facsimile: 212-883-7070
*dschwartz@labaton.com*

*Additional Counsel for Movant Sweta Sonthalia*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Laurence D. King, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January, 2022, at Orinda, California.

/s/ Laurence D. King
_____
Laurence D. King

# EXHIBIT A

| **Ms. Sonthalia's Proposal based on the approximate loss method utilized in _Perlmutter_:** | | | | |
|---|---|---|---|---|
| Movant | Total CP shares | Cost of CP shares based on purchase price<br><br>(A) | Value of CP shares based on sale price or 90-day average<br><br>(B) | Loss (Gain)<br><br>(C)=(A)–(B) |
| Sweta Sonthalia | 60,424 | $700,203 = 60,424 x purchase price | $316,018 = 60,424 x $5.23 | $384,185 |
| Stadium Capital | 426,235 | $3,642,869 = 426,235 x purchase price | $3,312,860 = 426,235 x sale price | $330,009 |
| **Alternatively, Ms. Sonthalia's Proposal based on the Retained Shares (or _Dura_ LIFO) calculation utilized in _Eichenholtz_:** | | | | |
| Movant | Retained Shares[1] | Cost of Retained Shares based on purchase price<br>(A) | Value of Retained Shares based on 90-day average, or sale proceeds<br>(B) | Loss (Gain)<br><br>(C)=(A)–(B) |
| Sweta Sonthalia | 60,424 | $700,203 = 60,424 x purchase price | $316,018 = 60,424 x $5.23 | $384,185 |
| Stadium Capital | 60,000 | $380,884 = 60,000 x purchase price | $253,800 = 60,000 x $4.2306 | $127,048 |

| **Stadium Capital's Proposal based on the recoverable loss calculation utilized in _Enphase_:** | | | | |
|---|---|---|---|---|
| Movant | Retained Shares<br><br>(A) | Stock price immediately prior to corrective disclosure<br>(B) | Value of Retained Shares based on stock price immediately prior to corrective disclosure<br>(C)=(A)x(B) | Value of Retained Shares based on 90-day average, or sale proceeds<br>(D) | Loss (Gain)<br><br>(E)=(C)-(D) |
| Stadium Capital | 60,000 | $5.18 | $310,800 = 60,000 x $5.18 | $253,836 = 60,000 x $4.2306[2] | $56,964 |
| Sweta Sonthalia | 60,424 | $5.18 | $312,996 = 60,424 x $5.18 | $316,018 = 60,424 x $5.23[3] | ($3,022) |

[1] Shares purchased prior to the corrective disclosure, which was made **after** the market closed on August 16, 2021, and held at the end of the Class Period ("CP") (August 16, 2021).

[2] Stadium Capital sold all its Retained Shares during the 90-day period following the corrective disclosure (on August 17, 2021), at $4.2306 per share. As such, the value of its sale proceeds is measured using the higher of the actual sales price ($4.2306) or an average of the daily closing price from the first trading date following the corrective disclosure to the date of sale ($3.92).

[3] Ms. Sonthalia continues to hold all of her Retained Shares. If shares are not sold within the 90-day period, the value of the Retained Shares is measured using the average of the daily closing price of View's stock during the 90-day period. In this case, the 90-day period had not fully run at the time Stadium Capital and Ms. Sonthalia filed their Lead Plaintiff motions. The average daily closing price during the full 90-day period is approximately $5.23 (the "90-day average"). Therefore, because Ms. Sonthalia did not sell her Retained Shares within the 90-day period, the value of her Retained Shares is measured using the 90-day average ($5.23).

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue
Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Sweta Sonthalia and Proposed Lead Counsel*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Sweta Sonthalia*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH,<br><br>Defendants. | No. 5:21-cv-06374-BLF<br><br>**NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (ECF NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Beth Labson Freeman<br>Courtroom 3 – 5th Floor (San Jose) |

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**114**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

NOTICE OF MOTION ............................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 5

I.     LEAVE TO FILE A MOTION FOR RECONSIDERATION IS WARRANTED ................ 5

       A.   The Court's methodology erroneously rejected the movants' purchase price. .............. 6

       B.   The Court's interpretation of *Dura* conflates loss causation with transaction
            causation, making an improper finding of fact at the lead plaintiff stage. ..................... 9

       C.   Pursuant to the PSLRA and *Dura,* Sonthalia has the largest financial interest............. 13

II.    CONCLUSION.................................................................................................... 14

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF
ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**115**

**TABLE OF AUTHORITIES**

**Cases**

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012) ........................................................................... 2, 7

*Applestein v. Medivation Inc.*,
  2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .......................................... 4, 7

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................. 3, 10

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ......................................................................... 12

*Broudo v. Dura Pharms., Inc.*,
  339 F.3d 933 (9th Cir. 2003), *rev'd*, 544 U.S. 336 (2005) ........................... 11

*Cook v. Allergan PLC*,
  2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) .............................................. 12

*Courter v. Cytodyn, Inc.*,
  2021 WL 4989446 (W.D. Wash. Oct. 27, 2021) ............................................. 3

*Dura Pharms. v. Broudo*,
  544 US. 336 (2005) .............................................................................. passim

*Eichenholtz v. Verifone Holdings, Inc.*,
  2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ............................................ 3, 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ............................................................................. 3, 9, 10

*Fialkov v. Celladon Corp.*,
  2015 WL 11658717 (S.D. Cal. Dec. 9, 2015) ................................................. 4

*FindWhat Investor Group v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011 ................................................................. 3, 10

*Glickenhaus & Co. v. Household Intern., Inc.*,
  787 F.3d 408 (7th Cir. 2015) ......................................................................... 10

*Gutman v. Sillerman*,
  2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ................................................. 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) .................................................................................. 11

ii

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**116**

*In re Allstate Corp. Sec. Litig.*,
966 F.3d. 595 (2020) .................................................................................. 8, 10, 11

*In re Bofi Holding, Inc. Sec. Litig*,
977 F.3d 781 (9th Cir. 2020) ................................................................................. 3, 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................... 6

*In re Cohen*,
586 F.3d 703 (9th Cir. 2009) ....................................................................................... 6

*In re Daou Systems, Inc.*,
411 F.3d 1006 (9th Cir. 2005) .................................................................................. 11

*In re Fastly, Inc. Sec. Litig.*,
2021 WL 493386 (N.D. Cal. Feb. 10, 2021) ............................................................. 4

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ............................................................................... 4, 12

*In re Lyft Sec. Litig.*,
2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) ............................................................ 3

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
404 F. Supp. 2d 605 (D.N.J. 2005) ........................................................................... 2

*In re Watchguard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (D. Wash. July 13, 2005) ........................................ 12

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
2021 WL 71433 (C.D. Cal. Jan. 7, 2021) .................................................................. 6

*Irving Firemens Relief and Ret. Fund v. Uber Techs. Inc.*,
998 F.3d 397 (9th Cir. 2021) ................................................................................... 11

*Lewis v. CytoDyn, Inc.*,
2021 WL 3709291 (W.D. Wash. Aug. 19, 2021) ...................................................... 3

*Loftus v. Primero Mining Corp.*,
2016 WL 11741138 (C.D. Cal. May 12, 2016) ......................................................... 4

*McCabe v. Ernst & Young, LLP*,
494 F.3d 418 (3d Cir. 2007) ..................................................................................... 11

*Mulligan v. Impax Lab'ys, Inc.*,
2013 WL 3354420 (N.D. Cal. July 2, 2013) ........................................................... 4, 7

iii

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF
ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**117**

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.,*
730 F.3d 1111 (9th Cir. 2013) ......................................................................................... 3

*Rihn v. Acadia Pharms. Inc.,*
2015 WL 5227923 (S.D. Cal. Sept. 8, 2015) ................................................................. 4

*Ruland v. Infosonics Corp.,*
2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ................................................................. 4

*Saint Jermain v. Fluidigm Corp.,*
2020 WL 7342717 (N.D. Cal. Dec. 14, 2020) ............................................................... 4

*Sallustro v. CannaVest Corp.,*
93 F. Supp. 3d 265 (S.D.N.Y. 2015) ............................................................................ 5, 6

*Scheller v. Nutanix,*
2021 WL 2410832 (N.D. Cal. June 10, 2021) ................................................................ 3

*School Dist. No. 1J Multnomah Cty., Or. v. ACandS, Inc.,*
5 F.3d 1255 (9th Cir. 1993) ......................................................................................... 5, 6

*Schueneman v. Arena Pharm., Inc.,*
2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ........................................................... 4, 7, 8

*Simco v. Aegean Marine Petroleum Network Inc.,*
2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018) ............................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ....................................................................................................... 4

*Xu v. FibroGen, Inc.,*
2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ............................................................... 3

**Other Authorities**

15 U.S.C. § 78c ............................................................................................................. 7

15 U.S.C. § 78u ...................................................................................................... passim

S. Rep. No. 104–98 (1995), reprinted in 1995 U.S.C.C.A.N. 679) ................................ 7

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF
ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**118**

**NOTICE OF MOTION**

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that Sweta Sonthalia will and hereby does respectfully move this Court pursuant to Civil L.R. 7-9(a) for leave to file a motion for reconsideration of its February 8, 2022 Order, appointing Stadium Capital as Lead Plaintiff and approving its selection of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel (the "Lead Plaintiff Order") (ECF No. 67).[1]

**SUMMARY OF ARGUMENT**

Civil L.R. 7-9(b)(3) permits a party to move for reconsideration of an interlocutory order when, *inter alia*, a court has "fail[ed] . . . to consider material facts or dispositive legal arguments which were presented to the Court." Here, Sonthalia respectfully submits that in determining the movants' "financial interest" within the meaning of the PSLRA, the Court (1) applied a method that renders purchase price irrelevant, inconsistent with the statute's cap on damages (15 U.S.C. § 78u-4(e)) and the Supreme Court's holding in *Dura Pharms. v. Broudo*, 544 U.S. 336 (2005), and (2) improperly made a finding of fact relating to loss causation to support the Court's methodology.

The PSLRA expressly provides a formula for class members, like Sonthalia, who continue to hold their retained shares for more than 90 days after a corrective disclosure. Such class members continue to incur losses if the company's stock price continues to decline after the truth is revealed, but the PSLRA limits their damages to "the difference between the **purchase or sale price paid or received**…and the mean trading price of that security during the 90-day period" after the corrective disclosure (*i.e.*, the "lookback" period). 15 U.S.C. § 78u-4(e)(1). Similarly, for class members who, like Stadium Capital, sold their retained shares before the end of the lookback period, the PSLRA limits their damages to "the difference between the **purchase or sale price paid or received**…and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending when the plaintiff sells or

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed in Sonthalia's Lead Plaintiff Motion and subsequent briefing (*see* ECF Nos. 27, 47-48); ¶ references are to the Complaint (ECF No. 1); emphasis is added; and internal citations are omitted.

1

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**119**

repurchases the security." *Id.* § 78u-4(e)(2). As such, the only two calculations set forth in the PSLRA use the "**purchase … price paid**" (or the "**sale price … received**" where stock is acquired *via* options) as the starting point to calculate damages, and the lookback price as a cap for damages.

In contrast to these statutorily described calculations, the Court's methodology failed to utilize the actual purchase price paid by the movants as the starting point. Under the Court's method, the market price of View stock "just prior to disclosure," was substituted for "purchase price paid." Thus, the actual price paid by the movants *has no relevance at all* to the "financial interest" determined by the Court, with all pre-disclosure loss in value irrefutably presumed to be the result of "market forces" rather than the defendants' alleged fraud. As several courts have recognized, this method is inconsistent with the statute and *Dura* and may lead to unfair and even absurd results.

The purpose of the PSLRA's damages cap is to limit the recovery of a plaintiff who seeks to establish damages by reference to the market price of a security following a corrective disclosure. The statute's legislative history confirms that Congress was concerned that "'calculating damages based on the date corrective information is disclosed may substantially overestimate plaintiff's actual damages.'" *Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012) (quoting S.Rep. No. 104-98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699). "In essence, [the PSLRA's damages cap] 'does not calculate damages based on the single day decline in price, but instead allows the security an opportunity to recover' over a period of 90 days." *Id.* In other words, the 90-day lookback provision was created to set a definitive ending point – a cap – for calculating loss following a corrective disclosure. Aside from imposing this cap, "Congress did not otherwise disturb the traditional out-of-pocket method for calculating damages in the PSLRA." *Id.*; *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, 404 F. Supp. 2d 605, 609-610 (D.N.J. 2005). Under the "out-of-pocket" method, "a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got. In other words, damages consist of the difference between the price paid and the 'value' of the stock when bought." *Id.*

A decade later, the Supreme Court in *Dura* ruled that to sustain a claim under § 10(b) and Rule 10b-5, a plaintiff must show that a public revelation of the alleged fraud caused investors to

2

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**120**

suffer loss—*i.e.* loss causation. 544 U.S. at 347. It is **after a corrective disclosure** that a "plaintiff has suffered an economic loss caused by the misstatements because she is no longer able to recoup in the marketplace the inflationary component **of the price she originally paid**." *In re BofI Holding, Inc. Sec. Litig*, 977 F.3d 781, 789 (9th Cir. 2020) (*citing FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1311 (11th Cir. 2011). "[L]oss causation does not require a showing 'that a misrepresentation was the *sole* reason for the investment's decline.'" *Id.* (quoting *In re Daou Systems, Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005)) (emphasis in original). And loss causation can exist even if "the alleged fraud is not necessarily revealed prior to the economic loss." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.,* 730 F.3d 1111, 1120 (9th Cir. 2013) ("Disclosure of the fraud is not a sine qua non of loss causation[.]").

In *Dura*, the Supreme Court **fully respected** the PSLRA's requirement of calculating damages based on actual purchase price, and it certainly did not grant lower courts permission to make premature findings of fact regarding "price impact" or "transaction causation", which are separate and distinct elements of reliance (governed by the *Basic* presumption), not loss causation. *See Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 812-14 (2011) ("*Halliburton I*") (citing *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)). Rather, when assessing the financial interest of lead plaintiff movants, district courts in this Circuit have routinely found that under *Dura*, the recoverable loss (or retained shares) method, simply "looks to **losses experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed, and thus focuses on losses caused when stock purchased at artificially inflated prices decreases in value due to the disclosure of the fraud**." *In re Lyft Sec. Litig.*, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020); *Eichenholtz v. Verifone Holdings, Inc*., 2008 WL 3925289, at *3-*4 (N.D. Cal. Aug. 22, 2008) (starting point is the "amount paid for the shares retained" as of disclosure date); *see also Xu v. FibroGen, Inc.,* 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021); *Lewis v. CytoDyn, Inc.*, 2021 WL 3709291, at *5 (W.D. Wash. Aug. 19, 2021), *recons. denied sub nom.*, *Courter v. Cytodyn, Inc.,* 2021 WL 4989446 (W.D. Wash. Oct. 27, 2021); *Scheller v. Nutanix*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021); *In re Fastly, Inc. Sec. Litig.*, 2021 WL 493386, at *3 (N.D. Cal. Feb. 10,

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

2021); *Saint Jermain v. Fluidigm Corp.*, 2020 WL 7342717, at *3 (N.D. Cal. Dec. 14, 2020); *Loftus v. Primero Mining Corp.*, 2016 WL 11741138, at *5 (C.D. Cal. May 12, 2016); *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015); *Rihn v. Acadia Pharms. Inc.*, 2015 WL 5227923, at *3 (S.D. Cal. Sept. 8, 2015); *Mulligan v. Impax Lab'ys, Inc.*, 2013 WL 3354420, at *5 (N.D. Cal. July 2, 2013); *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *4 (N.D. Cal. Feb. 15, 2011); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *2 (N.D. Cal. Sept. 20, 2010); *Ruland v. Infosonics Corp.*, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006).

The Court justified substituting "just before disclosure price" for "actual purchase price" by improperly making a finding of fact, or at least irrefutably presuming, that the pre-disclosure stock price decline during the Class Period was more likely caused by "market conditions" than by the alleged fraud. This was incorrect because, at the lead plaintiff stage, as at motion to dismiss, the Court must accept the allegations of the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (A "court ruling on a motion to dismiss is not sitting as a trier of fact" and "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings."). Accordingly, the Court must accept as true that "[a]s a result of [Defendants'] materially false and/or misleading statements and/or failures to disclose, View's securities traded at artificially inflated prices during the Class Period," including "at a Class Period high of $12.91 per share" on January 14, 2021, and thus, the movants, as class members, "purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of View's securities and market information relating to View, and [were] damaged thereby." ¶48. Indeed, during that week, when View's securities were at their peak, Sonthalia bought 22,500 shares. *See* ECF No. 30-2; *see also* Ngo Decl., Ex. 1. It would be inappropriate at this early stage to make even tentative findings of fact as to how much of the movants' purchase price was impacted by the alleged fraud before any fact or expert discovery has been conducted.

As set forth herein, when accepting as true all misstatements and the corrective disclosure,

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**122**

and correctly applying the PSLRA's damages cap and the *Dura* recoverable loss, this Court should find that Sonthalia has the largest financial interest and is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B). She thus respectfully submits that leave to file a motion for reconsideration of the Court's Lead Plaintiff Order is warranted, as supported by the memorandum of points and authorities submitted herewith, the Declaration of Ivy T. Ngo ("Ngo Decl."), and all exhibits thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    LEAVE TO FILE A MOTION FOR RECONSIDERATION IS WARRANTED

Civil L.R. 7-9(b)(3) provides, in relevant part, that a motion for reconsideration of an interlocutory order is warranted where a court has "fail[ed] to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." *See also School Dist. No. 1J Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court…committed clear error…"). Here, Sonthalia and Stadium Capital each moved for appointment as Lead Plaintiff, claiming, *inter alia*, that they possessed the "largest financial interest." (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). *See* ECF Nos. 27, 31. Relying on *Dura*, the Court excluded all gains and losses made on Class Period sales by the movants prior to the August 16, 2021 corrective disclosure. To assess the movants' retained shares, the Court then looked to the PSLRA's "limitation on damages" provision (15 U.S.C. § 78u-4(e)).

Sonthalia respectfully submits, however, that the Court erred as a matter of law in applying the PSLRA damages cap to the purchase price of the competing movants' securities and calculating their losses based on of the closing price of View securities directly before the corrective disclosure, rather than their actual purchase price. "[A]doption of a standard in which purchase price never plays a part in determining loss would work a radical change in the law [and] *Dura* requires no such result," *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 277 (S.D.N.Y. 2015). "Given the statutory scheme" under which damages are capped, "the difference between the purchase or sale price paid ... by the plaintiff for the subject security and the mean trading price of that security during the 90–day period … **it would be odd to apply a loss model that precludes any reference to purchase price**." *Id*. at 276; *see e.g.*, *Gutman v. Sillerman*, 2015 WL 13791788, at *6 (S.D.N.Y.

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**123**

Dec. 8, 2015); *Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *3 (S.D.N.Y. Oct. 30, 2018); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (rejecting methodology "which makes purchase price irrelevant").[2]

    *Dura* itself supports the conclusion that excluding the actual purchase price is inappropriate. There, the Supreme Court stated that an "'artificially inflated purchase price' is not itself a relevant economic loss" without a "claim that [the Company's] share price fell significantly after the truth became known." 544 U.S. at 347. This and other language in *Dura* strongly suggests that "the Supreme Court did not rule that purchase price is irrelevant, [t]o the contrary, [it] repeatedly states that purchase price might prove relevant to loss analysis." *Gutman*, 2015 WL 13791788 at *6. Thus, both "the statutory scheme and the [ ] reasoning in *Dura*" preclude a test that "renders purchase price irrelevant." *Simco*, 2018 WL 11226076 at *3. Further, the Court's methodology may lead to unfair or even "absurd" results; "[f]or example, because purchase price is irrelevant [ ], an investor who bought the stock at $100, watched it rise to $150 [just prior to disclosure], then sold the stock at $125 after a corrective disclosure, could recover for the $25 price drop, even though at $125 the investor would have realized a $25 profit." *Sallustro*, 93 F. Supp. 3d at 276 n.11.

    Thus, the Court's conclusion that Stadium Capital possessed the largest financial interest, based on an improper application of the PSLRA, constitutes manifest error and meets the standard for reconsideration. *See School Dist. No. 1J*, 5 F.3d at 1263; *Cf. In re Cavanaugh*, 306 F.3d 726, 739 (9th Cir. 2002) (granting writ of mandamus where district court's appointment of a lead plaintiff was inconsistent with the PSLRA); *In re Cohen*, 586 F.3d 703, 710-11 (9th Cir. 2009) (granting writ of mandamus where district court's rejection of lead counsel was inconsistent with the PSLRA).

### A.    The Court's methodology erroneously rejected the movants' purchase price.

    Traditionally, and before the PSLRA was enacted, courts assessed economic loss in § 10(b)

---

[2] The Court sought to distinguish *Wrap* on the grounds that it "involved multiple partially corrective disclosures [rather than] a single corrective disclosure." 2022 WL 377406, at *8. But *Wrap* rejected the "purchase price irrelevant" method because "both *Dura* and the PSLRA contemplated consideration of the purchase price," not because of multiple disclosures. *Id.* at *2-*3.

6

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**124**

cases in terms of "out-of-pocket" damages, calculated as the difference between the purchase price and the stock's "true" value. *See Acticon*, 692 F.3d at 39 (quoting *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 967 n.3 (9th Cir. 2007) and citing S. Rep. No. 104–98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699). A stock's true value was determined by reference to its price at the end of the class period—*i.e.*, "based on the date corrective information is disclosed." *Id.* (quoting S. Rep. No. 104-98, at 20). However, this measure of damages sometimes yielded plaintiffs a windfall if the stock price following a corrective disclosure reflected a market overreaction to negative information and, as such, was not a proper measure of the stock's true price. *Id.* As a result, Congress included a "limitation on damages" in the PSLRA. *See* 15 U.S.C. § 78u-4(e). To assess financial interests here, the Court appropriately looked to the PSLRA's cap on damages, as each movant put forth calculations using the market price of View following the corrective disclosure.

The PSLRA's limitation on damages provides, in relevant part, that where:

> [T]he plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed *the difference between the purchase or sale price paid or received*, as appropriate, *by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.*
>
> ****
>
> [I]f the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed *the difference between* **the purchase or sale price paid or received**, as appropriate, **by the plaintiff for the security** *and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.*

15 U.S.C. § 78u-4(e)(1)-(2). Moreover, if securities are sold during the lookback period, legislative history shows that the PSLRA contemplates for damages to be measured using the higher of the actual sale price or the average of the daily closing price from the date of the corrective disclosure to the date of sale. *See Mulligan*, 2013 WL 3354420 at *5 (quoting *Eichenholtz*, 2008 WL 3925289 at *2); *see also Schueneman*, 2011 WL 3475380 at *4; *Applestein*, 2010 WL 3749406 at *2. Pursuant to 15 U.S.C. § 78c-2(b), "references in the securities laws to the 'purchase' or 'sale' of a security shall be deemed to include the execution, termination (prior to its scheduled maturity date), assignment, exchange, or similar transfer or conveyance of, or extinguishing of rights or obligations

7

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**125**

under such agreement, contract, or transaction." Thus, by its terms, the statutory damages cap contemplates calculating damages based on a security's actual purchase price. "In its simplest form, a plaintiff's economic loss is the difference between the amount she paid to buy the security (higher than it should have been, in successful 10b-5 cases) and the amount she received when she sold it." *In re Allstate Corp. Sec. Litig.*, 966 F.3d. 595, 604-05 (2020); s*ee, e.g., Dura*, 544 U.S. at 344-45.

The court's analysis in *Schueneman* is instructive. In assessing the financial interest of competing lead plaintiff movants, the court adopted the retained share methodology, "which looks to the number of retained shares at the end of the class period." 2011 WL 3475380 at *4. Under that methodology, the Court found in applying the PSLRA's damages cap that "**the purchase price of the retained shares** is subtracted from either (1) the average of the daily closing price of the stock during the 90 day period beginning at the end of the class period (if the share was not sold during the 90 day period) or (2) the higher of the actual sale price or an average of the daily closing price from the end of the class period to the date of sale (if a share was sold within the 90 day period)." *Id.* (quoting *Eichenholtz*, 2008 WL 3925289 at *4). Next, the court determined that, "[t]he purchase price is calculated based either on the purchase price of shares purchased at the beginning of the class period [("First-In-First-Out ("FIFO"))] or the purchase price of shares purchased most recently, but within the class period [(Last-In-First-Out ("LIFO"))]." *Id.* The lead plaintiff movant in *Schueneman*, represented by Stadium Capital's counsel, Kaplan Fox, utilized the PSLRA's damages cap in estimating the losses of competing movants' retained shares. *See Schueneman*, ECF No. 49 at 1-2. Given that Stadium Capital's counsel correctly applied the PSLRA damages cap in *Schueneman*, it is surprising that they have taken a contrary position in this Action by arguing that the PSLRA does not use the actual purchase price when calculating damages.

In light of the clear guidance from Congress, the Supreme Court, and the Ninth and Seventh Circuits, the Court erred as a matter of law in its application of the PSLRA's damages cap. The Court, in seeking to follow the statutory damages cap, (i) multiplied the number of View shares held by Sonthalia throughout the Class Period and lookback period, by the difference between the closing price of View securities on the last day of the Class Period and the lookback price; and (ii) multiplied

8

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**126**

the number of View shares held by Stadium Capital at the end of the Class Period, but sold within the lookback period, by the difference between the closing price of View securities on the last day of the Class Period and Stadium Capital's actual sale price. By failing to utilize the movants' actual purchase price, the Court did not properly apply the first component of the PSLRA's damages cap.

Moreover, utilizing the movants' actual purchase price, as prescribed in the PSLRA damages cap, is consistent with the theory of fraud alleged in the Complaint (which must be accepted as true). The Complaint alleges that "[a]s a result of [Defendants'] materially false and/or misleading statements and/or failures to disclose, View's securities traded at artificially inflated prices during the Class Period" which reached "a Class Period high of $12.91 per share" on January 14, 2021, and that "members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of View's securities and market information relating to View, and have been damaged thereby." ¶48. Notably, during that week when View's securities were at their peak, Sonthalia purchased 22,500 shares. *See* ECF No. 30-2; *see also* Ngo Decl., Ex. 1. Accordingly, per the Complaint, Sonthalia and Stadium Capital purchased View securities at artificially inflated prices as a result of the alleged misstatements and omissions and incurred losses after the "information correcting the misstatement or omission that is the basis for the action [wa]s disseminated to the market" on August 16, 2021. 15 U.S.C. § 78u-4(e)(1)-(2). Applying the statutory damages cap to the "artificially inflated prices" at which Class members purchased View securities in the novel way the Court did disregards the Complaint's allegations to the detriment of the Class, particularly the recoverable losses of Class members, like Sonthalia, who purchased their securities early in the Class Period – closer in time to the alleged misstatements. *See* Ngo Decl., Ex. 1.

**B.** **The Court's interpretation of *Dura* conflates loss causation with transaction causation, making an improper finding of fact at the lead plaintiff stage.**

To recover damages under § 10(b) and Rule 10b-5, a plaintiff must prove: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) connected with the purchase or sale of a security; (4) reliance, often referred to as "transaction causation" in cases involving public securities markets (fraud-on-the-market cases); (5) economic loss; and (6) "loss causation," *i.e.*, a causal connection between the misrepresentation and the loss. *Halliburton I*, 563

9

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**127**

U.S. at 804. The last three elements are intertwined legally, conceptually, and factually, but the Supreme Court has instructed that they be considered at different stages of the case. *Allstate*, 966 F.3d at 605. To certify a class under Rule 23(b)(3), a plaintiff must show the ability to use common evidence of reliance, *i.e.,* the *Basic* presumption. *Basic*, 485 U.S. at 248. Loss causation, on the other hand, must be entirely reserved for the merits. *Halliburton I*, 563 U.S. at 804.

Loss causation requires a plaintiff to "demonstrate that the defendant's deceptive conduct caused their claimed economic loss." *Id*. at 807. The Supreme Court in *Halliburton I* distinguished loss causation from the related yet separate concept of "transaction causation" that it had long held is synonymous with reliance. *See id*. at 812, citing *Dura*, 544 U.S. at 341-42, citing in turn *Basic*, 485 U.S. at 248-49. The latter is *Basic*'s "fundamental premise—that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price **at the time of [the] transaction**" —which is distinct from "[t]he fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation" and bears "no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory." *Id.* at 813.

As explained by the Eleventh Circuit and adopted by the Seventh Circuit:

> Just as an efficient market translates all available ***truthful*** information into the stock price, the market processes the publicly disseminated ***falsehood*** and prices it into the stock as well. *See [Basic*, 485 U.S.] at 241-42. The market price of the stock will then include an artificial "inflationary" value—the amount that the market mistakenly attributes to the stock based on the fraudulent misinformation. So long as the falsehood remains uncorrected, it will continue to taint the total mix of available public information, and the market will continue to attribute the artificial inflation to the stock, day after day. If and when the misinformation is … corrected by the release of truthful information, *i.e.,* a corrective disclosure, the market will recalibrate the stock price to account for this change in information, eliminating whatever artificial value it had attributed to the price. That is, the inflation within the stock price will "dissipate."

*FindWhat*, 658 F.3d at 1310; *see e.g.*, *Allstate*, 966 F.3d at 612. Price impact boils down to whether an alleged misrepresentation "actually affected the market price" of the security. *Id.* Circuit courts have observed that a direct approach to price impact is difficult "because it requires knowing a counterfactual: what the price would have been without the false statement." *Glickenhaus & Co. v. Household Intern., Inc.,* 787 F.3d 408, 415 (7th Cir. 2015). "The stock price may even decline after a false statement, but be inflated nonetheless 'because the price might have fallen even more' if the

10

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**128**

full extent of the bad news were known." *Allstate*, 966 F.3d at 612.

The Ninth Circuit in *Dura* had held that to plead loss causation, plaintiffs need only allege that the share price was inflated when they purchased stock. *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 941 (9th Cir. 2003), *rev'd*, 544 U.S. 336 (2005). The Supreme Court disagreed, drawing a distinction between economic losses and recoverable damages, and explained that an inflated purchase price due to deception or misstatement does not in and of itself constitute or proximately cause the relevant economic loss. *Dura*, 544 U.S. at 347. At the time plaintiffs purchase a security, they have suffered no loss because the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value. *See id*. at 343. If plaintiffs sell their stock prior to a corrective disclosure, while it was still artificially inflated, there would be no recoverable loss attributable to the alleged fraud. *Id.* Insomuch, plaintiffs must also provide "defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation alleged"—*i.e.*, the claimed economic loss was the result of a truth revealed. *Id.* at 347. As such, at the pleading stage, loss causation is typically satisfied by allegations that a defendant revealed the truth through "corrective disclosures" which "caused the company's stock price to drop and investors to lose money." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014); *see e.g.*, *Irving Firemens Relief and Ret. Fund v. Uber Techs. Inc.*, 998 F.3d 397, 407 (9th Cir. 2021); *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir. 2007).

To establish loss causation under a "fraud-on-the-market" theory, a "plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *Irving Firemens*, 998 F3d at 407; *e.g., BofI Holding*, 977 F.3d at 789; *Dura*, 544 U.S. at 347. This analysis involves a temporal element in that "a disclosure followed by an immediate drop in stock price is more likely to have caused the decline." *BofI Holding*, 977 F.3d at 790. For example, the Ninth Circuit has held loss causation adequately alleged where plaintiffs claimed that a company engaged in improper accounting practices and the "stock [price] fell precipitously after [the company] began to reveal figures showing the company's true financial condition." *Daou*, 411

F.3d at 1026. However, the Ninth Circuit has rejected "a bright-line rule requiring an immediate market reaction because the market is subject to distortions that prevent the ideal of a free and open public market from occurring." *Gilead*, 536 F.3d at 1057-58. Pleading loss causation "should not prove burdensome," *id.*, for even under Rule 9(b), a plaintiff need only give a defendant "notice of plaintiffs' loss causation theory" and provide the court "some assurance that the theory has a basis in fact." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008). Thus, at the pleading stage, courts simply require plaintiffs to allege the stock price was impacted following a corrective disclosure—not to negate a decline in the stock price prior to the corrective disclosure.

Here, the Court chose to apply *Dura* and correctly did so by excluding Stadium Capital's Class Period **sales** prior to the August 16, 2021 corrective disclosure, because those sale prices were also artificially inflated by the alleged fraud. However, the Court incorrectly interpreted *Dura* as providing it discretion to assess at the lead plaintiff stage, whether the alleged impact on the stock price due to Defendants' misstatements can be causally connected to the truth revealed—leading it to hold that since the market price at which the movants bought their retained shares was higher than the market price just before the corrective disclosure, this decrease in value "is likely not linked to the alleged fraud." ECF No. 67, at 10-11. But Sonthalia did not sell any of her shares during the Class Period or lookback period, so no analysis under *Dura* changes her recoverable loss.

In sum, neither the Supreme Court in *Dura* nor any circuit court considering *Dura* has required a plaintiff, at the pleading stage, to prove price impact with regard to loss causation or transaction causation. The Court should not make this determination in calculating financial interest at the even earlier lead plaintiff stage. *See*, e.g., *Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (courts "cannot simply guess about the effect of ... as yet-unknown factors in selecting a lead plaintiff"); *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923 (D. Wash. July 13, 2005) (a court "must rely solely on the pleadings and declarations that each contestant provides" in determining which movant to select as lead plaintiff); *Perlmutter*, 2011 WL 566814, at *5 (since "calculating damages in a securities fraud case is a highly technical task that usually involves a battle of experts" and a lead plaintiff is selected "at a very early stage of litigation, before

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**130**

1  fact discovery and often long before the plaintiff's theory of the case is fully developed," courts

2  "prefer to choose a lead plaintiff based on total losses – a rough estimate for a plaintiff's maximum

3  recoverable damages – rather than attempting to estimate a plaintiff's recoverable losses").

4  **C.  Pursuant to the PSLRA and *Dura,* Sonthalia has the largest financial interest.**

5  As set forth in Sonthalia's Motion and supporting documents, she has the largest financial

6  interest in the Action when applying the Court's methodology, while utilizing the actual purchase

7  price as laid out in the PSLRA. The Court correctly determined the number of retained shares for

8  each movant. However, the Court must then calculate the movants' damages using the difference

9  between their retained shares' actual purchase price and (i) for Sonthalia, the mean trading price of

10 View stock during the lookback period; and (ii) for Stadium Capital, the higher of its actual sale

11 price and the mean trading price of View stock during the period beginning after the corrective

12 disclosure and ending on the day it sold its retained shares during the lookback period.

13 Sonthalia bought 60,424 shares of View stock, expending $700,202 between December 10,

14 2020 and February 5, 2021, and retained them throughout the Class Period and the lookback period.

15 *See* ECF No. 27 at 5-6; No. 30, Ex. B; No. 61, Ex. A. Accordingly, her damages are calculated as

16 the difference between the price paid ($700,202) and the lookback price ($316,017 = 60,424 x

17 $5.23), totaling <u>$384,185</u>. *Id*. Stadium Capital bought 426,235 shares of View stock, expending

18 $3,642,869 between December 1, 2020 and August 12, 2021. *See* ECF No. 31 at 4-5; ECF No. 31-

19 1, Ex. 3. It retained 60,000 shares at the end of the Class Period, at a net expenditure of $380,884[3],

20 and sold those shares on August 17, 2021 for $4.2306 after the corrective disclosure. *See* ECF No.

21 61, Ex. A; No. 31-1, Ex. 3. As a result, its damages are calculated as the difference between the

22 price paid ($380,884) and the price sold ($253,836 = 60,000 x $4.2306), totaling <u>$127,048</u>. *Id*.

23 Accordingly, Sonthalia is the presumptive most adequate plaintiff. And since no movant has

24 contended that she would not satisfy Rule 23's requirements, she should be appointed Lead Plaintiff.

25 ──────────────

26 [3] Stadium Capital's actual purchase price is the same under FIFO or LIFO. It sold all prior Class

27 Period shares by July 19, 2021, on which date it had no shares, so its "retained" 60,000 shares must

28 be traced to its purchases between July 19, 2021 and August 12, 2021. *See* ECF No. 48, at 3-4.

13

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**131**

## II.    CONCLUSION

For the foregoing reasons, Sonthalia respectfully requests that the Court vacate its Lead Plaintiff Order, appoint her as Lead Plaintiff, and approve Roche Freedman LLP as Lead Counsel.

DATED: February 22, 2022

Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Ivy T. Ngo*

Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Sweta Sonthalia and Proposed Lead Counsel*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
dschwartz@labaton.com

*Additional Counsel for Sweta Sonthalia*

NOTICE OF MOTION AND MOTION OF SWETA SONTHALIA FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL (DKT. NO. 67); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT | CASE NO. 5:21-cv-06374-BLF

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on February 22, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:     */s/ Ivy T. Ngo*
        Ivy T. Ngo

EXHIBIT 1



**View Inc. f/k/a CF Finance Acquisition Corp. II (VIEW)**
Class Period: November 30, 2020 – August 16, 2021

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, et al., | Case No. 21-cv-06374-BLF |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL** |
| VIEW, INC., et al., | |
| Defendants. | |
| | [Re: ECF No. 74] |

On February 8, 2022, the Court issued an order appointing Stadium Capital LLC ("Stadium") as Lead Plaintiff and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel in this securities class against brought by Plaintiff Asif Mehedi against View, Inc. ("View"). *See* Order, ECF No. 67. In its Order, the Court denied the motions to appoint lead plaintiff and lead counsel filed by parties other than Stadium, including the motion filed by Sweta Sonthalia. *See id.* On February 22, 2022, Ms. Sonthalia filed a Motion for Leave to file a Motion for Reconsideration of the Court's order appointing Stadium as Lead Plaintiff and Kaplan Fox as Lead Counsel. *See* Motion, ECF No. 74. Ms. Sonthalia argues that under Civil Local Rule 7-9(b)(3), the Court manifestly failed to consider material facts or dispositive legal arguments which were presented to the Court by (1) "erroneously reject[ing]" the movants' purchase price in calculating the parties' losses and (2) the Court made an improper finding of fact at the lead plaintiff stage by declining to consider Ms. Sonthalia's losses before the alleged August 16, 2021 corrective disclosure ("Corrective Disclosure"). *See id.*

Under Civil Local Rule 7-9(a), "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Under Civil Local Rule 7-9(b), a motion for leave

to file a motion for reconsideration must show reasonable diligence in bringing the motion and one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b). Ms. Sonthalia brings her motion under Civil Local Rule 7-9(b)(3), which requires her to show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court" before it issued its Order. *See* Motion, ECF No. 74 at 1; Civ. L.R. 7-9(b)(3).

The Court declines to grant Ms. Sonthalia leave to file a motion for reconsideration. Ms. Sonthalia argues that the Court failed to consider the purchase price of her View stock in its Order. *See* Motion, ECF No. 74 at 6–9. To the contrary, the Court considered using purchase price in calculating the parties' losses, but it found that using the price of View stock just before the Corrective Disclosure provided for a better recoverable loss metric. *See* Order, ECF No. 67, at 9–15; *see also* Motion, ECF No. 74 at 6 ("The Court's methodology erroneously *rejected* the movants' purchase price") (emphasis added). Ms. Sonthalia points to cases in which courts factored in purchase price, including *Dura*, to argue that the Court should have done the same. *See id.* at 6–9. But the Court considered cases that used the stock purchase price in calculating losses, ultimately deciding to use a different metric—pre-Corrective Disclosure price—in calculating losses. *See* Order, ECF No. 67 at 9–15. Further, the Court explicitly considered *Dura*, although it chose a different approach consistent with the *Dura* principle that pre-corrective disclosure losses should not be factored into loss calculation. *See id.*; *Dura Pharma., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Ms. Sonthalia also argues that the damages cap in the PSLRA incorporates purchase price.

*See* Motion, ECF No. 74 at 7 (citing 15 U.S.C. § 78u-4(e)).  Again, the Court considered this in its Order.  *See* Order, ECF No. 67 at 14 ("And the statutory cap is exactly that—a cap—it does not indicate that the Court cannot take into account a *lower* amount of damages than the limit provided by the cap.")  Accordingly, the Court finds that its decision not to rely on purchase price in calculating the parties' losses did not constitute a "manifest failure" to consider material facts. Civ. L.R. 7-9(b).

Further, Ms. Sonthalia argues that the Court made an improper finding of fact at the lead plaintiff stage by failing to consider the parties' losses from View stock price fluctuations prior to the Corrective Disclosure.  *See* Motion, ECF No. 74 at 9–13.  Again—the Court considered these losses, but it declined to factor these into its calculation of the parties' losses because they took place before the *single* Corrective Disclosure alleged in the Complaint.  *See* Order, ECF No. 67 at 11; Complaint, ECF No. 1 ¶¶ 34–35; Sonthalia Reply, ECF No. 48 at 2 (stating that a single corrective disclosure is alleged here).  Accordingly, the Court did not make a finding of fact—it relied on the allegations of a single Corrective Disclosure in the Complaint, which came *after* the losses Ms. Sonthalia argues the Court should have considered.  Accordingly, the Court again finds that Ms. Sonthalia has failed to point to a "manifest failure" by the Court to consider material facts. Civ. L.R. 7-9(b).

Based on the above reasoning, the Court DENIES Ms. Sonthalia's motion for leave to file a motion for reconsideration of the Court's order appointing Stadium as Lead Plaintiff and Kaplan Fox as Lead Counsel.

**IT IS SO ORDERED.**

Dated:  February 23, 2022

BETH LABSON FREEMAN
United States District Judge

ADRMOP

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:21-cv-06374-BLF

| | |
|---|---|
| Mehedi v. View, Inc. f/k/a CF Finance Acquisition Corp. II et al | Date Filed: 08/18/2021 |
| Assigned to: Judge Beth Labson Freeman | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Susan van Keulen | Nature of Suit: 850 |
| Cause: 15:78m(a) Securities Exchange Act | Securities/Commodities |
| | Jurisdiction: Federal Question |

### Plaintiff

**Asif Mehedi**
*Individually and on Behalf of All Others
Similarly Situated*

represented by   **Pavithra Rajesh**
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
Fax: (310) 201-9160
Email: prajesh@glancylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Henry Linehan**
Glancy Prongay and Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
Fax: (310) 201-9160
Email: clinehan@glancylaw.com
*ATTORNEY TO BE NOTICED*

**Robert Vincent Prongay**
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
Fax: (310) 201-9160
Email: rprongay@glancylaw.com
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Stadium Capital LLC**
*Lead Plaintiff*

represented by **Frederic S. Fox**
Kaplan Fox & Kilsheimer
850 Third Avenue
14th Floor
New York, NY 10022
212-687-1980
Email: FFox@kaplanfox.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen A. Herkenhoff**
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
(415) 772-4700
Fax: (415) 772-4707
Email: Kherkenhoff@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
(415) 772-4700
Fax: (415) 772-4707
Email: lking@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1560
94612
Oakland, CA 94612
415-772-4700
Email: breed@kaplanfox.com
*ATTORNEY TO BE NOTICED*

**Jason Aron Uris**
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980
Email: juris@kaplanfox.com
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**View, Inc.**
*formerly known as*
CF Finance Acquisition Corp. II

represented by **Robert Leo Dell Angelo**
Munger Tolles & Olson LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071-3426
213-683-9540
Email: robert.dellangelo@mto.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Willis Berry**
Munger, Tolles & Olson LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Fax: (213) 687-3702
Email: john.berry@mto.com
*ATTORNEY TO BE NOTICED*

**John Michael Gildersleeve**
Munger, Tolles, Olson LLP
350 S. Grand Ave., 50th Fl
Los Angeles, CA 90071
213-683-9100
Email: john.gildersleeve@mto.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rao Mulpuri**

represented by **Robert Leo Dell Angelo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Willis Berry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Michael Gildersleeve**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vidul Prakash**

V.

**Movant**

**Larry Lin**                                    represented by **Laurence Matthew Rosen**
                                                 The Rosen Law Firm, P.A.
                                                 355 South Grand Avenue, Suite 2450
                                                 Los Angeles, CA 90071
                                                 (213) 785-2610
                                                 Fax: (213) 226-4684
                                                 Email: lrosen@rosenlegal.com
                                                 *ATTORNEY TO BE NOTICED*

**Movant**

**Feng Li**                                      represented by **Charles Henry Linehan**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Movant**

**FirstFire Global Opportunities Fund,**        represented by **Ian David Berg**
**LLC**                                          Pgmbm
                                                 161 Washington St
                                                 Suite 250
                                                 Conshohocken, PA 19428
                                                 610-941-4204
                                                 Fax: 610-941-4245
                                                 Email: iberg@pgmbm.us
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Takeo A Kellar**
                                                 Abraham, Fruchter & Twersky, LLP
                                                 11622 El Camino Real, Suite 100
                                                 San Diego, CA 92130
                                                 (858) 764-2580
                                                 Fax: (858) 764-2582
                                                 Email: tkellar@aftlaw.com
                                                 *ATTORNEY TO BE NOTICED*

**Movant**

**Majdi Mojahed**                                represented by **Jennifer Pafiti**
                                                 Pomerantz LLP
                                                 1100 Glendon Avenue, 15th Floor
                                                 Los Angeles, CA 90024
                                                 (310) 405-7190

Email: jpafiti@pomlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Sweta Sonthalia**        represented by  **Ivy T. Ngo**
Roche Freedman LLP
1 SE 3rd Avenue
Suite 1240
Miami, FL 33131
(305) 971-5943
Fax: (646) 392-8842
Email: ingo@rochefreedman.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/18/2021 | 1 | COMPLAINT against Rao Mulpuri, Vidul Prakash, View, Inc. f/k/a CF Finance Acquisition Corp. II ( Filing fee $ 402, receipt number 0971-16296439.). Filed byAsif Mehedi. (Attachments: # 1 Civil Cover Sheet)(Rajesh, Pavithra) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/18/2021 | 2 | Proposed Summons. (Rajesh, Pavithra) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/18/2021 | 3 | Certificate of Interested Entities by Asif Mehedi re 1 Complaint, (Rajesh, Pavithra) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/18/2021 | 4 | CERTIFICATE of Counsel re 1 Complaint, by Pavithra Rajesh on behalf of Asif Mehedi (Rajesh, Pavithra) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/18/2021 | 5 | Case assigned to Judge Beth Labson Freeman. <br><br> Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. <br><br> Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. (bwS, COURT STAFF) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/18/2021 | 6 | **Initial Case Management Scheduling Order with ADR Deadlines: Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Case Management Statement due by 11/1/2021. Initial Case Management Conference set for** |

| | | |
|---|---|---|
| | | 11/18/2021 11:00 AM in San Jose, Courtroom 3, 5th Floor. (Attachments: # **1** Notice of Eligibility for Video Recording)(dhmS, COURT STAFF) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/18/2021 | 7 | Summons Issued as to Rao Mulpuri, Vidul Prakash, View, Inc. f/k/a CF Finance Acquisition Corp. II. (dhmS, COURT STAFF) (Filed on 8/18/2021) (Entered: 08/18/2021) |
| 08/24/2021 | 8 | NOTICE by Asif Mehedi *of Publication of SEC Class Action Notice* (Attachments: # 1 Exhibit A - Notice)(Rajesh, Pavithra) (Filed on 8/24/2021) (Entered: 08/24/2021) |
| 09/15/2021 | 9 | SUMMONS Returned Executed by Asif Mehedi. View, Inc. served on 9/7/2021, answer due 9/28/2021. (Rajesh, Pavithra) (Filed on 9/15/2021) (Entered: 09/15/2021) |
| 09/16/2021 | 10 | STIPULATION *Extending Time to Respond to Initial Complaint (Civil Local Rule 6-1)* filed by View, Inc.. (Gildersleeve, John) (Filed on 9/16/2021) (Entered: 09/16/2021) |
| 09/20/2021 | 11 | **ORDER GRANTING 10 STIPULATION EXTENDING TIME TO RESPOND TO INITIAL COMPLAINT. Signed by Judge Beth Labson Freeman on 9/20/2021. (blflc4S, COURT STAFF) (Filed on 9/20/2021) (Entered: 09/20/2021)** |
| 10/14/2021 | 12 | STIPULATION WITH PROPOSED ORDER *VACATING INITIAL CASE MANAGEMENT CONFERENCE AND RELATED DEADLINES* filed by Asif Mehedi. (Rajesh, Pavithra) (Filed on 10/14/2021) (Entered: 10/14/2021) |
| 10/14/2021 | 13 | **ORDER GRANTING 12 STIPULATION VACATING INITIAL CASE MANAGEMENT CONFERENCE AND RELATED DEADLINES. Signed by Judge Beth Labson Freeman on 10/14/2021. (blflc4S, COURT STAFF) (Filed on 10/14/2021) (Entered: 10/14/2021)** |
| 10/18/2021 | 14 | MOTION to Appoint Lead Plaintiff and Lead Counsel filed by Larry Lin. Motion Hearing set for 1/6/2022 09:00 AM in San Jose, Courtroom 3, 5th Floor before Judge Beth Labson Freeman. Responses due by 11/1/2021. Replies due by 11/8/2021. (Attachments: # 1 Proposed Order)(Rosen, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 15 | Declaration of Laurence M. Rosen in Support of 14 MOTION to Appoint Lead Plaintiff and Lead Counsel filed byLarry Lin. (Attachments: # 1 Exhibit 1 - PSLRA Early Notice, # 2 Exhibit 2 - PSLRA Cert., # 3 Exhibit 3 - Loss Chart, # 4 Exhibit 4 - Firm Resume)(Related document(s) 14 ) (Rosen, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 16 | CERTIFICATE of Counsel re 14 MOTION to Appoint Lead Plaintiff and Lead Counsel by Laurence Matthew Rosen on behalf of Larry Lin (Rosen, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 17 | Certificate of Interested Entities by Larry Lin re 14 MOTION to Appoint Lead Plaintiff and Lead Counsel (Rosen, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 18 | MOTION to Appoint Lead Plaintiff and Lead Counsel filed by Feng Li. Motion Hearing set for 1/6/2022 09:00 AM in San Jose, Courtroom 3, 5th Floor before Judge Beth Labson Freeman. Responses due by 11/1/2021. Replies due by 11/8/2021. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Proposed Order)(Linehan, Charles) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 19 | Declaration of Charles H. Linehan in Support of 18 MOTION to Appoint Lead Plaintiff and Lead Counsel filed byFeng Li. (Attachments: # 1 Exhibit A - Press Release, # 2 Exhibit B - Certification of Movant, # 3 Exhibit C - Movant Financial Interest Analysis, # 4 Exhibit D - GPM Firm Resume)(Related document(s) 18 ) (Linehan, Charles) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 20 | CERTIFICATE of Counsel re 18 MOTION to Appoint Lead Plaintiff and Lead Counsel by Charles Henry Linehan on behalf of Feng Li (Linehan, Charles) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 21 | Certificate of Interested Entities by Feng Li re 18 MOTION to Appoint Lead Plaintiff and Lead Counsel (Linehan, Charles) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 22 | MOTION to Appoint Lead Plaintiff and Lead Counsel filed by FirstFire Global Opportunities Fund, LLC. Motion Hearing set for 1/6/2022 09:00 AM in San Jose, Courtroom 3, 5th Floor before Judge Beth Labson Freeman. Responses due by 11/1/2021. Replies due by 11/8/2021. (Attachments: # 1 Declaration of Ian D. Berg In Support of Motion, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proposed Order) (Berg, Ian) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 23 | Certificate of Interested Entities by FirstFire Global Opportunities Fund, LLC re 22 MOTION to Appoint Lead Plaintiff and Lead Counsel (Berg, Ian) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 24 | CERTIFICATE of Counsel re 22 MOTION to Appoint Lead Plaintiff and Lead Counsel by Ian David Berg on behalf of FirstFire Global Opportunities Fund, LLC (Berg, Ian) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 25 | CERTIFICATE of Counsel re 22 MOTION to Appoint Lead Plaintiff and Lead Counsel by Takeo A Kellar on behalf of FirstFire Global Opportunities Fund, LLC (Kellar, Takeo) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 26 | MOTION to Appoint Lead Plaintiff and Lead Counsel filed by Majdi Mojahed. Motion Hearing set for 1/6/2022 09:00 AM in San Jose, Courtroom 3, 5th Floor before Judge Beth Labson Freeman. Responses due by 11/1/2021. Replies due by 11/8/2021. (Attachments: # 1 Proposed Order, # 2 Declaration of Jennifer Pafiti, # 3 Exhibit A - Loss Chart, # 4 Exhibit B - Press Release, # 5 Exhibit C - Certification, # 6 Exhibit D - Movant Declaration, # 7 Exhibit E - Firm Resume)(Pafiti, Jennifer) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 27 | MOTION to Appoint Lead Plaintiff and Lead Counsel filed by Sweta Sonthalia. Motion Hearing set for 1/6/2022 09:00 AM in San Jose, Courtroom 3, 5th Floor before Judge Beth Labson Freeman. Responses due by 11/1/2021. Replies due by 11/8/2021. (Attachments: # 1 Proposed Order Proposed Order)(Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 28 | CERTIFICATE of Counsel re 26 MOTION to Appoint Lead Plaintiff and Lead Counsel by Jennifer Pafiti on behalf of Majdi Mojahed (Pafiti, Jennifer) (Filed on 10/18/2021) |

| | | (Entered: 10/18/2021) |
|---|---|---|
| 10/18/2021 | 29 | Certificate of Interested Entities by Majdi Mojahed re 26 MOTION to Appoint Lead Plaintiff and Lead Counsel (Pafiti, Jennifer) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 30 | Declaration of Ivy T. Ngo in Support of 27 MOTION to Appoint Lead Plaintiff and Lead Counsel filed bySweta Sonthalia. (Attachments: # 1 Exhibit A. PSLRA Cert, # 2 Exhibit B. Loss Chart, # 3 Exhibit C. Sonthalia Decl, # 4 Exhibit D. Resume, # 5 Exhibit E. PSLRA Cert)(Related document(s) 27 ) (Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 31 | MOTION to Appoint Lead Plaintiff and Lead Counsel filed by Stadium Capital LLC. Motion Hearing set for 1/6/2022 09:00 AM in San Jose, Courtroom 3, 5th Floor before Judge Beth Labson Freeman. Responses due by 11/1/2021. Replies due by 11/8/2021. (Attachments: # 1 Declaration, # 2 Exhibit 1 - Notice of Pendency of Action, # 3 Exhibit 2 - Stadium Capital LLC Certification, # 4 Exhibit 3 - Stadium Capital LLC Loss Chart, # 5 Exhibit 4 - Firm Resume, # 6 Proposed Order)(King, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 32 | Certificate of Interested Entities by Sweta Sonthalia re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel (Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 33 | CERTIFICATE of Counsel re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel *of Ivy T. Ngo* by Ivy T. Ngo on behalf of Sweta Sonthalia (Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 34 | Certificate of Interested Entities by Stadium Capital LLC re 31 MOTION to Appoint Lead Plaintiff and Lead Counsel (King, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 35 | CERTIFICATE of Counsel re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel *of David Schwartz* by Ivy T. Ngo on behalf of Sweta Sonthalia (Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 36 | CERTIFICATE of Counsel re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel *of Velvel (Devin) Freedman* by Ivy T. Ngo on behalf of Sweta Sonthalia (Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 37 | CERTIFICATE of Counsel re 31 MOTION to Appoint Lead Plaintiff and Lead Counsel *Pursuant to Civ. L.R. 3-7(d)* by Laurence D. King on behalf of Stadium Capital LLC (King, Laurence) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 38 | CERTIFICATE of Counsel re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel *of Constantine Economides* by Ivy T. Ngo on behalf of Sweta Sonthalia (Ngo, Ivy) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| 10/18/2021 | 39 | CERTIFICATE of Counsel re 31 MOTION to Appoint Lead Plaintiff and Lead Counsel *Pursuant to Civ. L.R. 3-7(d)* by Kathleen A. Herkenhoff on behalf of Stadium Capital LLC (Herkenhoff, Kathleen) (Filed on 10/18/2021) (Entered: 10/18/2021) |
| | | |

| 10/19/2021 | 40 | NOTICE of Appearance by Robert Leo Dell Angelo (Dell Angelo, Robert) (Filed on 10/19/2021) (Entered: 10/19/2021) |
| 10/19/2021 | 41 | NOTICE of Appearance by John Willis Berry (Berry, John) (Filed on 10/19/2021) (Entered: 10/19/2021) |
| 11/01/2021 | 42 | NOTICE by Majdi Mojahed re 26 MOTION to Appoint Lead Plaintiff and Lead Counsel *Notice of Non-Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel* (Pafiti, Jennifer) (Filed on 11/1/2021) (Entered: 11/01/2021) |
| 11/01/2021 | 43 | Notice of Withdrawal of Motion *OF LARRY LIN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL* (Rosen, Laurence) (Filed on 11/1/2021) (Entered: 11/01/2021) |
| 11/01/2021 | 44 | Statement of Non-Opposition *to the Competing Motions for Appointment as Lead Plaintiff and Approval of Counsel* filed byFirstFire Global Opportunities Fund, LLC. (Berg, Ian) (Filed on 11/1/2021) (Entered: 11/01/2021) |
| 11/01/2021 | 45 | Statement of Non-Opposition filed byFeng Li. (Linehan, Charles) (Filed on 11/1/2021) (Entered: 11/01/2021) |
| 11/01/2021 | 46 | OPPOSITION/RESPONSE (re 22 MOTION to Appoint Lead Plaintiff and Lead Counsel , 26 MOTION to Appoint Lead Plaintiff and Lead Counsel , 27 MOTION to Appoint Lead Plaintiff and Lead Counsel , 18 MOTION to Appoint Lead Plaintiff and Lead Counsel ) filed byStadium Capital LLC. (King, Laurence) (Filed on 11/1/2021) (Entered: 11/01/2021) |
| 11/01/2021 | 47 | OPPOSITION/RESPONSE (re 22 MOTION to Appoint Lead Plaintiff and Lead Counsel , 26 MOTION to Appoint Lead Plaintiff and Lead Counsel , 27 MOTION to Appoint Lead Plaintiff and Lead Counsel , 18 MOTION to Appoint Lead Plaintiff and Lead Counsel , 31 MOTION to Appoint Lead Plaintiff and Lead Counsel ) *in further support of Sweta Sonthalia's motion for lead plaintiff appointment and in opposition to competing lead plaintiff motions* filed bySweta Sonthalia. (Ngo, Ivy) (Filed on 11/1/2021) (Entered: 11/01/2021) |
| 11/08/2021 | 48 | REPLY (re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel , 31 MOTION to Appoint Lead Plaintiff and Lead Counsel ) *in support of her motion for lead plaintiff appointment and approval of selection of counsel* filed bySweta Sonthalia. (Ngo, Ivy) (Filed on 11/8/2021) (Entered: 11/08/2021) |
| 11/08/2021 | 49 | REPLY (re 27 MOTION to Appoint Lead Plaintiff and Lead Counsel , 31 MOTION to Appoint Lead Plaintiff and Lead Counsel ) *in Support of Stadium Capital LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, and in Opposition to Competing Motions]* filed byStadium Capital LLC. (King, Laurence) (Filed on 11/8/2021) (Entered: 11/08/2021) |
| 12/07/2021 | 50 | **ORDER DIRECTING PARTIES TO SUBMIT CHAMBERS COPIES. Signed by Judge Beth Labson Freeman on 12/7/2021. (blflc4, COURT STAFF) (Filed on 12/7/2021) (Entered: 12/07/2021)** |

| 12/29/2021 | 51 | **CLERKS NOTICE CONVERTING MOTION HEARING TO ZOOM WEBINAR HEARING. Motion Hearing as to 27 MOTION to Appoint Lead Plaintiff and Lead Counsel , 22 MOTION to Appoint Lead Plaintiff and Lead Counsel , 18 MOTION to Appoint Lead Plaintiff and Lead Counsel , 31 MOTION to Appoint Lead Plaintiff and Lead Counsel , 26 MOTION to Appoint Lead Plaintiff and Lead Counsel set for 1/6/2022 09:00 AM before Judge Beth Labson Freeman will be held via a Zoom webinar.**<br><br>Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/blf<br><br>**Court App earances: Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at blfcrd@cand.uscourts.gov no later than January 4, 2022 at 2:00 PM PST.**<br><br>General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (tsh, COURT STAFF) (Filed on 12/29/2021) (Entered: 12/29/2021) |
| 01/03/2022 | 52 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-16765016.) filed by Stadium Capital LLC. (Fox, Frederic) (Filed on 1/3/2022) (Entered: 01/03/2022) |
| 01/03/2022 | 53 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-16765071.) filed by Stadium Capital LLC. (Uris, Jason) (Filed on 1/3/2022) (Entered: 01/03/2022) |
| 01/03/2022 | 54 | **ORDER GRANTING 52 MOTION FOR LEAVE TO APPEAR IN PRO HAC VICE. Signed by Judge Beth Labson Freeman on 1/3/2022. (blflc4, COURT STAFF) (Filed on 1/3/2022) (Entered: 01/03/2022)** |
| 01/03/2022 | 55 | **ORDER GRANTING 53 MOTION FOR LEAVE TO APPEAR IN PRO HAC VICE. Signed by Judge Beth Labson Freeman on 1/3/2022. (blflc4, COURT STAFF) (Filed on 1/3/2022) (Entered: 01/03/2022)** |
| 01/03/2022 | 56 | **ORDER REQUESTING JOINT SUBMISSION IN SUPPORT OF 27 , 31 MOTIONS TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL. Signed by Judge Beth Labson Freeman on 1/3/2022. (blflc4, COURT STAFF) (Filed on 1/3/2022) (Entered: 01/03/2022)** |
| 01/04/2022 | 57 | NOTICE of Appearance by Robert Leo Dell Angelo *for Defendant Rao Mulpuri* (Dell Angelo, Robert) (Filed on 1/4/2022) (Entered: 01/04/2022) |

| 01/04/2022 | 58 | NOTICE of Appearance by John Willis Berry *for Defendant Rao Mulpuri* (Berry, John) (Filed on 1/4/2022) (Entered: 01/04/2022) |
| 01/04/2022 | 59 | NOTICE of Appearance by John Michael Gildersleeve *for Defendant Rao Mulpuri* (Gildersleeve, John) (Filed on 1/4/2022) (Entered: 01/04/2022) |
| 01/04/2022 | 60 | Certificate of Interested Entities by Rao Mulpuri, View, Inc. *Certification of Interested Entities or Persons (CIV. L.R. 3-15; FED. R. CIV. P. 7.1)* (Gildersleeve, John) (Filed on 1/4/2022) (Entered: 01/04/2022) |
| 01/05/2022 | 61 | RESPONSE re 56 Order *(Joint Submission)* by Stadium Capital LLC. (Attachments: # 1 Exhibit A)(King, Laurence) (Filed on 1/5/2022) (Entered: 01/05/2022) |
| 01/06/2022 | 62 | TRANSCRIPT ORDER for proceedings held on 01/06/2022 before Judge Beth Labson Freeman by View, Inc., for Court Reporter Summer Fisher. (Gildersleeve, John) (Filed on 1/6/2022) (Entered: 01/06/2022) |
| 01/06/2022 | 63 | TRANSCRIPT ORDER for proceedings held on 01/06/2022 before Judge Beth Labson Freeman by Sweta Sonthalia, for Court Reporter Summer Fisher. (Ngo, Ivy) (Filed on 1/6/2022) (Entered: 01/06/2022) |
| 01/06/2022 | 65 | **Minute Entry for proceedings held before Judge Beth Labson Freeman: Motion Hearing held on 1/6/2022.**<br>**Total Time in Court: 9:00 - 9:09/9:44 - 10:07.**<br>**Court Reporter: Summer Fisher.**<br>**Plaintiff Attorney: Ivy Ngo, Jason Uris.**<br>**Defendant Attorney: John Gildersleeve.**<br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (tsh, COURT STAFF) (Date Filed: 1/6/2022) (Entered: 01/11/2022)** |
| 01/07/2022 | 64 | TRANSCRIPT ORDER for proceedings held on 01/06/22 before Judge Beth Labson Freeman by Stadium Capital LLC, for Court Reporter Summer Fisher. (King, Laurence) (Filed on 1/7/2022) (Entered: 01/07/2022) |
| 01/16/2022 | 66 | Transcript of Proceedings held on 1/6/2022, before Judge Beth Labson Freeman. Court Reporter/Transcriber Summer Fisher, telephone number summer_fisher@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 62 Transcript Order ) Redaction Request due 2/7/2022. Redacted Transcript Deadline set for 2/16/2022. Release of Transcript Restriction set for 4/18/2022. (Related documents(s) 62 ) (Fisher, Summer) (Filed on 1/16/2022) (Entered: 01/16/2022) |
| 02/08/2022 | 67 | **ORDER RE: 18 , 22 , 26 , 27 , 31 APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL. Signed by Judge Beth Labson Freeman on 2/8/2022. (blflc4, COURT STAFF) (Filed on 2/8/2022) (Entered: 02/08/2022)** |
| 02/18/2022 | 68 | STIPULATION WITH PROPOSED ORDER *Setting Scheduling for Lead Plaintiff to* |

| | | |
|---|---|---|
| | | *File Amended Complaint and Time for Defendants' Answer or Response* filed by Stadium Capital LLC. (Attachments: # 1 Certificate/Proof of Service)(Herkenhoff, Kathleen) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 69 | NOTICE of Appearance by Blair Elizabeth Reed (Reed, Blair) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 70 | CERTIFICATE of Counsel by Blair Elizabeth Reed on behalf of Stadium Capital LLC (Reed, Blair) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 71 | CERTIFICATE of Counsel by Frederic S. Fox on behalf of Stadium Capital LLC (Fox, Frederic) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/18/2022 | 72 | CERTIFICATE of Counsel by Jason Aron Uris on behalf of Stadium Capital LLC (Uris, Jason) (Filed on 2/18/2022) (Entered: 02/18/2022) |
| 02/22/2022 | 73 | **ORDER GRANTING 68 STIPULATION SETTING SCHEDULE FOR LEAD PLAINTIFF TO FILE AMENDED COMPLAINT AND TIME FOR DEFENDANTS' ANSWER OR RESPONSE AS MODIFIED BY THE COURT. Signed by Judge Beth Labson Freeman on 2/22/2022. (blflc4, COURT STAFF) (Filed on 2/22/2022) (Entered: 02/22/2022)** |
| 02/22/2022 | 74 | MOTION for Reconsideration re 67 Order on Motion to Appoint Lead Plaintiff and Lead Counsel filed by Sweta Sonthalia. (Attachments: # 1 Proposed Order)(Ngo, Ivy) (Filed on 2/22/2022) Modified on 2/23/2022 (sfb, COURT STAFF). (Entered: 02/22/2022) |
| 02/22/2022 | 75 | Declaration of Ivy T. Ngo in Support of 74 MOTION for Reconsideration re 67 Order on Motion to Appoint Lead Plaintiff and Lead Counsel,,,, filed by Sweta Sonthalia. (Attachments: # 1 Exhibit 1)(Related document(s) 74 ) (Ngo, Ivy) (Filed on 2/22/2022) (Entered: 02/22/2022) |
| 02/23/2022 | 76 | **ORDER DENYING 74 MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF 67 ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL. Signed by Judge Beth Labson Freeman on 2/23/2022. (blflc4, COURT STAFF) (Filed on 2/23/2022) (Entered: 02/23/2022)** |
| 02/23/2022 | | Reset Deadlines: Amended Complaint due by 4/19/2022, Answer to Amended Complaint due by 6/20/2022, Opposition due by 8/4/2022, Reply due by 9/2/2022. (tsh, COURT STAFF) (Filed on 2/23/2022) (Entered: 03/01/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/03/2022 11:06:30 | | |
| **PACER Login:** | Roche123 | **Client Code:** | 1064.000 |
| **Description:** | Docket Report | **Search Criteria:** | 5:21-cv-06374-BLF |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

---

**ATTENTION ALL PARTIES AND COUNSEL
PLEASE REVIEW PARTIES AND COUNSEL LISTING**

---

We have opened this appeal/petition based on the information provided to us by the appellant/petitioner and/or the lower court or agency. EVERY attorney and unrepresented litigant receiving this notice MUST immediately review the caption and service list for this case and notify the Court of any corrections.

Failure to ensure that all parties and counsel are accurately listed on our docket, and that counsel are registered and admitted, may result in your inability to participate in and/or receive notice of filings in this case, and may also result in the waiver of claims or defenses.

PARTY LISTING:
Notify the Clerk immediately if you (as an unrepresented litigant) or your client(s) are not properly and accurately listed or identified as a party to the appeal/petition. To report an inaccurate identification of a party (including company names, substitution of government officials appearing only in their official capacity, or spelling errors), or to request that a party who is listed only by their lower court role (such as plaintiff/defendant/movant) be listed as a party to the appeal/petition as an appellee or respondent so that the party can appear in this Court and submit filings, contact the Help Desk at http://www.ca9.uscourts.gov/cmecf/feedback/ or send a letter to the Clerk. If you or your client were identified as a party to the appeal/petition in the notice of appeal/petition for review or representation statement and you believe this is in error, file a motion to dismiss as to those parties.

COUNSEL LISTING:
In addition to reviewing the caption with respect to your client(s) as discussed above, all counsel receiving this notice must also review the electronic notice of docket activity or the service list for the case to ensure that the correct counsel are

listed for your clients. If appellate counsel are not on the service list, they must file a notice of appearance or substitution immediately or contact the Clerk's office.

NOTE that in criminal and habeas corpus appeals, trial counsel WILL remain as counsel of record on appeal until or unless they are relieved or replaced by Court order. *See* Ninth Circuit Rule 4-1.

REGISTRATION AND ADMISSION TO PRACTICE:
Every counsel listed on the docket must be admitted to practice before the Ninth Circuit AND registered for electronic filing in the Ninth Circuit in order to remain or appear on the docket as counsel of record. *See* Ninth Circuit Rules 25-5(a) and 46-1.2. These are two separate and independent requirements and doing one does not satisfy the other. If you are not registered and/or admitted, you MUST, within 7 days from receipt of this notice, register for electronic filing AND apply for admission, or be replaced by substitute counsel or otherwise withdraw from the case.

If you are not registered for electronic filing, you will not receive further notices of filings from the Court in this case, including important scheduling orders and orders requiring a response. Failure to respond to a Court order or otherwise meet an established deadline can result in the dismissal of the appeal/petition for failure to prosecute by the Clerk pursuant to Ninth Circuit Rule 42-1, or other action adverse to your client.

If you will be replaced by substitute counsel, new counsel should file a notice of appearance/substitution (no form or other attachment is required) and should note that they are replacing existing counsel. To withdraw without replacement, you must electronically file a notice or motion to withdraw as counsel from this appeal/petition and include your client's contact information.

To register for electronic filing, and for more information about Ninth Circuit CM/ECF, visit our website at http://www.ca9.uscourts.gov/cmecf/#section-registration.

To apply for admission, see the instructions and form application available on our website at https://www.ca9.uscourts.gov/attorneys/.