Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

IN RE: GOOGLE PLAY STORE           )
ANTITRUST LITIGATION.              )  No. 21-md-2981-JD
_____)
                                   San Francisco, California

                                   Thursday, September 9, 2021

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:  (By Zoom Webinar)

For Plaintiff Epic Games:
                         CRAVATH SWAIN AND MOORE LLP
                         825 Eighth Avenue
                         New York, New York  10019
                    BY:  **GARY BORNSTEIN, ESQ.**

For The Consumer Class Plaintiffs:
                         KAPLAN FOX AND KILSHEIMER LLP
                         850 Third Avenue
                         14th Floor
                         New York, New York  10022
                    BY:  **HAE SUNG NAM, ESQ.**

                         BARTLIT BECK LLP
                         1801 Wewatta Street
                         Suite 1200
                         Denver, Colorado  80202
                    BY:  **KARMA M. GIULIANELLI, ESQ.**

                         HAGENS BERMAN SOBOL SHAPIRO LLP
                         715 Hearst Avenue
                         Suite 202
                         Berkeley, California  94710
                    BY:  **BEN M. HARRINGTON, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
             Official Reporter, U.S. District Court

     (Appearances continued, next page)

**APPEARANCES, CONTINUED**:

For The Consumer Class Plaintiffs:
                              SPERLING & SLATER P.C.
                              55 West Monroe Street
                              Suite 3200
                              Chicago, Illinois  60603
                     **BY:  EAMON P. KELLY, ESQ.**

For the Developer Class Plaintiffs:
                              HAUSFELD LLP
                              600 Montgomery Street
                              Suite 3200
                              San Francisco, California  94111
                     **BY:  BONNY E. SWEENEY, ESQ.**

For State and Commonwealth Plaintiffs:
                              CALIFORNIA DEPARTMENT OF JUSTICE
                              Office of the Attorney General
                              455 Golden Gate Avenue
                              Suite 11000
                              San Francisco, California  94102
                     **BY:  PAULA L. BLIZZARD, ESQ.**

                              LIEFF, CABRASER, HEIMANN & BERNSTEIN
                              Embarcadero Center West
                              275 Battery Street
                              29th Floor
                              San Francisco, California  94111
                     **BY:  BRENDAN P. GLACKIN, ESQ.**

                              UTAH OFFICE OF THE ATTORNEY GENERAL
                              160 East 300 South
                              Fifth Floor
                              Salt Lake City, Utah  84114-0874
                     **BY:  DAVID N. SONNENREICH, ESQ.**

For Defendants:
                              MORGAN LEWIS & BOCKIUS LLP
                              One Market Street
                              Spear Street Tower
                              San Francisco, California  9494105
                     **BY:  BRIAN C. ROCCA, ESQ.**

                              O'MELVENY & MYERS
                              1625 Eye Street, N.W.
                              Washington, D.C.  20006
                     **BY:  IAN SIMMONS, ESQ.**

| | |
|---|---|
| **Thursday - September 9, 2021** | **11:10 a.m.** |

P R O C E E D I N G S

**THE COURTROOM DEPUTY:**  Calling Civil Multi-district Litigation 21-2981, In Re Google Play Store antitrust litigation.

Counsel for the plaintiffs, please -- oh, the court reporter is here.  I don't see her name.  Do you?

**THE COURT:**  No.  Listen, everyone, I was just going to record this because this is taking too long, but let me see if I can find Belle.

**THE COURTROOM DEPUTY:**  No, if you're raising your hand I don't see you, Belle.

I'm just going to record it, Judge, because --

**THE COURT:**  That's fine, okay.  Go ahead.

**THE COURTROOM DEPUTY:**  Okay, counsel, let me announce the case, call the case again.  Calling Multi-district Litigation 21-2981, In Re Google Play Store Antitrust Litigation.

Counsel for the plaintiff?  Please state your appearances.

**MR. BORNSTEIN:**  Good morning, Your Honor.  Gary Bornstein for plaintiff Epic Games.

**MS. NAM:**  Good morning, Your Honor.  Hae Sung Nam, Kaplan Fox, for the consumer plaintiffs.

**MS. GIULIANELLI:**  Good morning.  Karma Giulianelli from Bartlit Beck for the consumer plaintiff as well.

1      **MS. SWEENEY:**  Good morning, Your Honor.  Bonny

2  Sweeney from Hausfeld for the developer plaintiff class.

3      **MR. KELLY:**  Good morning, Your honor.  Eamon Kelly

4  from Sperling & Slater, also for the developer plaintiff

5  class.

6      **MR. HARRINGTON:**  Good morning, Your Honor.  Ben

7  Harrington of Hagens, Berman also for the developer plaintiff

8  class.

9      **MS. BLIZZARD:**  Good morning, Your Honor.  Paula

10  Blizzard for the State of California.  And if I may introduce

11  my colleagues here today as well.

12      I have David Sonnenreich from Utah, who's been

13  instrumental in bringing this case.  But to clarify, myself and

14  Mr. Sonnenreich are here largely for residual and historical

15  purposes.  Because I'm very pleased to announce that our lead

16  counsel, going forward, is Mr. Brendan Glackin.  He's been

17  appointed a Special Assistant Attorney General for the State of

18  Utah, and will be lead counsel and will be speaking for the

19  states almost exclusively going forward.

20      **THE COURT:**  Good morning.

21      **MR. GLACKIN:**  Good morning, Your Honor.

22      **THE COURT:**  Good morning.  Okay.  Is that it for

23  plaintiffs?

24      **THE COURTROOM DEPUTY:**  Counsel for defendants?

25      **MR. ROCCA:**  Thank you, Ms. Clark.

1      Hello, Your Honor.  It's Brian Rocca of Morgan Lewis,

2  representing Google.

3           **MR. SIMMONS:**  Good morning, Your Honor.  Ian Simmons

4   of O'Melveny & Myers, for defendants.

5           **THE COURT:**  Is that it for the defense team here

6   today, Mr. Rocca?

7           **MR. ROCCA:**  Yes, Your Honor.

8           **THE COURT:**  All right.  Scheduling check-in.

9      Let me tell you what I'm thinking, and it should all be

10  straightforward.  September trial date is fine with me, if

11  that's what you'd like to do.  I can't -- I've got a bunch of

12  things stacked up.  So the -- the latest I can have you in at

13  that portion of 2022 is going to be the first Tuesday in

14  September.  So whenever -- just plan on jury call, day after

15  Labor Day.  Unless it's one of those late Labor Days.  Then

16  we'll start the week before.

17      And then in terms of working -- because that's the trial

18  date.  In terms of working backward to now, I want you all to

19  get together, and pull up from my *Capacitors* antitrust MDL

20  case.  It's going to be the initial case.  Here's the case

21  number -- I'll put this in the minutes so you don't have to

22  kill yourself writing it down, but it's going to be 14-3264.

23  Pull up Docket No. 1405.

24      That is the scheduling order that I want you to follow in

25  terms of pacing.  It's going to have a lot of things that

1    aren't relevant to you, since they were are all overseas

2    defendants, so there are all sorts of dates for the FTAIA.

3    Don't worry about that.

4        But it sets out how I would like to pace class

5    certification, fact discovery, merits, merits experts, summary

6    judgment and so on.  So use that as your template.  Get

7    together, and propose dates, based on that template.

8        And, I know we're still having an ongoing dialogue about

9    what the trials are going to look like.  I need to know sooner

10   rather than later about how you want to do it, for me to think

11   about.  So I would like, by mid-January at the latest, to get a

12   proposed trial plan.

13       Now, by that, I mean jury trial will go first.  I've

14   already articulated how that's going to play out with any

15   equitable issues, liability and damages.  I'm not -- I'm open

16   to the all suggestions.  I'm not guaranteeing anything.  I'll

17   tell you, I'm a little bit queasy at the idea of splitting up

18   liability and damages.  I never do it.  I don't like it.  I

19   think it creates problems.

20       But it may be that, given this case, this is a unique

21   situation, and that's the way we have to do it.  So I'm happy

22   to consider it.  But just think it through.  Okay?

23       And the goal -- and I know you all embrace this -- is

24   we're going to be as efficient as possible within the bounds of

25   due process, giving everybody a chance to make their case.  But

1    not in a duplicative or wasteful way.  You don't want that any

2    more than I do.  You certainly don't want to take up too much

3    time with the jury.  I should say take up all the time with the

4    jury we need, but we don't want to take it up wastefully.

5    That's our guideline.

6        So work all that out.  I'm confident you can do it.  And

7    I'll set a date in the minutes, maybe, you know, somewhere

8    around the middle of the month of January for the joint plan.

9    And how about, how about two weeks to get the -- oh, just let

10   me confirm.

11       So Mr. Rocca, there will be no motion to dismiss -- is

12   that right -- for any of the complaints?

13           **MR. ROCCA:**  That's right, Your Honor.  We submitted

14    to the Court yesterday a proposed stipulation with the

15    coordinated date for responsive pleadings.  And we appreciate

16    Your Honor's consideration of that stipulation.

17           **THE COURT:**  Perfectly fine.  Just build that into

18    your -- whatever date you want is fine.  Just bank on it.  But

19    build it into your schedule so we have a good written record.

20       How about two weeks, say, about two weeks from today for

21   you to submit the proposed joint case management schedule,

22   based on that exemplar that I gave you from my other case.

23       Does that sound okay, defendants?

24           **MR. ROCCA:**  It does, Your Honor.  Thank you.

25           **THE COURT:**  Plaintiffs, are you okay with that?

```
1    Anybody have a problem with that?  No?

2       (No response)

3            THE COURT:  All right.  Well, I think we accomplished

4    what I wanted to do.

5       I will ask about -- somebody flagged a state -- a

6    collection of documents that the states have.  And I guess

7    there's some dispute about whether those are going to be

8    produced wholesale to the non-state plaintiffs.  Is that right?

9       Who wants to --

10           MR. ROCCA:  Yes, Your Honor.

11           MR. BORNSTEIN:  Yes, Your Honor.

12           MR. ROCCA:  Go ahead, Your Honor.  Whoever you want

13   to hear from first.

14           THE COURT:  Well, Mr. Bornstein, you asked.  Didn't

15   you ask about it?

16           MR. BORNSTEIN:  We did, Your Honor, on behalf of all

17   of the private plaintiffs here.  But I'll take the mic in the

18   first instance, if I could.

19       The issue here is we served an RFP way back in November or

20   so, asking for the documents that Google had produced in

21   various investigations.  We had asked for Google to identify

22   for us the investigations that related to the issues in this

23   case.  Setting aside --

24           THE COURT:  I remember one from the, sort of, House

25   committee.
```

1            **MR. BORNSTEIN:**  That's correct.

2            **THE COURT:**  We worked that one out, right?

3            **MR. BORNSTEIN:**  We did, we did.

4            **THE COURT:**  Okay.

5            **MR. BORNSTEIN:**  But Google did not, in its

6    interrogatory response or its discussions with us, identify

7    any investigation having been conducted or in the process of

8    being conducted by the states.

9            So we then received as Your Honor did in July, the

10   complaint from the states, which obviously relates to the

11   issues that are in play in the Epic case and in both of the

12   class cases.  And that complaint had in it a number of

13   documents that we had never seen that had not been produced in

14   our cases.

15           And it is evident from our subsequent discussions with

16   Google that there is a very large number of documents that were

17   produced in response to the states' investigation relating to

18   these issues about which we had no knowledge, and was not

19   mentioned in --

20           **THE COURT:**  Let me pause on that.  So somebody -- may

21   have been you, may have been Google -- said it's millions and

22   millions of pages.  Is that right?

23           **MR. BORNSTEIN:**  That's, I think, what's been

24   represented to us.  I obviously don't know for sure.  We've

25   not asked for all of it to be produced to us.  We've asked for

1   a targeted set of the materials that are relevant to this

2   case.  And not --

3        **THE COURT:**  Give me some top-line examples of that.

4   I'm not tying your hands, but what is it you want from the

5   state documents?

6        **MR. BORNSTEIN:**  Sure, Your Honor.  So if there are

7   documents that relate to Android app distribution and to the

8   Google Play Store, those are things that we want.

9        We don't want documents that are solely about search,

10  documents that are solely about advertising.  Those are not

11  documents we're looking for, and they're not documents we asked

12  for in our RFPs, by and large.

13       So what we're --

14       **THE COURT:**  Now, what -- are you asking your

15  colleagues at the states to just turn these over to you?  Or

16  are you asking Google to turn them over to you?

17       **MR. BORNSTEIN:**  Well, we're asking Google to do it,

18  Your Honor.  I don't think the states could go ahead and do it

19  without Google's permission, as I understand the state of

20  play, and various confidentiality restrictions and so forth.

21  So while I might want the states to do that, I don't think

22  that is the proper path.  I think we need to go through

23  Google.  And that's what we've -- we've tried to do.

24       **THE COURT:**  Well, if you served RFPs on Google,

25  what's the problem?

1          **MR. BORNSTEIN:**  Google has refused to produce in

2    response to those RFPs, Your Honor.  Google did not tell us

3    that this investigation existed, and did not produce the

4    documents that were produced to the states.

5          We have been asking, since the states filed their

6    complaint and we discovered these documents that had not

7    previously been given to us, we've been asking Google to

8    produce them.  We didn't really get any substantive answer or

9    any proposal for about two months, until the joint statement

10   for this --

11         **THE COURT:**  Well, here's what I'm not understanding.

12   I mean, you're not asking -- you don't have an RFP to the

13   effect of:  Give us everything you gave the states.  Right?  I

14   mean, you didn't say that.

15         **MR. BORNSTEIN:**  We do, Your Honor.  We do have that

16   RFP.  It's No. 2.

17         **THE COURT:**  But you have the substantive RFP saying

18   any documents related to -- what was it?  Android Play Store?

19         **MR. BORNSTEIN:**  Well, we have a number of substantive

20   RFPs as well, Your Honor.  But we do have an RFP asking

21   specifically for the documents that were produced in response

22   to any investigation on these issues.  That was the RFP

23   pursuant to which we ultimately addressed --

24         **THE COURT:**  Here's what I'm trying to get at in a

25   rather ham-fisted way.  If you ask all of these individual

1   inquiries specific to Android and Play Store, you're going to

2   capture everything relevant in the state documents anyway.

3   Right?

4           MR. BORNSTEIN:  I don't think so.

5           THE COURT:  What are you going to miss?

6           MR. BORNSTEIN:  I don't think that's right,

7   Your Honor, for the following reason.  Number one, we didn't

8   get -- we didn't get everything that's been produced so far.

9       Second, there are custodians from whose documents there

10  were productions to the states that are not custodians in our

11  RFPs.  There is a date range that's at issue that's outside of

12  our date range.

13      And I guess the other thing, Your Honor, is --

14          THE COURT:  Before we get to that, just to jump in,

15  you may have substantive requests that are beyond the

16  custodians you've agreed to, and outside the date range of

17  materials produced.  So that's why you wouldn't have

18  (Inaudible) at the state level.

19          MR. BORNSTEIN:  That's correct, Your Honor.  And we

20  are going to be litigating, I hope, you know, arm in quite

21  cooperatively with the state plaintiffs, and they're going to

22  have access to documents we don't have access to that are

23  relevant.  We have a coordination order that the Court has

24  entered.

25      I think it just makes sense for us to have access to the

same documents, as to which there can be no privilege issue and

no burden issue in turning them over.

**THE COURT:** All right. Well, Mr. Rocca, it seems

like something that can be worked out.

**MR. ROCCA:** Absolutely, Your Honor. And I'm pleased

to report, there's common ground here. That's precisely what

we suggested yesterday. Google is willing, consistent with

the Court's prior guidance, in the House Judiciary Committee,

to produce relevant documents that are included in these

repositories we've identified related to Google Play and

related to Android app distribution. And we laid out how, how

we were planning on doing that.

We are fully committed to getting the plaintiffs the

relevant documents they need. We're ready to start that

process. And we -- and I think, I think -- I'm pleased to hear

Mr. Bornstein's perspective on it. And I think there's common

ground; we're ready to go.

**THE COURT:** So there's no problem, then? What I'm

hearing? We're all good?

**MR. BORNSTEIN:** I would respectfully disagree with

that, Your Honor. We did finally, yesterday, get another

proposal on the eve before this conference. But that proposal

now, you know, two months in, is that they will produce from

some unspecified set of custodians in response to two CIDs

that they have received from the state that they won't share

 1   with us, without telling us what the other CIDs are, without

 2   telling us which custodians they won't produce from.

 3       It's a very inchoate at this point proposal that leaves a

 4   lot of discretion to Google to narrow the scope of the

 5   documents that we'll receive, and gives them the opportunity

 6   then to prevent us from, you know, using all the same documents

 7   that the states have.  Unless, I suppose, the states were to go

 8   to Google and say, you know:  We want to use this document at

 9   deposition, and, you know, now you know that we're going to use

10   this document, it's going to be extraordinarily cumbersome and

11   unfair for the plaintiffs' side.

12           **THE COURT:**  All right.  Mr. Rocca, what's the answer

13   to that?

14           **MR. ROCCA:**  Your Honor, the answer is clear.  I Made

15   it crystal clear yesterday in our meet-and-confer that we were

16   committed to being transparent as to the custodians that we're

17   producing from.  And I described that the set of custodians

18   would include those custodians who work in the Google Play

19   Android business unit.  Which is broader than the set of

20   custodians we laboriously negotiated in this case.

21       So they're getting more custodians, because those

22   productions to the states in connection with the search

23   investigation which is a separate case, in connection with the

24   Ad Tech investigation -- again, a separate case -- are broader

25   than the MDL custodians.

1          So we're committing to search for documents, using the

2     agreed-upon search terms, from custodians that are in the

3     Android and Google Play business unit, and to produce

4     responsive documents as we've done for all other discovery

5     protocols in this case.

6          THE COURT:  Let me ask you this.  Is that going to

7     capture all the responsive documents produced to the states?

8          MR. ROCCA:  It is -- um, well, Your Honor, when

9     you're talking about literally millions and millions of pages

10     of documents, I can't -- I can't today tell you that there's

11     not going to be a stray document that --

12          THE COURT:  Oh, no, I understand.

13          MR. ROCCA:  Yeah.

14          THE COURT:  But your colleague is saying there's a

15     whole different cast of people, and maybe different date

16     ranges.  So you're telling me that won't be an impediment to

17     the plaintiffs.

18          MR. ROCCA:  The date ranges are not an issue.  We're

19     not going to implement date-range restrictions.  We're going

20     to run the same set of search terms that we've run, which we

21     talked with Your Honor a lot before; they're a very lengthy

22     list, a very comprehensive list.  We'll run those search terms

23     against custodians in those databases who are connected to the

24     Android and Google Play business unit, which is what this case

25     is about.

1    And obviously, there's a massive amount of irrelevant

2    information in the search context, in the Ad Tech context that

3    that would hopefully not capture.  The goal is to find the

4    stuff that is relevant here.  Fully committed to doing that.

5    And if the states during the course of the case,

6    Your Honor, have any issues at all and they say, "Hey, you

7    might have missed a category" or "Here's a document," we will

8    get that document into this case so the parties can use it.

9    That's my commitment.

10           **THE COURT:**  Okay, thank you.

11    Before we get back to Mr. Bornstein, Ms. Blizzard, I mean,

12    the states are agnostic.  They're happy to do anything.  Right

13    you're not going to -- there's no independent reason why the

14    states would want to fold on any of that, is there?

15           **MR. SONNENREICH:**  Your Honor, to address that issue,

16    I --

17           **THE COURT:**  Oh, okay.

18           **MR. SONNENREICH:**  Yes.  Basically that's true, but

19    with certain exceptions.  The main exception is this.

20    We were not a party to nor should we be a party to the

21    negotiation over search terms and custodians.  We were given

22    documents and a response by Google, which I won't get into

23    unless we need to.  And we believe we're entitled to use any

24    documents in our investigation which did, in fact, focus in

25    part on Play Store in-app billing.

1          **THE COURT:**  You mean the states.

2          **MR. SONNENREICH:**  Right.  The states.  In other

3     words, we're not limited by a set of search terms that now are

4     negotiated between the other plaintiffs and Google.  Anything

5     in our investigative file that was given to us by Google, we

6     can use in this case.

7          **THE COURT:**  Well, I think that's the issue.  So the

8     non-state plaintiffs want to catch up.  That's what we're

9     talking about.

10          **MR. SONNENREICH:**  Right.  But in other words,

11     whatever set of documents they and Google agree are the right

12     set of custodians to look at, if we find other documents, we

13     believe we're free to share them with the other plaintiffs and

14     use them in the case.  And we can't necessarily give those

15     documents to Google in advance, because we may be using them

16     for impeachment or other purposes.  Such as to compare them --

17          **THE COURT:**  Let me just jump in.

18          I thought Mr. Bornstein told me that your hands are tied

19     and he couldn't get them from you.  Are you saying differently?

20          **MR. SONNENREICH:**  That depends.  You can certainly

21     order us to provide access.  There's no question about that.

22     There's a debate with Google about the degree to which we can

23     use our investigative materials, when and how.  But the

24     states' position is that it is unlimited.  We have these

25     materials; we've obtained them in the investigation.  That it

1    covered these matters; it also covered other matters.  Those

2    other materials may not be relevant; we wouldn't use them,

3    therefore.

4         But to the extent --

5              **THE COURT:**  Let me jump in.

6         Mr. Rocca, that may be Mr. Sonnenreich -- I mean,  he's

7    proposing, you know, they have a state library, so to speak,

8    and he's proposing to give full check-out privileges to the

9    other plaintiffs.  That way you don't have to pay any money;

10   you don't have to do anything.  It's all right there; it's

11   between the states and the plaintiffs; it's cost-free to

12   Google.  Sounds like a pretty good plan.

13        What do you think about that?

14             **MR. ROCCA:**  Your Honor, that plan would mean that all

15   of the plaintiffs in this case would have access to literally

16   millions of pages of documents that are completely irrelevant,

17   that relate to matters that are -- that are being handled in a

18   separate MDL in New York, that are being handled in a

19   litigation in D.C.

20        We should be producing relevant documents, which is

21   precisely what Mr. Bornstein asked a moment ago, which is what

22   the meet-and-confer position has been throughout, and which is

23   what Your Honor ordered in connection with the House Judiciary

24   report.

25        So all we're asking to do is to let us produce responsive

1   documents.  We are absolutely committed to working with

2   Mr. Sonnenreich and Mr. Glackin, his new colleague, and

3   producing anything in this case that gets lost in the shuffle.

4   In big document productions, that may happen.

5       But, bottom line is we want to produce relevant documents.

6   And we want to get that process going.  Same search terms.  We

7   won't limit it to date ranges.  And we'll look at the

8   custodians that relate to Android and Google Play.  Perfectly

9   reasonable position.

10      And it doesn't seem right to just say:  Well, Google is

11  going to produce -- or the states will make available a massive

12  investigatory file that relates to Google Search and

13  advertising technology.

14          **THE COURT:**  Well, how about that, Mr. Sonnenreich?

15  Can you wall off -- I don't know, I guess, I'm not sure what

16  the other cases are -- maybe the ad placement litigation or

17  the other -- can you wall that off, and just stick to Play

18  Store?

19          **MR. SONNENREICH:**  Here's the problem, Your Honor,

20  with that.  First of all, we're not necessarily suggesting

21  that we have to give access to the entire database to all the

22  plaintiffs.

23      What we're saying is should Google turn over a set of

24  documents, based on an agreement with other plaintiffs as to

25  custodians and search terms, and should we find other documents

1  in our database that didn't get turned over, we don't -- we

2  believe we are free to use those documents.  They are in our

3  files right now.  And if we were the only litigants, we

4  wouldn't have any issue.  Not that we would turn over the key

5  to the database to everybody, although we could do that.  It

6  would certainly simplify things.

7       To clarify what happened here, though, and why this is the

8  position the states are taking -- Mr. Rocca, do you have an

9  objection if I read one of the requests from our CID and sort

10 of the response to that request?

11      **MR. ROCCA:**  Well, I don't know what you're going

12  read, David, and I feel uncomfortable.  I mean, state law

13  protects what you're about to read, is my understanding.

14      What I think you're going to say -- well, I don't know

15 what your main point is.  But I thought you were going to say

16 that Google produced documents, like you normally do --

17      **THE COURT:**  Let me just jump in.

18      I think you all need another week to talk about this.

19 Okay?  I've been sensitized to the issues.  I want you all to

20 get together, just spend one more week.  Mr. Sonnenreich, you

21 need to be at the table --

22      **MR. SONNENREICH:**  Of course.

23      **THE COURT:**  -- if you're going to be the state

24  representative.  My preference would be for you to work

25  something out, as always.  If you don't, the old judge is

1    going to come in with a buzzsaw.  So that's just the way it

2    goes.  So try to work it out.

3        And it seems to me that the path of least resistance is

4    making portions of the documents in the state possession --

5    states' possession available.  That way, Google doesn't have to

6    pay for anything, and you don't have to put all that time in

7    reviewing it, I don't have to hear about mystery custodians and

8    date ranges and everything else.

9        If you can't do it, that's fine.  We'll work it out.

10   That'll just be a little bit more cumbersome.

11       But how about another week?  Is that going to be enough

12   time, Mr. Bornstein, to get together with everybody?

13           **MR. BORNSTEIN:**  Your Honor said one week?  I think

14    that should be fine.  Yes.

15           **THE COURT:**  Mr. Sonnenreich, are you okay with that?

16           **MR. SONNENREICH:**  I would ask for the following

17    Monday.

18           **THE COURT:**  You mean this coming Monday?

19           **MR. SONNENREICH:**  No, a week from, Your Honor.

20           **THE COURT:**  Oh, all right.  So just a week from the

21    coming -- okay, that's fine.  Mr. Rocca, are you okay with

22    that?

23           **MR. ROCCA:**  Yeah.  Your Honor has set a deadline for

24    the case schedule.  How about on the same day, we just submit

25    a separate --

1          **THE COURT:**  Oh, I think this is a separate issue.  I

2     don't want to wait that long.

3          **MR. ROCCA:**  Very well, Your Honor.

4          **THE COURT:**  So just get -- you know, every day of

5     discovery delay is a day someone's going to come back to me

6     and say we can't go to trial.  And I don't want to do that.

7     So this is an imminently solvable issue.

8          So a week from Monday -- you can beat the deadline.

9     That's just an outer boundary.  You can always beat the

10    deadlines.  But a week from Monday, send me a discovery letter.

11    If everything's good, you don't have to send me anything.

12    That's fine.  Silence I will interpret as you've reached a

13    solution.

14         If you haven't, just send me a letter.  And please, if you

15    do send me a letter, just give me a specific proposal.  All

16    right?  I mean, really down to the details.  "We want..."  If

17    you can't reach a deal and you want to go through Google, for

18    example, I want to know who exactly, what custodians, what date

19    range.  You know, what searches do you want to run and you've

20    already asked.  Not -- not -- not -- you know, just by request

21    number or something.  Maybe, maybe that might be too much.

22         And then if you have reached a deal with the state -- or

23    you want to go through the states and you can't decide, you

24    know, send a proposal on how you're going to make the state

25    side work.  I mean, you know, millions and millions of

1   documents is not going to be good for anybody.  And if they're

2   all off point -- I understand what Google's saying; there's not

3   no need to disgorge all that.  So you should be able to work

4   something out.

5          **MR. BORNSTEIN:**  Your Honor, we will endeavor to do

6    that.

7       I'll just flag one of the issues is we don't know who the

8   custodians are who are included in the production to the

9   states.  We've asked for that information.  We haven't gotten

10  a --

11         **THE COURT:**  I thought Mr. Rocca told you who they

12   were.  Is that not right?

13         **MR. BORNSTEIN:**  He has not.

14         **THE COURT:**  Oh.  Mr. Rocca, I thought -- maybe I

15  misunderstood you.  I thought you said you proposed the

16  custodians.

17         **MR. ROCCA:**  Your Honor, I proposed the categorization

18   of Android and Google Play, and committed on our

19   meet-and-confer yesterday that we would be fully transparent

20   in identifying who those custodians, are and what search terms

21   we would run, which, we agreed to run all search terms.

22      So let's -- we'll meet and confer about it and update the

23   Court.

24         **THE COURT:**  So to my ear, that means you will hear

25   the names, Mr. Bornstein.  I don't know if that -- I mean --

1      **MR. BORNSTEIN:**  Well, we'll --

2      **THE COURT:**  I don't know if knowing the names is

3   going to help you that much, but you'll at least know who they

4   are.

5      **MR. BORNSTEIN:**  Well, we'll know who the ones are

6   that we're getting.  We won't know the one who are being

7   excluded.  For example, Mr. Rocca continues to say "the

8   business units."  We don't know if that means they're going to

9   give us the C-suite of individual who are involved in

10   overseeing this.  We don't know who else is going to be

11   excluded who is already a custodian in the state process.

12      **THE COURT:**  All right.  Those are good questions to

13   discuss in the next week or so.

14      Okay.  Is there anything else?

15      Yes?

16      **MR. SONNENREICH:**  Your Honor, if I may?

17      **THE COURT:**  Yes, please.

18      **MR. SONNENREICH:**  And that is that we may not --

19   sorry.

20      **THE COURT:**  Please.  Yeah.

21      **MR. SONNENREICH:**  Thank you.  As a practical matter,

22   if I may, we may not make much progress if we can't share our

23   CIDs with counsel and the responses Google made to the CIDs.

24   Because it's hard to start a discussion about what did the

25   states get without knowing what the states asked for.

1     **THE COURT:**  How about this.  This is all off the

2     record; it's all between friends.  You can put it under the

3     protective order, if you want.  You know, the discussion.  How

4     about that?

5          But Mr. Sonnenreich, you just want to share, like, a

6     handful of exemplars.  Right?

7          **MR. SONNENREICH:**  I want to tell them what we asked

8     for and how Google responded, so they can see what set of

9     documents Google said might be responsive.

10          **THE COURT:**  All right.  Well, Mr. Rocca, any problem

11     with that?

12          **MR. ROCCA:**  Well, we're agreeing to provide relevant

13     documents.  And I don't -- the CID doesn't define what's

14     responsive in this case.  I don't know what that exercise --

15     it's not going to match up.  We run -- we're going to run the

16     search terms that we agreed to in this case against the entire

17     database.

18          I mean, of course, we'll do what the Court directs.  I

19     just don't see why all of the requests about search and Ad Tech

20     and -- that that gets us anywhere, other than --

21          **THE COURT:**  Listen.  Mr. Sonnenreich, you can cut out

22     the Ad Tech and search term, right?

23          **MR. SONNENREICH:**  I just want to be able to share the

24     requests that I think may be relevant to this case with the

25     other counsel, and the responses Google gave us --

1          **THE COURT:**  Yes.

2          **MR. SONNENREICH:**  -- to those requests so they know

3     the universe that they said that the documents were that were

4     responsive among those we have.

5          **THE COURT:**  Let's just set that as a benchmark.  It's

6     not going to be every CID ever asked of Google.  Just be the

7     ones that the states make a first cut in their good judgment

8     about what may be relevant.

9          And you all can look at them and, you know, if you want to

10    put that discussion under some confidentiality agreement,

11    that's fine.  This is all discovery, so you're outside the

12    compelling circumstances test, as you know.

13         Okay.  Anything else for today?

14         Mr. Sonnenreich, I'll just leave it up to you to work with

15    your colleagues on how to share all that.

16         Okay, someone else was saying something.  Ms. Giulianelli?

17         **MS. GIULIANELLI:**  Yes, Your Honor, we do have

18     something.

19         We think that we have a dispute that is now ripe, and we

20    wanted to let Your Honor know that we will be submitting in the

21    next couple of days we believe, a discovery letter per the

22    protocol.  It relates to source code.

23         We've had many meet-and-confers with Google, and we were

24    not able to put it in the joint case-management statement

25    because on Friday after we submitted it, we got a letter from

1  Google in response to a couple of other letters that we sent

2  about the source code and why we need certain targeted areas,

3  making clear that we are, I believe, in fact at an impasse on

4  this issue.

5       So we're happy to tell you a little bit about it, but we

6  are willing -- you know, we're ready to submit a letter for

7  the --

8       **THE COURT:**  Tell you what.  Just - I will regret

9  this, but just very briefly, just give me some indication of

10  what the issue is.  And then I'll wait on your letters before

11  deciding.

12      Go ahead, Ms. Giulianelli.

13      **MS. GIULIANELLI:**  Sure.  So the issue is we have

14  certain very targeted categories of source code that we need

15  that relate to things such as Google's process for identifying

16  potentially harmful acts, or the in-app purchase, you know,

17  the in-app purchase software.

18      And --

19      **THE COURT:**  You need --

20      **MS. GIULIANELLI:**  We need the source code to see how

21  Google is implementing certain security procedures, to see,

22  one, whether it's erecting technological barriers that are

23  unnecessarily restrictive.  One thing that we need to show as

24  part of the rule of reason.  And you know, the

25  unnecessarily-blocked competing applications in stores, such

1    as some of the allegations that we have in the complaint, like

2    its behavior with Amazon and sideloading and others.

3        So we have asked Google for the last couple of months for

4    some targeted areas of source code that we need -- our

5    technical expert has identified that we need.  We've provided a

6    couple of letters explaining in detail for each category why we

7    believe it is relevant and, and we need it.

8        I think Google disagrees.  That's been clear on the

9    meet-and-confers.  And, and Google also has raised issues

10   about, you know, the sensitivity of the code.

11       So we would like both to -- to get some resolution on the

12   need for the code, the fact that it's relevant, and then a

13   potential way to deal with a protective order targeted, because

14   we believe that Google --

15           **THE COURT:**  Well, I have an idea for that.  I'll tell

16   you what I've done with source code in other cases.

17       Before I do that, are you talking about a handful of

18   lines?  Or thousands of lines?  Or millions of lines?

19           **MS. GIULIANELLI:**  Your Honor, I can't say how many

20   lines at the moment.  But we're talking about a -- it'll be

21   more than a handful of lines.  Probably less than millions.

22   But we will give you exactly what we're talking about in

23   detail.  We've identified the categories of code that we want.

24           **THE COURT:**  I mean, you know, the smaller the number

25   of lines, I think the better we'll be.

1      I understand what you're asking.  This seems like, you

2  know, a couple of depositions and some other discovery might be

3  enough, but I don't know.  But I'm not going to say no at this

4  point.  Not saying yes, either.

5      But before you send me your letters -- did you already

6  send them?

7          **MS. GIULIANELLI:**  No.  We just wanted to notify

8  Your Honor that --

9          **THE COURT:**  Here's an idea.  Before you send the

10  letters, here is an idea.  And I've done this successfully in

11  other cases.  Source code can be sensitive to a (Inaudible)

12  platform like Google and all the dangers in the cyber world

13  these days.

14      You could have, you know, one expert go in and review the

15  source code, you know, at a Google-secure facility.  No copies

16  made, no downloads, made but just review the source code and,

17  you know, base an opinion on that.  It should be relatively --

18  you know, I say this glibly, slightly, but it should be

19  relatively easy for a computer scientist to look at the source

20  code and conclude whatever it is, you know, you want to test.

21      So you could just, you know, set up a terminal somewhere

22  in a secure facility.  Nothing goes in, nothing goes out,

23  source code's reviewed.  That's only going to work if it's a

24  reasonable amount.  It should be a reasonable amount.  Source

25  code -- this is not a trade secrets or copyright case, so it

1    shouldn't be that much.

2        So that's -- before you do that, maybe just talk about

3    that, as a potential compromise, okay?  And then if that

4    doesn't solve all your problems you can send me a letter.  How

5    about that?

6            MS. GIULIANELLI:  Thank you, Your Honor.  We'll

7    confer with our experts.  And we appreciate the guidance.

8            THE COURT:  Is that okay, Mr. Rocca, as a discussion

9    point?

10           MR. ROCCA:  Indeed, Your Honor.  Thank you for the

11   guidance.

12           THE COURT:  Okay, all right.  Last call for today.

13   Anything else?

14       (No response)

15           THE COURT:  No.  Good.  Okay.  And, I guess we'll

16   just plan on our regularly-scheduled meeting.  And if anything

17   changes, you can just let me know.  Otherwise, I'll see you in

18   about four weeks.

19           MR. BORNSTEIN:  Thank Your Honor.

20           MR. ROCCA:  Thank Your Honor.

21           THE COURT:  Okay.

22           MR. GLACKIN:  Thank Your Honor.

23       (Proceedings concluded)

24

25

**<u>CERTIFICATE OF REPORTER</u>**

I, BELLE BALL, Official Reporter for the United States

Court, Northern District of California, hereby certify that the

foregoing is a correct transcript from the record of

proceedings in the above-entitled matter.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Sunday, September 12, 2021