# Morgan Lewis

**Brian C. Rocca**
brian.rocca@morganlewis.com

May 12, 2021

The Honorable James Donato
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.)

Dear Judge Donato:

Defendants (collectively, "Google") respectfully oppose Plaintiffs' motion to compel production of discovery from an unrelated tort case ("cloned discovery") previously pending in state court in New York, *Callsome Solutions, Inc. v. Google, Inc.*, No. 652386/2014 (N.Y. Sup. Ct.).

Plaintiffs' Request for Production No. 204 demands documents produced in *Callsome*, which is on top of their **203 other requests for production (over 400 including subparts)**.  In response to those 203 requests, the Parties have already negotiated the scope of review of 24 Google custodians and millions of documents.  Google is also responding to a multitude of requests for documents and data from centralized storage locations and databases targeting substantive topics.  Consequently, Google's objection to Plaintiffs' demand for cloned discovery from an entirely separate litigation is not to avoid meeting any disclosure obligation or to deny Plaintiffs full access to discovery, but for three concrete reasons:

- *First*, "[a]sking for all documents produced in another matter is not generally proper," and requests for cloned discovery should be denied.  *Goro v. Flowers Foods, Inc.*, No. 17-cv-02580-JLS-JLB, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 4680242, at *1-2 (N.D. Cal. Oct. 18, 2017) (denying request for cloned discovery).

- *Second*, the tort and libel claims alleged in the *Callsome* litigation arising from Google's decision to send warning notices to apps containing a single plaintiff's Software Development Kit ("SDK") from Google Play have no bearing on the antitrust claims relating to app distribution and in-app billing policies in this litigation.  As such, cloned discovery from *Callsome* is not a proper subject of discovery under Rule 26(b)(1).

- *Last*, Plaintiffs cannot abruptly reverse their position on whether search and ads are relevant in this litigation.  In an attempt to manufacture relevance to the antitrust claims in these litigations, Plaintiffs claim that Google "squash[ed] Callsome's [SDK] due to its use of competing search functionality and a competing ad network," yet they had previously asserted before the Judicial Panel on Multidistrict Litigation ("JPML") that Google's conduct with respect to "general search services, search advertising, and general search text advertising" "bears little resemblance" to the issues before this Court.

**Morgan, Lewis & Bockius LLP**
San Francisco, CA  94105-1596
United States
☎ +1.415.442.1000
📠 +1.415.442.1001

### I. Plaintiffs' Request for Cloned Discovery Is Improper

"'[C]loned discovery,' requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case." *King Cnty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (citation omitted).

There are two reasons for this straightforward rule. *First*, the party seeking to compel discovery bears the initial burden of establishing that its request is relevant and proportional to the needs of the case. *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13–CV–04057–BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016); *Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897, 2014 WL 1510884, at *3 (N.D. Cal. Apr. 1, 2014). But parties seeking cloned discovery cannot meet their initial burden, as they are "not in a position to even know what they are actually asking for." *Goro*, 2019 WL 6252499, at *18. *Second*, cloned discovery compels duplicative searches for responsive documents *and* documents produced in another litigation, and is thus "definitionally unduly burdensome." *Id.*

*Volkswagen* is instructive. There, plaintiffs in a shareholder suit sought to compel Volkswagen to turn over its MDL class action production to them. The Court denied the plaintiffs' motion and held they "must comply with the Federal Rules by serving Volkswagen with requests for production, which 'must describe with reasonable particularity each item or category of items to be inspected.'" *Volkswagen*, 2017 WL 4680242, at *1 (quoting Fed. R. Civ. P. 34(b)(1)(A)). The Court further explained that the plaintiffs were "not entitled to complete access to the MDL Production simply because there may be an overlap between their claims and those in the consolidated consumer class action." *Id.* at *2.

Such discovery is thus improper even if "there may be an overlap between" the two cases. Here, nothing about the fact that Google produced or received discovery in connection with the tort and libel claims at issue in *Callsome* is relevant to this litigation. Indeed, Plaintiffs do not assert that "***the fact that*** particular documents were produced [in *Callsome*]" is relevant to their claims here. So the demand fails at the threshold.

Moreover, Plaintiffs have already requested voluminous relevant information through negotiations in which Google agreed to run an onerous list of search terms against data from numerous custodians over a 12-year period, resulting in a robust review of documents relevant to ***this*** case. Plaintiffs provide no evidence or argument that they will not obtain the relevant discovery they need from their other 203 document requests. Plaintiffs' request for cloned discovery is thus improper and should be denied. *See Goro*, 2019 WL 6252499, at *19; *Volkswagen*, 2017 WL 4680242, at *2.

### II. The *Callsome* Materials Are Neither Relevant to Any Claim or Defense in this Litigation nor Proportional to the Needs of this Case

Under Rule 26(b)(1), discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, . . . ." Where "the requested discovery is not relevant to any claim or defense," a motion to compel must be denied. *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 WL 5106707, at *2 (N.D. Cal. Aug. 31, 2020) (denying motion to compel); *see also Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YFR (TSH), 2020 WL 7779017, at *3 (N.D. Cal. Dec. 31, 2020) (denying motion to compel production of documents concerning non-U.S. activities for lack of relevance).

Here, Plaintiffs have not met their burden of demonstrating the *Callsome* materials are relevant and that their production is proportional to the needs of this litigation. *Gilead*, 2016 WL 146574, at *1;

*Ellis*, 2014 WL 1510884, at *3.  The *Callsome* materials are irrelevant because in that case, the plaintiff brought state law tort and libel claims against Google for allegedly interfering with its business by issuing suspension warning notices to app developers who had integrated Callsome's SDK into their apps, which led app companies to remove the SDK.  *Callsome* Compl. ¶¶ 1, 38, 42.  Callsome claimed that Google falsely asserted that the SDK violated Google's developer policies because it presented ads to consumers that interfered with other apps and their ads, and because it displayed interstitial ads inside other apps.  *Id.* ¶¶ 52, 56, 60-62.  Callsome thus asserted claims for (i) tortious interference with its contracts with StartApp and app developers, (ii) tortious interference with its prospective relationship with two other companies to integrate its SDK, and (iii) trade libel.  *Id.* ¶¶ 66-100.

By contrast, Plaintiffs claim here that Google has monopolized alleged markets for Android app distribution and in-app payment processing.  Epic Compl. ¶ 3; Developer Compl. ¶ 3; Consumer Compl. ¶ 4.  There is no factual overlap because *Callsome* did not relate to whether Google had monopoly power or suppressed competition with respect to Play or in-app payments, but rather the legitimacy of Google's justifications for removing apps containing Callsome's SDK--in other words, whether a single app developer's SDK violated Google's ad policies for developers.  Whether Google was justified under its policies has no relationship to whether Google has monopoly power or engaged in exclusionary conduct with respect to Android app distribution or in-app payments.  The mere fact that Callsome disagreed with Google's decision does not change the analysis; as this Court held in *Gilead* where it denied a discovery request for lack of proportionality, "[i]t would be like requiring GM to produce discovery on Buicks and Chevys in a patent case about Cadillacs simply because all three happen to be cars."  2016 WL 146574, at *2.  Nor is there any legal overlap between *Callsome* and this litigation, which involve entirely different material elements that do not depend on any common proof or common nucleus of operative facts.  Accordingly, the Court should deny Plaintiffs' request to compel production of the *Callsome* materials for lack of relevance and proportionality.

### III. Plaintiffs' Relevance Argument Attempts to Rewrite Their Complaints and Is Contrary to Their Representations Before the JPML

Plaintiffs attempt to rewrite their complaints to allege that Google abused monopoly power in Android app distribution to harm competition in that market "and adjacent markets."  Letter Br. 3.  But Plaintiffs never refer to "adjacent markets" in their complaints, nor do they present any claims that Google harmed competition in alleged markets beside Android app distribution and in-app payments.  They cannot assert relevance based on a theory and claims that appear nowhere in their complaints.  Moreover, Plaintiffs represented before the JPML that the D.C. Government Action, which alleged that Google harmed competition in markets for "general search services, search advertising, and general search text advertising," "bears little resemblance" to the issues before this Court.  Joint Resp. 17, *In re: Google Inc. Antitrust Litig.*, MDL No. 2981 (J.P.M.L. Nov. 27, 2020), ECF No. 3717.  Judicial estoppel principles disfavor permitting Plaintiffs to contradict their position before the JPML, which the panel accepted in denying consolidation with the Government Action.  *See Morales v. Ocwen Loan Servicing, LLC*, No. 3:17-cv-00979-JD, 2018 WL 3093440, at *2 (N.D. Cal. June 22, 2018) (Donato, J.) ("Judicial estoppel operates to 'bar litigants from making incompatible statements in two different cases.'") (citation omitted)).

Plaintiffs also incorrectly assert that the factual circumstances concerning Google's enforcement action against apps incorporating Callsome's SDK support their allegations here.  Letter Br. 4.  Callsome noted in passing in the complaint that its SDK used Yahoo search (allegedly powered by Microsoft Bing's search engine), but Callsome *never* alleged that Google removed apps containing Callsome's SDK to harm competition from another search engine.  Regardless, Plaintiffs here do not challenge Google's conduct with respect to any alleged internet search markets.

3

Last, the fact that the majority House Judiciary Committee report mentions Callsome's belated belief that "it was banned because of its partnership with StartApp, which--at the time--was widely considered a nascent but rising rival to Google in the Russian search market" is irrelevant.  U.S. House of Representatives, Committee on the Judiciary, Majority Staff Report and Recommendations 222 (2020).  Again, none of the claims or defenses in this litigation have anything to do with alleged search markets (in Russia or otherwise).

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

Respectfully submitted,

_____
Brian C. Rocca
*Attorneys for Defendants*