Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

IN RE:  GOOGLE PLAY STORE             )
ANTITRUST LITIGATION                  )No. 21-2981 JD
                                      )
_____)San Francisco, California
                                       Thursday, December 16, 2021


**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff Epic Games:**
                         CRAVATH SWAINE AND MOORE LLP
                         825 Eighth Avenue
                         New York, New York 10019
                    BY:  **LAUREN ANN MOSKOWITZ, ESQ.**



**For the Consumer Class Plaintiffs:**
                         KAPLAN FOX AND KILSHEIMER LLP
                         850 Third Avenue
                         14th Floor
                         New York, New York 10022
                    BY:  **HAE SUNG NAM, ESQ.**



                         BARTLIT BECK LLP
                         1801 Wewatta Street
                         Suite 1200
                         Denver, Colorado 80202
                    BY:  **KARMA MICAELA GIULIANELLI, ESQ.**


                **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*    **Debra L. Pas, CSR 11916, CRR, RMR, RPR**
                  *Official Reporter - US District Court*
                  *Computerized Transcription By Eclipse*

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

```
 1   APPEARANCES:   (CONTINUED)

 2   For the Developer Class Plaintiffs:
                         HAUSFELD LLP
 3                       1700 K Street NW
                         Suite 650
 4                       Washington, DC 20006
                     BY: MELINDA R. COOLIDGE, ESQ.
 5

 6                       SPERLING & SLATER P.C.
                         55 West Monroe Street
 7                       Suite 3200
                         Chicago, Illinois 60603
 8                   BY: EAMON P. KELLY, ESQ.

 9
                         HAGENS BERMAN Sobol SHAPIRO LLP
10                       715 Hearst Avenue
                         Suite 202
11                       Berkeley, California 94710
                     BY: BEN HARRINGTON, ESQ.
12

13   For State of Utah:     OFFICE OF THE UTAH ATTORNEY GENERAL
                         160 East 300 South
14                       5th Floor
                         Salt Lake City, Utah 84114
15                   BY: BRENDAN P. GLACKIN, ESQ.

16
17   For Defendants:        MORGAN LEWIS & BOCKIUS LLP
                         One Market Street
                         Spear Street Tower
18                       San Francisco, California 94105
                     BY: BRIAN C. ROCCA, ESQ.
19

20                       O'MELVENY & MEYERS LLP
                         1625 Eye Street, N.W.
21                       Washington, DC 20006
                     BY: BENJAMIN G. BRADSHAW, ESQ.
22

23                       MUNGER TOLLES & OLSON LLP
                         350 South Grand Avenue
24                       Fiftieth Floor
                         Los Angeles, California 90071
25                   BY: GLENN D. POMERANTZ, ESQ.
```

| | |
|---|---|
| 1 | **Thursday - December 16, 2021**                    **11:04 a.m.** |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling multi district litigation |
| 5 | 21-2981, In Re Google Play Store Antitrust Litigation. |
| 6 | Counsel for the plaintiffs, please state your name for the |
| 7 | record. |
| 8 | **MS. NAM:**  Good morning.  Hae Sung Nam, Kaplan Fox, |
| 9 | for the consumer plaintiffs. |
| 10 | **MS. GIULIANELLI:**  Karma Giulianelli from Bartlit Beck |
| 11 | also for the consumer plaintiffs. |
| 12 | **MR. GLACKIN:**  Brendan Glackin from the Office of the |
| 13 | Attorney General of the State of Utah.  I'm representing the |
| 14 | State of Utah in the multi state. |
| 15 | **MS. MOSKOWITZ:**  Good morning, Your Honor.  Lauren |
| 16 | Moskowitz from Cravath, Swaine and Moore on behalf of Epic |
| 17 | Games. |
| 18 | **MS. COOLIDGE:**  Good morning.  Melinda Coolidge behalf |
| 19 | of developer plaintiffs. |
| 20 | **MR. KELLY:**  Good morning, Your Honor.  Eamon Kelly |
| 21 | also on behalf of the developer plaintiffs. |
| 22 | **MR. HARRINGTON:**  Ben Harrington of Hagens Berman also |
| 23 | for the developer plaintiffs. |
| 24 | **THE COURT:**  Okay.  Who is next?  Defendants. |
| 25 | **MR. ROCCA:**  Thank you, Your Honor.  It's Brian Rocca |

 1 | of Morgan Lewis representing Google defendants.

 2 |     I have two colleagues joining me today, one of whom is

 3 | making his first appearance.  Mr. Pomerantz and his colleagues

 4 | at Munger Tolles recently joined the MDL party on the Google

 5 | side, and I'd like to introduce Mr. Pomerantz first.

 6 |     **MR. POMERANTZ:**  Good morning, Your Honor.  It's nice

 7 | to join this case team.

 8 |     **MR. BRADSHAW:**  And good morning, Your Honor.  Ben

 9 | Bradshaw from O'Melveny and Meyers also for the Google

10 | defendants.

11 |     **THE COURT:**  Okay.  Well, let's dive in.  Let's just

12 | consider, Defendants, are there objections to amending the

13 | developer and consumer complaints; right?

14 |     **MR. POMERANTZ:**  We don't have any objections

15 | providing that the discovery milestones that had been agreed

16 | upon are part of the overall agreement.  With that one

17 | qualification, we have no objection.

18 |     **THE COURT:**  Okay.  Consider those granted.  So go

19 | ahead and -- you have to file them as new ECF entry, so just do

20 | that.

21 |     **MR. POMERANTZ:**  Your Honor, I don't mean to

22 | interrupt, but if we could -- I know that, therefore, our

23 | answer may be due during the holidays.  I don't think there

24 | will be any controversy about the answer either.

25 |     If we could just have til, you know, some date in January

1    to file our answers, that would be helpful.

2              **THE COURT:**  That's fine.  You're using the word

3    "answer," I'm assuming that's deliberate?  It's going to be an

4    answer?

5              **MR. POMERANTZ:**  Yes, Your Honor.

6              **THE COURT:**  Okay.  You all work out a date, and I'm

7    sure the plaintiffs will be reciprocal in the professional

8    courtesy that you all showed on the defense side to amendment.

9    So you all work that out.

10        And now, let's talk about the dates.  Your schedule is a

11   little chaotic.  I'm not going to -- we will extend dates, but

12   we're not going to do it the way you've proposed.  This is the

13   Exhibit A you've attached to Docket No. 159.

14        Let me just call out a couple thing.  I'm not going to do

15   a class cert hearing and hot tub on the same day.  That makes

16   no sense.  So you've got to work that out.  Right now you have

17   this very odd summary judgment following Motions in Limine,

18   which makes no sense to me whatsoever.  So you have to work

19   that out.

20        And I don't know what you want to do about the trial date,

21   but I am not going to hear dispositive motions on

22   September 22nd for a trial that starts less than four weeks

23   later.  So you all need to go back and work something out.

24   Okay?  The work-out is not just throw it on the judge's desk

25   and let him figure it out.  That's not the work-out.  Okay?  So

1  don't lard me up with *Dauberts*, dispositive motions, Motions in

2  Limine, you know, three weeks before trial.  It's just --

3  that's not going to work.  Okay?

4       So your top priority is to give the judge the time and the

5  space to get his work done so that he can serve your needs.  So

6  make sure you build that in.

7       So just you all work that out.  Just file something

8  whenever you file it.

9       Now, there are a really large number of disputes.  I'm

10  just going to give you some guidance and then you can work on

11  it over the holidays.

12       For the disagreements about the document preservation, let

13  me -- Plaintiffs, you just serve interrogatories on the

14  defendant.  Okay?  And you pose all those questions you asked

15  on Page 8 and Page 9 as interrogatories and we'll take it from

16  there.  So those will be sworn responses, and that will be the

17  better way to go.

18       You can probably shorten time on those.  I don't think you

19  need to wait, you know, a huge amount of time.  So, you all

20  have the issue teed up.  Google knows what's coming.

21       So, you know, how about a two-week response date,

22  Mr. Pomerantz?

23            **MR. POMERANTZ:**  I'm not sure about the holidays.  If

24  we could have til the end of that first week of January.

25  Assuming they are going to serve them, like, tomorrow or today,

1   I would ask for that end of that first week of January.

2            THE COURT:  That seems fine.  What date is that?  Is

3   that the 7th or something?

4            MR. POMERANTZ:  I should have that in front of me,

5   but I don't.  I think that's right, Your Honor.

6            THE COURT:  You and me both.  I don't have it either.

7            MS. MOSKOWITZ:  January 7th is that Friday.

8            THE COURT:  Wow, we have a calendar savant.  Okay.

9   January 7th it is.

10           MS. GIULIANELLI:  This is Karma Giulianelli, Your

11   Honor.  I do have a couple of questions with respect to these

12   interrogatories.

13      I'm assuming that they will be additional interrogatories

14   and they won't count against the number that we have.

15           THE COURT:  Yes.  This will be a side set.

16           MS. GIULIANELLI:  Okay.

17           THE COURT:  Just for document preservation purposes.

18   And just do -- just take what, eight or nine.  Okay?  Nothing

19   more.  This is not an opportunity to serve 30 more requests on

20   Google.  So just take, you know -- if you want to fine tune

21   them, that's fine.  I don't have a problem with that, if you

22   want to fine tune them, but don't lard on, you know, another

23   dozen on top of what you have.

24           MR. POMERANTZ:  Your Honor, if I may request, as we

25   were getting ready for this hearing, we were also looking at

1    some of the preservation issues on -- for Epic in particular,

2    but also the other plaintiffs.  And we didn't think this was

3    appropriate to raise with Your Honor, but they chose to.

4        We would just ask that we could also serve similar

5    interrogatories on them so that the preservation issues can be

6    fleshed out and, if necessary, presented to Your Honor.

7            THE COURT:  I think that's just fine.  Can you serve

8    them in the same time frame?  Next day or two?

9            MR. POMERANTZ:  Yes, Your Honor.  Yes, Your Honor.

10           THE COURT:  We'll just have a little -- we'll take a

11   little side spur here on the railroad to trial and you all just

12   get all this done.  Okay?  So that takes care of that.

13       And then -- oh, just one second.

14       (Brief pause.)

15           THE COURT:  What's the next issue?

16           MR. POMERANTZ:  The proper construction of your order

17   regarding 30(b)6.

18           THE COURT:  Oh, 30(b)(6).  Yes.  So what is the

19   problem?  I'm not really following what's happening.

20           MR. POMERANTZ:  Your Honor, this is Glenn Pomerantz,

21   if I may.

22       I think it's really just a question of whatever Your Honor

23   intended by the order.  Your order said that each plaintiff

24   group may designate up to ten topics.

25       The question is whether that allows the plaintiffs to get

1    together and collectively designate 40, so they all can

2    question on all 40, or whether each of them have to designate

3    whichever ten topics they want.

4         We would request the latter interpretation because

5    otherwise each of the plaintiffs get 40 topics against Google,

6    but we only get ten topics against Epic or any of the other

7    plaintiff groups.

8         We understood that what Your Honor had in mind was that

9    Epic could pick ten topics and the states could pick ten

10   topics.  And if they each want to question on the same topic,

11   they can both include that in their list, but that they

12   wouldn't each get the opportunity to basically collectively

13   work together to question on 40 topics.

14        That's how we understood Your Honor's order.  I think the

15   plaintiffs disagree with that.

16        **MS. MOSKOWITZ:**  Your Honor, if I may.  Lauren

17   Moskowitz on behalf of the plaintiffs here.

18        Google already lost the battle of trying to limit how many

19   30(b)(6) topics.  Therefore, Your Honor ordered ten per

20   plaintiff group.  That's 40.

21        So Google has to prepare its witnesses to testify on up to

22   40 topics.  We have served that notice.  We've already had

23   meet-and-confers on those topics.

24        Nothing about this dispute is going to change how many

25   topics.  All they are trying to do is impose constraints on who

1   asks questions and how that testimony on those topics is going

2   to be used.  That's completely antithetical to the fact that

3   we're in a coordinated MDL process with a coordination order.

4        We're all sharing ten hours with Google witnesses.  All

5   discovery is being produced in all cases.  That goes for

6   documents, interrogatories, depositions.  They are trying to

7   use coordination both as a sword and a shield.

8        We -- they already have the protection.  Your Honor said

9   we have to try to cover all of the 30(b)(6) testimony within

10  the same time that the 30(b)(1) testimony is going to happen.

11  That's ten hours, because we're all noticing these witnesses

12  together.

13       And so it's already in our interest to coordinate.  We're

14  taking a lot of effort on our side to coordinate who has the

15  lead.  Just last week I was in a deposition.  I did seven of

16  the hours on behalf of all the plaintiffs and only one other

17  plaintiff asked questions.  If they had designated that witness

18  as a 30(b)(6), I -- even if I hadn't served the notice, I

19  probably would have taken the lead because there's presumably

20  going to be some overlap.

21       So the notion that there is any inefficiencies created by

22  this or any prejudice to Google by letting the plaintiffs do

23  their coordination that we're already doing, to ask questions

24  and prepare to ask questions within the time we have, we are

25  being efficient.  We are coordinating, and we are doing this

1   the right way.

2        The other aspect is Google trying to limit for which case

3   this is going to count as 30(b)(6) versus 30(b)(1)?  That

4   doesn't make sense either.  We're coordinated.  In fact, we may

5   end up consolidated.  Your Honor has already flagged that you

6   want to hear about that.

7        So the notion that any of this testimony is going to be

8   used differently in one of the cases versus the other just

9   makes no sense, and that's completely against the spirit of

10  what we're trying to chief in this coordination order.

11       So we have four sets of plaintiffs asking consolidated and

12  coordinated questions in these depositions.  Adding 30(b)(6)

13  topics does nothing to Google, and we are working really hard

14  to coordinate.

15       So it just seems actually inefficient and potentially

16  confusing and prejudicial to the plaintiffs if we have to try

17  to navigate and tag team and switch off.

18       And what if Google actually designates one witness for

19  three topics that were served by three different plaintiffs?

20  Do we have to switch on and off and reask questions that might

21  be relevant to each topic?  It seems like it creates a lot of

22  inefficiencies.  They already have the protection they need in

23  the hours limits.

24            THE COURT:  Well, look.  This was really meant to be

25  a common pool.  You're all going to dive in and swim around and

1  all the information is shared.

2      As far as I'm concerned, the main limits are the number of

3  topics and the number of hours and, you know, within that

4  anybody can do whatever they want.

5      Now, I don't think this is the issue, but I'll just be

6  clear about this.  We're not going to have multiple lawyers

7  asking the same question.  That's not going to be an efficient

8  way to do things.  But short of that, whatever the plaintiffs

9  want to do seems fine.

10      I mean, Mr. Pomerantz, it's not really -- I don't see how

11  that's a burden for Google.

12          **MR. POMERANTZ:**  Your Honor, listen.  We will defer to

13  Your Honor.  This is not one to go to the mat on.

14      I would just simply say that I know that when three

15  different lawyers ask questions, even if they are not asking

16  the same questions, it takes more time.  It just takes more

17  time.

18          **THE COURT:**  That time is coming out of the

19  plaintiffs' budget.  So if anything, you should celebrate the

20  administrative inefficiency that eats up your exam time.

21          **MR. POMERANTZ:**  Your Honor, we're ready to move on to

22  the next issue.

23          **THE COURT:**  Okay.  All right.  So that settles that.

24      Privilege logs.  What is -- so, you know, I have a

25  standing order on privilege logs.  I hope you all looked at

1    that because that is going to govern how I handle privilege

2    logs.  I'm not sure what the problem is here, Plaintiffs.

3         **MR. POMERANTZ:**  Your Honor, it's actually somewhat of

4    an unusual issue.  And it goes -- I think it's tied to the

5    stipulation the parties submitted, at least that's what the

6    plaintiffs have said, regarding privilege logs.

7         And there is a sentence in that, a paragraph in that

8    stipulation that says:

9              "A party who reproduces documents from other

10             matters, in satisfaction of its discovery obligations

11             in this litigation, may also produce the associated

12             privilege logs to satisfy their obligations; and then

13             if they do that, they have the burden to substantiate

14             their claims, the privilege claims."

15        That's not at all what's happening with the particular

16   logs at issue here.  So let me just explain briefly.

17        Plaintiffs have served hundreds of document requests.

18   Google has responded.  We've worked with them.  We've figured

19   out custodians and search terms and date ranges.  And then we

20   produced those documents, I think it's about 1.6 million, and

21   then we also provided a privilege log.  And it had thousands

22   and thousands of entries.

23        And we have been engaged with the plaintiffs on a lot of

24   back-and-forth -- none of which, I think, had to come to Your

25   Honor; they were all resolved -- about various entries on those

1    privilege logs.  None of that is raised by the issue raised in

2    this status conference report.

3        What's raised here was that separate from all of that,

4    Your Honor ordered us to produce documents that had previously

5    been produced in two different matters.  One was the *House*

6    *Judiciary Committee* and the other was a case called, I think,

7    *Callsome*.  And you said produce the documents that you produced

8    in those cases, and that's what we did.

9        Now, in those other matters there were privilege logs.

10   And we gave those privilege logs to the plaintiffs, at least

11   the relevant portions of those privilege logs, but those --

12        **THE COURT:**  You withheld the same documents.  In

13   other words, it was a mirror image production.  You turned

14   over --

15        **MR. POMERANTZ:**  No, no.

16        **THE COURT:**  -- to the plaintiffs whatever you

17   produced in the other cases and you withheld the same things.

18        **MR. POMERANTZ:**  Yeah.  And those other cases, by the

19   way, like the *House Judiciary Committee* had different date

20   ranges, different custodians, different issues.  I mean --

21        **THE COURT:**  I understand.  You took the relevant

22   filet from those other productions, but the point is you

23   asserted the same privilege objections in this case that you

24   did in the other contexts.

25        **MR. POMERANTZ:**  Well, they are asking us to

1    substantiate privilege log entries on those other logs that are

2    for documents that have nothing -- that are not part of the

3    logs in this case because they weren't from a custodian and a

4    date range and a search term.

5              THE COURT:  Oh, you're saying that you didn't produce

6    things on relevance grounds and they want a privilege log for

7    those non-produced documents?

8              MR. POMERANTZ:  No, not quite.  No, no.  I'm sorry.

9    I'm not being clear.

10         We gave them privilege logs for, let's say, the *House*

11   *Judiciary Committee*.  Some of those documents on the privilege

12   logs were also on our log in this case.  Because we separately

13   reviewed them, we determined they were privileged, and we put

14   them on our log in this case.

15         Some of the entries on the *House Judiciary Committee*

16   privilege log are not on our privilege log in this case because

17   they were not responsive to anything that the plaintiffs asked

18   for in this case.

19         They are asking us to substantiate those log entries that

20   were not at all responsive to any of the requests in this case.

21   And we don't even think in the first instance we had any

22   obligation to give them these privilege logs because all we

23   were ordered to do was give them the documents that were --

24             THE COURT:  Let me just jump in.  I have no idea

25   what's happening here.  What is it you want me to do?  Who is

1  raising the privilege issue?

2      I'm completely befuddled by what we're talking about.  Who

3  raised this?  Who put this in here?  Is this a plaintiff thing

4  or defendant thing?

5          MS. COOLIDGE:  It's a plaintiff thing that was --

6          THE COURT:  Tell me what the problem is.  What is the

7  issue you're having a problem with?

8          MS. COOLIDGE:  So we received these privilege logs,

9  and like we do with all privilege logs, we look at them and we

10 determine:  Can we tell why a document is privileged?  Do we

11 need to challenge that?

12     Putting aside the privilege logs that were produced from

13 new documents in this case, like Mr. Pomerantz said, we have

14 made it through those.  We raised the same kind of issues with

15 this reproduced privilege log.  And we said, you know, there is

16 300-some documents on here.  We can't tell why they are

17 privileged.  Can you tell us why?  And they said no.  And they

18 say in -- in their entry in the status report that it seems

19 that they cannot determine why they were withheld as privileged

20 in that case.

21     And I also just want to say these -- the documents on the

22 log are responsive to our requests in this case --

23         THE COURT:  Okay.  You know what?  You need to go

24 back to the well.  This is -- this is needlepoint that I am a

25 million miles away from, and I don't have any idea what you

1   guys are talking about.

2       So you go back to the well and meet-and-confer.  You send

3   me a discovery letter and -- by the way, that goes for the

4   interrogatory issue that Epic raised as well.  Don't do these

5   in case management conference statements.  Send them in a

6   discovery letter.  All right?

7       This is not a case management issue where we have to have

8   everybody involved.  Just send me in your discovery letter.

9   Make sure it adheres to my guidelines.  Follow those to the

10  letter.  And I'll take it from there.  All right?

11      Now, when are you going to get a new schedule to me?

12          **MR. POMERANTZ:**  If I could just clarify.  When you

13  say the Epic interrogatory, that's the issue we raised at the

14  end.  You want us to treat that through the letter brief

15  process.

16          **THE COURT:**  All discovery issues should not be --

17  should be presented in my -- in the usual course of business

18  under my standing order for civil discovery disputes.  Not in

19  case management statements.

20          **MR. POMERANTZ:**  Understood.

21          **THE COURT:**  Now, look.  Let's just -- I want to be

22  realistic here.  I'm just proposing this as a concept.  If this

23  October 17th trial date is not workable because you need more

24  time, let's get that discussion going.

25      Now, is that what you're edging towards here?  Is that

```
 1   sort of the -- nobody wants to tell the old judge move the
 2   trial date, but I'm opening the door for you.
 3        Is that the issue, Mr. Glackin?
 4        MR. GLACKIN:  Good morning, Your Honor.  Brendan
 5   Glacklin, State of Utah.
 6        I think in terms of us figuring this out, a question for
 7   some plaintiffs is going to be does moving the trial date --
 8   does Your Honor's schedule accommodate moving the trial date a
 9   short amount of time and still completing a trial in a
10   reasonable way given the holidays at the end of 2022, or does
11   moving the trial date mean moving it into 2023?
12        I think that would be a relevant question for the
13   plaintiffs -- at least the plaintiffs and probably also Google
14   in terms of --
15        THE COURT:  That's a good question.  Let's just think
16   out loud here.  This is a non-binding discussion and nothing is
17   going to be held against anybody, least of all me.  So don't
18   write back and say:  Oh, you know, Judge, you said X.  This is
19   all -- we're talking among friends here.
20        First, let's just ballpark.  This just a non-binding
21   estimate, but plaintiffs -- look, I don't know yet and you
22   don't know yet, I don't think -- I certainly don't know yet --
23   whether this is going to be a single consolidated trial for
24   everything.
25        However, it appears to me at this vantage point that the
```

1    issues are substantially overlapping in almost every respect.

2    So I don't know yet how that's going to look.  So let's just

3    leave that as a placeholder and not decide.

4         Just thinking abstractly about a trial, it seems to me

5    that this is a case that probably would take about three trial

6    weeks.  All right?  And I do, you know, about seven hour trial

7    days.  So, and I set time limits.  And I will just tell you

8    that in -- I just finished a multi district litigation

9    antitrust case.  Nobody ever uses all their time.  So that's

10   really my starting point.  That has been a 100 percent true

11   empirical experience.  So three weeks as a concept seems about

12   right.

13        Now, does anybody on the plaintiffs' side think that's not

14   right?

15        **MS. GIULIANELLI:**  Your Honor, this is Karma

16   Giulianelli.

17        As a concept, that generally sounds right, although I do

18   note that some of it will depend on the structure of the trial

19   because we do have -- while there is some overlap between

20   Epic's claims and the claims of consumers and even developers,

21   there are some disparate issues that relate to Google and Epic.

22        **THE COURT:**  I understand.  I understand.

23        **MS. GIULIANELLI:**  So it depends on Epic issues.

24        But I would think three or four weeks, depending on

25   whether Epic is -- whether a trial with everybody.  Because

1   there are some issues that are specific to Epic and it's

2   contractual dispute with Google.  And then we have damages

3   issues, which Epic does not.

4           THE COURT:  Well, as I said earlier, no matter what

5   happens, we're doing the trial -- jury trial issues first.

6   Everything -- all the equitable issues are going to follow

7   that.

8           MS. MOSKOWITZ:  And, Your Honor, if I may add one

9   edification of some things, some developments since we had that

10  conference where you did make that statement.

11          As of right now Google has launched counterclaims against

12  Epic and has demanded a jury trial.  And then there is overlap

13  with -- our defense to their counterclaim is based on some

14  illegality of the contract, which does overlap with their

15  affirmative claim.

16          So as of right now, the Epic case, even standing alone,

17  again, looking at it today is a jury trial.  And so there could

18  be a set of facts under which if class certification processes

19  needed more time and you wanted to sort of follow the

20  *Capacitors* and do all class cert and all merits and sort of

21  follow that track, that that could be done.  We could split off

22  after fact discovery that we're all coordinating and allow Epic

23  and Google to go to trial, sort of like what Google and Epic

24  were originally proposing back in May, a jury trial on

25  schedule, on October, as -- with the schedule as it already is,

1  without crunching, Your Honor, any of those times, and then

2  allowing all of the rest of the cases to go off and follow the

3  more ordinary course, again, *Capacitors*-like schedule.  And

4  then you're still having two jury trials in that, which is less

5  than, I think, perhaps ideal, but it would not usurp the jury

6  role --

7          **THE COURT:**  I don't understand how that could

8  possibly work.

9          Now, you brought the exactly same antitrust claims that

10 every other plaintiff brought.  Why would I ever try that

11 separately?  What if the jury in your case said no, there had

12 been no antitrust violation?  And then Google has to go through

13 it again as if that never happened?  That doesn't make any

14 sense.  That's the whole point of what I'm talking about.

15         We're not going to do that.  All right?  We're not going

16 to have people going off on core coordinated antitrust issues

17 as if the other person in the room doesn't exist.  That was the

18 message from last time.  So, please, put that out of your mind.

19 That's not going to happen.

20         Now, let me ask the defendants.  I know there are a number

21 of variables, but, I mean, three trial weeks seems like a

22 workable amount to me.

23         Don't you think, Mr. Pomerantz?

24         **MR. POMERANTZ:**  Your Honor, in a non-binding way I

25 agree.  Again, it sounds to me within the ballpark.

1          THE COURT:  Okay.  Now, I'm just going to use this

2    most recent case because the timing is quite similar.  So I

3    started that case the Monday after Thanksgiving, and we -- you

4    know, we finished Monday.

5          Now, that did finish with a settlement, but it had plenty

6    of time.  We were going to close two days ago and then the jury

7    would have had plenty of time before holidays to reach a

8    verdict.

9          I am, as most judges are, and I'm sure you are, too,

10   highly reluctant to have holidays intervene in the presentation

11   of evidence and certainly deliberations.

12         Now, there are a number of schools of thoughts about what

13   juries do on December 24th if they happen to be deliberating.

14   We don't need to get into those.  But I'm not comfortable

15   having that be an issue.

16         So to Mr. Glackin's point, I can push this out, you know,

17   a month.  We could start right -- the Monday after Thanksgiving

18   and see if we can get it done.

19         MS. MOSKOWITZ:  Your Honor --

20         THE COURT:  The question is for you to think about.

21   This is a take-away project.  We're not resolving this now.

22   This is a take-away project.

23         If we want to do this in 2022 -- and I'm not going to ask

24   anybody to say why they want that done.  That's fine with me.

25   I don't have a problem with that.  If you want to do it in

1    2022, we could probably start as late as the Monday after

2    Thanksgiving.  I don't know when Thanksgiving is in 2022, maybe

3    it's earlier.  This is an unusually late one.

4              **MR. POMERANTZ:**  Your Honor, November 28th is the

5    Monday after Thanksgiving.

6              **THE COURT:**  All right.  Basically the same.

7         And we could conceivably finish the main -- I'll just call

8    it the main trial before December 25th.

9         If that is not going to be enough time to move around

10   everything else without crunching me in a barrage of motions,

11   then it will be first quarter of 2023.

12        So I'll let you all talk about this.  Okay?  My only

13   suggestion, my only point is I have now opened the door to you

14   to consider moving October 17 as the trial date.  Okay?  So you

15   now have permission to talk about that.

16             **MS. GIULIANELLI:**  Your Honor, you asked about the

17   timing, about when we might get you a proposed schedule.

18             **THE COURT:**  Yes.

19             **MS. GIULIANELLI:**  We also were supposed to, if I

20   recall, get you some sort of a proposal on trial structure.  So

21   we understand your admonition on the joint jury trial -- the

22   overlapping issues, but it might make sense to commit to get

23   you, if we know the class cert dates are going to be moved per

24   our proposal, but the overall remainder of the schedule in

25   January so that we have time to get you -- to ponder these

1    issues of trial structure.

2          **THE COURT:**  Well, I think that's a fine idea.  Now

3    the pleadings are effectively closed.  These amendments are

4    just adding a party.  They are not going to change anything

5    dramatically; right?

6          **MS. GIULIANELLI:**  Correct.

7          **THE COURT:**  Is that right, Mr. Nam?

8          **MS. NAM:**  Yes, Your Honor.

9          **THE COURT:**  Okay.  So the -- and then the counter

10   claims, everything is done.  So now, this is a good time for

11   you to have a conference.  Why don't you do it soon and, you

12   know, maybe even start talking early next week.  Take a little

13   break or whatever you plan to do and then get back to it.

14         How about by January 14th, you get a master proposal to

15   me, a vision, a trial vision, what you would envision the

16   trials to look like and that also takes into account any

17   equitable issues that I'll have to deal with on my own, which

18   will come after the findings of fact by the jury, and trial

19   times.

20         I mean, to be honest with you, very, very unlikely to give

21   you more than 20, 25 hours per side.  Okay?  That's going to

22   be -- just take that as a working figure.  I have tried equally

23   large cases in less.  So just think about that as an operating

24   figure.  I'm not -- I'm not closing the door to more than that,

25   but that's likely to be the range.  And whether you want to do

1    that -- you know, try to jam in it between Thanksgiving and

2    Christmas holiday next year or you want to do it, you know,

3    first quarter of 2023.  Okay?

4              MS. MOSKOWITZ:  Your Honor, may I ask one question?

5              THE COURT:  Of course, yes.

6              MS. MOSKOWITZ:  Not crunching you.  The schedule as

7    it is I think is about two months before the trial date that

8    the dispositive hearing and concurrent expert proceeding is

9    currently set.  The Motions in Limine, I think, they are just

10   tethered to your normal counting backwards from the trial.

11        Is two months around what you would want us to shoot for

12   in terms of when you would like to have the dispositive motion

13   hearing?

14             THE COURT:  Look, yes.  If you study my docket, and

15   the day may come when you will, *Capacitors* is a good model just

16   because it's another large antitrust action.

17        You know, the hot tub really, in my view, is where I

18   decide all the *Daubert* issues.  Okay?  So, you know, it's not

19   that -- it's immensely helpful to me.  It's been remarkably

20   productive for me to have the hot tubs, and they have been

21   very -- they have been directly translated into my *Daubert*

22   decision.

23        So typically the *Daubert* decisions, orders that I issue

24   are not going to be all that late in the process because I

25   keyed them off the hot tub.

```
 1            Summary judgment, Rule 56 exists.  It has its day.  The
 2     application in a fact intensive case like this -- I'm not
 3     prejudging anything.  Maybe you'll have a great motion.  I
 4     don't know.  We'll see.  The odds are low.  Okay?  It's just --
 5     I mean, you spend your client's money and your time however you
 6     want, but, you know, in a place of this type, the idea of
 7     getting a summary judgment on a pure issue of law with no
 8     genuine dispute of fact on a merits issue is quite unlikely.
 9     I'm just saying that based on my long experience in the
10     antitrust field.
11            Now, maybe you'll come up with something, I don't know.
12     But I don't expect summary judgment to be a huge time consumer,
13     at least on my end.
14            So I think two months is a bare minimum, but I can
15     probably make it work.
16            Now, if there are any wrinkles or things we're not
17     anticipating, I will just move the trial date.  I'm not going
18     to be rushed.  So, but that's an issue for another day.
19            Yes, go ahead.
20            MR. POMERANTZ:  Your Honor, I know that plaintiff's
21     counsel, class counsel was concerned about the filing of the
22     class certification motion.  I get that.  And we'll work with
23     them on that.
24            We have a concern --
25            THE COURT:  Before you do that, I mean, just to jump
```

1  in.  How difficult is that?  Is class cert really going to be a

2  huge challenge here?

3           **MR. POMERANTZ:**  Oh, yes, Your Honor.  Oh, yeah.

4  There will be serious issues raised.  I promise you.

5           **THE COURT:**  Okay.

6           **MR. POMERANTZ:**  There will.

7           **MR. KELLY:**  Your Honor, we don't agree that there are

8  serious issues.  It's just we are in the middle of depositions

9  that we've had for -- the holidays have delayed our ability to

10  complete it.  We've identified a number of depositions we don't

11  need before class certification, but some of them are in

12  process and currently are deadline --

13          **THE COURT:**  You don't need me to say this.  Remember,

14  the class cert decision is a procedural decision.  Does it make

15  sense to proceed as a class?  That's really the issue.

16     Now, of course, there are good arguments both ways

17  sometimes, but, you know, we're not looking at merits issues.

18  We're doing merits as *Amgen* counsel's, only to the extent that

19  it's relevant to Rule 23.

20     So I'm not surprising anyone by telling you, as I've

21  written in many recent orders and orders over my time on the

22  bench, it's not a proxy for a trial or summary judgment.

23     So, really, the issue is does it make sense to go to the

24  next stage, the merits stage, on a class basis, which is why I

25  didn't think there would necessarily be tremendous

1   complications, but maybe, you know, Mr. Pomerantz and others

2   would have different views.

3          So that was all then.  But anyway, go ahead,

4   Mr. Pomerantz.

5              **MR. POMERANTZ:**  I just want to be clear that while

6   the plaintiffs did come to us and ask about moving back the

7   date for filing their class certification motion, we were

8   obviously concerned about what ripple effects that has on

9   things like the expert merits reports and summary judgment.

10  And all of this was worked out together among the parties.

11         And so I would expect that that's what we're going to do

12  between now and January 14th, is to come up with a composite

13  schedule that works for everybody, just like we've done now

14  twice before, and I would expect that we would be able to do

15  that again.

16         We sort of roughly look at *Capacitors* as a guide, as Your

17  Honor has asked us to do, and we'll continue to use *Capacitors*

18  as a rough guide.

19             **THE COURT:**  Now, *Capacitors* went for seven years.

20  You're not going to do that.  Don't worry about that.

21             **MR. POMERANTZ:**  A very rough guide.  How is that?

22  We've -- just in terms of the sequencing as opposed to the

23  amount of time.

24             **THE COURT:**  Yes.

25             **MR. POMERANTZ:**  So, all right.  Well, thank you, Your

1    Honor.  I think we understand and we will work with plaintiffs'

2    counsel.

3            **THE COURT:**  The other issue, Mr. Pomerantz and

4    everyone, is, you know, you need to start taking into account

5    what variations there might be outside of this core set of

6    issues.  Okay?

7        So Epic -- you know, Google and Epic have contract issues

8    that are going to be unique to those two parties.  You're going

9    to have to think about that and be creative in coming up with a

10   trial structure.  All right?

11       So the main point is I want one jury.  This is the optimal

12   result.  Now, I think we can get there, but you all know a lot

13   more about the case right now than I know.  So I'm going to

14   look forward to your guidance.  But this is the optimal result.

15   One jury decides in one sitting the core antitrust issues.  To

16   me, that is eminently doable.

17       Now, I'm saying that as someone who has not lived with the

18   case and details as you all have.  So I would like to get

19   there.  If we can't, I'm going to need a good demonstration of

20   why.  But I will leave it up to you in the first instance, as I

21   always do, to come up with a group decision on that.  Okay?

22       Now, I would like to get it by the 14th.  So if that's

23   going to be a problem -- is that a problem?  Can we do that?

24   Is that going to be a problem for anybody?

25           **MR. POMERANTZ:**  For Google, Your Honor, I think

1    that's doable.

2              **THE COURT:**  Okay.  Plaintiffs?

3              **MR. KELLY:**  It's doable.  Yes.

4              **THE COURT:**  Epic?  Okay, good.

5         Okay.  Great.  Anything else for today?

6              **MR. POMERANTZ:**  No, Your Honor.

7              **MR. GLACKIN:**  No, Your Honor.

8              **MS. MOSKOWITZ:**  No, Your Honor.

9              **THE COURT:**  So you're going to send me some discovery

10   letters then, is that the --

11             **MR. POMERANTZ:**  If we can't resolve it, we will send

12   you those letters.

13             **THE COURT:**  All right.  Good.  So we will meet again

14   at our regular scheduled time.

15        All right.  Thanks very much everybody.

16        (Proceedings adjourned.)

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, December 17, 2021