Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
Ian Simmons, *pro hac vice*
isimmons@omm.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

Benjamin G. Bradshaw, S.B. #189925
bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300

Daniel M. Petrocelli, S.B. #97802
dpetrocelli@omm.com
Stephen J. McIntyre, S.B. #274481
smcintyre@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 553-6700

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

*Counsel for Defendants Google LLC et al. in In re
Google Play Consumer Antitrust Litigation; In re
Google Play Developer Antitrust Litigation; Epic
Games, Inc. in Epic Games, Inc. v. Google LLC;
State of Utah et al. v. Google LLC et al.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*In Re Google Play Consumer Antitrust Litigation*, Case No. 3:20-CV-05761-JD | Case No. 3:21-md-02981-JD<br><br>**PUBLIC-REDACTED VERSION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     August 4, 2022<br>Time:     10:00 a.m.<br>Judge:    Hon. James Donato<br>Courtroom: 11, 19th Floor, 450 Golden Gate Ave, San Francisco, California 94102 |

Case No. 3:20-CV-05761-JD

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 4, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable James Donato, the undersigned Defendants ("Defendants"), will and hereby do move the Court for an order excluding the testimony of Consumer Plaintiffs' proffered expert Dr. Hal J. Singer, on the ground that it is not admissible under Federal Rule of Evidence 702.  This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed declaration of Justin P. Raphael, and the exhibits to that declaration, the concurrently-filed Proposed Order, the pleadings and records on file in this action, and upon any additional evidence and argument that may be presented before or at the hearing of this motion.

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS
CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

**Page**

ISSUE TO BE DECIDED ................................................................................................1

INTRODUCTION ..........................................................................................................1

BACKGROUND .............................................................................................................4

LEGAL STANDARD ......................................................................................................5

ARGUMENT ..................................................................................................................6

I.     DR. SINGER'S PASS-THROUGH FORMULA IS NOT RELIABLE. ...............6

     A.    Dr. Singer's Pass-Through Formula Is Not Generally Accepted and Contradicts His Own View of Accepted Economics. ..................................6

     B.    Dr. Singer's Pass-Through Rate Formula Ignores Actual Data. ...............9

     C.    Dr. Singer's Pass-Through Rate Formula Does Not Account for Focal Point Pricing. ........................................................................................11

     D.    Dr. Singer's Pass-Through Rate Formula Relies on the Unsubstantiated Assumption that All Apps in a Google Play Category Are Substitutes. ..................12

     E.    Dr. Singer's Pass-Through Formula Reflects Undisclosed Analyses. ....................12

II.    DR. SINGER'S FORMULA FOR CALCULATING COMPETITIVE SERVICE FEES IS NOT RELIABLE. ............................................................................13

III.   DR. SINGER'S METHOD FOR CALCULATING ALLEGED INDIVIDUAL CONSUMER IMPACT IS NOT RELIABLE. ......................................................14

IV.   DR. SINGER'S MODEL REGARDING PLAY POINTS IS NOT A RELIABLE METHOD OF COMMON PROOF OF ANTITRUST IMPACT. ........................14

CONCLUSION ..............................................................................................................15

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page**

CASES

*In re Air Cargo Shipping Servs. Antitrust Litigation*,
   No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) .........................13

*In re Apple iPhone Antitrust Litigation*,
   No. 11-cv-6714-YGR, 2022 WL 1284104 (N.D. Cal. Mar. 29, 2022)
   .......................................................................................................................3, 11, 12, 14

*Bourjaily v. United States*,
   483 U.S. 171 (1987) ...........................................................................................................5

*Boyar v. Korean Air Lines Co.*,
   954 F. Supp. 4 (D.D.C. 1996) ..........................................................................................12

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) .........................................................................................................11

*In re Capacitors Antitrust Litigation* (No. III),
   No. 17-md-02801-JD, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) .......................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................................1, 5, 6, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ..............................................................................................6

*DSU Medical Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ...............................................................................5

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..............................................................................................5

*General Electric Co. v. Joiner*,
   522 U.S. 136 (1997) ..............................................................................................6, 9, 10, 15

*In re Graphics Processing Units Antitrust Litigation*,
   253 F.R.D. 478 (N.D. Cal. 2008) ...................................................................................1, 14

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ...........................................................................................................9

*Laumann v. NHL*,
   117 F. Supp. 3d 299 (S.D.N.Y. 2015) ..................................................................................3

## TABLE OF AUTHORITIES
### (Continued)

Page

*In re Lithium Ion Batteries Antitrust Litigation*,
   No. 13-MD-2420 YGR, 2018 WL 1156797 (N.D. Cal. Mar. 5, 2018)..................................3, 11

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................12

*Milan v. Clif Bar & Co.*,
   No. 18-cv-02354-JD, 2021 WL 4427427 (N.D. Cal. Sept. 27, 2021) .........................................2

*Ollier v. Sweetwater Union High School District*,
   768 F.3d 843 (9th Cir. 2014).........................................................................10

*United States v. Hermanek*,
   289 F.3d 1076 (9th Cir. 2002)...........................................................................6

**FEDERAL RULES**

Fed. R. Evid. 702....................................................................................1, 5

Fed. R. Evid. 702(b) .....................................................................................6

Fed. R. Evid. 702(c) .....................................................................................5

Fed. R. Evid. 702(d) .....................................................................................6

**OTHER AUTHORITIES**

Avi Goldfarb & Catherine Tucker, *Digital Economics*, 57 J. Econ. Lit. 3 (2019)...........................7

Google Play, "Choose a category and tags for your app or game," Google Support,
   https://support.google.com/googleplay/android-developer/answer/9859673 ...........................12

Nathan Miller, Marc Remer & Gloria Sheu, *Using Cost Pass-Through to Calibrate
   Demand*, 118 Econ. Ltrs. 452 (2013) ...................................................................8

**ISSUE TO BE DECIDED**

Whether the Court should exclude the expert opinions of the Consumer Plaintiffs' expert Dr. Hal J. Singer as unreliable under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**INTRODUCTION**

Consumer Plaintiffs allege that developers passed on service fees for the Google Play Store by charging consumers higher prices for downloading apps, subscribing to apps, and buying digital content used in apps ("in-app purchases" or "IAPs").  Plaintiffs' expert, Dr. Hal Singer, has proffered what he calls a "deceptively straightforward" model to prove this pass-through on a class-wide basis.  Dr. Singer's pass-through model is unreliable.

The putative class of millions of consumers in the United States downloaded many thousands of different kinds of apps from the Play Store.  Ninety percent of the apps in the Play Store are completely free; consumers pay nothing to download them, subscribe to them, or buy IAPs in them.  Consumer Plaintiffs' case involves the small fraction of apps for which developers charge consumers for a download, a subscription, or an IAP.  Developers set the prices for those transactions, which are subject to service fees.  Consumer Plaintiffs' theory of antitrust injury is that (1) Google unlawfully foreclosed competition for the Play Store, (2) absent this conduct, Google would have charged lower service fees, and (3) rather than investing these reduced fees in improving or marketing their apps, developers would have passed the reduced fees on by charging lower prices for apps, subscriptions, and IAPs.

Theories of antitrust impact that depend on pass-through are "more complex" because they "must account for the actions of innocent intermediaries who allegedly passed on the overcharge." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 499 (N.D. Cal. 2008).  Here, the "intermediaries" are thousands of developers of different apps with different marginal costs, competitors and business strategies.  Dr. Singer has not run any regression or other econometric analysis to identify which of the developers would have reduced their prices if they were subject to lower service fees and by how much.  In fact, Dr. Singer has not measured pass-through using any data regarding what developers actually did when Google reduced its service fees in the real

Case No. 3:20-CV-05761-JD

1    world.  Rather, according to Dr. Singer, each app's pass-through rate can be calculated using a

2    simple ratio:  the number of transactions involving that app divided by the total number of

3    transactions involving apps in the same category in the Play Store.  All Dr. Singer does to

4    calculate the app's pass-through rate is to subtract that ratio from 100.  Thus, if 1% of transactions

5    in the Weather category involve a particular app, Dr. Singer calculates that the developer of that

6    app would have passed on 99% of any service fee above the competitive level.  That is it.

7           The Court should exclude Dr. Singer's opinions based on this bare bones formula.  *First*,

8    the formula is not "a generally accepted method," *Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD,

9    2021 WL 4427427, at *6 (N.D. Cal. Sept. 27, 2021) (Donato, J.), because it departs from what Dr.

10   Singer himself identifies as standard economics in his own reports.  Google's service fees are

11   calculated as a percentage of the prices that developers charge.  According to the economic model

12   that Dr. Singer describes as "generally accepted" and included in his report, whether an increase in

13   such costs affect prices (if at all) depends on a firm's other marginal costs.  Dr. Singer concededly

14   did not use this accepted model because he could not possibly determine the marginal costs of

15   each of the thousands of developers that transacted with the putative consumer class.  Instead, Dr.

16   Singer used a formula based on an app's category share, which he conceded "doesn't actually

17   depend on what the marginal cost of the developer is." Ex.[1] 1, Singer Dep. at 91:3–8.  A pricing

18   model that does not depend on costs does not reflect standard economics.  Dr. Singer also testified

19   that, according to standard economics, if developers paid lower service fees, then they would have

20   had incentives to compete by investing in improving their apps.  However, Dr. Singer's pass-

21   through model does not account for whether reduced service fees would have led developers to

22   reinvest in their own products, not pass on the reduction to consumers.

23          *Second*, real-world data shows that Dr. Singer's pass-through rate formula is not reliable.

24   Dr. Singer's formula predicts that lower service fees *always* lead to lower prices.  However, real

25   world data from the class period show that when Google reduces its service fees to some

26   developers, those developers *almost never* reduce their prices.  Dr. Singer's pass-through rate

27

28   [1] All references to "Ex." are exhibits to the concurrently-filed declaration of Justin P. Raphael.

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS
CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

formula thus "substitutes mathematical assumptions for actual, readily-obtainable information." *Laumann v. NHL*, 117 F. Supp. 3d 299, 315–16 (S.D.N.Y. 2015) (excluding expert testimony).

*Third*, Dr. Singer's pass-through rate formula does not account for "focal point pricing," the widely used strategy of setting prices ending in "9" or "99," which could explain why developers might not have reduced prices if they were subject to lower service fees. This exact shortcoming has led other courts in this District to exclude expert testimony, and this Court should do the same. *E.g.*, *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714-YGR, 2022 WL 1284104, at *8 (N.D. Cal. Mar. 29, 2022); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2018 WL 1156797, at *3 (N.D. Cal. Mar. 5, 2018).

*Fourth*, Dr. Singer's formula depends on a premise that he admits he cannot substantiate. Even though his pass-through formula is derived from a model of demand in which all apps in each Play Store category are substitutes, at deposition Dr. Singer disclaimed any opinion that all apps in each Play Store category actually are substitutes. Ex. 1, Singer Dep. at 158:14–16. That leaves Dr. Singer unable to opine that a necessary condition for his formula is met.

*Finally*, Dr. Singer's pass-through formula reflects undisclosed tests. Dr. Singer chose his formula from several others reflecting differently structured demand curves. Dr. Singer tested those formulas, but Consumer Plaintiffs did not disclose the results, so Google cannot test Dr. Singer's opinion that his formula best fits the structure of demand for apps. That is prejudicial because Dr. Singer himself testified that pass-through depends on the structure of demand.

Dr. Singer offers an alternative opinion that all consumers suffered antitrust impact because, in the but-for world, Google would have provided a more generous Play Points loyalty program. This opinion, too, is unreliable because it reflects assumption rather than analysis. Most consumers did not sign up for the Play Points Program and many of those who did earn Play Points never used them. Dr. Singer, however, admits that he has no model to determine which consumers would have signed up for and used Play Points in the but-for world. Rather, he calls it a "fair assumption" that all consumers would have done so. That is not a reliable method of common proof of antitrust impact.

The Court should exclude Dr. Singer's testimony from class certification proceedings.

# BACKGROUND

Consumer Plaintiffs' theory of antitrust impact is that they would have paid lower prices for apps, subscriptions, and IAPs in the but-for world.  This theory proceeds in two steps:  (1) if Google had not engaged in allegedly anticompetitive conduct, then Google would have faced more competition and responded by lowering service fees, and (2) developers subject to lower service fees would have charged less for apps, subscriptions, and IAPs.  *See* Consumer Second Am. Compl. ¶ 208, ECF No. 241.  Dr. Singer purports to have a model for each step.

**Service Fee Rate Model.**  Dr. Singer's method for calculating the service fee rates that Google would have charged in a more competitive market consists of a series of mathematical equations.  One of the inputs into those equations is the average pass-through rate that Dr. Singer has calculated.  *See* Ex. 2, Singer Rep. ¶ 125; Ex. 1, Singer Dep at 337:4–19.  This means that if a developer would not have passed through a reduced service fee, then Google would not have reduced its service fee.  The but-for service fee rate would thus be the same as the real-world rate, meaning that Google would not have overcharged that developer.  *See* Ex. 3, Burtis Rep. ¶ 335.

**Pass-Through Rate Model.**  Dr. Singer's method for calculating pass-through rates consists of mere arithmetic.  Google organizes apps into categories for purposes of cataloging them in the Play Store.  Those categories do not reflect any economic analysis of substitution.  Developers can choose the categories when they submit their apps.  Ex. 1, Singer Dep. at 90:3–6.  Dr. Singer nevertheless attributes decisive economic significance to developers' category choices.  He opines that a developer will pass through a change in service fees at a rate equal to 100 minus the percentage of transactions in the app's category accounted for by that app (Ex. 2, Singer Rep. ¶ 239), or:  **100% – [Number of App's Transactions / Number of Transactions of all Apps in Same Category]**.  Ex. 1, Singer Dep. at 131:5–132:2.  Thus, for example, if an app in the Health category has 2% of transactions, then it will change prices by 98% of any change in service fees.

This formula guarantees pass-through for virtually all apps.  As Dr. Singer admitted, his formula always "predicts" pass-through so long as an app does not have 100% of transactions in a given category, which no app does.  Ex. 1, Singer Dep. at 181:23–183:7.  Dr. Singer's formula also predicts what he calls "very strange results":  an app's pass-through rate, and thus its prices,

will change week to week or month to month as the app's share of transactions in its category moves up or down based on consumers' buying habits.  *Id.* at 134:3–9.

**No Regression Related to Pass-Through.**  Dr. Singer has not run any regression to calculate pass-through rates.  Ex. 1, Singer Dep. at 164:18–165:12.  The regression he ran "isn't measuring how a service fee change affects the price of an app or in-app purchase."  *Id.*  His regression measures how changes in developers' prices for apps, subscriptions, and IAPs affect demand for those transactions.  Ex. 2, Singer Rep. ¶ 236; Ex. 1, Singer Dep. at 164:10–17.

**Play Points.**  Dr. Singer offers an alternative opinion related to Google Play Points, a "loyalty points program" that Dr. Singer calls a "subsidy" for transactions in the Play Store.  Ex. 2, Singer Rep. ¶ 245.  Less than ███████ of U.S. consumers participated in the Play Points Program and only ████ of U.S. consumers redeemed Play Points.  Ex. 3, Burtis Rep. ¶ 358; Ex. 4, Singer Reply Rep. ¶ 98.  According to Dr. Singer, Google offered a total amount of Play Points equivalent to an average of ██████ per transaction in the real world, but would have offered Play Points equivalent to an average of █████ per transaction (or █████) in the but-for world.  Ex. 2, Singer Rep. at 122, Table 10.  However, Dr. Singer has not developed a model to determine which consumers would have signed up for or redeemed Play Points in the but-for world.  Ex. 1, Singer Dep. at 295:5–20, 296:6–19, 297:8–21.

### LEGAL STANDARD

Plaintiffs have the burden to prove that Dr. Singer's testimony is admissible.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146–47 (N.D. Cal. 2003).  Under Rule of Evidence 702, at class certification this court acts as a "gatekeeper" to ensure that expert testimony is reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

*First*, the Court must ensure that Dr. Singer's testimony is "the product of reliable principles and methods."  Fed. R. Evid. 702(c).  This Court has explained that this requires assessing whether Dr. Singer has used "a generally accepted method for determining antitrust impact . . . ."  *In re Capacitors Antitrust Litig.* (No. III), No. 17-md-02801-JD, 2018 WL 5980139, at *6 (N.D. Cal. Nov. 14, 2018) (Donato, J.).

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Second*, the Court must scrutinize "what basis [Dr. Singer] has" for his opinions. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). The Court must ensure that Dr. Singer's methodology is "based on sufficient facts or data" and "that he has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d); *United States v. Hermanek,* 289 F.3d 1076, 1093 (9th Cir. 2002) (citation omitted). This standard "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590–91. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## ARGUMENT

### I.   DR. SINGER'S PASS-THROUGH FORMULA IS NOT RELIABLE.

#### A.   Dr. Singer's Pass-Through Formula Is Not Generally Accepted and Contradicts His Own View of Accepted Economics.

Dr. Singer's pass-through rate formula does not reflect a generally accepted economic method for calculating whether, and how much, firms pass on costs structured like Google's service fees. Dr. Singer (1) does not use the generally accepted economic pricing model set forth in his own report and (2) does not account for the standard economic prediction (also in his report) that developers would have incentives to use savings on service fees to invest in their apps.

A "pass-through rate[]" is "the ratio of the dollar change in a developer's profit-maximizing price resulting from a one-dollar change in marginal cost." Ex. 2, Singer Rep. ¶ 239; Ex. 1, Singer Dep. at 103:18–104:12. In Paragraph 225 of his report, Dr. Singer provides the model "that's generally accepted in economics" for how an increase in service fees would affect a developer's price. Ex. 1, Singer Dep. at 105:8–106:3, 107:23–108:2; Ex. 2, Singer Rep. ¶ 225. This model reflects an important difference between what economists call "per-unit" costs and *ad valorem* costs. "Per unit" costs are a dollar amount per transaction. Google's service fees are *ad valorem* costs: a percentage of the price charged. Ex. 1, Singer Dep. at 104:13–20.

According to the generally accepted economic model that Dr. Singer sets forth in his

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

report, an economist calculating how changes in a service fee will affect how each developer sets prices must have information on each developer's marginal costs, if any.  This is because, according to the model, if changes in *ad valorem* costs would affect a developer's prices, any effect would be proportional to the developer's other, per-unit marginal costs.  *See* Ex. 2, Singer Rep. ¶ 225 & n.495; Ex. 1, Singer Dep. at 105:8–106:3, 107:23–109:14.  Specifically, the effect of a service fee on the costs that affect a developer's price is modeled using the expression $C / (1 - t)$, where $C$ are the developer's marginal costs and $t$ is the service fee rate.  Ex. 2, Singer Rep.¶ 225.  Thus, each developer's marginal costs are an input into determining how the service fee rate will affect how a developer sets prices.  Ex. 1, Singer Dep. at 108:17–25.

The generally accepted principle that service fees' effects on prices depend on developers' marginal costs means that those effects will vary from developer to developer because, as Dr. Singer concedes, "the marginal cost to a developer of supplying an additional in-app purchase vary [sic] from developer to developer."  Ex. 1, Singer Dep. at 95:15–18.  Indeed, Dr. Singer concedes that if a developer's cost of producing an additional in-app purchase is zero, then "prices would not adjust" if a developer paid a lower service fee, *id.* at 109:15–110:3, *i.e.*, there would be no pass-through and no injury to consumers from a transaction with that developer.   This is not hypothetical:  Dr. Singer relies on an article in his report stating that the "replication cost of digital goods is zero."  *Id.* at 95:22–98:19; Ex. 5, Avi Goldfarb & Catherine Tucker, *Digital Economics*, 57 J. Econ. Lit. 3, 12 (2019) (DX 335); *see also* Ex. 3, Burtis Rep. ¶¶ 142-143.

Dr. Singer did not calculate pass-through rates using the generally accepted economic model—set forth in his own report—that *ad valorem* costs affect prices proportional to other marginal costs.  Ex. 1, Singer Dep. at 382:6–15.  Dr. Singer candidly admitted that he did not use the standard economic model "because it's—it's difficult to—to estimate the change in marginal cost from the developer's perspective."  *Id.* at 129:10–17.  Indeed, Dr. Singer testified that a each developer's marginal costs are "a variable that might be impossible to observe."  *Id.* at 196:12-24.  Dr. Singer thus has not estimated *any* developer's marginal costs other than service fees.  *Id.* at 90:20–91:2, 91:22–92:7.  As a result, Dr. Singer lacks what his own report identifies as a necessary input for calculating any effect of Google's service fees on developer's prices.

To evade that problem, Dr. Singer used a formula set forth in Paragraph 239 of his report that, as he admitted at deposition, does not do "anything [] to reflect the fact that the affect [*sic.*] on the price will be proportional to other marginal costs." Ex. 1, Singer Dep. 124:18–127:13; *see also id.* at 186:6–18.  Dr. Singer borrowed that formula from a 2013 article which expressly states that its formulas are designed to calculate how a "*per-unit*" cost, not an *ad valorem* cost, affects prices. *Id.* at 116:14–118:3, 123:3–11; *see* Ex. 2, Singer Rep. at 111 n.516 (citing Nathan Miller, Marc Remer & Gloria Sheu, *Using Cost Pass-Through to Calibrate Demand*, 118 Econ. Ltrs. 452 (2013) (DX 336)).  Dr. Singer admitted that this pass-through formula "doesn't actually depend on what the marginal cost of the developer is." Ex. 1, Singer Dep. at 91:3–8.  In fact, Dr. Singer testified that "the beauty" of his pass-through formula is that "we don't need to estimate the marginal costs in order to get the pass-through rate," *id.* at 190:20–192:3, and that he "went with" it "because I didn't need to estimate the marginal costs of the developer." *Id.* at 195:20–196:24.

Thus, as Dr. Singer testified, in his formula, "pass-through is a function of the concentration" of an app's category, "not of the cost" borne by the developer. *Id.* at 197:13–18.  A pricing model that does not depend on costs contradicts fundamental economics.  After all, Dr. Singer opines that "[o]ne of the most universal principles of economics is that prices depend on costs." Ex. 2, Singer Rep. ¶ 223.  Thus, Dr. Singer has never used his formula to calculate pass-through in any other case and could not identify any published paper that has done so.  Ex. 1, Singer Dep. at 151:8–152:2.  Even the Developer Plaintiffs' expert, who is adverse to Google, testified that Dr. Singer's formula reflects "complete fictions" and "defies common sense." Ex. 6, Williams Dep. at 322:20–323:5.

Dr. Singer also does not account for the principle that "standard economics would give developers an incentive to respond to lower service fees by reducing prices and improving quality." Ex. 1, Singer Dep. at 53:24–54:3.  Dr. Singer's report states:  "Standard economics shows that competition drives firms to make competitive investments in product quality to keep pace with rivals." Ex. 2, Singer Rep. ¶ 233.  But Dr. Singer admitted that his pass-through model "doesn't measure whether any developer would actually invest, or how much they would invest, in improving the quality of their app in the but-for world." Ex. 1, Singer Dep. at 56:14–57:5.  Dr.

Singer therefore has no basis to opine that any developer, let alone all developers, would have passed on savings from reduced service fees instead of investing them in improving app quality.

Ultimately, the pass-through formula that Dr. Singer revealingly calls "deceptively straightforward," Ex. 4, Singer Reply Rep. ¶ 68, proves far too much.  The Supreme Court has recognized that pass-through is not straightforward at all.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 742 (1977) (noting the "difficulties that have been encountered" with "statistical techniques used to estimate" pass-through).  Dr. Singer's logic is that service fees are "economically analogous to a tax on developers" and "[e]lementary economics shows how taxes are passed on to buyers," Ex. 2, Singer Rep. ¶ 244, but the Supreme Court has rejected "simplifying assumptions" that "overcharges" are "equivalent to an excise tax." *Illinois Brick*, 431 U.S. at 741 & n.25.  "[I]n the real economic world rather than an economist's hypothetical model, the latter's drastic simplifications generally must be abandoned." *Id.* at 742 (internal quotation marks omitted).  Just so here.  The Court should exclude Dr. Singer's opinions based on a pricing model that has nothing to do with costs and reduces complex pricing for thousands of different developers to calculating each app's proportion of transactions in a category.

**B.** **Dr. Singer's Pass-Through Rate Formula Ignores Actual Data.**

Dr. Singer's use of a formula that does not account for basic economics results in "simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.  "[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact [is] whether it can be (and has been) tested," and "the court ordinarily should consider the known or potential rate of error." *Daubert*, 509 U.S. at 593–94.  Dr. Singer, however, has not tested his formula using data reflecting how developers set prices when Google actually reduced service fees during the class period.  In that respect, Dr. Singer departed from the practice he "typically" uses of "regressing retail price changes on wholesale price changes." Ex. 1, Singer Dep. at 134:25–135:6.

Google reduced service fees for many transactions in 2018, 2021 and 2022.  Ex. 4, Singer Reply Rep. ¶ 9.  Dr. Singer's formula predicts that *every* developer would pass on reduced service fees by reducing prices. Ex. 1, Singer Dep. at 89:19–23.  However, an analysis of data in the real

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   world shows that developers in the data set only reduced prices for about ▆ of products subject

2   to service fee reductions.  *See* Ex. 3, Burtis Rep. at 103, Fig. 13.  An analysis of other data by the

3   Developer Plaintiffs' expert shows that developers only reduced prices for about ▆ of products

4   subject to service fee reductions.  *Id.* at 101 n.348; *see also* Ex. 6, Williams Dep. at 312:21-314:2.

5         Thus, the pass-through that Dr. Singer predicts for *all* apps in fact occurred for almost none

6   of them.  Indeed, several of the Developer Plaintiff class representatives state in sworn discovery

7   responses that they "never adjusted the price of ]their] apps or in-app products in response to

8   changes in Google's service fees."  Ex. 7, Pl. Rescue Pets' Suppl. Resp. to Def.'s Interrog. No. 18;

9   Ex. 8, Pl. LittleHoots' Suppl. Resp. to Def.'s Interrog. No. 18; Ex. 9, Pl. Pure Sweat Basketball's

10  Suppl. Resp. to Def.'s Interrog. No. 18.  (Dr. Singer did not rely on any developer's testimony.

11  Ex. 1, Singer Dep. at 237:18–22.)  Moreover, numerous other developers also offer apps,

12  subscriptions, and IAPs at the same price on Google Play as on platforms where they pay either

13  lower service fees or no service fees at all, Ex. 1, Singer Dep. at 224:8–24, 229:22–230:11; Ex. 3,

14  Burtis Rep. ¶ 169, undermining Dr. Singer's logic that lower fees always mean lower prices.

15        Dr. Singer gets nowhere by suggesting that developers may not have reduced their prices

16  because they cannot "steer" users to platforms other than Google Play using in-app

17  communications.  Ex. 4, Singer Reply Rep. ¶ 100.  Dr. Singer testified that his pass-through

18  formula does not depend on steering.  Ex. 1, Singer Dep. at 242:15–22.  Indeed, his formula relies

19  entirely on shares of transactions in categories of apps in the Play Store.  Dr. Singer also testified

20  that he "would expect pass-through regardless of the anti-steering restrictions."  Ex. 1, Singer Dep.

21  at 242:23–244:3.  Moreover, Dr. Singer has not conducted any empirical analysis of any inability

22  to steer on real-world pass-through rates, *id.* at 239:2–13, 240:2–241:1, 246:3–12, or even

23  analyzed any developer's returns on investment from steering in-app or otherwise.  *Id.* at 74:23–

24  76:9.  Thus, Dr. Singer's steering explanation for the "gap between the data and the opinion

25  proffered," *Joiner*, 522 U.S. at 146, reflects speculation that is "inherently unreliable."  *Ollier v.*

26  *Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).

27        Evidence that virtually no developers that paid lower service fees reduced prices to

28  consumers is proof that Dr. Singer's pass-through formula is not reliable.  "Expert testimony is

Case No. 3:20-CV-05761-JD
NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS
CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

## C.   Dr. Singer's Pass-Through Rate Formula Does Not Account for Focal Point Pricing.

A third reason why Dr. Singer's pass-through rate formula is not reliable is that it "does not adequately account for the effects of focal point pricing, and therefore fails to yield reliable conclusions." *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 1156797 at *3.  Focal point pricing is a "well-established concept in economics" in which firms set prices ending in "99," which consumers can perceive as significantly more attractive than prices just one cent higher. Ex. 1, Singer Dep. at 197:19–198:4; Ex. 3, Burtis Rep. ¶ 149.  Developers have widely adopted this strategy: ▮▮ of U.S. consumers' retail app transactions involved prices ending in '99, Ex. 3, Burtis Rep. ¶ 149, and over ▮▮ developers used prices ending in "99" during the class period. *Id.* at 111, Table 9.  *Cf. Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *8 ("with respect to focal-point pricing, overwhelming evidence suggests that developers would choose to price their apps at focal points ending in 99 cents.").

Dr. Singer admits that "focal point pricing is an important consideration here." Ex. 1, Singer Dep. at 202:2–7.  Indeed, focal point pricing is one reason why developers may not have reduced prices if they paid lower service fees.  Developers that rely on focal point pricing would not reduce prices in response to lower service fees "if the reduction from one" focal price point "to the next would be so large that the developer would lose profits."  Ex. 3, Burtis Rep. ¶ 150.

Dr. Singer's pass-through formula does not account for focal-point pricing at all.  Ex. 1, Singer Dep. at 205:19–206:8.  Given this oversight, it is not surprising that Dr. Singer's model produces results that are flatly inconsistent with focal-point pricing.  According to Dr. Singer's model, developers that paid lower service fee rates would have reduced prices by less than a dollar, *i.e.*, above the next lowest focal point. Ex. 4, Singer Reply Rep. ¶ 28.  And according to the model, more than 99% of developers would have abandoned focal point pricing if they were subject to lower service fees.  *See* Ex. 3, Burtis Rep. ¶ 315, and Table 9.

Judge Gonzales Rogers recently excluded testimony that Apple's allegedly

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

supercompetitive service fees for its App Store resulted in higher prices for all consumers of apps in the Store because the expert's "model does not provide a reliable method for determining but-for pricing in the presence of focal pricing." *Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *8. Dr. Singer's pass-through rate model does not do so, either, and likewise is inadmissible.

### D.   Dr. Singer's Pass-Through Rate Formula Relies on the Unsubstantiated Assumption that All Apps in a Google Play Category Are Substitutes.

Dr. Singer's pass-through rate formula also is not reliable because he admits the premise it depends on is not true. *E.g.*, *Boyar v. Korean Air Lines Co.*, 954 F. Supp. 4, 8–9 (D.D.C. 1996) ("[A] number of [] cases exclude expert testimony because the factual assumption upon which it was based was faulty and plainly contradicted by the evidence."). Dr. Singer's category-share formula reflects a demand structure ("logit") whose fundamental feature is that "all goods in the market where demand is being measured are substitutes." Ex. 1, Singer Dep. 158:6–13; Ex. 2, Singer Rep. ¶ 224; Ex. 4, Singer Reply Rep. ¶¶ 75-77; *see also* Ex. 3, Burtis Rep. ¶ 308; *id.* at 107 n.363. But Dr. Singer disclaimed any opinion that "all apps in each Google Play app category are substitutes," Ex. 1, Singer Dep. at 158:14–159:14; *see also id.* at 159:21–160:1. He testified that some apps in each category could be complements rather than substitutes. *Id.* at 159:15–18.[2] Dr. Singer's failure to opine that a necessary premise of his pass-through formula exists renders his formula unreliable. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 & n.19 (1986) (affirming exclusion of expert testimony based on assumptions that were "implausible and inconsistent with record evidence").

### E.   Dr. Singer's Pass-Through Formula Reflects Undisclosed Analyses.

Finally, Dr. Singer's pass-through formula should be excluded because it is based on

---

[2] Indeed, it is obvious that not all apps in each category are substitutes. *See* Ex. 3, Burtis Rep. ¶¶ 158, 308. Because developers choose a category for their app when they list it in Google Play, Ex. 1, Singer Dep. at 90:3–6, the categories cannot reflect any relationship between prices and demand for apps in the category. As a result, the Business category includes both "package tracking" and "email management" apps; the Finance category includes "ATM finders" and apps related to insurance; and the Productivity category includes both calendar apps and calculator apps. *See* Google Play, "Choose a category and tags for your app or game," Google Support, https://support.google.com/googleplay/android-developer/answer/9859673.

undisclosed analyses.  Dr. Singer concedes that "the pass-through rate is going to depend on the shape of the demand curve."  Ex. 1, Singer Dep. at 152:3–6.  Dr. Singer's pass-through formula assumes a "logit" demand curve.  *See* Ex. 2, Singer Rep. ¶ 236.  Although the article on which Dr. Singer relied includes formulas that assume other demand structures, Dr. Singer decided that logit was the "best model" after testing two others.  Ex. 1, Singer Dep. at 152:7–153:6.  However, Dr. Singer did not disclose those tests in his reports, *id.* at 152:24–153:12, 174:17–25, so Google has no basis to assess whether his pass-through formula best reflects the structure of real-world demand.  Consumer Plaintiffs' failure to disclose analyses necessary to test Dr. Singer's pass-through formula requires excluding his testimony based on the formula.  *See* Standing Order for Discovery in Civil Cases ¶ 17 ("FRCP 26(a)(2)(B) requires disclosure of all opinions, bases, reasons and other information considered by an expert.")[3]

## II.        DR. SINGER'S FORMULA FOR CALCULATING COMPETITIVE SERVICE FEES IS NOT RELIABLE.

Dr. Singer's model for showing that Google's service fees would have been lower for all developers in the first place depends on using his unreliable pass-through rate formula as an input in calculating service fee rates.  *See* Ex. 2, Singer Rep. ¶ 264 (explaining variables in but-for service fee calculation, including pass-through).  Because Dr. Singer's pass-through rate formula is unreliable, calculating service fees based on that formula will be unreliable as well.

Dr. Singer's formula for calculating service fee rates in a more competitive market also yields absurd results.  *E.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100, at *57–59 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) (excluding regression yielding "absurd" results).  Dr. Singer predicts that, in the but-for world, Google would have charged service fees of 10% for apps in the Entertainment app category and 9.7% for apps in the Music and Audio categories.  *See* Ex. 2, Singer Rep. at 134, Table 14.  However, Dr. Singer's own calculations

---

[3] Dr. Singer did not test the formula for AIDS demand to see if that structure of demand best fit the demand for apps.  Ex. 1, Singer Dep. at 153:13–154:8.  That is problematic because Dr. Singer does not know whether he would even be able to calculate any pass-through rates using the AIDS formula if demand for apps reflected AIDS demand.  *Id.* at 154:9–21.

1  estimate that Google's marginal costs are ▮▮▮▮ of current revenues. *Id.* ¶ 212. A formula that

2  predicts service fees insufficient to cover Google's marginal costs is unreliable. *See In re Apple*

3  *iPhone Antitrust Litig.*, 2022 WL 1284104, at *5 ("It is not logical that a but-for world would

4  generate market [service fee] rates which do not anticipate any profit in the foreseeable future.").

5  **III.   DR. SINGER'S METHOD FOR CALCULATING ALLEGED INDIVIDUAL CONSUMER IMPACT IS NOT RELIABLE.**

6

7        Dr. Singer has not calculated the service fee that any individual developer would have been

   subject to in a more competitive market or how much any individual developer would have

8  reduced prices to consumers. Dr. Singer has instead calculated *average* service fee and pass-

9  through rates for each developer and posited methods for generating individual rates based on

10 those averages. Ex. 2, Singer Rep. ¶¶ 239, 263. This method is unreliable because it uses average

11 pass-through rates for all apps in the same category. *Cf. In re Graphics Processing Units Antitrust*

12 *Litig.*, 253 F.R.D. at 494 ("Sometimes the prices used by economists are averages of a number of

13 different prices charged to different customers or for somewhat different products. Using such

14 averages can lead to serious analytical problems.") Dr. Singer effectively assumes that all apps in

15 the same category would reduce prices by the same proportion. Dr. Singer has no support for this

16 assumption, which cannot be squared with his concession that not all apps in a category are

17 substitutes.

18 **IV.   DR. SINGER'S MODEL REGARDING PLAY POINTS IS NOT A RELIABLE METHOD OF COMMON PROOF OF ANTITRUST IMPACT.**

19

20        Dr. Singer proffers an alternative opinion related to Google's Play Points program, a

21 "loyalty points program" which Dr. Singer calls a "subsidy" for transactions in the Play Store. Ex.

22 2, Singer Rep. ¶ 245. Less than ▮▮▮▮ of U.S. consumers participated in the Play Points

23 Program and only ▮▮ of U.S. consumers redeemed Play Points. Ex. 3, Burtis Rep. ¶ 358; Ex. 4,

24 Singer Reply Rep. ¶ 98. According to Dr. Singer, Google offered Play Points equivalent to ▮▮▮

25 per transaction in the real world, but "the Play Points program would be expanded to be worth an

26 average of ▮▮▮ per transaction, or approximately ▮▮▮▮ of consumer spend (in the

27 competitive but-for world)." Ex. 2, Singer Rep. ¶ 253. Dr. Singer claims that if Google had

28 offered Play Points equivalent on average to approximately ▮▮▮▮ of a consumer's

-14-                                              Case No. 3:20-CV-05761-JD

transaction, then "the [P]lay [P]oints system would be embraced across the class just as the way that the points system in the AMEX marketplace is embraced across American Express users." Ex. 1, Singer Dep. at 296:6–19, 297:8–21.

This is not a reliable method for proving antitrust impact on all consumers.  Dr. Singer conceded that "very few people availed themselves" of the Play Points program in the actual world, and that "only some of the people that signed up for the [P]lay [P]oints program used their [P]lay [P]oints." Ex. 1, Singer Dep. at 288:11–16, 289:17–23.  However, Dr. Singer admitted that he has not "identified any model to determine which users would have signed up for [P]lay [P]oints in the but-for world," *id.* at 295:5–20, and has no model "that can tell the Court and the jury in this case which of the members of the putative class would have signed up for [P]lay [P]oints and who would have used them." *Id.* at 297:8–21; *see also id.* at 296:6–19.

Thus, when asked whether his opinion is that "every member of the putative class would have signed up for the [P]lay [P]oints program and used [P]lay [P]oints," Dr. Singer merely characterized this as a "fair assumption." Ex. 1, Singer Dep. at 298:22–299:10.  Dr. Singer has not justified that assumption in his reports.  He has not explained why an average of ▮▮ in benefits would have been sufficient to motivate every member of the putative class to sign up and use Play Points—including the over ▮▮▮▮ class members (▮▮▮) who spent less than ▮ during the class period or the over ▮▮▮▮ class members (▮▮▮) who only made one purchase during the class period for whom the amount of benefits would be very small.  Ex. 3, Burtis Rep. at 35, Table 3, Exhibit 24.  Dr. Singer's reports do not analyze that issue.  Nor do his reports include any showing that such benefits are in any way comparable in value to the loyalty points offered to American Express cardholders or any analysis of the redemption rates of those points.

Dr. Singer has simply assumed the conclusion that all consumers would have signed up and used Play Points.  Such "*ipse dixit* of the expert" is not a reliable opinion on common antitrust impact.  *Joiner*, 522 U.S. at 146.

## CONCLUSION

The Court should exclude the expert opinions of Dr. Hal J. Singer.

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS
CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  Respectfully submitted,

2  DATED:  May 26, 2022

3                                                              By:    _____ /s/ Justin P. Raphael_____

4                                                                    Justin P. Raphael

5                                                                    Kyle W. Mach, S.B. #282090
                                                                    kyle.mach@mto.com
6                                                                    Justin P. Raphael, S.B. #292380
                                                                    justin.raphael@mto.com
7                                                                    Emily C. Curran-Huberty, S.B. #293065
                                                                    emily.curran-huberty@mto.com
8                                                                    **MUNGER, TOLLES & OLSON LLP**
                                                                    560 Mission Street, Twenty Seventh Floor
9                                                                    San Francisco, California 94105
                                                                    Telephone: (415) 512-4000
10
                                                                    Glenn D. Pomerantz, S.B. #112503
11                                                                   glenn.pomerantz@mto.com
                                                                    Kuruvilla Olasa, S.B. #281509
12                                                                   kuruvilla.olasa@mto.com
                                                                    **MUNGER, TOLLES & OLSON LLP**
13                                                                   350 South Grand Avenue, Fiftieth Floor
                                                                    Los Angeles, California 90071
14                                                                   Telephone: (213) 683-9100

15                                                                   Jonathan I. Kravis, *pro hac vice*
                                                                    jonathan.kravis@mto.com
16                                                                   **MUNGER, TOLLES & OLSON LLP**
                                                                    601 Massachusetts Avenue NW, Suite 500E
17                                                                   Washington, D.C. 20001
                                                                    Telephone: (202) 220-1100
18
                                                                    *Counsel for Defendants Google LLC et al. in In re*
19                                                                   *Google Play Consumer Antitrust Litigation; In re*
                                                                    *Google Play Developer Antitrust Litigation; Epic*
20                                                                   *Games, Inc. in Epic Games, Inc. v. Google LLC; State*
                                                                    *of Utah et al. v. Google LLC et al.*
21
                                                                    Daniel M. Petrocelli, S.B. #97802
22                                                                   dpetrocelli@omm.com
                                                                    Stephen J. McIntyre, S.B. #274481
23                                                                   smcintyre@omm.com
                                                                    **O'MELVENY & MYERS LLP**
24                                                                   1999 Avenue of the Stars
                                                                    Los Angeles, California  90067
25                                                                   Telephone: (310) 553-6700
                                                                    Facsimile: (310) 246-6779
26

27

28
                                                    -16-                        Case No. 3:20-CV-05761-JD
                          NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS
                          CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Ian Simmons, *pro hac vice*
isimmons@omm.com
Benjamin G. Bradshaw, S.B. #189925
bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Jessica L. Ellsworth, *pro hac vice*
jessica.ellsworth@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Counsel for Defendants*

NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER ON CLASS CERTIFICATION; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF