May 27, 2021

The Honorable James Donato
United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

                                                                             Via ECF

Re:    *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.);
       *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.);
       *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-05761-JD (N.D. Cal.);
       *State of Utah v. Google LLC*, No. 3:21-cv-05227-JD (N.D. Cal.)

Dear Judge Donato:

      Plaintiffs in the above-captioned actions (the "Related Actions"), Epic Games, Inc., Consumer Plaintiffs and Plaintiff States, together with non-party Activision Blizzard, Inc. ("Activision"), submit this joint discovery letter brief to request the Court's decision on a dispute between Plaintiffs and Activision concerning Plaintiff's May 12, 2022 subpoena for the deposition of Activision CFO Armin Zerza (the "Subpoena"). Plaintiffs and Activision have met and conferred extensively by telephone regarding this issue, both before and after service of the Subpoena, have not reached a resolution, and have agreed to submit their respective positions in this joint filing. Plaintiffs' and Activision's position statements are set forth below.

                                      BARTLIT BECK LLP
                                           Karma M. Giulianelli

                                        KAPLAN FOX & KILSHEIMER LLP
                                           Hae Sung Nam

                               Respectfully submitted,

                       By:    */s/ Karma M. Giulianelli*
                                   Karma M. Giulianelli

                                 *Co-Lead Counsel for the Proposed Class in*
                                 *In re Google Play Consumer Antitrust*
                                 *Litigation*

Judge Donato
May 27, 2022
Page 2 of 10

CRAVATH, SWAINE & MOORE LLP
   Christine Varney *(pro hac vice)*
   Katherine B. Forrest *(pro hac vice)*
   Gary A. Bornstein *(pro hac vice)*
   Timothy G. Cameron *(pro hac vice)*
   J. Wesley Earnhardt *(pro hac vice)*
   Yonatan Even *(pro hac vice)*
   Lauren A. Moskowitz *(pro hac vice)*
   Justin C. Clarke *(pro hac vice)*
   M. Brent Byars *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle (SBN 115199)

Respectfully submitted,

By:   */s/* J. Wesley Earnhardt
      J. Wesley Earnhardt

      *Counsel for Plaintiff Epic Games, Inc.*

PRITZKER LEVINE LLP
   Elizabeth C. Pritzker

Respectfully submitted,

By:   */s/ Elizabeth C. Pritzker*
      Elizabeth C. Pritzker

      *Liaison Counsel for the Proposed Class in*
      *In re Google Play Consumer Antitrust*
      *Litigation*

Judge Donato
May 27, 2022
Page 3 of 10

OFFICE OF THE UTAH ATTORNEY GENERAL
    Brendan P. Glackin

Respectfully submitted,

By:   /s/ *Brendan P. Glackin*
      Brendan P. Glackin

*Counsel for Utah*

WINSTON & STRAWN LLP
    Jeanifer E. Parsigian

Respectfully submitted,

By:   */s/ Jeanifer E. Parsigian*
      Jeanifer E. Parsigian (SBN 289001)
      WINSTON & STRAWN LLP
      101 California Street
      San Francisco, CA 94111
      Telephone: (415) 591-1000
      Facsimile: (415) 591-1400
      JParsigian@winston.com

      Jeffrey L. Kessler (*pro hac vice* forthcoming)
      Sofia Arguello (*pro hac vice* forthcoming)
      200 Park Avenue
      New York, NY 10166-4193
      Telephone: (212) 294-6700
      Facsimile: (212) 294-4700
      JKessler@winston.com
      SArguello@winston.com

*Counsel for Non-party Activision Blizzard, Inc.*

**PLAINTIFFS' POSITION**

On March 10, 2022, Plaintiffs requested that Activision make its CFO, Armin Zerza, available for a deposition. Over the next several months, Plaintiffs met and conferred with Activision six times in an effort to schedule Mr. Zerza's deposition. During those meetings, Plaintiffs explained—and Activision agreed—that Mr. Zerza has unique personal knowledge regarding ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Mr. Zerza's testimony about ▬▬▬▬▬▬▬▬—and other topics—will be central to Plaintiffs' case for the jury in this matter. Despite Mr. Zerza's unique and relevant personal knowledge, Activision has taken the position that he is too busy to sit for a deposition. On May 12, 2022, Plaintiffs served a valid deposition subpoena on Mr. Zerza.

Activision now seeks a protective order to prohibit Mr. Zerza's deposition on "apex doctrine" grounds. It is Activision's burden to prove "good cause" for a protective order prohibiting Mr. Zerza's deposition. It cannot meet that burden. *First*, Mr. Zerza is the ***only*** Activision employee with personal knowledge of critical events at issue in this case, making Mr. Zerza a uniquely important witness. *Second*, Activision's proposed alternative means of discovery—a written deposition or a deposition of a former lower level Activision employee now employed by Epic—are no substitute for deposing Mr. Zerza.

### I.   Background

Activision is one of the largest game developers in the world. Its apps are among the most-downloaded apps on the Google Play Store and have generated substantial revenue for both Activision and Google for many years.

One of Plaintiffs' central claims is that Google systematically executed agreements with potential competitors to stifle competition in the purportedly open Android ecosystem. Among other anticompetitive conduct, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Specifically, discovery in this case has revealed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Activision, thus, is not a typical, uninterested third party. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, when Mr. Zerza, then Activision's Chief Commercial Officer, attended the Gamers Development Conference in San Francisco. At that conference, Mr. Zerza informed other app developers that Activision was interested in ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.



(Moskowitz Decl., ECF No. 231-5, Ex. 106.)

(*Id.*, Ex. 106 at '493, '497, '498.)

(*Id.*, Ex. 106 at '498, '500.)

## II.    Analysis

Activision misleadingly cites cases involving **high-level government officials** to claim that the burden is on Plaintiffs to show good cause to depose Mr. Zerza.  *See Silva*, 2021 WL 211613, at *2 (Sheriff); *Conforto*, 2014 WL 12560881, at *6 (Navy admirals); *Kob*, 2009 WL 3706820, at *4 (County Board President).  That misstates the applicable law and reverses the burden.  Mr. Zerza is a corporate employee, not a government official, and "[c]ases in this district make clear that the burden remains on the party seeking a protective order" to show "good cause" "when the apex doctrine is asserted as a basis for limiting discovery" of a corporate employee.  *Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *1 n.1 (N.D. Cal. Apr. 3, 2015).

To determine whether good cause exists, courts consider (i) whether the deponent has "first-hand, non-repetitive knowledge of the facts at issue in the case" and (ii) whether there are "other less intrusive discovery methods, such as interrogatories and depositions of lower level employees".  *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007).  Applying those factors, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition".  *Id.*  "[T]hat the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery".  *In re Trans. Pass. Air Transp. Antitrust Litig.*, 2014 WL 939287, at *3 (N.D. Cal. Mar. 6, 2014).

Mr. Zerza's testimony on the facts at issue in this case will be essential evidence for the jury.  Plaintiffs' case is predicated on Google's anticompetitive agreements that foreclosed competition in the market for the distribution of mobile apps to Android users.  .  Mr. Zerza is a critically important witness in this case.

Depositions of lower-level Activision employees are not an option. Activision concedes that Mr. Zerza is the ***sole employee at Activision*** with personal knowledge of ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. And Mr. Zerza is the only person, ***anywhere***, who was present for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, it is critical that the jury hear Mr. Zerza's testimony on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012) (noting that "the need of district courts to hear . . . live testimony is the bedrock of the search for truth in our judicial system."). Contrary to Activision's arguments, Mr. Zerza's deposition is not merely to fill gaps in Plaintiffs' understanding or "add color", but to prepare fundamental evidence for trial. *Cf. Oskoui v. JPMorgan Chase Bank*, 2019 WL 8955363, at *4 (C.D. Cal. Apr. 1, 2019).

Adam Liss is not a viable alternative to Mr. Zerza. Most importantly, Mr. Zerza was a decisionmaker at Activision; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. From the documents, it appears Mr. Liss was not even present when ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Mr. Liss also did not participate in ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Finally, having Mr. Liss testify ***about Activision***, as an Epic employee, would prejudice Plaintiffs and confuse the jury. It would add needless complexity to a factual story that only Mr. Zerza can tell in full.

Activision mentions the possibility of a written deposition. But a written deposition "proceeds in a manner similar to oral depositions [where] the deponent is put under oath and then [a] deposition officer 'must ask the deponent [the written] questions and record the answers verbatim'". *Richards v. Pac. Gas & Elec. Co.*, 2017 WL 10592150, at *2 (C.D. Cal. Oct. 27, 2017). "Therefore, [the] contention that a deposition by written questions is appropriate here because it is a less intrusive alternative is without merit". *Id.* More fundamentally, a written deposition is not a sufficient alternative to an oral deposition in a case like this one. During a written deposition, "counsel are unable to observe the demeanor of the witness and evaluate [his] credibility in anticipation of trial", and the format "does not permit the probing follow-up questions necessary in all but the simplest litigation". *Oskoui*, 2019 WL 8955363, at *4 .

Activision's sole remaining argument is that Mr. Zerza is busy and important. But no case holds that a busy schedule alone presents good cause for a protective order. To the contrary, even nonparty CEOs must testify where the "matters at issue are", like here, "conversations in which [the witness] himself participated". *HCP Laguna Creek CA, LP v. Sunrise Sr. Living Mgmt., Inc.*, 2010 WL 890874, at *2, *4 (M.D. Tenn. Mar. 8, 2010).



**ACTIVISION BLIZZARD, INC.'S POSITION**

On March 23, 2021, Plaintiff Epic Games, Inc. ("Epic") issued a sweeping document subpoena to Activision containing over 69 requests and sub-requests on numerous topics. After extensive meet and confers, the parties reached an agreement on a scope of document production that Plaintiffs' counsel identified as their priorities within the admittedly overbroad subpoena. Activision's productions consisted of various highly confidential and sensitive internal analyses, including a detailed assessment of its prospective partnership with Google and several documents describing ███████████████████████████████████████. On March 10, 2022, Plaintiffs asked to depose one of Activision's highest-ranking officials, its Chief Financial Officer, to "add color" and fill in unidentified informational gaps in the Google-deal document. Now, for the first time, Plaintiffs claim they also need this deposition to further probe ██████████████████████ ███████████████████ To grant Plaintiffs' discovery request would not only turn the apex doctrine on its head; it would contravene the principle that non-party discovery is limited and must be no more burdensome than necessary.

Worse, Plaintiffs have no need to depose Activision's CFO on either topic because, as Activision has repeatedly told Plaintiffs, a current Epic employee—and former Activision employee—was integral to the negotiation of the deal with Google and drafting of the related documents. Activision has allowed him to provide deposition testimony on this topic. Further, Plaintiffs can obtain—and seemingly have obtained—discovery from Google on this topic. Thus, contrary to Plaintiffs' assertions, Mr. Zerza is neither the best nor the least burdensome source of this information. As for ██████████████████████, Plaintiffs, again, fail to identify what more they require beyond the documents already produced. Indeed, Plaintiffs' portion of this Brief demonstrates that they already have the relevant details regarding ██████████████████████. Thus, there is simply no need to subject Activision's CFO to a deposition. Activision respectfully asks that the Court quash Plaintiffs' deposition subpoena.

**I.    Mr. Zerza Is Protected by the Apex Doctrine.**

As recognized by this Court, "deposition notices directed at an official at the highest level or 'apex' of corporate management . . . create[] a tremendous potential for abuse or harassment." *See M.H. v. Cnty. of Alameda*, 2013 WL 5497176, at *1 (N.D. Cal. Oct. 3, 2013). As a result, courts may limit such apex depositions when appropriate. "When a party seeks a protective order to prohibit an apex deposition, the court will first consider whether the objecting party has shown that [the] subject of the deposition is sufficiently high-ranking to invoke the deposition privilege." *See DeSilva v. Allegran USA, Inc.*, 2020 WL 5947621, at *2 (C.D. Cal. Aug. 11, 2020); *Conforto v. Mabus*, 2014 WL 12560881, at *6 (S.D. Cal. Sept. 24, 2014). As the CFO of a multi-billion-dollar company, Mr. Zerza undoubtedly qualifies as an apex official. *See, e.g.*, *Mehmet v. PayPal, Inc.*, 2009 WL 921637, at *2–3 (N.D. Cal. Apr. 3, 2009) (applying apex analysis to PayPal CFO).

**II.   Plaintiffs Have Not Made the Requisite Showing to Justify Deposing Mr. Zerza.**

Recognizing that apex depositions create "a tremendous potential for abuse or harassment," (*Cnty. of Alameda*, 2013 WL 5497176, at *1), courts require that a party seeking to depose an apex official establish "extraordinary circumstances" to justify its request. *See Estate of Silva v. City of*

*San Diego*, 2021 WL 211613, at *2 (S.D. Cal. Jan. 21, 2021); *Arminak v. Arminak & Assocs., LLC*, 2017 WL 10402987, at *4 (C.D. Cal. Mar. 30, 2017). Plaintiffs have not made this showing.

In evaluating Plaintiffs' request, two considerations are particularly important: "(1) whether [Mr. Zerza] has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition [*i.e.*, here, the Plaintiffs] has exhausted other less intrusive discovery methods." *Cnty. of Alameda*, 2013 WL 5497176, at *1.

### A. Plaintiffs have not shown that Mr. Zerza has first-hand non-repetitive knowledge.

Plaintiffs have failed to show that Mr. Zerza has any unique knowledge that is integral to their claims, and Activision has repeatedly made clear to Plaintiffs that Mr. Zerza possesses no such knowledge. Activision understands that Plaintiff Epic has cited to "preferential deals" that Defendant Google has reached "with major mobile app developers," including Activision, which Google allegedly used "to keep its monopolistic behavior publicly unchallenged." *See* First Am. Compl. at ¶ 33, ECF No. 81-1. Activision further understands that Plaintiffs primarily seek to use Mr. Zerza's deposition to probe Activision's deal with Google. Indeed, up until this Brief, Plaintiffs never indicated that they intended to depose Mr. Zerza for any other reason. Activision has already produced a detailed internal document on this very topic. This document assesses the terms of a proposed Google partnership and comprehensively analyzes and evaluates each term. Plaintiffs have failed to identify any relevant information missing from this document, claiming instead that they simply need more "color" to the document.

Plaintiffs contend, without support, that Mr. Zerza was present for every exchange between Activision and Google. This is false. As previously explained to Plaintiffs, there is no reason to believe that Mr. Zerza has relevant and unique personal knowledge beyond the document Activision produced. The negotiations that were the subject matter of the document—and are now the purported subject matter of this deposition request—took place over two years ago. Mr. Zerza did not negotiate the specific terms of the Activision-Google deal by himself, nor did he solely prepare an analysis of Activision's partnership with Google. What is more, Plaintiffs' Brief only proves that they are able to obtain the information they require from parties to the litigation. *See Glass Egg Digit. Media v. Gameloft, Inc.*, 2019 WL 4166780, *5 (N.D. Cal. Sept. 3, 2019). Thus, Plaintiffs' assertion that Mr. Zerza has *unique* first-hand knowledge of the Activision-Google deal is false, and Activision has said nothing to the contrary.

In this Brief, Plaintiffs broadened the scope of their deposition request for the first time to include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, Activision has produced several highly confidential, detailed documents on this topic, and there is no basis for Plaintiffs to contend that Mr. Zerza has any knowledge apart from these documents.

### B. Plaintiffs can obtain the information sought via less intrusive discovery means.

To the extent Plaintiffs need information that is not captured by the detailed documents Activision has produced, this information can be obtained via means that are far less intrusive and onerous than their requested apex deposition. *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007

WL 205067, at *4 (N.D. Cal. Jan. 25, 2007) ("unique personal knowledge by the high corporate official, unavailable from less intrusive discovery, including interrogatories and the depositions of lower-level employees" "is an essential component of the standard for an apex deposition").

During the parties' meet and confers, the Activision-Google deal was Plaintiffs' singular focus for their deposition request. On this topic, Activision repeatedly presented less burdensome alternatives to Plaintiffs. Activision explained that Mr. Adam Liss—current Epic employee and former Activision Vice President of Commercial Finance—was personally involved in the day-to-day negotiations with Google. Thus, Activision implored Plaintiffs to consider eliciting testimony from Mr. Liss, offering to discuss means by which he could, for this limited purpose, be excused from the confidentiality obligations he owes to Activision. Plaintiffs flatly refused to even explore this option. Activision also told Plaintiffs that it would be willing to consider addressing their discovery requests via a declaration or 30(b)(6) deposition by written question, which would enable Activision to collect historic information and address—in a targeted fashion—Plaintiffs' purported needs. Plaintiffs dismissed these proposals as well. And, regarding Plaintiffs' unforeseen "need" to probe [REDACTED], again, Activision has provided documents detailing those plans, and Plaintiffs fail to identify any topic that is not adequately addressed by the documents. Because Plaintiffs never previously raised this subject, they have not even tried to identify relevant lower-level witnesses.

Courts have recognized the suitability of such less intrusive discovery means as—at a minimum—a first step that should be explored before seeking to compel an apex deposition. *See, e.g.*, *Arminak*, 2017 WL 10402987, at *6 (quashing non-party deposition subpoena where requesting party failed to "show[] why th[e] information [sought] could not be obtained through a 30(b)(6) deposition, [a lower official's] deposition, or written discovery"); *United States v. Medtronic, Inc.*, 2018 WL 11145993, at *1 n.1 (E.D. Pa. Nov. 13, 2018) (deposition by written question for apex deponent). Plaintiffs' unwillingness to consider other options is not a basis to excuse them from their legal obligation to seek a less intrusive alternative to an apex deposition.

### III. Activision's Non-Party Status Further Supports Quashing of Plaintiffs' Subpoena.

Plaintiffs' subpoena is also inconsistent with Activision's non-party status. "[T]he Ninth Circuit has a long-standing policy of affording extra protection to non-parties subject to discovery requests." *Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 11632962, at *2 (C.D. Cal. May 4, 2017); *see Updateme Inc. v. Axel Springer SE*, 2018 WL 5734670, at *3 (N.D. Cal. Oct. 31, 2018) ("Requests to non-parties should be narrowly drawn to meet specific needs for information."). It follows that apex principles apply with added force to non-party depositions.

Plaintiffs' threadbare assertion that they require Mr. Zerza's deposition to further explore documents that Activision has already produced, where there is no evidence that Mr. Zerza has any added or unique knowledge of the subject matters, falls well short of the "specific need" showing that is required to sustain a non-party deposition request of an apex official. *See Arminak*, 2017 WL 10402987, at *6 (quashing non-party apex deposition subpoena). This is particularly true considering the numerous less intrusive discovery options that are available to Plaintiffs.

Judge Donato<br>
May 27, 2022<br>
Page 10 of 10

## E-FILING ATTESTATION

    I, J. Wesley Earnhardt, am the ECF user whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                      */s/ J. Wesley Earnhardt*
                                      J. Wesley Earnhardt