HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:     (949) 229-8640

HUESTON HENNIGAN LLP
Joseph A. Reiter, State Bar No. 294976
jreiter@hueston.com
Christine Woodin, State Bar No. 295023
cwoodin@hueston.com
Michael K. Acquah, State Bar No. 313955
macquah@hueston.com
William M. Larsen, State Bar No. 314091
wlarsen@hueston.com
Julia L. Haines, State Bar No. 321607
jhaines@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:     (213) 788-4340

Attorneys for Plaintiffs Match Group, LLC;
Humor Rainbow, Inc.; PlentyofFish Media ULC;
and People Media, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Match Group, LLC, et al. v. Google LLC, et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF ADRIAN ONG IN RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED RELATING TO DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS TO MATCH GROUP'S COMPLAINT [DOCKET No. 282]**<br><br>Judge James Donato |

DECLARATION OF ADRIAN ONG IN RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION TO
CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED

## DECLARATION OF ADRIAN ONG

I, Adrian Ong, declare as follows:

1. I am Senior Vice President of Operations at Match Group, LLC (""MGL").

2. Through the course of my employment with MGL, I have become familiar with MGL's treatment of proprietary business information as it pertains to the dating services operated by MGL, including Tinder and Match. Through my role, I am also familiar with how other companies within the Match Group, Inc. portfolio, including Humor Rainbow, Inc., PlentyofFish Media ULC, and People Media, Inc. (collectively with MGL, the "Match Plaintiffs") handle their respective proprietary business information, including such information as it pertains to their respective brands, OkCupid, PlentyofFish, and OurTime. I make this declaration in response to Defendants' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed, Dkt. No. 282 ("Motion to Seal"), pursuant to Civil Local Rule 79-5(e). I know the facts stated herein based on my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

3. I have been employed by MGL since 2001, and overall within the highly competitive online dating category for over twenty years. Companies in these industries, including Match Plaintiffs, undertake extensive measures to protect their confidential information from competitors to ensure that they maintain their competitive advantages. Match Plaintiffs are key innovators and constantly seek to gain—and maintain—an edge in this always evolving industry; Match Plaintiffs compete vigorously with both new and established companies that are eager to imitate ideas or garner strategic insights from industry leaders like Match Plaintiffs.

4. I have reviewed the Motion to Seal as well as the Unredacted Answer and Counterclaims to Match's Complaint (the "Counterclaim"). Specified portions of the Counterclaim should remain under seal for the reasons stated in this declaration.

5. Specifically, disclosing this information to third parties could be used against the Match Plaintiffs in their future business negotiations with third parties. Further, releasing these numbers when the Match Plaintiffs' competitors do not would allow those competitors to selectively

compete against the Match Plaintiffs' brands where they are most competitively vulnerable, placing the Match Plaintiffs' brands at a competitive disadvantage. Information that may seem insignificant on its own, such as Match Plaintiffs' projections on the effect of technological and software features offered by Google, can (individually or with other documents) give an expert reader or industry competitor meaningful insight. For example, an assumption about the effect of a product feature on Match Plaintiffs' revenue and subscriptions could give competitors an understanding into user behaviors that Match Plaintiffs are seeing in its data and into the way that Match Plaintiffs models new products and makes product decisions. Those insights can be derived even if data or assumptions are several years old.

6. With respect to some of the information identified below (*e.g.*, ¶¶ 31, 33-34), Judge Yvonne Gonzalez Rogers granted MGL's Motion to Seal regarding similar and in some cases substantively identical information submitted in a related case, *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640, at Dkt. No. 547, pp. 6–7.

The Match Plaintiffs requests to seal the following materials and for those materials to remain highly confidential at the trial:

| Para. | Text to Be Sealed | Reason(s) for Sealing Request |
|---|---|---|
| Intro. to Answer | Intro: [Fully redacted excerpt on p.2]. | The information in this paragraph is an excerpt from GOOG-PLAY-003312840, a document produced in this litigation with a "Highly Confidential – Attorneys' Eyes Only" designation. Match Plaintiffs consider the renewal rates on Match Plaintiffs' dating services to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. Similarly, Match Plaintiffs' assessment of the positive (or negative) future value of subscriptions on a particular platform (iOS or Android) is competitively sensitive information that Match Plaintiffs' competitors could use to compete with Match Plaintiffs more effectively and place Match Plaintiffs at a competitive disadvantage. |
| ¶ 31 | For example, **[REDACTED]** million users downloaded the Android version | The information in this paragraph is derived from MATCH-EVG-00001459 and MATCH- |

| | | | |
|---|---|---|---|
| | | of Match Group's Tinder app from 2018 to 2021, but only **[REDACTED]** million of those (**[REDACTED]**) made a purchase through the app. Similarly, of the **[REDACTED]** million users who downloaded the Android version of Match Group's Plenty of Fish app from 2019 to 2021, only **[REDACTED]** made a purchase through the app. Thus, only approximately **[REDACTED]** of the Google Play users of Match Group's apps pay anything, while **[REDACTED]** use the apps for free. | EVG-00001490, documents that Match produced in this litigation prior to filing its compliant (i.e., as a third party) with a "Non-Party Highly Confidential – Outside Counsel Eyes Only" designation. Match Plaintiffs consider datapoints such as the number of active purchases of Match Plaintiffs' in-app products to be extremely confidential and proprietary business information, which would give Match Plaintiffs' competitors unfair insights into the business. The number and percentage of users who made digital purchases within an app, as well as the number of users of each of Match Plaintiffs' dating services who purchase in-app content, could be used to determine where Tinder is competitively vulnerable. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
| | ¶ 33 | For example, in 2021 Match Group's U.S. revenue for its popular Tinder app received through the Tinder website was almost **[REDACTED]**. For its Match app, **[REDACTED]** in 2021 U.S. revenue came from users paying via Match's website. | See Reason(s) for Sealing Request as to ¶ 31. The information in this paragraph is derived from MATCH-EVG-00001490, a document Match produced in this litigation prior to filing its compliant (i.e., as a third party) with a "Non-Party Highly Confidential – Outside Counsel Eyes Only" designation. As with the number and percentage of users who make online purchases within a particular app or vertical, Match Plaintiffs consider the amount of web-only revenue for specific Match Plaintiffs' dating services to be confidential and competitively sensitive information. The information in this paragraph also reveals the geographical location of Match Plaintiffs' users' purchasing behavior, which could give Match Plaintiffs' competitors further insight into the market for Match Plaintiffs' dating services. If publicly revealed to Match Plaintiffs' competitors, those competitors could gain insight into areas where Match Plaintiffs are competitively vulnerable, which those competitors could use to gain a competitive advantage. |
| | ¶ 34 | Match documents reveal that its most popular app, Tinder, had **[REDACTED]** active U.S. users on its | See Reason(s) for Sealing Request as to ¶ 31. The information in this paragraph is derived from MATCH-EVG-00001440 and MATCH- |

| | | | |
|---|---|---|---|
| 1 | | iOS app in 2021 with only **[REDACTED]** users on its Android app. In terms of financials, in 2021, **[REDACTED]** of Match Group's U.S. revenue came from payments made through its Tinder app on iOS and only **[REDACTED]** came from payments made through its Android app. Thus, approximately **[REDACTED]** of revenue for subscriptions that could be used in the Android Tinder app were made outside of the app. For its Match app, beyond the payments made via Match's website, **[REDACTED]** in 2021 revenue from its iOS app and **[REDACTED]** from its Android app. Thus, approximately **[REDACTED]** of payments for subscriptions that could be used in the Android Match app were made outside of the Android app. | EVG-00001490, documents Match produced in this litigation prior to filing its compliant (i.e., as a third party) with a "Non-Party Highly Confidential – Outside Counsel Eyes Only" designation. Match Plaintiffs do not typically disclose the number of monthly active users (MAUs) they have on particular platforms for particular brands, the amount of revenue that originates from particular platforms, the number of unique users who access the app on particular platforms and/or from particular geographical locations, or the number of unique users who purchased digital products on particular platforms. Match Plaintiffs consider these datapoints to be extremely confidential and proprietary business information, which would give Match Plaintiffs' competitors unfair insights into the business. Tinder is a dating app, and one of the key competitive differentiators among dating apps is the relative size of their networks—having a larger dating pool attracts new users to the app because they perceive a greater likelihood of finding a match, which in turn grows the dating pool. The size of a dating app's network on different platforms and in different markets are competitively significant datapoints because with that information, rival dating apps could better decide how to compete against the app which has its data disclosed. For that reason, dating apps—unlike apps in other categories—rarely disclose the number of MAUs they have in particular markets or verticals, nor the other categories of information disclosed in this paragraph. |
| 22 | ¶ 38 | ¶ 38: Match Group made plain that a prime complaint with Google's policies is that Google makes it too easy for users to unsubscribe from Match Group's apps, which while good for users is, from Match Group's perspective, bad for Match Group's bottom line: **[REDACTED]**. Match Group further complained that Google Play offers more convenience to Android customers than Match Group and other app stores, which – in Match | The information in this paragraph is an excerpt from GOOG-PLAY-003312840, a document produced in this litigation with a "Highly Confidential – Attorneys' Eyes Only" designation. Match Plaintiffs consider the renewal rates on Match Plaintiffs' dating services to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. Similarly, Match Plaintiffs' assessment of the positive (or |

- 5 -

DECLARATION OF ADRIAN ONG IN RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED

6223016

| | |
|---|---|
| Group's view – does not sufficiently obstruct a customer's attempts to cancel. **[REDACTED]**. | negative) future value of subscriptions on a particular platform (iOS or Android) is competitively sensitive information that Match Plaintiffs' competitors could use to compete with Match Plaintiffs more effectively and place Match Plaintiffs at a competitive disadvantage. |

7.  I understand from counsel that Civil Local Rule 79-5(b) allows sealing any document that is "privileged, protectable as a trade secret or otherwise entitled to protection under the law." For documents introduced in connection with dispositive proceedings, "compelling reasons" must justify sealing court records. *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). I further understand that the Ninth Circuit and Supreme Court have long recognized that trade secrets and other information "that might harm a litigant's competitive standing" satisfy the compelling reasons standard. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (("[C]ourts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing")); *see also Ctr. v. Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (same).

8.  The information Match Plaintiffs seek to seal constitutes "detailed financial information" that courts have recognized parties "have an interest in keeping . . . secret." *Apple Inc. v. Samsung Elec. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013). The information contained in the exhibits above would allow Match Plaintiffs' competitors and counterparties to understand granular details and datapoints about how many active users on Match Plaintiffs' dating services purchase subscriptions and other in-app purchases, and would accordingly harm Match Plaintiffs' competitive standing. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform and geographical location, then the rival app could then reallocate spending to that platform and geographical location to gain a competitive advantage.

9.  Match Plaintiffs have "narrowly tailored" their request to "only redact the portions of filings and the precise exhibits" that implicate "confidential business information," and this information is "not available to the public." *In re Qualcomm Litig.*, No. 3:17-cv-01018-GPC-MDD,

2017 WL 5176922, at *2 (S.D. Cal. 2017). Match Plaintiffs accordingly ask that these materials be maintained under seal.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. This declaration was executed this 18th day of July, 2022, in Santa Rosa Beach, Florida.

DocuSigned by:

*Adrian Ong*

—EB8453A91E5D48C...

Adrian Ong