# Exhibit B1
# to
# R. Satia Declaration

### Exhibit B1 to the Satia Declaration: Contested Sealing Requests

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| **Exhibit A2 to the Cramer Declaration** (Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-3]) | Page 43, paragraph 92. The four words following "sold with"; and between "if" and "Google feared". | This text reflects non-public, current, competitively sensitive information about an aspect of the Play Store monetization strategy as well as other strategic considerations related to the structure and use of its contractual agreements with carriers, OEMs, and developers. If disclosed, this information could give Google Play Store competitors an unfair advantage and result in competitive harm to Google. This text reveals specific details about the terms of Google's agreements as part of particular Google commercial programs and insights into Google's business strategies that have never been revealed publicly, including in the complaints filed in this Action. Public disclosure could cause harm to Google's competitive standing by giving competitors, for example, other app stores, insights into Google's business strategies. | The disputed language fails to meet the "compelling reasons" standard (or even the "good cause" standard) for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, Google claims sealing is warranted because the information relates to contractual agreements with carriers, but much of the information Google seeks to redact has already been disclosed in the various complaints filed in this Action. *See e.g.,* Consumer Plaintiffs' Second Amended Class Action Complaint, ECF No. 153-3 at Part II(A)(i). |
| **Exhibit A2 to the Cramer Declaration** (Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer, | Page 55, footnote 284. Following the percentage figure to "See also GOOG-PLAY-004119228.R"; and between "dollars towards" | This information reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public | The disputed language fails to meet the "compelling reasons" standard (or even the "good cause" standard) for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, |

## Exhibit B1 to the Satia Declaration: Contested Sealing Requests

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| Ph.D [MDL Dkt. No. 251-3]) | and the end of the sentence. | disclosure of this information is likely to result in competitive harm to Google, as it may inform competing app stores' strategies in targeting the very developers with which Google has contracted and influence other developers' negotiating strategy with Google. This text also contains non-public and confidential information regarding Google Play's internal assessment of its business model, and non-public and confidential Google financial information that have never been revealed publicly, including in the complaints filed in this Action. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Public disclosure could cause harm to Google's competitive standing by giving competitors, for example, other app stores, insights into Google's business strategies. | in ruling on Google's motion to seal the Parties complaints', the Court has already found that Google had failed to satisfy the sealing standard for many other terms and conditions concerning this Google program. The additional disclosures discussed herein are no different. |
| **Exhibit A2 to the Cramer Declaration** (Ex. 02 to Class | Page 26, footnote 84. Between "driven by" and "Id"; and between | This text reflects internal Google data on user behavior and app downloads. Google spends significant resources compiling and maintaining this valuable data, which is non-public | The disputed language fails to meet the "compelling reasons" standard (or even the "good cause" standard) for sealing. This information is not a "trade secret" and Google's conclusory, |

2

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| Certification Motion, Class Certification Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-3]) | "Apps are" and "Id." | information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into the metrics that Google collects relating to app downloads and user behavior and the findings from its data collection at no cost, unfairly tailoring their own competitive business strategy at Google's expense. | mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, Google claims sealing is warranted because the information relates to valuable, non-public data related to app downloads and user behaviors but the fact that *Google* tracks this information is hardly a secret, and therefore, there can be no compelling basis to suggest disclosure could cause the company injury. |
| **Exhibit A3 to the Cramer Declaration** (Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4]) | Page 22, footnote 53. Between "sell more" and "this could". | This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value, or lead to conjecture about | The disputed language fails to meet the "compelling reasons" standard (or even the "good cause" standard) for sealing. This information is not a "trade secret," or even confidential, and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact that Google could monetizes its business model in this manner is entirely consistent with Google's current, public Play business strategies, making it irrelevant whether Google has (or would) take this step if finally forced to face competitive pressures. Therefore, there is no compelling basis to suggest disclosure could cause the company injury. |

## Exhibit B1 to the Satia Declaration: Contested Sealing Requests

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| | | Google's future pricing models. Contrary to Plaintiffs' assertion, this information does not pertain to "hypothetical" business strategies in a "but for" world, but rather reflects business strategies that Google has actually evaluated and considered implementing in response to competition in the real world. | |
| **Exhibit A3 to the Cramer Declaration** (Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4]) | Page 25, paragraph 65. Between "initiative in which" and "Google asked"; between "Google asked" and "In that document"; and from "it would need" through the end of the sentence. | This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value and expectations. Contrary to Plaintiffs' assertion, the information does not pertain to generalized "competitive pressure on Google to expand its service offerings if it were to face competition" in a hypothetical world, but rather to strategies that Google has actually | The disputed language fails to meet the "compelling reasons" standard (or even the "good cause" standard) for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the competitive pressure on Google to expand its service offerings if it were to face competition in the In-App Aftermarket is central to this case, and these allegations do not involve sensitive information or counterparties. |

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| | | evaluated and considered implementing in response to competition in the real world. | |
| **Exhibit A4 to the Cramer Declaration** (Ex. 04 to Class Certification Motion, Class Certification Report of Douglas C. Schmidt, Ph.D [MDL Dkt. No. 251-5]) | Page 42, from "GOOG-PLAY-001088593" to the end of the sentence. | This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors, for example, other app stores, insights into Google's business strategies as to a specific developer. Contrary to Plaintiffs' assertion, the information does not pertain to some generalized question about whether "Google Play Billing is functionally a separate product," nor does Google request sealing due to potential embarrassment. The information, rather, reflects Google's confidential evaluation of whether a particular developer was compliant with a particular Google Play policy. Confidential "information regarding the parties' prospective business plans, dealings[,] and strategies" satisfies the "compelling reasons" standard, to say nothing of the lower "good cause" standard that applies here. *E.g., Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen'l Motors LLC*, No. 17-CV-03874-LHK, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019). | The disputed language fails to meet the "compelling reasons" standard (or even the "good cause" standard) for sealing. This information is not a "trade secret," or even confidential, and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact is already a matter of public record. *See* "New YouTube Premium and TV subscriptions on Android now use Google Play Billing," *9to5Google* (Apr. 20, 2022), available at https://9to5google.com/2022/04/20/youtube-premium-music-tv-google-play-billing/. Whether Google Play Billing is functionally a separate product is central to this case, and these allegations do not involve sensitive information or counterparties. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006). |

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| **Exhibit A1 to the Cramer Declaration** (Consumer Plaintiffs' Motion for Class Certification [MDL Dkt. No. 251]) | Page 8, between "take was" and "the Project"; and from "the form of" to the end of the sentence. | This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs and Google's strategy for negotiating those deals that have never been revealed publicly, including in the complaints filed in this Action. Public disclosure could cause harm to Google's competitive standing by giving competitors and others, including prospective business partners, insights into Google's business strategies and allowing them to alter their business tactics and negotiating strategies accordingly. There are compelling reasons (and good cause) to seal "terms of confidential contracts" like those in issue. *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, in ruling on Google's motion to seal the Parties complaints', the Court has already found that Google had failed to satisfy the sealing standard for many other terms and conditions concerning this Google program. The additional disclosures discussed herein are no different. |
| **Exhibit A1 to the Cramer Declaration** (Consumer Plaintiffs' Motion for Class Certification [MDL Dkt. No. 251]) | Page 8, n.10, between "noting that" and "Ex 41." | This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs and Google's strategy for negotiating those deals. Public disclosure could cause harm to Google's competitive standing by giving competitors and others, including prospective business partners, insights into Google's business strategies and allowing them to alter their business tactics and negotiating strategies accordingly. There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, this information does not concern the terms of any "particular Google commercial programs", but rather describes a general, publicly known position of Google's as it relates to its business. |

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| | | 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| **Exhibit A1 to the Cramer Declaration** (Consumer Plaintiffs' Motion for Class Certification [MDL Dkt. No. 251]) | Page 8, between "required developers to" and end of sentence. | This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs that have never been revealed publicly, including in the complaints filed in this Action. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly. There are compelling reasons (and good cause) to seal "terms of confidential contracts" like those in issue. *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, in ruling on Google's motion to seal the Parties complaints', the Court has already found that Google had failed to satisfy the sealing standard for many other terms and conditions concerning this Google program. The additional disclosures discussed herein are no different. |
| **Exhibit A1 to the Cramer Declaration** (Consumer Plaintiffs' Motion for Class Certification [MDL Dkt. No. 251]) | Page 8, n.11, from beginning of footnote to "See Ex. 39." | This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs that have never been revealed publicly, including in the complaints filed in this Action. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly. There are compelling reasons (and good cause) to seal "terms of confidential | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, in ruling on Google's motion to seal the Parties complaints', the Court has already found that Google had failed to satisfy the sealing |

## Exhibit B1 to the Satia Declaration: Contested Sealing Requests

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| | | contracts" like those in issue. *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | standard for many other terms and conditions concerning this Google program. The additional disclosures discussed herein are no different. |
| **Exhibit A1 to the Cramer Declaration** (Consumer Plaintiffs' Motion for Class Certification [MDL Dkt. No. 251]) | Page 8, between "largest developers" and "Ex. 43"; and "at -697.R" and end of sentence, with the exception of the dollar figure, which is not in dispute. | This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs and Google's internal analyses of those agreements that have never been revealed publicly, including in the complaints filed in this Action. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies. Disclosure will also put Google at a competitive disadvantage in commercial negotiations with certain partners. There are compelling reasons (and good cause) to seal "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019), and "internal competitive analyses," *United States v. Chen*, No. 17-cr-00603-BLF, 2022 WL 2789557, at *2 (N.D. Cal. July 14, 2022). | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the facts in the first redaction concerning competitors' actions are readily discernable from publicly available sources. And in ruling on Google's motion to seal the Parties complaints', the Court has already found that Google had failed to satisfy the sealing standard for many other terms and conditions concerning this Google program. The additional disclosures discussed herein are no different. |
| **Exhibit A1 to the Cramer Declaration** (Consumer Plaintiffs' Motion | Page 23, between "such as" and "would differentially"; between "take | This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings, negotiations, and strategy with respect to counterparties. Public disclosure | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails |

8

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| for Class Certification [MDL Dkt. No. 251]) | steps" and "in the face"; and between "some cases" and "Ex. 3, Singer Reply." | could cause harm to Google's competitive standing by giving competitors and others, including prospective business partners, insights into Google's business strategies. Contrary to Plaintiffs' assertion, this information does not pertain to "hypothetical" business strategies in a "but for" world, but rather reflects business strategies that Google has actually evaluated and considered implementing in response to competition in the real world. | to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact that Google could monetizes its business model in this manner is in some hypothetical "but for" world is not a compelling basis to suggest disclosure could cause the company injury. To the contrary, the public has a compelling interest in disclosure of actions Google claims it would take to harm consumers if it lost it monopoly power. |
| **Exhibit A49 to the Cramer Declaration** (Consumer Plaintiffs' Reply in Support of Motion for Class Certification [MDL Dkt. No. 289]) | Page 11, Lines 4-5, between "Mot. at 23-24" and "would run counter". | This text describes confidential and non-public details about potential changes to Google Play's monetization model and revenue sharing terms between Google and app developers. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. Contrary to Plaintiffs' assertion, this information does not pertain to "hypothetical" business strategies in a "but for" world, but rather reflects business strategies that Google has actually evaluated and considered | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact that Google could monetizes its business model in this manner is in some hypothetical "but for" world is not a compelling basis to suggest disclosure could cause the company injury. To the contrary, the public has a compelling interest in disclosure of actions Google claims it would take to harm consumers if it lost it monopoly power. |

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| | | implementing in response to competition in the real world. | |
| **Exhibit A49 to the Cramer Declaration** (Consumer Plaintiffs' Reply in Support of Motion for Class Certification [MDL Dkt. No. 289]) | Page 1, Lines 23-24, between "by forcing it to" and "or to reduce security"; and between "Speculation that" and "for the first time in its history". | This text describes confidential and non-public details about potential changes to Google Play's monetization model and revenue sharing terms between Google and app developers. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. Contrary to Plaintiffs' assertion, this information does not pertain to "hypothetical" business strategies in a "but for" world, but rather reflects business strategies that Google has actually evaluated and considered implementing in response to competition in the real world. | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact that Google could monetizes its business model in this manner is in some hypothetical "but for" world is not a compelling basis to suggest disclosure could cause the company injury. To the contrary, the public has a compelling interest in disclosure of actions Google claims it would take to harm consumers if it lost it monopoly power. |
| **Exhibit A49 to the Cramer** | Page 3, Lines 22-24, between "that | This text describes Google's internal, confidential, and non-public thinking regarding | The disputed language fails to meet the "compelling reasons" standard for sealing. This |

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| **Declaration** (Consumer Plaintiffs' Reply in Support of Motion for Class Certification [MDL Dkt. No. 289]) | if" and "the result would"; between "the result would" and "and Google would"; and from "and Google would" to the end of sentence. | Google Play's business strategy and priorities regarding its business strategy and business model. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores respond to or plan for variations in Google's business model. Contrary to Plaintiffs' assertion, this information does not pertain to "hypothetical" business strategies in a "but for" world, but rather reflects business strategies that Google has actually evaluated and considered implementing in response to competition in the real world. | information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, what Google has internally contemplated regarding the "but for" world where it had to face competition in the alleged markets is central to this case, and these allegations do not involve highly sensitive information or counterparties. |
| **Exhibit A49 to the Cramer Declaration** (Consumer Plaintiffs' Reply in Support of Motion for Class Certification [MDL Dkt. No. 289]) | Page 10, Line 18-19. Between "competition by" and "or degrading)". | This text describes confidential and non-public details about prospective fee structures between Google and app developers. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. Contrary to Plaintiffs' assertion, this information does not pertain to "hypothetical" business strategies in a "but for" world, but | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact that Google could monetizes its business model in this manner is in some hypothetical "but for" world is not a compelling basis to suggest disclosure could cause the company injury. To the contrary, the public has a compelling interest in disclosure of |

**Exhibit B1 to the Satia Declaration: Contested Sealing Requests**

| Document Name | Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiff's Position in Opposition to Sealing |
|---|---|---|---|
| | | rather reflects business strategies that Google has actually evaluated and considered implementing in response to competition in the real world. | actions Google claims it would take to harm consumers if it lost it monopoly power. |
| **Exhibit A49 to the Cramer Declaration** (Consumer Plaintiffs' Reply in Support of Motion for Class Certification [MDL Dkt. No. 289]) | Page 3, Line 13. Between "highlights as" and "chose not". | This text describes confidential and non-public details regarding an app developer's business strategies on Google Play. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The developers identified in this text also have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play. | The disputed language fails to meet the "compelling reasons" standard for sealing. This information is not a "trade secret" and Google's conclusory, mechanical, and boilerplate language regarding the purported harm it might suffer fails to provide "specific factual findings" explaining why these particular allegations are so commercially sensitive that the public cannot see them. Indeed, the fact that Samsung engages in such conduct is publicly known—otherwise such business strategies could not be successful. |