Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY  10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
Dane P. Shikman, Bar No. 313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

This Document Relates To:

*Match Group, LLC et al. v. Google LLC et al.*,
Case No. 3:22-cv-02746-JD

*Epic Games Inc. v. Google LLC et al.*, Case
No. 3:20-cv-05671-JD

Case No. 3:21-md-02981-JD

MDL No. 2891

**PUBLIC-REDACTED VERSION**
**DEFENDANTS' OPPOSITION TO
EPIC'S AND MATCH'S MOTION
TO AMEND COMPLAINTS**

Judge: Hon. James Donato
Date: November 17, 2022
Time: 10:00 a.m. Pacific Time

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND .....................................................................................................3

    A.    Relevant Procedural History ........................................................................3

    B.    Epic's and Match's Proposed Amendments .................................................4

III.  ARGUMENT ...........................................................................................................5

    A.    Governing Legal Standards ..........................................................................5

    B.    Plaintiffs Have Not Met Their Burden to Demonstrate Good Cause ........................5

        1.    Epic and Match Fail to Meet Their Burden to Demonstrate Diligence ...............................................................................................6

        2.    Allowing Amendment Would Severely Prejudice Google ..........................8

        3.    Additional Discovery Would Threaten the Existing Case Schedule ...........11

    C.    Amendment Is Not Warranted Because It Would Be Futile ...................................11

        1.    Plaintiffs Fail to Plead a Horizontal Agreement Not to Compete ..............12

        2.    *Per Se* Treatment Is Unavailable Here As a Matter of Antitrust Law ........14

IV.   CONCLUSION ......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Amcor Flexibles Inc v. Fresh Express Inc.*,
No. C 14-01025 LB, 2015 WL 890360 (N.D. Cal. Mar. 2, 2015)............................................7

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006)..................................................................................................5

*In re ATM Fee Antitrust Litig.*,
554 F. Supp. 2d 1003 (N.D. Cal. 2008) ...............................................................................12

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
166 F. Supp. 3d 988 (N.D. Cal. 2015) .................................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................12, 13

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995)............................................................................................11, 12

*California ex rel. Harris v. Safeway, Inc.*,
651 F.3d 1118 (9th Cir. 2011)..............................................................................................14

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999)............................................................................................9, 12

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986)..............................................................................................14

*Eberhard v. Cal. Highway Patrol*,
No. 14-cv-01910-JD, 2015 WL 4735213 (N.D. Cal. Aug. 10, 2015) ......................................6

*EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*,
156 F. Supp. 2d 1116 (N.D. Cal. 2001) ...............................................................................7

*Frame-Wilson v. Amazon.com*, Inc.,
No. 2:20-cv-00424-RAJ, 2022 WL 741878, at *7 (W.D. Wash. Mar. 11, 2022)....................14

*Frost v. LG Elecs., Inc.*,
801 F. App'x 496 (9th Cir. 2020) .......................................................................................12

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020)........................................................................................9, 14, 15

*In re Google Digital Advert. Antitrust Litig.*,
No. 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) ........................................13, 15

*Gough v. Rossmoor Corp.*,
    585 F.2d 381 (9th Cir. 1978)....................................................................................15

*Guerrero v. Cnty. of Alameda*,
    No. C 18-02379 WHA, 2018 WL 4680183 (N.D. Cal. Sept. 28, 2018)...................12

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990).....................................................................................5

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992).................................................................................5, 6

*Krehl v. Baskin-Robbins Ice Cream Co.*,
    664 F.2d 1348 (9th Cir. 1982)...................................................................................15

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007).......................................................................................9, 14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................................................13

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    No. 10-cv-5591-SC, 2012 WL 6095089 (N.D. Cal. Dec. 7, 2012) ............................7

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)...................................................................................................13

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015)...................................................................................12

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    795 F.3d 1124 (9th Cir. 2015)...................................................................................13

*NSS Labs, Inc. v. Symantec Corp.*,
    No. 18-cv-05711-BLF, 2019 WL 3804679 (N.D. Cal. Aug. 13, 2019)....................12

*Ohio v. American Express Co.*,
    138 S. Ct. 2274 (2018)...............................................................................................15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    No. 16-CV-01393-JST, 2017 WL 3149297 (N.D. Cal. July 25, 2017) ......................8

*Par Pharm., Inc. v. Takeda Pharm. Co.*,
    No. 5:13-cv-01927-LHK-PSG, 2014 WL 3704819 (N.D. Cal. July 23, 2014) .........7

*Schor v. Abbott Lab'ys*,
    457 F.3d 608 (7th Cir. 2006)....................................................................................14

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

*Singh v. City of Oakland*,
    295 F. App'x 118 (9th Cir. 2008) ............................................................................11

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
    151 F.3d 1132 (9th Cir. 1998).................................................................................11

*Stonebrae, L.P. v. Toll Bros.*,
    No. C-08-0221 EMC, 2010 WL 114010 (N.D. Cal. Jan. 7, 2010) ..........................12

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
    373 F.3d 57 (1st Cir. 2004) ....................................................................................12

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006)...................................................................................................14

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    No. C04-02123 MJJ, 2007 WL 4104099 (N.D. Cal. Nov. 16, 2007) ...............5, 8, 11

*United States v. eBay, Inc.*,
    968 F. Supp. 2d 1030 (N.D. Cal. 2013) .................................................................10

**FEDERAL STATUTES**

Sherman Act § 1 ................................................................................................. 1, passim

Sherman Act § 2 ................................................................................................. 1, passim

**FEDERAL RULES**

Rule 12(b)(6)..................................................................................................................12

Rule 15 ..........................................................................................................................11

Rule 15(a).................................................................................................................5, 11

Rule 16 ............................................................................................................................2

Rule 16(b)................................................................................................................5, 11

**OTHER AUTHORITIES**

Epic Games, *Frequently Asked Questions*, https://www.epicgames.com/site/en-
    US/epic-games-store-faq (last updated Aug. 18, 2021)...........................................13

1    I.      **INTRODUCTION**

2           Having reached the very end of nearly two years of discovery, with no evidence of harm

3    to competition, Epic and Match ("Plaintiffs") now seek to transform the case.  Under the guise of

4    merely "conforming their pleadings," Plaintiffs are attempting to introduce a fundamentally new

5    theory of liability *after* the close of fact discovery and *ten months after* the deadline to amend the

6    pleadings.  Not only is this effort far too late, it also seriously prejudices Google by depriving it

7    of the ability to take discovery demonstrating that Plaintiffs' new theory is baseless.

8           The initiative on which Plaintiffs base their proposed new claims—formerly known within

9    Google as "Project Hug"—provides incentives for game developers to make their products and

10   services available on the Google Play store.  It does not prohibit these game developers from

11   creating competing app stores, as Epic and Match allege.  Rather, these agreements reflect a

12   competitive effort by Google to provide more value to key customers in order to win their

13   business and, in turn, enhance the value of the Play store for users.

14          Project Hug is nothing new to Plaintiffs.  Epic's and Match's existing complaints already

15   allege that Google violated Section 2 of the Sherman Act by maintaining a supposed monopoly

16   through a variety of conduct, including "Project Hug," an initiative to "throw extra

17   love/promotion to top developers and games" to "prevent these developers from competing with

18   Google Play."  MDL Dkt. 64 ("Epic FAC") ¶ 128.  Indeed, in August *2021*, Epic's CEO tweeted

19   that, through Project Hug, Google was "pay[ing] off publishers to not compete with Google

20   Play."  Declaration of Glenn. D. Pomerantz ("Pomerantz Decl."), Ex. A.

21          Despite knowing about Project Hug for well over a year—and despite publicly

22   complaining that Project Hug involved Google paying top developers not to compete—Plaintiffs

23   strategically chose to litigate Project Hug only as part of their Section 2 monopolization claims.

24   That claim, like any Section 2 claim, will be resolved under the rule of reason:  Plaintiffs have the

25   burden of proving anticompetitive effects, and Google will have the opportunity to present

26   procompetitive justifications.  But now Epic and Match seek to add a new theory that Google's

27   Project Hug agreements violated Section 1 of the Sherman Act, including as a *per se* matter.  By

28   doing so, Plaintiffs are attempting, at the last moment, to dispense with the need to show

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

anticompetitive effects or address procompetitive justifications.  More importantly, Plaintiffs'
gambit tries to shift the litigation battleground—after the close of discovery—to a new and very
different question:  whether there is evidence of a tacit agreement not to compete.  The Court
should reject this effort and deny the motion.

*First*, this motion comes far too late, more than 10 months after the December 3, 2021,
amendment deadline.  Plaintiffs have been aware of this theory and the underlying facts that
purportedly support it for many months, including as far back as July 2021, when Epic filed its
First Amended Complaint ("FAC").  Plaintiffs cannot carry their burden under Fed. R. Civ. P. 16
to demonstrate that they were diligent in seeking amendment when they simultaneously contend
that they put Google on notice of the underlying facts that they could have used to assert this
theory many months ago.  Mot. to Amend ("Mot.") at 1:12-14; 2:21-22; 3:12-14.  The motion can
and should be denied on that basis alone.

*Second*, permitting amendment at this late stage would severely prejudice Google.  As
noted above, Plaintiffs' new claims would shift the key issues in dispute from the competitive
*effects* of the Project Hug efforts to a very different question:  whether Google entered tacit
agreements not to compete.  And that question will need to be answered at least *two dozen* times,
as Plaintiffs allege unlawful agreements between Google and "at least" that many app developers.
The focus of discovery on that new sweeping theory would be whether there is evidence of a
horizontal agreement not to compete, including *who* agreed to *what* and *when*, and *why*
developers' decisions were unilateral and independent.  Yet Google had no reason to seek
discovery into those details, nor any reason to suspect that it would need to pull in each of the
Project Hug developers into depositions to confirm the fact that there was *never an agreement* not
to compete.  Permitting amendment would deprive Google of the right to take this discovery.

*Third*, at least as to Plaintiffs' *per se* theory, amendment would also be futile.  The
proposed amended complaints do not come close to pleading an actual horizontal agreement not
to compete, which must involve a meeting of the minds between Google and potential app store
competitors.  Even if such an agreement were sufficiently alleged here, it is not appropriate for
*per se* treatment as a matter of clear antitrust law.  At most, the complaints allege hybrid

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

agreements (i.e., having vertical and horizontal components) with Google's customers, which are analyzed under the rule of reason, and *per se* treatment is inappropriate for novel business practices and technology markets in any event.  These new claims are therefore facially invalid.

**II.      BACKGROUND**

       **A.      Relevant Procedural History**

       Epic's initial complaint alleged that Google violated Section 2 of the Sherman Act through a mélange of conduct and restrictive agreements targeted at mobile device manufacturers, smartphone users, and app developers.  Epic Dkt. 1 ¶¶ 135-57 (Aug. 13, 2020).[1]  In support of this claims, Epic described its "belie[f]" that Google was striking deals with certain developers "to keep its monopolistic behavior publicly unchallenged," *id.* ¶ 30, yet Epic did not assert any Section 1 claim based on that allegation.

       Later, in its July 21, 2021, amended complaint, Epic alleged that, through Project Hug, Google would "spend hundreds of millions of dollars on secret deals with over 20 top developers . . . in order to prevent these developers from competing with Google Play[.]"  MDL Dkt. 64, ¶ 128.  Epic quoted a Google document that allegedly suggested "several" of the developers "had 'considered their own distribution and/or payments platforms.'"  *Id.*  As in its initial complaint, Epic made these allegations in service of its monopoly maintenance claim—it did not assert a Section 1 claim arising out of such alleged agreements, and it did not allege that the agreements, or any aspects of them, were *per se* unlawful.

       Shortly thereafter, on October 22, 2021, the Court entered a scheduling order setting December 3, 2021, as the deadline to amend.  MDL Dkt.122.

       Then, on April 28, 2022, Epic addressed Project Hug again in its preliminary injunction motion.  MDL Dkt.213.  Epic argued that Google was "paying off top app developers to stop them from developing and launching competing Android app stores," relying on testimony that had been taken many months earlier, and specifically citing a deal with developer ███████ as

---

[1] "Epic Dkt." refers to the docket for *Epic Games Inc. v. Google LLC*, Case No. 3:20-cv-05671-JD.  "Match Dkt." refers to the docket for *Match Group, LLC v. Google LLC*, Case No. 3:22-cv-02746-JD.  "MDL Dkt." refers to the docket for *In re Google Play Store Antitrust Litigation*, Case No. 3:21-md-02981-JD.

"illustrative" of this initiative.  *Id.* at 9-10.  Epic described this initiative as Google's effort to "unlawfully protect[] its monopoly," *id.* at 9, opting not to assert a Section 1 claim.

Meanwhile, as Epic and other plaintiffs pressed their monopolization claims in court, and despite the fact that it was fully aware of this litigation and its effect on Match, Match chose to sit on the sidelines of the litigation.[2]  *See* Pomerantz Decl. Ex. B.  When Match did eventually file its complaint on May 9, 2022, Match Dkt.1 ("Match Compl."), it followed Epic's path on Project Hug.  Like Epic, Match alleged that Project Hug was an effort "to pay hundreds of millions of dollars to key app developers to deter them from offering their apps via distribution channels outside Google Play[,]" and "Google had reached deals with most of the developers it targeted." *Id.* ¶ 114; *see also id.* ¶ 120.  Like Epic, Match also did not assert a Section 1 claim based on these alleged agreements.  *See id.* ¶¶ 241-50.

With no Section 1 claim arising out of these agreements anywhere to be found in this litigation, the parties proceeded with fact discovery, which closed on September 22, 2022.

**B.**     **Epic's and Match's Proposed Amendments**

After the close of fact discovery, on September 29, 2022, plaintiffs, including Epic and Match, filed a notice reminding the Court of a previously submitted proposed case schedule. MDL Dkt.336.  Epic and Match stated at that time that they would "work towards the dates in the proposed schedule," but did not mention a forthcoming new effort to amend their complaints.  *Id.* at 3.  The *very next day*, September 30, 2022—ten months after the December 3, 2021 amendment deadline—Epic surprised Google with news that it imminently planned to amend its complaint again, this time to add new Section 1 claims directed solely at the Project Hug agreements, including a claim that, through Project Hug, Google committed a *per se* antitrust violation.  Pomerantz Decl. ¶ 2.  Google declined to consent to this belated and prejudicial amendment.  *Id.*  At the plaintiffs' request, the Court then entered the new schedule on October 5, 2022, reminding the parties that the deadline to amend pleadings was "Closed."  MDL Dkt.338.

---

[2] At an August 4, 2022, hearing discussing Match's request to extend the schedule, the Court noted that Match knew about this litigation long before it chose to file a complaint:  "You could have filed earlier. . . . it is not like you didn't know this was happening."  MDL Dkt.318 at 52:8-9.

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

1  Epic proceeded with its plan, and hours before the filing of this Motion, Match indicated it would

2  join the effort.  Pomerantz Decl. ¶ 2.

3      Epic's and Match's proposed amendments substantially mirror each other.  They allege

4  that, through "Project Hug," Google ████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████        *See* Epic PSAC ¶ 198; Match PFAC ¶ 273.[3]  Even though they

8  do not specifically allege an actual agreement between Google and any app developer involving a

9  commitment not to open a competing app store, Epic and Match assert claims under Section 1 of

10  the Sherman Act, including *per se* claims.  In support of these claims, they assert that Google's

11  intent was to thwart competition, and that the agreements had the effect of preventing the

12  emergence of new app stores.  Epic PSAC ¶¶ 198-201; Match PFAC ¶¶ 275-76.  The complaints

13  give special focus to agreements Google reached with ████████████████████████████████

14  ████████████████████████████████████████        *Id.*

15  **III.   ARGUMENT**

16      **A.   Governing Legal Standards**

17      Because Epic and Match seek to amend their complaint after the December 3, 2021,

18  deadline to amend, their motions are governed in the first instance by Rule 16(b), which requires

19  a showing of "good cause" to amend the scheduling order.  Fed. R. Civ. P. 16(b); *Johnson v.*

20  *Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).  If (and only if) they surmount

21  Rule 16(b)'s hurdle, then they must also show that amendment is proper under Rule 15(a), which

22  permits amendment only when "justice so requires," Fed. R. Civ. P. 15(a), and "is not to be

23  granted automatically," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

24      **B.   Plaintiffs Have Not Met Their Burden to Demonstrate Good Cause**

25      Under Rule 16(b), Plaintiffs have the burden to demonstrate good cause, which is "*more*

26  *stringent*" than the standard under Rule 15(a).  *AmerisourceBergen Corp. v. Dialysist W., Inc.*,

---

[3] "Epic PSAC" refers to Epic's Proposed Second Amended Complaint (MDL Dkt.344, Ex. A).
"Match PFAC" refers to Match's Proposed First Amended Complaint (MDL Dkt.344, Ex. K).

465 F.3d 946, 952 (9th Cir. 2006).  Specifically, they must demonstrate that they were diligent in pursuing amendment.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C04-02123 MJJ, 2007 WL 4104099, at *2 (N.D. Cal. Nov. 16, 2007).  If they cannot, the inquiry ends there and leave to amend should be denied.  *Johnson*, 975 F.2d at 609.  Prejudice can also serve as an additional reason to deny the motion.  *Id.*

### 1.    Epic and Match Fail to Meet Their Burden to Demonstrate Diligence

Plaintiffs cannot credibly argue that they were diligent in seeking amendment given the allegations regarding Project Hug in Epic's July 2021 First Amended Complaint.  *See*, *supra*, at 3 (referring to "secret deals . . . in order to prevent these developers from competing").  In fact, the same day its amended complaint became public, Epic's CEO, Tim Sweeney, tweeted that Google had a "secret 'Project Hug' **to pay off publishers to not compete with Google Play**," Pomerantz Decl., Ex. A (emphasis added).  Epic could plainly have chosen to assert a Section 1 claim based on the facts it pleaded and knew about at that time in *July 2021*, yet it chose, instead, to wait until after the close of discovery in *September 2022*.  This alone is sufficient to deny the motion.

Nor can Plaintiffs plausibly assert that their new allegations are justified by recently obtained evidence.  As an initial matter, while Plaintiffs provide a general description of documents and testimony they obtained through discovery regarding Project Hug, they do not provide any explanation whatsoever for why *those documents or testimony* were necessary for them to amend.  *See Eberhard v. Cal. Highway Patrol*, No. 14-cv-01910-JD, 2015 WL 4735213, at *2 (N.D. Cal. Aug. 10, 2015) (Donato, J.) (rejecting amendment in light of additional discovery where "the essential facts" were previously known to the moving party).

In fact, the bulk of the documents and testimony referenced in Plaintiffs' proposed amended complaints and in the Motion were produced many months ago.  With respect to documents, the internal Google "email" cited in the proposed amendments, Epic PSAC ¶ 199, Match PFAC ¶ 274, was produced by Google *ten months ago*.  Pomerantz Decl. ¶ 4.  Nearly 30,000 documents related to Project Hug and approximately 37,000 documents referencing the developers identified in the motions—████████████████████—were produced before the December 3, 2021, amendment deadline.  *Id.*  With respect to testimony, the deposition of

1    Lawrence Koh, on which Epic and Match heavily rely, Mot. 3, was likewise taken *ten months*

2    *ago.  Id.*  Another Google witness, Michael Marchak, also testified extensively about Google's

3    Project Hug incentive deals with developers in response to Plaintiffs' focused questioning,

4    ███████████████████████████████████████████████████████████████████

5    ███████████████████████  at his deposition *nine months ago*.  Pomerantz Decl., Ex. C.

6    And Epic made the same allegations that it now says support a Section 1 claim in its preliminary

7    injunction motion filed *five months* ago, in which Epic accused Google of "paying off top app

8    developers," including ███████  "to stop them from developing and launching competing

9    Android app stores."  MDL Dkt.213 at 9.

10           Motions to amend are routinely denied as dilatory when the moving party waits far less

11   time than Epic and Match did after obtaining evidence.  *E.g.*, *Amcor Flexibles Inc v. Fresh*

12   *Express Inc*., No. C 14-01025 LB, 2015 WL 890360, at *1 (N.D. Cal. Mar. 2, 2015) (waiting 49

13   days to seek amendment after learning of new facts showed lack of diligence); *Mitsui O.S.K.*

14   *Lines, Ltd. v. Seamaster Logistics, Inc*., No. 10-cv-5591-SC, 2012 WL 6095089, at *1, 3 (N.D.

15   Cal. Dec. 7, 2012) (waiting nearly two months showed lack of diligence); *Par Pharm., Inc. v.*

16   *Takeda Pharm. Co.*, No. 5:13-cv-01927-LHK-PSG, 2014 WL 3704819, at *2 (N.D. Cal. July 23,

17   2014) (four months was not diligent); *EPIS, Inc. v. Fid. & Guar. Life Ins. Co*., 156 F. Supp. 2d

18   1116, 1133 (N.D. Cal. 2001) (three months was not diligent).[4]

19           Indeed, the substance of the deposition testimony cited by Plaintiffs confirms that they

20   learned nothing new from these depositions.  ███████████████████  and Google

21   employee Purnima Kochikar both testified that Google and ███████  *never* entered into an

22   agreement that ███████ would not open its own app store.  *See* Pomerantz Decl., Ex. D

23   Dep.) at 209:14-22; Zaken Decl., Ex. I (Kochikar Dep) at 139:15-23.  Indeed, the "pertinent

24   ────────────────

25   [4] Match joined the case in May 2022, but their complaint demonstrates the same knowledge of
     these facts, they had complete access to Epic's FAC by August 2021, and they received access to
26   Google's entire discovery record after joining the case.  Pomerantz Decl. ¶ 3.  Match also made a
     tactical choice to wait on the sidelines of this litigation, while pressing the same antitrust theories
27   behind the scenes with state enforcers since at least before Epic filed its August 2020 complaint.
     *See* Pomerantz Decl., Ex. B.  The Court has recognized that same point.  MDL Dkt.318 at 52:8-9
28   (Court: "You could have filed earlier. . . . it is not like you didn't know this was happening.").

deposition testimony" (Mot. 12) Plaintiffs use to defend their delay consists almost entirely of the witnesses confirming the verbiage of emails that Google produced months ago.  There is nothing in that testimony that resembles "new" information necessary to support a Section 1 claim.

In any event, an amending party cannot wait to "confirm" their claim through discovery—despite having all the facts to be on reasonable notice of it—before amending its pleading.  The plaintiff must *first* assert its claims to put the defendant on notice; *then* the parties take discovery on those claims, that is how litigation works.  Were it otherwise, complex litigation would be unmanageable, and trial by surprise based on post-discovery amendments would be commonplace.  *Therasense v. Beckton, Dickinson & Co.* confirms this precise point.  There, the court denied amendment on diligence grounds, faulting the moving party for waiting to seek amendment until it had developed "proof" of its proposed new claim.  *Therasense*, 2007 WL 4104099, at *2.  Acknowledging that depositions could make a party more "convinced of the strength of their [new] allegation," the court held that the obligation to amend was triggered sooner, once the party "had a basis to reasonably suspect" that it had a claim.  *Id.* at *2-3.[5]  Epic and Match have therefore failed to carry their burden to show diligence.

## 2.      Allowing Amendment Would Severely Prejudice Google

Allowing Plaintiffs to assert their Section 1 claims now, after the close of fact discovery and in the midst of expert discovery, would also severely prejudice Google.  Adding Section 1 claims based specifically on Project Hug—including a *per se* claim—introduces a fundamentally new theory of liability that Google had no reason to foresee.

In each of their prior complaints, Epic and Match pleaded their Project Hug allegations exclusively in support of their Section 2 monopoly-maintenance claims.  *See* Epic FAC ¶ 33; Match Compl. ¶¶ 114, 120.  Epic's preliminary-injunction motion underscored that Section 2 focus.  MDL Dkt.213 at 9 (describing Google's "Project Hug" initiative as an effort to

---

[5] Contrary to Epic's and Match's suggestion, Mot. 11, *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 3149297 (N.D. Cal. July 25, 2017) does not say otherwise. In *Oracle*, the court found that waiting to amend was not a lack of diligence specifically because the court had previously dismissed a portion of Oracle's complaint and ordered subsequent "test" discovery.  *Id.* at *2.  That circumstance is not remotely analogous here.

1    "unlawfully protect[] its monopoly").  Specifically, they claimed that the Project Hug efforts were

2    *one aspect* of a mélange of conduct that Google undertook to support its alleged monopoly.

3          Those Section 2 claims, including with respect to Project Hug, are subject to the rule of

4    reason.  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990-91 (9th Cir. 2020).  Under the rule of reason,

5    the defendant may proffer procompetitive justifications for its conduct, *see id.* at 991, and the

6    factfinder "weighs all of the circumstances of a case," including but not limited to "market

7    power," "specific information about the relevant business," and an alleged restraint's "history,

8    nature, and effect."  *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885-86

9    (2007).  The litigation battleground for these claims therefore turned on market definition,

10   Google's alleged monopoly power, the alleged anticompetitive effects of these efforts in light of

11   Google's other alleged conduct, the procompetitive effects, and Google's business justifications.

12         Plaintiffs' new Section 1 claims—in particular their suggestion that the Project Hug

13   agreements included tacit agreements not to compete that are unlawful *per se*—fundamentally

14   transform the role that Google's Project Hug efforts have in the litigation and at trial.  "Resort to

15   per se rules" is confined to a narrow category of agreements, such as price fixing and market

16   division, "that would always or almost always tend to restrict competition and decrease output."

17   *Leegin*, 551 U.S. at 886.  Where it applies, the *per se* rule "eliminates the need to study the

18   reasonableness of an individual restraint in light of the real market forces at work."  *Id.*  In the

19   context of this case, Plaintiffs' proposed new Section 1 claims shift the litigation battleground

20   from the rule-of-reason inquiry to the very different question whether Google's Project Hug

21   agreements also included tacit agreements not to compete.  The discovery focus likewise shifts to

22   whether there is any direct or circumstantial evidence of such an agreement.  *See In re Citric Acid*

23   *Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999).  For example, and in particular because Plaintiffs

24   allege unwritten "secret" agreements not to compete, discovery into whether Google's developer

25   customers had  independent reasons not to open their own app stores becomes significant.[6]

26   ────────────────

27   [6] Plaintiffs deposed Activision about numerous issues, but, based on the Section 2 claims existing
     at that time, Google asked under an hour of questions.  Pomerantz Decl. ¶ 5.  Had Google known
     that Plaintiffs were pursuing a *per se* claim that Google had reached a tacit agreement with

28   Activision, Google would surely have elicited detailed testimony going to that issue.

1    Google approached fact discovery regarding Project Hug based on the Section 2 cause of

2  action that the plaintiffs intentionally chose to assert, not the claims they seek to add now.  After

3  all, the "plaintiff is the master of its complaint," *United States v. eBay, Inc.*, 968 F. Supp. 2d

4  1030, 1037–38 (N.D. Cal. 2013), and in antitrust cases especially, the defendant can only prepare

5  its case according to the antitrust theory that the plaintiff actually chooses to plead.  *See Bay Area*

6  *Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 994 (N.D. Cal. 2015)

7  (emphasizing that in antitrust cases the plaintiff "must abide by the consequences of its pleading

8  decision and cannot, at its convenience, switch to a theory not plead[ed] in the Complaint").

9    Because Google understood that Epic and Match chose to assert only a Section 2 claim

10  based on Google's alleged Project Hug efforts, Google did not, and had no reason to, conduct the

11  kind of discovery that is usually pursued in connection with Section 1 claims, particularly *per se*

12  claims.  Critically, had Google known that Plaintiffs intended to pursue these Section 1 claims,

13  Google could have sought discovery from each of the counterparties to these allegedly unlawful

14  agreements to have them confirm to the jury, in their own words, that there was *no agreement* to

15  not compete.  Google could also have sought discovery from the pertinent app developers

16  regarding numerous issues, including their independent reasons for not embarking on the difficult

17  and expensive project of opening their own app stores.  The new Section 1 claims implicate these

18  counterparties as alleged co-conspirators, and their testimony refuting these claims is obviously

19  important.  But by strategically waiting until discovery has closed, Plaintiffs have ensured that

20  evidence cannot be developed.  While that evidence was not necessary to defend against

21  Plaintiffs' Section 2 claims, it would rebut the gravamen of Plaintiffs' new Section 1 claims.

22    In addition, Google would need discovery regarding precisely *who* Plaintiffs allege were

23  party to these purported agreements not to compete.  To be sure, the proposed amendments

24  mention ███████████ but they also claim Google had additional "agreements"—not

25  limited to Project Hug agreements—with "at least" two dozen unnamed developers.  Epic PSAC

26  ¶¶ 198, 208; Match PFAC ¶¶ 273, 283.  If Plaintiffs had amended earlier, Google could have used

27  the discovery process to require Plaintiffs to sharpen their allegations and identify precisely which

28  agreements they allege to be unlawful, which ones are *per se* unlawful, and which parties entered

1   those agreements.  At this point, expecting Google to defend allegedly unlawful agreements,

2   without an opportunity to determine who the alleged counterparties are, what specific agreements

3   are at issue, and what about each of these purported agreements is allegedly unlawful, would be

4   severely prejudicial and fundamentally at odds with the principle against trial by ambush.[7]

5              **3.      Additional Discovery Would Threaten the Existing Case Schedule**

6              Additional discovery at this late date would jeopardize the Court's carefully crafted case

7   schedule.  Merely two weeks ago, the Court entered a revised scheduling order, after the parties

8   worked laboriously on a mutually agreeable schedule that met the Court's guidelines.  MDL

9   Dkt.338.  Throughout those efforts, neither Epic nor Match advised either the Court or Google

10  that it intended to file a motion to amend that would add new claims and new theories of liability.

11  As it stands, the schedule is already compressed, with only three weeks to take all expert

12  depositions after rebuttal reports, and a few days after that to file *Daubert* and dispositive

13  motions.  *Id.*  The time it would take to obtain discovery now from Epic and Match clarifying the

14  scope of their new claims, and then documents and depositions from third parties to show why

15  those claims are baseless, would wreck this schedule and jeopardize court deadlines, including the

16  trial date.  Indeed, expert discovery is well underway, with Plaintiffs' opening reports having

17  been served, and Google's reports due November 18.  The train is in motion and proceeding on

18  track, but permitting amendment with discovery would surely derail it.  Courts routinely deny

19  leave in order to preserve the case schedule.  *E.g.*, *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151

20  F.3d 1132, 1139 (9th Cir. 1998); *Singh v. City of Oakland,* 295 F. App'x 118, 122 (9th Cir. 2008);

21  *Therasense*, 2007 WL 4104099, at *3.  This Court should do the same.

22          **C.      Amendment Is Not Warranted Because It Would Be Futile**

23              Even if Epic and Match could satisfy Rule 16(b), they would also have to satisfy Rule

24  15(a).  In applying Rule 15(a), courts consider "bad faith, undue delay, prejudice to the opposing

25  party, futility of the amendment, and whether the party has previously amended his pleadings."

26  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  The unjustified delay and prejudice to

27

28  [7] Plaintiffs' belated amendment would also prejudice Google with respect to expert discovery.
    Google's expert reports are due November 18, 2022, shortly after this motion will be heard.

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

1  Google are already apparent, *see supra*, at 5-11, and warrant denying leave to amend under Rule

2  15.  In addition, the new *per se* claim is futile and should be rejected.

3  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."

4  *Bonin*, 59 F.3d at 845.  Even a part of an amendment (e.g., a single count of multiple) can be

5  denied on futility grounds.  *E.g.*, *Guerrero v. Cnty. of Alameda*, No. C 18-02379 WHA, 2018 WL

6  4680183, at *1 (N.D. Cal. Sept. 28, 2018).  "[T]he same standard of legal sufficiency" under Rule

7  12(b)(6) applies to arguments that a proposed amendment is futile.  *Stonebrae, L.P. v. Toll Bros.*,

8  No. C-08-0221 EMC, 2010 WL 114010, at *1 (N.D. Cal. Jan. 7, 2010).

9  Applying that standard, courts routinely dismiss *per se* claims at the pleading stage when

10  *per se* treatment is not legally warranted.  *See, e.g.*, *Stop & Shop Supermarket Co. v. Blue Cross

11  & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004); *NSS Labs, Inc. v. Symantec Corp.*, No. 18-

12  cv-05711-BLF, 2019 WL 3804679, at *8 (N.D. Cal. Aug. 13, 2019); *cf. In re ATM Fee Antitrust

13  Litig.*, 554 F. Supp. 2d 1003, 1010 (N.D. Cal. 2008) ("the decision of what mode of analysis to

14  apply—per se, rule of reason, or otherwise—is entirely a question of law for the Court").  Here,

15  Plaintiffs' proposed *per se* claim fails as a matter of law because (1) the complaints do not

16  plausibly plead a horizontal agreement not to compete, and (2) the alleged agreements are

17  inappropriate for *per se* treatment as a matter of law.

18  **1.    Plaintiffs Fail to Plead a Horizontal Agreement Not to Compete**

19  Plaintiff's proposed *per se* claim fails for the simple fact that it does not allege an actual

20  horizontal agreement not to compete.

21  *Per se* treatment is reserved for horizontal agreements, *i.e.*, those between competitors.

22  *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191-92 (9th Cir. 2015).

23  To survive, therefore, the complaint must allege an agreement between Google and an actual or

24  potential competitor.  And the alleged agreement itself must reflect an actual "meeting of the

25  minds" on how the horizontal competitors will act, not just an allegation of parallel conduct.  *See

26  Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  That agreement can be established by

27  direct or circumstantial evidence.  *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d at 1093.

28  Plaintiffs do not plead any direct evidence of a meeting of the minds.  *Frost v. LG Elecs.*,

*Inc.*, 801 F. App'x 496, 497 (9th Cir. 2020) (direct evidence requires no inference to be made). They make conclusory (and thus insufficient) assertions "that some of these agreements were horizontal agreements," Epic PSAC ¶ 198, Match PFAC ¶ 273, and allege there are *vertical* agreements between Google and its developer customers regarding the terms on which developers would distribute through the Google Play store, *see, e.g.*, Epic PSAC ¶¶ 199-200.  But there is no allegation of direct evidence of a promise not to open a competing app store.

All that is left are circumstantial allegations focusing on *Google's* purported intentions. Epic PSAC ¶ 200 (referring to Google's "understanding" and "intention"); Match PFAC ¶¶ 273-77.  The "understanding" of one party, however, about the effect of an agreement is by definition not a meeting of the minds as *Twombly* requires, or a reciprocal "conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (quotation omitted).  Among other things, Project Hug represents procompetitive price-cutting by Google to attract important customers, *see supra*, at 1, and "cutting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *accord Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015).  Thus, as another court recently explained in granting a motion to dismiss after refusing to infer a horizontal agreement:

> Google's actions are consistent with a firm seeking to secure the business of a very large potential customer by offering it favorable terms. . . .  [This] undoubtedly had the effect of diverting business from a competing service, but this does not convert the agreement into an unreasonable restraint of trade.

*In re Google Digital Advert. Antitrust Litig.*, No. 21-cv-6841, 2022 WL 4226932, at *14 (S.D.N.Y. Sept. 13, 2022).

Indeed, if the proposed complaints sufficed to plead a horizontal agreement not to compete, then countless businesses violate the Sherman Act when they decide to buy rather than build their own, or to outsource rather than insource.  Epic's own game store, for example, boasts exclusivity deals with game developers, but surely Epic does not think that practice is *per se*

unlawful.  *See* Epic Games, *Frequently Asked Questions*, https://www.epicgames.com/site/en-US/epic-games-store-faq (last updated Aug. 18, 2021).  The practical reality is that these decisions may result in fewer potential competitors, and the suppliers may well offer their best deals to customers whose defection threatens them most.  That is the competitive process at work, not horizontal conspiracy, and Plaintiffs' allegations amount to nothing more than that.

### 2.   *Per Se* Treatment Is Unavailable Here As a Matter of Antitrust Law

The rule of reason "is the presumptive or default standard," *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011) (quotations marks omitted), while "*[p]er se* liability is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality," *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (quotations marks omitted).  "[T]he per se rule is appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin*, 551 U.S. at 886-87 (citation omitted).  *Per se* treatment, therefore, is particularly unsuited to "novel business practices—*especially* in technology markets."  *Qualcomm Inc.*, 969 F.3d at 990-91 (quotation omitted).  These principles point to two reasons to reject *per se* treatment.

*First*, Plaintiffs describe the Project Hug agreements as principally vertical, defining the terms on which Google would provide a service to their developer customers.  *E.g.*, Epic PSAC ¶ 198; Match PFAC ¶ 273.  Non-exclusive vertical agreements—with discounts, no less—are so likely to be pro-competitive that they are effectively judged by "rules of per se legality."  *Schor v. Abbott Lab'ys*, 457 F.3d 608, 613 (7th Cir. 2006) (Easterbrook, J.).  At best, Plaintiffs allege *hybrid* agreements with vertical and horizontal aspects.  But hybrid arrangements are not subject to *per se* condemnation as a matter of law.  For example, in *Frame-Wilson v. Amazon.com*, Inc., No. 2:20-cv-00424-RAJ, 2022 WL 741878, at *7 (W.D. Wash. Mar. 11, 2022), which granted a motion to dismiss a *per se* claim involving Amazon and its third-party sellers, the court held that even if "the [predominantly vertical] agreements between Amazon and third-party sellers [using Amazon's platform] contained a horizontal element, such a 'hybrid arrangement' would be analyzed under the rule of reason."  *Id.* at *6 (citing *Dimidowich v. Bell & Howell*, 803 F.2d

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

1473, 1481 (9th Cir. 1986), for the proposition that "under the Sherman Act, rule of reason analysis would be appropriate for the 'hybrid' conspiracy"); *cf. Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1354-57 (9th Cir. 1982) (refusing per se treatment for horizontal market allocation agreement between franchisor, which also sold through its own outlets, and franchisees).  Likewise, in *Google Digital Advertising*, the court concluded "that th[e] hybrid relationship between Google and Facebook [under which Google provided incentives for Facebook to participate in Google's ad auctions] is predominantly vertical and properly scrutinized under the rule of reason."  2022 WL 4226932, at *16.

*Second*, this alleged restraint is the polar opposite of one with which "courts have had considerable experience" and "can predict with confidence that it would be invalidated in all or almost all instances."  *Leegin*, 551 U.S. at 886-87.  The nature of app distribution is exactly the sort of "technology market[]," and Project Hug the sort of "novel business practices," that preclude *per se* treatment.  *Qualcomm*, 969 F.3d at 990-91; *see Google Digital Advert.*, 2022 WL 4226932, at *16 (holding per se treatment especially inappropriate "[i]n a novel marketplace with rapidly changing technology that can alter the nature of relationships between market participants").  Consider just one complication absent from garden-variety market-division cases receiving *per se* treatment:  Both the Google Play store and the app stores that other developers might launch would be two-sided platforms.  Because *per se* claims generally do not require defining a relevant market, *see Gough v. Rossmoor Corp.*, 585 F.2d 381, 385 (9th Cir. 1978), Plaintiffs would have this case proceed without considering the effects of these agreements on users *and* developers, or indeed without any inquiry into markets at all.  That impoverished mode of analysis would contradict the Supreme Court's instructions that "evaluating both sides of a two-sided transaction platform is . . . necessary to accurately assess competition" and thus "courts must include both sides of the platform" in defining a relevant market.  *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2286, 2287 (2018).

Plaintiffs' *per se* theory is legally unsound and amending to add it would thus be futile.

**IV.    <u>CONCLUSION</u>**

Google respectfully requests that the Court deny the motion for leave to amend.

1    DATED:  October 21, 2022                    Respectfully submitted,

2                                                MUNGER, TOLLES & OLSON LLP

3

4                                                    /s/ Glenn D. Pomerantz

5                                                Glenn D. Pomerantz, S.B. #112503
                                                 glenn.pomerantz@mto.com

6                                                Kuruvilla Olasa, S.B. #281509
                                                 kuruvilla.olasa@mto.com

7                                                Nicholas R. Sidney, S.B. #308080
                                                 nick.sidney@mto.com

8                                                **MUNGER, TOLLES & OLSON LLP**

9                                                350 South Grand Avenue, Fiftieth Floor
                                                 Los Angeles, California 90071

10                                               Telephone: (213) 683-9100

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER TOLLES & OLSON LLP**

560 Mission St., Suite 2700
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**

601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**

One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

1

2

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**

3

4

101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

5

6

7

*Counsel for Defendants Google LLC et al.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS

1

**E-FILING ATTESTATION**

2      I, Glenn. D. Pomerantz, am the ECF User whose ID and password are being used to file

3  this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that counsel for

4  Defendants have concurred in this filing.

5

6                                              */s/ Glenn D. Pomerantz*
                                              Glenn D. Pomerantz

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## PROOF OF SERVICE
2
     I am a citizen of the United States and employed in Los Angeles, California.  I am over
3
the age of eighteen years and not a party to the within-entitled action.  My business address is
4
Munger, Tolles & Olson LLP, 350 S. Grand Avenue, 50th Floor, Los Angeles, CA 90071.
5
     On October 21, 2022, I served the foregoing document titled:
6
**DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO**
7
**AMEND COMPLAINTS**
8
by transmitting via electronic mail the document listed above to each of the parties set forth
9
below using the parties' designated electronic service lists epic-mobileapps@cravath.com;
10
StatesGooglePlayLeads@agutah.gov; googleappconsumercounsel@bartlitbeck.com;
11
DevelopersvGoogle@hausfeld.com; ~PLAY_MTO@mto.com;
12
PlayLitigation@morganlewis.com; GoogleEpic@omm.com, matchgoogle@hueston.com:

| | |
|---|---|
| Christine A. Varney (*pro hac vice*)<br>Katherine B. Forrest (*pro hac vice*)<br>Gary A. Bornstein (*pro hac vice*)<br>Yonatan Even (*pro hac vice*) Lauren<br>A. Moskowitz (pro hac vice)<br>M. Brent Byars (*pro hac vice*)<br>Eric Zepp (*pro hac vice*)<br>**CRAVATH, SWAINE & MOORE LLP**<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>epic-mobileapps@cravath.com<br>cvarney@cravath.com<br>kforrest@cravath.com<br>gbornstein@cravath.com<br>yeven@cravath.com<br>lmoskowitz@cravath.com<br>mbyars@cravath.com<br>ezepp@cravath.com | Eamon P. Kelly<br>Alberto Rodriguez<br>Martin Amaro<br>**SPERLING & SLATER, P.C.**<br>55 W. Monroe Street, Suite 3200<br>Chicago, IL 60603<br>ekelly@sperling-law.com<br>arodriguez@sperling-law.com<br>mamaro@sperling-law.com<br><br>Steve W. Berman<br>Robert F. Lopez<br>Ted Wojcik<br>1301 Second Ave., Suite 2000<br>Seattle, WA 98101<br>**HAGENS BERMAN SOBOL SHAPIRO**<br>**LLP**<br>steve@hbsslaw.com robl@hbsslaw.com<br>tedw@hbsslaw.com |
| Paul J. Riehle (SBN 115199)<br>**FAGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center<br>San Francisco, California 94111<br>paul.riehle@faegredrinker.com<br><br>*Counsel for Plaintiff in Epic Games,*<br>*Inc. v. Google LLC, et al.* | Benjamin J. Siegel<br>**HAGENS BERMAN SOBOL SHAPIRO**<br>**LLP**<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710<br>bens@hbsslaw.com<br><br>*Counsel for Plaintiff Pure Sweat Basketball,*<br>*Inc. and the Proposed Class in Pure Sweat*<br>*Basketball, Inc. v. Google LLC, et al.* |
| Hae Sung Nam<br>**KAPLAN FOX & KILSHEIMER LLP** | Elizabeth Pritzker<br>**PRITZKER LEVINE LLP** |

| | |
|---|---|
| 850 Third Avenue, 14th Floor<br>New York, NY 10022<br>hnam@kaplanfox.com | 1900 Powell Street, Suite 450<br>Emeryville, CA 94608<br>ecp@pritzkerlevine.com |
| Karma M. Giulianelli<br>**BARTLIT BECK LLP**<br>1801 Wewetta St., Suite 1200<br>Denver, CO 80202<br>karma.giulianelli@bartlitbeck.com | *Interim Liaison Counsel for Plaintiffs and the<br>Proposed Class in In re Google Play<br>Consumer Antitrust Litigation* |
| *Interim Co-Lead Class Counsel for Plaintiffs<br>and the Proposed Class in In re Google Play<br>Consumer Antitrust Litigation* | Bonny E. Sweeney (SBN 176174)<br>Samantha J. Stein (SBN 302034)<br>**HAUSFELD LLP**<br>600 Montgomery Street, Suite 3200<br>San Francisco, CA 94104 |
| Peggy J. Wedgworth<br>**MILBERG PHILLIPS GROSSMAN LLP**<br>One Penn Plaza, Suite 1920<br>New York, New York 10119<br>pwedgworth@milberg.com | DevelopersvGoogle@hausfeld.com<br>bsweeney@hausfeld.com<br>sstein@hausfeld.com |
| George A. Zelcs<br>**KOREIN TILLERY, LLC**<br>205 North Michigan, Suite 1950<br>Chicago, IL 60601<br>gzelcs@koreintillery.com | Melinda R. Coolidge (*pro hac vice*)<br>1700 K Street, NW, Suite 650<br>Washington, DC 20006<br>mcoolidge@hausfeld.com |
| Nanci Eiko Nishimura<br>**COTCHETT PITRE & MCCARTHY LLP**<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>nnishimura@cpmlegal.com | Katie R. Beran (*pro hac vice*)<br>325 Chestnut Street, Suite 900<br>Philadelphia, PA 19106 kberan@hausfeld.com<br><br>Scott A. Martin (*pro hac vice*)<br>Irving Scher (*pro hac vice*)<br>33 Whitehall Street, 14th Floor New York, NY<br>10004 smartin@hausfeld.com |
| *Interim Steering Committee Members for<br>Plaintiffs and the Proposed Class in In re<br>Google Play Consumer Antitrust Litigation* | *Counsel for Plaintiff Peekya App Services, Inc.<br>and the Proposed Class in Pure Sweat<br>Basketball, Inc. v. Google LLC, et al.* |
| Brendan P. Glackin, Bar No. 199643<br>bglackin@agutah.gov<br>Fred Norton (SBN 224735)<br>fnorton@agutah.gov<br>David N. Sonnenreich (*pro hac vice*)<br>dsonnenreich@agutah.gov<br>Scott R. Ryther (*pro hac vice*)<br>sryther@agutah.gov<br>**UTAH OFFICE OF THE ATTORNEY<br>GENERAL**<br>160 East 300 South, 5th Floor<br>P.O. Box 140872<br>Salt Lake City, UT 84114-0872<br><br>*Counsel for the State of Utah* | Sarah G. Boyce (*pro hac vice*)<br>sboyce@ncdoj.gov<br>Jonathan Marx (*pro hac vice*)<br>jmarx@ncdoj.gov<br>Jessica V. Sutton (*pro hac vice*)<br>Jsutton2@ncdoj.gov<br>**NORTH CAROLINA DEPARTMENT OF<br>JUSTICE**<br>P.O. Box 628 Raleigh, NC 27602<br><br>*Counsel for the State of North Carolina* |

1   John C. Hueston, Bar No. 164921
    jhueston@hueston.com
2   Douglas J. Dixon, Bar No. 275389
    ddixon@hueston.com
3   **HUESTON HENNIGAN LLP**
    620 Newport Center Drive, Suite 1300
4   Newport Beach, CA 92660
    Telephone: (949) 229-8640
5
    Joseph A. Reiter, Bar No. 294976
6   jreiter@hueston.com
    Michael K. Acquah, Bar No. 313955
7   macquah@hueston.com
    William M. Larsen, Bar No. 314091
8   wlarsen@hueston.com
    Julia L. Haines, Bar No. 321607
9   jhaines@hueston.com
    **HUESTON HENNIGAN LLP**
10  523 West 6th Street, Suite 400
    Los Angeles, CA 90014
11  Telephone: (213) 788-4340

12  *Counsel for Plaintiffs Match Group,*
    *LLC, Humor Rainbow, Inc.,*
13  *PlentyofFish Media ULC, People*
    *Media, Inc.*

14

15          I declare under penalty of perjury under the laws of the United States that the above is true

16  and correct.

17          Executed on October 21, 2022 at Big Sky, Montana.

18

19                                          */s/ Lauren N. Beck*
                                            Lauren N. Beck

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO EPIC'S AND MATCH'S MOTION TO AMEND COMPLAINTS