1
2
Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE &**
**REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

[Additional Counsel Appear on Signature
Page]

Douglas J. Dixon (SBN 275389)
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640

*Counsel for Plaintiffs Match Group, LLC, et al.*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**EPIC GAMES, INC.'S AND MATCH GROUP, LLC ET AL.'S REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINTS**<br><br>Date:  November 17, 2022 at 10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:  Hon. James Donato |

1   Epic Games, Inc. ("Epic") and Match Group LLC et al., ("Match") moved to amend their

2   complaints (ECF No. 343[1]) ("Motion") to conform their pleadings to evidence obtained through

3   discovery and to facilitate a clear charge to the jury.  The Proposed Amended Complaints contain

4   allegations that Defendants Google LLC, Google Ireland Limited, Google Commerce Limited and

5   Google Asia Pacific Pte. Limited (collectively, "Google") admit they were fully aware of for months,

6   and which have been explored via extensive discovery by *all* parties, including Google.

7   Google's Opposition to the Motion (ECF No. 355) ("Opp'n") makes three principal arguments

8   for why the Court should deviate from the "extreme liberality" the Ninth Circuit affords to plaintiffs

9   seeking to amend their complaints.  *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008) (citation

10   omitted).  *First*, Google asserts prejudice, claiming it will need additional discovery to defend against

11   the Section 1 claims regarding Project Hug.  But in Google's own words, "Project Hug is nothing new"

12   to this litigation (Opp'n 1), and no new discovery is necessary.  Specifically, Google's assertion that

13   discovery will be needed into the existence of "tacit agreements not to compete" or "unwritten 'secret'

14   agreements" (Opp'n 2, 9) is untenable.  It is undisputed that the Project Hug agreements exist; they

15   have been produced in black and white.  Google's understanding and intent that these agreements

16   prevent competitors from launching their own app stores is found in Google's *own* documents and

17   testimony.  Given the existence of the Project Hug agreements, the remaining issues presented by

18   Epic's and Match's amended Section 1 claims are fully subsumed by the fact discovery the parties

19   have already taken.  As to the rule of reason claims, there can be no issue; Google admits that it has

20   approached fact discovery with an eye toward addressing the Project Hug agreements as part of a rule

21   of reason analysis.  (Opp'n 9, 10.)  And the *per se* claims are even simpler, requiring *less* factual

22   development than a rule of reason claim; indeed, a key purpose of the *per se* standard is to streamline

23   the analysis of certain types of anticompetitive conduct.

24   *Second*, Google claims that the Motion comes too late.  Delay alone is not a sufficient basis to

25   deny the Motion.  *See Cont'l Cas. Co. v. United States*, No. 02-4891 VRW, 2005 WL 8162326, at *4

26   (N.D. Cal. June 22, 2005) (citing *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973)).

27   Nor has Google shown that any delay was undue.  Match just entered the case in May and did not gain

28

---

[1] All citations are to the MDL docket unless otherwise indicated.

access to Google's materials until almost two months later.  Additionally, Google acknowledges that Epic presented these issues in the litigation in court filings, deposition questions and written discovery requests many months ago (Opp'n 6-7), and Google has responded accordingly throughout discovery, including salient evidence elicited only weeks before the proposed amendments.  The proposed amendments simply conform Epic's and Match's complaints to the claims the parties have already been litigating.  Moreover, the Proposed Amended Complaints were filed over eight months before trial, leaving ample time and opportunity for Google to defend against them.

*Third*, Google argues that Epic's and Match's *per se* claims are futile, on the ground that the Project Hug agreements should not be subject to *per se* treatment.  To avoid *per se* review, Google makes a variety of arguments about the nature of the relationship between Google and the Project Hug developers, the purportedly pro-competitive effects of the Project Hug agreements and the supposed novelty of the arrangements.  These fact-intensive arguments would not be suitable for a Rule 12(b)(6) motion to dismiss, much less an opposition to a Rule 15 motion to amend.  Whether the Project Hug agreements warrant *per se* treatment is an issue the Court (or jury) should decide on the merits, not on a threshold procedural motion that requires a "strong showing of futility".  *Bayol v. Zipcar, Inc.*, No. 14-cv-02483-THE, 2015 WL 4931756, at *4 (N.D. Cal. Aug. 18, 2015) (quotation marks omitted).

Google has failed to show that amendment under Rule 15(a)(2) would be improper, and Epic and Match have met their modest burden of establishing good cause under Rule 16(b)(4).  The Court should grant Epic and Match's Motion.

## DISCUSSION

### I.      The Proposed Amended Complaints Should Be Permitted Under Rule 15.

Under Rule 15, "[t]he court should freely give leave" to amend.  To overcome the "extreme liberality" with which amendment should be allowed, *Waldrip*, 548 F.3d at 732, Google must put forth "strong evidence" of prejudice, undue delay, bad faith, or futility, *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty*, 708 F3d 1109, 1117 (9th Cir. 2013).  Google has not come close to meeting the very high bar necessary to defeat the amendment.

### A.   Google has failed to show prejudice.

"[A] showing of prejudice must be substantial" to overcome the liberal standard in favor of allowing amendments under Rule 15(a).  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393-JST, 2017 WL 3149297, at *3 (N.D. Cal. July 25, 2017) (citation omitted).  "[C]ourts are unlikely to find that an amendment causes undue prejudice when the substantive issues and operative facts of a case remain the same".  *Carbonell v. Tyson Fresh Meats, Inc.*, No. 4:19-cv-5041-RMP, 2019 WL 13117760, at *4 (E.D. Wash. Sept. 24, 2019) (citing *Hurn v. Ret. Fund Tr. of Plumbing, Heating, & Piping Indus. in S. Cal.*, 648 F.2d 1252, 1254-55 (9th Cir. 1981)).

Google rests its claim of prejudice on a supposed need for additional discovery, contending that the proposed *per se* claims (Epic Count 4; Match Count 6) will "transform" the nature of the disputes regarding Project Hug.  (Opp'n 9.)  This argument gets the law backward.  *Per se* claims are substantially *simpler* than the rule of reason claims that the parties have been litigating, so they require *less*-extensive discovery.  Unlike the rule of reason, which (according to Google) requires analysis into "market definition, Google's alleged monopoly power, the alleged anticompetitive effects of these efforts in light of Google's other alleged conduct, the procompetitive effects, and Google's business justifications" (Opp'n 9), a *per se* violation requires "no further inquiry into the [agreement's] actual effect on the market or the parties' intentions", *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1183 (S.D. Cal. 2018) (citation omitted).  As such, there is no fact or expert discovery Google needs to respond to the proposed *per se* claims that would not also be relevant to the existing rule of reason claims.  As a result, Google has already had ample incentive and opportunity to develop the facts for its defense.

The additional discovery that Google nevertheless says it needs either misconstrues Epic's and Match's claims or is legally irrelevant.  First and foremost, Google repeatedly contends that it needs discovery to disprove the existence of "tacit" agreements not to compete.  (Opp'n 2, 9.)  However, Epic and Match allege ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ (Epic SAC ¶ 198; Match FAC ¶ 273.)  The existence of the agreements at issue cannot be disputed; Google admitted just last month that at least ██ Project Hug agreements exist; and Google in fact

1  produced them in discovery.  (Zaken Decl. Ex. A, Ltr. from B. Rocca to Y. Even (Sept. 23, 2022).)

2  Google's internal documents and deposition testimony from its executives demonstrate that the

3  purpose and effect of certain of these agreements was to stop the launch of competing app stores.  For

4  example, Google's documents reveal that its agreement with developer ███ was made in order "██

5  ████████████████████████████" (ECF No. 344-04) and that developer ███ told Google

6  that if ████████████████████████████████████████████" (ECF

7  No. 344-03).  (*See* Mot. 3-6.)  Google may dispute whether these agreements are properly considered

8  horizontal agreements not to compete, but no further discovery is needed to assess whether these

9  agreements exist.  Contrary to Google's contention, it does not matter whether Project Hug

10  counterparties "had independent reasons not to open their own app stores".  (Opp'n 9.)  If Google

11  entered into a horizontal agreement not to compete, it is no defense to say that the counterparty *might*

12  not have chosen to open an app store anyway; the agreement itself is *per se* unlawful.  *In re Packaged*

13  *Seafood,* 338 F. Supp. 3d at 1183 (once the existence of a per se agreement is shown, "no further

14  inquiry into the [agreement's] actual effect on the market or the parties' intentions" is required to

15  establish a violation; harm to competition is presumed).[2]

16      In any event, even if Google did need discovery from developers, Google has already had the

17  opportunity to take—and in fact has taken—such discovery.  Google claims it will need "discovery

18  from each of the counterparties" at issue to confirm "that there was no agreement to not compete" and

19  that developers had "independent reasons for not embarking on the difficult and expensive project of

20  opening their own app stores".  (Opp'n 10.)  In fact, these are *exactly* the types of questions that

21  Google has already asked developers in this case.  (*See, e.g.*, Zaken Decl. Ex. D, ████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25

26      [2] As for the rule of reason claims (Epic Count 5, Match Count 7), Google does not identify any
unique discovery it claims to need.  To the contrary, Google admits having known all along that Epic

27  challenges the Project Hug agreements under Section 2 under the rule of reason (Opp'n 1)—and the
rule of reason analysis under Sections 1 and 2 is "essentially the same".  *FTC v. Qualcomm Inc.*, 969

28  F.3d 974, 991 (9th Cir. 2020).

1

2 ); *see also*

3 *id.* 264:11-265:4 (witness testifying that "

4 ", and "

5 ").)  Google further asserts that it would need discovery regarding "precisely who Plaintiffs

6 allege were party to these purported agreements not to compete" (Opp'n 10-11), yet Google itself

7 recently provided to Epic and Match through its written discovery responses a list of developers with

8 whom it has entered Project Hug agreements.  (Zaken Decl. Ex. A, Ltr. from B. Rocca to Y. Even

9 (Sept. 23, 2022).)  As explained above and in the Motion, the relevant facts underlying the proposed

10 claims have been fully adduced through discovery and motion practice.  (Mot. 2, 5-6.)[3]

11       **B.**    **Google has failed to show undue delay.**[4]

12       Google's delay argument focuses solely on the amount of time that has elapsed since certain

13 documents and testimony supporting the proposed amendments became available, arguing that Epic

14 and Match "could plainly have chosen" to amend their complaints sooner.  (Opp'n 6.)  However, "the

15 mere fact that [a party] could have moved at an earlier time to amend does not by itself constitute an

16 adequate basis for denying leave to amend".  *Howey*, 481 F.2d at 1191; *see also Cont'l Cas. Co.*, 2005

17 WL 8162326, at *4 ("delay alone does not provide sufficient grounds for denying leave to amend").

18 Assessing whether delay is "undue" is not a mere matter of counting pages on a calendar.  Google

19 cannot claim *undue* delay here, where the Proposed Amended Complaints conform the pleadings to the

20 evidence adduced throughout discovery, which the parties have been litigating for many months.[5]

21

22     [3] Further, as Epic and Match explained in their Motion, the prospect of additional discovery alone
does not constitute undue prejudice, a point that Google ignores.  (Mot. 9, n.5.)  *Stearns v. Select*

23 *Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010) ("Neither delay resulting from the
proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself

24 constitutes a sufficient showing of prejudice.")

25     [4] Google's opposition conflates the undue delay factor under Rule 15 with the diligence standard
under Rule 16.  Epic and Match address these separately in this reply.  (*See infra* §§ I.B, II.)

26     [5] Google claims that Match "wait[ed] on the sidelines of this litigation" by filing in May 2022

27 (Opp'n 7 n.4), but as evidenced by Google's motions to seal the allegations from the motions to amend
and underlying factual material (ECF Nos. 352, 356), Match could not have had access to those

28 documents until it entered the case.  (*See also* Third Amended Protective Order, ECF No. 249.)  Match
entered the case as a last resort only after Google threatened to irreparably harm Match by kicking its

Google even acknowledges that the parties have been litigating what it calls a "mélange" of issues. (Opp'n 3, 9.)  Now, with the benefit of discovery developed over time, Epic and Match merely seek to clarify the pleadings in this complex case by breaking out one piece of that conduct, in order to present a clear charge on that issue to the jury.  Google also ignores the pages on the calendar that remain; the proposed amendments were filed *over eight months* before trial and over three months before dispositive motions, leaving ample time and opportunity for Google to address the allegations.

Google's assertion that the supposed delay means Google lacked notice of Epic and Match's claims is inconsistent with the rest of its brief.  Google goes to great lengths to argue that Epic and Match have made these "same allegations" repeatedly over the last year.  (Opp'n 6-7.)  The case Google cites, *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C04-02123 MJJ, 2007 WL 4104099, at *2 (N.D. Cal. Nov. 16, 2007) (Opp'n 8), is not on point.  There, the court found that the moving party failed to diligently investigate and develop evidence related to a potential claim for months after having notice that such a claim was available.  Here, by contrast, rather than making serious allegations based on an undeveloped record, Epic and Match have been carefully developing evidence about Google's anti-competitive developer agreements throughout the case, including in recently completed depositions; have announced those claims in prior court filings; and now seek to conform their complaints in light of such evidence.

The other cases that Google cites are also distinguishable.  In *Eberhard v. California Highway Patrol*, this Court denied the plaintiff's effort to add a new *defendant*, where the plaintiff's theory of the proposed defendant's liability arose from an incident the plaintiff himself had personally observed, and the amendment was based on the same "essential facts" that the plaintiff was aware of *before* the deadline to amend.  No. 14-cv-01910-JD, 2015 WL 4735213, at *2 (N.D. Cal. Aug. 10, 2015).  Here, Epic and Match are not seeking to bring a new defendant into the case, nor were they involved in the events underlying the proposed amendments.  Rather, the relevant facts were adduced in discovery

---

apps off Google Play.  (Motion for Preliminary Injunction, Match ECF No. 12-1, at 7–9.)  Moreover, even after Match entered the case, Google did not provide Match with Google's production of over 3 million documents until about June 22.  (Harshbarger Decl.)  It then took several more weeks before Match was able to process and begin reviewing those documents—let alone identify the evidence supporting its Proposed Amended Complaint.

from Google and third parties, including as recently as last month.  Although Google asserts that motions to amend are "routinely" denied on the basis of elapsed time, the cases it cites involved extensive showings of prejudice, *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-cv-2861-SC, 2012 WL 6095089, at *3-4 (N.D. Cal. Dec. 7, 2012) (new claims of liability and damages introduced "an entirely new theory of recovery" and were likely to require "voluminous" additional discovery), or futility, *Amcor Flexibles Inc. v. Fresh Express Inc.*, No. C 14-01025 LB, 2015 WL 890360, at *7 (N.D. Cal. Mar. 2, 2015) (finding "the counterclaim [Defendant] seeks to assert appears to be futile in that it is entirely speculative and based on an inference . . . that is not supported by new discovery")—neither of which exists here.

### C.    Google has failed to show that amendment would be futile.

Google faces a high burden to show that the proposed amendments should be denied as futile. Denial of leave to amend on the ground of futility is rare.  *Netbula LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003).  Courts should deny leave to amend as futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense".  *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).  Google "must make a 'strong showing' of futility to deny amendment on this ground alone".  *Bayol*, 2015 WL 4931756, at *4 (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.")).  Google has not made this "strong showing".

Google argues that Epic's and Match's proposed *per se* claims (Epic Count 4, Match Count 6), though not their rule of reason claims (Epic Count 5, Match Count 7), are futile because they fail to allege a horizontal agreement not to compete.  (Opp'n 12-13.)  Specifically, Google contends that Epic and Match did "not plead any direct evidence of a meeting of the minds".  (*Id.*)  This is not correct. Epic and Match point to specifically negotiated, written agreements between Google and certain app developers that had the purpose and effect of stopping the developers from launching competing app stores.  (Epic SAC ¶¶ 198-201; Match FAC ¶¶ 273-76.)  Epic and Match also identify specific internal and external communications showing that ████████████████████████████

1  ████████████████████████████████████████████████████████████████

2  ████████████████████████████████. (Mot. 3-4; Epic SAC ¶¶ 199-201, Match FAC ¶¶ 274-76.)

3  Google's reliance on cases where the existence of *any* agreement was in dispute, *e.g.*, *Monsanto Co. v.*

4  *Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (cited at Opp'n 13), are therefore irrelevant.

5  The only issue is thus whether Epic and Match have alleged sufficient facts to conclude that

6  these agreements are subject to *per se* treatment.  As a threshold matter, this is not a question that

7  should be decided on a motion to amend, particularly in light of the demanding standard for assessing

8  futility.  *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079, 1106-07 (S.D. Cal.

9  2018) (noting the "general preference against denying a motion for leave to amend based on futility"

10  because "[a]rguments concerning the sufficiency of the proposed pleadings, even if meritorious, are

11  better left for briefing on a motion to dismiss").

12  In any event, contrary to Google's claims, there is more than enough in the Proposed Amended

13  Complaints to support a *per se* claim at the pleading stage.  As a factual matter, Epic and Match allege

14  "████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████".  (Epic SAC

16  ¶ 198; Match FAC ¶ 273.)  In addition to the agreements themselves, Epic and Match support their

17  claims with documents and deposition testimony demonstrating that Google's purpose in entering

18  these agreements was to stop its competitors from launching competing app stores.  (Epic SAC ¶¶ 199-

19  201; Match FAC ¶¶ 274-76.)  As a legal matter, Google nevertheless claims that the Project Hug

20  agreements are vertical and therefore not subject to *per se* treatment.  This simply ignores the content

21  of the proposed amendments.  Epic and Match allege based on Google's documents and testimony that

22  Google entered these agreements in order to stop the launch of competing app stores by app developers

23  that ████████████████████████████████████████████████

24  ████████████████████.  The mere fact that the potential competitors to Google Play were *also*

25  customers does not eliminate the horizontal nature of the agreement.  For example, it would be just as

26  unlawful for Intel to agree with a competing chip supplier like AMD not to compete in the supply of a

27  certain type of chip as it would be for Intel to agree with a customer like Dell or Acer not to compete in

28  the supply of that chip.  An agreement not to compete is no less horizontal just because the

counterparty also has a line of business downstream.[6]

Google's effort to analogize its horizontal Project Hug agreements to suppliers offering "their best deals to customers whose defection threatens them most" (Opp'n 14) is misguided. Epic and Match have pleaded facts showing that Google did not pay these developers to prevent "defection" from Google Play, but to prevent them from starting *competition* with Google Play. Epic and Match have also pleaded facts showing that these agreements did not merely provide incentives to use Google Play, but instead imposed terms that as a practical matter made it infeasible for the counterparties to launch competing app stores.[7]  For these reasons, *In re Google Digital Advertising Antitrust Litigation*, No. 21-CV-6841 (PKC), 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022), does not apply here. In that case, the plaintiffs challenged an agreement between Google and Facebook relating to online advertising. *Id.* at *16. The court found the allegations to reflect "principally a vertical agreement" because its terms were "most naturally understood as an inducement" for Facebook to participate in advertising auctions using Google's "in-app mediation tool". *Id.* In other words, the court considered the agreement primarily to provide Facebook with incentives to use a Google service. Critically, however, the court also noted that "Facebook is not alleged to be a participant in the market for in-app mediation tools". *Id.* Thus, there was no agreement not to compete in that market. Here, by contrast, Epic and Match squarely allege that certain Project Hug developers *were* potential competitors in the Android app distribution market, and that Google agreed to pay those developers not to enter the market. (Epic SAC ¶¶ 198-201, Match FAC ¶¶ 273-76.) That is an undeniably horizontal agreement.

Finally, Google suggests that as a technology company, it is somehow immune from *per se* claims. That is not the law. *See, e.g.*, *Arizona v. Maricopa Cnty. Medical Soc'y*, 457 U.S. 332, 351

---

[6] To make the agreements seem more innocuous, Google makes the factual argument that they constituted "procompetitive price-cutting". (Opp'n 13.) This factual argument is not suitable for decision on a motion to amend, particularly when Google witnesses repeatedly under oath ████████ ██████████████████████████████. (*See* Zaken Decl. Ex. B, ████ Dep. Tr. 188:5-189:2; Zaken Decl. Ex. C, ██████ Dep. Tr. 127:24-133:9.)

[7] Accordingly, Google's invocation of the Epic Games Store's exclusivity agreements for specific game titles (Opp'n 13-14) is completely off point. Developers who agree to such deals remain free to launch other game titles outside the Epic Games Store and to launch their own competing store. Google cites nothing to indicate that any of the Epic Games Store agreements has the anticompetitive features of the horizontal Project Hug agreements described in the Proposed Amended Complaints.

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

1   (1982) ("[T]he argument that the *per se* rule must be rejustified for every industry that has not been

2   subject to significant antitrust litigation ignores the rationale for *per se* rules, which in part is to avoid

3   'the necessity for an incredibly complicated and prolonged economic investigation into the entire

4   history of the industry involved.'" (quoting *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958))).

5   Paying potential competitors not to compete is hardly a "novel business practice[]" (Opp'n 14-15) with

6   which courts lack experience.  Google's argument is an invitation to immunize technology companies

7   and two-sided markets from *per se* treatment even where, as here, the agreements in question are

8   straightforward violations of the antitrust laws.  The Court should deny this invitation—in general, and

9   certainly at the pleading stage.

10  **II.      The Proposed Amended Complaints Should Be Permitted Under Rule 16.**

11          While Rule 15(a) directs that "[t]he court should freely give leave [to amend] when justice so

12  requires", Fed. R. Civ. P. 15(a)(2), Rule 16 also applies as a procedural matter where, as here, the

13  request to amend is filed after the scheduling order deadline for amendments has passed, *Johnson v.*

14  *Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  To amend a scheduling order, Rule

15  16(b)(4) requires a showing of good cause, which focuses on "the diligence of the party seeking the

16  amendment" and "the moving party's reasons for seeking modification".  *Id.* at 609.

17          Google has failed to establish a lack of diligence on the part of Epic and Match.  Epic and

18  Match have been diligent in pursuing discovery regarding Google's anticompetitive agreements with

19  developers and have good reason for seeking modification—to conform the counts asserted in their

20  complaints to the facts uncovered during discovery and facilitate a clear charge to the jury.  Further,

21  much of the evidence on which Epic and Match rely had not been fully developed by

22  December 3, 2021—when only a single deposition had been taken—and Match had not yet filed suit or

23  had access to any discovery at all by that deadline.  Thus, there is good cause for these amendments.

24                                  **CONCLUSION**

25          For the foregoing reasons, Epic and Match respectfully request that the Court grant Epic and

26  Match's Motion for leave to file the Proposed Amended Complaints and amend the Second Amended

27  MDL Scheduling Order.

28

Dated:  October 28, 2022

Respectfully submitted,

By:   /s/ *Lauren A. Moskowitz*
Lauren A. Moskowitz

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

Dated:  October 28, 2022

**HUESTON HENNIGAN LLP**
Douglas J. Dixon
Christine Woodin
Joseph A. Reiter

Respectfully submitted,

By:   */s/ Douglas J. Dixon*
Douglas J. Dixon

*Counsel for Plaintiffs Match Group LLC et al.*

## **E-FILING ATTESTATION**

I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz