| | |
|---|---|
| Karma M. Giulianelli (SBN 184175) <br> karma.giulianelli@bartlitbeck.com <br> **BARTLIT BECK LLP** <br> 1801 Wewatta St., Suite 1200 <br> Denver, Colorado 80202 <br> Telephone: (303) 592-3100 | Brendan P. Glackin (SBN 199643) <br> bglackin@agutah.gov <br> **OFFICE OF THE UTAH ATTORNEY GENERAL** <br> 160 E 300 S, 5th Floor <br> PO Box 140872 <br> Salt Lake City, UT 84114-0872 <br> Telephone: 801-366-0260 |
| Hae Sung Nam (*pro hac vice*) <br> hnam@kaplanfox.com <br> **KAPLAN FOX & KILSHEIMER LLP** <br> 850 Third Avenue <br> New York, NY 10022 <br> Tel.: (212) 687-1980 | *Counsel for Utah and the Plaintiff States* |
| | Brian C. Rocca (SBN 221576) <br> brian.rocca@morganlewis.com <br> **MORGAN, LEWIS & BOCKIUS LLP** <br> One Market, Spear Street Tower <br> San Francisco, CA 94105-1596 <br> Telephone: (415) 442-1000 |
| *Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation* | |
| Paul J. Riehle (SBN 115199) <br> paul.riehle@faegredrinker.com <br> **FAEGRE DRINKER BIDDLE & REATH LLP** <br> Four Embarcadero Center, 27th Floor <br> San Francisco, CA 94111 <br> Telephone: (415) 591-7500 | Glenn D. Pomerantz (SBN 97802) <br> glenn.pomerantz@mto.com <br> **MUNGER, TOLLES & OLSON LLP** <br> 350 South Grand Avenue, Fiftieth Floor <br> Los Angeles, California 90071-3426 <br> Telephone: (213) 683-9100 |
| Christine A. Varney (*pro hac vice*) <br> cvarney@cravath.com <br> **CRAVATH, SWAINE & MOORE LLP** <br> 825 Eighth Avenue <br> New York, New York 10019 <br> Telephone: (212) 474-1000 | *Counsel for Defendants Google LLC et al.* |
| | Douglas J. Dixon (SBN 275389) <br> ddixon@hueston.com <br> **HUESTON HENNIGAN LLP** <br> 620 Newport Center Drive, Suite 1300 <br> Newport Beach, CA 92660 <br> Telephone: (949) 229-8640 |
| *Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.* | |
| | *Counsel for Plaintiffs Match Group, LLC et al.* |

[**Additional counsel on signature page**]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT OMNIBUS ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIAL SUBMITTED IN CONNECTION WITH THE BRIEFING ON PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Judge: Hon. James Donato |

**JOINT STATEMENT**

Plaintiffs and Google Defendants ("Google") (collectively, the "Parties") respectfully submit this joint motion to seal portions of the Parties' papers and supporting documents filed in connection with Plaintiffs' motion for sanctions relating to Google's preservation of instant messages.

On May 27, 2022, the parties filed a joint statement regarding Google's preservation of instant messages. Dkt. 258 [1]. At the Court's direction, on October 13, 2022, Plaintiffs then filed an opening brief in support of a motion for sanctions against Google for not preserving certain instant messages. Dkt. 349. Google opposed Plaintiffs' motion on November 3, 2022. Dkt. 367. Plaintiffs filed a reply brief on November 10, 2022. Dkt. 373. On November 16, 2022, the Court ordered an evidentiary hearing and oral argument on the dispute, Dkt. 375, which will be held on January 12, 2023, Dkt. 384.

In the interest of efficiency, and to avoid the filing of voluminous or multiple administrative motions to seal, the Parties stipulated to, and the Court ordered, a modified sealing procedure for material submitted in connection with the Parties' briefing of Plaintiffs' sanctions motion. Dkt. 256. Under that order, the Parties agreed to file a joint omnibus sealing motion addressing all sealing requests after briefing on Plaintiffs' sanction motion completed. Dkt. 256. Briefing of that motion is now complete, and the Parties submit this joint motion to seal, and its accompanying declarations, in accordance with that order.

While stylized as a joint motion in accordance with the Court's stipulated order, Dkt. 256, Plaintiffs oppose certain portions of Google's requests to seal. The Parties' respective positions are found below.

---

[1] Unless otherwise noted, all "Dkt." references pertain to the MDL docket, 3:21-md-02981-JD.

**GOOGLE'S POSITION**

## I.   REQUEST FOR RELIEF

Google respectfully requests that the Court seal four categories of non-public information: (1) specific deal terms of contracts with non-parties, (2) non-public financial information, (3) details of negotiation strategies with third parties or business/product information that could be exploited by third-party competitors, and (4) personally identifiable information ("PII") and employee/personnel information. The specific items to be sealed, and associated reasons for sealing, are listed in the Declaration of Christian Cramer, as well as Exhibit 1 to the Declaration of Dane P. Shikman.

If the Court denies this sealing motion, in whole or in part, Google respectfully requests that the Court delay the effect of such order for seven (7) days to allow time for affected parties to make appropriate plans (including alerting impacted individuals), bring potential issues to the Court's attention, or pursue appropriate relief if necessary.[2] After all, "[o]nce information is published, it cannot be made secret again," *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008), so this measure will serve as an extra safeguard to ensure that genuinely sealable material—including irrelevant employee/personnel matters—does not inadvertently spill into the public record and cause irreparable harm.

## II.   LEGAL STANDARD

The Ninth Circuit has held that "[t]wo standards generally govern motions to seal documents." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010). "First, a 'compelling reasons' standard applies to most judicial records." *Id*. at 677-68. Under that standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Second, the Ninth Circuit has "carved out an exception" for sealed materials attached to motions and supporting materials that are only

1  "tangentially related to the merits of the case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097, 1101 (9th Cir. 2016).  In those circumstances, "a less exacting 'good cause' standard" applies.  *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (quoting *Pintos*, 605 F.3d at 678).  Discovery motions, for example, are ordinarily analyzed under the more relaxed "good cause" standard.  *Ctr. For Auto Safety*, 809 F.3d at 1097.

Like discovery motions, Plaintiffs' motion for sanctions here is only "tangentially related to the merits of the case," *id.*, so the good cause standard applies.  Plaintiffs' sanctions motion contends that Google improperly failed to preserve internal chat messages for production in discovery.  Such a spoliation motion is quintessentially a dispute that is tangential to the merits.  *See* F*ederal Trade Commission v. DirecTV, Inc.* (N.D. Cal., Dec. 21, 2016, No. 15CV01129HSGMEJ) 2016 WL 7386133, at *1 ("As the Motion for Sanctions [for spoliation] is tangentially related to the merits of the action, the good cause standard applies."); *Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS(NLS), 2016 WL 5110453, at *1 n.1 (S.D. Cal. Sept. 21, 2016) (good cause standard applied to motion to seal documents in connection with motion for sanctions for spoliation).  The fact that Plaintiffs' sanctions papers have cited documents that they may later rely on to prove the merits of their case does not convert the motion *itself* into one that goes to the merits—the motion is still "tangential" to the merits, just as discovery motions ordinarily would be.  The fact that an evidentiary hearing is scheduled on Plaintiffs' motion does not change what standard applies either.  At a minimum, if Plaintiffs seek to introduce a specific piece of evidence at the hearing, the Court can decide whether that should be sealed at that time, but until then the law is clear that the good-cause standard applies.

### III. ARGUMENT

#### A. Courts Routinely Seal the Material At Issue Here

"Secrecy is a one-way street: Once information is published, it cannot be made secret again."  *In re Copley Press*, 518 F.3d at 1025.  Recognizing the presumption in favor of access to court papers, this sealing request focuses on four highly sensitive areas categories of non-public information:  (1) specific deal terms (price and nonprice) of contracts with non-parties, (2) non-

public financial information, (3) details of negotiation strategies with third parties or business/product information that could be exploited by third-party competitors, and (4) PII and employee/personnel information.

Courts in this Circuit have granted sealing motions where the material to be disclosed includes "terms of confidential contracts,"[3] "contract negotiations,"[4] "detailed financial information,"[5] "long-term financial projections,"[6] discussions of business strategy,"[7] and "business information that might harm a litigant's competitive standing."[8] Indeed, courts consistently hold these categories information may be sealed, even under the more rigorous "compelling reasons" standard. *See*, *e.g.*, *Baird v. BlackRock Institutional Tr. Co.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) ("Courts have found that 'confidential business information' in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' satisfies the 'compelling reasons' standard.") (citation omitted); *In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (protecting competitive terms of a license agreement "which plainly falls within the definition of 'trade secrets'" because it provides "an opportunity to obtain an advantage over competitors who do not know or use it"); *Milliner v. Bock Evans Fin. Counsel, Ltd.*, No. 15-cv-01763-JD, 2020 WL 1492692, at *2 (N.D. Cal. Mar. 27, 2020) (permitting sealing of a "highly negotiated agreement" that would "expose [litigant] to competitive harm" if publicly disclosed); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-cv-02864-JD, 2016 WL 4091388, at *2–5 (N.D. Cal. Aug. 2, 2016) (finding "compelling reasons" to seal, inter alia, "product-specific customer data,"

---

[3] *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019).
[4] *Id.*
[5] *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations").
[6] *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011).
[7] *Id.*
[8] *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)).

"detailed sales information for customers that could be used to the company's competitive disadvantage," "competitive intelligence," and "customer-specific sales data"); *Ovonic Battery*, 2014 WL 2758756, at *2 ("Our circuit allows parties to seal pricing terms, royalty rates, and guaranteed minimum payment terms found in a licensing agreement even under the 'compelling reasons' standard because that business information could 'harm a litigant's competitive standing.'") (quoting *Electronic Arts*, 298 F. App'x at 569).

Courts in the Ninth Circuit have also consistently held that PII, such as email addresses, telephone numbers, home addresses, and birth dates, should be shielded from public disclosure. *See, e.g.*, Fed. R. Civ. P. 5.2; *Hewlett-Packard Co.*, 2014 WL 233827, at *3 (ordering the sealing of plaintiff's home address, phone number, and email address because there is a "compelling privacy interest in this information"); *Snapkeys*, 2021 WL 1951250, at *3 (granting Google's motion to file under seal PII of its current and former employees, including their email addresses and telephone numbers); *Sameer v. Khera*, No. 117CV01748DADEPG, 2018 WL 4772035, at *1 (E.D. Cal. Oct. 1, 2018). This is particularly so when such information is entirely irrelevant to this lawsuit and Plaintiffs' sanctions motion. *See Kamakahi v. Am. Soc'y for Reprod. Med.*, No. 11-CV-01781-JCS, 2015 WL 5168530, at *1 (N.D. Cal. Sept. 2, 2015) (granting redaction of compensation information that was "entirely irrelevant" to the case).

### B. Disclosure of the Material At Issue Here Would Cause Severe Irreparable Harm

As discussed in detail in the declarations filed herewith, Google asserts that public disclosure of this information will cause irreparable harm to not only Google's business relationships and its competitive position in the marketplace, but also to Google's own employees whose personal information is of no import to this case or Plaintiffs' sanctions motion, thereby outweighing any public interest in disclosure. *See* Declaration of Christian Cramer ("Cramer Decl."); Declaration of Dane P. Shikman, Ex. 1 ("Sealing Chart").

First, disclosure of specific deal terms could harm Google's competitive standing and negotiations with other counterparties. For example, Exhibit A19 (Cramer Declaration) reveals

1    the details of a specific agreement with another major technology company, Sealing Chart No.
2    39, as well as the counterparty identities of specific wireless carriers who have signed
3    agreements that Plaintiffs describe in great detail, Sealing Chart No. 44.

4    <u>Second</u>, disclosure of non-public financial information risks harming Google's
5    competitive standing.  For example, Exhibit B4 describes detailed financial information about
6    costs of a partnership under a current contract and its impact on Google Play.  Sealing Chart No.
7    69.  And Exhibit B9 reveals a discussion of a business unit's ability to profitably absorb certain
8    costs.  Sealing Chart No. 76.

9    <u>Third</u>, disclosure of the details of negotiation strategies with third parties or associated
10   business/product assessments threatens to undermine Google in future or even ongoing
11   negotiations.  For example, Exhibit A7 reveals internal strategy discussions on detailed points of
12   negotiation with a specific major app developer.  Sealing Chart Nos. 18-19.  Exhibit B16
13   discusses the impact of specific proposals on a business unit's ability to innovate.  Sealing Chart
14   No. 94.

15   <u>Fourth</u>, disclosure of confidential employee/personnel matters and associated PII could
16   inflict unnecessary and irreparable damage to the affected employees.  For example, Exhibit B3
17   reveals an employee's private home address.  Sealing Chart No. 66.  Exhibit A5 reveals
18   information about a named employee's child's health issues.  Sealing Chart No. 12.  Exhibit C
19   reveals documentation of employee performance and personnel matters that are unrelated to
20   Plaintiffs' sanctions motion or even to this lawsuit.  *E.g.,* Sealing Chart Nos. 99, 105, 117, 119,
21   125, 126, 130, 131, 136, 146.  And Exhibit C3 reveals a private discussion about an employee
22   considering a different job, revealing that employee's phone number.  Sealing Chart No. 150.
23   The list goes on.

24   As described *supra*, at 4-5 the above information is precisely the kind of information that
25   Courts in this circuit ordinarily seal.  The Cramer Declaration contains numerous examples akin
26   to the above, and supplies more detailed explanations for why sealing is warranted.

27

28

**PLAINTIFFS' POSITION**

Plaintiffs would not oppose a targeted request to seal sensitive and personally identifying information in Plaintiffs' adverse inference filings, but that is not what Google has submitted. Google's request is overbroad, seeks to shield key evidence that Plaintiffs will rely on at the upcoming evidentiary hearing, and fails to meet Google's burden to explain why the public should not have access to Plaintiffs' evidence. Specifically, Google seeks to seal *150 passages* from the proffer, briefs and exhibits that Plaintiffs filed in connection with their Motion for Sanctions (the "Motion") (Dkt. 349), including the Joint Statement Regarding Google's Preservation of Instant Messages (Dkt. 258). These passages prove that Google employees regularly engaged in substantive business discussions over Google Chat, and thus speak to a central, disputed issue the parties will address at the hearing. The public interest in understanding Plaintiffs' evidence and arguments is high, and the generic statements and confidentiality assertions in Google's sealing papers are not sufficiently compelling to outweigh the public's right to access. With narrow exceptions for personal information that Plaintiffs have specified in Google's sealing chart, the Court should deny Google's sealing application.

## DISCUSSION

The public has a "general right to inspect and copy public records and documents, including judicial records and documents". *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point". *Id.* (citation omitted). A party who wishes to keep information under seal must "articulate[] compelling reasons supported by specific factual findings, that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process". *Id.* (citations omitted). Under an "exception" to this general rule, courts sometimes apply a "good cause" standard for sealing information that is "unrelated, or only tangentially related, to the underlying cause of action". *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016). However, that exception does not apply to

"important issues and information to which our case law demands the public should have access", or where "the public's understanding of the judicial process and of significant public events" would be impeded. *Id.*; *see id.* at 1099 ("[P]lenty of technically nondispositive motions—including routine motions in limine—are strongly correlative to the merits of a case.").

The public interest here is strong, and the "compelling reasons" standard applies, because Google is asking to seal key evidence that Plaintiffs intend to rely on at the evidentiary hearing.[9] One of the central issues the parties will address is whether "Google's failure to retain Google Chats caused the destruction of substantive, relevant information". (Dkt. 349 at 2 (Plaintiffs' Motion).) Google has taken the position that "chats are typically used by Google employees to discuss *non-substantive* issues and coordinate simple logistics" (Dkt. 367 at 1), and that the Chats it destroyed "are largely a fishing expedition for irrelevant information that does nothing to bolster Plaintiffs' claims" (*id.* at 7). The substantive Google Chats, deposition testimony and references to destroyed Chats that Plaintiffs submitted in connection with their proffer and Motion prove otherwise. They show that Google employees regularly discussed substantive business over Chat, and thereby demonstrate the prejudice Google caused by its document destruction. (*See* Dkts. 258, 348, 373.) If Plaintiffs' evidence were sealed, it would be impossible for the public to understand Plaintiffs' arguments or for the Court to hold a public hearing on this dispute. This strong public interest weighs heavily against sealing.

On the other side of the ledger, Google has not shown why its vaguely described business interests are compelling, or that the scores of passages it asks to seal include "trade secrets" or "pricing terms". *See Tevra Brands LLC v. Bayer HealthCare LLC*, 2020 WL 1245352, at *2 (N.D. Cal. Mar. 16, 2020). Its bare assertions that these documents contain "commercially sensitive discussions" or "highly confidential characterizations" are insufficient under Ninth Circuit law, especially in light of the public's strong interest in accessing Plaintiffs' evidence.

---

[9] The public and private interest factors discussed below also explain why Google's sealing request would be meritless under the "good cause" standard. *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (for "good cause", a court must find that "particularized harm will result from disclosure", and then "balance[] the public and private interests").

|   |   |
|---|---|
| 1 | Even a cursory review of Google's proposed sealing requests makes these deficiencies |
| 2 | clear. To take one illustrative example of Google's overreach, Google asks to seal portions of a |
| 3 | detailed, substantive Chat among senior Google executives about a major policy change to |
| 4 | Google Play's requirement that developers use Google Play Billing. (Dkt. 258-12.) The Chat |
| 5 | also includes Google's rationales for its policy change. Google asserts that this Chat "contains |
| 6 | non-public and confidential information regarding an internal assessment of Google Play's |
| 7 | business model and its impact on other parts of the business", and "reflects sensitive, highly |
| 8 | confidential characterizations by Google's internal business teams". (Sealing Chart, No. 11.) |
| 9 | These boilerplate claims are not "compelling reasons" for sealing this document—they are |
| 10 | reasons for making it public. Chats of this nature are exactly the type of evidence that Plaintiffs |
| 11 | will rely on at the hearing to prove that Google employees used Chats for substantive business |
| 12 | purposes. Moreover, the subject matter being discussed involves a decision that Google made |
| 13 | and announced over two years ago, and one that is highly relevant to Plaintiffs' claims because it |
| 14 | demonstrates that Google Play raised its prices after obtaining monopoly power—a fact that |
| 15 | Google denies. |
| 16 | Similar examples are found throughout Google's voluminous sealing table, including: |
| 17 | • Google asks to seal portions of the deposition transcript of a Google Play executive, |
| 18 | which quote an email where the executive described his substantive Chat with another |
| 19 | executive—a Chat that Google destroyed. (Dkt. 348-05.) According to the email, the |
| 20 | destroyed Chat involved Google's effort to pay a third party not to compete with Google |
| 21 | Play, an effort challenged in Plaintiffs' complaints as anticompetitive conduct. Google |
| 22 | casts this conduct as "commercially sensitive discussions relating to that developer's |
| 23 | business strategy, discussion of a confidential commercial agreement with that developer, |
| 24 | and specific deal terms and financial considerations associated with those negotiations". |
| 25 | (Sealing Chart, Nos. 64-65.) But the testimony describes *Google's* business strategy, and |
| 26 | it includes no "specific deal terms and financial considerations". Moreover, this |
| 27 | information directly supports the argument Plaintiffs will make at the evidentiary hearing |
| 28 |   |

|   |   |
|---|---|
| 1 | that Google prejudiced Plaintiffs by destroying substantive Chats like the one described |
| 2 | by the Google Play executive in this email. |

- Google seeks to seal portions of a Chat where a senior executive and another employee discussed a series of agreements between Google and Android OEMs that Plaintiffs challenge as anticompetitive. (Dkt. 372-6; *see also* Dkt. 372-5 (deposition testimony regarding the same that Google seeks to seal in part).) Google claims that the Chat includes "Google Play's internal assessment of its strategic priorities and negotiating approach to third-parties", as well as "highly confidential characterizations by Google's internal business teams". (Sealing Chart, No. 147.) What the Chat actually discusses are Google's anticompetitive rationales for entering into the challenged agreements, which is not the type of information that warrants sealing under Ninth Circuit law. *See Tevra*, 2020 WL 1245352, at *2 ("Where, as here, the material to be sealed goes to the very heart of the suit" and includes "the allegedly anticompetitive practices [plaintiffs] challenge[]", "the public interest in access is especially great."). The Chat is also highly probative of the issues that will be addressed at the evidentiary hearing, as it demonstrates indisputably that Google employees conduct substantive business discussions over Google Chat.

- Similarly, Google seeks to seal portions of the same Chat where the senior executive and other employee speculated about the business risks that Google would face in the absence of agreements that Plaintiffs have challenged as anticompetitive. (Dkt. 258-18.) Google asserts that this discussion includes "Google's non-public, competitively sensitive, and fairly current internal information, including detailed analysis about Google Play's business strategy and priorities". (Sealing Chart, No. 24.) Once again, Google has not shown how anything in this Chat is competitively sensitive. Nor could it make such a showing where the Chat relates to central issues in this litigation and does not reveal trade secrets or information that would harm Google's business. That the document

contains a substantive business discussion demonstrates that the public interest in disclosure is strong.

- Google asks to seal portions of a Chat, and portions of Plaintiffs' Motion describing the Chat, where two engineers at Google's YouTube business discussed how YouTube would be detrimentally impacted if forced to use Google Play Billing—a payment processing service that Google coerces all developers to use through what Plaintiffs allege to be an illegal tie. (Dkts. 348-01 at 9; 348-23 at 2-3.) Google claims that this Chat contains "confidential business strategies within Google" (Sealing Chart, No. 56), as well as "Google Play's internal assessment of its strategic priorities and of its potential technical investments" (Sealing Chart, No. 94). But the Chat is simply a candid assessment of the technical merits of a service that Google forces upon all developers. Moreover, the Chat is yet another substantive business discussion that bears on the merits of Plaintiffs' Motion.

- Google also seeks to seal portions of a Chat where Google employees discussed contractual and technical restraints that Plaintiffs are challenging as anticompetitive, and the manner in which those restraints prevent developers from distributing app stores that compete with Google Play. (Dkt. 258-14.) Google's assertion that the Chat "reveals Google's internal strategic decision-making" is not a sufficient basis to seal it; the document discusses public ways that Google restrains its competitors on Android. (Sealing Chart, No. 18.) And its claim that the language "implicates [a] non-party's confidentiality interests, by revealing the identity of a Google business partner" (*id.*), is unsupported and insufficient where the Chat discusses Google's own decision making process. Further, Google has identified no specific confidentiality interest as to the non-party referenced in this Chat.

\* \* \*

Google cannot have it both ways: it cannot claim that Chats regard only "lunch plans and meeting requests" (Dkt. 367 at 7) and then ask the Court to seal the evidence refuting that

assertion. Sealing is particularly improper here, where Plaintiffs intend to rely on the documents Google seeks to seal at a public hearing. Except with respect to the limited personally identifying information in these documents, Google's sealing effort is overbroad and improper.

Plaintiffs respectfully request that the Court deny Google's sealing motion, except as it pertains to the specific passages Plaintiffs identify in Google's sealing chart.

Respectfully submitted,

| | |
|---|---|
| Dated:  December 1, 2022 | CRAVATH, SWAINE & MOORE LLP<br>　　Christine Varney *(pro hac vice)*<br>　　Katherine B. Forrest *(pro hac vice)*<br>　　Gary A. Bornstein *(pro hac vice)*<br>　　Timothy G. Cameron *(pro hac vice)*<br>　　Yonatan Even *(pro hac vice)*<br>　　Lauren A. Moskowitz *(pro hac vice)*<br>　　Justin C. Clarke *(pro hac vice)*<br>　　M. Brent Byars *(pro hac vice)*<br>　　Michael J. Zaken *(pro hac vice)*<br><br>FAEGRE DRINKER BIDDLE & REATH LLP<br>　　Paul J. Riehle (SBN 115199)<br><br>Respectfully submitted,<br><br>By:　*/s/ Yonatan Even*<br>　　　Yonatan Even<br><br>*Counsel for Plaintiff Epic Games, Inc.* |
| Dated:  December 1, 2022 | BARTLIT BECK LLP<br>　　Karma M. Giulianelli<br><br>KAPLAN FOX & KILSHEIMER LLP<br>　　Hae Sung Nam<br><br>Respectfully submitted,<br><br>By:　*/s/ Karma Giulianelli*<br>　　　Karma M. Giulianelli<br><br>*Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation* |

| | | |
|---|---|---|
| Dated: December 1, 2022 | | PRITZKER LEVINE LLP |
| | |     Elizabeth C. Pritzker |
| | | Respectfully submitted, |
| | | By:   <u>/s/ Elizabeth C. Pritzker</u> |
| | |        Elizabeth C. Pritzker |
| | | *Liaison Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation* |
| Dated: December 1, 2022 | | OFFICE OF THE UTAH ATTORNEY GENERAL |
| | |     Brendan P. Glackin |
| | | Respectfully submitted, |
| | | By:   <u>/s/ Brendan P. Glackin</u> |
| | |        Brendan P. Glackin |
| | | *Counsel for Utah* |
| Dated: December 1, 2022 | | HUESTON HENNIGAN LLP |
| | |     Douglas J. Dixon |
| | |     Christine Woodin |
| | |     Joseph A. Reiter |
| | | Respectfully submitted, |
| | | By:   <u>/s/ Douglas J. Dixon</u> |
| | |        Douglas J. Dixon |
| | | *Counsel for Plaintiffs Match Group, LLC et al.* |

14

JOINT OMNIBUS ADMINISTRATIVE MOTION TO FILE UNDER SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

| | | |
|---|---|---|
| Dated: December 1, 2022 | | MORGAN, LEWIS & BOCKIUS LLP<br>   Brian C. Rocca<br>   Sujal J. Shah<br>   Michelle Park Chiu<br>   Minna L. Naranjo<br>   Rishi P. Satia<br><br>Respectfully submitted,<br><br>By:  */s/ Brian C. Rocca*<br>      Brian C. Rocca<br><br>*Counsel for Defendants Google LLC et al.* |
| Dated: December 1, 2022 | | MUNGER, TOLLES & OLSON LLP<br>   Glenn D. Pomerantz<br>   Kyle W. Mach<br>   Kuruvilla Olasa<br>   Justin P. Raphael<br>   Emily C. Curran-Huberty<br>   Jonathan I. Kravis<br>   Dane P. Shikman<br>   Nicholas R. Sidney<br><br>Respectfully submitted,<br><br>By:  */s/ Glenn D. Pomerantz*<br>      Glenn D. Pomerantz<br><br>*Counsel for Defendants Google LLC et al.* |

**E-FILING ATTESTATION**

I, Dane P. Shikman, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Dane P. Shikman*
Dane P. Shikman