HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:     (949) 229-8640

HUESTON HENNIGAN LLP
Joseph A. Reiter, State Bar No. 294976
jreiter@hueston.com
Christine Woodin, State Bar No. 295023
cwoodin@hueston.com
Michael K. Acquah, State Bar No. 313955
macquah@hueston.com
William M. Larsen, State Bar No. 314091
wlarsen@hueston.com
Julia L. Haines, State Bar No. 321607
jhaines@hueston.com
Karen Ding
kding@hueston.com
Tate Harshbarger
tharshbarger@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:     (213) 788-4340

Attorneys for Plaintiffs Match Group, LLC;
Humor Rainbow, Inc.; PlentyofFish Media ULC;
and People Media, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **MATCH PLAINTIFFS' ANSWER TO DEFENDANT GOOGLE'S COUNTERCLAIMS** |
| *Match Group, LLC, et al. v. Google LLC, et al.,* Case No. 3:22-cv-02746-JD | |

1

**RESPONSE TO INTRODUCTION**

Under Fed. R. Civ. P. 10(b), "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Google's Answer and Counterclaims include a lengthy unnumbered "introduction" setting forth a (misleading and inaccurate) summary of the events of this case ranging across several topics and allegations.  As such, the introduction does not require a response.  To the extent the introduction contains allegations requiring a response, Plaintiffs Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc. (collectively, "the Match Plaintiffs")[1] deny all such allegations.

**RESPONSE TO NUMBERED PARAGRAPHS**

1. The allegations of Paragraph 1 set forth legal conclusions to which no response is required. To the extent a response is required, the Match Plaintiffs deny the allegations in paragraph 1.

2. The allegations of Paragraph 2 set forth legal conclusions to which no response is required. To the extent a response is required, the Match Plaintiffs deny the allegations in paragraph 2.

3. The allegations of Paragraph 3 set forth legal conclusions to which no response is required. To the extent a response is required, the Match Plaintiffs deny the allegations in paragraph 3.

4. The Match Plaintiffs admit the allegations in paragraph 4.

5. The Match Plaintiffs admit the allegations in paragraph 5.

6. The Match Plaintiffs admit the allegations in paragraph 6.

7. The Match Plaintiffs admit the allegations in paragraph 7.

8. The Match Plaintiffs admit the allegations in paragraph 8.

9. The Match Plaintiffs admit the allegations in paragraph 9.

10. The Match Plaintiffs admit the allegations in paragraph 10.

---

[1] Google's Answer and Counterclaims refer to the Match Plaintiffs as "Match" or "Match Group." Google does not name any other entity, other than the Match Plaintiffs, as a named defendant to its counterclaims.  The Match Plaintiffs' answer is on behalf of the Match Plaintiffs only and not any other entity or brand.

1    11.    The Match Plaintiffs admit the allegations in paragraph 11.

2    12.    The Match Plaintiffs lack sufficient information to admit or deny the allegations in

3    paragraph 12.

4    13.    The Match Plaintiffs admit the allegations in paragraph 13.

5    14.    The Match Plaintiffs admit that Google Play is not the only Android app store. The

6    Match Plaintiffs admit that their apps are distributed on the Apple App Store. The Match Plaintiffs

7    admit that the Tinder app is distributed on certain non-Google Android app stores. Except as

8    expressly admitted, the Match Plaintiffs deny the allegations in paragraph 14.

9    15.    In the market for the distribution of Android apps, Google does not compete with the

10   Apple iOS, the Apple App Store, developer websites, or non-mobile platforms. The Match Plaintiffs

11   admit that other Android app stores exist in the market for distribution of Android apps. Because

12   Google has monopolized this market, however, no Android app store can meaningfully compete

13   with Google Play. Rather, app developers' only viable means of distributing apps to Android users

14   is Google Play.   Except as expressly admitted, the Match Plaintiffs deny the allegations in

15   paragraph 15.

16   16.    The Match Plaintiffs admit that Google unilaterally imposes its Developer

17   Distribution Agreement ("DDA") on developers that distribute apps through Google Play. The

18   Match Plaintiffs admit that the DDA incorporates Google's Developer Program Policies. Whether

19   the DDA is a legally binding contract is a legal conclusion to which no response is required. Except

20   as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 16.

21   17.    The Match Plaintiffs admit that the first sentence and third sentence of paragraph 17

22   accurately quotes the current DDA. The Match Plaintiffs admit that Google does not collect a

23   service fee from developers who do not charge for downloads, in-app purchases, or subscriptions.

24   The Match Plaintiffs lack sufficient information to admit or deny whether 97% of developers have

25   apps available on Google Play and pay no fees. The Match Plaintiffs admit that Google charges a

26   $25 fee to set up a Google Play developer account. Except as expressly admitted, the Match

27   Plaintiffs deny the allegations in paragraph 17.

28

6303766

18.     The Match Plaintiffs admit that Google does not require that developers choose a particular monetization strategy. The Match Plaintiffs admit that monetization strategies include paid distribution, sale of in-app products, subscriptions, and advertisements. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 18.

19.     For transactions processed by Google Play Billing, the Match Plaintiffs admit that (excepting special deals and other exceptions that Google routinely makes with app developers) Google currently charges a service fee of 30% of the transaction amount for paid downloads and payment for access to certain in-app features or services or digital content or goods. For transactions processed by Google Play Billing, the Match Plaintiffs admit that Google currently charges a service fee of 15% of the transaction amount for subscriptions. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 19.

20.     The Match Plaintiffs admit that Google Play's Payments Policy currently states that developers must use Google Play Billing to process transactions for paid downloads, in-app purchases of digital goods and services, and subscriptions. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 20.

21.     The Match Plaintiffs admit that developers must submit their apps and app updates to Google for review and approval. The Match Plaintiffs admit that Google has Restricted Content, Malware, and Mobile Unwanted Software policies. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 21.

22.     The Match Plaintiffs admit that paragraph 22 accurately quotes from the DDA. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 22.

23.     The Match Plaintiffs admit that Google does not (currently) collect service fees from apps made available through other app stores or distribution methods, at least in some cases; the Match Plaintiffs understand that a developer with an associated Google Play developer account that distributes an app on an alternative app store with Google Play Billing activated would pay the service fee if the user uses Google Play Billing to complete the transaction.  The Match Plaintiffs also admit that the DDA, on its face, only applies to the distribution of apps on Google Play.  The Match Plaintiffs deny that the confluence of Google's agreements and policies do not effectively

"preclude" developers from distributing apps through means other than the Google Play Store. Except as expressly admitted, the Match Plaintiffs deny the remaining allegations of paragraph 23.

24.     The Match Plaintiffs admit that Google does not collect a service fee for payments for in-app content made outside the app (at least, when users are able to make those payments given Google's obstruction of non-Google-Play-Billing payments), including when the Match Plaintiffs' users pay for subscriptions on a website and then log into the Google Play distributed app and use the subscription in the app. The Match Plaintiffs admit that they have the option of having users pay for in-app content outside of the app, subject to Google's efforts to eliminate that "option" as an effective pathway for monetizing an app. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 24.

25.     The Match Plaintiffs admit that Google offers direct carrier billing and gift cards for sale. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 25.

26.     The Match Plaintiffs admit that Google Play Billing offers some customer payment features, but lack knowledge or information sufficient to form a belief about the granular details of Google's system and denies Google's characterizations of the same. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 26.

27.     The Match Plaintiffs admit that Google Play Billing offers some customer payment features, but lack knowledge or information sufficient to form a belief about the granular details of Google's system and denies Google's characterizations of the same. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 27.

28.     The Match Plaintiffs admit that they separately own, operate, and develop dating apps. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 28.

29.     The Match Plaintiffs admit the allegations of paragraph 29.

30.     The Match Plaintiffs admit that their dating apps use the "freemium" model. The Match Plaintiffs admit that their users can use free features and services on the Match Plaintiffs' apps. The Match Plaintiffs admit that the success of a dating app depends, in part, on whether the dating app has a sufficient number of users who can connect with each other. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 30.

6303766

31.     The Match Plaintiffs admit that their dating apps use the "freemium" model. The Match Plaintiffs admit that collectively their apps have been downloaded more than 100 million times from Google Play. The Match Plaintiffs admit that they have collectively earned hundreds of millions of dollars in revenue from customers who pay for premium subscriptions or other features. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 31.

32.     The Match Plaintiffs admit that their users can use in-app features and subscriptions in their Google Play-downloaded apps if the user did not purchase access to the in-app features or the subscription through Google Play Billing, subject to various limitations imposed by Google that limit or restrict true cross-platform features and subscriptions (e.g., with respect to user account management). The Match Plaintiffs admit that a user can pay for a subscription on one of the Match Plaintiffs' brands' respective websites and use the subscription in an app downloaded from Google Play. The Match Plaintiffs admit that hypothetically a user could pay for a subscription in a Match Plaintiff app downloaded on an iPad, then switch to an Android phone, download the same app from Google Play, and use the subscription in the Google Play downloaded app. However, few users do this because users typically choose one operating system (e.g., iOS or Android) and rarely switch between operating systems. The Match Plaintiffs admit that Google currently does not collect a service fee from purchases made through one of the websites for the Match Plaintiffs' brands or for purchases completed using Apple's in-app billing system.  Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 32.

33.     The Match Plaintiffs admit that some users of the Match Plaintiffs' services purchase subscriptions and other features on the web.  The Match Plaintiffs admit that the revenue figures in paragraph 33 accurately reflect information produced in this litigation but deny Google's characterizations of the same.  Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 33.

34.     The Match Plaintiffs admit that their apps are distributed on the Apple App Store. The Match Plaintiffs admit that the Tinder app is distributed on certain non-Google Android app stores. The Match Plaintiffs admit that the revenue statistics cited in paragraph 34 accurately reflect information produced in this litigation but deny Google's characterizations of the same.  The Match

1  Plaintiffs deny that the "active U.S. user" statistics in paragraph 34 are accurate.  Except as expressly

2  admitted, the Match Plaintiffs deny the allegations in paragraph 34.

3      35.    The Match Plaintiffs admit that they could hypothetically distribute their apps

4  through Google Play and require a user to purchase subscriptions or other features on a website.

5  However, Google's anti-steering policy would prevent the Match Plaintiffs from informing users in

6  the app that subscriptions must be bought elsewhere, and thus doing so would negatively impact the

7  user experience and the Match Plaintiffs. The Match Plaintiffs admit that Google currently does not

8  collect a service fee from purchases made through websites. Except as expressly admitted, the Match

9  Plaintiffs deny the allegations in paragraph 35.

10      36.    The Match Plaintiffs deny the allegations in paragraph 36.

11      37.    The Match Plaintiffs admit that nonparty Match Group, Inc. was named as a

12  defendant in the first case referenced in paragraph 37 and Match Group, Inc. and Match Group LLC

13  were named as Defendants in the second case referenced in paragraph 37. Except as expressly

14  admitted, the Match Plaintiffs deny the allegations in paragraph 37.

15      38.    The Match Plaintiffs deny the allegations in paragraph 38, which grossly

16  mischaracterize documents quoted therein.

17      39.    The Match Plaintiffs deny the allegations in paragraph 39.

18      40.    The Match Plaintiffs admit that the Match.com app was first published on Google

19  Play on March 25, 2010. The Match Plaintiffs admit that Google has unilaterally imposed its DDA

20  on the Match Plaintiffs; however, the Match Plaintiffs understood from Google's practice and

21  representations that Google did not intend to enforce the DDA's payments policy including against

22  the Match Plaintiffs. The Match Plaintiffs further admit that Google has unilaterally revised its DDA

23  many times. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 40.

24      41.    The Match Plaintiffs admit that there are alternative monetization strategies. The

25  Match Plaintiffs admit that their users can purchase digital content outside of a Google Play

26  downloaded app (subject to Google's efforts to restrict such sales), consume such content within the

27  app, and Google currently receives no service fee. Except as expressly admitted, the Match Plaintiffs

28  deny the allegations in paragraph 41.

6303766

42.     The Match Plaintiffs admit that Google unilaterally imposes the DDA on app developers that distribute their apps on Google Play. The Match Plaintiffs admit that the DDA does not require that users make in-app purchases for digital content that may be consumed within the app. The Match Plaintiffs admit that a user can pay for a subscription on one of the Match Plaintiffs' brands' respective websites and use the subscription in an app downloaded from Google Play. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 42.

43.     The Match Plaintiffs admit that Google unilaterally imposes its DDA on developers like the Match Plaintiffs that use Google Play to distribute apps. The Match Plaintiffs admit that paragraph 43 accurately quotes from Google's current DDA. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 43.

44.     The Match Plaintiffs deny the allegations in paragraph 44.

45.     The Match Plaintiffs admit that in October 2017 Google informed the Match Plaintiffs that Google would require the Match Plaintiffs to use Google Play Billing. However, the DDA's Payments Policy at that time did not require the Match Plaintiffs to use Google Play Billing. The Match Plaintiffs admit that Tinder, as well as all their other brands, were compliant with the Google's Payments Policy. Moreover, Google did not take any action to require the Match Plaintiffs to use Google Play Billing exclusively. To the contrary, Google continued to knowingly allow the Match Plaintiffs to offer alternative payment options. Except as expressly admitted, the Match Plaintiffs deny the allegations in paragraph 45.

46.     The Match Plaintiffs admit that Tinder began offering its users a choice of using alternative payments, but deny that this began in July 2019; as Google recognized at the time, Tinder updated its app to offer users the choice to use alternative payments in May 2019.  The Match Plaintiffs lack knowledge or information sufficient to form a belief about whether Google "expended significant resources" addressing the Match Plaintiffs' concerns, but suspect that Google did not do so given that Google Play Billing continues to lack basic functions and features of a payment processor, and on that basis deny the same.  Except as expressly admitted, the Match Plaintiffs deny the remaining allegations in paragraph 46.

6303766

1    47.    The Match Plaintiffs admit that Google and representatives from the Match Plaintiffs

2    met to discuss Google's (then-proposed) policy change.  Except as expressly admitted, the Match

3    Plaintiffs deny the remaining allegations in paragraph 47.

4    48.    The Match Plaintiffs admit that Google announced a policy change in September

5    2020 that, for the first time, required apps like those published by the Match Plaintiffs on Google

6    Play to use Google Play Billing as the exclusive payment option; the Match Plaintiffs deny Google's

7    gratuitous characterizations of their own announcement, which are contrary to Google's internal

8    descriptions of the policy change.  The Match Plaintiffs admit that Google provided developers with

9    over one year to comply with the policy change.  The Match Plaintiffs admit that the second sentence

10   of paragraph 48 accurately quotes from Google's policy change.  Except as expressly admitted, the

11   Match Plaintiffs deny the remaining allegations in paragraph 48.

12   49.    The Match Plaintiffs admit that they received notice of Google's policy change as of

13   September 28, 2020.  Except as expressly admitted, the Match Plaintiffs deny the remaining

14   allegations in paragraph 49.

15   50.    The Match Plaintiffs admit that the brands operated by the Match Plaintiffs submitted

16   electronic forms to Google requesting extensions to Google's policy change.  The Match Plaintiffs

17   admit that the second sentence of paragraph 50 accurately quotes from the extension request form.

18   The Match Plaintiffs lack information or knowledge necessary to form a belief as to whether the

19   extension request form was made available to "all" developers and on that basis deny the same.

20   Except as expressly admitted, the Match Plaintiffs deny the remaining allegations in paragraph 50.

21   51.    The Match Plaintiffs admit that the first sentence of paragraph 51 accurately quotes

22   Google's response to the extension requests.  Except as expressly admitted, the Match Plaintiffs

23   deny the remaining allegations in paragraph 51.

24   52.    Whether Google "relied" on Match Plaintiffs' (purported) "representations" is a legal

25   conclusion to which no response is required; to the extent a response is required, the Match Plaintiffs

26   deny that allegation, and deny all remaining allegations in paragraph 52.

27   53.    The Match Plaintiffs deny the allegations of paragraph 53.

28

54.     Paragraph 54 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 54 and on that basis deny them.

## COUNT I

### Breach of Contract

55.     In response to paragraph 55, the Match Plaintiffs restate and incorporate by reference each of the responses set forth above.

56.     Paragraph 56 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs deny the allegations of paragraph 56.

57.     Paragraph 57 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs deny the allegations of paragraph 57.

58.     The first sentence of paragraph 58 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs deny the allegations of the first sentence of paragraph 58.  The remaining allegations of paragraph 58 restate the contents of the current version of the DDA and Payments Policy, which speak for themselves.  The Match Plaintiffs deny that the current version of the DDA and Payments Policy govern the time period of Google's claims, and otherwise deny the remaining allegations of paragraph 58.

59.     Paragraph 59 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs deny the allegations of paragraph 59.

60.     Paragraph 60 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 60 and on that basis deny them.

61.     Paragraph 61 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 61 and on that basis deny them.

62.     Paragraph 62 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs deny the allegations of paragraph 62.

6303766

1

## COUNT II

2

### Breach of Implied Covenant of Good Faith and Fair Dealing

3       63.     In response to paragraph 63, the Match Plaintiffs restate and incorporate by reference

4   each of the responses set forth above.

5       64.     Paragraph 64 sets forth legal conclusions to which no response is required.  To the

6   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 64.

7       65.     Paragraph 65 sets forth legal conclusions to which no response is required.  To the

8   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 65.

9       66.     The Match Plaintiffs deny the allegations of paragraph 66.

10      67.     Paragraph 67 sets forth legal conclusions to which no response is required.  To the

11  extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form

12  a belief about the allegations of paragraph 67 and on that basis deny them.

13

## COUNT III

14

### False Promise

15      68.     In response to paragraph 68, the Match Plaintiffs restate and incorporate by reference

16  each of the responses set forth above.

17      69.     The Match Plaintiffs admit that they submitted extension request forms on behalf of

18  their respective brands, but deny that those requests were "pretextual," that the extension requests

19  were to "come into compliance," or that Match Plaintiffs had "no intention of doing so."  The

20  remaining allegations of paragraph 69 sets forth legal conclusions to which no response is required.

21  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient

22  to form a belief about the allegations that Google "relied on" the Match Plaintiffs' statements, and

23  otherwise deny the remaining allegations of paragraph 69.

24      70.     The Match Plaintiffs admit that Mr. Foster submitted an extension request form in

25  August 2021.  The Match Plaintiffs have been unable to confirm that Mr. Daniell made the

26  referenced communication on August 19, 2021, and on that basis deny the same.  The Match

27  Plaintiffs deny the remaining allegations of Paragraph 70.

28

- 10 -

6303766

1       71.    The Match Plaintiffs admit that they did not bring their apps into compliance with Google's updated payments policy during the "extension period," but deny that they were required to do so.  Although the extension period ended March 31, 2022, Google set an enforcement deadline of June 1, 2022 when it would purportedly remove "noncompliant" apps from Google Play; before that deadline passed, Google stipulated that the Match Plaintiffs could continue using their current payment options.  *See Match Group, LLC et al. v. Google LLC et al.*, No. 3:22-cv-0746, Dkt. 21. Except as expressly admitted, the Match Plaintiffs deny the allegations of paragraph 71.

72.    The Match Plaintiffs deny the allegations of paragraph 72.

73.    Paragraph 73 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 73 and on that basis deny them.

74.    The Match Plaintiffs admit that they did not bring their apps into compliance with Google's updated payments policy during the "extension period," but deny that they were required to do so.  Although the extension period ended March 31, 2022, Google set an enforcement deadline of June 1, 2022 when it would purportedly remove "noncompliant" apps from Google Play; before that deadline passed, Google stipulated that the Match Plaintiffs could continue using their current payment options.  *See Match Group, LLC et al. v. Google LLC et al.*, No. 3:22-cv-0746, Dkt. 21. The remaining allegations of Paragraph 74 consist of conclusions of law to which no response is necessary or appropriate.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 74 and on that basis deny them.

75.    Paragraph 75 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 75 and on that basis deny them.

76.    Paragraph 76 sets forth legal conclusions to which no response is required.  To the extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form a belief about the allegations of paragraph 76 and on that basis deny them.

6303766

1

**COUNT IV**

2

**Quasi-Contract / Unjust Enrichment**

3       77.      In response to paragraph 77, the Match Plaintiffs restate and incorporate by reference

4   each of the responses set forth above.

5       78.      Paragraph 78 sets forth legal conclusions to which no response is required.  To the

6   extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form

7   a belief about the allegations of paragraph 78 and on that basis deny them.

8       79.      Paragraph 79 sets forth legal conclusions to which no response is required.  To the

9   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 79.

10       80.      Paragraph 80 sets forth legal conclusions to which no response is required.  To the

11   extent a response is required, the Match Plaintiffs lack knowledge or information sufficient to form

12   a belief about the allegations of paragraph 80 and on that basis deny them.

13

**COUNT V**

14

**Declaratory Judgment**

15       81.      In response to paragraph 81, the Match Plaintiffs restate and incorporate by reference

16   each of the responses set forth above.

17       82.      Paragraph 82 sets forth legal conclusions to which no response is required.  To the

18   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 82.

19       83.      Paragraph 83 sets forth legal conclusions to which no response is required.  To the

20   extent a response is required, the Match Plaintiffs admit that the DDA provides Google with a

21   termination right under certain terms and procedures and otherwise deny the allegations of

22   paragraph 83.

23       84.      Paragraph 84 sets forth legal conclusions to which no response is required.  To the

24   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 84.

25       85.      Paragraph 85 sets forth legal conclusions to which no response is required.  To the

26   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 85.

27       86.      Paragraph 86 sets forth legal conclusions to which no response is required.  To the

28   extent a response is required, the Match Plaintiffs deny the allegations of paragraph 86.

6303766

1    87.    Paragraph 87 states the nature of Google's claims and requires no response.  To the

2    extent a response is required, the Match Plaintiffs deny the allegations of paragraph 87.

3    The remaining unnumbered paragraphs of Google's counterclaims state Google's prayer for

4    relief and do not require a response.  To the extent a response is required, the Match Plaintiffs deny

5    that Google is entitled to the relief sought in the counterclaims or to any relief whatsoever.

6                    **THE MATCH PLAINTIFFS' DEFENSES**

7    The Match Plaintiffs assert the following defenses.  In asserting these defenses, the Match

8    Plaintiffs do not assume the burden of proof with respect to any issue as to which applicable law

9    places the burden of proof on Google.  The Match Plaintiffs' defenses are pleaded in the alternative

10   to the extent they may found to be inconsistent, whether internally or with respect to any other

11   allegations or arguments by the Match Plaintiffs in this case.  The Match Plaintiffs reserve all

12   defenses under Fed. R. Civ. P. 8(c) and any other defenses, at law or at equity, that may not exist or

13   in the future be available based on discovery and further factual investigation in this case.

14                    **First Defense**

15                    **(Failure to State a Claim)**

16   88.    Google's counterclaims fail to state a claim for which relief can be granted.

17                    **Second Defense**

18                    **(Google's Violations of the Antitrust Laws)**

19   89.    Google's claims are barred, in whole or in part, because the contracts on which

20   Google's counterclaims are based (or the parts relevant to Google's counterclaims) are illegal and

21   unenforceable because they violate the antitrust and unfair competition laws.  Google's contracts

22   violate the Sherman Act, 15 U.S.C. §§ 1, 2, the Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et*

23   *seq*, and the and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., as alleged in

24   the Match Plaintiffs' First Amended Complaint, which is incorporated and restated in this defense

25   as if set forth fully herein.

26

27

28

- 13 -

6303766

**Third Defense**

**(Illegality)**

90.     Google's claims are barred, in whole or in part, by the doctrine of illegality because the contracts on which Google's counterclaims are based are illegal and unenforceable pursuant to the antitrust and unfair competition laws, as alleged in the Match Plaintiffs' First Amended Complaint, which is incorporated and restated in this defense as if set forth fully herein.

**Fourth Defense**

**(Unconscionability)**

91.     Google's claims are barred, in whole or in part, because the contracts on which Google's counterclaims are based (or the parts relevant to Google's counterclaims) are unconscionable, both procedurally and substantively, based on the reasons alleged in the Match Plaintiffs' First Amended Complaint, which is incorporated and restated in this defense as if set forth fully herein.

**Fifth Defense**

**(Voidness)**

92.     Google's claims are barred, in whole or in part, because the contracts on which Google's counterclaims are based (or the parts relevant to Google's counterclaims) are void as against public policy, based on the reasons alleged in the Match Plaintiffs' First Amended Complaint, which is incorporated and restated in this defense as if set forth fully herein.

**Sixth Defense**

**(Justification)**

93.     Google's claims are barred, in whole or in part, because the Match Plaintiffs' actions are justified or privilege pursuant to the antitrust and unfair competition laws.

**Seventh Defense**

**(Duress)**

94.     Google's claims are barred, in whole or in part, because the contracts on which Google seeks to rely (or the parts relevant to Google's counterclaims) are unenforceable by reason of duress.  The Match Plaintiffs did not act freely and voluntarily in executing the contracts with

1    Google, but instead acted under the duress and compulsion wrongfully and illegally created by

2    Google.

**Eighth Defense**

**(Unclean Hands)**

5    95.    Google's claims are barred, in whole or in part, under the doctrine of unclean hands.

**Ninth Defense**

**(*In Pari Delicto*)**

8    96.    Google's claims are barred, in whole or in part, under the doctrine of *in pari delicto*.

**Tenth Defense**

**(Lack of Injury or Damages)**

11    97.    Google's claims are barred, in whole or part, because Google has sustained no injury

12    in fact and no damages by any act or omission of the Match Plaintiffs.

**Eleventh Defense**

**(Unjust Enrichment)**

15    98.    Google's claims are barred, in whole or in part, because any recovery would result in

16    unjust enrichment to Google.

**Twelfth Defense**

**(Speculative Damages)**

19    99.    Google's claims are barred, in whole or in part, because any damages that Google

20    claims to have suffered are too remote or speculative to allow recovery, and it is impossible to

21    ascertain and allocate any alleged damages with reasonable certainty.

**Thirteenth Defense**

**(Adequate Remedy at Law)**

24    100.    Google is not entitled to equitable relief because any injury or damage Google alleges

25    would be adequately compensated pursuant to legal remedies otherwise recoverable in an action at

26    law for damages.

27

28

6303766

**Fourteenth Defense**

**(Express Contract)**

101.     Google's quasi-contract claim is barred because the relationship between Google and the Match Plaintiffs relevant to Google's claims are governed by an express contract between the parties.

**Fifteenth Defense**

**(Good Faith)**

102.     Google's claims are barred, in whole or in part, because the Match Plaintiffs' acts and conduct alleged in the counterclaims were undertaken in good faith.

**Sixteenth Defense**

**(Acts of Claimant)**

103.     Google's claims are barred, in whole or in part, because Google's alleged damages, if any, were caused by Google's own conduct, for which the Match Plaintiffs have no liability.

**Seventeenth Defense**

**(Failure to Join an Indispensable Party)**

104.     Google's claims are barred, to the extent based on alleged acts or conduct not committed by the Match Plaintiffs, by Google's failure to join necessary and indispensable parties, including, but not limited to, entities controlling other brands or apps affiliated with the Match Plaintiffs' parent company.

**Eighteenth Defense**

**(Waiver)**

105.     Google's claims are barred, in whole or in part, because Google waived performance of relevant portions of the contracts at issue, and otherwise waived Google's affirmative claims against the Match Plaintiffs.

**Nineteenth Defense**

**(Estoppel)**

106.     Google's claims are barred, in whole or in part, by the doctrine of estoppel.

6303766

1

**Twentieth Defense**

2

**(Laches)**

3    107.    Google's claims are barred, in whole or in part, under the doctrine of laches.

4

**Twenty-First Defense**

5

**(Statute of Limitations)**

6    108.    Google's claims are barred, in whole or in part, by the operation of the statutes of

7 limitations applicable to Google's respective claims.

8

**RESERVATION OF DEFENSES**

9    The Match Plaintiffs reserve the right to assert additional defenses when it determines the

10 particulars of Google's counterclaims, which are not apparent on the face of Google's complaint.

11 The Match Plaintiffs reserve the right to amend this answer to add, delete, or modify defenses based

12 on legal theories that may be or will be divulged through clarification of Google's complaint, through

13 discovery, or through further analysis of Google's position in this litigation.

14

**JURY DEMAND**

15    The Match Plaintiffs demand a trial by jury on all issues so triable.

16

17 Dated:  December 15, 2022         HUESTON HENNIGAN LLP

18                       By:   */s/ Douglas J. Dixon*

19                              Douglas J. Dixon
                              *Attorneys for Plaintiffs Match Group, LLC;*

20                              *Humor Rainbow, Inc.; PlentyofFish Media ULC;*
                              *and People Media, Inc.*

21

22

23

24

25

26

27

28

MATCH PLAINTIFFS' ANSWER TO DEFENDANT GOOGLE'S COUNTERCLAIMS
USDC Case Nos.  3:21-md-02981-JD and 3:22-cv-02746-JD

6303766