| | |
|---|---|
| Brian C. Rocca, S.B. #221576<br>brian.rocca@morganlewis.com<br>Sujal J. Shah, S.B. #215230<br>sujal.shah@morganlewis.com<br>Michelle Park Chiu, S.B. #248421<br>michelle.chiu@morganlewis.com<br>Minna Lo Naranjo, S.B. #259005<br>minna.naranjo@morganlewis.com<br>Rishi P. Satia, S.B. #301958<br>rishi.satia@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: (415) 442-1000<br><br>Richard S. Taffet, *pro hac vice*<br>richard.taffet@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>101 Park Avenue<br>New York, NY 10178<br>Telephone: (212) 309-6000<br><br>*Counsel for Defendants Google LLC et al* | Glenn D. Pomerantz, S.B. #112503<br>glenn.pomerantz@mto.com<br>Kuruvilla Olasa, S.B. #281509<br>kuruvilla.olasa@mto.com<br>Nicholas R. Sidney, S.B. #308080<br>nick.sidney@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 683-9100<br><br>Kyle W. Mach, S.B. #282090<br>kyle.mach@mto.com<br>Justin P. Raphael, S.B. #292380<br>justin.raphael@mto.com<br>Emily C. Curran-Huberty, S.B. #293065<br>emily.curran-huberty@mto.com<br>Dane P. Shikman, S.B. #313656<br>**MUNGER, TOLLES & OLSON LLP**<br>560 Mission Street, Twenty Seventh Floor<br>San Francisco, California 94105<br>Telephone: (415) 512-4000<br><br>Jonathan I. Kravis, *pro hac vice*<br>jonathan.kravis@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>601 Massachusetts Ave. NW, Suite 500E<br>Washington, D.C. 20001<br>Telephone: (202) 220-1100 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA,**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**GOOGLE'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S FEBRUARY 27, 2023 MINUTE ORDER**<br><br>Judge:   Hon. James Donato |

# TABLE OF CONTENTS

**Page**

I. PLAINTIFFS CANNOT SHOW PREJUDICE ...................................................................1

   A. The Supplemental Production Cures Any Prejudice. ...............................................2

   B. Plaintiffs Have Abundant Evidence On The Six Topics. ..........................................4

II. THE SUPPLEMENTAL PRODUCTION SHOWS THAT GOOGLE DID NOT ACT WITH BAD INTENT. ...............................................................................................6

III. THE SUPPLEMENTAL PRODUCTION OF CHATS ADEQUATELY REMEDIES ANY PREJUDICE. ......................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Burns v. Medtronic, Inc.*,
   No. 8:15-cv-2330-T-17TBM, 2017 WL 11633269 (M.D. Fla. Aug. 9, 2017) ...........................2

*Dish Network LLC v. Jadoo TV, Inc.*,
   No. 20-cv-01891-CRB (LB), 2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ...........................8

*Edwards v. Junior State of America Foundation*,
   No. 4:19-CV-140-SDJ, 2021 WL 1600282 (E.D. Tex. Apr. 23, 2021) ....................................10

*Leon v. IDX Systems Corp.*,
   464 F.3d 951 (9th Cir. 2006) .................................................................................................2

*Matthew Enterprise, Inc. v. Chrysler Group LLC*,
   No. 13-cv-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ...................................2

*Porter v. City and County of San Francisco*,
   No. 16-cv-03771-CW(DMR), 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018).............................8

*Wanderer v. Johnston*,
   910 F.2d 652 (9th Cir. 1990)................................................................................................10

*Youngevity International v. Smith*,
   No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687 (S.D. Cal. July 28, 2020) ............................10

**FEDERAL RULES**

Fed. R. Civ. P. 37 ....................................................................................................... *passim*

Google has now produced an additional 52,271 chats[1] (and over 160,000 attachments) from 362 legal hold recipients who previously were not subject to post-Complaint document discovery. Those chats and attachments were the documents identified as relevant from the total of 749,318 chats and 394,869 attachments preserved for these legal hold recipients. As the Court noted at the January 31 hearing, this supplemental production would be "an experiment to test" Plaintiffs' and Google's respective positions regarding Plaintiffs' motion for sanctions.

The supplemental production is more than an adequate remedy for any speculative prejudice Plaintiffs might claim, as they have now received nearly 100 times the number of post-Complaint, responsive chats previously produced. Indeed, the supplemental production includes thousands of chats discussing the very topics that Plaintiffs previously identified as central to their prejudice claims.

Moreover, the supplemental production shows that Google employees followed the instructions in the legal hold notices and did not act with bad intent. An adverse inference instruction under Rule 37(e)(2) requires intent to deprive the opposing party of information *relevant to the litigation*. Communications merely expressing a preference for history-off chats unconnected to the subject matter of this litigation are not sufficient to establish such intent because there is no legal obligation to preserve irrelevant chats. But for a few isolated examples, the supplemental chats where legal hold recipients express a preference for communicating with history off appear to concern topics that are not relevant to this litigation. Indeed, out of the 52,271 supplemental chats, Google has identified fewer than ten chats where a legal hold recipient proposes turning history off to discuss a topic relevant to this litigation. Such a small number of isolated examples is insufficient to establish the requisite intent *by Google* to deprive Plaintiffs of evidence in this litigation. Indeed, the supplemental production includes instances where legal hold recipients expressly preserved chats for the purpose of complying with the legal hold notice

---

[1] The term "chat" refers to a document containing multiple chat messages in a thread linked by temporal parameters, such that one "chat" produced by Google can contain numerous individual messages that span many pages over a period of time. *See* Declaration of Duy Ho ("Ho Decl.") at ¶ 4. The numbers in this filing refer to the total number of chat documents produced rather than the number of individual messages within each chat in the production.

issued in this case, as well as 47,513 relevant chats that *were* preserved. Far from establishing bad intent, the supplemental production shows that Google acted reasonably and in good faith.

## I.     PLAINTIFFS CANNOT SHOW PREJUDICE

The "prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (alterations and internal quotation marks omitted). Plaintiffs should bear the burden of establishing prejudice in light of the fact that "the abundance of preserved information may appear sufficient to meet the needs of all parties." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("[r]equiring the party seeking curative measures to prove prejudice may be reasonable"). Mere speculation is not sufficient. Rather, Plaintiffs must put forward "plausible, concrete suggestions" as to the contents of the allegedly spoliated evidence. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 2957133, at *4 (N.D. Cal. May 23, 2016); *see also Burns v. Medtronic, Inc.*, No. 8:15-cv-2330-T-17TBM, 2017 WL 11633269, at *6 (M.D. Fla. Aug. 9, 2017) ("[B]lanket and conclusory statements about what could have existed does not compel a finding of prejudice."). Even before Google's supplemental production, Plaintiffs struggled to articulate what prejudice they suffered as a result of any lost chats. *See* 1/31/23 Hr'g Tr. at 183:12-15. With the supplemental production in hand, Plaintiffs still cannot meet their burden because the additional chats they have received more than adequately remedy any claimed prejudice.

### A.     The Supplemental Production Cures Any Prejudice.

Google's supplemental production cures any possible prejudice that Plaintiffs may claim based on Google's chat preservation policies. Because Google's preservation obligations did not arise until the first Complaint was filed, any claims of prejudice must be limited to the narrow set of issues and custodians relating to Plaintiffs' post-Complaint discovery. The parties previously agreed that post-Complaint discovery would be limited to 21 specific custodians, using discrete search terms to identify documents responsive to specific topics. Based on this agreement, Google previously produced 502 chats (excluding attachments) that post-date Epic's Complaint. *See* Ho Decl. ¶ 5.

Google's supplemental production significantly expanded the scope of post-Complaint discovery. As a result of the expanded number of custodians and the use of broader search terms for the supplemental production, Plaintiffs now have 47,513 additional post-Complaint chats identified as relevant to the issues in this case,[2] nearly 100 times the number of such chats previously produced. *See* Ho Decl. ¶ 7. This includes chats from an additional 362 custodians who had not previously been subject to post-Complaint discovery. If one assumes that 50% of the 21 original custodians' relevant chats were not preserved—an unfounded assumption considering that many hold recipients made good-faith efforts to comply with the legal hold instructions as discussed below— then Plaintiffs would have lost 502 relevant chats. Through the supplemental production, Plaintiffs have received 94 times more chats than that.[3]

At the January 31 hearing, Plaintiffs focused their prejudice argument on six post-Complaint topics. *See* 1/31/23 Hr'g Tr. 203:14-204:2 (stating that "Google has had a whole series of secret or secretive projects, reexamining its business model and its economic arrangements with developers and OEMs" and Plaintiffs have "gotten updated productions" about these projects); *see also* Declaration of Jonathan Kravis ("Kravis Decl."), Ex. 1 (slide deck from Plaintiffs' argument identifying the specific projects). Even on these six topics, Plaintiffs cannot show prejudice, particularly in light of the supplemental production.

As an initial matter, four of the six topics—Projects Magical Bridge, Basecamp, Everest, and Runway—do not involve conduct that is challenged in this litigation. Projects Magical Bridge and Basecamp were internal assessments of possible changes to Google Play's business model that were never implemented and therefore could not have had any economic effect on Plaintiffs.

---

[2] Of the 52,271 chats in Google's supplemental production, 47,513 of these chats (91%) hit on at least one of the parties' negotiated search terms. *See* Ho Decl. ¶¶ 6-7. The remaining chats were produced because they hit on search terms set forth in the Court's February 15, 2023 Order intended to identify chats related to the use of the history-on and history-off settings.

[3] Indeed, even if 90% of the 21 original custodians' relevant chats were not preserved, Plaintiffs still have received 10.5 times the number of chats they otherwise would have obtained in discovery. (502 is 10% of 5,020, meaning that 4,518 chats were hypothetically not retained. Google has now produced 47,513 chats, 10.5 times that amount.)

Projects Runway and Everest involved *lowering* the Play service fees for certain categories of developers. For Project Hug and RSA 3.0, relevant events largely occurred prior to the filing of Epic's Complaint. Indeed, both projects involved written agreements already produced in discovery, along with terabytes of transactional data showing the effect of those agreements.

In any event, the supplemental production includes 3,469 chats on these topics. *See* Ho Decl. ¶ 10, Ex. 1. The production of these additional chats is more than sufficient to cure any prejudice Plaintiffs may claim. Google's prior production, which was limited to the 21 post-Complaint custodians, included 176 chats on these topics. Again, assuming hypothetically 50% of those custodians' relevant chats were not preserved—an unfounded assumption in light of the evidence discussed below—then 176 chats on these topics would not have been retained. The number of chats Google has now produced on these projects is twenty times that number.[4]

Any attempt by Plaintiffs to rely on Google's chat log to demonstrate prejudice would be misplaced. The log is a system-wide backend report that contains data regarding the history settings of individual chat messages on a rolling 55-day basis but does "not show whether or when an employee changed his or her chat history settings for a particular conversation" before the 55-day window. Declaration of Devin Chen ¶ 4, MDL ECF No. 429-4. There is therefore no basis to infer that the log is representative of custodians' chat preservation practices through the post-Complaint time period. Moreover, the log does not record the content of the chats, and therefore cannot show how many of each user's chats were relevant to this litigation. Indeed, a comparison of the number of post-Complaint chats (excluding attachments) preserved (749,010) and those that hit on a negotiated search term and were produced as responsive (47,513) suggests that over 90% of the legal hold recipients' chats were nonresponsive. *See* Ho Decl. ¶¶ 6-7.

In addition, the log records each individual message in a chat conversation as a separate log entry, whereas the document counts referenced throughout Google's briefing treat the full series of individual messages in a conversation as just one produced "chat." *See* Ho Decl. ¶ 4. This

---

[4] Even if 90% of the 21 post-Complaint custodians' relevant chats were not preserved, Plaintiffs still have received more than twice the number of chats they otherwise would have obtained.

means that a single chat thread that included 100 individual messages would be recorded on the log as 100 separate messages, whereas in Google's production that chat thread would be counted as one chat. Therefore, comparing the log numbers to the number of chat conversations Google produced (some of which have hundreds of individual messages) would be misleading. Thus, the data in the chat log does not support Plaintiffs' prejudice argument.

### B. Plaintiffs Have Abundant Evidence on the Six Topics.

Plaintiffs' prejudice argument based on the six topics suffers from another fatal flaw: Plaintiffs already received and made use of voluminous evidence on these topics in discovery. Google produced over 110,000 documents on the six topics that Plaintiffs identified at the January 31 hearing, including over 16,000 in the post-Complaint time period. *See* Ho Decl. ¶ 9, Ex. 1.

Plaintiffs have made extensive use of this mountain of evidence, including questioning 25 deponents, generating over 2,000 pages of deposition testimony. *See* Kravis Decl. ¶ 5, Ex. 3

|  | **Hug** | **RSA 3.0** | **Magical Bridge** | **Basecamp** | **Runway** | **Everest** |
|---|---|---|---|---|---|---|
| *Expert Report Citations* | > 250 | > 275 | > 50 | > 50 | > 15 | > 15 |
| *Unique Docs. Cited by Experts* | > 115 | > 80 | > 20 | > 10 | > 5 | > 10 |
| *Deponents Questioned* | 23 | 14 | 13 | 5 | 7 | 15 |
| *Deposition Pages* | >1000 | > 500 | > 240 | > 60 | > 110 | > 450 |

As noted above, four of the six issues Plaintiffs identified are explorations of alternative business models for the Play store and do not involve any challenged conduct. Nonetheless, Plaintiffs developed hundreds of pages of deposition testimony on those issues, and cited approximately 50 unique documents on these topics in their expert reports. *See* Kravis Decl. ¶ 6. For the two projects connected to challenged conduct—Project Hug and RSA 3.0—Plaintiffs' experts cited the existing discovery record over 250 and 275 times, respectively, and Plaintiffs

-5-
GOOGLE'S SUPP. BRIEF IN RESPONSE TO THE COURT'S FEB. 27, 2023 MINUTE ORDER
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

developed over 1,000 and over 500 pages of deposition testimony, respectively. *See id.* ¶ 5, Ex. 3. No expert claimed an inability to opine because of evidence that would have been found in chats.

At the January 31 hearing, Plaintiffs cited Project Hug as their lead example of prejudice. *See* 1/31/23 Hr'g Tr. at 204:3-208:7. But in their motions to amend, Epic and Match previously told the Court that the record on Hug—which includes over 37,000 documents—was extensive enough to justify adding new per se claims. *See* Epic's and Match's Mot. to Amend, MDL ECF No. 376 at 10. Indeed, Plaintiffs asserted that deposition testimony and internal documents in their possession established their Hug-related claims. *See* Epic's and Match's Reply In Support of Mot. to Amend, MDL ECF No. 379 at 4 ("Google's internal documents and deposition testimony from its executives demonstrate that the purpose and effect of certain of these agreements was to stop the launch of competing app stores.").

Examples from the documents Google produced reflect that Plaintiffs have an abundance of evidence on Project Hug. Exhaustive internal presentations offer a comprehensive view of Project Hug from start to finish. *See* Kravis Decl. ¶ 7, Ex. 4 (48-page presentation, from early 2019, cited ten times by Plaintiffs' experts and used to generate 110 pages of deposition testimony); *id.* ¶ 8, Ex. 5 (69-slide presentation from the program's close, in December 2020, cited 18 times across Plaintiffs' expert reports). And less formal summaries show executives' views of the Hug effort, offering precisely the kind of candid talk Plaintiffs claim chats would contain. *See* Mot. for Sanctions, MDL ECF No. 349 at 8-9; *see also* Kravis Decl. ¶ 9, Ex. 6 (notes assessing Riot deal); *id.* ¶ 10, Ex. 7 (memo analyzing Activision deal).

## II.    THE SUPPLEMENTAL PRODUCTION SHOWS THAT GOOGLE DID NOT ACT WITH BAD INTENT

The Court ordered Google to apply search terms intended to identify chats relevant to Plaintiffs' claim that Google acted with the intent to deprive Plaintiffs of relevant information.[5] These chats do not support Plaintiffs' claims of bad intent.

---

[5] Those search terms are: "sensitive," "history off," "history is not off," "history on," "history is on," "off the record," and "on the record." *See* 2/15/23 Minute Order, MDL ECF No. 454.

On the contrary, the chats show that Google's legal hold recipients followed the instructions to preserve relevant chats. For example, a legal hold recipient (and agreed-upon custodian) explains during a chat discussing app installation outside the Play store, "[a]lso hope you don't mind history on–I am told this is necessary for this topic." Kravis Decl. ¶ 11, Ex. 8. In another chat, a legal hold recipient comments, "Just realized as we are talking about RSA i need to turn history on." GOOG-PLAY5-000364742. Multiple chats show that Google's legal hold recipients understood their obligation to preserve potentially relevant chats for litigation preservation purposes. *See, e.g.*, Kravis Decl. ¶ 12, Ex. 9 (legal hold recipient noting in chat discussing RSA, "due to myself being on multiple legal holds I have to turn on chat history fyi….the moment RSA/MADA is discussed most of us are legally obligated to do this"); *see also* GOOG-PLAY5-000498525 (legal hold recipient states she is turning history on because she was "under many legal holds and while I don't discuss anything related to them in chat, it could come up by accident so safer to keep history 'on'"). These chats show Google legal hold recipients' good-faith efforts to comply with their preservation obligations for this case.

Moreover, the chats in which legal hold recipients express a preference for history-off chats do not establish an intent to deprive because, with a very few isolated exceptions, those chats do not discuss any topic relevant to this litigation. Those chats generally fall into three categories:

First, consistent with Genaro Lopez's testimony (1/12/23 Hr'g Tr. at 22:15-24), the supplemental production contains examples of Google employees using history off for chats about sensitive, non-relevant topics. *See, e.g.*, Kravis Decl. ¶ 13, Ex. 10 (discussing office logistics); *see also* GOOG-PLAY5-000375675 (moving to history off to discuss staffing changes).

Second, the supplemental production contains chats in which legal hold recipients express a preference for a history-off chat while discussing work-related topics that are not relevant to this litigation. *See, e.g.*, Kravis Decl. ¶ 14, Ex. 11 (discussing recruiting training issues); *see also* GOOG-PLAY5-000453593 (discussing edits to a Cloud Next Keynote internal briefing document); GOOG-PLAY5-000426233 (discussing office social meetings).

Third, the supplemental production includes chats in which a legal hold recipient expresses a preference for a history-off chat where the chat contains no evidence of the topics that were

being discussed in the chat. *See, e.g.*, Kravis Decl. ¶ 15, Ex. 12; *see also* GOOG-PLAY5-000476138; GOOG-PLAY5-000485200; GOOG-PLAY5-000496195.

None of these categories of chats constitutes evidence of bad intent. Google is not obligated to preserve *irrelevant* chats, and therefore chats in which legal hold recipients express a preference to chat about irrelevant topics with history off does not demonstrate any bad intent. For each of the three categories of chats identified above, there is no evidence that the chat concerned this case or was covered by the legal hold, and therefore there is nothing wrong with turning history off.

To bolster their claims of bad intent, Plaintiffs would have to identify extensive evidence that Google employees who were subject to the legal hold for this litigation moved from a history-on chat to a history-off chat *to discuss topics relevant to this case for the purpose of avoiding Google's discovery obligations*. *See Dish Network LLC v. Jadoo TV, Inc.*, No. 20-cv-01891-CRB (LB), 2022 WL 11270394, at *3 (N.D. Cal. Oct. 19, 2022); *Porter v. City & Cnty. of S.F.*, No. 16-cv-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018).

Google's supplemental production contains a few, isolated examples of legal hold recipients suggesting a history-off chat to discuss a topic relevant to this lawsuit. *See, e.g.*, Kravis Decl. ¶ 16, Ex. 13 (discussion of Project Runway); *see also* GOOG-PLAY5-000163578 (discussion of RSAs). Google has identified fewer than ten such chats out of the 52,271 chats in the supplemental production.

These one-off examples are insufficient to establish the requisite intent *by Google* to deprive Plaintiffs of evidence in this litigation as required under Rule 37(e)(2) when considering the totality of Google's conduct. *See Dish Network*, 2022 WL 11270394, at *3 (identifying multiple relevant factors for determining intent). Google's preservation conduct includes retaining all chats in threaded spaces, issuing a legal hold to 383 recipients specifically instructing them not to use chats to communicate about topics relevant to the litigation (but to preserve any chats if they did so), and sending periodic reminders about these obligations. Declaration of Gregory Johnson ¶¶ 4-6, MDL ECF No. Dkt. 429-3. As discussed above, the supplemental production contains evidence that legal hold recipients complied in good faith with those instructions. Even

assuming that a few legal hold recipients ignored the hold notice instructions in a few instances, such a small number of examples is not enough to establish that Google acted with bad intent.

### III. THE SUPPLEMENTAL PRODUCTION OF CHATS ADEQUATELY REMEDIES ANY PREJUDICE

At the January 31 hearing, the Court raised the possibility of instructing the jury that it may conclude that the contents of lost chats were adverse to Google's interests if the jury finds that Google did not adequately preserve them. *See* 1/31/23 Hr'g Tr. at 213:16-20. Such an instruction would not be appropriate here because allowing the jury to infer that lost evidence was unfavorable requires a finding of intent. *See* Fed. R. Civ. P. 37(e)(2)(b). Moreover, any claimed prejudice has been remedied by the supplemental chat production. As explained above, as a result of the expanded number of custodians and the use of broader search terms in the supplemental production, Google has produced at considerable expense a substantial number of additional chats. *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (Court should not order jury instructions when "lesser measures … would be sufficient to redress the loss"). An instruction permitting the jury to consider evidence of lost chats therefore would give Plaintiffs a windfall, permitting them to argue to the jury that Google prevented Plaintiffs from discovering chats when, in fact, Google has provided Plaintiffs with more chats than they would have obtained through discovery.

Google anticipates that Plaintiffs may seek a mandatory adverse inference instruction that goes beyond the six topics they have identified and that would apply to any and all topics in the case. Any such remedy would also not be appropriate here. *First,* because Google did not intend to deprive Plaintiffs of relevant chat evidence, the Court cannot "instruct the jury that it may or must presume the information was unfavorable to" Google. Fed. R. Civ. P. 37(e)(2)(b). *Second*, in any event, a jury instruction broader in time or scope than the six topics that Plaintiffs identified would not "fit the wrong." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. Most of the challenged conduct in this case began years before any complaint was filed and thus before Google had a duty to preserve relevant documents. Permitting the jury to evaluate pre-Complaint events based on Google's post-Complaint preservation practices would enhance parts of Plaintiffs'

-9-

trial presentation that could not have been impacted by any alleged breach of Google's duty to preserve. As such, an instruction broader than the six topics would be a "punishment of an infraction that did not threaten to interfere with the rightful decision of the case," raising significant due process concerns by putting Plaintiffs in a better position than they would have been if Google had preserved all relevant post-Complaint chats. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Finally, to the extent that the Court finds that its February 1 order has not remedied any prejudice to Plaintiffs, an order prohibiting Google from relying on post-Complaint chats would be a more appropriate trial-related remedy than a jury instruction. *See Edwards v. Junior State of Am. Found.*, No. 4:19-CV-140-SDJ, 2021 WL 1600282, at *10 (E.D. Tex. Apr. 23, 2021) (prohibiting "Plaintiffs from offering any evidence of the alleged [Facebook] Messages effectively cures the prejudice"). If Plaintiffs are right that chats are the most "candid" evidence of Google's conduct, then prohibiting Google from relying on chats at trial would be a meaningful sanction.[6]

\* \* \* \* \*

As the supplemental production confirms, Plaintiffs have suffered no prejudice. They have received nearly 100 times the number of relevant chats previously produced and far above any reasonable estimate of the number of relevant chats that may not have been preserved by the 21 agreed post-Complaint custodians. The supplemental production also confirms that Google did not act with bad intent. The production includes several examples of chats showing that legal hold recipients understood their obligation to preserve relevant chats, and few examples of legal hold recipients moving discussions about relevant topics to history-off chats. This evidence is not nearly sufficient to support a finding that Google acted with bad intent, particularly in the context of Google's other preservation efforts. Accordingly, the additional chats that Plaintiffs have received through the supplement production are sufficient to remedy any claim of prejudice.

---

[6] If the Court is inclined to issue an instruction, the instruction should simply inform the jury that it "may consider" evidence regarding Google's chat preservation after the date of Epic's Complaint "along with all the other evidence in making its decision." *Youngevity Int'l v. Smith*, No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *5 (S.D. Cal. July 28, 2020).

DATED: March 14, 2023

Respectfully submitted,

By:       /s/ *Glenn D. Pomerantz*
      Glenn D. Pomerantz

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER TOLLES & OLSON LLP**
560 Mission St., Suite 2700
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants Google LLC et al.*