| | |
|---|---|
| Karma M. Giulianelli (SBN 184175)<br>karma.giulianelli@bartlitbeck.com<br>**BARTLIT BECK LLP**<br>1801 Wewatta St., Suite 1200<br>Denver, CO 80202<br>Telephone: (303) 592-3100 | Brendan P. Glackin (SBN 199643)<br>bglackin@agutah.gov<br>**OFFICE OF THE UTAH ATTORNEY GENERAL**<br>160 E 300 S, 5th Floor<br>PO Box 140872<br>Salt Lake City, UT 84114-0872<br>Telephone: (801) 366-0260 |
| Hae Sung Nam (*pro hac vice*)<br>hnam@kaplanfox.com<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 687-1980 | *Counsel for the Plaintiff States* |
| | Douglas J. Dixon (SBN 275389)<br>ddixon@hueston.com<br>**HUESTON HENNIGAN LLP**<br>620 Newport Center Drive, Suite 1300<br>Newport Beach, CA 92660<br>Telephone: (949) 229-8640 |
| *Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation* | |
| Paul J. Riehle (SBN 115199)<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center, 27th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 591-7500 | *Counsel for Plaintiffs Match Group, LLC, et al.* |
| Christine A. Varney (*pro hac vice*)<br>cvarney@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>825 Eighth Avenue<br>New York, NY 10019<br>Telephone: (212) 474-1000 | |
| *Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.* | |

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON GOOGLE'S CHAT PRODUCTION**<br><br>Judge: Hon. James Donato |

Plaintiffs respectfully submit this brief in response to the Court's February 27, 2023 Order.

To test Google's contention that its destruction of Chats did not prejudice Plaintiffs, the Court ordered Google to produce Chats that had been preserved for litigation-hold recipients. The Court described this as an "experiment to test [the] proposition" that there had been a "treasure trove" of relevant Chats "in the off-the-record category that was systematically deleted." (1/31/2023 Tr. 283:14-284:24.) Google completed that production on February 24, 2023.

The outcome of the Court-ordered experiment is clear. Google's production contains a trove of Chats establishing beyond any doubt that the company's intentional campaign to destroy sensitive communications resulted in the loss of invaluable communications regarding matters at the heart of these cases. Google employees regularly and intentionally diverted to "history off" Chats conversations about Google's anticompetitive Revenue Share Agreements, Mobile Application Distribution Agreements, Google Play Billing payment policies and pricing, and a variety of other critical issues—specifically to ensure that those Chats would be destroyed. Google's conduct prejudiced Plaintiffs and requires a substantial, trial-related penalty.

The newly produced Chats reveal a company-wide culture of concealment coming from the very top, including CEO Sundar Pichai, who is a custodian in this case. In one Chat, Mr. Pichai began discussing a substantive topic, and then immediately wrote: "█████████████████████ █████████████"[1] Then, nine seconds later, Mr. Pichai ████████████████████ ████████████████████. (Byars Decl. Ex. 1, GOOG-PLAY5-000453593.) When asked under oath ████████████████████████████████████████████████████ ████████████████████████████████████" (*Id.* Ex. 2, Pichai Dep. Tr. 195:7-12.)

Like Mr. Pichai, other key Google employees, including those in leadership roles, routinely opted to move from history-on rooms to history-off Chats to hold sensitive conversations, even though they knew they were subject to legal holds. Indeed, they did so *even when discussing topics they knew were covered by the litigation holds in order to avoid leaving a record that could be produced in litigation*. As the examples below make clear, Google destroyed innumerable Chats with the intent to deprive Plaintiffs and other litigants of the use of these documents in litigation.

---

[1] All emphasis is added unless otherwise noted.

The new Chats further establish that Google's company-wide campaign to destroy evidence prejudiced Plaintiffs, and this prejudice demands a substantial, trial-related penalty. Although this Court has previously suggested that it is unlikely to order an instruction that the jury *must* find that the destroyed evidence would have been unfavorable to Google, Plaintiffs respectfully submit that the newly produced Chats support such a remedy. For the reasons set forth in Plaintiffs' previous submissions (MDL Dkt. Nos. 349, 373, 428, 432), and in light of the recently produced documents, anything less than a clear adverse inference instruction—instructing the jury as to what Google did and what the jury should make of it—would reward Google for its years-long, calculated policy of systematically destroying evidence, and would encourage Google to maintain, rather than eradicate, the corporate culture of litigation misconduct it has nurtured for many years.

I. **Google's Court-Ordered Production Confirms That Google's Destruction of Chats Significantly Prejudiced Plaintiffs.**

Google's Court-ordered supplemental Chat production demonstrates that Plaintiffs have suffered enormous prejudice because of Google's actions. The production—which consists entirely of Chats from legal hold recipients in these cases that occurred during the pendency of this litigation— confirms that Google employees routinely discussed matters critical to this litigation in off-the-record Chats in order to ensure that those conversations would never be revealed in a courtroom. It also confirms that the destroyed Chats on those topics were more candid than the email correspondence and on-the-record Chats Google produced. (*See, e.g.*, Byars Decl. Ex. 3, GOOG-PLAY5-000436389 ("███████████████████████████████████████████") And it further confirms that Google's culture of concealment pervaded the company.

A. **Google Destroyed Chats Concerning Issues Critical to this Litigation.**

Below are illustrative examples of Chats reflecting Google's destruction of candid discussions concerning topics at the heart of this case.

**Revenue Share Agreements ("RSAs").** A principal focus of Plaintiffs' cases is Google's anticompetitive RSAs with original equipment manufacturers ("OEMs") and wireless carriers. In these agreements, Google gives OEMs and carriers a percentage of its revenue, often in exchange for their agreement not to preinstall competing app stores on their devices.

Google's supplemental production makes clear that Google employees routinely used "history off" chat to discuss RSA contracts. For example, the Head of Strategy for Android chastised a Senior Strategic Partnerships Development Manager about ███████████████████████████ ███. Despite acknowledging the "███████████████████████████████", she boasted: "███████████████████████████████████████████████" When her colleague ████████████, she stated: "█████████████████████████ ████████████████████████" She then wrote: "████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████" Then the on-the-record conversation abruptly ended. (*Id.* Ex. 4, GOOG-PLAY5-000364738.)[2]

**Mobile App Distribution Agreements ("MADAs").** Another principal subject of Plaintiffs' claims is Google's MADAs. The MADAs are contracts that Google requires OEMs to enter into to license Google Mobile Services, a suite of proprietary Google applications and APIs that includes the Google Play Store, Google Search, Gmail, YouTube, and Google Maps, among others. Through the MADAs, Google secures prime placement for the Play Store on Android device home screens and imposes a variety of anticompetitive restrictions on OEMs.

Google's recent production reflects that employees discussed the MADAs in off-the-record Chats. For instance, in one Chat, ██████████████████████████████████████████. One requested: "████████████████████████████████████████████████████████████ ██████" The other responded "████████████████████████████████████████████████"— referring to an apparently destroyed portion of this Chat. The jury, Court, and Plaintiffs will never know what "████████" was discussed and deleted. (*Id.* Ex. 7, GOOG-PLAY5-000374364.)

**Google Play Billing and Google's Supracompetitive Commission.** Another prominent pillar of Plaintiffs' cases is Google's requirement that apps distributed through the Play Store (1) use only Google Play Billing to conduct transactions for digital goods and services, such as the purchase of

---

[2] The same executive repeatedly admonished several other employees to turn history off. (*See also, e.g., id.* Ex. 5, GOOG-PLAY5-000163578 ("████████████████████████████████████████████"); *id.* Ex. 6, GOOG-PLAY5-000374365 ("█████████████████████████████████████████████").)

1   cosmetics in games or a subscription to a dating app or streaming service, and (2) pay the 30% fee it
2   charges on most such transactions.  Plaintiffs intend to prove that the requirement that developers offer
3   only Google Play Billing is anticompetitive and that Google's commission rate is supracompetitive.
4        Google's recent production reveals that Google employees diverted discussions regarding
5   Google's billing policies and commission rate to off-the-record Chats to ensure those conversations
6   would not be produced in discovery.  For example, in one Chat, Google employees in a threaded room
7   asked whether they were "▮▮▮▮▮" to talk about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  A Google employee responded that because "▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Google employees should "▮▮▮▮▮▮▮▮▮▮▮" warning that
11  "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* Ex. 8, GOOG-PLAY5-
13  000482224.)
14        In another Chat that includes three custodians in this case, a Google Manager of Partner
15  Programs started a "▮▮▮▮▮▮" Chat to discuss ▮▮▮▮▮▮▮▮▮.  Almost immediately after the room
16  was created, she wrote: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Google's Director of
19  Play App Partnerships (a custodian and litigation hold recipient), then asked a substantive question
20  about why Google had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" The on-the-
21  record portion of the Chat abruptly ended. (*Id.* Ex. 9, GOOG-PLAY5-000161588.)
22        In another Chat, a Director of Privacy Engineering shared a document with his colleagues
23  related to changes to Google Play's payments policy in India.  As the conversation progressed, the VP
24  of Product Management, Google Pay, warned the group: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" When others continued chatting, he
26  warned again: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* Ex. 10, GOOG-PLAY5-000362732.)
28        In another example, Google employees discussed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1
2
3 ▮▮▮▮. A Sales Strategy Manager
4 sent a message to a litigation-hold recipient and Finance Manager, Google Play Apps & Games. She
5 wrote: "▮▮▮▮
6 ▮▮▮▮" She then wrote:
7 "▮▮▮▮" The other
8 employee ▮▮▮▮. While the
9 Sales Strategy Manager was initially prepared to discuss ▮▮▮▮ in this Chat, she
10 decided not to as soon as she realized that history was "on." (*Id.* Ex. 11, GOOG-PLAY5-000477797.)
11      In yet another example, an employee ▮▮▮▮, and the
12 first message that appears in the document is a message from the Senior Director of Product
13 Management, YouTube, stating: "▮▮▮▮" A
14 Software Engineer, who apparently ▮▮▮▮, responded: "▮▮▮▮
15 ▮▮▮▮" A Product Manager then referenced "▮▮▮▮" and the
16 on-the-record conversation then went dark, presumably because the Google employees turned history
17 off. (*Id.* Ex. 12, GOOG-PLAY5-000160237.)[3]

---

[3] Littered throughout Google's new production are "screenshots" of partial chats between custodians regarding matters relevant to this case that occurred "off-the-record". (*See e.g.*, Byars Decl. Ex. 13, GOOG-PLAY5-000389042 (screenshot of an off-the-record Chat regarding ▮▮▮▮; *id.* Ex. 14, GOOG-PLAY5-000389043 (same); *id.* Ex. 15, GOOG-PLAY5-000168593 (screenshot of an off-the-record Chat regarding ▮▮▮▮, evidence that helps to inform the relevant market).) Plaintiffs happen to have these Chat snippets only because one of the recipients took a screenshot of the chat and inserted it into another Chat that had "history on". This was done for reasons entirely unrelated to document preservation; for example, ▮▮▮▮ (*id.* Ex. 16, GOOG-PLAY5-000389029 (chat attaching *id.* Exs. 13, GOOG-PLAY5-000389042, and 14, GOOG-PLAY5-000389043)), or to ▮▮▮▮ (*id.* Ex. 17, GOOG-PLAY5-000168578 (employee notes he took a screenshot of *id.* Ex. 15, GOOG-PLAY5-000168593, because "▮▮▮▮")).

### B. Google's Destruction of Relevant Chats Is Extensive.

During the January 12 and 31, 2023 evidentiary hearings, Plaintiffs proved that Google trains its employees to "communicat[e] with care" because Google "often ha[s] to produce employee communications as evidence." (PX-120 at 3-4.) Plaintiffs also proved that as part of that training, Google employees are instructed that chatting "'off the record'" is "[b]etter than sending . . . email" specifically *because* Google destroys off-the-record Chats every 24 hours, whereas it retains emails to produce in litigation. (*Id.* at 14.) Plaintiffs further proved that Google employees heed those instructions and often warn each other that they should avoid saying anything sensitive if their Chat history is turned on. (*E.g.*, PX-9; PX-103.) Notably, following such admonitions, the retained portions of conversations almost invariably end. Google's supplemental Chat production contains a trove of additional Chats showing that Google employees subject to legal holds destroyed Chats to ensure that they could not be used in court, instructed their colleagues to turn history off to discuss sensitive business topics, and reminded each other to "communicate with care"—all to avoid Google's obligations to preserve and produce these highly relevant conversations during discovery.

The recently produced Chats are not only conclusive evidence of Google's misconduct, but likely only the tip of the iceberg. For every Chat where employees discussed turning Chat history "off," it is reasonable to infer that there are many more where the employees simply followed their training and/or instructions from other Google employees and chatted off the record, leaving no trace of discussions they were obligated to preserve because they were relevant to this case. Here are just a few examples:

- Google employees began to discuss two restraints that Plaintiffs challenge: ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Before the conversation developed further, a Program Manager wrote: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" A Senior Software Engineer Team Lead clarified: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" The on-the-record portion of the Chat ended. (Byars Decl. Ex. 18, GOOG-PLAY5-000383680.)

- A Workplace Programs Design Partner began a Chat by asking: "▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" one of the Android apps that Google requires OEMs to preinstall under the MADA. One minute later, a Product Manager asked: "▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓" A Group Product Manager volunteered: "▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (*Id.* Ex. 19, GOOG-PLAY5-000164222.)

- Google employees created a "" Chat with history on. The Google Play Operations Program Manager Lead quickly warned the group: "" The Lead Project Manager for Google Photos asked: "" The on-the-record portion of the Chat abruptly ended. (*Id.* Ex. 20, GOOG-PLAY5-000383187.)

- A Senior Software Engineer pasted a link about and wrote: "am i the only one who is only now finding out about [this]." This comment provoked a discussion about . A Software Engineer wrote: "" The Senior Software Engineer agreed: "" Another Software Engineer agreed: "" And a Program Manager wrote: The Chat then went silent. (*Id.* Ex. 21, GOOG-PLAY5-000382012.)

- A Senior Staff Engineering Manager wrote in a threaded room Chat: "" He then asked the group: "" A YouTube Gaming Product Partnerships employee wrote: "" A Software Engineer reacted: "" Another employee wrote: "" The Chat abruptly ended. (*Id.* Ex. 22, GOOG-PLAY5-000473143.)

- In another Chat, Google's Head of Support Strategy & Operations, Android OS and Chrome OS, sent others "" A Manager, Product Operations, Google Play, asked for the "" She then asked: "" The first employee wrote: "" Another confirmed: "" The employee also warned that "" (*Id.* Ex. 23, GOOG-PLAY5-000389316.)

- In another Chat, a Strategy Manager appears to have turned on Chat history midway through a conversation, meaning that everything that was said in the Chat prior to that point was destroyed. A Finance Manager and legal hold recipient responded to this decision by writing: "" The Strategy Manager responded "" at which point the on-the-record portion of the conversation ended, presumably because he turned history off. (*Id.* Ex. 24, (GOOG-PLAY5-000364253.)

- A Group Product Manager started a Chat and asked about ". A Product Manager quickly responded: "" An Android engineer responded "" A Senior Product Manager wrote: "

▪ ███████ " Everyone then left the room. (*Id.* Ex. 25, GOOG-PLAY5-000383422.)

▪ A Senior Staff Software Engineer began a Chat by stating: "████████ ████████" and asked for others' views. Another engineer responded: "████████ ████████ Another wrote: "████████ ████████" (*Id.* Ex. 26, GOOG-PLAY5-000366760.)

▪ A Program Manager created a Chat ████████ ████████" An employee wrote: "████████ ████████" (*Id.* Ex. 27, GOOG-PLAY5-000163640.)

▪ The Head of Strategy for Android began a Chat: "████████ ████████" A Design Strategist in the Platforms & Ecosystems business that includes Google Play and Android replied: "████████" The conversation then went silent. (*Id.* Ex. 28, GOOG-PLAY5-000433345.)

▪ A Google employee created a group Chat. A Program Manager wrote immediately: "████████ ████████" A Software Engineer ████████" Another Software Engineer wrote: "████████" The Chat then went silent. (*Id.* Ex. 29, GOOG-PLAY5-000394430.)

▪ Another Chat consists of two messages. In the first, a Google employee wrote: ████████ In the second and final message, Google's Principal, Trust & Safety, confirmed: "████████ ████████" (*Id.* Ex. 30, GOOG-PLAY5-000423751.)

▪ A Group Product Manager began a threaded room Chat by asking: "████████ ████████" A Director, Product Management, responded: "████████ ████████" A Group Product Manager replied: "████████ ████████" The Group Product Manager concluded: "████████" A Director, Product Management, agreed: "████████ ████████" The Group Product Manager then decided: "████████ ████████" He then pasted a link "████████" and the on-the-record Chat went silent. (*Id.* Ex. 31, GOOG-PLAY5-000408349.)

▪ Google employees started a threaded room. A Software Engineer quickly asked: "████████ ████████" Another Software Engineer wrote: "████████ ████████" and then pasted a link to Google's Chat retention policy, stating it was "████████" that he could not turn history off. The Product Management Lead for Strategic Projects then suggested: ████████ ████████" The on-the-record conversation ended shortly thereafter. (*Id.* Ex. 32, GOOG-PLAY5-000375854.)

- A Google employee shared a link to an article about ███████████████. A Staff Privacy Engineer quickly warned: "██████████████" The Senior Director, Privacy, Safety and Security, wrote: "██████████████████████████" An employee asked "████████████████████████" to which another replied: "████████████████████████████████████████████████████████████████████████████" Another wrote: "██████████████████████████████████████████████████████████████████████████████████████████" (*Id.* Ex. 33, GOOG-PLAY5-000383657.)

These Chats leave no doubt that for the past 10 years, Google employees intentionally diverted untold numbers of relevant conversations with unique and sensitive business information to off-the-record Chats, and that they did so because they knew that evidence of those conversations would disappear after 24 hours. While these admonitions to turn history off happen to have been preserved, it is reasonable to infer that most sensitive discussions began and ended with history off, leaving no trace. Indeed, according to Google's sworn interrogatory responses, only 11 of the 37 custodians whose documents were collected in these matters could recall turning history on ***even once at any point*** during their custodial period (Dkt. 427-03 ¶ 34), and evidentiary hearing witnesses Jamie Rosenberg and Tian Lim testified that they used Google Chat every day but ***never*** turned their history on (1/12/2023 Tr. 80:6-8; 103:8-17 (Rosenberg); MDL Dkt. No. 449-1 (Lim Tr.) 26:9-14; 43:12-14).[4] Mr. Lim, for example, testified on January 12, 2023 that "my general policy was not to delete documents" (Dkt. 449-1 at 20:22-21:10) and that he made "a good-faith effort to comply with [his] obligations to preserve chat communications that were subject to the legal hold" (*id.* at 23:6-11). Yet, Google's supplemental production reveals that he is one of the many Google employees who ████████████████████████████████████████████████████████████████████████.[5]

The jury will never know what these custodians and others said in their off-the-record Chats about matters highly relevant to this case, because Google deliberately destroyed them. Google's pervasive destruction of ESI has severely prejudiced Plaintiffs.

---

[4] Moreover, one of the 11 employees admitted during her deposition that—contrary to Google's interrogatory response—she ***never*** turned on her Chat history. (*See* MDL Dkt. 433-2 at 12.)

[5] Byars Decl. Ex. 34, GOOG-PLAY5-000495759 (Mr. Lim: "████████████████████████ ████████████████████████"); *id.* Ex. 35, GOOG-PLAY5-000495760 (Mr. Lim: "██████████ ██████████████████████████████").

## II. Google's Chat Destruction Was Intentional.

There can be no doubt that Google's conduct was intentional. Google knew its employees used "history off" Chats for sensitive business discussions because it directed them to do so. Yet it destroyed those Chats every 24 hours even after this litigation began. And then it hid the truth regarding that destruction from the Court and Plaintiffs for over a year. The Chats submitted during the evidentiary hearing and discussed above make clear that Google employees understood that, when they wanted to discuss something "sensitive" or "risky," they should do so in "off the record" Chats even though they were subject to a legal hold. The Chats also reveal that employees understood that the *reason* for chatting off the record was to ensure that relevant evidence would be destroyed.

Google's intent to deprive Plaintiffs of that relevant evidence in this litigation is alone sufficient to warrant the jury instruction that Plaintiffs requested. *See* Fed. R. Civ. P. 37(e)(2) ("[U]pon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the Court may instruct the jury to "(A) presume that the lost information was unfavorable to the party; [or] (B) instruct the jury that it may or must presume the information was unfavorable to the party."). The extraordinary prejudice that Plaintiffs have proven makes it even clearer that this remedy is needed.

*   *   *

While Plaintiffs would welcome the opportunity to further address these matters if it would be helpful to the Court, the record as it currently exists makes clear that the instruction requested in Plaintiffs' January 24 submission is the substantial, trial-related penalty that is appropriate, specific, and proportionate to address Google's blatant and deliberate disregard for its discovery obligations. (*See* MDL Dkt. No. 428 at 8.)

| | | |
|---|---|---|
| 1 | Dated: March 14, 2023 | CRAVATH, SWAINE & MOORE LLP |
| 2 | |    Christine Varney *(pro hac vice)* |
| | |    Gary A. Bornstein *(pro hac vice)* |
| 3 | |    Timothy G. Cameron *(pro hac vice)* |
| | |    Yonatan Even *(pro hac vice)* |
| 4 | |    Lauren A. Moskowitz *(pro hac vice)* |
| 5 | |    Justin C. Clarke *(pro hac vice)* |
| | |    Michael J. Zaken *(pro hac vice)* |
| 6 | |    M. Brent Byars *(pro hac vice)* |

FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: */s/ Lauren A. Moskowitz*
   Lauren A. Moskowitz

*Counsel for Plaintiff Epic Games, Inc.*

Dated: March 14, 2023

BARTLIT BECK LLP
   Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
   Hae Sung Nam

Respectfully submitted,

By: */s/ Karma M. Giulianelli*
   Karma M. Giulianelli

*Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

Dated: March 14, 2023

PRITZKER LEVINE LLP
   Elizabeth C. Pritzker

Respectfully submitted,

By: */s/ Elizabeth C. Pritzker*
   Elizabeth C. Pritzker

*Liaison Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

| | | |
|---|---|---|
| 1 | Dated:  March 14, 2023 | OFFICE OF THE UTAH ATTORNEY GENERAL |
| 2 | | Brendan P. Glackin |
| | | Lauren M. Weinstein |

Respectfully submitted,

By: /s/ *Brendan P. Glackin*
      Brendan P. Glackin

*Counsel for the Plaintiff States*


Dated:  March 14, 2023        HUESTON HENNIGAN LLP
                              Douglas J. Dixon
                              Christine Woodin
                              Joseph A. Reiter

Respectfully submitted,

By: /s/ *Douglas J. Dixon*
      Douglas J. Dixon

*Counsel for Plaintiffs Match Group, LLC et al.*

## E-FILING ATTESTATION

I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz