Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for the Class in In re Google
Play Consumer Antitrust Litigation*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*,<br>Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*,<br>Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br><br>**CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL**<br><br><br>Judge:  Hon. James Donato |

1

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

APPLICABLE LEGAL STANDARD ................................................................................ 3

ARGUMENT ...................................................................................................................... 5

I.      GOOGLE HAS FAILED TO DEMONSTRATE THAT A STAY OF THE TRIAL IS
        WARRANTED ......................................................................................................... 5

        A.      Google Has Not Shown that It Is Likely to Succeed on the Merits ............... 5

        B.      Google Has Not Shown that It Will Be Irreparably Harmed Absent a Stay ................. 7

        C.      A Stay Will Substantially Injure Plaintiffs ................................................... 9

        D.      The Public Interest Strongly Militates Against a Stay ................................. 10

II.     GOOGLE'S CONCERNS ABOUT BIFURCATION ARE WITHOUT MERIT ................. 11

        A.      The Court Has Discretion to Bifurcate the Case So that Antitrust Injury Is
                Addressed in the Second Trial with Damages .............................................. 11

        B.      Article III Is No Impediment to Proceeding with a Bifurcated Trial ........................... 13

        C.      Class Notice Is No Impediment to Proceeding with a Bifurcated Trial ...................... 14

CONCLUSION ................................................................................................................. 15

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD, 3:22-cv-02746-JD

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amaro v. Gerawan Farming, Inc.*,
    No. 1:14-cv-00147-DAD-SAB, 2016 WL 10679467 (E.D. Cal. Nov. 14, 2016)....................15

*Ambrosio v. Cogent Commc'ns, Inc.*,
    No. 14-cv-02182-RS, 2016 WL 777775 (N.D. Cal. Feb. 29, 2016) .......................................4, 8

*Andrews v. Plains All Am. Pipeline, L.P.*,
    No. 15-cv-4113-PSG-JEM, 2018 WL 4191409 (C.D. Cal. Aug. 28, 2018) ......................10, 15

*Arthur Young & Co. v. U. S. Dist. Ct.*,
    549 F.2d 686 (9th Cir. 1977)........................................................................................11, 13

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)................................................................................................11

*Campbell v. Best Buy Stores, L.P.*,
    No. LA 12-cv-07794-JAK-SH, 2014 WL 12778925 (C.D. Cal. Aug. 15, 2014) ...................12

*Evans v. Wal-Mart Stores, Inc.*,
    No. CV 17-07641-AB (KK), 2019 WL 7169794 (C.D. Cal. Oct. 23, 2019)............................4

*Gasoline Prods. Co. v. Champlin Refin. Co.*,
    283 U.S. 494 (1931)...........................................................................................................13

*Gerlinger v. Amazon.com Inc.*,
    526 F.3d 1253 (9th Cir. 2008)...........................................................................................14

*Gough v. Rossmoor Corp.*,
    585 F.2d 381 (9th Cir. 1978)..............................................................................................11

*Hernandez v. Wells Fargo Bank, N.A.*,
    No. C 18-07354 WHA, 2020 WL 10689800 (N.D. Cal. Mar. 19, 2020) .................................5

*Hilton v. Braunskill*,
    481 U.S. 770 (1987).............................................................................................................4

*Hydrite Chem. Co. v. Calumet Lubricants Co.*,
    47 F.3d 887 (7th Cir. 1995).................................................................................................11

*In re Apple & ATTM Antitrust Litig.*,
    No. C 07-05152 JW, 2010 WL 11489069 (N.D. Cal. Sept. 15, 2010) .....................................4

*In re Brand Name Prescription Drug Antitrust Litigation*,
    No. 94 C 897, 1998 WL 326721 (N.D. Ill. June 12, 1998).......................................................12

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
    No. 14-md-02555-JSW, 2020 WL 1478991 (N.D. Cal. Mar. 26, 2020) ...................................4

*In re Facebook Biometric Info. Priv. Litig.*,
   No. 3:15-CV-03747-JD, 2018 WL 2412176 (N.D. Cal. May 29, 2018) ........................ passim

*In re Packaged Seafood Prods. Antitrust Litig.*,
   No. 15-md-2670 JLS (MDD), 2020 WL 2745231 (S.D. Cal. May 27, 2020) .................4, 8, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2012 WL 1424314 (N.D. Cal. Apr. 20, 2012) .............................................11

*Jinro Am. Inc. v. Secure Invs., Inc.*,
   266 F.3d 993 (9th Cir. 2001), *reh'g denied*, 272 F.3d 1289 (9th Cir. 2001) ..........................11

*Johnson v. City of Mesa*,
   No. 19-cv-02827-PHX-JAT, 2022 WL 137619 (D. Ariz. Jan. 14, 2022)............................4, 5

*Landis v. North American Co.*,
   299 U.S. 248 (1936)...........................................................................................................4, 5

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011).............................................................................................4, 5, 7

*McMorrow v. Mondelez Int'l, Inc.*,
   No. 17-cv-02327-BAS-JLB, 2021 WL 1263957 (S.D. Cal. Apr. 5, 2021) .............................10

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................................................................... passim

*Ohio v. Am. Express Co.*,
   585 U.S. ___, 138 S. Ct. 2274 (2018) .................................................................................12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC,
   993 F.3d 774 (9th Cir. 2021)...................................................................................................9

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022), *cert denied*, 143 S. Ct. 424 (Nov. 14, 2022) ...............................7

*Owino v. CoreCivic, Inc.*,
   No. 17-cv-1112 JLS (NLS), 2021 WL 3186500 (S.D. Cal. July 28, 2021)...............................4

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019).................................................................................................6

*Pena v. Taylor Farms Pacific, Inc.*,
   No. 2:13-cv-01282-KJM-AC, 2015 WL 5103157 (E.D. Cal. Aug. 31, 2015) .....................6, 7

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995)..................................................................................................12

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
   537 F.2d 1307 (5th Cir. 1976)................................................................................................13

*Romero v. Securus Techs., Inc.*,
   383 F. Supp. 3d 1069 (S.D. Cal. 2019) ...........................................................................4, 6, 7

*Ross v. Bank of America*,
   524 F.3d 217 (2d Cir. 2008) ...........................................................................................14

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ....................................................................................................13, 14

*Stromberg v. Qualcomm Inc.*,
   14 F.4th 1059 (9th Cir. 2021) ...........................................................................................6

*Torres v. Nissan N. Am., Inc.*,
   No. 15-cv-03251-RGK-FFM, 2015 WL 5170539 (C.D. Cal. Jan. 26, 2016) ...........................3

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ...........................................................................................6

*Winding Creek Solar LLC v. Peevey*,
   293 F. Supp. 3d 980 (N.D. Cal. 2017) .............................................................................11

**Other Authorities**

Bryan Lammon, *An Empirical Study of Class-Action Appeals*,
   22 J. App. Prac. & Process (2022) .............................................................................5, 6, 9

Joseph R. Palmore, *How do Rule 23(f) petitions fare in the Ninth Circuit?*,
   JD Supra (June 28, 2022) ..................................................................................................6

**Rules**

Fed. R. Civ. P. 42(b) ..............................................................................................................11

Fed. R. Civ. P. 23(f) ...................................................................................................... passim

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

On February 27, 2023, the Ninth Circuit granted Google's Rule 23(f) petition for leave to file an interlocutory appeal of this Court's class certification decision (Dkt. 383). *Carr v. Google LLC*, No. 23-15285 (9th Cir. Feb. 27, 2023), ECF No. 1. The two-judge motions panel provided no explanation for its decision, other than that it was doing so "in its discretion." *Id.*

Google now seeks to parlay the grant of its Rule 23(f) petition into a complete stay of the scheduled November 6, 2023 trial, arguing that the appeal could have a "significant impact" on the trial. (Mot. at 1.) In making this argument, however, Google ignores the larger context of this litigation. This consolidated MDL involves claims not only on behalf of the Consumer Class, but also the substantially identical claims of Epic, Match, and 38 States plus the District of Columbia.

In the larger context of this litigation, the scope of Google's Rule 23(f) appeal is relatively narrow. In its Rule 23(f) appeal, Google asserts that this Court abused its discretion in certifying the Consumer Class by failing to conduct a sufficiently rigorous analysis of Dr. Singer's pass-through model and not crediting the opinion of Google's expert that there are numerous uninjured class members. The pending Rule 23(f) appeal will thus have no impact on the fundamental questions— applicable to the claims of all Plaintiffs—going to whether Google's anticompetitive conduct violated the federal antitrust laws. The pending appeal will also have absolutely no impact on the claims asserted by Epic or Match, or on the States' claims for statutory penalties based on Google's violations of various state consumer protection laws.

Under these circumstances, the Court should exercise its discretion to deny Google's requested stay. Google has made no showing that it is likely to succeed on the merits of its appeal, or that it will suffer irreparable harm absent a stay, as required by *Nken v. Holder*, 556 U.S. 418, 433 (2009). Moreover, the plaintiffs and the public both have a substantial interest in the prompt determination of the core issues in this case and a cessation of Google's anticompetitive conduct, which further militate against a stay under the controlling *Nken* standard.

Instead of staying the trial, the Consumer Class respectfully submits that the better path forward is to bifurcate the trial. Under this approach, the Court would proceed with an initial trial on

November 6, in which the parties would try the "common issues" regarding whether Google's conduct was anticompetitive in violation of the Sherman Act, as well as whether Google violated the asserted state statutes.  Such issues would include market definition, monopoly power, and whether Google's various contractual restrictions and tying with Google Play Billing violate the rule of reason.[1]

If Google prevails on the common issues, the case will be over.  If Plaintiffs prevail, the same jury could proceed to address Match's damages and Google's counterclaims against Epic and Match, and the Court could proceed to hold a hearing on injunctive relief.  Also, if Plaintiffs prevail in establishing in the first trial that Google violated the antitrust law, the Court would later hold a second trial—after the Ninth Circuit decides the pending appeal—to determine if consumers in fact suffered economic damage (*i.e.*, antitrust injury), and if so, the amount of their damages.

To be clear, the parties are generally in agreement that it would not make sense to have two trials on the same facts, with the same witnesses, the same experts, and the same claims for relief.  While Google raises the specter of such a scenario (Mot. at 10), none of the parties are advocating for it.  Google is not proposing two trials on the same issues, and Plaintiffs all agree that bifurcation is the best path forward.  This Court has also long recognized the common and overlapping issues regarding Google's conduct are appropriately tried together.

This Court also previously recognized the potential need for bifurcation.  As the Court explained: "Here is my idea.  I think we can have maybe two trials at the most, and we can accomplish that by bifurcating the liability trial from the damages trial."  (July 22, 2021 Hr'g Tr. 7:17-8:23.)  The Court elaborated that the "main goal" was to hold "one trial on every liability issue."  (*Id.*)

The bifurcation proposal outlined herein would achieve the Court's stated goal.  It would also fully address Google's claimed concern that Dr. Singer's model (which Google has put at issue in the pending appeal) will be a "central issue" at trial.  (Mot. at 4.)  Dr. Singer's pass-through model relates

---

[1] While there is some variation in the claims asserted by Plaintiffs (for example, Epic and Match have asserted *per se* claims, and the States have asserted state consumer protection laws), the Court has correctly ascertained that the Plaintiffs' claims are largely identical.  (*See* July 22, 2021 Hr'g Tr. 7:17-8:23 ([I]t looks to me that the plaintiffs are more or less on the same page . . . there are broad liability themes that are common to all the Complaints."); Dec. 16, 2021 Hr'g Tr. 18:25-19:1 ("[I]t appears to me at this vantage point that the issues are substantially overlapping in almost every respect.").)

only to the issue of damages and one way of proving class-wide antitrust injury. Those issues would be addressed only in the second phase of the trial, after the Ninth Circuit has affirmed this Court's class certification decision. The Consumer Class would not rely on Dr. Singer's pass-through model in the first phase of the trial. For purposes of the rule of reason analysis in the first trial, Plaintiffs' experts are prepared to offer considerable evidence unrelated to Dr. Singer's pass-through model that Google's conduct has been injurious to competition.

In arguing for a complete stay of the trial, Google suggests that the appeal could be expedited and that the resulting delay of the trial would be "modest." (Mot. at 1, 2, 9.) But a wholesale stay pending the resolution of the appeal would almost certainly delay trial by at least one year. Given the likelihood that a stay would result in such significant delay, a bifurcated trial is clearly preferable.

In its zeal to delay the trial, Google also raises a litany of purported concerns about a bifurcated trial. But as demonstrated below, those concerns are highly overblown. A bifurcated trial would be quite manageable and would promote the efficient, timely, and just resolution of this case.

## APPLICABLE LEGAL STANDARD

The grant of a petition for interlocutory appeal pursuant to Rule 23(f) does not necessarily warrant the issuance of a stay of proceedings in the district court. *Nken*, 556 U.S. at 433. The decision whether to stay proceedings "is instead an exercise of judicial discretion . . . dependent upon the circumstances of the particular case." *Id.*

Both district courts[2] and the Ninth Circuit[3] often deny stays pending Rule 23(f) appeals of class certification decisions. Indeed, the Ninth Circuit has denied stays pending a Rule 23(f) appeal even where the appellant would be forced to go to trial prior to resolution of the appeal.[4]

---

[2] *See, e.g.*, *Pilgrim v. Gen. Motors Co.*, No. 15-cv-8047-JFW (C.D. Cal. Oct. 30, 2020), ECF No. 139; *Torres v. Nissan N. Am., Inc.*, No. 15-cv-03251-RGK-FFM (C.D. Cal. Jan. 26, 2016) (hereinafter "*Torres C.D. Cal.*"), ECF No. 42.

[3] *See, e.g.*, *Pilgrim v. Gen. Motors Co.*, No. 20-56073 (9th Cir. Nov. 10, 2020), ECF No. 8 at 7-8; *Woolley v. Ygrene Energy Fund, Inc.*, No. 20-16608 (9th Cir. Oct 16, 2020), ECF No. 10; *Torres v. Nissan N. Am., Inc.*, No. 15-56893 (9th Cir. Apr. 6, 2016) (hereinafter "*Torres 9th Cir.*"), ECF No. 9; *Parsons v. Ryan*, No. 13-16396 (9th Cir. Aug. 15, 2013), ECF No. 20.

[4] For example, in *Torres C.D. Cal.*, the district court issued an order denying class certification. 2015 WL 5170539 (C.D. Cal. Sept. 1, 2015). The Ninth Circuit later granted the plaintiffs' Rule 23(f)

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

3

In evaluating requests to stay proceedings pending a Rule 23(f) appeal, courts in this judicial district apply the standard articulated in *Hilton v. Braunskill*, 481 U.S. 770 (1987), and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).  *See In re Facebook Biometric Info. Priv. Litig.*, No. 3:15-CV-03747-JD, 2018 WL 2412176, at *1 (N.D. Cal. May 29, 2018) (Donato, J.); *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, No. 14-md-02555-JSW, 2020 WL 1478991, at *1 (N.D. Cal. Mar. 26, 2020) (White, J.); *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-cv-02182-RS, 2016 WL 777775, at *4 (N.D. Cal. Feb. 29, 2016) (Seeborg, J.); *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 WL 11489069, at *2 (N.D. Cal. Sept. 15, 2010) (Ware, J.).

Indeed, "the majority of district courts within the Ninth Circuit apply the *Nken* standard in assessing motions to stay pending a Rule 23(f) appeal."  *Owino v. CoreCivic, Inc.*, No. 17-cv-1112 JLS (NLS), 2021 WL 3186500, at *2 (S.D. Cal. July 28, 2021); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670 JLS (MDD), 2020 WL 2745231, at *2 (S.D. Cal. May 27, 2020) ("[m]ost district courts in this circuit apply the standard articulated in *Nken*"); *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1072-73 (S.D. Cal. 2019) (same); *Evans v. Wal-Mart Stores, Inc.*, No. CV 17-07641-AB (KK), 2019 WL 7169794, at *2 (C.D. Cal. Oct. 23, 2019) (same).

Google is thus incorrect in suggesting that its motion should be governed by the test articulated in *Landis v. North American Co.*, 299 U.S. 248 (1936).  Google cites *Johnson v. City of Mesa* for the proposition that "the majority approach taken by courts in this circuit" is to evaluate a request to defer or stay judicial proceedings as an exercise of the Court's discretion as "guided by the *Landis* factors."  No. 19-cv-02827-PHX-JAT, 2022 WL 137619, at *2 & n.1 (D. Ariz. Jan. 14, 2022).  But *Johnson* was a civil rights case appealing the denial of qualified immunity, not a Rule 23(f) appeal.  *Id.* at *1.

Under the *Nken* standard, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

---

petition.  *Torres 9th Cir.*, ECF No. 1 (Dec. 9, 2015).  Despite the pending appeal, the district court declined to stay a trial of the putative class representatives' individual claims.  *Torres C.D. Cal.*, ECF Nos. 39 (Sept. 14, 2015), 42 (Jan. 26, 2016).  The plaintiffs then requested a stay in the Ninth Circuit, asserting that they would suffer irreparable harm by having to try their individual claims prior to the resolution of the appeal.  *Torres 9th Cir.*, ECF No. 8 (Mar. 23, 2016) at 12-18.  Nevertheless, the Ninth Circuit denied a stay.  *Id.* (Apr. 6, 2016), ECF No. 9.

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  556 U.S. at 425-26.

A showing of irreparable harm is a "bedrock requirement" for obtaining a stay.  *Leiva-Perez*, 640 F.3d at 965; *see also In re Facebook*, 2018 WL 2412176, at *1 (same).  "[E]ven certainty of irreparable harm has never *entitled* one to a stay."  *Leiva-Perez*, 640 F.3d at 965.  Rather, "a proper showing regarding irreparable harm" is "a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay."  *Id.*  Provided that a proper showing of irreparable harm has been made, the Court may "balance the relative equities" of the four factors.  *Id.* at 965-66.

As the moving party, Google bears the burden of showing that circumstances warrant a stay.  *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 10689800, at *1 (N.D. Cal. Mar. 19, 2020).

## **ARGUMENT**

### I.      **GOOGLE HAS FAILED TO DEMONSTRATE THAT A STAY OF THE TRIAL IS WARRANTED**

Google has failed to meet its burden of showing that the *Nken* factors support the issuance of a stay.  All of the *Nken* factors strongly militate against a stay in this case.[5]

#### A.      **Google Has Not Shown that It Is Likely to Succeed on the Merits**

Under *Nken*, Google must first make a "strong showing" that it is "likely to succeed on the merits."  556 U.S. at 426; *Leiva-Perez*, 640 F.3d at 964.  A lesser showing of "serious legal questions" can also suffice, but only if "the balance of hardships tips sharply in petitioner's favor."  *Leiva-Perez*, 640 F.3d at 964.  Google has made neither showing.

Google argues that this requirement should be deemed to be satisfied merely because the Ninth Circuit has granted its Rule 23(f) petition.  (Mot. at 6-7.)  But the data do not support Google's position.  An empirical study of data concerning Rule 23(f) appeals during the 2013-2017 time period indicates that the "reversal rate" for Rule 23(f) appeals in the Ninth Circuit is only 37%.  *See* Bryan Lammon, *An Empirical Study of Class-Action Appeals*, 22 J. App. Prac. & Process 283, 311 (2022)

---

[5] The *Nken* factors are similar to and largely subsume the considerations of the *Landis* test.  *See City of Mesa*, 2022 WL 137619, at *2 n.1.  The Court should deny Google's motion under either standard.

(hereinafter "Lammon 2022").  Research for the subsequent 2018-2021 time period reveals a similar reversal rate of only 44%.[6]  *See* Joseph R. Palmore, *How do Rule 23(f) petitions fare in the Ninth Circuit?*, JD Supra (June 28, 2022).[7]

This "reversal rate" includes "all decisions that modify the district court's decision—reversed or vacated, in whole or in part—as reversals."  Lammon 2022 at 303.  Some decisions vacating class certification decisions merely require the district court to engage in further analysis and do not necessarily change the ultimate decision.[8]  Thus, the percentage of Rule 23(f) appeals that result in a change to the district court's class certification decision is even lower than the 37-44% "reversal rate."

Google cites two district court decisions in support of its argument that the grant of a Rule 23(f) petition shows that "serious legal questions are at issue."  (Mot. at 6-7.)  However, the cases do not support Google's position.  In *Romero*, the district court expressly noted that its class certification order "presented an issue of first impression" regarding the "intent requirement" of the California Invasion of Privacy Act, which was at the heart of its decision that the case turned on a "common question to all class members."  383 F. Supp. at 1074.  Likewise, in *Pena v. Taylor Farms Pacific, Inc.*, the district court did not find the likelihood-of-success factor to be satisfied merely because the Ninth Circuit granted the defendant's Rule 23(f) petition.  No. 2:13-cv-01282-KJM-AC, 2015 WL 5103157 (E.D. Cal. Aug. 31, 2015).  Rather, the district court noted that its class certification decision was based on its view that "evidence presented in support of class certification need not be admissible at trial" but that the "Ninth Circuit has not directly addressed this question and appears to have assumed some evidentiary standard applies, at least in the context of expert witness testimony."  *Id.*  The court

---

[6] This data should be consistent with this Court's experience.  For example, the Ninth Circuit granted Facebook's Rule 23(f) petition for review of this Court's class certification decision in *In re Facebook* (and stayed the litigation), but ultimately affirmed this Court's class certification decision.  *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019).

[7] *Available at* https://www.jdsupra.com/legalnews/how-do-rule-23-f-petitions-fare-in-the-4676814/#:~:text=Once%20Rule%2023(f)%20appeal,for%202013%2D2017%20petitions).

[8] *See, e.g.*, *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023) (vacating class certification order and remanding to "afford the district court a new opportunity to weigh the predominance of class issues"); *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1075-76 (9th Cir. 2021) (vacating class certification order and remanding to consider new authority).

expressly relied on the "lack of binding authority on the evidentiary standard" controlling its decision in determining the appeal raised a "serious legal question." *Id.* at *4.

Decisions regarding the *Nken* factors are "dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433. Where a class certification decision turns on some pivotal, unsettled issue of law as in *Romero* and *Pena*, the grant of a Rule 23(f) appeal may suggest that the Court of Appeals views the issue as substantial. Here, however, the district court's decision to certify the consumer class involved a relatively straightforward application of well-established precedent, including the Ninth Circuit's recent en banc decision on the controlling standards in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67, 669 (9th Cir. 2022) (en banc) (holding that the case need only be "capable" of resolution on the basis of common proof and rejecting the notion that a class cannot contain more than a de minimis number of uninjured persons), *cert denied*, 143 S. Ct. 424 (Nov. 14, 2022). Against that backdrop, the fact that the Ninth Circuit granted its Rule 23(f) petition does not support a conclusion that Google is "likely to succeed on the merits," or even that the appeal presents "serious legal questions."[9] (Mot. at 6-7.)

## B.    Google Has Not Shown that It Will Be Irreparably Harmed Absent a Stay

The second *Nken* factor is whether Google will suffer irreparable harm absent a stay. 556 U.S. at 426. A showing of irreparable harm is a "bedrock requirement" for obtaining a stay, in the absence of which a stay should not be granted. *Leiva-Perez*, 640 F.3d at 965; *In re Facebook*, 2018 WL 2412176, at *1 (Donato, J.) (same). Google makes no meaningful showing of irreparable harm.

Google argues that it will suffer irreparable harm if it "must proceed to trial before the Ninth Circuit has ruled" because it will have effectively lost the opportunity to pursue its interlocutory appeal. (Mot. at 7.) But that argument makes no sense in the context of this case. The Rule 23(f) appeal relates only to the Court's class certification decision. Regardless of the outcome of the appeal,

---

[9] Regardless of the outcome of the Rule 23(f) appeal, there are substantial grounds for the certification of the Consumer Class independent of Dr. Singer's pass-through model, including his separate direct consumer discount model, which is economically akin to an overcharge on the consumer side of the platform. While this Court declined to rely on the consumer discount model in its class certification order, the Consumer Class would present it as an alternative basis for class certification in the unlikely event the Ninth Circuit finds the pass-through model to be unreliable.

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

7

the States, Epic, Match, and the individual consumer plaintiffs all have a right to pursue their claims against Google.  The fact that the Ninth Circuit granted Rule 23(f) review of the Court's class certification decision in no way gives Google a right to defer a trial on the claims presented by these other parties until after resolution of the appeal.  Moreover, even if Google's concern were valid, bifurcating the trial fully addresses the concern because the Court would be deferring trial on any issues that could be impacted by the appeal.

Google also argues it will suffer irreparable harm in the form of "substantial, unrecoverable time, money, and resources" and "unnecessary trial costs [it] would incur if this case went to trial and the class were later decertified."  (*Id.* at 7-8.)  But this argument fares no better.  That a party may incur additional litigation costs "generally is not considered irreparable injury."  *Ambrosio*, 2016 WL 777775, at *6.  Any such argument has even less force here given Google's vast financial resources.

More fundamentally, this is not a situation where a decision on the Rule 23(f) appeal could avert the costs and burdens of a trial for Google.  Again, the States, Epic, Match, and the individual consumer plaintiffs all have a right to pursue their claims regardless of the outcome of the appeal.  A trial on their claims while the Rule 23(f) appeal is pending—including the common issues that impact the claims of the Consumer Class—will in no way irreparably harm Google.  *See In re Facebook*, 2018 WL 2412176, at *1 (Donato, J.) (rejecting generalized arguments that Facebook would be irreparably harmed by incurring expenses of trial, and noting that "trying a class action is virtually identical to trying a case brought by an individual plaintiff").  In any event, bifurcating the trial would avoid any unnecessary cost as any issues potentially impacted by the appeal would be deferred.

Finally, Google argues that "if Google decisively prevails at trial, the class will not be bound to the trial verdict if the Ninth Circuit subsequently vacates class certification."  (Mot. at 8.)  But this is always a risk, as a class can be decertified after trial.  *See In re Packaged Seafood*, 2020 WL 2745231, at *6 & n.10 ("Defendants have cited no binding authority holding that one-way intervention constitutes sufficient irreparable harm to stay proceedings pending appeal . . . .  One-way intervention is always a possibility.  For example, if a class certification ruling is modified or set aside under Rule 23(c)(1)(C) after ruling on liability issues or it is reversed on appeal after judgment on the merits, the absent class members may learn the outcome before deciding whether to participate or sue the

defendant individually."). Moreover, Google makes no showing that this is really a risk from a practical perspective. If Google "decisively prevails at trial" it is hard to imagine consumers bringing the same claims in the future.

### C.       A Stay Will Substantially Injure Plaintiffs

The third *Nken* factor is "whether issuance of the stay will substantially injure the other parties interested in the proceeding." 556 U.S. at 426. This factor strongly militates against a stay of the trial.

In addition to the claims of the Consumer Class, this case includes claims asserted by the States, Epic, Match, and the individual consumers. Those parties all have a substantial interest in having their claims resolved and will be injured if the trial is needlessly delayed.

Google suggests that a stay would cause only a "modest postponement" of the trial. (Mot. at 1, 2, 9.) Not so. An empirical analysis of Rule 23(f) petitions indicates that "[o]n average, 457 days passed between the grant of a Rule 23(f) petition and a decision on the merits of class certification." Lammon 2022 at 317.[10] Given this data and the possibility of petitions for rehearing, other potential delays in issuance of the Ninth Circuit mandate, and the possibility of additional briefing and further proceedings on remand, it could potentially be two years before the Court's class certification decision reaches finality.[11] Bifurcating the trial such that issues implicating the appeal are tried at a later date avoids the prejudice that would be suffered by all parties during such a long delay.

---

[10] This is national data. The Ninth Circuit generally tends be slower than other circuits. *See* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2017.pdf (median time from notice of appeal to disposition in civil appeals is 11.5 months nationwide, but 22.8 months in the Ninth Circuit).

[11] Google has offered to seek to expedite the appeal "if this Court agrees to sequence the trial to follow the Ninth Circuit's decision." (Mot. at 2.) But there is no guarantee the Ninth Circuit will expedite the appeal. Even if expedited, a decision could take over a year. For example, the Ninth Circuit expedited the 23(f) appeal in *Olean Wholesale*, but more than 15 months still elapsed between the Ninth Circuit granting the 23(f) petition and the panel's initial ruling on appeal. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514 (9th Cir. June 15, 2020), ECF No. 36; *id.*, No. 19-80108 (9th Cir. Dec. 20, 2019), ECF No. 22; *id.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC, 993 F.3d 774 (9th Cir. Apr. 6, 2021). Assuming a similar schedule here, a decision from the merits panel cannot be expected until May 2024, which would likely mean at least a year-long delay of the trial.

### D.    The Public Interest Strongly Militates Against a Stay

The fourth *Nken* factor is the public interest.  556 U.S. at 426.  The public interest strongly militates against a stay in this case.  This case involves wide-ranging anticompetitive conduct that has profoundly impacted tens of millions of consumers who are forced to obtain their applications and in-app purchases through markets that have been monopolized by Google.  When the current trial date arrives, this case will have been pending for more than three years.

"[T]he public's interest in efficient prosecution of laws and seeking to hold corporate wrongdoers accountable is significant" and militates against granting stays.  *Andrews v. Plains All Am. Pipeline, L.P.*, No. 15-cv-4113-PSG-JEM, 2018 WL 4191409, at *5 (C.D. Cal. Aug. 28, 2018) (cleaned up) (denying stay pending 23(f) appeal where case had been pending for "over three years"); *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2021 WL 1263957, at *3 (S.D. Cal. Apr. 5, 2021) (denying stay pending 23(f) appeal in part because "this case has been pending since 2017, and the public has an interest in the efficient prosecution of consumer laws").  This interest is especially strong in consumer antitrust cases.  *See In re Packaged Seafood*, 2020 WL 2745231, at *10 (denying stay pending 23(f) appeal and explaining that the "public has an interest in the efficient prosecution of antitrust actions and seeking to hold alleged corporate wrongdoers accountable, especially in the area of consumer products").

Google argues that a stay would promote judicial efficiency, but that argument is based on the false premise that the Court would otherwise be "repeating this trial."  (Mot. at 8-9.)  None of the parties believe that trying the case twice is the best solution.  Plaintiffs are proposing only that consumers' damages claims based on Dr. Singer's pass-through model and his related evidence of class-wide fact-of-damage (i.e., antitrust injury) be deferred for a separate trial.  Doing so would not be inefficient and would actually make the November 6 trial more focused and manageable.

The public is being harmed every day that Google's anticompetitive conduct is allowed to continue.  Proceeding now under the Consumer Class's bifurcation proposal will allow for a prompt adjudication of whether Google's conduct violated the antitrust laws, and for the Court to consider injunctive relief if warranted.  Delaying resolution of the pivotal conduct issues and injunctive phase of the case is unnecessary and would be extremely harmful to the public interest.

## II.    GOOGLE'S CONCERNS ABOUT BIFURCATION ARE WITHOUT MERIT

### A.    The Court Has Discretion to Bifurcate the Case So that Antitrust Injury Is Addressed in the Second Trial with Damages

Under Rule 42(b), this Court has "broad discretion to bifurcate a trial." *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 984 & n.1 (N.D. Cal. 2017) (Donato, J.) (quoting *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001), opinion amended on denial of reh'g, 272 F.3d 1289 (9th Cir. 2001)).  It is well established that "[b]ifurcation of the trial of liability and damage issues is well within the scope of a trial court's discretion under Fed. R. Civ. P. 42(b)." *Arthur Young & Co. v. U. S. Dist. Ct.*, 549 F.2d 686, 697 (9th Cir. 1977). The Court also has discretion to bifurcate "at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication." *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 1424314, at *1 (N.D. Cal. Apr. 20, 2012) (bifurcating trial such that both the direct- and indirect-purchaser plaintiffs would present evidence of the alleged price-fixing conspiracy in the first phase of the trial, along with the other elements of liability, and damages suffered by direct purchasers, and reserving for a second phase of trial the indirect purchasers' evidence of "increases in TFT-LCD panel prices and pass-ons, and the amount of damages").

Google incorrectly contends that injury "cannot be disentangled" from other liability issues. (Mot. at 12.)  In making this argument, Google conflates injury to competition, which must be established to show a Rule of Reason violation, and fact of damage or antitrust injury.  "Antitrust injury and competitive injury are conceptually distinct." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004).  "While competitive injury concerns the potential effect certain conduct may have on competition generally or on the business opportunities of a defined class of competitors, the focus of antitrust injury is on whether the challenged conduct has actually caused harm to the plaintiff." *Id.*

To establish a violation of the Rule of Reason, an antitrust plaintiff must show harm to competition, *i.e.*, that the conduct at issue had "an adverse impact on the competitive conditions in general as they exist within the field of commerce." *Gough v. Rossmoor Corp.*, 585 F.2d 381, 386 (9th

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

11

1   Cir. 1978) (under the "rule of reason" a plaintiff must show).  Direct evidence of such anticompetitive

2   effects includes "reduced output, increased prices, or decreased quality in the relevant market."  *Ohio*

3   *v. Am. Express Co.*, 585 U.S. ___, 138 S. Ct. 2274, 2284 (2018).  To obtain damages, an antitrust

4   plaintiff must make a further showing that he or she suffered a loss which "flows from an

5   anticompetitive aspect or effect of the defendant's behavior."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51

6   F.3d 1421, 1433 (9th Cir. 1995).

7       Under the Consumer Class's proposal, Plaintiffs will prove in the first trial that Google's

8   conduct violated the Rule of Reason, including that the various contractual and tying arrangements at

9   issue were harmful to competition.  This proof will include evidence that Google foreclosed other app

10  stores, and reduced consumer choice.  Dr. Singer's pass-through model will not be part of that

11  evidence.  In the second trial, the Consumer Class and States will prove the "conceptually distinct"

12  point that consumers suffered financial damage flowing from Google's anticompetitive conduct and

13  the amount of their damages.  This proof will include Dr. Singer's pass-through model.

14      Google cites *In re Brand Name Prescription Drug Antitrust Litigation*, No. 94 C 897, 1998 WL

15  326721, at *4 (N.D. Ill. June 12, 1998) as "rejecting proposal to separate liability and injury issues

16  because the 'fact of injury' question is clearly part of the liability wing of an antitrust case" and

17  *Campbell v. Best Buy Stores, L.P.*, No. LA 12-cv-07794-JAK-SH, 2014 WL 12778925, at *11 (C.D.

18  Cal. Aug. 15, 2014), as "rejecting bifurcation where 'a determination of liability' also required

19  showing that the class members were injured."  (Mot. at 12-13.)  But the court in *Brand Name*

20  acknowledged that "there is no hard and fast rule dictating that a trial must be divided between liability

21  and damages," and that "proof bearing on the issues of impact and damages is far more likely to

22  overlap." 1998 WL 326721, at *3-4.  And Google completely mischaracterizes Campbell, which arose

23  out of a very different context.[12]

24  _____

25  [12] *Campbell* was a wage and hour case in which the defendant sought decertification based on evidence
    developed in discovery calling into doubt whether many class members suffered any injury.  2014 WL

26  12778925, at *1-4.  Plaintiffs sought to overcome the problem by proposing a bifurcated trial in which
    damages for any "individual defenses" (*i.e.*, injury) would be reserved for the second trial.  *Id.* at *10.

27  The court rejected that approach as unworkable not because injury is inherently inseparable from other
    liability issues, but because it determined that class certification would continue to be appropriate only

28  if plaintiffs could "show, through common proof, that all class members were injured."  *Id.* at *11.

Google cites *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1320-21 (5th Cir. 1976) for the notion that "injury and liability are inseparable and that there must be some evidence showing a causal link between the violation and alleged injury in the liability phase."  (Mot. at 13.) Google distorts the case beyond recognition.  " In *Response of Carolina*, the district court bifurcated the trial into "liability" and "damages" phases, and later granted directed verdict in favor of the defendant at the end of the liability phase because the plaintiff failed to present any evidence of the "fact of damage."  537 F.2d at 1310, 1320.  The plaintiffs argued on appeal that the district court erred on the theory that "'liability' should be equated with 'violation'" such that they were not required to provide evidence of injury until the damages phase.  *Id.* at 1320.  The Fifth Circuit rejected the argument, but it did not require injury to be tried with other liability issues; it merely held that "*if the trial is bifurcated between liability and damages*, there must be some evidence showing a causal link between the violation and the alleged injury in phase I, before a plaintiff may enter phase II."  *Id.* at 1321 (emphasis added).  Here, the Consumer Class proposes to try fact of damage (*i.e.*, antitrust injury) and quantum of damages together in the second trial.  *Response of Carolina* is therefore inapposite.

Unable to cite any authority for the position that injury cannot be tried with damages rather than with the other elements of liability, Google resorts to arguing that it "would risk violating Google's Seventh Amendment rights."  (Mot. at 13.)  But the Seventh Amendment demands only that bifurcated issues not be "so interwoven that the one cannot be submitted to the jury independently of the other without confusion and uncertainty which would amount to a denial of a fair trial."  *Arthur Young*, 549 F.2d at 693 (quoting *Gasoline Prods. Co. v. Champlin Refin. Co.*, 283 U.S. 494, 500 (1931)).  Google has not shown that fact-of-damage is so interwoven with other issues that it cannot be bifurcated from the other elements of Plaintiffs' antitrust claims.

### B.    Article III Is No Impediment to Proceeding with a Bifurcated Trial

Google also posits that deferring antitrust injury to the second phase of a bifurcated trial would run afoul of Article III's injury-in-fact requirement, citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).  (Mot. at 14.)  But this is a red herring.  In *Steel Co.*, the Supreme Court rejected the Ninth Circuit's prior practice of "assuming" jurisdiction under the "doctrine of

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

13

hypothetical jurisdiction" when cases were more easily disposed of on the merits, and instead required federal courts to ensure at the pleading stage that facts giving rise to Article III standing have been alleged.  523 U.S. at 93-104.  That is of course not an issue here.

Consumers have properly pleaded harm from Google's anticompetitive conduct, which satisfies the requirements of Article III standing at this stage of the litigation.  As the Court is aware, they are also prepared to come forward with substantial, admissible expert testimony on the subject if Google moves for summary judgment.  No more is required.  Google cites no authority indicating that Article III requires plaintiffs to prove that they suffered injury-in-fact in the first phase of a bifurcated trial.

Moreover, Consumers need not prove they suffered pass-through damages to establish injury-in-fact for purposes of Article III.  In *Ross v. Bank of America*, the Second Circuit held that the district court erred in dismissing antitrust claims for lack of Article III standing on the grounds that plaintiffs failed to allege they suffered economic damages.  524 F.3d 217 (2d Cir. 2008).  The court explained that the complaint adequately pleaded Article III injury based on allegations of "reduced choice and diminished quality in credit services" arising from defendants' collusion.  *Id.* at 223.  In reaching that conclusion, the court noted that the defendants were "stray[ing] into the realm of *antitrust* standing," which "demands a much more detailed and focused inquiry into a plaintiff's antitrust claims than constitutional standing."  *Id.* at 224-25.  Even if Consumers must establish Article III standing in the first trial, they can do so with evidence of harm to competition (such as reduced consumer choice and output) which they already propose to include in the first trial.[13]  Again, this evidence will not rely on Dr. Singer's pass-through model, which would be presented only in the second trial.

### C.    Class Notice Is No Impediment to Proceeding with a Bifurcated Trial

Google argues that proceeding to trial before the Ninth Circuit rules on the pending Rule 23(f) appeal would "inject unnecessary confusion" into the class notification process.  (Mot. at 4.)  But courts that have thoughtfully considered this issue have found that class notices can easily address pending Rule 23(f) appeals and that any slight additional complexity does not warrant a stay.

---

[13] Whether the Consumer Class has *antitrust* standing (as opposed to Article III standing) does not implicate the Court's jurisdiction and is merely a requirement for obtaining damages.  *See Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008).

For example, in *Andrews*, the district court denied a stay of class notice following the Ninth Circuit's grant of a Rule 23(f) petition. 2018 WL 4191409. The court observed that because the "risk of confusion decertification may have on class members is inherent in any class action suit," it was not convinced that the class members would be "subject to any more confusion that they would be in other similar suits." *Id.* at *3; *see also In re JUUL Labs, Inc.*, No. 19-md-02913-WHO (N.D. Cal. Jan. 30, 2023), ECF No. 3779 (approving notice, ECF Nos. 3777 and 3777-3 at 8, 14, that informed class members of a pending Rule 23(f) appeal); *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB, 2016 WL 10679467, at *4 (E.D. Cal. Nov. 14, 2016) (denying stay and ordering dissemination of class notice during pendency of Rule 23(f) appeal).

In *Andrews*, instead of staying class notice, the following language was added to the notice: "Plains has filed an appeal with the Ninth Circuit Court of Appeals requesting that the oil industry subclass not be allowed to move forward as a class. Please register at www.PlainsOilSpill.com or call 1-888-684-6801 to be kept informed about the progress of this appeal." 2018 WL 4191409, at 3 n.1. The appeal in this case could be addressed simply by adding similar language to the notice.[14]

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Defer or Stay Trial should be denied, and the Court should instead bifurcate the trial as outlined above.

Dated: March 30, 2023

BARTLIT BECK LLP
Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
Hae Sung Nam

Respectfully submitted,

By: */s/ Karma M. Giulianelli*
Karma M. Giulianelli

*Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

---

[14] A revised proposed form of class notice with language informing class members of the appeal (and correcting certain nits) is attached as Exhibit A. Class counsel request that it be approved so notice can be provided prior to the November trial.

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

15

Dated:  March 30, 2023

PRITZKER LEVINE LLP
Elizabeth C. Pritzker

Respectfully submitted,

By: /s/ Elizabeth C. Pritzker
Elizabeth C. Pritzker

*Liaison Counsel for the Class in In re Google Play
Consumer Antitrust Litigation*

## E-FILING ATTESTATION

I, Karma M. Giulianelli, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

/s/ Karma M. Giulianelli
Karma M. Giulianelli

CONSUMERS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD, 3:22-cv-02746-JD

16