# EXHIBIT 11
# PUBLIC REDACTED VERSION

HIGHLY CONFIDENTIAL

```
                                             Page 1

 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4   --------------------------------------------------x
 5   IN RE GOOGLE PLAY STORE           Case No.
     ANTITRUST LITIGATION              3:21-md-02981-JD
 6
 7   THIS DOCUMENT RELATES TO:
 8   Match Group, LLC et al. v. Google LLC et al.,
     Case No. 3:22-cv-02746-JD
 9
     Epic Games Inc. v. Google LLC et al.,
10   Case No. 3:20-cv-05671-JD
11
     In re Google Play Consumer Antitrust
12   Litigation, Case No. 3:20-cv-05761-JD
13
     In re Google Play Developer Antitrust
14   Litigation, Case No. 3:20-cv-05792-JD
15
     State of Utah et al. v. Google LLC et al.,
16   Case No. 3:21-cv-05227-JD
     --------------------------------------------------x
17
18    ** HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER ***
19
20            REMOTE VIDEOTAPED DEPOSITION OF
21                     SARAH KARAM
22            Wednesday, September 28, 2022
23
24   REPORTED BY:
25   RENEE HARRIS, CA CSR 14168, NJ CCR, RPR
```

HIGHLY CONFIDENTIAL

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4   --------------------------------------------------x
 5   IN RE GOOGLE PLAY STORE          Case No.
     ANTITRUST LITIGATION             3:21-md-02981-JD
 6
 7   THIS DOCUMENT RELATES TO:
 8   Match Group, LLC et al. v. Google LLC et al.,
     Case No. 3:22-cv-02746-JD
 9
     Epic Games Inc. v. Google LLC et al.,
10   Case No. 3:20-cv-05671-JD
11
     In re Google Play Consumer Antitrust
12   Litigation, Case No. 3:20-cv-05761-JD
13
     In re Google Play Developer Antitrust
14   Litigation, Case No. 3:20-cv-05792-JD
15
     State of Utah et al. v. Google LLC et al.,
16   Case No. 3:21-cv-05227-JD
     --------------------------------------------------x
17
      ** HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER ***
18
19          Remote Videotaped Deposition of SARAH
20   KARAM, appearing from Palo Alto, California, at
21   9:07 a.m. PDT, on Wednesday, Palo Alto, 2022,
22   before Renee Harris, California Certified
23   Shorthand Reporter No. 14168, New Jersey Certified
24   Court Reporter No. 30XI00241200, and Registered
25   Professional Reporter.
```

HIGHLY CONFIDENTIAL

Page 3

1    APPEARANCES OF COUNSEL:

2    Counsel for Plaintiffs Match Group, LLC; Humor

3    Rainbow, Inc.; PlentyofFish Media ULC; and People

4    Media:

5                    HUESTON HENNIGAN

6                    BY:  DOUGLAS J. DIXON, ESQ.

7                         WILL LARSEN, ESQ.

8                    620 Newport Center Drive, Suite 1300

9                    Newport Beach, California 92660

10                   ddixon@hueston.com

11                   wlarsen@hueston.com

12

13   Counsel for the Proposed Class In re: Google Play

14   Consumer Antitrust Litigation:

15                   KOREIN TILLERY LAW OFFICE

16                   BY: DAVID WALCHAK, ESQ.

17                   205 North Michigan Avenue, Suite 1950

18                   Chicago, Illinois 60601

19                   dwalchak@koreintillery.com

20

21

22

23

24

25

```
                                              Page 4
 1    APPEARANCES OF COUNSEL:    (CONTINUED)
 2    On Behalf of Plaintiff Epic Games, Inc. in:
 3    Epic Games, Inc. v. Google LLC, et al:
 4              CRAVATH SWAINE & MOORE
 5              BY:  ASHLEY ULRICH, ESQ.
 6                   MALIKAH WILLIAMS, ESQ.
 7              825 Eighth Avenue
 8              New York, New York 10019
 9              aulrich@cravath.com
10              miwilliams@cravath.com
11
12    Counsel for Google LLC, et al:
13              MORGAN LEWIS & BOCKIUS LLP
14              BY: MINNA LO NARANJO, ESQ.
15                  NINA DUTTA, ESQ.
16              One Market, Spear Street Tower,
17              28th Floor
18              San Francisco, California 94105-1596
19              minna.naranjo@morganlewis.com
20              nina.dutta@morganlewis.com
21    Also Present:
22          Kathlyn Querubin, Google
23          Jeanette Tekman, Match Group
24          Stephen Myers, Match Group
25          Steven Togami, Videographer
```

HIGHLY CONFIDENTIAL

Page 8

1                    Wednesday, September 28, 2022

2                         9:07 a.m.

3    _____

4         THE VIDEOGRAPHER:   We are on the record

5         at 9:07 a.m. on September 28, 2022.

6         Please note that this deposition is being

7         conducted virtually.   Quality of recording

8         depends on the quality of camera and Internet

9         connection of participants.   What is seen

10        from the witness and heard on screen is what

11        will be recorded.   Audio and video recording

12        will continue to take place unless all

13        parties agree to go off the record.

14        This is Media Unit No. 1 of the

15        video-recorded deposition of Sarah Karam

16        taken by counsel for the plaintiffs in the

17        matter of Match Group LLC et al. v. Google

18        LLC, et al., filed in the United States

19        District Court for the Northern District of

20        California, Case Number Case No.

21        3:22-cv-02746-JD.

22        This deposition is being conducted

23        remotely using virtual technology.   My name

24        is Steven Togami representing the firm

25        Veritext Legal Solutions; I am the

HIGHLY CONFIDENTIAL

Page 9

1          videographer.  The court reporter is Renée

2          Harris from the firm Veritext Legal

3          Solutions.

4               I am not related to any party in this

5          action, nor am I financially interested in

6          the outcome.

7               If there are any objections to

8          proceeding, please state them at the time of

9          your appearance.

10              At this time, will counsel and all

11         present please state their appearances and

12         affiliations for the record, starting with

13         the noticing party.

14              MR. DIXON:  Doug Dixon of Hueston

15         Hennigan for the Match Plaintiffs, and I'm

16         joined by my colleague, Will Larsen.

17              MS. NARANJO:  Do all the plaintiffs want

18         to go?

19              MR. WALCHAK:  This is David Walchak for

20         the consumer plaintiffs from Korein Tillery.

21              MS. ULRICH:  Ashley Ulrich, Cravath

22         Swaine & Moore for Epic Games, and with me is

23         my colleague, Malikah Williams.

24              MS. NARANJO:  This is Minna Naranjo from

25         Morgan Lewis & Bockius, joined by Nina Dutta,

HIGHLY CONFIDENTIAL

Page 10

1       also from Morgan Lewis & Bockius, and Kathlyn
2       Querubin from Google representing the Google
3       Defendants and the witness.
4
5                       SARAH KARAM,
6   called as a witness and having been first duly
7   sworn by the Certified Shorthand Reporter, was
8   examined and testified as follows:
9
10                      EXAMINATION
11
12    BY MR. DIXON:
13      Q.  Good morning, Ms. Karam.  How are you?
14      A.  Good morning.  I'm doing well.  How are
15   you?
16      Q.  I'm doing well, thanks.
17           So my name is Doug Dixon as you just
18   heard.  I represent the Match Plaintiffs which own
19   and operate several dating apps which I believe
20   you are most likely familiar with; Tinder,
21   Match.com, PlentyofFish, OkCupid and OurTime.  I
22   may refer to those brands individually today or I
23   may refer to the Match Plaintiffs.
24           Would that be okay?
25      A.  Yes.

Page 48

1    an end-to-end platform for users, whether it's for

2    subscriptions or in a one-time in-app purchases

3    and it's a way for users to purchase with a sense

4    of security and safety that they can get refunds

5    as needed.

6         They can easily cancel subscriptions, if

7    they have them running, and this works in hundreds

8    of countries over hundreds of forms of payments,

9    including local forms of payments, carrier

10   billing.

11        So it's a suite of services both for

12   developers and for users.

13        Q.  Now, many app developers use the Google

14   Play Store without using Google Play Billing;

15   correct?

16        A.  Correct.  If a developer doesn't sell

17   digital goods and services, they would not be

18   using Google Play Billing.

19        Q.  ████████████████████████████████████

     ████████████████████████████████████████████████

     ████ ████████████████████

22        A.  Correct.

23        Q.  -- on the -- and so you can use the

24   Google Play Store without using Google Play

25   Billing and, in fact, the vast majority of

HIGHLY CONFIDENTIAL

Page 154



21    Q.   Correct.

22    A.

HIGHLY CONFIDENTIAL

Page 229

1    at the meeting?

2         A.   Correct.

3         Q.   And then you're right, if you turn to the

4    second page of Exhibit 1596, there's reference to

5    another meeting, March 12, 2021, that was just

6    between you and Peter Foster; right?

7         A.   Correct.

8         Q.   And listed there is ███  discussion;

9    correct?

10        A.   Yes.

11        Q.   And is this Exhibit 1596 a document that

12   was created in the ordinary course of Google's

13   business?

14        A.   Yes.

15        Q.   And if you turn to page 3, which is the

16   one ending in 916, midway down, there's a bullet

17   point, ████████████████████

18

19        Do you see that?

20        A.   I do.

21        Q.   And so if this was a meeting between you

22   and Peter, fair to say that you are the one that

23   created these notes since Peter wouldn't have had

24   access to it?

25        A.   I'm just reading through that section.

HIGHLY CONFIDENTIAL

Page 230

1    Definitely Google created.  I might have -- some

2    of this information might have been sourced from

3    others, not just me.

4        Q.  But these were your talking points for

5    your meeting with Peter on March 12, 2021,

6    reflected here on the page ending in Bates 916?

7        A.  Yes, there's a section below that says

8    "proposed talking points" which was created by

9    Google.

10       Q.  And these were the talking points you

11   relied upon in connection with your conversation

12   with Peter on March 12th, 2021; correct?

13       A.  Yes.

14       Q.  ████████████████████████████████

     ███████████████████████████████████████████

     ███  ███  █████████████

17       Q.  At least according to Exhibit 1596, that

18   was one of the topics; right?

19       A.  That was one of the intended topics to

20   talk about, yes.

21       Q.  ████████████████████████████████████

     ████████████████████████████████████████████

     ███  ████████████████████████

24       A.  I don't remember the exact meeting.  We

25   would have a lot to talk about in those meetings,

HIGHLY CONFIDENTIAL

Page 231

1  so I'm not sure the depth in which we went to in

2  each of these topics.

3      Q.   If you look under integration status,

4  there are two top-level bullet points, focusing on

5  the second top-level bullet point and then the

6  first sub-bullet, it says, [as read]: ███████████

   ████████████████████████████████████████████████

   ████████████████████████████████████████████

9          Do you see that?

10     A.   I do.

11     Q.  ████████████████████████████████████████████

   ████████████████████████████████████████████

   ████████████████████

14     A.   My understanding of that bullet point is

15  that Match ███████████████████████████████████████

   ████████████████████████████████████████████████

   ██████████████████████████████████████

   ████████████████████████████████████████████████

   ████████████████████████████████████████████

   ████████████

21     Q.   Was there any reason for you to believe

22  that Match was acting in anything other than good

23  faith when it ████████████████████████████████████

   ████████████████████████

25     A.   I think you'll see from earlier in the

HIGHLY CONFIDENTIAL

Page 232

1    doc, there's ███████████████████████████

     ███████████████████████████████████

     ████████████████████████████████████

     ███████████████████████████████████████

     ████████████████████

6            And I think the other bullet that you

7    referenced highlights that the working teams

8    were -- ███████████████████████████████████

     ████████████████████████████████████

     ██████████████████████████████

     ████████████████████████████████████████

     ██████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████

     ████ █████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████

     ████ █████████████████████████████████

     █████████

     ████ ██████████

21           A.  Not in this specific meeting and for

22   these specific notes, no.

23           Q.  And if you'll turn to the next page

24   ending in Bates 917, you'll see there's a

25   reference to feature adds; right?

HIGHLY CONFIDENTIAL

Page 249

```
1        A.   I do.

2        Q.   And that's listed as ███████████████

3        A.   Yes.

4        Q.   Do you know what that meant?

5        A.   What ███████████████  meant?

6        Q.   Correct.

7        A.   ███████████████████████████
```

HIGHLY CONFIDENTIAL

Page 262



6    BY MR. DIXON:

7        Q.   Let me clarify the record.

8        A.   Sure.

9        Q.

15       A.

HIGHLY CONFIDENTIAL

1          So yes, I read this statement.  I don't
2    think it reflects other conversations and feedback
3    that we heard from Match previously.
4          Q.  Google didn't ask for any clarification
5    in response to that statement, did it?
6          A.  This form was intended to record and it
7    was used to grant extensions for those who were
8    working in good faith to come into compliance with
9    our policies.  It was not intended to be a
10   partnerships back-and-forth or a product feedback
11   form.  That wasn't the purpose of the form.  It
12   was for our policy team.
13         Q.  My question was a little different,
14   respectfully.  I simply said:  Google didn't ask
15   for clarification in response to Mr. Daniell's
16   submission; correct?
17         A.  Not in this form, no.
18         Q.  And Casey did get a specific response
19   from Danmar; right?
20         A.  Correct.
21         Q.  And Danmar is somebody who works for
22   Google?
23         A.  I believe Danmar is on our policy --
24   policy vendor team.
25         Q.  So now let's turn back -- actually,

HIGHLY CONFIDENTIAL

Page 264

1   before we go there, ████████████████████

    ████████████████████████████████

    ████████████████████████ ; correct?

4       A.   Correct.

5       Q.   Did Google rely on Mr. Daniell's

6   statement in making any other decisions?

7           MS. NARANJO:   Object to form.

8           THE WITNESS:   Can you please be more

9       specific on what decisions you're referring

10      to?

11   BY MR. DIXON:

12      Q.   Yeah, did Google rely on Mr. Daniell's

13   e-mail, say, for ████████████████████

    ████████████████ anything like that?

15      A.   Our -- the way Google viewed

    ████████████████████████████████

    ████████████████████████████████

    ████████████████████████████

    ████████████

20      Q.   I'm not sure that quite answered my

21   question.

22           I guess, again, did Google rely on

23   Mr. Daniell's request in the e-mail or the

24   submission ████████████████████

    ████████████

                                        Page 265

1        A.   No, because that wasn't -- that wasn't an

2    expectation off any -- any submission of these

3    forms.

4        Q.   All right.  If you'll turn back to

5    Exhibit 1994, which is Google's Answer.

6        A.   Yeah.

7        Q.   And I want to look at page, on the bottom

8    footer, No. 46.  And there's a section about a

9    third from the top saying, "Count III, False

10   Promise."

11            Do you see that?

12       A.   I do.

13       Q.   And if you look at the paragraph No. 70,

14   it says, [as read]:  "Match Group's specific

15   misrepresentations regarding its intention to

16   comply with the DDA include the August 2021

17   request of Peter Foster for an extension."

18            Do you see that?

19       A.   I do.

20       Q.   And the reference there to that August

21   2021 request of Peter Foster is Exhibit 1603;

22   right?

23       A.   The e-mail from Peter to Brandon?

24       Q.   Correct.

25       A.   Yes.  I believe so.

HIGHLY CONFIDENTIAL

1    of Sameer Samat, Don Harrison, and sometimes, Gary

2    was in those calls.  So that's what I mean when I

3    say, I'm not sure which of those communications.

4    There was more than one.  But I -- I know there

5    were several and this is referring to one of them.

6         Q.  And when did those communications take

7    place?

8         A.  Throughout a time period ranging maybe

9    February, March, roughly, of 2022.

10        Q.  And do you know the specific day that any

11   of those communications being referred to in the

12   last sentence of paragraph 74 were made?

13        A.  I do not know the specific day.

14        Q.  And you're just guessing that it could

15   have been one of the conversations with Sameer

16   Samat?

17             MS. NARANJO:  Object to form.

18             THE WITNESS:  I'm not guessing.  Like I

19         mentioned, there were several conversations

20         between Shar Dubey, the CEO of Match and

21         Sameer Samat, the VP of Google Play and

22         Android product and this is in reference to

23         one of those conversations.

24             There may have -- it could be in

25         reference to a conversation with both the CEO

HIGHLY CONFIDENTIAL

1        and the CFO, where Shar, the CEO, stated ██

██        ████████████████████████████████████████████

██        ████████████

4            I'm not sure what days those were on.

5     BY MR. DIXON:

6        Q.  And what did Ms. Dubey say specifically?

7        A.  I wasn't in those -- pardon me, I'm

8     sorry, I didn't mean to interrupt you.

9        Q.  I was just going to say -- let me start

10    over.

11           So what did Ms. Dubey say specifically

12    that gave rise to the allegation contained in the

13    last sentence of paragraph 74?

14       A.  I wasn't in those meetings directly.  So

15    I can't speak to the -- the exact words used, but

16    from my memory of hearing summaries of the

17    meetings from our Google attendees, I think what

18    this is referring to ███████████████████████████

██    ███████████████████████████████████████████████

██    ███████████████████

21       Q.  And I'm not -- really not asking for your

22    best memory or anything like that.  It's not meant

23    to be a memory test.

24           I'm asking as Google's corporate

25    representative:  What specifically did Ms. Dubey

1    say that is alleged in paragraph 74?

2    ████ ████████████████████████████

3   █ ████████████████████████

4         Q.   She used those exact words?

5         A.   I was not in the meeting and there was --

6    there was no recorded transcript of the meeting.

7    So I do not know the exact words used.

8         Q.   In preparation to testify on behalf of

9    Google with respect to Topic No. 2, did you speak

10   to anyone who participated in those meetings with

11   Ms. Dubey to ask what Ms. Dubey allegedly said?

12        A.   We had briefings after these meetings to

13   go over some of the statements made and next

14   steps.   None of these meetings included

15   transcripting [sic], the exact words used, and

16   that's not typically the approach we use at

17   Google.   Our partnerships, we don't scrutinize

18   word-for-word and record what people say.

19             So no, I do -- I do not -- despite having

20   very strong familiarity with these conversations,

21   I was never told the exact words used because

22   that's not really an approach we take.

23        Q.   And the answer to my question is:   You

24   did not go speak with Mr. Harrison or Mr. Samat in

25   connection with your obligations to testify on

1          A.   I think e-mails, e-mail threads,

2     potentially a Google Doc, or at least one Google

3     Doc.

4          Q.   Let's start with the Google Doc.

5               Which Google Doc did you review in

6     connection with your preparation to testify as

7     Google's corporate representative with respect to

8     Topic No. 1?

9          A.   A meeting notes docs regarding Match

10    regarding ███.

11         Q.   And have we reviewed during today's

12    deposition the Meeting Notes doc regarding ███

13    that you reviewed in preparation for testifying as

14    Google's corporate representative on Topic No. 1?

15         A.   No.

16              MR. DIXON:  We're going to introduce

17         Exhibit No. 1997.  And that will be Tab 24

18         which is a document Bates GOOG-PLAY-011540724

19         through 0779.

20              (Exhibit 1997 was received and marked

21              for identification on this date and is

22              attached hereto.)

23     BY MR. DIXON:

24         Q.   Do you have Exhibit 1997 open?

25         A.   I do.

HIGHLY CONFIDENTIAL

Page 323

1     STATE OF CALIFORNIA     )

2                            )     ss.

3     COUNTY OF LOS ANGELES  )

4            I, RENEE HARRIS, do hereby certify that I

5     am a licensed Certified Shorthand Reporter, duly

6     qualified and certified as such by the State of

7     California;

8        That prior to being examined, the witness named

9     in the foregoing deposition was by me duly sworn

10    to testify to tell the truth, the whole truth, and

11    nothing but the truth;

12       That the said deposition was by me recorded

13    stenographically;

14       And the foregoing pages constitute a full,

15    true, complete and correct record of the testimony

16    given by the said witness;

17           That I am a disinterested person, not

18    being in any way interested in the outcome of said

19    action, or connected with, nor related to any of

20    the parties in said action, or to their respective

21    counsel, in any manner whatsoever.

22    DATED: September 29, 2022

23

24                    Renee Harris, CSR, CCR, RPR

                      CA CSR No. 14168,

25                    NJ CRR No. 30XI00241200

Errata Sheet - Deposition of Sarah Karam

**Case**:   *In re Google Play Store Antitrust Litigation*, Case No. 3:21-md-02981-JD
           *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD
           *Epic Games Inc. v. Google LLC*, Case No. 3:20-cv-05671-JD
           *In re Google Play Developer Antitrust Litigation, Case No. 3:20-cv-05792-JD*
           *State of Utah v. Google LLC*, Case No. 3:21-cv-05227-JD
           *Match Group LLC, v. Google LLC*, Case No. 3:22-cv-02746-JD
           ----------------------------------------------------

**Date of Deposition**: September 28, 2022

| Page # | Line # | Currently Reads | Correction | Reason for Correction |
|--------|--------|-----------------|------------|-----------------------|
| 31 | 7 | team | teams | Transcription error |
| 35 | 8 | AVP | ABP | Transcription error |
| 39 | 17 | a list of | them as | Transcription error |
| 48 | 2 | in a one-time | one-time | Clarification |
| 53 | 24 | profitability. | for profitability. | Transcription error |
| 56 | 7 | developers | users | Clarification |
| 70 | 8 | avail | available | Transcription error |
| 80 | 18-19 | app in that -- policy compliant version | app, meaning the existing, policy compliant version, | Clarification |
| 86 | 22 | this | as | Transcription error |
| 93 | 13 | best-in-class class | best-in-class | Transcription error |
| 93 | 21 | steeper | deeper | Transcription error |
| 96 | 5 | asset | assert | Transcription error |
| 100 | 12-14 | that's resulting in consumers not purchasing using Google Play Billing almost never. | resulting in consumers almost never purchasing using Google Play Billing. | Clarification |
| 120 | 12 | L-O-O-V-O | L-O-V-O-O | Transcription error |
| 125 | 9 | thi | this | Transcription error |
| 126 | 16 | GOOG-PLAY-40224810 | GOOG-PLAY-011224810 | Transcription error |
| 130 | 3 | GOOG-PLAY-0011224866 | GOOG-PLAY-011224866 | Transcription error |

| Page # | Line # | Currently Reads | Correction | Reason for Correction |
|--------|--------|-----------------|------------|-----------------------|
| 136 | 4 | -- if I read | Farid | Transcription error |
| 137 | 16 | 1998 | 1988 | Transcription error |
| 155 | 3 | features | featured | Transcription error |
| 161 | 22 | G-up | gUp | Transcription error |
| 167 | 6 | claimant's | payments | Transcription error |
| 173 | 25 | outrage | outage | Transcription error |
| 181 | 18 | have discussions | have some discussions | Transcription error |
| 182 | 10 | it's | its | Transcription error |
| 185 | 1-2 | ways as individuals | ways, as in individuals | Transcription error |
| 205 | 2 | funds | plans | Transcription error |
| 210 | 3 | center deep | center via deep | Clarification |
| 213 | 5 | know -- if | know, if | Transcription error |
| 213 | 6 | App, my | App, but my | Clarification |
| 221 | 16 | 1094 | 1994 | Transcription error |
| 225 | 2 | -- that some | -- some | Transcription error |
| 227 | 7 | 1996. | 1596. | Transcription error |
| 228 | 10 | 1506? | 1596? | Transcription error |
| 232 | 25 | adds; | gaps; | Transcription error |
| 240 | 1 | value. | value? | Punctuation error |
| 247 | 7 | PIK or PIK Play | Pix or PicPay | Transcription error |
| 248 | 8 | PIKs | Pix | Transcription error |
| 248 | 24 | PS2-d | PSD-2 | Clarification |
| 256 | 21 | app | an | Transcription error |
| 257 | 13 | 21st | 31st | Transcription error |
| 258 | 11 | 22 | 2022 | Clarification |

| Page # | Line # | Currently Reads | Correction | Reason for Correction |
|--------|--------|-----------------|------------|----------------------|
| 259 | 9 | 2021 | 2022 | Clarification |
| 261 | 21 | 21st | 31st | Transcription error |
| 268 | 6 | Matches | Match's | Transcription error |
| 280 | 12 | of instance. | of an instance. | Transcription error |
| 285 | 12 | about rev share | about acceptable rev share | Transcription error |
| 288 | 3-5 | it wasn't -- it would be nice if you charged 15 or 18 percent. That's better than 30 percent. | it wasn't "it would be nice if you charged 15 or 18 percent. That's better than 30 percent." | Punctuation error |
| 289 | 2-4 | I think the analogy here would be working with the robber back to -- work with them, you know, because this is not -- | I think the analogy here is not -- | Clarification |
| 295 | 25 | that | but | Transcription error |
| 298 | 6 | No. | I met with Deniz Macoura as described earlier. | Clarification |
| 300 | 11 | distant | doesn't | Transcription error |
| 312 | 22 | service. | service fee. | Transcription error |
| 313 | 25 | apps? | gaps? | Transcription error |
| 316 | 8-9 | the integration | de-integration | Transcription error |

I, the undersigned, declare under penalty of perjury, that I have read the above-referenced deposition transcripts and have made corrections, additions, or deletions that I desired to make; and that the transcripts contain my true and correct testimony.

EXECUTED this 27 day of October at Mountain View _____, California.

Sarah Karam