***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

# EXHIBIT 18



INTENSITY, LLC
5345 Towne Square Drive, Suite 135
Plano, Texas 75024
469.257.5580
intensity.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Match Group, LLC, et al. v. Google LLC, et al.*,
Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**EXPERT REPORT OF**
Steven Schwartz, Ph.D.

_[signature]_

Steven Schwartz, Ph.D.

October 3, 2022

PROVISIONALLY DESIGNATED NON-PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY (ALSO CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY AND CONFIDENTIAL INFORMATION)

## 16.  Damages calculation

### 16.1.  Overview

(469) Google claims that its GPB service fee is compensation to Google for both its payment processing services and the value Google claims developers receive from being listed on GPS itself. Therefore, and as discussed in Section 13, in the competitive but-for world, Google would implement two distinct fees reflecting the separate services provided by GPS and GPB:

a.  A charge for GPS services, *i.e.*, Discovery Value and Delivery Value.

b.  A charge for IAP processing services, *i.e.*, FOP Value.

(470) In my calculation of damages, I assume conservatively that Google correctly characterizes the GPB service fee's components. Therefore, to calculate damages, I conservatively assume the Discovery and Delivery Values of GPS are the same in the actual and the but-for worlds.[1088] Thus, damages to Match Plaintiffs are driven by the supracompetitive rates for Google's IAP processing services, reflecting Google's claimed FOP Value. To anticipate, I conclude that Tinder and OkCupid have been damaged by Google's supracompetitive IAP processing fees even after accounting for the Discovery and Delivery Value of GPS.[1089]

### 16.2.  Match Plaintiffs' transactions subject to damages

(471) Starting at the latest in January 2015, Humor Rainbow, Inc. began paying GPB service fees of approximately 30% of transacted OkCupid revenue. See Attachment D-2. Starting at the latest in January 2016, the entity then operating Tinder began paying GPB services fees of approximately 30% of Tinder's transacted revenue.[1090] See Attachment D-2. For both OkCupid and Tinder revenues, GPB services fees have remained at approximately 30%. See Attachment

---

[1088]  This approach is conservative because, in a competitive environment, the Discovery value of GPS to Match Plaintiffs is the upper-bound on their willingness to pay for the discovery services. By assuming that Google captures all of the value it provides to Match Plaintiffs, I ignore the economically more likely result that a competitive price would allow Match Plaintiffs to retain some of the value (that is, economic rents) associated with the discovery service.

[1089]  As noted in Section 12.1.1, I understand that PlentyofFish has implemented GPB as an option as part of testing in certain countries since 2017 and has only fully implemented GPB in certain geographies. PlentyofFish Media ULC sales data span the time period from January 2015 through December 2021. Because PlentyofFish was implementing on a testing basis and in certain geographies over the period for which I have been provided data, the service fees paid are inconsistent with Google's standard GPB rates.

[1090]  Plaintiffs' Supplemental Responses and Objections to Defendants' Interrogatories, 9/16/2022, at Supplemental Response to Interrogatory No. 22.  ("The Tinder app was released on the Google Play Store in July 2013. At that time, Tinder was owned and operated by a Match Group, Inc. portfolio entity, and, in 2017, became owned and operated by plaintiff Match Group, LLC, its current owner and operator.")

Case 3:21-md-02981-JD   Document 509-19   Filed 05/18/23   Page 4 of 4

PROVISIONALLY DESIGNATED NON-PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY (ALSO CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY AND CONFIDENTIAL INFORMATION)

D-2.  I understand that because of the statute of limitations, Match Plaintiffs cannot seek damages before July 7, 2017.  Thus, while Match Plaintiffs have paid Google supracompetitive IAP processing fees dating back to at least January 1, 2015, the damages period for my calculation begins on July 7, 2017.[1091]

(472) Match Plaintiffs have produced reports of global revenues, service fees, and downloads by app (*i.e.*, Match, OkCupid, OurTime, PlentyofFish, and Tinder) on a monthly basis from January 2015 through December 2021.  See Attachments X-1 through X-5.  Within each report, revenues and service fees are further divided based on where the transactions were processed.  See Attachments X-1 through X-5.  For example, Tinder has iOS revenue and Apple IAP service fees; GPB revenue and GPB service fees; Android non-GPB revenue and Android non-GPB service fees, etc.  See Attachments B-5 and X-5.  Thus, Match Plaintiffs' total revenue processed through GPB and the corresponding total service fees charged by GPB are readily calculable.

(473) Google has produced transaction-level data for Match Plaintiffs' transactions processed through GPB.  These data include transactions made in the United States only.  For Tinder and OkCupid, Google produced data from October 2014 and December 2012, respectively, through May 2022.  I have aggregated the transaction-level data to arrive at monthly totals beginning in 2015 for revenue, GPB service fees, and total transactions processed through GPB in the United States.  See Attachment X-6.  Since the Match Plaintiffs' data do not include global transaction counts, I used the Google data to estimate global transaction counts.  For each month and for each app, I calculated the U.S. revenue per transaction.  See Attachment X-6.  Then, I divided the global revenue processed through GPB by the corresponding United States revenue per transaction.  See Attachment D-2.

(474) During the damages period (7/7/2017–12/31/2021), OkCupid paid fees for the following global transactions (number and dollar value) processed through GPB (and subject to damages).  See Attachment E-1.

███████████████████████████████

████████████████████████████

██████████████████████

---

[1091] I also include a damages calculation that starts May 9, 2018, four years prior to Match Plaintiffs' complaint filing.

Expert Report of Steven Schwartz, Ph.D.                                                            Page 230