# Exhibit 1

1  Joshua P. Davis (SBN 193254)
   Kathleen W. Bradish (*pro hac vice* pending)
2  kbradish@antitrustinstitute.org
3
   American Antitrust Institute
4  1025 Connecticut Avenue NW, Suite 1000
   Washington, D.C. 20026
5  (202) 304-0195
6  **COUNSEL FOR PROPOSED AMICUS
   CURIAE: THE AMERICAN ANTITRUST
7  INSTITUTE**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**[PROPOSED] BRIEF OF THE AMERICAN ANTITRUST INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF STATE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN**<br><br>Judge:  Hon. James Donato |

## INTEREST OF *AMICUS CURIAE*[1]

The American Antitrust Institute ("AAI") is an independent, nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. AAI serves the public through research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of competition policy. AAI receives the input of an Advisory Board that consists of over 130 prominent antitrust lawyers, law professors, economists, and business leaders.[2] AAI has a strong interest in the resolution of the Defendant's Motion to Exclude because it raises issues about the scope of private antitrust enforcement, a key tool in advancing the antitrust laws. Preserving its ability address the full range of antitrust harms is vital to AAI's mission of promoting competition.

## INTRODUCTION AND STATEMENT OF ISSUES

Google seeks to exclude Dr. Rysman's merits opinions on the grounds that loss of "variety" is not compensable under the antitrust laws. Specifically, Google claims that harm to product variety does not qualify as injury to "property" under Section 4 of the Clayton Act, which provides a private right of action for antitrust injuries to a plaintiff's business or property.[3] To make this argument, Google attempts to equate product variety with "personal injury," which courts have acknowledged is not a basis for antitrust damages.[4] Based on this shaky rationale, Google asks this Court to make the sweeping conclusion that damages actions are available only for harms resulting directly from supracompetitive prices.

Neither the claimed equivalence between variety and personal injury nor the limits to private enforcement that it implies stand up to scrutiny. The loss Dr. Rysman measures in his report—whether labeled a loss of variety, innovation or consumer choice—is not a personal harm like a broken arm or

---

[1] No counsel for a party has authored this brief in whole or in part, and no party, party's counsel, or any other person—other than *amicus curiae* or its counsel—has contributed money that was intended to fund preparing or submitting this brief.
[2] For more information about AAI's activities, publications, and personnel, *see* http://www.antitrustinstitute.org. Individual views of members of the Advisory Board or Board of Directors may differ from AAI's positions.
[3] 15 U.S.C. §15(a).
[4] Defs.' Mot. to Exclude 7:19–9:10, ECF No. 484.

emotional distress.[5] Rather, antitrust law is designed to protect consumer choice and innovation. No basis exists to treat as compensable one fundamental harm of lost competition, higher prices, but not another, reduced consumer choice. Google's narrow definition of "property" would effectively grant immunity from private damage suits to a wide swath of antitrust violations. The text and history of Section 4 of the Clayton Act suggest no such intent.[6]

## ARGUMENT

### I. THE ANTITRUST LAWS SEEK TO PREVENT LOSS OF CHOICE, PRODUCT VARIETY AND INNOVATION

The scope of private enforcement under the Clayton Act Section 4 must reflect the interests that the antitrust laws were designed to protect. The Court so recognized in holdng that private enforcement rights under Section 4 extend to commercial *and* personal use purchasers.[7] In *Reiter v. Sonotone Corp.*, the Court examined the legislative histories of the Clayton and Sherman Acts.[8] Failing to find any intent to limit the scope of Section 4, the Court noted, "On the contrary, [the legislative histories] suggest that Congress designed the Sherman Act as a 'consumer welfare prescription.'"[9] The intent behind the antitrust laws, it concluded, supports a broad reading of the "business or property" language in Section 4 to include all consumers, whether individual or commercial.[10]

Reading Section 4 in light of *Reiter*, Google's interpretation of "property" to include only inflated prices is not sustainable. Although the definition of antitrust's consumer welfare standard is contested, it has always addressed more than just supracompetitive pricing.[11] In *The Antitrust Paradox,* which *Reiter* quotes, the highly conservative Robert Bork described consumer welfare as "greatest when society's economic resources are allocated so that consumers are able to satisfy their

---

[5] *See e.g.*, *Bhan v. NME Hosps., Inc.*, 669 F. Supp. 998, 1013 (E.D. Cal. 1987); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).
[6] *See* 15 U.S.C. § 15.
[7] *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343 (1979).
[8] 442 U.S. at 343.
[9] *Id.* at 343.
[10] *Id.*
[11] Richard May, *The Consumer Welfare Standard – Advantages and Disadvantages Compared to Alternative Standards - Background Note*, Organization for Economic Co-operation and Development (Apr. 25, 2023), *https://one.oecd.org/document/DAF/COMP(2023)4/en/pdf*.

wants as fully as technological constraints permit."[12] Applying that principle here makes clear that if anticompetitive conduct reduces the apps available to the public, consumers cannot fully satisfy their wants, regardless of price effects, and the interest of the consumer is compromised.

Modern agency policy, and caselaw confirm that antitrust enforcement must protect consumer choice and innovation, not just short-term price effects. Antitrust agencies have for decades considered innovation competition and product variety in assessing competitive effect. The 2010 Horizontal Merger Guidelines issued by the Department of Justice (DOJ) and Federal Trade Commission (FTC) included an entire section on assessing effects on "Innovation and Product Variety."[13] The Guidelines explain that anticompetitive action can "diminish innovation competition by encouraging [a] firm to curtail its innovative efforts below the level that would prevail" in a competitive market.[14] Moreover, the loss of preferred products "can constitute a harm to customers over and above any effects on the price or quality of any given product."[15] The Guidelines warn that agencies may conclude that a loss of product variety, even without price inflation, "results from a loss of competition and materially harms customers."[16]

Protecting innovation has been an express goal of agency leadership in every recent administration. To take just a few examples, FTC Commissioner Christine Varney asserted in 1996 that it is "a fundamental tenet of antitrust enforcement policy" that "competition fosters innovation and efficiency over the long run,"[17] and DOJ AAG Thomas Barnett warned in 2007 that the agencies must protect innovation and not "pursue immediate, static efficiency gains at the expense of long-term, dynamic efficiency improvements, since the latter are likely to create more consumer welfare than the

---

[12] Robert H. Bork, *The Antitrust Paradox*: *A Policy at War With Itself* 90–1 (1978).
[13] U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines § 6.4 (2010), ftc.gov/os/2010/08/100819hmg.pdf.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Christine A. Varney, *The Federal Trade Commission and International Antitrust*, Fed. Trade Comm'n (Oct. 17, 1996), https://www.ftc.gov/news-events/news/speeches/federal-trade-commission-international-antitrust#N_10_.

former."[18] AAG Bill Baer highlighted in 2015 that "competition policy and antitrust enforcement […] ensur[e] that consumers continue to benefit from the extraordinary innovation we are witnessing,"[19] The current agency leadership has emphasized that "appropriate and effective use of antitrust enforcement can address a wide range of competitive harms in tech, including harms related to privacy, innovation, resiliency of technology infrastructure, among may others."[20]

## II. COURTS HAVE RECOGNIZED LOSS OF CHOICE, PRODUCT VARIETY, AND INNOVATION AS BASIS FOR ANTITRUST ENFORCEMENT

Courts have repeatedly confirmed that the antitrust laws protect innovation competition and consumer choice. Just last week the DOJ's Antitrust Division won its case alleging an illegal joint venture agreement between Jet Blue and American Airlines based in part on a loss of customer choice.[21] The court concluded that air travelers' loss of carrier options was clear evidence of the alliance's reduction of competition.[22] It explained that the alliance's "schedule optimization and capacity coordination process has led to decreased capacity, lower frequencies, or reduced consumer choices on multiple routes, including some that are heavily traveled."[23] The court also broadly condemned the loss of Jet Blue's disruptive effect on competition for the alliance routes, explaining:

> The free-market principles that underlie federal antitrust law value more than competition measured in terms of the number of firms in a market. *They protect against product standardization and the elimination of different types of choices that might appeal to different segments of consumers.* See 7 Areeda on Antitrust ¶ 1503a (providing example

---

[18] Thomas O. Barnett, *Maximizing Welfare Through Technological Innovation*, U.S. Dep't of Justice (Oct. 31, 2007), https://www.justice.gov/atr/speech/maximizing-welfare-through-technological-innovation.

[19] William J. Baer, *Video Competition and Challenges*, U.S. Dep't of Justice (Oct. 9, 2015), https://www.justice.gov/opa/speech/assistant-attorney-general-bill-baer-delivers-keynote-address-future-video-competition.

[20] Jonathan Kanter, *Questions for the Record Jonathon Kanter Nominee to be Assistant Attorney General of the Antitrust Division*, U.S. S. Judiciary Comm. (Oct. 6, 2021), https://www.judiciary.senate.gov/imo/media/doc/Kanter%20Responses%20to%20Questions%20for%20the%20Record.pdf.

[21] *See U.S. v. American Airlines Group Inc.*, No. 21-11558-LTS, 2023 U.S. Dist. 87867, at *1, *49 (D. Mass. May 19, 2023).

[22] *American Airlines*, No. 21-11558-LTS, 2023 U.S. Dist. 87867 at *49–*52.

[23] *Id.* at *49.

of agreement among tire manufacturers to produce only five types of tires, to the detriment of customers who prefer a sixth type of tire).[24]

The DOJ's successful monopolization case against Microsoft, too, was based on detrimental effects on innovation and choice.[25] The DOJ alleged that Microsoft engaged in exclusionary conduct to quash the nascent competitive threat posed by browser platforms like Netscape.[26] The DOJ's complaint mentioned an effect on price only a handful of times. Instead, the DOJ focused on variety, noting Microsoft's anticompetitive conduct "deprive[d] customers of a choice between alternative browsers."[27] The primary harm flowing from the monopolistic conduct was "to deter innovation, exclude competition, and rob customers of their right to choose among competing alternatives,"[28] including the potential "benefit to consumers of product differentiation."[29] The D.C. Circuit, in upholding the decision against Microsoft, confirmed that Section 2 reached such harms.[30] A long-term impact of the case has been to focus antitrust enforcement on innovation.[31]

The Plaintiff States' brief cites relevant Ninth Circuit precedent, but the list of cases recognizing loss of choice as an antitrust harm is long and varied. Historical reviews have traced court recognition of loss of choice as an antitrust harm in many influential cases, including *United States v. Philadelphia National Bank* and *Brown Shoe Co. v. United States*.[32] Dozens of other decisions recognize consumer choice as a measure of anticompetitive effect.[33] Still other studies have found

---

[24] *See id.* at *99 n.82 (citing 7 Areeda & Hovenkamp ¶ 1503(a), *Antitrust Law* (3d ed. 2010)) (emphasis added).
[25] *U.S. v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001).
[26] *See Microsoft*, 253 F.3d at 108–09.
[27] *Microsoft* Compl. ¶ 12.
[28] *Microsoft* Compl. ¶¶ 36–37.
[29] *Microsoft* Compl. ¶ 11.
[30] *Microsoft*, 253 F.3d at 59.
[31] *See Microsoft*, 253 F.3d at 139–41; Steve Lohr, *5 Lessons from Microsoft's Antitrust Woes, by People Who Lived It*, New York Times (June 23, 2019), https://www.nytimes.com/2019/06/23/technology/antitrust-tech-microsoft-lessons.html. (stating ten years after the case concluded that one of the most important lessons of the case was that "consumer harm extends well beyond the price of products").
[32] *See* Robert Lande, *Consumer Choice as the Ultimate Goal of Antitrust*, 62 U. Pitt. L. Rev. 503, 508–09 (2001).
[33] *Id.*

innovation harm as a factor in a third of merger enforcement actions from 2004 to 2014 and more than 80% of actions involving high R&D industries.[34]

In short, Google's version of Section 4 requires this Court to ignore the well-documented history of antitrust enforcement aimed at protecting consumer choice and innovation.

### III. NO BASIS EXISTS TO EXEMPT RECOGNIZED ANTITRUST HARMS FROM PRIVATE ENFORCEMENT

It is illogical to read Clayton Act Section 4 to limit private enforcement to violations that directly affect prices. Then antitrust defendants could avoid liability simply by changing the nature of their competitive restrictions. Take the tire manufacturer example cited above. Google's version of Section 4 would mean a private party could seek damages for an agreement among tire companies to fix tire prices, but not to limit available tire types.[35] Both conspiracies could deprive consumers of the tires they want—whether because they are too expensive or because they are no longer on the market. Both also could force consumers to pay higher prices than they otherwise would—whether because they inflate tire prices or because they remove inexpensive tires from the market. Both should be subject to private enforcement.

Google's reading also fails the test of statutory interpretation. To read the "business or property" language of Section 4 to exempt certain antitrust harms from private suit conflicts with the provision as a whole. Section 4 provides private action for injury suffered "by reason of *anything* forbidden in the antitrust laws."[36] This language cannot be squared with denying compensation for whole categories of harms like loss of quality, variety or innovation that are widely recognized to be cognizable antitrust injuries.[37]

Google ignores a fundamental difference between the kind of harm Dr. Rysman quantifies and non-compensable "personal injuries." Reductions in quality and variety are market injuries; they are

---

[34] Richard J. Gilbert & Hillary Greene, *Merging Innovation into Antitrust Agency Enforcement of the Clayton Act*, 83 Geo. Wash. L. Rev. 1919, 1933—36 (2015).
[35] *See* 7 Areeda & Hovenkamp ¶ 1503(a).
[36] 15 U.S.C § 15 (emphasis added).
[37] Google's reading is inconsistent with the statutory principles that (1) the meaning of words should be construed in light of associated language, and (2) that language interpreted so as to avoid inconsistency and to give meaning to all of the language in the statute.

economic phenomena that, for example, introductory industrial organization textbooks routinely cover.[38] When anticompetitive conduct reduces variety, customers pay "more that the worth" of product.[39] Far from contrasting price with quality or variety, economists use "price" as "a shorthand for the relevant price/quality and price/variety combinations."[40]

The proposed exclusion of core antitrust harms from private damages actions goes well beyond any other limits courts have placed on such suits. Principles of antitrust standing and injury, as well limitations on indirect purchaser actions, ensure that claims are brought by plaintiffs that (1) have suffered an injury "the antitrust laws were intended to prevent,"[41] (2) are, like consumers or competitors, victims of the particular injury best placed to seek redress of the violation,[42] and (3) do not substantially raise the risk of duplicative recovery.[43] Google's proposed "property" limitation asks the court to draw a new kind of distinction between otherwise equally cognizable antitrust harms, sorting them into novel categories of compensable and non-compensable antitrust injuries. Google offers no rationale or precedent to justify such a dramatically new approach to private claims.

### IV. RECOGNIZING ANTITRUST HARM FROM LOSS OF CHOICE, VARIETY, AND INNOVATION IS CRUCIAL IN DIGITAL MARKETS

Drawing a boundary around private enforcement to exclude loss of choice, variety, and innovation would be particularly unwise in complex digital markets. As many experts have noted, innovation is the primary form of competition in the digital economy.[44] It follows that effective antitrust enforcement must protect it. Areeda and Hovenkamp recently explained that, "at least in the long run, technological progress contributes significantly more to consumer welfare than does the

---

[38] *See, e.g.,* Lynne Pepall, et al., Industrial Organization: Contemporary Theory and Empirical Applications, 4th ed., Chap. 7 "Product Variety and Quality under Monopoly" (2008).
[39] *See Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390, 396–97 (1906).
[40] Neil Averitt and Robert Lande, *Using the "Consumer Choice" Approach to Antitrust Law*, 74 Antitrust L.J. 175, 185 n.28 (2007).
[41] *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).
[42] *See, e.g., Associated Gen. Contractors v. California State Council of Carpenters,* 459 U.S. 519, 537–44 (1983).
[43] *Id.*
[44] *See* Tim Wu, *Taking Innovation Seriously: Antitrust Enforcement If Innovation Mattered Most*, 78 Antitrust L.J. 313, 320 (2012).

elimination of noncompetitive prices."[45] A "corollary of [that] proposition" they conclude, "is that restraints on innovation can do greater social harm" than traditional price effects.[46] Other scholars have also reasoned that, in a digital age, "the protection and promotion of innovation should be […] perhaps the paramount goal of antitrust enforcement."[47] Closing the door on the ability of private action to redress innovation harms eliminates a key tool for protecting competition in the modern marketplace.

## CONCLUSION

It is inconsistent with law and logic to exclude Dr. Rysman's merits opinions on the grounds that loss of variety is not a compensable antitrust harm. Such exclusion would weaken private antitrust enforcement's ability to protect innovation and choice, which are among the most significant sources of competition in a modern economy.  Accordingly, Google's request should be denied.

Dated:  May 26, 2023

Respectfully submitted,

By: /s/ Joshua P. Davis

Joshua P. Davis (SBN 193254)
Kathleen Bradish (pro hac vice pending)
American Antitrust Institute
1025 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 304-0195

*Counsel for Proposed Amicus Curiae The American Antitrust Institute*

---

[45] 7 Areeda & Hovenkamp ¶ 407(a).
[46] *Id.*
[47] Tim Wu, 78 Antitrust L.J. at 322.