Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | | |
|---|---|---|
| IN RE GOOGLE PLAY STORE | ) | |
| ANTITRUST LITIGATION | ) | **NO. 21-md-02981-JD** |
| _____ | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Epic Games, Inc. vs. Google LLC, | ) | |
| et al., Case No. 3:20-cv-05671-JD | ) | |
| | ) | |
| In Re Google Play Consumer Antitrust | ) | |
| Litigation, Case No. 3:20-cv-05761-JD | ) | |
| | ) | |
| State of Utah, et al. v. Google LLC, | ) | |
| et al., Case No. 3:21-cv-05227-JD | ) | |
| | ) | |
| Match Group, LLC, et al. vs. Google | ) | |
| LLC, et al., Case No. 3:22-cv-02746-JD | ) | |
| _____ | ) | |

San Francisco, California
Thursday, April 20, 2023


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff Epic Games in C 20-05671 JD:
                         CRAVATH SWAINE AND MOORE LLP
                         Worldwide Plaza
                         825 Eighth Avenue
                         New York, New York 10019
        BY:  **GARY A. BORNSTEIN**
             **ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
               CSR No. 7445, Official United States Reporter

**APPEARANCES**:   (CONTINUED)

For the Consumer Class Plaintiffs in C 20-05761-JD:
                        KAPLAN FOX AND KILSHEIMER LLP
                        850 Third Avenue, 14th Floor
                        New York, New York 10022
        BY:   **HAE SUNG NAM**
              **ATTORNEY AT LAW**

                        BARTLIT BECK LLP
                        1801 Wewatta Street
                        Suite 1200
                        Denver, Colorado 80202
        BY:   **KARMA M. GIULIANELLI**
              **ATTORNEY AT LAW**


For Plaintiff Brian McNamara/In Re Google Play Consumer
Antitrust Litigation, C 20-07361 JD:
                        COTCHETT, PITRE & MCCARTHY LLP
                        San Francisco Airport Office Center
                        840 Malcolm Road
                        Burlingame, California 94010
        BY:   **NANCI E. NISHIMURA**
              **ADAM J. ZAPALA**
              **ATTORNEYS AT LAW**

For the State of Arizona:
                        ARIZONA ATTORNEY GENERAL
                        400 West Congress Street, Suite 215
                        Tucson, Arizona 85701
        BY:   **JAYME L. WEBER**
              **ASSISTANT ATTORNEY GENERAL**


For the State of Florida:
                        OFFICE OF THE ATTORNEY GENERAL
                        STATE OF FLORIDA
                        PL-01 The Capitol
                        Tallahassee, Florida 32399-1050
        BY:   **LEE ISTRAIL**
              **ASSISTANT ATTORNEY GENERAL**


      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

**APPEARANCES:**  (CONTINUED)

For the State of Colorado:
    COLORADO OFFICE OF THE ATTORNEY GENERAL
    1300 Broadway, Seventh Floor
    Denver, Colorado 80203
    BY:  **CARLA J. BAUMEL**
        **ASSISTANT ATTORNEY GENERAL**

For the State of California:
    OFFICE OF THE ATTORNEY GENERAL
    CALIFORNIA DEPARTMENT OF JUSTICE
    455 Golden Gate Avenue, Suite 11000
    San Francisco, California 94102
    BY:  **BRIAN WANG**
        **ASSISTANT ATTORNEY GENERAL**

For the State of New York:
    OFFICE OF THE NEW YORK ATTORNEY GENERAL
    ANTITRUST BUREAU
    120 Broadway
    New York, New York 10271
    BY:  **ELINOR HOFFMANN**
        **CHIEF ATTORNEY GENERAL**

For the State of North Carolina:
    NORTH CAROLINA DEPARTMENT OF JUSTICE
    Old Education Building
    144 West Edenton Street
    Raleigh, North Carolina 27603
    BY:  **SARAH BOYCE**
        **ASSISTANT ATTORNEY GENERAL**

For the State of Oregon:
    OREGON ATTORNEY GENERAL'S OFFICE
    1162 Court Street NE
    Salem, Oregon 97301-4096
    BY:  **TIMOTHY SMITH**
        **ASSISTANT ATTORNEY GENERAL**

For the State of Tennessee:
    TENNESSEE ATTORNEY GENERAL'S OFFICE
    P.O. Box 20207
    Nashville, Tennessee 37202-0207
    BY:  **HAMILTON MILLWEE, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

1   **APPEARANCES:**   (CONTINUED)

2   For the State of Washington:

3                           WASHINGTON STATE ATTORNEY GENERAL OFFICE
                            ANTITRUST DIVISION
                            800 Fifth Avenue, Suite 2000

4                           Seattle, Washington 98104
                       BY:  **BROOKE H. LOVROVICH**

5                            **ASSISTANT ATTORNEY GENERAL**

6   For the State of Utah and the Plaintiff States in
    C 21-05227-JD:

7                           OFFICE OF THE UTAH ATTORNEY GENERAL
                            160 East 300 South, Fifth Floor

8                           Salt Lake City, Utah 84114
                       BY:  **LAUREN M. WEINSTEIN**

9                            **BRENDAN P. GLACKIN**
                             **MELISSA HOLYOAK**

10                           **ASSISTANT ATTORNEYS GENERAL**

11  For Match Group, LLC in C 22-02746-JD:
                            HUESTON HENNIGAN LLP

12                          523 West 6th Street, Suite 400
                            Los Angeles, California 90014

13                     BY:  **JOSEPH A. REITER**
                             **ATTORNEY AT LAW**

14  For Defendants:

15                          MORGAN LEWIS & BOCKIUS LLP
                            One Market Street, 28th Floor

16                          Spear Street Tower
                            San Francisco, California 94105-1596

17                     BY:  **BRIAN C. ROCCA**
                             **MINNA L. NARANJO**

18                           **ATTORNEYS AT LAW**

19
                            MUNGER TOLLES & OLSON LLP

20                          350 South Grand Avenue, 50th Floor
                            Los Angeles, California 90071

21                     BY:  **GLENN D. POMERANTZ**
                             **KURUVILLA J. OLASA**

22                           **ATTORNEYS AT LAW**

23

24          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

25

1    **APPEARANCES:**   (CONTINUED)

2    For Defendants:

3                                MUNGER, TOLLES & OLSON LLP
                                 560 Mission Street, 27th Floor
                                 San Francisco, California 94105

4                    BY:   **JUSTIN P.   RAPHAEL**
                           **KYLE W. MACH**

5                          **ATTORNEYS AT LAW**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Thursday- April 20, 2023**                                    **11:06 a.m.**

**P R O C E E D I N G S**

---o0o---

**THE CLERK:**  Calling Civil 20-5671, Epic Games vs. Google LLC.

Calling Civil 20-5761, In Re Google Play Consumer Antitrust Litigation; Civil 21-5227, State of Utah vs. Google LLC, Multidistrict Litigation 21-2981, In Re Google Play Antitrust Litigation, and Civil 22-2746, Match Group LLC vs. Google LLC.

Counsel?  Someone needs to start stating their appearances.  Let's start with plaintiffs.

**MS. BOYCE:**  Good morning, Your Honor.  My name is Sarah Boyce on behalf of the State of North Carolina.

**MS. GIULIANELLI:**  Good morning.  Karma Giulianelli on behalf of consumers.

**MR. BORNSTEIN:**  Good morning, Your Honor.  Gary Bornstein for Epic Games.

**MR. REITER:**  Good morning, Your Honor.  Joseph Reiter for the Match plaintiffs.

**MR. POMERANTZ:**  Good morning, Your Honor.  Glenn Pomerantz on behalf of Google, and with me are my colleagues Kuruvilla Olasa and Justin Raphael.

**MR. ROCCA:**  Good morning, Your Honor.  Brian Rocca and Minna Naranjo of Morgan Lewis representing defense.

1          **THE COURT:**  Okay.  Who's going to take the lead for

2     the plaintiffs?

3          **MS. BOYCE:**  I am, Your Honor.

4          **THE COURT:**  All right.  And for defendant?

5          **MR. POMERANTZ:**  I will, Your Honor.

6          **THE COURT:**  Okay.  You know, we first started getting

7     together in this case -- and looking back to the

8     minutes, minute order entered on May 14th, 2021 -- it's Docket

9     Number 39 -- I let you all know that because we had a mix of

10    injunctive relief and damages claims, that you all needed, the

11    parties, as I said in the minutes, need to begin discussing the

12    sequencing of the MDL member cases for trial.  Who's going to

13    go first and how are we going to do that?  That was May.

14         Then in July of 2021, I did another minute order, Docket

15    Number 67, where I laid out in substantial, at least conceptual

16    detail what we're going to be doing with the mix of equitable

17    and damages issues, triable by jury, not triable by jury.  And

18    I gave you an organizing principle for your discussions, and

19    that is that we will try the jury cases first for all issues

20    common to the legal and equitable claims under Rule 39 and some

21    other authorities; and then after that, I would take up the

22    equitable claims once the jury did its work.

23         So here we are in 2023, April.  I don't see any indication

24    that you all have gotten together and constructively planned a

25    sequencing of the trials.  What I see happening is people are

1  building silos in opposition to each other and hardening them

2  and not talking.

3       Now, it should be plain as day that there is no

4  Seventh Amendment issue, as Google raised it.  I have said from

5  Day One, there will not be multiple jury trials.  It's going to

6  be one and done for everything.

7       So I don't know why, Mr. Pomerantz, you're raising some

8  Seventh Amendment concerns about multiple juries.  It has never

9  been on the table.

10      We are going to present this in a way that a jury, under

11 the Seventh Amendment, which is our default preference dispute

12 resolution mechanism, as I have emphasized many times in this

13 case, will go first, as Rule 39 provides.

14      Now, here's what I think we ought to do.  Someone is going

15 to go to trial in November.  That's just happening.  Okay?  You

16 all are going to figure out what's going to be tried in

17 November and who are the parties going to be.

18      There are people -- there are parties in this room who

19 have nothing to do with class action petitions or anything

20 else.  Match, for example; state attorney generals --

21         **MS. BOYCE:**  Yes, Your Honor.

22         **THE COURT:**  -- Epic.

23      In fact, it's probably the majority of people.

24      So trial is happening, regardless of what

25 Rule 23(f) proceedings may be going on because it's irrelevant

1    to these trials.

2        Now, here's what we're going to do.  Who is going to be

3    the lead trial lawyer?

4        Is it you, Mr. Pomerantz?  You're going to be the lead

5    trial lawyer for Google?

6            **MR. POMERANTZ:**  Yes, Your Honor.

7            **THE COURT:**  Who's going to be the lead trial lawyer

8    for Epic?

9            **MR. BORNSTEIN:**  That's me, Your Honor.

10           **THE COURT:**  All right.  Who's going to be the lead

11   trial lawyer for the AGs?

12           **MS. BOYCE:**  Brendan Glackin.

13           **MR. GLACKIN:**  Me, Your Honor.

14           **THE COURT:**  And who's going to be the lead trial

15   lawyer for Match?

16           **MR. REITER:**  Not myself, Your Honor.  It'll be Doug

17   Dixon.

18           **THE COURT:**  Who?

19           **MR. REITER:**  Doug --

20           **THE COURT:**  I can't hear you.  I wasn't saying that

21   because I -- I can't hear you.

22           **MR. REITER:**  Apologies, Your Honor.  It'll be Douglas

23   Dixon.

24           **THE COURT:**  From what firm?

25           **MR. REITER:**  Houston Hennigan.

1           **THE COURT:**  Which one?

2           **MR. REITER:**  Houston Hennigan.

3           **THE COURT:**  Houston Hennigan.

4      Okay.  And who's going to be the lead lawyer for the

5  consumer class?

6           **MS. GIULIANELLI:**  Karma Giulianelli and Hae Sung Nam.

7           **THE COURT:**  Both of you.

8      All right.  Here's what you're going to do.  You, all of

9  you who just appeared as lead trial lawyers are going to get

10 together in person -- in person; same room; no video hookups --

11 in the next two weeks.  You pick the location.  Doesn't matter

12 to me where.  You all pick a location.  And you're going to

13 hash out the schedule.  Okay?

14     It's happening.  You work it out.  You know the issues at

15 a much greater level of detail than I do.  You're all capable.

16 I know that from your pleadings.  You all can handle this.

17 You're all experienced.  You set the proposal.  All right?

18     So you'll file that a week after you meet.  You're going

19 to meet within two weeks.  One week after that, you're going to

20 file it.

21     I am going to take a jaundiced and dim view of dueling

22 propositions.  I'm expecting agreement.  This is -- I'm going

23 to do it myself, which says, there is an area where agreement

24 can be reached.  I'm not going to issue an order that is not

25 well grounded in fact and law, as you know.

1          You can do the same thing.  So get it done.  I want all of

2     the Rule 38, Rule 39 issues parsed out and allocated in some

3     kind of a decision tree, starting with the jury issues first,

4     as the law provides, cascading down to the equitable issues.

5          Now, I'm leaving it up to your discretion.  Run with it.

6     Make it happen.  Do what you need to do.  I'll just give you a

7     couple of thoughts.  I've already given you my organizing

8     principle:  Jury first.

9          Let's say for Epic, for example, there are common issues

10    of fact and law.  You should appear at the trial.  I know you

11    don't have claims that are subject to damages; but in any

12    event, you are going to have claims that a jury should decide.

13         So work all these things out.  Okay?  Now, that's your

14    task.

15         So in effect, the stay motion is denied because -- it's

16    denied in principle because we had to work all this out.  Okay?

17         Now, for the consumers, look, I'll just -- you all can sit

18    down.

19              **MR. GLACKIN:**  Thank you, Your Honor.

20              **THE COURT:**  Here's the thing.  I've actually tried a

21    class action as a lawyer, and I have presided over

22    class actions here.  You know what the difference is?  One jury

23    instruction.  There's literally one jury instruction you give

24    in a class action that you do not give in a named plaintiff

25    case.

1        And that one jury instruction, as you may know, just says:

2   This is a class action, and not everybody is required to be

3   here.  It really just explains to the jury -- if you're going

4   to come in and say, "Hello, I represent a class of a thousand

5   individuals," it just kind of tells the jury "They're not

6   expected to be here, so don't worry about it."

7        That's it.  The proof is the same.  The experts are the

8   same.  Of course, the damages are different because then you're

9   going to argue for different damages.  All right?  That's not a

10  negligible fact.  I understand that.

11       But 95 percent of a named individual plaintiff versus a

12  class trial, substantively and procedurally, there's no

13  difference.

14       So you two talk about:  Why do we have to wait?  Okay?  I

15  mean, this is a class certification thing.  So if you wanted to

16  go ahead with five named individuals, why not?  I mean, you can

17  do that and not worry about the 23(f).  And then if something

18  happens later, we'll do something.  I mean, who knows?

19       Worse that happens is for some reason the certification

20  decision is changed; you have five people.  And it may not be a

21  situation the defendant ultimately wants.  I've seen this

22  happen in other cases, where you're not going to do it by

23  class; it's going to be death by a thousand cuts.  You've got

24  five groups of five and ten people coming over and over and

25  over again with the same claims.  Not particularly efficient,

1    but sometimes you have to do it that way.

2          If the certification decision stands -- I might change it

3    myself.  I mean, who knows?  Proof at trial can often -- not

4    often, but can sometimes raise decertification questions.  Then

5    you just sort of upscale the award, and either you settle or

6    you do something else.

7          So it's all solvable, but you need to do it.  That's what

8    I've been asking for since 2021.

9          How does that sound, plaintiffs?

10          **MS. GIULIANELLI:**  Terrific.  Sounds reasonable, and we

11   will do our best, Your Honor.

12          **THE COURT:**  Everybody else okay with that?

13          **MR. BORNSTEIN:**  Yes, Your Honor.

14          **THE COURT:**  Okay.  AGs?

15          **MS. BOYCE:**  Yes.

16          **THE COURT:**  All right.  Defendants?

17          **MR. POMERANTZ:**  Thank you, Your Honor.

18      I have two requests.  First --

19          **THE COURT:**  Yes.

20          **MR. POMERANTZ:**  -- can we meet by video?

21      I know these people well.  We talk often.  Ms. Giulianelli

22   lives in Colorado.  Mr. Bornstein lives in New York.  I would

23   ask, I think on behalf of all of us, if we can do it by video.

24          **THE COURT:**  Well, look, I understand.  I know

25   everybody -- it's a big case, and everybody's literally all

1   across the United States.  I get that.  But there is a certain

2   productivity that I think exists when you meet in person.

3   I think the video screens can become an impediment to

4   communication because you're not in the room.  So I want you to

5   do it in person.

6           **MR. POMERANTZ:**  Your Honor, may I then -- I'll see if

7   this works with everybody.

8       We'll meet immediately after here to at least start our

9   discussion.  I will obviously need to talk to my client.  I'm

10  sure they need to think about things as well.

11      But if we talk today in person, since we're all here, and

12  then continue the discussion thereafter --

13          **THE COURT:**  No.  I want a summit.  I need a summit.

14  Look, if I hadn't been asking for two years, if I just sort of

15  had this issue, I probably might have been a little bit more

16  receptive.  But I feel like I'm barking in the wind a little

17  bit, and it's time for you all now to get this done.

18          **MR. POMERANTZ:**  And I would say, on behalf of all of

19  us, again, we actually have been talking about this issue for a

20  good bit.  And then the Ninth Circuit created a new situation

21  with granting the 23(f) petition.

22      But I don't want you to think that we have ignored your

23  instructions.  I know I have had numerous conversations with

24  several people on the other side about the very topics you're

25  raising now.

1    But we will -- we'll meet in person.  We'll have a summit.

2          **THE COURT:**  And it's a development that doesn't impact

3    most of the case.  So just -- we just have to get this done.

4    All right?

5          **MR. POMERANTZ:**  And --

6          **THE COURT:**  But no matter what, you definitely and

7    one, two, or three of the people at the other table are going

8    to be in trial in November.  Okay?  That's just happening.  And

9    it is completely divorced from and independent of quibbling

10   over class certification.

11         **MR. POMERANTZ:**  And, Your Honor, on that point, I

12   just -- I will not argue it now.  I was prepared to argue it,

13   but I won't.

14         But the issues up on appeal affect all of the parties over

15   there, not just one, because they go to the core issue of

16   whether the consumers, the consumers on one side of the market

17   were harmed.  And that's part of the *AmEx* two-sided market

18   balancing.  It's part of injury-in-fact.  And it is not at

19   all -- and antitrust injury.  And it's an issue that affects

20   every one of them.

21         **THE COURT:**  That may be, but that is, in my view,

22   completely improper to address in a Rule 23 context.  Those are

23   substantive issues that have nothing to do with the simple

24   question posed by Rule 23:  Does it make sense for this case to

25   proceed by individual plaintiffs, or does it make sense for

1   people to be grouped together?

2       So you have an opening.  You want to blow that into some

3   massive tunnel that's going to swallow the case.  That's not

4   something I -- I just think that would be a completely

5   erroneous application of the Rule 23 standards.

6       So you can raise that at the end of the case if it doesn't

7   go your way.  And who knows?  It might.  But if it doesn't, you

8   can certainly argue that on appeal, but not on an interim basis

9   for Rule 23.  In my view, that would be both improvident and

10  inconsistent with the federal rules.

11      All right.  Now, what else can I do to help you make

12  this -- have a productive discussion?

13          **MR. POMERANTZ:**  Your Honor, we have a couple --

14          **MR. REITER:**  Your Honor?

15      **THE COURT:**  Oh, yes.  I'm sorry.  I interrupted Mr. --

16      **MR. REITER:**  If I may, just one minor request.

17      **THE COURT:**  Sure.

18      **MR. REITER:**  I mentioned that Douglas Dixon will be

19  lead trial counsel for the Match plaintiffs.  He's starting a

20  jury trial next week.  Happy to do the in-person summit, but

21  I'd ask permission that I can handle that on behalf of the

22  Match plaintiffs.

23          **THE COURT:**  Are you going to be the second at the

24  trial?

25          **MR. REITER:**  I will be second in command, yes,

1   Your Honor.

2          **THE COURT:**  Does anybody have any problem with that?

3       Now, look, here's the deal, though:  You can't call Doug.

4   You make the decision in the room.  You understand that?

5          **MR. REITER:**  Understood, Your Honor

6          **THE COURT:**  There'll be no "I have to check with

7   Mr. Dixon" or anything else.

8          **MR. REITER:**  Understood.

9          **MR. POMERANTZ:**  Your Honor, a couple of other

10  issues --

11         **THE COURT:**  Yes.

12         **MR. POMERANTZ:**  -- unrelated to the issues here.

13         **THE COURT:**  Yes.

14         **MR. POMERANTZ:**  So if anybody has any issues related

15  to the stay issue on the order, I -- but otherwise I would

16  turn -- I'd ask Mr. Mach to address one issue that is --

17         **THE COURT:**  Before we get there, Mr. Pomerantz, what

18  else can I do to help you -- help everybody make this a

19  successful trial conference?  It's a trial summit.  It's going

20  to be a trial summit.

21         **MR. POMERANTZ:**  I think your guidance was clear.  So I

22  will caucus with my team; they'll caucus; and we'll meet.

23         **THE COURT:**  All right.  Okay.

24      Are you okay, plaintiffs?

25         **MS. GIULIANELLI:**  I think that's right.

1              **THE COURT:**  Okay.  All right.  What else do we have?

2              **MR. MACH:**  Good morning, Your Honor.  Kyle Mach for

3      Google.

4         Google has concerns that the plaintiffs have not complied

5      with the Court's order to trim down the expert disclosures.

6         Your Honor may recall that you previously ordered

7      plaintiffs to coordinate on their experts and designate one

8      expert on each common issue.  Then, subsequently, Your Honor

9      ordered the plaintiffs to issue a revised expert list on

10     April 7th.

11        In our view, the plaintiffs have not complied with that.

12     They served an expert list.  The expert list is not revised.

13     They have not cut any of the experts from their expert

14     disclosures.  And when you look in the detail of the expert

15     disclosures -- pardon me -- that they did issue, there's very

16     substantial overlap where the --

17             **THE COURT:**  Let me just jump in.  I've never heard --

18     did you all file something about this?

19             **MR. BORNSTEIN:**  We did not.  I was about to say,

20     Your Honor, we've been meeting and conferring about this as

21     recently as Monday.

22             **THE COURT:**  All right.

23             **MR. BORNSTEIN:**  We had a communication last night

24     where we were told this might come up.  It's why I'm prepared

25     to address it.

1      But my main answer, Your Honor, is we're still meeting and

2  conferring, and there's nothing in front of the Court, and this

3  is complicated.

4           **THE COURT:**  It is.  I'm just kind of -- so why don't

5  you finish that process.  And if you can't work it out, you can

6  come back.  That's perfectly fine.

7           **MR. MACH:**  That makes sense.  Thank you, Your Honor.

8           **THE COURT:**  I don't remember all this stuff happening.

9  So you all do what you need to do.

10     Okay.  How are things going otherwise?

11     Oh, yes.  Go ahead.

12          **MR. POMERANTZ:**  We have one other -- again --

13          **THE COURT:**  Oh, okay.  Sure.

14          **MR. POMERANTZ:**  -- I think it's a housekeeping matter

15  that --

16          **THE COURT:**  Yes.  All right.

17          **MR. POMERANTZ:**  I think it's just housekeeping.

18          **MS. NARANJO:**  Hi, Your Honor.  We just have one

19  housekeeping matter.

20     We filed a joint stipulation.  All parties agreed on a

21  sealing process.

22          **THE COURT:**  Can you just pull that a little closer to

23  you?  Yeah, okay.

24          **MS. NARANJA:**  Just this past Monday, all parties filed

25  a joint stipulation related to omnibus sealing procedures for

1    the *Daubert* and dispositive motions.

2            **THE COURT:**  Oh, yes.  Those are fine.

3            **MS. NARANJA:**  Okay.  Great.  Those are due today; so

4    we just wanted to make sure.

5            **THE COURT:**  Right?  Those are fine?

6        (Discussion off the record between the law clerk and

7    the Court.)

8            **THE COURT:**  Yeah, those are fine.

9            **MS. NARANJA:**  Great.  Thank you.

10           **THE COURT:**  Okay.  Good.

11          **MR. BORNSTEIN:**  Nothing else from plaintiffs,

12   Your Honor.

13       Ooh, I went too close.

14           **THE COURT:**  When is the -- just remind me when the

15   discovery cutoff is.

16          **MR. BORNSTEIN:**  Well --

17           **THE COURT:**  Is it already done?  It's over?

18          **MR. POMERANTZ:**  It's done.  And there's a few things

19   that are lingering that we're --

20           **THE COURT:**  That's fine.  You all can do that.

21       Okay.  What about the expert stuff?  Have you --

22          **MR. POMERANTZ:**  The expert discovery will, I think,

23   conclude next week.

24           **MR. BORNSTEIN:**  We have one expert left to be deposed

25   on Wednesday, just as a result of some personal scheduling

1    issues that arose with that individual.

2          **THE COURT:**  Okay.

3          **MR. POMERANTZ:**  And, Your Honor, just so Your Honor is

4    aware, so we will be filing a partial summary judgment motion

5    today.  They may be filing something too.  That briefing is all

6    set.  It'll end in June.

7          **THE COURT:**  Okay.

8          **MR. POMERANTZ:**  But then Your Honor will have to look

9    at what you have.  And we need to discuss a hot tub.  You know,

10   do you want one and, if so, when?  Which experts?  And a date

11   for the oral argument on the motions that were filed, which

12   have been left TBD in your order.

13       So sometime after the --

14         **THE COURT:**  I mean, you know my views on summary

15   judgment.  It has its place.

16         **MR. POMERANTZ:**  We're not seeking -- we're targeted.

17   We're going to be targeted, Your Honor.

18       You have said, I think, in a prior order:  You can fillet

19   a case.

20         **THE COURT:**  Okay.

21         **MR. POMERANTZ:**  But we are not seeking summary

22   judgment --

23         **THE COURT:**  Well, Rule 56 says that.

24         **MR. POMERANTZ:**  Yeah.  Okay.

25         **THE COURT:**  I'm merely a conduit for the rules,

```
 1   Mr. Pomerantz.

 2              MR. POMERANTZ:  I'm citing you in this courtroom.

 3              THE COURT:  So can you just tell me?  Are you filing

 4   it today?

 5              MR. POMERANTZ:  Yeah.

 6              THE COURT:  What's the legal issue that you get --

 7              MR. POMERANTZ:  There's a handful of them, and I'm

 8   probably not going to remember all of them.  But it has to do

 9   with, you know, a duty to deal under Trinko.  Do we have to

10   offer, you know, competing app stores in our own app store?

11   That's a Trinko case that we have a duty to deal with our

12   competitors.

13        There is an issue about tying.  And you can just pretty

14   much read what Judge Gonzales --

15              THE COURT:  Tying?

16              MR. POMERANTZ:  Tying.  The tying claim they have in

17   this case.

18        You can read Judge Gonzalez Rogers' order, and you can see

19   the basis of our argument there.  She basically got rid of the

20   tying claim in the Apple -- in Epic's case against Apple.

21        And there's, I think, a couple of other arguments that

22   we're making.

23        But what we have done is -- and you'll see it, probably,

24   in the introduction to our motion.  We're not seeking summary

25   judgment on the entirety of the case.  But we do think there's
```

1   pieces of the case that should not go to a jury.

2          **THE COURT:**  Well, let me -- look, I mean, just on the

3   plaintiff side, be reasonable and rational.  If there's

4   something that you just don't want to do or think is an uphill

5   battle and not the main game, think about it.  Okay?  You don't

6   necessarily have to -- you can work something out if you want;

7   but just don't -- I mean, you don't have to plant your flag on

8   every argument.  All right?  There is a lot in the complaints.

9   There are clearly some main claims and some less-pointed

10  claims.  So when it comes in, take a look at it.  If there's

11  something you want to do about that, that would be good.

12         **MR. BORNSTEIN:**  We will do, Your Honor.

13         **THE COURT:**  If you don't want to, that's fine.

14  But, yeah.  Okay.

15  Okay.  Great.  Thanks a lot.

16         **MR. POMERANTZ:**  Thank you, Your Honor.

17         **MR. BORNSTEIN:**  Thank you, Your Honor

18         **THE CLERK:**  All rise.  Court is in recess.

19                (Recess taken at 11:26 a.m.)

20                     ---o0o---

21

22

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Wednesday, April 26, 2023




_____

Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter