| | |
|---|---|
| Brian C. Rocca, S.B. #221576<br>brian.rocca@morganlewis.com<br>Sujal J. Shah, S.B. #215230<br>sujal.shah@morganlewis.com<br>Michelle Park Chiu, S.B. #248421<br>michelle.chiu@morganlewis.com<br>Minna Lo Naranjo, S.B. #259005<br>minna.naranjo@morganlewis.com<br>Rishi P. Satia, S.B. #301958<br>rishi.satia@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: (415) 442-1000<br><br>Richard S. Taffet, *pro hac vice*<br>richard.taffet@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>101 Park Avenue New York, NY 10178<br>Telephone: (212) 309-6000 | Glenn D. Pomerantz, S.B. #112503<br>glenn.pomerantz@mto.com<br>Kuruvilla Olasa, S.B. #281509<br>kuruvilla.olasa@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 683-9100<br><br>Kyle W. Mach, S.B. #282090<br>kyle.mach@mto.com<br>Justin P. Raphael, S.B. #292380<br>justin.raphael@mto.com<br>Emily C. Curran-Huberty, S.B. #293065<br>emily.curran-huberty@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>560 Mission Street, Twenty Seventh Floor<br>San Francisco, California 94105<br>Telephone: (415) 512-4000<br><br>Jonathan I. Kravis, *pro hac vice*<br>jonathan.kravis@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>601 Massachusetts Avenue NW, Suite 500E<br>Washington, D.C. 20001<br>Telephone: (202) 220-1100<br><br>*Counsel for Defendants Google LLC, et al.* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER**<br><br>**[PUBLIC-REDACTED VERSION]**<br><br>Judge:    Hon. James Donato<br>Date:     August 3, 2023<br>Time:     10:00 a.m. Pacific Time<br>Courtroom: 11, 19th Floor, 450 Golden Gate Ave, San Francisco, California, 94102 |

# INTRODUCTION

Plaintiffs' opposition confirms that Dr. Singer's opinions regarding injury and damages cry out for this Court to exercise its obligation to act as a gatekeeper and exclude them.

Dr. Singer's pass-through formula purports to estimate the prices that developers would have charged if Google charged lower service fees. For decades, the Supreme Court and other courts have recognized the economic complexities associated with estimating when firms pass through higher costs by raising prices. Dr. Singer has admitted both the economic complexities of estimating developers' pass-through—and his failure to account for them. He concedes that a logit model assumes proportional substitution, but admits that the products he modeled are not substitutes. He agrees that focal point pricing is important, but cannot point to any analysis accounting for the ▇ of transactions at prices ending in "99." He testified that the extent of pass-through depends on developers' marginal costs, but admits he has not measured them.

Plaintiffs cannot run from Dr. Singer's testimony, so they attempt to hide behind jargon and denial. Unable to dispute that apps in each Google Play store category are not proportional substitutes as logit requires, Plaintiffs simply relabel the categories as "economically reasonable groupings of consumer tastes." Opp. at 8. But Plaintiffs never explain what these words mean. Faced with Dr. Singer's concession that focal point pricing is "important" and their own expert's opinion that "some firms would not change price in response to a change in the commission rate," Plaintiffs only offer a footnote accusing Google of "selectively quot[ing]" and "mischaracteriz[ing]" testimony. *Id.* at 10 n.8. The transcripts speak for themselves. Lacking any response to Dr. Singer's concession that it is "generally accepted" that pass-through is proportional to developers' other marginal costs, Plaintiffs argue that these costs "drop out" of his pass-through formula. *Id.* at 11. In other words, Plaintiffs' argue that Dr. Singer's formula is reliable *because* it does not consider what "generally accepted" economics indicates must be considered. That flips the *Daubert* standard on its head.

Plaintiffs' opposition also fails to save their alternative damages theory that Google would have offered users more valuable Play Points. Plaintiffs do not dispute that most users do not sign up for Play Points in the real world. And Dr. Singer testified that his Play Points model cannot

determine whether an individual user would have signed up for Play Points and that he has not done any analysis of how valuable Play Points would have to be for users to change their behavior. Plaintiffs' assertion without evidence that it is still a "safe inference" that all users would have signed up for Play Points has no place in a jury trial.[1]  Opp. at 14.

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE OPINIONS BASED ON DR. SINGER'S FORMULA FOR PASS-THROUGH INJURY AND DAMAGES.

Dr. Singer's own testimony shows that his pass-through formula ignores what he concedes are standard economic principles.

#### A. Plaintiffs Cannot Show That a Key Assumption of a Logit Model Holds.

Dr. Singer derived his pass-through formula from a logit model of demand. The logit model makes very specific assumptions about the relationship between prices, demand, and competition. Dr. Singer's own testimony shows that these assumptions do not hold as to how developers set prices for the products he has studied. This undermines his entire pass-through formula: without a reliable foundation in how developers would set prices, Dr. Singer's formula cannot reliably estimate the prices that developers would have charged without Google's conduct.

Plaintiffs do not dispute that a logit model depends on the irrelevance of independent alternatives, or IIA, property: the products whose demand is being studied must be substitutes in proportion to their shares. Dr. Singer repeatedly testified to this feature of logit models and cited literature confirming it. Plaintiffs also do not argue that apps in each category in the Google Play store are substitutes in proportion to their shares of the category. Dr. Singer has testified that this is not true. MDL Dkt. No. 487-8 ("Ex. 7, Singer Dep.") at 158:14-16 ("Q. Is it your opinion that all apps in each Google Play app category are substitutes? A. No."); MDL Dkt. No. 487-6 ("Ex. 5, Tr. of Hr'g, July 19, 2022") at 116:13-16 ("And is it your opinion in this case that all apps in every Google Play category are substitutes in perfect proportion to their share? DR. SINGER: Not in

---

[1] On May 12, 2023, Plaintiffs served a supplemental report of Dr. Singer in which, for the first time, he calculated damages for class representatives and other individual plaintiffs. Google reserves all rights with respect to this supplemental report, including as to this *Daubert* motion.

perfect proportion."). Plaintiffs confirm this with their strained suggestion that Quickbooks and Thumbtack are "substitutes" because a user could find an accountant through Thumbtack, "which a user could employ rather than buying QuickBooks," Opp. at 8. The Yellow Pages is not a substitute for a hospital because one can use it to find a doctor.

In short, three undisputed facts require exclusion of Dr. Singer's formula: there is no dispute that the formula is based on logit demand; there is no dispute that proportional substitution is a requirement of a logit demand model; and there is no dispute that this proportional substitution does not exist here. Excluding Dr. Singer's model on that basis makes sense: if each app is not a substitute in proportion to its share of a category, that share cannot be used to predict prices.

Plaintiffs' counterarguments fail. *First*, Plaintiffs argue that Dr. Singer's regressions "confirm logit's fit" and "that logit describes demand within each app category well." Opp. at 6-7. But Dr. Singer could not cite any economic literature that goodness of fit is a proper way to test for proportional substitution, Ex. 7, Singer Dep. at 105:8-106:23, and Plaintiffs do not cite any such literature in their opposition. Plaintiffs therefore carefully avoid actually arguing that Dr. Singer's regressions demonstrate proportional substitution. They instead point to Dr. Singer's statement that "goodness of fit will tell you if the Logit is . . . the relevant way to describe preferences in substitution patterns here." Opp. at 7. But that is bald assertion. Plaintiffs must *show* that Dr. Singer's opinion about the "relevant way" to test logit is supported by economic literature. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144, 146 (1997) (opinion based only on "*ipse dixit* of the expert" not reliable). Plaintiffs cite none.

Plaintiffs get nowhere by arguing that Dr. Singer's regressions show "▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ relationship between price and share." Opp. at 6. Their own expert, Professor Rysman, testified that this does not indicate that logit is appropriate. MDL Dkt. No. 487-4 ("Ex. 3, Rysman Dep.") at 68:21-69:2. Plaintiffs' only response is that Dr. Rysman "had not read Dr. Singer's report." Opp. at 7 n.5. Plaintiffs seem to be asking the Court to disregard their own economic expert's sworn testimony about principles of economics because that opinion was unvarnished. Plaintiffs do not explain why such an opinion is not reliable.

*Second*, Plaintiffs argue that "[s]ubstantial record evidence [] supports that Google's app

-3-
REPLY ISO MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

categories meaningfully organize substitution." Opp. at 8.  Plaintiffs do not explain what this means or why it is relevant.  Notably, they do not argue that the record evidence they cite actually shows proportional substitution—and for good reason.  A note on the Help page for the Google Play store that "[c]ategories and tags help users to search for and discover the most relevant Apps," *id.*, says nothing about proportional substitution among apps within a category or whether an app's share of its category reliably predicts the developer's price.  A grocery store has signs that tell customers what products are in each aisle, but that does not mean that every product in each aisle is a substitute for every other product.  If chips, cereal, and sodas are in Aisle 5, asking what percentage of sales from that aisle are for Cheerios is not going to be informative about their price.  Plaintiffs also do not even try to explain how evidence that Google "uses the ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌" *id.*, shows proportional substitution or makes using the categories a reliable way to assess how developers set prices.

      The Court previously found it "worth noting" that Professor Daniel McFadden used app categories in a damages model the Court excluded in the parallel litigation against Apple.  *In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at *11 (N.D. Cal. Nov. 28, 2022).  Plaintiffs now concede that Dr. McFadden's report is irrelevant because it has nothing to do with logit demand.  Opp. at 6 n.4.  Plaintiffs do not explain why an economist who won a Nobel Prize in part for work on logit did not use logit to estimate pass-through as Dr. Singer did.

      *Third*, Plaintiffs argue that, even if "proportional substitution is not strictly satisfied," Dr. Singer's "model provides a reasonable estimation of competition within the category" and Google Play's "categories represent economically reasonable groupings of consumer tastes for different varieties of Apps."  Opp. at 8.  But Plaintiffs cite no evidence for that bare assertion.  Plaintiffs must *show* that Dr. Singer's use of logit with Google Play's categories is reasonable by *showing* that substitution of apps within a category is sufficiently proportional to make logit reliable.  *See Joiner*, 522 U.S. at 144.  Dr. Singer did not test that issue using any method recognized by a single piece of economic literature.  It does not matter whether "logit is widely used to estimate pass-through in a variety of contexts."  Opp. at 9.  Plaintiffs have the burden to show that using logit is reliable *in this context*.  Plaintiffs cannot meet that burden where their own expert admits that a

basic feature of the logit demand model he used does not hold in the circumstances of this case.

### B. Dr. Singer's Formula Does Not Account for Focal Point Pricing.

Dr. Singer's failure to account for focal point pricing also renders his pass-through model unreliable. Plaintiffs' own expert, Dr. Rysman, testified that "as a matter of economic principles," "[i]f focal point pricing is important," then "some firms would not change price in response to a change in the commission rate." Ex. 3, Rysman Dep. at 62:16-23. Those economic principles apply here because, as Dr. Singer conceded, "focal point pricing is an important consideration." Ex. 7, Singer Dep. at 202:5-7. Plaintiffs protest in a footnote that Google "takes that exchange out of context," Opp. at 10 n.8, but tellingly they do not explain how. Dr. Singer's testimony is clear:

> Q. I guess what I'm asking is, is it your opinion that focal point pricing doesn't explain any developers' pricing in the actual world?
>
> A. No, I think that's too harsh. I think that focal point pricing is an important consideration here.

Ex. 7, Singer Dep. at 202:2-7. Where focal point pricing is important, courts in this District have excluded expert opinions in antitrust cases for failing to account for it in estimating pass-through. Mot. at 10–11 (citing *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *8 (N.D. Cal. Mar. 29, 2022); *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 1156797, at *3-5 (N.D. Cal. Mar. 5, 2018); *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 324-25 (N.D. Cal. 2014)).

Plaintiffs fail to distinguish these cases. *First*, they argue "there is no 'overwhelming evidence'" that "'developers would choose to price their apps at focal points ending in 99 cents.'" Opp. at 10 (citation omitted). Wrong. It is undisputed that "from August 2016 to July 3, 2021, ■ of U.S. consumers' app transactions were set such that the retail prices ended in '99.'" *See* MDL Dkt. No. 489-3 ("Ex. 2, Leonard Rep.") ¶ 32 n.7. *Second*, Plaintiffs claim Dr. Singer "has empirically" accounted for focal point pricing. Opp. at 10. Wrong again. Dr. Singer only analyzed prices "[u]sing 10-cent focal point intervals," *id.*, *i.e.*, prices that end in "9." That ignores the ■ of transactions at prices ending in "99." Ex. 2, Leonard Rep. ¶ 32 n.7. Because Dr. Singer has done nothing to account for that focal point pricing, his formula is unreliable.

### C. Dr. Singer's Formula Does Not Account for Developers' Costs.

Dr. Singer's pass-through formula is also unreliable because it does not account for

developers' marginal costs other than service fees. Plaintiffs concede that Dr. Singer ignored these marginal costs, noting that they "drop out of the equation" and that it would be "impossible" to determine each developer's marginal costs. Opp. at 11 & n.9. Thus, the only question is whether a reliable measure of pass-through must account for developers' marginal costs other than Google's service fees. If the answer is yes, then Dr. Singer's formula is not reliable because he has not measured these other marginal costs. Dr. Singer himself answered the question "Yes":

> Q. Okay. And so one input into the generally accepted economic model of how the profit-maximizing developer would set pri --prices is the marginal costs other than the service fee.
>
> A. For short-run profit maximization, the answer is, yes, that this model, at this high level of ab -- of abstraction, is a function of the marginal cost.

Ex. 7, Singer Dep. at 108:17-25. Dr. Singer's pass-through formula cannot ignore developers' other marginal costs when he concedes that the extent of their pass-through depends on them.

Plaintiffs' response that this testimony "concerns a separate equation" from Dr. Singer's pass-through formula, Opp. at 11, misses the point. Dr. Singer's reports include an economic expression for how a profit-maximizing firm would set prices when a cost that is the percentage of the price (an *ad valorem* cost) changes. MDL Dkt. No. 489-2 ("Ex. 1, Singer Rep.") ¶ 337. In that expression, prices are proportional to developers' other marginal costs. Dr. Singer testified that this relationship is "generally accepted in economics," and when asked whether it reflected "the correct economic way to model the relationship between the developer's price and the marginal cost in general," Dr. Singer agreed that this was "the [right] way to think about it." Ex. 7, Singer Dep. at 107:8-15. But Dr. Singer's pass-through formula ignores developers' other marginal costs. As such, Dr. Singer has departed from what he concedes are standard economic principles. Opinions based on his pass-through formula therefore must be excluded.

D.   **Dr. Singer's Formula Does Not Account for Available Data.**

Finally, Dr. Singer's pass-through formula is unreliable because it guarantees pass-through rather than attempting to measure it using actual data regarding whether pass-through happened. Plaintiffs do not dispute that Dr. Singer did not use Google transactional data to conduct any analysis of whether developers reduced their prices when Google reduced service fees. Nor do

Plaintiffs dispute that Dr. Singer's formula will always predict pass-through because no app has 100% share of its category. The Court does not have to go further.

Plaintiffs' suggestion that Google's expert Dr. Leonard "has employed similar methods to Dr. Singer's work" is wrong. Opp. at 12. In the article Plaintiffs cite, Dr. Leonard did *not* assert that it was proper to ignore data regarding actual pass-through as Dr. Singer does. Rather, Dr. Leonard noted that one specific empirical study of pass-through implied a demand curve that was unlikely to hold in the real world. Dr. Leonard's point is directly applicable here: actual data on pass-through shows that the logit demand curve that Dr. Singer has used does not capture reality.[2]

Plaintiffs argue that Dr. Singer showed "that developers pass through *ad valorem* taxes," which they say are "similar to" Google's service fees. Opp. at 12. Not so. Dr. Singer's regression measures the relationship between sales taxes and after-tax prices and finds that when sales taxes increase, prices including tax also increase, Ex. 1, Singer Rep. ¶¶ 367-368. That truism says nothing about whether developers would have charged lower prices if Google reduced service fees, particularly because developers cannot offer different prices in different states depending on tax rates—which makes the analogy useless. Ex. 2, Leonard Rep. ¶¶ 81-82.

Plaintiffs also fail to distinguish *Sidibe v. Sutter Health*, 333 F.R.D. 463 (N.D. Cal. 2019). In that case, the plaintiffs' expert "assumed" that "the method by which health plans pass on their costs through to their customers' premiums" was "formulaic" and "then developed a 'simple' regression-analysis model to try to support that assumption." *Id.* at 497. Similarly, here, Dr. Singer assumed that demand for app transactions fit a logit form and then used a regression to test that fit. In *Sibide*, the court found that the plaintiffs' expert had "no methodology for taking health-plan competition into account in her original regression-analysis model, undermining her model's reliability." *Id.* Here, too, Dr. Singer has no methodology to account for the extent to which apps in a given category in the Google Play store compete or are substitutes.

Plaintiffs should not be permitted to ask a jury to award damages based on their expert's

---

[2] Indeed, in the case discussed in the article, the court rejected testimony that "projected a pass through rate" in favor of real-world data showing what pass-through had been "historically." *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1090 (D.D.C. 1997).

promises that his model is "good enough." Dr. Singer has ignored the data because they confirm his admitted failure to consider multiple, undisputedly important economic factors in pass-through. Those failures make his pass-through formula unreliable and inadmissible.

## II. DR. SINGER'S SUBSIDY MODELS ARE UNRELIABLE FOR PROVING INJURY OR DAMAGES.

As a fallback, Plaintiffs put forward two types of injury damages models—each with multiple versions—premised on the theory that Google would have offered users more valuable Play Points subsidies. Plaintiffs' opposition confirms that both of these models are inadmissible.

### A. Dr. Singer's Subsidy Models Cannot Reliably Measure Individual Injury or Damages Because They Assume Users Would Have Signed Up for Play Points.

As an initial matter, Consumer Plaintiffs cannot present Dr. Singer's subsidy models at trial because the Court has not conducted a "rigorous analysis" of whether those models can reliably estimate injury for millions of individual consumers. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). Plaintiffs cite no case holding that a class of plaintiffs can present an injury model that a court has not found satisfies Rule 23.[3]

Regardless, as to all Plaintiffs, Dr. Singer's subsidy models cannot reliably estimate injury or damages for any consumers because those models assume without any evidence that *all* users would have signed up for Play Points. Plaintiffs do not dispute that only a minority of Google Play store users sign up for Play Points. Nor do Plaintiffs dispute that a consumer who would not have signed up for Play Points without Google's conduct did not suffer injury or damage. Thus, there is no dispute that in order to measure individual injury and damages reliably, Dr. Singer must have a model to determine whether a user would have signed up for Play Points.

Dr. Singer testified that he has no model that can tell the jury whether any consumer would have signed up for Play Points:

> Q. If I were to come to you with a user chosen at random from the

---

[3] *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468 (S.D. Cal. 2015), on which Plaintiffs rely, Opp. at 13, is not to the contrary. In *Krueger*, a decision on certification issues, the Court *did* scrutinize whether the damages and injury models the class offered met Rule 23's requirements. *Id.* at 482.

> data that you've looked at of people that used the Google Play Store, could your model tell me whether that user would have signed up for the Google Play Points program in the but-for world?
>
> A. I don't think the model tells you whether a user will sign [up]...

MDL Dkt. No. 489-4, Ex. 4, Singer Merits Dep. at 166:15-22. Dr. Singer testified that his Amazon Coins model could not do this, either. *Id.* at 172:23-174:7. Plaintiffs do not address this testimony at all. They simply try to change the subject, suggesting that the "relevant economic question is the *total discounts* consumers would receive." Opp. at 15. That all but admits that the subsidy models cannot estimate individual consumer injury.

Plaintiffs cite Dr. Singer's bare conclusion that it is a "safe inference" that "all or almost all consumers" would have signed up for Play Points. Opp. at 14. But Plaintiffs' burden is to *show* that this inference would be a safe one for the jury. Plaintiffs have not done so—and they cannot do so because Dr. Singer admitted that he has not conducted any analysis of whether users would have signed up for Play Points. Dr. Singer testified that he has not "calculated the percentage credit on the price that would be necessary for any consumer to find it worth[while to] overcome the cost of signing up and sign up for the Play Points program" and that he has not conducted "any analysis of the elasticity of demand for the Play Points program." Ex. 4, Singer Merits Dep. at 167:11-25, 168:19-169:15. Plaintiffs do not address this testimony.

Instead, Plaintiffs cite a document suggesting that many users signed up for Play Points in ▇ and another showing usage of the Amazon Coins program. Opp. at 13. But neither document shows which users would have signed up for Play Points in the but-for world or whether the subsidies that Dr. Singer says Google would have offered in the but-for world would have led any more users to sign up for Play Points. Dr. Singer has no method to answer either of those questions. Accordingly, his subsidy models cannot reliably measure individual injury or damages. That makes the models inadmissible.

### B.    Dr. Singer's Subsidy Models Are Unreliable for Additional Reasons.

Dr. Singer's subsidy models are unreliable and inadmissible for additional reasons.

**Play Points.** Plaintiffs do not dispute that Dr. Singer's Play Points model assumes that Google's market share in the but-for world would have been the same as AT&T's market share in

long-distance telephone service in the 1980s.  (Dr. Singer's pass-through model makes the same assumption, Ex. 4, Singer Merits Dep. at 170:13-17 ("Q. Your Play Points model also uses the elasticity of demand from an article about A&T long distance in the 1980s?  A.  That's of the rival elasticity, that's right."), which makes it unreliable for the same reasons.)  Plaintiffs agree that "what matters" when using a benchmark is "similarities in competitive dynamics," Opp. at 14, but they do not identify any similarities in the competitive dynamics of long-distance telephone service in the 1980s and the but-for world of smartphone app stores.  Plaintiffs claim AT&T was "a platform monopolist, benefitting from network effects, that leveraged monopoly power," Opp. at 14, but as Plaintiffs concede, those are assertions about AT&T "*before* being forced to open the market to competition," *id.* (emphasis added), not about the competitive market Dr. Singer chose as a benchmark for the but-for world.  Plaintiffs identify no parallels between 1980s long-distance telephone service and competitive markets involving transactions with apps on smartphones in the 2010s that could justify using the former as a benchmark for the latter.  And Plaintiffs do not respond to Google's point that Dr. Singer cannot use 1980s landline phone service as a benchmark when he considers even 1990s flip phones "economically irrelevant."  Mot. at 14.

**Amazon Coins.**  Dr. Singer's Amazon Coins model is premised on an assumption that Google would have offered subsidies equal, as a percentage of its revenue, to those Amazon offered in its Amazon Coins program on the Amazon Appstore.  Plaintiffs fail to show that this benchmark is reliable.  Dr. Singer's entire pass-through model is based on the logic that a firm's market share affects its price, but Plaintiffs do not even address why Google would have offered the same user discounts as a competitor with a market share ██ times smaller.  *Compare* Mot. at 15.  Plaintiffs argue that Dr. Singer was right to ignore other potential benchmarks listed in Table 7 of his own report because they are not Android app stores, but the report calls these "comparable competitive digital platform environments."  Ex. 1, Singer Rep. ¶ 318.  A benchmark that ignores potentially "comparable" products is not reliable.  *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *3-4 (excluding expert opinion for "cherry-pick[ing]" benchmarks).

## CONCLUSION

Dr. Singer's opinions based on his injury and damages models should be excluded.

Respectfully submitted,

Dated: June 8, 2023            By:    /s/ *Justin P. Raphael*
                                      Justin P. Raphael

                                        Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105

Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants Google LLC, et al.*

**E-FILING ATTESTATION**

I, Justin P. Raphael, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                        */s/ Justin P. Raphael*
                                        Justin P. Raphael