Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.*

Brendan P. Glackin (SBN 199643)
bglackin@agutah.gov
**OFFICE OF THE UTAH ATTORNEY GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

Douglas J. Dixon (SBN 275389)
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640

*Counsel for Plaintiffs Match Group, LLC, et al.*

Glenn D. Pomerantz (SBN 112503)
glenn.pomerantz@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100

Brian C. Rocca (SBN 221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants Google LLC et al.*

[Additional counsel appear on signature page]

OMNIBUS MOTION TO SEAL MATERIALS SUBMITTED IN CONNECTION WITH THE SUMMARY JUDGMENT AND DAUBERT BRIEFING
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD, 3:22-cv-02746-JD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**OMNIBUS MOTION TO SEAL MATERIALS SUBMITTED IN CONNECTION WITH THE SUMMARY JUDGMENT AND DAUBERT BRIEFING**<br><br>Judge:  Hon. James Donato |

## JOINT STATEMENT

Pursuant to the Court's order (MDL Dkt. No. 496), Consumer Plaintiffs ("Consumers"), State Plaintiffs ("States"), Epic Games, Inc. ("Epic"), Match Plaintiffs,[1] and Google Defendants ("Google") (collectively, the "Parties") respectfully submit this omnibus motion to seal certain portions of the Parties' summary judgment briefing, *Daubert* briefing, and supporting documents, as set forth herein and in the supporting declarations.  While this omnibus motion is submitted on behalf of all Parties for the purpose of judicial administrative convenience and clarity, the Parties take no position on each other's requests except for the 60 Google requests where a notation of opposition by Epic and/or Consumers is explicitly delineated.  *See* Ex. B1 to the Declaration of Nicholas Pfeiffer ("Pfeiffer Declaration").

Google filed a motion for partial summary judgment on April 20, 2023.  MDL Dkt. Nos. 480-483.  Plaintiffs opposed Google's motion on May 18, 2023.  MDL Dkt. No. 509.  Google filed a reply brief on June 8, 2023.  MDL Dkt. No. 523.  Concurrently, Google filed *Daubert* motions regarding Plaintiffs' experts Dr. Marc Rysman (MDL Dkt. No. 484), and Dr. Hal Singer (MDL Dkt. No. 487) on April 20, 2023.  Consumers and States opposed Google's motion to exclude Dr. Singer on May 18, 2023.  MDL Dkt. No. 508.  States opposed Google's motion to exclude Dr. Rysman on May 18, 2023.  MDL Dkt. No. 512.  Google filed reply briefs in support of its *Daubert* motions regarding Dr. Hal Singer (MDL Dkt. No. 524) and Dr. Marc Rysman (MDL Dkt. No. 526) on June 8, 2023.  Match Plaintiffs filed a motion for partial summary judgment on April 20, 2023.  MDL Dkt. No. 486.  Google opposed Match Plaintiffs' motion on May 18, 2023.  MDL Dkt. No. 506.  Match Plaintiffs filed a reply brief in support of their motion on June 8, 2023.  MDL Dkt. No. 527.

In the interest of judicial efficiency, and to avoid the filing of voluminous or multiple administrative motions to seal[2], the Parties stipulated, and the Court ordered, a modified sealing procedure for the Parties' motion for summary judgment and *Daubert* briefing, and related documents.

---

[1] The term "Match Plaintiffs" includes only the operating companies named as plaintiffs in this action: Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc.

[2] This omnibus sealing motion addresses requests to seal information cited in twelve different briefs, multiple voluminous expert reports, and dozens of multi-page exhibits attached to the underlying filings, totaling thousands of pages of material.

MDL Dkt. No. 496.  Pursuant to the Court's Order, the Parties and any implicated non-parties ("Non-Parties") were ordered to file an omnibus sealing motion addressing all sealing requests by July 13, 2023.  MDL Dkt. No. 496.  The Parties submit this Motion, and its accompanying declarations, in accordance with the Court's Order.

## GOOGLE'S POSITION

### I.    REQUEST FOR RELIEF

Google respectfully requests that the Court seal three categories of non-public information: (1) specific deal terms of contracts with non-parties, (2) non-public financial information, and (3) details of negotiation strategies with third parties or business/product information that could be exploited by third-party competitors. The specific items to be sealed, and associated reasons for sealing, are listed in the Declaration of Christian Cramer ("Cramer Declaration"), as well as Exhibit 1 to the Pfeiffer Declaration.

If the Court denies this sealing motion, in whole or in part, Google respectfully requests that the Court delay the effect of such order for seven (7) days to allow time for affected parties to make appropriate plans (including alerting impacted individuals), bring potential issues to the Court's attention, or pursue appropriate relief if necessary.  After all, "[o]nce information is published, it cannot be made secret again," *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008), so this measure will serve as an extra safeguard to ensure that genuinely sealable material does not inadvertently spill into the public record and cause irreparable harm.

### II.   LEGAL STANDARD

Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records." *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 & n.7 (1978).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The Ninth Circuit has held that "[t]wo standards generally govern motions to seal documents." *Pintos v. Pac. Creditorss Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010).  "First, a 'compelling reasons' standard

applies to most judicial records." *Id*. at 677-68.  Under that standard, a court may seal records only

when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on

hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179.  Second, the Ninth Circuit has "carved out an

exception" for sealed materials attached to a discovery motion and other materials that are only

"tangentially related to the merits of the case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d

1092, 1097, 1101 (9th Cir. 2016).  In those circumstances, "a less exacting 'good cause' standard"

applies.  *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (quoting *Pintos*, 605 F.3d at 678).

Thus, the "compelling reasons" standard generally applies to information contained in motions and

memoranda that address the merits of a case, while the "good cause" standard applies to requests to

seal information contained in exhibits attached to such motions.[3]

Courts in this Circuit have granted sealing motions where the material to be disclosed includes

"trade secrets,"[4] "terms of confidential contracts,"[5] "contract negotiations,"[6] "detailed financial

information,"[7] "long-term financial projections,"[8] discussions of business strategy,"[9] "business

---

[3] *See, e.g.*, *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010) (applying "compelling reasons" standard to summary judgment briefing and exhibits); *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716-BLF, 2019 WL 235045, at *2 (N.D. Cal. Jan. 16, 2019) (applying "good cause" standard to documents in connection with a *Daubert* motion); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) (applying the "compelling reasons" standard to summary judgment motions but the "good cause" standard for documents related to *Daubert* motions.); *Baird v. Blackrock Institutional Tr. Co., N.A.*, No. 17-CV-01892-HSG, 2020 WL 7389772, at *16 (N.D. Cal. Feb. 11, 2020) (applying the "compelling reasons" standard to class certification filings but the "good cause" standard for the associated *Daubert* motion). *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-CV-04405-HSG, 2020 WL 1233881, at *2 (N.D. Cal. Mar. 13, 2020) ((applying the "compelling reasons" standard to summary judgment motion but the "good cause" standard for the *Daubert* motions); *In re Koninklijke Philips Pat. Litig.*, No. 18-CV-01885-HSG, 2020 WL 1865294, at *2 (N.D. Cal. Apr. 13, 2020) (same).
[4] *Kamakana*, 447 F.3d at 1179.
[5] *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019).
[6] *Id.*
[7] *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations").
[8] *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011).
[9] *Id.*

information that might harm a litigant's competitive standing,"[10] or personally identifiable information.[11]  The Local Rules also require that sealing requests must be "narrowly tailored to seal only the sealable material." Civil L-R 79-5(c)(3).

## III.   ARGUMENT

### A.   Courts Routinely Seal the Motion at Issue Here

As the Ninth Circuit has stated, "[s]ecrecy is a one-way street: Once information is published, it cannot be made secret again."  *In re Copley Press, Inc*., 518 F.3d 1022, 1025 (9th Cir. 2008). Recognizing the presumption in favor of access to court papers, this sealing request focuses on four highly sensitive areas categories of non-public information: (a) specific deal terms (price and nonprice) of contracts with non-parties, (b) non-public financial information, and (c) details of negotiations and negotiation strategies with third parties.

Courts within the Ninth Circuit have consistently held that these categories of confidential, non-public information may be sealed, pursuant to the "compelling reasons" standard.  *See*, *e.g.*, *Baird v. BlackRock Institutional Tr. Co.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) ("Courts have found that 'confidential business information' in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' satisfies the 'compelling reasons' standard.") (citation omitted); *In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (protecting competitive terms of a license agreement "which plainly falls within the definition of 'trade secrets'" because it provides "an opportunity to obtain an advantage over competitors who do not know or use it"); *Milliner v. Bock Evans Fin. Counsel, Ltd.*, No. 15-cv-01763-JD, 2020 WL 1492692, at *2 (N.D. Cal. Mar. 27, 2020) (permitting sealing of a "highly negotiated agreement" that would

---

[10] *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)).

[11] Fed. R. Civ. P. 5.2; *Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021) (Granting motion to seal personally identifiable information of current and former employees, including their email addresses and telephone numbers); *Hewlett-Packard Co.*, 2014 WL 233827, at *3 (ordering the sealing of plaintiff's home address, phone number, and email address because there is a "compelling privacy interest in this information"); *Sameer v. Khera*, No. 117CV01748DADEPG, 2018 WL 4772035, at *1 (E.D. Cal. Oct. 1, 2018).

"expose [litigant] to competitive harm" if publicly disclosed); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-cv-02864-JD, 2016 WL 4091388, at *2–5 (N.D. Cal. Aug. 2, 2016) (finding "compelling reasons" to seal, inter alia, "product-specific customer data," "detailed sales information for customers that could be used to the company's competitive disadvantage," "competitive intelligence," and "customer-specific sales data"); *Ovonic Battery*, 2014 WL 2758756, at *2 ("Our circuit allows parties to seal pricing terms, royalty rates, and guaranteed minimum payment terms found in a licensing agreement even under the 'compelling reasons' standard because that business information could 'harm a litigant's competitive standing.'") (quoting *Electronic Arts*, 298 F. App'x at 569).

## B. Epic and Consumer Plaintiffs Misrepresent Google's Narrowly-Tailored Sealing Requests

While cherry-picking a handful of Google's sealing requests, Epic and Consumer Plaintiffs have distorted the nature of the underlying confidential information Google seeks to seal. For example, for Dkt. 509-5 at -5840 (Ex. D4 to Cramer Declaration), Plaintiffs claim that Google is seeking to seal conduct that "goes to the very heart of the suit" and that Google's proposed deal to a certain developer is "already public." But, the 2019 internal email Google seeks to seal actually reflects highly confidential, internal considerations and proposed deal terms at a level of detail that has never been made public and reflects precisely the type of information that would "expose [Google] to competitive harm" if publicly disclosed. *Milliner*, 2020 WL 1492692, at *2; *see also Tevra Brands LLC v. Bayer HealthCare LLC*, 2020 WL 1245352, at *3 (N.D. Cal. Mar. 16, 2020) (acknowledging that "the public does not require access to all the minutia of [] agreements" and that "[t]hese kinds of details are unnecessary to the public's understanding of the suit"). Similarly, Plaintiffs dispute Google's request to seal a chart that compares the number of Google's contractual requirements for its Android OEM partners over time. Dkt. 511-4 at -8899.R. This non-public detail relating to Google's contractual requirements is precisely the type of business information that could be used to disadvantage Google in future contractual negotiations, as counterparties could rely on this data to gain an unfair advantage in negotiations. *See Ctr. For Auto Safety*, 809 F.3d at 1097. Plaintiffs rely solely on *Tevra* to claim that the information Google seeks to seal go to the "heart of the suit." But, *Tevra* is inapposite as the court

1   was adjudicating a request for sealing allegations in a complaint, and recognized that "the operative

2   pleading in the case…is essential to the 'public's understanding' of the suit." *Tevra*, 2020 WL, at \*2.

3   The materials subject to the instant sealing motion comprise highly sensitive, detailed, internal

4   business presentations and communications, the majority of which do not appear in any dispositive

5   briefing. Indeed, out of all of the dispositive motion briefing at issue in this sealing motion, Google is

6   only moving to seal *two* narrow and targeted excerpts from Plaintiffs' opposition to Google's motion

7   for summary judgment.

8       Epic and Consumer Plaintiffs also criticize Google's request to seal the identity of non-party

9   developers who historically integrated alternative billing options on Google Play.  In support, Plaintiffs

10   cite to a 2022 article about Google's "crackdown" of developers who were not in compliance to show

11   that the information is public.  However, the identity of these developers has never been revealed

12   publicly in full and the full list of such developers reveals the strategic importance of certain non-party

13   developers and the nature of their relationship with Google, the disclosure of which risks harm to

14   Google's competitive standing.  *Ctr. For Auto Safety*, 809 F.3d at 1097.

15       Lastly, Plaintiffs challenge Google's requests to seal "aggregated data."  However, the fact that

16   the financial data is "aggregated" is not dispositive of whether a sealing request is proper.  Rather, the

17   standard requires considering whether disclosure of this financial information would create an

18   "advantage in contract negotiations."  *Apple Inc.*, 727 F.3d at 1225. In Dkt 509-2 at 250, Google seeks

19   to seal the total dollar amount Google proposed to pay to OEM partners in the form of revenue share,

20   including specific dollar figures from this year (2023). Plaintiffs argue that because this dollar amount

21   does not relate to a specific OEM, or a specific deal, Google cannot seal it.  But Google does negotiate

22   revenue share agreements with individual OEM partners, and knowledge of Google's dollar "budget"

23   would give those partners a real (and unfair) advantage in contractual negotiations. Google continues

24   to manage its relationships with partners outside of this litigation, and Plaintiffs' attempts to stylize

25   real-world information as too "general" to meet the requisite sealing standard should be rejected.

26   Similarly, in Dkt. 509-46 at -4313, the at-issue text reveals the magnitude of revenues Google expected

27   its product to generate, which is non-public and treated as strictly confidential by Google's finance

28

1  stakeholders.  Google's confidential financial information is entitled to protection. *Ctr. For Auto*
2  *Safety*, 809 F.3d at 1097.

3  ### C. Google and Non-Parties' Requests to Seal Are Narrowly Focused on Only Materials for Which Disclosure Would Cause Severe Irreparable Harm

4      Google and certain Non-Parties only seek to seal confidential materials related to: (a) specific
5  deal terms (price and nonprice) of contracts with non-parties, (b) non-public financial information, (c)
6  and details of negotiations and negotiation strategies with third parties.[12] As discussed in detail in the
7  declarations filed herewith, Google and these Non-Parties assert that public disclosure of this
8  information will cause severe and irreparable harm to not only Google's business relationships and its
9  competitive position in the marketplace, but also that of Google's business partners and these Non-
10  Parties, thereby outweighing any public interest in disclosure.

11      First, disclosure of specific deal terms could harm Google's competitive standing and
12  negotiations with other counterparties. The limited excerpts of documents sought to be sealed reveal
13  specific details of Google's current agreements with its partners, including detailed financial terms,
14  confidential communications in negotiations, and strategic considerations and priorities of Google and
15  its counterparties. These reflect real, valuable and actionable insights about Google that could be
16  leveraged by potential counterparties. For example, Exhibit D6 to the Cramer Declaration reveals the
17  specific deal terms (monetary and contractual) for agreements Google negotiated with a number of its
18  partners. Disclosure of these terms would give potential counterparties useful data points in negotiating
19  with Google that they would not otherwise have access to, or could be used by Google's own

---

[12] In advance of filing this omnibus motion, Google and Consumers notified the other parties to this litigation, as well as nearly 600 Non-Parties that some of the underlying motion for summary judgment and/or *Daubert* briefing cited their confidential information and thus would be subject to this sealing motion.  In response to those notices, twenty-one Non-Parties indicated that they are joining this motion where it pertains to some or all of their information: Activision Blizzard, Alibaba, Amazon, Aniplex, AT&T, Boyd Gaming, Century Games, Coda US LLC, Cognosphere LLC (Hoyoverse), Mondraw Limited, Electronic Arts, Inc., Magic Tavern, Mondraw Ltd., Nintendo, Qingniao, Riot, Smule, Spotify, Sony, Skywork AI PTE. (Starmaker), TikTok, Valve, Verizon, Warner Bros. Discovery, and Xiaomi.

competitors to target developers and offer more attractive terms. Moreover, given the sensitivity of these deals, two Non-Parties also submitted declarations in support of sealing these specific deal terms.

Second, disclosure of non-public financial information risks harming Google's competitive standing by giving competitors and potential counterparties insight into Google's internal financial data, metrics, and analyses. As set out below, Match Plaintiffs similarly recognize the competitive risks posed by disclosure of this type of information in their sealing requests. For example, Exhibit E3 to the Cramer Declaration reveals the value of non-Play Points subsidies offered by both developers and Google to consumers as a percentage of total spend. This is highly-confidential, non-public information the disclosure of which would cause serious harm to Google's competitive position. Public disclosure of this information would give Google's app store competitors unfair insight into the value of discounts offered on Google Play in relation to overall consumer spend on Google Play. Having access to this information would give competitors an unfair advantage and is likely to result in harm to Google. For example, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers to better compete against Google Play and target the same consumers.

Third, disclosure of the details of negotiation strategies with third parties or associated business/product assessments relating to negotiation strategies threatens to undermine Google in future and ongoing negotiations. Documents sought to be sealed reveal internal strategy discussions on detailed points of negotiation with specific app developers. For example, Exhibit D11 to the Cramer Declaration includes internal assessments and analyses relating to Google Play and the services it offers to developers, which influence how Google negotiates with partners. These assessments are the result of detailed data analysis, strategic thinking, and industry experience from Google's product and business stakeholders. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors who may be seeking to mimic Google's business model, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of

1   Google's inner workings and strategic considerations could influence competitor app stores' decisions

2   related to how they market, monetize or structure their business models or target developers.

3       Epic and Consumer Plaintiffs' suggestion that Google is overreaching with its sealing requests

4   is baseless and should be rejected by the Court.  Google respectfully requests this Court to grant its

5   narrow set of sealing requests.

6                            **MATCH PLAINTIFFS' POSITION**

7       Match Plaintiffs have "narrowly tailored" their request to "only redact the portions of filings

8   and the precise exhibits" that implicate personal information and "confidential business information,"

9   and this information is "not available to the public." *In re Qualcomm Litig.*, 2017 WL 5176922, at *2

10  (S.D. Cal. 2017); *see also Snapkeys, Ltd. v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May 14,

11  2021). Moreover, the material that Match Plaintiffs seek to seal is not relevant to any of the motions.

12  Match Plaintiffs' bases for sealing are included in the declaration of Ian Purves filed herewith.

13      The Ninth Circuit and Supreme Court have long recognized that trade secrets and other

14  information "that might harm a litigant's competitive standing" satisfy the compelling reasons

15  standard. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished) (quoting *Nixon v.*

16  *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve

17  as . . . sources of business information that might harm a litigant's competitive standing")); *see also*

18  *Ctr. v. Auto Safety*, 809 F.3d at 1097 (same). "Examples include when a court record might be used to

19  as sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto*

20  *Safety*, 809 F.3d at 1097; *see also Snapkeys, Ltd.*, 2021 WL 1951250, at *3 (granting motion to seal

21  personally identifiable information of current and former employees, including their email addresses

22  and telephone numbers). Likewise, for Google's *Daubert* motions against Consumers and States, to

23  which Match Plaintiffs are not a party, "[r]ecords attached to motions that are 'not related, or only

24  tangentially related, to the merits of a case' therefore are not subject to the strong presumption of

25  access." *Dominion Assets LLC v. Masimo Corp.*, 2018 WL 2427790, at *1 (N.D. Cal. May 30, 2018)

26  (quoting *Ctr. for Auto Safety*, 809 F.3d at 1099). "Parties moving to seal the documents attached to

27

28

1  such motions must meet the lower 'good cause' standard of Rule 26(c)." *Id.* Match Plaintiffs' sealing

2  requests meet both standards.

3        The vast majority of the targeted information and data that Match Plaintiffs seek sealed was

4  attached to Google's *Daubert* motions to exclude Consumers' and States' experts, and the information

5  Match Plaintiffs seek to seal is not relevant to those motions. Moreover, much of the targeted

6  information Match Plaintiffs seek to seal constitutes "detailed financial information" that courts have

7  recognized parties "have an interest in keeping . . . secret." *Apple Inc. v. Samsung Elec. Co., Ltd.*, 727

8  F.3d 1214, 1225 (Fed. Cir. 2013). The information contained in the exhibits to the motions would

9  allow Match Plaintiffs' competitors and counterparties to understand granular details and datapoints

10  about, among other things, consumers' purchasing habits and trend data in relation to Match Plaintiffs'

11  dating services, sensitive long-term projections and business plans, and detailed financial information.

12  Public Disclosure of this confidential and proprietary business information would harm Match

13  Plaintiffs' competitive standing, as competitors would be very eager to acquire and study it and exploit

14  it to gain competitive advantage. Specifically, disclosing this information publicly could be used

15  against Match Plaintiffs in their future business negotiations with third parties. Information that may

16  seem insignificant on its own can (individually or with other documents) give an expert reader or

17  industry competitor meaningful insight. This insight can be derived even if the information is several

18  years old.  For example, the amount of consumer spending that took place on a particular Match

19  Plaintiff brand's dating app during a particular time period could allow those competitors to selectively

20  compete against Match Plaintiffs' brands where they are most competitively vulnerable, placing Match

21  Plaintiffs' brands at a competitive disadvantage. Apart from directly harming Match Plaintiffs'

22  businesses, Match Plaintiffs' non-public, confidential and proprietary business information could

23  confuse investors by stoking speculation about Match Plaintiffs' services, finances, and prospects. This

24  data and information is not relevant to (a) Google's motion for partial summary judgment (which

25  relates to the antitrust claims against Google); (b) Match Plaintiffs' motion for partial summary

26  judgment (which relates to Google's contract and tort claims and do not involve the data and

27

28

1   information sought to be sealed); or (c) Google's *Daubert* motions against Consumers and States (to

2   which Match Plaintiffs are not a party).

3       Compelling reasons and good cause exist to justify Match Plaintiffs' narrow requests to seal,

4   which contain information not relevant to the underlying motions. As discussed in detail in the

5   declaration of Ian Purves filed herewith, Match Plaintiffs assert that public disclosure of this targeted

6   information, which is not relevant to the underlying motions (particularly Google's *Daubert* motions

7   against Consumers and States), will cause severe and irreparable harm to Match Plaintiffs' competitive

8   positions in the marketplace, thereby outweighing any public interest in disclosure. *Dominion Assets*

9   *LLC*, 2018 WL 2427790, at *2. Under either standard, Match Plaintiffs' narrow, targeted requests

10  qualify for sealing.

11      Match Plaintiffs respectfully request that the Court seal competitively sensitive and

12  confidential, non-public information and data relating to Match Plaintiffs' finances, services, and

13  customer behavior, which are not relevant to the motions.

14  ## EPIC'S AND CONSUMERS' POSITIONS

15  Google continues to seek the sealing of information the Court has repeatedly found is not sealable.  As

16  Google concedes, the public has a "general right to inspect and copy public records and documents,

17  including judicial records and documents" and, "[u]nless a particular court record is one traditionally

18  kept secret, a strong presumption in favor of access is the starting point".  *Kamakana*, 447 F.3d at 1178

19  (citation omitted).  Google also does not dispute that the general presumption against sealing is even

20  more pronounced when a party seeks to "maintain the secrecy of documents attached to dispositive

21  motions" such as Google's motion for summary judgment.  *Id.* at 1180.[13]  Such a party must

22

23      [13] Epic takes no position on Google's requests to seal materials relating to Google's Motion to

24  exclude Consumers' expert opinions, which Consumers address below.  Consumers submit that,
    contrary to Google's argument that the "good cause" standard applies, "[t]he 'compelling reasons'

25  standard applies not just to motions for summary judgment, but also to *Daubert* motions submitted 'in
    connection with' pending motions for summary judgment."  *See Open Text S.A. v. Box, Inc.*, No. 13-

26  CV-04910-JD, 2014 WL 7368594, at *1 (N.D. Cal. Dec. 26, 2014) (Donato, J.) (*citing In re Midland
    Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012)).  Here, Google

27  attached Consumers' expert's report to *both* Google's Motion for Partial Summary Judgment and its

28  *Daubert* motion.

1    "articulate[] compelling reasons supported by specific factual findings, that outweigh the general

2    history of access and the public policies favoring disclosure, such as the public interest in

3    understanding the judicial process". *Id.* at 1178 (citations omitted).  Compelling reasons, as

4    recognized in the Ninth Circuit, include protecting information that might be used for an improper

5    purpose (*e.g.*, to promote public scandal, circulate libelous statements) or to protect trade secrets. *See*

6    *In re Midland Nat'l Life Ins. Co Annuity Sales Practices Litig. v. Allianz Life Ins. Co. of N. Am.*, 686

7    F.3d 1115, 1120 (9th Cir. 2012). By contrast, "[s]imply mentioning a general category of privilege,

8    without any further elaboration or any specific linkage with the documents, does not satisfy the

9    burden." *Kamakana*, 447 F.3d at 1184.

10           Google's requests for sealing are far too broad to meet the "compelling reasons" standard

11   applicable here.  To be clear, Epic and Consumers do not oppose Google's requests narrowly to seal

12   specific deal terms where they have identified specific, compelling reasons to keep their information

13   sealed.   But Epic and Consumers do oppose Google's requests to seal broad swaths of information that

14   is germane to the merits of Epic's and Consumers' claims and that is neither competitively sensitive

15   nor otherwise sealable.[14]

16   **I.    Sealing Requests Related to Google's Motion for Partial Summary Judgment Opposed by Consumer Plaintiffs and Epic**

17           Most of Google's sealing requests related to Google's Motion for Partial Summary Judgment

18   do not meet the compelling-reasons standard.  Even a cursory review of Google's proposed sealing

19   requests makes the deficiencies of those requests clear.  Google cannot, for example, seal information

20   that is "already publicly available". *Id.* at 1184; *see also L.S. v. Henderson*, 2021 WL 5149067, at *1

21   (N.D. Cal. Nov. 5, 2021) ("No good cause exists to seal documents that are already publicly available

22   elsewhere.").  Yet this is precisely what Google asks the Court to do.  To take one example of

23   Google's overreach, Google seeks to redact the names of developers who "historically have used non-

24   GPB systems" within their apps.  (Dkt. 509 at 22.)  That these companies have integrated alternative

---

26

27   [14] As noted below, Epic also opposes most of the requests for sealing made by Activision Blizzard
     Inc. ("Activision"), which are also far too broad to meet the "compelling reasons" standard applicable
     here.  (*See* Section II below.)

OMNIBUS MOTION TO SEAL MATERIALS SUBMITTED IN CONNECTION WITH THE SUMMARY JUDGMENT AND DAUBERT BRIEFING
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

12

1   payment solutions into their apps is public information—anyone who used these apps historically was

2   presented with alternative payment solutions.  Further, there was extensive media coverage about

3   Google changing its historical practices and cracking down on developers offering non-Google Play

4   Billing alternatives within their apps.  *See e.g.*, Kali Coleman, Android Users Are Barred From Doing

5   This, Effective Immediately, Best Life, (May 3, 2022), https://bestlifeonline.com/android-hulu-sign-

6   up-news/, and it cannot be sealed, *AMG Servs., Inc.*, 2012 WL 3562027, at *2-3.  Google's basis for

7   sealing this passage is that it "reflects specific non-public details and deal terms offered by Google to

8   certain of its partners in its commercial programs".  (Ex. B1 to the Declaration of Nicholas Pfeiffer.)

9   Not so.  The only information revealed in this passage is that developers have used alternative payment

10  solutions; there is not a single deal term revealed.

11       Google also seeks to hide its anticompetitive conduct from the public.  This, too, is improper,

12  as the Court should not seal "anticompetitive practices [that Plaintiffs] challenge".  *Tevra Brands LLC*

13  *v. Bayer HealthCare LLC*, 2020 WL 1245352, at *2 (N.D. Cal. Mar. 16, 2020).  For example, Google

14  seeks to keep from the public that in 2019, a major developer was planning to distribute its content to

15  Android users outside of Google Play and that Google proposed a deal to stop this.  (*See* Dkt. 509-5 at

16  -5840.)  These facts are not only already public (*see* Dkt. 378), but also unsealable because this

17  conduct "goes to the very heart of the suit" and thus should not be sealed.  *Tevra*, 2020 WL 1245352,

18  at *2.  Further, Google seeks to seal from a Google-produced presentation a slide titled "Asking our

19  partners to do more and more", which includes a bar chart showing how the number of requirements

20  Google imposed on its partners grew from 2018 to 2019.  (Dkt. 511-4 at -8899.R.)  These

21  anticompetitive obligations, which Google thrust on its OEM partners and constitute conduct directly

22  at issue in this case, should not be sealed.  *Tevra*, 2020 WL 1245352, at *2.

23       Finally, Google cannot seal aggregated data under the guise that they reveal "specific details

24  about Google's commercial deals, negotiations, and strategy with respect to specific OEMs", as it tries

25  to do.  (Ex. B1 to the Declaration of Nicholas Pfeiffer.)  For example, Google seeks to seal an

26  executive's deposition testimony regarding the total amount of money his team asked the Google

27  Business Council to approve for Google's RSA program, which was intended to help Google "secure

28

OMNIBUS MOTION TO SEAL MATERIALS SUBMITTED IN CONNECTION WITH THE SUMMARY JUDGMENT AND
DAUBERT BRIEFING
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD, 3:22-cv-02746-JD

13

1   platform protections for Search and Play".  (Dkt. 509-2 at 250.)  No "specific OEMs" are mentioned,

2   and these are not "specific details" about deals, as Google contends.  Rather, they are the combined

3   amount of money that Google approved to spend on its efforts to ensure that Google Play dominated

4   app store distribution, which is an anticompetitive practice at issue in this case.  In another example,

5   Google even goes so far as to seek sealing of a placeholder amount, which conveys neither deal terms

6   nor any specific information at all.  (Dkt. 509-46 at -4313.)  These inappropriate sealing requests—and

7   the rest of the sealing requests opposed by Epic and Consumers (as noted in the sealing chart attached

8   to the Declaration of Nicholas Pfeiffer)—should be rejected.

9   **II.   Sealing Requests Related to Google's Motion for Partial Summary Judgment Opposed by Epic**

10          Epic also opposes, with one exception, all of Activision's sealing requests.[15]  Activision seeks

11   to keep private certain information from Plaintiffs' Opposition to Google's Motion for Partial

12   Summary Judgment and the accompanying exhibits.  Activision acknowledges that it must provide

13   compelling reasons to keep information filed in connection with Google's summary judgment motion

14   sealed, (Declaration of Page Robinson ¶ 6), but, like Google, Activision fails to meet this burden.

15   Accordingly, all of Activision's requests should be denied.

16          Activision concedes that "the existence of [its] underlying partnership with Google already has

17   been made public during the course of this litigation".  (Declaration of Page Robinson ¶ 9.)  This is

18   precisely why many of Activision's sealing requests should be rejected.  Epic's Second Amended

19   Complaint publicly alleges that when Activision told Google it was considering starting its own

20   Android app store, Google and Activision "entered into a three-year agreement . . . pursuant to which

21   Google agreed to pay [Activision] approximately $360 million".  (Dkt. 378 ¶ 199.)  Epic explained that

22   this agreement "effectively ensured that [Activision] would abandon its plans to launch a competing

23   app store".  *Id.* ¶ 200.  Various news outlets reported these allegations, including the terms of the

24   agreement.  *See, e.g.*, P. Dave, Google struck $360-mln Activision deal to block rival app store, lawsuit

25   says, Reuters, Nov. 18, 2022, available at https://www.reuters.com/technology/google-agreed-pay-360-

26   mln-activision-stop-competition-epic-games-alleges-2022-11-17/.  Yet, according to Activision, the

27

28   _____

[15] The one exception is Activision's request to seal Dkt. 509-49, on which Epic takes no position.

excerpts introduced in connection with Google's summary judgment motion "go beyond merely acknowledging the existence of an Activision Blizzard-Google partnership" and instead reveal the "terms and incentives" and "the services and benefits" of the deal.  (Declaration of Page Robinson ¶ 9.) Not so.  This information has been public for months, and Activision fails to explain what new information will be revealed if the information at issue is unsealed.  Accordingly, Activision's contention that Plaintiffs' Opposition contains "highly confidential, non-public, and competitively sensitive strategic business information" (Declaration of Page Robinson at 6-8) has no basis.

Not only is Activision trying to seal information that is already public, but it has also failed to propose "narrowly tailored" sealing requests, as required by this Court's rules.  *See* Civil L-R 79-5(c)(3).  Without providing any compelling reason, Activision seeks to seal entire passages of a Google deposition that contain no confidential information whatsoever.  For instance, it seeks to seal the portion of the deposition where the Project Hug agreement between Activision and Google was introduced as an exhibit.  Dkt. 509-6 at 283:2-11.  There is *nothing* worthy of sealing in this exchange, especially because, as noted, Activision and Google's Project Hug agreement is public knowledge. (*See* Dkt. 378 ¶ 199-200.)  Without providing any narrowed redactions, Activision also seeks to seal the following exhibits *in their entirety*:  Dkts. 509-13 (deposition transcript excerpt), 590-14 (declaration of authenticity) and 509-15 (internal Google email chain).  Activision provides the same generic, non-compelling reason for sealing each of these documents—that they purportedly contain "Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information".  (Declaration of Page Robinson at 7-8.)  This level of detail is insufficient for sealing.

Finally, Activision seeks to redact the names of "executives and former executives who may be subject to undue harassment if their identities are disclosed".  (*See* Declaration of Page Robinson ¶ 11.) This Court has rejected similar requests from Activision in the past.  (*See, e.g.*, Dkt. 374; *see also* Dkt. 321.)  And for good reason:  this is not a compelling reason, especially where, as a publicly traded company, Activision has disclosed the name, salary, annual bonus, stock options and sign-on bonus of one of the executives at issue in its 10-K filings with the Securities and Exchange Commission, *see* Activision Blizzard, Inc. 2022 10-K, available at https://investor.activision.com/static-files/87ece870-

210a-40fe-baf9-aa2f78f6c09a.  Without more than Activision's generic citations to cases, such requests to seal must be rejected.

### III. Sealing Requests Related to Google's Motion to Exclude the Merits Opinions of Dr. Hal J. Singer Opposed by Consumer Plaintiffs

Regarding Google's Motion to Exclude the Merits Opinions of Dr. Singer, Consumers do not oppose Google's narrow sealing requests to the extent those requests are supported by "compelling reasons".[16]  But, for the same reasons as previously discussed with respect to Google's sealing requests related to its Motion for Partial Summary Judgment (*see* Section I above), Google has failed to articulate why it has met the compelling reasons standard.

\*          \*          \*

For the foregoing reasons, Google's sealing requests related to the aforementioned entries should be denied.

### STATES' POSITION

The States take no position on any party or third-party's sealing requests, but join in Epic and Consumers' statement of applicable law.

---

[16] As noted, Google is wrong to suggest that this Court applies the "good cause" standard to such requests.  *See Open Text S.A.*, 2014 WL 7368594, at \*1.

Dated:  July 13, 2023

MORGAN, LEWIS & BOCKIUS LLP
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Minna L. Naranjo
Rishi P. Satia

Respectfully submitted,

By:  */s/ Minna L. Naranjo*
Minna L. Naranjo

*Counsel for Defendants Google LLC et al.*

Dated:  July 13, 2023

MUNGER, TOLLES & OLSON LLP
Glenn D. Pomerantz
Kyle W. Mach
Kuruvilla Olasa
Justin P. Raphael
Emily C. Curran-Huberty
Jonathan I. Kravis

Respectfully submitted,

By:  */s/ Glenn D. Pomerantz*
Glenn D. Pomerantz

*Counsel for Defendants Google LLC et al.*

Dated:  July 13, 2023

OFFICE OF THE UTAH ATTORNEY GENERAL
Brendan P. Glackin
Lauren M. Weinstein
Brendan Benedict

Respectfully submitted,

By:  */s/ Brendan P. Glackin*
Brendan P. Glackin

*Counsel for the Plaintiff States*

1

Dated: July 13, 2023       CRAVATH, SWAINE & MOORE LLP

2       Christine Varney *(pro hac vice)*
Gary A. Bornstein *(pro hac vice)*

3       Timothy G. Cameron *(pro hac vice)*
Yonatan Even *(pro hac vice)*

4       Lauren A. Moskowitz *(pro hac vice)*
Justin C. Clarke *(pro hac vice)*

5       Michael J. Zaken *(pro hac vice)*
M. Brent Byars *(pro hac vice)*

6

7       FAEGRE DRINKER BIDDLE & REATH LLP
Paul J. Riehle (SBN 115199)

8

9       Respectfully submitted,

10       By: */s/ Michael J. Zaken*
Michael J. Zaken

11

12       *Counsel for Plaintiff Epic Games, Inc.*

13

14

15   Dated: July 13, 2023       BARTLIT BECK LLP
Karma M. Giulianelli

16

17       KAPLAN FOX & KILSHEIMER LLP
Hae Sung Nam

18       Respectfully submitted,

19       By: */s/ Karma M. Giulianelli*
Karma M. Giulianelli

20

21       *Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

22

23

24

25

26

27

28

Dated:  July 13, 2023                    PRITZKER LEVINE LLP
                                          Elizabeth C. Pritzker

                                          Respectfully submitted,

                                          By: _/s/ Elizabeth C. Pritzker_____
                                              Elizabeth C. Pritzker

                                          *Liaison Counsel for the Class in In re Google Play*
                                          *Consumer Antitrust Litigation*


Dated:  July 13, 2023                    HUESTON HENNIGAN LLP
                                          Douglas J. Dixon
                                          Christine Woodin
                                          Joseph A. Reiter

                                          Respectfully submitted,

                                          By: _/s/ Douglas J. Dixon_____
                                              Douglas J. Dixon

                                          *Counsel for Plaintiffs Match Group, LLC et al.*

1

## **E-FILING ATTESTATION**

2

I, Minna L. Naranjo, am the ECF User whose ID and password are being used to file this

3

document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories

4

identified above has concurred in this filing.

5

6

/s/ Minna L. Naranjo
Minna L. Naranjo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28