1   John C. Hueston (SBN 164921)
    jhueston@hueston.com
2   Douglas J. Dixon (SBN 275389)
    ddixon@hueston.com
3   **HUESTON HENNIGAN LLP**
4   620 Newport Center Drive, Suite 1300
    Newport Beach, CA 92660
5   Telephone: (949) 229-8640
6   Joseph A. Reiter (SBN 294976)
7   jreiter@hueston.com
    Christine Woodin, SBN 295023)
8   cwoodin@hueston.com
    **HUESTON HENNIGAN LLP**
9   523 West 6th Street, Suite 400
    Los Angeles, CA 90014
10  Telephone: (213) 788-4340
11
    *Counsel for Plaintiffs Match Group, LLC;*
12  *Humor Rainbow, Inc.; PlentyofFish Media*
    *ULC; and People Media, Inc.*
13
    Brendan P. Glackin (SBN 199643)
14  bglackin@agutah.gov
15  **OFFICE OF THE UTAH ATTORNEY**
    **GENERAL**
16  160 E 300 S, 5th Floor
    PO Box 140872
17  Salt Lake City, UT 84114-0872
    Telephone: (801) 366-0260
18
19  *Counsel for the Plaintiff States*

    Karma M. Giulianelli (SBN 184175)
    karma.giulianelli@bartlitbeck.com
    **BARTLIT BECK LLP**
    1801 Wewatta St., Suite 1200
    Denver, Colorado 80202
    Telephone: (303) 592-3100

    Hae Sung Nam (*pro hac vice*)
    hnam@kaplanfox.com
    **KAPLAN FOX & KILSHEIMER LLP**
    850 Third Avenue
    New York, NY 10022
    Telephone: (212) 687-1980

    *Co-Lead Counsel for Consumer Plaintiffs*

    Paul J. Riehle (SBN 115199)
    paul.riehle@faegredrinker.com
    **FAEGRE DRINKER BIDDLE & REATH**
    **LLP**
    Four Embarcadero Center, 27th Floor
    San Francisco, CA 94111
    Telephone: (415) 591-7500

    Christine A. Varney (*pro hac vice*)
    cvarney@cravath.com
    **CRAVATH, SWAINE & MOORE LLP**
    825 Eighth Avenue
    New York, New York 10019
    Telephone: (212) 474-1000

    *Counsel for Plaintiff Epic Games, Inc.*

20

21

22

23

24

25  ***Caption continued on next page.***

26

27

28

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

12

IN RE GOOGLE PLAY STORE ANTITRUST
LITIGATION

13

THIS DOCUMENT RELATES TO:

14

15

*Epic Games Inc. v. Google LLC et al.*,
Case No. 3:20-cv-05671-JD

16

17

*In re Google Play Consumer Antitrust
Litigation*, Case No. 3:20-cv-05761-JD

18

*State of Utah et al. v. Google LLC et al.*,
Case No. 3:21-cv-05227-JD

19

20

*Match Group, LLC, et al, v. Google LLC, et al.*,
Case No. 3:22-cv-02746-JD

21

Case No. 3:21-md-02981-JD

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION TO BIFURCATE DEFENDANTS'
COUNTERCLAIMS AGAINST EPIC AND
MATCH**

Judge:   Hon. James Donato

Date:       August 31, 2023
Time:       10:00 a.m.
Courtroom:   11

22

23

24

25

26

27

28

**NOTICE OF MOTION TO ALL PARTIES HEREIN**

**AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 31, 2023, at 10:00 a.m., in Courtroom 11 of the above-entitled Court, located on the 19th floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, under Federal Rule of Civil Procedure 42(b), Plaintiffs will and hereby do move to bifurcate Google's Counterclaims against Epic and Match,[1] such that Google's Counterclaims should be tried separately, to the same jury, immediately following the trial on the common antitrust issues. This Motion to Bifurcate is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declaration of Karma M. Giulianelli and accompanying exhibits, and such other matters as may be presented to the Court at the time of or before the hearing.

**RELIEF SOUGHT**

Plaintiffs respectfully request that the Court bifurcate the trial of Plaintiffs' antitrust claims from Google's Counterclaims against Epic and Match and order that, should Google's Counterclaims remain viable after the verdict on the antitrust claims, they will be tried to the same jury in a second phase against Epic and Match only.

---

[1] The term "Match" includes only the entities named as plaintiffs in Case No. 3:22-cv-02746-JD (N.D. Cal.).

i

MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1

# TABLE OF CONTENTS

2

3

TABLE OF AUTHORITIES ........................................................................................... iiii

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................................ 2

        A.      Plaintiffs' Common Antitrust Claims .................................................... 2

        B.      Google's Counterclaims .......................................................................... 3

III.    LEGAL STANDARD .......................................................................................... 3

IV.     ARGUMENT ....................................................................................................... 4

        A.      Bifurcation Is Necessary To Avoid Undue Prejudice to the States and
                Consumers ............................................................................................... 4

        B.      Bifurcation Is Necessary to Avoid Juror Confusion in this Already
                Complex Case .......................................................................................... 7

                1.      The Core Antitrust Claims Are Already Complex ..................... 7

                2.      Bifurcation Is Necessary to Avoid Juror Confusion ................. 8

                3.      Bifurcation Is Necessary to Streamline the Damages
                        Presentation ............................................................................... 9

                4.      Bifurcation Will Not Prejudice Google .................................... 10

        C.      Bifurcation Would Promote Judicial Economy ..................................... 11

V.      CONCLUSION .................................................................................................... 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
   55 F.R.D. 292 (S.D.N.Y. 1972) .................................................................................8, 9

*Cangress v. City of Los Angeles*,
   2015 WL 12661920 (C.D. Cal. Jan. 20, 2015) ................................................................6

*Cole v. Meeks*,
   2019 WL 4677000 (C.D. Ill. Sept. 25, 2019) ...............................................................10

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Assoc.*,
   2017 WL 3613874 (D.S.C. Aug. 23, 2017)....................................................................12

*De Anda v. City of Long Beach*,
   7 F.3d 1418 (9th Cir. 1993) .............................................................................................3

*Donato v. Fitzgibbons*,
   172 F.R.D. 75 (S.D.N.Y. 1997) .......................................................................................6

*Est. of Diaz v. City of Anaheim*,
   840 F.3d 592 (9th Cir. 2016) ...........................................................................................6

*Fetzer v. Wal-Mart Stores, Inc.*,
   2016 WL 6833912 (N.D. Ill. Nov. 21, 2016) ...............................................................10

*Fitbit, Inc. v. Aliphcom*,
   2016 WL 7888033 (N.D. Cal. May 27, 2016) ........................................................3, 9, 11

*Gable v. Land Rover N. Am., Inc.*,
   2011 WL 3563097 (C.D. Cal. July 25, 2011)............................................................8, 10

*Gen. Patent Corp. Int'l v. Hayes Microcomputer Prods. Inc.*,
   1997 WL 770874 (C.D. Cal. Oct. 20, 1997)....................................................................4

*Hardeman v. Monsanto (In re Roundup Prods. Liab. Litig.)*,
   No. 16-md-02741-VC (N.D. Cal. Mar. 25, 2019) .........................................................13

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   2014 WL 558759 (E.D.N.Y. Feb. 11, 2014) ...................................................................6

*In re Paris Air Crash of Mar. 3, 1974*,
   69 F.R.D. 310 (C.D. Cal. 1975)....................................................................................3, 4

*Int'l Mort. & Inv. Corp. v. Von Clemm*,
   301 F.2d 857 (2d Cir. 1962) .............................................................................................6

*J. B. v. G6 Hosp., LLC*,
   2021 WL 6621068 (N.D. Cal. Dec. 16, 2021)..................................................................3

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982).........................................................................................................11

*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005) ...................................................................10

*Marentes v. State Farm Mut. Auto. Ins. Co.*,
   224 F. Supp. 3d 891 (N.D. Cal. 2016)...........................................................12

*Memorex Corp. v. Int'l Bus. Machines Corp.*,
   555 F.2d 1379 (9th Cir. 1977) ...................................................................10

*Otsuka Pharm. Co., Ltd. v. Apotex Corp.*,
   143 F.Supp.3d 188 (D.N.J. 2015) ...............................................................11

*Owens v. Haslett*,
   98 Cal. App. 2d 829 (1950) ........................................................................11

*Payan v. County of Los Angeles*,
   2015 WL 9694810 (C.D. Cal. Mar. 11, 2015)...........................................6, 7, 8

*Sallenger v. City of Springfield*,
   2007 WL 2683794 (C.D. Ill. Aug. 7, 2007) .................................................10

*SanDisk Corp. v. STMicroelectronics Inc.*,
   2009 WL 1404689 (N.D. Cal. May 19, 2009)..................................................7

*SCFC ILC, Inc. v. Visa U.S.A. Inc.*,
   801 F. Supp. 517 (D. Utah 1992)......................................................8, 11, 12

*Sound Video Unlimited, Inc. v. Video Shack Inc.*,
   700 F. Supp. 127 (S.D.N.Y. 1988) ...............................................................6

*Starz Entm't, LLC v. Buena Vista Television, Inc.*,
   2008 WL 11336466 (C.D. Cal. Oct. 20, 2008)..............................................10

*Triad Sys. Corp. v. Se. Exp. Co.*,
   64 F.3d 1330 (9th Cir. 1995) ......................................................................8

*U.S. Gypsum Co. v. Nat'l Gypsum Co.*,
   1994 WL 74989 (N.D. Ill. Mar. 10, 1994) .....................................................8

*Winchester Drive-In Theatre, Inc.*,
   35 F.R.D. 141 (N.D. Cal. 1964)....................................................................8

*Yanni v. City of Seattle*,
   2005 WL 2180011 (W.D. Wash. Sept. 9, 2005).............................................13

**Rules**

Fed. R. Civ. P. 42(b) ...........................................................................................3

**Other Authorities**

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 ................4

## I.     **INTRODUCTION**

The Plaintiffs—39 State Attorneys General, Consumer Plaintiffs, and two major app developers—filed these lawsuits to put an end to Google's more than decade-long anticompetitive conduct that has foreclosed competition in Android app distribution and in-app payment services. All Plaintiffs raise similar claims under Sections 1 and 2 of the Sherman Act and under California law. The States are also pursuing an array of state-law antitrust and consumer protection claims. All Plaintiffs seek injunctive relief. And all but Epic seek treble damages. The gravamen of all Plaintiffs' claims is Google's unlawful foreclosure of competition and the harm Google has caused to millions of consumers, as well as to developers such as Epic and Match.

Google has filed counterclaims against Epic and Match alleging that they intentionally breached contracts with Google, acted in bad faith, and owe Google damages. These counterclaims are specific to Google's business relationships with Epic and Match. They have nothing to do with the States or Consumer Plaintiffs. The Court has ruled, and Plaintiffs agree, that a consolidated trial on common antitrust issues is the best approach for efficiently resolving this case. The issues raised in the counterclaims, however, are not common; some are unique to Epic; others are unique to Match; and none have any relevance to the claims of the States or Consumer Plaintiffs.

Allowing Google to try its Epic-and-Match-specific counterclaims together with the common antitrust claims challenging Google's anticompetitive conduct would unduly prejudice the States and Consumer Plaintiffs, whose claims may be tainted in the jury's eyes by Google's allegations of bad faith conduct by Epic and Match. Even if the jury can separate the allegations against Epic and Match from the issues relevant to the core antitrust claims, presentation of the counterclaims will significantly distract the jury from the primary issue in this case—whether Google's conduct is anticompetitive. By contrast, Google will suffer no prejudice if the counterclaims are tried separately.

Bifurcation will also promote judicial economy. Resolution of the common issues in the first trial could potentially moot Google's counterclaims. And if the counterclaims do survive the antitrust trial, resolution of the common issues will have mooted a central defense relied on by Epic and Match, leaving little evidentiary overlap for the second phase of the trial, where the same jury would hear the claims with the full benefit of the background and context provided by the antitrust trial.

This is an important, cutting-edge antitrust case. It should not be burdened with (let alone decided on the basis of) Google's allegations of bad conduct by only one or two of the four Plaintiff groups. Google's counterclaims should be tried separately, to the same jury, immediately following the trial on the common antitrust issues.

## II.   RELEVANT BACKGROUND

### A.   PLAINTIFFS' COMMON ANTITRUST CLAIMS

Plaintiffs' federal antitrust and California-law claims, as well as the other state-law antitrust claims, turn on complex questions of market definition, Google's monopoly power, and the complicated web of anticompetitive contractual and technological restrictions Google has imposed for over a decade, including its anticompetitive tie of Google Play Billing to the in-app sales of digital goods. Among other things, Plaintiffs will introduce evidence at trial that Google unlawfully:

- entered into agreements with carriers, original equipment manufacturers ("OEMs"), and developers that foreclosed competing app stores from the Android app distribution market. (*See, e.g.*, Dkt. 378 ¶¶ 63, 91–92, 124–126, 181–184, 190–192; Dkt. 380 ¶¶ 91–101, 102–106, 127–128; Dkt. 172 ¶¶ 112–130, 144–154; Case No. 3:21-cv-05227-JD, Dkt. 188 ¶¶ 105–106, 107–110, 116–129, 162–167.)

- entered into (i) agreements with would-be competitors to prevent them from entering into the Android app distribution market, and (ii) agreements to prevent developers from offering their apps via distribution channels other than Google Play. (Dkt. 378 ¶¶ 119–121, 128, 198–202; Dkt. 380 ¶¶ 112–114, 273–277, 283–287; Dkt. 172 ¶¶ 89–91; Case No. 3:21-cv-05227-JD, Dkt. 188 ¶¶ 135–153.)

- imposed technological roadblocks to prevent developers from offering, and consumers from downloading, Android apps from sources other than Google Play, including direct downloads from websites (*i.e.*, sideloading). (Dkt. 378 ¶¶ 101, 129–138; Dkt. 380 ¶¶ 121–124; Dkt. 172 ¶¶ 155–168; Case No. 3:21-cv-05227-JD, Dkt. 188 ¶¶ 83-04.)

- exploited its monopoly power by requiring app developers to use Google's payment system (Google Play Billing) for in-app purchases of digital products and charging supracompetitive fees for those transactions. (Dkt. 378 ¶¶ 145–147; Dkt. 380 ¶¶ 80, 163, 212; Dkt. 172 ¶¶ 4, 14–15; Case No. 3:21-cv-05227-JD, Dkt. 188 ¶¶ 191–197, 211–228.)

Proving these common claims will require substantial fact and expert testimony from both sides. The jury will also be required to consider numerous documents—contracts, internal decks, email correspondence, existing Chats, and so on.

## B.   GOOGLE'S COUNTERCLAIMS

Google brought counterclaims against only Epic and Match for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) quasi-contract/unjust enrichment; and (iv) declaratory judgment. (Dkt. 386 ¶¶ 50–74; Dkt. 388-1 ¶¶ 55–67, 77–86.) Google also alleges a false promise claim against Match. (Dkt. 388-1 ¶¶ 68–76.)

The core of these counterclaims is Google's assertion that Epic and Match employed bad-faith business tactics in their dealings with Google and broke their contractual promises. (Dkt. 386 ¶¶ 53–57; Dkt. 388-1 ¶¶ 58–59.) As to Epic, Google alleges that Epic engaged in a bad-faith and "highly choreographed attack" against Google through which Epic offered users of its popular *Fortnite* app an alternative payment method to Google Play Billing for in-app purchases, in violation of its contracts with Google. (Dkt. 386 ¶¶ 32, 36-37, 44-45.) With respect to Match, Google claims that, over many years, Match "continuously misled Google, intentionally and in bad faith," about their intention to integrate Google Play Billing into their apps, before ultimately choosing not to integrate the platform. (Dkt. 388-1 ¶¶ 44-52.) As explained in Section IV below, Google's accusations of bad faith dealings and its breach of contract claims against Epic and Match, and the evidence underlying them, have no place in an antitrust case tried by Plaintiffs with common claims, including a bipartisan coalition of 39 State Attorneys General.

## III.   <u>LEGAL STANDARD</u>

"Courts have broad discretion under Federal Rule of Civil Procedure [ ] 42(b) to bifurcate and stay counterclaims." *Fitbit, Inc. v. Aliphcom*, 2016 WL 7888033, at *1 (N.D. Cal. May 27, 2016); *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993) ("A district court's decision to order separate trials may be set aside only for an abuse of discretion"); *In re Paris Air Crash of Mar. 3, 1974*, 69 F.R.D. 310, 319-20 (C.D. Cal. 1975) ("Rule 42(b) is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case."). The Court may order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The presence of "any one is sufficient to sustain an order for a separate trial." *J. B. v. G6 Hosp., LLC*, 2021 WL 6621068, at *2 (N.D. Cal. Dec. 16, 2021); *see also*

*Gen. Patent Corp. Int'l v. Hayes Microcomputer Prods. Inc.*, 1997 WL 770874, at *1 (C.D. Cal. Oct. 20, 1997) ("[B]ifurcation may be proper upon a showing of any of these factors.").

## IV.   **ARGUMENT**

### A.   **BIFURCATION IS NECESSARY TO AVOID UNDUE PREJUDICE TO THE STATES AND CONSUMERS[2]**

Google's counterclaims against Epic and Match have nothing to do with the States' and Consumer Plaintiffs' cases against Google. Trying Google's counterclaims against Epic and Match at the same time as the core antitrust claims will substantially prejudice the States and Consumer Plaintiffs and risk needless juror confusion.

Under Federal Rule of Civil Procedure 42(b), bifurcation is proper "where evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues." *In re Paris Air Crash of Mar. 3, 1974*, 69 F.R.D. at 320 (quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388). That is exactly the risk present here. Plaintiffs anticipate that Google will try to paint Epic and Match as bad actors in an attempt to distract and confuse the jury about the merits of Plaintiffs' common antitrust claims. This strategy is evident from Google's pleadings.

With respect to Epic, Google alleges that Epic tricked Google into allowing *Fortnite* to launch on Google Play, while simultaneously "working for months on a way to conceal Epic's payment system in an update" to its *Fortnite* apps distributed through Google Play that would allow users to use an alternative payment solution instead of Google Play Billing. (Dkt. 111 ¶¶ 34, 36-37.) Plaintiffs expect Google will attempt to prove to the jury that Epic engaged in what Google characterizes as a deceitful publicity stunt. According to Google, in August 2019, Epic ███████

████████████████████████████████████████████████████

████████████." (█████ Tr. 399:14-18; DX0017.) Google ████████████████████████

████████████████████████████████████████. (*Id.* 399:23-400:9.) Epic subsequently contacted

---

[2] For the avoidance of doubt, Epic agrees that the inclusion at trial of Google's counterclaims against Epic and Match would unduly prejudice the States and Consumer Plaintiffs, but does not claim any such prejudice to Epic itself.

1  Google in late 2019 to say it █████████████████████████████████████████████

2  ██████.” (*Id.* 314:12-13.) But ███████████████████████████████████████████

3  ████████████████████████████████████████████████████████. (*Id.* 315:4-15.) Epic

4  ██████████████████████████████████████████████████████████████████████████

5  ████. (*Id.* 405:4-7.) Google alleges that Epic ████████████████████████████

6  ██████████████████████████████████████.” (DX0018; ████ Tr. 407:17-20.) For the next

7  two weeks, Google says that █████████████████████████████████████████████████

8  ████████████████████████████████████████████. (*Id.* 413:5-19.) Epic launched a

9  compliant version in April 2020. (Dkt. 386 ¶ 36.) But, according to Google, Epic had already been

10  secretly planning to bypass Google's requirement that Epic use only Google Play Billing to process

11  in-app transactions through a "hotfix"—in violation of its agreements with Google. (*Id.* ¶¶ 32, 34,

12  37.) And, to make matters worse, Google says, Epic retained "a public relations firm to further this

13  scheme . . . by creating a narrative that Epic is benevolent." (*Id.* 386 ¶¶ 32, 34, 36, 39.) Google will

14  further argue that, in reality, Epic's goal was to earn "tremendous monetary gain and wealth" by

15  consciously bypassing Google Play Billing. (*Id.* 386 ¶ 32.)

16  Google similarly claims that Match "continuously misled Google, intentionally and in bad

17  faith" with respect to their intention to use Google Play Billing, and that the "Match Group's financial

18  success has . . . resulted from a long history of deceptive and unfair business practices." (Dkt. 387

19  ¶¶ 37, 39, 44.) If Google's claims survive Match's pending motion for summary judgment, Google

20  will similarly spend hours at trial trying to spin the narrative that Match was required to comply with

21  the Payments Policy provision long before March 31, 2022, and that Google's policy change was not

22  a modification of its policies with respect to Match, but was a continuation of its Payments Policy.

23  (Dkt. 507-1 at 11–14.) While Google's modification of its Payments Policy to require the use of

24  Google Play Billing for ***all*** in-app transactions of digital goods will be at issue in the core antitrust

25  trial, whether Match breached its agreements with Google turns on (as set forth in the Match-specific

26  summary judgment briefing) complex questions of contract modification, waiver, consent,

27  consideration, rescission, causation, and damages. (*See* Dkt, 488-1 at 11–15; Dkt. 507-1 at 11–16;

28  Dkt. 528-1 at 3–8.) Again, these accusations of deception and complex contractual questions have

1  nothing to do with the core antitrust claims—which are the ***only*** claims relevant to the States and

2  Consumers.

3       Phasing the counterclaims is therefore necessary to mitigate the undue prejudice the States

4  and Consumer Plaintiffs would otherwise suffer from being associated with allegations of

5  wrongdoing that have nothing to do with them. The claims against Epic and Match are incendiary

6  enough that there is a risk the jury will not separate the States and Consumer Plaintiffs—as to whom

7  there are ***no allegations of bad faith***—from the other Plaintiffs. Courts routinely bifurcate claims to

8  avoid the "spillover" effect of prejudice by association. *See, e.g.*, *Payan v. County of Los Angeles*,

9  2015 WL 9694810, at *2 (C.D. Cal. Mar. 11, 2015); *Cangress v. City of Los Angeles*, 2015 WL

10  12661920, at *9 (C.D. Cal. Jan. 20, 2015); *Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 (S.D.N.Y.

11  1997); *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F. Supp. 127, 146 (S.D.N.Y. 1988).

12  Indeed, failing to bifurcate to prevent the introduction of "unduly prejudicial evidence" can constitute

13  reversible error. *See, e.g.*, *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016).

14       Here, the need for bifurcation is particularly great, given the States' sovereign interest in

15  protecting the citizens they represent from illegal anticompetitive conduct. The inclusion of

16  provocative counterclaims that have nothing to do with the States or Consumer Plaintiffs risks

17  villainizing these Plaintiffs in the minds of the jury and undermining the States' fundamental,

18  sovereign interests in bringing this action. *See Int'l Mort. & Inv. Corp. v. Von Clemm*, 301 F.2d 857,

19  862 (2d Cir. 1962) (describing the "policy of not encumbering government antitrust suits with a

20  multitude of collateral issues and of assuring to the government full control of the prosecution and

21  settlement of such public antitrust actions"); *In re Am. Express Anti-Steering Rules Antitrust Litig.*,

22  2014 WL 558759, at *2 (E.D.N.Y. Feb. 11, 2014) (denying motion to consolidate enforcement trial

23  with private actions so as to "avoid[] prolonging and confusing the Government's case with collateral

24  side issues").

25

26

27

28

**B.   BIFURCATION IS NECESSARY TO AVOID JUROR CONFUSION IN THIS ALREADY COMPLEX CASE**

The "complexity of issues" and the need to minimize the "risk of jury confusion" also strongly militate in favor of bifurcation. *SanDisk Corp. v. STMicroelectronics Inc.*, 2009 WL 1404689, at *2 (N.D. Cal. May 19, 2009).

**1.   The Core Antitrust Claims Are Already Complex**

The factual complexity of this case is undisputed and strongly favors bifurcation. As Google has acknowledged, this will be a "complex, high-stakes, and high-cost trial." (Dkt. 467 at 3; *see also id.* at 8, 9, 15; Dkt. 475 at 3 n.2 (noting "the complex MDL at hand").) Google's conduct at issue is wide ranging in scope and time, spanning over a decade and involving a complicated web of agreements and business strategies, including numerous types of anticompetitive contracts and projects, *e.g.*, Google's Project Hug, Games Velocity Program, App Velocity Program, Project Banyan, and Project Everest, to name only a few. The conduct at issue involved and affected many entities and individuals, including carriers, OEMs, app store competitors or would-be competitors, thousands of Android app developers, and billions of consumers. (*See* Section II.A, *supra*.) To render a verdict, the jury will need to understand this conduct, the multitude of contractual arrangements supporting it, and a variety of technologies, including mobile operating systems, mobile applications, app distribution methods, and payment solution services.

The legal issues common to all Plaintiffs are also complicated. The jury will need to grapple with competing market definitions; the extraordinarily complex burden-shifting rule of reason analysis; *per se* determinations that Google says involve "complex business arrangements," (Dkt. 523 at 7); and dueling expert opinions on complicated subjects including economics, anticompetitive effects, consumer behavior, technology, accounting, and damages.

Bifurcation would streamline the evidence and simplify the law and instructions for the jury. The jury instructions on the common issues alone—spanning dozens of federal and state-law antitrust claims, as well as state-law consumer protection claims—will "require[e] the jury to appreciate technical legal circumscriptions." *Payan*, 2015 WL 9694810, at *2. Adding instructions on the counterclaims would be "needlessly complex." *Id.* "It is difficult to expect the jury to understand the

- 7 -

MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1  subtle differences between several claims when they are faced with such lengthy instructions.

2  Therefore, bifurcation is necessary to avoid possible prejudice and evidentiary spillover." *Id.*

3  Courts routinely bifurcate antitrust and ancillary claims to simplify the issues for the jury. For

4  example, the Ninth Circuit has found bifurcation of a "copyright infringement claim and . . . antitrust

5  claims" appropriate to avoid "the jury . . . muddl[ing] the two." *Triad Sys. Corp. v. Se. Exp. Co.*, 64

6  F.3d 1330, 1338 (9th Cir. 1995), *superseded by statute on other grounds*, 17 U.S.C. § 117(c). Other

7  examples abound. *See, e.g.*, *Winchester Drive-In Theatre, Inc.*, 35 F.R.D. 141, 143–44 (N.D. Cal.

8  1964) ("There are compelling reasons for granting a separate trial in this case. . . . The complicated

9  nature of the proof in an antitrust case in general, the prior history of this particular case, the variety

10 of distribution practices in the motion picture industry, and the multiple parties and cross claims

11 indicate that the proof on the antitrust issues will be voluminous and complex. . . . It would be

12 confusing to a jury to have to separate the evidence relating to the release and settlement issues from

13 the evidence relating to the antitrust issues. The Court would have to give the jury a complicated set

14 of instructions providing for several possible verdicts."); *SCFC ILC, Inc. v. Visa U.S.A. Inc.*, 801 F.

15 Supp. 517, 529 (D. Utah 1992) ("By bifurcating the trial the court will insure a fair, unprejudiced

16 decision on the merits of the antitrust dispute without the complications and confusion which could

17 arise from the other claims and [fraud and bad faith] counterclaims."); *Broad. Music, Inc. v.

18 Columbia Broad. Sys., Inc.*, 55 F.R.D. 292, 297 (S.D.N.Y. 1972) ("The antitrust claim should be tried

19 separately," in part, "because trial of the antitrust claim will involve proof of different facts than trial

20 of the contract and fraud counts."); *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 1994 WL 74989, at *2

21 (N.D. Ill. Mar. 10, 1994) ("[B]ifurcation of the quite complex, and at this point, contingent, antitrust

22 trial from the patent issues, in accordance with the general practice, best serves the interests of justice

23 in this case.").

24  **2.    Bifurcation Is Necessary to Avoid Juror Confusion**

25  Bifurcation "will also help prevent juror confusion at trial by allowing the jury to decide

26 issues that are as narrowly tailored as possible." *Gable v. Land Rover N. Am., Inc.*, 2011 WL

27 3563097, at *7 (C.D. Cal. July 25, 2011). Trying Plaintiffs' claims with Google's counterclaims risks

28 the jury "blur[ring] the distinction between legitimate [contract] enforcement and the exercise of

1   'unlawful' monopolistic powers." *Fitbit*, 2016 WL 7888033, at *2. Courts routinely bifurcate claims

2   where one claim may cause the jury to blur the distinct legal and factual issues presented by the

3   separate claims. *See, e.g.*, *id.* (ordering bifurcation on this basis); *see also Broad. Music, Inc.*, 55

4   F.R.D. at 297 ("[T]rial of the antitrust claim will involve proof of different facts than trial of the

5   contract and fraud counts.").

6        Google's counterclaims against Epic and Match directly implicate this risk. For example,

7   Google alleges that Epic and Match breached Google's Payment Policy. Determining whether those

8   Plaintiffs breached the specific contracts they signed involves applying the policy to the specific

9   allegedly breaching conduct. Plaintiffs, on the other hand, allege that the policy is an illegal tie that

10  is unlawful in all contexts. The analysis of Google's counterclaims about whether Epic and Match

11  breached their agreements with Google is considerably less difficult than the complex antitrust

12  analysis the jury must undertake to understand the economic issues, informed by expert evidence,

13  about whether Google's policy is an illegal tie.

14       Similarly, Google alleges that Epic and Match breached Google's Developer Distribution

15  Agreement ("DDA"), which is one of the agreements Plaintiffs allege contains anticompetitive

16  restraints. No one—not even Google—is claiming that Google's liability under the antitrust laws

17  turns on whether Epic and Match breached Google's Payments Policy or the DDA. These questions

18  require distinct analysis, and there is a serious risk that the jury will conflate the particularized

19  questions of whether Epic and Match violated Google's Payments Policy or breached its DDA with

20  the common antitrust questions of whether Google's policies and contracts are unlawful under the

21  antitrust laws. That risk of confusion could warrant bifurcation even in a trial involving Epic and

22  Match alone. But the risk is magnified here because, as noted, the question of whether Epic and

23  Match are liable to Google has ***no bearing at all*** on the cases the States and Consumer Plaintiffs are

24  prosecuting.

25                    **3.    Bifurcation Is Necessary to Streamline the Damages Presentation**

26       Trying Google's counterclaims with the core antitrust claims would add the additional

27  complication of introducing two separate damages cases against Epic and Match—in addition to the

28  complex damages cases the States, Consumer Plaintiffs, and Match will already be presenting against

Google. Courts bifurcate liability from damages in cases much less complex than this one. *See, e.g.*, *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) ("The district court had broad discretion to try the liability phase first [before damages] and did not abuse its discretion in bifurcating the trial."); *Gable*, 2011 WL 3563097, at \*7 (granting motion to bifurcate).

### 4.    Bifurcation Will Not Prejudice Google

Bifurcation will not prejudice Google for several reasons.

*First*, Plaintiffs propose that the same jury should hear Google's counterclaims immediately following the trial on the core antitrust claims. "[U]tilizing the same jury . . . eliminates any Seventh Amendment concerns." *Fetzer v. Wal-Mart Stores, Inc.*, 2016 WL 6833912, at \*6 (N.D. Ill. Nov. 21, 2016); *see also Sallenger v. City of Springfield*, 2007 WL 2683794, at \*2 (C.D. Ill. Aug. 7, 2007); *Cole v. Meeks*, 2019 WL 4677000, at \*5 (C.D. Ill. Sept. 25, 2019) ("Seventh Amendment rights were not implicated since the trial was separated into two separate phases" before "the same jury.").

*Second*, the only affirmative defense that conceivably relates to Google's counterclaims is unclean hands, which Google asserts against Epic and Match only. (*See* Dkt. Dkt. 388-1 at 27–29; 386 at 24–25.) But "'[u]nclean hands' has not been recognized as a defense to an antitrust action for many years." *Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977). And even if it were a viable defense to an antitrust claim (which it is not), unclean hands is an equitable defense that the Court—not the jury—will decide. *Starz Entm't, LLC v. Buena Vista Television, Inc.*, 2008 WL 11336466, at \*2 (C.D. Cal. Oct. 20, 2008).

*Third*, as explained below, there is very little evidentiary overlap between Google's counterclaims and the Plaintiffs' antitrust claims. (*See* Section IV.B.2, *infra*.) And Google will not be prejudiced if some evidence relevant to its counterclaims is presented after the antitrust trial because the same jury will decide both claims. In fact, Google would likely benefit during the counterclaims trial because (i) the jury will already be familiar with the background, (ii) Google can try the counterclaims in a focused way during its case-in-chief without having to defend against antitrust claims, and (iii) there will be at most three parties participating in that phase of the trial instead of five.

1    In short, bifurcation will avoid prejudicing Plaintiffs in multiple ways, and will not prejudice

2    Google. Bifurcation is appropriate for this reason alone.

3            **C.      BIFURCATION WOULD PROMOTE JUDICIAL ECONOMY**

4            Bifurcation will also promote judicial economy. Removing the counterclaims from the trial

5    on the core antitrust claims will help streamline the presentation of evidence. And resolution of the

6    antitrust claims could moot or significantly limit Google's counterclaims. Indeed, trying the antitrust

7    claims first could avoid a trial on Google's counterclaims altogether. Even if the counterclaims

8    remain viable after the antitrust trial, the counterclaim trial will not require duplication of resources

9    because the jury will already be familiar with the common evidence.

10           Bifurcation is warranted if the first trial may potentially moot or limit the remaining claims,

11   thereby "conserving judicial economy." *Fitbit*, 2016 WL 7888033, at *2; *see also SCFC ILC, Inc.*,

12   801 F. Supp. at 528 ("Bifurcation will increase trial efficiency. There may be no need to hold the

13   second proceeding."). This factor strongly favors bifurcation.

14           *First*, if Plaintiffs prevail on antitrust liability, including their tying claims, Google's

15   counterclaims would fail as a matter of law and would not need to be tried to a jury, thereby

16   "preserving judicial economy" and "making the issues the jury must consider less complex." *Otsuka*

17   *Pharm. Co., Ltd. v. Apotex Corp.*, 143 F.Supp.3d 188, 197 (D.N.J. 2015). Google's claims for breach

18   of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment

19   against Epic and Match all expressly depend on the existence of a "lawful," "valid," or "enforceable"

20   contract (*i.e.*, the DDA). (Dkt. 388-1 ¶¶ 56, 64, 69, 72, 86; Dkt. 386 ¶¶ 51, 61, 74.) Plaintiffs challenge

21   the relevant contract as an unlawful restraint of trade. (Case No. 3:21-cv-05227-JD, Dkt. 188 ¶¶ 276-

22   84.) Thus, if Plaintiffs prevail, the contract cannot be enforced as a matter of law. *See, e.g.*, *Kaiser*

23   *Steel Corp. v. Mullins*, 455 U.S. 72, 77–82 (1982) (refusing to enforce a contract that violated the

24   Sherman Act because "illegal promises will not be enforced"). For that same reason, Google's quasi-

25   contract claims against Epic and Match would also fail as a matter of law. *See Owens v. Haslett*, 98

26   Cal. App. 2d 829, 833 (1950) (the law "precludes recovery on principles of quasicontract for benefits

27   conferred under an illegal bargain, as well as an action on the bargain itself").

28

1   Google's only remaining counterclaim—for false promise against Match—likewise depends

2   on an enforceable DDA. Google alleges Match obtained an extension of the deadline to comply with

3   Google's Payments Policy (part of the DDA) by falsely promising to comply. Google claims that

4   "[a]bsent that extension, Google could have enforced its policies on October 1, 2021" and collected

5   service fees from that date. (Dkt. 507-1 at 10, 22.) Google also alleges it ███████████

6   ████████████████████████████████████████████████████████████████

7   ██████████████." (*Id.* at 20.) If the terms of Google's DDA and related Payments Policy are

8   found unlawful, then Match would have had no reason for making the alleged false promise, could

9   have continued using their own payment systems, and Google would be unable to prove reliance or

10  damages. *See Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 921 (N.D. Cal. 2016).

11      *Second*, even if Google is not found liable in the antitrust phase, such a judgment may

12  promote narrowing of the counterclaims and the streamlining of remaining issues. *See SCFC ILC,

13  Inc.*, 801 F. Supp. at 528 ("Even if there is a second proceeding the number of issues involved may

14  be reduced by the outcome of the first proceeding."). Courts recognize that there are efficiencies

15  where a first trial is outcome determinative and thus "the need for the second trial is obviated," and

16  even if not determinative of all the issues, can still serve to "facilitate[] settlement and a potential

17  narrowing of the issues for the second trial." *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l

18  Assoc.*, 2017 WL 3613874, at *6 (D.S.C. Aug. 23, 2017). With respect to Google's counterclaims,

19  Epic's primary affirmative defense (and an important defense for Match) is that Google's contracts,

20  including its DDA, are unlawful. A finding of non-liability would therefore potentially moot those

21  defenses and provide the parties an opportunity to narrow what issues (if any) need to be resolved in

22  the second phase of trial.

23      *Third*, even if Google's counterclaims survive the antitrust trial, bifurcation would be

24  efficient. As explained in Section II *supra*, much of the evidence that Google will need to introduce

25  to prove its counterclaims has nothing to do with Plaintiffs' claims and involves distinct factual

26  issues. Google will likely argue that some evidence relevant to its counterclaims will also be

27  presented at the trial of Plaintiffs' claims. But any arguments concerning evidentiary overlap will

28  rest on a faulty premise; there is no need to present evidence twice under Plaintiffs' proposal, which

1  would have the *same jury* try Google's counterclaims against Epic and Match immediately following

2  the resolution of the common issues. Courts routinely permit juries "to consider testimony from the

3  first phase in their deliberations in the second phase." *Yanni v. City of Seattle*, 2005 WL 2180011, at

4  *2 (W.D. Wash. Sept. 9, 2005); *see, e.g.*, Pretrial Order No. 135, *Hardeman v. Monsanto (In re*

5  *Roundup Prods. Liab. Litig.)*, No. 16-md-02741-VC (N.D. Cal. Mar. 25, 2019) (instruction to the

6  jury to "consider the evidence from both phases in deciding the facts in Phase 2").

7  **V.    CONCLUSION**

8         For the foregoing reasons, Plaintiffs respectfully request that the Court bifurcate the trial of

9  Plaintiffs' common antitrust claims from Google's counterclaims against Epic and Match and order

10  that, should Google's counterclaims remain viable after the verdict on the antitrust claims, they will

11  be tried to the same jury in a second phase against Epic and Match only.

12  DATED:  July 27, 2023                    OFFICE OF THE UTAH ATTORNEY GENERAL

13

14

15                                          By:  *Brendan P. Glackin*

16                                          Brendan P. Glackin
                                            Lauren M. Weinstein
17                                          *Attorneys for Plaintiff States*

18

19  DATED:  July 27, 2023                    BARTLIT BECK LLP

20

21                                          By:  */s/ Karma M. Giulianelli*

22                                          Karma M. Giulianelli
                                            *Co-Lead Counsel for Consumer Plaintiffs*
23

24

25  DATED:  July 27, 2023                    KAPLAN FOX & KILSHEIMER LLP

26

27                                          By:  */s/ Hae Sung Nam*

28                                          Hae Sung Nam
                                            *Co-Lead Counsel for Consumer Plaintiffs*

- 13 -

1

2   DATED:  July 27, 2023                           FAEGRE DRINKER BIDDLE & REATH LLP

3

4
                                                    By:   /s/ Paul J. Riehle
5                                                         Paul J. Riehle
                                                          *Counsel for Plaintiff Epic Games, Inc.*
6

7

8   DATED:  July 27, 2023                           CRAVATH, SWAINE & MOORE LLP

9

10
                                                    By:   /s/ Yonatan Even
11                                                        Yonatan Even (*pro hac vice*)
                                                          *Counsel for Plaintiff Epic Games, Inc.*
12

13

14  DATED:  July 27, 2023                           HUESTON HENNIGAN LLP

15

16
                                                    By:   /s/ Douglas J. Dixon
17                                                        Douglas J. Dixon
                                                          *Attorney for Plaintiffs Match Group, LLC, Humor*
18                                                        *Rainbow, Inc., PlentyofFish Media ULC, and*
                                                          *People Media, Inc.*
19

20

21

22

23

24

25

26

27

28

MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1

## **E-FILING ATTESTATION**

2          I, Douglas J. Dixon, am the ECF User whose ID and password are being used to file this

3   document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the

4   signatories identified above has concurred in this filing.

5

6

7                                                  */s/ Douglas J. Dixon*

8                                                   Douglas J. Dixon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD