Karma M. Giulianelli (SBN 184175)
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140
karma.giulianelli@bartlitbeck.com

Hae Sung Nam (*pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7715
hnam@kaplanfox.com

*Co-Lead Counsel for Consumer Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION**<br><br>RELATED ACTIONS:<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Case No. 3:21-md-02981-JD<br><br>**CONSUMER PLAINTIFFS' OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF** |

## INTRODUCTION

More than ten weeks after Consumer Plaintiffs served the supplemental expert report of Dr. Hal Singer, and days before the Court's concurrent expert proceeding, Google has filed a motion to supplement its *Daubert* briefing to address that report. Google's motion for leave to file supplemental briefing is just the latest in a series of efforts by Google to advance additional arguments against Dr. Singer's damages models long after the time for doing so passed. Worse still, Google's arguments are baseless and rest on brazen misrepresentations of Dr. Singer's reports and testimony. Because the motion is untimely and prejudicial to Plaintiffs, Consumer Plaintiffs oppose Google's motion for leave to file supplemental briefing in support of its *Daubert* motion, ECF 541. In the alternative, if the Court grants Google's motion, Consumer Plaintiffs ("Plaintiffs") seek leave to file a brief responding to Google's supplemental briefing within 14 days. *See* Civil L.R. 7-3.

## BACKGROUND

After Plaintiffs informed Google that they would proceed to trial on behalf of individual plaintiffs to accommodate the joint trial date and in light of Google's pending 23(f) appeal, Google asked for more information about how Plaintiffs intended to prove damages for those individual plaintiffs. Plaintiffs agreed to supplement Dr. Singer's Merits Report to include calculations of the individual plaintiffs' damages. *See* ECF 541-2, Declaration of Justin P. Raphael ("Raphael Decl.") ¶ 3; ECF 541-3, Raphael Decl., Ex. B. This was a courtesy to Google; no supplementation was necessary. Dr. Singer's Merits Report disclosed a model to calculate individual consumer damages, and Dr. Singer described the methodology he would use to calculate damages nearly a year ago at the concurrent expert proceeding. ECF 302 at 86:3-15; ECF 510-2 ("Singer Merits Report") ¶¶ 422-28 & Tables 23-24. Nonetheless, Plaintiffs served a supplemental report on May 12, 2023, which simply applied that methodology to transaction data Google already had. *See* Raphael Decl., Ex. C ("Singer Supp. Rpt.") ¶ 3 ("In the Singer Merits Report, I demonstrated how to calculate damages for any given individual U.S. Consumer by applying a common formula to that individual's purchase data. Here I apply that methodology using purchase data produced in this litigation for each of the six Plaintiffs identified above.").

What Plaintiffs believed to be a good-faith request by Google for individual damages calculations turned out to be anything but. On June 14, 2023, over a month after Plaintiffs served Dr. Singer's Supplemental Report, Google served hundreds of pages of analysis, critiques, exhibits, and appendices—much of which was duplicative of Dr. Leonard's Merits Rebuttal Report, and *all of which could have been raised in that report*. *See* Raphael Decl., Ex. D ("Leonard Supp. Rpt."). Consumer Plaintiffs served a seven-page reply report addressing Google's new arguments on June 30, 2023. *See id.*, Ex. E ("Singer Supp. Reply"). Now, with days to go before the concurrent expert proceeding, Google seeks leave to file supplemental briefing that amounts to a new *Daubert* motion.

## DISCUSSION

### A. Google's Proposed Briefing Mischaracterizes Dr. Singer's Report.

Dr. Singer's Merits Report described how to calculate consumer damages by calculating the difference between the average actual and but-for take rates for each app category, which started with multiplying the difference in the average take rates by consumer expenditure in that category. *See* Singer Merits Report ¶¶ 422-28 & Tables 23-24. Dr. Singer's Supplemental Report applied this method to the individual plaintiffs' purchases in each category to calculate their individual damages. Singer Supp. Rpt. ¶ 3. Dr. Singer further explained that "the same framework could also be applied" to calculate damages based on plaintiffs' purchases from individual developers, *id.* ¶ 4 n.4, just as he had explained in his Merits Report when describing the method for calculating category-level consumer damages, *see* Singer Merits Report ¶ 422 n.957.

Dr. Leonard responded to Dr. Singer's Supplemental Report by picking and choosing developers who enjoyed lower than average take rates in the actual world (due to Google's recent limited reductions of that rate) and observing that the but-for take rates and overcharges for those developers' *categories* were higher than the service fees those developers paid to Google on some (but not all) of their transactions in the actual world. Leonard Supp. Rpt. ¶¶ 17-18. Google reiterates this point in its proposed supplemental briefing. ECF 541-1 ("Proposed Supp. Br.") at 2.

As Dr. Singer explains in his Supplemental Reply Report, Google's criticism wholly misapplies the category-level analysis. Singer Supp. Reply ¶¶ 7-12. A small portion of developers received especially low take rates from Google. As a result, the but-for take rate for these developers' *categories* is higher than what Dr. Singer would calculate for purchases from these developers when applying his method *at the developer level*. Dr. Singer's developer-level approach, which he applied in his Supplemental Reply Report, (1) takes the actual and but-for take rates for each developer at a given point in time, (2) multiplies the difference in those take rates by the amount each consumer spent on the relevant app at that time, and (3) multiplies that amount by the applicable pass-through rate for those purchases to determine the consumer's overcharge. *Id.* ¶¶ 9-10. When particular developers' take rates are considered using the developer-specific calculations Dr. Singer has described, ***no developer's but-for take rate, and no resulting overcharge, is higher than the developer's actual-world service fee***. *Id.* ¶ 12.

With Dr. Leonard's rebuttal analysis eviscerated by a proper application of Dr. Singer's method, Google resorts to misleading and irrelevant claims based on selections from Dr. Singer's deposition testimony. Google's proposed brief claims incorrectly that Dr. Singer "predicted that a developer would have charged a *higher* price when it would have been subject to a *lower* service fee for the same transaction." Proposed Supp. Br. at 3 (emphasis in original). This is false; here Google conflates two distinct transactions. Moreover, this argument misleadingly focuses on but-for prices that are inputs to Dr. Singer's damages calculations, and skips over the fact that the aspect of Dr. Singer's calculations that Google criticizes reflects a conservative assumption in his estimation of damages.

Consider the example of the Microsoft app discussed in Google's proposed briefing and at Dr. Singer's deposition. The but-for prices in question involved *two distinct transactions* (not one) before and after Google lowered its subscription take rate. *Id.*; *see* Raphael Decl., Ex. G ("Singer Dep.") at 29:2-5. Although Google describes Dr. Singer's method as "contrary to economics," Proposed Supp. Br. at 3, Dr. Singer's method sensibly predicts that after Google reduced its service fee, the resulting overcharge to consumers who purchased this app was lower. Singer Dep. 29:2-16. This is what standard economics would predict: Google's service fee fell,

so the overcharge to consumers fell in turn. The smaller the decline in the service fee as a percentage of the transaction value, the smaller the absolute cost reduction received by the developer, and the smaller the overcharge.

Unable to find problems with this overcharge analysis, Google focuses on the but-for prices that are inputs to determining that overcharge. After the reduction in the Microsoft app's take rate, it did not *immediately* adjust its app price downward in response, making the but-for world price of the Microsoft app appear higher than another transaction where the service fee fell by more in the but-for world. But this is a *conservative* assumption of Dr. Singer's damages model. Dr. Singer's damages calculations are keyed to developers' actual-world prices, meaning a lower overcharge with respect to a given app purchase, if accompanied by no immediate reduction in the real-world app price, entails a higher app price in the but-for world. *See id.* 43:9-44:21. By tying damages to actual world prices, Dr. Singer's method produces some but-for prices that are higher than would be expected had Google's take rate been persistently lower from the start of the class period, but the result is a damages model that conservatively estimates damages.

Google's newfound criticism of Dr. Singer's model is little more than a trumped up restatement of the flawed claims underlying its own expert's pass-through analysis—that the developer should have *immediately* passed through its cost savings to consumers *in the actual world*. As Dr. Singer has repeatedly explained, searching for pass-through under these conditions is a fool's errand.

**B. Google's Proposed Supplemental Briefing is Untimely and Prejudicial.**

Google has been aware since Plaintiffs served Dr. Singer's expert report on October 3, 2022, that Plaintiffs intended to use Dr. Singer's damages model to calculate damages for the named class members and the rest of the certified class. The trial on behalf of the class would have required demonstrating individual damages calculations just as much as the trial on behalf of individual consumers does now. Moreover, the individual plaintiffs who were excluded as class representatives by the Court's class certification order remained in this case, meaning Plaintiffs needed to prove damages for those consumers as well. Nonetheless, Google waited

until long after its *Daubert* briefing was filed in April to ask about, and subsequently critique, the application of Dr. Singer's models to calculate individual damages. Because Google could have raised the arguments it now presses in its supplemental briefing as part of its *Daubert* motion, its motion for supplemental briefing should be denied. *See Applied Elastomerics, Inc. v. Z-Man Fishing Prod., Inc.*, No. C 06-2469 CW, 2007 WL 1593212, at *5 n.4 (N.D. Cal. June 1, 2007) (denying motion to file supplemental brief where "Defendant should have, and could have, addressed" the argument in its earlier briefing).

Even if Google had a legitimate basis for not raising these arguments in its *Daubert* motion, it has had *months* since that motion to raise these issues. Instead, nearly three months since receiving Dr. Singer's Supplemental Report, and just six days before the concurrent expert proceeding, Google only now seeks to file supplemental briefing. Had Google believed that Dr. Singer's Supplemental Report—or indeed his Supplemental Reply Report—warranted additional *Daubert* briefing, it had many opportunities to say so. But Google kept quiet about its plans until just hours before the parties' negotiated joint submission for the concurrent expert proceeding would be filed. *See* Raphael Decl., Ex. H. Google's behavior is gamesmanship designed to sandbag Plaintiffs shortly before the concurrent expert proceeding. The Court should reject this gamesmanship and deny Google's motion.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Google's motion for leave to file a supplemental *Daubert* brief, ECF 541. In the alternative, Plaintiffs seek leave to file a brief responding to Google's supplemental briefing within 14 days.

Dated: July 31, 2023

Respectfully submitted,

By: */s/ Karma M. Giulianelli*

**BARTLIT BECK LLP**
Karma M. Giulianelli (SBN 184175)
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Facsimile: (303) 592-3140
karma.giulianelli@bartlitbeck.com

**KAPLAN FOX & KILSHEIMER LLP**
Hae Sung Nam (pro hac vice)
850 Third Avenue
New York, NY 10022
Tel.: (212) 687-1980
Fax: (212) 687-7715
hnam@kaplanfox.com

*Co-Lead Counsel for Consumer Plaintiffs*

**E-FILING ATTESTATION**

I, Karma Giulianelli, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Karma M. Giulianelli*
Karma M. Giulianelli

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served on July 31, 2023, upon all counsel of record via the Court's electronic notification system.

*/s/ Karma M. Giulianelli*
Karma M. Giulianelli