UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21- cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF CHRISTOPHER BUTLER IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED RELATING TO DEFENDANTS' MOTION FOR LEAVE**<br><br>Judge James Donato |

I, Christopher Butler, declare as follows:

1. I am the Senior Director and Financial Controller for the digital business of Aristocrat Leisure Limited ("Aristocrat") known as Pixel United. I have held this position since June 2023. I was previously the Director of Accounting at Pixel United from 2019 to June 2023. One of Aristocrat's subsidiaries, Big Fish Games, Inc. ("Big Fish"), develops gaming apps that are available through, among other places, the Google Play Store. Through my employment, I am familiar with the financial information of Big Fish, including revenue and expenses associated with its gaming apps.

2. I understand that, in the above-captioned matter, Defendants Google LLC, Google Ireland Limited, Google Commerce Ltd., Google Asia Pacific Pte. Ltd., and Google Payment Corp. (collectively, "Google") filed an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed Relating to Google's Motion for Leave to File Supplemental Brief in Support of Google's Motion to Exclude the Merits Opinions of Dr. Hal Singer (MDL

1  Dkt. 542). In support of that administrative motion, I understand that Google has submitted the
2  Declaration of Sujal J. Shah (MDL Dkt. 542-1), which pinpoints the places in Google's Motion
3  for Leave that contain information designated as confidential by another party.

4        3.     I make this declaration in support of sealing information pursuant to subsection
5  (c)(1) of Civil Local Rule 79-5, specifically with respect to Big Fish's information contained in
6  Exhibit F to the Declaration of Justin P. Raphael in Support of Google's Motion for Leave
7  (hereinafter, "Exhibit F") (MDL Dkt. 541-3). Specified portions of the chart in Exhibit F should
8  remain under seal for the reasons stated in this declaration. Except where otherwise indicated, I
9  have personal knowledge of the matters stated herein, and if called as a witness in this matter, I
10 could and would testify thereto.

11       4.     It is my understanding that the table in Exhibit F displays information that Google
12 produced in the above-captioned matter detailing the transactions individual named plaintiffs
13 made on the Google Play Store during the class period at issue. Specifically, Rows 10 and 11 of
14 the table contain confidential financial and business information relating to Big Fish's apps
15 available through the Google Play Store, including the Product ID of two purchases an individual
16 named plaintiff made on Big Fish's apps at specified points in time, along with the pre-tax and
17 post-tax price the individual paid to Google, and the service fee Google took from Big Fish for
18 those transactions. It also contains calculations by plaintiffs' damages expert Dr. Singer on the
19 price the individual would have paid in a but-for world absent Google's challenged conduct and
20 the lower service fees Google allegedly would have charged and that developers, like Big Fish,
21 would have allegedly "passed through" to the consumers.

22       5.     Much of this information is or reflects commercially sensitive business
23 information that Big Fish keeps confidential, and Big Fish requests that the specific information
24 described below remain sealed as such disclosure would put it at a disadvantage in the highly
25 competitive mobile gaming industry. The excerpts from Rows 10 and 11 of Exhibit F that Big
26 Fish hereby seeks to seal, with the reasons for each request, are set forth below.

6. <u>Product ID</u>: The Product IDs listed in Rows 10 and 11 of Exhibit F are IDs of a specific product type available on a particular Big Fish app in the Google Play Store. These Product IDs are created by Big Fish, unique to the in-app products offered on the Big Fish app, and are only visible to Big Fish and Google. Product IDs are integrated into Google Play Store's billing system and help developers like Big Fish track and manage purchases made on their apps through Google Play's developer console.[1] If a competitor or other third party had Big Fish's unique Product ID numbers, they could incorporate the Product IDs into non-Big Fish apps, potentially resulting in erroneous transactions. Big Fish takes steps to maintain its Product IDs as confidential. This type of identifying information is not shared outside of the company, and any disclosure of it within the company is limited to persons who are subject to confidentiality obligations and who have a need to know the information.

7. <u>Actual Take Rate</u>: The percentages under this column reflect the amount of Google Play Store service fees Big Fish paid on these specific transactions. As shown in Exhibit F, the service fee percentages are not the same for each transaction. Therefore, disclosure of the actual take rate would enable a competitor to determine the exact service fees that Big Fish pays on specific transactions in this app and to understand the revenue that Big Fish earns on those transactions. This data is commercially sensitive, and its disclosure would result in competitive harm to Big Fish by providing insight into the monetization of its app, which could give competitors an unfair advantage in seeking to compete with Big Fish in the mobile gaming marketplace. For example, disclosure of this information would allow competitors to understand the financial performance of Big Fish's app, both generally and specifically on the Android platform (versus other platforms, such as iOS), thereby identifying potential areas that may be exploited by competitors or used against Big Fish by other third parties. Big Fish takes steps to maintain its service fee information as confidential. This type of financial information is not shared outside of the companies, and any disclosure of it within the companies is limited to

---

[1] *See* Google Play's Billing System, *available at* https://developer.android.com/google/play/billing.

persons who are subject to confidentiality obligations and who have a need to know the information.

8. <u>But-For Take Rate</u>: I understand that Dr. Singer calculates the but-for take rates by cutting the actual take rates by approximately 47%. *See* Exhibit D to the Declaration of Justin P. Raphael in Support of Google's Motion for Leave (MDL Dkt. 541-3) at ¶¶ 8–12. Because the but-for take rate is derived from the commercially sensitive and confidential actual service fee information discussed above, the disclosure of such information would be harmful to Big Fish for similar reasons.

9. <u>Pass-Through Rate</u>: I understand that Dr. Singer has opined that, absent the challenged conduct, Google allegedly would have charged developers lower service fees for the use of the Google Play Store, and developers in turn allegedly would have reduced the prices of apps, subscriptions and in-app purchases—*i.e.*, developers would have "passed through" lower service fees. I further understand that the Pass-Through Rates listed in Exhibit F are calculated using confidential developer-specific data, namely Big Fish app's relative share within the Games category of the Google Play Store. *See* Exhibit C to the Declaration of Justin P. Raphael (MDL Dkt. 541-3) (Dr. Singer Supplemental Report submitted May 12, 2023) ¶¶ 4–5, 10 and 14; Exhibit D to the Declaration of Justin P. Raphael (MDL Dkt. 541-3) (Dr. Leonard Supplemental Report submitted June 14, 2023) ¶ 5 n.2, and ¶ 10 n.6. In other words, the Pass-Through Rate is calculated by subtracting the relative percentage of business Big Fish apps create under the Games category of the Google Play Store from 100% to determine how much of the lowered service fees would "pass-through" to consumers in the form of lowered pricing. Accordingly, a competitor with Dr. Singer's revealed formula and the Pass-Through Rates listed for Big Fish in Exhibit F could work backwards to determine Big Fish's relative share within the Games category of the Google Play Store and use that commercially sensitive information about the volume of Big Fish's business on the Google Play Store to shape their strategy, exploit perceived vulnerabilities, and anticipate Big Fish's product development. Disclosing data about Big Fish's relative presence in the Games category of the Google Play Store, while similar data about their

competitors remains undisclosed, would create an uneven playing field where those competitors can selectively compete against Big Fish on platforms where they are most competitively vulnerable, placing Big Fish at a competitive disadvantage.

10. <u>But-For Expenditure</u>: I understand that Dr. Singer calculates the But-For Expenditure using the Actual and But-for Take Rates and the Pass-Through Rates discussed above. *See* Exhibit E to the Declaration of Justin P. Raphael in Support of Google's Motion for Leave (MDL Dkt. 541-3) (Dr. Singer Supplemental Reply Report submitted June 30, 2023) at ¶ 8 n.12 (solving for the but-for price as a function of the actual and but-for take rates and the pass-through rate). Because But-For Expenditure is derived from the commercially sensitive and confidential actual service fee information discussed above, along with the confidential information about Big Fish's relative share in the Google Play Store's Games category revealed by Dr. Singer's calculated Pass-Through Rates, the disclosure of such information would be harmful to Big Fish for similar reasons.

11. <u>CM Damages</u>: I understand that Dr. Singer calculates the CM Damages amount by subtracting the But-For Expenditure from the net price the individual paid for these particular transactions on Big Fish's apps. Accordingly, a competitor with Dr. Singer's revealed formula, the CM Damages amount, along with the net price of a product displayed on Big Fish's app, could work backwards to determine the But-For Expenditure. Because But-For Expenditure is derived from the commercially sensitive and confidential actual service fee information discussed above, along with the confidential information about Big Fish's relative share in the Google Play Store's Games category revealed by Dr. Singer's calculated Pass-Through Rates, the disclosure of such information would be harmful to Big Fish for similar reasons.

12. <u>CM Overcharge</u>: I understand that Dr. Singer calculates the CM Overcharge percentage using the Actual Take Rate, But-For Take Rate, and the Pass-Through Rate. *See* Exhibit E to the Declaration of Justin P. Raphael in Support of Google's Motion for Leave (MDL Dkt. 541-3) (Dr. Singer Supplemental Reply Report submitted June 30, 2023) at ¶ 8 n.12 (solving for the overcharge percentage as a function of the actual and but-for take rates and the pass-

through rate). Because CM Overcharge percentage is derived from the commercially sensitive and confidential actual service fee information discussed above, along with the confidential information about Big Fish's relative share in the Google Play Store's Games category revealed by Dr. Singer's calculated Pass-Through Rates, the disclosure of such information would be harmful to Big Fish for similar reasons.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 1, 2023 in Seattle, Washington.

Respectfully submitted,

Dated: August 1, 2023

By: _____
Christopher Butler