Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC, et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. # 336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Jessica L. Ellsworth, *pro hac vice*
jessica.ellsworth@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| This Document Relates To: | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL** |
| *Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD | Judge:      Hon. James Donato |
| *In re Google Play Consumer Antitrust Litigation,* Case No. 3:20-cv-05761-JD | Hearing:   September 7, 2023 |
| *State of Utah et al. v. Google LLC et al.,* Case No. 3:21-cv-05227-JD | Time:       10:00 a.m. |
| *Match Group, LLC et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | Ctrm:      11 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................1

II.     RELEVANT BACKGROUND ............................................................................3

III.    LEGAL STANDARD ..........................................................................................4

IV.     ARGUMENT .......................................................................................................5

      A.      Plaintiffs Have Not Shown That Bifurcation Would Make Trial More
              Efficient ........................................................................................................5

             1.      Google Will Present Much of the Same Evidence in Defending
                   Against Plaintiffs' Claims That It Will Present on Its Counterclaims ..........5

             2.      The Factual Overlap Between the Counterclaim Evidence and the
                   Antitrust Claims Is Extensive ....................................................................6

             3.      Plaintiffs' Efficiency Arguments Are Misplaced ........................................8

      B.      The Balance of Prejudice Strongly Favors a Single Trial on All Issues .................10

             1.      The States and Individual Consumers Have Not Shown Prejudice
                   from a Single Trial .....................................................................................10

             2.      A Jury Instruction Would Cure Any Potential Prejudice ............................12

             3.      Bifurcation Would Prejudice Google .........................................................12

      C.      Plaintiffs Have Not Shown Bifurcation Reduces the Risk of Jury Confusion .........13

V.      CONCLUSION .................................................................................................14

-i-

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*In re American Express Anti-Steering Rules Antitrust Litig.,*
2014 WL 558759 (E.D.N.Y. Feb. 11, 2014) ................................................................10

*Andrade v. Rambosk,*
2023 WL 2077427 (M.D. Fla. Feb. 17, 2023) .............................................................12

*Blessing v. Sirius XM Radio, Inc.,*
756 F. Supp. 2d 445 (S.D.N.Y. 2010) ........................................................................13

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,*
55 F.R.D. 292 (S.D.N.Y. 1972) .....................................................................................8

*Cangress v. City of Los Angeles,*
2015 WL 12661920 (C.D. Cal. Jan. 20, 2015) ............................................................14

*CornerStone Staffing Sols., Inc. v. James,*
2013 WL 12306441 (N.D. Cal. Oct. 21, 2013) ..............................................................4

*Corrigan v. Methodist Hosp.,*
160 F.R.D. 55 (E.D. Pa. 1995) ....................................................................................10

*Estate of Diaz v. City of Anaheim,*
840 F.3d 592 (9th Cir. 2016) .......................................................................................11

*Donato v. Fitzgibbons,*
172 F.R.D. 75 (S.D.N.Y. 1997) ...................................................................................11

*Escobar v. Nevada Helicopter Leasing LLC,*
2019 WL 5777713 (D. Haw. Nov. 5, 2019) ...................................................................4

*International Mortgage & Investment Corp. v. Von Clemm,*
301 F.2d 857 (2d Cir. 1962) ........................................................................................10

*Liqwd, Inc. v. L'Oréal USA, Inc.,*
2019 WL 365708 (D. Del. Jan. 30, 2019) ...................................................................13

*Marentes v. State Farm Mutual Auto Insurance Co.,*
224 F. Supp. 3d 891 (N.D. Cal. 2016) ..........................................................................9

*New York v. Meta Platforms, Inc.,*
66 F.4th 288 (D.C. Cir. 2023) .....................................................................................10

*North Pacific Insurance Co. v. Stucky,*
2013 WL 5408837 (D. Mont. Sept. 25, 2004) .............................................................12

-ii-

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

**TABLE OF AUTHORITIES**
(cont'd)

**Page(s)**

*Payan v. County of Los Angeles*,
   2015 WL 9694810 (C.D. Cal. Mar. 11, 2015) ....................................................................11, 13

*SCFC ILC, Inc. v. Visa U.S.A. Inc.*,
   801 F. Supp. 517 (D. Utah 1992) ....................................................................................................8

*SEC v. Pac. West Cap. Grp., Inc.*,
   2018 WL 6822607 (C.D. Cal. Feb. 13, 2018) ..............................................................................12

*Smith v. Off. of Alameda Cnty. Pub. Def.*,
   2022 WL 20016848 (N.D. Cal. Aug. 30, 2022) ............................................................................12

*Sound Video Unlimited, Inc. v. Video Shack, Inc.*,
   700 F. Supp. 127 (S.D.N.Y. 1988) ................................................................................................11

*Synopsys, Inc. v. Magma Design Automation*,
   2006 WL 1452803 (D. Del. May 25, 2006) ...................................................................................13

*Triad Sys Corp. v. Southeastern Express Co.*,
   64 F.3d 1330 (9th Cir. 1995) ............................................................................................................8

*U.S. Gypsum Co. v. National Gypsum Co.*,
   1994 WL 74989 (N.D. Ill. Mar. 10, 1994) ......................................................................................8

*Winchester Drive-In Theatre, Inc. v. Twentieth Century-Fox Film Co.*,
   35 F.R.D. 141 (N.D. Cal. 1964) .......................................................................................................8

**STATE CASES**

*Lazar v. Superior Court*,
   12 Cal. 4th 631 (1996) .....................................................................................................................9

**OTHER AUTHORITIES**

Match Group Letter to Shareholders, Q1 2022,
   https://s22.q4cdn.com/279430125/files/doc_financials/2022/q1/Earnings-
   Letter-Q1-2022-vF.pdf .....................................................................................................................9

-iii-

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs have not met their burden to show that bifurcation is warranted. Because of the evidentiary overlap between Google's counterclaims and its tying defenses, bifurcating these issues will not promote efficiency. Specifically, evidence of Epic's and Match's schemes to avoid paying Google what they owed—which is at the heart of Google's counterclaims—will also be offered to show *why* Google's billing policy is not an illegal tie. Moreover, bifurcation could extend the trial into the December holidays, with evidence presented in a disjointed and piecemeal fashion and the same witnesses having to testify multiple times. Nor is this proposal needed to cure any claimed prejudice to the States or individual consumers, or any risk of jury confusion. Plaintiffs do not explain why or how the jury would confuse app consumers with app developers or hold Epic's and Match's misconduct against app consumers or the States.

**Efficiency**: The evidence supporting Google's counterclaims substantially overlaps with the evidence supporting Google's defenses to Plaintiffs' tying claims. Google's counterclaims and antitrust defenses will both focus, in particular, on Google's policy that apps on the Google Play store must use Google's own billing system to process certain transactions. Google's counterclaim evidence against Epic and Match illustrates Google's legitimate reasons for that policy, including how it allows Google to efficiently collect its service fee, and the significant harm to Google and the entire ecosystem if developers, like Epic and Match, circumvent it. Google's defenses to the tying claim will likewise involve evidence of the legitimate need for the billing policy and the harm to the ecosystem if Google could not enforce the policy.

Because of this evidentiary overlap, Plaintiffs cannot show that bifurcation would make this trial any more efficient. To the contrary, even if the Court were to adopt Plaintiffs' proposal, most of the evidence regarding Google's counterclaims would come in during the first phase of the trial, Google would simply be unable to connect that evidence to its counterclaims. Then, in the second phase, the parties would need to bring back witnesses who previously testified to offer any remaining evidence in piecemeal fashion. And because it may have been several weeks since

the witness testified, the parties would most likely need to retread old ground to set the table for

that testimony. The Court should reject this disjointed approach.

Plaintiffs' suggestion that trying the antitrust claims first could moot the counterclaims is

also flawed—the counterclaims will proceed regardless of what happens in the antitrust case.

**Prejudice**: Plaintiffs cannot demonstrate any prejudice. To the contrary, bifurcation would

prejudice Google. Google's straightforward counterclaims against Epic and Match are directly tied

to the facts underlying their claims and would, in the normal course, be tried with the claims

brought by those developers. The presence of individual consumers and the States at trial should

not change that. Plaintiffs offer no reasonable basis to conclude that the jury will be unable to

differentiate between app *consumers* and 39 *states and territories* on the one hand, and app

*developers* like Match and Epic, on the other, when considering Google's counterclaim evidence.

The parties are sufficiently distinct that the jury will have no trouble telling the difference.

Nor are the States entitled to some special bifurcation rule in light of their "sovereign"

status. The case law treats states acting in *parens patrie* capacity as equivalent to private litigants.

Moreover, it is the States themselves that made the strategic decision to tie their case to Epic and

Match. They chose to file in this Court, and they have repeatedly insisted that their case should be

tried along with Epic's and Match's cases. Google's counterclaims are part of those cases.

By contrast, Google faces unfair prejudice from bifurcation. Google should not be required

to bring its witnesses—many of whom have significant business responsibilities—to court twice,

nor should it face the potential that a jury, forced to sit for longer (potentially through the

December holidays) in order to decide Google's counterclaims, blames Google for prolonging

their jury service and not connecting the evidence with its counterclaims earlier. The balance of

prejudice therefore favors denial of the motion. And it is not just Google that would be harmed:

Plaintiffs' motion gives little heed to the substantial inconvenience that bifurcation would impose

on the Court and the jury.

**Jury Confusion:** Plaintiffs' arguments about jury confusion do not pass muster. Plaintiffs

agree that Google's counterclaims are "considerably less difficult than the complex antitrust

analysis the jury must undertake," Mot. at 9, but have not explained why these relatively simple

counterclaims would distract the jury from the antitrust issues. Nor do they explain why the States' late entry into this litigation makes the counterclaims any more "confusing" when those counterclaims would surely be tried as part of a single trial if Epic and Match were the only plaintiffs. No additional clarity would be gained by forcing Google to break out a relatively simple part of its case. If anything, the jury is likely to be confused and frustrated as to its role in the second phase of Plaintiffs' proposed trials, where jurors will hear duplicative evidence that could have been connected to the counterclaims in one trial.

Google respectfully requests that the Court deny Plaintiffs' motion to bifurcate.

## II.     RELEVANT BACKGROUND

Plaintiffs assert a variety of antitrust claims against Google. One of their core claims is that Google illegally ties its billing system—called Google Play Billing—to the Google Play store, by requiring developers to use Google Play Billing to process in-app purchases of digital goods on the Play store. *E.g.*, Dkt. 378 ¶¶ 161-163.[1] They claim that Google has changed this policy over time, Dkt. 380 ¶¶ 13-14, and that Google has no justification for the policy other than to foreclose competition for mobile billing services, Dkt. 378 ¶¶ 167-170. Google vehemently disagrees, and will show at trial that its policy requiring use of its own billing system is the most efficient way to ensure that Google is actually paid for the value the Play store delivers.

Google has also asserted counterclaims against both Epic and Match based on that same Google Play Billing policy.

As for Epic, Google's counterclaims arise out of Epic's concerted effort to sidestep this requirement and avoid paying Google anything for distribution of its flagship game, *Fortnite*, on the Play store. Dkt. 386, Counterclaims ¶ 31. Epic called this plan "Project Liberty." *Id.* ¶ 32. Epic first signed Google's developer agreement requiring the use of Google Play Billing, and then submitted a compliant version of *Fortnite* to the Play store. *Id.* ¶¶ 25, 36. Epic then secretly modified the *Fortnite* software code to allow it to flip a switch and unilaterally activate its own billing system as an option for *Fortnite* players to choose instead of Google's. *Id.* ¶ 37. As Epic

---

[1] Unless otherwise specified, all "Dkt." references are to *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal.).

1  planned, Google responded to this policy violation by removing *Fortnite* from the Play store for

2  violation of Play store terms, and Epic then filed this antitrust lawsuit that very same day. *Id.* ¶ 49.

3  Google's counterclaims against Epic are based on breach of the developer contract and related

4  claims, including unjust enrichment, to recover unpaid service fees. *Id.* ¶¶ 50-74.

5     With respect to Match, Google's counterclaims also involve a developer's refusal to pay

6  Google for all the benefits it received from the Play store. For many years, Match distributed

7  certain apps on the Play store—and earned revenues from digital sales in those apps—without

8  paying the service fee it owed to Google. Dkt. 387, Counterclaims ¶ 44. Three years ago, Google

9  clarified that its policy requiring developers to use its billing system applied to Match's apps. *Id.*

10  ¶ 48. Google gave Match and other non-compliant developers over a year to integrate Google's

11  billing system, and Match assured Google that it was working hard to come into compliance. *Id.*

12  Google expended significant engineering and other resources working with Match to address

13  Match's purported concerns about billing features, based in part on Match's statements that it

14  merely needed "more time" to comply with its agreements with Google. *Id.* ¶ 52. Google then

15  learned that Match never intended to use Google Play Billing, and had misled Google about its

16  intentions so that Match could continue reaping the benefits of the Google Play store, without

17  paying for those benefits. *Id.* ¶ 53. Google brought counterclaims alleging, again, breach of

18  contract and unjust enrichment for unpaid fees, as well as promissory fraud based on Match's

19  misrepresentations to Google. *Id.* ¶¶ 55-86.

20  **III.    LEGAL STANDARD**

21     The requesting party "has the burden to prove that [bifurcation] is warranted in a particular

22  case." *CornerStone Staffing Sols., Inc. v. James*, 2013 WL 12306441, at *1 (N.D. Cal. Oct. 21,

23  2013). In evaluating a bifurcation motion, "courts consider several factors, most commonly

24  whether separate trials will result in judicial economy and whether separate trials will unduly

25  prejudice either party." *Escobar v. Nevada Helicopter Leasing LLC*, 2019 WL 5777713, at *3 (D.

26  Haw. Nov. 5, 2019).

27

28

IV.     **ARGUMENT**

A.     **Plaintiffs Have Not Shown That Bifurcation Would Make Trial More Efficient**

1.     *Google Will Present Much of the Same Evidence in Defending Against Plaintiffs' Claims That It Will Present on Its Counterclaims*

In defending against Plaintiffs' antitrust case, Google will present much of the same evidence that it will present in support of its counterclaims. That is because Google's counterclaim evidence directly advances its antitrust defenses.

For example, one of Plaintiffs' principal claims is that Google illegally ties its billing system to the Google Play store by requiring developers to use Google Play Billing to process certain Play store transactions. As Google will show at trial, this requirement is justified because it is the most efficient way to ensure that Google is actually paid for the value it delivers through Android and the Play store. Google Play Billing enables Google to collect its service fee automatically as part of each transaction. If Google could not do that, then developers could take advantage of the Play store and Google's related support and services, and *not pay Google* for that value.

To prove that point at trial, Google will point to Epic's and Match's conduct. Epic secretly engineered a software mechanism to allow users to pay with Epic's billing system, sidestepping Google and the Google Play Billing policy completely. Match evaded paying the service fee it owed to Google for many years, and after Google attempted to enforce its billing requirement against Match, Match deceived Google about its intentions to comply. That evidence demonstrates exactly why Google requires developers to use its own billing system and how Google is unable to collect a service fee when developers violate its billing policy. Because Google has a right to present this evidence about Epic and Match at trial on Plaintiffs' tying claims, there is no efficiency to be gained from a separate trial on Google's counterclaims that relies on that same evidence.

Google also would present the same evidence in litigating its counterclaims as it will in defending against Plaintiffs' antitrust claims regarding the notifications and consent screens that are displayed when users attempt to download apps directly from the web (i.e., "sideload" them)

rather than download them from an app store. Plaintiffs challenge these warnings as "pretextual" because they apply to "even mainstream, non-malicious apps and app stores, such as the Amazon Appstore and Fortnite." Dkt. 188 ¶ 231, No. 21-cv-05227. Plaintiffs' experts even suggest that Google should make an exception for major developers that it believes are trustworthy rather than enabling consumers to decide for themselves which developers are safe. But the fact that Epic—one of the largest video game companies in the world—secretly submitted to Google a version of an app that circumvented Google Play Billing rebuts Plaintiffs' notion that all major developers can be trusted, and explains why Google does not make exceptions even for well-established developers. Google has every right to defend against Plaintiffs' antitrust claims by showing that there are trust and safety concerns connected to developers like Epic. That evidence also will support Google's counterclaims, so it would be inefficient to try them separately.

In short, Google anticipates that it would present much of the same evidence to defend against Plaintiffs' antitrust claims and prove its counterclaims. Plaintiffs thus cannot carry their burden to show that bifurcation would promote efficiency.

> ### 2. The Factual Overlap Between the Counterclaim Evidence and the Antitrust Claims Is Extensive

More broadly, bifurcation would be inefficient because numerous subjects and witnesses are relevant to both Plaintiffs' claims and Google's counterclaims:

*First*, much of Plaintiffs' case involves provisions of the standard agreement that developers sign in order to distribute their apps using the Google Play store. Plaintiffs contend that agreement is unlawful. But that is the same agreement that Google alleges Match and Epic breached in its counterclaims. It would be inefficient to have the jury decide issues related to the same agreement in two separate phases of the trial.

*Second*, the trial of the States' own state-law claims will overlap with Google's counterclaims. In September 2020, Google publicly clarified that its developer contract required developers to use Google Play's billing system for a certain category of digital content sales, including sales by streaming services. The States allege that those September 2020 statements "were false and misleading with respect to streaming services" and violated various state laws.

Dkt. 188 ¶ 249, No. 21-cv-05227. But those September 2020 statements are a significant part of Match's *defense* to Google's counterclaims. Dkt. 335, Answer ¶ 48.

*Third*, testimony of Plaintiffs' expert economists will implicate issues presented by Google's counterclaims. To take just one example, Plaintiffs have indicated that they will rely on the testimony of economist Dr. Douglas Bernheim. Dr. Bernheim's reports analyze behavior by users of Epic's game *Fortnite* after it was removed from the Google Play store. It would be unfair for the jury in a trial involving Epic to hear evidence about *Fortnite*'s removal from the Play store without understanding why *Fortnite* was removed. The reason Google removed *Fortnite* is because of Epic's effort to sidestep the Google Play Billing policy, which is at the center of Google's counterclaims against Epic.

*Fourth*, Epic's and Match's own pleadings contain allegations that Google will rebut using evidence that would also support its counterclaims. Epic claims that Google refused to distribute Epic's game *Fortnite* on the Play store in 2019 because the game used Epic's own payment system, Dkt. 378 ¶¶ 164-165, and that Google's later removal of *Fortnite* from the Play store for the same reason was "retribution" against Epic, *id.* ¶¶ 31-32. Match similarly claims Google's removal of *Fortnite* "demonstrates Google's willingness to forgo short-term profits to reduce competition in the Android App IAP Market by harming smaller competitors." Dkt. 380 ¶ 209. Google is entitled to contest those allegations by showing that removing *Fortnite* was a reasonable response to Epic's effort to evade payment to Google. That evidence lies at the heart of Google's counterclaim against Epic.

Given the extensive factual overlap between Plaintiffs' antitrust claims and Google's counterclaims, bifurcation is both inefficient and unfair. Bifurcation would force witnesses to come to trial twice, require the jury to hear the same evidence, and needlessly prolong the trial. To be sure, there will be damages evidence for the counterclaims, but that evidence will be short and straightforward: principally a calculation of lost service fees based on the number of transactions after specific dates, for both Epic and Match. The Court should not break apart this entire case just for that.

Plaintiffs cite some cases where courts ordered bifurcation due to the specific case-management circumstances presented, but those cases are readily distinguished. *Triad Sys Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), for example, affirmed bifurcation where a single trial would have risked the jury conflating two "complex bodies of law." No such risk exists here, where Google's counterclaims sound largely in contract, which the jury will not confuse with Plaintiffs' antitrust claims. *Winchester Drive-In Theatre, Inc. v. Twentieth Century-Fox Film Co.*, 35 F.R.D. 141, 143–44 (N.D. Cal. 1964) bifurcated "release and settlement defenses" from the main trial because it would have required the court to give confusing instructions on alternative verdicts based on whether "some or all of the defendants have been released from some or all of the claims," a complication not present here. In *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc*., 55 F.R.D. 292, 297 (S.D.N.Y. 1972), the court ordered bifurcation because discovery was ongoing, and litigating the antitrust claims first would potentially avoid discovery that would be "unfair" and give plaintiff a "competitive advantage" over its rivals. In *SCFC ILC, Inc. v. Visa U.S.A. Inc.*, 801 F. Supp. 517, 528 (D. Utah 1992), the court bifurcated claims and counterclaims after finding that counterclaim evidence "probably will not be relevant to the antitrust dispute," which is demonstrably inapplicable here, *see supra* at 5-7. And *U.S. Gypsum Co. v. National Gypsum Co*., 1994 WL 74989, at *2 (N.D. Ill. Mar. 10, 1994) involved the niche circumstance of bifurcating patent and antitrust claims where there was a body of case law supporting bifurcation as "standard practice." *Id.* (quotation marks and citation omitted). While bifurcation might have made sense in the specific circumstances for these cases, and for the parties and courts involved, it does not make any sense here.

### 3. Plaintiffs' Efficiency Arguments Are Misplaced

Plaintiffs say that none of this factual overlap matters, because the same jury would decide Google's counterclaims after the first phase of trial. Mot. at 12-13. In their view, that jury would not need to hear the evidence twice because it could just consider the evidence from the prior phase. *Id.* at 13. But that proves too much. If the same jury is going to hear all of this evidence in the first phase of trial anyway, and Google does not need to present any of it again, then there is no efficiency to be gained from breaking out the counterclaims into a second phase. Rather,

1   bifurcation would simply prejudice Google and unnecessarily complicate and protract the

2   proceedings. If Plaintiffs have their way, the trial on the main claims would conclude, and after the

3   jury delivers its verdict the parties would pick right back up by presenting evidence related to

4   Google's counterclaims that was not presented in the first phase. Worse, Google would have to

5   present any such evidence out of context, and disconnected from the bulk of the counterclaim

6   evidence that it presented in the earlier trial. That would weaken Google's position in the second

7   phase of the trial, and would be unnecessarily confusing and burdensome for the jury.

8         Plaintiffs are also wrong that a win for them on the antitrust claims would moot Google's

9   counterclaims by invalidating Google's standard developer contract. That is equivalent to saying

10   that because they believe Google charges a *supracompetitive* service fee, they should not have to

11   pay anything *at all* for the value they received from the Google Play store. That is clearly wrong.

12   Google's claims for unjust enrichment against Epic and Match, and false promise against Match,

13   do not depend on any contract, which means those claims will be heard regardless of the jury's

14   findings on Plaintiffs' antitrust claims. *E.g.*, *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).

15   Plaintiffs suggest that Google's false-promise claim against Match would not lie in the absence of

16   an enforceable developer contract, citing *Marentes v. State Farm Mut. Auto Ins. Co.*, 224 F. Supp.

17   3d 891, 921 (N.D. Cal. 2016). That is wrong too. Nothing about *Marentes* requires a contract for a

18   valid false-promise claim; that case instead simply held that the plaintiff must have suffered

19   damage resulting from the false promise. *Id.* Google will therefore try its counterclaims regardless

20   of the resolution of Plaintiffs' liability claims, and it is more efficient to try them in a single trial.[2]

21

22

23

24

---

25   [2] Google and Match reached a stipulation in May 2022 resolving a TRO that Match filed in this case. Dkt. 21, No.

26   3:22-cv-02746-JD. That stipulation allowed Match to continue distributing its apps through the Play store despite its noncompliance with Google's payments policies, provided that, among other things, Match pay $40 million in payments to escrow. While those payments have now ended, the service fees that Match owes Google substantially

27   exceed that amount. *See* Match Group Letter to Shareholders, Q1 2022, at 9, 10, https://s22.q4cdn.com/279430125/files/doc_financials/2022/q1/Earnings-Letter-Q1-2022-vF.pdf (noting negative

28   financial impact from Google's requirement to use its payment system). Google intends to try its counterclaims to recover the full amount it is owed.

### B. The Balance of Prejudice Strongly Favors a Single Trial on All Issues

*1. The States and Individual Consumers Have Not Shown Prejudice from a Single Trial*

Plaintiffs also fail to meet their burden to show any prejudice that would arise from trying Google's counterclaims along with Plaintiffs' claims. In the absence of any concrete prejudice, the Court should deny the Motion.

First and foremost, Plaintiffs are wrong to suggest that the "incendiary" effect of Google's counterclaims will taint the States and individual consumers. Mot. at 6. Plaintiffs spend an entire page elaborating on the "complexity" of their own claims against Google. *Id.* at 7. They describe Google's apparently "complicated web of agreements and business strategies" involving "many entities and individuals," and preview the "variety of technologies" that the jury will have to understand. *Id.* Plaintiffs' confidence in the jury's ability to sort through this evidence belies their assertion that this same jury will confuse the Attorneys General of 39 states and territories with the developers of *Tinder* and *Fortnite* when considering Google's counterclaims. Plaintiffs do not explain why the jury will be unable to evaluate the States' and individual consumers' arguments on their own merits, simply because Google also asserts counterclaims against two specific developers. Where it is apparent that the jury can distinguish between injuries or claims, a "prejudice by association" argument does not justify bifurcation. *E.g.*, *Corrigan v. Methodist Hosp.*, 160 F.R.D. 55, 58 (E.D. Pa. 1995).

Nor are the States entitled to a special rule in favor of bifurcation because of their sovereign status. In this case, the States primarily are pursuing federal antitrust claims as *parens patriae* on behalf of the residents in their states. Therefore, they have the status of private litigants. *Cf. New York v. Meta Platforms, Inc.*, 66 F.4th 288, 296-300 (D.C. Cir. 2023) (rejecting argument that "the States should be treated as 'special persons'").

In any event, the case law does not support special consideration for the States here. The States cite cases in which private parties sought to *intervene* in public enforcement actions. Mot. at 6 (citing *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2014 WL 558759, at *2 (E.D.N.Y. Feb. 11, 2014); *Int'l Mort. & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 862 (2d Cir. 1962)). But

-10-

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

that is the opposite of what has happened in this case. Here, the *States* are the parties that voluntarily sought to intervene in pre-existing private litigation. They filed their lawsuit in this Court after Epic did, and they have consistently sought to try their case alongside Epic. *See* Dkt. 471 (Opp. to Stay Mot.); Dkt. 434 (Joint Stmt. re Trial); Dkt. 505 (Joint Stmt. re Trial).

In addition, Plaintiffs' other case law on "prejudice by association" fares no better. Their leading case, *Payan v. County of Los Angeles*, 2015 WL 9694810, at *2 (C.D. Cal. Mar. 11, 2015), had nothing to do with prejudice by association with a co-party; instead the court bifurcated state law claims because of lengthy jury instructions on those claims. *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 146 (S.D.N.Y. 1988), involved counterclaims that could be bifurcated because they, unlike the main claims, were not even triable to a jury, and were "not germane to the primary lawsuit" in any event. *Id.* at 145. *Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 (S.D.N.Y. 1997) involved an adverse instruction against one party that could affect the factfinders' view of other parties, which does not apply here. And *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016) involved "graphic and prejudicial evidence about the victim [that] ha[d] little, and in large part no, relevance to the liability issue." None of these cases supports bifurcation here.

The fact that the States are in this trial with Epic and Match is due to their own strategy decisions. They chose to wait one year before filing their lawsuit. They chose to file in this district, knowing their case would be related to Epic's, and knowing about Epic's effort to avoid payment of Google's service fee.[3] *See Epic Games, Inc. v. Apple*, No. 4:20-cv-05640-YGR (N.D. Cal. Sept. 10, 2021), Dkt. 812 at 19. In their stipulated motion to relate the case to Epic's, they acknowledged that the tying issue was common to all cases. Dkt. 59 at 3. And they have consistently advocated to try this case alongside Epic and Match. *See* Dkt. 471; Dkt. 434; Dkt. 505. The States do not explain why their late entry into the case should force Google to break

---

[3] While any lawsuit may have been transferred to this MDL by the Judicial Panel on Multidistrict Litigation, such transfer order would have governed pre-trial coordination only; it would not have dictated where the States would have *tried* their claims. They made a strategic and voluntary decision to try their case in this district.

apart the presentation of its case, particularly because Google would be able to present its counterclaims as part of one liability trial if only Epic and Match were plaintiffs.

### 2.   A Jury Instruction Would Cure Any Potential Prejudice

Even if Plaintiffs could show some prejudice by association with Epic and Match, bifurcation would not be the solution. Rather, the Court could simply remind the jury of what should already be obvious: the States and consumers are not Epic and Match, and Google's counterclaims are about Epic and Match. Where a jury instruction is sufficient, bifurcation is inappropriate. *N. Pac. Ins. Co. v. Stucky*, 2013 WL 5408837, at *3 (D. Mont. Sept. 25, 2004); *Smith v. Off. of Alameda Cnty. Pub. Def.*, 2022 WL 20016848, at *1 (N.D. Cal. Aug. 30, 2022); *SEC v. Pac. West Cap. Grp., Inc.*, 2018 WL 6822607, at *2 (C.D. Cal. Feb. 13, 2018); *Andrade v. Rambosk*, 2023 WL 2077427, at *2 (M.D. Fla. Feb. 17, 2023).

### 3.   Bifurcation Would Prejudice Google

A single trial on all liability issues will not prejudice the States and individuals, but bifurcation will certainly prejudice Google, in at least three ways.

*First*, as noted *supra* at 5-6, the counterclaim evidence serves directly to rebut Plaintiffs' affirmative claims against Google. After Google puts on evidence about Epic and Match in the main phase, then the second phase will either be largely duplicative (and thus inefficient), or in the alternative, it will involve dribs and drabs of new but disconnected pieces of evidence. Google should not be forced to artificially divide its presentation on its counterclaims that way.

*Second*, to present its full counterclaim narrative in the second trial, Google would be forced to bring its own witnesses back to court. This will be a significant disruption to their end-of-year business and potential holiday plans. That is unfair and unwarranted.

*Third*, Plaintiffs' proposal may involve forcing the jury to sit longer, and risk deliberations over Google's claims occurring just before the holidays. The parties' anticipate taking 50 hours per side, for a total of 100 hours of trial time. Dkt. 505 at 4. Under Plaintiffs' proposal, the jury would then come back, potentially on the precipice of the December holidays, to hear Google's claim—at the same time that they would prefer to be home with their families or preparing for the holidays after sitting through a lengthy trial. Dragging back the jury to hear only Google's claims

1   after a lengthy antitrust trial may cause the jurors to blame Google for protracting their jury

2   service. That risk is unnecessary and unfair to Google and a needless burden on the Court and the

3   jury.

4            **C.      <u>Plaintiffs Have Not Shown Bifurcation Reduces the Risk of Jury Confusion</u>**

5            Plaintiffs contend that bifurcation is necessary to avoid jury confusion. Mot. at 7. That is

6   unfounded. Plaintiffs concede that Google's counterclaims are simple and easy to understand:

7   "The analysis of Google's counterclaims . . . is considerably less difficult than the complex

8   antitrust analysis the jury must undertake to understand the economic issues." *Id.* at 9. Plaintiffs

9   are right: Google's counterclaims against Match and Epic are about whether they broke their

10  promises to Google to pay for the value they received on the Play store. There would be no

11  confusion, let alone confusion warranting bifurcation, caused by trying those straightforward

12  claims alongside the antitrust claim.

13           Plaintiffs argue that it would be confusing for the jury to understand the difference between

14  legitimate contract enforcement and enforcement of illegal agreements. Mot. at 9. But juries

15  regularly hear counterclaims in complicated cases, including those with contract claims alongside

16  antitrust claims. For example, in *Blessing v. Sirius XM Radio, Inc.*, 756 F. Supp. 2d 445, 449

17  (S.D.N.Y. 2010), a court denied a motion to bifurcate "federal antitrust claims from … state

18  consumer protection and contract-related claims." And juries often hear antitrust claims alongside

19  other substantive claims that are more complicated than Google's counterclaims. For example, in

20  *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2019 WL 365708, at *2 (D. Del. Jan. 30, 2019), the court denied

21  a motion to bifurcate because "[h]olding separate trials on L'Oréal's Lanham Act, false promise,

22  breach of contract, and false marking counterclaims would result in prejudice to L'Oréal by

23  requiring L'Oréal to present the same evidence at two separate trials." And in *Synopsys, Inc. v.*

24  *Magma Design Automation*, 2006 WL 1452803, at *4 (D. Del. May 25, 2006), the court declined

25  to bifurcate antitrust claims from patent claims, explaining that "jurors are quite adept at

26  comprehending and adhering to the instructions they are given, even in the most complex factual

27  and legal scenarios."

28

**-13-**

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1     Plaintiffs' cases on jury confusion do not support bifurcation here. In *Payan v. County of*

2   *Los Angeles*, 2015 WL 9694810, at *2, for example, the court was concerned the jury would

3   struggle with instructions that "spann[ed] 100 pages," and could not "understand the subtle

4   differences between several claims when they are faced with such lengthy instructions." The same

5   is true of *Congress v. City of Los Angeles*, 2015 WL 12661920, at *9 (C.D. Cal. Jan. 20, 2015), in

6   which the court bifurcated state-law claims because those claims were similar to pending federal

7   claims, explaining that "when coupled with the similar but different legal standards under the two

8   laws, there is a significant risk of juror confusion." 2015 WL 12661920, at *9. The same cannot be

9   said of Google's counterclaims. Bifurcating simple and intuitive contract-based claims would have

10   no effect on jury comprehension of the case.

11  **V.     CONCLUSION**

12     Plaintiffs' motion to bifurcate should be denied.

13

14  DATED:  August 10, 2023          Respectfully submitted,

15

16                                          By:   ___/s/ Glenn D. Pomerantz_____

17                                                Glenn D. Pomerantz

18                                                *Glenn D. Pomerantz, S.B. #112503*
                                                  glenn.pomerantz@mto.com
19                                                Kuruvilla Olasa, S.B. #281509
                                                  kuruvilla.olasa@mto.com
20                                                **MUNGER, TOLLES & OLSON LLP**
                                                  350 South Grand Avenue, Fiftieth Floor
21                                                Los Angeles, California 90071
                                                  Telephone: (213) 683-9100
22                                                *Counsel for Defendants Google LLC, et al.*

23                                                Kyle W. Mach, S.B. #282090
                                                  kyle.mach@mto.com
24                                                Justin P. Raphael, S.B. #292380
                                                  justin.raphael@mto.com
25                                                Emily C. Curran-Huberty, S.B. #293065
                                                  emily.curran-huberty@mto.com
26                                                **MUNGER, TOLLES & OLSON LLP**
                                                  560 Mission Street, Twenty Seventh Floor
27                                                San Francisco, California 94105
                                                  Telephone: (415) 512-4000

28

1
       Jonathan I. Kravis, *pro hac vice*
       jonathan.kravis@mto.com
2
       **MUNGER, TOLLES & OLSON LLP**
       601 Massachusetts Avenue NW, Suite 500E
3
       Washington, D.C. 20001
       Telephone: (202) 220-1100
4

5
       Brian C. Rocca, S.B #221576
       brian.rocca@morganlewis.com
       Sujal J. Shah, S.B #215230
6
       sujal.shah@morganlewis.com
       Michelle Park Chiu, S.B #248421
7
       michelle.chiu@morganlewis.com
       Minna Lo Naranjo, S.B #259005
8
       minna.naranjo@morganlewis.com
       Rishi P. Satia, S.B #301958
9
       rishi.satia@morganlewis.com
       **MORGAN, LEWIS & BOCKIUS LLP**
10
       One Market, Spear Street Tower
       San Francisco, CA 94105
11
       Telephone: (415) 442-1000
       Facsimile: (415) 422-1001
12

13
       Richard S. Taffet, *pro hac vice*
       richard.taffet@morganlewis.com
14
       **MORGAN, LEWIS & BOCKIUS LLP**
       101 Park Avenue
15
       New York, NY 10178
       Telephone: (212) 309-6000
16
       Facsimile: (212) 309-6001

17
       Neal Kumar Katyal, *pro hac vice*
       neal.katyal@hoganlovells.com
18
       Jessica L. Ellsworth, *pro hac vice*
       jessica.ellsworth@hoganlovells.com
19
       **HOGAN LOVELLS US LLP**
       555 Thirteenth Street, NW
20
       Washington, D.C. 20004
       Telephone: (202) 637-5600
21
       Facsimile: (202) 637-5910

22
       *Counsel for Defendants Google LLC, et al.*

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE THE TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

# E-FILING ATTESTATION

I, Glenn D. Pomerantz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

_/s/ Glenn D. Pomerantz_
Glenn D. Pomerantz

-16-