DocuSign Envelope ID: A0669AD1-87FC-420E-8948-85A38B41F8BD

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY  10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE**<br><br>Judge:  Hon. James Donato |

DocuSign Envelope ID: A0669AD1-875C-420F-8948-85A38B41F8BD

I, Christian Cramer, declare as follows:

1.      I am currently a Finance Director for Defendant Google LLC (along with Google-affiliated entities, "Google").  I have been employed by Google since September 2007 and have held my current position since March 2017.  Over the course of my employment at Google, I have acquired personal knowledge of Google's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and marketing information.

2.      I submit this declaration in support of the Administrative Motion to Seal Materials Submitted in Connection With Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence ("Motion"), filed on September 28, 2023 in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL"); s*ee also In re Google Play Consumer Antitrust Litigation* (No. 3:20-cv-05761-JD) (N.D. Cal); *State of Utah, et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.); *Match Group, LLC et al. v. Google LLC et al.*, No. 3:22-cv-02746-JD (N.D. Cal.); *Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.).

3.      The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversations with other knowledgeable employees of Google.  If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

**The Material to Be Sealed Is Highly Confidential Because It Reflects Non-Public Commercial Agreements and Contract Proposals, and Because It Reveals Google's Competitive Decision-Making and Business Strategy**

4.      As demonstrated with factual particularity below, all the material for which Google requests sealing is maintained as highly confidential.  To the best of my knowledge, none of this material has been publicly disclosed.

5.      As a matter of routine practice and internal policy, Google and its employees strictly treat as confidential, inter alia, (i) internal, non-public financial information; (ii) non-

DocuSign Envelope ID: A0669AD1-87FC-420E-8948-85A38B41F8BD

1  public commercial proposals to third parties; (iii) non-public agreements with third parties; (iv)

2  internal surveys and analyses of customer preferences, spending, revenue, market conditions,

3  business strategy, competitive dynamics, and commercial opportunities; (v) non-public financial

4  forecasts and business plans; (vi) trade secrets; and (vii) other sensitive material that, if publicly

5  disclosed, could potentially enable Google's competitors to undermine Google's competitive

6  position in the marketplace, allow current or prospective business partners or counterparties to

7  take unfair advantage of Google in negotiations or other business affairs, violate Google's

8  confidentiality obligations to third parties, or otherwise prejudice Google's business interests.  In

9  my experience and to the best of my knowledge, Google does not disclose internal documents,

10  data, or information of this nature outside of the company, except to authorized third parties

11  when so required or permitted by law or contract.  To that end and in order to prevent inadvertent

12  revelation of this information to the public, Google has several policies in place like prohibiting

13  employees from accessing information beyond what is reasonably necessary to perform their

14  duties, limiting access to certain internal systems, permitting access to document databases on a

15  need-to-know basis, and requiring the use of an encrypted email system.  I am also aware that,

16  generally, Google employees are required to sign a confidentiality agreement requiring each

17  employee to keep information confidential and shared only within the company.

18         6.      Third parties—including Google's customers, suppliers, business partners, and

19  others who interact or transact with Google in an array of contexts—entrust highly sensitive,

20  non-public, and confidential information to Google every day.  These third parties have an

21  expectation that Google can and will protect the confidentiality of that information.  In many

22  cases, Google is contractually bound to keep that information confidential.  In my experience and

23  to the best of my knowledge, Google does not disclose internal documents, data, or information

24  reflecting third parties' confidential information outside of the company, unless and only to the

25  extent it has been authorized (or is lawfully permitted or required) to do so.  Rather, as noted

26  above, Google policies and protocols are designed to ensure the confidentiality of third-party

27  material is strictly maintained.

28

DocuSign Envelope ID: A0669AD1-87FC-420E-8948-85A38B41F8BD

**There is Good Cause and Compelling Reasons to Seal Google's Highly Confidential Material**

7.      As demonstrated with factual particularity below, there is "good cause" to seal Google's confidential materials.  But even if Google were required to demonstrate "compelling reasons" for sealing, the materials for which Google requests sealing would still satisfy that standard.  The public disclosure of Google's internal, confidential material (including material that reflects third parties' confidential information) could, among other things, harm Google's business and customer relationships, undermine Google's ability to retain and attract customers and business partners who entrust Google with their confidential information, jeopardize Google's ability to conduct business with current and prospective business partners, enable Google's competitors to undermine Google's competitive position in the marketplace, allow current or prospective business partners or counterparties to take unfair advantage of Google in negotiations or other business affairs, or otherwise prejudice Google's and/or third parties' business interests.  These materials therefore derive economic value from not being generally known to Google's competitors, counterparties, or the public.  The release of this information to the public will cause tangible commercial injury to Google and to those who provided their confidential information to Google with the expectation that confidences would be maintained.

8.      I understand that this Motion requests that the Court maintain the specific information identified below under seal. For the reasons stated below, this information is confidential and highly sensitive, and if publicly disclosed, could significantly prejudice Google's competitive position by harming Google's relationship with business partners, putting Google at unfair disadvantage in future business negotiations, and permitting Google's competitors to gain unfair advantage in competition with Google.

## Specific Information to Be Sealed

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence [Dkt 609-1] (Exhibit A1)**

9.      **Page 5, Lines 6-8 (between "to spend" and "in 2020 which would").**  This text reflects internal cost figures calculated or derived from Google's financial data which is non-

public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.

10.     **Page 6, Line 28, Page 7, Line 1 (between "are responsible for" and "of Google Play's approximately"; between "approximately" and "in annual revenue").**  This text reflects revenue figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.

11.     **Page 7, Lines 23-28 (between "pay Samsung" and "over four years"; between "would secure" and "for Google").**  This text contains confidential, non-public information regarding Google's negotiations with a non-party OEM. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

12.     **Page 8, Lines 1-11 (between "pay out between" and "over the four-[year] term"; between "drive down to" and "the fees Google").**  This text contains confidential, non-public information regarding Google's agreements with a non-party OEM. This information further reflects and is calculated from internal, non-public Google financial data. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's

competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

13. **Page 8, Lines 15-20 (between "millions, and then" and "to move Samsung's"; between "as part of their current" and "RSA deals")**. This text contains confidential, non-public information regarding Google's agreements with a non-party OEM. This information further reflects and is calculated from internal, non-public Google financial data. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

14. **Page 9, Lines 8-15 (between "determined that over" and "of revenue was at"; between "developers at least" and "dollars to avoid")**. This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

15. **Page 10, Line 13 (between "prepared to spend another" and "to stop ABK")**. This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

16. **Page 10, Line 18 (between "worth more than" and "(Moskowitz")**. The disclosure of the developer's highly confidential information would significantly harm

developer's business. For example, the developer's competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, developer proactively maintains the confidentiality of its strategic information, only disclosing it to a select group of individuals on an as-needed basis.

17.     **Page 10, Line 25 (between "paid Supercell 'up to" and "(Id. at 179:10-13").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

18.     **Page 13, Lines 25-28 (between "because of their" and "revenue share deal"; between "Google pays Apple" and "under this agreement"; between "this agreement, and" and end of sentence).**  This text reflects the specific amount paid by Google to a major non-party OEM in connection with a commercial agreement with that non-party OEM.  This information reflects and is calculated from internal, non-public Google financial data. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

19.     **Page 14, Line 2 (between "was somewhere between" and "in 2021").**  This text reflects the amount paid by Google to a major non-party OEM in connection with a commercial agreement with that non-party OEM.  This information reflects and is calculated from internal, non-public Google financial data. Disclosure of this non-public information is

6

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1  likely to result in competitive harm to Google, as it reveals strategic decision-making which, for

2  example, could give a competitor or potential business partner unfair leverage in competing

3  against or negotiating with Google. Moreover, Google's competitors could use this non-party

4  information to unfairly target Google's OEM partners and offer specific deal terms designed to

5  undercut those offered by Google.

6  **Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 2**

7  **[Dkt 609-3]**
**(Exhibit A2)**

8  20.  **Exhibit 2, page -220 (first bullet: between "to spend" and "to buy", between**

9  **"to buy" and "exclusive", between "to" and "per year"; second bullet: between "to offer"**

10  **and "revenue share"; third bullet: between "sufficient to drive" and "of Samsung"; fourth**

11  **bullet: between "challenging; is" and "annual benefit"; fifth bullet: between "margins of"**

12  **and "in long", between "offset" and "net investment".)** This text contains non-public and

13  confidential information regarding Google's agreements with non-party OEMs as well as

14  internal strategy relating to Google Play's payment policy. Disclosure of this non-public

15  information is likely to result in competitive harm to Google, as it reveals strategic decision-

16  making which, for example, could give a competitor or potential business partner unfair leverage

17  in competing against or negotiating with Google. Moreover, Google's competitors could use this

18  non-party information to unfairly target Google's partners and offer specific deal terms designed

19  to undercut those offered by Google.

20  21.  **Exhibit 2, page -221 (the figures that begin the first five bullet points; the**

21  **second bullet point between "titles for" and "each title"; the figures that begin the five sub-**

22  **bullet points under the fifth bullet, "revenue upside from co-listing"; sixth bullet: between**

23  **"(2 year investment)" and "rev share", between "rev share" and "exclusivity payment";**

24  **seventh bullet: between "Phase 2 Profits:" and "revenue share", between "revenue share"**

25  **and "cost", between "store =" and "yr profit").** This text contains non-public and confidential

26  information regarding Google's agreements with non-party OEMs as well as internal strategy

27  relating to Google Play's payment policy. Disclosure of this non-public information is likely to

28

result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google.

22.     **Exhibit 2, page -228, Table (all figures in the column titled "Phase 1: 3 Exclusives"; all figures in the column titled "Phase 2: 50 co-listed games").** This text contains non-public and confidential information regarding Google's agreements with non-party OEMs as well as internal strategy relating to Google Play's payment policy. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google.

23.     **Exhibit 2, page -232 (the chart, as well as all figures and charts in the tables).** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

24.     **Exhibit 2, page -233, (figure in title, prior to "of Play connected devices"; entire graphic representation.)** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving

8

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 3**
**[Dkt 609-4]**
**(Exhibit A3)**

25.     **Exhibit 3, page -819 (entire page).** This text reflects confidential Google financial information as well as non-public proposed terms with a potential non-party partner. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

26.     **Exhibit 3, Page -820 (entire boxes labeled "Cross-Google Service Packs + Partner Pods," "Samsung + Google Gaming Collaboration," and "Accrue value back to Google").** This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations.

27.     **Exhibit 3, page -822 (between "HVUS:" and "of buyers"; between "spend" and "of app"; between "concentration of" and "reflect 2018"; entire top box).** This text reflects confidential Google financial information, including consumer spending on Google products and services. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

28.     **Exhibit 3, page -824 (icons in column 1 and figures in column 2 in rows 2- 6; text in footnote between "Projected" to "spend projection").** This text reflects the identity and confidential financial information for multiple non-party developers as well as non-public

Google financial information. If publicly revealed, this information could cause these non-parties and Google competitive harm by giving other parties insight into both these developers' and Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

29. **Exhibit 3, page -825 (entire page).** This text reflects confidential Google financial information. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

30. **Exhibit 3, page -827 (entire box under the slide title and icons).** This text reflects confidential and recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

31. **Exhibit 3, page -828 (entire box under "1) Prioritize Play"; entire box under the icons under "2) Boost x-PA Product Adoption").** This text reflects confidential and recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

32. **Exhibit 3, page -829 (entirety of the four rows in the chart).** This text reflects confidential and recent business strategy considerations by Google, including considered deal terms. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

33. **Exhibit 3, page -830 (the three boxes on the left side under "Target Developers").** This text reflects confidential and recent business strategy considerations by Google, including the identities of possible third-party partners. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's

10

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1    strategic considerations and thus a competitive advantage over Google in ongoing or future

2    business negotiations.

3        34.    **Exhibit 3, page -831 (the entire box under slide title and three headings;**

4    **between "packs with" and "-->").** This text reflects confidential and recent business strategy

5    considerations by Google, including the identity of a specific non-party developer and possible

6    Google partner. If publicly revealed, this information could cause both Google and the non-party

7    developer competitive harm by giving other parties insight into strategic considerations and

8    financial information of both Google and the developer.

9        35.    **Exhibit 3, page -832 (entire box under slide title and three headings).** This

10   text reflects confidential and recent business strategy considerations by Google, including

11   non-public Google financial information. If publicly revealed, this information could cause

12   Google competitive harm by giving other parties insight into Google's strategic considerations

13   and thus a competitive advantage over Google in ongoing or future business negotiations.

14       36.    **Exhibit 3, page -833 (entire box under slide title; between "2021 as" and**

15   **"increases").** This text reflects confidential and recent business strategy considerations by

16   Google, including non-public Google financial information. If publicly revealed, this information

17   could cause Google competitive harm by giving other parties insight into Google's strategic

18   considerations and thus a competitive advantage over Google in ongoing or future business

19   negotiations.

20       37.    **Exhibit 3, page -835 (box in the bottom right corner at the end of the arrow**

21   **beneath "Niantic").** This text reflects non-public Google financial information. If publicly

22   revealed, this information could cause Google competitive harm by giving other parties insight

23   into Google's strategic considerations and thus a competitive advantage over Google in ongoing

24   or future business negotiations.

25       38.    **Exhibit 3, page -836 (entire first row until the slide title; text from "are win-**

26   **win" through the end of that sentence; entire 3 bullet points under "Marketing**

27   **opportunities"; entire 2 bullet points under "Playpoints").** This text reflects confidential and

28

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

1   recent business strategy considerations by Google, including proposed deal terms with a

2   possible non-party partner. If publicly revealed, this information could cause Google

3   competitive harm by giving other parties insight into Google's strategic considerations and thus

4   a competitive advantage over Google in ongoing or future business negotiations.

5       39.   **Exhibit 3, page -838 (between "including" and "and 4 year"; entire chart**

6   **under the slide title).** This text reflects confidential and recent business strategy considerations

7   by Google, including proposed deal terms with a possible non-party partner as well as

8   confidential Google financial information. If publicly revealed, this information could cause

9   Google competitive harm by giving other parties insight into Google's strategic considerations

10  and thus a competitive advantage over Google in ongoing or future business negotiations.

11      40.   **Exhibit 3, page -839 (entire right-hand column under "Mitigation"; entire 3**

12  **bullet points beneath the chart).** This text reflects confidential and recent business strategy

13  considerations by Google, including proposed deal terms with a possible non-party partner. If

14  publicly revealed, this information could cause Google competitive harm by giving other parties

15  insight into Google's strategic considerations and thus a competitive advantage over Google in

16  ongoing or future business negotiations.

17      41.   **Exhibit 3, page -842 (entirety of the box; between "includes" and "and also**

18  **accounts").** This text reflects confidential and recent business strategy considerations by

19  Google, including confidential Google financial information related to the impact of a

20  considered business proposal. If publicly revealed, this information could cause Google

21  competitive harm by giving other parties insight into Google's strategic considerations and thus

22  a competitive advantage over Google in ongoing or future business negotiations.

23      42.   **Exhibit 3, page -843 (entirety of the box under the slide title).** This text

24  reflects confidential and recent business strategy considerations by Google, including

25  confidential Google financial information related to the impact of a considered business

26  proposal. If publicly revealed, this information could cause Google competitive harm by

giving other parties insight into Google's strategic considerations and thus a competitive

advantage over Google in ongoing or future business negotiations.

43. **Exhibit 3, page -844 (entirety of the box under the slide title; between "of top**
**developers" and "A couple of partial").** This text reflects confidential and recent business

strategy considerations by Google, including confidential Google financial information related to

a considered business proposal. It also reflects the identities of two non-party developers. If

publicly revealed, this information could cause Google competitive harm by giving other parties

insight into Google's strategic considerations and thus a competitive advantage over Google in

ongoing or future business negotiations.

44. **Exhibit 3, page -845 (entirety of box under "Margin Impact (2019 - 2022)").**
This text reflects non-public Google financial information related to a considered business

proposal. If publicly revealed, this information could cause Google competitive harm by giving

other parties insight into Google's strategic considerations and thus a competitive advantage over

Google in ongoing or future business negotiations.

45. **Exhibit 3, page -846 (entirety of box under "Margin Impact (2019 - 2022)").**
This text reflects non-public Google financial information related to a considered business

proposal. If publicly revealed, this information could cause Google competitive harm by giving

other parties insight into Google's strategic considerations and thus a competitive advantage over

Google in ongoing or future business negotiations.

46. **Exhibit 3, page -847 (entirety of box under "Margin Impact (2019 - 2022)").**
This text reflects non-public Google financial information related to a considered business

proposal. If publicly revealed, this information could cause Google competitive harm by giving

other parties insight into Google's strategic considerations and thus a competitive advantage over

Google in ongoing or future business negotiations.

47. **Exhibit 3, page -848 (text in title between "against" and "of margin"; entirety**
**of box under slide title; text below box between "includes" and "and also").** This text reflects

non-public Google financial information related to a considered business proposal. If publicly

revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

48.     **Exhibit 3, page -850 (entire box under slide title "Developer Value View").** This text reflects confidential financial information for multiple non-party developers, as well as the projected impact of a considered Google business arrangement. If publicly revealed, this information could cause both these non-party developers and Google competitive harm by giving other parties insight into Google's strategic considerations and the developers' financial data.

49.     **Exhibit 3, page -851 (entire box under slide title "Developer list").** This text reflects the identities of multiple non-party developers who were under consideration for a possible Google business initiative. If publicly revealed, this information could cause both these non-party developers and Google competitive harm by giving other parties insight into Google's strategic considerations.

50.     **Exhibit 3, page -852 (entire box next to "Developer Eligibility"; entire box next to "Developer Obligations").** This text reflects confidential and recent business strategy considerations by Google, including considered terms of a possible business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

51.     **Exhibit 3, page -853 (title text between "Hug Devs:" and "and"; between "and" and "FTE"; and entire box below the title).** This text reflects confidential and recent business strategy considerations by Google, including project descriptions, budgets, and Google staffing arrangements for a possible business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

52.    **Exhibit 3, page -854 (title text from the beginning of the title until "for Hug devs"; from "for Hug devs" until the end of the title; and entire box below the title).** This text reflects confidential and recent business strategy considerations by Google, including financial terms, timing, and possible partners for a possible business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

53.    **Exhibit 3, page -857 (subtitle text from "Project Play Spend =" until the end of that sentence; entirety of box under the subtitle).** This text reflects non-public Google financial information related to a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

54.    **Exhibit 3, page -859 (entire page).** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations for both parties. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

55.    **Exhibit 3, page -860 (entire page).** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations for both parties. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

56.    **Exhibit 3, page -861 (both bullet points in the first row to the right of the row title "Product"; both bullet points in the second row to the right of the row title "Financial").** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations for both parties.

If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

57. **Exhibit 3, page -862 (all 3 bullet points in the second row under "Mitigation"; the text under "Play band dilution" and to the right of "Mitigation"; and both bullet points under "Mitigation").** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

58. **Exhibit 3, page -863 (under "Assumptions" the first bullet and its header; the third bullet and its header; and the fourth bullet and its header).** This text reflects non-public financial information for a non-party entity. If publicly revealed, this information could cause that company competitive harm by giving other parties insight into its revenues and other indicia of financial performance.

59. **Exhibit 3, page -864 (text in the subtitle between "Integrate Samsung with" and "to help drive"; the entire chart including footnotes under "Proposal / Details / Considerations").** This text reflects proposed terms for a possible business arrangement with Samsung, a non-party, including financial terms, geographic scope, duration, and other strategic considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 5**
**[Dkt 609-6]**
**(Exhibit A4)**

60. **Exhibit 5, page -107.R (between "Ask: Spend" and "in 2023"; between "Offer up to" and "Play rev"; between "to OEMs" and "to smaller OEMs"; between "spending est" and "in 2020"; between "up to" and "(steady state)"; between "total of" and**

16

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA38B41F8BD

**"for Xiaomi"; between "Xiaomi and" and "for carriers").**  This text contains confidential, non-public information regarding non-party business partners, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners. Further, this information reveals Google's internal non-public profit, revenue, and financial calculations. These data sets are not otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage. Further, the disclosure of mobile carrier and OEM's highly confidential information would significantly harm mobile carriers' and OEMs' business. For example, mobile carrier and OEM competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, mobile carrier and OEMs proactively maintains the confidentiality of its strategic information, only disclosing it to a select group of individuals on an as-needed basis.

61.  **Exhibit 5, page -108.R (both charts and associated text below the heading that begins with "Scope").** This information reveals Google's internal non-public profit, revenue, and financial calculations. These data sets are not otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data

1   to modify or augment their business operations in an effort to compete unfairly against Google.

2   Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's

3   competitors improper insight into the financial health and future outlook of the Play business,

4   which also arguably gives Google's competitors an unfair advantage.

5       62.     **Exhibit 5, page -109.R (the figures in the columns with the headings**

6   **beginning with "2017A" and "2018A").**  This text contains confidential, non-public

7   information regarding Google's agreements with non-party business partners. Disclosure of this

8   non-public information is likely to result in competitive harm to Google, as it reveals strategic

9   decision-making which, for example, could give a competitor or potential business partner unfair

10  leverage in competing against or negotiating with Google. Moreover, Google's competitors

11  could use this non-party information to unfairly target Google's developer partners and offer

12  specific deal terms designed to undercut those offered by Google. This information reflects and

13  is calculated from internal, non-public Google financial data. Google spends significant

14  resources compiling and maintaining this valuable data, which is non-public, and if revealed to

15  competitors and potential business counterparties, could be used to disadvantage and cause

16  Google competitive harm by giving competitors insight into confidential Google financial

17  information. Further, this information reflects sensitive, highly confidential characterizations by

18  Google's internal business teams that, if revealed, could be referenced by potential counterparties

19  in negotiations with Google to gain an unfair advantage against Google. Further, the disclosure

20  of OEMs' highly confidential information would significantly harm OEMs' business. For

21  example, OEMs' competitors could leverage this information to reap an unearned competitive

22  advantage. They could exploit this information—that they otherwise would not have access to—

23  to inform their own business strategies. To prevent these competitive harms from coming to

24  fruition, OEMs proactively maintain the confidentiality of their strategic information, only

25  disclosing it to a select group of individuals on an as-needed basis.

26      63.     **Exhibit 5, page -111.R (the dollar amounts located in the two gray boxes at**

27  **the bottom of the slide).**  This text contains confidential, non-public information regarding non-

28

party business partner, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners. Further, this information reveals Google's internal non-public profit, revenue, and financial calculations. These data sets are not otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage.

64. **Exhibit 5, page -112.R (the percentage figures underneath the headings "Core Experience", "Optimized Experience", and "Google Forward").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google.

65. **Exhibit 5, page -113.R (the percentage figures underneath the headings "Core Experience", "Optimized Experience", and "Google Forward"; the percentage figures between "carriers to spend" and "(ramp)"; between "Spend" and "of the incremental").** This text contains confidential, non-public information regarding Google's agreements with non-party carriers. Disclosure of this non-public information is likely to result

in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google.

66. **Exhibit 5, page -115.R (the specific dollar amounts on the slide).** This information reveals Google's internal non-public profit, revenue, and financial calculations. These data sets are not otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage. Further, the disclosure of OEMs' highly confidential information would significantly harm OEMs' business. For example, OEMs' competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, OEMs proactively maintain the confidentiality of their strategic information, only disclosing it to a select group of individuals on an as-needed basis.

67. **Exhibit 5, page -116.R (between "investing" and "per device", between "on Android" and "in 2023"; the dollar amounts in the graphic figure; between "generated" and "revenue"; between "GFD is" and "more expensive"; between "LG" and "savings"; the dollar amount preceding "in marketing").** This text contains confidential, non-public information regarding Google's agreements with non-parties. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage

20

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA33B41F8BD

1   in competing against or negotiating with Google. Moreover, Google's competitors could use this

2   non-party information to unfairly target Google's partners and offer specific deal terms designed

3   to undercut those offered by Google. Further, this information reflects and is calculated from

4   internal, non-public Google financial data. Google spends significant resources compiling and

5   maintaining this valuable data, which is non-public, and if revealed to competitors and potential

6   business counterparties, could be used to disadvantage and cause Google competitive harm by

7   giving competitors insight into confidential Google financial information. Further, this

8   information reflects sensitive, highly confidential characterizations by Google's internal business

9   teams that, if revealed, could be referenced by potential counterparties in negotiations with

10  Google to gain an unfair advantage against Google. Further, the disclosure of OEMs' highly

11  confidential information would significantly harm OEMs' business. For example, OEMs'

12  competitors could leverage this information to reap an unearned competitive advantage. They

13  could exploit this information—that they otherwise would not have access to—to inform their

14  own business strategies. To prevent these competitive harms from coming to fruition, OEMs

15  proactively maintain the confidentiality of their strategic information, only disclosing it to a

16  select group of individuals on an as-needed basis.

17      68.     **Exhibit 5, page -117.R (the bar chart underneath the heading "GDAF TAC**

18  **Payments by Tier"; the dollar amounts in the columns with the headings "2018", "2019",**

19  **"2020", "2021", "2022", and "2023"; the dollar amounts to the right of the table at the**

20  **bottom of the slide).**  This information reflects and is calculated from internal, non-public

21  Google financial data. Google spends significant resources compiling and maintaining this

22  valuable data, which is non-public, and if revealed to competitors and potential business

23  counterparties, could be used to disadvantage and cause Google competitive harm by giving

24  competitors insight into confidential Google financial information. Further, this information

25  reflects sensitive, highly confidential characterizations by Google's internal business teams that,

26  if revealed, could be referenced by potential counterparties in negotiations with Google to gain

27  an unfair advantage against Google.

28

DocuSign Envelope ID: A0669AD1-87FC-4205-994B-8EA3BB41F8BD

69.     **Exhibit 5, page -118.R (between "will reach" and "in 2023"; between "in 2023" and "from Play"; between "from Play" and "Search"; all dollar amounts in the columns with the headings "2018A"; "2019E"; "2020F"; "2021F"; "2022F"; 2023F" and "Two Year Term"; and between "reinvestment is" and "in each year").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

70.     **Exhibit 5, page -121.R (between "will reach" and "in 2023"; dollar amounts in the columns with the headings "2018A", "2019E", "2020F", "2021F", "2022F", and "2023F"; between "be between" and "GFWD"; between "enrollment of" and the end of the sentence; between "bonus rates" and "for most"; between "OEMs and" and "for Carriers").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Further, the disclosure of OEMs' highly confidential information would significantly harm OEMs' business. For example, OEMs' competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information— that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, OEMs proactively maintain the

confidentiality of their strategic information, only disclosing it to a select group of individuals on an as-needed basis.

71.  **Exhibit 5, page -122.R (between "to spend" and "to cover"; between "to cover" and "in key"; the dollar amounts and graphics below the headings "Case 1", "[Recommendation] Case 2", and "Case 3").**  This text contains confidential, non-public information regarding Google's agreements with non-party carriers. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's carrier partners and offer specific deal terms designed to undercut those offered by Google. This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Further, the disclosure of OEMs' highly confidential information would significantly harm OEMs' business. For example, OEMs' competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, OEMs proactively maintain the confidentiality of their strategic information, only disclosing it to a select group of individuals on an as-needed basis.

72.  **Exhibit 5, page -123.R (the dollar amounts in the columns with the headings "2018A", "2019E", "2020F", "2021F", "2022F" and "2023F").**  This information reveals Google's internal non-public profit, revenue, and financial calculations. These data sets are not

otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage.

73.     **Exhibit 5, page -124.R (the dollar amounts and percentage figures in the rows with the headings "High Case", "Expected Case", and "Low Case").** This text reflects revenue, operating profit, and gross profit margin figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.

74.     **Exhibit 5, page -125.R (the dollar amounts under the headings "Low End Risk", "High End Risk", and "Max At-Risk").** This information reveals Google's internal non-public profit, revenue, and financial calculations. These data sets are not otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage.

75.     **Exhibit 5, page -126.R (the dollar amounts in the columns with the headings "2018A", "2019E", "2020F", "2021F", "2022F" and "2023F"; the percentage figure in the bullet point followed by "of Play revenue").** This information reflects and is calculated from

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

76. **Exhibit 5, page -127.R (the dollar amounts in the columns with the headings "2018A", "2019E", "2020F", "2021F", "2022F" and "2023F"; the percentage figures in the row with the heading "Huawei Redistribution of Revenue").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Further, this text contains confidential, non-public information regarding Google's agreements with non-party developers. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

77. **Exhibit 5, page -128.R (under the heading "Underlying Assumptions", the percentage figures and dollar amounts; under the heading "Status Quo", the percentage figures and dollar amounts; under the heading "GDAF Expected Case").** This information reflects and is calculated from internal, non-public Google financial data. Google spends

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA38B41F8BD

1  significant resources compiling and maintaining this valuable data, which is non-public, and if

2  revealed to competitors and potential business counterparties, could be used to disadvantage and

3  cause Google competitive harm by giving competitors insight into confidential Google financial

4  information. Further, this information reflects sensitive, highly confidential characterizations by

5  Google's internal business teams that, if revealed, could be referenced by potential counterparties

6  in negotiations with Google to gain an unfair advantage against Google. Further, this text

7  contains confidential, non-public information regarding Google's agreements with non-party

8  developers. Disclosure of this non-public information is likely to result in competitive harm to

9  Google, as it reveals strategic decision-making which, for example, could give a competitor or

10  potential business partner unfair leverage in competing against or negotiating with Google.

11  Moreover, Google's competitors could use this non-party information to unfairly target Google's

12  developer partners and offer specific deal terms designed to undercut those offered by Google.

13      78.      **Exhibit 5, page -129.R (between "Removal of" and "of forecasted"; between**

14  **"will have" and "RevShare"; between "Fly Mobile will" and the end of the sentence;**

15  **between "will have" and "RevShare").**  This text contains confidential, non-public information

16  regarding Google's agreements with non-party device manufacturers. Disclosure of this non-

17  public information is likely to result in competitive harm to Google, as it reveals strategic

18  decision-making which, for example, could give a competitor or potential business partner unfair

19  leverage in competing against or negotiating with Google. Moreover, Google's competitors

20  could use this non-party information to unfairly target Google's carrier partners and offer specific

21  deal terms designed to undercut those offered by Google. This information contains non-public

22  and confidential data regarding carrier revenue share deals. This information has never been

23  disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly

24  revealed, this information could influence the competitive decision-making and business

25  strategies employed by Google's app store competitors, for example by influencing how those

26  app stores market themselves to U.S. developers and how they distinguish themselves from

27  Google Play in the eyes of U.S. developers.

28

DocuSign Envelope ID: A0669AD1-87FC-4205-994B-8EA38B41F8BD

79.     **Exhibit 5, page -146.R (percentage figures in the rows titled "Consideration"** **and "Uptake").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

80.     **Exhibit 5, page -153.R (dollar amounts and figures in the columns with the** **headings "2018", "Q4 '18 Annualized").**  This text contains confidential, non-public information regarding Google's agreements with non-party OEMs. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google. Further, this information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Further, the disclosure of OEMs' highly confidential information would significantly harm OEMs' business. For example, OEMs' competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, OEMs

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

proactively maintain the confidentiality of their strategic information, only disclosing it to a select group of individuals on an as-needed basis.

81.    **Exhibit 5, page -157.R (between "to spend" and "to cover"; between "to cover" and "in key"; dollar figures in the column titled "Hedged ('23F)"; under the heading "Details", between "exposing" and "of annual", between "contributing" and "search rev", between "browsers exposing" and "of Google", between "putting" and "of Play").**   This text contains confidential, non-public information regarding Google's agreements with non-parties. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google. Further, this information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

82.    **Exhibit 5, page -158.R (between "propose investing", and "in getting"; between "in getting" and "devices"; between "GFD is" and "more"; between "LG" and "savings"; "between "OEMs" and "savings per"; the figure that precedes "in marketing by carriers; the figures that precede "revenue uplift").**   This text contains confidential, non-public information regarding Google's agreements with non-parties. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors

1   could use this non-party information to unfairly target Google's partners and offer specific deal

2   terms designed to undercut those offered by Google. Further, this information reflects and is

3   calculated from internal, non-public Google financial data. Google spends significant resources

4   compiling and maintaining this valuable data, which is non-public, and if revealed to competitors

5   and potential business counterparties, could be used to disadvantage and cause Google

6   competitive harm by giving competitors insight into confidential Google financial information.

7   Further, this information reflects sensitive, highly confidential characterizations by Google's

8   internal business teams that, if revealed, could be referenced by potential counterparties in

9   negotiations with Google to gain an unfair advantage against Google. Further, the disclosure of

10  OEMs' highly confidential information would significantly harm OEMs' business. For example,

11  OEMs' competitors could leverage this information to reap an unearned competitive advantage.

12  They could exploit this information—that they otherwise would not have access to—to inform

13  their own business strategies. To prevent these competitive harms from coming to fruition,

14  OEMs proactively maintain the confidentiality of their strategic information, only disclosing it to

15  a select group of individuals on an as-needed basis.

16         83.     **Exhibit 5, page -159.R (the dollar figures in the table).**  This text contains

17  confidential, non-public information regarding Google's agreements with non-party device

18  manufacturers. Disclosure of this non-public information is likely to result in competitive harm

19  to Google, as it reveals strategic decision-making which, for example, could give a competitor or

20  potential business partner unfair leverage in competing against or negotiating with Google.

21  Moreover, Google's competitors could use this non-party information to unfairly target Google's

22  partners and offer specific deal terms designed to undercut those offered by Google. Further, this

23  information reflects and is calculated from internal, non-public Google financial data. Google

24  spends significant resources compiling and maintaining this valuable data, which is non-public,

25  and if revealed to competitors and potential business counterparties, could be used to

26  disadvantage and cause Google competitive harm by giving competitors insight into confidential

27  Google financial information. Further, this information reflects sensitive, highly confidential

28

1   characterizations by Google's internal business teams that, if revealed, could be referenced by

2   potential counterparties in negotiations with Google to gain an unfair advantage against Google.

3   Further, the disclosure of OEMs' highly confidential information would significantly harm

4   OEMs' business. For example, OEMs' competitors could leverage this information to reap an

5   unearned competitive advantage. They could exploit this information—that they otherwise

6   would not have access to—to inform their own business strategies. To prevent these competitive

7   harms from coming to fruition, OEMs proactively maintain the confidentiality of their strategic

8   information, only disclosing it to a select group of individuals on an as-needed basis.

9          84.      **Exhibit 5, page -160.R (the figures in the table).**  This information contains

10  non-public and confidential data regarding device testing on Google Play. This information has

11  never been disclosed publicly and the Google Play product team treats it as strictly confidential.

12  If publicly revealed, this information could influence the competitive decision-making and

13  business strategies employed by Google's app store competitors, for example by influencing how

14  those app stores market themselves to U.S. developers and how they distinguish themselves from

15  Google Play in the eyes of U.S. developers. Further, the disclosure of OEMs' highly confidential

16  information would significantly harm OEMs' business. For example, OEMs' competitors could

17  leverage this information to reap an unearned competitive advantage. They could exploit this

18  information—that they otherwise would not have access to—to inform their own business

19  strategies. To prevent these competitive harms from coming to fruition, OEMs proactively

20  maintain the confidentiality of their strategic information, only disclosing it to a select group of

21  individuals on an as-needed basis.

22         85.      **Exhibit 5, page -161.R (the graph and table underneath the heading "So how**

23  **do partner economics work?").**  This text contains confidential, non-public information

24  regarding Google's agreements with non-party device manufacturers. Disclosure of this non-

25  public information is likely to result in competitive harm to Google, as it reveals strategic

26  decision-making which, for example, could give a competitor or potential business partner unfair

27  leverage in competing against or negotiating with Google. Moreover, Google's competitors

28

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA3B541F8BD

could use this non-party information to unfairly target Google's partners and offer specific deal terms designed to undercut those offered by Google. Further, this information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Further, the disclosure of OEMs' highly confidential information would significantly harm OEMs' business. For example, OEMs' competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. To prevent these competitive harms from coming to fruition, OEMs proactively maintain the confidentiality of their strategic information, only disclosing it to a select group of individuals on an as-needed basis.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 6**
**[Dkt 609-7]**
**(Exhibit A5)**

86.     **Exhibit 6, page -008 (between "adding up" and "enterprise value").** This text contains confidential, non-public information regarding non-party developers, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

87.     **Exhibit 6, page -009 (all text to the right of the heading "WHAT", below "Potential for a multi-year partnership with better terms at re-negotiation", and to the left**

**of the icons).** This text contains confidential, non-public information regarding non-party developers, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 8 [Dkt 609-9]**
**(Exhibit A6)**

88.     **Exhibit 8, Bates -758.R (number above the leftmost column in the 2019 Global Mobile Revenues bar chart; percentage figure above "Android" in the leftmost column of the 2019 Global Mobile Revenues bar chart; all numbers below "Android" in the leftmost column of the 2019 Global Mobile Revenues bar chart; all numbers between "Other Android" and "Samsung" in the rightmost column of the 2019 Global Mobile Revenues bar chart; second bullet point between "Google is making" and "margin from premium"; third bullet point between "is not reversed" and "of incremental"; fourth bullet point between "to earn" and "in revenue").** This information reveals Google's internal non-public profit, revenue, and financial calculations. This information is not otherwise publicly reported by the company and its disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage.

89.     **Exhibit 8, Bates -759.R (text in red box between "Google paid" and "in search"; number between "DCB revshare =" and "Search"; number after "Search revshare =").** This information reveals Google's internal non-public financial calculations,

1   including specific dollar amounts and financial terms for particular commercial programs and

2   deals. This information is not otherwise publicly reported by the company and its disclosure is

3   likely to cause Google competitive harm and give its competitors an unfair advantage. Google's

4   competitors could improperly utilize this internal, non-public data to modify or augment their

5   business operations in an effort to compete unfairly against Google.

6       90.    **Exhibit 8, Bates -760.R (percentage figure and dollar amount above bar**

7   **chart titled "Samsung TAC"; percentage figure and dollar amount above bar chart titled**

8   **"Samsung RSA Active Devices"; all numbers in bar chart titled "As-Is RSAv Projection**

9   **(2020-24)"; first bullet point in rightmost column between "search at" and "TAC"; number**

10   **between "ID revenues" and "in TAC"; numbers between "Samsung devices" and "January**

11   **was"; number between "January was" and "April was"; number between "April was" and**

12   **"down"; number between "down" and "update commitment").** This information reveals

13   Google's internal non-public financial calculations, including specific dollar amounts and

14   financial terms for particular commercial programs and deals. This information is not otherwise

15   publicly reported by the company and its disclosure is likely to cause Google competitive harm

16   and give its competitors an unfair advantage. Google's competitors could improperly utilize this

17   internal, non-public data to modify or augment their business operations in an effort to compete

18   unfairly against Google.

19       91.    **Exhibit 8, Bates -761.R (all text contained in the four bullet points below**

20   **"Proposed New Deal (4 Year Term)"; number in box at the bottom of the slide before**

21   **"total deal size"; numbers between "renewed as is" and "based on market").** This text

22   contains confidential, non-public information regarding Google's agreements with non-party

23   OEMs. This information also reveals Google's internal non-public financial calculations,

24   including specific dollar value and financial terms for particular commercial programs and deals.

25   Disclosure of this non-public information is likely to result in competitive harm to Google, as it

26   reveals strategic decision-making which, for example, could give a competitor or potential

27   business partner unfair leverage in competing against or negotiating with Google. Moreover,

28

33

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

1    Google's competitors could use this non-party information to unfairly target Google's OEM

2    partners and offer specific deal terms designed to undercut those offered by Google.

3        92.    **Exhibit 8, Bates -762.R (number in the leftmost column between "devices on**

4    **Samsung ID" and "over 4 yrs"; number in the middle column between "Samsung devices"**

5    **and "over 4 yrs"; numbers in the rightmost column between "Japan, EEA" and "over 4**

6    **yrs"; number between "that justified the" and "TAC in the").**   This text contains

7    confidential, non-public information regarding Google's agreements with non-party OEMs.  This

8    information also reveals Google's internal non-public financial calculations regarding these

9    agreements, including calculations of the specific dollar value associated with particular aspects

10   of the deal and financial terms for particular commercial programs and deals. Disclosure of this

11   non-public information is likely to result in competitive harm to Google, as it reveals strategic

12   decision-making which, for example, could give a competitor or potential business partner unfair

13   leverage in competing against or negotiating with Google. Moreover, Google's competitors

14   could use this non-party information to unfairly target Google's OEM partners and offer specific

15   deal terms designed to undercut those offered by Google.

16       93.    **Exhibit 8, Bates -763.R (number in the leftmost column between "devices on**

17   **Samsung ID" and "over 4 yrs"; number between "that justified the" and "TAC in the").**

18   This text contains confidential, non-public information regarding Google's agreements with non-

19   party OEMs.  This information also reveals Google's internal non-public financial calculations

20   regarding these agreements, including calculations of the specific dollar value associated with

21   particular aspects of the deal and financial terms for particular commercial programs and deals.

22   Disclosure of this non-public information is likely to result in competitive harm to Google, as it

23   reveals strategic decision-making which, for example, could give a competitor or potential

24   business partner unfair leverage in competing against or negotiating with Google. Moreover,

25   Google's competitors could use this non-party information to unfairly target Google's OEM

26   partners and offer specific deal terms designed to undercut those offered by Google.

27

28

94.     **Exhibit 8, Bates -764.R (all numbers in the column of the bar chart titled "Status Quo"; all numbers in the column of the bar chart titled "New Deal"; percentage figure above "across the board" in the table titled "Current deal effective TAC rates"; all percentage figures in the table titled "New deal baseline TAC rates").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs.  This information also reveals Google's internal non-public financial calculations regarding these agreements, including calculations of the specific dollar value associated with particular aspects of the deal and financial terms for particular commercial programs and deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

95.     **Exhibit 8, Bates -765.R (number in the leftmost column between "devices on Samsung ID" and "over 4 yrs"; number in the middle column between "Samsung devices" and "over 4 yrs").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs.  This information also reveals Google's internal non-public financial calculations regarding these agreements, including calculations of the specific dollar value associated with particular aspects of the deal. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

96.     **Exhibit 8, Bates -766.R (dollar amounts contained in the three blue boxes on the far right of the slide below the heading "Incentivize through a combination of three mechanisms"; percentage figure between "install-base TAC" and "additional TAC on**

35

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA38B41F8BD

installed"; dollar amount between "payments" and "/month"; percentage figure between "revenue-share" and "on Chrome"; percentage figure between "as today)" and "revenue-share"; percentage figure between "Play" and "profit share"; dollar amount between "Total of" and "over 4 yrs").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs.  This information also reveals Google's internal non-public financial calculations regarding these agreements, including calculations of the specific dollar value associated with particular aspects of the deal. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

97.    **Exhibit 8, Bates -767.R (number in the leftmost column between "devices on Samsung ID" and "over 4 yrs"; number in the middle column between "Samsung devices" and "over 4 yrs"; number between "add up to" and "over 4 years").**  This text contains confidential, non-public information regarding Google's agreements with non-party OEMs.  This information also reveals Google's internal non-public financial calculations regarding these agreements, including calculations of the specific dollar value associated with particular aspects of the deal. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

98.    **Exhibit 8, Bates -768.R (number between "designed with" and "incremental margin"; number in the light blue box at the top left of the slide, between "Search deal pays" and "to secure"; number in the light blue box at the top left of the slide, between "to secure" and "of incremental"; all numbers in the leftmost column of the bar chart titled**

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA39B41F8BD

1     **"Dist'bn Search Revenue during term"; number at the top of the column of the bar chart**

2     **titled "Payment to Samsung"; number at the top of the column of the bar chart titled**

3     **"Incremental Deal Margin to Google"; number in the dark blue box at the top middle of**

4     **the slide between "Services deal pays" and "to secure"; number in the dark blue box at the**

5     **top middle of the slide between "to secure" and "of Play risk"; all numbers in the column**

6     **of the bar chart titled "Services Revenue during term"; number at the top of the column of**

7     **the bar chart titled "Payment to Samsung"; number at the top of the column of the bar**

8     **chart titled "Incremental Deal Margin to Google"; number in the teal box at the top right**

9     **of the slide, after "Distribution component is"; all numbers in the column of the bar chart**

10     **titled "Incremental Value from Deal"; number at the top of the column of the bar chart**

11     **titled "Payment to Samsung"; all numbers in the column of the bar chart titled**

12     **"Incremental Deal Margin to Google"; numbers between "Ads, Messages" and**

13     **"incremental revenue"; numbers between "revenue), Discover" and "incremental";**

14     **number before "(distribution search)"; number between "=" and "(widget)"; number**

15     **between "+" and "(voice)"; number between "+" and "(S-browser)"; number before**

16     **"grey"; number between "grey =" and "Play"; number between "+" and "from Chrome";**

17     **number between "or savings" and "risk protections"; number between "for Play" and**

18     **"savings from"; number between "and then" and "uplift in value").** This text contains

19     confidential, non-public information regarding Google's agreements with non-party OEMs. This

20     information also reveals Google's internal non-public financial calculations regarding these

21     agreements, including calculations of the specific dollar value associated with particular aspects

22     of the deal. Disclosure of this non-public information is likely to result in competitive harm to

23     Google, as it reveals strategic decision-making which, for example, could give a competitor or

24     potential business partner unfair leverage in competing against or negotiating with Google.

25     Moreover, Google's competitors could use this non-party information to unfairly target Google's

26     OEM partners and offer specific deal terms designed to undercut those offered by Google.

27

28

DocuSign Envelope ID: A0669AD1-87FC-4205-0940-8EA38B41F8BD

99.    **Exhibit 8, Bates -769 (number in the leftmost column between "devices on Samsung ID" and "over 4 yrs"; number in the middle column between "Samsung devices" and "over 4 yrs"; numbers in the rightmost column between "Japan, EEA" and "over 4 yrs").**  This text contains confidential, non-public information regarding Google's agreements with non-party OEMs.  This information also reveals Google's internal non-public financial calculations regarding these agreements, including calculations of the specific dollar value associated with particular aspects of the deal. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

100.    **Exhibit 8, Bates -770 (numbers between "stands to lose" and "in margin"; numbers after "LTV impact:"; all numbers in the middle and rightmost columns of the bar chart titled "Active Share"; all numbers in the middle and rightmost columns of the bar chart titled "Google Revenue (2020- 24)"; all numbers in all columns of the bar chart titled "Google Margin (2020-24)").**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

101.    **Exhibit 8, Bates -772.R (numbers between "distribution" and "in additional"; numbers in leftmost blue box, below the words "Signing Bonus"; text below leftmost blue box, before the words "signing bonus"; numbers in the middle blue box,**

below the words "Quality Incentive"; text below the middle blue box, before "per qualifying device"; numbers in the rightmost blue box, below the words "Growth Incentive"; text below rightmost blue box, before the words "per OS switcher"; numbers in yellow box, below the words "Google Investment"; text below yellow box, before the words "match of payments"; number between "marketing spend" and "in headcount"; numbers between "GTM activities" and "only applies"; number between "Samsung+" and "to cover").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

102.    **Exhibit 8, Bates -773.R (all text in bullet points below the heading "Distribution deals commitments, plus:").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

103.    **Exhibit 8, Bates -774.R (percentage figure in blue box between "marketing" and "of all"; percentage figure in dark gray box between "marketing" and "of Samsung"; percentage figure in light gray box between "marketing" and "of Carrier"; number between "people" and "over 4 yrs").** This text contains confidential, non-public information

regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

104. **Exhibit 8, Bates -777.R (number before the words "expected payout"; number between "payout+" and "upside"; all numbers in the leftmost "Status Quo" column of the bar chart titled "Deal Payments"; all numbers in the middle "Low Case" column of the bar chart titled "Deal Payments"; all numbers in the rightmost "High Case" column of the bar chart titled "Deal Payments"; number between the words "Low Case" and "shipments @"; percentage figure between the words "shipments @" and "iOS"; number between the words "High Case" and "shipments @";  percentage figure above the words "across the board" in the table titled "Current deal effective TAC rates"; all numbers in the table titled "New deal consideration")**.  This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

105. **Exhibit 8, Bates -778.R (numbers in dark blue box between "investment pays" and "to unlock"; numbers in dark blue box between "to unlock" and "incremental"; all numbers in the bar chart, including all numbers contained within and located above each of the three columns; percentage figure between "Conservative incremental" and**

DocuSign Envelope ID: A0669AD1-87FC-4205-0940-8EA38B41F8BD

**"uplift").**  This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

106.    **Exhibit 8, Bates -781.R (all percentage figures next to the dotted "High Impact Case" lines in the graph; all percentage figures in the rightmost column of the bar chart).**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

107.    **Exhibit 8, Bates -782.R (number between "G" and "(+ approx"; number between "+ approx" and "LTV").**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

108. **Exhibit 8, Bates -783.R (number between "may forego" and "in margin"; number between "risk GM of" and "*includes"; number after "pre-covid at risk GM of"; all numbers in the bottom 7 rows of the table).** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

109. **Exhibit 8, Bates -784.R (number between "may forego up to" and "in margin"; number after "at risk GM of"; all numbers in the bottom 7 rows of the table; percentage figures contained in the far right column of the bar chart titled "Total Installed base").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

110. **Exhibit 8, Bates -785.R (numbers between "stands to lose" and "in margin"; numbers between "LTV impact of" and "from Android"; numbers after "at risk GM of"; number after "Low impact: GM loss of"; number after "High impact: GM loss of"; number between "17p.p decline in total device share from 35% to" and "primarily"; number between "GM loss of" and "from 2020"; number between "risk GM of" and "LTV").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is

1    non-public, and if revealed to competitors and potential business counterparties, could be used to

2    disadvantage and cause Google competitive harm by giving competitors insight into confidential

3    Google financial information. Further, this information reflects sensitive, highly confidential

4    characterizations by Google's internal business teams that, if revealed, could be referenced by

5    potential counterparties in negotiations with Google to gain an unfair advantage against Google.

6         111.    **Exhibit 8, Bates -786.R (all numbers in the bottom row of the table, between**

7    **"G" and "Emerging HW ecosystem").**  This information reflects and is calculated from

8    internal, non-public Google financial data. Google spends significant resources compiling and

9    maintaining this valuable data, which is non-public, and if revealed to competitors and potential

10   business counterparties, could be used to disadvantage and cause Google competitive harm by

11   giving competitors insight into confidential Google financial information. Further, this

12   information reflects sensitive, highly confidential characterizations by Google's internal business

13   teams that, if revealed, could be referenced by potential counterparties in negotiations with

14   Google to gain an unfair advantage against Google.

15        112.    **Exhibit 8, Bates -791.R (all numbers in the table).**  This information reflects

16   and is calculated from internal, non-public Google financial data. Google spends significant

17   resources compiling and maintaining this valuable data, which is non-public, and if revealed to

18   competitors and potential business counterparties, could be used to disadvantage and cause

19   Google competitive harm by giving competitors insight into confidential Google financial

20   information. Further, this information reflects sensitive, highly confidential characterizations by

21   Google's internal business teams that, if revealed, could be referenced by potential counterparties

22   in negotiations with Google to gain an unfair advantage against Google.

23        113.    **Exhibit 8, Bates -792.R (number between "deal term" and "of distribution";**

24   **number between "deal pays" and "on all devices"; all dollar amounts and percentage**

25   **figures in the charts and bar graphs; percentage figure between "DEAL 2 ADDS" and "ON**

26   **CHROME"; number after "(ROW) ADD'L").**  This text contains confidential, non-public

27   information regarding Google's agreements with non-party OEMs, including specific financial

28

calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

114. **Exhibit 8, Bates -793.R (all numbers in the table).** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

115. **Exhibit 8, Bates -794.R (all dollar amounts in the table titled "Payment to Samsung for Deal Term (4 Years)"; all dollar amounts in the table titled "Google Marketing Spend for Dealt Term (4 years)"; all dollar amounts in the table titled "Total Google Spend for Deal Term (4 years)"; number between "Signing bonus" and "(Samsung)"; number between "Base" and "per device"; numbers between "LTV and and "revenue uplift"; number between "Bonus" and "additional per"; number between "based on" and "iPhone switcher"; number between "2021" and "initial Google"; number between "Base" and "per device"; number between "Bonus" and "additional per").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including specific financial calculations of the dollar value associated with aspects of the deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover,

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

116. **Exhibit 8, Bates -795.R (number between "to mitigate" and "of Play risk"; all dollar amounts contained in the bar graph titled "4- Year Play Margin at Risk ($Bs)"; number between "BC (Apr'19):" and "margin at risk"; number between "Add'l" and "unmitigated risk"; number between "risk by" and "17 devs"; number between "reduce risk" and "Deal terms"; number between "Remaining risk of" and "90%").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

117. **Exhibit 8, Bates -796.R (all dollar amounts listed in table titled "Total Google Spend for Deal Term (4 years)"; all dollar amounts listed in the table titled "Incrtl Value Unlocked for Deal Term (4 years)"; all dollar amounts listed in the table titled "Net Deal Margin to Google for Deal Term (4 years)"; percentage figure between "Conservative incremental" and "uplift").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

118.   **Exhibit 8, Bates -797.R (all dollar amounts and percentage figures in all four tables).**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

119.   **Exhibit 8. Bates -798.R (all dollar amounts contained within the bar chart).** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

120.   **Exhibit 8, Bates -799.R (number between "Additional" and "in the US"; number between "TAC from" and "new devices"; percentage figure between "freed-up funds to" and "of funds on bounties"; percentage figure between "cleaned up devices" and "to Google controlled"; all numbers contained within the columns of the bar chart; all numbers in the chart on the far right below the column heading "2 Yr est"; all numbers in the chart on the far right below the column heading "5 Yr est.").**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by

1    Google's internal business teams that, if revealed, could be referenced by potential counterparties

2    in negotiations with Google to gain an unfair advantage against Google.

3        121.    **Exhibit 8, Bates -802.R (all text below the column heading "2017 RSA deal";**

4    **all text below the column heading "2020 RSA deal").**  This text contains confidential, non-

5    public information regarding Google's agreements with non-party OEMs. Disclosure of this non-

6    public information is likely to result in competitive harm to Google, as it reveals strategic

7    decision-making which, for example, could give a competitor or potential business partner unfair

8    leverage in competing against or negotiating with Google. Moreover, Google's competitors

9    could use this non-party information to unfairly target Google's OEM partners and offer specific

10   deal terms designed to undercut those offered by Google.

11       122.    **Exhibit 8, Bates -803.R (number between "Current RSA" and "if extended";**

12   **number between "paying" and "TAC"; number between "Browser" and "from IB";**

13   **number between "IB +" and "from browser"; all text in bullet points below heading**

14   **"Global deal"; number between "by device" and "Only available"; all text in bullet points**

15   **below heading "Only available outside EEA & RU").**  This text contains confidential, non-

16   public information regarding Google's agreements with non-party OEMs, including specific

17   financial calculations of the dollar value associated with aspects of the deals. Disclosure of this

18   non-public information is likely to result in competitive harm to Google, as it reveals strategic

19   decision-making which, for example, could give a competitor or potential business partner unfair

20   leverage in competing against or negotiating with Google. Moreover, Google's competitors

21   could use this non-party information to unfairly target Google's OEM partners and offer specific

22   deal terms designed to undercut those offered by Google.

23       123.    **Exhibit 8, Bates -804.R (percentage figure in blue box between "marketing"**

24   **and "of RSA"; percentage figure in dark gray box between "marketing" and "of Samsung**

25   **RSA"; percentage figure in light gray box between "marketing" and "of Carrier RSA").**

26   This text contains confidential, non-public information regarding Google's agreements with non-

27   party OEMs and other partners, including specific financial calculations regarding the percentage

28

47

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

of funds allocated to specific programs or initiatives. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM/Carrier partners and offer specific deal terms designed to undercut those offered by Google.

124.    **Exhibit 8, Bates -805.R (percentage figure in blue box between "marketing" and "of all RSA"; percentage figure in dark gray box between "marketing" and "of Samsung RSA"; percentage figure in light gray box between "marketing" and "of Carrier RSA").**   This text contains confidential, non-public information regarding Google's agreements with non-party OEMs and other partners, including specific financial calculations regarding the percentage of funds allocated to specific programs or initiatives. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM/Carrier partners and offer specific deal terms designed to undercut those offered by Google.

125.    **Exhibit 8, Bates -808.R (all text in bullet points below the heading "What we get now"; number between "enrollment:" and "devices in RU"; number between "KR and" and "in ROW").**   This text contains confidential, non-public information regarding Google's agreements with non-party OEMs and other partners, as well as calculations regarding the percentage of devices subject to the terms of those agreements. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

126. **Exhibit 8, Bates -809.R (all text in bullet points below the heading "What we get now").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs and other partners. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

127. **Exhibit 8, Bates -810.R (number between "up to" and "in additional incentives"; numbers in blue box below the words "Initial Setup & Quality Incentive"; numbers in blue box below the words "Growth Incentive"; all text in the two bullet points next to "Samsung provides:"; dollar amount between "Google payment to Samsung" and "signing bonus"; dollar amount between "Google payment to Samsung" and "per $400+"; dollar amount before "per OS switcher"; number between "Google Marketing investment" and "match"; dollar amount between "Google Marketing investment" and "in marketing headcount"; number between "Samsung (and" and "match"; dollar amount between "match" and "to cover").** This text contains confidential, non-public information regarding Google's agreements with non-party OEMs, including calculations regarding the specific dollar amounts allocated to various aspects of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to undercut those offered by Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 10**
**[Dkt 609-11]**
**(Exhibit A7)**

128.     **Exhibit 10, Bates -967 (between "been considered" and "Eugene Liderman, 2020-09-29 08:04:23"; between "08:08:07" and "should we continue"; between "off-play risk has" and "Dave Kleidermacher, 2020-09-29 08:09:35; and between "with an MTD represent" and "of all AE devices").**  This text contains non-public and confidential information regarding Google Play's internal assessment of its strategic priorities and of app security. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. The information also reflects non-public and confidential information about the share of Android devices with malware.  Disclosure of this information could be used by Google's competitors to inform their business strategies in a way that causes competitive harm to Google.

129.     **Exhibit 10, Bates -968 (between "malware rates" and "could help sway"; and between "going to say that" and "Eugene Liderman").**  This text contains non-public and confidential information regarding Google Play's internal assessment of its strategic priorities and of app security. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. The information also reflects non-public and confidential information about the share of Android devices with malware. Disclosure of this information could be used by Google's competitors to inform their business strategies in a way that causes competitive harm to Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 11**
**[Dkt 609-12]**
**(Exhibit A8)**

130.     **Exhibit 11, Bates -897 (between "its objectives" and "Partnership sentiment"; between "program investment of" and "was"; between "was" and "less than what"; between "ASK 1" and "in additional investments"; between "new developers" and**

**"in xPA"; between "includes" and "in additional").** This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

131. **Exhibit 11, Bates -900 (between "developers drove" and "of Alphabet's"; between "developers" and "over GVP 2019"; all numbers on the vertical axis of the bar chart; all numbers in all columns of the bar chart; between "Play" and "of annual revenue").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

132. **Exhibit 11, Bates -901 (numbers before "devs signed"; between "devs signed" and "sentiment improved"; between "incentives were" and "enabling GCP"; numbers between "Play Users" and "target devs"; between "target devs" and "of Play spend"; between "GVP 2019" and "on Play (247"; between "Sentiment" and "asked about service"; between "pre signing" and "Developers"; between "GVP 2019" and "developers are in"; between "Value" and "in incremental GCP"; between "including" and "new accounts"; between "cohort growing" and "faster"; all percentage figures between "GCP**

51

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA38B41F8BD

**overall" and "revenue uplift"; between "ve ROI" and "uplift in developer"; between "target list of" and "counts ABK"; between "separately by BC" and "new accounts"; between "accounts include" and "GVP 2021"; all text after "Ads ROI by").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals and the revenue impact of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

133.    **Exhibit 11, Bates -902 (between "Invest" and "over two"; between "strategic priorities" and "no changes/renewals"; between "value creation" and "Prioritize using BAU"; between "BAU funds" and "Apply incentive"; between "RENEW selectively" and end of sentence; between "NO RENEWALS for devs" and end of sentence; all developer logos and names; numbers between "Only" and "GVP 2019 devs"; between "programs for strategic priorities, eg" and end of sentence; between "GVP 2019 deal term" and "Only"; between "Only" and "All other incentives"; between "All other incentives" and end of sentence; all text between the URL below the slide and the end of the page).**  This text contains confidential, non-public information regarding Google's agreements with non-party developers. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

134.     **Exhibit 11, Bates -903 (between "consume only" and "in net investment"; between "net investment vs." and "expected"; all numbers in the table; between "Commits unlocked" and "incremental revenue"; between "signing resulting in" and "Play"; between "Play" and "but also"; between "achieved" and "than expected on marketing"; between "Figures include" and "in refreshed"; between "investments" and "net investment"; between "GVP partners was" and "for each of"; between "GVP 2019 investments" and "we'd like"; between "developers beyond" and "being"; between "strategic priorities" and "GVP 2019"; between "originally include" and "This is a new"; between "Dev Sentiment" and "prod integration"; between "HC costs" and "program duration"; between "program duration" and "Deal start"; between "ends after" and "Cloud value").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals and the revenue impact of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

135.     **Exhibit 11, Bates -905 (between "on Play has" and "since"; all numbers on the vertical axis of the bar chart; all numbers in the columns of the bar chart ; all numbers next to the arrows on the right of the bar chart; numbers in the key/legend of the bar chart between "Devs w/" and "in"; between "of GVP, we ask" and end of sentence).**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, as well as information calculated from Google's confidential, highly sensitive financial data. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or

53

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-094D-8EA38B41F8BD

1    negotiating with Google. Moreover, Google's competitors could use this non-party information

2    to unfairly target Google's developer partners and offer specific deal terms designed to undercut

3    those offered by Google.

4        136.    **Exhibit 11, Bates -906 (between "partnership with" and "of Play's large";**

5    **between "developers" and "of Play spend"; all developer names/logos, as well as**

6    **percentage figures, in the four boxes on the right half of the slide; between "2019 as they**

7    **lacked" and end of sentence; between "eligibility criteria" and "spend from"; between**

8    **"spend from" and "spend on Play"; between "Play OR" and "spend on Play"; between**

9    **"spend on Play" and "AND"; between "AND" and end of sentence).** This text contains

10   confidential, non-public information regarding Google's agreements with non-party developers,

11   including Google's strategic considerations regarding its selection and targeting of developer

12   partners. Disclosure of this non-public information is likely to result in competitive harm to

13   Google, as it reveals strategic decision-making which, for example, could give a competitor or

14   potential business partner unfair leverage in competing against or negotiating with Google.

15   Moreover, Google's competitors could use this non-party information to unfairly target

16   Google's developer partners and offer specific deal terms designed to undercut those offered by

17   Google.

18       137.    **Exhibit 11, Bates -907 (between "devs selected based on" and "Ads"; between**

19   **"Ads - based on" and "Play"; between "Play offers" and "unlocked"; between "unlocked**

20   **by" and "Marketing"; between "Play" and "Strategic Product"; between "Product**

21   **commits" and "integration"; between "Game quality" and "to ensure"; between "scale**

22   **products through" and "Automate"; between "manual efforts" and "Term"; between**

23   **"Term" and "for all offers"; between "offers except" and "renewal based"; between**

24   **"based on" and "Consults"; between "Drop" and "Add"; between "Add" and end of**

25   **sentence; between "aspects such as" and "continue to"; between "mandate" and "in**

26   **GVP").** This text contains confidential, non-public information regarding Google's agreements

27   with non-party developers, including Google's strategic considerations regarding its selection

28

and targeting of developer partners. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

138.    **Exhibit 11, Bates -908 (all dollar amounts in table; between "Cloud" and "down from"; between "down from" and "of Play"; between "UAC credits" and "down from"; between "down from" and "of Ad"; between "Play:" and "Marketing"; between "Marketing" and "in the base"; between "with performance for" and "Direct"; between "costs include" and "in GVP incentives"; between "Cloud" and "Ads"; between "Ads" and "Play marketing"; between "GPP" and "GVP incentives"; between "Play spend" and "down from"; between "down from" and "NOTE"; between "Dev Sentiment" and "strategic product"; between "HC costs" and "program duration"; between "mostly" and "No extension"; between "Base" and "GCP TAM"; between "GCP TAM" and "utilization"; between "utilization" and "Ad uplift"; between "Ad uplift" and "base"; between "Low" and "GCP TAM"; between "GCP TAM" and "utilization"; between "utilization" and "Ad uplift"; between "Ad uplift" and "base"; between "High" and "GCP TAM"; between "GCP TAM" and "utilization"; between "utilization" and "Ad uplift"; between "Ad uplift" and "base").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals and the margin impact of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information

to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

139.     **Exhibit 11, Bates -911 (between "within" and "range approved"; all developer names except "Riot" and "ABK" in the table; all numbers in the table; between "BC approved" and "value range"; between "Includes" and "who is currently negotiating"; between "a commit" and "underperformed on Play").**   This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals and the margin impact of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

140.     **Exhibit 11, Bates -912 (all numbers in the table; between "Cloud" and "down from"; between "down from" and "of Play"; between "UAC credits" and "down from"; between "down from" and "of Ad"; between "Play:" and "Marketing"; between "Marketing" and "in the base"; between "with performance for" and "NOTE"; between "expected to" and "for each of"; between "transfers will be" and "but the overall"; between "still be" and "Regarding GVP"; between "credits were at" and "of Play spend"; between "spend except for" and "Ads credits"; between "were at" and "of ads spend"; between "except for" and "High case"; between "High case" and "contribution margin"; between "GCP opportunity" and "of TAM"; between "TAM) and" and "utilization"; between "Ads" and "revenue uplift"; between "Dev Sentiment" and "strategic product"; between "HC costs" and "program duration"; between "mostly" and "No extension"; between "Base" and "GCP TAM"; between "GCP TAM" and "utilization"; between "utilization" and "Ad uplift"; between "Ad uplift" and "base"; between "Low" and "GCP**

56

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

TAM"; between "GCP TAM" and "utilization"; between "utilization" and "Ad uplift"; between "Ad uplift" and "base"; between "High" and "GCP TAM"; between "GCP TAM" and "utilization"; between "utilization" and "Ad uplift"; between "Ad uplift" and "stretch").  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals and the margin impact of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

141.     **Exhibit 11, Bates -913 (between "Refreshes" and "Google Contribution"; all dollar amounts in table; between "Note: the" and "play revenue allocation"; between "margin outlook" and "for Play"; between "for Play" and "for Cloud"; between "for Cloud" and "for Ads"; between "for Ads" and "for YT"; between "Figures include" and "in refreshed"; between "Marketing" and "(Gross)"; between "(Gross)" and "(Net)"; between "esports" and "(Gross)"; between "Loyalty" and "devs"; between "devs" and "(Gross)"; between "(Gross)" and "(Net)"; between "Ads" and "devs"; between "devs" and "(Gross)"; between "(Gross)" and "(Net)"; between "expected to be" and "NOTE"; between "partners was" and "for each of").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations regarding the specific dollar amounts allocated to various aspects of those deals and the margin impact of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

142.    **Exhibit 11, Bates -915 (text in the box below the heading "GVP Commercial Tactics" between "Ads Spend (AIP)" and "NEW"; all text in the light blue box to the right of the heading "Growth Package"; between "to hitting" and "thresholds"; all text in the light blue box at the bottom of the slide, to the right of the heading "Consulting Package").** This text contains confidential, non-public information regarding Google's agreements with non-party developers.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

143.    **Exhibit 11, Bates -917 (between "GCP Credits" and "of developer's"; between "issued every" and "months"; between "key title moments via" and "Ads credits"; between "credits from" and "of developer spend"; between "spend to" and end of sentence; all text in the four bullet points next to the heading "Community Development"; between "Increased participation" and "from top partners").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

144.    **Exhibit 11, Bates -918 (all text in the four bullet points below the heading "Build & Test"; all text in the five bullet points below the heading "Launch & Grow"; text**

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA3B541F8BD

1  **below the heading "User Acquisition" between "Ads credits" and end of sentence; all text**

2  **in the four bullet points below the heading "Community Development"; all text in the two**

3  **bullet points below the heading "Prioritize Play Users"; between "strategic priorities" and**

4  **"Maintain").**  This text contains confidential, non-public information regarding Google's

5  agreements with non-party developers.  Disclosure of this non-public information is likely to

6  result in competitive harm to Google, as it reveals strategic decision-making which, for

7  example, could give a competitor or potential business partner unfair leverage in competing

8  against or negotiating with Google. Moreover, Google's competitors could use this non-party

9  information to unfairly target Google's developer partners and offer specific deal terms designed

10  to undercut those offered by Google.

11  145.  **Exhibit 11, Bates -919 (text in column titled "GVP 2019" between**

12  **"PC/Console Devs" and "Play Devs"; text in column titled "GVP 2019" between "Play**

13  **Devs" and "Commercial:"; percentage figure in column titled "GVP 2019" between "Ads**

14  **credits" and "of eligible"; text in column titled "GVP 2019" between "UAC spend" and**

15  **"GCP credits"; percentage figure in column titled "GVP 2019" between "GCP credits"**

16  **and "of Play Consumer"; text in column titled "GVP 2019" between "Consumer Spend"**

17  **and "Comarketing"; text in column titled "GVP 2019" between "Comarketing" and**

18  **"YouTube Presence"; text in column titled "GVP 2019" between "Grants" and "esports";**

19  **text in column titled "GVP 2019" between "sponsorships" and "Consultative"; text in**

20  **column titled "GVP 2019" between "Consultative" and "of respective Play"; text in**

21  **column titled "GVP 2019" between "Consumer spend" and "for GCP credits"; text in**

22  **column titled "GVP 2019" between "for GCP credits" and "for all else"; text in column**

23  **titled "GVP 2019" between "for all else" and "to extend"; text in column titled "GVP**

24  **2019" between "to extend" and "for select devs"; text in column titled "GVP 2019"**

25  **between "for select devs" and bottom of column; text in column titled "GVP 2021"**

26  **between "PC/Console Devs" and "Play Devs"; text in column titled "GVP 2021" between**

27  **"Play Devs" and "Commercial:" text in column titled "GVP 2021" between "Ads credits"**

28

1   **and "of UAC spend"; text in column titled "GVP 2021" between "UAC spend" and "GCP**

2   **credits"; percentage figure in column titled "GVP 2021" between "GCP credits" and "of**

3   **Play Spend"; percentage figure in column titled "GVP 2021" between "Play Spend" and**

4   **"retirable against"; text in column titled "GVP 2021" between "Comarketing" and**

5   **"YouTube Presence"; text in column titled "GVP 2021" between "Grants" and "esports";**

6   **text in column titled "GVP 2021" between "sponsorships" and "Consultative"; text in**

7   **column titled "GVP 2021" between "Consultative" and "Public support for"; text in**

8   **column titled "GVP 2021" between "Public support for Play Partnership" and "of**

9   **respective Play"; text in column titled "GVP 2021" between "spend (except" and "for all**

10  **incentives"; text in column titled "GVP 2021" between "incentives except" and**

11  **"renewed"; text in column titled "GVP 2021" between "ROI eval" and end of column).**

12  This text contains confidential, non-public information regarding Google's agreements with

13  non-party developers, including financial calculations of specific dollar amounts associated with

14  particular aspects of those deals.  Disclosure of this non-public information is likely to result in

15  competitive harm to Google, as it reveals strategic decision-making which, for example, could

16  give a competitor or potential business partner unfair leverage in competing against or

17  negotiating with Google. Moreover, Google's competitors could use this non-party information

18  to unfairly target Google's developer partners and offer specific deal terms designed to undercut

19  those offered by Google.

20       146.    **Exhibit 11, Bates -920 (between "Appendix J" and "target)"; between**

21  **"representing" and "of Play spend"; between "users via" and "on Play"; all numbers in**

22  **the bar chart titled "2020 Play A&G Spend"; percentage figure before "of titles"; between**

23  **"of titles" and "247"; all developer names and logos, except Riot Games, Activision**

24  **Blizzard and Supercell; developer name before "is signing up to").**   This text contains

25  confidential, non-public information regarding Google's agreements with non-party developers,

26  including financial calculations of consumer spend generated by those developers.  Disclosure

27  of this non-public information is likely to result in competitive harm to Google, as it reveals

28

DocuSign Envelope ID: A0669AD1-87FC-4205-D949-8EA3BB41F8BD

strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

147.    **Exhibit 11, Bates -921 (all developer logos and names, except for Riot Games, Activision Blizzard, and Supercell).**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including the identities of specific developers with whom Google entered agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

148.    **Exhibit 11, Bates -922 (entire table, except for the names "Riot Games, Inc." and "ABK").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations pertaining to those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

149.    **Exhibit 11, Bates -923 (all percentage figures in the table titled "BC Success Metrics"; all dollar amounts and percentage figures in the table titled "Other Metrics"; text between "ABK" and "Titles"; between "COD" and "Titles"; between "Titles: 3" and "Titles:"; between "Not closed" and "TOTAL"; between "TOTAL" and "Incremental"; between "Incremental" and "Cloud KPI"; between "total" and "HUG BC"; between**

"total" and "and HUG new"; between "total" and "Win-rate acceleration"; between "conversion was" and "w/o HUG"; between "HUG and" and "with HUG"; between "with HUG" and "="; between "=" and "Already signed"; between "Already signed" and "out of"; between "out of" and "developers so"; between "developers so" and "conversion"; between "conservatively at" and "through program"; between "duration" and "="; between "=" and "Marquee titles").  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of specific dollar amounts allocated to or generated from particular aspects of those agreements. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

150. **Exhibit 11, Bates -924 (text in slide title after "Appendix O:"; between "discussion on x-platform gaming" and end of sentence; between "GVP & launched" and "titles"; between "dev sentiment" and "enabled Play"; between "launch for" and "Play's"; text before "up-leveled Play"; between "up-leveled Play -" and "partnership"; between "Strengthened" and "partnership"; `between "EAPs" and "first in KR"; between "adopt" and "successful pilot"; between "cadence w/" and "leadership"; between "results from" and "in"; between "in" and "Spend till"; between "date" and "from"; between "from" and "Created incremental"; between "users" and "titles launched").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of specific dollar amounts related to particular aspects of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information

to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

151.    **Exhibit 11, Bates -925 (all developer names and percentage figures in table; text between "GVP with" and "due to"; text before "titled are published"; between "3rd party developers" and "for"; between "for" and "due to which"; between "invest behind" and "high").**  This text contains confidential, non-public information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms and its own confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

152.    **Exhibit 11, Bates -926 (percentage figure between "Actual" and "Incrementality"; percentage figure below "Low SVA Adoption"; number before "developers receiving UAC"; between "Hug with" and "in credits"; between "budget of" and "of total GVP"; between "uplift of" and "increase in"; between "an average" and "across most"; between "credits delivered" and "with the implied"; between "uplift being" and "the original BC"; between "but overall" and "driven by"; between "Adopt" and "model"; between "release structure" and "2021: Build new"; between "equivalent to" and "of released"; between "assumption =" and "uplift"; between "uplift" and "of"; between "of" and "vs actual"; between "uplift of" and "Latest").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific calculations of the financial impacts of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner

63

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

153.    **Exhibit 11, Bates -927 (between "Ads ROI is" and "while overall"; between "ROI remains" and "Through incrementality"; between "BC expectations" and "Ads ROI"; between "Only" and "of Ad credits"; between "leaving" and "on the table"; between "negotiation duration" and "leaving devs"; between "leaving devs" and "to fulfil"; between "slated to end" and "High credit caps"; between "low ad spenders" and "resulting in"; between "resulting in" and "redemption"; between "redemption" and "of credits"; between "redeemed by" and "rest of partners"; between "range from" and "redemption"; between "back from" and "to"; between "to" and "Limit customers"; between "GVP" and "secure budget"; between "Standard" and "deal mechanism").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific calculations of the financial impacts of those agreements. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

154.    **Exhibit 11, Bates -928 (between "Developer" and "ad credit deals"; between "completed" and "earned to"; between "earned to through" and "to ABK"; entire table; footnote following asterisk below table).**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific calculations of the financial impacts of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors

64

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

1  could use this non-party information to unfairly target Google's developer partners and offer

2  specific deal terms designed to undercut those offered by Google.

3      155.    **Exhibit 11, Bates -929 (between "partner engagement" and "Strong desire**

4  **to"; between "to avoid" and "given intensive"; between "in case of" and "ads finance";**

5  **between "approvals required" and "Ads committing"; between "committing to" and "to**

6  **start"; between "securing budget for" and "at BC"; between "Evaluation of" and "to**

7  **require"; between "Should ads continue" and "commitment"; between "APAC concerns"**

8  **and "Ads to support"; between "to support" and "with BC approval"; between "email**

9  **for" and "Please let us").**  This text contains confidential, non-public information regarding

10  Google's agreements with non-party developers, including alternative deal terms contemplated

11  and/or offered by Google.  Disclosure of this non-public information is likely to result in

12  competitive harm to Google, as it reveals strategic decision-making which, for example, could

13  give a competitor or potential business partner unfair leverage in competing against or

14  negotiating with Google. Moreover, Google's competitors could use this non-party information

15  to unfairly target Google's developer partners and offer specific deal terms designed to undercut

16  those offered by Google.

17      156.    **Exhibit 11, Bates -930 (dollar amount between "Actual" and "Incremental";**

18  **percentage figures between "ARR acceleration" and "(by"; between "Key Highlights" and**

19  **"developers receiving"; between "deals with" and "of the"; between "of the" and**

20  **"developers collectively"; all text below slide listing developers, dollar amounts and start**

21  **dates).**  This text contains confidential, non-public information regarding Google's agreements

22  with non-party developers, including financial calculations of the dollar amounts associated

23  with particular aspects of those agreements.  Disclosure of this non-public information is likely

24  to result in competitive harm to Google, as it reveals strategic decision-making which, for

25  example, could give a competitor or potential business partner unfair leverage in competing

26  against or negotiating with Google. Moreover, Google's competitors could use this non-party

27

28

DocuSign Envelope ID: A0669AD1-87FC-4205-994B-8EA38B41F8BD

information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

157.    **Exhibit 11, Bates -931 (between "Developer Status" and "contracts signed"; names of all developers listed below the heading "H1'20 Signers"; names of all developers, except Riot Games and Activision Blizzard, listed below the heading "H2'20 Signers"; text between "for GCP credits" and "titles developers").**   This text contains confidential, non-public information regarding Google's agreements with non-party developers.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

158.    **Exhibit 11, Bates -932 (between "commit with ABK" and "Riot"; between "+$20M incremental" and "Negotiating"; between "Negotiating" and "TOTAL"; between "TOTAL" and "Incremental"; number after the word "Incremental:").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of the dollar amounts associated with particular aspects of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google.  Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

159.    **Exhibit 11, Bates -933 (text in leftmost green box between "Signed" and "incremental GCP"; between "commits" and "customers"; between "Play investing" and "in credits"; between "in credits" and "Y1 consumption"; between "($230M) and" and "are 2 of Cloud's"; between "Cloud's largest deals" and "increased commit"; between**

"year" and "negotiating early"; between "accelerated" and "4 qtrs."; between "Forecasting" and "incremental Cloud"; between "post-deferrals over 4 years" and "target customers"; between "revenue deferrals" and end of sentence; between "Only" and "of customers signed commits"; between "pushing remaining to" and end of sentence; between "contributed" and "of region's GCP"; between "Largest customers" and "in NorthAm"; between "account for" and "of HUG 1.0"; between "APAC/JP" and "of customers in"; between "in EMEA" and "spent"; between "spent" and "revenue"; between "unblocked commit deals in H2'2020" and end of sentence).  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of the dollar amounts associated with particular aspects of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google.  Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

160.    **Exhibit 11, Bates -934 (between "expands customers by" and "and expected"; between "to drive" and "incr. revenue"; between "Highlights" and "customers in-scope"; between "customers included" and "are 2 of"; between "largest projected deals" and "have strong potential"; between "strong potential" and "of the customers"; between "EMEA customers" and end of sentence; entire bar chart titled "HUG 2.0 Projected Rev. Uplift"; footnote no. 1 before "ongoing legal concerns").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific calculations of the financial impact associated with particular aspects of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google.

67

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

161.    **Exhibit 11, Bates -935 (all percentage figures in column titled "Projected"; all percentage figures in column titled "Actual").**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

162.    **Exhibit 11, Bates -936 (entire table, except for the names of "Activision Publishing, Inc.," "Riot Games, Inc," "Blizzard Entertainment, Inc.," and "King").**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific calculations of the financial impact associated with particular aspects of those agreements.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 12 [Dkt 609-13]**
**(Exhibit A9)**

163.    **Exhibit 12, Bates -102 (between "expanded from" and "We believe Deals 1"; between "did two things" and "This reduces"; between "average) from" and "saving"; between "saving" and "We also"; between "We also" and "saving"; between "saving" and**

"Then, we provided"; between "Samsung by giving" and "given the"; between "for Samsung to" and "The Chrome and S Browser"; between "impact payments by" and "and we"; between "collectively save" and "from Deal 1"; between "Samsung RSA deal" and "through Deal 1"; between "along with" and "On a device-by-device"; between "election" and "Samsung can also"; between "Samsung can also" and "ex-Europe"; between "In Europe" and "we also get"; between "we also get" and "to promote Google services"; between "deal amounts to" and "devices over"; between "over 4 years, and" and "This"; between "This" and "on the install base"; between "install base represents" and "over"; between "over" and "Note: Some carriers"; between "In addition to the" and "we also provide"; between "we also provide" and "The"; between "The" and "is projected to be"; between "is projected to be" and "and -1 share"; between "share to" and "over"; between "over" and "with potential high variability"; between "we also added" and "bonus"; between "originally" and "and located in Deal 3"; between "we are still" and "the prior as-is deal"; between "allows Samsung to" and "Samsung will earn"; between "Samsung will earn" and "to be added"; between "for every" and "additionally up to"; between "additionally up to" and "The current switcher"; between "rate is at" and "but Samsung"; between "but Samsung can" and "Example"; between "Example: if they" and "the per device"; between "device incentives" and "for the two"; between "we will fund" and "to this GTM"; between "GTM Fund over" and "We have also"; between "for Google to" and "An incremental"; between "An incremental" and "has also been"; between "to support" and "for their watches"; between "not to pursue" and "Play Store"; between "This saves us" and "over"; between "over" and "We also did"; between "did not get" and "as had originally"; between "The" and "to Samsung was also removed"; between "Within Deal 3" and "which will"; between "of countries were" and end of page.  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of the specific dollar amounts associated with particular aspects of those deals. Disclosure of this non-public information is likely to result in competitive harm to

Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

164.    **Exhibit 12, Bates -103 (between "(all)" and "As noted above"; between "also migrated the" and "from Deal 3"; between "motivate closure" and "(Please note"; between "Deal 2 was" and "Combining deals"; between "the range is" and "the projected prior"; between "projected prior deal" and "to"; between "to" and "in the case that"; between "Updated deal size" and "(includes"; between "guidance of" and "and within"; between "margin guidance of" and "Key structural"; between "Browsers" and "and Search"; between "which includes" and "and Deal 3"; between "was strictly" and end of sentence; between "Timing" and "for Deals 1 and 3"; between "Deals 1 and 3" and "for Deal 2"; between "the prior deal was" and "was extended"; between "Samsung Browser" and "Enhanced Search"; between "Enhanced tier" and "Assistant"; between "Assistant" and "increased promotion"; between "for enhanced devices" and "Chrome"; between "Chrome" and "SUW screens"; between "SUW screens" and "both numbers in gross"; between "across" and "DEAL 2"; between "Cloud interoperability" and end of page).**  This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of the specific dollar amounts associated with particular aspects of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

165.    **Exhibit 12, Bates -104 (between "devices" and "-1"; between "-1" and "Google will be"; between "Google will be" and "and user will"; between "able to" and "+1**

70

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-D94B-8EA38B41F8BD

**action away"; between "triggered by" and "Note: we provide"; between "an additional" and "of payment"; between "three items" and "Deal 3"; between "Public commitment for" and "and"; between "and" and "for devices"; between "for devices" and "Note:"; between "trickle down to" and "at a cadence"; between "Samsung to implement" and "for a total"; between "for a total of" and end of sentence; between "and have voice" and "strategy for"; between "strategy for" and "to increase share"; between "GTM support for" and "and also"; between "product asks" and "What did"; between "from the prior agreement" and "Project economics"; between "re-signed 'as is' for" and "New deal"; between "New deal =" and "than projected"; between "D3=" and "Install base payments"; between "Install base payments" and "except"; between "New device payments" and "New service payments"; between "Messages" and "Projected deal margins"; between "deal margins of" and "over"; between "over" and "incremental revenue"; between "approved guidance of" and "GTM Fund"; between "from deal 3" and "includes"; between "includes" and "D2 signing bonus"; between "bonus and" and "for Wear"; between "deal margin" and "within BC approved"; between "approved guidance of" and end of page).** This text contains confidential, non-public information regarding Google's agreements with non-party developers, including financial calculations of the specific dollar amounts associated with particular aspects of those deals. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

166. **Exhibit 12, Bates -105 (between "HC costs" and "which includes"; between "includes up to" and "Relative to prior"; between "Samsung are potentially" and "for the prior"; between "Updated deal size of" and "is within"; between "BC-approved guidance of" and "and within"; between "margin guidance of" and "for D1"; between "and" and "for D3"; between "Install base" and "of gross"; between "of gross" and "New devices";**

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

1  between "New devices"; and "weighted average"; between "savings comes from" and "of

2  revenue"; between "of which" and "comes from GSA"; between "a net effective" and

3  "Giving opportunity"; between "telecom operator IDs" and "Deviations"; between "Did

4  not get" and "Other items"; between "notifications to be handled" and "Samsung";

5  between "Did not get" and "Adjustments to payments"; between "payment to Samsung"

6  and "Play revenue share"; between "Play revenue share" and "in Play revenue share";

7  between "in Play revenue share" and "Monthly payments"; between "Removed" and "in

8  payments removed"; between "in payments removed" and "Signing bonus"; between

9  "Signing bonus" and "to close D2"; between "to close D2" and "for D3"; between "for D3"

10  and "Business Messaging"; between "revenue share from" and "TBD"; between "TBD

11  and" and "Funding for D3"; between "D3 GTM Fund" and "to GTM fund"; between

12  "fund via" and "assumption"; between "assumption, while" and "Reinvestment"; between

13  "Went" and "for install base"; between "add-in to reinvest" and "Discover"; between

14  "Paying" and "Discover Play"; between "Play ads" and "which we"; between "TBD and"

15  and "e.g. carrier-ranged"; between "distributed) projected impact" and end of page.)  This

16  text contains confidential, non-public information regarding Google's agreements with non-party

17  developers, including financial calculations of the specific dollar amounts associated with

18  particular aspects of those deals. Disclosure of this non-public information is likely to result in

19  competitive harm to Google, as it reveals strategic decision-making which, for example, could

20  give a competitor or potential business partner unfair leverage in competing against or

21  negotiating with Google. Moreover, Google's competitors could use this non-party information

22  to unfairly target Google's developer partners and offer specific deal terms designed to undercut

23  those offered by Google.

24  **Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 13**
**[Dkt 609-14]**

25  **(Exhibit A10)**

26  167.  **Exhibit 13, Bates -173 (between "chatted with t" and "about the doc").**  This

27  text contains the identities of current or former Google employees. Disclosure of these names

28

and email addresses is of limited value to the public—as their identities are not relevant to the disposition of this case. The public is still able to view the substantive portions of the document, while individuals' reputations and identities are protected. Thus, even with narrow redactions of these individuals' names, the public can readily understand the import of Exhibit 13 and its interest in disclosure of Exhibit 13 in its entirety is limited and outweighed by the compelling reasons for sealing.

168.     **Exhibit 13, Bates -174 (between "Schumacher, 2021-01-08 09: 57: 07 t" and "didn&#39;t").**  This text contains the identities of current or former Google employees. Disclosure of these names and email addresses is of limited value to the public—as their identities are not relevant to the disposition of this case. The public is still able to view the substantive portions of the document, while individuals' reputations and identities are protected. Thus, even with narrow redactions of these individuals' names, the public can readily understand the import of Exhibit 13 and its interest in disclosure of Exhibit 13 in its entirety is limited and outweighed by the compelling reasons for sealing.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 14 [Dkt 609-15] (Exhibit A11)**

169.     **Exhibit 14 (Names of chat participants, except for first initials).** This text contains the identities of current Google employees.  Disclosure of these names and email addresses is of limited value to the public—as their identities are not relevant to the disposition of this case.  The public is still able to view the substantive portions of the document, while individuals' reputations and identities are protected.  Thus, even with narrow redactions of non-party individuals' names, the public can readily understand the import of Ex. 14 and its interest in disclosure of Ex. 14 in its entirety is limited and outweighed by the compelling reasons for sealing.

170.     **Exhibit 14, Bates -332 (between "Play originally wanted" and "but then settled"; between "the teams agreed on" and end of sentence; between "really burdensome to" and end of sentence; between "mad at" and "and 2) also mad"; between "Google Ads**

1   **can" and end of sentence).** This information reveals Google's confidential, non-public strategic

2   considerations. This information has never been disclosed publicly and the Google Play product

3   team treats it as strictly confidential. If publicly revealed, this information could influence the

4   competitive decision-making and business strategies employed by Google's app store

5   competitors, for example by influencing how those app stores market themselves to U.S.

6   developers and how they distinguish themselves from Google Play in the eyes of U.S.

7   developers.

8   **Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 15 [Dkt 609-16]**

9   **(Exhibit A12)**

10          171.   **Exhibit 15, Page -690.R (between "GVP 1.0 Impact Assessment" and "GVP**

11  **1.0 x-Google Financial Assessment").** This text contains non-public information regarding

12  Google's confidential non-public internal strategic considerations related to creating value for

13  and attracting developers to the Google Play Store. This information has never been disclosed

14  publicly. Disclosure of this information would adversely impact Google's current competitive

15  position by enabling Google's competitors to mimic its confidential strategies in an effort to

16  attract developers away from Google.

17          172.   **Exhibit 15, Page -694.R (text in row under "GVP 1.0 Target Developers:"**

18  **and to the left of "Drive disproportionate value to Google"; text in row to the left of**

19  **"Beacons of the ecosystem"; text in row to the left of "Expressed discontent over lack of**

20  **unified support from Google"; text in row to the left of "May forgo Play (& Android)" and**

21  **above "Full Partner List"; between "GVP targeted" and "major game"; between "e.g."**

22  **and "of total Play").** This text contains non-public information regarding Google's confidential

23  non-public internal strategic considerations related to creating value for and attracting developers

24  to the Google Play Store, including the identity of specific, strategic non-party developers.

25  Disclosure of this non-public information is likely to result in competitive harm to Google, as it

26  reveals strategic decision-making which, for example, could give a competitor or potential

27  business partner unfair leverage in competing against or negotiating with Google. Moreover,

28

Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

173.    **Exhibit 15, Page -695.R (between "Non Goals: Play exclusivity, drive additional xPA integrations (eg:" and "xPA spend commitments").**  This text contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store, including discussion of potential deal terms. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

174.    **Exhibit 15, Page -697.R (Under leftmost column "1) Prioritize Play", entire first bullet, second bullet between "of titles" and "on Play", entire third bullet and entire fourth bullet; under middle column "2) Boost X-PA Product Adoption", both highlighted dollar terms in second bullet and highlighted dollar term in third bullet; and in rightmost column "3) Improve Sentiment", between "to date" and "devs").** This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings, negotiations, financial terms, and strategy with respect to counterparties, including the identities of certain of those counterparties. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

175.    **Exhibit 15, Page -698.R (between "GOAL 1: Prioritize Play Users" and "target) devs representing"; between "target) devs representing"  and "of total Play spend signed GVP," column below "2019 Play A&G Spend"; entire contents of column below "100% of titles simshipped (184 titles)" and "Holding Out"; in box beneath "Holding Out"; from beginning of footer and "signing up to GVP obligations").** This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings, negotiations, financial terms, and strategy with respect to

counterparties, including the identities of certain of those counterparties. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

176.     **Exhibit 15, Page -699.R, BC Success Metrics column (between "ARR acceleration" and "2024)"; between "2024)" and (by 2024)"; between "Win-Rate acceleration" and end of row; between "N/A" and end of row; between "UAC yoy growth rate acceleration" and end of row; between "SVA/Best Practice adoption" and end of row; between "Mobile game watchtime, as % of total gaming watchtime" and "(by 2022)"; between (by 2022)" and "(2020)"; between "N/A" and end of row; between "upload uplift N/A" and end of row).** This information reflects specific, confidential details and terms about specific programs offered by Google as well as the specific deal terms and values offered to particular partners. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partners and any ongoing negotiations or dealings with them. The information also implicates non-party confidentiality interests, by revealing the identities of Google's business partners, who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public disclosure of this information is likely to result in competitive harm to Google.

177.     **Exhibit 15, Page -699.R, Other Metrics column (between "Spend Commits" and end of row; between "Share of Wallet" and end of row; between "ROI" and end of row).** This information reflects specific, confidential details and terms about specific programs offered by Google as well as the specific deal terms and values offered to particular partners. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partners

DocuSign Envelope ID: A0669AD1-87FC-4205-9948-8EA38B41F8BD

and any ongoing negotiations or dealings with them. The information also implicates non-party confidentiality interests, by revealing the identities of Google's business partners, who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public disclosure of this information is likely to result in competitive harm to Google.

178.    **Exhibit 15, Page -699.R, (between "Cloud Deals" and end of paragraph; between "TOTAL" and "Incremental"; between "Incremental: and "M"; between "BC 5-year total:" and "HUG BC 5-year total:" and "and HUG new projected"; between "5-year total:" and "Win-rate acceleration:"; between "BC conversion was" and "w/o HUG and"; between "w/o HUG and" and "with HUG" and "="; between "=" and end of sentence; between 12 out of 18 developers so" and "conversion."; between "Estimating conservatively at" and "through program duration."; between "through program duration." and end of line; between "9 titles include" and "migrating from"; from "migrating from" and "-Expected to 13x spending").** This information reflects specific, confidential details and terms about specific programs offered by Google as well as the specific deal terms and values offered to particular partners. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partners and any ongoing negotiations or dealings with them. The information also implicates non-party confidentiality interests, by revealing the identities of Google's business partners, who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's

1   internal strategic financial considerations underlying these non-public deals and deal terms.

2   Public disclosure of this information is likely to result in competitive harm to Google.

3        179.   **Exhibit 15, Page -700.R, (between beginning of first line and "- new**

4   **customer"; between beginning of second line "and new title"; between beginning of third**

5   **line and "-Expected to 40x spending).** This text contains confidential, non-public information

6   regarding non-party developers, and implicates non-parties' confidentiality interests, by revealing

7   the identities of Google's business partners, who are not parties to this litigation, and who have a

8   reasonable expectation that Google will maintain the confidentiality of contractual terms.

9   Further, disclosure of this non-public information is likely to result in competitive harm to

10   Google as, for example, Google's competitors could use this non-party information to unfairly

11   target Google's developer partners and offer deal terms specifically designed to undercut those

12   offered by Google.

13        180.   **Exhibit 15, Page -701.R (entire table below "Signed up to GVP"; entire table**

14   **below "Holding Out").**  This text contains confidential, non-public information regarding non-

15   party developers, and implicates non-parties' confidentiality interests, by revealing the identities

16   of Google's business partners, who are not parties to this litigation, and who have a reasonable

17   expectation that Google will maintain the confidentiality of contractual terms. Further, disclosure

18   of this non-public information is likely to result in competitive harm to Google as, for example,

19   Google's competitors could use this non-party information to unfairly target Google's developer

20   partners and offer deal terms specifically designed to undercut those offered by Google.

21        181.   **Exhibit 15, Page -702.R (left column of table; between "Outside of" and**

22   **"singularly focused").** This text contains confidential, non-public information regarding non-

23   party developers, and implicates non-parties' confidentiality interests, by revealing the identities

24   of Google's business partners, who are not parties to this litigation, and who have a reasonable

25   expectation that Google will maintain the confidentiality of contractual terms. Further, disclosure

26   of this non-public information is likely to result in competitive harm to Google as, for example,

27

28

78

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

Google's competitors could use this non-party information to unfairly target Google's developer partners and offer deal terms specifically designed to undercut those offered by Google.

182.    **Exhibit 15, Page -703.R (left column of table; between "Strategic partnership with" and end of line).** This text contains confidential, non-public information regarding non-party developers, and implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. Further, disclosure of this non-public information is likely to result in competitive harm to Google as, for example, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer deal terms specifically designed to undercut those offered by Google.

183.    **Exhibit 15, Page -705 (between "positive contribution of" and end of line"; columns under "2019," "2020," "2021," "2022", "2019-2022"; between start of line and "incr. rev (from large"; between "endweighted, with" and "of ABK"; between "of ABK" and "package hitting 2020"; between "GVP at" and "reinvestment continues").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

184.    **Exhibit 15, Page -706 (entire chart).** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business

1 teams that, if revealed, could be referenced by potential counterparties in negotiations with

2 Google to gain an unfair advantage against Google.

3       185.    **Exhibit 15, Page -707 (between "even without" and "Play risk"; entire chart;**

4 **"even without" and "Play risk mitigation"; between "investments of" and "over 2019-**

5 **2024"; between "to recoup" and "of invested value"; between "invested value" and**

6 **"expected to sign incremental"; between "commits" and "and turn ROI"; between "+ve"**

7 **and "esports investment"; between "investment with" and "adversely impacted"; between**

8 **"adversely impacted" and "and program"; between "3 years for" and "UAC margin";**

9 **between "2019, and" and "thereafter"; between "to Cloud of" and "toward Cloud credits";**

10 **between "worth" and "by 2022").** This information reflects and is calculated from internal,

11 non-public Google financial data. Google spends significant resources compiling and

12 maintaining this valuable data, which is non-public, and if revealed to competitors and potential

13 business counterparties, could be used to disadvantage and cause Google competitive harm by

14 giving competitors insight into confidential Google financial information. Further, this

15 information reflects sensitive, highly confidential characterizations by Google's internal business

16 teams that, if revealed, could be referenced by potential counterparties in negotiations with

17 Google to gain an unfair advantage against Google.

18       186.    **Exhibit 15, Page -710 (between "selection – An" and "for game developers";**

19 **all text in the slide below "New to Play PC/Console Devs" and "On Play "enterprise"**

20 **Developers"; all text below slide besides "Both" and "meet the criteria").** This text contains

21 confidential, non-public information regarding non-party developers, and implicates non-parties'

22 confidentiality interests, by revealing the identities of Google's business partners, who are not

23 parties to this litigation, and who have a reasonable expectation that Google will maintain the

24 confidentiality of contractual terms. Further, disclosure of this non-public information is likely to

25 result in competitive harm to Google as, for example, Google's competitors could use this non-

26 party information to unfairly target Google's developer partners and offer deal terms specifically

27 designed to undercut those offered by Google.

28

80

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-0940-8EA38B41F8BD

187. **Exhibit 15, Page -711 (last column for rows "Build & Test", "Launch", "UA", and "Community").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

188. **Exhibit 15, Page -712 (all text in box beginning with "Google Gives"; all text in box beginning with "Google Gets (contractual)").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

189. **Exhibit 15, Page -713 (between "GVP 2021" and "Play Margin"; entire table; between beginning of sentence and " to extend commercial"; between "1.0 devs @" and "of respective"; between beginning of sentence and "to 11 new developers"; between beginning of sentence and "GVP 2.0 developers"; between beginning of sentence and "GVP 2.0 developers"; between "1 Excludes" and "who already have"; between "already getting" and "of Play spend").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AD1-87FC-4205-0940-8EA38B41F8BD

190. **Exhibit 15, Page -715 (both figures and accompanying text; between "offered at" and "& met the following"; between "footprint;" and "incremental Google margin"; between "against investment of" and end of sentence; between "reduced rev share" and "Runway may help address").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

191. **Exhibit 15, Page -717 (text in boxes below "Google Gives" and "Google Gets" and above "Eligibility criteria: expand").** This text contains confidential, non-public information regarding Google's agreements with non-party developers. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

192. **Exhibit 15, Page -718 (all text in columns under "Runway"; "GVP"; "GVP (in conjunction w/Runway").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

193.    **Exhibit 15, Page -719 (all text in columns under "Option 1", "Option 2", and "Option 3").**  This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

194.    **Exhibit 15, Page -722 (between "Lifetime Revenue of IP" and end of line under "GVP 1.0"; between "Lifetime Revenue of IP" and end of line under "GVP 1.0"; between "Lifetime Spend" and "OR"; between "Lifetime spend =" and "growing"; between "growing" and "OR"; between "Lifetime Spend" and "and growing"; between "and growing" and "YoY"; between "Lifetime Spend =" and "growing"; between "growing" and end of the line; entire rows beginning in "# of developers", "% of Play Spend covered", "Google Gets", and "Term"; between "Ad credits:" and "of eligible UAC spend"; between GCP credits" and "of Play Consumer Spend"; between "GCP credits" and "of Play Spend"; between "% investment" and "of respective Play"; between "Play consumer spend" and "of respective Play Consumer Spend").**  This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

195.    **Exhibit 15, Page -725 (between "cost by" and "mainly due to"; all figures in the table).**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential

Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

196.     **Exhibit 15, Page -726 (text to the right of "Ads Credits"; text to the right of "GCP Credits"; text to the right of "Comarketing").**  This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

197.     **Exhibit 15, Page -728 (between "bundle with" and "offers the best"; four developer icons below "3 month trial"; icon to the right of "Android Premium Phone or Plan Purchase"; between start of bullet point and "marketing investment in ATL"; between start of bullet point and "marketing investment match").**  This text contains confidential, non-public information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms and its own confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

198.     **Exhibit 15, Page -729 (icon to the right of "Android Premium Phone or Plan Purchase"; three developer icons below "Youtube Premium Free 3 month Trial"; all text in box called "Interactive sharers"; three icons to the left of "Free! 3P content offers (TBD)"; between "the world of" and "interact with").**  This text contains confidential, non-public

information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms and its own confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

199.   **Exhibit 15, Page -730 (between start of sentence and "year Spend commits"; second row in column named "Projected"; all information in column named "Actual"; between start of bullet point and "receiving GCP credits"; between "deals with" and "of the top"; between "of the top" and "developers collectively"; between "to spend" and "on IT in 2021"; all text below slide).** This text contains confidential, non-public information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms and its own confidential statements made during negotiations. This information also contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

200.   **Exhibit 15, Page -731 (all text following "incremental attributable to Hug").** This text contains confidential, non-public information regarding non-party developers, and

DocuSign Envelope ID: A0669AD1-87FC-4205-0940-8EA38B41F8BD

1     implicates the non-party's confidentiality interests, by revealing the identity of Google business

2     partners who are not party to this litigation, and who have a reasonable expectation that Google

3     will maintain the confidentiality of contractual terms and its own confidential statements made

4     during negotiations. This information also contains non-public information regarding Google's

5     confidential non-public internal strategic considerations related to creating value for and

6     attracting developers to the Google Play Store. Further, disclosure of this non-public information

7     is likely to result in competitive harm to Google, as it reveals strategic decision-making, which,

8     for example, could give a competitor or potential business partner unfair leverage in competing

9     against or negotiating with Google. Moreover, Google's competitors could use this non-party

10     information to unfairly target Google's developer partners.

11         201.    **Exhibit 15, Page -732 (entire chart; between start of bullet point and**

12    **"developers expected to deliver"; between "to deliver" and "in IT spend in 2021"; between**

13    **"a deal with" and "developers"; between " GCP (up to" and "due to"; between "reside on**

14    **GCP" and "uplift from standard"; between "discounts," and "uplift from HUG").** This

15    text contains confidential, non-public information regarding non-party developers, and

16    implicates the non-party's confidentiality interests, by revealing the identity of Google business

17    partners who are not party to this litigation, and who have a reasonable expectation that Google

18    will maintain the confidentiality of contractual terms and its own confidential statements made

19    during negotiations. This information also contains non-public information regarding Google's

20    confidential non-public internal strategic considerations related to creating value for and

21    attracting developers to the Google Play Store. Further, disclosure of this non-public information

22    is likely to result in competitive harm to Google, as it reveals strategic decision-making, which,

23    for example, could give a competitor or potential business partner unfair leverage in competing

24    against or negotiating with Google. Moreover, Google's competitors could use this non-party

25    information to unfairly target Google's developer partners.

26         202.    **Exhibit 15, Page -733 (all information in column beginning with "Actual").**

27    This information contains non-public information regarding Google's confidential non-public

28

internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

203. **Exhibit 15, Page -734 (all information in column beginning with "Actual"; between start of bullet point and "receiving UAC credits as"; between "Hug with" and "in credits received"; between "revenue uplift of" and "(which exceeds BC"; between "negative ROI of" and "through exceeded BC"; between "was equivalent to" and "of released credits"; between "of released credits" and "actual uplift range"; between "range of" and "based on analysis").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

204. **Exhibit 15, Page -735 (between "post-Hug indicates" and "(mainly"; between "(mainly" and end of line; between "continue to see an" and "across most clients"; between "indicates aggregate" and "which exceeds BC"; entire table; between "incrementality study" and "is attributable to Hug"; between "with the remaining" and "due to other factors"; between "Note:" and "has been removed"; between "removed from all" and "metrics, as they"; between "(new" and "deal effective"; between "Apr-20)" and "Hug treatment period is 12"; between "whereas" and "treatment period is only 3"; between "Consolidated" and "accounts for"; between "accounts for" and "of credits earned"; between "earned, and" and "of total uplift").** This text contains confidential, non-public information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this

DocuSign Envelope ID: A0669AD1-87FC-4205-994B-8EA38B41F8BD

1   litigation, and who have a reasonable expectation that Google will maintain the confidentiality of

2   contractual terms and its own confidential statements made during negotiations. This information

3   also contains non-public information regarding Google's confidential non-public internal

4   strategic considerations related to creating value for and attracting developers to the Google Play

5   Store. Further, disclosure of this non-public information is likely to result in competitive harm to

6   Google, as it reveals strategic decision-making, which, for example, could give a competitor or

7   potential business partner unfair leverage in competing against or negotiating with Google.

8   Moreover, Google's competitors could use this non-party information to unfairly target Google's

9   developer partners.

10      205.   **Exhibit 15, Page -736 (between "increased from" and "based on the**

11   **refreshed"; entire tables; between "Jun-20 was" and "of total UAC spend"; between "Hug**

12   **was" and "on QS-only).**  This information reflects and is calculated from internal, non-public

13   Google financial data. Google spends significant resources compiling and maintaining this

14   valuable data, which is non-public, and if revealed to competitors and potential business

15   counterparties, could be used to disadvantage and cause Google competitive harm by giving

16   competitors insight into confidential Google financial information. Further, this information

17   reflects sensitive, highly confidential characterizations by Google's internal business teams that,

18   if revealed, could be referenced by potential counterparties in negotiations with Google to gain

19   an unfair advantage against Google.

20      206.   **Exhibit 15, Page -737 (entire table; between "deals live;" and "earned to**

21   **date"; between "earned to date" and end of sentence; between "New" and "deal went**

22   **live"; between "4/1/20. All" and "revenue from"; between "revenue from" and "included**

23   **in"; between "included in the" and "line, as they have"; between "Nov-19" and "is active 8**

24   **months"; between "Note:" and "has been removed"; between "removed from all" and**

25   **"metrics, as they"; between "(new" and "deal effective"; between "Apr-20)" and "Hug**

26   **treatment period is 12"; between "whereas" and "treatment period is only 3").**  This

27   information reflects and is calculated from internal, non-public Google financial data. Google

28

DocuSign Envelope ID: A0669AD1-87FC-4205-994B-8EA38B41F8BD

1  spends significant resources compiling and maintaining this valuable data, which is non-public,

2  and if revealed to competitors and potential business counterparties, could be used to

3  disadvantage and cause Google competitive harm by giving competitors insight into confidential

4  Google financial information. Further, this information reflects sensitive, highly confidential

5  characterizations by Google's internal business teams that, if revealed, could be referenced by

6  potential counterparties in negotiations with Google to gain an unfair advantage against Google.

7      207.  **Exhibit 15, Page -738 (all text following "major game developers").**  This text

8  contains confidential, non-public information regarding non-party developers, and implicates the

9  non-party's confidentiality interests, by revealing the identity of Google business partners who

10  are not party to this litigation, and who have a reasonable expectation that Google will maintain

11  the confidentiality of contractual terms and its own confidential statements made during

12  negotiations. Further, disclosure of this non-public information is likely to result in competitive

13  harm to Google, as it reveals strategic decision-making, which, for example, could give a

14  competitor or potential business partner unfair leverage in competing against or negotiating with

15  Google. Moreover, Google's competitors could use this non-party information to unfairly target

16  Google's developer partners.

17      208.  **Exhibit 15, Page -739 (all icons below "Signed up to Hug – Contract**

18  **Executed", all icons below "various stages of redlining", all icons below "holding out").**

19  This text contains confidential, non-public information regarding non-party developers, and

20  implicates the non-party's confidentiality interests, by revealing the identity of Google business

21  partners who are not party to this litigation, and who have a reasonable expectation that Google

22  will maintain the confidentiality of contractual terms and its own confidential statements made

23  during negotiations. Further, disclosure of this non-public information is likely to result in

24  competitive harm to Google, as it reveals strategic decision-making, which, for example, could

25  give a competitor or potential business partner unfair leverage in competing against or

26  negotiating with Google. Moreover, Google's competitors could use this non-party information

27  to unfairly target Google's developer partners.

28

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

209. **Exhibit 15, Page -740 (between "efforts on Play" and "launched on Play," between "Other devs (e.g." and "who previously"; between "cautious developers like" and "partnered on Play's PC").** This text contains confidential, non-public information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms and its own confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

210. **Exhibit 15, Page -741 (all text in all boxes).** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

211. **Exhibit 15, Page -743 (all text in rows beginning in "Google Gets" and "Google Gives").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

212. **Exhibit 15, Page -744 (between "DevRel Consultants" and end of column; between "YT Influencers" and end of column; between "UAC credits" and end of column; between "YT channel growth" and end of column).** This information contains non-public

information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

213. **Exhibit 15, Page -745 (all text in rows beginning with "Eligibility criteria", "Google Gives", "Google Gets", and "Play % reinvested").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

214. **Exhibit 15, Page -746 (entire chart; between "even without" and "Play risk mitigation"; between "outsized" and "investments diluted"; between "Program is ROI positive even without" and "Play risk mitigation"; between "investments of" and "(over 2019"; between "to recoupe" and "of value"; between "reflected in ROI" and "expected to sign"; between "GCP commits" and "and turn"; between "and turn" and "esports investment"; between "investment with" and "adversely impacted"; between "adversely impacted" and "and program"; between "for most devs" and "of UAC margin" between "2019, and" and "thereafter").** This text contains confidential, non-public information regarding non-party developers, and implicates the non-party's confidentiality interests, by revealing the identity of Google business partners who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms and its own confidential statements made during negotiations. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

215. **Exhibit 15, Page -749 (between "have signed up" and "target devs").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

216. **Exhibit 15, Page -753 (columns below "Deal structure option 1", "Deal structure option 2" and "Deal structure option 3").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

217. **Exhibit 15, Page -754 (columns below "Deal structure option 1", "Deal structure option 2" and "Deal structure option 3").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

218. **Exhibit 15, Page -757 (between "@" and "@google.com"; between "was calculated as" and "but has been"; between "revised to" and "(breakeven"; between "defined at" and "in credits").** This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed

publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 19**
**[Dkt 609-18]**
**(Exhibit A13)**

219.     **Exhibit 19, Page 17, Line 21 (between "currently reside in" and "Q. And where are you").** This text contains the personal home address of an executive officer of Google. Public disclosure is likely to result in a significant invasion of privacy and disruption to this executive officer's personal life.

220.     **Exhibit 19, Page 169, Line 19 (between "that up to over" and "of revenue was at risk").**  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 21**
**[Dkt 609-20]**
**(Exhibit A14)**

221.     **Exhibit 21, Page 250, Line 7 (between "permission to send" and "in 2020").** This information reflects and is calculated from internal, non-public Google financial data and non-public commercial strategy. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information and business strategy related to commercial programs. Moreover, Google's competitors could use this data to gain an unfair competitive advantage against Google.

222.     **Exhibit 21, Page 310, Lines 7-22 (between "looking at nearly" and "sorry -- it's in millions"; between "can't be right." and "right?"; between "A. It's" and "I think**

DocuSign Envelope ID: A0669AD1-87FC-4205-9940-8EA38B41F8BD

1    **that's correct."; between "Q. Of that" and "was going to be coming from"; between" "Q.**

2    **That's" and "of the projected income"; between "for, you know" and "A. That is correct";**

3    **between "Q. And" and "was estimated to come from").** This information reflects and is

4    calculated from internal, non-public Google financial data is based on financial terms of

5    Google's agreements with non-party business partners. Google spends significant resources

6    compiling and maintaining this valuable data, which is non-public, and if revealed to competitors

7    and potential business counterparties, could be used to disadvantage and cause Google

8    competitive harm by giving competitors insight into confidential Google financial information.

9    Moreover, Google's competitors could use this non-party information to unfairly target Google's

10    OEM partners and offer specific deal terms designed to beat those offered by Google.

11
        **Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 23**
12                                         **[Dkt 609-22]**
                                        **(Exhibit A15)**

13       223.     **Exhibit 23 (Names of chat participants, except for first initials).** This text

14    contains the identities of current Google employees. Disclosure of these names and email

15    addresses is of limited value to the public—as their identities are not relevant to the disposition

16    of this case. The public is still able to view the substantive portions of the document, while

17    individuals' reputations and identities are protected. Thus, even with narrow redactions of non-

18    party individuals' names, the public can readily understand the import of Ex. 23 and its interest

19    in disclosure of Ex. 23 in its entirety is limited and outweighed by the compelling reasons for

20    sealing.

21
        **Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 24**
22                                         **[Dkt 609-23]**
                                        **(Exhibit A16)**

23       224.     **Exhibit 24, Page -224 (between "discussion of" and "Brian is").** This text

24    contains confidential, non-public information regarding proposed terms for Google's agreements

25    with non-party developers. Disclosure of this non-public information is likely to result in

26    competitive harm to Google, as it reveals strategic decision-making which, for example, could

27    give a competitor or potential business partner unfair leverage in competing against or

28

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA3BB41F8BD

negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 25**
**[Dkt 609-24]**
**(Exhibit A17)**

225.    **Exhibit 25, Page 360, Line 7 (between "Samsung" and "over four years").** This text contains confidential, non-public information regarding proposed financial terms for Google's proposed agreement with a non-party OEM partner. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to beat those offered by Google.

226.    **Exhibit 25, Page 360, Line 18 (between "Samsung up to" and "for benefits").** This text contains confidential, non-public information regarding proposed financial terms for Google's proposed agreement with a non-party OEM partner. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to beat those offered by Google.

227.    **Exhibit 25, Page 360, Line 23-25 (from "with Samsung." to end of sentence).** This text contains confidential, non-public information regarding proposed financial terms and deal structure for Google's proposed agreement with a non-party OEM partner. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's

competitors could use this non-party information to unfairly target Google's OEM partners and offer specific deal terms designed to beat those offered by Google.

228.     **Exhibit 25, Page 366, Line 3 (between "Google projected" and "in service revenue").** This text contains confidential, non-public information regarding financial projections relating to a proposed agreement between Google's and a non-party OEM partner. This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

229.     **Exhibit 25, Page 366, Lines 8-9 (from "second line," to end of sentence).** This text contains confidential, non-public information regarding financial projections relating to a proposed agreement between Google and a non-party OEM partner, including additional product detail beyond that described in Paragraph 40. This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information.

230.     **Exhibit 25, Page 366, Lines 14-15 (from "could generate" to end of sentence).** This text contains confidential, non-public information regarding financial projections relating to a proposed agreement between Google and a non-party OEM partner, including additional product detail beyond that described in Paragraph 40. This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and

1   potential business counterparties, could be used to disadvantage and cause Google competitive

2   harm by giving competitors insight into confidential Google financial information.

3          231.    **Exhibit 25, Page 366, Line 19 (between "bar chart" and "is").** This text

4   contains confidential, non-public information regarding financial projections relating to a

5   proposed agreement between Google and a non-party OEM partner.  This information reflects

6   and is calculated from internal, non-public Google financial data. Google spends significant

7   resources compiling and maintaining this valuable data, which is non-public, and if revealed to

8   competitors and potential business counterparties, could be used to disadvantage and cause

9   Google competitive harm by giving competitors insight into confidential Google financial

10   information.

11          232.    **Exhibit 25, Page 367, Line 12 (from "chart that says" to end of sentence) and**

12   **Line 13 (from "You mean the" to end of sentence).**  This text contains confidential, non-public

13   information regarding financial projections relating to a proposed agreement between Google

14   and a non-party OEM partner.  This information reflects and is calculated from internal, non-

15   public Google financial data. Google spends significant resources compiling and maintaining this

16   valuable data, which is non-public, and if revealed to competitors and potential business

17   counterparties, could be used to disadvantage and cause Google competitive harm by giving

18   competitors insight into confidential Google financial information.

19          233.    **Exhibit 25, Page 367, Line 16 (from "That bar says," to end of sentence).** This

20   text contains confidential, non-public information regarding the characterization of financial

21   projections relating to a proposed agreement between Google and a non-party OEM partner.

22   This information reflects and is calculated from internal, non-public Google financial data.

23   Google spends significant resources compiling and maintaining this valuable data, which is non-

24   public, and if revealed to competitors and potential business counterparties, could be used to

25   disadvantage and cause Google competitive harm by giving competitors insight into confidential

26   Google financial information. Further, this information reflects sensitive, highly confidential

27

28

DocuSign Envelope ID: A0669AD1-87FC-4205-9949-8EA38B41F8BD

characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

234. **Exhibit 25, Page 367, Line 20-21 (from "top that says" to end of sentence) and Line 24-25 and (between "is that" and "under the").** This text contains confidential, non-public information regarding financial projections relating to a proposed agreement between Google and a non-party OEM partner, including as related to specific Google products.  This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information.

235. **Exhibit 25, Page 388, Line 3 (between "between" and "and" and between "and" and "correct"), Line 11 (between "between" and "and" and between "and" and "over"), and Line 19 (between "projected" and "to" and between "to" and "to" and "in revenue").** This text contains confidential, non-public information regarding internal financial projections relating to multiple agreements between Google and a non-party OEM partner. This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information.

236. **Exhibit 25, Page 388, line 11 (between "over the" and "of").** This text contains confidential, non-public information regarding deal terms relating to multiple agreements between Google and a non-party OEM partner.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 26
[Dkt 609-25]
(Exhibit A18)**

237.    **Exhibit 26, Page 6, Lines 5-6 (from "It's" to end of sentence).**  This text contains the personal home address of an executive officer of Google. Public disclosure is likely to result in a significant invasion of privacy and disruption to this executive officer's personal life.

238.    **Exhibit 26, Page 345, Lines 10-11 (from "of that" to end of sentence").**  This text contains confidential, non-public information regarding the highly negotiated terms of Google's agreement with a non-party business partner. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making and deal terms which, for example, could give a competitor or potential business partner unfair leverage in competing against, negotiating with Google, or negotiating with the non-party business partner. In particular, potential or existing business partners could use this data point and contractual terms to gain an unfair advantage in negotiating a commercial agreement with Google.

239.    **Exhibit 26, Page 345, Line 13-19 (from "rev share has a" to end of sentence).** This text describes specific financial aspects and terms of an agreement between Google and a business partner relating to how a specific financial term is defined and calculated in a highly negotiated agreement.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making regarding how Google structures certain deals, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. In particular, potential or existing commercial partners could use this data point and contractual terms to gain an unfair advantage in negotiating a commercial agreement with Google.

240.    **Exhibit 26, Page 345, Line 20-21 (between "Google paid" and "to Apple").** This text reflects the specific dollar amount paid by Google to a non-party business partner under the terms a highly negotiated commercial agreement.  This information reflects and is calculated

1  from internal, non-public Google financial data and reflects the non-public terms of a highly

2  negotiated commercial agreement. Google spends significant resources compiling and

3  maintaining this valuable data, which is non-public, and if revealed to competitors and potential

4  business counterparties, could be used to disadvantage and cause Google competitive harm by

5  giving competitors insight into confidential Google financial information.  Moreover, disclosure

6  of this non-public information is likely to result in competitive harm to Google, as it reveals

7  strategic decision-making regarding how Google structures certain deals, which, for example,

8  could give a competitor or potential business partner unfair leverage in competing against or

9  negotiating with Google. In particular, potential or existing commercial partners could use this

10 data point and contractual terms to gain an unfair advantage in negotiating a commercial

11 agreement with Google.

12    241.    **Exhibit 26, Page 345, Line 23-24 (between "between" and "dollars").** This text

13 reflects the specific dollar amount paid by Google to a non-party business partner under the

14 terms a highly negotiated commercial agreement.  This information reflects and is calculated

15 from internal, non-public Google financial data and reflects the non-public terms of a highly

16 negotiated commercial agreement. Google spends significant resources compiling and

17 maintaining this valuable data, which is non-public, and if revealed to competitors and potential

18 business counterparties, could be used to disadvantage and cause Google competitive harm by

19 giving competitors insight into confidential Google financial information.  Moreover, disclosure

20 of this non-public information is likely to result in competitive harm to Google, as it reveals

21 strategic decision-making regarding how Google structures certain deals, which, for example,

22 could give a competitor or potential business partner unfair leverage in competing against or

23 negotiating with Google. In particular, potential or existing commercial partners could use this

24 data point and contractual terms to gain an unfair advantage in negotiating a commercial

25 agreement with Google.

26    242.    **Exhibit 26, Page 346, Line 13-14 (between "agreed to" and "in 2016"), Line**

27 **16 (between "pay Apple" and "percent"), Line 25 (between "Apple" and "percent").** This

28

DocuSign Envelope ID: A0669AB1-87FC-4205-9948-8EA28B41F8BD

text reflects specific financial terms agreed to by Google and non-party business partner pursuant to a highly negotiated commercial agreement.  Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making regarding how Google structures certain deals, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. In particular, potential or existing commercial partners could use this data point and contractual terms to gain an unfair advantage in negotiating a commercial agreement with Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 27**
**[Dkt 609-27]**
**(Exhibit A19)**

243.     **Exhibit 27, Page 14, Lines 13-14.**  This text contains the home address of a Google employee.  Disclosure of this information is of limited value to the public—as their locations of residence are not relevant to the disposition of this case. The public is still able to view the substantive portions of the document, while the individual's personal information is protected.

244.     **Exhibit 27, Page 179, Line 11 (between "up to" and "Is").** This text contains confidential, non-public information regarding Google's agreements and related negotiations with a specific developer, including specific confidential deal terms considered by Google, including specific financial terms. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

245.     **Exhibit 27, Page 179, Line 14 (between "that" and "would be").** This text contains confidential, non-public information regarding Google's agreements and related negotiations with a specific developer, including specific confidential deal terms considered by Google. Disclosure of this non-public information is likely to result in competitive harm to

DocuSign Envelope ID: A0669AB1-87FC-420F-9948-8EA28B41F8BD

1    Google, as it reveals strategic decision-making which, for example, could give a competitor or

2    potential business partner unfair leverage in competing against or negotiating with Google.

3    Moreover, Google's competitors could use this non-party information to unfairly target Google's

4    developer partners and offer specific deal terms designed to undercut those offered by Google.

**Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 28**
**[Dkt 609-27]**
**(Exhibit A20)**

7    246.    **Exhibit 28, Page -340 (between "come up with is –" and end of line).**  This text

8    contains confidential, non-public information regarding Google's commercial agreements and

9    related negotiations with a specific developer, including specific confidential financial deal terms

10   considered by Google. Disclosure of this non-public information is likely to result in competitive

11   harm to Google, as it reveals strategic decision-making which, for example, could give a

12   competitor or potential business partner unfair leverage in competing against or negotiating with

13   Google. Moreover, Google's competitors could use this non-party information to unfairly target

14   Google's developer partners and offer specific deal terms designed to undercut those offered by

15   Google.

16   247.    **Exhibit 28, Page -341 (between "they can do" and "even if", between "even if**

17   **they offer" and end of chat, between "can do" and "a year" and between "missed…" and**

18   **"that").**  This text contains confidential, non-public information regarding Google's commercial

19   agreements and related negotiations with a specific developer, including specific confidential

20   financial deal terms considered by Google. Disclosure of this non-public information is likely to

21   result in competitive harm to Google, as it reveals strategic decision-making which, for example,

22   could give a competitor or potential business partner unfair leverage in competing against or

23   negotiating with Google. Moreover, Google's competitors could use this non-party information

24   to unfairly target Google's developer partners and offer specific deal terms designed to undercut

25   those offered by Google.

26   248.    **Exhibit 28, Page -341 (between "haha" and "they can do").** This text contains

27   confidential, non-public information regarding Google's commercial agreements and related

28

negotiations with a specific developer, including specific game titles and deal coverage considered by Google. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

249. **Exhibit 28, Page -342 (between "again… if" and "doesn't come", between "come in…" and "and" between "and" and "may not", between "they do" and "of", between "of" and "…though", between "nothing like" and ":(", between "Especially" and end of line, between "overall, with" and end of line, between "still not" and "but not", between "sell internally" and end of line, and between "felt the" and "and was").** This text contains confidential, non-public information regarding specific game titles offered by a non-party developer in the context of Google's commercial agreements and related negotiations with that developer. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. Disclosure of this information could harm Google's relationship with its partners and any ongoing negotiations or dealings with them, and is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public disclosure of this information is likely to result in competitive harm to Google.

250. **Exhibit 28, Page -342 (between "main risk would be" and end of line).** This text contains confidential, non-public information regarding Google's commercial agreements and related negotiations with a specific developer, including specific game titles, deal coverage, and potential reactions to the contemplated terms. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. Disclosure of this

1    non-public information is likely to result in competitive harm to Google, as it reveals strategic

2    decision-making which, for example, could give a competitor or potential business partner unfair

3    leverage in competing against or negotiating with Google. Moreover, Google's competitors

4    could use this non-party information to unfairly target Google's developer partners and offer

5    specific deal terms designed to undercut those offered by Google.

6         251.    **Exhibit 28, Page -342 (two lines between "crunched some numbers" and "so I**

7    **think").** This text contains confidential, non-public information regarding Google's commercial

8    agreements and related negotiations with a specific developer, including specific game titles and

9    deal coverage considered by Google. Disclosure of this non-public information is likely to result

10   in competitive harm to Google, as it reveals strategic decision-making which, for example, could

11   give a competitor or potential business partner unfair leverage in competing against or

12   negotiating with Google. The information also implicates non-party confidentiality interests, by

13   revealing the confidential engagement and spend metrics of Google's business partners, who are

14   not party to this litigation, and who have a reasonable expectation that Google will maintain the

15   confidentiality of contractual terms. Public disclosure of these specific programs and deal terms

16   could give Google's competitors and developer partners an unfair advantage over Google in

17   negotiations.

18        252.    **Exhibit 28, Page -343 (between "lynchpin is" and end of line, between "it's**

19   **the" and "but", between "give us" and end of line, between "prepping him for" and**

20   **"convo", between "vs" and "ok"; between "add to the" and "section", and between "think**

21   **of" and "...but").** This text contains confidential, non-public information regarding Google's

22   commercial agreements and related negotiations with a specific developer, including specific

23   game titles and deal coverage considered by Google. Disclosure of this non-public information is

24   likely to result in competitive harm to Google, as it reveals strategic decision-making which, for

25   example, could give a competitor or potential business partner unfair leverage in competing

26   against or negotiating with Google. The information also implicates non-party confidentiality

27   interests, by revealing the confidential engagement and spend metrics of Google's business

28

104

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

partners, who are not party to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations.

253. **Exhibit 28, Page -344 (between "we'd first" and end of line).** This information reflects specific, confidential details and terms about specific programs offered by Google as well as the specific deal terms and values offered to particular partners. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partners and any ongoing negotiations or dealings with them. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations.

254. **Exhibit 28, Page -344 (between "couldn't remember" and end of line, first word before "I think").** This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific confidential financial deal terms and related negotiations. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

255. **Exhibit 28, Page -345 (between "can make it" and end of line, between "can put" and "and where", between "end with" and "Did they", "I'll confirm" and "our term sheet", between "term sheet says" and "I believe", between "he confirmed" and end of line", between "end for" and "is defn wrong").** This text contains confidential, non-public information regarding Google's agreements with non-party developers, including specific confidential financial deal terms and related negotiations. Disclosure of this non-public

1 information is likely to result in competitive harm to Google, as it reveals strategic decision-

2 making which, for example, could give a competitor or potential business partner unfair leverage

3 in competing against or negotiating with Google. Moreover, Google's competitors could use this

4 non-party information to unfairly target Google's developer partners and offer specific deal terms

5 designed to undercut those offered by Google.

6      256. **Exhibit 28, Page -346 (between "I saw" and "...But", between "updated to"**

7 **and "because", between "because of" and end of line, between "about the" and end of line,**

8 **between "internal cost" and "ah", between "internal cost for" and "is close", between**

9 **"close to" and "...So", between "get the" and end of line, between "up to" and "and",**

10 **between "and the" and "over", and between "pushed for" and end of line).** This text

11 contains confidential, non-public information regarding Google's agreements with non-party

12 developers, including specific confidential financial deal terms and related negotiations.

13 Disclosure of this non-public information is likely to result in competitive harm to Google, as it

14 reveals strategic decision-making which, for example, could give a competitor or potential

15 business partner unfair leverage in competing against or negotiating with Google. Moreover,

16 Google's competitors could use this non-party information to unfairly target Google's developer

17 partners and offer specific deal terms designed to undercut those offered by Google.

18      257. **Exhibit 28, Page -347 (between "Google of" and "and a", between "margin**

19 **of" and "Total", between "ABK is" and "we're moving", between "at either" and end of**

20 **line, between "Brian" and "and it", between "potential" and "in there", between "for" and**

21 **"do we", and last line of page).** This text contains confidential, non-public information

22 regarding Google's agreements with non-party developers, including specific confidential

23 financial deal terms and related negotiations. Disclosure of this non-public information is likely

24 to result in competitive harm to Google, as it reveals strategic decision-making which, for

25 example, could give a competitor or potential business partner unfair leverage in competing

26 against or negotiating with Google. Moreover, Google's competitors could use this non-party

27

28

106

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AB1-87FC-420F-9948-8EA28B41F8BD

1  information to unfairly target Google's developer partners and offer specific deal terms designed

2  to undercut those offered by Google.

3      258.  **Exhibit 28, Page -348 (between "saying that" and "which would", between**

4  **"agreeing to" and "I just", between "agreeing to" and end of line, between "down the" and**

5  **"It then", and between "getting" and end of line).** This text contains confidential, non-public

6  information regarding a non-party developer, and implicates the non-parties' confidentiality

7  interests by purporting to reveal the nonparties' confidential statements made during

8  negotiations. This text also contains specific confidential financial deal terms and related

9  negotiations. Disclosure of this non-public information is likely to result in competitive harm to

10  Google, as it reveals strategic decision-making which, for example, could give a competitor or

11  potential business partner unfair leverage in competing against or negotiating with Google.

12  Moreover, Google's competitors could use this non-party information to unfairly target Google's

13  developer partners and offer specific deal terms designed to undercut those offered by Google.

14      259.  **Exhibit 28, Page -349 (between "for" and "couldn't", between "for the" and**

15  **end of line, "if we" and end of line, between "if we" and "would remain", between**

16  **"response on" and end of line, between "as us" and "I just", between "agreeing to" and end**

17  **of line, between "down the" and "It then", between "getting" and end of line, between**

18  **"know that" and "(like", and between "above)" and "is immaterial").** This text contains

19  confidential, non-public information regarding a non-party developer, and implicates the non-

20  parties' confidentiality interests by purporting to reveal the nonparties' confidential statements

21  made during negotiations. This text also contains specific confidential financial deal terms, game

22  title coverage contemplated by Google, and related negotiations. Disclosure of this non-public

23  information is likely to result in competitive harm to Google, as it reveals strategic decision-

24  making which, for example, could give a competitor or potential business partner unfair leverage

25  in competing against or negotiating with Google. Moreover, Google's competitors could use this

26  non-party information to unfairly target Google's developer partners and offer specific deal terms

27  designed to undercut those offered by Google.

28

DocuSign Envelope ID: A0669AB1-87FC-4205-9948-8EA28B41F8BD

260.     **Exhibit 28, Page -350-51 (between "worth considering" and "etc", between "it's the" and "it seems", and between "referred to the" and end of line).** This text contains confidential, non-public information regarding a non-party developer, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. This text also contains specific confidential financial deal terms, potential commitments, game title coverage contemplated by Google, and related negotiations. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

261.     **Exhibit 28, Page -351 (between "!!" and "(to Greg's point", between "to be" and end of line, between "comfortable with" and end of line, between "he said" and end of line", between "do the" and end of line, between "should we offer to" and end of line, and between "you wondered" and end of line).** This text contains confidential, non-public information regarding a non-party developer, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. This text also contains specific confidential financial deal terms, potential commitments, game title coverage contemplated by Google, and related negotiations. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

262.     **Exhibit 28, Page -352 (between "base tier os" and "and", between "stretch is" and end of line, between "instead of" and end of line, between "gives them" and end of line, between "propose this…" and "...so", between "for" and "I would be", between "can get**

1    to" and "is still", between "for" and "the shitty"). This text contains confidential information

2    relating to negotiations over a commercial agreement with a non-party developer, including

3    specific confidential financial deal terms, potential commitments, game title coverage

4    contemplated by Google, and related negotiations. Disclosure of this non-public information is

5    likely to result in competitive harm to Google, as it reveals strategic decision-making which, for

6    example, could give a competitor or potential business partner unfair leverage in competing

7    against or negotiating with Google. Moreover, Google's competitors could use this non-party

8    information to unfairly target Google's developer partners and offer specific deal terms designed

9    to undercut those offered by Google.

10          263.    **Exhibit 28, Page -354 (between "circle on" and end of line, between "agree

11   to" and end of line", between "Greg" and end of line, between "this" and "is just", between

12   "agree to" and end of line, between "mention of" and "in ABK", between "agree to" and

13   end of line, and between "mention of" and "in ABK").** This text contains confidential

14   information relating to negotiations over a commercial agreement with a non-party developer,

15   including specific confidential financial deal terms, potential commitments, game title coverage

16   contemplated by Google, and related negotiations. Disclosure of this non-public information is

17   likely to result in competitive harm to Google, as it reveals strategic decision-making which, for

18   example, could give a competitor or potential business partner unfair leverage in competing

19   against or negotiating with Google. Moreover, Google's competitors could use this non-party

20   information to unfairly target Google's developer partners and offer specific deal terms designed

21   to undercut those offered by Google.

22          264.    **Exhibit 28, Page -355-356 (between "so for" and "they would", between "ask

23   for" and end of line, between "hardcore about" and end of line, between "it for" and

24   "without", between "considering" and end of line, and between "sounds good," and end of

25   line).** This text contains confidential information relating to negotiations over a commercial

26   agreement with a non-party developer, including specific confidential financial deal terms,

27   potential commitments, game title coverage contemplated by Google, and related negotiations.

28

Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

265.    **Exhibit 28, Page -357 (between "100%" and "keeping b\* in this long", between "why not" and "im like MOVE").** This text contains confidential information relating to negotiations over a commercial agreement with a non-party developer, including Google's internal characterizations of specific terms and related negotiations. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.

266.    **Exhibit 28, Page -358 (between "just wondered" and "but I", between "care about…" and end of line, between "WDYT" and "I know", and between "and" and "let me know").** This text contains confidential, non-public information regarding non-party developers, and implicates the non-parties' confidentiality interests by purporting to reveal the nonparties' confidential statements made during negotiations. It also reflects Google's assessment of the developer's expected reactions to certain deal terms. Public disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners.

267.    **Exhibit 28, Page -359 (between "how much did" and "make in 2022", between "I saw" and "in last", between "12\*" and "2022 YTD", between "then :)" and "isn't that", between "from" and "2022", and between "YTD spend" and end of line).** This

1    text contains confidential information relating to negotiations over a commercial agreement with

2    a non-party developer, including potential game title coverage contemplated by Google, and

3    related metrics for that non-party developer calculated from Google's internal, non-public

4    financial data. Disclosure of this non-public information is likely to result in competitive harm to

5    Google, as it reveals strategic decision-making which, for example, could give a competitor or

6    potential business partner unfair leverage in competing against or negotiating with Google.

7    Moreover, Google's competitors could use this non-party information to unfairly target Google's

8    developer partners and offer specific deal terms designed to undercut those offered by Google.

9        268.    **Exhibit 28, Page -361 (between "POV –" and "and" and between "they**

10   **want" and end of line).** This text contains confidential, non-public information regarding non-

11   party developers, and implicates the non-parties' confidentiality interests by purporting to reveal

12   the nonparties' confidential statements made during negotiations. It also reflects Google's

13   assessment of the developer's expected reactions to certain deal terms. Public disclosure of this

14   non-public information is likely to result in competitive harm to Google, as it reveals strategic

15   decision-making, which, for example, could give a competitor or potential business partner

16   unfair leverage in competing against or negotiating with Google. Moreover, Google's

17   competitors could use this non-party information to unfairly target Google's developer partners.

18   **Plaintiffs' Proposed Remedy Re Google's Destruction of Chat Evidence – Exhibit 30**
     **[Dkt 609-28]**
19   **(Exhibit A21)**

20       269.    **Exhibit 30, Page 28, Lines 5-6 (between "direction" and end of sentence), and**

21   **Line 8 (between "Is that" and end of sentence ).**  This text contains confidential, non-public

22   financial information and terms regarding a highly negotiated agreement between Google and a

23   commercial business partner. This information also reflects and is calculated from internal, non-

24   public Google financial data. Google spends significant resources compiling and maintaining this

25   valuable data, which is non-public, and if revealed to competitors and potential business

26   counterparties, could be used to disadvantage and cause Google competitive harm by giving

27   competitors insight into confidential Google financial information. Disclosure of this non-public

28

111

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

DocuSign Envelope ID: A0669AB1-37FC-4205-9948-8EA28B41F8BD

1  information is likely to result in competitive harm to Google, as it reveals strategic decision-

2  making which, for example, could give a competitor or potential business partner unfair leverage

3  in competing against or negotiating with Google.

4       270.  **Exhibit 30, Page 28, Line 10 (between "in fact" and "last year").**  This text

5  contains confidential, non-public financial information and terms regarding a highly negotiated

6  agreement between Google and a commercial business partner. The disclosure of this non-

7  party's highly confidential information would significantly harm its business; for example,

8  competitors could leverage this information to reap an unearned competitive advantage. This

9  information also reflects and is calculated from internal, non-public Google financial data.

10  Google spends significant resources compiling and maintaining this valuable data, which is non-

11  public, and if revealed to competitors and potential business counterparties, could be used to

12  disadvantage and cause Google competitive harm by giving competitors insight into confidential

13  Google financial information. Disclosure of this non-public information is likely to result in

14  competitive harm to Google, as it reveals strategic decision-making which, for example, could

15  give a competitor or potential business partner unfair leverage in competing against or

16  negotiating with Google.

17

18  I declare under penalty of perjury that the foregoing is true and correct. Executed on the 28th day

19  of September, 2023, in Mountain View, California.

20

21



22

                                   Christian Cramer

23

24

25

26

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH PLAINTIFFS' PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD