# EXHIBIT 16

```
                                              Volume 2

                                              Pages 145 - 308

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE GOOGLE PLAY STORE                    )
ANTITRUST LITIGATION                       )  NO. 21-md-02981-JD
_____)
                                           )
THIS DOCUMENT RELATES TO:                  )
                                           )
Epic Games, Inc. vs. Google LLC, et al.,   )
Case No. 3:20-cv-05671-JD                  )
                                           )
In Re Google Play Consumer Antitrust       )
Litigation, Case No. 3:20-cv-05761-JD      )
                                           )
State of Utah, et al. v. Google LLC,       )
et al., Case No. 3:21-cv-05227-JD          )
                                           )
Match Group, LLC, et al. vs. Google LLC,   )
et al., Case No. 3:22-cv-02746-JD          )
_____)

                               San Francisco, California
                               Tuesday, January 31, 2023
```

**TRANSCRIPT OF PROCEEDINGS**

**IN RE EVIDENTIARY HEARING ON CHAT PRESERVATION**

**APPEARANCES**:

```
For Plaintiff Epic Games in C 20-05671 JD:
                CRAVATH SWAINE AND MOORE LLP
                825 Eighth Avenue
                New York, New York 10019
           BY:  LAUREN ANN MOSKOWITZ, ATTORNEY AT LAW
                GARY A. BORNSTEIN, ATTORNEY AT LAW

          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter
```

1  scale.  I'm just not going to do that.  I think it's "may."
2  The jury can use its discretion.
3       **MR. SUMMERS:**  But one thing we proposed in our
4  instruction -- I think our instruction is very measured.
5       **THE COURT:**  No.  But you said "should."  I'm uncomfortable
6  with that.
7       **MR. SUMMERS:**  Okay.  So let's say we strike "should" and
8  just focus on "may."
9       Our instruction parallels the conduct at issue here.  And
10 I think it's a very fair and measured instruction.  It explains
11 what chats are.  It explains that they were not retained.
12      **THE COURT:**  I don't think so.  You're going to have to put
13 on a little case to the jury.  You're going to have to tell the
14 jury -- let them decide did, in fact, Google not preserve
15 documents and chat.  I mean, you've done a minihearing on it
16 already.  It won't be terribly different from what you might do
17 in front of a jury.
18      And then I might open the door.  I think this is the most
19 proportionate remedy I can think of.  I want your guidance on
20 this.  This is what -- I'm just giving you my views so you can
21 react to it, is to say:
22          "Okay.  If you find that the plaintiffs have
23      demonstrated that Google didn't do something right
24      with the documents, you may conclude that that
25      happened because the contents were adverse to

1   **MR. SUMMERS:** Your Honor, we do believe that there's been
2   severe prejudice. But on the issue of intent, it couldn't be
3   any stronger. Training to not use e-mail and to use Chat
4   instead to avoid issues in the courtroom and then a cover-up.
5   Conscious, knowing. They wanted this to not see the light of
6   day. So they just keep doing it in every case that came.
7       And under Rule 37, with a finding of intent, you can give
8   a very strong, but measured and appropriate adverse inference
9   instruction. And given the litigation misconduct, you have the
10  inherent authority to apply additional sanctions, and I think
11  you should.
12      **THE COURT:** Can I just -- I know you're -- let me just ask
13  you this: If we did it the way you're proposing, what would --
14  why would it be a permissive inference? At that point it would
15  be basically a mandatory inference. That's what's giving me
16  serious pause.
17      **MR. SUMMERS:** We hear you with "may," and we're okay with
18  "may."
19      **THE COURT:** Well, you're saying "may" after -- you want me
20  to give a list of here are ten findings from the Court. And by
21  the way, do what you want with them.
22      What do you think the jury's going to do? They're going
23  to say: You heard what the judge said; so I guess we'll just
24  check this box "yes."
25      **MR. SUMMERS:** Well, look, the findings that you make in

this ruling do have preclusive effect.  And there's nothing --
we shouldn't have to try this issue again.

**THE COURT:** What if they were stipulated facts?  A lot of the facts are not even in dispute.

**MR. SUMMERS:** But stipulated, it'll seem just like -- you know what?  When Google brought Mr. Lopez up here and he said that they could flip a switch, you know why he did that?  Because we had Mr. Schnell, an expert, ready to come up and do a demonstration proving that they had been lying to us.

We have been pulling teeth to get to the truth here, Your Honor.  And to allow them to stipulate and make it look like they're being forthcoming would be --

**THE COURT:** No, no, no.  What I meant was, here are some examples, just off the top of my head.  I'm not in any way predicting, or anything, or tying my hands; certainly not yours.

Stipulation is:  The hold notice said each witness could make a personal decision about turning preservation on or off.  Google had the technological ability to turn it on for everybody if it chose to do so.  Google did not turn on systematically -- did not systematically preserve chats.

I mean, those basic -- just all of that.  That's a stipulation of fact.  It's one portion of the jury instructions.

A little bit down the line, there's an adverse inference

1  instruction, a permissive one.  What's wrong with that?
2      You know, when the judge speaks, it can have too much of a
3  volume, particularly for jurors.  That's why we all, as judges,
4  are very careful about that.
5      But if they're stipulated facts -- I understand up to this
6  hearing you may have had to -- felt like you were beating on a
7  piñata to get the truth out.  But now it's here.  So there's a
8  lot of agreement that I've heard from both sides on what
9  actually happened.
10     **MR. SUMMERS:**  Google did something bad, and it's
11 appropriate for them to look bad, to a certain extent, in front
12 of the jury in a measured way.
13     **THE COURT:**  Well, if they stipulate "Yes, we didn't do
14 this.  Yes, we didn't do this.  Yes, we didn't do this" --
15     **MR. SUMMERS:**  Then they look honest, Your Honor, when what
16 they did here was dishonest and the coverup was dishonest.
17     **THE COURT:**  They look honest?
18     **MR. SUMMERS:**  They look honest when they stipulate.
19     **THE COURT:**  By being forthright?
20     **MR. SUMMERS:**  When they're coming forward and being --
21     **MS. GIULIANELLI:**  Your Honor, may I --
22     **THE COURT:**  Yes.
23     **MS. GIULIANELLI:**  May I say one thing, because we've --
24     **THE COURT:**  Sure.
25     **MS. GIULIANELLI:**  I think I was prepared to address a

1    from the judge at the beginning is very important.  Here is
2    what happened.  Google has this product Chats.  Google has the
3    ready ability to preserve chats.  Factual.
4        And even in the cases -- now, we think, I think, as
5    Mr. Summers has shown, there is plenty of intent.  But let's
6    set that aside.  Even in the cases that Google cites, *Meta* and
7    the *Porter/City of San Francisco*, in those cases, there was
8    destruction of evidence, just like here.  I don't think there's
9    any debate about that.  But in those cases, the Court found,
10   Northern District of California, there was just negligence.
11       So let's just assume just negligence.  We disagree with
12   that.  We think it goes beyond that.  But in those two cases,
13   what the Court did was simply read the jury what happened, the
14   factual -- no inference, just the factual:  Here's the
15   chronology.
16       So we think that that is easy and is what --
17       **THE COURT:**  Okay.  The most I would do is what I was
18   outlining.  Look, this is all -- this is like a *Wall Street*
19   *Journal* op-ed piece.  I'm not going to do anything close to
20   this.  Okay?  I'm just not.  The most I might do is exactly
21   what I indicated.  You can turn the button on.  They didn't do
22   it.  They left it up to the witnesses.  That's it.
23       I mean, I think you'd do better getting a stipula- --
24   well, we don't have to decide this now because trial is not
25   going to be for a while, but --

1  or how are you going to do all this meet-and-confer on the --
2      **MR. POMERANTZ:**  I think we have the guidance, Your Honor.
3  We talk regularly.  We'll talk, if not today, tomorrow.
4      **THE COURT:**  All right.  How about -- just give me a plan,
5  stipulated plan by -- what is today?  Tuesday?  How about
6  Monday?  Is that all right, plaintiffs?
7      **MR. POMERANTZ:**  That's fine, Your Honor.
8      **THE COURT:**  Okay with that?
9      **MR. GLACKIN:**  Very good, Your Honor.
10     **THE COURT:**  Okay.  Thank you.  That was very useful.  I
11 appreciate it.
12     **THE CLERK:**  All rise.  Court's in recess.
13             (Proceedings adjourned at 4:57 p.m.)
14                         ---oOo---
15                  **CERTIFICATE OF REPORTER**
16     I certify that the foregoing is a correct transcript
17 from the record of proceedings in the above-entitled matter.
18
19 DATE:  Thursday, February 2, 2023
20
21         *Ana Dub* (signature)
22 _____
23     Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                Official United States Reporter
24
25