Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for Consumer Plaintiffs in In re Google Play Consumer Antitrust Litigation*

[Additional counsel appear on signature page]

Brendan P. Glackin (SBN 199643)
bglackin@agutah.gov
**OFFICE OF THE UTAH ATTORNEY GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**STATES AND CONSUMERS' TRIAL BRIEF**<br><br>Judge: Hon. James Donato |

Google is a monopolist.  It has maintained durable monopolies in the markets for Android App Distribution and Android In-App Payment Solutions for Digital Goods and Services for over a decade, not by competing on the merits, but by paying off its rivals and using its monopoly power and vast resources to snuff out all competition.  Google unlawfully restrains trade through a web of secretive, anticompetitive agreements with original equipment manufacturers ("OEMs"), wireless network operators, and app developers.  And it further prevents competition by imposing artificial technical restraints on the distribution of Android apps and competing app stores and flatly prohibiting competition from other in-app payment solutions for "digital content".  Indeed, in the few years since these lawsuits were filed, Google flexed its monopoly power by raising prices for many developers through a change to its payments policy.  Through this conduct, which is described more fully below, Google extracts billions in monopoly profits and suppresses innovation and choice in multiple markets. Plaintiffs brought these lawsuits to end Google's ongoing anticompetitive practices.

Plaintiffs will prove at trial that Google's unlawful conduct causes widespread harm to Android developers and consumers, including supracompetitive prices and a reduction in the output and quality of app distribution and in-app payment services.  Google's unlawful conduct includes the following:

- Agreements with OEMs that prohibit nearly all major OEMs from preinstalling competing app stores on their devices, ensure that the Google Play Store is preinstalled on the home screen of virtually all Android devices, and impede developers' ability to distribute Android apps (including other app stores) directly to users.

- Agreements with competitors and "agitators" through "Project Hug", whereby Google paid over $1 billion to dozens of major developers, including to secure agreement from Activision Blizzard, Riot Games and Supercell not to launch competing Android app stores.

- Agreements with app developers, whereby Google uses its market power over Android app distribution to tie Google Play Billing ("GPB")—its in-app payment solution for "digital goods and services"—to the Google Play Store, thereby forcing developers selling "digital goods and services" to pay Google a supracompetitive fee of up to 30% on all in-app sales of digital content, and preventing developers from communicating to their consumers other ways of making purchases and obtaining lower prices outside the app.

- Arbitrary technical restraints making it commercially unviable for developers to distribute Android apps directly to users, including pretextual security warnings and requirements that users modify device settings to download apps outside the Google Play Store.

As a result of its anticompetitive acts, Google faces no meaningful competition or threat of competition.  Its share of the relevant markets has exceeded 85% for years and years.  Due to Google's

1    contractual and technological restraints, the only effective way for developers to distribute their apps to

2    the more than three billion Android users on their smartphones is through the Google Play Store.

3         To make matters worse, Google engaged in a multi-year campaign to conceal its conduct and

4    deprive Plaintiffs and this Court of relevant evidence.  Indeed, the full record of Google's unlawful

5    conduct will never be seen.  As this Court has already found, "Google intended to subvert the

6    discovery process" by funneling sensitive communications into "history off" Chats that it then

7    destroyed.  That intentional conduct "certainly" prejudiced Plaintiffs.  (Dkt. 469 at 18.)  Plaintiffs will

8    show that Google's Chat destruction was not an oversight or mistake, but the intended result of a

9    corporate culture of attempting to sanitize, conceal, and destroy evidence, which is itself evidence of

10   Google's knowing violation of the antitrust laws.

11        Pursuant to Sections 1 and 2 of the Sherman Act, as well as state law, Plaintiffs seek injunctive

12   relief and damages.  The evidence at trial will show that Plaintiffs are entitled to relief on each of their

13   claims.

14                                        **PLAINTIFFS' CASE**

15   **I.      Plaintiffs' Claims Against Google**

16        **A.      Section 2 of the Sherman Act:  Unlawful Monopolization**[1]

17        Section 2 prohibits persons from "monopoliz[ing], or attempt[ing] to monopolize, or

18   combin[ing] or conspir[ing] with any other person or persons, to monopolize any part of the trade or

19   commerce among the several States, or with foreign nations".  15 U.S.C. § 2.  A claim for unlawful

20   monopolization requires that a plaintiff show:  "(a) the possession of monopoly power in the relevant

21   market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury".  *FTC*

22   *v. Qualcomm Inc.*, 969 F.3d 974, 989-90 (9th Cir. 2020) (quotation marks omitted).  Monopoly power

23   is "the power to control prices or exclude competition".  *United States v. Grinnell Corp.*, 384 U.S. 563,

24   571 (1966) (quotation marks omitted).  "The relevant market is the field in which meaningful

25   competition is said to exist."  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202

26   (9th Cir. 1997).  The market "must encompass the product at issue as well as all economic substitutes

27   for the product."  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008).  "The

28

---

[1] States Compl. Counts 1, 5; Consumer Compl. Counts 1, 4.

consumers do not define the boundaries of the market; the products or producers do." *Id.*

Monopolization claims are assessed under the rule of reason, which "requires courts to conduct a fact-specific assessment of market power and market structure . . . to assess the [restraint]'s actual effect on competition". *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018) (citations omitted). This assessment is done under "a multi-step burden-shifting framework". *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 974 (9th Cir. 2023). "At step one, 'the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market.'" *Id.* at 983 (quoting *Amex*, 138 S. Ct. at 2284). At step two, "the burden then 'shifts to the defendant to show a procompetitive rationale for the restraint.'" *NCAA v. Alston*, 141 S. Ct. 2141, 2160 (2021) (quoting *Amex*, 138 S. Ct. at 2284). At step three, "[i]f the defendant can make that showing, the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* "[W]here a plaintiff's case comes up short at step three, the district court must proceed to step four and balance the restriction's anticompetitive harms against its procompetitive benefits." *Epic*, 67 F.4th at 994.

The evidence will show that, through numerous anticompetitive acts, including those described above, Google has unlawfully maintained monopolies in the Android App Distribution and Android In-App Payment Solutions Markets. Google's conduct cannot withstand scrutiny under the rule of reason, and judgment must be entered for Plaintiffs.

**B.      Section 1 of the Sherman Act:  Unreasonable Restraints of Trade**[2]

Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations". 15 U.S.C. § 1. "To establish liability under § 1, a plaintiff must prove (1) the existence of an agreement, and (2) that the agreement was in unreasonable restraint of trade." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). "[E]very contract", including "a non-negotiated contract of adhesion", falls within the scope of Section 1. *Epic*, 67 F.4th at 982 (emphasis in original). "Restraints that are not unreasonable *per se* are judged under the 'rule of reason'." *Qualcomm*, 969 F.3d at 989 (citation omitted). (*See* Section I.A.) For restraints that are not unreasonable *per se*, the

---

[2] States Compl. Counts 2, 3, 6; Consumers Compl. Counts 2, 3, 5.

anticompetitive-conduct analysis is "essentially the same" under Sections 1 and 2.  *Id.* at 991.

The evidence will show that through its OEM agreements, Google unreasonably restrained trade by, among other things, conditioning OEMs' access to essential Android services on their agreement to preinstall the Google Play Store on the default home screen of their smartphones; paying OEMs not to preinstall competing app stores; and restricting OEMs from offering frictionless downloading of apps outside the Google Play Store.  Through its Developer Distribution Agreement ("DDA"), Google unreasonably restrained trade by, among other things, forcing developers to agree to terms that prevent them from offering competing app stores, and requiring that they use GPB for in-app "digital content" transactions.  Through its Project Hug and Apps Velocity Program agreements, Google unreasonably restrained trade by, among other things, preventing competing app stores from offering differentiated content (through simultaneous shipment and parity clauses) that is critical for their success.  And Google leveraged revenue share agreements with wireless carriers to discourage them from creating competing app stores. and, once it succeeded in boxing carriers out, reduced their revenue shares to keep the monopoly rents to itself.  Google's conduct cannot withstand scrutiny under the rule of reason, and judgment must be entered for Plaintiffs.

### C.   Section 1 of the Sherman Act:  *Per Se* Restraints of Trade[3]

"[U]nder the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se*."  *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 48 (1990) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940)).  Agreements not to compete between actual or would-be competitors are "[o]ne of the classic examples of a *per se* violation."  *Id.* at 49.  "[T]he agreement can be tacit as well as express."  *Moore v. James H. Matthews & Co.*, 473 F.2d 328, 330 (9th Cir. 1972).  "When a *per se* prohibition applies, we deem a restraint unlawful without any 'elaborate study of the industry' in which it occurs."  *Epic*, 67 F.4th at 974 (citation omitted).

The evidence will show that through its Project Hug and Apps Velocity Program agreements, Google committed *per se* restraints of trade by, among other things, paying potential competitors to agree not to launch app stores on Android that would compete with the Google Play Store.  Google's

---

[3] States Compl. Count 3; Consumers Compl. Count 3.

1   conduct is *per se* unlawful under Section 1, and judgment must be entered for Plaintiffs.

2                 **D.      Section 1 of the Sherman Act:  Unlawful Tying[4]**

3          Tying involves the use of market power over one product to coerce customers into purchasing a

4   separate product.  *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984), *abrogated on*

5   *other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).  "[T]he existence of

6   separate products is inferred from more readily observed facts.  These include consumer requests to

7   offer the products separately, disentangling of the products by competitors, analogous practices in

8   related markets, and the defendant's historical practice."  *Epic*, 67 F.4th at 995.

9          Tying may be condemned as *per se* unlawful or under the rule of reason.  *Jefferson Parish*, 466

10  U.S. at 29.  "For a tying claim to suffer *per se* condemnation, a plaintiff must prove:  (1) that the

11  defendant tied together the sale of two distinct products or services; (2) that the defendant possesses

12  enough economic power in the tying product market to coerce its customers into purchasing the tied

13  product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied

14  product market."  *Cascade Health Sols. v. PeaceHealth*, 15 F.3d 883, 913 (9th Cir. 2008) (citation

15  omitted); *see also Jefferson Parish*, 466 U.S. at 12-18; *Eastman Kodak Co. v. Image Technical*

16  *Services, Inc.*, 504 U.S. 451, 461-62 (1992).  When assessing tying claims under the rule of reason,

17  courts apply the same four-step framework outlined above.  (*See* Section I.A.)

18         The evidence will show that through its DDA and incorporated Developer Program Policies

19  ("DPP"), Google unlawfully ties GPB to the Google Play Store, extracting supracompetitive fees on

20  billions of dollars of transactions, eliminating user and developer choice of payment solutions, and

21  increasing consumer prices.  The evidence will further show that Google has sufficient economic

22  power in the Android App Distribution Market to force this tie on developers, and that the tying

23  product (the Google Play Store) is distinct from the tied product (GPB).  Google's conduct is *per se*

24  unlawful under Section 1, and in the alternative cannot withstand scrutiny under the rule of reason, and

25  judgment must be entered for Plaintiffs.

26

27

28

---

[4] States Compl. Count 4; Consumer Compl. Count 6.

### E.       Section 1 of the Sherman Act:  Unlawful Exclusive Dealing[5]

Under Section 1 of the Sherman Act, exclusive dealing "is an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor, and forecloses competition."  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1180 (9th Cir. 2016) (quotation marks and citation omitted).  Exclusive dealing is unlawful "if its effect is to 'foreclose competition in a substantial share of the line of commerce affected.'"  *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group* LP, 592 F.3d 991, 996 (9th Cir. 2010) (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)).  The evidence will show that through its DDA and incorporated DPP, Google requires developers who offer their apps in the Google Play Store to use only Google Play Billing for initial purchases of paid apps or for in-app transactions of digital goods.  Thus, the evidence will show that, under Google's policies, consumers have no choice but to use Google Play Billing to purchase apps or in-app digital content.  The evidence will further show that Google's exclusive dealing contracts foreclose competition in the Android In-App Payment Solutions market to such an extent that Google currently faces no meaningful competition or threat of competition.  Google's conduct constitutes unlawful exclusive dealing, and judgment must be entered for Plaintiffs.

### F.       Cal. Cartwright Act:  Unreasonable Restraints of Trade; Unlawful Tying; Unlawful Exclusive Dealing[6]

Under the Cartwright Act "every trust" is "unlawful, against public policy and void".  Cal. Bus. & Prof. Code § 16726.  A "trust" is defined as "a combination of capital, skill, or acts by two or more persons . . . [t]o create or carry out restrictions in trade or commerce".  *Id.* § 16720.  The evidence will show that the same conduct by Google that violates Section 1 of the Sherman Act violates the Cartwright Act.  Judgment must be entered for Plaintiffs.

### G.       State Antitrust, Consumer Protection, and Unfair Trade Practice Laws[7]

The States allege violations of the antitrust, consumer protection, and unfair trade practice laws

---

[5] States Compl. Counts 7, 8; Consumers Compl. Counts 4, 5.

[6] States Compl. Count 8; Consumer Compl. Counts 7, 8, 9, 10.

[7] States Compl. Count 8.

of various States, Commonwealths, and Districts.[8]  The evidence will show that the same conduct by Google that violates the Sherman Act violates the antitrust, consumer protection, and unfair trade practice laws of these States, Commonwealths, and Districts.  Judgment must be entered for the States.

---

[8] *See, e.g.*, Alaska Stat. §§ 45.50.562, 45.50.564, 45.50.471; Ariz. Rev. Stat. §§ 44-1402, 44-1403, 44-1522; Ark. Code §§ 4-75-206, 4-75-302; Colo. Rev. Stat. §§ 6-4-104, 6-4-105; Conn. Gen. Stat. §§ 35-26, 35-27, 42-110b; Del. Code tit. 6, § 2103; D.C. Code §§ 28-3904, 28-4502, 28-4503; Fla. Stat. §§ 501.204. 542.18, 542.19; Idaho Code §§ 48-104, 48-105; Ind. Code §§ 24-1-2-1, 24-1-2-2, 24-5-0.5-3; Iowa Code §§ 553.4-5, 714.16; Ky. Rev. Stat. § 367.175; La. Rev. Stat. tit. 51, §§ 122-124; Md. Com. Law Code §11-204; Mass. Gen. Laws ch. 93A, § 2; Minn. Stat. § 325D.51, 325D.52; Miss. Code §§ 75-21-1, 75-21-3, 75-24-5; Mo. Rev. Stat. §§ 416.031, 407.020; Mont. Code §§ 30-14-205, 30-14-103; Neb. Rev. Stat. §§ 59-801, 59-802, 59-1602, 59-1603, 59-1604; Nev. Rev. Stat. §§ 598A.060, 598.0923; N.H. Rev. Stat. §§ 356:2, 356:3; N.J. Stat. §§ 56:9-3, 56:9-4, 56:8-2, 56:8-4; N.M. Stat. §§ 57-1-1, 57-1-2; N.Y. Gen. Bus. Law § 340; N.Y. Exec. Law § 63(12); N.C. Gen. Stat. §§ 75-1, 75-1.1, 75-2, 75-2.1; N.D. Cent. Code §§ 51-08.1-02; 51-08.1-03; 79 Okla. Stat. § 203; Or. Rev. Stat. §§ 646.725, 646.730; R.I. Gen. Law §§ 6-36-4, 6-36-5; S.D. Codified Laws §§ 37-1-3.1, 37-1-3.2; Tex. Bus. & Com. Code § 15.05; Utah Code §§ 76-10-3104, 13-11-4; 9 Vt. Stat. § 2453; Va. Code §§ 59.1-9.5, 59.1-9.6; Wash. Rev. Code §§ 19.86.020, 19.86.030, 19.86.040; W. Va. Code §§ 47-18-3, 47-18-4.

The States also allege violations (identified in States' FAC Section III) of the consumer protection and unfair trade practice laws of various States, Commonwealths, and Districts.[9]  The evidence will show that Google has repeatedly engaged in unfair, fraudulent, and/or deceptive conduct regarding the Google Play Store.  It will show that Google has made false or misleading statements about sideloading apps, including pretextual security claims, warnings, and representations to users regarding the supposed dangers of apps downloaded from any source other than the Google Play Store.  The evidence will also show that Google has made false or misleading statements about the "openness" of the Google Play Store and about Google's in-app purchase billing policies.  Google's knowingly false statements had the capacity, tendency, and/or effect of deceiving or misleading consumers and app developers.  Google's conduct is unlawful under the consumer protection and unfair trade practice laws of the States, Commonwealths, and Districts that have brought these claims, and judgment must be entered for the States.

## H.    Cal. Unfair Competition Law ("UCL")[10]

Plaintiffs' California UCL claims will be determined solely by the Court but are included in this trial brief for completeness.  The UCL "prohibits 'any [1] unlawful, [2] unfair or [3] fraudulent business act or practice.'"  *Epic*, 67 F.4th at 1000 (brackets in original) (quoting Cal. Bus. & Prof. Code § 17200).  Under the "unlawful" prong, "[v]irtually any law—federal, state or local—can serve as a predicate" unlawful act.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010) (citation omitted).  Under the "unfair" prong, "a business practice may be 'unfair,' and therefore illegal under the UCL, 'even if not specifically proscribed by some other law.'"  *Epic*, 67 F.4th at 1000 (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999)).  "[T]o support 'any finding of unfairness to *competitors*,' a court uses the 'tethering' test, which asks whether

---

[9] *See, e.g.*, Alaska Stat. § 45.50.471; Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107; Colo. Rev. Stat. § 6-1-105; Conn. Gen. Stat. § 42-110b; D.C. Code § 28-3904; Fla. Stat. § 501.204; Ind. Code § 24-5-0.5-3; Iowa Code § 714.16; Ky. Rev. Stat. § 367.170; La. Rev. Stat. tit. 51, § 1405; Mass. Gen. Laws ch. 93A, § 2; Miss. Code § 75-24-5; Mo. Rev. Stat. § 407.020; Mont. Code § 30-14-103; Nev. Rev. Stat. §§ 598.0915, 598.0923; N.H. Rev. Stat. § 358-A:2; N.J. Stat. § 56:8-2; N.M. Stat. § 57-12-3; N.Y. Gen. Bus. Law § 349; N.Y. Exec. Law § 63(12); N.C. Gen. Stat. § 75-1.1; N.D. Cent. Code § 51-15-02; 15 Okla. Stat. § 753; S.D. Codified Laws § 37-24-6; Tex. Bus. & Com. Code § 17.46; Utah Code § 13-11-4; 9 Vt. Stat. § 2453; Wash. Rev. Code § 19.86.020.

[10] States Compl. Count 8; Consumer Compl. Count 11.

the defendant's conduct 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Id.* (quoting *Cel-Tech*, 973 P.2d at 544). "[T]o support a finding of unfairness to *consumers*, a court uses the balancing test, which weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (quotation marks omitted). "These tests are not mutually exclusive." *Id.* The Ninth Circuit recently affirmed a decision permanently enjoining under the UCL the anti-steering clause in Apple's App Store developer agreements. *Id.* at 999.[11]

The evidence will show that Google's conduct, including foreclosing competition, paying off competitors, charging supracompetitive prices, and reducing output and innovation, is both unlawful and unfair under the UCL. Judgment must be entered for Plaintiffs.

## II.     Google's Defenses

In its answers to Plaintiffs' complaints, Google asserted 19 affirmative defenses. The sole defense where Google is seeking a jury instruction, however, is a business justification defense.[12] That defense is a component of the rule of reason framework discussed above. (*See* Section I.A.)[13]

## CONCLUSION

The evidence at trial will show that judgment should be entered for Plaintiffs on all their claims.

---

[11] Apple's clause states that developers "may not include buttons, external links, or other calls to action that direct customers to purchasing mechanisms other than in-app purchase." *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1013 (N.D. Cal. 2021). A parallel clause in Google's DPP states that "apps may not lead users to a payment method other than Google Play's billing system." *Payments*, Play Console, https://support.google.com/googleplay/android-developer/answer/9858738.

[12] Google also seeks a statute of limitations instruction, but it pertains to the apportionment of damages, not liability.

[13] To the extent Google intends to pursue its remaining defenses at trial, Plaintiffs oppose each of them, and the evidence will show they are meritless.

Dated:  October 5, 2023

BARTLIT BECK LLP
    Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
    Hae Sung Nam

Respectfully submitted,

By: */s/ Karma M. Giulianelli*
    Karma M. Giulianelli

*Co-Lead Counsel for Consumer Plaintiffs in In re Google Play Consumer Antitrust Litigation*

Dated:  October 5, 2023

PRITZKER LEVINE LLP
    Elizabeth C. Pritzker

Respectfully submitted,

By: */s/ Elizabeth C. Pritzker*
    Elizabeth C. Pritzker

*Liaison Counsel for Consumer Plaintiffs in In re Google Play Consumer Antitrust Litigation*

Dated:  October 5, 2023

OFFICE OF THE UTAH ATTORNEY GENERAL
    Brendan P. Glackin
    Lauren M. Weinstein

Respectfully submitted,

By: */s/ Brendan P. Glackin*
    Brendan P. Glackin

*Counsel for the Plaintiff States*

**E-FILING ATTESTATION**

I, Brendan Benedict, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


/s/ *Brendan Benedict*
Brendan Benedict