1    Paul J. Riehle (SBN 115199)                    Douglas J. Dixon (SBN 275389)
2    paul.riehle@faegredrinker.com                  ddixon@hueston.com
     **FAEGRE DRINKER BIDDLE &**                     **HUESTON HENNIGAN LLP**
3    **REATH LLP**                                   620 Newport Center Drive, Suite 1300
     Four Embarcadero Center, 27th Floor             Newport Beach, CA 92660
4    San Francisco, CA 94111                         Telephone: (949) 229-8640
5    Telephone: (415) 591-7500

6                                                    *Counsel for Plaintiffs Match Group,*
     Christine A. Varney (*pro hac vice*)            *LLC, et al.*
7    cvarney@cravath.com
     **CRAVATH, SWAINE & MOORE LLP**                 Glenn D. Pomerantz (SBN 112503)
8    825 Eighth Avenue                               glenn.pomerantz@mto.com
     New York, New York 10019                        **MUNGER, TOLLES & OLSON LLP**
9    Telephone: (212) 474-1000                       350 South Grand Avenue, Fiftieth Floor
                                                      Los Angeles, California 90071
10                                                   Telephone: (213) 683-9100
     *Counsel for Plaintiff Epic Games, Inc.*
11
                                                      Brian C. Rocca (SBN 221576)
12                                                    brian.rocca@morganlewis.com
                                                      **MORGAN, LEWIS & BOCKIUS LLP**
13                                                    One Market, Spear Street Tower
                                                      San Francisco, CA 94105-1596
14                                                    Telephone: (415) 442-1000
15
16   [Additional counsel appear on signature page]   *Counsel for Defendants Google LLC et al*
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*,<br>Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br><br>**JOINT PROPOSED<br>JURY VERDICT FORM<br>AND OBJECTIONS**<br><br>Judge:  Hon. James Donato<br>Trial Date:  November 6, 2023<br>Time:  9:00 am<br>Place:  Courtroom 11, 19th Floor |

# TABLE OF CONTENTS

Plaintiffs' Proposed Verdict Form ................................................................................................. 3

Defendants' Proposed Verdict Form .......................................................................................... 15

Plaintiffs' Argument Re Verdict Form ........................................................................................ 44

Defendants' Argument Re Verdict Form ................................................................................... 46

**Plaintiffs' Proposed Verdict Form**

Please answer the following Questions in accordance with the Jury Instructions given to you by the Court.  Mark your answers by placing an X in the space provided.

### Plaintiffs' Claims

### Monopolization—Section 2 of the Sherman Act

1.    Have plaintiffs proven, by a preponderance of the evidence, that Google unlawfully acquired or maintained monopoly power in a relevant antitrust market that includes the Google Play Store?


         YES____ NO ____


*Continue to Question No. 2.*


2.    Have plaintiffs proven, by a preponderance of the evidence, that Google unlawfully acquired or maintained monopoly power in a relevant antitrust market that includes Google Play Billing?


         YES____ NO____


*Continue to Question No. 3.*

## Attempted Monopolization—Section 2 of the Sherman Act

3.    Have plaintiffs proven, by a preponderance of the evidence, that Google unlawfully attempted to monopolize a relevant antitrust market that includes Google Play Billing?


YES____ NO ____


*Continue to Question No. 4.*

**Unlawful Restraints of Trade—Section 1 of the Sherman Act
and the California Cartwright Act**

4.    Have plaintiffs proven, by a preponderance of the evidence, that Google entered into an agreement not to compete with one or more of Activision, Riot, or Supercell?

        YES____ NO____

*Continue to Question No. 5.*

5.    Have plaintiffs proven, by a preponderance of the evidence, that Google entered into one or more agreements that unreasonably restrained trade in a relevant antitrust market that includes the Google Play Store?

        YES____ NO____

*Continue to Question No. 6.*

6.    Have plaintiffs proven, by a preponderance of the evidence, that Google entered into one or more agreements that unreasonably restrained trade in a relevant antitrust market that includes Google Play Billing?

        YES____ NO____

*Continue to Question No. 7.*

## **Tying—Section 1 of the Sherman Act**
## **and the California Cartwright Act**

7.    Have plaintiffs proven, by a preponderance of the evidence, that Google maintained a *per se* illegal tie of Google's Android app store (Google Play Store) and Google's payment processor (Google Play Billing)?

YES____ NO____

***Continue to Question No. 8.***

8.    Have plaintiffs proven, by a preponderance of the evidence, that Google unlawfully tied use of its Android app store (Google Play Store) to use of Google's payment processor (Google Play Billing) under the rule of reason?

YES____ NO____

1

2

## **Injury**

3

*If you answered Yes to __any__ preceding Question, continue to Question No. 9. If you answered No to __all__ preceding Questions, skip to Question No. 12.*

4

5     9.     Did any of Google's anti-competitive conduct you found unlawful in the previous questions
            cause injury to Epic in its business or property?

6

7                        YES____ NO____

8

9     *Continue to Question No. 10.*

10

11    10.    Did any of Google's anti-competitive conduct you found unlawful in the previous questions
            cause injury to Match in its business or property?

12

13                       YES____ NO____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Damages</u>**

*If you answered Yes to Question No. 10, continue to Question No. 11. If you answered No to Question No. 10, skip to Question No. 12.*

11.     We award Match the following damages for Google's anti-competitive conduct:

$_____

*Continue to Question No. 12.*

**<u>Match's Claims for Interference with Contractual Relations<br>and Interference with Prospective Economic Relations</u>**

12.    Has Match proven, by a preponderance of the evidence, that Google intentionally interfered with one or more contracts between Match and its users?

         YES____ NO____

*Continue to Question No. 13.*

13.    Has Match proven, by a preponderance of the evidence, that Google intentionally interfered with one or more prospective economic relationships between Match and its users?

         YES____ NO____

1

**Google's Counterclaims**

2

3

4

5

*If you answered Yes to <u>any</u> of Questions No. 1, 2, 3, 7 or 8, <u>or</u> you answered Yes to <u>either</u> Question No. 5 or 6 (and you found that Google's Developer Distribution Agreement and/or its Payments Policy unreasonably restrained trade), then do not answer any other questions; sign and date this Verdict Form and inform the Court that the jury has reached a verdict. Otherwise, continue to Question No. 14.*

6

7

8

14.   Has Google proven, by a preponderance of the evidence, that Epic breached the Google Play Payments Policy with Google by not exclusively using Google Play Billing in its app distributed through the Google Play Store, causing damage to Google?

9

          YES____ NO____

10

11

*Continue to Question No. 15.*

12

13

14

15.   Has Google proven, by a preponderance of the evidence, that between September 21, 2021 and March 31, 2022, Match breached the Google Play Payments Policy with Google by not exclusively using Google Play Billing in its apps distributed through the Google Play Store?

15

16

          YES____ NO____

17

18

*Continue to Question No. 16.*

19

20

16.   Has Google proven, by a preponderance of the evidence, that after March 31, 2022, Match breached the Google Play Payments Policy with Google by not exclusively using Google Play Billing in its apps distributed through the Google Play Store?

21

22

          YES____ NO____

23

24

*Continue to Question No. 17*

25

26

27

28

17.     Has Google proven, by a preponderance of the evidence, that Epic breached the implied covenant of good faith and fair dealing incorporated into the Developer Distribution Agreement with Google, causing damage to Google?

YES____ NO____

*Continue to Question No. 18.*

18.     Has Google proven, by a preponderance of the evidence, that Match breached the implied covenant of good faith and fair dealing incorporated into the Developer Distribution Agreement with Google, causing damage to Google?

YES____ NO____

*Continue to Question No. 19.*

19.     Has Google proven, by a preponderance of the evidence, that Epic was unjustly enriched by receiving benefits that it ought to have returned to Google, and that the unjust enrichment related to a different subject than the Developer Distribution Agreement between Google and Epic?

YES____ NO____

*Continue to Question No. 20.*

1    20.    Has Google proven, by a preponderance of the evidence, that Match was unjustly enriched by
2           receiving benefits that it ought to have returned to Google, and that the unjust enrichment
            related to a different subject than the Developer Distribution Agreement between Google and
3           Match?

4

5                   YES____ NO____

6

7    ***Continue to Question No. 21.***

8

9    21.    Has Google proven, by a preponderance of the evidence, that Match falsely promised to Google
10          that it would comply with the Payments Policy by March 31, 2022?

11                  YES____ NO____

*If you answered Yes to <u>either</u> of Questions No. 14 or 17, continue to Question No. 22. Otherwise, skip to Question No. 23.*

22.    We award Google the following damages for its breach of contract counterclaims against Epic:

$_____

*(Award no more than $398,931.)*

*If you answered Yes to Question No. 19, continue to Question No. 23. Otherwise, skip to Question No. 24.*

23.    We award Google the following damages for its unjust enrichment counterclaim against Epic:

$_____

*(Award no more than $240,652.)*

*If you answered Yes to __any__ of Questions No. 15, 16, 18, 20, or 21, continue to Question No. 24. If you answered No to __all__ of Questions No. 15, 16, 18, 20, and 21, then do not answer Question No. 24; sign and date this Verdict Form and inform the Court that the jury has reached a verdict.*

24.     We award Google the following damages for its counterclaim(s) against Match:


$_____



*Sign and date this Verdict Form and inform the Court that the jury has reached a verdict.*


Dated:  _____


_____
                                                        Foreperson

### Defendants' Proposed Verdict Form

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form.  Your answer to each question must be unanimous.  Mark your answers by placing an X in the space provided.*

We, the jury, unanimously agree to the answers to the following questions submitted to us, and we return them as our verdict in this case as follows:

### **Plaintiffs' Claims**

### **Monopolization—Section 2 of the Sherman Act—Alleged App Distribution Market**

1.  Alleged Android App Distribution Market:

    (a)  Have plaintiffs proven the existence of a product market that plaintiffs have defined as the Android App Distribution market?

        YES____ NO ____

    (b)  If you answered "yes" to Question 1(a), have plaintiffs proven that the Android App Distribution market includes the entire world except for China?

        YES____ NO ____

    *If you answered "no" to either Question 1(a) or Question 1(b) then stop here and consider the next claim.  If you answered "yes" to both Question 1(a) and Question 1(b), then continue to Question 2.*

2.  Have plaintiffs proven that Google has monopoly power in the Android App Distribution Market?

        YES____ NO ____

    *If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 3.*

3.  Have plaintiffs proven that Google engaged in conduct that substantially harmed competition in the market that you found when you answered Questions 1(a) and 1(b)?

        YES____ NO ____

*If you answered "no," then you should then stop your consideration of this claim here and move to the next claim.  If you answered "yes," continue to Question 4.*

4.  Has Google shown that its conduct had some procompetitive benefits?

    YES_____  NO_____

*If you answered "no," then skip Questions 5-6 and continue to Question 7.  If you answered "yes," then continue to Question 5.*

5.  Have plaintiffs proven that each and every procompetitive benefit could be achieved through substantially less restrictive means?

    YES_____  NO_____

*If you answered "yes," skip Question 6 and continue to Question 7.  If you answered "no," then continue to Question 6.*

6.  Have plaintiffs proven that the competitive harm substantially outweighs the procompetitive benefits?

    YES_____  NO_____

*If you answered "yes," continue to Question 7.  If you answered "no," then you must stop your consideration of this claim here and move to the next claim.*

7.  Have the following plaintiffs proven that they suffered injury to their business or property as a result of Google's conduct for which you answered YES in response to Questions 5 or 6?

        Epic:  YES_____  NO_____

        Match Group, LLC:  YES_____  NO_____

        Humor Rainbow, Inc.:  YES_____  NO_____

        PlentyofFish Media, ULC:  YES_____  NO_____

        People Media, Inc.:  YES_____  NO_____

**Monopolization—Section 2 of the Sherman Act—Alleged In-App Billing Services Market**

8.      Alleged Android In-App Billing Services Market:

   (a)     Have plaintiffs proven the existence of a product market that plaintiffs have defined as
           the Android In-App Billing Services Market?

           YES_____ NO _____

   (b)     If you answered "yes" to Question 8(a), have plaintiffs proven that the Android In-App
           Billing Services market includes the entire world except for China?

           YES_____ NO _____

   ***If you answered "no" to either Question 8(a) or Question 8(b), then stop your consideration
   of this claim here and move to the next claim.  If you answered "yes" to both Question 8(a)
   and Question 8(b), then continue to Question 9.***

9.      Have plaintiffs proven that Google has monopoly power in the Android In-App Billing
        Services Market?

           YES_____ NO _____

   ***If you answered "no," then stop your consideration of this claim here and move to the next
   claim.  If you answered "yes," continue to Question 10.***

10.     Have plaintiffs proven that the Developer Distribution Agreement's Payments Policy
        substantially harmed competition in the relevant market that you found when you answered
        Questions 8(a) and 8(b)?

           YES_____ NO _____

   ***If you answered "no," then stop here and consider the next claim.  If you answered "yes,"
   continue to Question 11.***

11.     Has Google shown that the Developer Distribution Agreement's Payments Policy has some
        procompetitive benefits?

           YES_____ NO_____

*If you answered "no," then skip Questions 12-13 and continue to Question 14.  If you answered "yes," then continue to Question 12.*

12.   Have plaintiffs proven that each and every procompetitive benefit could be achieved through substantially less restrictive means?

       YES_____ NO_____

*If you answered "yes," then skip Question 13 and continue to Question 14.  If you answered "no," then continue to Question 13.*

13.   Have plaintiffs proven that the competitive harm substantially outweighs the procompetitive benefits?

       YES_____ NO_____

*If you answered "yes," continue to Question 14.  If you answered "no," then you must stop your consideration of this claim here and move to the next claim.*

14.   Have the following plaintiffs proven that the suffered injury to its business or property as a result of Google's conduct for which you answered YES in response to Questions 12 or 13?

       Epic:  YES_____ NO_____

       Match Group, LLC:  YES_____ NO_____

       Humor Rainbow, Inc.:  YES_____ NO_____

       PlentyofFish Media, ULC:  YES_____ NO_____

       People Media, Inc.:  YES_____ NO_____

### Attempted Monopolization—Section 2 of the Sherman Act

*If you answered "no" to either Questions 8(a) or 8(b), then stop your consideration of this claim and move to the next claim.  If you answered "yes" to both Questions 8(a) and 8(b), then consider this claim beginning with Question 15.*

15.    Have the Match Plaintiffs proven that Google adopted and implemented its Payments Policy with a specific intent to achieve monopoly power in the Android In-App Billing Services market?

          YES____ NO ____

*If you answered "no," then stop your consideration of this claim here and move to the next claim.  If you answered "yes," continue to Question 16.*

16.    Have the Match Plaintiffs proven that there was a dangerous probability that Google would achieve its goal of monopoly power in the Android In-App Billing Services market?

          YES____ NO ____

*If you answered "No," then stop your consideration of this claim here and move to the next claim.  If you answered "yes," continue to Question 17.*

17.    Has Google shown that its Payments Policy has some procompetitive benefits?

          YES____ NO____

*If you answered "no," then skip Questions 18-19 and continue to Question 20.  If you answered "yes," then continue to Question 18.*

18.    Have plaintiffs proven that each and every procompetitive benefit could be achieved through substantially less restrictive means?

          YES____ NO____

*If you answered "yes," then skip Question 19 and continue to Question 20.  If you answered "no," then continue to Question 19.*

19.    Have plaintiffs proven that the competitive harm substantially outweighs the procompetitive benefits?

          YES____ NO____

*If you answered "no," then you must stop your consideration of this claim here and move to the next claim.  If you answered "yes," continue to Question 20.*

20.  Have the following plaintiffs proven that they suffered injury to their business or property as a result of Google's conduct for which you answered YES to Questions 18 or 19?

Match Group, LLC:  YES_____ NO_____

Humor Rainbow, Inc.:  YES_____ NO_____

PlentyofFish Media, ULC:  YES_____ NO_____

People Media, Inc.:  YES_____ NO_____

### *Per Se* Unlawful Restraints of Trade—Section 1 of the Sherman Act and the California Cartwright Act—Games Velocity Program[1]

21. Have plaintiffs proven that Activision, Riot, or Supercell were competitors with the Google Play store?

       Activision:  YES____  NO____

       Riot:   YES____  NO____

       Supercell:  YES____  NO____

*If you answered "no" to all three, then stop here and move to the next claim.  If you answered "yes" to any of the three, then continue to Question 22, but only with regard to the developers for which you answered "yes," in response to Question 21.*

22. Have plaintiffs proven that Google entered into a contract not to compete with one or more of Activision, Riot, or Supercell in the market for Android app distribution services?

       Activision:  YES____  NO____

       Riot:   YES____  NO____

       Supercell:  YES____  NO____

*If you did not answer "yes" to any part of the previous question, then stop here and consider the next claim.  If you answered "yes" to any of the three, then continue to Question 23, but only with regard to those developers for which you answered "yes" in response to Question 22.*

23.  Have the following plaintiffs proven that they suffered injury to their business or property as a result of the agreements with the developers for which you answered YES in response to Question 22?

       Epic:  YES____  NO____

       Match Group, LLC:  YES____  NO____

       Humor Rainbow, Inc.:  YES____  NO____

---

[1] As explained in its position statements regarding disputed jury instructions, Google objects to the *per se* Section 1 claims being submitted to the jury.  Google proposes these questions in the event that its objection is overruled.

PlentyofFish Media, ULC:  YES_____ NO_____

People Media, Inc.:  YES_____ NO_____

**Unlawful Restraints of Trade—Rule of Reason—Section 1 of the Sherman Act and the California Cartwright Act—Alleged App Distribution Market**

*If you answered "no" to either Question 1(a) or 1(b), then you must stop here and consider the next claim.  If you answered "yes" to both Questions 1(a) and 1(b), then you should consider this claim.*

24.     Have plaintiffs proven that Google has market power in a market that plaintiffs have defined as the Android App Distribution market for the entire world except for China?

                   YES____ NO ____

         *If you answered "no," then stop here and consider the next claim.  If you answered "yes," then continue to Question 25.*

25.     Have plaintiffs proven that Google entered into agreements that substantially harmed competition in the market that you found in response to Questions 1(a) and 1(b)?

                   YES____ NO ____

         *If you answered "no," then stop here and consider the next claim.  If you answered "yes," then continue to Question 26.*

26.     Has Google shown that the conduct for which you answered YES in response to Question 25 has some procompetitive benefits?

                   YES____ NO ____

         *If you answered "no," then skip Questions 27-28 and continue to Question 29.  If you answered "yes" to any of these categories, then continue to Question 27.*

27.     Have plaintiffs proven that each and every procompetitive benefit could be achieved through substantially less restrictive means?

                   YES____ NO____

         *If you answered "yes," then skip Question 28 and continue to Question 29.  If you answered "no," then continue to Question 28.*

28.     Have plaintiffs proven that the competitive harm substantially outweighs the procompetitive benefits?

                   YES____ NO____

*If you answered "yes," continue to Question 29.  If you answered "no," then you must stop your consideration of this claim here and move to the next claim.*

29.   Have the following plaintiffs proven that they suffered injury to their business or property as a result of Google's conduct for which you answered YES to Questions 27 or 28?

        Epic:  YES____ NO____

        Match Group, LLC:  YES____ NO____

        Humor Rainbow, Inc.:  YES____ NO____

        PlentyofFish Media, ULC:  YES____ NO____

        People Media, Inc.:  YES____ NO____

### Unlawful Restraints of Trade—Rule of Reason—Section 1 of the Sherman Act and the California Cartwright Act—Alleged In-App Billing Services Market

*If you answered "no" to either Question 8(a) or 8(b), then you must stop here and consider the next claim. If you answered "yes" to both Questions 8(a) and 8(b), then you should consider this claim.*

30.   Have plaintiffs proven that Google has market power in a market that plaintiffs have defined as the market for In-App Billing Services on Android Devices for the entire world except for China?

          YES____ NO ____

*If you answered "no," then stop here and consider the next claim. If you answered "yes," then continue to Question 31.*

31.   Have plaintiffs proven that Google's Payments Policy substantially harmed competition in the relevant market that you found in response to Questions 8(a) and 8(b)? If you did not find the Payments Policy to be unlawful when you considered plaintiffs' Section 2 claims, then you cannot find them to be unlawful here.

          YES____ NO____

*If you answered "no," then stop here and consider the next claim. If you answered "yes," continue to Question 32.*

32.   Has Google shown that its Payments Policy has some procompetitive benefits?

          YES____ NO____

*If you answered "no," then skip Questions 33-34 and continue to Question 35. If you answered "yes," continue to Question 33.*

33.   Have plaintiffs proven that each and every procompetitive benefit could be achieved through substantially less restrictive means?

          YES____ NO____

*If you answered "yes," then skip Question 34 and continue to Question 35. If you answered "no," then continue to Question 34.*

34.   Have plaintiffs proven that the competitive harm substantially outweighs the procompetitive benefits?

          YES____ NO____

*If you answered "yes," continue to Question 35.  If you answered "no," then you must stop your consideration of this claim here and move to the next claim.*

35.  Have the following plaintiffs proven that they suffered injury to their business or property as a result of Google's conduct for which you answered YES in response to Questions 33 or 34?

Epic:  YES_____ NO_____

Match Group, LLC:  YES_____ NO_____

Humor Rainbow, Inc.:  YES_____ NO_____

PlentyofFish Media, ULC:  YES_____ NO_____

People Media, Inc.:  YES_____ NO_____

**Tying—Section 1 of the Sherman Act
and the California Cartwright Act**

*Only answer these questions if you answered "yes" to Questions 8(a), 8(b) and 24. If you answered "no" to Questions 8(a), 8(b), or 24, then you should skip this claim and you should also skip Google's business justification defense that follows this claim.*

36.   Have plaintiffs proven that app distribution services and in-app billing services are separate and distinct products?

      YES____ NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 37.*

37.   Have plaintiffs proven that Google has sufficient market power with respect to the app distribution services to enable it to restrain competition as to an alleged market for in-app billing services?

      YES____ NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 38.*

38.   Have plaintiffs proven that Google coerced purchasers of app distribution services to also purchase Google Play Billing, or not to purchase in-app billing services from any other supplier?

      YES____ NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 39.*

39.   Have plaintiffs proven that the alleged tying arrangement has foreclosed a substantial volume of commerce as to an alleged market for in-app billing services?

      YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 40.*

40.   Have plaintiffs proven that the tying arrangement caused substantial harm to competition in the Android In-App Billing Services market?

      YES____ NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," then continue to Question 41.*

41.     Has Google shown that the tying arrangement has some procompetitive benefits?

        YES____ NO____

*If you answered "no," then skip Questions 42-43 and continue to Question 44.  If you answered "yes," then continue to Question 42.*

42.      Have plaintiffs proven that each and every procompetitive benefit could be achieved through substantially less restrictive means?

        YES____ NO____

*If you answered "yes," then skip Question 43 and continue to Question 44.  If you answered "no," then continue to Question 43.*

43.     Have plaintiffs proven that the competitive harm substantially outweighs the procompetitive benefits?

        YES____ NO____

*If you answered "yes," continue to Question 44.  If you answered "no," then you must stop your consideration of this claim here and move to the next claim.*

44.      Have the following plaintiffs proven that they suffered injury to their business or property as a result of the tying arrangement?

        Epic:  YES____ NO____

        Match Group, LLC:  YES____ NO____

        Humor Rainbow, Inc.:  YES____ NO____

        PlentyofFish Media, ULC:  YES____ NO____

        People Media, Inc.:  YES____ NO____

*Even if you answered YES to any with regard to any of the plaintiffs listed in Question 44, you must consider Google's business justification defense.  If Google has proven that defense, then you may not find Google liable for plaintiffs' tying claim, nor may you ultimately award damages to any Plaintiffs for their tying claim.  Accordingly, continue to the next question.*

**Tying—Business Justification Defense**

45.     Has Google proven a business justification for the alleged tying arrangement?

                YES_____ NO_____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 46.*

46.     Have plaintiffs proven that Google's business justification could be achieved through substantially less restrictive means?

                YES_____ NO_____

*If you answered "no" to this question, you must find for Google and against plaintiffs on plaintiffs' tying claims, and you may not award any plaintiff any damages based on their tying claim.*

1

## **Damages**

2

3

***The Match Plaintiffs seek damages from Google under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.***

4

47.      We award the following damages caused by Google's anti-competitive conduct:

5

6

Match Group, LLC:  $_____

7

PlentyofFish Media ULC:  $_____

8

Humor Rainbow, Inc:  $_____

9

People Media, Inc:  $_____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Match Plaintiffs' Claims for Interference with Contractual Relations and Interference with Prospective Economic Relations

*If for each of plaintiffs' claims on this verdict form your last answer to a question was "no," then you must skip this claim.*

48.  Have the Match Plaintiffs proven that there was a contract between the Match Plaintiffs and their users?

       YES____  NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 49.*

49.  Have the Match Plaintiffs proven that Google knew of the contract(s) between the Match Plaintiffs and their users?

       YES____  NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 50.*

50.  Have the Match Plaintiffs proven that Google's conduct prevented performance or made performance more expensive or difficult?

       YES____  NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 51.*

51.  Have the Match Plaintiffs proven that Google intended to disrupt the performance of the contract(s) at issue

       YES____  NO____

*If you answered "no," then stop here and consider the next claim.  If you answered "yes," continue to Question 52.*

52.  Was Google's conduct a substantial factor in causing harm to the Match Plaintiffs?

       YES____  NO____

*Even if you answered "yes" to all of the questions in this section, you must consider Google's defense that Google had a privilege to protect its own economic interest. If Google has proven that defense, then you may not find Google liable for the Match Plaintiffs' claims for Interference with Contractual Relations and Interference with Prospective Economic Relations, nor may you award damages to the Match Plaintiffs for those claims. Accordingly, continue to the next question.*

## **Google's Affirmative Defense - Privilege to Protect Own Economic Interest**

53.   Has Google proven that it had a legitimate interest in the contractual relations because, among other things, the Match Plaintiffs distribute their apps by using Google's distribution services on the Google Play store?

        YES____ NO____

***If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 54.***

54.   Has Google shown that it acted only to protect its own economic interest?

        YES____ NO____

***If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 55.***

55.   Has Google shown that it acted reasonably and in good faith to protect its own economic interest?

        YES____ NO____

***If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 56.***

56.   Did Google act reasonably and in good faith to protect its own economic interest?

        YES____ NO____

***If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 57.***

57.   Did Google use appropriate means to protect its own economic interest?

        YES____ NO____

***If you answered "yes" to each of these questions, then you must find for Google and against the Match Plaintiffs' on their claims for Interference with Contractual Relations and Interference with Prospective Economic Relations.***

### Google's Counterclaims

### Google's Breach of Contract Counterclaim Against Epic

1.  Did Google and Epic enter a contract (the Developer Distribution Agreement)?

    YES____ NO____

    *If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 2.*

2.  Did Epic fail to do something that the Developer Distribution Agreement required it to do or do something that the contract prohibited it from doing?

    YES____ NO____

    *If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 3.*

3.  Was Google harmed by Epic's breach of the Developer Distribution Agreement?

    YES____ NO____

    *If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 4.*

4.  What are Google's damages from Epic's breach of the Developer Distribution Agreement?

    $ _____

**Google's Breach of Contract Counterclaim Against the Match Plaintiffs**

5.   Did Google and the Match Plaintiffs enter a contract (the Developer Distribution Agreement)?

       YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 6.*

6.   Did the Match Plaintiffs fail to do something that the Developer Distribution Agreement required them to do or do something that the contract prohibited them from doing?

       YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 7.*

7.   Was Google harmed by the Match Plaintiffs' breach of the Developer Distribution Agreement?

       YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 8.*

8.   What are Google's damages from the Match Plaintiffs' breach of the Developer Distribution Agreement?

       $ _____

### Google's Breach of the Implied Covenant of Good Faith and Fair Dealing Counterclaim Against Epic

*If you awarded damages against Epic on Google's breach of contract counterclaim against Epic, then you should skip this counterclaim.*

9.      Did Google and Epic enter a contract?

                    YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 10.*

10.     Did Epic unfairly interfere with Google's right to receive the benefits of the contract?

                    YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 11.*

11.     Was Google harmed by Epic's interference?

                    YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 12.*

12.     What are Google's damages from Epic's breach of the implied covenant of good faith and fair dealing?

                    $ _____

**Google's False Promise Counterclaim against the Match Plaintiffs**

13.   Did the Match Plaintiffs make a promise to Google?

   YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 14.*

14.   Did the Match Plaintiffs intend to perform this promise when they made it?

   YES____ NO____

*If you answered "yes," then stop here and consider the next claim.  If you answered "no," continue to Question 15.*

15.   Did the Match Plaintiffs intend that Google rely on this promise?

   YES____ NO____

*If you answered "No," then stop and consider the next claim.  If you answered "yes," continue to Question 16.*

16.   Did Google reasonably rely on this promise?

   YES____ NO____

*If you answered "yes," then stop here and consider the next claim.  If you answered "no," continue to Question 17.*

17.   Did the Match Plaintiffs perform the promised act?

   YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 18.*

18.   Was Google's reliance on the Match Plaintiffs' promise a substantial factor in causing harm to Google?

   YES____ NO____

***If you answered "No," then stop here and consider the next claim.  If you answered "yes,"
continue to Question 19.***

19.    What are Google's damages from the Match Plaintiffs' false promise?

$ _____

## Google's Breach of the Implied Covenant of Good Faith and Fair Dealing Counterclaim Against the Match Plaintiffs

***If you awarded damages against the Match Plaintiffs on Google's false promise counterclaim, then you should skip this counterclaim.***

20.    Did Google and the Match Plaintiffs enter a contract?

              YES____ NO____

*If you answered "No," then stop here and consider the next claim. If you answered "yes," continue to Question 21.*

21.    Did the Match Plaintiffs unfairly interfere with Google's right to receive the benefits of the contract?

              YES____ NO____

*If you answered "No," then stop here and consider the next claim. If you answered "yes," continue to Question 22.*

22.    Was Google harmed by the Match Plaintiffs' interference?

              YES____ NO____

*If you answered "No," then stop here and consider the next claim. If you answered "yes," continue to Question 23.*

23.    What are Google's damages from the Match Plaintiffs' breach of the implied covenant of good faith and fair dealing?

              $ _____

**Google's Quasi-Contract/Unjust Enrichment Counterclaim Against Epic**

24.   Did Epic receive a benefit in connection with its use of the Google Play store?

YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 25.*

25.   Did Epic unjustly retain that benefit?

YES____ NO____

*If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 26.*

26.   What is the dollar value of the benefit that Epic retained?

$ _____

**Google's Quasi-Contract/Unjust Enrichment Counterclaim Against the Match Plaintiffs**

*Only evaluate this counterclaim if you answered "no" to Question 5 on Google's counterclaim against the Match Plaintiffs for breach of contract and Question 20 on Google's counterclaim against the Match Plaintiffs for breach of the implied covenant of good faith and fair dealing. If you answered "yes" to those questions, then you must skip this counterclaim and move to Google's next counterclaim.*

27.    Did the Match Plaintiffs receive a benefit in connection with their use of the Google Play store?

YES____ NO____

*If you answered "No," then stop here and consider the next claim. If you answered "yes," continue to Question 28.*

28.    Did the Match Plaintiffs unjustly retain that benefit?

YES____ NO____

*If you answered "No," then stop here and consider the next claim. If you answered "yes," continue to Question 29.*

29.    What is the dollar value of the benefit that the Match Plaintiffs retained?

$ _____

1

**<u>Prejudgment Interest Against Epic and the Match Plaintiffs</u>**

2

*If you decide that Google is entitled to recover damages for past economic loss for its false promise*

3

*counterclaim against the Match Plaintiffs, then you must decide whether Google should also receive prejudgment interest for its losses.*

4

30.    Is Google entitled to prejudgment interest for its false promise counterclaim against the Match

5

Plaintiffs?

6

YES_____ NO_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Punitive Damages Against the Match Plaintiffs**

***Only answer these questions if you found the Match Plaintiffs liable for Google's false promise counterclaim against the Match Plaintiffs.***

31.   Did the Match Plaintiffs engage in the conduct underlying Google's false promise claim with malice, oppression, or fraud?

       YES\_\_\_\_ NO\_\_\_\_

***If you answered "No," then stop here and consider the next claim.  If you answered "yes," continue to Question 34.***

32.   What amount of punitive damages, if any, do you award Google against the Match Plaintiffs?

       $ _____

Sign and date this Verdict Form and inform the Court that the jury has reached a verdict.

Dated: _____

_____
Foreperson

**Plaintiffs' Argument Re Verdict Form**

Google's Proposed Verdict Form is 32 pages long and would require the jury to agree unanimously on answers to over 100 questions (91 numbered questions plus additional subparts). This proposal is unworkable, the questions are inaccurate as a matter of law, and Google improperly seeks to prevent the jury from fully considering Plaintiffs' claims. Google's proposal is far more likely to result in a hung jury or an incomplete verdict than a final resolution of this case. It should be rejected.

Rather than straightforwardly asking the jury whether the parties have proven each of their claims (as Plaintiffs' proposed form does), Google's form would require the jury to deliver unanimous answers to many dozens of confusing subsidiary factual questions. In many instances, ***even when an answer to Google's proposed question is not dispositive***, Google's proposal instructs the jury that an answer in Google's favor requires the jury to stop its consideration of that claim. For example, in the sections concerning Plaintiffs' monopolization claims, Google proposes asking "whether Plaintiffs have proven the existence of a product market that plaintiffs have defined as the Android App Distribution market" and whether that "market includes the entire world except for China". If the jury answers "no" to either question, Google instructs the jury to skip to the next claim. But even if a jury finds a different market than contended by Plaintiffs, the jury must still consider the remaining elements of Plaintiffs' monopolization claims. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 978 n.9 (9th Cir. 2023) (rejecting the "radical argument that . . . the case immediately ends if the district court finds the record supports the defendant's proposed market (or a third in-between market, as was the case here)"). For example, a finding that the markets implicated here are limited to the United States (as Google contends) would not end the case. Google's form is replete with this type of error.

Google's proposed form is a recipe for a hung jury even where the jury could and should deliver a unanimous verdict in Plaintiffs' favor. To take another example of error, Google's form requests that the jury separately assess Google's conduct under a slanted and at times inaccurate recitation of steps in the rule of reason. *See, e.g.*, Google's Question Nos. 3-6, 25-28. Per Google's form, the jury must deliver a unanimous answer to each subsidiary question, and failure to answer unanimously (in any direction) would result in a failure to resolve Plaintiffs' claims. The law does not require that result. *See Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002) (juries are not

1   required to "reach unanimous agreement on all the 'preliminary factual issues that underlie the verdict"

2   only "the ultimate issues").  Google's proposal would prevent the jury from returning a verdict even

3   when they unanimously agree on the "ultimate issues", contrary to well established law and common

4   sense.  For example, some jurors may decide that Google has not proven procompetitive benefits, other

5   jurors may decide that all proven benefits could be achieved through less restrictive alternatives, while

6   other jurors may decide that, regardless of the answer to the other questions, the harms outweigh any

7   benefits.  Because all of these jurors would agree that Plaintiffs have proven their claims under the rule

8   of reason, such a jury could and should return a verdict in Plaintiffs' favor.  Courts hearing antitrust

9   claims have simply asked juries whether Plaintiffs have proven their rule of reason claims by *any*

10  alternative method.  *See, e.g.*, Verdict Form, *In re HIV Antitrust Litig.*, No. 19-cv-02573-EMC, Dkt.

11  No. 2057, at Question 4 (N.D. Cal. July 30, 2023) ("did the Plaintiffs do at least one of the following").

12      Google's proposed form also improperly narrows the claims.  For example, Google instructs

13  jurors that they cannot find Google's Payments Policy to be unlawful under Plaintiffs' Section 1 claims

14  "[i]f you did not find the Payments Policy to be unlawful when you considered plaintiffs' Section 2

15  claims".  That is wrong:  the jury may properly find a Section 1 tying violation without finding that

16  Google engaged in illegal monopolization.  *See, e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*,

17  504 U.S. 451, 481 (1992) ("Monopoly power under § 2 requires, of course, something greater than

18  market power under § 1.").  Google also entirely omits Plaintiffs' *per se* tying claim.

19      The Court should therefore reject Google's proposed special jury findings.  *See Floyd v. Laws*,

20  929 F.2d 1390, 1396 (9th Cir. 1991) ("[T]he [trial] court has complete discretion over whether to have

21  the jury return a special verdict or a general verdict.").  Courts have used general verdict forms like

22  Plaintiffs' proposed form in antitrust jury trials.  *See* Verdict Sheet, *Angiodynamics, Inc. v. C.R. Bard,*

23  *Inc.*, No. 17-cv-00598-BKS-CFH, Dkt. No. 474 (N.D.N.Y. Oct. 6, 2022).  If, however, the Court

24  requests that the jury deliver special findings as proposed by Google, Google's form contains

25  numerous other legal errors that cannot be addressed in these two pages.  Plaintiffs therefore

26  respectfully request an opportunity to address these other errors if the Court decides to use a special

27  verdict form according to the structure proposed by Google.

28

1

2

**Defendants' Argument Re Verdict Form**

3

Both sides agree that the jury should return specific findings rather than render a general

4

verdict.  But Plaintiffs' verdict form does not ask the jury to answer the specific questions that the

5

Supreme Court and the Ninth Circuit have instructed must be answered before finding liability in an

antitrust case.  Plaintiffs' form is incomplete, confusing, and would impede review.

6

A verdict form must be "adequate to obtain a jury determination of the factual issues essential to

7

judgment." *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990); *Saman v. Robbins*, 173 F.3d 1150,

8

1155 (9th Cir. 1999).  Courts should "submit questions or interrogatories covering all the issues raised

9

by the pleadings," "especially when requested [] to do [so.]" *Tillman v. Great Am. Indem. Co. of N.Y.*,

10

207 F.2d 588, 593 (7th Cir. 1953).  Courts frequently opt for detailed forms in antitrust cases.  *E.g.*, *MCI*

11

*Commc'ns Corp. v. Am. Tel. and Tel. Co.*, 708 F.2d 1081, 1093 (7th Cir. 1983) (upholding "special

12

verdict form [that] required the jury to make a separate finding of liability as to each of the fifteen

13

charges"); *Sidibe v. Sutter Health*, No. 3:12-cv-04584-LB, ECF No. 1530 (N.D. Cal. Mar. 11, 2022)

14

(verdict form asking for element-by-element factual findings in antitrust case); *In re: HIV Antitrust Litig.*,

15

No. 3:19-cv-02573-EMC, ECF No.  2057 (N.D. Cal. June 30, 2023) (same); *Costco v. Au Optronics*,

16

No. 2:13-cv-01207-RAJ, ECF No. 628 (W.D. Wash. Oct. 23, 2014) (same).

17

Plaintiffs' form improperly permits the jury to find liability without answering predicate

18

questions for liability recognized by Supreme Court and Ninth Circuit precedent.  For example, "[a]

19

threshold step in any antitrust case is to accurately define the relevant market." *FTC v. Qualcomm Inc.*,

20

969 F.3d 974, 992 (9th Cir. 2020).  Google's verdict form asks a threshold question about the relevant

21

market, but Plaintiffs' form does not.  Similarly, the Ninth Circuit has identified a "three-part burden-

22

shifting test under the rule of reason," *id.* at 991, but Plaintiffs' verdict form collapses all three parts into

23

a single question—along with the issue of market definition and monopoly power.  The form accordingly

24

does not ensure that the jury will evaluate all "factual issues essential to judgment."

25

In addition, Plaintiffs' form will confuse the jury.  In Plaintiffs' words, the case involves a

26

"complicated web of anticompetitive contractual and technological restrictions" spanning more than a

27

decade against the background of a complicated legal framework.  3:21-md-02981-JD, ECF  No. 548, at

28

2, 7.  But Plaintiffs' vague form will leave the jury to sort through hundreds of pages of jury instructions

and match those instructions to Plaintiffs' ill-defined questions on their own.  Google's form, on the other hand, disentangles the "web" guides the jury through the required analysis in a way that comports with the jury instructions.

Further, by lumping together all of the issues and elements of Plaintiffs' antitrust claims, Plaintiffs' verdict form will obscure the jury's findings in ways that will impede appellate review.  "[I]n large and complex cases such as this, involving many novel legal issues, the better practice would [be] to require special verdicts or the submission of interrogatories to the jury pursuant to Fed. R. Civ. P. 49. "  *Pac. W. Cable Co. v. City of Sacramento*, 672 F. Supp. 1322, 1326-27 (E.D. Cal. 1987).  If this case is reviewed, "the already difficult task of reviewing a case of this magnitude [will be] eased" if the court "kn[ows] precisely what the jury's findings [are] on several specific factual issues."  *Id.*  Plaintiffs' form will preclude any understanding of the jury's findings on particular and potentially dispositive issues such as the relevant product market—which was decisive in *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)—or the lack of substantially less restrictive alternatives to the challenged conduct—which was important to the Ninth Circuit's decision in *Epic v. Apple*, 67 F.4th 946 (9th Cir. 2023).

Plaintiffs asserted that Google's form improperly suggested that jurors must be unanimous on the elements of the claim.  But Courts regularly require unanimity for all questions on a verdict form.  *E.g. In re Capacitors Antitrust Litig.*, No. 3:17-cv-07046-JD, ECF No. 381 (N.D. Cal. May 22, 2023); *U.S. Airways, Inc. v. Sabre Holdings, Corp.*, 1:11-cv-02725, ECF No. 1208 (S.D.N.Y. May 19, 2022). Plaintiffs have not shown any reason to depart from that practice here.

Finally, Plaintiffs' verdict form suggests that the jury should not reach Google's contract-based counterclaims if it finds in favor of Plaintiffs on any of their antitrust claims. That is not the law.  *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959); *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 699-700 (6th Cir. 2017).

| | |
|---|---|
| DATED:  October 16, 2023 | CRAVATH, SWAINE & MOORE LLP |
| | Christine Varney *(pro hac vice)* |
| | Gary A. Bornstein *(pro hac vice)* |
| | Timothy G. Cameron *(pro hac vice)* |
| | Yonatan Even *(pro hac vice)* |
| | Lauren A. Moskowitz *(pro hac vice)* |
| | Justin C. Clarke *(pro hac vice)* |
| | Michael J. Zaken *(pro hac vice)* |
| | M. Brent Byars *(pro hac vice)* |

FAEGRE DRINKER BIDDLE & REATH LLP
 Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: _*s/ Gary A. Bornstein*_____
 Gary A. Bornstein

*Counsel for Plaintiff Epic Games, Inc.*

DATED:  October 16, 2023    HUESTON HENNIGAN LLP
 Douglas J. Dixon
 Christine Woodin
 Joseph A. Reiter

Respectfully submitted,

By: _*s/ Douglas J. Dixon*_____
 Douglas J. Dixon

*Counsel for Plaintiffs Match Group, LLC et al.*

DATED:  October 16, 2023    MUNGER, TOLLES & OLSON LLP

By: _*s/ Glenn D. Pomerantz*_____
 Glenn D. Pomerantz
 *Attorneys for Defendants Google LLC et al.*

DATED:  October 16, 2023    MORGAN, LEWIS & BOCKIUS LLP

By: _*s/ Brian C. Rocca*_____
 Brian C. Rocca
 *Attorneys for Defendants Google LLC et al.*

1

2

**E-FILING ATTESTATION**

I, Rebecca L. Sciarrino, am the ECF User whose ID and password are being used to file this

document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories

identified above has concurred in this filing.

   *s/ Rebecca L. Sciarrino*
   Rebecca L. Sciarrino

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28