Pages 1 - 45

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

```
 In Re:  Google Play Store     )
 Antitrust Litigation,         )
                               )
                               )     NO. 3:21-md-02981-JD
                               )
_____)
```

San Francisco, California
Thursday, October 12, 2023

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff State of California:

        OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA
        California Department of Justice
        455 Golden Gate Avenue, Suite 11000
        San Francisco, CA 94102
    **BY:  PAULA BLIZZARD**

For Plaintiff Epic Games:

        CRAVATH, SWAINE & MOORE
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
    **BY:  GARY BORNSTEIN**

For individual plaintiffs:

        BARTLIT BECK LLP
        1801 Wewatta Street, Ste. 1200
        Denver, CO 80202
    **BY:  KARMA MICAELA GIULIANELLI**

Reported By:      Rhonda L. Aquilina, CSR #9956, RMR, CRR
        Official Court Reporter

UNITED STATES COURT REPORTERS

```
APPEARANCES cont'd.

For Defendants:
                    MUNGER, TOLLES & OLSON
                    350 South Grand Avenue, Fiftieth Floor
                    Los Angeles, CA 90071-3426
            BY:  GLEN POMERANTZ
                 KURUVILLA OLASA


                    MUNGER, TOLLES & OLSON, LLP
                    560 Mission Street, 27th Floor
                    San Francisco, CA 94105
            BY:  DANE SHIKMAN

                    MUNGER, TOLLES & OLSON, LLP
                    601 Massachusetts Avenue, NW Ste. 500E
                    Washington, DC 20001-5369
            BY:  JONATHAN KRAVIS


For Defendant Google:
                    MORGAN LEWIS
                    One Market - Spear Street Tower
                    San Francisco, CA 94105-1596
            BY:  BRIAN C. ROCCA
                 MICHELLE PARK CHIU

For Match Group LLC:
                    HUESTON HENNIGAN, LLP
                    620 Newport Center Drive, Ste. 1300
                    Newport Beach, CA 92660
            BY:  DOUGLAS DIXON

For Defendant Apple:


                    GIBSON, DUNN & CRUTCHER
                    333 S. Grand Avenue
                    Los Angeles, CA 90071
            BY:  JAGANNATHAN SRINIVASAN

For the States:

                    OFFICE OF THE UTAH ATTORNEY GENERAL
                    160 East 300 South, 5th Floor
                    Salt Lake City, UT 84114
            BY:  BRENDAN PATRICK GLACKIN
```

| | |
|---|---|
| 1 | <u>Tuesday - October 12, 2023</u>                              <u>11:27 a.m.</u> |
| 2 | P R O C E E D I N G S |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling Civil 20-5671 Epic Games, Inc. |
| 5 | versus Google LLC; Civil 20-5761, In Re Google Play Consumer |
| 6 | Antitrust Litigation; Civil 21-5227, State of Utah versus |
| 7 | Google, LLC; 21 multi district 2981, In Re Google Play Store |
| 8 | Antitrust Litigation, and 22-2746, Match Group LLC versus |
| 9 | Google LLC. |
| 10 | Counsel. |
| 11 | **MS. BLIZZARD:**  Good morning, Your Honor.  Paula |
| 12 | Blizzard for the state of California and 52 of my fellow |
| 13 | attorneys general. |
| 14 | **MR. DIXON:**  Good morning, Your Honor.  Doug Dixon, |
| 15 | Hueston Hennigan for Match Group. |
| 16 | **MR. BORNSTEIN:**  Good morning.  Gary Bornstein for Epic |
| 17 | Games. |
| 18 | **MR. GLACKIN:**  Good morning, Your Honor.  Brendan |
| 19 | Glackin for the states. |
| 20 | **MS. GIULIANELLI:**  Good morning, Your Honor.  Karma |
| 21 | Giulianelli for the individual plaintiffs. |
| 22 | **MR. POMERANTZ:**  Good morning, Your Honor.  Glenn |
| 23 | Pomerantz on behalf of Google.  At counsel table with me from |
| 24 | our firm are Kuruvilla Olasa, Dane Shikman, and Jonathan |
| 25 | Kravis. |

UNITED STATES COURT REPORTERS

1          MR. ROCCA:  Good morning, Your Honor.  Brian Rocca and

2   Michelle Park Chiu for Google.

3          THE COURT:  Let's hear about the big news.

4          MR. SRINIVASAN:  One second, Your Honor.  I'm sorry,

5   this is Jay Srinivasan.  I'm here for Apple, a third party?

6          THE COURT:  Oh, yes, we'll do that in just a moment.

7   Please sit right over there.

8          MR. SRINIVASAN:  Thank you.

9          THE COURT:  Okay.  What's happening on the settlement

10  front?

11         MS. BLIZZARD:  Good morning, Your Honor.  I am here

12  with good news.

13         THE COURT:  Okay.

14         MS. BLIZZARD:  So you --

15         THE COURT:  It's hard to visualize until I see it, but

16  I'm happy to hear it.

17                        (Laughter)

18         MS. BLIZZARD:  You expressed some concern at the last

19  status conference that in these divisive times you weren't sure

20  if 52 attorneys general could agree on it, so I am delighted to

21  tell you that we have done you one better.  We have 53

22  attorneys general.

23         THE COURT:  Who is the new person?

24         MS. BLIZZARD:  We've added the Virgin Islands, Your

25  Honor.

```
 1            We have all 50 states.  We have the District of
 2   Columbia.  We have Puerto Rico, and we've added the Virgin
 3   Islands.  So we have 53 attorneys general representing all of
 4   their citizens who have reviewed the agreement, and I am here to
 5   give you as you requested --
 6            THE COURT:  What happened to Guam?  What about Guam?
 7            MS. BLIZZARD:  Guam did not decide to join, Your
 8   Honor.  We made an attempt with all the territories.
 9            THE COURT:  Are they opting out?
10            MS. BLIZZARD:  I don't know.  I do not -- I'm not here
11   to represent Guam, we'll have to see.
12            THE COURT:  Saipan?
13                           (Laughter)
14            MS. BLIZZARD:  I don't know.
15            THE COURT:  I'm thinking of all the Article 4 courts.
16            Okay.  So that's great, so it's signed, it's done and
17   it's --
18            MS. BLIZZARD:  Yes.  So I am here with a rock-solid
19   representation, just what you requested.
20            THE COURT:  When will I see the settlement?
21            MS. BLIZZARD:  So, Your Honor, as you know, we -- this
22   includes parens patriae claims; therefore, we have to give
23   notice, and at that time we will attach the settlement
24   agreement.  We are preparing that.
25            Obviously, Your Honor asked us to also keep preparing
```

1  for trial, so for the past month we've had a whole team still

2  doing trial things.  We are, unfortunately, not ready to give

3  you that motion for notice.

4        **THE COURT:**  When will that be filed?

5        **MS. BLIZZARD:**  Your Honor, we'd like to have -- get it

6  done by Thanksgiving.  We'd like six weeks.  We have just gone

7  through a process to get all of these attorneys general --

8        **THE COURT:**  Why will it take six weeks?

9        **MS. BLIZZARD:**  Your Honor, I think because we all

10 think it's very important because there is money here going

11 back to consumers.  You have expressed concerns, my own

12 attorney general has expressed concerns that the claim rate or

13 the number of people that get their money has to be high, and

14 we want to get it right.  We have been working on it, but as I

15 said, until you vacate the trial date, which I'm hoping you do

16 today --

17       **THE COURT:**  I'll need to approve the *parens patriae*

18 settlement, right?

19       **MS. BLIZZARD:**  Excuse me?  You need to approve, yes.

20       So under -- the states are bringing both federal

21 claims as well as state claims.  Under the federal claims you

22 have to approve *a parens patriae* settlement --

23       **THE COURT:**  It's just I'm uncomfortable having a trial

24 and at the end of it finding out it's a settlement that I'm not

25 going to approve.  I'm not -- I don't know, that's my lack of

1    comfort:  Is the end a certainty?

2            So can you at least -- there must be -- you signed a

3    binding term sheet, you must have signed something.

4        **MS. BLIZZARD:**  We had pre approval of the term sheet a

5    month ago.  We have now finalized the agreement.  All the Is

6    are dotted, the Ts are crossed, and it has gone all the way to

7    the attorney general level.

8            And, Your Honor, to give you some comfort, right --

9        **THE COURT:**  Why can't I just see it now?  You can just

10   lodge it.  You don't have to file it.  It won't be posted

11   anywhere.

12       **MS. BLIZZARD:**  You'd like it lodged under seal?

13       **THE COURT:**  Do you care, Mr. Pomerantz?

14       **MR. POMERANTZ:**  As long as it's under seal, Your

15   Honor.

16       **THE COURT:**  No, you're lodging it, which means you

17   just literally knocked on my chambers door and handed me a

18   copy.  It's not going to be -- you don't have to worry about

19   sealing.  I'm the only person who is going to see it.  Just

20   hand it to -- if you will figuratively knock on the door, you

21   will literally hand it to someone on the 16th who will then

22   hand carry it to me, and it will not be filed.

23       **MS. BLIZZARD:**  Yes, Your Honor.  We're happy to do

24   that.

25       **THE COURT:**  And I understand what you're asking, and I

```
 1   have no reason to gainsay it, but I have not approved a number
 2   of settlements because I have developed a keen sense of
 3   responsibility for the absentee, in this case state citizens,
 4   and I will sleep a lot better if I at least see it and overtly
 5   it doesn't cause me any heartburn, okay?
 6            MS. BLIZZARD:  That's fine, Your Honor.
 7            THE COURT:  So why don't you lodge it, all right?
 8   I'll tell you what, I'm going to make a special exception.  Who
 9   is going to do that, Mr. Pomerantz or you?  You?
10            MS. BLIZZARD:  I'll do it.
11            THE COURT:  Okay.  Are you across the street?
12            MS. BLIZZARD:  I am.
13            THE COURT:  Okay.  If you want to do this, we'll do a
14   special deal, one time only just for you.  You or someone from
15   your office can come up to my chambers door tomorrow, okay, and
16   just drop it off, all right?
17            MS. BLIZZARD:  Okay.
18            THE COURT:  You don't have to go to the clerk's
19   office.
20            MS. BLIZZARD:  Will do.
21            THE COURT:  One copy, and make sure it's signed by
22   everybody.  I'm going to see a Google signature on it, and
23   everybody else.  Do you have that?
24            MS. BLIZZARD:  Yes.  Your Honor, the way it works is
25   that we get written authorization from each attorneys general,
```

1    their office.  They then dictate who has authority to sign and

2    grant us authority to affix a signature, but we have all the

3    approvals.

4              **THE COURT:**  I'll tell you what, I will accept your

5    representation and hold you liable for this, but I will accept

6    your representation that everyone is agreed.  I just want to

7    see the terms, okay?

8              **MS. BLIZZARD:**  Yes.

9              **THE COURT:**  And Google's signature.

10             **MR. POMERANTZ:**  Your Honor, our signature is also in

11   the process of being gathered.  You have my word that all of

12   the relevant people in Google have approved the terms of the

13   settlement that you will see in the document.

14             **THE COURT:**  It's a hundred percent certain they're

15   going to sign, do you know?

16             **MR. POMERANTZ:**  Yes, sir.  Yes, Your Honor.

17             **THE COURT:**  Just make sure you agree on the proper

18   document, okay?  I don't want to have any slippage on that.

19   You and Mr. Pomerantz agree, and you can just walk that over

20   tomorrow, okay?

21             **MS. BLIZZARD:**  Yes.

22             **THE COURT:**  Is that going to work?

23             **MS. BLIZZARD:**  It works.

24             **THE COURT:**  Do you want to do it on Monday?

25             **MS. BLIZZARD:**  No, no, tomorrow is fine.  My question

1    is when will the trial date get vacated so I can move those

2    resources that are doing exhibit lists and things to --

3         **THE COURT:**  I will do it first thing in the morning

4    whenever you walk it over, and I'll let you know right after

5    that.

6         **MS. BLIZZARD:**  All right.  Do you need a proposed

7    order or anything?

8         **THE COURT:**  No, you're handing over the term slip.

9    I'm going to go in my office, close the door, look at it, and I

10   would post a text order.

11        **MS. BLIZZARD:**  Post a text order.  Okay.  Thank you.

12        **THE COURT:**  The text order will say one of two things:

13   See you on November 6th or your remaining dates are vacated.

14        Now, what about the consumers?

15        **MS. GIULIANELLI:**  Good morning, Your Honor.

16        The individual plaintiffs have also approved and

17   signed the settlement.

18        **THE COURT:**  Same thing?

19        **MS. GIULIANELLI:**  Exact same agreement, so we all

20   entered into the agreement jointly.

21        **THE COURT:**  One agreement for everybody?

22        **MS. GIULIANELLI:**  One agreement for everybody.

23        **THE COURT:**  So you will be a part of this?

24        **MS. GIULIANELLI:**  Correct, we are part of this and

25   have all signed off on it.

1          **MR. POMERANTZ:**  Your Honor, if I may briefly address

2     the timing of the agreement to the motion for approval of the

3     notice to the consumers.

4          **THE COURT:**  So the idea is what, November 26th or

5     something like that?

6          **MS. BLIZZARD:**  Yes.

7          **MR. POMERANTZ:**  Your Honor, we are concerned about all

8     of this being public in the middle of a jury trial, if there is

9     a jury trial, which is the issue we'll discuss later.  But

10    assuming there was a jury trial, we would prefer that either

11    this motion gets filed before the trial that would begin so

12    that Your Honor can inquire during voir dire to make sure there

13    has been nobody who has read it or that it's filed after the

14    jury has reached a verdict so that we don't have the risk of a

15    juror reading about it, researching it, or anything like that,

16    but we would just ask for one or the other.

17         **THE COURT:**  Well, we should be done by the 26th.

18         **MR. POMERANTZ:**  That's not the time estimate right

19    now.  It's something that we can discuss with Epic and Match's

20    counsel.  But the time estimate right now would push the trial

21    into December, and so we would just ask that it either be --

22    and I understand that the states would want it -- I don't think

23    they care if it's a little bit later, from our discussions.  So

24    we would just ask that we be allowed to file that motion after

25    the trial, after the jury reaches its verdict.

1      **MS. BLIZZARD:**  We agree, Your Honor.  We respectfully

2    request that we need until just before Thanksgiving,

3    November 26th, and if that somehow causes concern with the

4    trial and you would like to delay it, we are fine with that

5    also.

6      **THE COURT:**  Well, I do think it's a little risky to

7    have partial settlements floating around during a trial.  So

8    I'm amenable to that, that's fine.

9      We have to be done by the end of -- I don't know what

10   you all have in mind.  I gave you time limits, and those time

11   limits were based on starting the 6th, we're going to go through

12   Tuesday at 5 o'clock, and last day of the week we'll be done,

13   and now we have half the case.  So we're not, you know, this is

14   going to be done.

15     Anyway... okay.  So what time roughly tomorrow?  I'm

16   not tying your hands to what time roughly tomorrow, just so we

17   can be ready?  Let's just set a time.  Can you do it at

18   10:00 o'clock?

19     **MS. BLIZZARD:**  Yes, let's say 10:00 o'clock.

20     **THE COURT:**  All right.  We will be waiting.

21     Okay.  All right.  Let's talk about these two things

22   first, trial witnesses, and then we'll talk about other issues.

23     Let's see, Karson Oliver.  Apple.  Yes.

24     **MR. SRINIVASAN:**  Good morning, Your Honor.

25     Your Honor, so there's really one issue here or one

```
 1   issue that Google has said why Mr. Oliver should be appearing at
 2   trial, and of course our position is he shouldn't.  They say
 3   they need him because they want to show competition between
 4   Google and Apple.  They say two things, there's two problems
 5   with it.  On one hand they say this is just public material
 6   that's already out there about Apple and Google competing, in
 7   which case, as we briefed Your Honor, it is entirely unnecessary
 8   and duplicative, Mr. Oliver's testimony that is.  In other
 9   words, that public information, they have not only public
10   information --
11        THE COURT:  That's not going to go anywhere.  Right
12   down the street, okay, do you know -- didn't Tim Scott testify
13   in the other case?
14        MR. SRINIVASAN:  It wasn't Mr. -- it was Mr. -- two
15   other executives say it wasn't Mr. Cook in the --
16        THE COURT:  Did Mr. Cook testify?
17        MR. SRINIVASAN:  He didn't, Your Honor.  In that case
18   there was -- at issue in that case was a Google/Apple agreement
19   in which Apple was a party and therefore testimony was
20   required.
21        Let me cut to the other reason why.  The reason why is
22   Mr. Oliver is not going to be asked just about public
23   information.  He is going to be asked about Apple confidential
24   sensitive material, and I can tell you exactly why that is.  We
25   know that because -- and by the way, just before I get there,
```

1    that's, of course, subject to Rule 45(d), (b) and (c) which

2    says if you are implicating confidential material of a party,

3    you must show a substantial need for that testimony.

4            And why we know it's not just public information, Your

5    Honor, is I think it's in the papers, Google has asked Apple to

6    certify 18 documents that we produced.  We produced over

7    200,000 documents as a third party in this case.  They said

8    please certify 18 documents.  We said we'll do that --

9            **THE COURT:**  Well, let me just -- I don't understand

10   what the problem is.  He's down the street.  He has about an

11   hour of testimony.  What is the problem?

12           **MR. SRINIVASAN:**  The problem is --

13           **THE COURT:**  You know there are tons of loose ends and

14   getting ready for trial is maybe one of them.  That's not a big

15   deal, just get it done.  So what is the issue?  I don't see

16   any --

17           Look, I know you don't want to be here, but, you know,

18   you're here, so what do you want me to do?  I mean, I don't see

19   any reason to say that they can't do this.

20           **MR. SRINIVASAN:**  Well, we don't think it's going to be

21   45 minutes, Your Honor.  That's just Google's estimate.

22           **THE COURT:**  That's just me estimating.  It's a

23   non-binding estimate.

24           **MR. SRINIVASAN:**  I understand.

25           **THE COURT:**  Even if it's two hours, okay, what's the

```
1    problem?
2              MR. SRINIVASAN:  Well, you know, we put it in our
3    papers, Your Honor.  In other words, it's not just a day of
4    testimony, it's a day of trial testimony that --
5              THE COURT:  It's not a day.  I can guarantee you it's
6    not going to be a day of testimony.  They don't have any time
7    for that.  Mr. Oliver at Apple is not going to be even close to
8    a day of testimony because that would be about a third or a
9    quarter of their allotted time.  So it's going to be an hour
10   maybe, maybe a little bit more, maybe less, who knows.  I'll
11   give you half a day, I'll give you that, only half a day depo.
12   Who wants to do the depo?  Does Google want to do the depo?
13   Who wants to do the depo?
14             MR. KRAVIS:  I believe it's my friends at Epic.
15             THE COURT:  Epic wants to do the depo.  I'll give you
16   4 hours, just getting a preview of what Mr. Oliver is going to
17   say.  What more do you want?
18             MR. SRINIVASAN:  If Your Honor, as I said --
19             THE COURT:  I'm not going to say no.  He's here, and
20   he's going to testify.
21             MR. SRINIVASAN:  Understood, Your Honor, and I
22   appreciate Your Honor's limiting the deposition to just 4
23   hours.
24             THE COURT:  Well, let me just ask, is that realistic?
25   Are you okay with that?
```

1          **MR. BORNSTEIN:**  Your Honor, we do have the separate

2     motion under Rule 37 to preclude Mr. Oliver's testimony in its

3     entirety in light of the disclosure failures on Google's side.

4     It's a separate issue from the one --

5          **THE COURT:**  No, I know.  Mr. Bornstein, I mean, you're

6     going to have an issue one day where you're going to come in

7     and say you want to do something and maybe all the Is weren't

8     dotted and all the Ts weren't crossed.  It's trial.  I said

9     this many times, it's going to be a little bit of both, you

10    know, somebody walking in at the wrong time, somebody not

11    walking in at the right time.  You just gotta get it done,

12    okay?  I'm not going to throw out a key witness.

13         There's no doubt in my mind that Apple is going to be

14    an illuminating witness, very likely, maybe not, but very

15    likely.  And to say that Google was a little bit late in telling

16    you about it, which I'm not even sure is true, it's not like

17    Mr. Oliver dropped out of the sky unknown to anyone and is now

18    making, you know, a literally meteoric appearance that's going

19    to destabilize the universe.  You know about him, he's been

20    around, Apple is in the air, so it's going to happen.

21         So the question is, is 4 hours going to be enough?  Is

22    it just you asking him questions?

23         **MR. BORNSTEIN:**  It will be someone on my team as well

24    as the folks on the Match team.

25         **THE COURT:**  All right.

1       **MR. BORNSTEIN:**  So we're happy to split the time.

2       **THE COURT:**  Couple hours each?

3       **MR. BORNSTEIN:**  For a full-day deposition.

4       **THE COURT:**  Full day?  What are you going to ask this

5  guy?

6       **MR. BORNSTEIN:**  Well, Your Honor, we're having a

7  witness come, what are we seven, we're four weeks now before

8  trial.

9       **THE COURT:**  Yes.

10      **MR. BORNSTEIN:**  Who is --

11      **THE COURT:**  Listen, I've had depositions taken during

12  trials, so don't play the timecard.

13      **MR. BORNSTEIN:**  Your Honor, nobody from Apple has been

14  deposed in this case.  My friends at Google say:  Well, you

15  deposed him last time.  Obviously, we have a protective order.

16  We can't violate that and use our deposition from the prior

17  litigation before Judge Gonzalez-Rogers.

18      **THE COURT:**  I understand, but you took that

19  deposition, didn't you?

20      **MR. BORNSTEIN:**  I'm sorry, Your Honor?

21      **THE COURT:**  You took that deposition, didn't you?

22      **MR. BORNSTEIN:**  Well, I personally did not take the

23  deposition of Mr. Oliver.  Someone on my team took that

24  deposition.  Ms. Moskowitz took that.

25      **THE COURT:**  Ms. Moskowitz.  She's on the trial team

```
1    here.

2         MR. BORNSTEIN:  She is on the trial team, but that is

3    information that we had and the deposition we had in the case

4    that's subject to a protective order.  We can't reuse that.

5         THE COURT:  No, I understand, but it's not like

6    they're writing on a blank slate.

7         MR. BORNSTEIN:  Well, Your Honor, we are writing on a

8    blank state in this case where there has been no Apple witness

9    who has been deposed at all.  If this was such a critical issue

10   for Google to present an Apple witness to the Court, there

11   would have been notice at some point in the past that an Apple

12   witness, a specific Apple witness was going to be coming.

13   There would have been a deposition.  This is, in fact, a new

14   introduction into the litigation, Your Honor.

15        THE COURT:  All right.  Google?

16        MR. KRAVIS:  Good morning, Your Honor.

17        To start with my colleague from Epic's argument,

18   Google properly disclosed this witness.  We listed Apple as a

19   corporate entity with relevant information in our initial

20   disclosures, as Epic did with respect --

21        THE COURT:  Why didn't you do this earlier?  Okay.  I

22   mean, I understand that your thing has always been an open book

23   on Apple and you didn't do anything.  Why didn't you do it

24   earlier?

25        MR. KRAVIS:  Well, Your Honor, we started in early
```

1    June communications with Apple about identifying a witness who

2    would appear voluntarily at trial.  Those discussions continued

3    up until September 11th.  On September 11th when Apple finally

4    told Google the answer is no, we're not going to give you the

5    name of a voluntary witness, we promptly disclosed Mr. Oliver

6    to the plaintiffs, and we issued a subpoena for him within --

7            **THE COURT:**  What was Apple telling you?

8            **MR. KRAVIS:**  Those conversations began between

9    Google's outside counsel and Apple's outside counsel.  At

10   Apple's counsel suggestion, those conversations moved to the

11   in-house counsel level, and then there was subsequent -- this

12   is all detailed in the declarations we filed.  There was

13   subsequent communications between in-house counsel --

14           **THE COURT:**  You're saying Apple led you along and then

15   pulled the rug out from under you?

16           **MR. KRAVIS:**  Well, I just want to be clear about this.

17   Apple has always expressed a reluctance to identify a witness

18   who would testify voluntarily.  However, this was the subject

19   of ongoing conversations in which --

20           **THE COURT:**  I understand, but why didn't you drop the

21   hammer in July then?  I mean, why did you give these guys such

22   a long time to equivocate?

23           **MR. KRAVIS:**  Well, the argument of it was that the

24   deadline for making this decision was the final exchange of the

25   witness list, and while we were prepared, as we did, to pick a

1   witness on our own and subpoena them, our preference obviously

2   was to work with Apple to identify a witness voluntarily, and

3   it was only when we got a final answer on September 11th that

4   Apple was not going to do that, that we took the next step of

5   identifying the witness ourselves, disclosing them to

6   plaintiffs, and then issuing a subpoena --

7          **THE COURT:**  Let me ask you this, how long -- I'm not

8   going to tie your hands, but just give me a rough sense of how

9   much time you intend to spend with Mr. Oliver at trial?

10         **MR. KRAVIS:**  I think the Court's estimate of 45

11  minutes is the right ballpark.

12         **THE COURT:**  Okay.

13         **MR. SRINIVASAN:**  Your Honor, if I could just be heard

14  just a little bit on that.  We never equivocate.  We said in

15  June we will not produce the witness.  They came back and said,

16  well, what about this person, what about that.  No, we will not

17  produce a witness.

18         **THE COURT:**  Your colleague says differently.  He says

19  that you strung him along and then sucker punched him right at

20  the end.

21         **MR. SRINIVASAN:**  I understand, Your Honor.  I was the

22  one that -- I was personally the person on the phone talking,

23  not to the gentleman here, but his colleagues --

24         **THE COURT:**  So you're saying from day one you're

25  saying this is not happening voluntarily?

1          **MR. SRINIVASAN:**  From day one I said that we will not

2    do this voluntarily.  At some point I did suggest, look, you're

3    not getting anywhere with me.  If your client wants to talk to

4    my client and convince him otherwise, feel free.  But the

5    message was always clear that there would be no -- we would not

6    voluntarily submit a witness for this trial, and that's always

7    been our position, number 1.

8          And what's concerning to me is their delay is now

9    impinging on my client, Mr. Oliver -- I understand, Your Honor,

10   you feel like he should be here at trial, but at a minimum he

11   should --

12         **THE COURT:**  I'll deal with that.

13         So is that right?  I mean, he's telling me differently

14   that he was crystal clear from day one that it wasn't going to

15   happen.

16         **MR. KRAVIS:**  It was -- Your Honor, it was Apple's

17   outside counsel's suggestion that in-house counsel for the two

18   companies take up this conversation --

19         **THE COURT:**  That's not my question.  My question is

20   did he tell you from day one this is not going to happen

21   voluntarily?

22         **MR. KRAVIS:**  What was communicated to us from Apple's

23   outside counsel was that Apple was not -- did not want to

24   produce a witness voluntarily.  However --

25         **THE COURT:**  All right.  So you knew that in June, so I

1    mean, it changes my understanding a little bit.

2         Now, if that's true, you will have only 45 minutes at

3    trial.  I will not let him testify longer than that, okay?  You

4    can have him in the door, but you're capped at 45 minutes.

5         **MR. KRAVIS:**  We'll do it.

6         **THE COURT:**  That's it.  That will be the compromise.

7    Because it is late, I don't find that there's particularly good

8    clause for either excluding him or for letting Google go longer

9    than that because they dropped the ball.  So 4-hour deposition

10   should be long enough for 45 minutes of testimony.

11        **MR. DIXON:**  Your Honor, if I might address that.  This

12   is a blank slate for Match plaintiffs.  We have not had a

13   chance to depose Mr. Oliver before.  This is really the first

14   time that we're hearing about, of course, the relevance in a

15   very high-level depo.  We would ask for a full day.  We don't

16   have access to the --

17        **THE COURT:**  I'm not going to do a full day.  You

18   had -- you all could have asked for the Apple witness, too.

19   He's on the list.  There's no dispute that Google put Apple on

20   the list.

21        **MR. DIXON:**  Just now, Your Honor.

22        **THE COURT:**  No, no, initial disclosures, and that was

23   what, three years ago, two years ago, some ridiculous amount of

24   time ago.

25        So you can have 4 hours, and you can work it out.  He

1    is a third party.  There are some limits to what I'm going to

2    make him do.

3              Okay.  Now, when are you going to get this done?

4              **MR. SRINIVASAN:**  We have to -- that's part of the

5    problem, is we don't have much time.  We have to talk with

6    Mr. Oliver.  We'll work with counsel to make it happen, Your

7    Honor.

8              **THE COURT:**  Okay.  All right.  That takes care of

9    that.

10             Now, what was the other one?  There was --

11             **MR. BORNSTEIN:**  Mr. Miner Your Honor.

12             **THE COURT:**  Mr. Miner, yes.  Rich Miner, cofounder of

13   Android.  Okay.

14             **MR. BORNSTEIN:**  Correct, Your Honor.  This one is very

15   straightforward from our perspective.

16             During the course of the litigation, the parties have

17   an agreement on a cap of fact depositions of witnesses.  We

18   chose not to take Mr. Miner's deposition at that time.

19   Ms. Giulianelli, who has now left us, she sent a note saying we

20   choose not to depose Mr. Miner at this time.  The parties agreed

21   in the protocol that in the event there was someone identified

22   for trial, there would be an opportunity to take that person's

23   deposition.  That is what we would now like to do.

24             **THE COURT:**  Just like Mr. Oliver.

25             **MR. BORNSTEIN:**  Well, Mr. Oliver was disclosed late,

1    Your Honor.  I don't want to retread ground, but I just heard

2    this information.  Now we know he should have been disclosed

3    earlier.  They were trying to get somebody.  They never told us

4    all that happened.  We were not informed it was happening

5    behind the scenes, and we were the ones who got sucker punched,

6    not Google, by Apple.

7              THE COURT:  And so what would you like to do?

8              MR. BORNSTEIN:  Well, what I'd like to do for Mr.

9    Miner is of course the deposition.  We would like to take the

10   man's deposition like we're entitled to do.

11             The only argument that's been presented on the other

12   side is that a deposition took place of Google under 30(b)(6),

13   not of Mr. Miner.

14             THE COURT:  No, I understand.  We're not going to

15   tapdance on B1 versus B6.

16             Let me ask you, about how much time do you need with

17   him?

18             MR. BORNSTEIN:  We need a day with Mr. Miner.

19             THE COURT:  Another day?

20             MR. BORNSTEIN:  Mr. Miner has been set for 90 minutes

21   of trial testimony by Google.  That's their estimate of how

22   long he'll be on the stand.  And as you said, he is the founder

23   of Android.  They intend to use him, we now know --

24             THE COURT:  The founder of Android and App Store or

25   Play Store is different.  So, I mean, what are you going to ask

1   him?  I mean, we don't need to go through the whole history of
2   Android in this trial.

3        MR. BORNSTEIN:  Well, Your Honor, we don't know what
4   he's going to testify about.  He is, again, he is a blank
5   slate.  This is a brand new person as a trial witness.  If we
6   take his --

7        THE COURT:  You're going to need 7 hours at this point
8   in the case?

9        MR. BORNSTEIN:  I do believe between the two parties
10  we need to have adequate time.  Had we been taking his
11  deposition during the deposition period, of course we would
12  have an adequate time to do that.

13       THE COURT:  He gave a 30(b)(6) depo, didn't he?

14       MR. BORNSTEIN:  No, google gave a 30(b)(6) depo which
15  was limited to two hours on one topic, and that's it, and that
16  was Google, that was not Mr. Miner, and they've told us that
17  his trial testimony will go beyond the scope of that designated
18  topic on which Google was deposed.

19       THE COURT:  Okay.

20       MR. KRAVIS:  Your Honor, I hear the Court's point
21  about tapdancing on Rule 30 depositions.  The Court ordered
22  four hours for that one.  I think that's enough time for Mr.
23  Miner.

24       MR. BORNSTEIN:  Your Honor, that is -- I hate saying
25  this -- apples and oranges, but we are talking --

1          **THE COURT:**  You have been waiting all weekend.

2                      (Laughter)

3         **MR. BORNSTEIN:**  We are talking here about a --

4          **THE COURT:**  All right.  Seven hours, that's it.  Seven

5  hours, but you can beat it.  I have confidence that you can

6  beat it.

7         **MR. BORNSTEIN:**  We will do our very best to be

8  efficient with everybody's time, including our own.

9          **THE COURT:**  You're getting short on time, so when are

10  you going to do all these things?

11         **MR. BORNSTEIN:**  We would like to take Mr. Miner's as

12  soon as we can work out a schedule.

13          **THE COURT:**  Okay.  I think that's it for the motions.

14  Anything else?

15         **MR. POMERANTZ:**  Yes, Your Honor.

16         **MR. BORNSTEIN:**  Correct, Your Honor.

17         **MR. POMERANTZ:**  If I could just raise one issue.  I

18  briefly discussed this yesterday with both Mr. Dixon and

19  Mr. Bornstein.

20         That is that we had previously alerted Your Honor to

21  the trial going on in D.C. in front of Judge Meadow, and we

22  were hopeful it was going to end up taking a little bit shorter

23  than had been projected.  The opposite has occurred, and it is

24  now scheduled to go at least until Thanksgiving.  That overlap

25  has an overlap both of some -- a few witnesses, as well as

1    in-house counsel who are responsible for both cases, and it's

2    hard for them to obviously be in two places at the same time.

3         So we do request, at least if Your Honor would give

4    consideration, to moving this trial from November 6th to the

5    first quarter of 2024.

6         **THE COURT:**  I'm not going do that.  I mean, we can

7    work this out.  People can fly one day in D.C. and one day in

8    San Francisco.  This has been on the deck now for too long.

9    We've known about this trial for too long.

10        As far as I can tell, there's zero overlap

11   substantively, one is search engine and one is Play Store.  I

12   have a high degree of confidence that the business units within

13   Google reflect that.  There may be some overlap at the senior

14   executive level, but in my experience senior executives usually

15   aren't the key witnesses in these cases anyway.

16        And I'm sorry, but in-house counsel is going to have a

17   couple of, you know, rough weeks flying business class from San

18   Francisco to D.C., and so on, but that's the way it's going to

19   be, okay?

20        **MR. POMERANTZ:**  And just so that it's clear, I don't

21   think that's what Google pays for, but okay.

22        **THE COURT:**  I would be surprised if they don't, but

23   I'll take your word for it.

24        **MR. POMERANTZ:**  They don't for me, Your Honor, that's

25   all I can tell you.

```
1              THE COURT:  You're flying from LA.

2              MR. POMERANTZ:  Okay.  Unfortunately I drive from LA,

3    and they all kid me.

4              Second issue, Your Honor, so Your Honor had ordered

5    these three parties now that remain to meet for settlement

6    purposes, senior executives --

7              THE COURT:  Yes, what happened?

8              MR. POMERANTZ:  And it did occur.  It did occur.

9              THE COURT:  Can you remind me, who are you using?

10             MR. POMERANTZ:  No, this was a direct meeting.

11             THE COURT:  Oh, okay.  All right.

12             MR. POMERANTZ:  Principals of all the parties.

13             THE COURT:  Oh, that's right.  Yes, you're right.

14   Yes.  How did that go?  I didn't remember that.

15             MR. POMERANTZ:  And so I don't, you know, want to get

16   into anything substantive.

17             THE COURT:  No. no.

18             MR. POMERANTZ:  After that meeting, which happened a

19   few weeks ago now, discussions with Match continued.  We have

20   not reached a settlement.

21             THE COURT:  With Match?

22             MR. POMERANTZ:  With Match.  Discussions continued.

23   We have not -- there is no settlement reached.  If there ever

24   is a settlement reached, we will immediately notify the Court.

25             THE COURT:  All right.  But you're still talking with
```

1   Match?

2           **MR. POMERANTZ:**  I, I guess because Mr. Dixon and I

3   agreed on what we would disclose and we wouldn't disclose, I

4   would just say if we reached a settlement, we would notify the

5   Court.

6           **THE COURT:**  What about Epic?

7           **MR. POMERANTZ:**  Well, with Epic there was a -- they

8   were there, but that hasn't happened.

9           And the reason why I'm bringing this up is not so

10  much -- well, I wanted to report to the Court we followed -- all

11  of us complied with Your Honor's order.

12          **THE COURT:**  Let me just jump in.  Settlement is

13  totally different, and I'm not involved in it, and I don't

14  intend to be.  I just, I don't understand why this can't -- you

15  know, Google cut its commission down to 15 percent, right?  I

16  mean, that's the rule now for everybody, isn't it?

17          **MR. POMERANTZ:**  No, it varies.  There's a lot of

18  different plans out there, but very few, very view developers

19  at this point pay 30 percent, but there is still a

20  30 percent --

21          **THE COURT:**  There is some movement on the commission

22  side.

23          **MR. POMERANTZ:**  Yes.

24          **THE COURT:**  And things have been evolving, and it's

25  just, you know, I don't know, maybe a little money from a prior

UNITED STATES COURT REPORTERS

1    year.  It's hard for me to see how this is not -- you're both

2    companies, this is business-to-business litigation.  It's

3    just -- I'm going to ask rhetorically, I just don't understand

4    why you can't work this out.

5          MR. BORNSTEIN:  Well, Your Honor, as we've said very

6    publicly, so I don't mind saying again, and I'm not violating

7    any confidences with our agreement, for Epic this is not about

8    money.  Epic is looking to achieve openness on the Android

9    platform for all developers as --

10          THE COURT:  What does that mean, though?

11          MR. BORNSTEIN:  What it means is that if you're a

12   developer who wants to get your apps to users, my android, that

13   you don't have to be intermediated by going through a Google

14   store and going through Google's payment system, and you can

15   have a direct relationship with your own users on your own

16   store or on a third-party store that might provide better

17   service at lower prices.

18          THE COURT:  Your own store?

19          MR. BORNSTEIN:  Yes.

20          THE COURT:  Each -- all these millions of apps would

21   have their own access point?

22          MR. BORNSTEIN:  If they so choose.  Obviously there

23   will be people who choose not to do that.

24          THE COURT:  How would that even work?  I mean, how

25   would you even -- I mean right now the whole point, the reason

1    we have stores is that you want 70 varieties of soup in one

2    place so you don't have to go to 70 different stores.  So

3    why -- are we going to go back now to sort of 18th century

4    models where you buy apples in one store, you buy hay in

5    another store, you buy coffee in a third --

6        **MR. BORNSTEIN:**  Well, no, Your Honor.  What we'll have

7    is something much more modern than what we have right now on

8    Android.  We'll have a situation where we'll have competition

9    among stores.  It can't be that it's better under the Sherman

10   Act to have a world in which there's just one store and

11   everybody has to go there, and that store --

12       **THE COURT:**  You're saying Epic wants an Epic store --

13   there's no competition.  Epic is going to host Epic?

14       **MR. BORNSTEIN:**  Epic also has a store right now on PC

15   and Mac where it hosts third parties, and it distributes third

16   parties in competition.

17       **THE COURT:**  So you want competing stores?

18       **MR. BORNSTEIN:**  Absolutely, Your Honor, competing

19   stores.  And for those developers who choose to use their own

20   outlet like sometimes --

21       **THE COURT:**  Okay.  That's clearly something you're not

22   going to be able to negotiate.

23       **MR. BORNSTEIN:**  That's correct, Your Honor.

24       **MR. POMERANTZ:**  And, Your Honor, and these are the

25   kinds of issues that we were discussing generally.

1    **THE COURT:**  I'm just asking.

2    **MR. POMERANTZ:**  No, no, but just to be clear, the

3    leading Android manufacturer is Samsung.  And every single

4    Samsung device comes with two app stores preloaded, Galaxy

5    Store, Samsung Galaxy Store, and then the Google Play Store,

6    and they're right next to each other on the home screen of

7    every Samsung device.  And so the idea -- which is different

8    than iPhone.  For those of us (shhh) who have iPhones, there's

9    only one App Store.  There always has been only one App Store.

10   That's not true in Android.  So there's a difference that

11   already exists, a fundamental difference, an important

12   difference for this case.

13       The reason why I brought this up is in part the issue

14   that Mr. Bornstein just raised, which is that Epic is not

15   seeking damages.  And what that means is if by chance we settle

16   with Match, if by chance we do, then the interest claims raised

17   by Epic, and the interest defense to our counterclaim are

18   triable to the Court.

19       And Your Honor is now -- you know, we're moving

20   forward towards a November 6th trial date, and I understand

21   we're sticking with that.  I just want you to be aware -- again,

22   none of this matters if we don't settle with Epic, I'm sorry,

23   with Match, but if we do, it's an issue we're going to have

24   to --

25   **THE COURT:**  Well, that's the issue.  There will be --

1    if it's equitable, you don't want a jury, that's the issue?

2                MR. POMERANTZ:  They haven't asked for a jury and we

3    haven't asked for a jury.  In fact, there is no jury.

4                THE COURT:  That's the only issue, right?

5                MR. POMERANTZ:  There is no jury.

6                But our counterclaim, we have a breach of contract

7    counterclaim that is triable to the jury, and so we just need to

8    work through that.  We can discuss it next week at the pretrial

9    if necessary, if by chance there's a settlement with Match

10   between now and then.

11               But I just wanted -- I wanted Your Honor to be aware

12   of this.

13               THE COURT:  I understand.  Yeah, it's going to be a

14   jury trial unless and until a settlement with someone is

15   reached, and then we can talk about the potential

16   ramifications.  But I have to say, so I have to send out the --

17   I'm sending out the screening questionnaire tomorrow, probably.

18               Oh, I forgot to tell you, this is a key point.  We

19   have to do jury selection on November 2nd, not start on the 2nd.

20   We're going to do the in-court jury selection on November 2nd.

21   We have a number of larger cases coming up for the week of the

22   6th, and we're all kind of picking days in advance, so we'll

23   just select on the 2nd.

24               But the written questionnaire is going to go out -- we

25   have decided now as a court we're not going to do anymore Covid

1    screening, so we're dropping all the Covid questions, and I'm

2    not going to -- this is going to be like it's 2019 all over

3    again, okay?

4            So I do have one thing to talk about with you.  I'm

5    open to your suggestions.  Right up to this case we have been

6    doing the Covid screening, and I would typically have had a

7    Zoom session where we get, you know, all the responses back,

8    and we would all look at mainly the Covid questions but the

9    rest of the responses as well, just to decide who we might not

10   call in.  Because my practice was not to have people in who

11   declined to be vaccinated or did not state because of the

12   infection -- with the consent of the parties, you know, the

13   parties would always consent, but now I'm not doing that.

14           I'm still willing to have kind of a prescreener, not

15   for peremptories and not for cause, just for like, obviously,

16   things like I'm having surgery -- this is very common:  I'm

17   having surgery on November 9th.  Okay.  It actually can be good

18   just to kind of go through that and just -- we all mutually

19   agree, everybody agrees, if anybody doesn't agree, it's fine,

20   the person will come in, but we all agree this person will not

21   come in.  So medical procedures.

22           Another common one is single parents who have no

23   possibility of any kind of childcare, and things like that,

24   okay?

25           So you want to do that?  Should we do that, do a

```
 1  little prescreener?
 2           MR. POMERANTZ:  I think that would be good.
 3           THE COURT:  Are you okay with that?
 4           MR. BORNSTEIN:  Yes, Your Honor.
 5           THE COURT:  And because it's Google and Epic, and, you
 6  know, names that people recognize, I'm inviting a super large
 7  pool of people, okay?
 8           Now, I will also tell you there has been an uptick in
 9  noncompliance for all of our trials in the last year.  We can't
10  figure out why.  It's a little bit of an outlier.  So I'm taking
11  into account, and we'll be sending this to a larger number of
12  people, budgeting a little bit of that in.
13           Now, what will happen is you'll get this back, and the
14  jury office will send you the actual responses, okay?  And then
15  we will get together maybe on November 1st by Zoom.  Well,
16  actually, you will be here.  Will you be here on November 1st
17  to do jury selection?
18           MR. BORNSTEIN:  I will, Your Honor.
19           THE COURT:  Well, let's just do it in person.
20           MR. POMERANTZ:  Your Honor, I could just ask for it to
21  be in the afternoon?
22           THE COURT:  That's fine, yeah.  Well --
23           MR. POMERANTZ:  Your Honor, it's just that there --
24           THE COURT:  What day of the week is that?
25           MR. POMERANTZ:  It's the day after Halloween, whatever
```

1    day that is.

2              THE CLERK:  It's Wednesday.

3              MR. POMERANTZ:  And for various reasons, there will be

4    some people arriving here in the morning of November 1st, and

5    so if we could do it in the afternoon.

6              THE COURT:  Is that a --

7              THE CLERK:  It's a Wednesday.

8              THE COURT:  It's a Tuesday?

9              THE CLERK:  Wednesday.

10             THE COURT:  Wednesday.  Oh, okay.  Well, like

11   2:00 o'clock, what about that?

12             MR. POMERANTZ:  That's fine.

13             THE COURT:  All right.  Let's do 2:00 o'clock on

14   Wednesday.  You just come in and we'll just talk; is that all

15   right?  And just whatever people we mutually agree don't have

16   to come in, not for cause, not for peremptories, just hardship,

17   basically, okay, just going to be like a hardship screening.

18             And if you want someone -- anybody who says no, I'll

19   have them in, all right?  It's not a problem.  So it's your one

20   time where you can insist.

21             Okay.  Then -- well, actually, maybe Tuesday.  You

22   want to do Monday?  Tuesday?

23             All right.  I'm sorry, I just realized that's not

24   enough time for the jury office to contact --

25             MR. POMERANTZ:  Well, maybe we'll have this meeting

```
1    on --
2              THE COURT:  So we'll do this on November 1st.  I mean,
3    sorry.  Is Tuesday Halloween?
4              MR. POMERANTZ:  Yeah, we can -- we'll make it work,
5    Your Honor.
6              THE COURT:  Well, are you going to be here
7    October 31st or would you rather have it be by Zoom?
8              MR. POMERANTZ:  I prefer Zoom, Your Honor.
9              MR. BORNSTEIN:  I will be here but Zoom is fine, Your
10   Honor.  Whatever works.
11             THE COURT:  Let's do it by Zoom.  I'm sorry, I keep
12   forgetting Match.  Anyway...
13             MR. DIXON:  We plan on being at trial, Your Honor, so
14   yes.
15             THE COURT:  Good.  So we'll do Zoom.
16             What day is that, Lisa, the 31st?
17             THE CLERK:  The 31st?
18             THE COURT:  Yes.
19             THE CLERK:  October 31st, Tuesday.
20             THE COURT:  Tuesday, let's do it 11:00 a.m. and I'll
21   send a little Zoom thing, okay?
22             MR. POMERANTZ:  And, Your Honor, what time will the
23   jury selection be on November 2nd?
24             THE COURT:  9:00 a.m.  November 2nd.  2.  9:00 a.m.
25   We'll pick a jury -- my courtroom over the last 10 years, it
```

1     has never taken more than 90 minutes, okay?

2              And if it turns out there's no need for a jury, we

3     just don't invite them in on November 6th, all right.

4              I really would encourage you, I'm not going to dismiss

5     the idea of even having an advisory jury.  Antitrust cases must

6     and should have juries, all right?

7              You of all people...

8              **MR. BORNSTEIN:**  We very much would like to have a

9     jury, Your Honor, and I believe that it's too late for Google

10    to be saying we shouldn't.  We don't need to get into the

11    argument --

12             **THE COURT:**  We've already agreed on all that, I'm very

13    reluctant, so I will leave a tiny door open.  But as far as I'm

14    concerned, it's a jury trial on the 6th.

15             **MR. BORNSTEIN:**  That is our view as well, Your Honor.

16    Thank you.

17             **THE COURT:**  Anything else?

18             Now, we have a big pretrial conference coming up.

19             **MR. BORNSTEIN:**  Two other quick things, if I could

20    raise, Your Honor.

21             **THE COURT:**  Yes, of course.

22             **MR. BORNSTEIN:**  One is just a minor administrative

23    point, which is the parties have been discussing, and would

24    make a joint request to Your Honor, an issue relating to public

25    access, excuse me, access to the trial.

```
 1              We currently have something in front of Your Honor
 2      which maybe we'll deal with at the pretrial about public access
 3      through an audio feed of some kind which we could take up at the
 4      pretrial conference.
 5              THE COURT:  Well, you want to do it?
 6              MR. BORNSTEIN:  We would very much like to have a --
 7              THE COURT:  You both agree?
 8              MR. BORNSTEIN:  -- public audio feed.  On this point
 9       Google disagrees.
10              What we've agreed on is if the Court can accommodate
11      it to have an audio feed for our respective trial teams, since
12      not everyone will be in the courtroom on a given day --
13              THE COURT:  I can actually do realtime if you prefer
14       to do that.
15              MR. BORNSTEIN:  We'd very much like realtime for our
16       trial teams, and we support realtime for the public as well.
17              THE COURT:  Well, I typically -- in larger cases like
18       this, I'm perfectly fine with realtime streams to your
19       out-of-courtroom people.
20              It's very interesting, there is tremendous foment
21      right now on cameras in the courtroom.  So the official policy
22      is I cannot do it -- this is a terrible policy that I've railed
23      against, but no one is listening.  I cannot do it if one party
24      says no, so I can't broadcast.
25              But the audio thing is -- we just got a new guidance
```

 1   from the Judicial Council, so let me take a look at that.  I

 2   don't know, I believe it actually requires consent of both sides

 3   as well.

 4          So you do not?

 5          **MR. POMERANTZ:**  That's my understanding.

 6          **THE COURT:**  Why not let the world see?  They're going

 7   to see it anyway.  I'm not sealing the courtroom.  This is

 8   not -- I know other judges -- we're not going overboard on

 9   sealing.

10          **MR. POMERANTZ:**  We understand, Your Honor.  We

11   understand, but, no, we don't consent.

12          There is one other issue, Your Honor.

13          **THE COURT:**  You've got Galaxy, you've got all these

14   points you want to make and you don't want the world to hear

15   it?  No?

16          **MR. POMERANTZ:**  No.  There is one other point I think

17   we probably all want to raise, which is the amount of time set

18   aside for trial.

19          **THE COURT:**  I've already said that.

20          **MR. POMERANTZ:**  Just so we're clear, we had -- when

21   all of the parties were together, we had proposed 50 hours per

22   side, a hundred hours, and Your Honor had accepted that.  Then

23   when we announced that there would be a settlement with the

24   states and the consumers, you asked us to cut it back by a bit.

25   And while we haven't reached agreement on that, we would be

1    amenable to cutting it back from 50 to somewhat less, but even

2    that would take it past November, maybe past Thanksgiving.

3         **THE COURT:**  Well, I think we're going to have to go

4    full days, okay?  We're just going to have to get it done, so

5    we'll just do 9 to 5.  I mean, we have to get it done in

6    November.

7         **MR. POMERANTZ:**  So, because we're going to have to

8    reach agreement on time, because we had agreed that we're going

9    to split it 50/50 whatever the time is.

10        **THE COURT:**  Yes, and I'm glad -- I mean, I'm not going

11   to give everybody, each side 50 hours or more.  This can't be

12   that complicated.

13        **MR. BORNSTEIN:**  Well, Your Honor, if I could give you

14   a little perspective.  In the trial that we had before Judge

15   Gonzalez-Rogers against Apple, she gave us 90 hours of trial

16   time, plus she accepted --

17        **THE COURT:**  Per side?

18        **MR. BORNSTEIN:**  No, no, total, 45 per side.  Plus she

19   accepted 4 hours per side of deposition testimony that Judge

20   Gonzalez-Rogers reviewed in chambers, so that was in addition

21   to the 45, so effectively 49 hours of testimony per side in a

22   case with no damages claim, only one party on each side.

23        **THE COURT:**  How much of it did you use?

24        **MR. BORNSTEIN:**  I'm sorry?

25        **THE COURT:**  How much of it did you use?

1          MR. BORNSTEIN:  We used it all, Your Honor, we used it

2    all.

3          I do believe we can be efficient here.  We have to, we

4    have another plaintiff.  We have damages claims.  There are

5    counterclaims that will be tried here that were not tried in the

6    prior matter, because there were stipulations that obviated some

7    of the counterclaim issues.  This is a more complicated case as

8    a result, and so we would respectfully request that we use that

9    as a benchmark.  We think that worked very well.

10          THE COURT:  Well, I am not -- I do not review

11    deposition testimony on my own.  It has to be admitted at trial

12    or I'm not going to consider it.

13          MR. BORNSTEIN:  Absolutely, Your Honor, we understood

14    that, especially if we're having a jury, as we think we should,

15    that would not be an option.  I raise that just as a --

16          THE COURT:  No, in case we don't have a jury.

17          MR. BORNSTEIN:  I understand.  I raise that just as a

18    reference point to the amount of time --

19          THE COURT:  I don't think I'm going to give you that

20    much time.  I will think about it, but that strikes me as more

21    than this case needs.

22          So we'll take it up next week, okay?

23          MR. BORNSTEIN:  Yes, Your Honor.

24          THE COURT:  Okay.  Anything else in advance of the

25    pretrial conference?

1    **MR. DIXON:**  I had one other thing.  Just inquiring

2  about the status of the summary judgment motions.  I believe

3  there are two still pending with the -- that involve the

4  parties that remain in this case going to trial on

5  November 6th.  We had Match's motion for summary judgment and

6  Google's motion for summary judgment.

7    **THE COURT:**  Well, yes.  I'll let you know.  It will be

8  done by next week.

9    **MR. DIXON:**  Thank you, Your Honor.

10    **THE COURT:**  Anything else?

11    **MR. BORNSTEIN:**  No, Your Honor.

12    We'll coordinate with Ms. Clark and the courtroom

13  staff on the audio question, and we had some technology issues

14  that she was kind enough to accommodate us on.

15    **THE COURT:**  Oh, yes, so you should pick a date for

16  that.

17    Also, I saw a reference at one point to a joint

18  proposal of bringing in snacks for the jury?

19    **MR. BORNSTEIN:**  Correct, Your Honor.  We would like to

20  do that, and we will split the costs, obviously, among the

21  parties.

22    **THE COURT:**  What do you have in mind?

23    **MR. BORNSTEIN:**  Well, Your Honor, we could either

24  solicit the jury's preferences or we can make some educated

25  guesses on things that will not soil the courtroom.

```
1              THE COURT:  Yes, or be suggested as to the verdict.
2                         (Laughter)
3              MR. BORNSTEIN:  This will be a subject on which we
4    will --
5              THE COURT:  No candies with hidden messages on them.
6                         (Laughter)
7              THE COURT:  Okay.  Anything else, Defendant?
8              MR. POMERANTZ:  No.
9              THE COURT:  Good.  All right.  We'll see you next
10   week.  Thank you.
11             ALL COUNSEL:  Thank you, Your Honor.
12         (Whereupon, proceedings adjourned at 12:13 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES COURT REPORTERS

CERTIFICATE OF REPORTER


I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, 450 GOLDEN GATE AVENUE, 16TH FLOOR, SAN FRANCISCO, CA 94102, DO HEREBY CERTIFY:


THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT OF MY SHORTHAND NOTES OF THE RECORD OF THE PROCEEDINGS HEREINBEFORE ENTITLED, AND REDUCED TO TYPEWRITING BY COMPUTER TO THE BEST OF MY ABILITY.


October 13, 2023


_____
Rhonda L. Aquilina, RMR, CRR, CSR 9956

UNITED STATES COURT REPORTERS