Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*
*(additional counsel on signature page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**BRIEF OF EPIC GAMES, INC. IN SUPPORT OF MAINTAINING THE JURY TRIAL**<br><br>Judge:       Honorable James Donato<br>Trial Date:  November 6, 2023<br>Time:        9:00 a.m.<br>Courtroom: 17 |

# INTRODUCTION

In October 2021, in Google's Answer and Counterclaims to Epic's First Amended Complaint, Google demanded a jury trial on all claims so triable. Although Epic had not originally requested a jury trial, Epic properly relied on that demand as it prepared its case over the subsequent two years. During that time, Google repeatedly confirmed that this case should be tried to a jury. In January 2022, Google represented in a joint submission that "the Parties are planning to proceed accordingly with a combined jury trial on the core antitrust liability issues". (MDL Dkt. 181 at 3.) In December 2022, Google answered Epic's Second Amended Complaint, again demanding a jury trial. (MDL Dkt. 386 at 27.) Six months ago, Google again confirmed that "**all** claims by **all** Plaintiffs are triable to a jury, with the exception of the claims brought under California's Unfair Competition Law". (MDL Dkt. 505 at 3 (emphasis added).) Now facing the consequences of its intentional destruction of Chats in the form of an adverse inference jury instruction, and less than a week before the beginning of trial, Google strategically seeks to reverse course.

Google's about-face should be rejected for at least two independent reasons. *First*, Google does not—and cannot—dispute that Epic has a Seventh Amendment right to a jury trial on Google's counterclaims for monetary damages. Epic's right to a jury trial includes the right to have the jury resolve Epic's defense to those counterclaims: that the contract on which they are based is unlawful under the antitrust laws. Epic's right to a jury trial also extends to Epic's antitrust claims, which are factually intertwined with and depend on the same factual disputes as Epic's contractual defense. It is of no moment that Google, rather than Epic, included a jury demand in its pleadings. Under black-letter law, Epic is entitled to rely on Google's jury demand, and Google cannot withdraw its jury demand absent Epic's consent.

*Second*, even if any of the claims were not jury-triable as of right, Google has consented to a jury trial. That choice is binding under the law. Federal Rule of Civil Procedure 39(c)(2) provides that a court may, with the parties' consent, try any issue to a binding jury verdict. Google expressly consented to a jury trial of Plaintiffs' claims when it repeatedly represented to the Court that Epic's claims would be decided by a jury. Moreover, Google's failure to timely object to a

1  jury trial also constitutes consent under Rule 39(c)(2). *See, e.g.*, *Onyx Pharms. v. Bayer Corp.*,
2  2011 WL 4527402, at *1 & n.1 (N.D. Cal. Sept. 21, 2011) (noting agreement among several
3  Circuits that "Bayer's failure to object to Onyx's jury demand within the schedule set by the Court
4  can thus be deemed implied consent to trial by jury"). The Court should reject Google's last-
5  second attempt to withdraw its consent. *See, e.g., Tomlinson Black N. Idaho v. Kirk-Hughes*, 361
6  Fed. App'x 712, 713 (9th Cir. 2009) ("Kirk–Hughes consented to trial by jury, and the district court
7  did not abuse its discretion in rejecting her last-minute change of heart.").

8        Google's about-face would cause serious prejudice to Epic, which in reliance on Google's
9  representations has been preparing for a jury trial for years. Witnesses have prepared to give
10 testimony before a jury, and counsel have prepared for opening statements and voir dire. Jurors
11 have been summoned, questioned and pre-screened. Proposed jury instructions and a jury verdict
12 form have been negotiated and briefed. At Google's request, the Court determined that Plaintiffs'
13 antitrust claims and Google's counterclaims should be resolved in a single jury proceeding, rather
14 than in bifurcated phases. And the Court has conducted extensive proceedings, including
15 evidentiary hearings, regarding Epic's request for a jury instruction on Google's Chats destruction.
16 That all happened in service of one ultimate goal: the resolution of the parties' disputes through
17 "the paramount mechanism for dispute resolution in our federal judicial system"—the jury trial.
18 (MDL Dkt. 67 at 2.)

19       Google's opportunistic attempt to seek a bench trial is grounded in gamesmanship rather
20 than any legitimate efficiency concerns. The Match settlement changes nothing about whether
21 Epic's claims should be tried to the jury. But even if this Court accepts Google's request to hold a
22 bench trial on Epic's claims and defenses, a jury will still be required because it is undisputed that
23 Epic is entitled to a jury trial as to Google's counterclaims for monetary damages. Google itself
24 has contended that there is substantial overlap in the evidence between its counterclaims and Epic's
25 claims, arguing that "in defending against Plaintiffs' antitrust case, Google will present much of the
26 same evidence that it will present in support of its counterclaims". (MDL Dkt. 573 at 5.)

27       The Court therefore should uphold Epic's Seventh Amendment rights, should hold Google
28 to its longstanding and repeated representations, and should try the claims to a jury.

# ARGUMENT

## A. EPIC HAS A SEVENTH AMENDMENT RIGHT TO A JURY TRIAL.

Google cannot dispute that a jury must decide Google's counterclaims for monetary damages against Epic. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47 n.5 (1989) ("[J]ury trials are ordinarily available with respect to monetary claims."). Indeed, in the same pleading in which Google asserted these counterclaims, Google "demand[ed] a trial by jury on all issues so triable". (MDL Dkt. 111 at 26.) As noted above, Google repeated this demand when it answered Epic's Second Amended Complaint. (MDL Dkt. 386 at 27.) Under Federal Rules of Civil Procedure 38 and 39, Epic is entitled to rely upon Google's jury demands, and Google cannot withdraw its demands absent Epic's consent. Fed. R. Civ. P. 38(d) ("A proper demand may be withdrawn only if the parties consent."); Fed. R. Civ. P. 39(a) (permitting waiver of a valid jury demand only if the parties "file a stipulation"). "It does not matter whether the party that filed for waiver [of a jury trial] was the same party that demanded a jury in the first place; other parties 'are entitled to rely' on the original jury demand, 'and need not file their own demands'". *SEC v. Jensen*, 835 F.3d 1100, 1107 (9th Cir. 2016) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1531 (9th Cir. 1995)).

Epic's right to a jury trial necessarily extends to Epic's defenses to Google's counterclaims. In deciding whether Epic must pay monetary damages as requested by Google's counterclaims, the jury must resolve Epic's illegality defense by deciding whether any breach by Epic is excused because the allegedly breached contract is unlawful. *See Jazzabi v. Allstate Insurance*, 278 F.3d 979, 982-83 (9th Cir. 2002) (in a breach of contract case, "a defendant cannot be held liable until the jury unanimously rejects an affirmative defense" raised by the defendant). Google nevertheless argues that Epic's defense of illegality is an issue of law for the court rather than an issue of fact to be decided either by the jury or the Court sitting as factfinder. (*See* Joint Proposed Jury Instructions (MDL Dkt. 679 at 211).) Google's argument that the resolution of Epic's antitrust defense can be decided ***as a matter of law*** defies law and logic. If the Court could conclude that Google has (or has not) violated the antitrust laws without resolving any factual disputes, then ***no*** trial would be necessary. Even Google does not go so far.

1    Google's argument that affirmative defenses to contract suits generally are not jury triable
2 is simply incorrect. (*Cf. id.* at 226.)  To the contrary, courts routinely charge juries with
3 determining whether an affirmative defense excuses a breach of contract.  In *Jazzabi v. Allstate*
4 *Insurance*, for example, a homeowner sued his insurer for coverage on an insurance policy
5 following a house fire. 278 F.3d at 981.  The insurer did not dispute the validity of the policy or
6 that it had refused to honor the homeowner's claim.  "Rather, Allstate relied on the affirmative
7 defense of arson." *Id*.  The district court submitted the defense to the jury, but failed to instruct the
8 jury that it needed to reach unanimous agreement on the arson defense.  The Ninth Circuit vacated,
9 concluding that Allstate could not be held liable on the insurance policy until the jury first
10 unanimously rejected its defense. *Id*. at 982-83.  In other contract cases, courts similarly have
11 instructed the jury to resolve affirmative defenses. *See, e.g.*, *Herbert Warren & Assocs. v. Ramada*
12 *Inns, Inc.*, 935 F.2d 274, 274 (9th Cir. 1991) (memorandum) ("the district court did not abuse its
13 discretion instructing the jury" on the affirmative defenses of mutual termination or abandonment).
14    The precedent that Google has previously relied upon (*e.g.*, MDL Dkt. 679 at 226) concerns
15 the inapposite question of whether a court can invalidate a contract based on a conflict with law or
16 public policy that is ***apparent on the contract's face***, rather than based on claims that depended on
17 disputed issues of fact.  In *LUX EAP, LLC v. Bruner*, the court observed that "California law long
18 ago established that 'unless it is entirely plain that a contract is violative of sound public policy, a
19 court will never so declare'". 2018 WL 6016973, at *7 (C.D. Cal. July 31, 2018).  As a result, the
20 court found that "even if the agreements are susceptible to the interpretation" that a party was
21 attempting a prohibited transaction, "they do not mandate it". *Id.* at *9.  The Court therefore
22 declined to declare the contracts unlawful as a matter of law. *Id.*  Similarly, in *BC Technical v.*
23 *Ensil International*, the Tenth Circuit concluded that Utah law required the court to compare the
24 written terms of the contract with the relevant penal statute, and to determine on that basis whether
25 "statute or public policy demands that the contract be deemed unenforceable". 464 Fed. App'x
26 689, 696 (10th Cir. 2012). *Cf. Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1063
27 (C.D. Cal. 2001) ("The proper interpretation of a contract is a matter of law for the court to
28 decide.").  But this Court cannot resolve Epic's antitrust claims by simply comparing Google's

Developer Distribution Agreement (DDA) to the Sherman Act or the Cartwright Act. Rather, determining whether the relevant contract is unlawful under the antitrust laws requires the jury to resolve several disputed issues, including whether the contract has anti-competitive effect, resulted in the monopolization of a market or constitutes an unlawful tying arrangement. Google has described *Meta Platforms, Inc. v. BrandTotal, Ltd.* as having "rejected an antitrust illegality defense to a contract claim as a matter of law" (MDL Dkt. 679 at 226), but the court there simply reached the routine conclusion that "in the context of summary judgment, as the party advancing an affirmative defense of contract unenforceability, BrandTotal has the burden to support its assertions with *evidence*, which it has not done". 605 F. Supp. 3d 1218, 1248 (N.D. Cal. 2022).

Although Epic's antitrust claims request equitable relief, the factual issues underlying those claims are the same as those that underlie Epic's defense to Google's monetary counterclaims. "In cases that involve both legal and equitable claims, the Supreme Court has cautioned against 'trying part to a judge and part to a jury'". *Jensen*, 835 F.3d at 1111-12 (citing *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 508 (1959)). Thus, when a claim for equitable relief "involves the same set of facts" that a jury is required to find to resolve legal claims, the "jury serves as the finder of fact" for those issues. *Id.* at 1111; *see also* MDL Dkt. 67 at 2 ("As the Court has explained, a jury trial is the paramount mechanism for dispute resolution in our federal judicial system . . . [and] the Court intends to first utilize a jury as the finder of fact for issues common to the legal and equitable claims.") (citing *Tull v. United States*, 481 U.S. 412, 425 (1987)).

The extensive overlap between Epic's antitrust claims and Epic's defenses is not subject to serious dispute. In order to determine whether Epic's alleged breach of contract was excused based on the unlawfulness of the DDA, the jury will necessarily have to decide whether that contract constitutes a violation of Section 1 or 2 as alleged in Epic's antitrust claims. Thus, a jury finding that Epic need not pay damages because the DDA violated the antitrust laws necessarily would require a jury finding that Epic has prevailed on its antitrust claims (and *vice versa*). Moreover, Google **conceded** the overlap between claims and counterclaims in opposing Plaintiffs' Motion to Bifurcate Google's counterclaims from Plaintiffs' antitrust claims. Google then represented that "[i]n defending against Plaintiffs' antitrust case, Google will present much of the same evidence

that it will present in support of its counterclaims. That is because Google's counterclaims evidence directly advances its defenses." (MDL Dkt. 573 at 5.) The Court denied Plaintiffs' Motion. (MDL Dkt. 603 at 1.) Google is now estopped from arguing an inconsistent position. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

### B.   GOOGLE CONSENTED TO A JURY TRIAL UNDER RULE 39(C)(2).

A jury trial should proceed for the independent reason that Google has consented to a jury trial pursuant to Federal Rule of Evidence 39(c)(2). That Rule provides that "[i]n an action not triable of right by a jury, the court, on motion or on its own . . . may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right". Such consent can be expressly given or implied from a party's acquiescence in a jury trial, and here Google has done both. *Onyx Pharms.*, 2011 WL 4527402, at *1 & n. 1; *see also Hayes v. SkyWest Airlines*, 401 F. Supp. 3d 1194, 1206 n.20 (D. Colo. 2019) ("[B]ecause both parties submitted proposed [jury] instructions addressing the issue of backpay, I found they had consented to have the issue determined by the jury."); *Bowie v. Cheramie Global Marine LLC*, No. 16-3464, 2018 WL 3474706, at *2  (E.D. La. Jul. 19, 2018) (finding that a party's failure to object to a jury trial "until less than three weeks before the scheduled trial" constituted consent to a jury). The Court should reject Google's "last-minute change of heart", especially in light of the significant prejudice to Epic, which has prepared its case in reliance on Google's agreement to try the claims to the jury, which has expended significant resources seeking and obtaining a remedy for Google's intentional destruction of Chats in the form of an adverse inference, and which would be severely prejudiced by a sudden change on the eve of trial.

*First*, Google's consent to a jury trial was express and repeated. In January 2022, after the Court communicated its guidance that the "optimal result" would be to have "one jury decide[] in one sitting the core antitrust issues" and requested a submission on the proposed trial structure, Google and the Plaintiffs jointly submitted that "the Parties are planning to proceed accordingly with a combined jury trial on the core antitrust liability issues". (MDL Dkt. 181 at 3.) ***These representations were not limited to claims against the other Plaintiffs besides Epic.*** As noted above, it was Google that repeatedly demanded a jury trial in its Answers as to all issues so triable,

and in May 2023, in response to a direction that the Parties submit a joint statement regarding the structure of the trial, Google jointly submitted a statement with Plaintiffs representing that they "agree[d] that *all claims* by *all Plaintiffs* are triable to a jury, with the exception of the claims brought under California's Unfair Competition Law". (MDL Dkt. 505 at 3 (emphasis added).) In the same submission, Google further agreed that "Google's counterclaims against Epic and the Match Plaintiffs, including any damages thereon, should be tried to the same jury that would decide claims against Google". (*Id.* at 4.) Further, in response to the Court's August 4, 2023 Order that the parties "formulate a joint list of the specific claims that will be tried to the jury", the parties stated that *Epic's antitrust claims* would be tried to the jury. (MDL Dkt. 627 at 3.)

Only a few weeks ago, the Parties submitted the Joint Pretrial Statement, in which the Plaintiffs explained that "Plaintiffs assert several Sherman Act and Cartwright Act claims against Google. . . . The jury will determine liability and the amount of monetary damages, if any, for these claims." (MDL Dkt. 649 at 6.) Google chose not to object to that position, but equivocated that "it is Google's position that the Court and the parties may need to revisit the question of which claims and defenses will be tried to a jury" in the event of a settlement of Match's claims. (*Id.*; *see also* ECF No. 453 at 3.) But the question of whether Epic's claims are jury triable does not depend on whether Match's claims are in or out of this litigation. If Google believed that Epic's antitrust claims were not jury triable, it did not need to wait for Match's settlement to raise that issue, but could and should have raised it at any time in the past two years in response to the Court's requests for Google's position. Google also has no basis to claim that its proposal would be a more efficient way to try this case in light of Match's settlement: the Court must impanel a jury to try Google's counterclaims against Epic even if the Court accepts Google's proposal to try Epic's claims and affirmative defenses to the bench.

*Second*, Google's consistent failure to object earlier to a jury trial constitutes implied consent. *Cf.* Wright & Miller, Fed. Prac. & Proc. § 2333 (3d ed. 2011) ("If one party demands a jury, the other parties do not object, and the court orders trial to a jury, it will be regarded as a jury trial by consent.").

*Onyx Pharmaceuticals v. Bayer* is instructive. There, the Court found implied consent

where Bayer had submitted proposed jury instructions and a verdict form that "envisioned and consented to the jury deciding all disputed issues between the parties". 2011 WL 4527402, at *1. Here, while Google previously opposed submitting *certain* of Plaintiffs' claims to the jury (such as Epic's *per se* claims), it similarly has "envisioned and consented" to the submission of the majority of Epic's antitrust claims in many prior submissions to the Court. *Cf id.* (noting evidence that Bayer "had already weighed the very bases for bifurcation it now asserts and incorporated those concerns into its proposed jury instructions"). Like Bayer, Google also has long missed this Court's deadlines "to present all significant disputes of law, including procedural issues, to the Court" before trial, such as in the Joint Pretrial Statement. *Id*. And, like in *Onyx*, the parties and Court have expended significant resources on pretrial briefing—including several briefs regarding Epic's request for a jury instruction on Google's intentional destruction of Chats—"none of which leave any doubt as to the manner in which this case was to be tried". *Id*. at *1-2.

Conversion to a bench trial would also cause serious harm to Epic's ongoing preparation of its case and witnesses, and on that additional independent basis Google's last-second request to unilaterally withdraw its consent should be denied. *Onyx* recognized the "valid argument" that a party "suffered prejudice by relying on Bayer's apparent consent to a jury trial and investing substantial 'time and money on preparing witnesses, examination outlines, exhibits, opening and closing arguments, voir dire, and other pretrial filings' with the expectation of a single jury trial". 2011 WL 4527402, at *2 (internal quotation marks omitted); *see also Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981) ("There are frequently significant tactical differences in presenting a case to a court, as opposed to a jury."). So too here. Epic reasonably relied, as it was entitled to do, on Google's express and repeated demand and consent to a jury trial. Epic has been preparing to present this case to a jury for years, and has been delayed multiple times in an attempt to accommodate additional parties that have now settled. Epic is ready, willing, and able to try its case to a jury on Monday. The prejudice that would result from Google's last-second attempt to convert to a bench trial days away from the beginning of trial would be severe.

## CONCLUSION

The Parties' claims and counterclaims should be submitted to the jury for a binding verdict.

| | | |
|---|---|---|
| 1 | Dated: November 1, 2023 | CRAVATH, SWAINE & MOORE LLP |

Christine Varney *(pro hac vice)*
Gary A. Bornstein *(pro hac vice)*
Timothy G. Cameron *(pro hac vice)*
Yonatan Even *(pro hac vice)*
Lauren A. Moskowitz *(pro hac vice)*
Justin C. Clarke *(pro hac vice)*
Michael J. Zaken *(pro hac vice)*
M. Brent Byars *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: /s/ *Gary A. Bornstein*
Gary A. Bornstein

*Counsel for Plaintiff Epic Games, Inc.*