1  Renata B. Hesse (SBN 148425)
2  (hesser@sullcrom.com)
   SULLIVAN & CROMWELL LLP
3  550 Hamilton Avenue
   Palo Alto, California  94301
   Telephone:    (650) 461-5600
4  Facsimile:    (650) 461-5700

5  Shane M. Palmer (SBN 308033)
   (palmersh@sullcrom.com)
6  SULLIVAN & CROMWELL LLP
   125 Broad Street
7  New York, New York  10004
   Telephone:    (212) 558-4000
8  Facsimile:    (212) 558-3588

9  *Attorneys for Non-Party Spotify USA Inc.*

10
                    **UNITED STATES DISTRICT COURT**
11
                    **NORTHERN DISTRICT OF CALIFORNIA**
12

13 | **IN RE GOOGLE PLAY STORE**               ) Case No. 3:21-md-02981-JD
   | **ANTITRUST LITIGATION**                  )
14 |                                           ) **DECLARATION OF SANDRA**
   | THIS DOCUMENT RELATES TO:                 ) **ALZETTA IN SUPPORT OF NON-**
15 |                                           ) **PARTY SPOTIFY'S**
   | *Epic Games, Inc.* v. *Google LLC*, No. 3:20-cv- ) **ADMINISTRATIVE MOTION TO**
16 | 05671-JD                                  ) **SEAL PORTIONS OF THE**
   |                                           ) **DEPOSITION OF SANDRA**
17 |                                           ) **ALZETTA AND EXHIBITS**
   |                                           ) **THERETO**
18 |                                           )
   |                                           ) Judge:  Hon. James Donato
19 |                                           )

20
21
22
23
24
25
26
27
28

SULLIVAN
&
CROMWELL LLP

I, Sandra Alzetta, declare as follows:

1. I am a Vice President and the Global Head of Commerce and Customer Service at Spotify. Pursuant to Local Civil Rule 79-5(c)(2), I submit this declaration in support of Non-Party Spotify's Administrative Motion to Seal Portions of the Deposition of Sandra Alzetta and Exhibits Thereto in *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (the "Action").

2. I first began working at Spotify in January 2019, as Vice President, Global Head of Payments. I have been in my current role as Vice President, Global Head of Commerce and Customer Service, since December 2022. My responsibilities in that role include managing Spotify's current payment methods, developing strategy with respect to future payment methods, and negotiating agreements with third parties. I can testify competently to the facts set forth in this declaration based on personal knowledge of those facts or on conversations I had with knowledgeable individuals at Spotify.

3. Spotify operates the world's most popular audio streaming subscription service. Spotify's streaming service first launched in Sweden in 2008 and launched in the United States in 2011. With a presence in more than 180 countries and territories, Spotify's platform includes more than 574 million monthly active users, including 226 million subscribers to its Premium service as of September 30, 2023.

4. I understand that the parties to this Action intend to play at trial video clips from my deposition in this Action, taken on September 29, 2022 (the "Alzetta Deposition"), and to introduce certain exhibits that were marked during the Alzetta Deposition, some of which contain Spotify's confidential information. The below chart lists the portions of the Alzetta Deposition that the parties intend to play at trial and that are sealable for the reasons stated in this declaration:

Sullivan & Cromwell LLP

-1-

Decl. of Sandra Alzetta in Supp. of Non-Party Spotify's Admin. Mot. to Seal
Case No. 3:21-md-02981-JD

| Page & Line Numbers | Evidence Offered in Support of Sealing |
|---|---|
| 42:20–44:15<br>50:3–10<br>52:14–53:11<br>54:12–55:6<br>70:5–15<br>70:23–72:21<br>82:3–8<br>82:13–83:2 | Alzetta Decl. ¶¶ 6–7 |
| 100:14–17 | Alzetta Decl. ¶ 13 |
| 138:13–139:2<br>140:18–141:12 | Alzetta Decl. ¶¶ 8–9 |
| 151:6–7<br>164:11–12<br>173:19–20 | Alzetta Decl. ¶¶ 10–12 |

In addition, the below chart lists the exhibits or portions of exhibits marked during the Alzetta Deposition that the parties intend to introduce at trial and that are sealable for the reasons stated in this declaration:

| Deposition Exhibit Number (Bates Number) | Document Description | Portion Sought to Be Sealed | Evidence Offered in Support of Sealing |
|---|---|---|---|
| Exhibit 1532 / PX 2058 (GOOG-PLAY-011250116) | Spotify – Google Play Better Together Program Partnership Addendum to the Google Play Developer Distribution Agreement | Entire document | Alzetta Decl. ¶¶ 6–7 |
| PX 2062 (SPOT-GOOGLE-00000014) | Chart summarizing average U.S. payment processing fees paid by Spotify | All figures in the chart, *i.e.*, everything except first column and header row | Alzetta Decl. ¶ 13 |

5.  In an effort to narrowly tailor its sealing requests, Spotify does not request to seal all of its non-public information that appears in the Alzetta Deposition and the exhibits

SULLIVAN & CROMWELL LLP

thereto. Spotify recognizes the Court's need to balance Spotify's interests against the public's interest in access to court records and judicial proceedings and has sought to narrow its sealing requests as much as possible.

6.  Certain portions of the Alzetta Deposition and exhibits thereto, as indicated in the above charts, reflect or reference the terms of Spotify's carefully negotiated agreement with Google regarding User Choice Billing and the Google Play Store. This agreement was the product of years of discussions between Spotify and Google, and Spotify personnel invested hundreds of hours discussing and analyzing the terms of a potential agreement with Google. And implementing the payment-related flows contemplated by the agreement required both Google and Spotify to make significant investments in research and development. The terms of the agreement that Spotify and Google ultimately executed—which was the first of its kind, as Spotify was Google's first User Choice Billing partner—are highly confidential and commercially sensitive, and Spotify would be competitively harmed in its business by the disclosure of those terms through any public filing. Public disclosure of the terms of the agreement would disadvantage Spotify in its future negotiations with other parties, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business. For those reasons, Spotify's business model depends on the terms of its distribution agreements such as this one remaining confidential.

7.  In addition to terms regarding the fees that Spotify pays to Google for in-app payments in Spotify's audio streaming app that are processed using Google Play Billing, the User Choice Billing agreement also contains non-price terms specifying how the parties will test the implementation of User Choice Billing within Spotify's app and jointly explore product innovations across the Android platform, together with terms concerning marketing initiatives. Spotify would be harmed in its business if those terms were disclosed to the public. Spotify's competitors could use such information to inform their own business strategies, including with respect to product strategy and distribution.

8.  Certain portions of the Alzetta Deposition and exhibits thereto, as indicated in the above charts, reflect or reference Spotify's confidential negotiations with Google regarding

the use of Google Play Billing, including specific rates and terms that were proposed by each party to the negotiations leading up to the execution of the User Choice Billing Agreement, the rationale for those proposals, Spotify's negotiation strategy, and Spotify's contingency planning during the course of negotiations in the event an agreement was not reached. If this information were publicly disclosed, Spotify would be competitively harmed in its business because the information could be used to unfairly disadvantage Spotify in contract negotiations with its other payment partners and distribution partners (including original equipment manufacturers such as mobile, TV, gaming, and auto partners, as well as app providers and commercial partners). Those partners could use the information to undermine Spotify's position in negotiations, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its margins), and generally harm Spotify's ability to compete and grow its business. In addition, if Google obtained information about Spotify's internal priorities and confidential negotiation strategies in the lead-up to the execution of the User Choice Billing Agreement, Spotify would suffer further competitive harm because Google could use that information against Spotify in future negotiations.

9. Disclosure of this information could further harm Spotify by giving Spotify's competitors insight into Spotify's strategic business priorities and decisions, which they could use to inform their own business strategies, including with respect to product strategy and distribution.

10. Certain portions of the Alzetta Deposition, as indicated in the above charts, refer to the proportion of the total usage of Spotify's audio streaming app that occurs on mobile devices. This information reflects Spotify's proprietary, internal data and analysis concerning the use of its app across different platforms. This is highly sensitive information that Spotify keeps confidential and does not disclose to the public. Spotify uses that information for a variety of strategic business purposes, including but not limited to:

    a. developing business strategies to compete with other audio and music streaming app providers, including Apple;

Sullivan & Cromwell LLP

-4-

Decl. of Sandra Alzetta in Supp. of Non-Party Spotify's Admin. Mot. to Seal
Case No. 3:21-md-02981-JD

b. identifying and negotiating with potential distribution partners to broaden the availability of the Spotify app across multiple platforms and expand Spotify's subscription business; and

c. planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace.

11. If this information were disclosed publicly, it would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations and its users' behavior. Such information could be used by Spotify's competitors to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising. For example, competing app developers could use the data to understand the usage of Spotify's app across different platforms and then selectively devote their resources to optimize their apps differently. And the competitive harm to Spotify resulting from any public disclosure of this information would be amplified because Spotify's competitors generally do not make the same level of platform-specific usage detail publicly available.

12. Additionally, public disclosure of the information concerning the usage of Spotify's audio streaming app on mobile would also unfairly disadvantage Spotify in its negotiations with distribution partners (including original equipment manufacturers such as mobile, TV, gaming, and auto partners, as well as app providers and commercial partners), and advertisers. If this material were to fall into the hands of distribution platforms or partners, for example, it would undermine Spotify's position in negotiations, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its margins), and generally harm Spotify's ability to compete and grow its business.

13. The document marked at the Alzetta Deposition as Plaintiff Exhibit 2062 was prepared by Spotify in response to subpoenas served on Spotify by the parties in the Action. That document and certain portions of the Alzetta Deposition that discuss that document, as indicated in the above charts, reference the average payment processing fees Spotify paid to each of the payment processors it uses for payments by customers in the United States for subscriptions to Spotify's audio streaming app, for each year from 2017 through mid-2021. The amounts of

Sullivan & Cromwell LLP

-5-

Decl. of Sandra Alzetta in Supp. of Non-Party Spotify's Admin. Mot. to Seal
Case No. 3:21-md-02981-JD

those fees are highly confidential and commercially sensitive, and Spotify would be competitively harmed in its business by the disclosure of those amounts through any public filing. Public disclosure of the payment processing fees paid by Spotify would disadvantage Spotify in its future negotiations with other parties, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business. Further, these amounts reveal information about Spotify's cost structures, and Spotify would be competitively harmed in its business if they were publicly disclosed. Spotify's competitors could use such information to inform their own business strategies, including with respect to product strategy and distribution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this November 7, 2023 in London, United Kingdom.

/s/ Sandra Alzetta
Sandra Alzetta

## **ATTESTATION**

I, Shane M. Palmer, am the ECF User whose ID and password are being used to file this document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories concur with this filing.

Dated: November 7, 2023

/s/ Shane M. Palmer
Shane M. Palmer