Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S MOTION TO SEAL TRIAL EXHIBITS** |

In 2019, Google identified several threats to the Google Play Store's dominant position on Android. Google identified a threat from app developers, which it dealt with by paying those developers not to compete through Project Hug. Google identified a threat from Samsung, which it dealt with through Project Banyan and later through a bespoke Revenue Share Agreement ("RSA"). Google also identified a threat from large Android OEMs preinstalling their own and third-party Android app stores on their Android smartphones, which it dealt with by paying these OEMs exorbitant sums not to compete with the Google Play Store. It did so through a new type of RSA, known within Google as "RSA 3.0". Under these agreements, Google pays OEMs a percentage of the revenue it receives from the Google Play Store and Google Search in exchange for their express, written agreement not to preinstall any app store on their smartphones other than the Google Play Store. Google's plan worked. Nearly all major Android OEMs signed an RSA 3.0 agreement. Some OEMs that had been offering their own Android app stores ceased preinstalling those stores on most of their smartphones, and some were prevented from preinstalling an Epic Games launcher, because Google paid them not to.

Google now asks to seal two planning documents—created before these agreements were signed—that show how Google planned to prevent competition through its various RSAs. (Dkt. 769.) Google asks to seal critical portions of 18 pages of Exhibit 624, a June 2019 slide deck presented to Google's Business Council for approval of the RSA 3.0 program. What Google is asking to seal are not specific deal terms, but ***aggregate*** dollar amounts that Google planned to pay OEMs not to compete, and the ***average*** percentages of Google Play Store and Google Search revenue share it planned to pay them. And Exhibit 1065, a November 2020 summary of Google's RSA with Samsung that Google asks to seal in full, reveals the large amounts of money that Google pays Samsung and the effect of those payments on competition from Samsung's Galaxy Store. Google is the only party asking to deny the public access to these critical documents.

Google is simply trying to hide embarrassing information from the public. That is made clear by what Google has ***not*** moved to seal. Epic disclosed to Google that it intends to introduce an executed RSA 3.0 agreement into evidence with Jim Kolotouros, a Google executive who will testify on Monday. Google did not move to seal any part of that agreement. What Google wants to seal is

evidence that shows that Google believed that this agreement and more than a dozen others like it would prevent competition for the Google Play Store, as well as aggregate numbers that reveal what Google was prepared to spend to achieve that goal.

The standard for sealing trial exhibits in the Ninth Circuit is high. Google must show "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure". *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citation and quotation marks omitted). Any request to seal must be "narrowly tailored" or else should be denied. *See* N.D. Cal. Civ. L.R. 79-5; *Romero v. Cnty. Of Santa Clara*, 2014 WL 12641990, at *2 (N.D. Cal. June 17, 2014).

Google has failed to meet its burden. Its sealing declaration consists of a single paragraph, making boilerplate assertions that the documents "reflect[] Google's confidential, non-public financial information, deal terms, and related internal business strategy considerations". (Dkt. 769 at 3.) That is not a specific or compelling reason for keeping information under seal. And this Court has already repeatedly rejected similar arguments from Google, including by declining to seal the numerous allegations in Epic's complaint about the RSA 3.0 program (Dkt. 79), and the comparable evidence of how Google planned to prevent competition through Project Hug (Dkt. 374). Nor is there any merit to Google's threadbare assertion that disclosure "is likely to cause Google competitive harm by giving its competitors and/or potential customers unfair and improper insight into Google's finances and strategic considerations." (*Id.*) Google argued in Court that information about Google's RSA with Samsung (referring only to Exhibit 1065) could harm Google's competitive position with companies like Apple, Microsoft and Amazon. But those companies do not manufacture Android smartphones. And Google's sealing declaration does not claim any risk of harm from disclosure to those companies; in fact, it does not mention them at all.[1]

Google's failure to meet the requisite sealing standard is unsurprising because Exhibits 624 and 1065 plainly are not sealable. Both documents are several years old. As Google recently told the

[1] Google also argued in Court—without having raised this point in the parties' meet and confer—that certain traffic acquisition cost ("TAC") numbers were competitively sensitive. Epic has no objection to sealing that information, as it made clear to Google during the parties' subsequent meet and confer discussions.

Court, referring to Exhibit 624, the RSA 3.0 program "was presented to Google's Business Council in June 2019 and was first offered to OEMs in late 2019." (Dkt. 634 at 7.) Google also confirmed that the "fifteen RSA 3.0 agreements" on the parties' exhibit list "were executed prior to August 13, 2020." (*Id.*) Of its RSA with Samsung, Google similarly observed that the agreement is "from November 2020". (*Id.* at 9.) Accordingly, Exhibits 624 and 1065 do not describe ongoing or even recent negotiations. They concern Google's planning and rationale for deals it signed years ago.

Google's sealing request is not narrowly tailored. Google asks to seal the entirety of Exhibit 1065, even though much of it does not describe deal terms. As to Exhibit 624, Google moves to seal portions of 18 pages, focusing primarily on aggregate numbers rather than specific terms offered to specific OEMs. For example, the numbers Google seeks to seal on the "Executive Summary" slide are not tied to any specific OEM. (*See* Exhibit 624-002; *see also* -003, -004.) Nor is any specific OEM attached to the percentages of Google Play Store and Google Search revenue share that Google planned to pay and that it asks to seal. (Exhibit 624-007.) It is likewise difficult to understand Google's assertion that it would suffer competitive harm from the disclosure of Google's projection from four and a half years ago of how much money Google would pay in the aggregate under the RSA 3.0 program (Exhibit 624-013, -016, -017), or of the amount of Google's revenue that Google believed would be protected by the RSA 3.0 agreements (Exhibit 624-018).

As Google acknowledged earlier this week, "[t]his case has attracted and will continue to attract media attention." (Dkt. 736 at 3 (Google's Motion for a Protective Order).) The anticompetitive effects of Google's RSAs, including the ways they prohibit Android OEMs from distributing their own app stores or third-party app stores, are core components of Epic's case against Google. It would be a disservice to the public if the evidence Epic will use to explain these programs and show how they prevent competition were kept from the public record through sealing.

## CONCLUSION

For the foregoing reasons, Google's motion to seal should be denied.

Dated: November 10, 2023

Respectfully submitted,

By: /s/ *Lauren A. Moskowitz*
Lauren A. Moskowitz

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*