# MUNGER, TOLLES & OLSON LLP

RONALD L. OLSON
ROBERT E. DENHAM
CARY B. LERMAN
GREGORY P. STONE
BRAD D. BRIAN
GEORGE M. GARVEY
WILLIAM D. TEMKO
JOHN W. SPIEGEL
DONALD B. VERRILLI, JR. P.C.*
STEVEN M. PERRY
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
KATHLEEN M. M°DOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
HENRY WEISSMANN
KEVIN S. ALLRED
JEFFREY A. HEINTZ
JUDITH T. KITANO
STUART N. SENATOR
MARTIN D. BERN
JONATHAN E. ALTMAN
KELLY M. KLAUS
DAVID B. GOLDMAN
LISA J. DEMSKY
MALCOLM A. HEINICKE
JAMES C. RUTTEN
RICHARD ST. JOHN
ROHIT K. SINGLA
CAROLYN HOECKER LUEDTKE
C. DAVID LEE
BRETT J. RODDA P.C.*
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
SETH GOLDMAN
GRANT A. DAVIS-DENNY
JONATHAN H. BLAVIN
DANIEL B. LEVIN
MIRIAM KIM
HAILYN J. CHEN
BETHANY W. KRISTOVICH
JACOB S. KREILKAMP
JEFFREY Y. WU
LAURA D. SMOLOWE
KYLE W. MACH
HEATHER E. TAKAHASHI
ERIN J. COX
BENJAMIN J. HORWICH
BRYAN H. HECKENLIVELY
ELAINE J. GOLDENBERG P.C.*
GINGER D. ANDERS P.C.*
MARGARET G. MARASCHINO

JOHN M. GILDERSLEEVE
ADAM B. WEISS
KELLY L. C. KRIEBS
JEREMY A. LAWRENCE
ACHYUT J. PHADKE
ZACHARY M. BRIERS
JENNIFER M. BRODER
KURUVILLA J. OLASA
JUSTIN P. RAPHAEL
ROSE LEDA EHLER
JOHN W. BERRY
ROBYN K. BACON
JORDAN D. SEGALL
JONATHAN KRAVIS P.C.*
JOHN L. SCHWAB
EMILY C. CURRAN-HUBERTY
MATTHEW S. SCHONHOLZ
L. ASHLEY AULL
WESLEY T.L. BURRELL
CRAIG JENNINGS LAVOIE
JENNIFER L. BRYANT
NICHOLAS D. FRAM
TYLER HILTON
VINCENT LING
LAUREN BELL P.C.*
VICTORIA A. DEGTYAREVA
JOHN B. MAJOR
RACHEL G. MILLER-ZIEGLER P.C.*
FAYE PAUL TELLER
NIKOLE KITSA ZOUMBERASKIS
JULIANA M. YEE
LAUREN C. BARNETT
NICK R. SIDNEY
SKYLAR B. GROVE
LAURA M. LOPEZ
COLIN A. DEVINE
DANE P. SHIKMAN
MAGGIE THOMPSON
ALLISON M. DAY
GIOVANNI S. SAARMAN GONZÁLEZ
STEPHANIE G. HERRERA
SARA A. MCDERMOTT
J. MAX ROSEN
ANNE K. CONLEY
DAVID W. MORESHEAD
ANDRE W. BREWSTER III
ROWLEY J. RICE
USHA CHILUKURI VANCE
ZARA BARI
LAUREN E. ROSS*
BENJAMIN G. BAROKH
ABE DYK
MEGAN MCCREADIE

350 SOUTH GRAND AVENUE
FIFTIETH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

_____

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

_____

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100
FACSIMILE (202) 220-2300

RAQUEL E. DOMINGUEZ
ARIEL TESHUVA
SHANNON GALVIN AMINIRAD
XIAONAN APRIL HU*
NATALIE KARL
ERINNA E. MAH
CARRIE C. LITTEN
RUBY J. GARRETT*
JAMES R. SALZMANN
ROBIN GRAY SCHWEITZER
JOSEPH MOSES
MICHAEL I. GELIN
NATHANIEL F. SUSSMAN
OLIVER BROWN
PAUL E. MARTIN
ANDRA LIM*
REBECCA L. SCIARRINO
CORY M. BATZA
BRIAN R. BOESSENECKER
AVI REJWAN OVED
ROBERT E. BOWEN
RICHARD T. JOHNSON
GRACE DAVIS FISHER
LAUREN N. BECK
CALEB W. PEIFFER
GREGORY T. S. BISCHOPING*
JAMIE LUGURI
STEVEN B. R. LEVICK
JANELLE KRUMMEN
WILLIAM M. ORR
GABRIEL M. BRONSHTEYN
JING JIN
ALEX C. WERNER
ROSIO FLORES ARRIAGA
JESSICA O. LAIRD
ERICA C. TOOCHI
SARAH E. WEINER*
LEONARDO MANGAT*
EVAN MANN
ANDREW T. NGUYEN
RACHEL M. SCHIFF
MIRANDA E. REHAUT
TIANA S. BAHERI
STEPHANY REAVES*
LAUREN E. KUHN
J. KAIN DAY*
GARRETT SOLBERG
TED KANG
ADAM W. KWON
JOSEPH N. GLYNN
SIMON K. ZHEN
CARSON J. SCOTT
AVERY P. HITCHCOCK

ELISSA WALTER
CHRISTOPHER B. CRUZ
JARED T. KOCH
MATTHEW W. LINSLEY
BRIANNE HOLLAND-STERGAR
NICHOLAS NEUTEUFEL
JIMMY BIBLARZ
ADEEL MOHAMMADI
TAYLOR L. BENNINGER
LORRAINE L. ABDULAHAD
CLARE KANE
SIDNEY MOSKOWITZ
HELEN ELIZABETH WHITE*
KATHLEEN FOLEY*
ALISON A. DOYLE
FELIPE DE JESÚS HERNÁNDEZ
PHILLIP H.C. WILKINSON
JASON D. WEISS
MILES W. UNTERREINER
HENRY D. SHREFFLER
ANDREW DELAPLANE
ARIELLA PARK
LAURA R. PERRY
NATASHA GEILING
JOSEPH MANTEGANI
GRAHAM J. WYATT
WESLEY P. DEVOLL
LAUREN A. BILOW
ROMAN LEAL
AMANDA HARRIS
KAYSIE GONZALEZ
ASHLEY KIM
PRISCILLA CORONADO
ALEXIS CAMPBELL

OF COUNSEL
ROBERT K. JOHNSON
PATRICK J. CAFFERTY, JR.
PETER A. DETRE
BRADLEY R. SCHNEIDER
AIMEE FEINBERG
PETER E. GRATZINGER
JENNY H. HONG
KIMBERLY A. CHI
ADAM R. LAWTON
MICHAEL E. GREANEY
SARAH J. COLE

E. LEROY TOLLES
(1922-2008)

*ADMITTED IN DC.
ALL OTHERS ADMITTED IN CA

December 1, 2023

Writer's Direct Contact
(213) 683-9132
(213) 683-5132 FAX
Glenn.Pomerantz@mto.com

**VIA ECF**

The Honorable James Donato, U.S. District Judge
U.S. District Court, Northern District of California
450 Golden Gate Ave
San Francisco, CA 94102

Re: *In re Google Play Store Antitrust Litigation,* Case No. 3:21-md-02981-JD
*Epic Games Inc. v. Google LLC,* Case No. 3:20-cv-05671-JD

To The Honorable James Donato:

Consistent with the Court's order that Google is limited to a two-page submission of bullet points, Trial Tr. at 2814:3-22, Defendants Google et al. respectfully submit the attached list of arguments in support of Google's motion for judgment as a matter of law.

MUNGER, TOLLES & OLSON LLP

*In re Google Play Store Antitrust Litigation*
The Honorable James Donato
December 1, 2023
Page 2


DATED:  December 1, 2023                    Respectfully submitted,

                                            By:  _____*/s/ Glenn D. Pomerantz*_____
                                                        Glenn D. Pomerantz
                                            **MUNGER TOLLES & OLSON LLP**
                                                 Glenn D. Pomerantz
                                                 Kuruvilla Olasa
                                                 Jonathan I. Kravis
                                                 Justin P. Raphael
                                                 Kyle W. Mach
                                                 Lauren Bell
                                                 Nicholas R. Sidney
                                                 Dane Shikman
                                                 Rebecca L. Sciarrino
                                                 Jamie B. Luguri
                                                 Lauren N. Beck

                                            **MORGAN, LEWIS & BOCKIUS LLP**
                                                 Minna Lo Naranjo
                                                 Brian C. Rocca
                                                 Sujal J. Shah
                                                 Michelle Park Chiu
                                                 Rishi P. Satia

                                                 *Counsel for Defendants*


Encl: Outline of Arguments

MUNGER, TOLLES & OLSON LLP

<u>**List of Arguments**</u>

**1.  *Per Se* Tying (Counts 8 and 12):** Epic's *per se* tying claims fail as a matter of law because "per se condemnation is inappropriate for ties involving software that serves as a platform for third-party applications." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 997 (9th Cir. 2023).

**2.  *Per Se* Activision GVP Agreement (Count 4):** Epic's *per se* claim as to the Games Velocity Program (Project Hug or GVP) agreement with Activision fails because there is no evidence of a "naked" horizontal agreement and because Epic has failed to offer the required proof excluding independent action. Additionally, as in *Epic Games*, the business, economic and technological context makes *per se* treatment inappropriate here. *See* 67 F.4th at 997.

**3.  Market Definition (Counts 1, 2, 5-9, 11, and 12):** Epic's alleged product market for app distribution limited to Android devices, product market limited to Android in-app billing services, and geographic market that is worldwide (excluding China) fail as a matter of law. "Failing to define a relevant market alone is fatal to an antitrust claim." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023). First, Epic has not offered legally sufficient evidence to limit the product markets to services for the single brand of "Android" devices. *See id.*; *Epic Games*, 67 F.4th at 977. Epic conceded in parallel litigation against Apple that it must establish a valid aftermarket. *See* Reply App. Br., 67 F.4th 946, ECF No. 163 at 57-59; *see also* Proposed Findings of Fact and Conclusions of Law, *Epic Games, Inc. v. Apple, Inc.*, Case No. 4:20-cv-05640, ECF No. 407 at 12-65. Here, Epic has not offered evidence sufficient to "rebut the economic presumption" that consumers "make a knowing choice to restrict their aftermarket options when they make a foremarket purchase." *Epic Games, Inc.*, 67 F.4th at 978. Rather, Epic's expert Dr. Bernheim admitted that users "choos[e] the set of apps" available on a platform when selecting a phone. Moreover, Epic's other expert Dr. Tadelis admitted that Google reduced prices in response to Apple, which is inconsistent with Epic's Android-only market definition. Second, Epic is collaterally estopped from asserting that Apple and Google do not compete with respect to app distribution. *See id.* at 985. Third, Epic failed to present sufficient evidence that out-of-app payment systems are not reasonable substitutes for in-app payment systems. Fourth, Epic failed to present sufficient evidence for why the market is worldwide excluding China rather than the U.S. only; there is no evidence that users would use an app store in another country or language, nor has Epic offered criteria for the countries it included while excluding China. Epic's expert Dr. Tadelis also conceded that payment processors vary by country.

**4.  Monopoly and Market Power (Counts 1, 2, 5-9, 11, and 12):** Epic's allegation that Google has monopoly or market power in an app distribution or in-app billing market fails. Epic has not offered legally sufficient direct or indirect evidence to conclude that Google has monopoly or market power in a relevant market. Google's market share is too low in any legally supported market. *See Image Tech Servs. v. Kodak*, 125 F.3d 1195, 1206 (9th Cir. 1997). Additionally, Google's direct competition with Apple and other market alternatives defeats any plausible assertion of monopoly or market power. There is no evidence that Google's prices are above a competitive level for the actual services it provides or not competitive with alternative platforms. *See NCAA v. Bd. of Regents*, 468 U.S. 85, 109 n.38 (1984). Epic has also failed to overcome evidence that Google set its service fee at a time when it, as a new entrant, lacked monopoly or market power, and evidence that output and innovation have increased over time.

**5.  Anticompetitive Effects (Counts 1-2, 5-9, 11-12):** Each of Epic's rule-of-reason claims fail because no reasonable jury could conclude that the conduct challenged is anticompetitive or harmed competition. *See, e.g., Verizon v. Trinko, LLP*, 540 U.S. 398, 407 (2004); *FTC v. Qualcomm*, 969 F.3d 974, 990-991 (9th Cir. 2020). First, Epic has not offered legally sufficient evidence that GVP involved below-cost pricing, decreased output, or increased prices. Second,

MUNGER, TOLLES & OLSON LLP

GVP also cannot cause antitrust injury because offering customers a better deal is not conduct the antitrust laws were designed to prevent. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 115-116 (1986). Third, Epic has not shown that MADA and RSA 3.0's premier tier foreclose competition because they are voluntary, easily terminable, do not block other distribution channels, leave shelf-space for competitors, and offer incentives for OEMs. *See, e.g., Coronavirus Rep.*, 85 F.4th at 957; *Allied Orthopedic v. Tyco*, 592 F.3d 991, 997 (9th Cir. 2010); *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1030 (N.D. Cal. 2015). The premier tier applies to less than 10% of all devices and approximately 25% of new devices. Fourth, Epic has not introduced sufficient evidence that any agreements with Facebook or network carriers were anticompetitive. Fifth, Epic's expert Dr. Mickens admitted that sideloading warnings are justified by risks to users and Epic failed to show how many users would have sideloaded apps without the alleged conduct. Fifth, it is not anticompetitive for Google to require use of its billing system "to be compensated for its IP investment." *Epic Games*, 67 F.4th at 996. Finally, Project Banyan had no effect because it was never implemented. Additionally, Epic cannot aggregate disparate lawful acts to establish anticompetitive conduct. *See, e.g., United States v. Google LLC*, 2023 WL 4999901, at *12 (D.D.C. Aug. 4, 2023).

**6.  Less Restrictive Alternatives (Counts 1, 2, 5-9, 11-12):** Each of Epic's rule-of-reason antitrust claims fail because there is not a sufficient evidentiary basis to reject Google's procompetitive and business justifications for the challenged conduct . The evidence established that sideloading warnings are justified by security risks; that Google Play Billing allows Google to efficiently collect its service fee for the use of its services and IP; that Google's agreements with OEMs and the GVP agreements bolster Android's competition with iPhones; and, among other things, that the OEM agreements benefit users and OEMs by effectively lowering prices for OEMs, improving user experience and security vis-a-vis iPhones, and allowing Google to support the development of the open source Android operating system. Epic has failed to show that the procompetitive benefits are pretextual and to identify any substantially less restrictive alternatives that would be "virtually as effective in serving the [] procompetitive purposes without significantly increased cost" and without imposing an improper duty to deal on Google. *Epic Games*, 67 F.4th at 990 (alterations and quotations omitted); *see also Trinko*, 540 U.S. at 408. Nor did Epic provide legally sufficient evidence of such less restrictive alternatives. Epic's expert Dr. Mickens admitted that Google would bear the cost and burden of either reviewing all Android apps for malware–even apps not distributed by Google–or certifying third-parties to do so. Epic has also failed to provide a less restrictive alternative to Google Play Billing that is virtually as effective in serving its business purpose without significantly increasing cost.

**7.  Rule-of-Reason Tying Claims (Counts 7, 8, 11, and 12):** Epic's rule-of-reason tying claims, and related claims, fail because there is no sufficient evidence that Google Play and Google Play Billing are separate products; Epic has not shown that developers demand one separately from the other. *See, e.g., Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21-22 (1984). Nearly all similar platforms, such as Apple, Samsung, Xbox, and PlayStation, use the same fee-collection arrangement. *See, e.g., United States v. Microsoft Corp.*, 253 F.3d 34, 87 (D.C. Cir. 2001). Epic has not offered sufficient evidence of foreclosure; no developer is coerced to use Google Play Billing over other options, such as advertising, "freemium," or "consumption-only" distribution. *See Fortner Enters. v. U.S. Steel*, 394 U.S. 495, 501 (1969). The alleged tie is also legal under the rule of reason because, among other things, it allows Google to be compensated for the Google Play store and Epic has not identified a cognizable alternative.

**8.  Adverse Inference:** An adverse inference instruction cannot salvage claims that are legally insufficient. *See Epic Sys. Corp. v. Tata Consultancy Servs.* , 980 F.3d 1117, 1136 (7th Cir. 2020).

4