| | |
|---|---|
| Paul J. Riehle (SBN 115199) | Glenn D. Pomerantz (SBN 112503) |
| paul.riehle@faegredrinker.com | glenn.pomerantz@mto.com |
| **FAEGRE DRINKER BIDDLE & REATH LLP** | **MUNGER, TOLLES & OLSON LLP** |
| Four Embarcadero Center, 27th Floor | 350 South Grand Avenue, Fiftieth Floor |
| San Francisco, CA 94111 | Los Angeles, California 90071 |
| Telephone: (415) 591-7500 | Telephone: (213) 683-9100 |
| | |
| | Brian C. Rocca (SBN 221576) |
| Christine A. Varney (*pro hac vice*) | brian.rocca@morganlewis.com |
| cvarney@cravath.com | **MORGAN, LEWIS & BOCKIUS LLP** |
| **CRAVATH, SWAINE & MOORE LLP** | One Market, Spear Street Tower |
| 825 Eighth Avenue | San Francisco, CA 94105-1596 |
| New York, New York 10019 | Telephone: (415) 442-1000 |
| Telephone: (212) 474-1000 | |
| | *Counsel for Defendants Google LLC et al* |
| *Counsel for Plaintiff Epic Games, Inc.* | |

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT SET OF PROPOSED JURY INSTRUCTIONS**<br><br>Judge: Hon. James Donato<br>Trial Date: November 6, 2023<br>Time: 9:00 am<br>Place: Courtroom 11, 19th Floor |

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Instruction No. 2 Re CLAIMS AND DEFENSES | 1 |
| Instruction No. 12 Re STIPULATIONS OF FACT | 3 |
| Instruction No. 27 Re RULE OF REASON – SECTION ONE CLAIMS | 5 |
| Instruction No. 38 Re TYING – RULE OF REASON: BUSINESS JUSTIFICATION DEFENSE | 7 |

**Instruction No. 2 Re**
**CLAIMS AND DEFENSES**

I will give you a brief summary of the positions of the parties.

The plaintiff is Epic Games, Inc. ("Epic").

The defendants are Google LLC and certain of its affiliates ("Google").

Epic asserts that defendant Google has violated federal and state antitrust laws through a variety of means that foreclose competition in an alleged market for Android app distribution and in an alleged market for in-app billing services on Android devices. Epic alleges that Google's conduct harms mobile app developers and consumers by increasing prices and reducing quality and innovation.

Google denies Epic's claims. Google contends that the relevant market is not limited to Android, but also includes Apple's iOS and other platforms where users and developers can engage in transactions for digital content. Google further contends that its conduct has not foreclosed competition, but rather has promoted competition by enabling Android to compete with iOS and other platforms. Google contends that its conduct benefited users and developers.

Google also brought a counterclaim against Epic alleging that Epic breached the Developer Distribution Agreement ("DDA"). Epic and Google have now stipulated to the following:

1. Epic incorporated its own payment solution into Fortnite on Google Play as an alternative to Google Play Billing, which [**Google's Position:** breached] [**Epic's Position:** was inconsistent with /contrary to] the terms of the DDA.[1]

---

[1] **Epic's Position:** Epic does not dispute that its actions were contrary to the terms of the DDA. Epic however maintains an illegality defense to Google's claim of breach, which the Court has already ruled (accepting Google's position) is a question for the Court to decide, and not for the jury. Trial Tr. 3050:15-17. Google's representations of Epic's statements to the Court are inaccurate. *See* Tr. 3051:20-24 ("We are not arguing here that the conduct was not in breach if the contract is valid."); Trial Tr. 3240:2-5 ("The only thing that worries us there is that if we are stipulating to anything, we want to at least say that to the extent or if the contract is legal, then we admit that we breached it."). **Google's Position:** This stipulation is not sufficient to take the issue away from the jury unless Epic concedes that it breached the DDA. That is the basis of Google's counterclaim. Despite admitting to this breach on the record in open court, Epic now refuses to use the word "breach." *See* Trial Tr. 3240:5 ("[W]e admit we breached [the DDA]."). During meeting-and-conferring, Epic has stated that it will only use the word "breach" if it can also include its illegality defense. But the Court has already rejected that proposal. *Id.* at 3240:11-13; 3050:15-17. Google objects to this language. The Court has already ruled that illegality is a question for the Court, and not for the jury. Including an instruction about Epic's illegality defense, which is not for the jury, is both improper and confusing.

2. Epic did not pay Google $398,931.23 in fees that Google would have received if transactions processed using Epic's payment solution were instead processed through Google Play Billing.

[You will therefore not be asked to address that claim.][2]

---

[2] **Epic's Position:** Epic submits that this language is necessary context to allow the jury to understand the outcome of the stipulation and how it impacts their role in the case. **Google's Position:** Google submits that this language should only be included if this court has granted or will grant judgment on this claim. Epic will not even stipulate to using the word "breached." Unless and until Google's counterclaim is resolved into a judgment, Google respectfully submits that the questions of breach and damages should either be resolved by the Court as a matter of law on the basis of Epic's concessions, *see* Fed. R. Civ. P. 50(a), or submitted to the jury along with Epic's concessions.

**Instruction No. 12 Re**
**STIPULATIONS OF FACT**

The parties have agreed to certain facts that I will now read to you. You must treat these facts as having been proved.

1. Google LLC is a wholly-owned subsidiary of Alphabet Inc.
2. Google offers various products and services, including Android OS, Chrome, Gmail, Drive, Maps, Play, Search, YouTube, Google Cloud, and Search Ads 360.
3. A mobile operating system ("OS") provides multi-purpose computing functionality to a mobile device such as a smartphone or a tablet.
4. To be useful to consumers, a mobile OS must be able to run software applications or "apps."
5. A mobile OS facilitates the use of apps through code, such as application programming interfaces ("APIs"), which app developers use to create apps that are compatible with the OS.
6. An "app" is software separate from the mobile OS that runs on a mobile device and adds specific functionalities to a mobile device.
7. Consumers use apps to perform a variety of tasks on their mobile devices.
8. Entities that manufacture mobile devices -- such as Samsung or Motorola -- are referred to as original equipment manufacturers ("OEMs").
9. OEMs pre-install an OS on the mobile devices that they manufacture and sell.
10. Instead of developing their own OS, almost all OEMs today license a third party's OS for their devices.
11. Apple does not license iOS to other OEMs.
12. The Google Play Store is an app store owned by Google that distributes apps on devices running the Android OS.
13. To distribute an app on the Google Play Store, app developers must first enter into Google's Developer Distribution Agreement, referred to as the DDA.
14. The predecessor to the Play Store was called Android Market.

15. Google acquired the Android mobile operating system in 2005.
16. Google launched Android Market in October 2008.
17. Google launched its in-app billing service in 2011.
18. Google's Android Market app store was rebranded as the Google Play Store in March 2012.
19. Timothy Sweeney is Epic Games, Inc.'s ("Epic") controlling shareholder, CEO, and board chairman.
20. In April 2020, Epic made the decision to make Fortnite available for download through the Play Store.
21. Epic executed Google's DDA.
22. Epic incorporated its own payment solution into Fortnite on Google Play as an alternative to Google Play Billing, which [**Google's Position:** breached] [**Epic's Position:** was inconsistent with/ contrary to] the terms of the DDA.[3]
23. Epic did not pay Google $398,931.23 in fees that Google would have received if transactions processed using Epic's payment solution were instead processed through Google Play Billing.
24. On August 13, 2020, Epic filed its complaint against Google.

---

[3] **Epic's Position**: Epic does not dispute that its actions were contrary to the terms of the DDA. Epic however maintains an illegality defense to Google's claim of breach, which the Court has already ruled (accepting Google's position) is a question for the Court to decide, and not for the jury.  Trial Tr. 3050:15-17.  Google's representations of Epic's statements to the Court are inaccurate.  *See* Tr. 3051:20-24 ("We are not arguing here that the conduct was not in breach if the contract is valid."); Trial Tr. 3240:2-5 ("The only thing that worries us there is that if we are stipulating to anything, we want to at least say that to the extent or if the contract is legal, then we admit that we breached it.").
**Google's Position**: As explained above, this stipulation is not sufficient to take the issue away from the jury unless Epic concedes that it breached the DDA.  That is the basis of Google's counterclaim.  Despite admitting to this breach on the record in open court, Epic now refuses to use the word "breach."  *See* Trial Tr. 3240:5 ("[W]e admit we breached [the DDA]."). During meeting-and-conferring, Epic has stated that it will only use the word "breach" if it can also include its illegality defense.  But the Court has already rejected that proposal.  *Id.* at 3240:11-13; 3050:15-17.  Google objects to this language.  The Court has already ruled that illegality is a question for the Court, and not for the jury.  Including an instruction about Epic's illegality defense, which is not for the jury, is both improper and confusing.

**Instruction No. 27 Re**
**RULE OF REASON – SECTION ONE CLAIMS[4]**

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether any of the restraints challenged here are unreasonable. The restraints challenged here are the agreements that Google requires mobile app developers to enter as a condition of distributing apps on Google Play (called the DDA agreements); [**Epic's Proposal**: agreements and alleged side deals with app developers under Google's Project Hug or Games Velocity Program (including with Activision Blizzard King and Riot Games)][**Google's Proposal:** alleged agreements with Google's alleged competitors or potential competitors such as the Games Velocity Program or Project Hug developers]; and agreements with original equipment manufacturers that sell mobile devices (including the MADA and RSA agreements).

In making this determination, you must first determine whether Epic has proven that the challenged restraints have resulted in a substantial harm to competition in a relevant product and geographic market. If you find that Epic has proven that the challenged restraints result in a substantial harm to competition in a relevant market, then you must consider whether the restraints produce countervailing competitive benefits. If you find that they do, then you must balance the competitive harm against the competitive benefit. However, if you find that the competitive benefits could be achieved through substantially less restrictive alternatives, then you may not consider those benefits when balancing harms against benefits. The challenged restraints are illegal under Section 1 of the

---

[4] Both parties agreed to remove reference to Facebook and the carrier agreements from this instruction. However, the parties disagree on the description of Project Hug. Epic contends that its position fairly and neutrally describes the Project Hug agreements, both written and unwritten, that it challenges, particularly because Google does not dispute the existence of the written Project Hug agreements and because Epic challenges these agreements also with respect to agreements that prevent Hug developers that are *not* potential competitors of Google from executing exclusive deals with third-party stores. Google contends that Epic has inserted new advocacy regarding the Games Velocity Program (or Project Hug) agreements into its proposed instruction. Rather than refer to those agreements neutrally as "alleged agreements with Google's alleged competitors or potential competitors," as in the existing instruction proposed by the Court, Epic has proposed the following language: "agreements and alleged side deals with app developers." Such advocacy is inappropriate for a jury instruction and is not consistent with the Court's direction that the parties attempt to reach agreement on this instruction. Google's formulation appropriately captures the alleged agreements at issue. Google notes that, in addition, it preserves the arguments that it made on the record at trial regarding this instruction. *See* Trial Tr. 3263:22-3268:9.

1  Sherman Act only if you find that the competitive harm substantially outweighs the competitive
2  benefit.
3      I will now review each step of the analysis in more detail.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Instruction No. 38 Re**
**TYING – RULE OF REASON: BUSINESS JUSTIFICATION DEFENSE[5, 6]**

Google contends that the alleged tying arrangement is justified. If you find that Epic has proven all elements of a tying claim, then you should consider whether Google has proven, by a preponderance of the evidence, a business justification for the tying arrangement. Google has the burden of proof on this issue.

Google contends that the tying arrangement is justified because it enables Google efficiently to collect compensation for the use of its services and intellectual property and ensures that Google can receive compensation for its services and intellectual property.

In determining whether the tying arrangement is justified, you must decide whether it serves a legitimate business purpose of Google. In making this determination, you should consider whether the justification Google offers is the real reason that it imposed the tying arrangement.

You must also consider whether Google's claimed objective (if legitimate)[7] could reasonably

---

[5] Google contends that, in lieu of the paragraphs beginning at line 13 of this page and line 4 of the next page, it is entitled to the following language, which the Court stated it is considering at the charging conference: "You must also consider whether Epic has proven that Google's claimed objective could reasonably have been realized through substantially less restrictive means. To qualify as substantially less restrictive, an alternative means must be virtually as effective in serving Google's legitimate business purposes without significantly increased costs. Even if some type of constraint is necessary to promote a legitimate business interest, Google must not adopt a constraint that is substantially more restrictive than reasonably necessary to achieve that interest." This proposed language is required by *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 990 (9th Cir. 2023) ("To qualify as substantially less restrictive, an alternative means must be virtually as effective in serving the [defendant's] procompetitive purposes ... without significantly increased cost.") (quotation marks and citations omitted).

[6] Epic's position is that further argument on this instruction is inappropriate and was not invited by the Court. In any event, the current language, which matches the ABA Model Instruction and already speaks to the costs of any less restrictive alternative ("more or less expensive"), is sufficient. *See, e.g., Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2162 (2021) (holding the test is whether "substantially less restrictive means exist to achieve any proven procompetitive benefits"); *compare* ABA Model Instruction 2.E.11 ("You must also consider whether defendant's claimed objective could reasonably have been realized through less restrictive means."). Google's proposed instruction is yet another attempt to use out of context language from case law to "gin[] up favorable instructions" and "editorialize, sway, color, spin" (Trial Tr. 3258:17-25). The Court should adopt the language from the Model, which is what appears in the Court's proposed final instruction.

[7] Epic adds the statement "if legitimate" in parentheticals here to emphasize that the procompetitive justification offered by Google must serve a "legitimate business purpose of Google", as required elsewhere in the model instruction. Google submits that this addition was not invited by the Court and is inappropriate. The immediately preceding paragraph already says that business justifications must be "legitimate." This addition is redundant and prejudicial.

have been realized through substantially less restrictive means. Even if some type of constraint is necessary to promote a legitimate business interest, Google must not adopt a constraint that is more restrictive than reasonably necessary to achieve that interest.

In determining whether Google's claimed legitimate business purpose could reasonably have been achieved through other means, you may assess such factors as whether other means to achieve Google's objective were more or less expensive and more or less effective than the means chosen by Google.

If you find that Google could reasonably have achieved its claimed legitimate business purpose by substantially less restrictive means, then you may find that there was no business justification and find for Epic on the tying claims. If you find that the tying arrangement serves a legitimate business purpose of Google, and that there are not substantially less restrictive means reasonably available to achieve that purpose, then you must find for Google and against Epic on the tying claim.

| | | |
|---|---|---|
| 1 | DATED:  December 4, 2023 | CRAVATH, SWAINE & MOORE LLP |
| 2 | | Christine Varney *(pro hac vice)* <br> Gary A. Bornstein *(pro hac vice)* |
| 3 | | Timothy G. Cameron *(pro hac vice)* <br> Yonatan Even *(pro hac vice)* |
| 4 | | Lauren A. Moskowitz *(pro hac vice)* <br> Justin C. Clarke *(pro hac vice)* |
| 5 | | Michael J. Zaken *(pro hac vice)* <br> M. Brent Byars *(pro hac vice)* |
| 6 | | FAEGRE DRINKER BIDDLE & REATH LLP <br> Paul J. Riehle (SBN 115199) |
| 7 | | Respectfully submitted, |
| 8 | | By: */s/ Gary A. Bornstein* |
| 9 | | Gary A. Bornstein |
| 10 | | *Counsel for Plaintiff Epic Games, Inc.* |
| 11 | DATED:  December 4, 2023 | MUNGER, TOLLES & OLSON LLP |
| 13 | | By: */s/ Glenn D. Pomerantz* |
| 14 | | Glenn D. Pomerantz |
| 15 | | *Attorneys for Defendants Google LLC et al.* |
| 17 | DATED: December 4, 2023 | MORGAN, LEWIS & BOCKIUS LLP |
| 19 | | By: */s/ Brian C. Rocca* |
| 20 | | Brian C. Rocca |
| | | *Attorneys for Defendants Google LLC et al.* |

**E-FILING ATTESTATION**

I, Gary A. Bornstein, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

　　　　　　　　　　　　　　　　　　　　　　 */s/ Gary A. Bornstein*
　　　　　　　　　　　　　　　　　　　　　　　Gary A. Bornstein