1  LISA J. DEMSKY (State Bar No. 186006)
   Lisa.Demsky@mto.com
2  JESSICA O. LAIRD (State Bar No. 331713)
   Jessica.Laird@mto.com
3  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
4  Los Angeles, California 90071-3426
   Telephone:    (213) 683-9100
5  Facsimile:    (213) 687-3702

6

   *Attorneys for Non-Party Riot Games, Inc.*
7

8                       UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11 | IN RE GOOGLE PLAY STORE | Case Nos.   3:21-MD-02981-JD
12 | ANTITRUST LITIGATION |              3:20-CV-05671-JD
                                         3:20-CV-05761-JD
13 |                       |             3:21-CV-05227-JD
                                         3:22-CV-02746-JD
14 | THIS DOCUMENT RELATES TO: |

15 | *In re Google Play Store Antitrust Litigation*, | **NON-PARTY RIOT GAMES, INC'S STATEMENT IN SUPPORT OF SEALING CONFIDENTIAL EXHIBITS**
16 | No. 3:21-md-02981-JD |

17 | *Epic Games, Inc. v. Google LLC et al.*, No. | Judge: Hon. James Donato
   | 3:20-cv-05671-JD |

18

19

20

21

22

23

24

25

1  Pursuant to Civil L.R79-5(f), Non-Party Riot Games, Inc. ("Riot") submits this statement in
2  support of the parties' Joint Administrative Motion to Consider Whether Another Party's Material
3  Should Be Sealed ("Administrative Motion to Seal").
4  Consistent with this Court's prior oral ruling, and with this Court's ruling on Spotify's motion
5  to seal, Riot has narrowly tailored this request to five documents that contain highly sensitive non-
6  public information that would disadvantage non-party Riot Games in current, ongoing, and future
7  negotiations, including one specific active, highly confidential negotiation, in accordance with the
8  Court's prior Order.  Riot attaches the Declaration of Dan Nabel ("Nabel Declaration") and the
9  Declaration of Lisa Demsky ("Demsky Declaration") in support of its statement.  For the reasons
10 stated below, Riot requests that the Court grant the parties' Administrative Motion to Seal.

11 **I.    RIOT'S PRIOR MOTION TO SEAL**

12 On November 27, 2023, Riot filed an administrative motion to seal Deposition Exhibits 1221,
13 1222, 1226, 1227, and 1229, and portions of the October 27, 2023 deposition of Mark Sottosanti
14 ("Sottosanti Deposition") relating to those documents.  Dkt. 811; Demsky Declaration, ¶ 2.  Neither
15 Google nor Epic Games opposed that sealing request.  *Id.*  Riot received notice Monday evening that
16 Riot's sealing request would be raised on Tuesday, November 28, and had counsel present on
17 November 28 to be heard.  Demsky Declaration, ¶ 3.  At that time, the Court ruled orally: "I'm going
18 to do the same thing I did for Spotify. . . .  It's on the transcript.  Any internal, purely internal, no.
19 Anything else, Yes, it will come in.  Okay?  So fees, whatever, that comes in.  Anything purely
20 internal to Riot, . . . will not come in.  Look at the Spotify order.  That will give you the paradigm."
21 *Id.* ¶ 4, Ex. A at 2762:20-2763:2.
22 That evening, Riot obtained the transcript from the Spotify ruling, tailored its designations to
23 that ruling, and provided them to the parties, requesting sealing of five Exhibits and certain portions
24 of the deposition transcript.  In the Spotify Order, the Court ordered the sealing of any "evidence of
25

Spotify's internal rationales for proposals made to Google leading to the execution of the []
Agreement, Spotify's internal negotiation strategy, and Spotify's contingency planning during the
negotiations in the event of an agreement was not reached will be sealed." *Id.* ¶ 5, Ex. B at 1876:2-7.
On November 29, 2023, Riot was informed that pursuant to a discussion with the Court that morning
while non-party Riot was not present and without an opportunity for Riot to be heard, the Sottosanti
Deposition Exhibits were displayed in open Court.

Riot filed an Administrative Motion to Seal Portions of the Trial Record on December 8, 2023, requesting that the Court permit sealing in line with its November 28 oral ruling and seal those limited portions of the trial record and the five Exhibits in the record that reference the following categories of confidential information that align with this Court's sealing order relating to Spotify: (i) internal Riot negotiation strategy and market considerations; (ii) non-public technical capabilities and content delivery considerations; (iii) internal discussion of meetings and negotiation strategy; and (iv) internal negotiation considerations.

## II.     COMPELLING REASONS JUSTIFY SEALING RIOT'S EXHIBITS

Portions of the trial record contain "sources of business information that might harm [Riot's] competitive standing," and compelling reasons justify their sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (*quoting Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)).  The five Exhibits to the Sottosanti Deposition identified in paragraph 4 of the Nabel Declaration constitute "confidential business material, marketing strategies, [and] product development plans [that] could result in improper use by business competitors seeking to replicate [Riot's] business practices and circumvent the time and resources necessary in developing their own practices and strategies." *Roley v. Google LLC*, No. 18-cv-07537-BLF, 2020 WL 13517498, at *1 (N.D. Cal. Apr. 28, 2020) (citation omitted).  As the Court's prior oral ruling on Riot's administrative motion suggests, the risk of competitive harm to Riot outweighs concerns about access to judicial records.  Riot is not a party to these proceedings and, as described in the declaration of Dan Nabel,

compelling reasons exist to seal those portions of the trial record that include the following information:

   A.   **Negotiation Strategy and Market Considerations:**  Exhibits 1221 and 1229 contain confidential negotiation strategy and considerations that are neither disclosed in the ordinary course of business nor generally made available to employees of Riot.  *See* Nabel Declaration, ¶ 3.  The analysis reveals confidential information about Riot's user base, costs, and revenues, and reflects Riot's internal negotiation strategies in its dealings with Google.  Riot personnel spent time and effort researching and analyzing the terms of a potential agreement with Google and its impact on Riot's current and future content delivery strategy in the marketplace.  The public disclosure of such information would competitively harm Riot by giving its competitors insight into Riot's business operations and its users' behavior.  Such disclosure could also undercut deal terms and Riot's negotiating position in active negotiations with other platforms and as such, this sensitive commercial information should be sealed.  *See Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *3 (N.D. Cal. June 17, 2021) (sealing confidential information regarding key commercial metrics).

   B.   **Technical Capabilities and Content Delivery Considerations:**  Exhibit 1222 contains confidential non-public information regarding Riot's engineering and technical capabilities. Riot strives to offer its content on a wide variety of devices and on those platforms where its users are present.  If Riot's product development considerations and technological capabilities regarding content delivery are made public and widely available, that information may be used by Riot's competitors to Riot's disadvantage in highly confidential ongoing negotiations.  *See* Nabel Declaration, ¶¶ 3, 4.  Moreover, Riot's competitors could use the information to inform their own technical and business strategies, including with respect to product strategy and distribution in competition against Riot. This would generally harm Riot's ability to compete and grow its business.

**C.** **<u>Internal Discussion of Meetings and Negotiation Strategy:</u>** Exhibit 1226 reveals internal impressions of Riot's and competitor's negotiating posture and business and financial considerations not disclosed to persons outside the Riot negotiating team. The high profile of these cases is likely to garner significant media and industry attention, and wide disclosure of this sensitive commercial information, which is the result of significant effort and discussions with Google, would give Riot's competitors an advantage in ongoing negotiations with Riot and even Google, to the potential detriment of Riot. *See Id.* ¶ 6.

**D.** **<u>Negotiation Considerations for Particular Deal Terms:</u>** Exhibit 1227 contains confidential negotiation strategy and considerations, and internal strategic analysis of terms and benefits to Riot from agreements, that are neither disclosed in the ordinary course of business nor generally made available to employees of Riot. *See Id.* ¶ 3. Because Riot partners with other platforms to deliver its content, Riot's business model not only depends on its ability to negotiate delivery agreements with platforms on favorable terms but also requires Riot to negotiate simultaneously with multiple distribution partners. Because Riot is continuously negotiating and renegotiating with those partners to ensure terms that are favorable and Riot's existing and/or potential partners could use this information in negotiations to extract terms and conditions from Riot they may not have otherwise been able to, sealing of this information is warranted. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7374214, at *4 (N.D. Cal. Dec. 20, 2016) (concluding that "the need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason").

1 | Consistent with this request and the Court's prior oral ruling on Riot's administrative motion
2 | to seal, Riot requests that those exhibits admitted into evidence be maintained under seal.
3 | DATED: December 27, 2023    MUNGER, TOLLES & OLSON LLP

By: _____/s/ Lisa J. Demsky_____
LISA J. DEMSKY
Attorneys for Non-Party Riot Games, Inc.