Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. # 336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF RAKESH PATEL IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS SUBMITTED IN CONNECTION WITH GOOGLE'S OBJECTIONS TO EPIC'S PROPOSED INJUNCTION**<br><br>Judge: Hon. James Donato |

I, Rakesh Patel, declare as follows:

1.     I am currently a General Manager, Android Platform and Partnerships, for Defendant Google LLC (along with Google-affiliated entities, "Google").  I have been employed by Google since January 2003 and have held my current position since December 2013.  Over the course of my employment at Google, I have acquired personal knowledge of Google's practices and procedures concerning the maintenance of the confidentiality of its contracts and contractual terms, including with carrier partners such as T-Mobile.

2.     I submit this declaration in support of the Administrative Motion to Seal Materials Submitted in Connection With Google's Objections to Epic's Proposed Injunction ("Motion"), filed on May 2, 2024 in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL"); s*ee also Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.).

3.     The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversations with other knowledgeable employees of Google.  If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

**The Material to Be Sealed Is Highly Confidential Because It Reflects Non-Public Commercial Agreements and Terms**

4.     As demonstrated below, all the material for which Google requests sealing is maintained as highly confidential.  To the best of my knowledge, none of this material has been publicly disclosed.

5.     As a matter of routine practice and internal policy, Google and its employees strictly treat as confidential, inter alia, (i) internal, non-public financial information; (ii) non-public commercial proposals to third parties; (iii) non-public agreements with third parties; (iv) internal surveys and analyses of customer preferences, spending, revenue, market conditions, business strategy, competitive dynamics, and commercial opportunities; (v) non-public financial

1

DECLARATION OF RAKESH PATEL IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH GOOGLE'S RESPONSE TO EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

forecasts and business plans; (vi) trade secrets; and (vii) other sensitive material that, if publicly disclosed, could potentially enable Google's competitors to undermine Google's competitive position in the marketplace, allow current or prospective business partners or counterparties to take unfair advantage of Google in negotiations or other business affairs, violate Google's confidentiality obligations to third parties, or otherwise prejudice Google's business interests. In my experience and to the best of my knowledge, Google does not disclose internal documents, data, or information of this nature outside of the company, except to authorized third parties when so required or permitted by law or contract. To that end and in order to prevent inadvertent revelation of this information to the public, Google has several policies in place like prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties, limiting access to certain internal systems, permitting access to document databases on a need-to-know basis, and requiring the use of an encrypted email system. I am also aware that, generally, Google employees are required to sign a confidentiality agreement requiring each employee to keep information confidential and shared only within the company.

6.      Third parties—including Google's customers, suppliers, business partners, and others who interact or transact with Google in an array of contexts—entrust highly sensitive, non-public, and confidential information to Google every day. These third parties have an expectation that Google can and will protect the confidentiality of that information. In many cases, Google is contractually bound to keep that information confidential. In my experience and to the best of my knowledge, Google does not disclose internal documents, data, or information reflecting third parties' confidential information outside of the company, unless and only to the extent it has been authorized (or is lawfully permitted or required) to do so. Rather, as noted above, Google policies and protocols are designed to ensure the confidentiality of third-party material is strictly maintained.

7.      The public disclosure of Google's internal, confidential material could, among other things, harm Google's business and customer relationships, undermine Google's ability to retain and attract customers and business partners who entrust Google with their confidential

1    information, jeopardize Google's ability to conduct business with current and prospective

2    business partners, enable Google's competitors to undermine Google's competitive position in

3    the marketplace, allow current or prospective business partners or counterparties to take unfair

4    advantage of Google in negotiations or other business affairs, or otherwise prejudice Google's

5    business interests.  These materials therefore derive economic value from not being generally

6    known to Google's competitors, counterparties, or the public.  The release of this information to

7    the public will cause tangible commercial injury to Google.

8         8.      I understand that this Motion requests that the Court maintain the specific

9    information identified below under seal. For the reasons stated below, this information is

10   confidential and highly sensitive, and if publicly disclosed, could significantly prejudice

11   Google's competitive position by disclosing Google's confidential contractual terms, putting

12   Google at unfair disadvantage in future business negotiations, and permitting Google's

13   competitors to gain unfair advantage in competition with Google.

### Specific Information to Be Sealed

**Declaration of Dane P. Shikman In Support of Google's Objections to Epic's Proposed Injunction – Exhibit 21 (GOOG-PLAY-001507814)**

17       9.      **Exhibit 21 (entire document).** This document is a true and correct copy of

18   Google's 2017 Direct Carrier Billing ("DCB") Agreement with non-party carrier T-Mobile.  This

19   text reflects Google's non-public, competitively sensitive, and current commercial details

20   contractual agreements between Google and its carrier partner.   This text reflects Google's non-

21   public, competitively sensitive, and current commercial details, including highly negotiated

22   financial terms, of a contractual agreement between Google and T-Mobile.  These contractual

23   terms, which were subject to lengthy negotiations over the course of six to nine months, remain

24   in force today (through a series of amendments extending the terms, including the most recent

25   amendment signed in 2022).  Google's most recent amendment extending this agreement is set to

26   expire this year and will soon be up for renegotiation.  Were this information to be publicly

27   revealed, it could cause Google competitive harm by revealing financial terms with a specific

28   and ongoing business partner, which could be used by counter-parties (including other carriers)

3

in negotiations seeking similar or better terms and which may cause significant harm to Google's competitive standing and/or negotiations with counter-parties. One way Google competes to make Google Play (and more broadly Android) attractive to users and developers is through direct carrier billing, or "DCB," agreements. Among other things, DCB agreements allow Google Play to offer its users more forms of payment, making it an attractive store for users and developers. If these sensitive, non-public terms relating to Google's DCB agreement in question were publicly revealed, Google's competitors could unfairly utilize these data points to negotiate better deals with carriers, or otherwise modify or augment their business operations in an effort to compete unfairly against Google. Alternatively, other carriers could use these data points to improve their negotiation position against Google.

10.     The text further implicates the confidentiality interests of a Google business partner, T-Mobile, who is not a party to this litigation, and who has a reasonable expectation that Google will maintain the confidentiality of contractual terms. Google's partnership with T-Mobile, which extends beyond the DCB agreement at issue here, relies on mutual trust that would be significantly threatened if the parties' confidential contractual terms were disclosed. Disclosure of Google and T-Mobile's confidential contractual terms would therefore disrupt and threaten the parties' overall partnership and ongoing workstreams, including DCB negotiations and other in-progress projects, which has the potential to harm both companies' business plans and strategy. The disclosure of T-Mobile's highly confidential information would also significantly harm this mobile carrier's business. For example, mobile carrier competitors could use this information to reap an unearned competitive advantage. For example, they could exploit this information—that they otherwise would not have access to—to inform their own business strategies or commercial negotiations.

**Statement of Dr. Gregory K. Leonard In Support of Google's Response to Epic's Proposed Injunction, dated May 2, 2024**

11.     **Page 10, Paragraph 21, footnote 32 (second to last sentence).** This text reflects Google's non-public, competitively sensitive, and current commercial details, including highly negotiated financial terms, of a contractual agreement between Google and a third-party carrier.

4

DECLARATION OF RAKESH PATEL IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH GOOGLE'S RESPONSE TO EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1   These contractual terms remain in force today.  Were this information to be publicly revealed, it

2   could cause Google competitive harm by revealing financial and other core agreement terms

3   with a specific and ongoing business partner, which could be used by counter-parties in

4   negotiations seeking similar or better terms and may cause significant harm to Google's

5   competitive standing.  Google competes with other app stores and billing providers by providing

6   a wide range of forms of payment to developers, including Direct Carrier Billing, or "DCB".

7   Moreover, Google's User Choice Billing program permits developers to offer alternative

8   payment solutions for apps distributed on Google Play.  If these sensitive, non-public terms

9   relating to DCB were publicly revealed, Google's competitors could unfairly utilize these data

10  points to negotiate better deals with carriers, or otherwise modify or augment their business

11  operations in an effort to compete unfairly against Google.  The text further implicates the

12  confidentiality interests of a Google business partner, who is not a party to this litigation, and

13  who has a reasonable expectation that Google will maintain the confidentiality of contractual

14  terms.  The disclosure of a mobile carrier's highly confidential information would also

15  significantly harm this mobile carrier's business.  For example, mobile carrier competitors could

16  leverage this information to reap an unearned competitive advantage. They could exploit this

17  information—that they otherwise would not have access to—to inform their own business

18  strategies and commercial negotiations.

19

20  I declare under penalty of perjury that the foregoing is true and correct. Executed on the 2nd day

21  of May, 2024, in Austin, Texas.

22

23

24

                                        DocuSign by:

                                        _____
                                        1366C8E8C2A34CC...
                                        Rakesh Patel

25

26

27

28

DECLARATION OF RAKESH PATEL IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH GOOGLE'S RESPONSE TO EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD