Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:  (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY  10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. # 336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS SUBMITTED IN CONNECTION WITH GOOGLE'S PROFFER REGARDING EPIC'S PROPOSED INJUNCTION**<br><br>Judge:  Hon. James Donato |

I, Christian Cramer, declare as follows:

1.    I am currently the Finance Director for Android Ecosystem (which includes Google Play) for Defendant Google LLC (along with Google-affiliated entities, "Google"). I have been employed by Google since September 2007 and have held my current position since February 2024. Prior to my current position, from late 2020 to February 2024, I was the Finance Director for Google Play. Before that, I was the Finance Director for Platforms and Ecosystems ("P&E") (which at the time included Google Play), from March 2017 to late 2020.  Over the course of my employment at Google, I have acquired personal knowledge of Google's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and marketing information.

2.    I submit this declaration in support of the Administrative Motion to Seal Materials Submitted in Connection With Google's Proffer Regarding Epic's Proposed Injunction ("Motion"), filed on June 24, 2024 in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL"); s*ee also Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.).

3.    The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversations with other knowledgeable employees of Google.  If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

**The Material to Be Sealed Is Highly Confidential Because It Reflects Non-Public Financial and Compensation Data**

4.    As demonstrated below, all the material for which Google requests sealing is maintained as highly confidential.  To the best of my knowledge, none of this material has been publicly disclosed.

5.    As a matter of routine practice and internal policy, Google and its employees strictly treat as confidential, inter alia, (i) internal, non-public financial information; (ii) non-

1

public commercial proposals to third parties; (iii) non-public agreements with third parties; (iv)
internal surveys and analyses of customer preferences, spending, revenue, market conditions,
business strategy, competitive dynamics, and commercial opportunities; (v) non-public financial
forecasts and business plans; (vi) trade secrets; and (vii) other sensitive material that, if publicly
disclosed, could potentially enable Google's competitors to undermine Google's competitive
position in the marketplace, allow current or prospective business partners or counterparties to
take unfair advantage of Google in negotiations or other business affairs, violate Google's
confidentiality obligations to third parties, or otherwise prejudice Google's business interests.  In
my experience and to the best of my knowledge, Google does not disclose internal documents,
data, or information of this nature outside of the company, except to authorized third parties
when so required or permitted by law or contract.  To that end and in order to prevent inadvertent
revelation of this information to the public, Google has several policies in place like prohibiting
employees from accessing information beyond what is reasonably necessary to perform their
duties, limiting access to certain internal systems, permitting access to document databases on a
need-to-know basis, and requiring the use of an encrypted email system.  I am also aware that,
generally, Google employees are required to sign a confidentiality agreement requiring each
employee to keep information confidential and shared only within the company.

6.      The public disclosure of Google's internal, confidential material could, among
other things, enable Google's competitors to undermine Google's competitive position in the
marketplace, allow current or prospective business partners or counterparties to take unfair
advantage of Google in negotiations or other business affairs, or otherwise prejudice Google's
business interests. These materials therefore derive economic value from not being generally
known to Google's competitors, counterparties, or the public. The release of this information to
the public will cause tangible commercial injury to Google.

7.      I understand that this Motion requests that the Court maintain the specific
information identified below under seal. For the reasons stated below, this information is
confidential and highly sensitive, and if publicly disclosed, could significantly prejudice

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH GOOGLE'S PROFFER REGARDING EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1   Google's competitive position by disclosing Google's confidential financial information,

2   compensation levels and data, and permitting Google's competitors to gain unfair advantage in

3   competition with Google.

**Specific Information to Be Sealed**

**Google's Proffer Regarding Epic's Proposed Injunction**

4

5

6       8.      **Page 2 (third bullet, between "approximately" and "a year", between**

7   **"between" and "and", and between "and" and end of sentence).** This text reflects Google's

8   internal, confidential financial estimate of the potential increase in app review costs if Google

9   were to review apps distributed by third-party app stores on Google Play. Google does not

10  publicly report or disclose its level of app review costs for Google Play, including any financial

11  sensitivities based on volume of apps reviewed. Public disclosure of this information would

12  significantly harm Google, as Google's rival app stores and platforms could use these

13  sensitivities to extrapolate a "cost-per-app" reviewed, in an effort to mimic or beat Google's

14  costs to more effectively compete against Google. Google has invested substantially in Google

15  Play's brand reputation for app safety and trust, and its competitors should not have insight into

16  the sensitive financial information underlying those investments, particularly on a go-forward

17  basis.

18      9.      **Page 25, lines 20 and 24-25 (between "approximately" and "annually",**

19  **between "would be" and "annually", between "between" and "and", and between "and"**

20  **and end of sentence).** As discussed further below with respect to Mr. Kleidermacher's

21  Declaration, this text reflects Google's internal, confidential financial estimates of both the total

22  cost of app review and the potential increase in app review costs if Google were to review apps

23  distributed by third-party app stores on Google Play. Google does not publicly report or disclose

24  its level of app review costs for Google Play, including any financial sensitivities based on

25  volume of apps reviewed. Public disclosure of this information would significantly harm Google,

26  as Google's rival app stores and platforms could use these sensitivities to extrapolate a "cost-per-

27  app" reviewed, in an effort to mimic or beat Google's costs to more effectively compete against

28

3

Google. Google has invested substantially in Google Play's brand reputation for app safety and trust, and its competitors should not have insight into the sensitive financial information underlying those investments, particularly on a go-forward basis.

**Declaration of Christian Cramer In Support of Google's Proffer Regarding Epic's Proposed Injunction**

10. **Pages 2-8 (charts below "Catalog Access", "Library Porting", and "Play Distribution of Third-Party App Store" headers, all numerical figures in columns C and D, except totals).** The text in these columns reflects Google's non-public, competitively sensitive, and current compensation data for employees throughout the United States relating to costs of potential implementation of changes to Google Play and the Android operating system, including broken down by stage of implementation and Full-Time Employee ("FTE") type and quantity. Google expends significant resources to keep this valuable data confidential as compensation is a key metric on which Google competes for valuable talent. Even within Google, this confidential information is guarded, and not shared widely within the company. For example, Google has several policies in place like prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties and limiting access to certain internal systems. If this information is revealed publicly, Google's competitors would gain key insights into Google's compensation structure, providing them with an unfair advantage in competition for hiring new employees and/or hiring employees away from Google. The harm is particularly acute because competitors will have insights into Google's compensation structure whereas Google will not have similar information about its competitors.

**Declaration of David Kleidermacher In Support of Google's Proffer Regarding Epic's Proposed Injunction**

11. **Paragraph 14, line 8 (between "is roughly" and "Below is").** This text reflects Google's internal current, confidential, and highly sensitive total cost estimate of running the Google Play store's app review process. Google does not publicly disclose or externally report these app review costs in public financial statements or otherwise. This cost reflects Google's investment in the security, safety, and privacy of its users across numerous organizations within

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL MATERIALS SUBMITTED IN CONNECTION WITH GOOGLE'S PROFFER REGARDING EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1    the company, which represents a significant component of Google Play's brand and reputation in

2    distributing apps and games to its users. Public disclosure of this confidential, annual investment

3    by Google into a specific aspect of its business would cause Google significant competitive

4    harm. Many competing platforms and stores operate their own review and content moderation

5    processes and costs for ensuring user privacy and safety, including as a way of distinguishing

6    their product from competitors. If competitors were to unfairly obtain access to Google's

7    confidential financial information relating to app review, it would allow those competitors to

8    benchmark against their own investments in trust and safety-related efforts for their platforms, in

9    an effort to more effectively compete against Google for users and developers. Google's

10   investment in app review for the Google Play store represents its strategic and business priorities,

11   which derive economic value from not being publicly known.

12          12.     **Paragraph 14 chart (numeric figures in chart in column labeled "$/year").**

13   This text reflects Google's internal current, confidential, and highly sensitive cost estimate of

14   running the Google Play store's app review process, including detailed breakdowns of cost per

15   year by team function. Google does not publicly disclose or externally report these app review

16   costs—in total or in such granular detail—in public financial statements or otherwise. Public

17   disclosure of this information would cause Google serious competitive harm for the same

18   reasons as stated above. Granular detail on Google Play's app review would give Google's

19   competitors detailed financial insight into Google's investment in its app review process,

20   allowing those competitors to adjust their own investments or strategy related to trust and safety

21   on their own platforms. Google's rival app stores or platforms could utilize this information to

22   adjust their own levels of investment or business strategy related to trust and safety, including

23   what types and volumes of labor to hire and how to price those cost estimates.

24          13.     **Paragraph 14 chart (all rows below "Team/Function").**  The text in these rows

25   reflects the highly confidential and non-public makeup and structure of Google's various teams

26   that conduct and support Google Play app review.  While it is publicly known that Google

27   conducts automated and human review of apps on Google Play for malware and other policy

28

1   violations, the organizational structure and nature of resources dedicated to these efforts is

2   confidential, and reflects competitively sensitive strategic planning. The structure and makeup of

3   Google Play's app review efforts further reflects years—if not decades—of learning and

4   continuous improvement to maintain the safety and security of the Play store.  If Google's app

5   store and other platform competitors were to unfairly have access to this non-public,

6   commercially sensitive and strategic information, they would be able to copy Google's allocation

7   and types of resources to their own app review and moderation efforts, in an effort to more

8   effectively compete against Google. Google's competitors should not be able to free-ride off of

9   Google's substantial and continued investment in improving the Google Play store through

10  access to this confidential information.

11         14.     **Paragraph 21, lines 5-6 (from "approximately" to "for app review" and from**

12  **"of over" to end of sentence).** This text reflects Google's internal, confidential financial

13  estimates of both the total cost of app review and the potential increase in app review costs if

14  Google were to review apps distributed by third-party app stores on Google Play. As stated

15  above, Google does not publicly report or disclose its level of app review costs for Google Play,

16  including any financial sensitivities based on volume of apps reviewed. Public disclosure of this

17  information would significantly harm Google for the same reasons as stated in the prior

18  paragraphs, as Google's rival app stores and platforms could use these sensitivities to extrapolate

19  a "cost-per-app" reviewed, in an effort to mimic or beat Google's costs to more effectively

20  compete against Google. Google has invested substantially in Google Play's brand reputation for

21  app safety and trust, and its competitors should not have insight into the sensitive financial

22  information underlying those investments, particularly on a go-forward basis.

23

24

25

26

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL MATERIALS
SUBMITTED IN CONNECTION WITH GOOGLE'S PROFFER REGARDING EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: DB3EF460-6A49-48C7-BF50-815F5D0D1617

16.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of June 2024, in Mountain View, California.

DocuSigned by:

*Christian Cramer*

Christian Cramer
B4481B12EA7742A...

CRAMER DECLARATION ISO OF GOOGLE'S PROFFER RE EPIC'S PROPOSED REMEDIES
Case Nos. 3:21-md-02981-JD, 3:20-cv-05671-JD