Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. # 336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS SUBMITTED IN CONNECTION WITH EPIC'S PROFFER RESPONSE REGARDING EPIC'S PROPOSED INJUNCTION**<br><br>Judge: Hon. James Donato |

I, Christian Cramer, declare as follows:

1. I am currently the Finance Director for Android Ecosystem (which includes Google Play) for Defendant Google LLC (along with Google-affiliated entities, "Google"). I have been employed by Google since September 2007 and have held my current position since February 2024. Prior to my current position, from late 2020 to February 2024, I was the Finance Director for Google Play. Before that, I was the Finance Director for Platforms and Ecosystems ("P&E") (which at the time included Google Play), from March 2017 to late 2020. Over the course of my employment at Google, I have acquired personal knowledge of Google's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and marketing information.

2. I submit this declaration in support of the Administrative Motion to Seal Materials Submitted in Connection With Epic's Proffer Response Regarding Epic's Proposed Injunction ("Motion"), filed on July 31, 2024 in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL"); s*ee also Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.).

3. The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversations with other knowledgeable employees of Google. If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

**The Material to Be Sealed Is Highly Confidential Because It Reflects Non-Public Financial and Compensation Data, Commercially Sensitive Business Strategy, and Personally Identifiable Information**

4. As demonstrated below, all the material for which Google requests sealing is maintained as highly confidential. To the best of my knowledge, none of this material has been publicly disclosed.

5. As a matter of routine practice and internal policy, Google and its employees strictly treat as confidential, inter alia, (i) internal, non-public financial information; (ii) non-public commercial proposals to third parties; (iii) non-public agreements with third parties; (iv) internal surveys and analyses of customer preferences, spending, revenue, market conditions, business strategy, competitive dynamics, and commercial opportunities; (v) non-public financial forecasts and business plans; (vi) trade secrets; (vii) personally identifying and sensitive personnel information pertaining to Google's employees, and (viii) other sensitive material that, if publicly disclosed, could potentially enable Google's competitors to undermine Google's competitive position in the marketplace, allow current or prospective business partners or counterparties to take unfair advantage of Google in negotiations or other business affairs, violate Google's confidentiality obligations to third parties, or otherwise prejudice Google's business interests. In my experience and to the best of my knowledge, Google does not disclose internal documents, data, or information of this nature outside of the company, except to authorized third parties when so required or permitted by law or contract. To that end and in order to prevent inadvertent revelation of this information to the public, Google has several policies in place like prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties, limiting access to certain internal systems, permitting access to document databases on a need-to-know basis, and requiring the use of an encrypted email system. I am also aware that, generally, Google employees are required to sign a confidentiality agreement requiring each employee to keep information confidential and shared only within the company.

6. The public disclosure of Google's internal, confidential material could, among other things, enable Google's competitors to undermine Google's competitive position in the marketplace, allow current or prospective business partners or counterparties to take unfair advantage of Google in negotiations or other business affairs, or otherwise prejudice Google's business interests. These materials therefore derive economic value from not being generally

known to Google's competitors, counterparties, or the public. The release of this information to the public will cause tangible commercial injury to Google.

7. I understand that this Motion requests that the Court maintain the specific information identified below under seal. For the reasons stated below, this information is confidential and highly sensitive, and if publicly disclosed, could significantly prejudice Google's competitive position by disclosing Google's confidential financial information, compensation levels and data, non-public and current internal business strategy, and permitting Google's competitors to gain unfair advantage in competition with Google.

**Specific Information to Be Sealed**

**Epic's Proffer Response to Google's Proffer Regarding Epic's Proposed Injunction [Dkt. 676]**
**(Exhibit A to Cramer Declaration)**

8. **Page 24, line 26 (between "totaling" and "million"); Page 25, line 1 (between "combined" and "million"), line 5 (between "another" and "million"), line 8 (between "total of" and "million"), line 9 (between "estimate of" and "million"), and line 19 (between "estimated" and "million").** This text reflects Google's internal current, confidential, and highly sensitive total cost estimate of running the Google Play store's app review process, as well as sub-totals of particular cost categories comprising that figure. Google does not publicly disclose or externally report these app review costs in public financial statements or otherwise. This cost reflects Google's investment in the security, safety, and privacy of its users across numerous organizations within the company, which represents a significant component of Google Play's brand and reputation in distributing apps and games to its users. Public disclosure of this confidential, annual investment by Google into a specific aspect of its business would cause Google significant competitive harm. Many competing platforms and stores operate their own review and content moderation processes and costs for ensuring user privacy and safety, including as a way of distinguishing their product from competitors. If competitors were to unfairly obtain access to Google's confidential financial information relating to app review, it would allow those competitors to benchmark against their own investments in trust and safety-

related efforts for their platforms, in an effort to more effectively compete against Google for users and developers. Google's investment in app review for the Google Play store represents its strategic and business priorities, which derive economic value from not being publicly known.

9. **Page 25, line 11 (between "more than" and "million").** This text reflects Google's internal, confidential financial estimate of the potential increase in app review costs if Google were to review apps distributed by third-party app stores on Google Play. As stated above, Google does not publicly report or disclose its level of app review costs for Google Play, including any financial sensitivities based on volume of apps reviewed. Public disclosure of this information would significantly harm Google for the same reasons as stated in the prior paragraphs, as Google's rival app stores and platforms could use these sensitivities to extrapolate a "cost-per-app" reviewed, in an effort to mimic or beat Google's costs to more effectively compete against Google. Google has invested substantially in Google Play's brand reputation for app safety and trust, and its competitors should not have insight into the sensitive financial information underlying those investments, particularly on a go-forward basis.

**Epic's Proffer Response to Google's Proffer Regarding Epic's Proposed Injunction – Exhibit 1 (Kleidermacher Deposition Excerpts) [MDL Dkt. 676-1]
(Exhibit B to Cramer Declaration)**

10. **Pages 67-71, line 8, to Page 71, line 9 (between "I'm all ears." And "Q. Now,").** This text reflects a description of confidential, current workstreams within Google related to potential changes to app safety vetting on Android, unrelated to any proposed remedy by Epic related to this litigation. These strategic plans are preliminary, ongoing, and have not been publicly disclosed or reported. Disclosure of this non-public information would cause competitive harm to Google by alerting competing app stores and platforms to Google's internal, strategic plans to improve app safety, allowing those competitors to adjust their own efforts in an attempt to better compete with Google. For example, competing platforms could mimic Google's plans in an attempt to enhance their own brand and reputation on trust and safety, potentially to the detriment of Google.

11.     **Page 131, line 24 (between "of" and "a year"); Page 133, line 5 (between "realm of" and "of dollars"), line 7 (between "would cost" and "of dollars"), line 15 (between "they're" and "either"), line 17 (between "were" and "Q. Okay."), line 19 (between "range of" and "a year"), and line 25 (between "it's in the" and end of sentence); Page 134, line 6 (between "vicinity of" and "a year").** This text reflects approximate dollar figures and ranges related to Google's internal, confidential financial estimate of the total cost of app review on Google Play. As stated above, Google does not publicly report or disclose its level of app review costs for Google Play. Public disclosure of this information would significantly harm Google for the same reasons as stated in the prior paragraphs. Google has invested substantially in Google Play's brand reputation for app safety and trust, and its competitors should not have insight into the sensitive financial information underlying those investments. Google's competitors would obtain an unfair advantage if given detailed financial insight into Google's depth of investments that enhance its platform, brand, and reputation to app developers and users, which further reflect Google's operational and strategic priorities.

12.     **Page 165, line 3 (between "closer to" and "or" and between "or" and "A. I mean"), line 7 (between "in the" and "range"), line 9 (between "high as" and "that"), line 10 (between "for me" and "feels low"), and line 12 (between "hit" and "or" and between "or" and "I'd say").** This text similarly reflects approximate dollar figures and ranges related to Google's internal, confidential financial estimate of the total cost of app review on Google Play. As stated above, Google does not publicly report or disclose its level of app review costs for Google Play, including any ranges of those costs. Public disclosure of this information would significantly harm Google for the same reasons as stated in the prior paragraphs. This cost reflects Google's investment in the security, safety, and privacy of its users across numerous organizations within the company, which represents a significant component of Google Play's brand and reputation in distributing apps and games to its users. Google has invested substantially in Google Play's brand reputation for app safety and trust, and its competitors should not have insight into the sensitive financial information underlying those investments.

13. **Page 165, line 21 (between "into this" and "number") and line 25 (between "aggregate" and "number"); Page 166, line 5 (between "reach the" and "sum"), line 13 (between "got to" and "correct?"), and line 17 (between "for this" and "number"); Page 167, line 14 (between "reach this" and "number") and line 17 (between "to get" and "for these"); Page 167, line 14 (between "reach this" and number"), and line 17 (between "to get" and "for these"); Page 168, line 6 (between "in the" and "section"), line 10 (entire line) line 12 (between "does the" and "number"), line 19 (between "make up" and "in cost").** This text reflects granular financial breakdowns of Google's internal, confidential financial estimate of the total cost of app review on Google Play, including by number of team functions. Disclosure of these figures would give Google Play's competitors insight into the volume of Google's investments into app review on the Play store, enabling them to assess and modify their own efforts related to app review and/or content moderation in an effort to better compete with Google. Google does not publicly report or disclose its level of app review costs for Google Play, including any ranges of those costs. Public disclosure of this information would significantly harm Google for the same reasons as stated in the prior paragraphs.

14. **Page 169, line 3 (between "Approximately" and end of sentence) and line 15 (between "it was" and "people"); Page 169-70, lines 25-2 (between "with this" and "for app safety"); Page 170, lines 2-4 (between "It was" and "at").** This text reflects the non-public and confidential number of employees on Google's app safety team, which supports Google Play's overall app review process, as well as the quantity of employees on other teams supporting Google's app review process broken down by specific team function. Google does not publicly report or disclose these figures, and its disclosure would cause significant competitive harm to Google. Specifically, competing app stores and platforms could compare Google's non-public and highly confidential app review resource data to their own to gauge their company's operational efficiency and labor needs, and adjust their strategies based on that information to more effectively compete against Google.

|   |   |
|---|---|
| 1 | 15.     **Page 169, line 16 (between "using" and "per person"); Page 170, line 4 (between "at" and "a pop"), Page 178, line 9 (between "by" and "a year"); Page 179, line 16 (between "by" and "a year"); Page 188, line 22 (between "number" and "a year"); Page 189, line 4 (between "My" and "estimate"), line 9 (between "felt" and "was a reasonable"), and line 17 (between "with that" and "number").** This text reflects an approximate figure reflecting Google's non-public, competitively sensitive, and current compensation data for Full-Time Employee ("FTE") employees throughout the United States, relating to costs of potential implementation of changes to Google Play and the Android operating system. Google expends significant resources to keep this valuable data confidential as compensation is a key metric on which Google competes for valuable talent. Even within Google, this confidential information is guarded, and not shared widely within the company. For example, Google has several policies in place like prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties and limiting access to certain internal systems. If this information is revealed publicly, Google's competitors would gain key insights into Google's compensation structure, providing them with an unfair advantage in competition for hiring new employees and/or hiring employees away from Google. The harm is particularly acute because competitors will have insights into Google's compensation structure whereas Google will not have similar information about its competitors. |

        16.     **Page 169, line 19 (between "numbers. Q." and "or so"), line 22 (between "is that" and "the number"); Page 170, line 5 (entire line); Page 171, line 3 (between "the" and "that you"), and line 22 (between "approximately" and "I'm assuming"); Page 172, line 7 (between "make up the" and "is"); Page 183, line 4 (between "in the" and "a year"); Page 187, line 15 (between "into" and "I did not"), line 16 (first two words), and line 18 (last two words); Page 189, line 24 (between "get at" and "here").** This text reflects additional granular financial breakdowns of Google's internal, confidential financial estimate of the total cost of app review on Google Play, including by number of team functions. Disclosure of these figures would give Google Play's competitors insight into the volume of Google's investments into app

7

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL
MATERIALS SUBMITTED IN CONNECTION WITH EPIC'S PROFFER RESPONSE REGARDING EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

review on the Play store, enabling them to assess and modify their own efforts related to app review and/or content moderation in an effort to better compete with Google. Google does not publicly report or disclose its level of app review costs for Google Play, including any ranges of those costs or breakdowns by specific team function. Public disclosure of this information would significantly harm Google for the same reasons as stated in the prior paragraphs.

**Epic's Proffer Response to Google's Proffer Regarding Epic's Proposed Injunction – Exhibit 2 (Baccetti Deposition Excerpts) [MDL Dkt. 676-2]**
**(Exhibit C to Cramer Declaration)**

17. **Page 4, lines 20-21 (entire lines).** This text contains the private home address of an individual Google employee. This personally identifying information is sensitive and not relevant to this Motion or this litigation.

**Epic's Proffer Response to Google's Proffer Regarding Epic's Proposed Injunction – Exhibit 4 (Cramer Deposition Excerpts) [MDL Dkt. 676-4]**
**(Exhibit D to Cramer Declaration)**

18. **Page 66, lines 6-7 (from "organization." to end of line 7); Page 67, lines 17-20 (between "for example" and "is that"), line 22 (between "What is" and "Can you"), line 23 (between "what" and "signifies"); Page 68, line 12 (between "have a" and "associated"), line 18 (between "is" and "one set"), line 23 (between "role," and "was"), and line 25 (last two words); Page 69, line 6 (between "that" and "is an"); Page 70, lines 4-5 (from "calculation" to end of line 5), line 25 (last two words); Page 73, line 7 (between "the" and "figures"), line 22 (between "to use" and "for"); Page 74, line 5 (between "them" and "they"), and line 11 (between "correct" and "from"); Page 75, line 2 (between fact," and "is"), line 8 (first two words), and line 14 (between "the" and "salary"); Page 76, line 23 (last two words); Page 77, line 4 (between "those" and "figures); Page 95, line 23 (first four words).** This text reflects the specific employee level used by Google in calculating "average" FTE employee salaries through the United States for purposes of estimating the cost of implementing Epic's proposed remedies. For similar reasons as stated in Paragraph 15, this compensation data is confidential and would cause significant harm to Google if disclosed. Google expends significant resources to keep this valuable data confidential as compensation is a key metric on which Google competes for valuable talent. Even within Google, this confidential

8
DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL
MATERIALS SUBMITTED IN CONNECTION WITH EPIC'S PROFFER RESPONSE REGARDING EPIC'S PROPOSED INJUNCTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

information is guarded, and not shared widely within the company. For example, Google has several policies in place like prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties and limiting access to certain internal systems. If this information is revealed publicly, Google's competitors would gain key insights into Google's compensation and organizational structure, providing them with an unfair advantage in competition for hiring new employees and/or hiring employees away from Google. The harm is particularly acute because competitors will have insights into Google's compensation structure whereas Google will not have similar information about its competitors.

**Michael D. Ernst Declaration In Support of Epic's Proffer Response to Google's Proffer Regarding Epic's Proposed Injunction [MDL Dkt. 676-7]**
**(Exhibit E to Cramer Declaration)**

19. **Page 5, Paragraph 21, line 17 (between "cost around" and "million"), and line 18 (between "between" and "and" and between "and" and "million"); Page 26, Paragraph 93, line 7 (between "another" and "million"); Page 33, Paragraph 115, line 17 (between "up to" and "million").** This text reflects Google's internal, confidential financial estimate of the total potential increase in app review costs if Google were to review apps distributed by third-party app stores on Google Play. As stated above, Google does not publicly report or disclose its level of app review costs for Google Play, including any financial sensitivities based on volume of apps reviewed. Public disclosure of this information would significantly harm Google for the same reasons as stated in the prior paragraphs, as Google's rival app stores and platforms could use these sensitivities to extrapolate a "cost-per-app" reviewed, in an effort to mimic or beat Google's costs to more effectively compete against Google. Google has invested substantially in Google Play's brand reputation for app safety and trust, and its competitors should not have insight into the sensitive financial information underlying those investments, particularly on a go-forward basis.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 31st day of July, 2024, in Mountain View, CA.

— DocuSigned by:<br>
*Christian Cramer*<br>
7E2F7561498147C...<br>
Christian Cramer