# EXHIBIT A

# Epic Games, Inc. v. Google LLC

Google Closing Remedies Argument

# Epic Seeks Impermissible Judicial Central Planning and Regulation

"**In short, judges make for poor 'central planners' and should never aspire to the role.**"

*Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 103 (2021) (internal citations omitted)

Courts reject remedies that "**displace the competitive forces of the marketplace and transform a segment of the [defendant's] business into a regulated industry.**"

*Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 694 (9th Cir. 1976)

# Remedies Cannot Require Judicial Micromanagement

"**The Court simply cannot accept AliveCor's invitation to micromanage the algorithms Apple maintains** on watchOS by ordering Apple to modify its Workout Mode API to reintegrate HRPO and provide third-party developer access to HRPO values. **The Court is not an industry expert in algorithms for biometric devices, and it gives a 'wide berth' to Apple's business judgement** to remove HRPO and replace it with a more efficient algorithm.**"**

*Alivecor, Inc. v. Apple, Inc.*, No. 21-cv-03958-JSW, 2024 WL 591864, at \*17 (N.D. Cal. Feb. 13, 2024)

"**Judges must be sensitive to the possibility that the 'continuing supervision of a highly detailed decree' could wind up impairing rather than enhancing competition.**"

*Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 102 (2021) (internal citations omitted)

3



**Michael Ernst**
Epic's Technology Expert

Q  [A]s a software engineer, you would agree with me, right, that additional - - implementation decisions tend to arise as a project is being implemented, right?

A  Yes, you often learn more about a project as you implement it.

Q  As you implement it, you have to kind of make decisions along the way, right?

A  Yes.

. . .

Q  And someone is going to have to make a choice about how to deal those implementation decisions as they arise along the way.  True?

A  That is correct. . . .

Ernst Dep. Tr. at 156:24–157:10; 158:13-17

4

# Remedies Require a "Significant Causal Connection" to the Violation Proven

"**[R]elief must be based on a 'clear indication of a significant causal connection between the conduct enjoined** or mandated **and the violation found** directed toward the remedial goal intended.'"

*Optronic Techs. v. Ningbo Sunny Elec.*, 20 F.4th 466, 486 (9th Cir. 2021)
(quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 105 (D.C.Cir. 2001)

# Epic Has the Burden to Show It Is Entitled to Each Remedy It Seeks

*See* 15 U.S.C.A. § 26 (West) (Sherman Act remedies must meet the standard for injunctive relief)

"**A plaintiff must demonstrate**: (1) that it has suffered an **irreparable injury**; (2) that **remedies available at law**, such as monetary damages, **are inadequate** to compensate for that injury; (3) that, **considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted**; and (4) that **the public interest would not be disserved** by a permanent injunction.**"**

*eBay Inc. v. Mercexchange, LLC*, 547 U.S. 388, 391 (2006)

6

**Google Play Distribution of Third-Party App Stores**

**Catalog Access**

**Library Porting**



**Douglas Bernheim**
Epic Expert Witness

"Google Play has inherent advantages because of the phenomena that we discussed at trial called **network externalities**

. . .

So in my view, one of most important things that we need to do is to **find a way to mitigate the network externalities, and we've offered, I think, a simple and creative proposal for doing that**."



**Douglas Bernheim**
Epic Expert Witness

Q    And when Google Play launched in that time period, it was a small entrant in the market, wasn't it?

A    That's –– Google Play, obviously when –– at the very beginning it was a small player. **It grew rather rapidly because it and Apple had both come out with revolutionary products, and they kind of had first-mover advantages** in this scenario.



**Quality:
Google Play Features**

Android Performance Tuner
Google Play Pass
Updated Subscription Retention and Cancellations Reports
Flutter
Android App Bundle
Android Vitals
Additional Subscriptions Features in Play Console
TensorFlow Lite
New Device Catalog
Improved Ratings and Reviews Pages in Developer Console
Subscription Retention Tools
Developer Console Reports
Play Games Player Analytics
Android Studio
Support for Additional Payment Options
Beta Testing and Staged Rollouts
Updated Google Play Developer Console
In-App Subscriptions
In-App Billing
Direct Carrier Billing (AT&T)
Android Market

2008  2009  2010  2011  2012  2013  2014  2015  2016  2017  2018  2019  2020

**Source:** Based on Gentzkow Report, Exhibit 13.

Trial Tr. at 2672:7-2673:15 (Gentzkow)

10

**Google Play Distribution of Third-Party App Stores**

Catalog Access

Library Porting

# 1. The Law is Clear:  Forced Sharing Harms Competition

"**Forcing firms to help one another would also risk reducing the incentive both sides have to innovate, invest, and expand—again results inconsistent with the goals of antitrust**."

*Novell, Inc. v. Microsoft Corp.,* 731 F.3d 1064, 1073 (10th Cir. 2013) (Gorsuch, J.)

"Compelling such firms to share the source of their advantage is in some tension with the underlying purpose of antitrust law, since it may **lessen the incentive for the monopolist, the rival, or both to invest in those economically beneficial facilities**."

*Verizon Commc'ns Inc. v. L. Offs. of Curtis v. Trinko, LLP,* 540 U.S. 398, 407–08 (2004)

13

"As we have discussed, antitrust courts must give wide berth to business judgments before finding liability. **Similar considerations apply when it comes to the remedy**.  **Judges must be sensitive to the possibility that the 'continuing supervision of a highly detailed decree' could wind up impairing rather than enhancing competition.  *Trinko*,** 540 U.S. at 415. . . . Judges must be wary, too, of the temptation to specify 'the proper price, quantity, and other terms of dealing'—cognizant that they are neither economic nor industry experts.  *Trinko*, 540 U.S. at 408. . . . And throughout courts must have a healthy respect for the practical limits of judicial administration:  'An antitrust court is unlikely to be an effective day-to-day enforcer' of a detailed decree, able to keep pace with changing market dynamics alongside a busy docket.  *Trinko*, 540 U.S. at 415, 124 S.Ct. 872.  **Nor should any court 'impose a duty that it cannot explain or adequately and reasonably supervise.'  *Ibid.* In short, judges make for poor 'central planners' and should never aspire to the role.'  *Id.* at 408** . . . ."

*Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 102–03 (2021)

In *Kodak*, the Ninth Circuit struck a remedy provision requiring Kodak to stock competing manufacturers' parts.

The Ninth Circuit held that the **remedy was "anticompetitive," because it "promotes free-riding" and "unnecessarily entrenches Kodak as the only parts supplier"** to service providers.

*Image Tech. Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1225 (9th Cir. 1997)

15

## 2. No Jury Findings To Guide The Remedy

"[W]hen the district court undertakes to block the untraveled roads by adopting a forward-looking provision, **its discretion is necessarily less broad** because, **without liability findings to mark the way**, it is in danger of imposing restrictions that prevent the defendant from forging new routes to serve consumers."

*Massachusetts v. Microsoft Corp.,* 373 F.3d 1199, 1223–24 (D.C. Cir. 2004)

# 3.  The Remedy is Unnecessary



| Google Play | Alternatives |
|---|---|
| Google Play | ~~Direct Distribution~~ |
|  | ~~Pre-Installation~~ |

Trial Tr. at 3364:14-17 (Epic Closing); *see also id.* at 3359:15-18 (same)

17

Google Play Distribution of Third-Party App Stores

**Catalog Access**

Library Porting

# Catalog Access Proposal
## Play Must Provide Millions of Apps to Other App Stores



19

# Catalog Access Proposal





# Catalog Access Proposal
## Play Must Fulfill Orders Behind the Scenes



**Step 1:**
User orders an app

**Step 2:**
Google fulfills order through app store

21

# Catalog Access Proposal
## Play Fulfills Orders Behind the Scenes



# Epic's Catalog Access Proposal Exceeds the Court's Authority

- **Catalog Access Requires Impermissible Judicial Central Planning and Reengineering**

- Epic Argued that Other App Stores Needed Exclusives, Not Play's Entire App Catalog

23



**Douglas Bernheim**
Epic Expert Witness

"Providing rival app stores with access to the Google Play Store app . . . jump-starts the competitive process **by decoupling the user side of the market from the developer side**."

Dkt. 952-1 ¶ 63 (Bernheim)

24

# Epic's Catalog Access Proposal Exceeds the Court's Authority

- Catalog Access Requires Impermissible Judicial Central Planning and Reengineering

- **Epic Argued that Other App Stores Needed Exclusives, Not Play's Entire App Catalog**

25





Google Play Distribution of Third-Party App Stores

Catalog Access

**Library Porting**

# No Interference with Product Design

> **"Antitrust scholars have long recognized the undesirability of having courts oversee product design."**
>
> *United States v. Microsoft Corp.,* 147 F.3d 935, 948 (D.C. Cir. 1998)

> Weighing **"the benefits of an improved product design against the resulting injuries to competitors is not just unwise, it is unadministrable."**
>
> *Allied Orthopedic Applicants Inc. v. Tyco Health Care Grp. LP,* 592 F.3d 991, 1000 (9th Cir. 2010)

29

# If Third-Party Store Distribution, Catalog Access, or Library Porting Are Imposed, the Court Should Include:

- **One or Two Year Duration**

- Google Can Set Criteria for App Store Participation

- Google Can Charge App Stores for Play Distribution

- For Catalog Access, Developers Should Opt In, Not Opt Out

# If Third-Party Store Distribution, Catalog Access, or Library Porting Are Imposed, the Court Should Include:

- One or Two Year Duration

- **Google Can Set Criteria for App Store Participation**

- Google Can Charge App Stores for Play Distribution

- For Catalog Access, Developers Should Opt In, Not Opt Out

32



**Michael Ernst**
Epic's Technology Expert

Q  **Is it your opinion that Google should be permitted to refuse to distribute third-party app stores that traffic in illegal content through the Play Store**, or is that not your opinion or are you not taking a position one way or the other?

A  **That is my view as a security expert.**  And it is my view that's already permitted under current policies. . . .



**James Mickens,**
Epic's Security Expert

Q   **[T]he Judge should consider [ ] the risk that with an insufficient definition of an app store, there could be greater risk to user security, correct?**

A   Well, I - - it's - - that's part of the thing the Judge can consider . . . . I'm just saying ==this is sort of complex landscape== that sort of has a lot of interplay between, you know, legal and economic issues . . . **and the judge needs to hear from economists and lawyers to think about, you know, what the implications are for some particular definition.**





## DISTRIBUTES MALICIOUS APPS





## DISTRIBUTES PIRATED APPS





## DISTRIBUTES ADULT CONTENT



**Michael Ernst**
Epic's Technology Expert

Q  **As you sit here today, can you think of any content moderation policy in the Google Play Store that cannot be evaded by the launcher solution that I have described for you?**

A  **Not offhand**. . . .

# If Third-Party Store Distribution, Catalog Access, or Library Porting Are Imposed, the Court Should Include:

- One or Two Year Duration

- Google Can Set Criteria for App Store Participation

- **Google Can Charge App Stores for Play Distribution**

- For Catalog Access, Developers Should Opt In, Not Opt Out

37

# The Ninth Circuit Struck an Injunction Requiring Kodak to Sell Parts at "Reasonable" Prices:

"**This** [reasonable price] **requirement involves the Court in a matter generally considered beyond our function, namely, direct price administration**."

*Image Tech. Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1225 (9th Cir. 1997)

38

# If Third-Party Store Distribution, Catalog Access, or Library Porting Are Imposed, the Court Should Include:

- One or Two Year Duration

- Google Can Set Criteria for App Store Participation

- Google Can Charge App Stores for Play Distribution

- **For Catalog Access, Developers Should Opt In, Not Opt Out**





**Michael Ernst**
Epic's Technology Expert

Q **So my question is, could you imagine a reason why a developer of an app would not want their app to be displayed next to pirated or cracked or unlocked versions of the app?**

A **I can imagine that would be the case.  I would find it surprising that Google permits that.**

# Two Specific Prohibitions Proposed by Dr. Bernheim to Address Anticompetitive Conduct Found by Jury

Google shall not enter into any contracts that:

1.  **include provisions that are explicitly conditional upon another party either dealing with a Google Play rival or acting as a Google Play rival; or**

2.  **share Google Play revenue with actual or potential competitors for app distribution.**

Replaces the following provisions from Epic's proposed injunction:  II.A.1, II.A.2, II.A.3, II.A.4, II.A.5, II.B.1, II.C.1, II.C.2,  II.D.3

*See* 5/23 Hrg. Tr. at 12:13-14; 17:10-11 (Bernheim)



**Douglas Bernheim**
Epic Expert Witness

DR. BERNHEIM:  **[T]o have a violation, you'd have to be able to point to a provision in a contract that <mark>explicitly</mark> references some sort of dealings with a rival**.

THE COURT:  And in your view as an economist, that would directly redress the contractual restrictions the jury saw at trial?

DR. BERNHEIM: Yes, with one category of exceptions I'm coming to.

# Two Specific Prohibitions Proposed by Dr. Bernheim to Address Anticompetitive Conduct Found by Jury

Google shall not enter into any contracts that:

1. **include provisions that are explicitly conditional upon another party either dealing with a Google Play rival or acting as a Google Play rival; or**

2. **share Google Play revenue with actual or potential competitors for app distribution.**

Replaces the following provisions from Epic's proposed injunction:  II.A.1, II.A.2, II.A.3, II.A.4, II.A.5, II.B.1, II.C.1, II.C.2,  II.D.3

*See* 5/23 Hrg. Tr. at 12:13-14; 17:10-11 (Bernheim)    44

# Modifications to Dr. Bernheim's Proposed "Rivals" Prohibition

- **Limit to Android "Rivals," Not Apple**

# Modifications to Dr. Bernheim's Proposed "Rivals" Prohibition

- Limit to Android "Rivals," Not Apple

- **Define "Rivals" and "Potential Rivals"**



**Douglas Bernheim**
Epic Expert Witness

"[W]e're only talking about rivalry in terms of app distribution, so this ought to be focused on that."

# Modifications to Dr. Bernheim's Proposed "Rivals" Prohibition

- Limit to Android "Rivals," Not Apple

- Define "Rivals" and "Potential Rivals"

- **Allow Agreements with OEMs to Protect Users from Harmful Apps**

# Allow Agreements with OEMs to Protect Users from Harmful Apps — Proposed Language

**For the avoidance of doubt:**

- (a) This provision does not prevent Google from enforcing generally applicable policies relating to content and functionality (e.g., inappropriate or illegal content, gambling and crypto mining functionality).

- (b) Google may adopt neutral user experience requirements that apply to all pre-installed app stores (including Google Play) so long as the purpose of those requirements is to protect the user experience and the requirements are not designed to disadvantage other app stores.

# Modifications to Dr. Bernheim's Proposed "Rivals" Prohibition

- Limit to Android "Rivals," Not Apple

- Define "Rivals" and "Potential Rivals"

- Allow Agreements with OEMs to Protect Users from Harmful Apps

- **Carve-Out for Deals Related to a Single App**

50

# Sideloading:  Warning Screens When Authorizing An App to Install Other Apps





# In-App Billing Remedies

❯ **Should the Court set a minimum price for Google Play Billing?**

❯ **Can developers decline to offer Google Play Billing as a billing option?**

❯ **Why require external link-outs, if developers can offer alternative payment options in the app?**

52

# Epic is Asking for a Price Floor on Google Play Billing





**Steve Tadelis**
Epic Expert Witness

DR. TADELIS: **So I have no beef with Google charging 26 percent or 16 percent or 73 percent for whatever they want to charge on distribution** . . . .

DR. TADELIS: If Google is providing —— let's make it simple —— two different services, distribute through Google Play, don't use Google Play Billing, there's going to be a fee for that.

THE COURT: And how does this stop —— how is that fee to be set?

DR. TADELIS: Google decides what that fee is. . . .

**THE COURT: So I don't have to be involved in regulating that fee at all?**

**DR. TADELIS: Absolutely not**.

# Epic is Asking for a Price Floor on Google Play Billing



Fee for Google Play Billing

MUST BE NO LESS THAN "AVERAGE TOTAL COST" OF GOOGLE PLAY BILLING

Fee for All Play Store Services Other than Billing

# In-App Billing Remedies

> Should the Court set a minimum price for Google Play Billing?

> **Can developers decline to offer Google Play Billing as a billing option?**

> Why require external link-outs, if developers can offer alternative payment options in the app?

# Two Choices

# One Choice





# In-App Billing Remedies

❯ Should the Court set a minimum price for Google Play Billing?

❯ Can developers decline to offer Google Play Billing as a billing option?

❯ **Why require external link-outs, if developers can offer alternative payment options in the app?**

1.  **Geographic Scope of Injunction**

2.  **Effective Date of Injunction**

# The Court Should Decline a Worldwide Injunction

"**U.S. antitrust laws concern the protection of** 'American consumers and American exporters, not foreign consumers or producers.'"

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 986 (9th Cir. 2008)

"**Comity** similarly rests on respect for the legal systems of members of the international legal community—a kind of international federalism—and thus '**serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.**'"

*Mujica v. AirScan Inc.*, 771 F.3d 580, 605 (9th Cir. 2014)(quoting *EEOC v. Arabian Am. Oil*, 499 U.S. 244, 248 (1991))

The general presumption against extraterritorial application of U.S. law recognizes that "**United States law governs domestically but does not rule the world.**"

*Mujica v. AirScan Inc.*, 771 F.3d 580, 605 (9th Cir. 2014) (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007))

"[C]omity concerns remain real as **other nations have not in all areas adopted antitrust laws similar to this country's and, in any event, disagree dramatically about appropriate remedies.**"

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 156 (2004)

# Effective Date of Remedies

| Third-Party Store Distribution | **12-16 months** *See* Dkt. No. 981-1 at 15 (Baccetti) |
|---|---|
| Catalog Access | **12-16 months** *See* Dkt. No. 981-1 at 10 (Baccetti) |
| Library Porting | **9 months** *See* Dkt. No. 981-3 at 14 (Cunningham) |
| Any Other Remedy Requiring OS Modification | **12+ months** |
| All Other Remedies | **90 days** |

61