Nos. 24-6256 & 24-6274

IN THE

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

GOOGLE LLC, *et al.*,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:20-cv-05671-JD, 3:21-md-02981-JD
Hon. James Donato

———————————

**EPIC GAMES, INC.'S OPPOSITION TO GOOGLE'S MOTION FOR
PARTIAL STAY OF PERMANENT INJUNCTION PENDING
APPEAL**

———————————

Gary A. Bornstein
Yonatan Even
Lauren A. Moskowitz
Justin C. Clarke
Michael J. Zaken
M. Brent Byars
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001-1867
(212) 474-1000

Thomas C. Goldstein
GOLDSTEIN & RUSSELL, P.C.
4323 Hawthorne St.
Washington, DC 20016
(202) 674-7594

Paul J. Riehle
FAEGRE DRINKER BIDDLE &
REATH LLP
Four Embarcadero Center
San Francisco, CA 94111-4180
(415) 591-7500

*Counsel for Plaintiff-Appellee Epic Games, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Epic Games, Inc. ("Epic") states that it has no parent corporation and that Tencent Holdings Limited owns more than 10% of Epic stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ..........................................................................1

BACKGROUND ............................................................................2

ARGUMENT ................................................................................8

I.    Google Is Not Likely to Succeed in Its Challenges to the
      District Court's Exercise of Its Discretion. ..................................8

      A.    Google Is Not Likely to Prevail on Its Argument that
            the District Court Abused Its Discretion in Refusing to
            Permit Google to Withdraw Its Consent to a Jury Trial........8

      B.    Google Is Not Likely to Prevail on Its Argument that
            the District Court Abused Its Discretion in Instructing
            the Jury on the Relevance of Google's Asserted
            Procompetitive Justifications. ..............................................10

      C.    Google Is Not Likely to Prevail on Its Argument that
            the District Court Abused Its Discretion in Crafting the
            Injunction. ..........................................................................12

            1.    Google Must Direct Its Supposed Questions
                  Regarding Details of the Injunction's
                  Implementation to the District Court in the First
                  Instance. ....................................................................12

            2.    The District Court Acted Within Its Discretion in
                  Creating a Technical Committee. ..............................13

            3.    There Is No Legal Prohibition Against Remedies
                  Requiring Antitrust Violators to "Deal with Their
                  Rivals." ......................................................................14

      4.     The Injunction Does Not Violate a Supposed
Prohibition Against Remedial Provisions That
"Stall Competition." .................................................... 16

      5.     There Is No Legal Prohibition Against Preventing
An Antitrust Violator From Using a Court
Imposed Remedy to Price Gouge. ................................ 17

II.    Google Is Not Likely to Succeed in Its Remaining
Arguments. ...................................................................... 18

    A.    Google Is Not Likely to Prevail on the Ground that
Epic Was Required to Prove Aftermarkets. ......................... 19

    B.    Google Is Not Likely to Prevail on the Ground that
Epic's Claims Are Barred By Issue Preclusion. ................... 20

    C.    Google Is Not Likely to Prevail on Its Challenges to
Epic's Standing .................................................................... 23

III.   There Is No Merit to Google's Arguments Regarding the
Equities ............................................................................ 26

    A.    Google's Arguments Seek to Overturn the Verdict. ............. 26

    B.    Google Fails to Demonstrate Any Abuse of Discretion
in the District Court's Crafting of the Injunction. ............... 28

    C.    Google's Remaining Equitable Arguments Lack Merit ........ 29

CONCLUSION ......................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ............................................................. 30

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ............................................................................ 22

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021), *aff'd in part, rev'd in part*,
  67 F.4th 946 (9th Cir. 2023) ............................................................. 23

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ...................................................... passim

*FTC v. Actavis, Inc.*,
  570 U.S. 136 (2013) ............................................................................ 26

*FTC v. Enforma Natural Prods., Inc.*,
  362 F.3d 1204 (9th Cir. 2004) ........................................................... 14

*FTC v. Qualcomm, Inc.*
  935 F.3d 752 (9th Cir. 2019) ............................................................. 29

*FN Herstal SA v. Clyde Armory Inc.*,
  838 F.3d 1071 (11th Cir. 2016) ........................................................... 9

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ........................................................... 13

*In re Nat'l Collegiate Athletic Assoc. Grant In-Aid Cap Antitrust
  Litig.*,
  958 F.3d 1239 (9th Cir. 2020) ........................................................... 12

*Kramer v. Banc of Am. Sec., LLC*,
  355 F.3d 961 (7th Cir. 2004) ............................................................. 10

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) (en banc) ........................................... 20

*Melendres v. Maricopa Cnty.*,
  897 F.3d 1217 (9th Cir. 2018) ........................................................... 12

*Nat'l Collegiate Athletic Ass'n v. Alston*,
  594 U.S. 69 (2021) ..................................................... 5, 13, 5, 16

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ........................................................... 20

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
  20 F.4th 466 (9th Cir. 2021) ....................................................... 15, 16

*Rabkin v. Or. Health Scis. Univ.*,
  350 F.3d 967 (9th Cir. 2003) ............................................................ 8

*United States v. Shryock*,
  342 F.3d 948 (9th Cir. 2003) ............................................................ 10

## Other Authorities

*Justice & Fed. Trade Comm'n, Merger Guidelines* § 4.3 (2023) ............ 22

## INTRODUCTION

This case arises from Google's anticompetitive behavior with respect to (1) the distribution of apps and (2) in-app payments on Android smartphones. Google was found liable on every one of Epic's claims. The Court imposed an injunction tailored to address Google's anticompetitive conduct. (Exhibit C, Permanent Injunction, Dkt. 1017 ("Ex. C.").)[1]

This Court should deny a stay of the injunction. Google's motion raises numerous underdeveloped challenges—ten in all. Google challenges Epic's claims, the use of a jury, the liability finding, and the provisions of the injunction. The District Court fully considered and correctly rejected each of these arguments. Most are subject to abuse of discretion review, a standard Google does not even acknowledge, let alone satisfy.

Google's arguments about the public interest and irreparable injury collapse into its failed scattershot substantive challenges. The injunction carefully tracks the jury's determination that Google violated

---

[1] Unless otherwise specified, "Dkt." refers to the multidistrict litigation docket, No. 3:21-md-02981-JD (N.D. Cal.).

the antitrust and unfair competition laws. Indeed, injunctive relief is in the public interest *by definition because* it will put an end to Google's active anticompetitive conduct.

## BACKGROUND

In 2020, Epic separately sued Google and Apple. Broadly speaking, both lawsuits assert claims arising from the suppression of competition in app stores and in-app payments on mobile devices. But the lawsuits differ significantly, including in the definition of the relevant antitrust markets and the alleged anti-competitive conduct. Because Apple is the only seller of devices running its proprietary operating system (iOS) Epic asserted single-brand "aftermarkets" for app distribution and in-app payments for iOS. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023); *see infra* Section II.A.

Epic's complaint against Google is quite different. Google makes a mobile operating system (Android) that is available on devices made by numerous manufacturers. Thus, against Google, Epic never argued for single brand "aftermarkets"; instead, it alleged regular markets for Android app distribution and Android in-app payments on

devices made by a multitude of firms. (*See* Dkt. 378 at 8.) Epic sought
only injunctive relief.

Pretrial proceedings lasted over three years. During that
time, the District Court found that Google had engaged in exceptional,
sanctionable misconduct in litigating the case. First, the Court found
"that Google failed to preserve relevant evidence from [its internal]
Chat message system, and that the failure to preserve was intentional
and prejudicial to plaintiffs." (Dkt. 700 at 3; *see also, e.g.,* Dkt. 849,
Trial Tr. 3228:19-23 ("All of this presents the most serious and
disturbing evidence that I have ever seen in my decade on the bench
with respect to a party intentionally suppressing relevant evidence in
litigation. I have just never seen anything this egregious.").) Second, the
Court found that Google had engaged in a "frankly astonishing abuse of
the attorney-client privilege designation to suppress discovery."
(Exhibit B, Order re Google's Renewed Motion for Judgment as a
Matter of Law or New Trial, Dkt. 984 ("Ex. B"), at 24.)

On October 11, 2021, at its first opportunity to do so, Google
demanded a jury trial not only on Epic's antitrust claims but also its

own counterclaim against Epic. (Dkt. 111 at 26.)[2] In November 2023, just two days before trial was set to begin, Google attempted to withdraw its consent to a jury trial. (Dkt. 732 at 2.) The Court denied the last-minute request as unduly prejudicial to both Epic and the Court, in light of the extensive pre-trial proceedings that had already occurred. *See infra* Section I.A.

The jury heard extensive factual and expert testimony on the definition of the relevant markets and the nature of Google's anti-competitive conduct. (*See* Dkt. 932 at 8-19.) The jury also received competing evidence on Google's asserted procompetitive justifications for attempting to exclude competing app stores and in-app payment systems, including Google's assertion that doing so was necessary to preserve consumers' privacy and security. (*See id.* at 22-25.) The jury unanimously found for Epic on every claim. (*See* Dkt. 866.) The District Court subsequently found for Epic on its state law unfair competition claim. (*See* Exhibit A, Dkt. 1016, Order re UCL Claim and Injunctive Relief ("Ex. A"), at 2-4.) Google filed an expansive motion for judgment

---

[2] Google reiterated its demand for a jury trial several times over the course of the pretrial proceedings. (*See* Dkt. 181 at 3; Dkt. 386 at 27; Dkt. 505 at 3; Dkt. 627 at 3).

notwithstanding the verdict, invoking a laundry list of supposed errors in essentially every aspect of the case. (Dkt. 925.) The District Court denied the motion in a detailed order. (Ex. B.)

Over the course of the next eight months, the District Court conducted rigorous proceedings to determine an appropriate injunction to remedy Google's extensive anti-competitive conduct. It gave "each side . . . a virtually unlimited opportunity to present its views about the scope and content of the injunction." (Dkt. No. 1000 at 95:18-155:1.)

The Court's first premise in formulating an injunction was that "caution is key." (Ex. A at 8 (quoting *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 106 (2021)).) In important respects, the Court "decline[d] to impose several of the injunction terms urged by Epic." (*Id.* at 7.) It rejected those that it concluded "demand excessive judicial oversight." (*Id.*) It adopted special provisions to address in advance any "potential security and technical risks," leaving Google "room to engage in its normal security and safety processes." (*Id. a*t 12.) Further, although the jury found a virtually worldwide market, the Court limited the injunction to the United States. (Ex. C ¶ 3.) The Court also limited

the injunction's effective period to three years—less than half the period

sought by Epic. (*Id.* ¶¶ 4-12.)

The District Court delayed when the injunction would take

effect through two effective dates:

1.  The Court determined that provisions require no

    meaningful technical changes, would become effective

    on November 1. (See Ex. C ¶¶ 4-10.) Specifically,

    Paragraphs 4 to 7 forbid Google from entering into or

    enforcing certain anticompetitive agreements. (These

    provisions are similar to Paragraph 8, which Google is

    not seeking to stay.) The remainder—Paragraphs 9

    and 10—enjoin Google from preventing developers

    from engaging in certain procompetitive acts.

2.  The second deadline is not until eight months after the

    District Court entered the injunction. That deadline

    applies to provisions that—based on the extensive

    factual and expert submissions from the parties—

    would require meaningful technical preparation.

    Expert testimony established that these changes could

be designed, tested, implemented, and rolled out in less time. (Dkt. 1000, Aug. 14 Hrg. Tr. 9:13-25).)

In both the District Court and this Court, Google moved for a stay of the injunction pending appeal and an administrative stay while that motion was pending. The District Court denied the stay motion, reasoning that "the verdict in this case was amply supported by a mountain of evidence about Google's anticompetitive conduct in the relevant product markets," and required only "a very straightforward application of well-established antitrust principles." (Dkt. 1034, Oct. 18 Hrg. Tr. 5:12-17.) As a consequence, the public interest strongly favored implementing the injunction. (*Id.* 6:10-12.) The District Court granted an administrative stay to allow this Court time to decide Google's stay motion. (*Id.* 7:6-23.)

The District Court also reiterated that Google has litigated the case in a manner intended to delay accountability for its unlawful conduct. "Google has fired a barrage of objections and allegations of error in an effort to escape the judgment of the jury. This approach has been Google's modus operandi throughout the case, and often results in headline-style arguments that lack useful development." (Ex. B at 4; *see*

7

*also* Ex. A at 2 ("[I]t bears mention that Google has, on several occasions, filed a blunderbuss of comments and complaints that are underdeveloped and consequently unhelpful in deciding the issues.").)

## ARGUMENT

### I.    Google Is Not Likely to Succeed in Its Challenges to the District Court's Exercise of Its Discretion.

Google fails to recognize–or even mention–the stringent standard of review that applies to its challenges to the District Court's exercise of discretion in managing the trial and crafting the injunction. With respect to most of its arguments, Google must establish that the District Court exercised its discretion "to an end not justified by the evidence" or reached "a judgment that is clearly against the logic and effect of the facts as are found." *Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 977 (9th Cir. 2003). Google does not even attempt to meet that standard.

#### A.    Google Is Not Likely to Prevail on Its Argument that the District Court Abused Its Discretion in Refusing to Permit Google to Withdraw Its Consent to a Jury Trial.

Google repeatedly and explicitly consented to a jury trial on Epic's claims for injunctive relief. (*See* Ex. B at 27.) On the eve of trial,

it sought to withdraw that consent.[3] That request came one day before jury selection and two court days before trial was set to commence, which was "far too late." (*Id.*) The District Court found that Google's attempt to do away with the jury "would have caused immense prejudice to Epic," which spent years preparing for a jury trial, "without objection by Google and with its active participation in the filing and discussion of jury instructions, proposed voir dire, and motions in limine." (*Id.* at 27-28.) The Court also found that such a last-minute maneuver would prejudice the Court itself: "Google's request is also fundamentally inconsistent with its representations to and conduct before the Court with respect to a jury trial, and would undermine the considerable case management work the Court undertook in anticipation of a jury trial." (Dkt. 732 at 2.) The cases cited by Google allowing withdrawal of consent for a jury when it worked no prejudice on the other party are therefore inapposite. *See FN Herstal SA v. Clyde*

---

[3] Even then, Google *still* maintained its request for a jury trial on its breach of contract counterclaims, which Epic defended on the basis that the contract was unlawful—requiring adjudication by the jury of Epic's affirmative claims. (Dkt. 573 at 5-9.)

*Armory Inc.*, 838 F.3d 1071, 1089-90 (11th Cir. 2016); *see also Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 968 (7th Cir. 2004).

Google suggests that its consent was dependent on the premise that the jury would be deciding other plaintiffs' damages claims, which subsequently settled. (Mot. at 12-13.) But Google never made its consent contingent on the pendency of those other claims. The District Court was well within its discretion finding that Google consented to a jury trial—and rejecting Google's last-minute attempt to withdraw that consent.

**B.    Google Is Not Likely to Prevail on Its Argument that the District Court Abused Its Discretion in Instructing the Jury on the Relevance of Google's Asserted Procompetitive Justifications.**

Google next argues that the District Court incorrectly precluded it from arguing to the jury that its conduct was lawful in light of its stated procompetitive justifications in other markets. (Mot. at 14.) The District Court's formulation of jury instructions is subject to abuse of discretion review. *United States v. Shryock*, 342 F.3d 948, 985 (9th Cir. 2003).

Contrary to Google's argument, the instructions allowed the jury to consider procompetitive justifications in other markets. For

example, in describing the Section 1 rule of reason analysis, the Court instructed the jury to consider "whether Google has proven that the restraints produced countervailing competitive benefits," without reference to any particular market. (Dkt. 867, Trial Tr. 3332:22-3333:1.) And in the portion of the instructions explaining Step 2 of the rule of reason, the Court instructed the jury to "determine whether Google has proven that the restraint also benefits competition *in other ways*," without limitation. (*Id.* 3336:8-12 (emphasis added).) The District Court's decision not to be even more explicit was well within its broad discretion in crafting the complete body of jury instructions. Even assuming Google's statement of the law on procompetitive justifications is correct, Google was free to (and did) argue to the jury that supposedly procompetitive benefits in other markets should be considered.[4]

---

[4] Contrary to Google's assertion (Mot. at 14), this Court has not decided whether anticompetitive conduct can be justified by procompetitive benefits in another market. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 989 (9th Cir. 2023); *see also* U.S. Amicus Brief, Ninth Cir. Dkt. 27.1 at 15 n.2 ("As far as we are aware, no reviewing court has previously held that a jury *must be* instructed that it can consider benefits to competition outside the relevant market, as Google's proffered instruction stated.").

### C. Google Is Not Likely to Prevail on Its Argument that the District Court Abused Its Discretion in Crafting the Injunction.

Google challenges the injunction in five separate respects. The Court's design of the injunction was subject to its well-informed discretion. *See Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) ("[A] district court has broad discretion to fashion injunctive relief.").

#### 1. Google Must Direct Its Supposed Questions Regarding Details of the Injunction's Implementation to the District Court in the First Instance.

Google asserts that it remains unclear how the injunction applies in a few particular respects. (*See* Mot. at 15 (identifying four questions).) But that is commonplace in complex commercial cases. Injunctions are subject to an abuse of discretion standard and may be overturned on vagueness grounds only if they "are so vague that they have no reasonably specific meaning." *In re Nat'l Collegiate Athletic Assoc. Grant In-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1263 (9th Cir. 2020). The injunction here clearly sets out what conduct Google is prohibited from engaging in (Ex. C ¶¶ 3-10, 12), what conduct it is

required to undertake (*id.* ¶¶ 11-13), how long these obligations apply (*id.* ¶ 2), and the injunction's geographic scope (*id.* ¶ 3).

"To the extent [Google] believes meaningful ambiguity exists about the scope of its authority, it may seek clarification from the district court." *Alston*, 594 U.S. at 72. The District Court did not violate Rule 65(d) by "declin[ing] to provide [Google] with explicit instructions on the appropriate means to accomplish" every minute aspect of the injunction. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004).

### 2. The District Court Acted Within Its Discretion in Creating a Technical Committee.

The District Court directed the parties to establish a three-person committee—one appointed by each party, and the third appointed jointly—to consider in the first instance questions that arise regarding the injunction's implementation. (*See* Ex. C ¶ 13.) Anyone dissatisfied with the committee's view can present the issue to the District Court for resolution, as part of the ordinary process of clarifying an injunction's terms. *See id.*; *supra* Section I.C.1.

Google acknowledges that the injunction's implementation may raise a variety of technical questions. The District Court directed that those questions be considered in the first instance by technical experts. Hopefully, the committee can resolve some questions to the parties' satisfaction. If not, the District Court will decide. This procedure—which is functionally indistinguishable from the commonplace use of private special masters and mediators—is not an abuse of discretion.[5]

> **3.     There Is No Legal Prohibition Against Remedies Requiring Antitrust Violators to "Deal with Their Rivals."**

Google next challenges provisions of the injunction that require it in certain circumstances (1) to cooperate technically with the providers of competing app stores, and (2) make those competing stores available to consumers on Google Play. (Mot. at 16-19.) Google argues that firms generally have no duty to deal with their rivals as a matter of

---

[5] *See, e.g.*, *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1213 (9th Cir. 2004) ("When outside technical expertise can be helpful to a district court, the court may appoint a technical advisor.").

antitrust *liability*, but immediately concedes that it was not held liable on that basis. (*Id.*)

The limitations on finding a duty to deal as a basis for *liability* do not preclude the Court from requiring Google to deal with its competitors as a *remedy* for other anticompetitive conduct so as "to avoid a recurrence of the [antitrust] violation and to eliminate its consequences." *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 486 (9th Cir. 2021) (affirming injunctive relief requiring defendant to "supply [the plaintiff] on non-discriminatory terms" even though the plaintiff's "refusal-to-deal claim . . . was dismissed on summary judgment."). That is because when a "jury finds that monopolization or attempted monopolization has occurred," as the jury did here, "the available injunctive relief is broad, including to 'terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future.'" *Id.* (citation omitted).

Ignoring that precedent, Google argues that the Supreme Court held in *Alston* that "[s]imilar considerations" apply at the liability and remedial phases. (Mot. at 17 (quoting *Alston*, 594 U.S. at 102 ).)

15

That is incorrect. That language from *Alston* does not address the liability rule that firms generally need not cooperate with their rivals. Instead, it discusses only the need for courts to avoid micromanaging businesses, usurping their "business judgments." *Alston*, 594 U.S. at 102; *see also* U.S. Amicus Brief, Ninth Cir. Dkt. 27.1 at 6 ("[C]ourts often impose affirmative duties to deal as remedies for antitrust violations.").)

There is also no merit to Google's proposed rule of strict causation: that every antitrust remedy must track and negate specific anticompetitive conduct. (Mot. at 17-19.) The applicable legal rule is instead that the district court has broad discretion in crafting injunctive provisions that remedy the ongoing effects of anticompetitive conduct. *Optronic Techs., Inc.*, 20 F.4th at 487.

> 4. **The Injunction Does Not Violate a Supposed Prohibition Against Remedial Provisions That "Stall Competition."**

Google asserts that the District Court "acknowledged that [the injunction's remedial] requirements will stifle competition while in effect by disincentivizing other stores from investing in building their own relationships with developers and app store infrastructure." (*Id.*)

That is a serious misrepresentation. The argument Google cites was made by Google's own expert and *rejected* by the Court, who stated that even *if* it accepted the proposition that there would be "*technically reduced competition*" for a short period, the remedy ultimately has "got to be *a huge spur to competition*." (Dkt. 977, May 23 Hrg. Tr. 51:14-15; 51:19) (emphasis added).)

The notion that the Court adopted a remedy that it found would undermine competition is absurd. In fact, the Court concluded unambiguously that the remedies were required to make competition possible. Without them, other firms could have nominally opened their own app stores, but those stores would be unable to compete because they lacked access to users and a comparable catalog of available apps. (*See e.g.,* Ex. A at 10; Dkt. 915-1 at 122-23; Dkt. 839, Trial Tr. 1212:4-11.)

> **5.      There Is No Legal Prohibition Against Preventing An Antitrust Violator From Using a Court Imposed Remedy to Price Gouge.**

There is no merit to Google's assertion that the injunction engages in prohibited "direct price regulation." (Mot. at 19.) The injunction says nothing, for example, about the prices that Google may

charge for app distribution or in-app payments. Rather, Google's argument refers to the injunction provision that allows it to charge a "reasonable fee" for a security and privacy review of the third-party stores that it is required to distribute through Google Play. (Ex. C ¶ 12.) Allowing Google to implement a security and privacy review process is an accommodation to *Google*. And permitting Google to charge a reasonable fee for that security review is a further accommodation. While giving Google the ability to recoup its costs, the District Court recognized that Google could continue its anticompetitive conduct—and thereby circumvent the injunction—if Google made this "review" unreasonably expensive. (*See* U.S. Amicus Brief, Ninth Cir. Dkt. 27.1, at 12 ("courts can craft remedies that require defendants to charge reasonable fees where such a requirement helps restore competition").) The provision does not regulate the price that Google charges for "products and services" in the marketplace. (Mot. at 19.)

## II.   Google Is Not Likely to Succeed in Its Remaining Arguments.

Google's arguments that do not relate to discretionary decisions by the District Court are also meritless.

18

### A.   Google Is Not Likely to Prevail on the Ground that Epic Was Required to Prove Aftermarkets.

Epic successfully argued to the jury that Google violated the antitrust laws with respect to markets for app distribution and in-app payments for Android smartphones. (Dkt. 866 at 3-4.) Google argues that these markets are not viable under this Court's decision in *Epic v. Apple*. (Mot. at 11-12.) Not so. In that case, Epic argued that Apple violated the antitrust laws in single-brand "aftermarkets" for app distribution and in-app payments for Apple smartphones. An aftermarket exists where "demand for a good is entirely dependent on the prior purchase of a durable good in a foremarket," *Epic v. Apple*, 67 F.4th at 976—there, the foremarket was Apple smartphones. This Court held that to establish the existence of such an aftermarket, the plaintiff must "prove that the markets for apps and in-app purchases are truly independent of the markets for smartphones and other devices." (Mot. at 12.)

As the District Court explained, unlike in *Epic v. Apple*, where participation in the relevant markets depended on the purchase of an iPhone from Apple, neither consumers nor developers are required to buy anything from Google to participate in the Android app

distribution market or Android in-app payment solutions market. "Android devices are manufactured by many companies, including Google, Samsung, Motorola, OnePlus, Xiaomi, and other OEMs." (Dkt. 984 at 8.) *Epic v. Apple's* aftermarket analysis is therefore inapposite. Epic's claims are instead subject to the ordinary standards governing market definition. *See, e.g., Ohio v. Am. Express Co.*, 585 U.S. 529, 542-544 (2018).

### B.   Google Is Not Likely to Prevail on the Ground that Epic's Claims Are Barred By Issue Preclusion.

Google asserts that the jury's verdict was barred by issue preclusion, which applies if the issue was (i) "identical" across both proceedings, and (ii) "actually litigated." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (en banc). In this case, as just noted, Epic successfully argued before the jury that there are markets for app distribution and in-app payments for Android smartphones. (Dkt. 866 at 3.)

Google asserts that Epic was precluded from litigating this "issue" because Epic thereby "reargue[d] the prior judicial finding that Google and Apple compete within the markets asserted here." (Mot.

at 11.) Google's argument misunderstands the relevant "markets." *Epic v. Apple* did not consider whether there are markets for app distribution and in-app payments for Android smartphones, and the court there made no finding on whether Apple competes in those markets. Only the jury here made a finding on that question.

Google nonetheless points to two "issues" that were decided adversely to Epic in that earlier case: (1) that Epic failed to prove that there are aftermarkets for app distribution and in-app payments for Apple smartphones (*see* Mot. at 11-12); and (2) that there is a market in which Google and Apple compete for the distribution of mobile gaming transactions (*see id.* at 10-11).

Google's position depends entirely on misstating the relevant "markets" in both this case and *Epic v. Apple*. Google maintains that both cases involve a supposed generalized "market" for "digital transactions," which it says *Epic v. Apple* addressed in the particular context of gaming transactions. (*See* Mot. at 11.) Beyond this, Google says nothing about this supposed market, which it apparently maintains exists with respect to any type of digital transaction on any kind of device.

Google's argument is a red herring. Even if *Epic v. Apple* had found competition in a generalized market for "digital transactions," that would not preclude a finding that there were *also* separate markets relating specifically to app distribution and in-app purchases for Android apps in which Google holds monopoly power. In antitrust law, there frequently are overlapping markets. (*See, e.g., Brown Shoe Co. v. United States,* 370 U.S. 294, 325 (1962) ("[W]ithin [a] broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes."); *Dep't of Justice & Fed. Trade Comm'n, Merger Guidelines* § 4.3 n.77 (2023) ("Multiple overlapping markets can be appropriately defined relevant markets."); *see also* U.S. Amicus Brief, Ninth Cir. Dkt. 27.1 at 15 ("[E]ven though a broader market in which both Apple and Google app stores competed was relevant in *Epic v. Apple*, there is nothing contradictory about limiting the relevant market in *Epic v. Google*, a case involving different challenged conduct, to the distribution of apps sold on Android [smart]phones.")

In any event, the straightforward answer to Google's argument is that *Epic v. Apple* did not find that such a generalized

22

market exists. Both the District Court ruling and this Court's decision

affirming it were limited to the particular gaming-specific market. *See*

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th at 973 ("[T]he district court . . .

defined the relevant market for its antitrust claims to be mobile-game

transactions . . . and did not clearly err [in so doing]"); *Epic Games, Inc.*

*v. Apple Inc.*, 559 F. Supp. 3d 898, 1019 (N.D. Cal. 2021) ("[T]he

appropriate submarket to consider is the mobile gaming transactions

market."). Such a gaming-specific market was never at issue in this

case, and neither party ever suggested it as a relevant market in which

to assess Google's conduct.

### C.   Google Is Not Likely to Prevail on Its Challenges to Epic's Standing.

There is no merit to Google's arguments that the injunction

violates the Article III principle that for a party to have standing, its

injuries must be redressable. (Mot. at 19-21.) Google first asserts that

the District Court merely "*assume[d]* that developers, OEMs, and

mobile carriers will react to the District Court's injunction in a way that

redresses Epic's injury." (*Id.* at 20.) In fact, at evidentiary hearings in

the remedies phase, the Court explained that the injunction must

remedy the "network effects" resulting from Google's unlawful

monopolization of Android app distribution. (*See* Dkt. 1000, Aug. 14 Hrg. Tr. 122:16-23 ("Google monopolized the app [distribution] market. The effect of that is developers will only go to a market where they can sell their goods and users will only go to a market where there are tons of developers . . . [t]hat is the monopoly construct that Google has implemented through its anticompetitive conduct. The only way to [remedy] that is to open that construct.").) The catalog access and app store distribution remedies were intended to address Google's conduct that "unfairly enhanced its network effects in a way that would not have happened but for its anticompetitive conduct." (Ex. A at 11.) Accordingly, the Court amply explained the factual predicates that underlie the causal connection between the jury's verdict and Court's remedy. Google's assertion that this connection is unsupported because the record contains no evidence that Google's "network effects" are attributable to conduct that Epic challenged (Mot. at 18) ignores days of testimony and countless trial exhibits on that very point. (*See, e.g.*, Dkt. 932 at 11-20.)

Google similarly errs in claiming that Epic failed to prove ongoing injury, given that Google removed Epic's apps from Google

Play. (Mot. at 20-21.) Google fails to acknowledge that this Court
rejected an indistinguishable argument in *Epic v. Apple*. There, Apple
argued that Epic was no longer injured by Apple's anti-steering policy
because Apple had removed Epic's apps from its Store and had no
intent to reinstate them. *Epic v. Apple,* 67 F.4th at 999-1000. This
Court reasoned that because Epic is a competing game distributor
through the Epic Games Store ("EGS"), which offers a lower commission
than Apple's, Apple's anti-steering provision harmed Epic by preventing
consumers from learning about lower prices on EGS. *Id.* This practice
decreased the revenue EGS generated. *Id.*

That reasoning applies more strongly here, where Epic has
launched EGS for Android. Epic competes in the Android app
distribution market through EGS and in the Android in-app payment
solution market through Epic Direct Pay ("EDP"). Epic is therefore
harmed by Google's anti-steering policy, which prevents consumers
from learning about lower prices on EGS. Epic is also harmed by
Google's prohibition on alternative in-app payment solutions, which
prevents developers from choosing to use EDP instead of Google Play
Billing in apps distributed on Google Play. These harms are both direct

and imminent because EGS, an Android app store, is a direct

competitor to Google Play and, contrary to Google's claim otherwise,

evidence in the record supports that Epic has and intends to offer EDP

as a billing option for apps distributed through Google Play. (*See*

Dkt. 835, Trial Tr. 227:9-24 (explaining that Epic offers third-party

developers the ability to use EDP); *see also* Dkt. 843, Trial Tr.

2029:15-2030:1 (explaining that Google's policies make it so "[Epic]

[has] no way to reach Android customers with Epic Direct Pay for

digital goods").)

## III.   There Is No Merit to Google's Arguments Regarding the Equities.

Google's equitable arguments fare no better than its

substantive challenges to the findings of liability and the injunction.

### A.   Google's Arguments Seek to Overturn the Verdict.

Accepting Google's position would impermissibly require this

Court to override the jury's verdict. At the very least, it depends on

Google showing—which it has not, *see supra* Section I—that this Court

is likely to overturn the verdict. The antitrust laws exist to protect

competition, and thus the public interest. *FTC v. Actavis, Inc.*, 570 U.S.

136, 161 (2013). The jury's determination that Google violated the

Sherman Act—by Google's own count affecting hundreds of millions of people—means that permitting Google to continue its conduct will cause significant public harm. The injunctive relief provided by the Sherman Act is the equitable means by which competition is restored. Given the verdict, a stay of the injunction is by definition contrary to the public interest. As the District Court explained, the "same reasons" the jury found liability show that "staying the injunction through appeal would not serve the public interest." (Dkt. 1034, Oct. 18 Hrg. Tr. 6:10-12.) It continued: "A much better argument can be made that the public interest is served by opening those markets up today to competition, as our antitrust laws envision, certainly not continuing what the jury found to be monopolistic conduct in those relevant markets." (*Id.* 6:13-17.) And the Court expressly found that "the public interest, which is perfectly aligned with the restoration of free and unfettered competition, would be well served" by the injunction. (Ex. A at 7.) Google's contrary argument reduces to the position that it is inequitable to require it to comply with antitrust law.

Relatedly, Google's principal equitable arguments depend on factual claims—indeed, specific evidence—that the jury considered and

27

rejected. The jury considered whether competing app stores and payment solutions would "raise significant security risks." (Mot. at 21.) Indeed, Google invoked security and privacy as its principal procompetitive justification for its conduct—and the jury rejected it. (*See, e.g.,* Dkt. 841, Trial Tr. 1746:10-1747:5; 1751:19-1760:12; 1762:20-24.) Google's motion ignores Epic's extensive evidence—which the jury credited—that these justifications were pretext for its anticompetitive conduct and did not outweigh the anticompetitive harm. Google now relies on the exact testimony from its employees that the jury rejected. (*E.g.*, Mot. at 21) (citing "the head of Android security and privacy engineering.").)

### B. Google Fails to Demonstrate Any Abuse of Discretion in the District Court's Crafting of the Injunction.

Google asserts that the injunction's "timeline leaves virtually no time to mitigate these risks" (Mot. at 22), and that an "unworkable" deadline constitutes irreparable injury (*id.* at 25.). This is merely a repackaging of Google's complaints about the terms of the injunction, which as discussed, are subject to abuse of discretion review. *See supra* Section I.C. The District Court carefully considered this question,

including through in-person expert testimony. Google provides no
reason for this Court to overturn the District Court's determinations
based on the self-interested testimony of its own employees. Google's
expert asserted that twelve months was required, while Epic's expert
concluded that the effort could be done more simply and efficiently in
under eight months. (*See* Dkt. 1000, Aug. 14 Hrg. Tr. 9:16-10:4;
149:4-7.) The District Court reasonably concluded that eight months
was appropriate. (*See* Ex. C ¶ 11.)

## C.    Google's Remaining Equitable Arguments Lack Merit.

Google argues (Mot. at 23) that this case is governed by *FTC
v. Qualcomm, Inc.*, 935 F.3d 752 (2019), in which the Court granted a
stay of an injunction that required "fundamental business changes." *Id.*
at 32. But the facts of *Qualcomm* were radically different: that
injunction required the defendant to change its entire business model of
licensing its intellectual property, entering into new (and completely
different) long term agreements that could not be undone if Qualcomm
prevailed on the merits. *See id.* at 756. Here, the injunction allows
Google to maintain Google Play and its in-app billing solution; its
business model remains fundamentally the same. It merely requires

Google for a limited period of time to eliminate contractual arrangements that unreasonably limit competition, and to take certain remedial measures to ameliorate the ongoing effects of its anti-competitive acts. In the unlikely event this Court were to overturn the jury verdict, those contracts could and would be changed back.

Google next argues that the monetary cost of complying with the injunction's technical remedial provisions constitutes irreparable injury. (Mot. at 24.) That is wrong as a matter of law: "[m]ere injuries however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020). Moreover, as an equitable matter, Google's argument is unpersuasive. The District Court found that these costs are "a drop in the bucket" compared to Google's ongoing profits from its unlawful conduct. (Dkt. 1000, Aug. 14 Hrg. Tr. 20:4.)

Google suffers no harm from the injunction's "catalog access" provision. (*Contra* Mot. at 22.) Under that remedy, third-party stores will merely act as another place where users might discover the apps that are on Google Play. Such apps will continue to be downloaded through Google Play, and Google will earn the same commission from

those apps that it would earn if the apps had been discovered on Google Play itself. If Google prevails on its appeal, those other stores would no longer have access to Google Play's catalog, but apps that have already been discovered and downloaded by users would remain on the users' devices, to the sole benefit of Google.

Google next argues that no injunction should be required because the States reached a proposed settlement of their parallel antitrust claims against Google. (Mot. at 27-28.) Of course, parties settle claims to avoid the risk of trial. It would have been shocking if Epic had *not* achieved more when it succeeded in litigating its claims. There is no merit to Google's assertion that the District Court was required to make an express finding that the compromise embodied in the States' proposed settlement—which has not even been approved yet—would not remedy its anti-competitive conduct. The District Court, with full knowledge of the terms of the States' settlement, found that the terms of the injunction were the appropriate response to the antitrust violations found by the jury, as well as the unfair competition law violation found by the court.

Google's assertion that, if the injunction fails to protect the public interest, Google will suffer irreparable reputational harm (Mot. at 21) simply repackages the same objections to the injunction and fails for the same reasons. The injunction allows Google to review apps for privacy and security concerns. The premise of the antitrust laws is that competition improves quality—here, that competition between app stores will produce greater privacy and security protections, not less. Further, Google assumes that when a user downloads an app containing "harmful" content from a third-party app store that was itself downloaded from Google Play, the user will blame Google Play, rather than the third-party store. (*See id.* at 23.) Google offers no evidence to support this view. Real-world evidence suggests the opposite. Users can currently access arguably "harmful" content on many apps available on Google Play—from Reddit to Instagram to BitTorrent—but Google has offered no evidence that it is blamed for any such content. The content of apps obtained from third-party stores (rather than directly from Google Play) is even further removed from Google, and thus *less* likely to cause the harm to goodwill or the switching that Google predicts. If anything, if apps from a third-party

store turn out to be bad, users may well switch back *to* Google Play for their future app downloads.

## CONCLUSION

There are more than enough reasons to deny Google's stay application. The public interest strongly supports doing so promptly. But if the Court is nonetheless inclined to grant a stay protectively, Epic respectfully suggests the following alternative. The Court can defer ruling on the stay application until after briefing and oral argument, leaving the district court's administrative stay in place in the interim. If the Court believes a stay pending appeal is appropriate then, it can grant one. But Epic is concerned that if the Court instead grants a "stay pending appeal" now and later recognizes that Epic is going to prevail, the stay could nonetheless inappropriately remain in place for years during the remainder of the appeals process. The Court accordingly should deny a stay pending appeal, or alternatively defer ruling on Google's motion until after argument.

October 28, 2024                          Respectfully submitted,

                                          /s/ *Thomas Goldstein*

                                          Thomas C. Goldstein
                                          GOLDSTEIN & RUSSELL, P.C.
                                          4323 Hawthorne St., NW
                                          Washington, DC 20016
                                          (202) 674-7594

                                          Gary A. Bornstein
                                          Yonatan Even
                                          Lauren A. Moskowitz
                                          Justin C. Clarke
                                          Michael J. Zaken
                                          M. Brent Byars
                                          CRAVATH, SWAINE & MOORE LLP
                                          Two Manhattan West
                                          375 Ninth Avenue
                                          New York, NY 10001
                                          (212) 474-1000

                                          Paul J. Riehle
                                          FAEGRE DRINKER BIDDLE
                                          & REATH LLP
                                          Four Embarcadero Center
                                          San Francisco, CA 94111
                                          (415) 591-7500

         *Counsel for Plaintiff-Appellee Epic Games, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Court Rule 27-1(1)(d) and Circuit Rule 32-3 because it contains 6,270 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B) and Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 27(d).

October 28, 2024                    /s/ *Thomas Goldstein*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on October 28, 2024. All participants in the case are registered ACMS users, and service will be accomplished by the appellate ACMS system.

/s/ *Thomas Goldstein*