| | |
|---|---|
| ROB BONTA | Glenn D. Pomerantz (SBN 112503) |
| Attorney General of California | glenn.pomerantz@mto.com |
| PAULA L. BLIZZARD (SBN 207920) | **MUNGER, TOLLES & OLSON LLP** |
| Senior Assistant Attorney General | 350 South Grand Avenue, Fiftieth Floor |
| MICHAEL W. JORGENSON (SBN 201145) | Los Angeles, California 90071 |
| Supervising Deputy Attorney General | Telephone: (213) 683-9100 |
| BRIAN D. WANG (SBN 284490) | |
| CAROLYN D. JEFFRIES (SBN 319595) | Brian C. Rocca (SBN 221576) |
| Deputy Attorneys General | brian.rocca@morganlewis.com |
| **OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA** | **MORGAN, LEWIS & BOCKIUS LLP** |
| | One Market, Spear Street Tower |
| 455 Golden Gate Avenue, Suite 11000 | San Francisco, CA 94105-1596 |
| San Francisco, CA 94102-7004 | Telephone: (415) 442-1000 |
| Telephone: (415) 510-4400 | |
| Fax: (415) 703-5843 | *Counsel for Defendants Google LLC et al.* |
| E-mail: Paula.Blizzard@doj.ca.gov | |

*Counsel for Plaintiff State of California*

Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for Consumer Plaintiffs in In re Google Play Consumer Antitrust Litigation*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT STATEMENT REGARDING STATES' MOTION TO GIVE NOTICE OF PROPOSED *PARENS PATRIAE* SETTLEMENT**<br><br>Judge: Hon. James Donato |

**INTRODUCTION**

On November 14, 2024, the Court held a status conference on Plaintiff States' Motion to Give Notice of Proposed *Parens Patriae* Settlement, Dkt. No. 522 in Case No. 21-cv-05227-JD. The Court afterwards issued a minute order directing the parties to file a joint statement addressing the Proposed Settlement's consistency with the permanent injunction entered in *Epic Games, Inc. v. Google LLC*, Dkt. No. 702 in Case No. 20-cv-05671-JD ("*Epic* Injunction"). Accordingly, the States, Consumer Counsel, and Google (the "Parties") respectfully submit this joint statement, which compares the injunctive terms of the Proposed Settlement with the *Epic* Injunction and explains how the two would operate without contradiction or dilution. Along with this brief, the Parties submit a side-by-side comparison as Appendix A.

Regardless of whether the Proposed Settlement is implemented before, concurrently with, or after the *Epic* Injunction, it will provide enforceable commitments that extend beyond the terms of the *Epic* Injunction and do not conflict with or dilute the provisions of that decree. If both the *Epic* Injunction and the Proposed Settlement are in effect, Google will have to comply with the terms of both decrees. As a result, where the *Epic* Injunction's provisions are more restrictive than the Proposed Settlement, Google will be required to comply with those more restrictive provisions during any period in which both decrees are in effect, and nothing in the Proposed Settlement would excuse Google's compliance with any provision of the *Epic* Injunction. Indeed, to avoid any doubt on this matter, the Parties agree that the Court can confirm, in any approval of the Proposed Settlement, that the Proposed Settlement's terms cannot override Google's obligations under the *Epic* Injunction. Accordingly, the Parties once again urge the Court to approve the issuance of notice to affected consumers, the first step in the process leading to final settlement approval.

**LEGAL FRAMEWORK**

As the Court indicated at the February 26, 2024, preliminary approval hearing, proposed settlements are assessed as of the time they were entered. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012) ("a class-action *settlement* necessarily reflects the parties' pre-trial assessment as to the potential recovery"). Indeed, both the Ninth Circuit and the Supreme Court have recognized that compromise is inherent to settlement. *See Officers for Justice v. Civil Serv. Comm'n of S.F.*,

688 F.2d 615, 624 (9th Cir. 1982) ("Of course, the very essence of a settlement is compromise . . . . 'The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'" (quoting *U.S. v. Armour & Co.*, 402 U.S. 673, 681 (1971))). One distinct benefit of settlement is the immediacy of the relief secured. *See id.* at 629 ("As the district court observed, any benefits above those provided by the decree would likely be substantially diluted by the delay inherent in acquiring them. . . . During the remainder of the litigation, and probably an appeal, many of the immediate and tangible benefits accruing from the settlement would be lost.").

## ANALYSIS

The Proposed Settlement provides that its injunctive terms will go into effect once the Court has entered a final judgment and order approving the Settlement and dismissing the underlying actions, and the time for any appellate review has passed. *See* Proposed Settlement, Dkt. 522-2 in Case No. 21-cv-05227-JD, §§ 1.14, 1.16. States and Consumers note that, although the Ninth Circuit has expedited briefing and argument in Google's appeal of the *Epic* Injunction, the Proposed Settlement can go into effect, yielding benefits for consumers, before the *Epic* Injunction makes its journey through the appellate process, particularly if Google's request for a new trial is granted along the way. Here, the Parties explain how the Proposed Settlement provides additional injunctive relief without diluting or undercutting the provisions of the *Epic* Injunction if and when the *Epic* Injunction takes effect.[1]

The Proposed Settlement and the *Epic* Injunction do not contradict or dilute each other, even though they are different. There are terms in the Proposed Settlement that are "less restrictive" than those in the *Epic* Injunction; for those terms, Google must comply with the more restrictive terms of the *Epic* Injunction if both decrees are in force. In other cases, the terms of the *Epic* Injunction are less restrictive, and Google must comply with the more restrictive terms of the Proposed

---

[1] For purposes of this filing only, the Parties take no position on the merits of Google's appeal of any term in the *Epic* Injunction and address each as though it were going to be implemented in its present form.

Settlement if both decrees are in force. In all instances where there are analogous or related provisions, the Proposed Settlement's provisions have longer terms than the *Epic* Injunction's analogous or related provisions. In addition, each document contains provisions that have no analogue in the other. *See* Proposed Settlement §§ 6.7, 6.9, 6.10; *Epic* Injunction ¶¶ 11, 12. And the provisions relating to Google's compliance would work without conflict—and independently—to promote compliance with each decree. *See* Proposed Settlement §§ 6.12, 7; *Epic* Injunction ¶ 13. Thus, the two injunctions do not contradict each other and can have overlapping effect to provide additional injunctive relief.

The *Epic* Injunction contains ten paragraphs of injunctive relief (numbered ¶¶ 4-13). The Parties address each in turn.

**Epic Injunction Paragraph 4**, for a period of three years, prohibits Google from sharing revenue generated by the Google Play Store with anyone "that distributes Android apps, or has stated that it will launch or is considering launching an Android app distribution platform or store." There is no direct analogue in the Proposed Settlement.

The Proposed Settlement does, however, contain certain provisions that relate to third party stores on Android mobile devices. In Section 6.2.1, Google has committed, for a period of seven years, to "continue to technically enable Android to allow the installation of third-party apps on Mobile Devices . . . including through third party app stores." Section 6.6.1 of the Proposed Settlement prohibits Google, for five years, from entering into or enforcing agreement provisions with "the purpose or effect of securing preload exclusivity" for the Google Play Store. Section 6.8.1 of the Proposed Settlement prohibits Google, for five years, from requiring its "consent" before an original equipment manufacturer ("OEM") includes a third-party app store on a mobile device and from rejecting a mobile device build because it includes an alternative app store. And Section 6.7.1 prohibits Google, for a period of four years, from entering into or enforcing agreement provisions under which an OEM would be prevented from granting installer rights to preloaded applications (e.g., app stores). Finally, in Section 6.12.1, Google is prohibited from offering any inducement (monetary or otherwise), imposing any term or condition of accessing a Google product or service, or making a technological change, if such inducement, term, condition, or technological change has

- 3 -
JOINT STATEMENT REGARDING STATES' MOTION TO GIVE NOTICE OF PROPOSED
*PARENS PATRIAE* SETTLEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

Settlement if both decrees are in force. In all instances where there are analogous or related provisions, the Proposed Settlement's provisions have longer terms than the *Epic* Injunction's analogous or related provisions. In addition, each document contains provisions that have no analogue in the other. *See* Proposed Settlement §§ 6.7, 6.9, 6.10; *Epic* Injunction ¶¶ 11, 12. And the provisions relating to Google's compliance would work without conflict—and independently—to promote compliance with each decree. *See* Proposed Settlement §§ 6.12, 7; *Epic* Injunction ¶ 13. Thus, the two injunctions do not contradict each other and can have overlapping effect to provide additional injunctive relief.

The *Epic* Injunction contains ten paragraphs of injunctive relief (numbered ¶¶ 4-13). The Parties address each in turn.

**Epic Injunction Paragraph 4**, for a period of three years, prohibits Google from sharing revenue generated by the Google Play Store with anyone "that distributes Android apps, or has stated that it will launch or is considering launching an Android app distribution platform or store." There is no direct analogue in the Proposed Settlement.

The Proposed Settlement does, however, contain certain provisions that relate to third party stores on Android mobile devices. In Section 6.2.1, Google has committed, for a period of seven years, to "continue to technically enable Android to allow the installation of third-party apps on Mobile Devices . . . including through third party app stores." Section 6.6.1 of the Proposed Settlement prohibits Google, for five years, from entering into or enforcing agreement provisions with "the purpose or effect of securing preload exclusivity" for the Google Play Store. Section 6.8.1 of the Proposed Settlement prohibits Google, for five years, from requiring its "consent" before an original equipment manufacturer ("OEM") includes a third-party app store on a mobile device and from rejecting a mobile device build because it includes an alternative app store. And Section 6.7.1 prohibits Google, for a period of four years, from entering into or enforcing agreement provisions under which an OEM would be prevented from granting installer rights to preloaded applications (e.g., app stores). Finally, in Section 6.12.1, Google is prohibited from offering any inducement (monetary or otherwise), imposing any term or condition of accessing a Google product or service, or making a technological change, if such inducement, term, condition, or technological change has

- 3 -

JOINT STATEMENT REGARDING STATES' MOTION TO GIVE NOTICE OF PROPOSED
*PARENS PATRIAE* SETTLEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

1   the purpose and effect of violating any of the commitments it has made in the Proposed Settlement.
2   ( States and Consumers refer to this as the "anti-circumvention provision.")

3   These provisions in the two documents do not contradict or dilute each other, and Google will be bound by any stronger provisions in the *Epic* Injunction if and when both decrees are in effect. During the three years in which the *Epic* Injunction would be in effect, Google would be expressly prohibited from sharing Google Play revenue with a competing app store on Android devices. But in the Proposed Settlement, Google has committed to a number of provisions that relate to competing app stores that are described above and that last for longer periods of time, such as the commitment, for seven years, to "continue to technically enable Android to allow the installation of third-party apps," including "through third party app stores." In addition, under Section 6.12.1 of the Proposed Settlement, Google would be prohibited from offering *any* inducement with the purpose and effect of violating these commitments.

*Epic* **Injunction Paragraph 5**, for a period of three years, prohibits Google from conditioning "a payment, revenue share, or access to any Google product or service, on an agreement by an app developer to launch an app first or exclusively in the Google Play Store." The Proposed Settlement has an analogous provision. Section 6.5.1, for a period of four years, prohibits Google from entering or enforcing any agreement provision that commits a developer to launching its apps in the Google Play Store "at the same time [as] or earlier than it launches them on any other app store for Mobile Devices."[2] *Id.* § 6.5.1(a). The Proposed Settlement contains two exceptions to its prohibition that are not found in the *Epic* Injunction: First, Google is not prohibited from negotiating title launch timing with a developer on an app-by-app basis (versus for the developer's full suite of apps). And second, after two years, Google is not prohibited from having title launch timing agreements with developers if they "concern alternative app stores owned or controlled by a company with annual revenues exceeding $100 billion." *Id.* § 6.5.2.

As described below, Section 6.5.1 of the Proposed Settlement is more restrictive in some ways than its parallel in the *Epic* Injunction and less restrictive in other ways. If both the Proposed

---

[2] Mobile Devices are Android-compatible smartphones and tablets sold in the U.S. Proposed Settlement § 1.26.

- 4 -

Settlement and the *Epic* Injunction are in effect, Google will have to comply with the more restrictive provisions in each decree.

Section 6.5.1 of the Proposed Settlement is broader than its parallel in the *Epic* Injunction in certain respects. The Proposed Settlement covers all kinds of agreements; States and Consumers note that the *Epic* Injunction, by contrast, covers only those agreements involving payments, revenue shares, or access. In addition, the Proposed Settlement prohibits not only agreements requiring apps to be launched on the Play Store *before* they are launched elsewhere, but also those requiring that apps be launched on the Play Store *simultaneously* with their launch elsewhere (*i.e.*, sim-ship). Although the Proposed Settlement does not expressly address agreement provisions that require an app to launch *exclusively* in the Google Play Store, such a provision would violate the Proposed Settlement because it would constitute an agreement to launch an app earlier than the app was launched on other Android app stores.[3]

In contrast, the *Epic* Injunction does not contain the exceptions described above that are found in the Proposed Settlement. In this respect, the Proposed Settlement is narrower than the *Epic* Injunction. Nevertheless, the exceptions do not present a conflict because they apply only to the scope of the Proposed Settlement and do not have any effect on the scope of the *Epic* Injunction. Here is how these provisions in the *Epic* Injunction and the Proposed Settlement would operate if they were both in effect: Google would be prohibited from having any agreement requiring a developer to launch an app on the Play Store *before* or to the exclusion of launching it on another Android app store, without exceptions. As to sim-ship, during this overlapping time period, Google would not be prohibited from entering into simultaneous launch agreements on an app-by-app basis (§ 6.5.2(a)) and with respect to app stores run by $100 billion+ companies (§ 6.5.2(b)).

***Epic* Injunction Paragraph 6**, for a period of three years, prohibits Google from conditioning "a payment, revenue share, or access to any Google product or service, on an agreement by an app developer not to launch on a third-party Android app distribution platform or store a

---

[3] States and Consumers additionally note that the Proposed Settlement's anti-circumvention provision in Section 6.12.1 works in tandem with Section 6.5.1 to further prohibit Google from securing Play Store exclusivity for apps because an agreement to distribute apps only on the Play Store would necessarily have the purpose and effect of ensuring that they are launched on the Play Store before they are launched elsewhere.

version of an app that includes features not available in, or is otherwise different from, the version of the app offered on the Google Play Store." The Proposed Settlement has an analogous provision. Section 6.5.1 prohibits any agreement provision committing a developer to launch its apps on the Google Play Store "with the same or better features as compared to any other app store for Mobile Devices." *Id.* § 6.5.1(b). The Proposed Settlement's title feature parity provision applies to any kind of agreement; States and Consumers note that, by contrast, as with the title launch parity provisions discussed above, the *Epic* Injunction is narrower because it covers only those agreements involving payments, revenue shares, or access. The Proposed Settlement's title feature parity provision also lasts for a longer period of time.

The Proposed Settlement's title feature parity provision contains the same exceptions as the title launch parity provision, but is otherwise applicable for four years. *See id.* § 6.5.2. Although these exceptions are not found in the *Epic* Injunction, they do not present a conflict because Google would be required to comply with the broader terms of the *Epic* Injunction while the *Epic* Injunction is in effect. The title feature parity provisions in the Proposed Settlement and the *Epic* Injunction would operate without any conflict in much the same way as the title launch parity provisions would. While both provisions were in effect, the Proposed Settlement's application to "any agreement" would impose limitations on Google that are broader than the scope of the *Epic* Injunction's term. And because the *Epic* Injunction does not contain any exceptions, Google could not use the exceptions to the scope of the Proposed Settlement's feature parity provision while the *Epic* Injunction was in effect. In other words, if both the Proposed Settlement and the *Epic* Injunction are in effect, Google will have to comply with the more restrictive feature parity provisions in each decree.

*Epic* **Injunction Paragraph 7**, for a period of three years, prohibits Google from conditioning a "payment, revenue share, or access to any Google product or service, on an agreement with an original equipment manufacturer (OEM) or carrier to preinstall the Google Play Store on any specific location on an Android device." Section 6.6 of the Proposed Settlement also addresses the placement of the Play Store on Android devices. The Proposed Settlement prohibits Google from entering or enforcing any agreement provision whose "purpose or effect" is to secure home screen

1   exclusivity for the Google Play Store on a Mobile Device for a period of five years (§ 6.6.1).

2   The Proposed Settlement's prohibition on home screen exclusivity deals differs from, but
3   neither dilutes nor contradicts, its analogue in the *Epic* Injunction. If both decrees were in effect,
4   Google would have to comply with them both. As a result, Google would have to comply with the
5   more restrictive terms whenever the *Epic* Injunction and the Proposed Settlement were in effect at
6   the same time. For example, during the three-year term of the *Epic* Injunction, Google would not be
7   able to condition payment, revenue share, or access on even a *non-exclusive* agreement for home
8   screen placement of the Google Play Store, even though the Proposed Settlement does not address
9   such non-exclusive agreements. Similarly, during the three-year term of the *Epic* Injunction, Google
10  would not be able to condition payment, revenue share, or access for placement of the Google Play
11  store "*on any specific location*" on an Android device, even though the Proposed Settlement
12  addresses only *home screen placement*.

13  The Proposed Settlement prohibits any agreement with the "purpose or effect" of giving the
14  Play Store home screen exclusivity for five years; States and Consumers note that it is broader in
15  this respect because it is not limited to agreements involving payments, revenue shares, or access.
16  And the Proposed Settlement's home-screen exclusivity provision runs for two years longer than
17  the *Epic* Injunction's provision regarding placement. As a result, for an additional two years beyond
18  the *Epic* Injunction's term, the Proposed Settlement would prohibit Google from having agreements
19  requiring home screen exclusivity.

20  ***Epic* Injunction Paragraph 8**, for a period of three years, prohibits Google from
21  conditioning a "payment, revenue share, or access to any Google product or service, on an agreement
22  with an OEM or carrier not to preinstall an Android app distribution platform or store other than the
23  Google Play Store." Sections 6.6, 6.7, and 6.8 of the Proposed Settlement likewise address
24  preloading of alternative app stores but impose broader restrictions in certain respects. Specifically,
25  the Proposed Settlement, for a period of *five years*, prohibits Google from entering into or enforcing
26  an agreement provision whose purpose or effect is to secure preload exclusivity for the Play Store
27  (§ 6.6.1).

28  The Proposed Settlement, for a period of *four years*, prohibits Google from entering into or

- 7 -

enforcing agreement provisions under which an OEM would be prevented from granting installer rights to preloaded applications (§ 6.7.1). The Proposed Settlement, for a period of *five years*, also prohibits Google from requiring its "consent" before an OEM preinstalls an alternative app store on a Mobile Device and from rejecting a Mobile Device build because it includes an alternative app store (§ 6.8.1).

The Proposed Settlement also contains qualifications that make it less restrictive than the *Epic* Injunction in certain respects. Sections 6.7 and 6.8 do not prohibit Google from taking "reasonable steps that are tailored to protect user privacy or security" (§§ 6.7.1, 6.8.1) and to implement "generally applicable policies relating to content and functionality" and "neutral user experience requirements that apply to all pre-installed app stores (including Google Play)" (§§ 6.7.2, 6.8.2). These qualifications are not found in *Epic* Injunction Paragraph 8,[4] although certain qualifications are found in Paragraph 12 with respect to alternative app stores distributed through the Google Play Store. Section 6.6 of the Proposed Settlement, regarding preload exclusivity agreements, does not contain the qualifications found in Sections 6.7 and 6.8, which the Parties addressed in their April 17, 2024, supplemental briefs. In any event, the presence of these qualifications in the Proposed Settlement does not contradict or dilute Paragraph 8 of the *Epic* Injunction; regardless of the scope of Sections 6.6 to 6.8 of the Proposed Settlement, Google will be required to comply with the full scope of Paragraph 8 of the *Epic* Injunction whenever it is in effect.

The Proposed Settlement also includes terms designed to ensure the functionality of sideloaded app stores on Android devices. The *Epic* Injunction has nothing comparable. For sideloaded app stores, the Proposed Settlement ensures, for a period of four years, that Google will maintain certain functionality regarding app installs and updates. *Id.* §§ 6.9.1-6.9.2. Furthermore, the Proposed Settlement requires Google to combine into a single screen two screens in Android's default sideloading flow, such that the user is not required to visit the device's settings to enable sideloading. The Proposed Settlement provides that Google must display an accurate message on

---

[4] In Google's view, these types of reasonable policies to safeguard consumers would not run afoul of *Epic* Injunction Paragraph 8. Nonetheless, in the event that the Court were to conclude that any specific Google policy is inconsistent with *Epic* Injunction Paragraph 8, then, of course, Google would be required to comply with that construction of Paragraph 8 and could not enforce that policy.

this screen and suggests specific language the States have approved. *Id.* § 6.10.1. The *Epic* Injunction does not contain any analogue to these provisions.

*Epic* **Injunction Paragraph 9**, for a period of three years, prohibits Google from requiring "the use of Google Play Billing in apps distributed on the Google Play Store"; it also prevents Google from prohibiting app developers from telling users about alternative payment methods and from requiring app developers to set a price based on whether Google Play Billing is used. Sections 6.3, 6.4, and 6.11 of the Proposed Settlement also address alternative billing systems. The Proposed Settlement requires Google to give developers the option to offer user choice billing to users of Android devices in the United States for a period of at least five years. *Id.* § 6.3.1. Under this provision, app developers can choose to offer an alternative in-app billing service alongside Google Play Billing and give users the ability to choose a billing system via a neutral choice screen. *Id.* § 6.3.1(a), (d). The Proposed Settlement further provides that app developers can encourage users to select their alternative billing system through pricing or promotion and can use contact information obtained either inside or outside the app to communicate with users out-of-app, including about alternative payment systems. *Id.* §§ 6.3.1(b), 6.4.1, 6.11.1(a), 6.11.2. Finally, the Proposed Settlement limits the data Google can collect from app developers to only the data necessary to support the alternative billing systems and to collect a service fee. *Id.* § 6.3.2. Google is prohibited from using any of this data to compete with those developers' apps. *Id.*

The Proposed Settlement's terms regarding alternative in-app billing systems differ from the *Epic* Injunction's terms but do not contradict, undercut, or dilute them. If both the *Epic* Injunction and the Proposed Settlement are in effect, Google will be required to comply with the in-app billing provisions of both decrees. For example, the *Epic* Injunction would require Google to allow an app developer to offer a third-party billing system *in place* of Google Play Billing, but the Proposed Settlement requires Google to allow third-party billing systems offered *alongside* Google Play Billing (§ 6.3.1). Therefore, if both decrees were in effect, Google would be required to allow an app developer to choose for itself whether to (i) offer a third-party billing system *in place* of Google Play Billing (as a result of the *Epic* Injunction) or (ii) offer a third-party billing system *alongside* Google Play Billing (as required by the Proposed Settlement).

Both provisions would entitle app developers to tell users about the alternative billing system and to set their prices as they see fit. For example, the Proposed Settlement expressly prohibits Google from requiring app developers to offer equal or more favorable prices in Google Play Billing versus alternative distribution platforms or billing systems (§ 6.4.1). And the Proposed Settlement provides that, with respect to user choice billing, "[d]evelopers can encourage Users to choose their billing service through offering different pricing or promotion options" (§ 6.3.1(b)). Likewise, *Epic* Injunction Paragraph 9 states that "Google may not require a developer to set a price based on whether Google Play Billing is used."

The provisions of the *Epic* Injunction and the Proposed Settlement regarding alternative billing systems would work alongside each other in much the same way as the other provisions. As noted above, if both decrees were to take effect, during the three-year duration of the *Epic* Injunction, Google would have to allow app developers to decide whether to (i) offer alternative payment systems *in place* of Google Play Billing or (ii) offer alternative payment systems *alongside* Google Play Billing. During the two to three years extending beyond the *Epic* Injunction, the Proposed Settlement would require Google to allow app developers to offer alternative payment systems alongside Google Play Billing. Both documents require Google to allow app developers to tell users about their alternative billing systems and prohibit Google from setting prices when alternative billing systems are used.

**Epic Injunction Paragraph 10**, for a period of three years, prohibits Google from preventing an app developer from "communicating with users about the availability or pricing of an app outside the Google Play Store," including by "providing a link for the user to download the app outside the Play Store."

Section 6.11 of the Proposed Settlement also addresses developer communications through multiple provisions.

*First*, Section 6.11.2 of the Proposed Settlement requires Google, for a period of six years, to allow developers to communicate with users outside an app using contact information obtained either outside the app or inside it (with user consent).

*Second*, the Proposed Settlement additionally requires Google, for a period of five years, to

allow developers of apps that allow in-app purchases of digital goods and services to communicate with users about alternative ways to purchase digital goods and services through the same "calls to action" inside their apps as Apple is required to allow under the *Epic v. Apple* injunction, except that Google is not required to permit external links and Google's obligations under this provision do not exceed allowing developers to provide users with accurate information within the app that informs users about purchasing options outside the app, including price information. *Id.* § 6.11.4.

*Third*, for consumption-only apps (*i.e.*, apps that do not offer in-app purchases), the Proposed Settlement, for a period of six years, requires Google to allow developers to inform users within the app about alternative purchasing options outside the app, although Google is not required to permit external links. *Id.* § 6.11.3.

*Fourth*, the Proposed Settlement, for a period of six years, does not allow Google to prohibit developers from disclosing to users Google's service or other fees associated with the Google Play Store or Google Play Billing. *Id.* § 6.11.5.

The most notable difference between the decrees is the *Epic* Injunction's provision that Google "may not prohibit a developer from providing a link to download the app outside the Google Play Store" for three years. The State Settlement does not contain a comparable provision and does not require Google to permit external links. Another notable difference is that the developer communication provisions in the Proposed Settlement last for a longer period of time. But these differences would not result in the Proposed Settlement contradicting or diluting the *Epic* Injunction. Rather, when both decrees are in effect, Google would not be permitted to limit the communications described in either decree.

***Epic* Injunction Paragraphs 11 and 12**, for a period of three years, require Google to give alternative Android app stores access to the Google Play Store's catalog of apps and to facilitate their download (¶ 11) and prohibit Google from preventing the distribution of alternative Android app stores through the Play Store (¶ 12). The Proposed Settlement contains no analogues to these provisions.

Finally, ***Epic* Injunction Paragraph 13** puts in place a three-member Technical Committee to "review disputes or issues relating to the technology and processes required" by the *Epic*

Injunction. The Technical Committee is to have one member from Google (paid for by Google), one from Epic (paid for by Epic), and a third chosen by the first two (paid for by Google and Epic evenly). Section 7 of the Proposed Settlement puts in place an Independent Compliance Professional ("ICP") to assist the States with ensuring Google's compliance with the terms of the Proposed Settlement. The Proposed Settlement requires Google to prepare annual reports evaluating its compliance with the Proposed Settlement's injunctive terms and puts the ICP in place to review Google's reports and prepare an addendum evaluating Google's assessment of its compliance. *Id.* § 7.2. Google must cooperate fully with the ICP to allow the ICP to fulfill its functions and must promptly provide information requested by the ICP that is reasonably necessary to evaluate the accuracy of Google's assertions in its reports. The ICP will remain in place for five years, and its reasonable compensation and expenses will be paid for by Google. *Id.* §§ 7.3.3, 7.6. The States can refer credible complaints they receive to the ICP for evaluation when the ICP reviews Google's reports. *Id.* § 7.2.5. The States, unlike private parties, retain all their options for a full investigation of Google's conduct, including the use of compulsory process.

If the *Epic* Injunction's installation of a Technical Committee were to take effect, that Committee could fulfill its role during the three years in which the Injunction were in effect without any conflict with the Proposed Settlement's ICP or vice versa. The two roles are distinct and concern different decrees. While the ICP would be responsible for evaluating Google's reports of compliance with the Proposed Settlement, the Technical Committee would be responsible for reviewing disputes or issues regarding the technology or processes required by the *Epic* Injunction.

## CONCLUSION

The Proposed Settlement's injunctive terms are consistent with the terms of the *Epic* Injunction because any "more restrictive" terms of the *Epic* Injunction will govern while both injunctions are in place. Likewise, any "more restrictive" terms of the Proposed Settlement will govern while both injunctions are in place. Thus, neither dilutes nor contradicts the other. The States respectfully request that the Court enter an order granting preliminary approval of the Proposed Settlement, directing that notice be given to Eligible Consumers, and setting a final approval hearing schedule.

- 12 -

JOINT STATEMENT REGARDING STATES' MOTION TO GIVE NOTICE OF PROPOSED
*PARENS PATRIAE* SETTLEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

DATED: February 10, 2025

Respectfully submitted,

**OFFICE OF THE CALIFORNIA ATTORNEY GENERAL**

By: */s/ Brian D. Wang*
Paula L. Blizzard
Michael W. Jorgenson
Brian D. Wang
Carolyn D. Jeffries

**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

By: */s/ Jayme L. Weber*
Jayme L. Weber

**OFFICE OF THE NEW YORK ATTORNEY GENERAL**

By: */s/ Elinor R. Hoffmann*
Elinor R. Hoffmann

**OFFICE OF THE NORTH CAROLINA DEPARTMENT OF JUSTICE**

By: */s/ Kunal J. Choksi*
Kunal J. Choksi

**OFFICE OF THE TENNESSEE ATTORNEY GENERAL AND REPORTER**

By: */s/ S. Ethan Bowers*
J. David McDowell
S. Ethan Bowers

**OFFICE OF THE UTAH ATTORNEY GENERAL**

By: */s/ Marie W.L. Martin*
David N. Sonnenreich
Marie W.L. Martin

*Counsel for the Plaintiff States*

- 13 -
JOINT STATEMENT REGARDING STATES' MOTION TO GIVE NOTICE OF PROPOSED
*PARENS PATRIAE* SETTLEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

|||
|---|---|
| | **BARTLIT BECK LLP** |
| | Karma M. Giulianelli |
| | |
| | **KAPLAN FOX & KILSHEIMER LLP** |
| | Hae Sung Nam |
| | |
| By: | */s/ Karma M. Giulianelli* |
| | Karma M. Giulianelli |

*Co-Lead Counsel for Consumer Plaintiffs in In re Google Play Consumer Antitrust Litigation*

**MUNGER, TOLLES & OLSON LLP**
Glenn D. Pomerantz
Kuruvilla Olasa

**MORGAN, LEWIS & BOCKIUS LLP**
Brian C. Rocca

By:   */s/ Kuruvilla J. Olasa*
        Kuruvilla J. Olasa

*Counsel for Defendants Google LLC et al.*

- 14 -
JOINT STATEMENT REGARDING STATES' MOTION TO GIVE NOTICE OF PROPOSED
*PARENS PATRIAE* SETTLEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

**E-FILING ATTESTATION**

I, Brian D. Wang, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatory identified above has concurred in this filing.

*/s/ Brian D. Wang*