1  Paul J. Riehle (SBN 115199)
   paul.riehle@faegredrinker.com
2  **FAEGRE DRINKER BIDDLE & REATH**
   **LLP**
3  Four Embarcadero Center, 27th Floor
4  San Francisco, CA 94111
   Telephone: (415) 591-7500
5

6  Gary A. Bornstein (*pro hac vice*)
   gbornstein@cravath.com
7  **CRAVATH, SWAINE & MOORE LLP**
8  375 Ninth Avenue
   New York, New York 10001
9  Telephone: (212) 474-1000

10 *Counsel for Plaintiff Epic Games, Inc.*

11
   [Additional Counsel Appear on Signature Page]
12

13

14

15                    **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17                       **SAN FRANCISCO DIVISION**

18 | **IN RE GOOGLE PLAY STORE** | Case No. 3:21-md-02981-JD
19 | **ANTITRUST LITIGATION** |

20 | THIS DOCUMENT RELATES TO: | **RESPONSE OF EPIC GAMES, INC. TO**
21 | | **THE STATES, CONSUMER COUNSEL**
   | *State of Utah et al. v. Google LLC et* | **AND GOOGLE'S JOINT STATEMENT**
22 | *al.,* Case No. 3:21-cv-05227-JD |
   | | Judge: Hon. James Donato
23 | *In re Google Play Consumer Antitrust*
24 | *Litigation,* Case No. 3:20-cv-05761-JD |

25

26

27

28

---

RESPONSE OF EPIC GAMES, INC.                                    3:21-MD-02981-JD
TO THE STATES, CONSUMER COUNSEL                                 3:21-CV-05227-JD
AND GOOGLE'S JOINT STATEMENT                                    3:20-CV-05761-JD

1    Epic Games, Inc. ("Epic"), the Plaintiff in Member Case No. 20-cv-05671-JD

2   (*Epic v. Google*), hereby submits this response (the "Response") to correct certain misstatements

3   concerning the terms of the injunction issued by this Court in *Epic v. Google* (MDL Dkt. 1017)

4   (the "Injunction") made in a joint statement (the "Joint Statement") filed by the States, Class

5   Counsel and Google (collectively, the "Settling Parties") (*see* MDL Dkt. 1067).

6                                          **RESPONSE**

7    On November 14, 2024, this Court directed the Settling Parties to file a joint

8   statement addressing the consistency of their proposed settlement ("the Proposed Settlement")

9   with the Injunction.  (MDL Dkt. 1056.)  On February 10, 2025, the Settling Parties filed the Joint

10  Statement, explaining their view that the Proposed Settlement is consistent with the injunction

11  such that the two "would operate without contradiction or dilution".  (MDL Dkt. 1067 at 1.)

12    Epic does not take a position on the consistency of the Proposed Settlement and

13  the Injunction, or of the propriety or adequacy of the Proposed Settlement, to which Epic is not a

14  party.  Epic files this Response only to correct the Settling Parties' mischaracterization, in the

15  Joint Statement, of the operation and scope of Paragraph 5 of the Injunction.  That Paragraph of

16  the Injunction states:

17
18          For a period of three years ending on November 1, 2027,
            Google may not condition a payment, revenue share, or
            access to any Google product or service, on an agreement by
19          an app developer to launch an app first or exclusively in the
            Google Play Store.
20

21  (MDL Dkt. 1017 at 1.)

22    In the Joint Statement, the Settling Parties compare Paragraph 5 of the Injunction

23  to Section 6.5.1 of the Proposed Settlement, which, if approved, would prohibit Google from

24  entering or enforcing any provision of an agreement that commits a developer to launching its

25  apps in the Google Play Store "at the same time [as] or earlier than it launches them on any other

26  app store for Mobile Devices".  (MDL Dkt. 1067 at 4.)  The Settling Parties claim in the Joint

27  Statement that Section 6.5.1 of the Proposed Settlement is broader than Paragraph 5 of the

28  Injunction, in relevant part, because Section 6.5.1 "prohibits not only agreements requiring apps

RESPONSE OF EPIC GAMES, INC.                                    3:21-MD-02981-JD
TO THE STATES, CONSUMER COUNSEL                                 3:21-CV-05227-JD
AND GOOGLE'S JOINT STATEMENT                                    3:20-CV-05761-JD

1

1  to be launched on the Play Store *before* they are launched elsewhere, but also those requiring that

2  apps be launched on the Play Store *simultaneously* with their launch elsewhere (*i.e.*, sim-ship)".

3  (*Id.* at 5 (emphasis in original).)  That is a mischaracterization of the prohibition in Paragraph 5

4  of the Injunction.

5          Paragraph 5 of the Injunction, as noted above, prohibits agreements requiring a

6  developer to launch its app on the Google Play Store exclusively or "first".  Contrary to the

7  Settling Parties' claim, the term "first" in this context encompasses (and thus prohibits)

8  agreements that require a developer to launch its apps on Google Play at the same time that it

9  launches on any other store (*i.e.*, sim-ship agreements); it is in no way limited to agreements

10  requiring a developer to launch on the Google Play Store *before* it launches on other stores.  This

11  conclusion is mandated here for at least the following reasons.

12          *First,* the Settling Parties' proposed reading of the term "first" would render that

13  term entirely redundant, given Paragraph 5's explicit prohibition on exclusivity arrangements.

14  Indeed, any requirement to launch on the Google Play Store *before* launching on any other store

15  is, by definition, a requirement to launch *exclusively* on the Google Play Store for some period of

16  time.  Such an arrangement is thus separately prohibited by the Injunction's specific, explicit

17  prohibition on exclusivity arrangements.  *See B2B CFO Partners, LLC v. Kaufman*, 2012 WL

18  1067904, at *3 (D. Ariz. Mar. 29, 2012) ("The Court looks to the plain language of the

19  injunction, construing it so as to give effect to every part of the document."); *Oracle USA, Inc. v.

20  Rimini St., Inc.*, 2021 WL 1224904, at *16 (D. Nev. Mar. 31, 2021) (explaining that an

21  injunction should not be interpreted in a way that "would render . . . provisions of the injunction

22  superfluous").

23          *Second*, a sim-ship requirement **is** a requirement to launch first on the Google

24  Play Store, alongside simultaneous "first" launches on other stores, because it prohibits the

25  developer from launching on the Google Play Store *second* (or third, or fourth) in time.  Nothing

26  about the term "first", in and of itself, renders it inapplicable to sim-ship requirements that

27  prevent a developer from launching its apps on other stores ahead of launching it on the Google

28  Play Store.

RESPONSE OF EPIC GAMES, INC.                                    3:21-MD-02981-JD
TO THE STATES, CONSUMER COUNSEL                        3:21-CV-05227-JD
AND GOOGLE'S JOINT STATEMENT                              3:20-CV-05761-JD

1    *Third*, the injunction must be read in the context of the jury verdict.  *Inst. of*

2    *Cetacean Rsch. v. Sea Shepherd Conservation Soc'y,* 774 F.3d 935, 949 (9th Cir. 2014) ("In

3    deciding whether an injunction has been violated it is proper to observe the objects for which the

4    relief was granted . . . ."); *see also Salazar v. Buono*, 559 U.S. 700, 762 (2010) (Breyer, J.,

5    dissenting) ("A court should construe the scope of an injunction in light of its purpose and

6    history, in other words, 'what the decree was really designed to accomplish.' Courts have long

7    looked to 'the objects for which the [injunctive] relief was granted, as well as the circumstances

8    attending it,' in deciding whether an enjoined party has complied with an injunction.")  The jury

9    in *Epic v. Google* explicitly found Google's Project Hug agreements—all of which were sim-

10   ship agreements—to violate the antitrust laws.  (MDL Dkt. 866 at 5; MDL Dkt. 984 at 17-20 ("In

11   exchange for significant payments from Google, developers who signed a Project Hug agreement

12   'could not launch [an app] either *first* or exclusively on any competing Android distribution

13   platform'. . . .  This and similar trial evidence demonstrate that the jury's findings on Google's

14   anticompetitive conduct were well supported." (emphasis added)).  Against the backdrop of the

15   jury's verdict, Paragraph 5 is clearly intended to enjoin Google from entering Hug-like

16   agreements.  The Settling Parties' strained reading suggests the Court's Injunction simply

17   ignores the jury verdict and does not address anticompetitive agreements the jury expressly held

18   to be illegal.  That is not a reasonable reading of the Injunction in context, and as such, it should

19   be rejected.  *Alston v. Nat'l Collegiate Athletic Ass'n*, 958 F.3d 1239, 1261 (9th Cir. 2020) ("We

20   construe injunctions in 'context' and 'so as to avoid . . . absurd result[s]'.")

21

22

23

24

25

26

27

28

Dated:  March 3, 2025          Respectfully submitted,

By:   _____/s/ *Gary A. Bornstein*_____
            Gary A. Bornstein

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Counsel for Epic Games, Inc.*

RESPONSE OF EPIC GAMES, INC.
TO THE STATES, CONSUMER COUNSEL
AND GOOGLE'S JOINT STATEMENT

3:21-MD-02981-JD
3:21-CV-05227-JD
3:20-CV-05761-JD

4