Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, Colorado 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for Consumer Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS FOR INDIVIDUAL PLAINTIFFS**<br><br>Date:  November 6, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

**NOTICE OF AMENDED MOTION AND AMENDED MOTION**

PLEASE TAKE NOTICE that on November 6, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-titled Court, before the Honorable James Donato, of the United States District Court of the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Courtroom 11, 19th Floor, Consumer Counsel will move and hereby do move the Court for an award of attorneys' fees, reimbursement of expenses, and incentive awards. The initial motion was filed on September 12, 2025.  This motion amends the initial filing for the sole purpose of adjusting the request for unreimbursed expenses from $8,612,447.41 to $8,585,761.38 as a result of a credit recently received. This amended motion is based on this notice of amended motion and amended motion, the accompanying memorandum and points of authorities, the amended declarations and exhibits filed in support of the amended motion, the declarations and exhibits filed in support of the motion filed on September 12, 2025, the records on file in this action, and any argument of counsel or further filings that may be presented at or before the hearing on this motion.

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 2

    I.    Consumer Counsel Worked on Behalf of All Consumers Nationwide .................. 2

    II.    The Settlement Benefits Consumers Nationwide ....................................... 3

    III.    Consumer Counsel's Work in Prosecuting the Case ................................. 4

        A.    Consumer Counsel Played a Leading Role in Fact Discovery .................. 4

        B.    Consumer Counsel Spearheaded the Discovery of Google's Chat Spoliation and Other Discovery Misconduct ................................... 6

        C.    Consumer Counsel Developed Important Expert Analysis ....................... 7

        D.    Summary Judgment and Trial Preparation ...................................... 7

        E.    Settlement Discussions and Mediation .......................................... 8

        F.    Class Certification and Appeal .................................................. 8

ARGUMENT ............................................................................................................... 9

    I.    Consumer Counsel Are Entitled to Fees and Expenses from the Common Fund ................................................................................. 9

        A.    A Fee Award of 13.5% of the Common Damages Fund is Reasonable ............................................................................ 10

        B.    A Lodestar Cross-Check Confirms the Fee Request is Reasonable ............................................................................ 14

    II.    Counsel Should Be Reimbursed for Litigation Costs ........................................... 15

    III.    Individual Plaintiffs Should Be Paid Incentive Awards ......................................... 15

CONCLUSION ........................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Andrews v. Plains All Am. Pipeline L.P.*,
    No. CV 15-4133 PSG (JEMx), 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022)...............15

*Apple Inc. v. Pepper*,
    1587 U.S. 273 (2019)..................................................................................12

*B.P. N. Am. Trading, Inc. v. Vessel Panamax Nova*,
    784 F.2d 975 (9th Cir. 1986) .......................................................................9

*Bondi v. DeFalco*,
    No. 17-CV-5681 (KMK), 2020 WL 2476006 (S.D.N.Y. May 13, 2020) ........................11

*In re Alphabet, Inc. Sec. Litig.*,
    No. 18-cv-06245-TLT, 2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ...........................13

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) .......................................................................9

*In re Apple Inc. Sec. Litig.*,
    No. 4:19-CV-02033-YGR, 2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) ......................12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .......................................................................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    MDL No. 1486, 2013 WL 12387371 (N.D. Cal. Nov. 5, 2013), *R&R
    adopted*, 2014 WL 12879521 (N.D. Cal. June 27, 2014) ...............................10, 11, 12, 15

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ...................................................11, 13, 14

*In re Google Play Developer Antitrust Litig.*,
    No. 20-cv-05792-JD, 2024 WL 150585 (N.D. Cal. Jan. 11, 2024)..................................14

*In re High-tech Emp. Antitrust Litig.*,
    No. 11-CV-2509-LHK, 2014 WL 10520477 (N.D. Cal. May 16, 2014) .........................11

*In re High-tech Emp. Antitrust Litig.*,
    No. 11-CV-2509-LHK, 2014 WL 10520478 (N.D. Cal. May 16, 2014) .........................11

*In re Infospace, Inc. Sec. Litig.*,
    330 F. Supp. 2d 1203 (W.D. Wash. 2004) .....................................................15

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*,
    768 F. App'x 651 (9th Cir. 2019) .........................................................13, 14

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    959 F.3d 922 (9th Cir. 2020) ........................................................................................11, 12, 13

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .......................................................................................................9

*Norcia v. Samsung Telecomms. Am., LLC*,
    No. 14-CV-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021)................................10

*Ohio v. American Express Co.*,
    585 U.S. 529 (2018)......................................................................................................................12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .....................................................................................................15

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939).......................................................................................................................9

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) .....................................................................................................14

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ...................................................................................................15

*Thompson v. Transamerica Life Ins. Co.*,
    No 2:18-cv-05422-CAS-GJSx, 2020 WL 6145104 (C.D. Cal. Sept. 16, 2020)................14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................................................13

*Wininger v. SI Mgmt. L.P.*,
    301 F.3d 1115 (9th Cir. 2002) .....................................................................................................9

**Other Authorities**

5 Newberg and Rubenstein on Class Actions § 15:60....................................................................9

Davis & Kohles, *2020 Antitrust Annual Report: Class Action Filings in Federal
    Court* (2021),
    *available at*: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782 ...................13

Restatement (Third) of Restitution and Unjust Enrichment § 29, cmt. c (2011)...........................9

AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

**INTRODUCTION**

For over three years, Consumer Counsel vigorously prosecuted consumer antitrust claims against Google, investing nearly 100,000 hours of attorney time and over $8.5 million in out-of-pocket expenses. Going back to August 2020, Consumer Counsel worked in close collaboration with the other Plaintiffs, including Epic. Once the States entered the litigation, Consumer Counsel and the States executed a landmark public-private partnership that allowed the States to leverage Consumer Counsel's work and expertise in prosecuting their *parens patriae* claims. The enormous efforts of Consumer Counsel paid dividends for consumers across the nation, as it led to a $700 million settlement and negotiated injunctive relief (the "State-Consumer Settlement") just a month before the scheduled November 2023 trial. The efforts of Consumer Counsel also contributed to Epic's trial victory and this Court's resulting injunction.

In view of their work, Consumer Counsel request—upon approval of the settlement—an award of $85,000,000 in attorneys' fees, representing 13.5% of the common fund, reimbursement of $8,585,761.38 in expenses Consumer Counsel incurred litigating this action, and $5,000 incentive awards for each of the six individual consumer plaintiffs.[1] This request has been vetted with representatives of the States, and the lead States, acknowledging that the "Consumer Counsel … materially contributed to the joint prosecution of this case and in bringing this matter to a successful conclusion," have represented that "no State plans to object to a Consumer Counsel fee request in the amount of $85 million." Notice at 1-2, *State of Utah v. Google LLC*, No. 3:21-cv-05227-JD (N.D. Cal. Feb. 20, 2024), Dkt. 540.

A motion seeking approval of the State-Consumer Settlement has been pending since December 2023. Mot. to Give Notice, *State of Utah v. Google LLC*, No. 3:21-cv-05227-JD (N.D. Cal. Dec. 18, 2023), Dkt. 522. The Ninth Circuit's decision affirming the Epic jury verdict and this Court's entry of a permanent injunction against Google was filed July 31, 2025. Op., *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981 (N.D. Cal. July 31, 2025), "MDL" Dkt. 1084. The

---

[1] Google paid the $700 million settlement in May 2024. It has accrued interest in escrow since that time. Consumer Counsel are not seeking any of the interest in their requested fee award.

1

Ninth Circuit rejected Google's argument that the coexistence of the State/Consumer settlement injunction and the Epic permanent injunction would harm the public interest, finding that this Court appropriately considered the settlement injunction. *Id.* at 63. The motion for preliminary approval is now ripe for decision, Consumer Counsel bring this motion so that the Court has it for consideration without delay if and when the settlement is approved.

## BACKGROUND

**I.      Consumer Counsel Worked on Behalf of All Consumers Nationwide**

Consumer Plaintiffs filed antitrust claims on behalf of a putative nationwide class on August 16, 2020, within days of Epic's complaint. *See* Compl., *Carr v. Google LLC*, No. 3:20-cv-05761-JD (N.D. Cal. Aug. 16, 2020), Dkt. 1. For the first year of the case—which was on an extremely fast track for antitrust litigation—Consumer Counsel took a leading role alongside Epic pursuing fact discovery, refining the theory of the case, and developing expert evidence. When the States joined this litigation eleven months later, Consumer Counsel and the States entered into a Joint Prosecution Agreement ("JPA") in which they agreed to jointly litigate the case, prosecuting the action in a pathbreaking public-private partnership that allowed them to share resources, coordinate strategy and leverage their respective capabilities for the benefit of consumers nationwide. The parties agreed in the JPA that Consumer Counsel would work on behalf of all consumers nationwide in collaboration with the States. Decl. Ex. 1.[2] In recognition of the efforts that Consumer Counsel had expended and would continue to expend for the benefit of all consumers, the States recognized in the JPA that Consumer Counsel would be entitled to apply for fees and costs from any future fund created to collectively resolve consumer claims.[3] Decl. Ex. 1, at 3.

---

[2] All "Decl." citations in this motion refer to the Declaration of Lead Counsel Karma Giulianelli and Hae Sung Nam in Support of Consumer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards for Individual Plaintiffs.

[3] The JPA provides, "in acknowledgement of Class Counsel's significant contribution to date and their continued work" on the case, that counsel for Consumer Plaintiffs "may make an application to the Court for an award of attorneys' fees and reimbursement of litigation expenses from any recovery created by resolution of the Covered Claims." Decl. Ex. 1, at 3. The States acknowledged the law allows for the application "whether any class is or is not certified as to Non-Covered Claims." Decl. Ex. 1, at 3.

## II.        The Settlement Benefits Consumers Nationwide

The State-Consumer Settlement, which was achieved after more than one year of mediation before Hon. Daniel Weinstein (ret.) and Honorable Rebecca Westerfield (ret.), required Google to pay $700 million, as well as to implement changes to the operation of the Play Store which are consistent with the terms of this Court's injunction.[4] The $700 million monetary settlement alone is a strong result for consumers. As set out in the motion for preliminary approval and subsequent filings, the settlement will provide significant compensation to the millions of Google Play customers who overpaid for apps and in-app purchases over the last seven years. Mot. to Give Notice at 10-12, No. 3:21-cv-05227-JD, Dkt. 522; States' Suppl. Br. at 5-7, Dkt. 953 at 5-7. After accounting for costs and this fee request, the States estimate that the average consumer will receive over 47% of a reasonable metric of their damages, an outstanding result for a negotiated settlement that avoided the risks of trial and appeal. MDL Dkt. 953 at 5-6.

Consumer and State Plaintiffs obtained this settlement in the face of substantial litigation uncertainty. The motion for preliminary approval sets out these risks in detail, Mot. to Give Notice at 12-15, No. 3:21-cv-05227-JD, Dkt. 522, but two particularly acute risks are worth emphasis. At the time of settlement, Google's motion for partial summary judgment on the issue of Consumer and State Plaintiffs' standing to pursue damages for in-app purchases, MDL Dkt. 483, was pending. If granted, that motion would have eliminated more than 99% of Consumer and State Plaintiffs' overcharge damages. MDL Dkt. 484-3 ("Rysman Rpt.") ¶ 53. Moreover, when the settlement was negotiated, States and Consumers both relied on Dr. Singer's damages model (the subject of a *Daubert* motion granted one week before the principal terms of the settlement were reached), which was the only "traditional overcharge model" offered to support nationwide consumer damages, Mot. to Give Notice at 12, No. 3:21-cv-05227-JD, Dkt. 522, and the other model was a novel utility-based damages model for which Google had a serious *Daubert* motion pending. MDL Dkt. 484 at 13 ("No

---

[4] The terms of the injunctive relief provided by the State-Consumer Settlement are detailed in the preliminary approval papers. Mot. to Give Notice at 5-7, No. 3:21-cv-05227-JD, Dkt. 522. While the Court subsequently entered an injunction in the *Epic* case, the injunction provided in the settlement had significant value because it ensured that Google would be required to change its practices regardless of the outcome of Epic's then-ongoing litigation and appeal.

AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

court has allowed an expert to use a model similar to the one proposed by Dr. Rysman"). The State and Consumer's entitlement to damages required complex modeling and was not a foregone conclusion at any time during the litigation, and was in significant doubt at the time of settlement.

**III.     Consumer Counsel's Work in Prosecuting the Case**

In just over three years, this case proceeded through fact discovery, class, merits expert discovery, two rounds of *Daubert* briefing, a landmark sanctions motion and hearing, summary judgment briefing and argument, and trial preparation. Decl. ¶ 35. Consumer Counsel played a major role until almost the eve of trial. Notice of Consumer and State Plaintiffs' settlement in principle with Google was filed with the Court on September 5, 2023, and the Court vacated all remaining deadlines after the settlement finalized on October 12, less than one month before trial. MDL Dkt. 596, 667.

**A.     Consumer Counsel Played a Leading Role in Fact Discovery**

Consumer Counsel aggressively pursued discovery from the start of this litigation. *See* MDL Dkt. 18; Decl. ¶¶ 41-60. This early effort involved identifying the key witnesses, obtaining the critical documents from those witnesses, negotiating with Google on which witnesses would be deposed when, and preparing detailed deposition outlines. Decl. ¶¶ 55-60. Consumer Counsel either took the lead on or were instrumental in negotiating all the early discovery orders, serving initial document requests and third-party subpoenas, negotiating the parameters of document discovery, and securing the initial production of Google documents and transactional data. Decl. ¶¶ 42-44, 46. After receiving the productions, Consumer Counsel established a document review protocol and began reviewing documents. Decl. ¶¶ 47-50. Consumer Counsel diligently followed up with Google regarding important production deficiencies, including Google's initial failures to produce Board materials, OEM and carrier contracts, texts, and chats. Decl. ¶¶ 44, 51-53. Consumer Counsel also litigated several discovery issues, securing favorable court orders regarding search terms and custodial categories and requiring Google to produce all relevant House Judiciary Committee investigatory documents and discovery materials from prior cases against Google. Decl. ¶ 45. Consumer Counsel's efforts during the first year of litigation were critical during a time when they were the only attorneys pursuing recovery for *consumers*. Decl. ¶¶ 37-39.

AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

Consumer Counsel's efforts persisted throughout fact discovery. Consumer Counsel and the States collectively viewed more than 8.2 million pages of documents in their shared review database, logging 59,000 review hours and rating and coding more than 1 million documents. Decl. ¶ 49. Consumer Counsel took the laboring oar in this review, accounting for 78% of pages viewed by the Consumer and State Plaintiff teams and 73% of the total review hours. Decl. ¶ 49. When Google belatedly produced more than 100,000 documents after the close of discovery, Consumer Counsel handled the entire review of those documents, ultimately reviewing more than 43,000 documents responsive to key search terms and sharing memos of notable documents with the States. Decl. ¶ 78. A number of those belatedly produced documents were ultimately identified as potential trial exhibits, consistent with Consumer Counsel's practice of routinely exchanging lists of "hot documents" with all plaintiffs including Epic. Decl. ¶ 78.

Consumer Counsel prepared extensive memos, summaries, and chronologies regarding key aspects of the case. Decl. ¶¶ 47-50. This work provided a key foundation for Plaintiffs' preparation for depositions, expert reports, as well as trial. Decl. ¶ 50.

Consumer Counsel also established a dedicated privilege team, which led efforts by Consumer and State Plaintiffs to identify and challenge Google's many improper privilege determinations. Decl. ¶ 52. As a result of those efforts, Google was forced to re-review tens of thousands of documents on its privilege logs, and ultimately produced thousands of documents that it had previously withheld. Decl. ¶ 52.

Finally, Consumer Plaintiffs took a lead or substantial role in depositions of many Google trial witnesses. These include Sundar Pichai, Lawrence Koh, Purnima Kochikar, Eric Chu, Hiroshi Lockheimer, Kirsten Rasanen, Donald Harrison, and Christian Cramer. Decl. ¶ 57. Of particular note, Consumer Plaintiffs led the depositions of Jamie Rosenberg and Paul Gennai, two Google employees whose testimony was discussed at length in Epic's closing argument. Decl. ¶ 57; Tr. at 63-64, 67, 69-73, 83, 139, *Epic Games, Inc. v. Google, LLC*, No. 3:20-cv-05671-JD (N.D. Cal. Dec. 12, 2023, Dkt. 607 (Tr. 3356-3357, 3360, 3362-3366, 3376, 3432.) Consumer Counsel also took a lead or substantial role in depositions of other key witnesses, including Sameer Samat, John Lagerling, Andy Rubin, Paul Feng, Paul Bankhead, and Christopher Li. Decl. ¶ 57.

## B. Consumer Counsel Spearheaded the Discovery of Google's Chat Spoliation and Other Discovery Misconduct

Consumer Counsel was instrumental in identifying and pursuing Google spoliation of Chat data. Early in discovery, Consumer Counsel identified an absence of instant messages from Google's productions. *See* Decl. ¶ 72; Decl. Ex. 2, at 3. After months of dogged follow-up by Consumer Counsel, Google finally revealed that it was continuing to delete Google Chat messages and was relying solely on individual employees to preserve relevant chats. Decl. ¶ 73. In the very first deposition of a Google employee, Consumer Counsel raised the issue, eliciting testimony from Tian Lim that he used Google Chat "every day" but had never turned on his chat history to comply with a litigation hold. Decl. ¶ 74; MDL Dkt. 258-4 (Lim Dep.) 447:9-10, 459:5-7. The next day, Consumer Counsel wrote Google demanding further information about its Chat retention practices, which led directly to Plaintiffs bringing the issue to the Court two weeks later. Decl. ¶ 74-75; Decl. Ex. 3.

Consumer Counsel prepared and served document preservation interrogatories on behalf of all Plaintiffs. Decl. ¶ 75; Decl. Ex. 4. Consumer Counsel took the lead in drafting Plaintiffs' later motion for Rule 37 sanctions filed in October 2022. Decl. ¶ 77; MDL Dkt. 349. Consumer Counsel took a lead role in preparing for the subsequent hearing—retaining a technical expert, preparing a presentation for the Court, and handling closing argument. Decl. ¶ 77. After the hearing, the Court ordered Google to produce chats for 383 custodians. MDL Dkt. 454. Consumer Counsel spearheaded the review of those chats, ultimately reviewing over 43,000 chats on a compressed schedule. MDL Dkt. 464; Decl. ¶ 78. On March 28, 2023, the Court concluded that Google should be sanctioned for its destruction of chats. MDL Dkt. 469; Decl. ¶ 79. The Court's sanctions ruling accelerated the momentum of the case and provided settlement leverage. Decl. ¶ 80.

Even after the Court's sanctions ruling, Consumer Counsel continued to investigate and press issues related to Google's discovery misconduct. Decl. ¶ 81. In April 2023, Consumer Counsel discovered two separate chats in which Google in-house counsel discussed being included on correspondence for purposes of "fake privilege." Decl. ¶ 81. Consumer Counsel, on behalf of all Plaintiffs, wrote to Google about the issue, asking to meet and confer, and seeking additional document productions from Google in-house counsel. Decl. ¶ 81, Decl. Ex. 5. Consumer Counsel

pressed for discovery into these issues until shortly before settling State and Consumer Plaintiffs' claims, including seeking depositions of Tristan Ostrowski and Emily Garber, the attorneys on the "fake privilege" chats. Decl. ¶ 82, Decl. Ex. 6. The evidence of Chat spoliation and "fake privilege" was significant in Epic's trial against Google and substantially improved Consumer and State Plaintiffs' settlement position. *See generally*, Tr. at 3226-29, No. 3:20-cv-05671-JD, Dkt. 591.

### C.    Consumer Counsel Developed Important Expert Analysis

Consumer Counsel expended considerable effort developing expert witness testimony in support of the consumer claims, which contributed to the broader success of the litigation. Decl. ¶¶ 61-71. For example, Dr. Singer's class certification report, submitted on February 28, 2022, provided the first comprehensive theory of the case from *any* plaintiff, the first filed economic analysis of Google's conduct, and assembled key documentary evidence into a narrative for the first time. *See* MDL Dkt. 251-3 ("Singer Class Rpt.") ¶¶ 36-158; Decl. ¶ 63. Dr. Singer's damages model developed during class certification was later used by both the States and Consumers to establish overcharge damages, which was a basis for many of the settlement negotiations. MDL Dkt. 508-2 ("Singer Merits Rpt.") ¶¶ 414-21; Rysman Rpt. ¶ 607 (reserving right to rely upon Dr. Singer's calculations).

In addition, Consumer Counsel retained and served reports from a distinguished technical expert, Dr. Douglas C. Schmidt, and a highly experienced accounting expert, Michael H. Chase. Decl. ¶¶ 61-62, 64-65. After Consumer Counsel served Dr. Schmidt's report, counsel for Epic asked to jointly retain Dr. Schmidt, a request that Consumer Counsel granted. Decl. ¶ 64. The States and Consumers also co-retained a highly regarded survey expert, Dr. Stanley Presser. Decl. ¶¶ 62, 66.

### D.    Summary Judgment and Trial Preparation

Consumer Counsel's considerable work prosecuting the case continued through summary judgment, *Daubert* motions and into trial preparation. Decl. ¶ 70. After merits expert reports were exchanged, Plaintiffs opposed a second *Daubert* motion directed at Dr. Singer, who also participated in a second expert "hot tub" on August 1, 2023. Decl. ¶ 71. That week, the Court held argument on Google's motion for partial summary judgment. Consumer Plaintiffs argued the opposition to one of Google's motions. Decl. ¶ 71; MDL Dkt. 509 at 12-16.

Meanwhile, intensive trial preparations were well underway. Throughout the summer and fall of 2023 and up until settlement, Consumer Counsel worked with other plaintiffs to prepare exhibit and witness lists, plan the order of witnesses and experts that would give common testimony for the group, negotiate pre-trial schedules with Google, and undertake all the tasks involved in preparing to try a complex antitrust case. Decl. ¶¶ 83-84. Consumer Counsel also held a mock jury exercise, which included a thorough testing of the evidence and trial themes using over 40 mock jurors, that counsel for all Plaintiffs, including Epic, attended and benefited from. Decl. ¶ 83.

### E.    Settlement Discussions and Mediation

The settlement was the product of long and hard-fought negotiations. Google, the States, and Consumer Plaintiffs reached a settlement in principle on September 5, 2023, but negotiations began approximately 15 months earlier. Decl. ¶ 85. Three months in, the parties retained Judges Weinstein and Westerfield as mediators. Decl. ¶ 86. Consumer Counsel took the lead in drafting the mediation statement and making the principal presentations to Google demonstrating the strong merits of Plaintiffs' claims. Decl. ¶ 86. As talks progressed, Consumer Counsel coordinated with the States to ensure that the plaintiffs presented a united settlement position. Decl. ¶¶ 87-88.

The mediators involved in the case, Judges Weinstein and Westerfield, are available, upon invitation of the Court and with the permission of all parties, to submit a declaration indicating the scope, quality and effectiveness of the work done by Consumer Counsel based on their observations of multiple advocacy presentations, in person mediations, written submissions, and remote meetings.

### F.    Class Certification and Appeal

Consumer Counsel vigorously pursued and defended class certification, filing their class certification motion in May 2022, MDL Dkt. 251, and opposing Google's *Daubert* motion—after which the Court certified the Consumer Class and denied Google's motion to exclude Dr. Singer's testimony in November 2022. MDL Dkt. 383; Decl. ¶¶ 26-27, 68. Google filed a Rule 23(f) petition seeking review of the Court's class certification order, which the Ninth Circuit granted. *See Carr v. Google LLC*, No. 22-80140 (9th Cir. Feb. 27, 2023), Dkt. 10; Decl. ¶¶ 28, 68. Consumer Counsel opposed Google's request for a stay while the appeal was pending, fully briefed the appeal, and proposed alternative trial structures so the case could proceed. Decl. ¶¶ 28, 68-69.

The presence of a certified class was critical for the settlement process. For over 10 months, the Consumers and States negotiated with Google on behalf of consumers nationwide with the leverage of a certified Consumer class. Decl. ¶ 87. The Consumers and States relied on an overcharge theory of damages that survived *Daubert* challenges during the class certification process. Decl. ¶ 87. When the Court decertified the class on the eve of the settlement, Consumer Counsel worked with the States and Google to find the best path forward for achieving nationwide relief for consumers, electing not to seek a settlement class or to appeal because the *parens* mechanism allowed for a resolution that would cover all consumers' interests. Decl. ¶¶ 89-91.

## ARGUMENT

Consumer Counsel seek an award of fees and expenses from the common fund they were instrumental in creating. The award sought by Consumer Counsel is supported by Ninth Circuit law and longstanding equitable principles, and is also consistent with the Joint Prosecution Agreement. The requested fee will compensate Consumer Counsel for their contribution and help ensure the future viability of public-private litigation partnerships.

**I.    Consumer Counsel Are Entitled to Fees and Expenses from the Common Fund**

Lawyers are entitled to fees from a common fund where they "created, discovered, increased or preserved a fund to which others also have a claim." *B.P. N. Am. Trading, Inc. v. Vessel Panamax Nova*, 784 F.2d 975, 977 (9th Cir. 1986); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (same); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); 5 Newberg and Rubenstein on Class Actions § 15:60 ("[T]he measuring stick of counsel's *entitlement to a fee* comes back to the single question of whether their efforts did in fact create, enhance, preserve, or protect the fund under the court's supervision."). This is so regardless of whether the common fund is created through a *parens patriae* action or class action settlement. "The recovery authorized by [the common fund doctrine] does not depend on whether the underlying litigation—by which a common fund is secured for multiple beneficiaries—takes the procedural form of a class action." Restatement (Third) of Restitution and Unjust Enrichment § 29, cmt. c (2011); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939); *see also Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

9

Consistent with common fund doctrine, the parties agreed in the JPA that a fee motion would look to "traditional factors such as attorney and staff time, monetary contribution to the litigation, the degree to which work product was shared, and other relevant indicia of contribution to the overall case." Decl. Ex. 1, at 4. Each of these factors supports Consumer Counsel's requested fee award. Consumer Counsel invested more than 98,200 hours of attorney and staff time in this case, contributed $8,585,761.38 to the litigation of Consumer and State Plaintiffs' overlapping antitrust claims, and worked collaboratively with the States throughout. Decl. ¶¶ 5-7.

District courts awarding fees from a common fund may calculate fees based on a percentage of the recovery or lodestar. *See Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2021 WL 3053018, at *4 (N.D. Cal. July 20, 2021) (Donato, J.). "[T]his Court and the other courts in this Circuit have almost universally employed the percentage of the fund approach, coupled with a lodestar cross-check." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486, 2013 WL 12387371, at *8 (N.D. Cal. Nov. 5, 2013), *R&R adopted*, 2014 WL 12879521 (N.D. Cal. June 27, 2014). Google paid $700 million to settle state and consumer claims, $630 million of which establishes a fund to pay consumer damages claims. Settlement Agreement at 5.1, No. 3:21-cv-05227-JD, Dkt. 522-2. Consumer Counsel's $85 million fee request represents about 13.5% of the $630 million common fund,[5] and an implied lodestar multiplier of about 1.34.

### A. A Fee Award of 13.5% of the Common Damages Fund is Reasonable

Ninth Circuit precedent justifies Consumer Counsel's request for fees representing only 13.5% of the common fund. Courts in this Circuit consider the following factors when assessing a proposed percentage fee award from a common fund: "(1) the extent to which [counsel] achieved exceptional results for the class; (2) whether the case was risky for [counsel]; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens [counsel] experienced while litigating the case; (6) and whether the case

---

[5] If the $70 million allocated to state penalties is included in the common fund, the requested fees would represent only 12.1% of the fund.

AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

was handled on a contingency basis." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020). Each factor supports Consumer Counsel's fee request.

**Consumer Counsel Achieved an Exceptional Result.** The $700 million settlement is an exceptional result. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 632 (N.D. Cal. 2021) (Donato, J.) (observing that a $650 million settlement "is real money by any standard"). The States estimate that the average consumer will receive over 47% of an overcharge calculated with 50% pass-through, an outstanding result. MDL Dkt. 953 at 5-6.

The settlement reached after decertification was no less a product of Consumer Counsel's contributions than the settlement the parties had nearly signed at the time of the decertification decision after over 10 months of negotiations.[6] Decl. ¶¶ 87-89. Consumer Plaintiffs made clear their intention to try the case on behalf of individual consumer plaintiffs and pursue their rights on appeal, maintaining the threat of renewed class claims and ensuring the continued viability of claims on behalf of class members. In similar circumstances, the court in the *DRAM* indirect purchaser litigation awarded private class counsel and the States fees totaling 25% of a $310,000,000 common fund. *DRAM*, 2013 WL 12387371, at *28.[7]

---

[6] The Court granted Google's *Daubert* motion on Dr. Singer's damages model one week prior to the settlement in principle, MDL Dkt. 589, and decertified the class after the settlement in principle was announced. MDL Dkt. 604. While the final settlement was signed after the class was decertified, courts routinely award attorney's fees in settlements reached after denial of class certification. *See, e.g.*, *In re High-tech Emp. Antitrust Litig.*, No. 11-CV-2509-LHK, 2014 WL 10520477 and 2014 WL 10520478 (N.D. Cal. May 16, 2014) (orders approving settlements with three defendant corporations after motion for class certification was denied, and granting request for attorney's fees equivalent to 25% of common fund); *Bondi v. DeFalco*, No. 17-CV-5681 (KMK), 2020 WL 2476006, at *7 (S.D.N.Y. May 13, 2020) (approving 33% fee award in FLSA class settlement reached after certification of litigation class was denied).

[7] There, private counsel for indirect purchasers closely coordinated with attorneys general who entered the case with *parens patriae* claims after the litigation was underway. *See DRAM*, 2013 WL 12387371, at *19. After devoting years to discovery, the IPP class's second amended complaint was dismissed for lack of standing. *Id.* at *18, 21. While IPP class counsel appealed that ruling, the states' claims remained largely intact, and were headed toward trial. *Id.* at *21-22. Private IPP class counsel and the attorneys general then reached a settlement with defendants before the appeal was resolved and before a class was ever certified. *Id.*

11

***Consumer Counsel Assumed Significant Risk.*** "Courts have long recognized that there is generally considerable risk in antitrust cases; one reason why in a significant percentage of such cases, a fee higher than the benchmark is awarded." *DRAM*, 2013 WL 12387371, at *20. As detailed above, Consumer Counsel invested 98,200 hours of work and $8,585,761.38 in expenses with no guarantee of recovery. Decl. ¶ 5. This litigation also involved unsettled questions of antitrust law related to two-sided digital platforms, *see Ohio v. American Express Co.*, 585 U.S. 529 (2018), and of direct purchaser standing, *Apple Inc. v. Pepper*, 1587 U.S. 273 (2019). The risk of following so closely on the heels of *Pepper,* which was susceptible to different interpretations, was highlighted when Google sought partial summary judgment on Consumer and State Plaintiffs' right to pursue damages for in-app purchases—over 99% of consumer overcharge damages. MDL Dkt. 480 at 17-20; Singer Merits Rpt. ¶ 421. Even with standing, proof of damages was not certain. The exclusion of Dr. Singer's testimony on the eve of settlement, MDL Dkt. 588, presented a comparable threat to Dr. Rysman's testimony either at trial or on appeal. *See* MDL Dkt. 484 (Google's *Daubert* motion).

***The Settlement Generated Non-Monetary Benefits.*** Consumer and States' "performance generated benefits beyond the cash settlement fund," in the form of Google's agreement to injunctive relief. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d at 930. While the remedies afforded by the settlement were not as extensive as those ultimately provided in the Court's injunction, they ensured that Google's wrongful conduct would be addressed regardless of the outcome of the *Epic* trial. Moreover, the injunctive provisions of the settlement will benefit consumers even after the Court's injunction ends given the longer duration of certain provisions. MDL Dkt. 1067 at 2. Consumer Counsel do not include the economic value of these benefits in calculating the fund, which further supports the reasonableness of this request.

***Consumer Counsel's Request is Consistent with the Market Rate.*** Consumer Counsel's request for 13.5% of the common fund is reasonable, and on the low end, based on settlements of similar size and complexity. *See In re Apple Inc. Sec. Litig.*, No. 4:19-CV-02033-YGR, 2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) (awarding attorneys $107,800,000 in fees, reflecting 22% of a $490M settlement fund and lodestar multiplier of 3.88); *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *2 (N.D. Cal. Dec. 6, 2017), *aff'd,*

12

768 F. App'x 651 (9th Cir. 2019) (approving 20% fee award and observing that a 21% fee award is "midpoint for fees where the recovery exceeded $100 million"); *In re Alphabet, Inc. Sec. Litig.*, No. 18-cv-06245-TLT, 2024 WL 4354988, at *5-8 (N.D. Cal. Sept. 30, 2024) (approving fee of $66.5 million from $350 million settlement reached prior to class certification, representing 19% of the fund and a lodestar multiplier of 4.58); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 632 (Donato, J.) (noting that 10 settlements between $400 and $800 million produced an average fee award of 16%). An analysis for the 2020 Antitrust Annual Report found an average fee award of 25% for settlements in the $500 to $999 million range. Davis & Kohles, *2020 Antitrust Annual Report: Class Action Filings in Federal Court* (2021), *available at*: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782.

*Consumer Counsel Took on Significant Burdens.* Consumer Counsel shared the costs of data storage, a document database, and a consumer survey expert with the State Plaintiffs. Decl. ¶ 47-49, 66. Consumer Counsel also incurred alone the expense of three experts—amounting to millions of dollars without guaranteed return. Decl. ¶ 36, 61-65, 71, 101. The time demands of litigating this case on an accelerated schedule also required Consumer Counsel to forgo other work. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (recognizing as "relevant circumstances" supporting fee that work "required counsel to forgo significant other work").

*Consumer Counsel Handled This Case on Contingency.* Consumer Counsel pursued this litigation on a contingent basis. Decl. ¶¶ 36, 100. That fact supports the fees sought here. *See In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d at 930.

*Other Factors Courts Consider Support the Fee Request Here.* Courts frequently consider other factors, including the quality of counsel, the quality of their representation, and the complexity and novelty of the issues. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). These factors further support the requested fee. Consumer Counsel were drawn from among the most well-regarded litigation and class action law firms. The quality of Consumer Counsel is reflected in the lead roles they took in discovery, briefing, argument, mediation, and navigating the 23(f) appeal and the complexities it posed for trial. Moreover, Consumer Counsel's experience trying antitrust actions created a credible threat that Plaintiffs would take this case to trial.

**B.    A Lodestar Cross-Check Confirms the Fee Request is Reasonable**

A lodestar cross-check confirms the reasonableness of Consumer Counsel's fee request. Consumer Counsel spent over 98,200 hours litigating this case from its inception until the Court struck the trial date after settlement on October 12, 2023, MDL Dkt. 667, amounting to a lodestar of $63,444,800.30 using hourly rates in effect at the time work was done. Decl. ¶¶ 92-99.[8] The proposed fee award implies a lodestar multiplier of 1.34, not accounting for the time value of money. This is on the extreme low end of similar cases. *See* Order at 3, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843-VC (N.D. Cal. Oct. 10, 2023), Dkt. 1183 (observing that 1.99 lodestar multiplier in $725,000,000 settlement was "below average in settlements of comparable size"); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 633 (Donato, J.) (finding a "higher-end multiplier of 4.71" to be reasonable in litigation resulting in a $650 million settlement); *Thompson v. Transamerica Life Ins. Co.*, No 2:18-cv-05422-CAS-GJSx, 2020 WL 6145104, at *4 (C.D. Cal. Sept. 16, 2020) (finding lodestar multiplier of 4.2 "within the range of appropriate multipliers recognized by this Court"); *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *9 (finding lodestar cross-check of 20% fee award produced multiplier of 3.66, "well within the range of awards in other cases"). The lodestar multiple is also lower than that received by counsel for the developers in this MDL, who settled relatively early and before class certification, where "the Court approve[d] a relatively modest 1.41 multiplier." *In re Google Play Developer Antitrust Litig.*, No. 20-cv-05792-JD, 2024 WL 150585, at *3 (N.D. Cal. Jan. 11, 2024) (24.1% of the common fund plus quantifiable injunctive relief).

Lodestar multipliers reflect the risk counsel undertakes litigating a case on contingency. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (per curiam) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis."). Indeed, the Ninth Circuit has instructed that a "district court *must* apply a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk

---

[8] Individual declarations from each firm lay out that firm's fees and costs in detail. *See* Giulianelli Decl. ¶¶ 15-33; Nam Decl. ¶¶ 4-10; Pritzker Decl. ¶¶ 4-9; Nishimura Decl. ¶¶ 4-9; Wedgworth Decl. ¶¶ 4-9; Zelcs Decl. ¶¶ 4-9; Hansel Decl. ¶¶ 4-9.

AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (internal quotation marks omitted). Consumer Counsel used their normal hourly rates when calculating the lodestar, even though these rates do not reflect the risk Consumer Counsel assumed. Decl. ¶ 99.

## II.      Counsel Should Be Reimbursed for Litigation Costs

Consumer Counsel seek $8,585,761.38 in unreimbursed litigation expenses. Decl. ¶ 104. "Counsel in common fund cases may recover those expenses that would normally be charged to a fee paying client." *In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (internal quotation marks omitted). The expenses primarily covered the cost of economic, accounting, technical, and consumer survey experts, mediation expenses, document review database fees, and substantial data storage costs. Decl. ¶ 101. The remaining expenses went to case-related travel, deposition costs, legal research costs, and other minor expenses such as printing and court costs. Decl. ¶ 102. Courts routinely approve these sorts of expenses. *See Andrews v. Plains All Am. Pipeline L.P.*, No. CV 15-4133 PSG (JEMx), 2022 WL 4453864, at *5 (C.D. Cal. Sept. 20, 2022). The costs incurred by Consumer Counsel are fully documented and comparable to costs incurred in similar cases. *See id.*; *DRAM*, 2014 WL 12879521.

## III.      Individual Plaintiffs Should Be Paid Incentive Awards

Finally, Consumer Counsel request modest incentive awards of $5,000 for the six individual consumer plaintiffs. Incentive awards are "fairly typical in class action cases" and lie within the discretion of the Court. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The individual plaintiffs devoted significant time to this litigation, including compiling relevant documents, and preparing and sitting for depositions. Decl. ¶¶ 105-114.

## CONCLUSION

For the foregoing reasons, Consumer Counsel respectfully submit that, following approval of the State-Consumer Settlement, the Court should award Consumer Counsel $85 million in attorneys' fees plus $8,585,761.38 in unreimbursed expenses, and authorize $5,000 incentive awards for each individual plaintiff.

DATED:  October 28, 2025          BARTLIT BECK LLP


                                  By:   */s/ Karma M. Giulianelli*
                                        Karma M. Giulianelli
                                        **BARTLIT BECK LLP**
                                        1801 Wewatta St., Suite 1200
                                        Denver, Colorado 80202
                                        Telephone: (303) 592-3100
                                        karma.giulianelli@bartlitbeck.com

                                        *Co-Lead Counsel for Consumer Plaintiffs*


                                  KAPLAN FOX & KILSHEIMER LLP


                                  By:   */s/ Hae Sung Nam*
                                        Hae Sung Nam
                                        **KAPLAN FOX & KILSHEIMER LLP**
                                        800 Third Avenue
                                        New York, NY 10022
                                        Telephone: (212) 687-1980
                                        hnam@kaplanfox.com

                                        *Co-Lead Counsel for Consumer Plaintiffs*

AMENDED COUNSEL FOR CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

## **E-FILING ATTESTATION**

I, Karma M. Giulianelli, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Karma M. Giulianelli*
Karma M. Giulianelli