Paul J. Riehle, Bar No. 115199
paul.riehle@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.*, Case
No. 3:20-cv-05671-JD

Case No. 3:21-md-02981-JD

**JOINT MOTION TO MODIFY
PERMANENT INJUNCTION**

Date:    December 11, 2025
Time:    10:00 a.m.
Courtroom: 11, 19th Floor
Judge:  Hon. James Donato

1

## NOTICE OF MOTION & MOTION

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3      NOTICE OF MOTION AND JOINT MOTION TO MODIFY THE INJUNCTION:

4  PLEASE TAKE NOTICE that on December 11, 2025, or a date to be set by the Court, in

5  Courtroom 11, 19th Floor, 450 Golden Gate Avenue, before the Honorable James Donato, Plaintiff

6  Epic Games, Inc. ("Epic") and Defendants Google LLC *et al.* ("Google"; collectively, "The

7  Parties") will and hereby do move this Court to modify the Permanent Injunction in the above-

8  captioned matters to conform it to the Proposed Modified Injunction proposed by the Parties.

9      The Parties seek a ruling under Federal Rule of Civil Procedure 60 adopting the Proposed

10  Modified Injunction proposed by the Parties herein and attached as Exhibit B to the Declaration of

11  Kuruvilla Olasa.

12      This joint motion is based on this notice of motion and motion, the memorandum of points

13  and authorities that follows, the concurrently filed Declaration of Kuruvilla Olasa and exhibits

14  thereto, the pleadings, papers, and other documents on file in this action, and such other evidence

15  and argument presented to the Court at or prior to any hearing in this matter.

16

17  DATED:  November 4, 2025          **MUNGER, TOLLES & OLSON LLP**
                                        Glenn D. Pomerantz
18                                      Kuruvilla Olasa
                                        Jonathan I. Kravis
19                                      Justin P. Raphael
                                        Dane P. Shikman
20                                      Lauren N. Beck

21                                By:  */s/ Glenn D. Pomerantz*

22                                      Glenn D. Pomerantz
                                        *Counsel for Defendants Google LLC et al.*
23

24  DATED:  November 4, 2025          **MORGAN, LEWIS & BOCKIUS LLP**
                                        Brian C. Rocca
25                                      Sujal J. Shah
                                        Michelle Park Chiu
26                                      Leigha Beckman

27

28

1

2

By: _/s/ Brian C. Rocca_
    Brian C. Rocca
    *Counsel for Defendants Google LLC et al.*

3

4   DATED: November 4, 2025

**CRAVATH, SWAINE & MOORE LLP**
    Gary A. Bornstein (*pro hac vice*)

5       Yonatan Even *(pro hac vice)*
        Lauren A. Moskowitz *(pro hac vice)*

6       Michael J. Zaken *(pro hac vice)*
        M. Brent Byars *(pro hac vice)*

7

8   **FAEGRE DRINKER BIDDLE & REATH LLP**
        Paul J. Riehle (SBN 115199)

9

By: _/s/ Gary A. Bornstein_

10      Gary A. Bornstein
        *Counsel for Plaintiff Epic Games, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

LEGAL STANDARDS .......................................................................................................4

ARGUMENT .......................................................................................................................5

I.    THE PARTIES' SETTLEMENT IS A SIGNIFICANT CHANGE IN
      CIRCUMSTANCES THAT WARRANTS MODIFYING THE INJUNCTION .................5

II.   THE PROPOSED MODIFIED INJUNCTION WILL ENHANCE COMPETITION
      IN THE RELEVANT MARKETS .......................................................................7

      A.    Competition in the Android App Distribution Market ...............................8

            1.    The Proposed Modified Injunction Addresses Past Conduct That
                  Was Before the Jury ........................................................................8

            2.    The Proposed Modified Injunction Would Enhance Competition in
                  App Distribution. ............................................................................9

      B.    Competition in the Android In-App Billing Market .................................12

      C.    Service Fees .............................................................................................14

CONCLUSION .................................................................................................................15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Am. Soc'y of Composers, Authors & Publishers v. Showtime*,
 912 F.2d 563 (2d Cir. 1990) .................................................................................15

5

6

*Am. Soc'y of Composers, Authors & Publishers v. MobiTV, Inc.*,
 681 F.3d 76 (2d Cir. 2012) ...................................................................................15

7

8

*Aurelius Cap. Master, Ltd. v. Republic of Argentina*,
 644 F. App'x 98 (2d Cir. 2016) ..............................................................................5

9

*Bellevue Manor Assocs. v. United States*,
 165 F.3d 1249 (9th Cir. 1999) ................................................................................4

10

11

*Ehrheart v. Verizon Wireless*,
 609 F.3d 590 (3d Cir. 2010) ...................................................................................6

12

13

*Fed. Trade Comm'n v. Enforma Nat. Prods., Inc*,
 362 F.3d 1204 (9th Cir. 2004) ................................................................................4

14

15

*In re Google Play Store Antitrust Litig.*,
 147 F.4th 917 (9th Cir. 2025) ................................................................................7

16

*In re Google Play Store Antitrust Litig.*,
 2024 WL 4438249 (N.D. Cal. Oct. 7, 2024) ......................................................7, 11

17

18

*Guerrero v. RJM Acquisitions LLC*,
 499 F.3d 926 (9th Cir. 2007) ..................................................................................6

19

20

*Iofina, Inc. v. Khalev*,
 2018 WL 11703893 (W.D. Okla. Apr. 24, 2018) ....................................................5

21

*Janssen Prods., L.P. v. Lupin Ltd.*,
 2016 WL 3392291 (D.N.J. June 15, 2016) ..................................................... *passim*

22

23

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
 957 F.2d 1020 (2d Cir.1992) ...................................................................................5

24

*NCAA v. Alston*,
 594 U.S. 69 (2021) ................................................................................................11

25

26

*Rufo v. Inmates of Suffolk Cnty. Jail*,
 502 U.S. 367 (1992) ....................................................................................3, 4, 12

27

*S.E.C. v. Randolph*,
 736 F.2d 525 (9th Cir. 1984) ..................................................................................5

28

*S.E.C. v. Rothenberg,*
    2018 WL 11436313 (N.D. Cal. Oct. 16, 2018) ...................................................................5

*San Diego Coastkeeper v. Baker Iron Works, Inc.,*
    2025 WL 1746304 (S.D. Cal. June 23, 2025) ...................................................................5

*Trumark Mfg. Co. v. Saunders Archery Co.,*
    1994 WL 623159 (D. Neb. July 25, 1994) ........................................................................5

*United States v. Google Inc.,*
    2012 WL 5833994 (N.D. Cal. Nov. 16, 2012) ...............................................................4, 5

*United States v. Miller Indus., Inc.,*
    2000 WL 33141220 (D.D.C. Dec. 12, 2000) ...................................................................15

*United States v. Oregon,*
    913 F.2d 576 (9th Cir. 1990) .............................................................................................5

**CASES - OTHER**

*In re Google Play Store Antitrust Litig.,*
    No. 3:21-md-02981-JD ......................................................................................................1

*Utah v. Google LLC,*
    No. 3:21-cv-05227-JD ........................................................................................................3

**RULES - OTHER**

Fed. R. Civ. P. 60 .......................................................................................................................4

Fed. R. Civ. P. 60(b)(5) .........................................................................................................4, 6

Fed. R. Civ. P. 60(b)(6) ...........................................................................................................6

**INTRODUCTION**

Epic and Google have reached a comprehensive settlement.  Among other things, that settlement would resolve this case (*Epic I*) and the separate action before this Court in *Epic Games, Inc. v. Samsung Electronics Co. Ltd.* (*Epic II*) (the "Settlement," Exhibit A to Declaration of Kuruvilla Olasa ("Olasa Decl.").  The Settlement terms, which have been submitted to the Court under seal, would allow the parties to put their disputes aside while making Android a more vibrant and competitive platform for users and developers.  The Settlement is contingent on the Court entering, and the parties respectfully request that the Court enter, the attached Proposed Modified Injunction covering Google's conduct in the United States.  Olasa Decl. Ex. B.

In its October 7, 2024 injunction (the "Existing Injunction"), Dkt. No.[1] 1017, the Court prohibited certain conduct by Google and also took steps to enhance competition in the two markets identified by the jury—Android app distribution and Android in-app payment services for digital goods and services.  As explained further below, the Proposed Modified Injunction is intended to achieve those same goals in those same markets.

***First***, with respect to past app distribution conduct, the Proposed Modified Injunction tracks the Existing Injunction almost *verbatim*, prohibiting Google from sharing Google Play store revenue with would-be competitors (Paragraph 4), entering into certain kinds of most-favored or exclusivity agreements with developers (Paragraphs 5-6), or entering into certain agreements with OEMs and carriers regarding the preinstallation or placement of third-party stores (Paragraphs 7-8).

***Second***, to enhance app distribution competition, the Proposed Modified Injunction would require Google to make changes to Android to enable users to seamlessly download and install certain third-party stores—referred to as "Registered App Stores"—as well as apps from such stores.  This remedy addresses the install frictions that Epic contended at trial to be a major competitive challenge for rival app stores.  The parties have identified reasonable, neutral criteria

---

[1] All references to Dkt. No. are to the MDL docket, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD, unless otherwise noted.

that third-party stores would need to meet to qualify as "Registered App Stores," and the parties have agreed on the streamlined installation flow that would apply to Registered App Stores and apps from such stores.  These modifications will give new or existing app stores that meet safety and security standards a straightforward, low-friction way to get onto users' devices.  And those stores would all compete globally with each other and with the Google Play store for users and for developers, enhancing competition in the Android App Distribution Market found by the jury.

Although this remedy differs from the Catalog Access and Third-Party Store Distribution remedies in Paragraphs 11-12 of the Existing Injunction, it is an appropriate alternative with meaningful benefits.  Among other things, the Registered App Stores remedy would have a longer term; instead of lasting three years, it would extend to 2032.  In addition, while the Catalog Access and Third-Party Store Distribution remedies of the Existing Injunction are limited in scope to the United States—which, in Epic's view, means competing app stores could continue to face challenges in gaining necessary scale against the Google Play store's global reach—the benefits of Registered App Stores involve changes to the Android operating system that would occur everywhere and promote competition across Android.  The parties also expect that, as compared to Catalog Access and Third-Party Store Distribution, the modified remedy would provide more certainty to developers and engender fewer disputes for the Court to resolve.

*Third*, with respect to payment services, the Proposed Modified Injunction maintains the Existing Injunction's requirement that Google allow developers to flexibly steer users to payment alternatives to Google Play Billing.  Here too, the parties have worked out low-friction flows that would allow developers and users to seamlessly use alternative payment mechanisms, while addressing Google's views on security and safety.  These alternative payment mechanisms—both in-app and via external links—would compete with each other as well as Google Play Billing, promoting competition in the Android In-App Billing Services Market found by the jury.

In addition, the Proposed Modified Injunction specifies certain maximum fees that Google would be allowed to charge—for what Google contends are the valuable services provided by the Google Play store—on transactions in Play-distributed apps that use alternative payment options (either 9% or 20%, depending on the type of transaction).  The parties believe this remedy offers

1   meaningful benefits to developers, including the certainty of lower prices that begin promptly and

2   last through 2032.  This provision would also resolve a significant area of disagreement between

3   the Parties with respect to the Existing Injunction.  *See* Dkt. No. 1118 at 2, 6-8.

4       **Finally**, the parties' Proposed Modified Injunction includes in full the three-member

5   Technical Committee established by the Existing Injunction to review disputes or issues related to

6   the required technology and processes.

7                           *        *        *

8       The parties are aware of the time and effort that the Court put into crafting the Existing

9   Injunction.  But the parties are likewise aware and appreciative of the Court's efforts to encourage

10  settlement.  The parties believe the Proposed Modified Injunction is "suitably tailored" to the

11  "changed circumstance" now before the Court, *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367,

12  383 (1992)—that is, to the parties' comprehensive Settlement, which would bring to a close over

13  five years of disputes.  The parties respectfully request the Court's assistance to enable them to

14  consummate the Settlement and to provide its fruits to Android developers and consumers.

15      The Settlement is contingent on two events.  *First*, it is contingent on the Court entering

16  the Proposed Modified Injunction.  *Second*, the Settlement is contingent on the Court not

17  conditioning its preliminary approval of the proposed State Settlement in *Utah v. Google LLC*,

18  No. 3:21-cv-05227-JD, on Google and the States agreeing to adopt certain remedies from the

19  Existing Injunction that Epic has chosen to forego (and that are also not contained in the proposed

20  State Settlement).[2]  In this Settlement, Google is agreeing to implement certain remedies that the

21  Parties believe will achieve the goals of the Existing Injunction and avoid disputes regarding the

22  implementation of certain remedies in the Existing Injunction.  To achieve this result, Epic is

23  willing to forego certain remedies in the Existing Injunction, and Google is willing to make certain

24  commitments not currently required under the Existing Injunction and that would benefit

25  developers and consumers.  But that balance and those benefits—including avoiding disputes—

26

27  [2] The remedies at issue are the portions of Paragraphs 7, 9 and 10 of the Existing Injunction that
    are not in the Proposed Modified Injunction, as well as Paragraphs 11-12.

28

1    cannot be achieved if Google were required to take on the new obligations appearing in the

2    Proposed Modified Injunction and *also* implement certain remedies from the Existing Injunction

3    that Epic is willing to forego to reach settlement.  Accordingly, and because neither party wishes

4    for the Existing Injunction to be modified without also having the Settlement go into effect, the

5    parties condition their request for approval of the Proposed Modified Injunction on the satisfaction

6    of this contingency.

7           The parties strongly believe that the Proposed Modified Injunction, and the Settlement it

8    will enable, will benefit the Android ecosystem as a whole, and they will be prepared to answer

9    any questions the Court may have at the forthcoming November 6, 2025 hearing.

10                                          **LEGAL STANDARDS**

11          The Existing Injunction provides that "Google or Epic may request a modification of the

12   injunction for good cause."  (Existing Injunction ¶ 14.)   In addition, Federal Rule of Civil

13   Procedure 60 provides that "[o]n motion and just terms, the court may relieve a party" from an

14   order if (among other reasons) "applying it prospectively is no longer equitable."  Fed. R. Civ. P.

15   60(b)(5).  The Supreme Court has explained that this Rule creates a "flexible standard" for

16   modifying an injunction.  *Rufo*, 502 U.S. at 393.  Under that standard, a party seeking

17   modification of an injunction bears the burden of establishing "a significant change in facts or law

18   [that] warrants revision of the decree."  *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249,

19   1255 (9th Cir. 1999) (quoting *Rufo*, 502 U.S. at 376).  "If the moving party" shows a "significant

20   change in circumstances," then "the court should consider whether the proposed modification is

21   suitably tailored to the changed circumstance."  *Rufo*, 502 U.S. at 383.  A settlement between the

22   litigants can constitute a significant change in circumstances, warranting modification of an

23   injunction.  *See Janssen Prods., L.P. v. Lupin Ltd*., 2016 WL 3392291, at *3 (D.N.J. June 15,

24   2016).

25          Further, the court's review of a proposed stipulated injunction—similar to a consent

26   decree—"is informed by the public policy favoring settlement."  *United States v. Google Inc*.,

27   2012 WL 5833994, at *2 (N.D. Cal. Nov. 16, 2012); *see also Fed. Trade Comm'n v. Enforma Nat.*

28   *Prods., Inc*, 362 F.3d 1204, 1218 (9th Cir. 2004) (noting that "a consent decree is 'no more than a

-4-

settlement that contains an injunction'") (quoting *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992). This type of consensual agreement between two parties "is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). The relevant question is not whether the modified injunction "is one which the court itself might have fashioned, or considers as ideal," *San Diego Coastkeeper v. Baker Iron Works, Inc.*, 2025 WL 1746304, at *3 (S.D. Cal. June 23, 2025) (quotation omitted), or whether it "impose[s] all the obligations authorized by law," *Oregon*, 913 F.2d at 581. Instead, "the 'court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice,'" and "[t]he court need only be satisfied that the decree represents a reasonable factual and legal determination." *Google, Inc.*, 2012 WL 5833994, at *3 (quoting *Oregon*, 913 F.2d at 581). Accordingly, such agreements should generally be approved unless they are "unfair, inadequate, or unreasonable." *S.E.C. v. Rothenberg*, 2018 WL 11436313, at *2 (N.D. Cal. Oct. 16, 2018) (quoting *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984)).

## ARGUMENT

### I.   THE PARTIES' SETTLEMENT IS A SIGNIFICANT CHANGE IN CIRCUMSTANCES THAT WARRANTS MODIFYING THE INJUNCTION

At the Court's prompting, the parties have engaged in several rounds of negotiations, over several months, involving their most senior executives. These negotiations have ultimately borne fruit. The parties have agreed to resolve their disputes with a Settlement that both parties believe will advance the evolution of the Android platform. This significant change in circumstances warrants modifying the Existing Injunction.

Courts have granted requests to modify an injunction where, as here, parties reach a settlement after the injunction is issued. *E.g.*, *Janssen*, 2016 WL 3392291, at *3; *see also Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98, 107 (2d Cir. 2016) (approving vacatur of injunction against Argentina after new government entered into settlements, or attempted to settle, with various classes of bondholders); *Iofina, Inc. v. Khalev,* 2018 WL 11703893, at *1 (W.D. Okla. Apr. 24, 2018) (vacating injunction after settlement); *Trumark Mfg.*

-5-

1    *Co. v. Saunders Archery Co.*, 1994 WL 623159, at \*2 (D. Neb. July 25, 1994) (dissolving

2    injunction after settlement of trademark case that assigned defendant's trademark).

3          For instance, in *Janssen Products*, the court held that the defendants' products infringed

4    the plaintiff's patents and issued a permanent injunction prohibiting the defendants from using or

5    selling infringing products for the remainder of the patents' term.  *See* 2016 WL 3392291, at \*1.

6    Some of the parties subsequently reached a settlement that would permit the defendants to sell

7    their products on a date prior to the patents' expiration, and jointly applied to the Court to modify

8    the injunction to reflect that settlement.  *See id.* at \*2.  The Court held that modification of its

9    "injunctive order" was "appropriate under Rule 60(b)(5) and 60(b)(6) because applying the

10   judgment prospectively 'is no longer equitable.'"  *Id.* at \*3 (quoting Fed. R. Civ. P. 60(b)(5)).  The

11   Court explained that the settlement was "a 'significant change . . . in factual conditions,'" and that,

12   in light of the "strong policy 'in favor of voluntary settlement agreements,' it would be inequitable

13   for the Court to refuse to modify a judgment preventing the parties from carrying out this

14   settlement."  *Id.* (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)).

15         The same is true here.  The Ninth Circuit has recognized a "strong judicial policy that

16   favors settlements of disputes."  *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir.

17   2007) (quotation marks omitted).  The parties' Settlement would put to rest their disagreements,

18   benefit Android users and developers, as well as promote competition on the Android platform, in

19   several respects.

20         *First*, as indicated in their October 30, 2025 submission, the parties have disagreements

21   regarding the Existing Injunction that, absent settlement, would need to be resolved by the

22   Technical Committee and the Court.  *See* Dkt. No. 1118 at 2, 6-8.  The parties' Settlement would

23   moot those disagreements.

24         *Second*, the parties are engaged in ongoing litigation before the Court in *Epic II*, where

25   Epic brings claims relating to the screens shown to users when downloading Epic's apps and app

26   store on an Android device.  Recently, the Court ordered the parties in *Epic II* to engage in

27   settlement discussions.  *See* Minute Entry, *Epic v. Samsung*, Case No. 3:24-cv-06843-JD (N.D.

28   Cal. Sept. 11, 2025), Dkt. No. 109.  The parties' Settlement would resolve that litigation entirely.

*Third*, the parties' Settlement would preempt any disputes regarding the Catalog Access and Third-Party Store Distribution remedies that, unless the Existing Injunction is modified, will go into effect on July 22, 2026.  In establishing the Technical Committee, the Court recognized that "issues about security and the like" would "come up" and have to be resolved.  *In re Google Play Store Antitrust Litig.*, 2024 WL 4438249, at *9 (N.D. Cal. Oct. 7, 2024).  The Ninth Circuit similarly recognized the prospect of "inevitable disputes between the parties" and affirmed the Court's decision to create a Technical Committee "process to review" those disputes.  *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 954 (9th Cir. 2025).  By replacing the Catalog Access and Third-Party Store Distribution remedies with the Registered App Store process agreed to by the parties, the parties' Settlement would avoid disputes about the "potential security and technical risks involved" in the former.  2024 WL 4438249, at *7.  As explained in more detail below, Google has agreed to modify future versions of the Android operating system to enable a user to install a Registered App Store that meets specified security and safety standards from a website by clicking on a single install screen using neutral language, thereby eliminating a barrier to entry found by the Court and promoting competition among Android app stores through streamlined distribution of qualified app stores from websites.

*Fourth*, the parties' Settlement would resolve Epic's motion for attorney's fees.  Dkt. No. 1094-2.  That motion practice involves extensive briefing, including attorney and expert witness declarations regarding the work of numerous attorneys on this case for the last five years.  The parties' Settlement would obviate the need for the parties and the Court to adjudicate any disputes over fees.

In light of the parties' agreement to resolve their disputes while enhancing competition on the Android platform, it would be inefficient and unproductive to force the parties to continue operating under the Existing Injunction and litigate any disputes about that order.

## II.    THE PROPOSED MODIFIED INJUNCTION WILL ENHANCE COMPETITION IN THE RELEVANT MARKETS

The parties' Proposed Modified Injunction "does not 'discard'" the Court's "previous decision," and "leaves intact" the jury's verdict and many of the core provisions of the Court's

Existing Injunction.  *See Janssen*, 2016 WL 3392291, at *4.  Rather than retreat from the Court's efforts to restore competition in the Android app distribution and Android in-app billing markets found by the jury, the Proposed Modified Injunction will enhance those efforts , and avoid potential delays and uncertainties created by disputes between the parties.

### A.    Competition in the Android App Distribution Market

#### 1.    The Proposed Modified Injunction Addresses Past Conduct That Was Before the Jury

The Proposed Modified Injunction preserves the key portions of the Existing Injunction that prohibit certain conduct by Google with respect to the Android App Distribution Market that was at issue in this case.

- **Revenue Sharing**:  Existing Injunction ¶ 4 prohibits Google from sharing Google Play store revenue with any entity that "distributes Android apps, or has stated that it will launch or is considering launching an Android app distribution platform or store."  The Proposed Modified Injunction retains this provision without modification.

- **No App Distribution Exclusivity**:  Existing Injunction ¶ 5 prohibits Google from entering into agreements that would require an app to be launched "first or exclusively" on the Google Play Store.  Paragraph 5 of the Proposed Modified Injunction includes a similar prohibition, but modifies it in two ways.  *First*, the Proposed Modified Injunction makes clear an issue that the parties disputed, and it does so in a way that is favorable to developers and competing app stores.  It makes explicit that the prohibition covers sim-ship agreements, *i.e.*, agreements to launch on Play "at the same time" as on any other Android store.  *Second*, the Proposed Modified Injunction makes clear that Google can negotiate with developers for distribution exclusivity or parity of their apps on *Android* vis-à-vis *Apple*, as long as developers can meet any such exclusivity or sim-ship obligation in the United States by launching their Android app for distribution in the United States on *any* Android app store, *i.e.*, they need not launch on the Google Play store.

- **Feature Parity**:  Existing Injunction ¶ 6 prohibits Google from requiring an app to offer the same features on the Google Play store as it does on another Android app store. The

1    Proposed Modified Injunction contains the same provision.

2    ● **Placement**:  Existing Injunction ¶ 7 prohibits Google from conditioning any payment or

3    benefit on an agreement with an OEM or carrier "to preinstall the Google Play Store on

4    any specific location on an Android device" (*e.g.* the home screen of a device).  The

5    Proposed Modified Injunction relaxes that prohibition somewhat, by prohibiting Google

6    from conditioning any payment or benefit on an agreement with an OEM or carrier to

7    prevent another store from being installed in any specific location.  This provision ensures

8    that Google cannot interfere with the placement of any third-party store, but leaves Google

9    free to compete for its own placement agreements.

10    ● **Exclusivity**:  Existing Injunction ¶ 8 prohibits Google from conditioning any payment or

11    benefit on an agreement with an OEM or carrier to make the Google Play store the

12    exclusive preinstalled app store.  The Proposed Modified Injunction retains this provision

13    without modification.

14    In sum, like the Existing Injunction, the Proposed Modified Injunction ensures that Google

15    cannot engage in the practices determined by the Court or jury to be anticompetitive with respect

16    to the Android App Distribution Market.

17    **2.    The Proposed Modified Injunction Would Enhance Competition in**

18    **App Distribution.**

19    The Proposed Modified Injunction addresses the Court's conclusions regarding the

20    continuing effects of Google's past conduct through a new Registered App Store remedy, which

21    replaces the Catalog Access and Third-Party Store Distribution remedies in the Existing

22    Injunction.

23    The Registered App Store remedy simplifies the process for an Android app store to be

24    installed on user devices and for users to download apps from such stores, while allowing Google

25    to take reasonable steps to protect user security and safety.  Those steps are not left open-ended

26    but are instead specified in the parties' Settlement.  The Registered App Store Remedy is also

27    timed to last for roughly six-and-a-half years—over twice as long as the corresponding remedies

28    in the Existing Injunction—which will provide competing app stores even greater certainty and

1    predictability.

2        The Registered App Stores remedy requires Google to modify the Android operating

3    system to simplify the installation and download flow for all Registered App Stores.  When a user

4    downloads a Registered App Store, the user will see a single screen explaining that (1) the store is

5    a registered app store, (2) upon installation the store will be able to install and manage apps on the

6    device, and (3) the entity responsible for the app store will manage downloads and updates for

7    apps distributed by the store.  The parties have agreed on neutral language to explain these details

8    to the user.  If the user clicks "install," the store will be installed and the operating system will

9    give it the permissions necessary to install and update apps.  Olasa Decl. Ex. C at 1.

10        With those permissions, the installation flow for apps downloaded and installed through

11   Registered App Stores will be similar to the flow for downloading apps from the Play Store.  That

12   simplified flow, reflected in Exhibit C, is also established in the Settlement.  Olasa Decl. Ex. C at

13   2 (final two screens pictured).

14        To address Google's view that app and app store downloads could be used by bad actors as

15   a vector for fraud or malware, the parties have also agreed that Google may apply specified neutral

16   safety and security criteria to review stores for certification as Registered App Stores.  That

17   process is conceptually similar to a remedy proposed by Epic's expert at trial.  (*See* Trial Tr. vol.

18   11, 2156:25-2163:2, Nov. 21, 2023, Dkt. No. 844 ("Android is going to check to see if the app

19   bears that notarization sort of stamp of approval.  If so, Android does not show that friction screen

20   . . . .").)  Google will be permitted to charge reasonable fees to cover the operational costs of this

21   review process.  And the Technical Committee can provide guidance on any implementation

22   questions relating to this remedy.

23        The Registered App Stores remedy will promote competition in the Android app

24   distribution market by streamlining the process for downloading qualified Android app stores and

25   downloading apps from those qualified stores, thereby making it easier for Google Play store

26   competitors to offer their product directly to Android users, while also ensuring the safety and

27   security of Android users.

28        The Existing Injunction took a different approach to this issue, requiring Google to offer,

-10-

for three years, its catalog of apps to competitor app stores (Catalog Access) and to distribute, for three years, competitor app stores through the Play Store (Third-Party Store Distribution).  The Court recognized that "there are potential security and technical risks involved in making third-party apps available, including rival app stores," and the Court established the Technical Committee to help address them, recognizing that the Court would still need to be the decision maker of last resort.  2024 WL 4438249, at *7.  The parties' remedies filings evidenced significant disagreements over such issues, including (among other things) the mechanism for disseminating and updating the Play Store catalog; the installation flow for apps in Google's catalog from third-party stores; the method of displaying third-party stores in the Play Store; the installation flow for third-party stores from the Play Store; and the adoption of eligibility criteria, policies, and fees for both Catalog Access and Third-Party Store Distribution.  *See, e.g.*, Dkt. Nos. 982-2 (Google's Proffer), 986-2 (Epic's Response), 996 (Google's Supplemental Response).

The Proposed Modified Injunction significantly reduces the scope and magnitude of these implementation disputes by adopting an agreed-upon approach that would directly "lower the barriers for rival app stores to get onto users' phones," which was the purpose of "enjoining Google from prohibiting the presence of rival app stores in the Google Play Store."  2024 WL 4438249, at *7.  This approach will reduce the need for "continuing supervision" by the Court. *NCAA v. Alston*, 594 U.S. 69, 102 (2021).  To be sure, the parties may come to disagree on certain aspects of the implementation of the Registered App Stores remedy, and the Proposed Modified Injunction preserves the Technical Committee to resolve such disagreements in the first instance.  But those disagreements will be narrower and less complex than those that were likely to arise in implementing Catalog Access and Third-Party Store Distribution.

The Proposed Modified Injunction, and the Settlement it enables, also address a limitation of the Catalog Access and Third-Party Store Distribution remedies arising from the territorial scope of the Existing Injunction.  In Epic's view, because the Existing Injunction applied only to the United States, even when those remedies were in full bloom, third-party app stores would still face challenges in building the scale necessary to compete vigorously with the Google Play store, with its global footprint.  If the Court adopts the Modified Injunction and the Settlement goes into

1  effect, however, the Registered App Store program will result in changes to the Android operating

2  system worldwide, thereby strengthening competition across Android, including in the United

3  States.

4        In sum, the Proposed Modified Injunction effectuates the Settlement of the parties'

5  remaining disputes while enhancing the provisions of the Existing Injunction that this Court

6  adopted to restore competition to the Android app distribution market that the jury found.  As

7  such, the parties' Proposed Modified Injunction is "suitably tailored to the changed

8  circumstances" created by the parties' Settlement.  *Janssen*, 2016 WL 3392291, at *4 (quoting

9  *Rufo*, 502 U.S. at 383).

10        **B.        Competition in the Android In-App Billing Market**

11        Like the Existing Injunction, the Proposed Modified Injunction promotes competition in

12  the Android In-App Billing Market by allowing developers to promote in-app and external

13  alternatives to Google Play Billing in their apps.  Epic argued at trial, and the jury found, that

14  Google monopolized the Android In-App Billing Market by requiring developers to use Google

15  Play Billing to process transactions for digital goods in apps downloaded from the Play Store.  The

16  Existing Injunction addresses this issue by, among other things, requiring Google to allow

17  developers to offer alternative in-app payment methods and by requiring Google to allow

18  developers to communicate with users about the availability and pricing associated with the use of

19  an alternative billing option to Google Play Billing.

20        The Proposed Modified Injunction preserves these requirements and further clarifies

21  developers' ability to communicate about alternative purchase options by using external *links* that

22  take users outside the app to complete transactions.  The Proposed Modified Injunction further

23  enhances the protections of the Existing Injunction by (1) prohibiting Google from burdening the

24  use of in-app or external payment methods by restricting how they look, what they say or where

25  they appear in the app[3] (with Google able to implement reasonable user experience guidelines and

26

27  [3] The Proposed Modified Injunction reads:  "Google may not burden the use of in-app alternative payment options or external links by limiting their design, placement (except Google may require side-by-side placement), formatting or messaging, or by requiring the user to change any settings

28  or navigate other frictions in order to use them."  Olasa Decl. Ex. B, at 2.

-12-

require developer compliance with certain trust and safety policies), and (2) prohibiting Google from discriminating against developers based on whether they choose to offer alternative payment methods.  The Proposed Modified Injunction also extends the benefits of all of these protections to 2032.

- **<u>Steering to Alternative In-App Payment Mechanisms</u>**:  The Proposed Modified Injunction enables developers to steer users to alternative in-app payment mechanisms. Under the Proposed Modified Injunction, the alternative options will be shown side-by-side, next to Google Play Billing.  Although developers would not be able to omit Google Play Billing altogether, the Proposed Modified Injunction still allows rival payment solutions to compete on the basis of price and other features.  Specifically, the developer will be free to set and to show users different prices for the alternative payment options and Google Play Billing.  Thus, under the Proposed Modified Injunction, a developer may sell a subscription (or other digital good) in its app, offer users the choice to process the purchase of that subscription using either Google Play Billing or another payment method, charge a lower price for the other payment method, and show users the two prices for the different payment options side-by-side in the app.

- **<u>Steering to In-App External Links</u>**:  The Proposed Modified Injunction also expressly allows developers to offer users the option to complete digital transactions through in-app links to external payments on websites.  Thus, under the Proposed Modified Injunction, in addition to the scenario above, a developer may sell a subscription (or other digital good) in its app, offer users the option to process the purchase of that subscription using a link to an external website, charge a lower price for the external website than for Google Play Billing, and show users the two prices for the different payment options side-by-side in the app.  Unlike the Existing Injunction, the Proposed Modified Injunction does not allow developers to offer links to app *downloads*.  Instead, the Proposed Modified Injunction provides a streamlined process for downloading stores—and then apps within those stores—through the Registered App Store program, which includes a neutral security and safety review.  *See supra,* Part II.A.2.

1    The Proposed Modified Injunction allows Google to adopt reasonable user experience

2 guidelines for alternative payment options and to review external links to transactions for

3 compliance with trust and safety policies.  Subject to the limits described below, see discussion

4 *infra* pp. 14-15, the Proposed Modified Injunction also allows Google to assess a service fee on

5 transactions completed using alternative payment methods, including transactions on a linked

6 website within 24 hours.  The Proposed Modified Injunction also permits Google to separately

7 assess a fee for transactions that are processed by Google Play Billing.  In setting that fee, Google

8 will have to account for the competition from all the forms of alternative billing permitted under

9 the Proposed Modified Injunction.

10    **C.    Service Fees**

11    Under the Proposed Modified Injunction, the Google Play store is free to assess service

12 fees on transactions, including when developers elect to use alternative billing mechanisms.

13 Those fees will be set by competitive conditions, including the competition promoted by the

14 remedies described in the preceding sections.  But to address Epic's concern that it will take time,

15 even with the remedies described above, for competition to discipline Google Play's service fees,

16 the Proposed Modified Injunction caps the service fees that Google may charge.  Specifically,

17 under the Proposed Modified Injunction, for digital transactions in apps downloaded from the

18 Google Play store, Google may not charge a service fee of more than 9% or 20% (depending on

19 the type of transaction and the date on which the app was installed).[4]  While Google's fees

20 ultimately will be determined in light of competitive conditions, Epic and Google agree that the

21 service fee ceilings in the Proposed Modified Injunction will provide immediate, meaningful

22 benefits to developers and consumers.

23    This aspect of the Proposed Modified Injunction resolves a significant dispute between the

24 Parties as to the implementation of the Existing Injunction.  Prior to the Settlement, the Parties

25 were preparing to dispute the issue of whether (and, if so, to what degree) Google may charge

26 service fees on transactions processed using alternate payment methods.  *See* Dkt. No. 1118 at 2.

27

28    [4] As noted above, Google may separately charge for the use of Google Play Billing, and there are
separate provisions ensuring that those fees are disciplined by competition.

In the context of this Settlement and with the consent of the parties, the Court has the authority to include such limits in the Proposed Modified Injunction.  *See, e.g.*, *Am. Soc'y of Composers, Authors & Publishers v. Showtime*, 912 F.2d 563, 565 (2d Cir. 1990) (upholding order setting a specific fee—of 15 cents per subscriber—pursuant to a consent decree that provided that "in the event of a dispute concerning the amount of a fee . . . the District Court for the Southern District of New York is authorized to determine a reasonable fee"); *Am. Soc'y of Composers, Authors & Publishers v. MobiTV, Inc.*, 681 F.3d 76, 78 (2d Cir. 2012) (upholding specific dollar fee set by the court, "acting as a rate court pursuant to a consent decree"); *United States v. Miller Indus., Inc.*, 2000 WL 33141220, at *3 (D.D.C. Dec. 12, 2000) (approving consent decree that set maximum prices for a list of patents to be licensed).

## CONCLUSION

The parties' Settlement will provide significant benefits to Android users and developers—with many key provisions lasting until 2032—and will promote competition on the Android platform while retaining many of the core provisions of the Existing Injunction.  The Settlement and Proposed Modified Injunction will (i) provide a longer remedies period than the Existing Injunction; (ii) promote Android app store competition across Android by introducing a greatly simplified flow for the installation from the web of Registered App Stores (and of apps from those stores) that would apply around the world; (iii) allow developers to offer alternative payment options, including through links to payment websites; and (iv) provide developers with the immediate benefit of a reduction to Google's service fees.  The Settlement accomplishes all this while also resolving the current disputes between the parties and minimizing the prospect of future disputes over remedies implementation and the associated burden on the Court.  The parties respectfully submit that the changed circumstances presented by the benefits offered by the Settlement warrant entry of the Proposed Modified Injunction, without re-introducing the specified foregone remedies as a condition of preliminarily approving the proposed settlement between Google and the States.

DATED:  November 4, 2025

**MUNGER, TOLLES & OLSON LLP**
    Glenn D. Pomerantz
    Kuruvilla Olasa
    Jonathan I. Kravis
    Justin P. Raphael
    Dane P. Shikman
    Lauren N. Beck

By:  */s/ Glenn D. Pomerantz*
    Glenn D. Pomerantz
    *Counsel for Defendants Google LLC et al.*

DATED:  November 4, 2025

**MORGAN, LEWIS & BOCKIUS LLP**
    Brian C. Rocca
    Sujal J. Shah
    Michelle Park Chiu
    Leigha Beckman

By:  */s/ Brian C. Rocca*
    Brian C. Rocca
    *Counsel for Defendants Google LLC et al.*

DATED:  November 4, 2025

**CRAVATH, SWAINE & MOORE LLP**
    Gary A. Bornstein (*pro hac vice*)
    Yonatan Even *(pro hac vice)*
    Lauren A. Moskowitz *(pro hac vice)*
    Michael J. Zaken *(pro hac vice)*
    M. Brent Byars *(pro hac vice)*

**FAEGRE DRINKER BIDDLE & REATH LLP**
    Paul J. Riehle (SBN 115199)

By:  */s/ Gary A. Bornstein*
    Gary A. Bornstein
    *Counsel for Plaintiff Epic Games, Inc.*

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CIVIL L.R. 5-1(i)(3) ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), the filer of this document attests that concurrence in the filing of the document has been obtained from each of the other signatories.

By:  */s/ Kuruvilla Olasa*

Kuruvilla Olasa