# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | MDL Case No. 21-md-02981-JD<br>Member Case No. 20-cv-05671-JD<br><br>**MODIFIED PERMANENT INJUNCTION** |

This modified permanent injunction is entered in MDL member case *Epic Games, Inc. v. Google LLC et al.*, Case No. 20-cv-05671-JD, ~~on the jury verdict against Google under Sherman Act Sections 1 and 2, 15 U.S.C. §§ 1, 2, and the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq., and the Court's finding that Google violated the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.~~ based on the joint motion filed by the parties. This injunction supersedes the permanent injunction entered by the Court on October 7, 2024, ECF No. 1017.

1. This injunction applies to Google LLC and each of its parent, affiliated, and subsidiary entities, officers, agents, employees, and any person in active concert or participation with them, who receive actual notice of this order by personal service or otherwise (together, Google). The term "Android" as used in this injunction refers to smartphones and tablets that run the Android operating system and the term "Android apps" refers to apps for Android smartphones and tablets. The term "app" or "apps" means all applications, including games, but excludes app stores.

2. Unless otherwise stated, the effective date of the injunction is ~~November 1, 2024~~ seven (7) days after the Court enters this modified injunction (the "Effective Date").

3. The geographic scope of the injunction is the United States of America.

4. For a period of three years ~~ending on November 1, 2027~~ from the Effective

1

1  Date, Google may not share revenue generated by the Google Play Store with any person or
2  entity that distributes Android apps, or has stated that it will launch or is considering
3  launching an Android app distribution platform or store.

4  5. For a period of three years ~~ending on November 1, 2027~~ from the Effective
5  Date, Google may not condition a payment, revenue share, or access to any Google product
6  or service, on an agreement by an app developer to launch an app first ~~or~~, exclusively, or at
7  the same time in the Google Play Store~~.~~, anywhere in the world, as compared to the launch
8  date of that app on another app distribution platform or store for smartphones and/or tablets
9  in the United States. Notwithstanding the prior sentence, Google may condition a payment,
10 revenue share, or access to any Google product or service on an agreement by an app
11 developer to launch an app first, exclusively or at the same time on the Android platform,
12 provided that the developer is free to choose any Android app store for distribution in the
13 United States.

14 6. For a period of three years ~~ending on November 1, 2027~~ from the Effective
15 Date, Google may not condition a payment, revenue share, or access to any Google product
16 or service, on an agreement by an app developer not to launch on a third-party Android app
17 distribution platform or store in the United States a version of an app that includes features
18 not available in, or is otherwise different from, the version of the app offered on the Google
19 Play Store (anywhere in the world).

20 7. For a period of three years ~~ending on November 1, 2027~~ from the Effective
21 Date, Google may not condition a payment, revenue share, or access to any Google product
22 or service, on an agreement with an original equipment manufacturer (OEM) or carrier to
23 ~~preinstall the Google Play Store~~ refrain from placing a third party Android app store on any
24 specific location on an Android device.

25 8. For a period of three years ~~ending on November 1, 2027~~ from the Effective
26 Date, Google may not condition a payment, revenue share, or access to any Google product
27 or service, on an agreement with an OEM or carrier not to preinstall an Android app
28 distribution platform or store other than the Google Play Store.

2

9. For a period ~~of three years ending on November 1, 2027, Google may not require the use of Google Play billing in apps distributed on the Google Play Store, or prohibit the use of in-app payment methods other than Google Play Billing~~beginning on the later of (i) December 3, 2025, and (ii) 21 days after the Effective Date through June 30, 2032, Google will permit apps installed/updated by the Google Play store to show alternative payment options for digital transactions via external transaction web links and/or alternative in-app payment options. Alternative payment options shall be shown side-by-side along with Google Play Billing, and developers may show different prices and benefits for digital transactions processed using alternative payment options. Google may not (1) prohibit a developer from communicating with users about the availability of ~~a~~such alternative payment ~~method other than Google Play Billing. Google may not~~methods, (2) require a developer to set a price based on whether Google Play Billing is used, or (3) discriminate against any developer based on whether the developer offers alternative in-app payment options or external purchasing links.

    a. Google may not burden the use of in-app alternative payment options or external links by limiting their design, placement (except Google may require side-by-side placement), formatting or messaging, or by requiring the user to change any settings or navigate other frictions in order to use them. Notwithstanding the preceding sentence, Google may adopt reasonable user experience guidelines in connection with alternative payment options. Google may review external transaction links for compliance with reasonable trust and safety policies to protect users and their payment data and to address illegal or harmful content on the destination page.

    b. Google may assess a service fee on transactions completed using alternative payment methods, including transactions made on a linked website within up to 24 hours of using an external link on versions of Android where Google makes available a relevant API to track such transactions. The transaction tracking API may be used by Google for the primary purpose of facilitating

3

payment to Google and accounting. Google may not share data from the API with third parties or use data from the API for the purpose of ads targeting or competing with the developer's app. Any API shall not interfere with developers' ability to offer or communicate about alternative payment methods, including external transaction links.

10. For a period ~~of three years ending on November 1, 2027~~ beginning on the later of (i) December 3, 2025, and (ii) 21 days after the Effective Date through June 30, 2032, Google may not prohibit a developer from communicating with users inside or outside of an app about the availability or pricing of an app (including an app store) outside the Google Play Store~~, and may not prohibit~~. This paragraph does not require Google to permit a developer ~~from providing a~~ to include an in-app link leading to ~~download the~~ an app ~~outside~~ or app store download within apps installed or updated on the Google Play Store.

~~11. For a period of three years, Google will permit third-party Android app stores to access the Google Play Store's catalog of apps so that they may offer the Play Store apps to users. For apps available only in the Google Play Store (*i.e.*, that are not independently available through the third-party Android app store), Google will permit users to complete the download of the app through the Google Play Store on the same terms as any other download that is made directly through the Google Play Store. Google may keep all revenues associated with such downloads. Google will provide developers with a mechanism for opting out of inclusion in catalog access for any particular third-party Android app store. Google will have up to eight months from the date of this order to implement the technology necessary to comply with this provision, and the three-year time period will start once the technology is fully functional.~~

~~12. For a period of three years, Google may not prohibit the distribution of third-party Android app distribution platforms or stores through the Google Play Store. Google is entitled to take reasonable measures to ensure that the platforms or stores, and the apps they offer, are safe from a computer systems and security standpoint, and do not offer illegal goods or services under federal or state law within the United States, or violate~~

4

1. ~~Google's content standards. The review measures must be comparable to the measures~~
2. ~~Google is currently taking for apps proposed to be listed in the Google Play Store. If~~
3. ~~challenged, Google will bear the burden of proving that its technical and content~~
4. ~~requirements and determinations are strictly necessary and narrowly tailored. Google may~~
5. ~~require app developers and app store owners to pay a reasonable fee for these services, which~~
6. ~~must be based on Google's actual costs. Google will have up to eight months from the date~~
7. ~~of this order to implement the technology and procedures necessary to comply with this~~
8. ~~provision, and the three-year time period will start once the technology and procedures are~~
9. ~~fully functional. For the duration of this time period, the Technical Committee described in~~
10. ~~paragraph 13 below will in the first instance decide challenges to Google's review decisions,~~
11. ~~with the Court serving as the final word when necessary.~~

12. 11. For a period beginning no later than March 31, 2026 through June 30, 2032, for digital goods purchases set forth in the second paragraph of this Section 11, Google Play and Google Android shall not charge revenue proportionate or per purchase fees for apps first installed/updated from Google Play on or after October 30, 2025 ("New Installs") other than (1) the Google Play service fees set forth below; (2) fees for the use of Google Play Billing; and (3) applicable taxes. Google shall independently determine its fees, subject to the limitations provided for below.

Google may not charge a service fee greater than 20% for in-app and linked purchases in games (1) where such purchases provide more than a de minimis gameplay advantage, including but not limited to purchases that impact game outcomes, gameplay progress rate, or player power, or (2) purchases with random outcomes (such as "loot boxes"). Google may not charge a service fee greater than 9% for (1) in-app and linked purchases, in games, where such purchases do not provide more than a de minimis gameplay advantage, including purchases for content, levels, events, or cosmetic items; (2) in-app subscriptions for apps; and (3) in-app and linked purchases in non-game apps. Google may not charge a service fee greater than 9% (excluding any Google Play Billing fee) for apps sold upfront in the Google Play Store. For the avoidance of doubt, Google may charge the

higher service fee for a bundle that includes items subject to two different service fees. For an in-app or linked purchase of virtual currency which can be used to obtain multiple kinds of items whose service fees differ, the higher service fee may apply until and unless a portion of the virtual currency use can be attributed and pro-rated to items bearing the lower service fee.

        Google may establish eligibility requirements for these fees requiring the developer to build, with reasonably equivalent quality, a version of their application for Android smartphones and tablets that exists on other major mobile ecosystems.

        12.    For a period beginning on the Effective Date through June 30, 2032, for purchases in apps installed or updated by Google Play that do not qualify as New Installs, Google may not charge a service fee greater than 20% when payments are processed via external web links.

        13.    For a period beginning on the Effective Date through June 30, 2032, Google will continue to permit third-party app stores to operate on Android free of charge and will continue to permit the direct downloading of apps from developer websites and third-party stores without any fees being imposed for those downloads unless the downloads originate from linkouts from apps installed/updated by Google Play (excluding web browsers). Google will develop and release in a version of the next major Android release a process to certify an Android app store as a "Registered App Store" and will maintain this feature through June 30, 2032.

        a.    Starting with a version of the next major Android release through June 30, 2032, Google will modify future versions of the Android operating system so that a user can install a Registered App Store from a website by clicking on a single store install screen using neutral language. This will also grant the permission to the store to install apps.

        b.    Google may create reasonable requirements for certification as a Registered App Store, including but not limited to review of the app store by Google's Android team and the payment of reasonable fees to cover the operational

costs associated with the review and certification process. Such fees may not be revenue proportionate.

~~13.~~ ~~Within thirty days of the date of this order, the~~14.   The parties will recommend to the Court a three-person Technical Committee. Epic and Google will each select one member of the Technical Committee, and those two members will select the third member. After appointment by the Court, the Technical Committee will review disputes or issues relating to the technology and processes required by the preceding ~~provisions~~Paragraphs. If the Technical Committee cannot resolve a dispute or issue, a party may ask the Court for a resolution. The Technical Committee may not extend any deadline set in this order~~, but may recommend that the Court accept or deny a request to extend~~. Each party will bear the cost of compensating their respective party-designated committee member for their work on the committee. The third member's fees will be paid by the parties in equal share.

~~14~~15.   The Court will retain jurisdiction over the injunction for all purposes. Google or Epic may request a modification of the injunction for good cause.