# Exhibit 3

BartlitBeck LLP

John D. Byars
john.byars@bartlitbeck.com

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4443

BartlitBeck.com

December 3, 2021

***VIA EMAIL***

Brian C. Rocca
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA 94105-1596
brian.rocca@morganlewis.com

Re: *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.);
*Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.);
*In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-05761-JD (N.D. Cal.);
*In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792-JD (N.D. Cal.)
*State of Utah et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.)

Dear Brian:

I write on behalf of Plaintiffs in the above-captioned matters ("the Actions") to expand upon the serious concerns outlined in Topic 1 of our November 29, 2021 letter regarding the production of Instant Messages by Google.

Yesterday, December 2, 2021, Tian Lim, a Vice President of User Experience (UX) and Product Management within the Google Play organization, testified that Google employees use Google Chat "extensively" to communicate about business matters. (Lim Tr. at 446:20-23). Mr. Lim further acknowledged that he "typically use[s] Chat ***every day***" to "communicate with many people across the org". (*Id.* at 447:7-448:20) (emphasis added). By way of example, Mr. Lim referenced having used Google Chat just "yesterday", in a meeting with Sameer Samat, after Mr. Samat asked him a "question about a very very specific feature of the Play Store that [he] did not have any current details on. And so so [Mr. Lim] quickly chatted the person that [he] thought would know the – would have some update on that feature area." (*Id.* at 444:2-24). Mr. Lim's testimony is concerning because it demonstrates that Mr. Lim—and other custodians in this matter—engaged in daily, routine use of Google Chat for pertinent business purposes. Notwithstanding that regular usage, Google has produced only one Google Chat file from Mr. Lim's custodial files and approximately 200 total Google Chat files from among all custodians.

Mr. Lim's description of his preservation efforts during his time as a Google employee were even more concerning. Mr. Lim testified that, since joining Google in 2017, he has been the subject of 10 distinct litigation holds, the earliest of which was put into place just a few months after he started working there. (Lim Tr. at 452:1-14). Despite these litigation holds, Mr. Lim

3:21-md-02981-JD
**PX-216**

testified that "[b]y default" the contents of his daily one-on-one or small group chats would "disappear after 24 hours" *unless* he—or another member of that specific Google Chat group—happened to decide that some or all the contents of that chat concerned any one of the numerous, ongoing litigations that were subject to a hold. (Lim Tr. at 454:2-455:23). If one of the conversation participants happened to make such a determination, the individual was then responsible for "cut[ting] and past[ing]" the relevant portion of the Google Chat "into a document", which was then provided to counsel. (*Id.* at 454:2-24). Alternatively, a Google Chat file might also have been preserved if a member of that chat manually "enable[d] Chat history". (*Id.* at 455:25-456:13, 458:25-459:7). But Mr. Lim testified that he does not recall ***ever*** having turned on the Chat history function despite also acknowledging that he discussed business matters in various chats. (*Id.*) Mr. Lim further testified that "I believe that there were definitely messages that were work related that were deleted" including "most likely" during the time of this litigation. (*Id.* at 462:1-17).

Mr. Lim then went on to testify that preservation worked differently for certain large group chats, such as, for example, "a very large chat room called Play PM Chat where most of Play's product managers are in the room" and where "[h]istory is on by default." (Lim Tr. at 458:13-19). Mr. Lim also recalled that Google Chat rooms were created for various events, trainings, or other such business purposes to coordinate "the distribution of documents and so forth." (*Id.* at 464:18-465:14). And while such chat rooms "cease[d] to be technically active" following the event, training, or other such business purpose, Mr. Lim could "still go through and see messages" and access relevant documents. (*Id.*) Mr. Lim, however, conceded that not every topic is "appropriate" to discuss in such large forums. (*Id.* at 460:3-9). Therefore, it was highly likely that there were "many Chat messages" that "definitely . . . were work related that were deleted" during his time at Google, including during this litigation. (*Id.* at 461:15-462:13).

Much of this testimony would seem to contradict the "Chat Retention Policy" that Google provided to Plaintiffs. That document states that once a legal hold has been put in place, Google automatically preserves—"(all retention periods are paused)"—on-the-record 1:1 chats, Group DMs, Flat Rooms, and Threaded Rooms "while the relevant matter is pending." (Letter from B. Rocca to L. Moskowitz (Nov. 11, 2021) at Ex. A). This representation is irreconcilable with Mr. Lim's testimony, and it raises serious questions as to whether Google employees have been properly instructed about the affirmative steps that are necessary to preserve relevant and responsive documents in compliance with litigation holds. Consequently, Plaintiffs hereby request that by December 8, 2021, Google:

1. Identify when and to whom the litigation hold notices in this case were given, the categories of information and data employees were instructed to preserve and collect, and the specific actions they were instructed to take to that end;

2. Identify, for each custodian in this litigation, whether they used Google Chat for business purposes and how Google made that determination;

3. Identify, for each custodian in this litigation, the start and end date, if applicable, of each litigation hold in place during the relevant time period;

4. Identify, for each custodian in this litigation, whether any Google Chats were manually preserved during the relevant litigation hold periods through enabling Chat history;

5. Identify, for each custodian in this litigation, whether any Google Chats were manually preserved during the relevant litigation hold periods by a custodian who provided relevant portions of Google Chats to counsel, the counsel to whom such chats were provided, and the corresponding bates number of the produced Google Chat files;

6. For each custodian, identify whether any of the custodian's Google Chat files were destroyed or otherwise automatically deleted during the pendency of the litigation holds, and if so, whether all the custodian's Google Chat files were destroyed or otherwise deleted during the pendency of the litigation holds;

7. Confirm it will promptly produce any relevant Google Chat files that still exist for each custodian in this litigation;

8. Confirm it will promptly produce the full contents of all relevant "large chat rooms" where "[h]istory is on by default", including but not limited to the "Play p.m. chat", as well as each relevant document distributed through such rooms;

9. Identify all "large chat rooms" and produce the full contents of all relevant chat rooms created for various events, trainings, or other such business purposes, including, where applicable, the documents distributed through such rooms;

10. Ascertain whether Google has *any* database within its possession, custody, or control that may provide a mechanism to access deleted Google Chat files, and if one is so identified, produce all relevant material. For clarity, this request includes but is not limited to those data sources identified in 4(a) of the ESI Protocol entered in this case. *See* Dkt. 14; and

11. Confirm whether you are standing on your instruction for the witness to not answer the question regarding whether Mr. Lim "provided those cut and paste relevant chats to your counsel" (Lim Real Time Tr. at 417:17-418:10).

Absent a fulsome response to the aforementioned requests by December 8, 2021, as well as the questions raised in Issue 1 of our related November 29, 2021 letter, Plaintiffs intend to raise this issue with the Court in our forthcoming Joint Case Management Statement.

Sincerely,

John D. Byars

Brian C. Rocca
Sujal J. Shah
Michelle P. Chiu
Minna L. Naranjo
Rishi P. Satia
MORGAN, LEWIS & BOCKIUS LLP
brian.rocca@morganlewis.com
sujal.shah@morganlewis.com
michelle.chiu@morganlewis.com
minna.naranjo@morganlewis.com
rishi.satia@morganlewis.com

Daniel M. Petrocelli
Ian Simmons
Benjamin G. Bradshaw
E. Clay Marquez
Stephen J. McIntyre
O'MELVENY & MYERS LLP
dpetrocelli@omm.com
isimmons@omm.com
bbradshaw@omm.com
cmarquez@omm.com
smcintyre@omm.com

Brendan Glackin
Fred Norton
UTAH OFFICE OF THE ATTORNEY GENERAL
bglackin@agutah.gov
fnorton@agutah.gov
StatesGooglePlayLeads@agutah.gov

Yonatan Even
Timothy Cameron
Lauren Moskowitz
CRAVATH, SWAINE & MOORE LLP
yevans@cravath.com
tcameron@cravath.com
lmoskowitz@cravath.com

Steve W. Berman
Robert F. Lopez
Benjamin J. Siegel
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com
robl@hbsslaw.com
bens@hbsslaw.com

Joseph Vanek
Eamon P. Kelly
Alberto Rodriguez
SPERLING & SLATER, P.C.
jvanek@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com

Bonny E. Sweeney
Melinda R. Coolidge
Katie R. Beran
Scott A. Martin
Irving Scher
HAUSFELD LLP
bsweeney@hausfeld.com
mcoolidge@hausfeld.com
kberan@hausfeld.com
smartin@hausfeld.com
ischer@hausfeld.com
DevelopersvGoogle@hausfeld.com