# ATTACHMENT B

1  Daniel Guarnera, D.C. Bar No. 1034844
   dguarnera@ftc.gov
2  Clarke T. Edwards, D.C. Bar No. 1011154
   cedwards@ftc.gov
3  Kelse Moen, D.C. Bar No. 1035164
   kmoen@ftc.gov
4  Marc S. Lanoue, N.Y. Bar No. 4332482
   mlanoue@ftc.gov
5  Federal Trade Commission
   600 Pennsylvania Avenue, N.W.
6  Washington, D.C. 20580
   (202) 326-2222
7
   Kelly Ortiz, CA Bar No. 212846
8  Federal Trade Commission
   90 7th Street Suite 14-300
9  San Francisco, CA 94103
   (415) 848-5177
10 kortiz@ftc.gov

11 *Attorneys for Amicus Curiae Federal Trade Commission*

12

13                 **UNITED STATES DISTRICT COURT**

14               **NORTHERN DISTRICT OF CALIFORNIA**

15                    **SAN FRANCISCO DIVISION**

16

17 **IN RE GOOGLE PLAY STORE**
   **ANTITRUST LITIGATION**              Case No. 3:21-md-02981-JD
18
   THIS DOCUMENT RELATES TO:            ***AMICUS CURIAE* BRIEF OF THE**
19                                       **FEDERAL TRADE COMMISSION**
   *Epic Games Inc. v. Google LLC et al.*, Case
20 No. 3:20-cv-05671-JD                  Judge:      Honorable James Donato

21

22

23

24

25

26

27                                   FTC *AMICUS CURIAE* BRIEF
                               CASE NOS. 3:21-md-02981-JD; 3:20-cv-05671-JD
28

**TABLE OF CONTENTS**

Introduction ........................................................................................................................ ii

Interest of the Federal Trade Commission ........................................................................ 4

I.   Modifying a Permanent Injunction Is Extraordinary Relief .......................... 5

   A.   The Court Should Consider All Relevant Circumstances.................................. 7

   B.   Any Private Benefits to Epic May Not Address the Public Interest in
        Restoring Competition ...................................................................................... 7

II.  The Court Should Apply the *Rufo* Standard to Modify an Injunction.............. 8

   A.   The Parties' Settlement May Not Constitute a Significant Change in
        Circumstances .................................................................................................. 9

III. The Court Should Consider All the Circumstances to Assess the Effect of
     the Proposed Modifications on the Public Interest ........................................ 12

   A.   The Court Should Consider the Effect of the Proposed Modifications on
        the Ability of Google's Actual and Potential Rivals to Overcome Google's
        Network Effects to Compete............................................................................ 12

   B.   The Court Should Consider Whether Eliminating the Catalog Access and
        App Store Distribution Remedies Would Have Significant Competitive
        Implications...................................................................................................... 13

   C.   The Court Should Consider Whether Modifying the Prohibitions Against
        Requiring Google Play Billing on In-App Purchases Would Have
        Significant Competitive Implications .............................................................. 15

Conclusion ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203, 215 (1997) .......................................................................... 5, 8

Amicus Brief of the Fed. Trade Comm'n, *Epic Games Inc. v. Google LLC et al.*, No.
    3:20-cv-05671-JD (N.D. Cal. Aug. 12, 2024),
    https://www.ftc.gov/system/files/ftc_gov/pdf/ftc_amicus_brief_epic_v_google_pl
    ay.pdf ...................................................................................................................................... 5

*Bellevue Manor Assocs. v. U.S.*,165 F.3d 1249, 1256 (9th Cir. 1999) ...................................... 7

Brief of the United States of America and the Federal Trade Commission as Amici
    Curiae in Support of Plaintiff-Appellee, *In re Google Play Store Antitrust Litig.*,
    Nos. 24-6256, 24-6274,(9th Cir. Jan. 7, 2025,
    https://www.ftc.gov/system/files/ftc_gov/pdf/p859910epicvgoogleamicusbrief.jan
    2025.pdf. .................................................................................................................................. 5

*FTC v. Actavis*, 570 U.S. 136, 154 (2013)................................................................................... 8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .................................. 9

*Duran v. Elrod*, 760 F.2d 756, 759–61 (7th Cir. 1985) ........................................................... 2,9

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)............................................. 2, 3

Epic's Proposed Permanent Injunction, *In re Google Play Store Antitrust Litig.*,
    3:21-md-02981-JD (N.D. Cal. Apr. 11, 2024), Dkt No. 952............................................ 14

*Ford Motor Co. v. United States*, 405 U.S. 562, 577 (1972)................................................ 7,11,12

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007) .................................. 9

*Horne v. Flores*, 557 U.S. 433, 450 (2009) .............................................................................. 11

*In re Google Play Store Antitrust Litig.*, 147 F.3d 917, 946 (9th Cir. 2025)....................... 1, 3, 6

*Jacob Siegel Co. v. FTC*, 327 U.S. 608, 613 (1946)................................................................... 4

*Janssen Prods., L.P. v. Lupin Ltd.*, 2016 WL 3392291. (D.N.J. June 15, 2016)........................ 6

Joint Motion to Modify Permanent Injunction, *Epic Games Inc. v. Google LLC et al.*,
    No. 3:20-cv-05671-JD (N.D. Cal. Aug. 12, 2024), Dkt. No. 1119.......................... passim

*Katz v. Twp. of Westfall*, 287 Fed. App'x 985, 988 (3d. Cir 2008)). ........................................ 6

Minute Order, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.
    Oct. 7, 2024), Dkt. No. 1124.......................................................................................... 1,3

*Optronics Techs. Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021)................ 12

Order re UCL Claim and Injunctive Relief, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1016 ............................................... passim

Permanent Injunction, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017 ....................................................................... 1,6,13, 15

Redacted Binding Settlement Term Sheet, *Epic Games Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal. Nov. 13, 2025), Dkt. No. 1125-3 ........................................ 8

Redline of Modified Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 13, 2025), Dkt. No. 1126-1 ....................... 2,14,15,16

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) ................................................. passim

*Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 795 (7th Cir. 1980) ..................... 6

Statement of B. Douglas Berheim, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Apr. 11, 2024), Dkt No. 952-1 ....................................................... 14

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27-28 (1994) ..................... 11

*United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961) ............................ 3, 8

*United States v. Google LLC*, No. 20-cv-3010 (APM), 2024 U.S. Dist. LEXIS 138798, (D.D.C. Aug. 5, 2024) ............................................................................................ 12

*United States v. Grinnell Corp.*, 384 U.S. 563, 577 (1966) ................................................... 12

*United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) ............................................ 3

*United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250 (1968) ..................................... 12

*Vertex Surgical, inc. v. Paradigm Biodevices, Inc.*,648 F.Supp.2d 226, 239 (D. Mass. 2009) ...................................................................................................... 11

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130–31 (1969) ............................... 6

**Statutes**

15 U.S.C. § 45 ........................................................................................................... 4

15 U.S.C. § 46(b) ....................................................................................................... 4

15 U.S.C. §§ 41–58 ..................................................................................................... 4

**Other Authorities**

FTC's Merger Remedies 2006-2012: A Report of the Bureaus of Competition and Economics, FTC Report (February 2017; Big Data: A Tool for Inclusion or Exclusion? Understanding the Issues, FTC Report (January 2016) ................................ 5

Inside the Bureau of Competition (detailing work of the FTC's Technology Enforcement Division), https://www.ftc.gov/about-ftc/bureaus-offices/bureau-competition/inside-bureau-competition ................................................................................ 4

Non-HSR Reported Acquisitions by Select Technology Platforms, 2010-2019: An FTC Study (September 2021), https://www.ftc.gov/system/files/documents/reports/non-hsr-reported-acquisitions-select-technology-platforms-2010-2019-ftc-study/p201201technologyplatformstudy2021.pdf ............................................................ 5

*Report of the American Bar Ass'n Section of Antitrust Law, Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43, 103 (1989).................... 5

The FTC's Office of Technology (describing the FTC's in-house technical expertise), https://www.ftc.gov/about-ftc/bureaus-offices/office-technology ...................................... 4

U.S. Dep't of Justice & Fed Trade Comm'n, Merger Guidelines 2.6.A. (2023)......................... 12

**Rules**

Fed. R. Civ. P. 60(b)(5).......................................................................................... passim

iv

### Introduction

Before this Court is Google and Epic's jointly filed motion to modify the permanent injunction that this Court entered in connection with Epic's antitrust suit against Google. To assist in its evaluation of the parties' proposed modifications, the Court invited the Federal Trade Commission ("FTC") to weigh in.[1] The FTC appreciates the opportunity to address how the parties' proposed modifications may impact competition in digital app distribution and in-app billing.

The relevant context for the parties' instant motion is as follows: After more than 15 days of trial, a jury unanimously found Google liable for multiple antitrust violations related to the Google App Store. Specifically, the jury found that Google willfully acquired or maintained durable monopolies in the markets for Android App Distribution and Android In-App Payment Solutions. Following the verdict, the Court conducted an extensive process to determine an appropriate injunction, involving numerous written submissions, evidentiary hearings, and closing statements. On October 7, 2024, the Court issued the permanent injunction and an order setting forth the Court's reasons for the injunction.[2] Google appealed the injunction, primarily challenging two provisions designed to restore competition in Android App Distribution: catalog access and Play Store distribution. The Ninth Circuit panel upheld the verdict and the permanent injunction, rejecting Google's arguments.[3]

Now, Google and its former adversary Epic, as part of a comprehensive negotiated settlement, propose significant modifications to the permanent injunction.[4] The proposed modifications are extensive and include requiring that Google Play Billing be featured along-side

---

[1] Minute Order, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 7, 2025), Dkt. No. 1124 ("The Court is particularly interested in hearing again from the Federal Trade Commission, whose amicus brief was helpful in the remedies stage.").

[2] Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017; Order re UCL Claim and Injunctive Relief, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1016.

[3] *In re Google Play Store Antitrust Litig.*, 147 F.4th 917 (9th Cir. 2025).

[4] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119.

other in-app payment options, allowing Google to charge fees for various services (capped at specified percentages), loosening the restrictions on required preinstallation of the Google Play Store, revising the provisions on link outs within Android apps, and more. Notably, the proposal strikes some of the same provisions that Google had unsuccessfully challenged on appeal, including those requiring Google to provide rival app stores access to its catalog of apps ("catalog access") and to distribute rival apps stores on the Google Play Store.[5]

The Court must now determine whether the parties' settlement constitutes a significant change in circumstance such that applying the permanent injunction is no longer equitable and whether the proposed modifications are suitably tailored to the changed circumstances.[6] The Court's role is critically important. Longstanding doctrine requires courts to determine that "the public interest would not be disserved by a permanent injunction" before granting one.[7] That same public interest framing applies equally to attempts to modify a permanent injunction.[8] Indeed, there is an acute risk that private parties such as Google and Epic may barter away the public interest embedded in the Court's injunction for private gain.

In responding to the Court's request for feedback on the parties' motion, the FTC recognizes that the information available to the Court and parties will far exceed the information available to the FTC. Consequently, the FTC does not take a position on whether the Court should grant the underlying motion. Instead, the FTC emphasizes that it shares the Court's initial concerns regarding "whether the proposed modifications are consistent with the public interest in free and unfettered competition, which the antitrust laws are designed to protect[,]" "whether material circumstances have changed to warrant a modification," and "whether the injunction as modified by the parties would adequately redress the network effects of Google's

---

[5] Redline of Modified Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 13, 2025), Dkt. No. 1126-1.

[6] *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).

[7] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[8] *Rufo*, 502 U.S. at 384-85 (citing *Duran v. Elrod*, 760 F.2d 756, 759–61 (7th Cir. 1985)).

anticompetitive conduct."[9]

As such, this brief discusses factors the Court may wish to consider in determining whether to modify the permanent injunction against Google. The antitrust laws have been called "the Magna Carta of free enterprise"; vigorous antitrust enforcement is essential for protecting and preserving the American free-enterprise system.[10] Generally, courts must remedy antitrust law violations by ordering the relief necessary to restore competition.[11] And in this very proceeding, the Ninth Circuit stated that "the purpose of giving private parties…injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws.'"[12] The public interest is a necessary consideration underlying permanent injunctions.[13] The public interest, not Google's and Epic's private interests, should remain at the forefront of the Court's thinking as it considers the parties' joint motion. Both the existing permanent injunction restraining Google's anticompetitive activity and the parties' proposed modified remedy affect millions of users and businesses that operate in the Android ecosystem but are not present in the courtroom. These issues have heightened importance because the injunction followed a verdict in an intensely litigated jury trial and was upheld on appeal. This is not to say that the FTC considers any proposed modifications to antitrust injunctions based on subsequent settlements between private parties inherently problematic. Courts, however, should scrutinize closely modifications proposed by settling private parties to a

---

[9] Minute Order, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 7, 2025), Dkt. No. 1124.

[10] *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) ("Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms.").

[11] *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961) ("[C]ourts are authorized, indeed required, to decree relief effective to redress the violations, whatever the adverse effect of such a decree on private interests.").

[12] *In re Google Play Store Antitrust Litig.*, 147 F.4th at 946 (quotation marks omitted).

[13] *eBay Inc.*, 547 U.S. at 391.

judicial injunction that was crafted to advance the public interest in promoting free and fair competition.

This brief additionally discusses the Commission's reactions to a few of the parties' proposed modifications to aid in the Court's competitive analysis. This discussion is not intended to be an exhaustive assessment of all antitrust implications raised by the parties' proposed modifications. Rather, the Commission only seeks to call to the Court's attention a few of the most salient provisions that, in the FTC's opinion, warrant particular scrutiny.

**Interest of the Federal Trade Commission**

The FTC enforces federal law against unfair methods of competition that affect the American economy.[14] Through over 100 years of experience enforcing the antitrust laws, the FTC has developed expertise investigating, litigating, and resolving cases involving anticompetitive conduct. Frequently, the FTC crafts orders to remedy antitrust violations and vindicate the public interest.[15] The FTC's enforcement authority and expertise cover a wide range of industries, including technology and digital platforms.[16]

The FTC conducts studies and inquiries to better understand digital industry dynamics and their competitive impact. The agency's broad authority to compel the production of data and other information[17] gives it a unique capacity to conduct "systematic, institutional study of real-world industries and activities" that "modern academic research in industrial organization rarely

---

[14] *See* 15 U.S.C. §§ 41–58.

[15] *See* 15 U.S.C. § 45 (recognizing the FTC is an expert body with wide latitude to design remedies.); *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 613 (1946) (same).

[16] *See, e.g.*, Inside the Bureau of Competition (detailing work of the FTC's Technology Enforcement Division), https://www.ftc.gov/about-ftc/bureaus-offices/bureau-competition/inside-bureau-competition; The FTC's Office of Technology (describing the FTC's in-house technical expertise), https://www.ftc.gov/about-ftc/bureaus-offices/office-technology.

[17] 15 U.S.C. § 46(b).

4

undertakes."[18] Notably, the Commission has conducted a variety of empirical studies and issued reports on remedies, mergers and conduct in technology markets, and data practices.[19]

The Commission previously filed two amicus briefs on the merits in this case. The Commission's briefs supported the judiciary's broad authority to grant injunctive relief to remedy Google's anticompetitive conduct. One was filed before this Court[20] and another before the Ninth Circuit, in conjunction with the Department of Justice's Antitrust Division.[21]

## I.    Modifying a Permanent Injunction Is Extraordinary Relief

The parties move to modify the permanent injunction. Such a motion is properly analyzed under Federal Rule of Civil Procedure 60(b)(5). Under that Rule, the district court may modify its order only if the existing injunction "is no longer equitable."[22] To satisfy this standard, the moving parties must demonstrate "a significant change in factual conditions or in law,"[23] and then the Court must "consider whether the proposed modification is suitably tailored to the

---

[18] *Report of the American Bar Ass'n Section of Antitrust Law, Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43, 103 (1989).

[19] *See, e.g.*, FTC's Merger Remedies 2006-2012: A Report of the Bureaus of Competition and Economics, FTC Report (January 2017), available at https://www.ftc.gov/system/files/documents/reports/ftcs-merger-remedies-2006-2012-report-bureaus-competition-economics/p143100_ftc_merger_remedies_2006-2012.pdf; Big Data: A Tool for Inclusion or Exclusion? Understanding the Issues, FTC Report (January 2016), available at https://www.ftc.gov/system/files/documents/reports/big-data-tool-inclusion-or-exclusion-understanding-issues/160106big-data-rpt.pdf; Non-HSR Reported Acquisitions by Select Technology Platforms, 2010-2019: An FTC Study, (September 2021), available at https://www.ftc.gov/system/files/documents/reports/non-hsr-reported-acquisitions-select-technology-platforms-2010-2019-ftc-study/p201201technologyplatformstudy2021.pdf.

[20] Amicus Brief of the Fed. Trade Comm'n, *Epic Games Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal. Aug. 12, 2024), Dkt. No. 68-1, available at https://www.ftc.gov/system/files/ftc_gov/pdf/ftc_amicus_brief_epic_v_google_play.pdf.

[21] Brief of the United States of America and the Federal Trade Commission as Amici Curiae in Support of Plaintiff-Appellee, *In re Google Play Store Antitrust Litig.*, Nos. 24-6256, 24-6274, at 16-22 (9th Cir. Jan. 7, 2025), Dkt. No. 151, available at https://www.ftc.gov/system/files/ftc_gov/pdf/p859910epicvgoogleamicusbrief.jan2025.pdf.

[22] Fed. R. Civ. P. 60(b)(5).

[23] *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo*, 502 U.S. at 384).

changed circumstances." [24] Consistent with Rule 60(b), the permanent injunction by its terms permits either party to request modification for "good cause." [25]

The Court's power to grant relief under Rule 60(b) is circumscribed and should be exercised with caution. [26] As one district court noted, "[d]ue to the overriding interest in the finality and repose of judgments, a Rule 60(b) motion is considered extraordinary relief which should be granted only where extraordinary justifying circumstances are present." [27] The parties assert that their comprehensive settlement agreement is a significant change in circumstances, allowing the parties to settle their various disputes and avoid further litigation regarding implementation of the permanent injunction. [28] But for the reasons set forth below, it is unclear whether the parties' contingent settlement, under the circumstances surrounding this case, renders application of the permanent injunction "no longer equitable." [29]

Even setting aside that potential issue, the parties also assert that, not only will the proposed modified injunction facilitate settlement of their disputes, but it would also enhance competition in the relevant markets. [30] The Court's permanent injunction was entered for the purpose of enforcing the antitrust laws [31] and to "'restore and encourage the competition

---

[24] *Rufo*, 502 U.S. at 383.

[25] Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017, ¶ 14.

[26] *See Janssen Prods., L.P. v. Lupin Ltd.*, 2016 WL 3392291 at *3 (D.N.J. June 15, 2016) ("The Court's power to grant relief under [Rule 60(b)] is narrow."); *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 795 (7th Cir. 1980) ("Rule 60(b) is to be used . . . only on narrow grounds and upon a showing of exceptional circumstances.").

[27] *Janssen Prods., L.P.*, 2016 WL 3392291 at *3 (quoting *Katz v. Twp. of Westfall*, 287 F. App'x 985, 988 (3d. Cir 2008) (quotation marks omitted).

[28] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 5–7.

[29] Fed. R. Civ. P. 60(b)(5).

[30] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 7–8.

[31] *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 946 (9th Cir. 2025) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130–31 (1969)).

adversely affected by' the anticompetitive conduct."[32] It may be that the proposed modified injunction would enhance competition relative to the world prior to the jury verdict, yet not in comparison with the permanent injunction. But that is not the relevant inquiry. Rather, under Rule 60(b)(5), if the court finds that a significant change in circumstances would render enforcement of the permanent injunction inequitable,[33] the court is tasked with determining if the proposed modifications are "suitably tailored to the changed circumstance[s],"[34] in light of the Court's remedial goals under section 16 of the Clayton Act.

### A. The Court Should Consider All Relevant Circumstances

Equity requires a district court to take "all the circumstances into account in determining whether to modify or vacate a prior injunction or consent decree."[35] Here, the most relevant circumstances include that (1) the proposed modified injunction is inextricably linked to the terms of the parties' private settlement, which may not account for the public interest in restoring competition and (2) the Court has been asked to facilitate a contingent settlement between the parties by modifying a permanent injunction, which was entered following a jury verdict and was upheld on appeal. These circumstances are different from those where a court is asked to approve a proposed consent decree filing during a pending litigation.

### B. Any Private Benefits to Epic May Not Address the Public Interest in Restoring Competition

The proposed modified injunction and the terms of the comprehensive settlement reflect an overarching negotiated agreement between the parties. Such an agreement may reflect incentives to seek private benefits at the expense of protecting competition. As part of the negotiation, Google agreed "to make certain commitments not currently required under the

---

[32] Order re UCL Claim and Injunctive Relief, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1016 at 6 (quoting *Ford Motor Co. v. United States*, 405 U.S. 562, 578 (1972)).

[33] Fed. R. Civ. P. 60(b)(5).

[34] *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).

[35] *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1256 (9th Cir. 1999) (discussing the application of *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)).

Existing Injunction and that would benefit developers and consumers" and Epic agreed to forgo "certain remedies in the Existing Injunction" (some of which would also benefit developers and consumers).[36] But the agreement also reflects other commitments and quid pro quos between the parties that may not directly relate to remedying the harm to competition, such as Google's payment of Epic's attorneys' fees and costs and commercial terms between the two companies.[37] In considering the likely effect of the proposed modifications, the FTC urges the Court to consider the extent to which privately beneficial terms in the comprehensive settlement could have induced Epic to accept modifications that would not necessarily serve the public interest in competition.[38]

## II.    The Court Should Apply the *Rufo* Standard to Modify an Injunction

The existing permanent injunction is the product of vigorous litigation and a careful balancing of equities by this Court. It was imposed on the basis of extensive factual development and under the standard requiring the Court "to decree relief effective to redress the violations, whatever the adverse effect of such a decree on private interests."[39] Under *Rufo v. Inmates of Suffolk County Jail*, parties asking the Court to modify or vacate an injunction must demonstrate "a significant change in factual conditions or in law,"[40] and then the Court must "consider whether the proposed modification is suitably tailored to the changed circumstance[s]."[41] The

---

[36] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 3.

[37] *See* Redacted Binding Settlement Term Sheet, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 13, 2025), Dkt. No. 1125-3, at 8–10.

[38] *Cf. FTC v. Actavis*, 570 U.S. 136, 158 (2013) (noting that "the antitrust laws are likely to forbid" certain settlement agreements, in this case some reverse payments from branded pharmaceutical companies to generic companies to stay out of a drug market, when "the basic reason is a desire to maintain and to share patent-generated monopoly profits").

[39] *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961) ("[C]ourts are authorized, indeed required, to decree relief effective to redress the violations, whatever the adverse effect of such a decree on private interests.") (citations omitted).

[40] *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo*, 502 U.S. at 384 (quotation marks omitted).

[41] *Rufo*, 502 U.S. at 383.

history surrounding the entry of the permanent injunction against Google calls into question the parties' attempt to analogize this case to ones involving the initial approval of consent decrees, with their more lenient standards. A consent decree reflects a negotiated settlement between parties, which courts often approve in appropriate circumstances, as part of the judicial policy favoring settlement. The present motion attempts to modify an existing permanent injunction which the Court has already issued over the objection of one of the parties after extensive, adversarial proceedings, and which the court of appeals sustained. In these cases, the law is clear that the Court should apply the higher standards of Rule 60(b)(5), as set forth under *Rufo* and its progeny.

### A.  The Parties' Settlement May Not Constitute a Significant Change in Circumstances

The parties cite several district court cases and an unreported Second Circuit summary order for the proposition that their settlement constitutes a significant change in circumstances that warrants modifying the permanent injunction.[42] The parties questionably rely on the Ninth Circuit's judicial policy favoring settlements,[43] listing some of their disputes that would be resolved by the settlement, such as: (1) implementation of the permanent injunction, (2) the catalog access and app store distribution remedies in the permanent injunction (which are omitted from the proposed modified injunction), (3) Epic's attorney fees, and (4) the *Epic II* litigation.[44] Changed factual circumstances under *Rufo* typically involve forces outside of the parties' control, such as unforeseen obstacles hindering compliance or a finding that compliance has become "detrimental to the public interest."[45] These are not present here. To the extent the proposed modified injunction would resolve the parties' current implementation disputes, the

---

[42] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 5–7.

[43] *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992)).

[44] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 6–7.

[45] 502 U.S. at 384–85, 392 (citing *Duran v. Elrod*, 760 F.2d 756, 759–61 (7th Cir. 1985)).

9

modified injunction would likely raise new implementation disputes—as even the parties admit that it likely will.[46]

The settlement situation before the Court also differs substantially from those cited by the parties because of the greater complexity of the permanent injunction here and the scope of the proposed modifications. For example, in *Janssen Products, L.P. v. Lupin Limited*,[47] a district court modified its injunctive order after finding that a patent holder's settlement with one of the infringing parties constituted a significant change in circumstances. *First*, the injunctive order in *Janssen* was relatively simple, enjoining several defendant generic drug manufacturers from manufacturing or marketing specific drug products that infringed on the plaintiff's patents.[48] By contrast, this permanent injunction imposes numerous prohibitions and affirmative obligations on Google to remedy anticompetitive conduct across multiple relevant markets, affecting the rights and obligations of not just Epic, but countless other app developers, third-party app stores, in-app billing service providers, and users. *Second*, the settlement and requested injunction modification in *Janssen* were simple: the settlement granted a license to sell the generic drug product using the infringed patent, and the requested modification was merely to lift the provision of the injunction that barred the defendant from selling the drug product. Other defendants bound by the injunctive order were unaffected. Here, the terms of the comprehensive settlement cover multiple obligations, across several documents (some of which have yet to be written) and multiple markets, impacting not only the parties, but disparate actors in markets across an entire digital mobile ecosystem. The corresponding requested modifications to the permanent injunction are similarly complex and far-reaching. And the court entered its injunction after extensive weighing of evidence and arguments about the correct balance to strike in order to restore competition. Accordingly, while the settlement in *Janssen* arguably represented a clean and final resolution to that dispute, the comprehensive settlement and

---

[46] Joint Motion to Modify Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 11.

[47] 2016 WL 3392291 (D.N.J. June 15, 2016).

[48] *Id*. at *1.

proposed modified injunction here are more uncertain and contingent; and they would

profoundly affect third parties, the public, and market conditions across the country.

In addition, there appear to be few—if any—benefits to judicial economy of granting the

joint motion under Rule 60(b)(5) at this stage of the case. The Supreme Court, in a case

concerning a motion for vacatur of a judgement to facilitate settlement, made the following

observation:

> [W]hile the availability of vacatur may facilitate settlement after the judgment under
> review has been rendered and certiorari granted (or appeal filed), it may deter settlement
> at an earlier stage. Some litigants, at least, may think it worthwhile to roll the dice rather
> than settle in the district court, or in the court of appeals, if, but only if, an unfavorable
> outcome can be washed away by a settlement-related vacatur.[49]

Some of the permanent injunction provisions to which Google most strenuously objected, but

which were upheld on appeal, are not part of the proposed modified injunction—they have been

erased though the settlement process. The FTC does not have sufficient information to determine

Google's motivations in seeking to modify the permanent injunction.[50] But it respectfully

submits that the Court should carefully scrutinize whether the proposed modifications would

advance or detract from the Court's goals in issuing the injunction in the first place. As the

Supreme Court has noted, a critical question in the Rule 60(b)(5) inquiry is whether the objective

of the Court's original injunction has been achieved,[51] which, as this Court has already

explained, was to "'restore and encourage the competition adversely affected by' the

anticompetitive conduct."[52]

Thus, even if the Court were to find that the contingent comprehensive settlement

constitutes a significant change in circumstances, the FTC urges the Court to look to the original

---

[49] *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27–28 (1994) (emphasis
omitted).

[50] *See Vertex Surgical, inc. v. Paradigm Biodevices, Inc.*, 648 F.Supp.2d 226, 239 (D. Mass.
2009).

[51] *Horne v. Flores*, 557 U.S. 433, 450 (2009).

[52] Order re UCL Claim and Injunctive Relief, *In re Google Play Store Antitrust Litig.*, 3:21-md-
02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1016, at 6 (quoting *Ford Motor Co. v. United
States*, 405 U.S. 562, 578 (1972)).

*objective* of its permanent injunction—the restoration of competition in markets adversely affected by Google's anticompetitive conduct as the mechanism to remedy Epic's claims—as the guiding principle of its analysis.

### III. The Court Should Consider All the Circumstances to Assess the Effect of the Proposed Modifications on the Public Interest

In reviewing whether modification is warranted, the Court should look to the same considerations that guided its crafting of the permanent injunction, specifically a remedy that stops the illegal conduct, prevents its recurrence, and restores competition to the affected markets.[53] The Ninth Circuit has described the remedial power of a district court upon a jury verdict of monopolization as the power "to terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future."[54]

In that spirit, the FTC highlights a few particularly salient provisions relevant to the overall assessment of competitive effects.

#### A. The Court Should Consider the Effect of the Proposed Modifications on the Ability of Google's Actual and Potential Rivals to Overcome Google's Network Effects to Compete

Particular characteristics of digital markets are salient when assessing whether modification is appropriate. Some digital markets can allow monopolists to perpetuate entry barriers and maintain monopoly power long after illegal exclusionary behavior has ceased. Digital platforms enable interactions between distinct users of the platform and typically feature strong network effects, which can confer a powerful incumbency advantage to dominant providers, creating barriers to entry.[55] Such network effects could degrade the utility or availability of a rival platform, making it harder for the rival to achieve the network necessary to

---

[53] *Ford Motor Co.*, 405 U.S. at 577–78; *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250 (1968); *United States v. Grinnell Corp.*, 384 U.S. 563, 577 (1966).

[54] *Optronics Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (quotation marks omitted).

[55] *See United States v. Google LLC*, 747 F. Supp. 3d 1, 161–62 (D.D.C. 2024).

pose a meaningful competitive threat.[56]

Generally, most actual or potential competitors may not have the size, market position, user base, customer recognition, or financial resources of Epic Games. Certain provisions of the original decree may be critical to the public interest, which includes the interests of smaller firms, even if Epic were willing to forgo those provisions in a settlement.

### B. The Court Should Consider Whether Eliminating the Catalog Access and App Store Distribution Remedies Would Have Significant Competitive Implications

The catalog access[57] and app store distribution[58] remedies are the primary means by which the Court's permanent injunction aims to restore competition in Android app distribution. These requirements address Google's anticompetitive conduct in light of the network effects associated with Google's dominant position in the Android app distribution market. With respect to catalog access, as the Court explained, the permanent injunction "must overcome the [network effects] by providing access to the catalog of Play Store apps for a period of time sufficient to give rival stores a fair opportunity to establish themselves."[59] With respect to the Play Store distribution remedy, the permanent injunction "will lower barriers for rival app stores to get onto users' phones by enjoining Google from prohibiting the presence of rival app stores in the Google Play Store."[60] Both remedies would last for a period of three years.[61]

Google opposed these remedies both before this Court and the Ninth Circuit. By contrast, until the present joint motion, Epic successfully argued that catalog access and app store

---

[56] *See* U.S. Dep't of Justice & Fed Trade Comm'n, Merger Guidelines 2.6.A. (2023).

[57] Permanent Injunction, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017, ¶ 11.

[58] *Id.* at ¶ 12.

[59] Order re UCL Claim and Injunctive Relief, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1016, at 10.

[60] *Id.*

[61] Permanent Injunction, In re Google Play Store Antitrust Litig., 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017, ¶¶ 11–12.

distribution were necessary to restore lost competition.[62] Epic's expert also opined that the catalog access remedy would not only provide rival apps with immediate scale on the app developer side to compete for users, but would allow rivals to develop independent relationship with device OEMs and developers.[63] He also observed that if third-party app stores were not available through the Play Store, "many users would not know where to find them or even to look for them at all."[64]

The proposed modified injunction requires Google: (1) to continue to allow third-party app stores to operate on the Android operating system, (2) to continue to allow direct downloading of apps from websites and third-party app stores, and (3) to develop and release a process, included in the next major Android release, that would certify Android app stores as "Registered App Stores," and allow users to download Registered App Stores from a website and use such App Stores to install apps to Android. Under the modified proposed injunction, these requirements would last for 6 years, until June 2032, rather than for 3 years.[65]

The parties assert that these changes would resolve and reduce the scope of disputes that had arisen between the parties concerning the implementation of the Court's injunction. While that may be true, the modification appears to eliminate the catalog access and app-store distribution obligations for which Epic has vigorously advocated and which Google has vigorously resisted. Although the proposed Registered App Stores remedy would last for six years, may well reduce some implementation disputes, and would eventually provide an Android operating system feature to download certified third-party app stores from external websites—an incremental improvement from the status quo without the permanent injunction—it, nevertheless, may fail to restore meaningful competition to the app distribution market.

---

[62] Epic's Proposed Permanent Injunction, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Apr. 11, 2024), Dkt No. 952, at 6–8.

[63] Statement of B. Douglas Bernheim, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal. Apr. 11, 2024), Dkt No. 952-1, at 24–26.

[64] *Id.* at 26.

[65] Redline of Modified Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 13, 2025), Dkt. No. 1126-1, at 4–5.

1    Under the proposed Registered App Stores remedy, rival Android app stores may still

2    face significant barriers to getting on users' phones if Google can exclude them from the Play

3    Store. It is unclear how accessible, as a practical matter, users will find the website-based

4    Registered App Store installation process under the proposed remedy. Additionally, it is also

5    unclear how rival app stores will be able to overcome Google's network effects without the

6    robust catalog of apps that the catalog access remedy would provide.

7    The proposed modified injunction reflects Epic's decision to forgo these two significant

8    aspects of the relief ordered in the permanent injunction in exchange for a comprehensive

9    settlement.[66] Without the catalog access and app-store distribution remedies, rival Android app

10   stores, particularly smaller players, may continue to lack both the users necessary to attract

11   developers and the products necessary to attract users, which risks leaving largely intact a market

12   shaped by Google's anticompetitive conduct in the Android app distribution market.

13   ### C.  The Court Should Consider Whether Modifying the Prohibitions Against Requiring Google Play Billing on In-App Purchases Would Have Significant Competitive Implications
14

15   The permanent injunction prohibits Google from (1) requiring the use of Google Play

16   Billing services for apps distributed on the Google Play Store and (2) prohibiting the use of in-

17   app payment methods other than Google Play Billing.[67] The proposed modified injunction

18   eliminates this prohibition, replacing it with a requirement that Google permit developers to use

19   alternative payment options for transactions executed both in-app and via external links,

20   provided that these alternative options are shown "side-by-side along with Google Play

21   Billing."[68] Additionally, the modifications would prohibit Google from burdening the use of

22   alternative payment options and would allow Google to use an API to track off-app transactions

23   executed via a link and to charge a service fee on such transactions executed within 24 hours of

24

25   ---

[66] *Id.*

26   [67] Permanent Injunction, In re Google Play Store Antitrust Litig., 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017, ¶ 9.

27

28   [68] Redline of Modified Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 7, 2025), Dkt. No. 1126-1, at 3–4.

using the link.[69]

Both the permanent injunction and the proposed modified injunction prevent Google from excluding all alternative in-app payment methods, which should help foster some level of competition in the Android in-app billing market. The proposed modification, however, prohibits developers from excluding Google Play Billing if an app offers users the option to complete digital transactions in app or through in-app links to external payment websites. And developers must show the alternative billing options and Google Play Billing side-by-side. According to the parties, this modified remedy "allows rival payment solutions to compete on the basis of price and other features."[70] In addition, the proposed modified injunction permits Google to charge services fees on transactions using alternative payment methods of up to 9% or 20%, depending on the type of transaction.[71] This modification raises serious questions about whether competition in the Android in-app billing market would take place on a tilted playing field. Google Play Billing's mandated omnipresence combined with its ability to impose significant costs on its rivals, by way of services fees on all of the digital transactions executed by competing payment solutions, would appear to embed competitive advantages in favor of Google, which risks hindering the Court's efforts to foster competition in the Android in-app billing market and allowing Google to continue to enjoy the fruits of its anticompetitive conduct.

Additionally, the parties do not explain why certain types of purchases are capped at a 9% transaction fee (such as subscriptions or in-game cosmetic purchases), while fees for other types of digital purchases can reach as high as 20%. The FTC notes that imposing a significantly higher fee cap on certain in-game purchases but not others may unfairly disadvantage game companies that rely on revenue sources subject to the higher, 20% fee relative to those companies that employ primarily subscription-based revenue models supplemented with sales of

---

[69] *Id.*

[70] Joint Motion to Modify Permanent Injunction, *Epic Games Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal. Nov. 4, 2025), Dkt. No. 1119, at 13.

[71] Redline of Modified Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Nov. 13, 2025), Dkt. No. 1126-1, at 3–6.

16

cosmetic items, which are capped at the 9% fee.

**Conclusion**

The Commission respectfully submits this brief to aid the Court's consideration of the parties' joint motion to modify the permanent injunction.

Dated: January 21, 2026                 Respectfully submitted,

DANIEL GUARNERA
*Director, Bureau of Competition*

CLARKE T. EDWARDS
*Acting Director, Office of Policy & Planning*

KELSE MOEN
*Deputy Director, Bureau of Competition*

MARC S. LANOUE
*Special Counsel for Competition Policy*
*Bureau of Competition*

KELLY ORTIZ
*Attorney, Bureau of Competition*

*/s/ Kelly Ortiz*
_____
Kelly Ortiz
*Bureau of Competition*

*Attorneys for Amicus Curiae Federal Trade*
*Commission*