1  Glenn D. Pomerantz, Bar No. 112503
2  glenn.pomerantz@mto.com
   MUNGER, TOLLES & OLSON LLP
3  350 South Grand Avenue, Fiftieth Floor
   Los Angeles, California 90071
4  Telephone: (213) 683-9100

5
   Brian C. Rocca, Bar No. 221576
6  brian.rocca@morganlewis.com
   MORGAN, LEWIS & BOCKIUS LLP
7  600 Montgomery Street, Suite 2300
   San Francisco, CA 94111
8  Telephone: (415) 442-1000

9
   *Counsel for Defendants*
10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14
   | IN RE GOOGLE PLAY STORE | Case No. 3:21-md-02981-JD |
15 | ANTITRUST LITIGATION | |
   | | **DECLARATION OF ARIEL SPIVAK IN** |
16 | THIS DOCUMENT RELATES TO: | **SUPPORT OF JOINT** |
   | | **ADMINISTRATIVE MOTION TO FILE** |
17 | *Epic Games Inc. v. Google LLC et al.*, Case | **UNDER SEAL MATERIALS IN** |
   | No. 3:20-cv-05671-JD | **CONNECTION WITH RENEWED** |
18 | | **JOINT MOTION TO MODIFY** |
   | | **PERMANENT INJUNCTION** |
19

20
                                Judge:   Hon. James Donato
21

22

23

24

25

26

27

28

I, Ariel Spivak, declare as follows:

1. I am Vice President, Android Mobile and Telco Partnerships, for Google LLC (along with Google-affiliated entities named in this case, "Google"). I have been employed by Google since January 2011 and have held my current position since November 2024. Over the course of my employment at Google, I have acquired personal knowledge of Google's practices concerning the maintenance of the confidentiality of its strategic, business, and partnership information.

2. I am providing information related to the narrow set of redactions that Google seeks to seal in the Revised Term Sheet, in order to prevent disclosure of commercially-sensitive, forward-looking business terms and plans. Specifically, we are seeking to seal only portions of 43 lines of the 22-page Revised Term Sheet (i.e., approximately 5% of the Revised Term Sheet); and only one of the four exhibits.

3. The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge. I participated directly in the negotiation of the settlement between Google and Epic to resolve their disputes. I also participated in the negotiation on the Google side related to Exhibit 3 to the Revised Term Sheet. If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

**There are Compelling Reasons to Seal the Confidential, Forward-Looking, Commercially-Sensitive Information in the Revised Term Sheet**

4. A small subset of the Revised Term Sheet, and only one of its four exhibits, are commercially sensitive and reveal forward-looking business plans that are not publicly known. These commercial terms resulted from complex, confidential settlement negotiations between Epic and Google, including with respect to specific business plans for product development and areas of future investment. If publicly disclosed, third parties could better craft their own business strategies related to their product roadmaps. Additionally, potential counterparties to Google in ordinary course business negotiations could demand similar or better terms as those agreed to by

-1-

1 | Epic and Google.

2 |     5.    **Exhibit 3 to the Revised Term Sheet; and Revised Term Sheet, Paragraph 16 (text between "16." and "See" and text between the parentheses), Paragraph 23 (text between "excluding the" and "section" and text between "e.g., the" and "or release any claims"), Paragraph 27 (text between "(iii) the" and "shall expire), Paragraph 29 (text between "relating to the" and "shall be set forth")** referencing the same, are highly sensitive and confidential, and should be sealed to avoid causing substantial economic harm to Google. This Exhibit reflects complex negotiations between Epic and Google, which culminated in a forward-looking business partnership structure that includes sensitive technical, business, and financial commitments by both parties. The details of this non-Play business partnership contain specific financial and pricing terms that reflect the economic value placed by the parties on this aspect of their respective businesses, as well as ongoing business commitments in exchange for certain price terms. The partnership terms contained in Exhibit 3 also reflect the parties' strategic and business priorities and the economic values placed on those priorities. If revealed to competitors and potential business counterparties, the terms of this partnership could be used to disadvantage Google. For example, if competitors became aware of this information, they could use it to inform their own strategies, including how to structure competing offers for their own products. In addition, this information could influence the negotiating strategies and tactics employed by other current and prospective counterparties with which Google does or may transact business. For example, a counterparty with knowledge of the specific terms agreed upon by Google in this partnership could demand those terms or better in their own negotiations with Google.

    6.    **Revised Term Sheet, Paragraph 15 (text between "Metaverse Browser App Category" and "MetaVerse Browsers"; text between "that: (a)" and "(b)"; text between "(b)" and "(c) have the primary"; text between "(d)" and "(e) support virtual"; and text between "not so categorized." and the end of the provision).** The information defines the nature, definitional parameters and timing of future business plans that are not publicly known.

1  Specifically, the provision defines business plans for product development not currently in
2  existence. The provision includes specific, future technical and functional requirements that will
3  be further defined in a long-form agreement. These requirements are confidential, have not yet
4  been fully developed (and thus are subject to change), and the anticipated timing of the release of
5  information is set forth in the provision. There are several reasons why the public release of this
6  information would cause substantial commercial harm to Google and, potentially, third parties.

7        a.  **First**, the provision reveals the specific way that Google is planning future product
8  development, including by analogy to other products that further reveal the nature of the
9  business plans. Competitors who learn this information could copy aspects of this
10 information, or adjust its own approach to commercially undercut Google's approach.

11       b.  **Second**, the provision reveals an anticipated future commercial framework,
12 including monetization strategy, for these future product developments.

13       c.  **Third**, the timing of new innovations on Google Play, including anticipated launch
14 date, is important and commercially sensitive. If a competitor learned of the timing, it
15 could strategically undermine Google Play by developing plans to preempt Google's
16 product development and/or launch.

17       d.  **Fourth**, third parties may be harmed by releasing this information if they rely on it
18 to build products/services given the information that is not yet fully developed or finalized.
19 The provisions are subject to further development and may evolve. When announcing a
20 new feature or business model, our typical approach is to prepare supporting processes and
21 information (e.g., frequently asked questions (FAQs) and answers) to ensure we are
22 prepared to provide excellent support for our partners. We also try to prepare and train our
23 developer-facing teams on how best to respond to questions and assist developers in the
24 new topic area. These processes, supporting information, and training materials have not
25 yet been created.

26     7.    **Revised Term Sheet, Paragraph 20 (text between "shall pay Epic" and "for
27 its").** This text reveals the amount of attorney fees agreed upon by Epic and Google in order for
28

1  Epic to withdraw all global requests for attorney fees/costs as part of the parties' settlement. This
2  amount is confidential and reflects complex considerations between the parties in light of their
3  negotiated settlement, as well as the economic value exchanged as part of the settlement. If
4  publicly revealed, I understand that other litigants against Google could compare this amount
5  against their own potential settlement demands, and use this number as a datapoint to demand a
6  comparable amount or seek more leverage in other parts of a potential settlement negotiation. This
7  type of public disclosure could make it more difficult for Google to settle other disputes, including
8  the attorney fee portion of such disputes, as the negotiating parties would be aware of how Google
9  settled this litigation, and also be wary of public disclosure when attempting to negotiate and reach
10 a potential compromise with Google.

11       I declare under penalty of perjury under the laws of the United States of America that the
12 foregoing is true and correct.

13       Executed on this 4th day of March 2026, in Barcelona, Spain.

Signed by:

*Ariel Spivak*
0C0ED2AD3358489...

Ariel Spivak

---

-4-

DECL. OF ARIEL SPIVAK IN SUPPORT OF JOINT ADMIN. MOT. TO FILE UNDER SEAL
MATERIALS IN CONNECTION WITH RENEWED JOINT MOT. TO MODIFY PERMANENT INJUNCTION
Case Nos. 3:21-md-02981-JD, 3:20-cv-05671-JD

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer of this document attests that concurrence in the filing of the document has been obtained from the other signatory.

By: */s/ Brian C. Rocca*

Brian C. Rocca