# EXHIBIT 1

Justina K. Sessions (SBN 270914)
justina.sessions@freshfields.com
**FRESHFIELDS US LLP**
One Bush Street, 17th Floor
San Francisco, CA 94104
Telephone: (650) 461-8276

*Counsel for* Amicus Curiae
*ROVIO ENTERTAINMENT LTD*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC, et al.*<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**[PROPOSED] BRIEF OF ROVIO ENTERTAINMENT LTD AS *AMICUS CURIAE* SUPPORTING RENEWED JOINT MOTION TO MODIFY PERMANENT INJUNCTION**<br><br>Judge:  Hon. James Donato |

## **TABLE OF CONTENTS**

STATEMENT OF INTEREST OF AMICUS CURIAE ......................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.      THE REVISED INJUNCTION PRESERVES THE POSITIVE EVOLUTION OF DEVELOPER ECONOMICS. ................................................................. 2

    II.     THE REVISED INJUNCTION PRESERVES DEVELOPER CHOICE AND FLEXIBILITY. ............................................................................... 3

    III.   THE REVISED INJUNCTION PRESERVES PLATFORM SECURITY AND USER TRUST. ............................................................................ 4

CONCLUSION ....................................................................................................... 5

FRESHFIELDS US LLP
ATTORNEYS AT LAW
NEW YORK

ROVIO'S BRIEF SUPPORTING RENEWED JOINT MOTION TO MODIFY INJUNCTION
CASE NOS. 3:21-md-02981-JD; 3:20-cv-05671-JD

## TABLE OF AUTHORITIES

**CASES**

*In re Google Play Store Antitrust Litig.*, 147 F.4th 917 (9th Cir. 2025) ........................................ 2

*Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) ............................................ 2

**OTHER AUTHORITIES**

Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017 ............................................ 3

*Red's Club*, https://redsclub.com/ab-friends/ (last visited Apr. 3, 2026) ........................................ 1

Revised Binding Term Sheet, Exhibit 2 (App Store Definition), *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Mar. 4, 2026), Dkt. No. 1179-2 ........................................ 4

Revised Modified Injunction, Exhibit 4 to Revised Binding Term Sheet, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Mar. 4, 2026), Dkt. No. 1179-2 ........................................ 2, 3, 4

Rovio Ent. Corp., *Rovio Games Have Surpassed 5 Billion Total Downloads*, Rovio (Apr. 14, 2022), https://www.rovio.com/articles/rovio-games-have-surpassed-5-billion-total-downloads/ ........................................ 1

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

Rovio Entertainment Ltd ("Rovio") is a mobile game developer and publisher whose titles have been downloaded more than five billion times worldwide.[2] Rovio's popular mobile games include Angry Birds 2 and related Angry Birds games. Rovio's games are currently available through the Google Play Store, the Apple App Store, the Amazon Appstore, and directly from Rovio through Red's Club, a web store.[3]

Rovio takes no position on any private commercial consideration between the parties. It submits this brief solely to explain why, from a publisher's perspective, the proposed modified injunction preserves the core competitive protections of the existing remedy while adopting a more administrable path for distribution through rival app stores. Rovio supports the proposed modified injunction.

This *amicus* brief reflects solely Rovio's own position and views and does not in any way imply alignment or endorsement by Rovio's parent company or its group entities.

## SUMMARY OF ARGUMENT

As a mobile game developer and publisher, Rovio is guided by three principles for the continued health of the mobile app ecosystem. Rovio is committed to a more open and sustainable mobile ecosystem, and believes that openness should be achieved in a safe manner.

*First*, Rovio views Google's recent fee reductions and increased flexibility in billing options as a positive evolution of platform economics. Google's changes are a meaningful step in the right direction towards improving the economics of mobile game development. This allows developers to reinvest in content, innovation, and user acquisition. The proposed modified injunction seems to preserve these positive changes.

*Second*, developers need choice and flexibility in how they distribute and monetize their apps. Greater optionality in billing and distribution enables developers to best serve their users

---

[1] No counsel for either party authored this brief in whole or in part. No person other than Rovio or its counsel contributed money intended to fund the preparation or submission of this brief.

[2] Rovio Ent. Corp., *Rovio Games Have Surpassed 5 Billion Total Downloads*, Rovio (Apr. 14, 2022), https://www.rovio.com/articles/rovio-games-have-surpassed-5-billion-total-downloads/.

[3] *See Red's Club*, https://redsclub.com/ab-friends/ (last visited Apr. 3, 2026) ("up to 20% more value on every purchase" compared to platform store transactions).

Freshfields US LLP
Attorneys at Law
New York

1

ROVIO'S BRIEF SUPPORTING RENEWED JOINT MOTION TO MODIFY INJUNCTION
CASE NOS. 3:21-md-02981-JD; 3:20-cv-05671-JD

while maintaining viable business models. When developers can choose where and how to distribute, platforms compete for their business on price and quality. The proposed modified injunction promotes developer choice and flexibility.

*Third*, greater openness should not come at the expense of platform security and user trust. Any evolution of platform policies must maintain high standards for security, privacy, and user trust. The proposed modified injunction seems to promote this goal through uniform, published, and enforceable distribution standards.

Taken together, these developments contribute to a more balanced and competitive mobile ecosystem, benefiting developers, platform holders, and consumers alike. Rovio believes the proposed modified injunction preserves or improves the ability for the remedy to accomplish these goals.[4] While recent changes announced by Google are a good first step in addressing the economic imbalance between Google Play and developers, Rovio believes that further reductions should be applied for the fees to be competitive as well as further improvements into the app store terms.

The sections that follow address each principle.

## ARGUMENT

Rovio supports the proposed revised injunction because it seems to preserve the competitive protections that matter to developers while protecting platform security and user trust.[5]

### I.    THE REVISED INJUNCTION PRESERVES THE POSITIVE EVOLUTION OF DEVELOPER ECONOMICS.

Google's recently announced fee reductions and increased flexibility in billing options are a step in the right direction for developers. These changes improve the economics of mobile development and allow developers to reinvest in content, innovation, and user acquisition.

---

[4] Revised Modified Injunction, Exhibit 4 to Revised Binding Term Sheet, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Mar. 4, 2026), Dkt. No. 1179-2 [hereinafter Revised Injunction].

[5] *See In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 946 (9th Cir. 2025) (the purpose of giving private parties injunctive remedies "was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws"); *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992) (proposed modifications must be "suitably tailored to the changed circumstance[s]").

FRESHFIELDS US LLP
ATTORNEYS AT LAW
NEW YORK

Rovio's own web store already offers players more value on purchases than the same transactions through a platform store, a business built on billing freedom.

The revised injunction preserves billing choice[6] and developer communication rights.[7] The economic improvements that have been announced seem to remain in place.

## II.     THE REVISED INJUNCTION PRESERVES DEVELOPER CHOICE AND FLEXIBILITY.

The proposed revised injunction promotes developer choice and flexibility in the way apps are distributed. For many players, on-platform purchasing remains the simplest and safest experience, and from a developer perspective, transacting on-platform is the preferred path when platforms compete fairly for developer business. The revised injunction preserves choice without forcing either direction.

The revised injunction seems to ensure that Google cannot buy away a developer's choice of Android app store. Google may not condition payments, revenue sharing, or access to any Google product or service on a developer launching an app first, exclusively, or simultaneously in the Google Play Store.[8] Developers should also be able to differentiate their products across stores without penalty.[9] A publisher can tailor its games to different stores and audiences while maintaining access to the full Android ecosystem.

The revised injunction seems to preserve catalog access for third-party stores.[10] Rival stores would be able to access the Google Play Store's catalog of apps, and developers retain the right to opt out, ensuring that rival app stores must compete on quality and developers are not forced to partner with unwanted distributors.[11]

---

[6] *Compare* Revised Injunction, *supra* note 4, para. 9, *with* Permanent Injunction, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. No. 1017, para. 9 (unchanged in substance).

[7] Revised Injunction, *supra* note 4, para. 10.

[8] *Id.* para. 5.

[9] *Id.* para. 6.

[10] *Id.* para. 11.

[11] *Id.* (providing that developers may opt out of catalog access and that "Google will have until July 22, 2026 to implement the technology necessary to comply with this provision.").

3

FRESHFIELDS US LLP
ATTORNEYS AT LAW
NEW YORK

## III.    THE REVISED INJUNCTION PRESERVES PLATFORM SECURITY AND USER TRUST.

User trust matters to developers because the fallout from security failures lands on their brands. When users encounter malware, confusing installation flows, or unclear payment paths, the developer's brand bears the cost in refund requests, negative reviews, and lost players. For Rovio, confusion about what a player is installing damages the game brand, and the store bears none of the cost.

Rovio tentatively supports the proposed modification to the injunction that addresses distribution through a Registered App Store program. As an initial matter, Rovio supports the proposal to put in place consistent app-store distribution programs worldwide. Rovio's games are played by users around the globe, and inconsistent standards and installation flows are likely to confuse both users and developers alike. Substantively, the Registered App Store program is likely to be an improvement over the original injunction from a safety and security standpoint. The revised injunction addresses distribution security through a Registered App Store program administered by Google's Android team rather than by the Play Store that rival stores compete against.[12] The certification criteria should require stores to operate as legitimate marketplaces, provide transparent user experiences, ensure trust and safety, maintain privacy compliance, and meet technical health standards.[13] Google may not use these requirements as a pretext to discriminate against any app store provider.[14]

The process seems to include published criteria, notice, cure periods of seven to thirty days, and appeal rights.[15] Published criteria give users a basis for trusting a rival store before deciding whether to install it.

---

[12] Revised Injunction, *supra* note 4, para. 12; *id.* para. 12(b) (providing for certification by "Google's Android team").

[13] Revised Binding Term Sheet, Exhibit 2 (App Store Definition), *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Mar. 4, 2026), Dkt. No. 1179-2.

[14] Revised Binding Term Sheet, *supra* note 13 ("Google will not use the above Trust & Safety requirements as a pretext to discriminate against any app store provider.").

[15] Revised Binding Term Sheet, *supra* note 13 (published criteria, notice, cure periods, and appeal rights).

4

## CONCLUSION

*Amicus curiae* Rovio Entertainment Ltd respectfully requests that the Court approve the proposed modifications to the permanent injunction. From a developer's perspective, the revised injunction seems to preserve the competitive protections that matter most: improved economics, billing freedom, distribution choice, and platform security. These all contribute to a more open and more sustainable ecosystem.

Dated: April 6, 2026                          Respectfully submitted,

**FRESHFIELDS US LLP**

/s/ *Justina K. Sessions*
Justina K. Sessions
Justina K. Sessions (SBN 270914)
justina.sessions@freshfields.com
One Bush Street, 17th Floor
San Francisco, CA 94104
Telephone: (650) 461-8276

*Counsel for Amicus Curiae*
*Rovio Entertainment Ltd*

FRESHFIELDS US LLP
ATTORNEYS AT LAW
NEW YORK

ROVIO'S BRIEF SUPPORTING RENEWED JOINT MOTION TO MODIFY INJUNCTION
CASE NOS. 3:21-md-02981-JD; 3:20-cv-05671-JD