# EXHIBIT A

**[PROPOSED] BRIEF OF ECONOMISTS
AS *AMICI CURIAE* REGARDING
THE PARTIES' RENEWED MOTION
TO MODIFY THE PERMANENT INJUNCTION**

[PROPOSED] BRIEF OF ECONOMISTS AS *AMICI CURIAE* RE: THE PARTIES' RENEWED MOTION TO
MODIFY THE PERMANENT INJUNCTION
Case No. 3:21-md-02981-JD

DAVID C. DINIELLI (CA Bar No. 177904)
*Tech Accountability & Competition Project,*
*a division of the Media Freedom*
*and Information Access (MFIA) Clinic*
Yale Law School
127 Wall Street
New Haven, CT 06511
David.Dinielli@yale.edu
*Counsel for Economists as* Amici Curiae

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | **[PROPOSED] BRIEF OF ECONOMISTS AS *AMICI CURIAE* REGARDING THE PARTIES' RENEWED MOTION TO MODIFY THE PERMANENT INJUNCTION** |
| *In re Google Play Store Antitrust Litig.*, Case No. 3:21-md-02981-JD | |
| *In re Google Play Consumer Antitrust Litig.*, Case No. 3:20-cv-05761-JD | |
| | Judge: Hon. James Donato |

[PROPOSED] BRIEF OF ECONOMISTS AS *AMICI CURIAE* RE: THE PARTIES' RENEWED MOTION TO MODIFY THE PERMANENT INJUNCTION
Case No. 3:21-md-02981-JD

## I.    INTRODUCTION AND INTEREST OF *AMICI*

*Amici* are renowned scholars of economics and law: Paul Heidhues, Gene Kimmelman, Giorgio Monti, Fiona Scott Morton, Rupprecht Podszun, and Monika Schnitzer. Each was a signatory on the Brief of Economists as *Amici Curiae* Regarding the Parties' Jointly Filed Motion to Modify the Permanent Injunction. MDL Dkt. No. 1156. Once again, *amici* come before this Court to address this Court's concerns regarding the parties' jointly-filed motion to modify the permanent injunction: (1) "whether the proposed modifications are consistent with the public interest and free and unfettered competition, which the antitrust laws are designed to protect"; (2) "whether the injunction as modified by the parties adequately redress the network effects of Google's anticompetitive conduct"; and (3) "whether material circumstances have changed to warrant a modification." MDL Dkt. No. 1124 at 1.

## II.    ARGUMENT

The *amici* incorporate the arguments made in their first brief. In our view, the new proposed remedy has the same core problem as the first: It does not permit third party app stores to be downloaded from the Google Play Store. As such, the new proposal will shift the benefits of competition available under the Court's remedy away from consumers to the (now) two incumbents. The remedy this Court ordered on October 7, 2024, in our opinion, is effective and proportionate. MDL Dkt. No. 1017. Once again, as with the parties' first proposed modifications, if the Court finds that the parties' renewed proposed modifications risk weakening the competition established by the provisions in the original remedy, we recommend continuing with the original well-designed remedy.

First, under the parties' renewed modifications, rival stores still cannot be downloaded through the Google Play Store.  Instead of allowing a user to download a rival app store through the Google Play Store, the parties have come up with the "Registered App Store Program," a process whereby Google will "register" third party app stores, and then once they are "registered" through Google's process (and pay a fee), the store can be "eligible for the streamlined flow." MDL Dkt. No. 1179-2, Ex. A ¶ 7. This scheme is a change from the initial proposed modifications, but it will not adequately restore competition because Google continues to deny the stores access to the Google Play

Store, which is by far the most efficient and low cost method of distribution. MDL Dkt. No. 1179-2 Ex. 4 ¶ 12(a). We recommend rejecting this change. Enabling rival stores to be downloaded through the Google Play Store is a critical element of the Court's remedy that reduces entry barriers for rival stores. If rival stores must teach users how to sideload and advertise to users to explain where to navigate to in order to find the third party store, entry will be much more difficult than under the Court's original remedy. Further, the renewed modified injunction, like the first, permits Google to prohibit apps downloaded from the Play Store from displaying links that make it easy for users to get third-party stores or other apps. MDL Dkt. No. 1179-2 Ex. 4 ¶ 10. This closes yet another distribution channel for rival entry that the court ordered. Combined with closing the Play Store, it leaves entrants with only costly and difficult paths to reach users.

The parties may assert that that because this "Registered App Store Program" will be implemented in the European Union, it is an appropriate remedy in the United States. This is not the case. The European Union operates a unique and robust regulatory framework governed by the Digital Markets Act (DMA). The DMA includes FRAND requirements for App Store fees, which is not an element of this Court's remedy nor of any regulation in the United States. In addition, the DMA prohibits self-preferencing by Google Play, requires equivalent functionality for rivals, and more.[1] The Court should not be swayed by any attempt to select one element of Google's compliance in Europe and allege that, because it is part of a package being offered to European regulators, it necessarily constitutes an effective remedy in the United States. Rather, the question is whether allowing third party app stores to be downloaded through the Google Play Store is necessary to restore competition in the United States. Given the network effects established by Google's past illegal conduct, it is plainly necessary, and eminently doable. If Google wishes to offer the "Registered App

---

[1] *See, e.g.*, Digital Markets Act (DMA) Regulation 2022/1925 of the European Parliament and of the Council of 14 September 2022, 2022 O.J. (L 265) 1; App Distribution, https://ec.europa.eu/commission/presscorner/detail/en/ip_24_3433; Google Alphabet EU DMA Compliance Report Art. 6(4), https://storage.googleapis.com/transparencyreport/report-downloads/pdf-report-bb_2025-3-7_2026-3-6_en_v1.pdf.

[PROPOSED] BRIEF OF ECONOMISTS AS *AMICI CURIAE* RE: THE PARTIES' RENEWED MOTION TO MODIFY THE PERMANENT INJUNCTION
Case No. 3:21-md-02981-JD

Store Program" in the United States in addition to allowing them to be downloaded directly from the Google Play Store, they may choose to do so, giving consumers an additional method of acquiring competing stores.

Second, as with the first modified injunction, Google is still permitted to enter into an agreement with an OEM that forces the OEM to preinstall the Google Play Store. The Court's original remedy prohibits Google from entering into an agreement that would require an OEM "to preinstall the Google Play Store on any specific location on an Android device." MDL Dkt. No. 1017 ¶ 7. The parties' alternative prohibits Google from requiring an OEM to "refrain from placing a third party Android app store." MDL Dkt. No. 1179-2, Ex. 4 ¶ 7. In other words, while the rival store cannot not barred, the Google Play store can be required. This is insufficient to restore robust competition. If a rival store develops an innovative and valuable business model that an OEM would like to feature, it will benefit both those business and competition in the market to allow them to contract freely. If Google is permitted to require the OEM to preinstall the Google Play Store, this will block innovation and competition. If the Google Play Store is the default or must be prominently placed, Google will gain from its past illegal conduct.

Third, as before, under the parties' modifications, Google proposes fees for linkouts to content offered by developers on their own websites. MDL Dkt. No. 1179-2, Ex. 4 ¶ 12. Google will charge a 20% standard fee for linkouts (non-recurring purchases made within 24 hours of using the link) and 15% for participants in the "Games Level Up" program. MDL Dkt. No. 1181-1, Ex. A. Though Google will charge a fee only if those linkouts are from apps installed or updated by Google, the competition problem identified in the last proposed settlement persists. When a user clicks on such a link, the developer incurs the cost of hosting and delivering the content, and its delivery may involve no, or only nominal Google resources. The developers incurring such costs are plainly attempting to create a distribution path that is less expensive than monopoly price charged by Google. But the monopoly fees that Google charges for linkouts unduly lower returns to developers. We recommend rejecting this change.

There are two ways to restore distribution at competitive prices to developers on Android. One is to limit the fees that Google charges in the Google Play Store (and for the linkouts just discussed), which will benefit developers who continue to use the Google Play Store. The second is to ensure that rival third party stores may enter easily, with full functionality, and without financial barriers, which requires those rivals to be able to distribute through the Google Play Store. If such distribution channels are available, the resulting competitive stores can and will offer lower fees than the monopoly fee charged by Google, and they will compete with one another to attract developers who value low fees and quality of service.

The availability of alternatives is the key issue concerning contested fees, including those addressed by other *amici* skeptical of the renewed modifications. If competition is restored in the market, developers and users will have choices among third party app stores, and the pressure of fair competition (over time) will constrain Google's fees.  This is why ensuring that third party app stores can be directly downloaded from the Google Play Store is crucial: Absent Google's illegal conduct, developers would have competitive choices available on Android and would not need pay a fee for a linkout in the first place. Regulating fees is difficult to do well and will only last for the time of the decree. Robust independent stores, on the other hand, as the Court's remedy would ensure, will perpetuate competition to the benefit of consumers and developers for much longer.

## III.    CONCLUSION

For the reasons described above, it will be necessary for this Court to exercise careful oversight of any agreement between these duopolists. Though the parties' renewed modification is an improvement over the first, the restoration of competition the Court sought to establish in its original remedy remains at risk. This Court should reject any agreement that enriches duopolists by maintaining barriers to entry for third party app stores at the expense of consumers.

DATED: April 6, 2026

_____
DAVID C. DINIELLI (CA Bar No. 177904)
*Tech Accountability & Competition Project,*

*a division of the Media Freedom and Information Access (MFIA) Clinic*
Yale Law School
*Counsel for Economists as* Amici Curiae

**APPENDIX**

**Paul Heidhues,** Professor of Behavioral and Competition Economics, Düsseldorf Institute for Competition Economics (DICE), Heinrich-Heine University of Düsseldorf. Professor Heidhues has published extensively in the fields of competition economics, behavioral economics, and consumer protection regulation.[2]

**Gene Kimmelman**, Senior Policy Fellow, Tobin Center for Economic Policy at Yale University and Research Fellow, Mossavar-Rahmani Center for Business & Government at the John F. Kennedy School of Government at Harvard University. Gene Kimmelman has spent over thirty years working with consumer advocacy nonprofits and has served as Chief Counsel Senate Antitrust Subcommittee, Chief Counsel for Competition Policy in the Antitrust Division of the Department of Justice, and Deputy Associate Attorney General for the U.S. Department of Justice.

**Giorgio Monti**, Professor of Competition Law at Tilburg Law School, Tilburg Law and Economics Center, and Research Fellow, Centre on Regulation in Europe. Professor Monti's principal field of research is EU competition law and he has published extensively about competition law and policy.

**Fiona Scott Morton** is the Theodore Nierenberg Professor of Economics at the Yale University School of Management. Professor Scott Morton is a former Deputy Assistant Attorney General for Economic Analysis (Chief Economist) at the Antitrust Division of the U.S. Department of Justice and founder and director of the Thurman Arnold Project at Yale University. Professor Scott Morton has published extensively on competition law, economics, and policy, as well as the digital economy.[3]

**Rupprecht Podszun**, Chair of Civil Law, German and European Competition Law at Heinrich Heine University of Düsseldorf, Director of the Institute of Antitrust. Professor Podszun has published extensively in the field of antitrust and competition law, with a focus on the media and internet.

**Monika Schnitzer**, Professor of Economics, Ludwig-Maximilians-University Munich. Professor Schnitzer has published extensively in the fields of comparative economics, innovation, competition, and multinational corporations.

---

[2] Within the last three years, in collaboration with E.CA Economics, Professor Heidhues has been consulting for E.CA Economics on work done by E.CA for Apple in the context of a competition case unrelated to the policies discussed here.

[3] Professor Scott Morton was retained as an economic expert for Epic Games in the *Epic v. Google* case in an early phase of the proceedings, August 2021 to April 2022, and has had no relationship with either company since that time.

[PROPOSED] BRIEF OF ECONOMISTS AS *AMICI CURIAE* RE: THE PARTIES' RENEWED MOTION TO MODIFY THE PERMANENT INJUNCTION
Case No. 3:21-md-02981-JD