Lee Hepner
**American Economic Liberties Project**
1025 Connecticut Ave. NW, Ste 1205
Washington, D.C. 20036
(949) 412-7623
lhepner@economicliberties.us

Katherine Oh (*pro hac vice*)
**Demand Progress Education Fund**
700 Pennsylvania Ave. SE, Ste. 200
Washington, DC 20003
(202) 905-2835
kate@demandprogress.org

*Counsel for* Amici Curiae

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-CV-05671-JD | CASE NO. 3:21-MD-02981-JD<br><br>**MOTION FOR LEAVE TO FILE BRIEF OF *AMICI CURIAE* AMERICAN ECONOMIC LIBERTIES PROJECT, DEMAND PROGRESS EDUCATION FUND, AND OPEN MARKETS INSTITUTE IN OPPOSITION TO THE PARTIES' RENEWED JOINT MOTION TO MODIFY THE PERMANENT INJUNCTION**<br><br>JUDGE: HONORABLE JAMES DONATO |

## I.     <u>NOTICE OF MOTION AND MOTION</u>

American Economic Liberties Project, Demand Progress Education Fund, and Open Markets Institute (collectively, "proposed *amici*") hereby move the Court for leave to file a brief as *amici curiae* in opposition to the parties' renewed Joint Motion to Modify the Permanent Injunction. Joint Mot. to Modify the Permanent Injunction, *Epic Games, Inc. v. Google LLC,* No. 3:21-md-02981-JD, MDL Dkt. No. 1179 ("Renewed Joint Motion"). The proposed brief is attached to this motion as Exhibit 1. A proposed order granting this motion is attached as Exhibit 2.

Counsel for *amici* requested consent of both Plaintiff Epic Games, Inc. ("Epic") and Defendant Google LLC ("Google") to file their proposed *amicus* brief. Epic and Google responded that they take no position on this motion.

Pursuant to the Court's scheduling order regarding the parties' renewed joint motion to modify the permanent injunction (MDL Dkt. No. 1179), proposed *amici* respectfully seek leave to file the accompanying brief. This proposed brief addresses the adverse impacts that the proposed settlement will have on the broader digital app marketplace, particularly on small and independent app developers who rely on a fair ecosystem but face systemic barriers to voicing their opposition.

## II.    <u>INTEREST OF *AMICI CURIAE*</u>

Proposed *amici* are nonprofit, nonpartisan research and advocacy organizations dedicated to protecting consumers from monopolistic practices and promoting open markets.

- American Economic Liberties Project (AELP) is a nonpartisan, nonprofit research and advocacy organization that supports fair and consistent enforcement of the antitrust laws. AELP's interest stems from its observation of the current case and the filing of an *amicus* brief with the Court of Appeals for the Ninth Circuit in *Epic Games, Inc. v. Google LLC, et al.,* Case No. 24-6256, Dkt. No. 159 (9th Cir. 2024). AELP was founded in 2020 to help translate developments in antitrust law and policy to the broader public, while

MOTION OF AMERICAN ECONOMIC LIBERTIES PROJECT, DEMAND PROGRESS EDUCATION FUND &
OPEN MARKETS INSTITUTE FOR LEAVE TO FILE AN AMICI CURIAE BRIEF
Case Nos. 3:21-md-02981-JD and 3:20-CV-05671-JD

ensuring that lawmakers, agency officials, enforcement personnel, and courts apply the rich history of antitrust law to contemporary market realities. AELP does not accept any funding or donations from for-profit corporations.

- Demand Progress Education Fund is a nonprofit that educates its nearly one million members and the broader public about the impacts of corporate power over our economy and democracy. It focuses its public education efforts on the intersection of technology, competition policy, and consumer protection, including digital market regulation and anticompetitive practices by technology companies.

- The Open Markets Institute is a non-profit organization dedicated to promoting fair and competitive markets. It does not accept any funding or donations from for-profit corporations. Its mission is to safeguard our political economy from concentrations of private power that undermine fair competition and threaten liberty, democracy, and prosperity. The Open Markets Institute regularly provides expertise on antitrust law and competition policy to Congress, federal agencies, courts, journalists, and members of the public.

Proposed *amici* have no financial stake in the outcome of this litigation. Our sole interest is in ensuring that the antitrust remedies in this case effectively restore competition in the markets where the jury found Google to have maintained an illegal monopoly. We are concerned that the latest deal between Epic and Google to end this litigation fails to remedy the anticompetitive harm identified at trial and instead operates as a private arrangement that risks entrenching — rather than dismantling — barriers to competition in the Android app distribution and in-app billing markets.

## III.  THE PROPOSED BRIEF WILL ASSIST THE COURT

### A.  Legal Standard

District courts have broad discretion to consider amicus briefs from non-parties who will "advise or…make suggestions to the court." *County of Marin v. Martha Co.*, No. C 06-0200

MOTION OF AMERICAN ECONOMIC LIBERTIES PROJECT, DEMAND PROGRESS EDUCATION FUND & OPEN MARKETS INSTITUTE FOR LEAVE TO FILE AN AMICI CURIAE BRIEF
Case Nos. 3:21-md-02981-JD and 3:20-CV-05671-JD

SBA, 2007 WL 987310 at *1 (N.D. Cal. Apr. 2, 2007) (citing *Miller-Wohl Co. v. Comm'r. of Labor and Indus. of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982)). In this Circuit, district courts "frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (quoting *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)); *Sonoma Falls Developers, LLC v. Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003) (quoting *Cobell*, 246 F. Supp. 2d at 62).

"Even when a party is very well represented, an amicus may provide important assistance to the court." *Jamul Action Comm. v. Stevens*, No. 2:13–cv–01920–KJM–KJN, 2014 WL 3853148, at *6 (E.D. Cal. Aug. 5, 2014) (quoting *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.)). "The touchstone is whether the amicus is 'helpful,' and there is no requirement 'that amici must be totally disinterested.'" *California v. Dep't of Labor*, No. 13-cv-02069, 2014 WL 12691095, at *1 (E.D. Cal. Jan. 14, 2014) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982).

This Court should exercise its discretion to accept the proposed brief because it fills a critical gap in the adversarial process, represents the interests of the broader public as well as stakeholders not adequately represented by the existing parties, and provides independent policy analysis that bears directly on the Court's evaluation of the parties' latest proposal.

**B.  Proposed *Amici* Fill a Critical Gap in the Adversarial Process**

For years, the Court benefited from the vigorous adversarial contest between Epic and Google, which illuminated the technical and economic realities of the Android ecosystem. That adversarial relationship has now ceased. As the Court observed, "The only changed circumstance that you represented to me has nothing to do with changes in market conditions or in competition or in Google's conduct, none of the things you typically would see as a changed circumstance.

The only changed circumstance that I can see right now is Epic and Google, two mortal enemies who pounded each other relentlessly in this courtroom for many years, are suddenly BFFs." *See* Tr. of Proceedings 7:18-24, MDL Dkt. No. 1127.

With both parties now aligned in seeking approval for their private compromise, no party to this litigation has an incentive to identify deficiencies in that deal. Proposed *amici* seek to fill this void by offering a distinct perspective: that of public interest organizations focused on the settlement's real-world effects on the competitive landscape for app developers and consumers.

The proposed brief explains how the parties' latest settlement operates as a self-serving compromise that may satisfy Epic's and Google's respective commercial objectives, but fails to remediate the structural anticompetitive harms identified by the jury and fails to restore the competitive conditions that this Court's injunction issued on October 7, 2024 was designed to achieve. Permanent Injunction, MDL Dkt. No. 1017.

**C. The Parties Do Not Adequately Represent the Interests of Small and Independent Developers**

Epic Games is one of the largest game developers and publishers in the world, with the resources and market position to negotiate favorable commercial terms directly with Google. At the January 22, 2026 hearing for this case, the Court disclosed that the parties' side agreement includes an approximately $800 million commitment from Epic to purchase services from Google over six years. Renewed Joint Mot., MDL Dkt. No. 1179, 13 (acknowledging "a commitment from Epic to purchase a set amount of services from Google"); Jan. 22, 2026 Hearing Tr., 83:21–84:14 (Epic CEO Tim Sweeney stating that "We view this as a significant transfer of value from Epic to Google."). As such, Epic's economic interests and incentives diverge from those of the thousands of small and independent developers who depend on the Android app marketplace. While this settlement may satisfy Epic's specific commercial goals, it leaves the broader market without adequate competitive protections.

MOTION OF AMERICAN ECONOMIC LIBERTIES PROJECT, DEMAND PROGRESS EDUCATION FUND & OPEN MARKETS INSTITUTE FOR LEAVE TO FILE AN AMICI CURIAE BRIEF
Case Nos. 3:21-md-02981-JD and 3:20-CV-05671-JD

Critically, the developers who stand to be most affected by the proposed modifications face powerful disincentives to make their objections known. Small developers who distribute their apps through the Google Play Store operate under the implicit threat of platform retaliation. Google's control over app review and approval processes, search ranking algorithms, access to featured placement, and the enforcement of vaguely defined content policies gives the company extraordinary leverage over developers whose businesses depend on continued access to the Play Store. A developer who publicly opposes Google's preferred settlement terms risks having its apps subjected to heightened scrutiny, delayed approvals, or suppressed discoverability — consequences that could be existential for a small business. These concerns are grounded in the trial record, which documented the lengths to which Google went to neutralize competitive threats to the Play Store — including paying developers to abandon plans for rival app stores and engineering technical barriers to deter users from downloading apps outside Google Play. *See In re Google Play Store Antitrust Litig.*, 147 F.4th 917 (9th Cir. 2025), slip op. at 12-14 (summarizing how Google "entrenched its dominant position in Android app distribution by its intentional efforts to frustrate users' access to and use of alternatives to the Play Store"). As a result, the Court should expect that developer opposition to the settlement will be significantly understated.

To underscore the aims of the parties at the expense of the broader market, the parties' proposed settlement includes a binding term sheet that restricts the public speech and advocacy activities of Epic and its CEO, Tim Sweeney, until 2032. Revised Binding Term Sheet, MDL Dkt. No. 1179-2, Sections 21, 22, 26, and 28. By contractually prohibiting Epic from suing or publicly disparaging Google over its app distribution practices or fees, these restrictions leave the broader market without Epic as a vocal advocate. The Court ratifying this provision would leave Google's business practices substantially unchallenged by the very coalition built to fight them.

MOTION OF AMERICAN ECONOMIC LIBERTIES PROJECT, DEMAND PROGRESS EDUCATION FUND &
OPEN MARKETS INSTITUTE FOR LEAVE TO FILE AN AMICI CURIAE BRIEF
Case Nos. 3:21-md-02981-JD and 3:20-CV-05671-JD

Proposed *amici*, as independent nonprofit organizations with no financial stake in the outcome, are positioned to present these and other concerns regarding the parties' proposed compromise without exposing individual developers to the risk of retaliation.

### D.  The Proposed Brief Provides Independent Policy and Technical Analysis

Drawing on proposed *amici*'s experience analyzing antitrust remedies and digital marketplace competition, the accompanying brief provides independent analysis of specific provisions in the renewed settlement that risk undermining the Court's competitive objectives laid out in its 2024 injunction. Among other things, the proposed brief addresses how the settlement's specific provisions would, in practice, diminish or foreclose meaningful competition from developers and alternative platforms that — unlike Epic — lack the scale and bargaining power to negotiate individualized arrangements with Google. Proposed *amici* offer a perspective oriented not toward what is most commercially advantageous for the two litigating parties, but toward what is necessary to lower barriers to entry and restore genuine competition in the digital app marketplace—consistent with the jury's findings and this Court's prior orders.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court grant this motion and accept for filing the proposed *amici curiae* brief attached as Exhibit 1.

Dated: April 6, 2026                                  Respectfully submitted,

/s/ *Lee Hepner*

Lee Hepner
**American Economic Liberties Project**
140 San Carlos St.
San Francisco, CA 94110-1733
(949) 412-7623
lhepner@economicliberties.us

Katherine Oh (*pro hac vice*)
**Demand Progress Education Fund**
700 Pennsylvania Ave. SE, Ste. 200
Washington, DC 20003

MOTION OF AMERICAN ECONOMIC LIBERTIES PROJECT, DEMAND PROGRESS EDUCATION FUND &
OPEN MARKETS INSTITUTE FOR LEAVE TO FILE AN AMICI CURIAE BRIEF
Case Nos. 3:21-md-02981-JD and 3:20-CV-05671-JD

(202) 905-2835
kate@demandprogress.org

*Counsel for* Amici Curiae

8

## CERTIFICATE OF SERVICE

On this 6th day of April, 2026, I hereby certify that I caused the foregoing document entitled Notice of Motion and Motion for Leave to File Brief of *Amici Curiae* American Economic Liberties Project, Demand Progress Education Fund, and Open Markets Institute to be filed via the court's CM/ECF system, which shall send notice to the counsel of record for the parties.

Dated: April 6, 2026                    Respectfully submitted,


/s/ *Lee Hepner*
Lee Hepner


Lee Hepner
**American Economic Liberties Project**
1025 Connecticut Ave. NW, Ste 1205
Washington, D.C. 20036
(949) 412-7623
lhepner@economicliberties.us

Katherine Oh (*pro hac vice pending*)
**Demand Progress Education Fund**
700 Pennsylvania Ave. SE, Ste. 200
Washington, DC 20003
(202) 905-2835
kate@demandprogress.org

*Counsel for* Amici Curiae