# Exhibit B: Parties' Joint Statement to the Technical Committee

**<u>JOINT SUBMISSION TO TECHNICAL COMMITTEE:</u>**
**<u>THIRD-PARTY APP STORE DISTRIBUTION – DISPUTE RE USER EXPERIENCE</u>**

**<u>GOOGLE'S STATEMENT</u>**

Paragraph 12 of the Court's Injunction (the "Third-Party App Store Distribution" remedy) states that Google "may not prohibit the distribution of third-party Android app distribution platforms or stores through the Google Play Store." Dkt. 1017 ("Injunction") ¶ 12. Arguably, this remedy only requires Google Play to technically facilitate the distribution of third-party app stores through Google Play. Nevertheless, Google has gone further and developed a user experience that will allow users to discover, search for, and access third-party app store listings within Google Play. Google believes this is a more than sufficient, holistic solution given the complexities involved with Google Play distributing its rivals and the security risks associated with third-party app stores.

1.    **Background: Discovery and Search Experience for Third-Party App Stores**

Apps and app stores are foundationally different. An app store's core function is to install apps, which presents distinct security risks compared to apps. The quality signals for app stores would also be unique. Google's implementation plan addresses these differences while still providing numerous ways for users to discover third-party stores within Google Play, including (1) accessing a landing page from the Google Play menu or (2) the "Categories" page; (3) searching for a specific app store or (4) app stores generally; and (5) following a deep link.

First, Google developed a landing page for third-party app stores, which will be accessible via the Google Play menu. *See* Figs. 1, 3. In addition, at Epic's request, Google will provide a link to the landing page in the "Categories" tab of Google Play. *See* Fig. 2.

1



***Fig. 1 (left)***: *Link to third-party app store landing page within the Google Play menu.*
***Fig. 2 (middle)***: *Link to third-party app store landing page in the "Categories" page.*
***Fig. 3 (right)***: *Landing page for third-party app stores.*

The search function for Google Play will provide users with two additional ways to efficiently find third-party app stores. First, lexical searches associated with a given third-party app store brand name (*e.g.*, "Epic") or app store name (*e.g.*, "Capital App Store") will return a result that prominently includes the specific app store and directs users, with a link, to the app store landing page, where that store will be shown at the top. *See* Figs. 4, 5. Alternatively, if a user searches for app stores generally (*e.g.*, "app stores"), they will see a prominent result allowing the user to click a link to the app store listing page. *See* Fig. 6.

Beyond search, a third-party app store can also direct users to the landing page for third-party stores (with that store at the *top* of the landing page) using a deep link from outside Google Play (*e.g.*, from the developer's website or an advertisement). *See* Fig. 5.

2



***Fig. 4 (left)****: Result if user presents a search query that is associated with a specific app store.*
***Fig. 5 (middle)****: Result if user searches for a specific app store or follows a deep link for that store.*
***Fig. 6 (right)****: Result if user presents a search query related to app stores generally.*

Epic has three objections to this proposal: (1) Epic believes that Google should be forced to introduce ratings and reviews for third-party app stores; (2) Epic believes third-party app stores should be listed alongside apps in Google Play search results; and (3) Epic objects to the alphabetic listing of third-party app stores on the third-party app store landing page.

## 2.    Ratings and Reviews for Third-Party App Stores

Epic claims "user reviews and ratings are a basic feature," (Epic Statement at 7), but they are not necessary for distribution and there is no established practice for app stores allowing and managing user reviews and ratings for their direct store competition.  Most app stores do not distribute other stores.  One app store that does, Epic's own Epic Games Store on PCs ("EGS"), *does not provide user ratings or reviews for the third-party app stores it distributes*.  *See* Ex. A (app stores on EGS without user ratings or reviews).  Epic cannot credibly demand that Google Play provide user ratings and reviews for third-party app stores when it does not do so itself. Moreover, the Court's Injunction only requires Google Play to distribute third-party app stores. As EGS demonstrates, user ratings and reviews are not required for distribution.

From an app store perspective, managing user ratings and reviews is complex.  An app store must weed out fake reviews, prevent review or rating "bombing," and make sure ratings and reviews are current, which is only possible if the app store is actively managing the app that is getting reviewed.  Google Play allows users to leave ratings and reviews of apps, but actively manages these metrics to address these issues.  Review manipulation is a well-known issue.

3

Epic's CEO, Tim Sweeney, noted that "review bombing and other gaming-the-system is a real problem," and EGS does not allow user reviews, appears to only allow user ratings for games, and only solicits them from users that have played the game for more than two hours.[1]

Although Google Play actively manages the user ratings and reviews for apps on Google Play, it will not have user ratings and reviews for any of the third-party app stores it distributes because it is untenable for Google Play to be in a position of managing such metrics for its rivals. Thus, no third-party app store would be disadvantaged against any other app store. For example, if a third-party app store challenges a review as inaccurate and Google Play sides with the user, the third-party app store may claim that Google Play's decision was biased.

### 3.        Search Results for Third-Party App Stores

Epic says Google should treat third-party app stores the same way it treats apps for Google Play search. Epic Statement at 7–8. This would mean, for example, that third-party app stores and apps would appear intermingled in the search results with only a minimal distinction between app stores and apps. This proposal is fundamentally impractical for several reasons.

***First***, app stores' powerful install permissions make them different from apps. A malicious actor can use this permission to install malware, other harmful apps, or objectionable content on a device. Although Google will conduct a limited review of app stores before they are distributed through Google Play, a third-party app store can change its behavior, once installed, by self-updating and circumventing Google's security and content review. Because these stores are distributed by Google Play, they are not subject to Android's default sideloading warnings and can expose users to malware, other harmful apps, or objectionable content (*e.g.*, child sexual abuse material). Thus, contrary to Epic's claims (Epic Statement at 9), Google's review of apps in third-party app stores is limited. Moreover, Google Play Protect can only flag known malware and cannot necessarily flag other harmful apps or objectionable content. Given these safety concerns, third-party app stores must be differentiated from other app listings within search results to ensure users when installing these stores understand they are distinct from apps.

Furthermore, the landing page provides users with additional information at the top of the page so they can make an informed choice before installing a third-party app store with powerful permissions. *See* Figs. 3, 5. This statement informs users that the apps installed by third-party app stores are not managed by Google Play and operate under their own security and privacy practices. Google's proposed design streamlines the communication of this information to users.

***Second***, search in Google Play does not operate solely based on lexical inputs. Rather, Google Play relies on a number of different inputs to determine which apps to surface in response to a particular search query. Those inputs include ratings and reviews, number of downloads, technical quality signals, objective quality signals, usage stats, and other learnings. Much of this information may be competitively sensitive and require user consent or controls.

Google Play would also need to rank third-party app stores against apps in search results, which presents numerous challenges. App stores and apps have key differences when it comes

---

[1] "The Epic Games Store "Ratings and Polls" update," Epic Games Store Blog (June 17, 2022); "Epic Games Store avoids review bombing with OpenCritic integration," GamesIndustry.biz (Jan. 16, 2020).

4

to the inputs used to respond to a search query.  Google Play will not have technical quality signals or other objective quality signals for third-party app stores, which it has never previously distributed.  Conversely, Google Play has spent years developing and refining technical quality and objective quality methodologies for the apps it distributes and manages on Google Play.

If Google Play were required to develop these metrics for the purpose of ranking third-party app stores, Google Play would be drawn into repeated disputes with its competitors.  For example, if Google Play viewed broad catalogs as "better quality" than more curated catalogs, Google Play could be accused of stifling smaller niche app stores that are different from Google Play.  If it took an opposite approach, it could be accused of disfavoring larger app stores that look the most like Google Play.  Google Play could never satisfy all third-party app stores.

Furthermore, collecting these signals could be highly problematic.  For example, Google Play uses "app usage" as a key signal for its rankings.  The equivalent of app usage for a third-party app store would likely be a metric such as the number of installs from a third-party app store and the usage and quality of the apps that the store installs.  Collecting such competitively sensitive information would be untenable—but without it, Google Play may not be able to provide an equivalent signal to rank third-party app stores against apps.

Epic is thus wrong to claim that Google Play can rank rival app stores because it ranks the rivals of Google's other businesses.  Epic Statement at 7–8.  Google Play operates independently from Google's other businesses.  Google Play actively optimizes search and discovery because its goal is to drive engagement by promoting and surfacing high quality and engaging apps.  In this way, Google Play's interests are aligned with developers.  It is also why Google Play treats the apps of Google's other businesses equivalently to rival apps in search rankings: It wants to attract users to Google Play.  Epic, however, is asking for something fundamentally different—for Google Play to rank its *own* competitors contrary to its own interests.  This would invite endless disputes and significant complexity in how Google Play manages the criteria to rank its app store rivals.

Google's plan will avoid these problems while actually giving third-party app stores *more* visibility than they would otherwise have.  Specifically, Google will show the search result responsive to a user's query in a banner near the *top* of the search results, even on search queries where the app store might otherwise be ranked lower on the search page.  This solution will not add "friction" (see Epic Statement at 9); instead, it is intentionally designed to surface third-party app stores to users who are looking for those stores while avoiding a debate as to how Google should rank those stores.  Beyond this favorable search treatment, users can navigate to the third-party app store landing page from two locations in Google Play, and third-party app stores can provide deep links to users to the landing page, where their store will be the first one listed.  This implementation, which goes beyond the "distribution" required by the Injunction, is reasonable given the challenges involved in Google Play ranking its rivals.

Epic incorrectly argues that its proposed search treatment is required to "level the playing field."  Epic Statement at 7 (citing Ex. B at 12).  Rather, the Court sought to level that playing field through a "modest step": requiring Google Play to distribute rival app stores so they could "get onto users' phones" without the need for sideloading.  Ex. B at 12–13.  Google's plan

5

achieves this without the morass of ranking or evaluating its competitors.  Indeed, the Court explicitly said it "has no intention of running Google's business as a 'central planner.'"  *Id.* at 16.

### 4.    Alphabetical Listing of Third-Party App Stores On Landing Page

Epic claims that the landing page should be treated the same as category pages, with an algorithm determining the app store order (Epic Statement at 10), but this ignores how Google Play works and the technical complexity involved in such rankings.  For example, there are currently ~490K apps in the Social category and ~1.3M apps in the Music and Audio category.  Google Play must invest in algorithmic systems to aid in discovery for these categories.  But contrary to Epic's contention (Epic Statement at 10), Google Play does not always use algorithms to rank content on the store:  Manual curation is a longstanding practice in Google Play.  For example, if Google Play is defining new clusters or types of content in the store (*e.g.*, Watch Apps at launch), Google Play will often put this content in fixed positions in the store because it lacks the signals needed to rank them across other store content.

Google Play often avoids algorithmic ranking when dealing with content with a smaller catalog.  The third-party app store landing page fits into that category, where there will likely be significantly fewer than the 400 Android app stores that reportedly exist globally.[2]  Google Play's plan to list these stores alphabetically is simpler and fairer than trying to manually curate or rank its rivals, particularly since Google Play does not have the usual signals it would use to create a ranking.  Further, alphabetic listing will provide a predictable and easy-to-understand method for users to find the app store they are looking for and see the entire catalog of options.[3]

\* \* \*

Google's implementation plan for Third-Party App Store Distribution is doing precisely what the Court sought by issuing the Injunction:  users will be able to download third-party app stores from Google Play without any sideloading "frictions."  Moreover, Google Play is making it easy for users to find these third-party app stores through a myriad of ways while avoiding getting embroiled in disputes about how those third-party app stores are ranked and having the Court (or the Technical Committee) act as a "central planner" in designing a search algorithm.

---

[2] "The 'Other' Android App Stores - A New Frontier for App Discovery," *Forbes* (Sept. 3, 2019).
[3] Google is open to re-evaluating the listing of third-party app stores in the future, depending on the volume of third-party app stores that participate in Third-Party App Store Distribution.

**EPIC'S STATEMENT**

Under Paragraph 12 of the Injunction, Google must allow "the distribution of third-party Android app distribution platforms or stores through the Google Play Store." (Injunction (Ex. B) ¶ 12 (the "Store Distribution" remedy).) That remedy was intended to "level the playing field . . . so that rival app stores have a fighting chance of getting off the ground." (MDL Dkt. 1016 (Ex. C) at 12.) Unfortunately, Google's proposed implementation of the remedy would nominally allow the distribution of competing app stores on the Play Store but deny those stores access to basic features needed to make that distribution successful: user reviews/ratings, intuitive search results and sensibly organized category tabs. The parties ask the Technical Committee to resolve three disputes: (1) Google intends to prohibit user ratings and reviews of app stores, denying them a key feature available to other apps; (2) Google refuses to display app stores in search results in a non-discriminatory manner, instead forcing users to a separate page to find app stores; and (3) Google insists on organizing the app store category page strictly alphabetically, unlike all other app categories. Each of Google's proposals would degrade the use and discovery of competing app stores, contrary to the intent of the Injunction.

## I.    App Stores Should Have User Ratings and Reviews Like All Other Apps

User ratings and reviews are a basic feature of the Play Store. They provide users with important information, and they play a major role in users' decisions about which apps to install. Nevertheless, unlike all other apps, Google intends to prohibit user ratings and reviews for app stores. (Google Stmt. at 3–4 (Figs. 4–6).) This would be a major degradation of the user experience of finding and installing app stores, and it would put app stores at a unique disadvantage not faced by any other category of apps on the Play Store.

Instead, Google contends that it cannot feasibly collect and manage ratings and reviews for app stores because it competes with those stores. (*Id*. at 3–4.) That is simply not credible. Google already does precisely that for other apps with which it competes. For example, Google allows user ratings and reviews for ChatGPT even though it competes with Google's Gemini app. Google allows user ratings and reviews for Spotify even though it competes with Google's YouTube Music app. And so on and so on. (Ex. F.) Google acknowledged that it manages user ratings and reviews for those apps, even though it is equally subject to a "claim that Google Play's decision was biased." (Google Stmt. at 4.) Google can and should allow user ratings and reviews for app stores too. Google's effort to deflect by pointing to the Epic Games Store on PC misses the point entirely. (*Id*. at 3.) Google was ordered to distribute app stores just like any other app *on the Play Store*. Users on the Play Store have been conditioned for over a decade to rely on ratings and reviews for *all* apps. Google should not be allowed to deny these basic Play Store features to the one category of apps that it has been ordered to distribute, regardless of other stores' features. Moreover, Google's assertion that there is "no established practice for app stores allowing and managing user reviews and ratings for their direct store competition" is wrong. (*Id*.) For example, the Microsoft Store on PCs features user ratings and reviews for all apps, including rival app stores. (Ex. L.) Google can do the same.

7

## II.    App Stores Should Be Presented in Search Results Like All Other Apps

A key way that users find the apps they want is through the Play Store's search function. If a user types in "music streaming," users know Google will present them with relevant options, such as Spotify. (Ex. G.)  Even more fundamentally, if a user types in "Spotify," users know Google would present them with Spotify, which the user can then install with a single click.

But Google does not intend to do this for app stores. (Google Stmt. at 2–3.)  Instead, Google plans to exclude app stores from search results entirely, negatively impacting discoverability.  Users seeking an app store will need to follow a link to a completely separate page where app stores are segregated and listed mostly alphabetically. (*Id*.)  At that point, many users will give up.  No user is accustomed to having the most relevant search results excluded from the search results page and instead being shuttled to another page to find what they are searching for—and the Play Store does not do this to users in any other context.  Google's plan discriminates against app stores without any technical justification and would greatly diminish the Store Distribution remedy's effectiveness.  By segregating app stores to a separate page, requiring an extra click and additional scrolling, Google is needlessly complicating the discovery and installation of app stores—contrary to the Injunction's express goal of "lower[ing] the barriers for rival app stores to get onto users' phones." (Ex. C at 12.)  Google suggests that its proposal satisfies the Injunction because the goal of Store Distribution was simply to avoid some sideloading frictions. (Google Stmt. at 5–6.)  That view is far too narrow and inconsistent with the Court's order.  During the remedies hearings, the Court heard evidence that Store Distribution is also necessary because users, for over a decade, have been "trained" by Google to look for apps at a single store—the Play Store. (MDL Dkt. 977 (Ex. K) at 72:1–10.)  To overcome this conditioning (and resulting network effects), Google was ordered to allow app stores to be available on the Play Store, where users go to by default. (Ex. C at 12.)  For this to be effective, the user experience of obtaining an app store on Play must be similar to what users have come to expect on Play—and a fundamental tenet of that user experience is the ability to easily find apps through search.  App stores therefore must benefit from the Play Store's search function in the way that any other app does—and that every user of the Play Store expects.

Google's other proposed justifications lack merit.  *First*, Google argues it is unable to integrate app stores into search results alongside other apps because it "will not have user ratings and reviews" or various "quality signals." (Google Stmt. at 4.)  But as discussed above, this is not a justification; it is part of the problem.  Google can and should have user ratings and reviews for app stores—just as it does for all other apps—because user ratings and reviews are a fundamental feature of the Play Store.  Google's reliance on its own decision to prohibit user ratings and reviews as a reason to exclude app stores from the Play Store's search function simply compounds the problem.  And Google's argument that ranking stores is infeasible without metrics on the "number of [app] installs from a third-party app store" and the "usage and quality" of those apps is simple misdirection. (*Id.* at 5.)  If Google can rank Netflix without visibility into content consumption, or Amazon without visibility into users' purchases, Google can rank an app store without knowing the number of installs it performs.

*Second*, Google argues that including app stores in the search function like other apps would subject Google to "endless disputes" about ranking rival stores and require the Court to act as a "central planner" to resolve those disputes. (*Id.* at 5–6.)  As with user ratings and

8

reviews, this issue is not unique to app stores and cannot justify their exclusion from search results.  As noted above, the Play Store hosts many apps that compete directly with Google's apps, yet all of those apps are integrated into search results on equal terms.  Google acknowledges this point but contends that it cannot do the same for app stores because "Google Play operates independently from Google's other businesses."  (*Id*. at 5.)  But that is not a reason to treat app stores differently; it is an admission that Google Play *can* treat rival apps fairly when it wants to do so.  Google's position that the only way to avoid accusations of "disfavoring" individual rivals to the Play Store is to "disfavor[]" *all* rivals defies common sense.  (*Id*.)

*Third*, Google argues that its proposed segregation scheme would benefit rival app stores by giving them "*more* visibility than they would otherwise have."  (*Id*. at 4.)  This is obviously not so.  Users of the Play Store expect to find the apps they seek in search results.  If those apps are not there, many users will stop looking.  Characterizing the exclusion of app stores from search results—and the added friction of going to a new page and scrolling through an alphabetical list—as a good thing that helps app stores is contrary to Google executives' trial testimony and the findings of the Court.  (*E.g.*, MDL Dkt. 840 (Ex. E) 1360:19–22 (Mr. Pichai agreeing "that the more steps you add to a user flow, users become less likely to complete that flow"); Ex. C at 12 (Store Distribution was necessary in part because the "'friction' Google built into acquiring apps outside the Play Store was highly effective in discouraging users from even trying" to download rival stores).)[4]  App stores should be given equal treatment as all other apps.

*Fourth*, Google claims that segregating app stores from the Play Store's search function is needed to avoid "confus[ing]" users and ensure users are making "an informed choice."  (Google Stmt. at 4; Ex. D at 3.)  That again contradicts the record.  During the remedies proceedings, while discussing whether allowing Store Distribution would raise security concerns, the Court specifically noted that "[w]e can presume the user has some intentionality about knowing they're installing an app store."  (MDL Dkt. 1000 (Ex. F) at 69:7–9.)  And as Dr. Mickens explained, app stores can be adequately distinguished from other apps using "label[s] in the [P]lay [S]tore interface," similar to how "a game or . . . a health app" is marked as belonging to a distinct category.  (*Id*. at 68:22–69:2.)  Excluding app stores from search results and creating additional hurdles for users to find them is neither reasonable nor needed.[5]

*Fifth*, Google asserts that app stores need to be segregated for safety reasons.  But this argument simply rehashes Google's claim that other app stores are inherently unsafe, such that Google should hinder their installation—which segregation no doubt would achieve.  The Court already rejected this position and crafted the Injunction to deal with any security concern: Google is allowed to review app stores and their catalogs of apps for content and security using the same standards Google uses for review of other apps on the Play Store.  (Ex. B ¶ 12.)  In addition to this front-end review, when a user attempts to install an app, Google Play Protect will automatically "scan[] all apps [whether from] on Play, or off Play" for malware and other risks.  (Ex. F at 70:4–71:14.)  There is no security justification for their segregation.

---

[4] Google plainly understands that degrading the user experience of rivals benefits the Play Store, acknowledging above that "rank[ing] [Google's] own competitors [is] contrary to its own interests."  (Google Stmt. at 4.)

[5] Epic is not opposed to notifying users about third-party app stores.  Epic objects to Google's suggestion that the *only* effective way to inform users about store apps is to segregate them from all other apps.  (Google Stmt. at 5.)

9

Finally, if the Committee finds that Google may direct users searching for app stores to a separate landing page (it should not), Google should not organize stores on that page alphabetically.  Google should sort the results on that page based on relevancy, using the same algorithms used to order organic search results for all other apps.  Equal treatment of app stores in search results would make it easier for users to find competitors to the Play Store, and support the goals of Store Distribution.

### III.   The App Store Category Tab Should Be Organized Like All Other Category Tabs, Not Alphabetically

Currently, the Play Store homepage contains a tab called "Categories," which lists categories of apps such as "Social" and "Music & Audio."  (Ex. I.)  Google intends to add a Category tab for app stores.  However, Google proposes that stores be listed on that tab alphabetically.  (Google Stmt. at 2 (Fig. 3); Ex. H at 1–2.)  That is a radical departure from every other Category tab, where apps are displayed using algorithms to surface the apps likely to be most relevant to the user.  Google's proposal would substantially degrade the Category experience for app stores, making it less like an app store page and more like the Yellow Pages.  Since its inception, the Play Store has always displayed apps by relevance to the user visiting the Category, drawing on popularity and other metrics, rather than alphabetically.  Google should continue doing so for the app store tab, based on the same metrics its current algorithms use.

Google's proposed justifications for alphabetical listings are without merit.  *First*, Google argues it will be "simpler and fairer" to alphabetically list app stores rather "than trying to manually curate or rank its rivals."  (Google Stmt. at 6.)  That is like saying the Yellow Pages phonebook is "simpler and fairer" than Google; if Google truly believed that, it would order all search results alphabetically.  Rather, as discussed above, and by Google's own admission, Google selectively deploys that concern against app stores alone.  (*Id.*)  Google organizes other categories using algorithms that determine relevance, including many that include apps that compete with Google apps.  Indeed, Google offers no reason why it *cannot* use algorithms for the app store page—it only states that it *will* not.  (*Id.* at 5–6.)  And although Google argues that smaller categories like app stores are typically curated manually, it acknowledges that it sometimes uses algorithmic rankings.  (*Id.* at 6 (asserting only that Google "often" avoids algorithmic rankings for smaller categories).)  Google points to no examples where it ranked apps or products *alphabetically*, even where it was dealing with smaller catalogs.  (*Id.*)  That is because it knows that this is a poor user experience.  *Second*, Google argues it lacks "the usual signals it would use to create a ranking" to properly determine what stores to feature on the landing page.  (*Id.*)  However, Google's algorithms often rank on partial information, *e.g.*, when an app is new, only available in certain geographies, *etc*.  If anything, this supposed justification further reinforces the need for user ratings and reviews for app stores, which Google plans to prohibit.  It is not credible for Google—whose stated mission is "to organize the world's information and make it universally accessible and useful"—to claim it is unable to present a Categories page organized in a sensible manner.  (Ex. J.)  Google organizes information using curation algorithms all the time; there is no good reason for it to organize this singular category of apps in a manner that makes it less "accessible and useful".  (*Id.*)

10