UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION

MDL Case No. 21-md-02981-JD

Member Case Nos. 20-cv-05671-JD, 21-cv-05227-JD

**ORDER RE CONSUMER PLAINTIFFS' ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

In this multidistrict antitrust litigation, attorneys for six individual consumer plaintiffs in the consumers case, Case No. 20-5671, ask for an award of attorneys' fees, reimbursement of expenses, and incentive awards, to be paid from the $700 million monetary settlement that was reached in the parallel case filed by the States, Case No. 21-5227. The $700 million consists of "$630 million to be deposited into a *parens patriae* Settlement Fund for the benefit of Eligible Consumers" and "$70 million to be deposited into a non-*parens* States' Monetary Fund." Case No. 21-5227, Dkt. No. 624 at 5. Final approval of the *parens patriae* settlement has been granted pursuant to 15 U.S.C. § 15c(c). *See* Case No. 21-5227, Dkt. No. 633.

The parties' familiarity with the record is assumed, and the requests, Dkt. No. 535 in Case No. 20-5671, are denied.

**DISCUSSION**

This is not a class action, and so the requests are not governed by Federal Rule of Civil Procedure 23(h). That is because the consumers case was initially certified and then decertified. MDL Dkt. Nos. 383, 604. Consequently, the fees and expenses requests are not coming to the Court as part of a class action, as is typically the situation.

United States District Court
Northern District of California

Rather, the attorneys for the individual plaintiffs say they are "entitled to fees from a common fund where they 'created, discovered, increased or preserved a fund to which others also have a claim.'" Dkt. No. 535 at 9 (quoting *B.P. N. Am. Trading, Inc. v. Vessel Panamax Nova*, 784 F.2d 975, 977 (9th Cir. 1986)). But fees and expenses may not be awarded on the basis of the record as it currently stands.

## I. ATTORNEYS' FEES

Counsel request the payment of $85 million in fees, which is "13.5% of the Common Damages Fund," meaning the $630 million fund to pay consumer damages claims. Dkt. No. 535 at 10. For this *parens patriae* fund, 15 U.S.C. § 15c(d) provides that "the amount of the plaintiffs' attorney's fee, if any, shall be determined by the court." Counsel say that a "lodestar cross-check confirms the [$85 million] fee request is reasonable" in that counsel "spent over 98,200 hours litigating this case . . . amounting to a lodestar of $63,444,800.30," and so the "proposed fee award implies a lodestar multiplier of 1.34," which is "on the extreme low end of similar cases." Dkt. No. 535 at 13-14. Counsel urge approval of this award as reasonable.

It is true that, in common fund cases, the Court may use a percentage-of-the-fund or lodestar method to award attorneys' fees that are "*reasonable under the circumstances*." *In re Washington Public Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations and citation omitted; emphasis in original). The salient question is whether the attorneys' work "created, discovered, increased or preserved a fund to which others also have a claim." *B.P. N. Am. Trading*, 784 F.2d at 977. The "fundamental purpose" of the common fund doctrine is to "spread the burden of a party's litigation expenses among those who are benefited." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785-86 (9th Cir. 2022) (internal quotation marks omitted). When awarding attorney's fees from a common fund, the Court "must assume the role of fiduciary" for the fund's beneficiaries, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th. Cir. 2022), and "act with a jealous regard to the rights of those who are interested in the fund," *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quotations omitted).

United States District Court
Northern District of California

The lawyers asking for fees here were far from the only attorneys who worked to obtain the $630 million common fund settlement. Every state and equivalent entity in the Union had attorneys who participated in the litigation leading to the settlement. *See*, *e.g.*, Case No. 21-5227, Dkt. No. 624 at 1 (final approval application submitted by "[a]ll 50 States, the District of Columbia, Puerto Rico, and the Virgin Islands"). It may be that some lawyers put in more work than others, but even so, "the entire fund was not brought about solely through the efforts of" consumer plaintiffs' counsel, and the individual consumer plaintiffs and their attorneys may "'only be partly credited with conferring the benefit achieved.'" *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1124 (9th Cir. 2002) (citation omitted). Consequently, it would be wrong to "'award[] a fee based on a percentage of the monetary fund.'" *Id*.

This leaves a lodestar approach in possible play. The problem there is that the attorneys did not meet their burden of submitting "*detailed* records justifying hours *reasonably* expended." *Id*. at 1126 (emphasis in original). The billing records filed with the fees request are utterly lacking in information demonstrating what work was done and for what purpose. Mysterious references to a numerical billing code hint at unduly broad categories of work, such as "pleadings/briefs/pretrial motions" and "investigation / factual or legal research." *See*, *e.g.*, Dkt. No. 535-8 at ECF pp. 18-22; Dkt. No. 535-9 at ECF pp. 49-55. These categories are even more opaque than ones such as "'Resps suppl brief' and 'Resp brief,'" which "patently fall short of" the level of specificity required. *Wininger*, 301 F.3d at 1126. Attorneys' fees cannot be fairly evaluated or awarded on this paltry record.

The remaining question is whether counsel should be given another chance to fix the shortfalls in an amended request for fees. As the Court has said on prior occasions, the results obtained in the consumers case were not particularly impressive. As noted, a class was ultimately denied because the economist engaged by the consumers as their expert relied on fundamentally inadmissible methods to urge certification of a class. *See* MDL Dkt. Nos. 588, 589. Requesting payment for that work from the *parens patriae* consumer fund in the States' case is a doubtful proposition.

It also bears mention that the heavy lifting to establish Google's liability for anticompetitive conduct, and fashion a remedy for it, was done by the attorneys for Epic in its separate case. That hard-fought courtroom battle resulted in a jury verdict and an injunction that substantially exceeded the conduct remedies bargained for in the settlement here. The consumers attorneys say that they contributed to that victory and to Epic's case overall, calling out the fact that the testimony of two Google employees whom the consumer plaintiffs deposed was "discussed at length in Epic's closing argument." Dkt. No. 535 at 5. The Court appreciates the cooperation of the different plaintiff groups in this multidistrict litigation and the extent to which counsel's work may have helped to create benefits to the public. But a "jealous regard" for the interests of the consumers commands the question of whether legal work that directly benefitted Epic should be paid for by Epic rather than from the *parens patriae* fund.

With these considerations in mind, the consumer attorneys will have a final opportunity to file an amended fees request. If they elect to file one, they must provide billing records with sufficient detail for the Court to determine, among other facts, (1) how many hours were billed for work related to plaintiffs' unsuccessful class certification attempt, and (2) how many hours were billed in aid of litigation activities that cannot fairly be said to have contributed to the common fund settlement reached in the States' case. The records should also address the other shortfalls identified here. The Court may refer the records for review to a special master accountant it has used to review billing materials in other MDL cases.

As a closing observation, counsel are invited to think carefully about fees that may fairly be taxed against the common fund's beneficiaries, and to consider voluntarily reducing their lodestar. A renewed fees request should address this issue and justify each category of work and the number of hours for which fees are being sought, and tie those requests directly to the States' settlement fund. It should also omit law firm profiles, lawyer biographies, and other marketing materials, as the Court already has that material and is familiar with the backgrounds of counsel and the relevant firms.

## II. LITIGATION EXPENSES

Counsel have requested $8.58 million in expenses, including approximately $6.3 million in

expert fees. Dkt. No. 535 at 15; Dkt. No. 535-9 at ECF pp. 59-60. The submissions again do not provide the relevant level of detail that would permit the Court to scrutinize the categories of expenses sought, and whether and how they can fairly be said to have contributed to the common fund from which counsel now seek payment. *See*, *e.g.*, Dkt. No. 535-9 at ECF pp. 57, 59-60. As with the fees request, the request for expenses may be renewed in a manner consistent with this order.

## III. INCENTIVE AWARDS

The request for $5,000 in incentive awards for each of the six individual consumer plaintiffs is also denied. Counsel suggest that such awards are "'fairly typical in class action cases,'" Dkt. No. 535 at 15 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)), but this is not a class action case. Counsel did not provide any authority indicating that such awards are permissible and fair under the common fund doctrine or 15 U.S.C. § 15c, and the individual consumer plaintiffs did not provide any declarations demonstrating why they might be entitled to an award that massively exceeds those of other claimants.

## CONCLUSION

An amended request for fees and expenses may be filed by November 13, 2026.

**IT IS SO ORDERED.**

Dated: October 15, 2026

JAMES DONATO
United States District Judge