Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Leigha M. Beckman, Bar No. 334611
leigha.beckman@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
600 Montgomery Street, Suite 2300
San Francisco, CA 94111-2725
Telephone: (415) 442-1000

*Counsel for Defendants Google LLC et al*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
Lauren N. Beck, Bar No. 343375
lauren.beck@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**LIU SHUR KRAVIS LLP**
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100

*Counsel for Defendants Google LLC et al*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD

Case No. 3:21-md-02981-JD

**DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF MONTHLY REPORT REGARDING INJUNCTION COMPLIANCE**

Judge: Hon. James Donato

I, Christian Cramer, declare as follow:

1. I am currently the Finance Director for Android Ecosystem (which includes Google Play) for Defendant Google LLC (along with Google-affiliated entities, "Google"). I have been employed by Google since September 2007 and have held my current position since February 2024. Prior to my current position, from late 2020 to February 2024, I was the Finance Director for Google Play. Before that, I was the Finance Director for Platforms and Ecosystems ("P&E") (which at the time included Google Play), from March 2017 to late 2020. Over the course of my employment at Google, I have acquired personal knowledge of Google's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and marketing information.

2. I submit this declaration in support of the Administrative Motion to Seal Portions of Monthly Report Regarding Compliance Injunction ("Motion"), filed on October 15, 2026 *in In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal.) ("MDL"); *see also Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.).[1]

3. The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversations with other knowledgeable employees of Google. If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

**Google's Approach to Protecting Sensitive Business Information**

4. As a matter of routine practice and internal policy, Google and its employees strictly treat as confidential, among other things, (i) internal, non-public financial and operational information; (ii) non-public commercial proposals to third parties; (iii) non-public agreements with third parties; (iv) internal surveys and analyses of customer preferences, spending, revenue,

[1] I have previously submitted declarations in support of Google's Administrative Motions to Seal Monthly Report Regarding Injunction Compliance in connection with Google's prior monthly compliance reports filed with this Court for these matters ("Prior Declarations").

market conditions, business strategy, competitive dynamics, and commercial opportunities; (v) non-public financial forecasts and business plans; (vi) trade secrets; and (vii) other sensitive material that, if publicly disclosed, could potentially enable Google's competitors to undermine Google's competitive position in the marketplace, allow current or prospective business partners or counterparties to take unfair advantage of Google in negotiations or other business affairs, violate Google's confidentiality obligations to third parties, or otherwise prejudice Google's business interests.

5. In my experience and to the best of my knowledge, Google does not disclose information of the nature described in paragraph 4 outside of the company, except to authorized third parties when so required or permitted by law or contract. To that end and in order to prevent inadvertent revelation of this information to the public or competitors, Google has several policies in place, such as: prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties; limiting access to certain internal systems; permitting access to document databases on a need-to-know basis; and requiring the use of an encrypted email system. I am also aware that, generally, Google employees are required to sign a confidentiality agreement requiring each employee to keep information confidential and shared only within the company.

6. I understand that this Motion requests that the Court maintain the specific information identified below under seal. For the reasons stated below, this information is confidential and highly sensitive and, if publicly disclosed, could significantly impair Google's competitive decision making and undermine its business relationships with non-parties.

**Specific Information Requested To Be Sealed**

**Monthly Report Regarding Injunction Compliance, Ex. A**

7. **Requests 2 & 3 (all revenue metrics in "Total Dollars" chart and "Dollars per app" charts).** This text reflects Google's internal, confidential financial revenue information on service fees and billing fees it collects in connection with the Third-party App Store on Play and Catalog Access programs. I understand the Third-party App Store on Play and Catalog

Access programs are recently launched programs (effective July 22, 2026) available in the United States as part of Google's compliance with this Court's injunction.[2] As stated on Google Play's public support page for the Catalog Access program, enrolled third-party US Android app stores are now able to offer the Google Play Store's catalog of apps to users, and the download of these apps will be completed through Google Play on the same terms as any other download that is made directly through the Google Play Store. Google Play's service fee will continue to apply to apps downloaded in this manner, as well as Google Play's billing fee if developers elect to use Google Play Billing.

8. As a threshold matter, Google does not publicly report or disclose revenues or other financial data from Google Play, including service fees or billing fees earned from sales on the Google Play Store. Revenues collected through the Third-party App Store on Play and Catalog Access programs are part of Google Play's revenues and a component of that non-public revenue stream.

9. Disclosure of service and billing fee revenues collected by Google through the Third-party App Store on Play and Catalog Access programs would provide competitors with real-time financial information about Google Play's operations on an ongoing monthly basis. This includes on a per-app store basis for app stores distributed through the Google Play Store and/or that are accessing and distributing Google's catalog of apps. Disclosure would thus reveal trends in both Google's overall revenue through these programs, and information about the marketplace reach of enrolled third-party app stores, over time. This disclosure would cause significant competitive harm to Google, as competitors monitoring these monthly reports would be able to assess and adjust their own commercial strategies in response to changes in Google's reported revenues. For example, other ecosystems competing for app developers and users would be able to assess the highest-revenue generating app stores on the Google Play Store and/or accessing Google Play's app catalog and tailor their competitive offerings to attract those

[2] *See Enrolling in the Third-party App Store on Play Program*, PLAY CONSOLE HELP, https://support.google.com/googleplay/android-developer/answer/17233393.

developers and users. Conversely, the knowledge that certain stores generate lower relative revenues, or that revenues are declining over time, could lead developers to avoid those surfaces, leading to lower participation in the programs.

10. Disclosure may also impair Google's current decisionmaking related to pricing or other aspects of these programs. For example, if Google were to consider whether to adjust prices or how it structures fees for these programs, it may be reluctant to do so because any potential impact to revenue would be publicly known shortly after their enactment. Internal decisionmakers may hesitate to enact pricing changes for fear of a negative response resulting from public disclosure of short-term effects in these revenue figures.

11. Further, public disclosure of service fee and billing revenues earned from the Third-party App Store on Play and Catalog Access programs could affect the perceived competitive incentives of participants or potential participants. In particular, there is a risk that third parties will make incorrect or incomplete assumptions about these programs and adjust their own business plans. For example, a developer considering whether to invest the time and attention needed to develop an app store may view reported revenues through this program and draw conclusions based on that information. Program participants may overreact to perceived changes in revenue—or trends in either direction—by withdrawing from the Third-party App Store on Play or Catalog Access programs prematurely or reducing their investments.

12. **Request 5 (dollar and % change in GPB revenue).** This text contains the confidential dollar amount and percentage change in Google Play Billing revenue from the prior month and cumulatively since July 2026. Google does not publicly report revenues or other financial data from Google Play, including revenues from its service fees or billing fees, or the percentage change in such revenues.

13. As Google recently announced, in addition to lowering its service fees on Google Play, Google changed its business model in the United States to separate its service fee and

billing fee.[3] As of June 30, 2026, Google charges a 5% billing fee for developers that elect to use its billing system in the United States.

14. Disclosure of the change in Google Play's billing revenue each month would provide market participants with real-time data points on the effect of this business model and charging structure. Public disclosure of this non-public, month-over-month financial trend information could affect competitive incentives in ways that are difficult to predict, and harm Google and developers who use in-app billing services.

15. Disclosure may affect Google's competitive incentives related to its products and pricing on Google Play. For example, if Google were considering a price change for use of its billing system, discounts, or other promotional offerings, it may hesitate to enact or test such price changes because any impact to revenue would be publicly known within a short timeframe of its introduction.

16. Public disclosure of the change in Google Play's billing revenue each month could also affect competitive incentives among other marketplace participants, including app developers, payment providers, and other platforms. For example, a reported dollar or percentage change in Google Play's billing revenue could be observed by competing payment providers and could influence their competitive decisionmaking related to in-app billing solutions in ways that disadvantage Google.

17. Moreover, to the extent the general public, including potential investor communities, rely on financial information provided by Google about business performance, the partial data in the monthly reports may lack sufficient context to be meaningful and could be misinterpreted.

18. **Request 8 (number of times in-app linkouts were clicked or used in September 2026 and cumulatively).** This text contains confidential and commercially sensitive usage data on in-app linkouts to download and for transactions on Google Play for the month of

---

[3] *See A New Era For Choice and Openness*, ANDROID DEVELOPERS BLOG, https://android-developers.googleblog.com/2026/03/a-new-era-for-choice-and-openness.html (March 4, 2026).

September 2026 in the United States, and cumulatively since July 2026. As stated in my Initial Declaration, this internal and highly granular data is not public or otherwise visible to Google Play's rivals and competitors, including, for example, Apple. Disclosure of such recent, granular usage data about Google Play's user behavior related to specific offerings on Google Play apps may affect competitors' strategies in competing with Google as they monitor, in real-time, monthly reporting of this data. For example, if Google were to adjust its prices for in-app linkouts, program requirements, or other features in an effort to better serve users and developers on its platform, the marketplace would have near-immediate usage information to gauge the commercial impact of that change on user demand, and could use that information to their competitive advantage. Knowledge of this upcoming disclosure may therefore affect and potentially hinder Google's competitive decisionmaking.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 12th day of October, 2026, in Mountain View, CA.

Signed by:
Christian Cramer
7E2F7561498147C

Christian Cramer